UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, | : | Case No. C-1-00-793 |
| on behalf of himself and of | | |
| all others similarly situated, | : | Judge Sandra S. Beckwith |
| Plaintiff, | : | Magistrate Judge Hogan |
| vs . | : | **Oral Argument** |
| | | **Requested** |
| OHSL Financial Corporation, et al. | : | |
| Defendants. | : | **CLASS ACTION** |

*     *     *     *     *

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR LEAVE TO SUBMIT
SUPPLEMENTAL AUTHORITY (DOC. NO. 205) TO DISQUALIFY KEATING,
MUETHING & KLEKAPM P.L.L. ("KMK") FROM REPRESENTATION OF ANY
DEFENDANTS WITH MEMORANDUM AND EXHIBITS ATTACHED**

Plaintiff submits the following Supplemental Memorandum of Law and Exhibits in

support of this Motion pursuant to Local Rule 7.2 (a) (2).  This response includes the

transcript of the depositions of four KMK attorneys (Exhibits A-D) who were deposed as fact

witnesses in August 2003, with factual information now in testimony form that was not

previously available.  The plaintiff class respectfully submits that these depositions and the

testimony contained therein (Exhibits E-1 through E-8) show good cause for the Court to

consider this supplemental memorandum and thereby have a complete record before it in

spite of the repeated but frustrated efforts of the plaintiff class to obtain same.

Respectfully Submitted,

Michael G. Brautigam
Gene Mesh (Ohio Bar # 0002076)
GENE MESH AND ASSOCIATES
Attorneys for Plaintiff and the Class
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
Telephone:    513 221 8800
Facsimile:  513 221 1097

## MEMORANDUM

### I.    INTRODUCTION

The plaintiff class respectfully submits this supplemental memorandum in

support of its motion to disqualify KMK.  This Court, in a recent Order stated:

> *The Court does not wish to be seen as attempting to*
> *influence an independent decision by the District Judge,*
> *but it seems to us that because KMK lawyers will*
> *become fact witnesses in the case, by virtue of the fact*
> *that those lawyers assisted in the preparation of the*
> *disputed proxy statement, KMK will either have to*
> *withdraw or be disqualified as counsel, whether or not*
> *the Court permits KMK lawyers and/or the Keating firm*
> *to become defendants. Since this scenario is likely to*
> *occur, in our view, we see no legitimate reason to delay*
> *discovery any longer.*

Order (Doc. No. 167) at 2. (emphasis added).

Since that Order and after extensive maneuvers in which KMK sought to

obstruct such discovery at all costs and to rewrite the above Order, counsel for the

class succeeded after years of dilatory tactics by KMK in taking the depositions of

four KMK attorneys who assisted and directed the drafting, planning, compilation and

completion of the materially false and misleading Proxy Materials/Registration

Statement which induced the fraudulent and illegal approval of the Provident-OHSL

merger which is the subject of this litigation:

- ♦ John Winstead (19 August 2003)

- ♦ F. Mark Reuter (20 August 2003)

- ♦ Timothy B. Matthews, (21 August 2003)

- ♦ Mark Weiss (22 August 2003 [not yet completed])

The record is now clear that two watershed events have occurred and are now

reflected in sworn testimony, which further supports the position of the class:

> **1.** KMK attorneys participated heavily in the planning, drafting, re-drafting
> and discussions related to the content of the materially false and misleading
> Proxy Materials/Registration Statement now the subject of this litigation; and

> **2.** KMK attorneys now numbering thirteen (13) have actively represented
> various defendants at various times and contemporaneously over the last four
> years, deliberately inserting themselves into an irreconcilable conflict. (*See*,
> Chart, attached as Exhibit F).

While KMK attorneys and Dinsmore attorneys "jointly" objected to almost 300

deposition questions and directed witnesses not to answer in almost 50 instances during the

questioning of four KMK attorneys (as to public documents which are in the public domain

and which is the subject of this litigation which these very attorneys co-authored), the

plaintiff class was able to adduce irrebuttable factual testimony in spite of this "quagmire[1]." (*See*, Exhibits E-1 to E-8, attached), which contains references to the text of depositions and which are divided into the two categories of proof set out above in Section I hereof for quick and easy reference.

II.    **LEGAL ARGUMENT**

    A. <u>Motion to Disqualify Standard (Which Has Been Met in This Case)</u>

    A court has wide discretion in the exercise of its duty to supervise members of the bar appearing before it. <u>Royal Indem. Co. v. J.C. Penney Co.</u> (1986), 27 Ohio St.3d 31, 501 N.E.2d 617. A motion to disqualify is the proper method for a party to bring an issue of alleged conflict of interest or an alleged breach of an ethical duty to the court's attention. <u>Reed Elsevier, Inc. v. The Law Net Corp.</u>, 197 F. Supp.2d 1025, 1027 (S.D. Ohio 2002) citing <u>Musicus v. Westinghouse Elec. Corp.</u>, 621 F.2d 742, 744 (5th Cir. 1980). However, since a motion to disqualify is a potent weapon against one's opponent, courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain counsel of his choice. <u>General Mill Supply Co. v. SCA Services, Inc.</u>, 697 F.2d 704, 711 (6th Cir. 1982).

    In deciding whether counsel should be disqualified, the Court is required to balance several competing interests. The district court must exercise its judgment with an eye toward "upholding the highest ethical standards of the profession, protecting the interest of the litigants in being represented by the attorneys of their choosing, protecting the loyalty and

---

[1] The depositions often confused the ridiculous with the sublime, since in many cases, two different camps of KMK attorneys were objecting to a question for different reasons. In some cases, the chorus of objections was raised by a third KMK attorney—the witness—who sometimes, *sua sponte*, objected to questions on various grounds. This charade has made a travesty of the discovery process, as the obstructionist tactics of KMK as a firm intend, and which the record clearly portrays.

confidences of [clients], and the overriding societal interests in the integrity of the judicial process." <u>Bartech Indus. V. Int'l Baking Co.</u>, 910 F. Supp. 388, 392 (E.D. Tenn. 1006). The ethical standards by which federal courts measure an attorney's professional conduct are standards defined by federal law. <u>Kitchen v. Aristech Chemical</u>, 769 F. Supp. 254, 256-57 (S.D. Ohio 1991). S. D. Ohio Local Rule 83.4(F) provides that the Model Federal Rules of Disciplinary Enforcement govern the supervision of attorney conduct for those admitted to practice before the Southern District as well as those admitted for a particular proceeding. In turn, Rule IV of the Model Federal Rules of Disciplinary Enforcement sets forth the standards for professional conduct, adopting the Code of Professional Responsibility for the highest state court in which each district court sits. <u>Id.</u>

The court need not hold an evidentiary hearing in order to disqualify counsel, but it must satisfy itself that an adequate evidentiary record exists, permitting later appellate review. <u>General Mill Supply Co. v. SCA Servs., Inc.</u>, 697 F.2d 704, 710 (6th Cir. 1982). The Court is again directed to Exhibits E1 to E-8, which contains the additional and sufficient factual record for disqualification and points the Court to they key testimony in each KMK attorney's deposition in full text. (Exhibits A, B, C, and D.) In this case, the plaintiff class has additionally and respectfully requested that the Court hold an evidentiary hearing, because such a hearing—resulting in findings of fact and conclusions of law—is the most efficient way to bring the issues before the Court into sharp relief. Live testimony from some of the defendants that KMK claims to represent—who do not know that they are defendants in the action and are unaware of KMK's representation--will show the Court beyond all doubt that KMK's continued participation in the case as defense counsel was and is entirely improper.

Here, KMK should not be permitted to continue its joint and concurrent representation of the multiple camps of mutually antagonistic Defendants in this case for three main reasons. First, all of the Defendants in this action possess conflicting and contrary interests. Second, KMK is going to be serving in the conflicting roles of advocate and witness. Finally, multiple representation of the Defendants severely limits the Plaintiff's settlement strategies and unnecessarily confuses the jury.

**B.    KMK Should Be Disqualified Because KMK Cannot Exercise Independent Professional Judgment on Behalf of All of the Defendants it Currently Represents.**

The most common basis for trial disqualification of an attorney is the risk of a tainted trial due to an actual or potential conflict of interest. Glueck v. Jonathan Logan, Inc. (C.A. 1981), 653 F.2d 746, 748[2]. The Code of Professional Responsibility specifically proscribes the representation of conflicting interests, in order to remove any impediment to counsel's fiduciary obligations to maintain undivided loyalty, to preserve attorney-client confidentiality, and to assure each client competent representation. State v. Bryant (October 18, 1985), Lucas Ct. App., Case No. 8861 at 14. As a result, the Code of Professional Responsibility devotes several disciplinary rules and ethical considerations to the inherent pitfalls associated with multiple representation of clients.

First, Canon 5 requires that an attorney exercise independent professional judgment on behalf of his client. Disciplinary Rule 5-105(A) specifically prohibits employment which may adversely affect an attorney's "independent professional judgment" on behalf of another client. Id. DR 5-105(C) states that:

---

[2] This concept, and the problems associated with it, is more particularly discussed in "Conflicts of Interest in Multiple-Party Representation, " CBA Reporter, Harry J. Fink, IV, Esq. (March 2003) at page 10, previously attached to the opening motion of the plaintiff class.

> "An attorney can represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

Id. However, DR 5-105(B) provides that:

> "A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under Model Code of Professional Responsibility DR 5-105(C).

Id. In sum, an attorney should never represent in litigation multiple clients with differing interests. Office of Disciplinary Counsel v. Mazer (1999), 86 Ohio St.3d 185, 712 N.E.2d 1246. Further, there are few situations in which an attorney would be justified in representing in litigation multiple clients with potentially differing interests. Id. citing EC 5-15.

In Mazer, the Board of Commissioners on Grievances and Discipline of the Supreme Court suspended respondent attorney from the practice of law for six months, with the suspension stayed, for violating several disciplinary rules including DR 5-105. Respondent was found guilty of continuing multiple employment where his independent professional judgment on behalf of a client was likely to be adversely affected by his multiple representation of clients. The reviewing court affirmed, but held that a more severe sanction was warranted since the attorney knew in advance that he would be representing clients with conflicting interests, and that it was far from obvious that he could adequately represent both clients' interests as required by DR 5-105(B) and (C). Id. at 187-188. Regardless of whether respondent's conduct created an actual conflict of interest, it created a potential conflict of interest, which was sufficient to violate DR 5-105(B). Id. at 188. This has been the position of the plaintiff class since the outset of the litigation.

Second, Canon 9 of the Code of Professional Responsibility states "a lawyer should avoid even the appearance of professional impropriety." In fact, the appearance of impropriety can be so strong and egregious in some cases that nothing can be done to overcome it, such that it can be the basis for disqualification. <u>Kala v. Aluminum Smelting and Refining Company, Inc.</u> (1997), 81 Ohio St.3d 1, 31-32, 688 N.E.2d 258. In <u>Kala</u>, the plaintiff employee's counsel joined the law firm of employer's counsel. Although "Chinese Walls" were put into place, the Ohio Supreme Court affirmed the Court of Appeals decision that the appearance of impropriety was too great to overcome, and upheld the motion to disqualify plaintiff's counsel. <u>Id.</u>

Third, multiple representation of clients triggers several ethical considerations. EC 5-1 provides for loyalty to a client and states as follows:

> The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither personal interests, the interests of other client, nor the desires of third persons should be permitted to dilute his loyalty to his client.

<u>Id.</u> Further, although the Code does not specifically refer to "conflicting" interests, this issue is described in Ethical Consideration 5-14. EC 5-14 provides as follows:

> EC 5-14 Conflicting Interests Between Clients
>
> "Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, or otherwise discordant."

<u>Id.</u> Similarly, EC 5-15 provides as follows:

> EC 5-15 Actual and Potential Differing Interests

"If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing requests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. <u>A lawyer should never represent in litigation multiple clients with different interests</u>. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of hardship on the client; and for this reason it is preferable that he refuse the employment initially. On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interest in matters not involving litigation. If the interests vary only slightly, it is generally likely that the lawyer will not be subjected to an adverse influence and that he can retain his independent judgment on behalf of each client; and if the interests become differing, withdrawal is less likely to have a disruptive effect upon the causes of his clients."

<u>Id.</u>

In <u>Yates v. Applied Performance Techs, Inc.</u> 209 F.R.D. 143, McConnell, the former vice president of Applied Performance Technologies, Inc. (hereinafter "APT") was forced to resign and began working for a competitor Integrity Tech (hereinafter "IT"). Soon thereafter, other employees of APT also began working for IT. <u>Id.</u> at 145. This spurned three related putative class action suits. In the first, <u>Yates v. Applied Performance Technologies, Inc.</u>, plaintiffs, the former computer consultants for APT sued their former employer, its current vice president, and the sole shareholder for overtime pay. <u>Id.</u> at 144. In the second, <u>Dicks v. Applied Technologies, Inc.</u>, plaintiffs, the former computer consultants for APT, sued their former employer, current vice president and sole shareholder for overtime pay. <u>Id.</u> In the third action, <u>Yates v. Lucent Technologies, Inc.</u>, APT computer consultants sued Lucent Technologies, Inc. (hereinafter "Lucent") for overtime pay since Lucent was liable as a joint employer. <u>Id.</u> After the lawsuit was filed, Lucent filed a third party complaint against APT, the current vice president, the sole shareholder, and McConnell for indemnification. <u>Id.</u>

McConnell, and the plaintiffs in <u>Yates</u> and <u>Dicks</u>, had the same counsel representing them. Defendants in <u>Yates</u> and <u>Dicks</u> moved for an order disqualifying plaintiff's counsel in both of those actions because of the conflict of interest inherent between these clients. <u>Id.</u> at 149. Defendants argued that but for the fact that the McConnell was his client, McConnell would have also been included as a defendant in their cases since he was the officer primarily responsible for reviewing and approving payroll. <u>Id.</u>  Further, the defendants in <u>Yates</u> and <u>Dick</u> contended that plaintiff's counsel was embarking on this litigation as part of an "economic vendetta" to ruin APT and bolster its competitor IT. <u>Id.</u> at 150. KMK has similarly referred to the Thiemann litigation as frivolous and a nuisance as they continued to represent Provident (and bill millions of dollars) and as they continued to represent Provident, OHSL, and the directors of both companies, and KMK, in addition to having written the document on behalf of both buyer and seller.

This Court considered Canons 5 and 9, and the relevant ethical considerations listed above, and held that the third party complaint against McConnell placed plaintiff's counsel in an untenable situation. <u>Id.</u> at 152. This Court stated that not only could plaintiff's counsel not enter an appearance on behalf of McConnell, but the mere fact that McConnell had been named as a third party defendant presented an unavoidable conflict of interest for plaintiff's counsel since multiple representation compromised plaintiff's counsel's duty to give undivided loyalty, and independent professional judgment on behalf of his putative class member plaintiffs. <u>Id.</u> Further, this Court added that the multiple representation (as at bar) placed plaintiff's counsel's firm in the position of being able to use privileged information through its relationship with McConnell for the benefit of the plaintiff class members, and created the awkward and troublesome situation that plaintiff's counsel could be forced to

cross-examine McConnell on their behalf. Id. As a result, without even initially considering the issue of whether or not plaintiff's counsel was using this action as a tool of retaliation against APT, this Court found that it was required to grant the motion to disqualify. Id. Despite the plaintiff's strong right to their choice of counsel, this Court found that the conflict of interest inherent in this multiple representation significantly impaired plaintiff's ability to adequately represent the interests of its clients and greatly undermined this Court's confidence in the firm's ability to adequately represent the interests of the putative class members. Id.

In the present case, KMK should be disqualified based upon the above listed canons, disciplinary rules and ethical considerations, and common sense. It is simply unreasonable to have thirteen KMK linked to the case, with many of them to be witnesses at trial. The Defendants' interests are not aligned, except to the extent that they all would like to see Plaintiffs' claims be dismissed. Even if Defendants *arguendo* may have waived their objections to multiple representation in this case[3], there are inherent conflicts of interest in this multiple representation which significantly impair KMK's ability to adequately represent all of the Defendants' interest in this case. Multiple representation has impaired KMK's independent professional judgment, and it is highly unlikely KMK can represent all of the Defendants concurrently with equal vigor without conflict of loyalties and without using confidential information to the detriment of other Defendants. They cannot convert their tainted authorship of the materially false and misleading Proxy Material/Registration Statement into a pristine relationship of legal representation of the many, mutually antagonistic camps of defendants at this juncture.

---

[3] The plaintiff class respectfully submits that the interlocking web of conflicts is so severe and so pervasive that they are not waivable.

This has been borne out by the recent depositions of KMK attorneys, whose testimony have been attached in full text as Exhibits A, B, C, and D and in reference form in Exhibit E-1 through E-8 whereat the plaintiff class, for ease of reference, have referred the Court to pages of the depositions that substantiate the alleged "conflict and "co-authorship" of the operative document upon which this litigation is based. Further, even if KMK's multiple representation has not created an actual conflict of interest—which it has--it has created a potential conflict of interest that is sufficient to violate DR 5-105(B), and definitely an appearance of impropriety. Counsel v. Mazer (1999), 86 Ohio St.3d 185, 712 N.E.2d 246 citing Kentucky Bar Assn. v. Roberts (Ky. 1979), 579 S.W.2d 107, 109. If KMK was truly unaware of these potential conflicts before undertaking this multiple representation, it should be patently clear now. Consequently, although such a withdrawal of representation may initially cause the type of hardship which the disciplinary rules try to avoid by initially prohibiting multiple representation of defendants, this hardship must be endured for it will not as great as the potential prejudice the individual Defendants will incur if they each do not have their own loyal and properly motivated counsel[4].

Thus, for the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion to Disqualify Defense Counsel from Continued Representation of All Defendants in this case based upon defense counsel's representation of multiple clients with conflicting interests in this case.

---

[4] This hardship, if any, will be minimized by the fact that no trial date has been set, and that all of the defendants currently represented by KMK have retained other counsel in the separate, though related *Meier* action, Case No. C-1-02-613 (United States District Court, S.D. Ohio).

**C.**    **Defense Counsel Should be Disqualified Because Counsel Will be Acting in the Dual Role of Advocate and Witness; KMK Attorneys Have Also Been Designated as Witnesses By The Dinsmore Defendants, Their Co-Authors of the Operative Document**

It is well settled that the role of attorney and witness are incompatible. Morgan Engineering v. Cascade Oil Company, et al., 1982 U.S. Dist. LEXIS 16055 (N.D. OH 1982). The reasons for this incompatibility are set forth in EC 5-9, which provides as follows:

E 5-9  Incompatible Roles of Advocate and Witness

"Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of a lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of witness is to state the facts objectively."

Id. Although EC 5-10[5] sets forth the circumstances in which counsel may simultaneously serve as an advocate and witness, the circumstances must be extraordinary and the general

---

[5] EC 5-10 provides as follows: Problems incident to the lawyer-witness relationship arise at different stages; they relate either to whether a lawyer should accept employment or should withdraw from employment. Regardless of when the problem arises, his decision is to be governed by the same basic considerations. It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue. In the exceptional situation where it will be manifestly unfair to the client for the lawyer to refuse employment or to withdraw when he will likely be a witness on a contested issue, he may serve as advocate even though he may be a witness. In making such decision, he should determine the personal or financial sacrifice of the client that may result from his refusal of employment or withdrawal therefrom, the materiality of his testimony, and the effectiveness of his representation in view of his personal involvement. In weighing these facts, it should be clear that refusal or withdrawal will impose an unreasonable hardship upon the client before the lawyer accepts or continues the employment. Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate."

preference is still toward having the attorney withdraw as counsel. These exceptional circumstances are not present in the instant case.

There are two basic situations which require disqualification because of the possibility of the attorney becoming a witness. The first occurs when disciplinary rules DR 5-101(B) or DR 5-102(A) are triggered. DR 5-101(B) provides as follows:

> A lawyer shall not accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or a lawyer in the defendants firm ought to be called as a witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in the firm may testify:
>
> (1) If the testimony will relate solely to an uncontested matter.
>
> (2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial testimony will be offered in opposition to the testimony.
>
> (3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the firm as counsel in the particular case.
>
> (4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case.

Id. DR 5-102(A) provides as follows:

> (A)    If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).

Id.   In other words, the test for disqualification under DR 5-102(A) and DR 5-101(B) is whether or not the attorney "ought" to be called as a witness "on behalf of his client." Morgan Engineering v. Cascade Oil Company, et al. , 1982 U.S. Dist. LEXIS 16055 (N.D. OH 1982) at 9.  If this is the case, continued representation is inappropriate if none of the

four exceptions of DR 5-101(B) apply.  Other factors to consider when making this decision are: will the attorney be called to testify as to admissible matters, the necessity of the attorney's proposed testimony, and the stated intention not to call its attorney as a witness. Id. at 9-11.  The last factor is important because the courts are reluctant to upset a party's choice of counsel[6].  Id. at 11.  However, a court will override an expressed intention if there is a convincing showing by the moving party of a real and substantial harm to the acquiescing party's interests. Id. at 12 citing Melamed v. ITT Continental Baking Co., 592 F.2d 290, 293 (6th Cir. 1979).

In the present case, KMK "ought" to call certain Defendants as witnesses "on behalf of their own client" in this case and the Defendants "ought" to call KMK attorneys. Although KMK claims that they do not intend to call any attorney from KMK as witnesses in this case, it is difficult to imagine that such a decision is sincere.  It is yet another example of how KMK's professional judgment is affected by the need to protect itself as an actual and potential defendant[7].

The plaintiff class most certainly will call KMK attorneys as witnesses and have already produced relevant testimony in four days of depositions.  It is likely, judging by their designation of these four KMK attorneys as trial witnesses, that the Dinsmore defendants will also seek to call several KMK attorneys.  Further, the rule does not state "must" be called, or "will" be called, but rather "ought" to be called as a witness.  At bar, the Court has concluded

---

[6] This factor is especially suspect, since at least several of the OHSL individual defendants appear to be unaware that they are defendants in the litigation and that KMK is representing them.

[7] In previous filings, KMK has falsely claimed that the decision not to designate any KMK attorneys as witnesses was made by their clients.  This statement was proved to be false at the deposition of various KMK clients, who were not even aware of KMK's representation, and had not had an informed  participation in the selection and non-selection of trial witnesses.

that KMK attorneys will be called as witnesses. It would be nearly impossible for KMK not to call certain KMK attorneys as witness in this case given his role in the allegations of the Complaint. KMK attorneys will be called to testify to admissible matters such as the preparation and dissemination of the materially false and misleading Proxy Materials/Registration Statement.

Now that these KMK attorneys have been deposed there is absolutely no doubt that KMK attorneys—as fact witnesses--certainly possesses relevant evidence concerning several of the claims at issue in this case, and this testimony would not be cumulative or corroborative of other testimony offered as they claim that their efforts in this regard was a "joint collaborative effort" with the Dinsmore firm (*See*, Exhibits E-1-E-8). Similarly, none of the exceptions apply. These KMK attorneys would be required to testify regarding contested matters, which do not relate solely to matters of formality. Further, defense counsel does not possess the type of distinctive value as counsel which would cause Defendants substantial hardship if KMK was required to withdraw. Indeed, all defendants already have other counsel in the undeniably similar *Meier* litigation, arising out of the same facts and circumstances. Thus, for the foregoing reasons, defense counsel should be disqualified pursuant to DR 5-102(A) and DR 5-101(B).

Second, KMK should also be disqualified on the basis of DR 5-102(B). An attorney should be disqualified under DR 5-102(B) if it becomes obvious that he may be called as a witness on behalf of a party <u>other</u> than his client (i.e. Dinsmore) and it is apparent that this testimony may be prejudicial to his client. DR 5-102(B) provides as follows:

> (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

Id.  Thus, the test for disqualification under DR 5-102(B) is conjunctive. Morgan Engineering v. Cascade Oil Company, et al. , 1982 U.S. Dist. LEXIS 16055 (N.D. OH 1982) at 8.  Testimony is "prejudicial" if it would contradict the factual assertions otherwise made on behalf of the client. Id. citing Rice v. Baron, 456 F. Supp. 1361, 1371 (S.D.N.Y. 1978).

Here, as stated above, Plaintiffs' counsel has made it clear—and the Court has agreed--that KMK attorneys will be fact witnesses at trial.  Although one would think that this alone would be enough to warrant defense counsel's voluntary withdrawal in this case—which the Order essentially invited-- at the very least, this statement meets the first prong of the test.  Plaintiff also meets the second prong of the test for the testimony of KMK attorneys will undoubtedly be prejudicial to at least some of the Defendants that KMK represents.  As stated above, this is true of interests of all the Defendants involved in this case.  Thus, since it is undisputed that Plaintiff class—and the Dinsmore Defendants--intend to call KMK attorneys as witnesses in this case since they co-authored the materially false and misleading Proxy Materials/Registration Statement which is the subject of this litigation, KMK should be disqualified pursuant to DR 5-102(B).

Finally, even if KMK does not feels that this factual situation warrants their withdrawal as counsel in this case, KMK has still failed to comply with Local Rule 43.2[8]. This rule provides as follows:

> "If an attorney anticipates that he or she or a member of the attorney's firm may be required to testify as a witness under circumstances which would not require disqualification as counsel under applicable rules of the Code of Professional Responsibility, such attorney shall immediately notify the Court and opposing counsel in writing and set forth: (1) the issues on which the attorney or a member of the attorney's firm may be required to testify, and (2) a general plan for handling the testimony."

---

[8] Compliance with Local Rule 43.2 is the subject of a pending motion.  (Doc. No.176).

Id. Although Plaintiffs' counsel has sent defense counsel numerous letters reminding KMK that the Plaintiff Class intends to call KMK attorneys as witnesses in this case, and of KMK's obligations under Local Rule 43.2, KMK has yet to comply with this rule, and has no intention of complying absent a Court Order. The only standard for triggering this rule is "may" be required to testify; at bar, it is clear that KMK **will be** required to testify. Based upon the designation of multiple KMK attorneys as trial witnessed by both the Plaintiff Class and the Dinsmore Defendants, it is impossible to argue that this standard has not been met. Such flagrant disregard of the Local Rules of this Court should not pass unnoticed or without consequence, or else they would be rendered a toothless sham.

Thus, for the foregoing reasons, the Plaintiff Class respectfully requests that this Court grant Plaintiff's Motion to Disqualify KMK from Continued Representation of Any Defendants in this Case based upon defense counsel's dual and troubling roles as advocate and witness in this case.

**D.     KMK Should be Disqualified Because Multiple Representation of Defendants Hinders Plaintiffs' Ability to Settle and/or Succeed on Claims at Trial.**

KMK should be disqualified because representation of these mutually antagonistic Defendants in this case harms the Plaintiff Class in that it severely limits the settlement strategies that Plaintiff may want to pursue with respect to each individual Defendant. It defies belief that KMK would be willing to help one defendant reach a settlement with the Plaintiff if that settlement involved a defendant introducing prejudicial testimony regarding KMK or Provident, KMK's premier client. Indeed, this situation has already occurred with a settlement demand made on former OHSL CEO and Board member Kenneth Hanauer. Incredibly, KMK claims that it was able to communicate the settlement demands of the

plaintiff class to Mr. Hanauer, even though that demand would require testimony of defendant Hanauer against KMK clients. Clearly said multiple representation raises the issue of whether and how communications or settlement offers would even reach other defendants if it involved an offer which could be contrary to the interests of KMK and/or KMK's other, more favored clients[9].

There are also other potential problems raised by this multiple representation. First, there is the concern that KMK will use attorney privileges to prevent its factual testimony in this case. In fact, they have done exactly that, as the charade of the four KMK depositions—with the repeated assertion of phantom "privileges" which doubled the time needed to take the depositions and which came into the record as speaking objections, guiding the witnesses' testimony (*See*, Exhibits A-D), makes clear. Second, since KMK as a Defendant is subject to a substantial judgment should Plaintiff's claims prove meritorious, such a result could motivate KMK to misuse the rules of privilege and work product, improperly retain documents, or shift the blame to other Defendants. Third, multiple representation of the Defendants, in conjunction with Defendant White acting as advocate and witness, will certainly create unnecessary confusion and prejudice for the jury, resulting in exactly the "quagmire" that this Court predicted in a prior Order.

III.    **CONCLUSION**

Thus, for the foregoing reasons, the Plaintiff Class respectfully requests that this Court grant the Motion to Disqualify KMK from Continued Representation of Any Defendants and permit this supplemental memorandum to be filed based upon the recently

---

[9] This situation is particularly troubling, since at least several of KMK's clients are apparently unaware that they have been named as defendants in the litigation and that KMK is representing them.

obtained deposition testimony.  As stated in <u>Picker International v. Varian Associates</u>, 670 F.

Supp. 1363, 1987 U.S. Dist.  Lexis 9455 (N.D. OH 1987), "No disqualification is to be

decided lightly.  But in situations of conflict, the presumption is in favor of disqualification."

<u>Id.</u> at 1367.  In the present case, the potential and/or actual conflict in the form of multiple

representation, and the situation of KMK acting in the dual role of advocate and witness

resulting in an inevitable "quagmire," warrant just such a result.


Respectfully Submitted,


Michael G. Brautigam
Gene Mesh
GENE MESH AND ASSOCIATES
Attorneys for Plaintiff and the Class
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
Telephone:     (513) 221 8800
Facsimile:      (513) 221 1097

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Supplemental Filing was

served this 12th day of September 2003 as follows:

**BY HAND DELIVERY**
James E. Burke, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Lou Gilligan, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

**BY FIRST CLASS MAIL**
John Hust, Esq.
SCHROEDER, MAUNDRELL,
        BARBIERE & POWERS
Suite 110, Governor's Knoll
11935 Mason Road
Cincinnati, OH 45249

**Michael G. Brautigam**