**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Walter W. Thiemann,            )
                               )
                               )
            Plaintiff,         )    Case No. C-1-00-793
                               )
      vs.                      )
                               )
                               )
OHSL Financial Corporation,    )
<u>et al.</u>,                 )
                               )
            Defendants.        )

O R D E R

     This matter is before the Court on the following
pleadings: Plaintiff Walter W. Thiemann's Motion to Disqualify
Keating, Meuthing & Klekamp, PLL From Continued Representation of
Any Defendants in This Case (Doc. No. 78), Plaintiff's Proposed
First Amended Complaint (Doc. No. 67), Magistrate Judge Hogan's
Order Denying Plaintiff Leave to File First Amended Complaint
(Doc. No. 110), Plaintiff's Objections to Magistrate Judge
Hogan's Report and Recommendation (Doc. No. 113), Plaintiff's
Motion for Reconsideration (Doc. No. 119), and Plaintiff's Motion
to File Second Amended Complaint (Doc. No. 146).

     This is case is civil securities fraud action in which
Plaintiff Walter W. Thiemann contends that the Defendants issued
materially false and misleading proxy statements in connection
with the 1999 merger between OHSL Financial Corporation ("OHSL")
and Provident Financial Group, Inc. ("PFGI"). Named as
Defendants in the original complaint (Doc. No. 1), which was
filed on September 20, 2000, were OHSL Financial Corporation,

Norbert Brinker, OHSL's Chairman of the Board of Directors,
Kenneth L. Hanauer, a director of OHSL and its Chief Executive
Officer, William Hillebrand, Alvin E. Hucke, Thomas E. McKiernan,
Joseph J. Tenoever, and Howard Zoellner, all individual directors
of OHSL, Provident Financial Group, Inc., Robert Hoverson, PFGI's
president, Jack M. Cook, Thomas D. Grote, Philip R. Myers, Joseph
Steger, and Joseph Pedoto, all directors of PFGI, Christopher J.
Carey, PFGI's chief financial officer, the law firm of Dinsmore &
Shohl, and Clifford Roe, a partner with Dinsmore & Shohl.  The
complaint asserted claims under 15 U.S.C. § 77k, 15 U.S.C. § 77l,
15 U.S.C. § 77o, 15 U.S.C. § 78n(a), SEC Rule 14a-9, and 17
C.F.R. § 240.14a9, 15 U.S.C. § 78j(b), SEC Rule 10b-5, and 17
C.F.R. § 240.10b-5, 15 U.S.C. § 78t(a).  On November 20, 2000,
the Cincinnati law firm of Keating, Meuthing & Klekamp, PLL
("KMK"), filed an answer on behalf of all of the Defendants
except for Dinsmore & Shohl and Clifford Roe.  <u>See</u> Doc. No. 8.

Progress on the case started out smoothly enough.  The
Court entered orders appointing Walter W. Thiemann lead
plaintiff, appointing lead plaintiff's counsel, granting in part
and denying in part a motion to dismiss filed by Defendants, and
certifying a class of plaintiffs.  As is relevant here, in the
order granting in part and denying in part the motion to dismiss,
the Court ruled that a number of allegedly misleading statements
complained of by Plaintiff were not material as a matter of law.

On February 2, 2002, perhaps as a result of some
confusion in Magistrate Judge Hogan's calendar order, Plaintiff

filed without leave of the Court a document captioned First
Amended Class Action Complaint (Doc. No. 67). The First
Complaint substantially reiterated all of the allegations
contained in the original complaint and added state law claims
for spoliation of evidence, common law fraud, and breach of
fiduciary duty. In addition the First Amended Complaint added
Gary and Lisa Meier as named Plaintiffs, added Charles Hertlein,
another partner with Dinsmore & Shohl as a defendant, and added
KMK and Mark Weiss, a partner with KMK, as defendants. The
additions of KMK and Mark Weiss as putative defendants came about
because, according to the proposed First Amended Complaint, KMK
and Weiss prepared, wrote or co-wrote the alleged misleading
proxy materials.

        The First Amended Complaint prompted the filing of a
flurry of motions, the details of which are not particularly
relevant. For the most part, these pleadings were requests to
extend the time to file answers to the First Amended Complaint.
Of real consequence, however, is Plaintiff's motion to disqualify
KMK from representing the OHSL, PFGI, and the individual OHSL and
PFGI defendants. See Doc. No. 78. In this motion, Plaintiff
raises several grounds for disqualifying KMK, but the most
substantial is that, due to its role in preparing the alleged
misleading proxy statement, lawyers from KMK will likely be
witnesses in the case.

        On March 7, 2002, the Court issued an order (Doc. No.
82) clarifying that the filing of Plaintiff's First Amended

Complaint (Doc. No. 67) should be construed as a motion for leave to file a first amended complaint. The Court directed the Clerk of Court to re-docket this pleading to reflect this construction of the pleading.

On August 6, 2002, Magistrate Judge Hogan entered an order (Doc. No. 110) denying Plaintiff leave to file an amended complaint. In denying Plaintiff leave to file an amended complaint, Judge Hogan made several findings. Judge Hogan found that allowing Plaintiff to file an amended complaint adding new claims and parties would result in Defendants having to conduct discovery on new claims in a limited period or a further extension of the discovery period and consequent continuance of the trial date. Either of those occurrences, Judge Hogan found, would result in prejudice to the Defendants. Judge Hogan also found that allowing Plaintiff to reassert allegations which had already been dismissed by the Court would be futile and ultimately would be inefficient. Judge Hogan also found that Plaintiff's proposed spoliation claim was futile because it should have been raised in an earlier state court action.

In response to Judge Hogan's order denying leave to amend, Plaintiff did three things, any one of which is arguably justified. The taking of all three actions, however, inclines the Court to believe that Plaintiff and/or his counsel have vexatiously multiplied the proceedings. First, Plaintiff filed objections to Magistrate Judge Hogan's order. See Doc. No. 113. Under normal circumstances, if there are legitimate grounds for

4

objection, this course of action is entirely acceptable.  Four
days later, before the time had expired for Defendants to file a
memorandum in opposition to Plaintiff's objections, Plaintiff
filed a motion for reconsideration of the order denying leave to
amend the complaint.  <u>See</u> Doc. No. 119.  Then, in a transparent
attempt to avoid the consequences of Judge Hogan's denial of the
motion to amend the complaint, the very next day, August 23,
2002, Plaintiff's counsel filed a lawsuit, captioned <u>Meier v.
OHSL Financial Corporation, et al.</u>, C-1-02-613, with a complaint
that is a virtual carbon copy of Plaintiff's proposed first
amended complaint in this case.  In the <u>Meier</u> case, KMK retained
the law firm of Barrett & Weber to represent it; the OHSL and
PFGI Defendants are represented by the law firm of Graydon, Head
& Ritchey.

        As is relevant for resolution of the present motions,
the next important event occurred on March 7, 2003, when
Plaintiff filed a motion for leave to file a second amended
complaint.  <u>See</u> Doc. No. 146.  The motion to file a second amended
complaint was prompted by PFGI's announcement on March 5, 2003
that it was restating its earnings for the prior five years
because of accounting errors related to auto leasing pools.  The
proposed second amended complaint adds the accounting firm of
Ernst & Young as a defendant to the securities fraud claims
because it allegedly did not audit PFGI's financial statements in
accordance with GAAP and GAAS standards.  Therefore, according to
Plaintiff, Ernst & Young was a party to the alleged material

misrepresentations contained in the 1999 proxy registration statement at issue here.  An complaint identical to this one was filed by Plaintiff's counsel in <u>Meier</u> as a first amended complaint.  <u>See</u> C-1-02-613, Doc. No. 15.  Plaintiffs in <u>Meier</u> then moved to consolidate <u>Meier</u> with <u>Thiemann</u>.  <u>See</u> <u>id.</u> Doc. No. 20.

     The procedural posture of these two cases is now complex and intertwined.  As it currently stands, in <u>Thiemann</u>, KMK, who allegedly participated in drafting the alleged misleading proxy statement, represents all of the principal actors except for the Dinsmore & Shohl defendants.  Plaintiff wants to disqualify KMK, <u>inter alia</u>, because KMK lawyers will be necessary witnesses in the case.  Moreover, it is apparently evident to all that if Plaintiff is permitted to file either its amended complaint or its second amended complaint, KMK will have to withdraw from representation because it may not represent the other Defendants in the same action in which it is also a defendant.  In the meantime, Plaintiff's counsel has instituted a largely duplicative lawsuit based on the same set of facts in which both KMK and the OHSL and PFGI Defendants have retained separate legal counsel to defend.  It would seem that, although <u>Meier</u> is duplicative of the proposed amended complaint in <u>Thiemann</u>, absent any defense which would result in outright dismissal of the claims against it in <u>Meier</u>, at some point KMK will be required to defend the allegation that it participated in drafting an alleged misleading proxy statement.

The logical starting point to break the procedural knot would seem to be whether KMK should be disqualified from representing the OHSL and PFGI Defendants.  If KMK should be disqualified, absent some other circumstances with respect to application of Rule 15(a)[1] or the PSLRA, it would seem that Plaintiffs should be permitted to file their amended complaints in both <u>Thiemann</u> and <u>Meier</u> and that both cases should be consolidated.

At the outset, the Court notes that a motion to disqualify opposing counsel should be viewed with caution because, if granted, it will deprive a party of its chosen attorney.  Moreover, invoking the disciplinary rules to disqualify opposing counsel is an oft-abused litigation tactic.  With these admonitions in mind, the Court proceeds with its analysis.

There are two different but relevant considerations which control the decision here.  The first consideration is that

---

[1]     A recent opinion from the Sixth Circuit indicates that the PSLRA has restricted Rule 15 in so far as the policy toward liberality in allowing amendments to the complaint.  <u>See</u> <u>Miller v. Champion Ent., Inc.</u>, __F.3d__, No. 01-1955, 2003 WL 22298649 (6th Cir. Oct. 8, 2003).  In <u>Miller</u>, however, the plaintiff was having difficulty pleading scienter with sufficient particularity and the Court suggested that, because the purpose of the PSLRA is to reduce or eliminate strike suits against corporations, plaintiffs should not be permitted to make repeated amendments to the complaint.  On the other hand, other courts, while recognizing that the PSLRA has restricted Rule 15, are willing to be more generous where the plaintiff wishes to amend the complaint because of newly-discovered evidence.  <u>See</u> <u>Werner v. Werner</u>, 267 F.3d 288, 297 (3rd Cir. 2001).  This case falls into the latter scenario because the  desire to file an amended complaint was prompted by newly-discovered evidence.

KMK, as a professional organization involved in the preparation of the alleged misleading proxy statements, may be held liable for its actions under the Securities Act.  See 15 U.S.C. § 77k(a)(4); In re BankAmerica Corp. Securities Lit., 78 F. Supp.2d 976, 991 (E.D.Mo. 1999).  The second relevant consideration is the Code of Professional Responsibility, and more specifically DR 5-101(B) and DR 5-102.[2]  DR 5-101(B) provides: "A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness[.]"  This subsection goes on to provide several exceptions to this rule, of which, the only relevant one is that the lawyer may continue representation if his services have distinctive value to the client and hardship will result from disqualification.  See DR 5-101(B)(4).  DR 5-102 provides:

> (A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).
>
> (B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue to do so until it is apparent that his testimony is or may be prejudicial to his client.

---

[2]    According to the Model Rules of Disciplinary Enforcement adopted by the Court, the applicable code of professional responsibility is the one adopted by the highest court of the state in which the district court sits.  The Supreme Court of Ohio has adopted the American Bar Association's Model Code of Professional Responsibility as its code of ethics.

DR 5-102(A) is not implicated because it does not appear that any lawyer from KMK would be called to testify on behalf of KMK's clients in this case.

KMK argues that, given the narrowing of the issues as a result of the Court's decision on the motion to dismiss, there is likely no relevant non-privileged evidence it can provide. Furthermore, KMK contends, to the extent it does possess such evidence, Plaintiff has not shown that the testimony is or may be prejudicial to its clients. Consequently, KMK argues, there are no grounds justifying its disqualification in this case.

The Court notes that KMK does not deny that it played a role in drafting at least a part of the alleged misleading proxy statement. In addition, even though the issues have been narrowed as a result of the Court's earlier decision on the motion to dismiss, KMK does not contend that the portions of the proxy statement which it drafted relate only to the dismissed claims. Therefore, it appears that KMK's participation in the drafting of the proxy statement still has relevance in the case.

The issue presented by Plaintiff's motion to disqualify is this: In a securities fraud case, should a law firm who participated in the preparation of an alleged misleading proxy statement be disqualified from representing the corporate defendants on whose behalf it prepared the statement? In turn, the answer to this question depends on whether KMK, or lawyers from KMK, ought to be called as witnesses in this case. The Court's own research has not uncovered any Sixth Circuit or Ohio

case law directly on point.  As a result, the Court has turned to other sources for guidance, including canvassing the advisory opinions of various states' ethics and disciplinary committees. Again, there seems to be a dearth of commentary directly addressing a lawyer's potential duel role as draftsman and witness.  The information available, however, suggests that where a lawyer has played a role in events giving rise to the lawsuit, he should be disqualified from representing the client at trial because he ought to be a witness.[3]

For example, in Opinion CI-899 the Michigan Standing Committee on Judicial and Professional Ethics addressed whether DR 5-101(B) required a lawyer to withdraw from representing the decedent's estate where the decedent's children contested a will he drafted for the decedent which disinherited the children and bequeathed the decedent's estate to his nurse at the retirement home.  The Committee found that DR 5-101(B) required the lawyer to withdraw from representation because the testimony he would give "relates to the very essence of the contested matter" i.e., the decedent's mental capacity to make such a drastic change in his will.  See Mich. Eth. Op. CI-899, available at, http:// michbar.org/opinions/ethics/numbered_opinions/CI-899.html.

In Opinion CI-678, the question arose whether a lawyer was required to withdraw from representing his client in a lawsuit arising out of a car accident in which the lawyer was

---

[3]    Most of the advisory boards seem to believe, however, that even if the lawyer should be disqualified as a trial advocate, he may still participate in all pre-trial activities.

rear-ended by another car at a traffic light while driving his client in the client's car.  The Committee stated that even if fault were not a issue at trial, DR 5-101(B) still required the lawyer to withdraw because he might be required to testify about the nature and extent of his client's injuries as a result of the accident.  The Committee further cautioned that:

> The whole tone of the facts suggests that there will be an appearance of professional impropriety in the proceedings contrary to Canon 9 of the Code of Professional Responsibility.  The lawyer may decide that there is no likelihood that he or she will called as a witness or brought in as a third party defendant. But the fact of the lawyer's intimate relationship to the accident colors the appearance of the lawyer's relationship to the case.  This suggestion of professional impropriety alone should militate against the lawyer representing the client in litigation arising out of the automobile accident.

See Mich Eth. Op. CI-678, available at, http://michbar.org/ opinions/ethics/numbered_opinions/CI-678.html (emphasis added).[4]

In Oklahoma Advisory Opinion 280, the following question arose: Under what circumstances may a lawyer who performed legal services in connection with the preparation of an estate plan and related documents accept employment in contemplated or pending litigation involving the validity of such documents and arrangements, when it is likely that he or a lawyer in his firm may be called as a witness?  In answering the question, the Committee relied on ABA Formal Opinion No. 220,

---

[4]    Canon 9 states that "A lawyer should avoid even the appearance of professional impropriety."

which states, that unless a lawyer would be required to attack

his own testimony or that his partner, he could accept employment

in a case in which his partner was required to be a witness:

> The question frequently arises in connection with cases
> like that here propounded.  In such cases, the lawyer
> for the decedent has prepared all the papers, knew the
> decedent, and knew exactly why he did what he did.  His
> firm, however, naturally represents the decedent's
> estate, which properly relies on them to sustain the
> gift.  By reason of their knowledge of the decedent's
> affairs they are peculiarly qualified to do so, and
> unless they can do so the estate will be deprived of
> their valuable services.
>
> In such cases there does not appear to be any
> impropriety in the lawyer who drew the papers and knew
> the testator testifying to facts surrounding the
> execution of the deed of gift, and his partner
> representing the estate to sustain it.

Ok. Ad. Op. 280, 1974 WL 38611, at *9-*10 (June 22, 1974).  The

Committee further cautioned, however, that:

> any lawyer relying on the exception [in DR 5-101(B)(4)]
> . . . bears a heavy burden of justification for his
> decision to serve both as witness and advocate, and in
> most circumstances doubts should be resolved in favor
> of the lawyer testifying and against his continuing as
> an advocate.

Id. at *10; but see Tex. Eth. Op. 439, 1987 WL 109869, at *1

(June 1987) (under same facts, both lawyer and his firm must

withdraw from employment).

In Ethics Opinion 93-6, issued by the Nebraska State

Bar Association, Lawyer B of a two-lawyer law firm performed most

of the work in negotiating a lease for the firm.  A dispute later

arose with the landlord over the terms and conditions of the

lease.  Lawyer A represented the law firm in the resulting

lawsuit but there was a possibility that he would be called as a

witness as well.  Under those circumstances, the committee
determined that Lawyer A was not required to withdraw from
representation on the grounds that in representing his own law
firm, Lawyer A had not "accepted employment" under DR 5-101 and
DR 5-102.  <u>See</u> Neb. State Bar Ass'n Eth. Op. 93-6, <u>available at</u>,
http://nebar.com/legalresources/opinions/93-6.html.

      Finally, in <u>United States v. Defazio</u>, 899 F.2d 626 (7th
Cir. 1990), the Court addressed a disqualification situation
which is perhaps most similar to the facts of the present case.
In <u>Defazio</u>, the defendant had been under investigation by the
Internal Revenue Service for several years for income tax
evasion.  In the spring of 1986, the IRS referred the case to the
U.S. Attorney's office for criminal prosecution.  In June 1986,
the defendant filed a petition for bankruptcy under Chapter 11.
In April 1987, the defendant filed a second petition for
bankruptcy under Chapter 7.  The grand jury eventually returned a
superseding indictment which added charges for bankruptcy fraud
which arose from alleged evasive, misleading, and untrue answers
the defendant gave during the bankruptcy proceedings.  The
defendant's attorney at the criminal proceedings also represented
the defendant in the bankruptcy proceedings and had prepared and
submitted petitions to the bankruptcy court on behalf of the
defendant.  At the criminal trial, upon motion of the government,
the district court disqualified the defendant's trial counsel on
the grounds that he was likely to be a material witness.  In
affirming the district court's judgment, the Court of Appeals

endorsed the view the disqualification was required because the
attorney could possibly show that the alleged false information
given to the bankruptcy court came from the defendant.
Furthermore, the attorney was "in a unique position to comment
upon the actual questions and answers elicited" during the
bankruptcy proceedings.  See id. at 630.

       As the Court previously stated, none of the authorities
just cited is on all fours with the facts of this case.
Nonetheless, these opinions all tend to indicate that where a
lawyer was involved or a participant in events which are in
dispute, he cannot represent a client in a lawsuit arising out of
those events, unless he represents himself or his law firm.  If
for no other reason, as the Michigan Standing Committee noted,
continuing representation in such a situation gives rise to the
appearance of impropriety.

       In this particular case, KMK does not dispute that
lawyers from its firm participated in the drafting of the alleged
misleading proxy statement.  Thus, as was the case in Michigan
Opinion CI-678, they have an "intimate relationship" with the
alleged fraud.  Moreover, as was the case in Defazio, it appears
that KMK lawyers ought to explain how and why they made the
alleged misleading statements, what resources they relied on, and
who provided the information forming the basis for those
statements.  See Defazio, 899 F.2d at 931 ("[T]he justice system
has an interest in not having a defense attorney be both an
advocate and witness regarding material issues.").  Therefore,

14

for those reasons, the Court finds that disqualification of KMK as trial counsel would be appropriate in this case under DR 5-101(B).

The only exception to disqualification advanced by KMK is that KMK has represented the Defendants against similar claims advanced by Plaintiff in state court and the clients would suffer hardship if KMK is dismissed. The Court, however, does not believe that KMK's clients will be substantially prejudiced if KMK is disqualified as trial counsel. First, the Court notes that in the Meier action, KMK's clients have retained experienced and able counsel to defend them against the same allegations in this case. Thus, there seems to be no reason that counsel would not be able to perform as ably in this case. Second, many courts take the view that counsel's disqualification from conducting the trial phase of the litigation does not mean that he cannot participate in the proceedings leading up to trial. Culebras Ent. Corp. v. Rivera-Rios, 846 F.2d 94, 100 n.9 (1st Cir. 1988); Siquel v. Allstate Life Ins. Co., 141 F.R.D. 393, 396 (D. Mass. 1992); Moyer v. 1330 Nineteenth Street Corp., 597 F. Supp. 14, 17 (D.D.C. 1984); Brotherhood of Rwy Carmen v. Delpro Co., 549 F. Supp. 780, 789 (D. Del. 1982); Norman Norell, Inc. v. Federated Department Stores, Inc., 450 F. Supp. 127, 130-31 (S.D.N.Y. 1978). Our own Circuit Court of Appeals has not specifically endorsed this position, but in General Mill Supply Co. v. SCA Serv. Inc., 697 F.2d 704 (6th Cir. 1983), the Court did state, even while affirming the district court's decision to disqualify

15

counsel from participation in all proceedings under DR 5-101,
that "[t]here is, however, nothing in the orders appealed from
barring Mr. Garratt from rendering the large assistance that is
in his power to new trial counsel." Id. at 716.  It thus appears
that the Court of Appeals is willingly to give the district court
leeway to allow counsel to participate in pretrial matters if
appropriate in its judgment.  At this juncture, the Court sees no
reason KMK, with the clients' permission, should not be able to
assist the OHSL and PFGI Defendants in pretrial matters such as
conducting discovery and preparing briefs and motions.  This
practice will minimize the hardship to OHSL and PFGI by the
disqualification of their trial counsel.

　　　　At this point, the Court does note that Plaintiff has
raised two arguments that might otherwise call for complete
disqualification of KMK, but which ultimately are without merit.
Plaintiff first contends that a conflict of interest arose
between among KMK's clients because Plaintiff tendered a
settlement offer to Defendant Hanauer, but not to the remaining
defendants.  How this settlement offer creates a conflict of
interest among the defendants the Court is not sure but Plaintiff
claims that his settlement offer creates mutually antagonistic
groups of Defendants because the settlement offer is coupled with
a demand that Mr. Hanauer meet with Plaintiff's counsel.
Plaintiff is transparently attempting to create a conflict of
interest out of thin air.  The Court finds no support for the
proposition that counsel must resign from representing multiple

clients because of the nature of the settlement demand proffered by the other party.  If this were indeed the rule, it would be an easily abused litigation tactic, as appears to be its attempted use here.  Because the alleged conflict arises out of artificial grounds, it places the power to disqualify opposing counsel in the hands of the movant, rather than with the Court.  The only case cited by Plaintiff in support of this argument, <u>Office of Disciplinary Council v. Mazer</u>, 712 N.E.2d 1246 (Ohio 1999), is distinguishable because in <u>Mazer</u> the conflict of interest between clients was not artificial because the clients had differing views on how the assets to be recovered in bankruptcy proceedings should be divided; it did not arise out of unilateral actions taken by opposing counsel.  <u>See</u> <u>id.</u>

Plaintiff also claims that disqualification is warranted because Mr. Burke of KMK violated DR 7-104 by contacting a represented class member, former OHSL director Mr. Thomas Herron.  DR 7-104 provides:

> (A) During the course of his representation of a client a lawyer shall not:
>
> (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Plaintiff claims that Mr. Burke improperly had two contacts with Mr. Herron, once in July 2001 and once in September 2001. Plaintiff's own pleadings, however, show that Mr. Burke could not have violated DR 7-104 in July 2001 because the Court did not

17

certify the class of Plaintiffs until September 14, 2001.

Therefore, Mr. Herron was not represented in this matter in July

2001.  Thus, there was no violation of DR 7-104.  <u>See</u> <u>Kleiner v.</u>

<u>First Nat'l Bank of Atlanta</u>, 751 F.2d 1193, 1207 n.28 (11th Cir.

1985) ("At a minimum, class counsel represents all class members

as soon as a class is certified[.]").  The Court finds no basis

for finding that Mr. Burke knew that Mr. Herron was already

represented in this matter or that he was represented by class

counsel prior to the certification of the class.

Plaintiff does not even describe the nature of the

alleged contact with Mr. Herron in September 2001 except to say

that "this conversation was shorter and did not directly touch on

the Court's Order."  Doc. No. 78, at 9.  Therefore, the Court

does not believe that Plaintiff has even shown that Mr. Burke

communicated with Mr. Herron regarding the subject of this

lawsuit.  In any event, even if such improper contact did occur,

according to the Supreme Court of Ohio, the usual sanction for a

violation of DR 7-104 is a public remand.  <u>See</u> <u>Toledo Bar Ass'n</u>

<u>v. Mansour-Ismail</u>, 711 N.E.2d 223, 225 (Ohio 1999).  Thus, the

Court declines to disqualify KMK for violating DR 7-104, although

Plaintiff is certainly free to pursue this alleged violation

through the local bar association and disciplinary council.

Having resolved the question of disqualification of

KMK, the Court takes up the issue of whether to grant leave to

18

amend the complaint.  Generally, leave to amend should be freely granted when justice so requires.  Fed. R. Civ. P. 15(a). Although the proposed second amended complaint retains allegations which the Court has found do not state claims for relief under the securities laws, additional counts and parties have been added because of newly discovered evidence.  Granting plaintiffs leave to file an amended complaint in class action securities cases subject to the PSLRA because of newly discovered evidence is appropriate.  <u>Goldstein v. MCI WorldCom</u>, 340 F.3d 238, 258 n.7 (5th Cir. 2003).  Magistrate Judge Hogan's justification for denying Plaintiff leave to amend, the press of the trial calendar, was valid at that time, but due to the extended detour this case has taken, is no longer a consideration.  Therefore, the Court will grant Plaintiff leave to file a second amended complaint with the following caveats:

1. Allegations which are based on misrepresentations which the Court has already determined are not material as a matter of law shall be deemed stricken from the second amended complaint.

2. Any new claims for relief are not, by virtue of granting leave to amend, claims on behalf of the entire class, and therefore, subject to motion by Plaintiff, they must be analyzed according to the appropriate class certification procedures.

3. Leave to further amend the complaint shall not be granted.

<u>Conclusion</u>

19

In conclusion, Plaintiff's motion to disqualify KMK as trial counsel for Defendants (Doc. No. 78) is well-taken and is **GRANTED**. KMK may, however, participate in all pretrial matters with the consent of the clients. Plaintiff's motion to file a first amended complaint (Doc. No. 67), objections to Magistrate Judge Hogan's order denying leave to amend (Doc. No. 113), and motion for reconsideration (Doc. No. 119) are **MOOT**. In accordance with limitations stated herein, Plaintiff's motion to file a second amended complaint (Doc. No. 146) is well-taken and is **GRANTED**.

The Court **ORDERS** that this case be consolidated with Meier v. OHSL Financial Corporation, C-1-02-613 for all purposes and that the Meier case be closed. This case is **REMANDED** to Magistrate Judge Hogan to establish a new trial calendar. Once established, the Magistrate Judge should not grant any request for extension of the deadlines therein.

There are also pending a number of discovery-related motions and objections still pending. Within fourteen (14) days of the date of this order, the parties shall file a joint report with the Court indicating which motions are now moot as a result of this order and which motions still require resolution.

No motions for reconsideration of this order will be entertained.

20

**IT IS SO ORDERED.**

Date October 20, 2003          /s Sandra S. Beckwith
                               Sandra S. Beckwith
                                    United States
                                    District Judge