

# KEATING, MUETHING & KLEKAMP, P.L.L.

**ATTORNEYS AT LAW** | 1400 PROVIDENT TOWER • ONE EAST FOURTH STREET • CINCINNATI, OHIO 45202-3752
TEL. (513) 579-8400 • FAX (513) 579-6457 • www.kmklaw.com

JAMES E. BURKE
DIRECT DIAL: (513) 579-6429
FACSIMILE: (513) 579-6457
E-MAIL: JBURKE@KMKLAW.COM

December 2, 2003

Michael G. Brautigam, Esq.
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502

     Re:   <u>Thiemann v. OHSL Financial Corporation</u>

Dear Michael:

     I am in receipt of your letter dated November 26, 2003. Your suggestion that I am asking for "a detailed deposition outline for [my] review and approval," is inaccurate. I am suggesting only that you refrain from covering ground during the depositions of Messrs. Hanauer and Brinker that already has been covered in the numerous days of depositions in the <u>Nolte</u> action. The details and circumstances of Provident/OHSL merger, the proxy statement, and the 1999 shareholders' meeting was covered at length during those depositions. If this is unacceptable, I suggest we schedule a telephone conference with Magistrate Judge Hogan at which time we can discuss and resolve this issue.

     With respect to dates, I know that Rachael Rowe has already corresponded with you regarding Mr. Hanauer's deposition. I met with Norb Brinker at the end of October and discussed your request to take his deposition on a mutually convenient date. At that time he was fine. I spoke with Marilyn Wieland today, however, and she learned that her father was hospitalized about two weeks ago because he was having difficulty walking. The cause is not clear, but it may have been the result of a mild stroke. A lump also was discovered near his lung during the hospital stay. Marilyn advised me that her father now is in a nursing facility undergoing physical therapy and rehabilitation. He is not able to be deposed at this time. His deposition will have to be deferred, until his health improves.

     With respect to Ms. Wieland's deposition, she is on vacation December 11-12, 2003. I am in North Carolina for depositions the week of December 15, 2003 and Ms. Wieland is taking vacation the week between Christmas and New Year. Although Ms. Wieland is willing to appear for a deposition, it appears that we will need to select convenient dates during January, 2004. Please let me know your availability, then.

*Exhibit A*

Michael G. Brautigam, Esq.
December 1, 2003
Page 2

Sincerely yours,

KEATING, MUETHING & KLEKAMP, P.L.L.

By: _____
        James E. Burke

JEB:jlm

cc:     John W. Hust, Esq.
        Michael R. Barrett, Esq.
        John B. Pinney, Esq.
        J. Michael Debbeler, Esq.
        James E. Gauch, Esq

*Via Facsimile*

**Page 1**

```
                                                      1
 1
 2              UNITED STATES DISTRICT COURT
 3            SOUTHERN DISTRICT OF OHIO
 4                 WESTERN DIVISION
 5   - - - - - - - - - - - - - - -  :
 6   WALTER W. THIEMANN, on        :
     behalf of himself and of      :
 7   all others similarly          :
     situated,                     :
 8              Plaintiff,         :
 9        vs.                      :  Case No.C-1-00793
10   OHSL FINANCIAL CORP., et      :
     al.,                          :
11              Defendants.        :
12   - - - - - - - - - - - - - - -  :
13
14        Transcript of proceedings, taken via
15   telephone by, D. Lynn Walden, a Notary Public in and
16   for the State of Ohio, at the offices of Gene Mesh &
17   Associates, 2605 Burnet Avenue, Cincinnati, Ohio, on
18   Tuesday, November 4, 2003, at 10:30 a.m.
19
20
21
22
23
24
```

**Page 2**

```
                                                      2
 1   APPEARANCES:
 2      On behalf of the Plaintiff:
 3         Gene I. Mesh, Esq.
                 and
 4         Michael G. Brautigam, Esq.
           Gene Mesh & Associates
 5         2605 Burnet Avenue
           Cincinnati, Ohio 45219
 6
        On behalf of OHSL and Provident Defendants:
 7
           John B. Pinney, Esq.
 8         Graydon, Head & Ritchey
           1900 Fifth Third Center
 9         511 Walnut Street
           Cincinnati, Ohio 45202
10              and
           James E. Burke, Esq.
11         Keating, Muething & Klekamp
           1400 Provident Tower
12         One East Fourth Street
           Cincinnati, Ohio 45202
13
        On behalf of the Keating, Muething & Klekamp
14      Defendants:
15         Thomas W. Breidenstein, Esq.
           Barrett & Weber
16         105 East Fourth Street
           500 Fourth & Walnut Centre
17         Cincinnati, Ohio 45202
18      On behalf of the Dinsmore Defendants:
19         John W. Nust, Esq.
           Schroeder, Maundrell, Barberie & Powers
20         11935 Mason Road
           Governor's Knoll, Suite 110
21         Cincinnati, Ohio 45249
22      On behalf of the Defendant, Ernst & Young:
23         James E. Gauch, Esq.
           Jones Day
24         51 Louisiana Avenue, N.W.
           Washington, D.C. 20001-2113
```

**Page 3**

```
                                                      3
 1        JUDGE HOGAN:  Looking at Judge Beckwith's
 2   order, as I understand it, she essentially did
 3   three things, disqualified Keating, Muething &
 4   Klekamp, allowed the plaintiffs to file their
 5   motion to amend the complaint, and I'm trying
 6   to remember what the third one was.
 7        MR. BURKE:  Consolidated the two cases.
 8        JUDGE HOGAN:  Right.  Consolidated the
 9   Thiemann case with the Meier case.  That's
10   essentially what happened.  Right?
11        MR. MESH:  Your Honor, this is Gene Mesh.
12   Good morning, sir.  I believe an additional
13   part should be mentioned at this point, to
14   which I would like to speak in opening, and
15   that is that the case was remanded to you to
16   establish a new trial calendar, on page 20 of
17   the order, and we are here today to hope that
18   we can establish a new trial calendar.
19        JUDGE HOGAN:  And the last thing that
20   happened was that she requested, and the
21   parties complied with her request by filing a
22   joint status report indicating what motions
23   are on the table and which are moot and which
24   are debatable.  In looking down the list of
```

**Page 4**

```
                                                      4
 1   motions that the parties agree need to be
 2   decided — and I'm going in a reverse order —
 3   plaintiffs' objections to the magistrate's
 4   order is clearly for Judge Beckwith.
 5        Number three, the plaintiffs' motion to
 6   strike supplemental authority in support of
 7   motions to reconsider class certification may
 8   or may not be for Judge Beckwith.  And I'm
 9   going to have to find out from her whether she
10   wants to resolve the class-related questions or
11   not.
12        Number two, plaintiffs' motion to compel
13   production of expert reports is clearly for me.
14   And one is in the same class as three, the
15   defendants' motion to decertify.  I would think
16   that Judge Beckwith might want to resolve one
17   and three, and certainly will with four.  But
18   the second motion is for -- is mine, and we'll
19   determine that and very quickly, put it that
20   way.
21        What about the motions that plaintiff
22   believes still need to be decided, but the
23   defendants think are moot?
24        MR. BRAUTIGAM:  Well, Your Honor, this is
```

5

Mike Brautigam. Under section C with respect
to the first one, since it's an objection to
your order, that is perhaps for Judge
Beckwith.

JUDGE HOGAN:   Sure, it is. Yes, that is
for sure. I'm talking about the other two.

MR. BRAUTIGAM:   Well, Your Honor, perhaps
those are for you.

JUDGE HOGAN:   Well, there is no doubt
they are for me. But, I mean, are you still
of the same position you were when you filed
this, that these are not moot?

MR. BRAUTIGAM:   Yes, Your Honor.

MR. BURKE:   Your Honor, this is Jim
Burke. One thing that I do want to add is a
clarification to Your Honor's description of
the categories. Obviously page 16 of your
order, the Court has ruled that with the
client's permission, KMK can continue to work
with other counsel for PFGI and OHSL.

JUDGE HOGAN:   Yes.

MR. BURKE:   And so we need to at least
clarify that.

Our point, Your Honor, is that we believe

6

that one and two are practically -- one, two
and three are no longer -- need to be addressed
in view of the Court's order disqualifying KMK,
particularly the first one, in which we try to
deem evidence in connection with the
disqualification.

Number two, which dealt with how we are
going to handle matters if KMK remains as trial
counsel. And number three, which is just a
motion over a letter that was sent to you,
which frankly, I don't even know what relevance
it has any longer. That's our position.

JUDGE HOGAN:   Okay. Well, let me do
this. I will decide all of the motions in
category C with the exception of the one for
Judge Beckwith and the motion to compel that
is part of category one. And I'll speak with
her to see what she wants me to do or she
wants to do in reference to the class-related
questions.

Okay. Now, the next thing is in light of
her reopening the case essentially, I suppose
the next issue would be to set a discovery
cutoff that we originally had months ago. So

7

what needs to be done -- am I right? Do you
agree with that? That the discovery deadline
is the next issue?

MR. BURKE:   Your Honor, I don't think
that's the next issue. This is Jim Burke
again.

JUDGE HOGAN:   Go ahead.

MR. BURKE:   I think the directional issue
that really all things flow from is Meier and
Thiemann now have been consolidated. The
Court has said that certain claims not be
asserted, but they have also given plaintiffs
the right to file an amended complaint. I
think the first thing that has to happen is
they have to file a consolidated amended
complaint that complies with the Court's order
so everybody knows what operative pleading we
are working from.

And I think that a lot of things flow from
that, because there are a lot of moving parts.
There are going to be new parties, new claims.
There will be motions to dismiss. There will
be either a partial or a complete stay of
discovery during the pendency of certain

8

motions to dismiss under the federal securities
laws.

The Court has said that these claims that
have been added are not class claims, so we've
got to provide for some time for discovery
following the disposition of the motion to
dismiss for class certification briefing, and
then we have got discovery deadline after that.
So although I agree with you completely that
there is a discovery deadline that needs to be
established, there are a lot of preliminary
things that I think are going to dictate that
discovery calendar quite a bit.

MR. MESH:   Judge Hogan, if I may speak,
although I don't want to interrupt any of the
defendants' counsels -- Gene Mesh again. We
believe that the second amended complaint that
has been filed by me subsumes all other
complaints, and the case can go forward on
those allegations.

We believe also that discovery should go
forward with a cutoff date, and that motions
can go forward according to the normal course
of events. We will file our class motion

9

1  according to the Rules. The defendants can
2  resist. They can file their motions to
3  dismiss, and we will resist. But this
4  shouldn't hold up the trial date of this case
5  any longer.
6          JUDGE HOGAN:    Do you think the second
7  amended complaint that is already of record
8  complies with Judge Beckwith's order?
9          MR. MESH:    Yes.
10         MR. HUST:    Your Honor, we disagree. This
11 is John Hust. We think her order is pretty
12 clear that they need to file a new complaint.
13 Even going back another step, there is now a
14 pending appeal, plaintiffs' appeal in the
15 Meier case in the Sixth Circuit. I'm not sure
16 exactly what the appeal involves, but half of
17 the consolidated case is on appeal in the
18 Sixth Circuit.
19         MR. PINNEY:    Judge Hogan, this is John
20 Pinney. I think it would be helpful to me and
21 perhaps other defense lawyers to get a sense
22 as to what the plaintiffs' view is as to the
23 status of the Meier first amended complaint
24 that we've filed and the reasons for their

10

1  filing the appeal.
2          MR. BRAUTIGAM:    Your Honor, this is Mike
3  Brautigam. I would like to address that. The
4  Meier first amended complaint essentially
5  disappeared. On page 20 of the October 20th
6  order, the Court orders that the Meier case be
7  closed. So that is the status of the Meier
8  case in our view.
9          Your Honor, we also believe that not only
10 are we not required to file a joint amended
11 consolidated complaint, but that we are not
12 permitted to. The court's language in that
13 same order at the bottom of page 19 talks about
14 the second amended complaint being -- in
15 Thiemann -- being accepted and that's what we
16 were reading the order to mean. So we believe
17 that the second amended complaint in Thiemann
18 was accepted on or about October 20th of this
19 year.
20         And we also would vigorously oppose any
21 stay of discovery. I think it's noteworthy
22 that Judge Beckwith just lifted the stay of
23 discovery a couple of days ago and that,
24 although there is a mandatory stay of discovery

11

1  called for in the Reform Act, there are
2  exceptions for good cause shown. And certainly
3  this is a case that cries out for an exception
4  to be made, for discovery to get on track and
5  for a trial date to be set.
6          MR. HUST:    Your Honor, this is John Hust.
7  If the Meier case is closed, why is there an
8  appeal? I don't think that's been addressed.
9  What does that appeal involve?
10         MR. BRAUTIGAM:    Well, that will be
11 addressed in the Sixth Circuit. We believe
12 that it's a final order. And there's one
13 important distinction that Judge Beckwith may
14 or may not be aware of. The first amended
15 complaint in Meier was substantially different
16 from the second amended complaint in Thiemann
17 in that it involves more detailed allegations
18 against the accounting defendants.
19         MR. PINNEY:    Yeah, that's the reason for
20 filling a new complaint.
21         MR. GAUCH:    Your Honor, if I may address
22 this. This is James Gauch on behalf of Ernst
23 & Young. It seems to me, number one, on the
24 status of Meier, that the Judge closed the

12

1  Meier case because she, in the same sentence,
2  consolidated that with Thiemann. So I am as
3  confused as the other defendants' counsel as
4  to how the appeal on Meier can proceed,
5  because it seems to me they have been
6  consolidated.
7          And while Mr. Brautigam is correct that
8  the Meier complaint is more detailed as to us,
9  it seems to me that Judge Beckwith, in fact,
10 took that into account when, on page 19 of the
11 order she said that she granted leave for
12 plaintiff to file a second amended complaint,
13 not necessarily the one that they proposed, but
14 that they would have the opportunity to clarify
15 what they're claiming as to us.
16         And I would also add that although
17 Mr. Brautigam has repeatedly argued that the
18 Reform Act discovery stay, though it is
19 mandatory, should not apply here, certainly
20 Judge Beckwith did not purport to rule on any
21 exception to that, and that Ernst & Young will
22 file a motion to dismiss and will argue again,
23 as we already have before Your Honor, that
24 pending that motion to dismiss, that there

13

1  should be no discovery partaken, at least
2  certainly not any as to Ernst & Young.
3      MR. BURKE:   Your Honor, the same would be
4  true not just for the new defendants, but also
5  to the extent that brand-new securities claims
6  are being asserted against old defendants,
7  such as Provident and OHSL. They have a whole
8  brand-new set of allegations based upon the
9  accounting restatement that has never been
10  tested by a motion to dismiss, and we have the
11  right to do that.
12      And I don't see how you can just sort of
13  ignore the mandatory stay as remanded by the
14  Private Securities Litigation Reform Act by
15  just sort of saying it shouldn't apply.
16      But it is clear, Your Honor, that the
17  Court on page 19 granted plaintiffs leave to
18  file a second amended complaint, which followed
19  with two caveats, they had to strike
20  allegations which the Court already had found
21  legally insufficient. There are about nine of
22  them in the current version of the amended
23  complaint. And she also said any new claims
24  for relief are not made on behalf of the class

14

1  and must be analyzed by appropriate class
2  certification procedures. So we've got two
3  threshold issues that have to be taken into
4  account before we can even figure out what
5  complaint we're dealing with.
6      MR. BRAUTIGAM:   Your Honor, this is Mike
7  Brautigam. On page 19, numbered paragraph
8  one, the Judge talks about the new allegations
9  that have been previously included shall be
10  deemed stricken from the second amended
11  complaint. That implies to us that the second
12  amended complaint is the operative document.
13      JUDGE HOGAN:   Yes, I agree that you could
14  read this both ways, but it seems to me that
15  to get this case back on track and to make it
16  simple for everybody involved, plaintiffs
17  ought to file a new amended complaint, and I'm
18  going to give you until the end of the year to
19  do it.
20      MR. MESH:   Well, Judge Hogan, I don't
21  ever want to offer any postscript to your
22  decision, which seems to be made, but I should
23  say numerical paragraph three at the bottom of
24  page 19 before the conclusion clearly states,

15

1  leave to further amend the complaint shall not
2  be granted.
3      JUDGE HOGAN:   Okay. Further amend the
4  complaint.
5      MR. BURKE:   Exactly.
6      JUDGE HOGAN:   The decision has been made,
7  you're correct, 12/31/03 is the deadline for
8  filing the new amended complaint in compliance
9  with paragraphs one and two on page 19 of
10  Judge Beckwith's decision.
11      MR. MESH:   Okay. Thank you, Your Honor.
12      JUDGE HOGAN:   What's the next issue?
13      MR. BRAUTIGAM:   Your Honor, we believe
14  that discovery should go forward right now,
15  and that we should be able to move forward in
16  taking depositions and getting documents.
17  Additionally, Your Honor, several of the OHSL
18  defendants are extremely elderly, and we have
19  heard reports that their health has
20  deteriorated in the past couple of years. I
21  have written to Mr. Burke, and I have asked
22  him for some deposition dates. It's only been
23  a couple of days, but I haven't heard back.
24  Anyway, Your Honor, we would like it clear

16

1  that discovery is to proceed forthwith.
2      MR. BURKE:   Your Honor, is that something
3  that we ought to just brief?
4      JUDGE HOGAN:   I hope not, Jim. I want to
5  get this -- what's your position on that?
6      MR. BURKE:   Well, the problem is, Your
7  Honor, I mean, we are -- because of the
8  plaintiffs' desire to, at this point in the
9  game, add entirely new claims and entirely new
10  parties, those parties have certain rights
11  under the Privacy Securities Litigation Reform
12  Act. One of those rights is that they don't
13  have to participate in discovery until the
14  motion to dismiss has been decided.
15      Even if in granting Mr. Brautigam the best
16  case as to old claims and old defendants, maybe
17  you do some limited discovery, the problem is
18  you have got people like Ernst & Young or KMK
19  or other defendants who have the right not to
20  be burdened with discovery until such time as a
21  motion testing the sufficiency of these new
22  claims is decided. That's the law.
23      MR. GAUCH:   And, Your Honor, if I may,
24  that is an issue that you have already decided

17

1  with respect to Ernst & Young when we were a
2  third party and potential defendant. Now that
3  we seem to be approaching being an actual
4  defendant, the analysis of your opinion
5  applies even more so.
6      MR. BRAUTIGAM:   Your Honor, Ernst & Young
7  was added as a defendant in March. They have
8  had a stay for about eight months now. The
9  plaintiffs need to get discovery, get this
10  case on track. The mandatory stay provisions
11  of the Securities Reform Act that Mr. Burke
12  and Mr. Gauch refer to are not absolute. They
13  allow for exceptions to be made if good cause
14  is shown. As I said earlier, this is a case
15  that cries out for good cause.
16      We are talking about events that took
17  place in the summer and fall of 1999. We need
18  to move forward because we are going to run up
19  against a wall with the people I'm deposing,
20  are going to say, Well, I don't remember, if
21  you had asked me a year or two or three years
22  ago, you would have had a shot, but now I don't
23  remember anything. And that has already
24  happened in some cases.

18

1      MR. BURKE:   Part of the problem, Your
2  Honor, just to sort of replow old ground, is
3  the first time we went down this road, the
4  discovery was regarding the pendency of the
5  motion to dismiss. A motion for class
6  certification was filed, and really no
7  discovery was conducted before it was granted,
8  no significant discovery, which caused a lot
9  of problems, which is one of the reasons why
10  we got an appeal in the Sixth Circuit and a
11  motion to reconsider the original class
12  certification.
13      We have just got to make sure that
14  whatever discovery, whatever class
15  certification briefing we do is going to allow
16  sufficient time from the determination of the
17  motion to dismiss, so that nobody is unfairly
18  prejudiced.
19      MR. BRAUTIGAM:   Your Honor, we have a
20  certified class. There is no appeal in the
21  Sixth Circuit. There's a petition for review.
22  The odds of that being granted are greatly
23  against it. With respect to some of the other
24  points that Mr. Burke has said, Mr. Thiemann

19

1  is on this phone conversation. If and when we
2  file a second motion for class certification
3  against some of the new defendants, we will
4  make him available promptly. We will
5  cooperate. We want to move this along.
6      Your Honor, as you know, this case has
7  been subject to virtually nothing but stays.
8  Judge Beckwith has seemingly indicated that she
9  wants to get it on track. A few days ago she
10  lifted the discovery stay. To me that suggests
11  she wants discovery to proceed and the case
12  back on track.
13      MR. HUST:   Your Honor, this is John Hust.
14  It seems to me rather simple. What we really
15  have is a brand-new case. We have additional
16  parties, additional claims, and additional
17  plaintiffs against defendants. I mean, it is
18  as if we are starting over under the Private
19  Securities Litigation Act, and that's the way
20  this case ought to be scheduled.
21      MR. MESH:   Your Honor, this is Gene Mesh.
22  We truly hope that this is not a brand-new
23  case, except as to the new individual
24  defendants that we hope to have a class

20

1  certified against. We believe the Court wants
2  you to set a trial schedule, and that's what
3  we are asking for. Obviously the defendants
4  have the right to ask for further and further
5  delay. We believe it's up to you, Your Honor,
6  to cut this knot and to move the case forward.
7      JUDGE HOGAN:   Let's do this in sequential
8  steps. The motion to dismiss, given that the
9  plaintiffs are going to amend their complaint
10  by 12/31, should be filed no later than
11  January 30th. Let's go beyond that, the memo
12  in op is due on February 16th, and their
13  reply brief is due on February 27th. This
14  is the dispositive motion and will be for
15  Judge Beckwith to decide, but I don't think
16  she would oppose me setting a date for the
17  decision of that motion as April 30th, because
18  that just makes us all be governed by these
19  deadlines and not let this case hang. Now,
20  the only argument in relation to staying
21  discovery relates to Ernst & Young, doesn't
22  it?
23      MR. BURKE:   No, Your Honor. That's what
24  I'm saying here, it relates to -- he has added

21

1  Keating, Muething & Klekamp. He's added Mark
2  Weiss. He's added Chuck Hertlein. They have
3  added new claims against the old defendants
4  arising from the restatement, financial
5  restatement of last fall. There are new
6  claims that — he has added three new claims
7  against — these are new claims against
8  Dinsmore & Shohl. There are brand-new claims
9  in this thing, Your Honor.
10      MR. BRAUTIGAM:   Your Honor, most of the
11  new claims that Mr. Burke refers to go back to
12  the first amended Thiemann complaint from
13  February 4th of 2002.
14      MR. BURKE:   Which has never been granted
15  until now.
16      MR. BRAUTIGAM:   But the point is the
17  defendants certainly had knowledge of these
18  claims, they knew where we were going, and we
19  will suffer a great hardship, Your Honor, if
20  we are not able to move forward, particularly
21  with respect to very elderly gentlemen. I'm
22  talking about the mid eighties.
23      And these people were not fully conversant
24  with the facts of the case when they were

22

1  deposed in some cases, years ago. So, Your
2  Honor, the plaintiffs will be severely
3  prejudiced in a way that they can never be
4  compensated for unless the case moves forward
5  right away.
6      MR. BURKE:   As Mr. Brautigam just
7  indicated, Your Honor, he has already deposed
8  most of these people in this case. He has
9  already deposed all of them between this case
10  and the state case.
11      MR. BRAUTIGAM:   That's not true, Your
12  Honor. Simply not true.
13      JUDGE HOGAN:   Who is left?
14      MR. BRAUTIGAM:   Your Honor, I had filed
15  an emergency motion probably a year or two
16  ago, and you had granted permission for me to
17  file it. To answer your question more
18  directly, Ken Hanauer is left. He has never
19  been deposed in this case. Mr. Brinker has
20  never been deposed in this case. There are
21  several others whose names escape me right
22  now.
23      All of the Provident defendants have never
24  been deposed in any case with one exception,

23

1  Dr. Steger. And Dr. Steger was the chairman of
2  the audit committee, so his name is all over
3  the restatement document that I have already
4  reviewed. I have reviewed more than a hundred
5  thousand pages of documents, Your Honor, just
6  related to the restatement.
7      MR. BURKE:   Your Honor, just to clarify,
8  Mr. Brinker was deposed, I believe, on
9  videotape for two days in a related state
10  court action. Mr. Hanauer was deposed for, I
11  believe, four days in the state court action.
12      Mr. Brautigam is correct, the Provident
13  directors have not been deposed for the most
14  part, although that's not who he is talking
15  about. The elderly gentlemen are the OHSL
16  defendants, every one of whom have been deposed
17  either in the state court action or in this —
18      JUDGE HOGAN:   Well, in any event, let's
19  put it this way, assume just for the moment if
20  discovery is stayed, or arguably should be
21  stayed, it would only be until the motion to
22  dismiss is decided.
23      MR. BURKE:   Correct.
24      JUDGE HOGAN:   Correct?

24

1      MR. HUST:   Correct.
2      JUDGE HOGAN:   There's no rationale for
3  staying it beyond that.
4      MR. BURKE:   That is correct.
5      MR. HUST:   That is correct.
6      MR. BRAUTIGAM:   But, Your Honor, we
7  already been subject to the motions to dismiss
8  and the stay for years it seems. Nothing
9  happened in the case for ten months after it
10  was filed, subject to this same stay.
11      JUDGE HOGAN:   I'm following you, but —
12      MR. BRAUTIGAM:   And, Your Honor, also we
13  believe that we can file a joint consolidated
14  and amended complaint much earlier than
15  December 31st of this year. We would like the
16  dates for them to respond to be relative to
17  when we file the joint consolidated and
18  amended complaint. We think that we can do
19  that by November 15th, Your Honor.
20      JUDGE HOGAN:   Okay. That issue has
21  already gone by the wayside. We're on — I
22  have not made up my mind yet about the stay of
23  discovery, and I might want to talk with Judge
24  Beckwith about that, until April 30. But in

25

1  any event, if it was stayed, it wouldn't be
2  beyond April 30.
3       MR. BURKE:  We agree.
4       JUDGE HOGAN:  That's the only issue
5  that's hanging for the moment.  Now, the next
6  question has to do, I would think, if we're
7  following this rationale through, would be the
8  discovery cutoff.  I suppose you might want to
9  split this between class discovery and
10  nonclass discovery, or do you?
11       MR. BURKE:  We would agree, Your Honor.
12  There ought to be an opportunity to conduct
13  some class discovery before class
14  certification briefing on the new claims.
15       MR. BRAUTIGAM:  Your Honor, we haven't
16  even filed our class certification motion.
17       MR. BURKE:  Do you intend to?  Do you
18  intend to certify the claims?
19       MR. BRAUTIGAM:  We're going to talk to
20  our client and make a decision pursuant to the
21  local rules.
22       JUDGE HOGAN:  We need a class cert filing
23  deadline in the calendar order?
24       MR. BURKE:  That would seem to make

26

1  sense, yes.
2       JUDGE HOGAN:  What do you need?  I mean,
3  that is a question for the plaintiff.
4       MR. BRAUTIGAM:  I think that we need 30
5  days, Your Honor.
6       MR. MESH:  Your Honor, if I may suggest,
7  make it the same date as the filing of the
8  consolidated complaint.
9       JUDGE HOGAN:  The end of the year?
10       MR. MESH:  Yes.
11       JUDGE HOGAN:  Okay.
12       MR. BURKE:  That is fine, Your Honor.
13  The only question that we have to address is
14  if they file a class certification motion then
15  and there is a stay on discovery, we've got to
16  have some time after April 30 to do class
17  certification discovery for purposes of
18  responding to his motion.  There has to be a
19  factual record, we all agree on that.
20       JUDGE HOGAN:  All right.  If the class
21  cert deadline is the end of the year, then how
22  much class discovery do you need?
23       MR. BURKE:  I don't know.  Sixty, ninety
24  days after 4/30.

27

1       MR. BRAUTIGAM:  Your Honor, why do they
2  possibly need that much time?  We'll make
3  Mr. Thiemann available virtually at any time
4  they want to take his deposition.  We'll get
5  whatever documents.  They have already deposed
6  him.  They already have his documents, Your
7  Honor.  That seems like a wildly
8  disproportionate date.
9       MR. BURKE:  What about Mr. Meier, is he
10  still class cert -- class representative?
11       MR. MESH:  Yes.
12       MR. BURKE:  So we will have to depose him
13  and his wife, I guess.
14       MR. BRAUTIGAM:  We'll make them
15  available.  They are in Cincinnati.
16       MR. MESH:  Anybody else that you want to
17  depose in regard to class issues, gentlemen?
18  Let us know.
19       MR. BURKE:  Are you going to be using the
20  same expert witness for damages as you used in
21  Thiemann?
22       MR. MESH:  We may.  Probably.
23       MR. BURKE:  We need to know if your
24  damage theory is going to be different.

28

1       MR. MESH:  You'll know soon enough.
2       JUDGE HOGAN:  Well, is 60 days more
3  workable than 90?
4       MR. MESH:  We'll accept that, Your Honor.
5       MR. BURKE:  Fine, Your Honor.
6       JUDGE HOGAN:  So we're now pushing this
7  through April 30, then we're now at the end of
8  June.  June 30.  Then the general discovery
9  cutoff, which I would think would be next.
10       MR. BURKE:  Yes.
11       JUDGE HOGAN:  What do you think?  I mean,
12  I don't know how much is left.
13       MR. PINNEY:  Judge, this is John Pinney.
14  It seems to be obvious that this is somewhat
15  driven by what claims survive.  There are
16  obviously new defendants with whole new
17  theories as well so, you know, it's not going
18  to be insubstantial.
19       MR. BURKE:  What we need to tie into that
20  general discovery cutoff, whatever it is, Your
21  Honor, is expert disclosure deadlines.
22       JUDGE HOGAN:  I know.  Let's just go
23  forward and get the pretrial trial date and
24  come back and fill in experts.

29

```
 1        MR. BURKE:   Okay.
 2        JUDGE HOGAN:   But what do you think?
 3        MR. MESH:   Well, Your Honor -- Gene Mesh.
 4   Let me suggest 90 days.
 5        MR. BURKE:   From when, Gene?
 6        MR. MESH:   From the time the motion to
 7   dismiss is decided.
 8        MR. BURKE:   You haven't got class
 9   certification discovery ending until June 30,
10   it's got to be after that.
11        MR. GAUCH:   Jim Gauch on behalf of Ernst
12   & Young. We are starting from scratch here.
13   I think that it is a little bit unrealistic to
14   think that you are going to take all of the
15   discovery that you want of us and we will take
16   all of the discovery that we want of you in
17   only 90 days, including documents and
18   depositions, et cetera.
19        MR. BRAUTIGAM:   Your Honor, no discovery
20   is perfect, but we're so disadvantaged because
21   the events took place in 1999. I mean, at
22   some point we have to have a trial date. We
23   have to work hard to stick to it and just get
24   these things done.
```

30

```
 1        JUDGE HOGAN:   You read Judge Beckwith's
 2   order the same as I did. She doesn't want any
 3   more amendments to the calendar order. This
 4   is going to be it.
 5        MR. PINNEY:   That is right.
 6        MR. BURKE:   Which is why we have to be
 7   careful, Your Honor, to make sure that nobody,
 8   such as the newly entering defendants, are
 9   inadvertently prejudiced.
10        MR. HUST:   For example, Your Honor, this
11   is John Hust, a couple of attorneys at
12   Dinsmore & Shohl have already been deposed by
13   the plaintiffs, but they are now new
14   defendants, and may result in a lot of
15   discovery that has been completed will have to
16   be redone.
17        MR. BURKE:   Your Honor, I'll throw out a
18   date, I was thinking of the general discovery
19   cutoff at the end of the year.
20        MR. BRAUTIGAM:   Your Honor, that is way
21   too far out. The plaintiffs really need to
22   move the case. Somebody said earlier in the
23   conversation that this is as though it's a new
24   claim, and everything starts over, and we have
```

31

```
 1   reinvented our claims, or something like that.
 2   That is not true, Your Honor.
 3        With respect to the restatement, that is
 4   one of the simpler issues in this case, that
 5   Provident's financials were materially
 6   misstated. The restatement essentially admits
 7   that. And it's a relatively simple issue to
 8   deal with. We have to balance the need for
 9   speed with appropriate discovery process, which
10   we aren't going to get.
11        And, Your Honor, I think that it was a
12   year ago today that the case was supposed to go
13   to trial for the first time. And it's not our
14   fault that we have found new evidence, and it's
15   not our fault that we have amended the
16   complaint to protect the rights of the class
17   members that we represent.
18        MR. BURKE:   It is a fact, Mike, that
19   having done that, we have got to address the
20   new action as it is.
21        MR. BRAUTIGAM:   Your Honor, we did some
22   of that in February of 2002, and the rest of
23   that in March of 2003. So for them to come in
24   on this conversation and say, Oh, this is
```

32

```
 1   completely new, when they have had our various
 2   complaints for eight months is simply not
 3   correct.
 4        JUDGE HOGAN:   How about by the end of
 5   October, October 29th, '04, for general
 6   discovery to terminate?
 7        MR. MESH:   That is fine, Judge Hogan.
 8        JUDGE HOGAN:   Now, the next thing would
 9   be dispositive motions, and Judge Beckwith
10   wants two months after that, by her typical
11   calendar order. How about the end of the year
12   for dispositive motions. She wants a
13   four-month period for the pretrial, and she
14   set it, so it would be in April of '05. And
15   I'm just going by her general calendar order,
16   and then the trial would be the next month.
17        MR. BURKE:   And we would do the expert
18   disclosure tied to the final pretrial date
19   then?
20        JUDGE HOGAN:   Well, I would say you just
21   want to deal with experts within the general
22   discovery frame work.
23        MR. BURKE:   What we can do, Your Honor --
24   well, that's probably not -- yeah, maybe --
```

33

1  maybe go back a few months before the general
2  discovery cutoff for disclosure and allow
3  expert discovery through 11/29, through the
4  end of November, which still wouldn't affect
5  your dispositive motion deadline.
6       JUDGE HOGAN:   I'm fine with that, if the
7  plaintiffs are.
8       MR. MESH:   I don't know that we have any
9  choice at this point, Your Honor, and that's
10  not meant to criticize anybody.  But we can
11  see the handwriting on the wall here.  Do the
12  best that you can.  Gene Mesh.
13       MR. PINNEY:   That makes some sense, Your
14  Honor, it gives us a month to do all of the
15  experts.
16       MR. BURKE:   Then we'll still keep the
17  same dispositive motion.
18       JUDGE HOGAN:   Yes.  So you want the end
19  of November.
20       MR. BURKE:   Expert discovery deadline.
21       JUDGE HOGAN:   11/30 for expert discovery.
22       MR. BRAUTIGAM:   Which year are we talking
23  about, Your Honor?
24       JUDGE HOGAN:   '04.

34

1       MR. MESH:   If I may add a little bit of
2  humor, the plaintiffs have missed the mark by
3  about 13 months so far.  But we are willing to
4  be flexible.
5       JUDGE HOGAN:   Is there anything else in
6  here that I have missed?  How about
7  designation of experts and identification of
8  experts?
9       MR. BRAUTIGAM:   Your Honor, I think that
10  we did that a year or two ago.  We may have to
11  add an accounting expert, but we actually
12  prepared and served on the defense expert
13  reports, as per the then existing amended
14  calendar order.  So we can do that at any time
15  really.
16       MR. BURKE:   As long -- if you want to do
17  that, Mike, that's fine.  If you want to
18  change your experts in any way to address the
19  new allegations, that's fine too.  I think
20  that he just wants to set a date.  Which maybe
21  could be, I'm thinking of the discovery
22  deadline of 11/30, maybe plaintiff's experts
23  by 8/30, our experts by 9/30.
24       MR. BRAUTIGAM:   Your Honor, we just want

35

1  it to be as soon as humanly possible.
2       MR. BURKE:   We have got to figure out
3  what claims are going to be alive at that
4  time, Mike, that's our only point.
5       JUDGE HOGAN:   I imagine that this is
6  mostly done anyway, but I'm just trying to
7  revise this to make it comprehensive.  If we
8  have a plaintiff expert deadline of 8/30 and
9  the defendants by 9/30, that's within the
10  expert discovery frame work.
11       MR. BURKE:   And we have got two months
12  then to complete their depositions, if
13  necessary.
14       JUDGE HOGAN:   And I would tell you, that
15  I know how Judge Beckwith operates, and she is
16  very particular about the dispositive motion
17  deadline.  If I can move anything around shy
18  of that to accommodate you, I will, because
19  she doesn't care.  The only thing that she
20  cares about is that dispositive motion cutoff,
21  because that is her work and that messes her
22  up if those things are extended beyond that.
23  But shy of that, I'll move things around to
24  keep the case moving.  Okay?

36

1       MR. MESH:   All right, Judge.
2       JUDGE HOGAN:   Let me just recap, I'm
3  going to talk to her about the class-related
4  issues, which she may want to decide, and if
5  she doesn't want to do that, I'll do that.
6  And I'll also talk to her about what her
7  thoughts are about staying the discovery until
8  the motion to dismiss is decided.  So before
9  the calendar order goes out, we'll address who
10  is going to do what, so that's clear.  I'm
11  going to add that to the calendar order, sort
12  of reply to your status report and indicate
13  who is going to do what.
14       MR. BRAUTIGAM:   So, Your Honor, if I
15  understand this correctly, your calendar order
16  will include whether or not there is a stay of
17  discovery.  Is that correct?
18       JUDGE HOGAN:   That is right.  It's also,
19  Mike, going to describe, in accordance with
20  your status report, the pending motions that
21  are on record, who's going to do them.  All
22  right?  So there is no more chaos to this
23  case.  I hope.  All right?
24       MR. BRAUTIGAM:   Yes, Your Honor.  Thank

37

1    you.

2        MR. MESH:   We hope the same, and we thank

3    you for your time, Judge.

4        JUDGE HOGAN:   Have a good one.

5                    - - -

6        (Proceeding concluded at 11:07 a.m.)

7                    - - -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



38

1              C E R T I F I C A T E

2

3        I,  D. Lynn Walden, a duly qualified and

4    commissioned Notary Public in and for the State of

5    Ohio, do hereby certify that the foregoing pages

6    constitute a true and correct transcript of

7    proceedings in the foregoing captioned matter, taken

8    by me at the time and place so stated and

9    transcribed from my stenographic notes.

10

11   MY COMMISSION EXPIRES:   D. LYNN WALDEN

12   May 19, 2008          NOTARY PUBLIC, STATE OF OHIO

13

14

15

16

17

18

19

20

21

22

23

24

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WALTER THEIMANN,
        Plaintiff,

    v.

OHSL FINANCIAL CORP., et al.,
        Defendants.

Case No. C-1-00-793
(Beckwith, J.; Hogan, M.J.)

## ORDER

This matter was before the Court for a scheduling conference pursuant to the Court's Order dated October 20, 2003 (Doc. 215) which remanded the matter for the establishment of a new trial calendar. The case shall proceed as follows:

1. Deadline for filing Amended Complaint:                **December 31, 2003**

2. Deadline for Filing Motion for Class Certification:   **December 31, 2003**

3. Deadline for filing Motion to Dismiss*:               **January 30, 2004**
   Memo in Opposition due:                               **February 16, 2004**
   Reply Memorandum due:                                 **February 27, 2004**
   Court's Decision due:                                 **April 30, 2004**

4. Deadline for Class discovery:                         **June 30, 2004**

5. Deadline for Identification of Expert Witnesses:
   Plaintiff's Experts:                                  **August 30, 2004**
   Defendants' Experts:                                  **September 30, 2004**

6. Deadline for general discovery:                       **October 29, 2004**

7. Deadline for expert discovery:                        **November 30, 2004**

8. Dispositive motions deadline:                         **December 31, 2004**

9. Final Pretrial Conference:                            **April, 2005***

Exhibit C

10. Jury Trial:                                    **May, 2005***

A stay of discovery pending the Court's decision on motions to dismiss shall pertain only to the claims asserted against the newly added parties, namely Defendants Keating Muething & Klekamp, and Ernst & Young.

* Specific dates to be assigned by the District Court.

_11/18/03_
Date

Timothy S. Hogan
United States Magistrate Judge

J:\SMITHLE\TSHORDER\Theimann.cal.wpd

2/25/00 3:16 PM

**lexis.com™**

Change Client | Options | Feedback | Sign Off | Help

View: Full

Text Only | Print | Download | Fax | Email

◄ 1 of 1 ►

Book Browse | FOCUS™ - Narrow Results | More Like This | More Like Selected Text

15 USCS § 78u-4

Service: LEXSTAT®
Citation: 15 u.s.c. 78u-4(b)(2)

15 USCS § 78u-4

UNITED STATES CODE SERVICE
Copyright 2000, LEXIS Law Publishing, a division of Reed Elsevier Inc.
All rights reserved.

*** THIS SECTION IS CURRENT THROUGH 106-174, APPROVED 2/25/00 ***

TITLE 15. COMMERCE AND TRADE
CHAPTER 2B. SECURITIES EXCHANGES

15 USCS § 78u-4 (2000)

§ 78u-4. Private securities litigation

(a) Private class actions.
    (1) In general. The provisions of this subsection shall apply in each private action arising under this title [15 USCS §§ 78a et seq.] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.
    (2) Certification filed with complaint.
        (A) In general. Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint, that--
            (i) states that the plaintiff has reviewed the complaint and authorized its filing;
            (ii) states that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title [15 USCS §§ 78a et seq.];
            (iii) states that the plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary;
            (iv) sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint;
            (v) identifies any other action under this title [15 USCS §§ 78a et seq.], filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve as a representative party on behalf of a class; and
            (vi) states that the plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court in accordance with paragraph (4).
        (B) Nonwaiver of attorney-client privilege. The certification filed pursuant to subparagraph (A) shall not be construed to be a waiver of the attorney-client privilege.
    (3) Appointment of lead plaintiff.
        (A) Early notice to class members.
            (i) In general. Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--
                (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
                (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.
            (ii) Multiple actions. If more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [15 USCS §§ 78a et seq.] is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i).
            (iii) Additional notices may be required under Federal Rules. Notice required under clause (i) shall be in addition to any notice required pursuant to the Federal Rules of Civil Procedure.
        (B) Appointment of lead plaintiff.
            (i) In general. Not later than 90 days after the date on which a notice is published under subparagraph (A)(i), the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.
            (ii) Consolidated actions. If more than one action on behalf of a class asserting substantially the same claim

Exhibit D

or claims arising under this title [15 USCS §§ 78a et seq.] has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.

(iii) Rebuttable presumption.

(I) In general. Subject to subclause (II), for purposes of clause (i), the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title [15 USCS §§ 78a et seq.] is the person or group of persons that--

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

(II) Rebuttal evidence. The presumption described in subclause (I) may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

(iv) Discovery. For purposes of this subparagraph, discovery relating to whether a member or members of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if the plaintiff first demonstrates a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class.

(v) Selection of lead counsel. The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.

(vi) Restrictions on professional plaintiffs. Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

(4) Recovery by plaintiffs. The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.

(5) Restrictions on settlements under seal. The terms and provisions of any settlement agreement of a class action shall not be filed under seal, except that on motion of any party to the settlement, the court may order filing under seal for those portions of a settlement agreement as to which good cause is shown for such filing under seal. For purposes of this paragraph, good cause shall exist only if publication of a term or provision of a settlement agreement would cause direct and substantial harm to any party.

(6) Restrictions on payment of attorneys' fees and expenses. Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.

(7) Disclosure of settlement terms to class members. Any proposed or final settlement agreement that is published or otherwise disseminated to the class shall include each of the following statements, along with a cover page summarizing the information contained in such statements:

(A) Statement of plaintiff recovery. The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis.

(B) Statement of potential outcome of case.

(i) Agreement on amount of damages. If the settling parties agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title [15 USCS §§ 78a et seq.], a statement concerning the average amount of such potential damages per share.

(ii) Disagreement on amount of damages. If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this title [15 USCS §§ 78a et seq.], a statement from each settling party concerning the issue or issues on which the parties disagree.

(iii) Inadmissibility for certain purposes. A statement made in accordance with clause (i) or (ii) concerning the amount of damages shall not be admissible in any Federal or State judicial action or administrative proceeding, other than an action or proceeding arising out of such statement.

(C) Statement of attorneys' fees or costs sought. If any of the settling parties or their counsel intend to apply to the court for an award of attorneys' fees or costs from any fund established as part of the settlement, a statement indicating which parties or counsel intend to make such an application, the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought. Such information shall be clearly summarized on the cover page of any notice to a party of any proposed or final settlement agreement.

(D) Identification of lawyers' representatives. The name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members concerning any matter contained in any notice of settlement published or otherwise disseminated to the class.

(E) Reasons for settlement. A brief statement explaining the reasons why the parties are proposing the settlement.

(F) Other information. Such other information as may be required by the court.

(8) Security for payment of costs in class actions. In any private action arising under this title [15 USCS §§ 78a et seq.] that is certified as a class action pursuant to the Federal Rules of Civil Procedure, the court may require an

undertaking from the attorneys for the plaintiff class, the plaintiff class, or both, or from the attorneys for the defendant, the defendant, or both, in such proportions and at such times as the court determines are just and equitable, for the payment of fees and expenses that may be awarded under this subsection.

(9) Attorney conflict of interest. If a plaintiff class is represented by an attorney who directly owns or otherwise has a beneficial interest in the securities that are the subject of the litigation, the court shall make a determination of whether such ownership or other interest constitutes a conflict of interest sufficient to disqualify the attorney from representing the plaintiff class.

(b) Requirements for securities fraud actions.
   (1) Misleading statements and omissions. In any private action arising under this title [15 USCS §§ 78a et seq.] in which the plaintiff alleges that the defendant--
      (A) made an untrue statement of a material fact; or
      (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
   the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.
   (2) Required state of mind. In any private action arising under this title [15 USCS §§ 78a et seq.] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this title [15 USCS §§ 78a et seq.], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.
   (3) Motion to dismiss; stay of discovery.
      (A) Dismissal for failure to meet pleading requirements. In any private action arising under this title [15 USCS §§ 78a et seq.], the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met.
      (B) Stay of discovery. In any private action arising under this title [15 USCS §§ 78a et seq.], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.
      (C) Preservation of evidence.
         (i) In general. During the pendency of any stay of discovery pursuant to this paragraph, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.
         (ii) Sanction for willful violation. A party aggrieved by the willful failure of an opposing party to comply with clause (i) may apply to the court for an order awarding appropriate sanctions.
      (D) Circumvention of stay of discovery. Upon a proper showing, a court may stay discovery proceedings in any private action in a State court, as necessary in aid of its jurisdiction, or to protect or effectuate its judgments, in an action subject to a stay of discovery pursuant to this paragraph.
   (4) Loss causation. In any private action arising under this title [15 USCS §§ 78a et seq.], the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this title [15 USCS §§ 78a et seq.] caused the loss for which the plaintiff seeks to recover damages.

(c) Sanctions for abusive litigation.
   (1) Mandatory review by court. In any private action arising under this title [15 USCS §§ 78a et seq.], upon final adjudication of the action, the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.
   (2) Mandatory sanctions. If the court makes a finding under paragraph (1) that a party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion, the court shall impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure. Prior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond.
   (3) Presumption in favor of attorneys' fees and costs.
      (A) In general. Subject to subparagraphs (B) and (C), for purposes of paragraph (2), the court shall adopt a presumption that the appropriate sanction--
         (i) for failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation; and
         (ii) for substantial failure of any complaint to comply with any requirement of Rule 11(b) of the Federal Rules of Civil Procedure is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action.
      (B) Rebuttal evidence. The presumption described in subparagraph (A) may be rebutted only upon proof by the party or attorney against whom sanctions are to be imposed that--
         (i) the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed; or
         (ii) the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis.
      (C) Sanctions. If the party or attorney against whom sanctions are to be imposed meets its burden under subparagraph (B), the court shall award the sanctions that the court deems appropriate pursuant to Rule 11 of the

Federal Rules of Civil Procedure.

(d) Defendant's right to written interrogatories. In any private action arising under this title [15 USCS §§ 78a et seq.] in which the plaintiff may recover money damages, the court shall, when requested by a defendant, submit to the jury a written interrogatory on the issue of each such defendant's state of mind at the time the alleged violation occurred.

(e) Limitation on damages.
   (1) In general. Except as provided in paragraph (2), in any private action arising under this title [15 USCS §§ 78a et seq.] in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.
   (2) Exception. In any private action arising under this title [15 USCS §§ 78a et seq.] in which the plaintiff seeks to establish damages by reference to the market price of a security, if the plaintiff sells or repurchases the subject security prior to the expiration of the 90-day period described in paragraph (1), the plaintiff's damages shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.
   (3) Definition. For purposes of this subsection, the "mean trading price" of a security shall be an average of the daily trading price of that security, determined as of the close of the market each day during the 90-day period referred to in paragraph (1).

(f) Proportionate liability.
   (1) Applicability. Nothing in this subsection shall be construed to create, affect, or in any manner modify, the standard for liability associated with any action arising under the securities laws.
   (2) Liability for damages.
      (A) Joint and several liability. Any covered person against whom a final judgment is entered in a private action shall be liable for damages jointly and severally only if the trier of fact specifically determines that such covered person knowingly committed a violation of the securities laws.
      (B) Proportionate liability.
         (i) In general. Except as provided in subparagraph (A), a covered person against whom a final judgment is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person, as determined under paragraph (3).
         (ii) Recovery by and costs of covered person. In any case in which a contractual relationship permits, a covered person that prevails in any private action may recover the attorney's fees and costs of that covered person in connection with the action.
   (3) Determination of responsibility.
      (A) In general. In any private action, the court shall instruct the jury to answer special interrogatories, or if there is no jury, shall make findings, with respect to each covered person and each of the other persons claimed by any of the parties to have caused or contributed to the loss incurred by the plaintiff, including persons who have entered into settlements with the plaintiff or plaintiffs, concerning--
         (i) whether such person violated the securities laws;
         (ii) the percentage of responsibility of such person, measured as a percentage of the total fault of all persons who caused or contributed to the loss incurred by the plaintiff; and
         (iii) whether such person knowingly committed a violation of the securities laws.
      (B) Contents of special interrogatories or findings. The responses to interrogatories, or findings, as appropriate, under subparagraph (A) shall specify the total amount of damages that the plaintiff is entitled to recover and the percentage of responsibility of each covered person found to have caused or contributed to the loss incurred by the plaintiff or plaintiffs.
      (C) Factors for consideration. In determining the percentage of responsibility under this paragraph, the trier of fact shall consider--
         (i) the nature of the conduct of each covered person found to have caused or contributed to the loss incurred by the plaintiff or plaintiffs; and
         (ii) the nature and extent of the causal relationship between the conduct of each such person and the damages incurred by the plaintiff or plaintiffs.
   (4) Uncollectible share.
      (A) In general. Notwithstanding paragraph (2)(B), [if,] upon motion made not later than 6 months after a final judgment is entered in any private action, the court determines that all or part of the share of the judgment of the covered person is not collectible against that covered person, and is also not collectible against a covered person described in paragraph (2)(A), each covered person described in paragraph (2)(B) shall be liable for the uncollectible share as follows:
         (i) Percentage of net worth. Each covered person shall be jointly and severally liable for the uncollectible share if the plaintiff establishes that--
            (I) the plaintiff is an individual whose recoverable damages under the final judgment are equal to more than 10 percent of the net worth of the plaintiff; and
            (II) the net worth of the plaintiff is equal to less than $ 200,000.
         (ii) Other plaintiffs. With respect to any plaintiff not described in subclauses (I) and (II) of clause (i), each covered person shall be liable for the uncollectible share in proportion to the percentage of responsibility of that

covered person, except that the total liability of a covered person under this clause may not exceed 50 percent of the proportionate share of that covered person, as determined under paragraph (3)(B).

(iii) Net worth. For purposes of this subparagraph, net worth shall be determined as of the date immediately preceding the date of the purchase or sale (as applicable) by the plaintiff of the security that is the subject of the action, and shall be equal to the fair market value of assets, minus liabilities, including the net value of the investments of the plaintiff in real and personal property (including personal residences).

(B) Overall limit. In no case shall the total payments required pursuant to subparagraph (A) exceed the amount of the uncollectible share.

(C) Covered persons subject to contribution. A covered person against whom judgment is not collectible shall be subject to contribution and to any continuing liability to the plaintiff on the judgment.

(5) Right of contribution. To the extent that a covered person is required to make an additional payment pursuant to paragraph (4), that covered person may recover contribution--

(A) from the covered person originally liable to make the payment;

(B) from any covered person liable jointly and severally pursuant to paragraph (2)(A);

(C) from any covered person held proportionately liable pursuant to this paragraph who is liable to make the same payment and has paid less than his or her proportionate share of that payment; or

(D) from any other person responsible for the conduct giving rise to the payment that would have been liable to make the same payment.

(6) Nondisclosure to jury. The standard for allocation of damages under paragraphs (2) and (3) and the procedure for reallocation of uncollectible shares under paragraph (4) shall not be disclosed to members of the jury.

(7) Settlement discharge.

(A) In general. A covered person who settles any private action at any time before final verdict or judgment shall be discharged from all claims for contribution brought by other persons. Upon entry of the settlement by the court, the court shall enter a bar order constituting the final discharge of all obligations to the plaintiff of the settling covered person arising out of the action. The order shall bar all future claims for contribution arising out of the action--

(i) by any person against the settling covered person; and

(ii) by the settling covered person against any person, other than a person whose liability has been extinguished by the settlement of the settling covered person.

(B) Reduction. If a covered person enters into a settlement with the plaintiff prior to final verdict or judgment, the verdict or judgment shall be reduced by the greater of--

(i) an amount that corresponds to the percentage of responsibility of that covered person; or

(ii) the amount paid to the plaintiff by that covered person.

(8) Contribution. A covered person who becomes jointly and severally liable for damages in any private action may recover contribution from any other person who, if joined in the original action, would have been liable for the same damages. A claim for contribution shall be determined based on the percentage of responsibility of the claimant and of each person against whom a claim for contribution is made.

(9) Statute of limitations for contribution. In any private action determining liability, an action for contribution shall be brought not later than 6 months after the entry of a final, nonappealable judgment in the action, except that an action for contribution brought by a covered person who was required to make an additional payment pursuant to paragraph (4) may be brought not later than 6 months after the date on which such payment was made.

(10) Definitions. For purposes of this subsection--

(A) a covered person "knowingly commits a violation of the securities laws"--

(i) with respect to an action that is based on an untrue statement of material fact or omission of a material fact necessary to make the statement not misleading, if--

(I) that covered person makes an untrue statement of a material fact, with actual knowledge that the representation is false, or omits to state a fact necessary in order to make the statement made not misleading, with actual knowledge that, as a result of the omission, one of the material representations of the covered person is false; and

(II) persons are likely to reasonably rely on that misrepresentation or omission; and

(ii) with respect to an action that is based on any conduct that is not described in clause (i), if that covered person engages in that conduct with actual knowledge of the facts and circumstances that make the conduct of that covered person a violation of the securities laws;

(B) reckless conduct by a covered person shall not be construed to constitute a knowing commission of a violation of the securities laws by that covered person;

(C) the term "covered person" means--

(i) a defendant in any private action arising under this title; or

(ii) a defendant in any private action arising under section 11 of the Securities Act of 1933 [15 USCS §§ 77j], who is an outside director of the issuer of the securities that are the subject of the action; and

(D) the term "outside director" shall have the meaning given such term by rule or regulation of the Commission.

(g) [Redesignated]


**HISTORY:**
(June 6, 1934, ch 404, Title I, § 21D, as added and amended Dec. 22, 1995, P.L. 104-67, Title I, § 101(b), Title II, § 201(a), 109 Stat. 743, 758.)

(As amended Nov. 3, 1998, P.L. 105-353, Title I, § 101(b)(2), Title III, § 301(b)(13), 112 Stat. 3233, 3236.)


**HISTORY; ANCILLARY LAWS AND DIRECTIVES**

Explanatory notes:
    In subsec. (f)(4)(A), "if," has been inserted in brackets to indicate the probable intent of Congress to include such matter.

Amendments:
    1995. Act Dec. 22, 1995 (applicable as provided by § 202 of such Act, which appears as <u>15 USCS § 77k note</u>) added subsec. [(f)](g).
    1998. Act Nov. 3, 1998, in subsec. (b)(3), added subpara. (D); in subsec. [(f)](g), in para. (2)(B)(i), substituted "subparagraph (A)" for "paragraph (1)"; and redesignated subsec. [(f)](g) as subsec. (f).

Other provisions:
    Applicability of section. Act Dec. 22, 1995, P.L. 104-67, Title I, § 108, 109 Stat. 758, which appears as <u>15 USCS § 77l</u> note, provides that the amendments made by such Act (adding this section, among other things) shall not affect or apply to any private action arising under <u>15 USCS §§ 77a</u> et seq. or 78a et seq. commenced before and pending on the date of enactment such Act.
    Construction of section. Act Dec. 18, 1995, P.L. 104-67, Title II, § 203, 109 Stat. 762, which appears as <u>15 USCS § 78j-1</u> note, provides that nothing in this section is to be deemed to create or ratify any implied right of action, or to prevent the Commission, by rule or regulation, from restricting or otherwise regulating private actions under this chapter.

**NOTES:**

CROSS REFERENCES
    This section is referred to in <u>15 USCS § 77k.</u>

RESEARCH GUIDE

Federal Procedure:
    2 Moore's Federal Practice (Matthew Bender 3d ed.), General Rules of Pleading §§ 8.02, 04.
    2 Moore's Federal Practice (Matthew Bender 3d ed.), Pleading Special Matters § 9.03.
    2 Moore's Federal Practice (Matthew Bender 3d ed.), Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions §§ 11.23, 24, 29.
    5 Moore's Federal Practice (Matthew Bender 3d ed.), Class Actions §§ 23.06, 24, 25, 61-63, 83, 85, 100-104.
    6 Moore's Federal Practice (Matthew Bender 3d ed.), General Provisions Governing Discovery; Duty of Disclosure §§ 26.22, 124.
    10 Moore's Federal Practice (Matthew Bender 3d ed.), Judgments; Costs §§ 54.152, 171.
    17 Moore's Federal Practice (Matthew Bender 3d ed.), Multidistrict Litigation § 112.02.
    27A Fed Proc L Ed, Pleadings and Motions §§ 62:132, 150.
    29A Fed Proc L Ed, Securities Regulation §§ 70:394, 395, 401, 408, 423, 434, 439-441, 463, 471, 474, 479, 484.

Texts:
    Knepper & Bailey, Liability of Corporate Officers and Directors.

Law Review Articles:
    Rosenfeld. Pleading scienter under the Private Securities Litigation Reform Act of 1995. 30 Inst on Sec Reg 791, 1998.
    Savett; Stock. What to plead and how to plead the defendants' state of mind in a federal securities class action: the plaintiff's perspective. 30 Inst on Sec Reg 807, 1998.
    Weiss; Rudman; Swick. The adequacy of notice and appointment of lead plaintiff -- and -- the stay of discovery during the pendency of a motion to dismiss under the PSLRA. 30 Inst on Sec Reg 869, 1998.
    Alcock. The rise and fall of private actions under Rule 10b-5. 1998 J Bus L 230, May 1998.
    Gonick; Daley. The nonretroactivity of the Private Securities Litigation Reform Act of 1995, 25 Sec Reg L J 60, Spring 1997.
    Steinberg; Olive. The Private Securities Litigation Reform Act: contribution and proportionate liability, 24 Sec Reg L J 333, Winter 1997.
    Harrison. The assault on the liability of outside professionals: are lawyers and accountants off the hook?, <u>65 U Cin L Rev 473,</u> Winter 1997.

INTERPRETIVE NOTES AND DECISIONS

 1. Pleading
 2. --Loss causation
 3. --Scienter
 4. Stay of discovery pending motion to dismiss
 5. Class actions
 6. Miscellaneous

1. Pleading
    Command of <u>15 USCS § 78u-4</u>(b) that plaintiff plead all facts with particularity means that plaintiff must provide list of all relevant circumstances in great detail. <u>Janas v McCracken (In re Silicon Graphics Sec. Litig.) (1999, CA9) 183 F3d 970,</u> 99 CDOS 5322, 99 <u>Daily Journal DAR 6829, CCH Fed Secur L Rep P 90610</u> (criticized on other grounds in Greebel v FTP Software, Inc. (1999, CA1 Mass) <u>CCH Fed Secur L Rep P 90658)</u> and reh den (1999, CA9)

99 CDOS 8658 and (criticized on other grounds in Bryant v Avado Brands, Inc. (1999, CA11 Ga) 187 F3d 1271, CCH Blue Sky L Rep P 90636, 12 FLW Fed C 1245).

As matter of law, failure to muster facts sufficient to meet pleading requirements of Private Securities Litigation Reform Act cannot constitute requisite undue prejudice to plaintiff justifying lift of discovery stay under 15 USCS § 78u-4(b)(3)(B). SG Cowen Sec. Corp. v United States Dist. Court (1999, CA9 Cal) 189 F3d 909, 99 CDOS 7092, 99 Daily Journal DAR 9077, CCH Fed Secur L Rep P 90625.

Federal securities fraud claim against member of corporate board of directors must be dismissed, where complaint merely alleges that her status as board member made her responsible for overall management and direction of corporation, privy to inside information, and aware of true financial condition and fraud, because these conclusory allegations are insufficient to demonstrate "strong inference" of recklessness or conscious misbehavior required by 15 USCS § 78u-4(b)(2). In re Health Mgmt. Sec. Litig. (1997, ED NY) 970 F Supp 192, CCH Fed Secur L Rep P 99505 (criticized in Press v Chemical Inv. Servs. Corp. (1997, SD NY) 988 F Supp 375, CCH Fed Secur L Rep P 90150) and (criticized in Baffa v Donaldson (1998, SD NY) 1998 US Dist LEXIS 4597).

Defendants occupying high-level positions with corporations are denied dismissal of securities fraud complaint, where they all were privy to confidential information, directly participated in management, and were involved in drafting, reviewing, and disseminating allegedly false and misleading statements in "group-published information," because 15 USCS § 78u-4 did not abolish group pleading doctrine, which allows plaintiffs to rely on presumption that statements in group-published information are collective work of those individuals with direct involvement in everyday business of company. In re Stratosphere Corp. Sec. Litig. (1998, DC Nev) 1 F Supp 2d 1096, CCH Fed Secur L Rep P 90198.

Plaintiffs group is appointed lead plaintiff in consolidated securities fraud class action, and its choice of co-lead counsel is approved pursuant to 15 USCS § 78u-4, where group allegedly has suffered substantial damages as result of its ownership of 11,700 shares of stock in corporation, because group has largest financial interest in case and 2 law firms chosen appear to be well qualified. In re Olsten Corp. Sec. Litig. (1998, ED NY) 3 F Supp 2d 286, 41 FR Serv 3d 801.

Even if analyst's statements could be attributed to company, any allegation in securities fraud suit under 15 USCS § 78u-4(b)(1) that company made misrepresentations to analyst had to allege with particularity time, place, content, and speaker of company's communications with analysts, explain why communications were fraudulent, and allege facts giving rise to strong inference of fraudulent intent. Lirette v Shiva Corp. (1998, DC Mass) 27 F Supp 2d 268, CCH Fed Secur L Rep P 90336.

Although not explicitly required by Private Securities Litigation Reform Act, overall statutory scheme requires any lead plaintiff motion to be accompanied by certifications, which attest, on each applicant's behalf, to his or her eligibility as enunciated in 15 USCS § 78u-4(a)(2)(A). Chill v Green Tree Fin. Corp. (1998, DC Minn) 181 FRD 398.

Securities fraud plaintiffs must amend complaint to meet enhanced pleading requirement of 15 USCS § 78u-4, where first paragraph merely asserts that allegations that follow are not only founded on "information and belief" but are also based upon "investigation by plaintiffs' counsel," because § 78u-4(b)(1) makes clear beyond peradventure that if allegation regarding misleading statement or omission is made on information and belief, complaint must state with particularity "all facts on which that belief is based." Lirette v Shiva Corp. (1998, DC Mass) 999 F Supp 164.

## 2. --Loss causation

Securities fraud claim must be dismissed for failure to adequately plead loss causation under 15 USCS § 78u-4(b)(4), even though complaint states that company's stock price has dropped and that venture corporation, as "security holder of company," was directly damaged, because (1) stock price has merely fluctuated, (2) corporation is not equity security holder but simply holder of company debt, and (3) allegation that value of debt has declined due to drop in company's stock price falls short of showing actual loss suffered. Norwood Venture Corp. v Converse Inc. (1997, SD NY) 959 F Supp 205, CCH Fed Secur L Rep P 99498 (criticized in In re Health Mgmt. Sec. Litig. (1997, ED NY) 970 F Supp 192, CCH Fed Secur L Rep P 99505) and (criticized in Press v Chemical Inv. Servs. Corp. (1997, SD NY) 988 F Supp 375, CCH Fed Secur L Rep P 90150).

Investors failed to state claim of control person liability under 15 USCS § 78u-4(b)(2) against parent corporation of securities broker involved in alleged fraudulent issuance of shares, where there was no showing that statute was violated, and even if it were, violation by subsidiary would not automatically be imputed to parent. Novak v Kasaks (1998, SD NY) 26 F Supp 2d 658, CCH Fed Secur L Rep P 90332.

Investor failed to state securities fraud claim under Rule 10b-5 with degree of particularity required by 15 USCS § 78u-4(b) and Rules of Civil Procedure, where complaint set forth generally optimistic statements regarding issuing corporation's business prospects, without identification of speakers or dates of statements, or explanation of why statements were false, and no showing of scienter was made. Sheldon v Vermonty (1998, DC Kan) 31 F Supp 2d 1287.

## 3. --Scienter

Because recklessness, understood as mental state apart from negligence and akin to conscious disregard, may constitute scienter, under heightened pleading standards set forth in 15 USCS § 78u-4(b)(2), plaintiff alleging securities fraud may survive motion to dismiss by pleading facts that give rise to strong inference of recklessness. Hoffman v Comshare, Inc. (In re Comshare Inc. Secs. Litig.) (1999, CA6 Mich) 183 F3d 542, CCH Fed Secur L Rep P 90513, 1999 FED App 247P (criticized in Janas v McCracken (In re Silicon Graphics Secs. Litig.) (1999, CA9) 183 F3d 970, 99 CDOS 5322, 99 Daily Journal DAR 6829, CCH Fed Secur L Rep P 90610) and (criticized in Phillips v LCI Int'l, Inc. (1999, CA4 Va) CCH Fed Secur L Rep P 90645).

Complaint under 15 USCS § 78u-4(b)(2) alleging with particularity that defendant acted with severely reckless state of mind suffices to state claim for civil liability under 15 USCS § 78j(b) and Rule 10b-5. Bryant v Avado Brands, Inc. (1999, CA11 Ga) 187 F3d 1271, CCH Blue Sky L Rep P 90636, 12 FLW Fed C 1245.

Whatever characteristic pattern of facts is alleged, those facts must present strong inference of scienter; mere

reasonable inference is insufficient to survive motion to dismiss. Greebel v FTP Software, Inc. (1999, CA1 Mass) 194 F3d 185, CCH Fed Secur L Rep P 90658.

Scienter includes recklessness as lesser form of intent, but not as ordinary negligence. Greebel v FTP Software, Inc. (1999, CA1 Mass) 194 F3d 185, CCH Fed Secur L Rep P 90658.

Investors bringing securities fraud claim failed to plead fraud with degree of particularity required by Federal Rules and 15 USCS § 78u-4(b)(1)(B), when they set forth optimistic statements contained in press release and in interview and followed with list of adverse developments allegedly known to defendants, but further pleading was required to set forth how defendants became aware of adverse facts. Genna v Digital Link Corp. (1997, ND Cal) 25 F Supp 2d 1032.

Securities fraud complaint states with particularity facts giving rise to strong inference that corporate officials acted with scienter, in compliance with 15 USCS § 78u-4(b)(3), where officials initiated secondary public offering of nearly 3.6 million shares and more than 2 million of shares sold belonged to 5 individual defendants, who allegedly knew of pending announcement of revolutionary new workstation which corporation's product obsolete, because both amount and timing of offering, along with other evidence, provide strong circumstantial evidence of conscious misbehavior. Friedberg v Discreet Logic (1997, DC Mass) 959 F Supp 42, CCH Fed Secur L Rep P 99491.

Securities fraud complaint is dismissed with leave to replead, where new 15 USCS § 78u-4(b)(2) does not heighten scienter requirement above "recklessness" but makes pleading of "motive and opportunity" no longer automatically sufficient in Second Circuit to raise required "strong inference" of fraudulent scienter, because leave should not be denied where pleading requirements of new statute are only beginning to be limned and where there is little prejudice to defendants since discovery remains stayed. Western Heart Inst., P.C. v Buenos Aires Embotelladora S.A. (In re Baesa Sec. Litig.) (1997, SD NY) 969 F Supp 238, CCH Fed Secur L Rep P 99535 (criticized in In re Health Mgmt. Sec. Litig. (1997, ED NY) 970 F Supp 192, CCH Fed Secur L Rep P 99505) and (criticized in Press v Chemical Inv. Servs. Corp. (1997, SD NY) 988 F Supp 375, CCH Fed Secur L Rep P 90150).

Securities fraud complaint is dismissed with leave to replead, where it uses too many paraphrased statements, fails to allege scienter, and fails to allege that any statement was false when made, because new complaint must be streamlined to 30 pages to include only precise statements alleged to be false or misleading, and reasons why they are so. Wenger v Lumisys, Inc. (1998, ND Cal) 2 F Supp 2d 1231.

To satisfy scienter requirement for stating claim of securities fraud under 15 USCS § 78u-4(b)(2), plaintiffs must either (1) identify circumstances indicating conscious or reckless behavior by defendants, or (2) allege facts showing both motive and clear opportunity for committing fraud. Bell v Fore Sys. (1998, WD Pa) 17 F Supp 2d 433.

15 USCS § 78u-4(b)(2) requires a finding of true state of mind of some natural person and not imputed state of mind that no natural person had in fact. In re Centennial Techs. Litig. (1998, DC Mass) 20 F Supp 2d 119.

Securities fraud complaint sufficiently pleads facts supporting inference of scienter under 15 USCS § 78u-4, where it states that corporation sweetened books with significant contract but corporate officials knew that its products were not compatible with those of contracting party, which could return corporation's products and cancel agreement, and did, because $ 30 million contract was biggest in corporation's history, and knowledge of incompatibility, in this context, can be imputed to officials and supports strong inference of scienter. In re Ancor Communs. (1998, DC Minn) 22 F Supp 2d 999, CCH Fed Secur L Rep P 90251.

Securities fraud claim against developer of automatic meter reading systems meets higher pleading standard of 15 USCS § 78u-4(b)(2) and may proceed, where allegation is that number of public statements by corporate officials were misleading by failing to divulge seriousness of technological problems being experienced in attempting to create fixed network system, because complaint pleads with particularity sufficient facts to create strong inference that officials either knew, or were reckless as to, false or misleading nature of statements challenged. Epstein v Itron, Inc. (1998, ED Wash) 993 F Supp 1314, CCH Fed Secur L Rep P 90157.

Investors failed to plead scienter element of securities fraud claim against corporation with sufficient specificity to satisfy 15 USCS § 78u-4(b)(2), where investors' allegations were without required factual substantiation and failed to show how or when officers had access to certain documents or how flawed inventory assessments represented anything more than nonactionable bad business judgment. Novak v Kasaks (1998, SD NY) 997 F Supp 425, CCH Fed Secur L Rep P 90188 (criticized in Mishkin v Ageloff (1998, SD NY) 1998 US Dist LEXIS 14890).

Shareholder who suffered huge loss on purchase of 10 units in initial public offering of home centers corporation may proceed with securities fraud claim against underwriter, directors, officers, and majority shareholders, where he specifically alleges that defendants had information regarding corporation's large financial losses at time offering became effective but failed to disclose this information, because complaint satisfies requirements of FRCP 9(b) and 15 USCS § 78u-4(b)(2). Baffa v Donaldson, Lufkin & Jenrette Sec. Corp. (1998, SD NY) 999 F Supp 725, CCH Fed Secur L Rep P 90193.

Securities fraud complaint is dismissed with leave to amend within 45 days, where complaint primarily alleges product development problems, customer acceptance problems, and impact of those problems on corporation's revenue-generating stream, because statements about corporation's media chipset product may have been misleading but complaint falls short of pleading facts constituting circumstantial evidence of either reckless or conscious behavior under 15 USCS § 78u-4. Allison v Brooktree Corp. (1998, SD Cal) 999 F Supp 1342.

Shareholders' securities fraud suit against investment banking firm is dismissed without prejudice, whether it is considered based on misrepresentations and omissions or on market manipulation, where complaint is based largely on "information and belief," because complaint does not explain firm's motive in suddenly seeking to depress automobile finance corporation's stock price, nor does it "state with particularity all facts on which belief is formed," as required by 15 USCS § 78u-4(b). Schnell v Conseco, Inc. (1999, SD NY) 43 F Supp 2d 438, CCH Fed Secur L Rep P 90471, RICO Bus Disp Guide (CCH) P 9722.

4. Stay of discovery pending motion to dismiss
Initial disclosure requirements of FRCP 26(a)(1) constitute "discovery" for purposes of 15 USCS § 78u-4(b)(3)(B). Medhekar v United States Dist. Court (1996, CA9 Cal) 99 F3d 325, 96 CDOS 7966, 96 Daily Journal DAR 13219,

CCH Fed Secur L Rep P 99337, 36 FR Serv 3d 321.

As matter of law, failure to muster facts sufficient to meet pleading requirements of Private Securities Litigation Reform Act cannot constitute requisite undue prejudice to plaintiff justifying lift of discovery stay under 15 USCS § 78u-4(b)(3)(B). SG Cowen Sec. Corp. v United States Dist. Court (1999, CA9 Cal) 189 F3d 909, 99 CDOS 7092, 99 Daily Journal DAR 9077, CCH Fed Secur L Rep P 90625.

"Undue prejudice," sufficient under 15 USCS § 78u-4(b)(3)(B) to overcome statutory bar to discovery pending resolution of motion to dismiss, means improper or unfair detriment amounting to something less than irreparable injury. Medical Imaging Ctrs. of Am. v Lichtenstein (1996, SD Cal) 917 F Supp 717, CCH Fed Secur L Rep P 99033.

15 USCS § 78u-4, which stays all "discovery and other proceedings" during pendency of motion to dismiss, does not require stay of initial disclosures required by FRCP 26 before commencement of discovery, where neither term "discovery" nor term "other proceedings" included disclosures required by rule. Hockey v Medhekar (1996, ND Cal) 932 F Supp 249, CCH Fed Secur L Rep P 99285.

Discovery in securities fraud case will be stayed briefly pending formal ruling on motion for reconsideration of motion to dismiss, without prejudice to any party seeking relief from stay upon showing that "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party," because plaintiffs have made no showing that they will suffer actual prejudice and Congress did not contemplate restrictive reading of term "pendency" in 15 USCS § 78u-4(b)(3)(B). Powers v Eichen (1997, SD Cal) 961 F Supp 233, CCH Fed Secur L Rep P 99552.

Relief from 15 USCS § 78u-4(b)(3)(B) automatic stay of discovery pending motion to dismiss federal securities fraud case is granted, but solely to allow plaintiffs to serve subpoenas duces tecum upon third parties to preserve evidence that may be sought after in future, because, in practical effect, motion seeks to preserve evidence of relevant third persons as stay statute expressly preserves evidence held by parties. In re Grand Casinos Secs. Litig. (1997, DC Minn) 988 F Supp 1270.

Stay provision of 15 USCS § 78u-4(b)(3)(B) requires that all proceedings be stayed pending resolution of motion to dismiss counterclaim, where breach-of-contract complaint was countered by answer asserting 10 affirmative defenses and 6-count counterclaim, including compulsory counterclaims under 15 USCS §§ 78i(b) and 78cc(b), because compulsory counterclaim is part of same case or controversy as action asserted in complaint, which therefore "arises under" Chapter 2B of Title 15. Berckeley Inv. Group v Colkitt (1997, MD Pa) 984 F Supp 827.

5. Class actions

Media through which named plaintiff published press release required by 15 USCS § 78u-4(a)(3)(A) in class actions qualified as "wire service," notwithstanding that release arrived at print publication via electronic signal, rather than in manner of traditional wire service, and media also qualified as "widely circulated," in that it was subscribed to by hundreds of print publications and wire services and its press releases could be accessed directly by consumers of news through subscriber on-line services and databases. Greebel v FTP Software (1996, DC Mass) 939 F Supp 57, CCH Fed Secur L Rep P 99329.

Prohibition of 15 USCS § 78u-4(a)(2)(A)(vi) against payment of fees to securities class action representatives did not bar award of $ 1,600 to class action representative, where class action securities fraud action was settled, because statutory prohibition was prospective only, and class action was commenced prior to statute's passage. Pozzi v Smith (1997, ED Pa) 952 F Supp 218, CCH Fed Secur L Rep P 99422.

State investment board was presumptive lead plaintiff to conduct securities fraud class action suit under 15 USCS § 78u-4(a)(3), where board held more than 1.6 million of more than 7.5 million shares held by noninsiders, out of over 19 million total shares, representing much larger interest than another group seeking lead plaintiff status, and board established typicality of claims and adequacy of its representation to extent required at initial stages of litigation. Gluck v CellStar Corp. (1997, ND Tex) 976 F Supp 542, CCH Fed Secur L Rep P 99585, 39 FR Serv 3d 992.

Court bears special responsibility to ensure that interests of all members of consolidated securities fraud class action are well-represented. In re Olsten Corp. Sec. Litig. (1998, ED NY) 181 FRD 218.

In case involving Private Securities Litigation Reform Act (15 USCS § 78u-4), discovery regarding elements of FRCP 23 is only allowed if another purported member of class can demonstrate reasonable basis for finding presumptively most adequate plaintiff incapable of adequately representing class. In re Milestone Sci. Secs. Litig. (1998, DC NJ) 183 FRD 404.

For purposes of 15 USCS § 78u-4(a)(3) motion for appointment as lead plaintiff, proposed lead plaintiff must only make preliminary showing that he or she satisfies requirements of FRCP 23(a); court must formally determine whether lead plaintiffs meet requirements of FRCP 23(a) when plaintiffs move for class certification. McKitty v Advanced Tissue Sciences, Inc. (In re Advanced Tissue Sciences Sec. Litig.) (1998, SD Cal) 184 FRD 346, 99 Daily Journal DAR 2929.

Defendants may not object to adequacy or typicality of proposed lead plaintiffs at preliminary stage of litigation. In re Nice Sys. Secs. Ltd. Litig. (1999, DC NJ) 188 FRD 206, CCH Blue Sky L Rep P 90628.

Decision to approve counsel selected by lead plaintiff is matter within discretion of district court. In re Nice Sys. Secs. Ltd. Litig. (1999, DC NJ) 188 FRD 206, CCH Blue Sky L Rep P 90628.

Adequate notice must identify claims alleged in lawsuit and purported class period and inform potential class members of their right to intervene in litigation; description of claims in notice must be congruent with claims as alleged in pleadings. Wenderhold v Cylink Corp. (1999, ND Cal) 188 FRD 577, CCH Fed Secur L Rep P 90662.

Defendants have standing to challenge adequacy of required class notice. Wenderhold v Cylink Corp. (1999, ND Cal) 188 FRD 577, CCH Fed Secur L Rep P 90662.

Basic purpose of notice requirement is to present fair recital of subject matter of suit and to inform all class members of their opportunity to be heard; notice need not and indeed must not contain mountain of meaningless boilerplate. Wenderhold v Cylink Corp. (1999, ND Cal) 188 FRD 577, CCH Fed Secur L Rep P 90662.

Failure of law firm to publish adequate notice is not obstacle to firm seeking to serve as class counsel. Wenderhold v Cylink Corp. (1999, ND Cal) 188 FRD 577, CCH Fed Secur L Rep P 90662.

Discovery regarding elements of FRCP 23 is only allowed if another purported member of class can demonstrate

reasonable basis for finding presumptively most adequate plaintiff incapable of adequately representing class. In re Party City Secs. Litig. (1999, DC NJ) 189 FRD 91.

**6. Miscellaneous**

15 USCS § 78u-4(c) does not in any way purport to alter substantive standards for finding violation of FRCP 11, but functions merely to reduce court's discretion in choosing whether to conduct FRCP 11 inquiry at all, and whether and how to sanction party once violation is found. Simon DeBartolo Group, L.P. v Richard E. Jacobs Group, Inc. (1999, CA2 NY) 186 F3d 157, CCH Fed Secur L Rep P 90531.

Statutory method for crediting partial settlement in securities litigation will be followed, even if it does not officially apply to actions filed before December 22, 1995, because inconsistent decisions have been reached by different Ninth Circuit panels on this issue, and 15 USCS § 78u-4(g)(7) methodology is uniform approach that recently was adopted by Congress as its approved method. Fluck v Blevins (1997, DC Or) 969 F Supp 1240.

Shareholder is assessed $ 100,000 in attorney's fees expended by private real estate investment trust (REIT) to defend against shareholder's frivolous securities law claims, under 15 USCS § 78u-4(c)(3), where it is clear that shareholder abused judicial process in attempt to thwart merger of competitor and REIT to create new, publicly held REIT, even though shareholder's suit was not class action for damages, because new statutory provision was designed to deter abusive securities litigation like that brought by shareholder. Simon DeBartolo Group, L.P. v Richard E. Jacobs Group (1997, SD NY) 985 F Supp 427, CCH Fed Secur L Rep P 90148.

15 USCS § 78u-4(g)(7)(A) encompassed state-law claims brought by plaintiffs against their attorney arising out of transactions underlying plaintiffs' securities claims, where, but for securities' transactions, there would have been no claims against attorney and claims against him were integrally related to securities transactions. Lucas v Hackett Assocs. (1998, ED Pa) 18 F Supp 2d 531, CCH Fed Secur L Rep P 90283.

Term "undue prejudice" as used in 15 USCS § 78u-4(b)(3)(B) means improper or unfair treatment. In re Rational Software Sec. Litig. (1998, ND Cal) 28 F Supp 2d 562, CCH Fed Secur L Rep P 90337.

Ultimate and practical effect of 15 USCS § 78u-4(c)(1) of Private Securities Litigation Reform Act, which requires court, upon final adjudication of action, to include in record specific findings regarding compliance by parties with requirements of FRCP 11(b), and which requires court to impose sanctions if court finds violation of FRCP 11, is that 21-day safe harbor of FRCP 11 does not apply to federal securities actions brought under Act. Smith v Smith (1998, SD Fla) 184 FRD 420, RICO Bus Disp Guide (CCH) P 9674, 42 FR Serv 3d 1274.

Fact that plaintiff's case, brought under Private Securities Litigation Reform Act, is dismissed voluntarily, without prejudice and in accordance with FRCP 41(a)(1)(i), does not bar court from imposing FRCP 11 sanctions against plaintiff, because 15 USCS § 78u-4(c)(1) of Act, which requires court, upon final adjudication of action, to include in record specific findings regarding compliance by parties with requirements of FRCP 11(b), and which requires court to impose sanctions if court finds violation of FRCP 11, eliminates 21-day safe harbor of FRCP 11 with respect to federal securities actions brought under Act. Smith v Smith (1998, SD Fla) 184 FRD 420, RICO Bus Disp Guide (CCH) P 9674, 42 FR Serv 3d 1274.

Motion to approve lead plaintiffs and lead counsel for class action securities litigation is denied, where notice being relied upon was published before plaintiffs filed their complaint and did not specify that it concerned certain notes instead of common stock or other securities, because procedure adopted by plaintiffs did not adhere to requirements of 15 USCS § 78u-4(a)(3). King v Livent, Inc. (1999, SD NY) 36 F Supp 2d 187, CCH Fed Secur L Rep P 90434.

15 USCS § 78u-4(c) is not limited to class action litigation. Inter-County Resources, Inc. v Medical Resources, Inc. (1999, SD NY) 49 F Supp 2d 682, CCH Fed Secur L Rep P 90490.

One objective of PSLRA was to ensure more effective representation of interests of investors in private securities class actions. In re Milestone Sci. Sec. Litig. (1999, DC NJ) 187 FRD 165, CCH Fed Secur L Rep P 90497.

Approval of lead counsel pursuant to 15 USCS § 78u-4(a)(3)(B)(v) is not governed by same statutory guidelines which control lead plaintiff determination. In re Milestone Sci. Sec. Litig. (1999, DC NJ) 187 FRD 165, CCH Fed Secur L Rep P 90497.

Decision to approve counsel selected by lead plaintiff is matter within discretion of district court. In re Milestone Sci. Sec. Litig. (1999, DC NJ) 187 FRD 165, CCH Fed Secur L Rep P 90497.

PSLRA does not expressly prohibit lead plaintiff from selecting more than one law firm to represent class. In re Milestone Sci. Sec. Litig. (1999, DC NJ) 187 FRD 165, CCH Fed Secur L Rep P 90497.

Purpose of publication of notice and appointment of lead plaintiff provisions is to ensure that prosecution of action is coordinated only by those who have serious and legitimate interest in doing so on behalf of putative class. Switzenbaum v Orbital Sciences Corp. (1999, ED Va) 187 FRD 246, CCH Fed Secur L Rep P 90510, 43 FR Serv 3d 1318.

Defendants have standing to challenge adequacy of required class notice. Wenderhold v Cylink Corp. (1999, ND Cal) 188 FRD 577, CCH Fed Secur L Rep P 90662.

Failure of law firm to publish adequate notice is not obstacle to firm seeking to serve as class counsel. Wenderhold v Cylink Corp. (1999, ND Cal) 188 FRD 577, CCH Fed Secur L Rep P 90662.

Purpose behind PSLRA is to empower investors so that they, not their lawyers, control private securities litigation by allowing court to ensure transfer of primary control of private securities litigation from lawyers to investors. In re Party City Secs. Litig. (1999, DC NJ) 189 FRD 91.

Although PSLRA does not limit number of proposed lead plaintiffs, rule of reason prevails. In re Party City Secs. Litig. (1999, DC NJ) 189 FRD 91.

PSLRA does not expressly prohibit lead plaintiff from selecting more than one law firm to represent class. In re Party City Secs. Litig. (1999, DC NJ) 189 FRD 91.

Selection of counsel by lead plaintiff must be product of independent, arm's length negotiations. In re Party City Secs. Litig. (1999, DC NJ) 189 FRD 91.

Get a Document - by Citation - 15 USCS § 78u-4

View: Full

◄━━━━━ 1 of 1 ━━━━━►

Book Browse | FOCUS™ - Narrow Results | More Like This | More Like Selected Text

15 USCS § 78u-4

Service: LEXSTAT®
Citation: 15 u.s.c. 78u-4(b)(2)
View: Full
Date/Time: Wednesday, April 5, 2000 - 3:16 PM EDT

Search | Search Advisor | Get a Document | Check a Citation
ECLIPSE(TM) | History | Change Client | Options | Feedback | Sign Off | Help
About LEXIS-NEXIS | Terms and Conditions

Copyright © 2000 LEXIS-NEXIS Group. All rights reserved.