IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Walter W. Thiemann,                )
                                   )
                                   )
            Plaintiff,             )   Case No. C-1-00-793
                                   )
     vs.                           )
                                   )
                                   )
OHSL Financial Corporation,        )
et al.,                            )
                                   )
            Defendants.            )

ORDER VACATING CLASS CERTIFICATION

        This matter is before the Court on motions to
reconsider the Court's class certification order (Doc. Nos. 52 &
53) and motion to decertify the class (Doc. No. 65).  For the
reasons that follow, the motions to reconsider the order
certifying the class are well-taken and are **GRANTED**; the order
certifying the class (Doc. No. 50) is **VACATED.**  The motion to
decertify the class is **MOOT**.

        This case is a securities fraud action in which
Plaintiff claims that Defendants prepared and issued a proxy
registration statement which contained materially false and
misleading statements about the December 1999 merger of OHSL
Financial Corporation ("OHSL") and Provident Financial Group,
Inc. ("PFGI").  Plaintiff Walter W. Thiemann filed the complaint
on September 20, 2000 on behalf of himself and a potential class
of plaintiffs who purchased OHSL stock between September 27, 1999
and December 3, 1999.  Defendants moved to dismiss the complaint

pursuant to Rule 12(b)(6) on November 20, 2000 (Doc. No. 9).

As it does in the ordinary course of events, the Court referred the case to Magistrate Judge Hogan for disposition of pretrial matters.  On January 17, 2001, Magistrate Judge Hogan entered a calendar order which, _inter alia_, established February 28, 2002 as the initial discovery deadline.  See Doc. No. 25.

On March 5, 2001, the Court entered an order (Doc. No. 33) appointing Walter W. Thiemann lead plaintiff for the potential class and appointing Gene Mesh & Associates, Specter, Specter, Evans & Manogue P.C., and The Brualdi Law Firm as lead plaintiffs' counsel.  The Court had earlier entered an order granting admission pro hac vice to David Manogue of Specter, Specter, Evans & Manogue, Richard Brualdi of The Brualdi Law Firm, and Michael Brautigam of Gene Mesh & Associates.  See Doc. No. 28.

On January 22, 2001, Plaintiff filed a motion for class certification (Doc. No. 27) to which Defendants filed memoranda in opposition (Doc. Nos. 34 & 35).[1]  Importantly, in responding to the motion for class certification, Defendants stated:

> Because discovery may not be conducted in this securities action while Defendants' motion to dismiss remains pending, Defendants are in a position at this time to challenge class certification only on the issues of numerosity, predominance, and superiority. Defendants reserve the right to supplement the record, as discovery in this case unfolds, and offer additional

---

[1]    In actuality, Defendants Dinsmore & Shohl and Clifford Roe simply filed a memorandum adopting the memorandum in opposition to the motion for class certification filed by the other defendants.

2

evidence and arguments based upon the requirements of Rule 23.

Doc. No. 35, at 2 n.1.

On July 25, 2001, the Court entered an order (Doc. No. 46) granting in part and denying in part Defendants' motion to dismiss.  The gist of the order was that certain of the alleged omissions and misstatements in the proxy statement were not material as a matter of law whereas the complaint stated a claim for relief as to other alleged omissions and misstatements.

On September 14, 2001, the Court entered an order (Doc. No. 50) granting Plaintiff's motion for class certification.  In granting the motion for class certification, the Court addressed each of the prerequisites that must be satisfied to certify a class under Rule 23(a), despite the fact that Defendants had noted at the time that they were only prepared to address numerosity, predominance and superiority.  Nonetheless, the Court found that the numerosity requirement was satisfied because there were between 900 and 1200 shareholders of OHSL stock during the proposed class period.  Id. at 10-11.  The Court next stated that "Defendants do not appear to seriously contend that the commonality requirement is not satisfied" and, thus, assumed that this requirement was satisfied in the case.  Id. at 11-12.  The Court essentially made the same comment with regard to the typicality requirement.  Id.

The Court next addressed the adequacy of representation requirement of Rule 23(a) and found that Mr. Thiemann had

adequate resources and an adequate financial stake in the matter
to be a satisfactory class representative.  The Court also found
that "Plaintiff's counsel is well-qualified to handle this class
action securities fraud case."  Id. at 13.  At the time, of
course, Plaintiff had actually engaged three law firms to
prosecute the case.

The Court then addressed whether the case satisfied the
requirements of Rule 23(b).  In deciding that common questions
predominated over individual ones, the Court rejected Defendants'
suggestion that individual reliance on the alleged misleading
proxy statement precluded class certification because Plaintiffs
could be entitled to proceed on a "fraud-on-the-market" theory in
which individual reliance need not be proved.  The Court also
noted that some of the claims did not require proof of reliance
as an element at all.  Id. at 14-15.  Finally, the Court found
that a class action was superior to any other form of action to
resolve the controversy.  Id. at 15-18.

Almost immediately following the issuance of the order
certifying the class, Defendants filed motions with the Court to
reconsider that order.  Doc. Nos. 52 & 53.  Although Defendants
certainly disagreed with the Court's legal and factual
conclusions leading up the certification decision, they also
objected to the order to the extent that the order implied or
found that they had conceded the establishment of certain
elements.  Defendants pointed out that they specifically stated
in their memorandum in opposition that they were only in a

4

position to address certain of the elements pending the
conclusion of discovery.

From this point, however, the landscape of the case
changed dramatically.  Since the parties and counsel are
intimately familiar with the subsequent events in the case, the
Court need not to dwell on the details here.  It is sufficient
for present purposes to merely list these events, in no
particular order:

1. Counsel for the OHSL defendants, the law firm of
   Keating, Meuthing & Klekamp ("KMK") have been
   disqualified from serving as trial counsel for the
   OHSL group of defendants, although the Court has
   permitted KMK to participate in pretrial matters.

2. The complaint has been amended to add KMK as a
   defendant to the action.  In addition, the complaint
   has been amended to add new claims and allegations
   based on subsequent events and newly discovered
   evidence.  Finally, the complaint has been amended
   to added the accounting firm of Ernst & Young as a
   defendant.

3. Although Mr. Thiemann initially engaged three law
   firms to handle this case, since March 2002,
   Specter, Specter Evans & Monague and The Brualdi
   Law Firm have requested and received leave to
   withdraw as counsel.  In addition, another attorney,
   Ann Lugbill, entered an appearance on behalf of
   Plaintiffs and then withdrew her appearance in the
   space of about three months.

4. Further discovery, which at this point apparently is
   not contradicted, indicates that Mr. Thiemann did
   not rely on the alleged misleading proxy statements
   and that the fraud-on-the-market exception is not
   applicable to those claims which require proof of
   reliance.

To one extent or another, all of these events play a part in the
Court's decision to vacate the order certifying a class of
plaintiffs in this case.

First and foremost, however, the Court agrees with Defendants that the order granting class certification was issued improvidently and precipitously. Plaintiff's motion for class certification came very early in the proceedings, and as Defendants noted, before any discovery had taken place. Therefore, much of the decision certifying the class was based on an incomplete and undeveloped record. Furthermore, the Court erred in failing to notice that Defendants were only in position to address certain of the Rule 23 elements until further discovery and in assuming that Defendants did not really contest those elements which it did not specifically address. In addition, our institutional memory of the events was that Plaintiff's counsel's unsolicited letter to the Court, which inquired as to the status of the motion for class certification, did indeed have the intended effect of stimulating an early ruling on the motion by the Court.[2] In retrospect, the Court acted improvidently. The Court believes that these reasons, by themselves, justify vacating the order granting class certification.

This conclusion is only strengthened, however, by events that have occurred since the issuance of the original class certification order, enumerated above. Rule 23 permits the Court to alter or amend class certification orders as the case

---

[1] In fact, the Court's ruling on class certification came only about two weeks after the receipt of counsel's letter. <u>See</u> Record Volume 3 (Plaintiff's counsel's letter attached to binder).

unfolds.  <u>See</u> Fed. R. Civ. P. 23(c)(1)(C) ("An order under Rule
23(c)(1) may be altered or amended before final judgment.").  The
Court addresses those events in reverse order.

     Part of the initial order certifying the class was
premised on the belief that individual reliance would not pose a
barrier to class certification because of the availability of the
fraud-on-the-market presumption, which does not require proof of
individual reliance.  The fraud-on-the-market presumption is
based on the theory that in an efficient market for a security,
all material information on the stock is widely available and
will be reflected in the price of the security.  <u>See</u> <u>Cammer v.</u>
<u>Bloom</u>, 711 F. Supp. 1264, 1281 (D.N.J. 1989).  Thus, the price of
the stock serves as a proxy, if you will, for the content of the
available information and hence dispenses with the need to
demonstrate actual reliance on the alleged misleading statements.
However, if the stock is inactively or thinly traded, or the
market is not responsive to new information, the fraud-on-the-
market presumption is not applicable.  <u>Cammer</u>, 711 F. Supp. at
1292-93.

     In this case, the evidence adduced thus far by
Defendants indicates that not only did the lead Plaintiff, Mr.
Thiemann, not rely on the alleged misleading proxy statement, he
concluded based on the proxy statement that the merger was a bad
investment.  <u>See</u> Thiemann Dep. at 80-84.  In other words, even
assuming that the proxy statement falsely painted the rosiest of
pictures regarding the merger, Mr. Thiemann still concluded that

the merger was a bad deal.  Therefore, he clearly was not misled
by the materials, thus legitimately raising the possibility that
other investors likewise were not fooled by the alleged
misleading proxy statements.  In addition, this development
suggests that individual issues could predominate over class
issues, at least with respect to claims which require reliance as
an element.

Furthermore, although the Court recognizes that the
fraud-on-the-market presumption can substitute for reliance, the
evidence submitted thus far shows that it likely would not be
applicable in this case.  As just stated, application of this
presumption requires trading in an efficient market.  However,
Mr. Thiemann's own deposition testimony demonstrates that,
despite being traded on the NASDAQ exchange, the market for OHSL
stock was not efficient.  Mr. Thiemann admitted that the price of
OHSL stock had been flat for "practically [its] whole lifetime"
and that the stock "was not easy to trade."  Thiemann Dep. at 73.
Therefore, because the fraud-on-the-market presumption is likely
not applicable, class certification would not be appropriate for
those claims requiring reliance as an element.  Consequently, it
would be error to let stand a class certification order covering
all of the claims in the complaint.

The Court also believes that vacating the earlier class
certification order is appropriate because of concerns over the
adequacy of class counsel.  The Court has a continuing duty to
monitor the performance of class counsel to ensure that adequate

representation is afforded to the class.  In re Quintus
Securities Litigation, 148 F. Supp.2d 967, 972 (N.D.Cal. 2001).
The initial certification order's analysis of the adequacy of
class counsel was based on a set of circumstances which, as the
events have played out, no longer hold true.

        As noted before, at the time of class certification,
Mr. Thiemann had engaged three law firms with significant
securities litigation experience.  Since that time, however, two
of the law firms have withdrawn from representation and another
lawyer has entered an appearance and then has withdrawn from
representation in a very short period.  This suggests that there
is or was some dysfunction in Plaintiff's camp.  Such dysfunction
could be detrimental to the best interests of the putative class
but, in any event, the withdrawal of counsel represents a
significant reduction in resources available to the class.  By
all appearances, a single lawyer remains to prosecute this
complex securities action.

        Beyond the question of the available manpower which
remains to the class, the Court's concerns regarding adequacy of
counsel extend to the manner in which Plaintiff's counsel has
litigated this case.  These concerns transcend mere technical
competence - because clearly there is that - and go to, for lack
of a better word, the professionalism, or lack thereof, displayed
by counsel thus far in this case.  If it seems that the Court is
more closely scrutinizing Plaintiff's counsel, it is only because
of our obligation to protect the absent class members.  Having

said that, our impression is that counsel, in his zeal to net as many alleged miscreants as possible, has been much like a boxer who simply puts his head down and comes out swinging. The end result has been considerable waste of everyone's time and resources.

For example, upon learning of KMK's involvement in the alleged securities fraud, counsel simply filed an amended complaint naming KMK as a party - despite the fact that at that point in the case the rules of procedure did not permit filing amendments without leave of the Court. Counsel then acted as if KMK were already a defendant[3] in the case by proceeding to notice depositions of KMK attorneys, which in turn precipitated extended skirmishing over whether the depositions should go forward or not. See Doc. No. 79, Exs. 10-18. Moreover, Court resources were further expended to clarify how this pleading should be treated. See Doc. No. 82 (directing the Clerk to re-docket pleading as a motion for leave to file an amended complaint). The fact that the Court largely sided with Plaintiff on this issue at a later time does not justify counsel's errant conduct because simple adherence to Rule 15 would have allowed an orderly disposition of the issue regarding KMK.[4]

---

[3]    For instance, just nine days after the amended complaint was filed without leave of court, a February 13, 2002 letter from Plaintiff's counsel to James Burke, an attorney with KMK, states: "I do not believe that it is appropriate for me to communicate with you or your firm since you are defendants in this action." Id. Ex. 10 (emphasis added).

[4]    In addition, in connection with the attempt to disqualify KMK, Plaintiff's counsel employed the questionable

Plaintiff's counsel, in his quest to bring KMK into the case, has been wasteful of resources in other ways too. As alluded to in an earlier order addressing Plaintiff's motion to disqualify KMK (Doc. No. 215), after Magistrate Judge Hogan recommended denying leave to amend the complaint, counsel filed objections to the order, a motion to reconsider that order, and filed a largely duplicative second lawsuit in an attempt to avoid the effect of that recommendation. More time and resources were needlessly expended attempting to restore the case to a manageable procedural posture. Again, the fact that the Court allowed Plaintiff to amend the complaint does not justify the highly irregular conduct. Counsel also has wasted everyone's time and resources by filing a baseless motion calling for Magistrate Judge Hogan to recuse from the case. See Doc. No. 165. This needless expenditure of time and resources is not in the best interests of the absent class members, nor the just, speedy, and inexpensive resolution of this matter. See Fed. R. Civ. P. 1.

Although the Court makes no specific findings of fact or conclusions regarding the adequacy of counsel at this time, these occurrences undermine the initial decision to certify the class and justify revisiting the adequacy of proposed class

---

tactic of trying to create a conflict of interest between defendants by tendering a settlement offer to an individual OHSL defendant, but not to the other defendants. We think that using a settlement offer to leverage disqualification of opposing counsel confers little if any benefit upon the absent class members.

counsel.  Therefore, for that reason, as well as the other reasons stated <u>supra</u>, it is appropriate to vacate the class certification order so that this issue can be fully analyzed with input from all parties.

Finally, given that there are new claims and new parties in the case, which are subject to new motions for class certification, it would be more efficient to deal with class certification as one issue, with the opportunity for the Court and counsel to consider any appropriate subclass.

For all of those reasons, Defendants' motions for reconsideration of the order granting class certification are well-taken and are **GRANTED**.  The order granting class certification is **VACATED**.  Defendants' motion to decertify the class is **MOOT**.  Plaintiff may file a new motion to certify this case as a class action in accordance with the revised calendar order (Doc. No. 221).

**IT IS SO ORDERED**

Date December 15, 2003          s/Sandra S. Beckwith
                                Sandra S. Beckwith
                                United States District Judge