FILED
JAMES BONINI
CLERK

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

03 DEC 29 AM 10:08

| | | |
|---|---|---|
| Walter W. Thiemann, on behalf of himself and of all others similarly situated, | : | Case No. C-1-00-793 |
| | : | Judge Sandra S. Beckwith |
| Plaintiff, | : | Magistrate Judge Hogan |
| vs. | : | **MOTION FOR LEAVE TO SUBMIT MOTION FOR RECONSIDERTION** |
| OHSL Financial Corporation, et al. | : | **ORAL ARGUMENT REQUESTED** |
| Defendants. | : | |

The plaintiff class respectfully moves this Court for permission to submit a motion for reconsideration of the 15 December 2003 Order (Doc. No. 227) vacating class certification. The basis for the motion for reconsideration is that the Order incorrectly perceives this case as an open-market, fraud on the market, impersonal securities case, is based on a series of mistakes that are demonstrably untrue, and misconceptions of the law regarding <u>reliance</u> in a direct, face to face, personal transaction as at bar.

Respectfully Submitted,

Dated: 29 December 2003

**GENE MESH & ASSOCIATES**

By: _____
Gene Mesh (0002076)
Michael G. Brautigam
GENE MESH AND ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502

1

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION**

This motion for reconsideration is respectfully submitted to the District Court to correct a series of mistakes in the Order Vacating Class Certification (Doc. No. 227), and to reverse the Order. As will be shown, many of the Court's conclusions are simply erroneous. The Court's decision to vacate class certification was largely based on the Court's perceived lack of professionalism by plaintiffs' counsel and the "non-reliance" by Mr. Thiemann on the misrepresentations and omissions in the Proxy Materials/Registration Statement which is the subject of this litigation, but is flawed in these regards.

## I.     ARGUMENT

### 1.  A Motion To Reconsider is the Appropriate Mechanism to Bring this Situation to the Court's Attention

A Motion for Reconsideration is appropriate to correct a manifest injustice. Here, the Court's Order vacating of the class certification is premised on a series of fundamental factual mistakes, with inferences then drawn from these factual mistakes. The record must be supplemented, hopefully corrected, and/or clarified after consideration of the correct legal principles and factual history.

### 2.  RELIANCE; The Court has Fundamentally Mis-Understood the Requirements of [Sec. 10. 1934 Act; Rule 10-5 (1934 Act] as MATERIALITY related to Loss Causation

The Court has mistaken this case for an open-market, fraud-on-the-market, securities case requiring proof of an efficient market for the securities in issue.

2

The only "market" requirement in this case is that the securities involved traded on a National Securities Exchange like the NASDAQ, and the "efficient market" requirement is not present as there is no fraud except upon OHSL shareholders. There was no open market fraud, impersonal trading in the trading of OHSL shares at bar; it was a direct, face to face, personal fraud. Perhaps the language of the Supreme Court as to the private right of action available to plaintiffs herein will be instructive and assist the Court in understanding that a purchaser or seller of "any security" can bring an action against "any person" who has defrauded the purchaser or seller, whether by utilization of §10(b) of the 1934 Act, as well as by the application of §11 of the 1933 Act, in a direct transaction, as at bar.

> Although limited in scope §11 places a relatively minimal burden on the plaintiff. In contrast, §10(b) is a "catchall" antifraud provision, but it requires a plaintiff to carry a heavier burden to establish a cause of action. While a §11 action must be brought by a purchaser of a registered security, must be based on misstatements or omissions in a registration statement, it can only be brought by a purchaser or seller of "any security" against "any person" who has used "any manipulative or deceptive device or contrivance" in connection with the purchase or sale of a security. 15 U.S.C.A. §78j (emphasis added)....

*Herman & Maclean v. Huddleston, et al.* 459 U.S. 375 at 382, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983).

The Supreme Court further held at 459 U.S. 382, 387, 103 S. Ct. 683, 74 L. Ed. 2d. 548 that "the availability of an express remedy under §11 of the 1933 Act does not preclude defrauded purchasers of registered securities from maintaining an action under §10(b) of the 1934 Act." This language applies to this direct, personal, one on one type of transaction.

The Sixth Circuit, while reversing the lower court and a prior panel decision in a direct, face-to-face transaction such as at bar involving §10 and Rule 10b-5, stated *en banc*:

> In sum, while an attorney representing the seller in a securities transaction may not always be under an independent duty to volunteer information about the financial condition of his client, he assumes a duty to provide complete and non-misleading information with respect to subject on which he undertakes to speak. As the Seventh Circuit so aptly put the point, "[u]nder rule 10(b)-5...the lack of an independent duty does not excuse a material lie. *Ackerman v. Schwartz*, 947 F.2d 841 (7th Cir. 1991). When Barnhart consented to speak to Rubin and Weiss concerning the status of MDI's relation ship with Star Bank's likely reaction to a substantial loan from Rubin and Cohen, he assumed a duty to speak full and truthfully on those subjects.

*Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263 at 268 (6th Cir. 1998).

This Court has overlooked the character of the face-to-face, proxy solicitation of OHSL shareholders by Provident and incorrectly assumed that plaintiffs must prove an "efficient market" in order to apply rule 10b-5, which is as follows in full text. There is no such requirement in fact of law.

The text of Rule 10b-5 is as follows:

> It shall be unlawful for any person, directly or indirectly, buy the use of any means or instrumentality of interstate commerce, or of the mails or any facility of any national securities exchange.
>
> a) To employ any device, scheme, or artifice to defraud,
>
> b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, no misleading, or

4

    c) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit up on any person, in connection with the purchase or sale of any security.

17 C.F.R. §240.10b-5

All that is required in a face-to-face transaction is that the securities be traded on a national Securities Exchange, like NASDAQ and that requirement is only needed to trigger the Rule. The efficient market argument is only needed when one is attempting to show fraud in an open-market, fraud on the market cases.

## Materiality Causation

This court has also ignored the "transaction-loss-causation" aspect of Rule 10b-5 in a face-to-face transaction, (as well as in open market fraud cases) and has based its opinion on Mr. Thiemann's lack of RELIANCE[1]. Plaintiffs have clearly alleged that omissions and omissions of material fact not only caused Mr. Thiemann's vote for the merger but that the same commissions and omissions caused the decline in value of the currency used by Provident in the subject transaction. Yet the Court finds that Mr. Thiemann <u>did</u> <u>not</u> rely on the materially false Proxy Materials/Registration Statement that contained omissions on which Mr. Thiemann could not have possibly relied and used this imagined non-reliance as another reason for decertification. One court--citing the seminal Supreme Court

---

[1] As is clearly shown by both affidavit and testimony, Mr. Thiemann DID rely on the Proxy Materials/Registration Statement. He voted in favor of the merger based, *inter alia*, on his belief that the directors of OHSL had unanimously approved the acquisition and believed that the merger was in the best interests of OHSL shareholders. This was false. Nevertheless, if the Court wants "non-reliance," plaintiffs still prevail.

case on 10b-5 and "reliance" on <u>omissions</u> in the face-to-face, personal transaction – put it well:

> Transaction causation can be thought of as a "but for" causation or reliance… where the complaint alleges a failure to disclose material facts, "positive proof of reliance is not a prerequisite to recovery. *Affiliated Ute Citizens v. United States*, 406 U.S. at 153-54…(1972). Rather, proof of materiality coupled with a duty to disclose establishes "causation in fact". *id.* Therefore, in an omission case, transaction causation, which is actually reliance, can be inferred from materiality.

*Peres-Rubio v Wyckoff*, 718 Supp. 217 (S.D.N.Y. 1989).

The Sixth Circuit speaks to reliance, omissions, and materiality in person-to-person, face-to-face, 10b-5 cases in *Rubin, supra*, at 268:

> We begin with the plaintiff's <u>reliance</u> on Barhart's <u>omissions</u>-- that is Barnhart's failure to mention that MDI was in default at the time the proposed investment was being negotiated, or that the proposed investment would itself constitute a default. "In the case of <u>omission</u> or <u>non-disclosure</u> of material facts, the element of <u>reliance</u> on the part of the plaintiffs may be presumed." *Molecular Technology Corp. v. Valentine*, 925 F.2d 910, 918 (6th Cir., 1991); *See also, Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54, 92 S. CT. 1456, 1472 31 L. ED 2D 741 (1972) ("positive proof of <u>reliance</u> is not a prerequisite t recovery [in a failure-to-disclose case]. All that is necessary is that the facts withheld be <u>material</u> in the sense that a <u>reasonable investor might have considered them important in the making of this decision</u>)." (emphasis added).

### 3. Counsel for the Plaintiff Had Permission to Amend the Complaint

Much of the Court's vitriol is directed at plaintiffs for filing an amended complaint without permission of the Court. This is simply untrue. The Court states in its decertification Order:

> For example, upon learning of KMK's involvement in the alleged securities fraud, counsel simply filed an amended complaint naming KMK as a party-despite the fact that at that point in the case the rules of procedure did not permit filing amendments without leave of the Court. Counsel then acted as if KMK were already a defendant (footnote below) in the case by proceeding to notice the deposition of KMK attorneys, which in turn precipitated extended skirmishing over whether the depositions should go forward or not. See Doc. No. 79, Exs. 10-18. Moreover, Court resources were further expended to clarify how this pleading should be treated. See Doc. No. 82 (directing the Clerk to re-docket pleading as a motion for leave to file an amended complaint). The fact that the Court largely sided with Plaintiff on this issue at a later time does not justify **counsel's errant conduct** because simple adherence to Rule 15 would have allowed for an orderly disposition of the issue regarding KMK.
>
> Footnote 3   For instance, just nine days after the amended complaint was filed without leave of the court, a February 13, 2002 letter from Plaintiff's counsel to James Burke, an attorney with KMK states: "I do not believe that it is appropriate for me to correspond with you or your firm <u>since you are defendants in this action.</u>" <u>Id.</u> Ex. 10

Order at 10, emphasis added, in the body, emphasis in original in the footnote.

There is no errant conduct, and the District Court needs to be aware of this fact. The procedural history of the amended complaint is as follows:

First, on 10 January 2002 at a status conference held in the chambers of Magistrate Judge Hogan, (unfortunately this was not transcribed), the plaintiffs sought and received permission to amend the complaint. This was over the vociferous objections of James E. Burke, Esq. of KMK, who correctly predicted that the plaintiffs would sue KMK. Magistrate Hogan considered and rejected KMK's opposition, and allowed plaintiffs to amend the complaint. This is clearly

7

reflected in several places. The Docket Sheet includes these two entries: Doc. 62 ORDER by Mag. Judge Timothy S. Hogan granting plaintiffs motion to amend Complaint, Doc. 63 THIRD AMENDED CALENDAR ORDER (Attached as Exhibit A), which lists at point 1 as follows:

> 1. <u>Deadline for amending complaint:</u> **February 8, 2002**

Second, Magistrate Judge Hogan, in comments from the bench on May 23, 2003 stated as follows:

> Second is, **I granted a motion to amend the complaint**.
> Objections were filed. Judge Beckwith remanded it.
> She always uses delicate language when she disagrees
> with me. and you can read into that two things, both
> of which are possible:
>
> One is, she really thinks that it was, rather than a motion
> to amend, it was motion for leave to amend, and on that
> basis the case was remanded.

Transcript of Proceedings, emphasis added, Attached as Exhibit B.

Once again, <u>there is no "errant conduct"</u> on the part of counsel for the plaintiffs, merely compliance with a lawful Order of this Court by Magistrate Judge Hogan. Such an interpretation—the only interpretation consistent with the plain language--is that the plaintiff class was permitted to amend the complaint; moreover, the amendment's scenario does not become part of the reason for decertification.

Similarly, the Clerk had no trouble interpreting the Magistrate Judge's decision in exactly the same way that plaintiffs did. Docket Entry 62 clearly states as follows: "ORDER by Mag. Judge Timothy Hogan granting plaintiffs motion to

amend Complaint." The next Docket Entry, No. 63, docketing the Third Amended Calendar Order, also reflects that the plaintiffs had permission to amend the Complaint, stating as follows: "THIRD AMENDED CALENDAR ORDER by Mag. Judge Timothy S. Hogan; Amended Complaint ddl ser for 2/8/02."

There was no errant conduct, but instead scrupulous compliance with the Orders of this Court. It is fundamentally wrong and procedurally unfair to vitiate the heretofore certified class because of an imagined scenario. Once it has been established that the plaintiff class amended the complaint and only with the specific permission of Magistrate Judge Hogan, the plaintiff's counsel cannot be faulted for treating KMK as a defendant and attempting to move the case. The Court seems to require some kind of "lovefest" standard of behavior from plaintiffs' counsel toward KMK; that is perhaps unrealistic and will be difficult to achieve, since KMK is both defendant and defense counsel, despite their disqualification.

With respect to Footnote 3 of the Order, the fundamental premise is that the complaint was filed without leave of the Court. That has now been shown to be in error. Accordingly, it is only fair that the Court not hold its own misunderstanding against plaintiff's counsel. Since the complaint was amended <u>with</u> leave of the Court, counsel's conduct was entirely proper and perhaps the decertification Order was also improvident. *See*, Affidavit of Michael G. Brautigam, Attached as Exhibit C.

9

### 4. This Court's Opinion and Order (Doc No. 82) is Inconsistent With the Decertification Order

At the January 10, 2002 scheduling conference, plaintiffs clearly indicated that they wished to add the law firm of KMK as a defendant, based on the deposition testimony of two Dinsmore lawyers, who blamed KMK for any inaccuracies in the Proxy Materials/Registration Statement at issue. KMK, counsel for other defendants, vociferously objected. Plaintiffs were treading on hallowed ground. Magistrate Judge Hogan nevertheless permitted the amendment, and the complaint was amended within the guidelines then set forth in the Third Amended Calendar Order. Plaintiffs are uncertain as to how this chronology of events amounts to "errant conduct" on the part of counsel.

Doc. No. 82 discusses the Third Amended Calendar Order, stating:

> The Magistrate Judge's Scheduling Order in this matter says merely "Deadline for amending complaint: February 8, 2002." (Doc. No. 63). This Court believes that the appropriate interpretation of that language, in the spirit of Fed. R. Civ. P. 15 (a) and in conformity of established practice, should be that plaintiff was afforded until February 8, 2002 to move to amend his complaint.

Order at 4.

The Order continues:

> Defendants' objection to the Scheduling Order established by the Magistrate Judge is sustained <u>to the extent that the Order may have inadvertently implied that Plaintiff was entitled to file his Amended Complaint without affording Defendants the opportunity to test the merits of a motion for leave to file an amended complaint in the manner suggested in Foman</u>.

Order at 5, emphasis added.

Significantly, Doc. No. 82 does not fault plaintiffs' counsel in any way. On the contrary, the Court goes out of its way to acknowledge that the Order may have inadvertently implied that plaintiff was entitled to file his "Amended Complaint." Although the Court stated that there was an "appropriate interpretation" of the language of Magistrate Judge Hogan's Order <u>after the fact</u>, plaintiff did not have then and does not have now a crystal ball that determined the "appropriate interpretation." Instead, plaintiffs relied on the plain language of the Order, complied with the Order, and were not faulted for compliance with the Order at the time. What the Court seems to be really concerned about is that the original class order was "improvident," but would rather blame it all on plaintiffs' counsel's "errant conduct."

### 5. This Case is Not Being Litigated by a Single Attorney

The Court's Order states: "By all appearances, a single lawyer remains to prosecute this complex securities action." Order at 9. It is unclear how the Court arrived at this conclusion, or why the Court finds that the size of plaintiffs' firm to be reason for comment or decertification, if adequate resources are being brought to bear in the case. Attorney Gene Mesh, who has litigated complex class action cases in this district and nationwide for more than 40 years, has been actively involved in all aspects of the case from inception, and continues to be involved on a day to day basis. Mr. Mesh has participated in several depositions, reviewed thousands of pages of documents, participated in status conferences, repeatedly met with clients,

11

made Court appearances, conducted settlement negotiations, written, reviewed, signed pleadings, financially supported the litigation and has done everything that would be expected of any attorney in similar circumstances. Plaintiffs are uncertain as to how the Court could have come to a contrary conclusion, especially since the District Court has not met with the parties in the 39 months that the case has been pending. (*See*, Declaration of Gene Mesh, attached as Exhibit D).

Yet this expression of concern from the Court is found throughout its opinions; it equates a "numerical test" that the Court believes plaintiffs' counsel must meet, numerically measuring those on one side against those on the other. Life and minority shareholder litigation is not that way when plaintiffs' lawyers operate as small firms on a contingency fee basis against massive defense law firms with battalions of well and regularly paid senior and junior lawyers and hordes of paralegals and secretaries who bill large clients monthly and are sustained by the churning of litigation.

### 6. Counsel for the Plaintiff Has Adequate Resources

The Court is apparently concerned about the nature and quality of the resources brought to bear on behalf of the class. First, Gene Mesh has been intimately involved in the case from inception, and there is nothing in the record to indicate otherwise—aside from the unsupported smear tactics exclusively on the part of KMK, which the Court has brought into the case as defendants.

### 7. The Results in the Case Speak for Themselves

The results in this case speak for themselves. If plaintiff's counsel has achieved this result with resources that the Court deems less than some "minimal" requirement, it is because they have worked efficiently and have, overcome the defendants motions to dismiss and progressed through difficult discovery problems, primarily caused by KMK's use of their multiple representations to obstruct discovery[2]. Certainly plaintiffs are not happy with the delay, but this delay seems to have more to do with procedural confusion than with the efforts of counsel. If anything, counsel has been aggressive in attempting to move the case forward to allow for the orderly presentation of issues at trial, but has been thwarted at every turn by KMK's reluctance to participate in the case, both as defense counsel and as defendants and criticized by the Court on separate occasions. The Court has only recently called a halt to that non-sense, although no discovery has taken place since the Court lifted one of the many discovery stays on 27 October 2003, (Doc. No. 218) and none is firmly scheduled at this time.

### 8. Walter W. Thiemann <u>Did</u> <u>Rely</u> on the Materially False and Misleading Proxy Materials/Registration Statement

---

[2] It is important to remember that the original complaint was so obviously meritorious that the Dinsmore defendants, recognizing the futility, did not even move to dismiss the complaint, but answered it instead. Generally speaking, the litigation with the Dinsmore defendants has proceeded smoothly, with the Dinsmore defendants sometimes finding themselves aligned with the plaintiffs, for example, in the opposition of the Dinsmore defendants to some of KMK's motions for protective Orders, See, Docs. No. 138, 139, 140. 142.

At page 5 of the Order, the Court states as follows:

> 4. Further discovery, which at this point is apparently not contradicted, indicates that Mr. Thiemann did not rely on the allegedly misleading proxy statements and that the fraud-on-the market exception is not applicable to those claims which require proof of reliance.

Order at 5.

First, this is simply not true and is also rebutted by the Thiemann affidavit, (Attached as Exhibit E). as well as by Thiemann's testimony at his deposition at pages 117 to 126. As was alleged from inception, Mr. Thiemann relied on the materially false and misleading Proxy Materials/Registration Statement in voting in favor of the transaction. Had he known the true facts, he would have voted against the transaction. It is unclear—and incorrect—how the Court formed the opinion that Mr. Thiemann did not rely on the Proxy Materials/Registration Statement. In any event, it has been clearly rebutted by his affidavit, as well as his deposition testimony, which is unambiguous on this point. Moreover, to the extent that this case involves omissions to state material facts, it is not necessary to prove reliance, but only materiality and loss causation. (*See, ante*, pages 3-7). These are the legal requirements of reliance in an omissions case. Regardless of the scenario the Court chooses, reconsideration and correction are in order.

### 9. There is No Disarray With Plaintiff's Counsel

Plaintiffs and their counsel are hard pressed to understand how the withdrawl of faint-hearted counsel years ago impacts this case in December 2003. Obviously, this Court permitted the withdrawal of certain counsel literally years ago, and the case has proceeded. This Court has recognized in prior Orders that the breakdown came when the complaint was amended, as those long-gone counsel lacked the *chutzpah* to sue KMK, the co-authors of the materially false and misleading Proxy Materials/Registration Statement. Since that time, KMK has refused to cooperate in the case to any reasonable degree, and it is this lack of cooperation, as well as the procedural confusion that this unusual procedural posture, i.e. KMK simultaneously as defense counsel and defendants, that has thrown this case off track. Vacating the class certification order does nothing to get the case on track, and is based on fundamentally false premises.

### 10. The Class is Entitled To Counsel Who Will Not Be Intimidated

The class is entitled to class counsel who will not be intimidated. After the initial decision on the motion to dismiss on 25 July 2001 (Doc. No. 46), counsel for KMK—though not the Dinsmore defendants--wrote on 6 August 2001 to the two law firms who have since withdrawn, threatening to bring Rule 11 sanctions if they continued to prosecute the case. (Attached as Exhibit F). The Mesh firm, refusing to be intimidated, will not knuckle under to this attempt. (Response attached as Exhibit G).

Similarly, once this Court ruled on 20 October 2003 that the case would be allowed to proceed, shadow counsel for KMK (Louis F. Gilligan and Pat Fischer),

Louis F. Gilligan, who represents KMK, but has also represented the OHSL and Provident defendants in this litigation, again saw fit to threaten counsel for the plaintiffs if they proceeded, though this time the extent of the threat is limited to proceeding only against KMK itself[3]. (Attached as Exhibit H). Plaintiffs' counsel will answer this threat with the filing, by specific Court direction, of the Consolidated Amended Complaint.

The Court should take note that it is only KMK who has repeatedly threatened counsel with sanctions, and that it is only the Mesh firm that has refused to be intimidated by these threats. The class deserves nothing less.

## II.   CONCLUSION

For the foregoing reasons, the plaintiff class respectfully requests that the motion to reconsider be granted, and that class certification be reinstated. Should the Court not reconsider the motion or otherwise not reinstate class certification, plaintiffs respectfully request that the Court immediately certify this question to the Sixth Circuit for an immediate appeal.

Respectfully Submitted,

**GENE MESH & ASSOCIATES**

---

[3] In its disqualification Order (Doc. No. 215), the Court may not have been aware of the existence of this shadow team of KMK attorneys, (including Mr. Gilligan and Patrick Fischer) who apparently shift back and forth between representing the OHSL and PFGI defendants as it suits KMK's overall purposes.

Dated: 2? December 2003

By: _____
Gene Mesh (0002076)
Michael G. Brautigam
GENE MESH AND ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800 (Telephone)
(513) 221-1097 (Facsimile)

17

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion for Reconsideration was served this 29th day of December 2003 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

John B. Pinney, Esq.
Michael Debbler, Esq.
GRAYDON HEAD & RITCHEY
Fifth Third Center
511 Walnut Street, Suite 1900
Cincinnati, OH 45202

Michael Barrett, Esq.
Barrett & Webber
105 East Fourth Street, Suite 500
Cincinnati, OH 45202-4015

**BY FIRST CLASS MAIL**

John Hust, Esq.
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
Suite 110, Governor's Knoll
11935 Mason Road
Cincinnati, OH 45249

James E. Gauch, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

**Michael G. Brautigam**