# EXHIBIT A



# KEATING, MUETHING & KLEKAMP, P.L.L.

ATTORNEYS AT LAW | 1400 PROVIDENT TOWER • ONE EAST FOURTH STREET • CINCINNATI, OHIO 45202-3752
TEL. (513) 579-6400 • FAX (513) 579-6457 • www.kmklaw.com

LOUIS F. GILLIGAN
DIRECT DIAL: (513) 579-6522
FACSIMILE: (513) 579-6457
E-MAIL: LGILLIGAN@KMKLAW.COM

August 29, 2003

Michael G. Brautigam, Esq.
2605 Burnet Avenue
P.O. Box 29073
Cincinnati, Ohio  45229

      Re:    <u>Thiemann v. OHSL Financial Corp.</u>

Dear Michael Brautigam:

      As Pat Fischer previously advised you, we will object to the depositions of Gary Kreider and David Rosenberg. I believe the testimony of Tim Matthews and Mark Weiss made clear that these two individuals had minimal involvement in the OHSL transaction. We can wait to get their transcripts to discuss this further.

      I have separately spoken with each individual to confirm this testimony, however. Gary Kreider's recollection is that he spent less than 10 hours on the matter answering technical securities questions from Mark Weiss. He was not involved in the substance of the transaction and he has no specific recollection of anything relating to the proxy statement.

      David Rosenberg has no recollection of doing anything on the OHSL transaction nor of how many hours he may have billed, if any. He recalls that he was on vacation when the merger agreement was being negotiated and did not return until it was almost completed. Other than this, he cannot recall doing anything on the transaction or on the proxy statement.

      With respect to Mark Weiss, we have no problem if you wish to review the deposition transcript before finishing his deposition, with one condition. We are not willing to postpone this matter indefinitely because the OHSL transaction is now fresh in Mark's mind and we do not want to have to go through the time and effort of preparing him again. Assuming the deposition is transcribed in the next week or so, we can schedule Mark's deposition after it has been completed. We propose September 9, 10, 16, 18, or 19 to conclude Mark's deposition. Since we only have approximately 2 to 2½ hours left, we can schedule this deposition at a time that is

Michael G. Brautigam, Esq.
August 29, 2003
Page 2

convenient for all concerned. We are not willing to delay the conclusion of Mark's deposition beyond mid-September.

Sincerely yours,

KEATING, MUETHING & KLEKAMP, P.L.L.

By: *Louis F. Gilligan*
Louis F. Gilligan

LFG:jlm

cc:   Mark A. Weiss, Esq.
      James E. Burke, Esq.
      John W. Hust, Esq.

# EXHIBIT B

```
 1
 2              UNITED STATES DISTRICT COURT
 3              SOUTHERN DISTRICT OF OHIO
 4                   WESTERN DIVISION
 5
 6                        - - -
 7   WALTER W. THIEMANN,     :
     On Behalf of Himself    :
 8   And of All Others       :
     Similarly Situated,     :
 9                           :
             Plaintiff,      :
10                           :
        vs.                  :  CASE NO. C-1-00-793
11                           :
     OHSL FINANCIAL          :
12   CORPORATION, et al.,    :
                             :
13         Defendants.       :
14                        - - -
15          Deposition of MARK WEISS, ESQ., a
16   witness herein, called by the plaintiff for
17   cross-examination pursuant to the Federal Rules
18   of Civil Procedure, taken before me, Lee Ann
19   Williams, a Registered Professional Reporter
20   and Notary Public in and for the State of Ohio,
21   at the offices of Gene Mesh & Associates, 2605
22   Burnet Avenue, Cincinnati, Ohio 45219, on
23   Friday, August 22, 2003, at 9:00 a.m.
24
25
```

Page 94

1  Q. I didn't mean to mischaracterize
2  your statements.
3  A. Okay.
4  Q. What was Mr. Kreider's role with
5  respect to the creation and dissemination of
6  Defendant's Exhibit 1?
7  A. Mr. Kreider was the -- really the
8  senior partner of the, the securities practice.
9  And I don't recall exactly what role he had.
10  Q. Well, he was listed on the various
11  distribution lists, correct?
12  A. I suppose, if that's -- if that's
13  what the distribution lists say.
14  Q. And would you infer that Mr.
15  Kreider reviewed the various drafts, the
16  various documents that were circulated?
17     MR. BURKE: Objection. Calls for
18  speculation.
19  A. I don't know what Mr. Kreider
20  reviewed.
21  Q. Did you ever have discussions with
22  Mr. Kreider about the OHSL-Provident merger?
23     MR. GILLIGAN: You can answer --
24     MR. BURKE: Yes or no.
25     MR. GILLIGAN: -- whether you had

Page 95

1  discussions. Not what the discussions were.
2  A. Yes.
3  Q. Okay. Approximately how many
4  discussions did you have with Mr. Kreider?
5  A. I don't recall.
6  Q. Approximately how long did they
7  last?
8  A. I wouldn't recall a conversation I
9  had with Mr. Kreider three weeks ago, much less
10  four years ago.
11  Q. Okay. Would these conversations
12  be reflected in your billing records?
13  A. Probably not.
14  Q. Why not?
15  A. Well, the conversations -- the
16  existence of the conversations would, but the
17  length would not.
18  Q. Okay. What was Mr. David
19  Rosenberg's role in the creation of Defendant's
20  Exhibit 1?
21  A. I don't think Mr. Rosenberg had a
22  role.
23  Q. All right. Well, I'll show you
24  later that he's on the distribution list and we
25  can revisit that.

Page 96

1  What was Mr. Matthews' role with
2  respect to the creation of Defendant's Exhibit
3  1?
4  A. As the person who handled the
5  negotiation of The Merger Agreement on behalf
6  of Provident, he would have been included due
7  to his knowledge of the transaction.
8  Q. And what was Mr. Reuter's role in
9  the preparation and dissemination of
10  Defendant's Exhibit 1?
11  A. Mr. Reuter worked with me in, as
12  you say, the ministerial compilation of the
13  document.
14  Q. What was Mr. Winstead's role with
15  respect to the creation and dissemination of
16  Defendant's Exhibit 1?
17  A. I don't recall.
18  Q. Did any other attorneys work on
19  the OHSL-Provident merger at KMK, other than
20  the ones I've already mentioned?
21  A. I don't know of any others in the
22  securities area. I, I would have to defer to
23  Mr. Matthews as to whether he worked with any
24  other attorneys on the negotiation of The
25  Merger Agreement.

Page 97

1  Q. When is the first time that you
2  became aware of any litigation involving the
3  OHSL and Provident merger?
4  A. I don't remember.
5  Q. At any point since you became
6  aware of any litigation, did you talk to anyone
7  at KMK other than Mr. Gilligan and Mr. Fischer
8  about the pending litigation?
9  A. I don't remember.
10  Q. Did anyone ever ask you what was
11  going on after it became known that you had
12  been named as a defendant in the pending
13  litigation?
14     MR. BURKE: Did anyone ever ask
15  him what was going on?
16  A. Yes. I don't understand what --
17  Q. Did anyone ever mention to you
18  that you had been sued or that they had learned
19  that you had been sued with respect to your
20  work in the OHSL-Provident merger?
21  A. Yes.
22  Q. Okay. Who mentioned it?
23  A. Actually, Mark Magee called me
24  after it happened.
25  Q. Okay. And when you spoke to Mark

Williams & Oliver
(513)683-9626

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3               SOUTHERN DISTRICT OF OHIO
 4                   WESTERN DIVISION
 5
 6                         - - -
 7   WALTER W. THIEMANN,      :
     On Behalf of Himself     :
 8   And of All Others        :
     Similarly Situated,      :
 9                            :
            Plaintiff,        :
10                            :
       VS.                    : CASE NO. C-1-00-793
11                            :
     OHSL FINANCIAL           :
12   CORPORATION, et al.,     :
                              :
13          Defendants.       :
14                         - - -
15         Deposition of TIMOTHY B. MATTHEWS, ESQ.,
16   a witness herein, called by the plaintiff for
17   cross-examination pursuant to the Federal Rules
18   of Civil Procedure, taken before me, Lee Ann
19   Williams, a Registered Professional Reporter
20   and Notary Public in and for the State of Ohio,
21   at the offices of Gene Mesh & Associates, 2605
22   Burnet Avenue, Cincinnati, Ohio 45219, on
23   Thursday, August 21, 2003, at 10:03 a.m.
24
25
```

Page 218

1 large part?
2    A.  No.  I don't think that's exactly
3 correct, but the degree of my involvement did
4 change dramatically after Mark became involved,
5 because the preparation of the proxy statement
6 and prospectus was a matter within his
7 expertise and not mine.  And so from the
8 standpoint of that particular part or phase of
9 the transaction, he was more heavily involved,
10 much more so than I.
11    Q.  Did Mark Weiss work with Cliff Roe
12 or Charles Hertlein extensively in the
13 preparation of the proxy materials?
14       MR. MAUNDRELL:  Objection.  Form,
15 foundation.
16    A.  Yes.
17    Q.  Was he the person with the overall
18 responsibility -- he meaning Mark Weiss -- for
19 finalizing the proxy materials and registration
20 statement?
21       MR. BURKE:  Objection.  Calls for
22 speculation.  He'll be here tomorrow.
23    A.  No.  I think that it was a
24 collaborative effort.  I believe I've testified
25 to that previously, that this was an effort

Page 219

1 that required cooperation on the part of both
2 of the law firms involved, as well as the
3 principals themselves, the knowledgeable
4 officers and directors.
5    Q.  Was a committee ever formed to
6 effectuate the merger?
7       MR. BURKE:  Committee?
8    A.  A committee of whom?  By whom?
9    Q.  Of anyone involved with the
10 merger, for example, KMK attorneys, Dinsmore
11 attorneys, Provident people.
12       MR. BURKE:  A committee?
13    Q.  Yes.
14       MR. BURKE:  Objection to form.  I
15 have no idea what that means.
16    A.  Yes.  I don't know really what you
17 mean, either.  I -- not to my knowledge, but
18 there could have been.
19    Q.  Okay.  What was Mr. Kreider's role
20 with respect to this merger?
21    A.  Minimal.  He was the -- as, again,
22 I've testified previously, he was the head of
23 the securities department.
24    Q.  Right.
25    A.  And so as a -- in an oversight

Page 220

1 capacity, he was there to consult with if
2 questions came up.
3    Q.  Okay.  I think I've asked you
4 about the remaining KMK attorneys.  Could I
5 direct your attention to page 48 of the
6 document, please, where it says the number of
7 directors?
8    A.  Right.  Part of mine is obscured
9 with a black mark.
10    Q.  Right.  Well, the part that I'm
11 interested in is below that.
12    A.  Okay.
13    Q.  The last sentence of the second
14 paragraph in that section says, The OHSL Board
15 of Directors has set the current number of
16 directors at eight.
17    A.  Um-hmm.
18    Q.  Does that mean that the bylaws of
19 the OHSL provided for eight directors at that
20 time?
21       MR. BURKE:  Objection, foundation.
22       MR. MAUNDRELL:  Objection,
23 foundation.  Document speaks for itself as
24 well.
25       MR. BURKE:  It also calls for

Page 221

1 speculation on the part of this witness.  He's
2 already testified to his role in this matter.
3    A.  No, it does not mean that.
4    Q.  Does that mean that there are
5 eight directors -- eight OHSL directors at this
6 time?
7    A.  No.
8       MR. MAUNDRELL:  Objection.
9    Q.  What does it mean?
10    A.  It means that, you know, one or
11 more of the charter documents of the company,
12 that is OHSL, permit the -- well, actually it
13 says in the first sentence, certificate of
14 incorporation.  It says that the Board of
15 Directors has the ability from time to time to
16 determine how many directors there should be.
17 And, therefore, the Board has the ability to
18 change that.
19       I don't know what further
20 limitations there might have been.  That would
21 be speculation on my part, but sometimes there
22 are minimums and maximums, but the certificate
23 of incorporation permits the Board to set by
24 resolution the number of directors.
25       And the fact that the Board has