FILED
JAMES BONINI
CLERK

03 DEC 31    AM 10: 41

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN AND GARY AND LISA MEIER, AND GARY MEIER C-F LINDSEY MEIER On behalf of themselves and all others Similarly situated | : | |
| Plaintiffs | : | Case No. C-1-00-793 |
| | : | Judge Sandra S. Beckwith |
| v. | : | |
| OHSL FINANCIAL CORP., (OHSL) OAK HILLS SAVINGS AND LOAN COMPANY, F.A. NORBERT G. BRINKER, KENNETH L. HANAUER, WILLIAM R. HILLEBRAND, ALVIN E. HUCKE, THOMAS E. MCKIERNAN, JOSEPH J. TENOEVER, HOWARD N. ZOELLNER, PROVIDENT FINANCIAL GROUP, INC., (PROVIDENT) THOMAS D. GROTE, JR. PHILIP R. MEYERS, JOSEPH A. PEDOTO, JOSEPH A. STEGER, CHRISTOPHER J. CAREY, CLIFFORD ROE, CHARLES HERTLEIN DINSMORE & SHOHL L.L.P, MARK WEISS, KEATING, MUETHING & KELKAMP, P.P.L AND ERNST & YOUNG | : : : : : : : | **CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT ("CAC")**<br><br>**JURY TRIAL DEMANDED** |

**            **            **            **            **

DATED: DECEMBER 31, 2003

**GENE MESH & ASSOCIATES**
Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for the Plaintiff and Class

Table of Contents

INTRODUCTION

I.    NATURE OF THE ACTION AND PARTIES    5

I.    JURISDICTION AND VENUE    7

I.    THE PARTIES    8

    Plaintiffs    8

    The Oak Hills Defendants – Corporate and Individual    9

    The Provident Defendants – Corporate and Individual    13

    The Law Firm Defendants

        17

    The Accounting Firm Defendants    21

I.    CLASS ACTION ALLEGATIONS    23

I.    ALLEGATIONS OF FACT UPON WHICH CLAIMS FOR RELIEF ARE BASED.    26

    1999: Certain Members of The OHSL Board Decide to Sell the Company    26

    Events Leading up to the October 25, 1999    34
    Special Meeting of OHSL's Shareholders

    The October 25, 1999 Special Meeting of the OHSL Shareholders    36

    KMK's Dominant Role in Effectuating the OHSL-Provident Merger and    40
    the Manipulation of the Class' Interest while Co-Authoring the Proxy/Registration
    Statement in a Joint Effort with Dinsmore

    KMK Successfully Thwarts Attempts to Obtain Expedited Discovery and an    48
    Injunction in the State Court Action

    The March 5, 2003 and April 15, 2003 Restatements:    49
    Ernst & Young's (E&Y) Role in "Off the Books" Accounting Systems

    The Conduct of Ernst & Young (E&Y) Was Wrongful, Reckless and Violated    57
    Both Generally Accepted Accounting Principals (GAAP) and Generally Accepted

Audition Standards (GAAS) as to Revenue Recognition Methods and Procedures
regarding Auto Leases and "Off the Books" Accounting

E&Y's Violations Of Generally Accepted Accounting Principles ("GAAP") and
Generally Accepting Auditing Standards ("GAAS") – Generally

E&Y's Violations of GAAS and GAAP – Specifically

    a.  E&Y's Evaluation of Providents' Internal Control Structure was    60

        Inadequate and Did Not Provide it With an Appropriate Basis and

        Preparing or Opining on Provident's Financial Statements

    a.  E&Y Violated t he Requirements of SAS 57 (AU 342)    61

Material Misstatements And Omissions in Proxy Materials/Registration Statement    62

I.    CLAIMS FOR RELIEF    66

**COUNT I**    66
AGAINST ALL DEFENDANTS
FOR VIOLATION OF SECTION 11
OF THE SECURITIES ACT, 15 U.S.C. § 77 k

**COUNT II**    69
AGAINST OHSL, PFGI, THE OHSL INDIVIDUAL DEFENDANTS, THE PROVIDENT
INDIVIDUAL DEFENDANTS AND ERNST & YOUNG FOR VIOLATION OF SECTION
12 (2) OF THE SECURITIES ACT, 15 U.S.C. § 771(2)

**COUNT III**    71
AGAINST DEFENDANTS HANAUER, HOVERSON, AND COOK FOR CONTROL
PERSON LIABILITY PURSUANT TO SECTION 15 OF THE SECURITIES ACT, 15
U.S.C.§77 (o)

**COUNT IV**    71
AGAINST OHSL, PFGI, THE OHSL INDIVIDUAL DEFENDANTS AND THE
PROVIDENT INDIVIDUAL DEFENDANTS AND ERNST & YOUNG FOR VIOLATION
OF SECTION 14 OF THE EXCHANGE ACT, 15 U.S.C. § 78n(a) AND SEC RULE 14a-9,
17 C.F.R. §240.14a9 PROMULGATED THEREUNDER

**COUNT V**    73
AGAINST ALL DEFENDANTS FOR VIOLATION OF §10(B), 15U.S.C. § 78 (j) b OF
THE EXCHANGE ACT AND RULE 10b-5, 17 C.F.R. §240.10b-5, PROMULGATED
THEREUNDER

**COUNT VI**                                                                76
AGAINST DEFENDANTS HANAUER, HOVERSON, AND COOK FOR VIOLATIONS
OF THE CONTROL PERSONS PROVISIONS §20(a) OF THE EXCHANGE ACT

**COUNT VII**                                                               77
(OHIO SECURITIES LAW VIOLATIONS UNDER ORC § 1707.41 AGAINST ALL
DEFENDANTS)

**COUNT VIII**                                                              78
(OHIO SECURITIES LAW VIOLATIONS UNDER ORC § 1707.43 AGAINST ALL
DEFENDANTS)

**COUNT IX**                                                                80
SPOILATION (AGAINST DEFENDANTS HANAUER, BRINKER, AND ZOELLNER,
AND DEFENDANTS DINSMORE & SHOHL)

**COUNT X**                                                                 81
COMMON LAW FRAUD (AGAINST ALL DEFENDANTS)

**COUNT XI**                                                                82
BREACH OF FIDUCIARY DUTY (AGAINST THE OHSL INDIVIDUAL
DEFENDANTS)

PUNITIVE DAMAGES                                                            83

JURY TRIAL DEMANDED                                                         83

EXHIBITS
   A. Press Releases Regarding Restatements
   B. 1999 Proxy Materials/Registration Statement
   C. 1997 Unqualified Opinion of Ernst & Young
   D. 1998 Unqualified Opinion of Ernst & Young
   E. 1999 Unqualified Opinion of Ernst & Young
   F. Provident Financial Group, Inc. Form S-4 Registration
      Statement Under The Securities Act of 1933

**INTRODUCTION**

Plaintiffs respectfully submit this Consolidated Amended Complaint ("CAC") filed pursuant to the order of this Court, dated October 20, 2003, (Doc. No. 215) and pursuant to Magistrate Judge Hogan's Scheduling Order of November 18, 2003, (Doc. No. 218). It alleges that certain material commissions and omission of fact artificially inflated the value of Provident stock, caused the narrow favorable vote for the merger and ultimately caused the losses to OHSL shareholders for the subject transaction. This CAC contains allegations based in part on the public disclosures in March and April of 2003 that Defendant Provident Financial Group, Inc. ("PFGI" or "Provident") (the company which acquired OHSL - formerly Oak Hills Savings and Loan--by the use of a materially false Proxy Materials/Registration Statement), had restated its earnings for the 1994-2002 fiscal years, a total of nine fiscal years as well as other misrepresentations. The CAC is filed on behalf of a class of OHSL Financial Corp. shareholders ("OHSL"), and which was acquired by Provident in a $57,162,375 transaction pursuant to which Provident issued $57,162,375 artificially inflated common stock in exchange for all of the common stock of OHSL. It is based upon all of the discovery and deposition testimony to date, as well as the recent press releases and corporate conference calls by Provident to the financial community, along with extensive reporting in the local and national media, in addition to consultations with experts in the field of accounting, damages, plain language (in the context of public filings with the SEC), and

merger transactions.    Copies of press releases of March, 2003 relating to Provident's re-statement of earnings for 1997-2002 including 1997-1999 are attached as Exhibit A.    The Second restatement for the years 1994-2002 occurred in April, 2003.    On the day that this first massive restatement reflecting a downward revision and restatement of income by PFGI in the amount of $14,200,000 for the years 1997-1999 and $70,300,000 for the years 1997-2002 was announced PFGI lost over 22% of its market value, a loss of approximately $300 million. Additionally, $44,400,000 in earnings for 1994-2002 were written down in April, 2003, making the First Restatement materially false.

The impact of the restatements on this case and the subject transaction and/or acquisition whereby Provident acquired OHSL in 1999 for $57,162,375 of materially over-valued Provident stock not only impacted Provident's printed financial numbers as contained in the Proxy Materials/Registration Statement (Exhibit B) submitted to OHSL shareholders to induce the merger, but derogated the basic accounting system used by Provident for a decade, to wit: "off the books" accounting. As Provident *admitted* in its March 5, 2003 and April 15, 2003 press releases, Provident's financial statements as contained in the Proxy Materials/Registration Statement, upon which the transaction was based and which is now being attacked, were materially false and misleading because they failed to disclose that Provident had improperly accounted for nine auto leasing pools containing thousands of auto lease contracts which represented a material percentage of Provident's revenue, cash flow and profits between 1994 and 2002

in a manner that materially inflated PFGI's reported earnings (and stock price) from 1997 to 2003.

Provident further revealed that these transactions were improperly treated as "off the books" transactions for accounting purposes, were not reported on the public financial statements of Provident which consequently, did not properly disclose income when in fact the lease revenues should have been reported on PFGI's financial statements and should have disclosed less income than shown on PFGI's 10-K's (annual statement of financial results) for 1994-2002 in PFGI's public filings and financial data as well as in those relevant portions included in the subject Proxy Materials/Registration Statement issued by Provident to cause the acquisition of OHSL, and promulgated to OHSL shareholders leading up to the acquisition by Provident of OHSL.

PFGI's restatements are an admission that the Proxy Materials/Registration Statement co-authored by the law firms of Keating, Muething and Klekamp, PLL ("KMK") and Dinsmore and Shohl, LLP (defendants herein) was materially false and misleading. Since the OHSL shareholders were provided the Proxy Materials/Registration Statement which incorporated by reference all relevant Provident public filings and financial data contained therein (*See*, Exhibit B hereto) so that OHSL shareholders would be able to make a "fully informed decision" to approve the transaction or not, the restatements are an admission by the Provident defendants that the OHSL class was provided with materially false and misleading information. The falsity of PFGI's financial statements influenced

its stock price, which materially affected the terms of the transaction, since OHSL was acquired with now admittedly artificially inflated PFGI shares.

Additionally, the falsity of PFGI's financial statements, along with the materially false explanation of the risk to OHSL shareholders of converting to PFGI stock because of Provident's incorrect accounting system for auto leases, known as "securitization," was an important factor in fraudulently inducing OHSL shareholders to vote in favor of the merger by a narrow margin.

Plaintiffs allege in the CAC that liability has always been clear and continues to be clear on the three other allegations of misrepresentations regarding "unanimity" of the board of directors of OHSL, the Risk Factors related to Provident's accounting methodology known as "Securitization" and the "vote" and/or the non-disclosure thereof of former OHSL Director Thomas M. Herron, who resigned in part in protest against the merger. This dramatic new development regarding the restatements resulted in a steep decline in PFGI's share price, has singularly harmed plaintiffs and the class in an approximate amount of thirty (30%) of the value of the original consideration exchanged by Provident for OHSL shares, and constitutes an actionable fourth misrepresentation. Numerous cases have been filed in Federal and state courts regarding the restatements. These Federal cases have been consolidated before Judge Spiegel in this district. *See, Merzin v. Provident Financial Group, et al.,* No. C-1-03-165 (S.D. Ohio).

The accounting firm Ernst & Young ("E&Y") is a defendant herein. E&Y is accountable for its role in preparing and certifying without qualification as

correct the materially misleading Provident financial statements for 1997, 1998 and 1999 (Exhibit C, D, and E hereto) as well as for 1994, 1995, 1996, 2000, 2001 and 2002. The 1994-1999 financials were presented to the class herein in the subject Proxy Materials/Registration Statement either directly or by incorporation by reference in order to induce the class to approve the subject transaction now the basis of this litigation.

The Court has stricken several of the original allegations as to material misrepresentations and they have been eliminated from the CAC. The law firm defendants (KMK and Dinsmore) are in this case as they jointly co-authored the misleading and false Proxy Materials/Registration Statement which is the operative document now the subject of this litigation and have never amended same. Attached as Exhibit F is the Provident Financial Group, Inc. Form S-4, (Registration Statement Under the Securities Act of 1933), which registers Provident common stock used as the currency for the acquisition of OHSL. Additionally, the PFGI 2002 Annual Report continues the fraud, in that it does not disclose this litigation at all, although it does disclose other litigation relating exclusively to the restatements, even thought the restatement allegations affect both groups of cases, and the other litigation is far less advanced than this case.

## I. <u>NATURE OF THE ACTION AND PARTIES</u>

1. Plaintiffs bring this action on behalf of a class of persons who held shares of the common stock of OHSL between September 27, 1999 and December 3, 1999. Plaintiffs assert, *inter alia*, that certain defendants (Provident) are strictly

liable and others such as the directors and officers of Provident, the experts who signed off on the Proxy Materials/Registration Statement, and the law firms who co-authored the Proxy Materials/Registration Statements are required to sustain their burden of due diligence under Sections 11 and 12 (2) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77l(2), Ohio state statutory claims pursuant to ORC §§ 1707.41 and 1707.43, and also under Section 10 (b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as Section 14 of the Exchange Act, 15 U.S.C. § 78n(a) and SEC Rule 14a-9, 17 C.F.R. § 240.14aa promulgated thereunder, for their actions in, *inter alia*, preparing and disseminating false and misleading statements of commission and omission to plaintiff and class members in the Proxy Materials/Registration Statement (collectively the "Proxy Materials/Registration Statement") filed with the SEC and sent to OHSL shareholders on or about September 27, 1999 in order to illegally solicit and cause the approval by OHSL shareholders of the then pending merger agreement between OHSL and Provident Financial Group, Inc. ("PFGI"), a merger which following a narrow shareholder vote of approval, closed on December 3, 1999. Plaintiffs seek equitable relief and rescissory or other damages for the harm caused by defendants under these federal statutory provisions as well as Ohio securities fraud statutes and additionally seek damages from certain of the defendants under the control person provisions of the Securities Act and the Exchange Act. OHSL stock was traded on the NASDAQ and

Provident stock continues to be traded on the NASDAQ market under the symbol "PFGI." The NASDAQ is a national securities trading market and is a well-developed, open and efficient market.

## II. JURISDICTION AND VENUE

2.      The claims alleged herein arise under the Securities Act and the Exchange Act and principles of pendent jurisdiction, 15 U.S.C. §§77k and 77l(2) and 15 U.S.C. ¶78j(b) and Rule 10(b) promulgated under Section 10(b) of the Exchange Act, 17 C.F.R. §240.10b-5 and 15 U.S.C. §78n(a) and SEC Rule 14a-9, 17 C.F.R. §240.14aa.

3.      Federal question as well as statutory jurisdiction for plaintiffs' Securities Act and Exchange Act claims exist under Section 22 of the Securities Act, 15 U.S.C. § 77 (v), Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 as well as state statutory and common law claims under principles of pendent jurisdiction.

4.      Venue is appropriate in this district pursuant to 28 U.S.C. §1391 because many of the acts alleged herein, including the dissemination to OHSL shareholders of the false and misleading statements at issue, occurred in substantial part in this District. Venue is also appropriate because at all relevant times OHSL and Oak Hills were headquartered in this District, and thus this District is the focal point of the wrongs alleged.

5.      In connection with the acts, transactions and conduct alleged herein, defendants used the means and instrumentalities of interstate commerce, including

the United States mails, interstate telephone communications and the facilities of national securities exchanges and markets.

6.     This action is brought within all applicable statute of limitations periods.

## III. THE PARTIES

### Plaintiffs

7.  Plaintiff Walter W. Thiemann owned 40,000 shares of OHSL prior to the acquisition by Provident (sometimes referred to as the "merger"), and continues to hold 1,500 Provident shares.  Plaintiff Thiemann voted in favor of the merger in reliance upon the Proxy Materials/Registration Statement and because of certain omission of material fact in the Proxy Materials/Registration Statement. Thiemann was thus defrauded by the Proxy Materials/Registration statement because, *inter alia*,  he would not have voted in favor of the merger if he did not believe that the OHSL directors had unanimously approved the merger and believe the merger to be in the best interests of OHSL shareholders.

8.     Plaintiffs Gary and Lisa Meier as Custodian for (C-F) Lindsey Meier owned 200 shares of OHSL which were involuntarily converted into 109 shares of Provident stock at an artificially inflated exchange rate.  Plaintiffs Gary and Lisa Meier purchased 100 shares of OHSL stock in the initial public offering many years ago and which became 200 shares of OHSL as a result of a stock split. Plaintiffs Gary and Lisa Meier continue to hold their Provident shares received in the transaction.  The value of the PFGI shares held by Gary and Lisa Meier has

dramatically decreased due to the restatement of PFGI's financial statements for 1994-2002. They opposed the transaction and did not vote on the merger, which had the same effect as voting against the merger. Plaintiffs Gary and Lisa Meier were harmed because the value of the OHSL stock that was forcibly converted into PFGI stock is worth substantially less than it was at the time of the conversion. Plaintiffs Gary and Lisa Meier, who continue to hold their PFGI shares, have been harmed by PFGI's restatement, and the resulting free-fall of PFGI stock.

### The Oak Hills Defendants - Corporate and Individual

9.     Prior to the merger, defendant OHSL was a Delaware Corporation headquartered at 5889 Bridgetown Road, Cincinnati, Ohio 45248. OHSL's principal business was running Oak Hills Savings and Loan Company, F.A., a federally chartered thrift association which was a wholly owned subsidiary of OHSL. OHSL ceased to exist shortly after the merger with PFGI on or about December 3, 1999. OHSL, among others, issued the Proxy Materials/Registration Statement to plaintiff and class members which contained materially false and misleading statements, including PFGI's financial statements, which are admittedly materially false and misleading and omitted to state material facts.

10.    Prior to the merger, defendant Oak Hills Savings and Loan Company, F.A. ("Oak Hills") was a federally chartered thrift institution which served the financial needs of families and local businesses in its primary market area -- Southwestern Hamilton County, Ohio, through its main office and five

branch offices.  Oak Hills was a wholly owned subsidiary of OHSL prior to December 3, 1999, and was also headquartered at 5889 Bridgetown Road, Cincinnati, Ohio 45248.  Oak Hills also ceased to exist after the merger with PFGI on or about December 3, 1999.

11.    Defendant Norbert G. Brinker ("Brinker") was the Chairman of OHSL's Board of Directors prior to the merger with PFGI on or about December 3, 1999.  Brinker signed both the Proxy Materials/Registration Statement distributed to plaintiff and class members which contained materially false and misleading statements and omitted to state material facts.  Defendant Brinker voted in favor of continued negotiations with Provident at a July 22, 1999 Special Meeting of OHSL's Board of Directors.  At the August 2, 1999 Special Meeting of the OHSL Board of Directors to vote on the final merger agreement, Defendant Brinker changed his vote to abstain, and thus did not vote in favor of the merger, contrary to the Proxy Materials/Registration Statement.

12.    Defendant Kenneth L. Hanauer ("Hanauer") was a director of OHSL and Chief Executive Officer of Oak Hills, prior to  the merger with PFGI on or about December 3, 1999 and was a control person of OHSL, recommended the merger to unsuspecting OHSL shareholders, even though he did not believe the merger to be in their best interests, ran the daily operations of OHSL, directed its activities including merger negotiations, and managed the affairs of OHSL. Defendant Hanauer was by far the largest individual OHSL shareholder owning 4.9% of OHSL shares.  Defendant Hanauer was the Chairman of the Board

designate, and the only member of OHSL's management to serve on OHSL's board. As OHSL's CEO, board member, and largest shareholder, Hanauer's views on the merge are of particular importance to the investment community generally and OHSL's shareholders specifically. Hanauer signed the Proxy Materials/Registration Statement containing the Proxy Materials distributed to plaintiff and class members which contained materially false and misleading statements, including PFGI's financial statements, which were admittedly materially false and misleading and omitted to state material facts. Defendant Hanauer refused to sign the cover letter to the Proxy Materials/Registration Statement because he did not want the merger to be seen as coming from him, and directed that his signature, which was electronically affixed to the document, be removed. At no time did Defendant Hanauer believe the OHSL-PFGI merger to be in the best interests of OHSL shareholders, directly contrary to the materially false and misleading Proxy Materials/Registration Statement. Defendant Hanauer did not take additional steps to disclose to the investing public his opposition to the transaction, nor did he disclose that prior to the October 25, 1999 Special Meeting of OHSL shareholders, he had voted the approximately 130,000 personal shares and those he controlled against the merger. Defendant Hanauer took these affirmative steps to conceal his opposition to the merger and materially mislead the OHSL shareholders with respect to his opposition to the merger. In fact, defendant Hanauer's opposition to the merger was so obvious that, after the fact, his own counsel, James E. Burke, was quoted in a widely distributed regional

financial newspaper, the Cincinnati Business Courier, as follows: *"Burke's response: Hanauer opposed the Provident takeover because he wanted Oak Hills to remain independent."*

13.    Defendant Alvin E. Hucke was a director of OHSL prior to the merger with Provident in December, 1999, and chairman of the OHSL *ad hoc* committee formed in February, 1999 that was to consider various strategic alternatives for OHSL.  Thomas E. McKiernan, and Joseph J. Tenoever, also directors of OHSL before the merger with Provident, were members of this committee.  As chairman and members of the *ad hoc* committee respectively, Defendants Hucke, McKiernan, and Tenoever had heightened fiduciary responsibilities to OHSL's shareholders, including the duty to provide full and complete information with respect to the proposed merger.  Defendants Hucke, McKiernan, and Tenoever all had input into the Proxy Materials/Registration Statement that is the subject of this complaint.

14.    Defendants William R. Hillebrand and Howard Zoellner were directors of OHSL prior to the merger with PFGI on or about December 3, 1999.  Defendants Hillebrand, Hucke, McKiernan, Tenoever and Zoellner all signed the Registration Statement containing the Proxy Materials/Registration Statement distributed to plaintiffs and class members which contained materially false and misleading statements and omitted to state material facts.

15.    The defendants described in paragraphs 11 through 14 are hereinafter referred to collectively as the "Oak Hills Individual Defendants."

12

16.     Defendant Hanauer, because of his position of control and authority as both an officer and director of OHSL, controlled the contents of the Proxy Materials/Registration Statement that he signed and distributed on his own and OHSL's behalf. Defendant Hanauer had the power and ability to control and manage and direct the daily affairs of OHSL and to ensure that the Proxy Materials/Registration Statement were correct and did not contain materially false and misleading statements and omit to state material facts.  Defendant Hanauer, through the materially false and misleading Proxy Materials/Registration Statement, urged and recommended in the Proxy Materials/Registration Statement that the class vote for and approve the subject transaction —advice he did not take since he voted his personal shares and those he controlled against the merger. Defendant Hanauer, along with the other OHSL directors, falsely stated that all of the OHSL directors believed the merger to be in the best interests of OHSL shareholders.

**The Provident Defendants - Corporate and Individual**

17. Defendant Provident Financial Group, Inc. ("PFGI" and/or "Provident") is a Cincinnati based commercial banking and financial services company with full service banking operations in Ohio, Northern Kentucky, and Southwestern Florida.  As of June 30, 1999, PFGI falsely claimed that it had total assets of $8.5 billion, loans and leases of $5.8 billion, deposits of $5.8 billion and stockholders equity of $717 million.  PFGI also serviced an additional $4.5 billion of loans and leases.  PFGI is and was at all relevant times headquartered at One East Fourth

Street, Cincinnati, Ohio 45202.   PFGI, among others, issued the Proxy Materials/Registration Statement filed with the SEC, and distributed to plaintiffs, and class members which contained materially false and misleading statements, and omitted to state material facts, including PFGI's financial statements, which are admittedly material false and misleading.  Its activities were and are managed, directed and controlled by the following individual defendants.  Provident is the premier client of defendant KMK.

18.   Defendant Robert L. Hoverson ("Hoverson") was the President and Chief Executive Officer of PFGI at all relevant times prior to the merger and directed, managed and controlled the daily activities of Provident.  Hoverson signed the Proxy Materials/Registration Statement filed with the SEC and distributed to plaintiffs and class members, which contained materially false and misleading statements, including PFGI's admittedly materially false and misleading financial statements, and omitted to state material facts.  Defendant Hoverson was quoted in the Wall Street Journal as stating that the accounting errors, for which he apologized, was "a blow to our credibility."  Defendant Hoverson, in "A Message from the CEO" signed by Defendant Hoverson and included in the Provident 2002 Annual Report, states as follows:

" …. a blemish was added when our finance and accounting staff discovered an accounting error in late February.  The error dates back to 1997 and resulted in our announcing on March 5, 2003 a restatement of our earnings for the last six years. I refer you to page 56 for details.  The error was unintentional and relates to nine auto lease financing transactions originated between 1997 and 1999.  Upon discovery, we immediately notified state and federal regulators, our Audit Committee and Board of Directors, and our independent accountants, Ernst &

Young. <u>We consider this a very serious matter</u> and moved quickly to set things right."

"An independent review was initiated on March 12 to further examine this issue in more detail. As a result of this review, another issue surfaced. Similar to most banks, since 1994, we have recorded our auto leases as finance leases. This matches interest income and expense, and is similar to how we record all of our loans. This accounting treatment was reaffirmed by Ernst & Young before we announced the restatement on March 5. We insure our residuals on a pool basis to a level necessary to effectively remove residual risk. It has now been determined that this approach does not meet the technical requirements of FAS 13 "Accounting for Leases," and as a result, we have reclassified our entire auto lease portfolio as operating leases and are depreciating the assets. This method does not substantially change the total amount of income reported, only the timing. <u>It results in less income in earlier periods and more income in later periods</u>. Accordingly, we have restated our earnings for all prior periods. Cumulatively, this is a $44.4 million after-tax change. However, income to be recognized in future years will be increased by a substantially similar aggregate amount. See page 56 for details." (emphasis added)

19. Defendant Jack M. Cook ("Cook") was a PFGI director at all relevant times. Cook signed the Registration Statement containing the Proxy Materials filed with the SEC, and distributed to plaintiffs, and class members which contained materially false and misleading statements and omitted to state material facts.

20. Defendant Thomas D. Grote ("Grote") was a PFGI director at all relevant times. Grote signed the Registration Statement containing the Proxy Materials distributed to the SEC, plaintiffs, and class members which contained materially false and misleading statements and omitted to state material facts.

21. Defendant Philip R. Myers ("Myers") was a PFGI director at all relevant. Myers signed the Registration Statement containing the Proxy Materials

distributed to the SEC, plaintiffs, and class members which contained materially false and misleading statements and omitted to state material facts.

22.    Defendant Joseph A. Pedoto ("Pedoto") was a PFGI director at all relevant times. Pedoto signed the Registration Statement containing the Proxy Materials distributed to the SEC, plaintiffs, and class members which contained materially false and misleading statements and omitted to state material facts.

23.    Defendant Christopher J. Carey ("Carey") was PFGI's Executive Vice President and Chief Financial Officer at all relevant times and directed, managed and controlled the daily activities of Provident. In these capacities and also as Attorney-in-Fact, Carey signed the Registration Statement containing the Proxy Materials distributed to the SEC, plaintiffs, and class members which contained materially false and misleading statements, including PFGI's admittedly materially false and misleading financial statements, and omitted to state material facts. Defendant Carey was quoted in The New York Times, admitting the material falsity of PFGI's previous financial statements, as referring to the accounting errors as a "dumb mistake."

24.    Defendant Joseph A. Steger ("Steger") was the President of the University of Cincinnati. Dr. Steger was a PFGI director at all relevant times. Dr. Steger signed the Registration Statement containing the Proxy Materials distributed to the SEC, plaintiffs, and the class which contained affirmative materially false and misleading statements, including PFGI's admittedly materially false and misleading financial statements, and failed to include certain

material facts.    Additionally, Dr. Steger was the Chairman of the Audit
Committee, and as such, was intimately involved in the issues related to the
restatements.

      25.    Defendants Hoverson and Carey are control persons as to Provident.

**The Law Firm Defendants**

      26.    Defendant Dinsmore & Shohl ("Dinsmore") is a Cincinnati-based
law firm that served as counsel to OHSL in conjunction with the merger.  As part
of its duties as counsel, while acting through its employees and agents, Dinsmore
actually prepared and wrote sections of the Proxy Materials/Registration
Statement that is now the subject of this litigation, as did the Cincinnati Law firm
of Keating, Muething and Klekamp P.L.L. ("KMK"); they cooperated in a "joint
effort" to write, publish and disseminate said materially false and misleading
Proxy Materials/Registration Statement in order to close the merger at all costs,
including fraudulently inducing OHSL shareholders to vote for the merger.

      27.    Defendant Clifford Roe ("Roe") is an attorney and the Managing
Partner of defendant Dinsmore & Shohl.  Defendant Roe was the lead Dinsmore
partner responsible for providing legal advice to OHSL and the Oak Hills
Individual Defendants in conjunction with the merger and in conjunction with the
preparation and distribution of the Proxy Materials/Registration Statement.  He
wrote some of the language contained in the Proxy Materials/Registration
Statement, including some of the misrepresentations alleged herein, and was
consulted with respect to many of the material misstatements and omissions

alleged. Defendant Roe also reviewed drafts of the Proxy Materials/Registration Statement exchanged drafts and final documents with KMK in a joint, cooperative effort to produce the Proxy Materials/Registration Statement. Defendants Dinsmore and Roe had actual knowledge that many aspects of the Proxy Materials/Registration Statement were materially false and misleading. Specifically, defendant Roe had actual knowledge that Defendant Hanauer opposed the OHSL-PFGI merger, had serious reservations about the truth and completeness of the Proxy Materials/Registration Statement, and finally, Roe had actual knowledge that Hanauer had voted his personal shares and those he controlled against the merger. Many if not all of the false and misleading statements outlined in this complaint more fully at ¶¶ 119 to 123, were presented by OHSL CEO defendant Hanauer to defendants Roe and Dinsmore with the request that they be corrected. Despite this actual knowledge of the falsity and misleading nature of the Proxy Materials/Registration Statement, not a single change was made.

28.    Defendant Charles Hertlein ("Hertlein") is an attorney and partner with Dinsmore. Defendant Hertlein provided OHSL with legal advice related to the merger transaction, and reviewed drafts of the Proxy Materials/Registration Statement. Defendant Hertlein and Dinsmore had actual and constructive knowledge that defendant Hanauer opposed the merger with Provident, yet, in a deliberate attempt to mislead the OHSL shareholders, took no action to supplement and/or correct the Proxy Materials/Registration Statement.

Specifically, as a result of his friendship with OHSL's former Chief Financial Officer, Pat Condren, and from other sources, Defendant Hertlein knew that Defendant Hanauer was opposed to the merger and had voted his personal shares and those he controlled against the merger.

29.    Defendant Keating, Muething & Klekamp P.L.L. ("KMK") is a Cincinnati-based law firm that served as counsel to PFGI and the Provident Individual Defendants in conjunction with the merger as well as in prior mergers by PFGI.  As part of its duties as counsel to Provident, while acting through its employees and agents, and in conjunction with defendants Roe, Hertlein, and Dinsmore, KMK actually prepared and wrote or co-wrote the Proxy Materials/Registration Statement now the subject of this litigation and which is more of a sales document than a disclosure document. The Proxy Materials/Registration Statement did not disclose that KMK wrote the selling document containing many material misstatements and omissions of material fact all as set out more fully at ¶¶ 67 to 84 herein, which was used to fraudulently, induce OHSL shareholders to vote to approve the merger with Provident.

30.    The KMK firm was added as a defendant in this lawsuit based largely on the testimony of defendants Roe and Hertlein of defendant Dinsmore, who each indicated that the KMK firm had a much larger role in the preparation of the Proxy Materials/Registration Statement than was originally and previously known.  Depositions by plaintiffs' counsel of four KMK transactional attorneys one of whom (Weiss) is now named as an individual defendant in the CAC,

however, confirmed the facts alleged herein. KMK had overall final responsibility

for the Proxy Materials/Registration Statement in that it was attorneys from KMK

who took the Proxy Materials/Registration Statement to the printers and caused it

to be printed and disseminated to OHSL's shareholders and had same recorded

and stored on KMK's computer systems. Defendant KMK knew or in the exercise

of due care should have known that the Proxy Materials/Registration Statement

contained materially false and misleading statements and omitted to state material

facts. Additionally, in furtherance of their concealed authorship role and their

continuing conflicted representation of OHSL and Provident, KMK attorneys in

prior litigation misrepresented material facts as more fully set out hereinafter at ¶¶

85 to 88 to an Ohio state court, effectively preventing the OHSL shareholders

from obtaining an injunction. Some of the KMK transactional team of six lawyers

have already provided testimony _adverse_ to clients that the KMK litigation team

represents.

> Q.    My question is: If Mr. Hanauer did not believe that
> the proposed merger with Provident was in the best interest of
> OHSL shareholders, would this sentence that I've directed
> your attention to be true?

(Objection omitted)

> A.    Again, my belief is that he – his vote in favor of the
> acquisition means that he believed, as a fiduciary to
> the shareholders that it was in their best interest.
> _And – if he didn't believe that, it was incumbent_
> _upon him to retract his vote or to tell people_
> _involved in the transaction._

Deposition testimony of KMK attorney Mark Weiss, pages 74, lines 13 – 17, page 75, lines 4 – 11. (emphasis added)

    *          *          *          *          *

Q.        How would you have expected Hanauer to have voted his personal shares?

A.        If your question is – you know if you're asking me to speculate about how he actually voted his shares, I can't do that. *But if you're asking me whether I believed he would vote his shares in favor of the merger, my answer is I believed he would vote his shares in favor of the merger. That was based upon, again, the information from Cliff and the investment bankers that the directors were enthusiastic about the transaction.*

Deposition testimony of KMK attorney Timothy Matthews, pages 63, lines 20 and 21, Page 64, lines 9 – 21 (emphasis added).

31.    Defendant Mark Weiss ("Weiss") is an attorney and partner with defendant KMK.  Defendant Weiss was the KMK partner with overall responsibility for writing and assembling the final version of the Proxy Materials/Registration Statement.  Defendant Weiss reviewed and assembled drafts of the Proxy Materials/Registration Statement.  Defendant Weiss knew as an expert in writing Proxies Materials/Registration Statements as well as Prospectuses and in the exercise of due care should have known that the subject Proxy Materials/Registration Statement contained materially false and misleading statements and omitted to state material facts.

**The Accounting Firm Defendants**

32.    Ernst & Young ("E&Y") is PFGI's independent auditor which has represented Provident for decades.  At all relevant times, E&Y was PFGI's independent auditor and held itself out as EXPERT in accounting and auditing pursuant to the merger transaction; E&Y was intimately familiar with Provident's improper accounting methods and procedures.  As outlined in the press release attached as Exhibit A, it was E&Y's responsibility to express an opinion on PFGI's financials and E&Y did express its opinion (Exhibits C, D and E hereto) that all of the financials in the subject Proxy Materials/Registration Statement were accurate, contained no material misrepresentations and were prepared in accordance with Generally Accepted Accounting Principles ("GAAP") and Generally Accepted Auditing Standards ("GAAS").  The March 5, 2003 and April 15, 2003 restatements indicate that E&Y did not conduct its audits in accordance with GAAS at least as far back as 1994. Plaintiffs allege that E&Y either recklessly or intentionally failed to perform GAAS audits applying GAAP as set out more fully at ¶¶ 106 to 118 herein.  E&Y's audit failures include but are not limited to allowing Provident to improperly account for nine auto leasing pools, comprising tens of thousands of auto loans, which were improperly kept off PFGI's balance sheet, in a manner similar to the infamous Enron scandals of 2002-2003.  The accounting fraud alleged—how to account for auto lease transactions and whether to include auto lease transactions on or off balance sheet (similar to Enron) is fundamental to the banking business, and how to properly account for these auto lease transactions—on or off the balance sheet—is fundamental to the

audits.   In short, E&Y allowed Provident to engage in "desired results" accounting, abandoning its professional obligations to PFGI and the class to conduct GAAS audits applying GAAP, in exchange for large auditing and consulting fees.

## IV.  CLASS ACTION ALLEGATIONS

33.    Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b) on behalf of a class consisting of all individuals and entities who held OHSL shares between the September 27, 1999 date the Proxy Materials/Registration Statement containing false and misleading statements now complained of were mailed to OHSL shareholders and the December 3, 1999 date of the merger (the "Class").  Excluded from the class are the defendants, their officers, directors, affiliates, legal representatives, heirs, predecessors, successors and assigns, and any entity in which the any defendant has a controlling interest.

34.    As of September 24, 1999, OHSL had more than 2,500,236 shares of its common stock outstanding.  There are approximately 900 class members. Adjudications for or against individual members of the class would, as a practical matter, be dispositive of the interests of other class members and substantially impair and impede their ability to protect their interests unless this matter is treated as a class action and that the defendants have acted in a manner and on grounds generally applicable to the class as a whole, thereby making final injunctive or equitable relief appropriate.

23

35.    Common questions of law or fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.  Among the questions of law and fact are:

a)  Whether defendants engaged in acts or conduct in violation of the federal securities laws as alleged herein;

b)  Whether defendants made materially false and misleading statements in the Proxy Materials/Registration Statement; and

c)  Whether plaintiffs and class members are entitled to rescissory relief; and

d)  Were the financials contained in the false Proxy Materials/Registration Statement and twice restated, material misrepresentations and/or omissions by the terms of the 1933 Securities Act and/or the 1934 Securities and Exchange Act?

e)  Did defendants have or should they have had knowledge and disclosed same to OHSL shareholders prior to the merger of:

   1.  Major dissenting shareholders votes against the merger and its impact on the "unanimity" of directors' votes, i.e. former OHSL CEO and inside director Ken Hanauer, OHSL's largest shareholder owning 4.9% of OHSL, voted against the merger, directly contrary to the financial advice he was providing to OHSL shareholders;

   2.  The real reason for OHSL director Thomas M. Herron's resignation and its impact on the "unanimity" of the directors' votes as well as his refusal to sign the proxy solicitation;

   3.  The problems and possible liabilities resulting from the use of "off-the-books" accounting methods regarding the auto leases of Provident;

   4.  The full risk placed upon OHSL shareholders by the Securitization methodology used by Provident to account for thousands of auto leases and revenue therefrom;

5. The artificially high price of Provident shares at the time of the merger because of the inflated income and revenues publicly reported by Provident due to its securitization methods;

6. The artificial inflation of PFGI stock that was not revealed to the investing public until the Restatements, and the fact that the OHSL Board of Directors could not, in the exercise of their fiduciary duties, recommend this transaction on these terms had they known that Provident stock was materially artificially inflated.

36.    Plaintiffs' claims are typical of the claims of the members of the class, and plaintiffs are not subject to any defenses not equally applicable to other class members.

37.    Additionally, plaintiffs will fairly and adequately protect the interests of the members of the class and have retained counsel competent and experienced in securities class actions litigation and that plaintiffs have no interests antagonistic to or in conflict with those of the class.

38.    Finally, a class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the class is impracticable, because--*inter alia*--the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it impossible for class members individually to redress the wrongs done to them; there will be no difficulty in the management of this action as a class action and it would be highly desirable to concentrate the litigation of these claims in this forum.

## V. ALLEGATIONS OF FACT UPON
## WHICH CLAIMS FOR RELIEF ARE BASED

**1999: Certain Members of The OHSL Board Decide to Sell the Company**

39.    In early 1999, certain members of the OHSL Board decided to sell OHSL.  The Board allocated time at its monthly meetings to review its options, and at a meeting held on February 25, 1999, the Chairman of the Board appointed an *ad hoc* committee consisting of three directors (defendants Alvin E. Hucke [chairman], Joseph J. Tenoever, and Thomas E. McKiernan) to determine a valuation of OHSL.  Defendant Ken Hanauer (OHSL's CEO and an OHSL Board member) had initially agreed to be appointed to the *ad hoc* committee, but later requested that the Chairman of the Board remove him from the *ad hoc* committee, which was done at the same meeting.  Defendant Hucke's pro sale views were generally known by the OHSL board, as were Defendant Hanauer's anti-sale views.

40.    In March 1999, the *ad hoc* committee met with defendant Roe of Dinsmore and Charles Crowley of McDonald Investments, an investment bank hired by the OHSL Board to discuss valuation of OHSL.  Defendant Roe testified that he was hired by OHSL's board to represent OHSL and advise the OHSL directors on the proper discharge of their duties as directors.  The OHSL Board, however, believed that defendant Roe's role was much more substantial, and believed that defendant Roe had written and reviewed the entire Proxy Materials/Registration Statement.  Defendant Roe, despite being paid $325 per

hour by OHSL, did not even read the Proxy Materials/Registration Statement. Instead, defendant Roe, in writing sections of the Proxy Materials/Registration Statement (Exhibit B hereto), relied on documents sent to him by KMK, and simply crossed out the name of another, unrelated entity and wrote in OHSL even though these statements were materially false and misleading as applied to the OHSL-Provident merger. Additionally, defendant Roe did not understand key terms contained in the Proxy Materials/Registration Statement, such as purchase accounting, pooling of interest accounting and securitizations. A working knowledge of these terms was necessary to understand the structure of the proposed transaction. Crowley was invited to attend this meeting to advise the committee on the strategic opportunities that might exist for OHSL stockholders if the Board were to pursue a sale of the Company.

41.    Defendant Roe and Dinsmore had actual knowledge that defendant Hanauer was opposed to the OHSL-Provident merger, as his deposition testimony clearly indicates:

> Q.    Okay.  Did you ever get the impression that Mr. Hanauer was not in favor of this transaction?
>
> A.    *Oh, I think I had the general impression throughout the progression that Mr. Hanauer felt that it wasn't necessary to sell Oak Hills.*

(Deposition of Cliff Roe at 159, emphasis added)

Despite this and other examples of actual knowledge of defendant Hanauer's opposition to the merger transaction and thus the material falsity of the Proxy

Materials/Registration Statement, Roe and Dinsmore took no action to correct the materially false and misleading Proxy Materials/Registration Statement from being disseminated to the OHSL shareholders, and took no steps to supplement the Proxy Materials/Registration Statement as additional material facts, such as defendant Hanauer's lack of cooperation in effectuating the merger and vote of his personal shares and those he controlled against the transaction became known to defendants Roe, Hertlein, and Dinsmore, as well as his belief that the merger was not in the best interests of OHSL shareholders.

42.    At the meeting and subsequent to the meeting, Crowley presented to the *ad hoc* committee an overview of McDonald's investment banking experience and qualifications, especially in advising on bank and thrift mergers, and a market overview of bank and thrift acquisition trends. Crowley also presented a detailed analysis of OHSL's comparative valuation to its peer group; its stock market performance during the last twelve months; a selected list of potential merger partners; a merger pricing dilution analysis and a graph of OHSL's stand-alone estimated stock price appreciation potential compared to its possible growth if a sale occurred at an acquisition premium. All of this information was based upon false and misleading financial statements as well as upon the overstatement of income of PFGI from 1994-1999.

43.    At a meeting of the Board in April 1999, each member of the *ad hoc* committee gave a separate presentation on the reasons why the Board should adopt a resolution to further investigate opportunities to sell or merge OHSL.

44.    In May of 1999, the Board met with representatives of McDonald to receive McDonald's presentation to represent OHSL in the possible sale of the Company.  McDonald presented the Board with essentially the same information previously submitted to the *ad hoc* committee but also presented a draft of an engagement letter and an analysis of potential merger partners McDonald would propose to approach offering the Company for sale.

45.    Although directors Herron and Hanauer proposed consideration of other investment banking entities for this role, the Board voted to engage McDonald to provide general financial advisory services to OHSL including the evaluation of a sale or merger transaction involving the Company.  This was in part because defendant Hucke, without the authority of the OHSL Board and in violation of his fiduciary duties, had been discussing the sale of OHSL with Crowley of McDonald Investments for at least several months.

46.    McDonald commenced the preparation of a Confidential Descriptive Memorandum designed to describe OHSL to potential acquirors.  This memorandum was approved by the Board on June 1, 1999 and was circulated on and after June 3, 1999 by McDonald to six potential acquirors identified by McDonald and approved by the Board.  This resulted in the execution of confidentiality agreements with five of the six prospects.

47.    On June 22, 1999, the Board, its legal counsel, defendant Dinsmore, and its investment banker, McDonald, met to review the non-binding indications of interest McDonald had received as the result of circulating the memorandum

dated June 3, 1999, which included a non-binding indication of interest for a merger with OHSL prepared by PFGI. The Board discussed the terms of the proposal from PFGI and authorized McDonald to invite PFGI to conduct a due diligence investigation.

48.    On July 22, 1999, the Board met to receive an update from McDonald as to its negotiations with prospective acquirors of OHSL. Defendant Roe of Dinsmore was also present at this meeting. Based on the information that was presented at this meeting by McDonald, which included a more definitive offer from PFGI, and after additional clarification of PFGI's offer and further telephone negotiations, the Board voted to engage in negotiations of a definitive nature with PFGI. At this meeting, OHSL director Herron voted against continued negotiations with Provident Financial Group, Inc., OHSL director, CEO, and largest shareholder, defendant Hanauer, abstained from the vote, and OHSL Chairman of the Board defendant Brinker affirmatively voted in favor of continued negotiations.

49.    As of the July 22, 1999 OHSL's Board meeting and vote, no contractual provision providing for payments in the event of a change in control in OHSL was in effect with respect to any of the OHSL officers, including CEO Hanauer who was both an officer and a director. Defendants chose not to include the correct date in an attempt to affirmatively mislead OHSL's shareholders and not to alert them to the fact that OHSL CEO and board member defendant Ken Hanauer changed his vote from abstain to in favor of only after his change of

30

control contract, calling for a payment to him of $375,000 in the event of a Provident takeover, was finalized.

50.    On July 27, 1999, director Herron, who was Chairman of OHSL's audit committee, resigned from the OHSL Board, effective July 30, 1999, in part because he strongly disagreed with the decision to engage in negotiations of a definitive nature with PFGI, as indicated by his vote. As alleged in more detail, *infra*, no Form 8-K was ever filed with the SEC, and shareholders were never informed of Herron's resignation or the reasons therefore. In an attempt to cover up Mr. Herron's resignation, only the directors who were owners of OHSL stock were listed in the prospectus at page 63 as of July 31, 1999. Although director Herron was not included in that table, the Proxy Materials/Registration Statement does not disclose that his resignation became effective only one day earlier.

51.    During the day and evening of July 27, 1999 OHSL director Thomas M. Herron, who had resigned effective July 30, 1999, called each OHSL director except Thomas McKiernan and informed each director, among other things, that he was resigning in part in protest of the OHSL-Provident merger. Since Defendant McKiernan was out of the country at this time, director Herron called defendant McKiernan upon his return to the United States to personally inform defendant McKiernan that he had resigned in part because of his opposition to the OHSL-Provident merger. Thus each of the Individual OHSL defendants had actual knowledge that, in addition to his vote against the merger at the July 22,

1999 meeting, director Herron opposed the merger with Provident and was resigning in part in protest.

52.    From July 22 to August 2, 1999, McDonald, the Board, and defendants Roe and Dinsmore engaged in negotiations with PFGI related to a definitive agreement.    These negotiations are discussed in the Proxy Materials/Registration Statement, although no mention was made that the composition of the OHSL Board of Directors changed due to the resignation of OHSL director Herron on July 27, 1999 effective July 30, 1999, in part because he was opposed to the sale of OHSL generally and to continued negotiations with Provident.  The Proxy Materials/Registration Statement deliberately misstated a material fact--that the OHSL board remained the same during this period when it did not -- because of the Herron resignation, and deliberately fails to disclose the resignation of OHSL director Thomas M. Herron, and his opposition to the merger.  As discussed above, the individual OHSL defendants each had actual knowledge of director Herron's opposition to the merger because, in addition to his vote against the merger, he called each OHSL director defendant and repeated his opposition to the merger as one of his reasons for resigning.  Defendants Roe and Dinsmore had actual knowledge of director Herron's opposition to the merger because he was at the July 22, 1999 meeting where OHSL director Herron voted against the merger with Provident.

53.    On August 2, 1999, OHSL's Board held a meeting at which it approved the Merger Agreement and authorized OHSL to execute and deliver it to

PFGI.  This vote was not unanimous in that only five of the then seven OHSL directors voted in favor of the transaction, since defendant McKiernan was out of the country and did not vote, and Chairman Brinker changed his vote from in favor of to abstain.  None of this was disclosed to the investing public because the OHSL defendants, the Dinsmore defendants and the KMK defendants believed that the disclosure of any opposition to the merger from OHSL's Board would prevent the merger from being completed, and would harm OHSL in the marketplace if the merger was not completed.  The timing of OHSL's CEO and board member defendant Ken Hanauer's golden parachute was also not disclosed.  The Proxy Materials/Registration Statement did not indicate that defendant Hanauer's change in vote was the direct result of the finalization of this change in control contract calling for a cash payment of $375,000 plus certain other benefits if the merger with Provident was completed.   Also not disclosed was that defendant Brinker, OHSL's Chairman of the Board, changed his vote from in favor of at the July 22, 1999 meeting to abstain at this meeting.

54.    Separately, the Board of Directors of Oak Hills (which consisted of the same directors as the OHSL Board) also adopted and approved the Merger Agreement and authorized its execution.

55.    Despite his vote as a director in favor of the transaction, OHSL CEO and Board member defendant Hanauer, voted his personal shares against the transaction. In a related action by a different plaintiff commenced in an Ohio state court and later voluntarily dismissed, defendant Hanauer testified that he had never believed that the

transaction was in the best interests of OHSL and its shareholders, but voted in favor of

the transaction as an OHSL director despite his belief that the merger was not in the best

interests of OHSL and its shareholders because he just gave up.

> Q. Okay. Why did you change your vote from abstaining on July 22nd, to in favor of on August 2nd, 1999?
>
> A. We had, we had discussed the ramifications of dissenting votes when we came to publication. And for the benefit of the—it was the opinion of certain individuals that if you had a dissenting vote, that could carry some distinct ramifications that might, in fact, cause difficulties down the road in the transaction. *So, so in essence, I just gave up. I felt that as the last ditch effort on July 22nd, I would, I would vote—or I would abstain from the vote. And by August 2nd, I just gave in and I voted for the transaction.*

Deposition of Kenneth L. Hanauer, Page 764, emphasis added.

### Events Leading up to the October 25, 1999
### Special Meeting of OHSL's Shareholders

56.    Dinsmore had actual knowledge of defendant Hanauer's opposition

to the merger with Provident, and KMK had actual or constructive knowledge of

Hanauer's opposition.   One of KMK transactional attorneys (defendant Mark

Weiss) stated in his deposition that had Mr. Hanauer voted his shares against the

merger without that negative vote's being disclosed in the subject Proxy

Statement/Registration Materials, such non-disclosure would have been a breach

of Mr. Hanauer's fiduciary duty to the class[1].   Through defendant Hertlein's

---

[1] It is problematic, to say the least, that lawyers from the KMK transactional team will be providing (and have provided) testimony that is directly adverse to at least some of the KMK defendants currently represented by KMK, despite KMK's disqualification.

friendship with Pat Condren, OHSL's Chief Financial Officer, defendants Roe, Hertlein, and Dinsmore had actual and constructive knowledge of significant opposition to the merger from defendant Ken Hanauer, OHSL's former CEO, Chairman of the Board designate, and the only member of OHSL's management to serve on OHSL's Board before the transaction closed.  Defendant Hanauer's opposition to the merger was a material fact.  Approximately one week before the final shareholder vote on October 25, 1999, defendant Hertlein was informed by OHSL's CFO, Pat Condren, that defendant Hanauer, in breach of his fiduciary duties to OHSL and its shareholders, was not fully cooperating in the merger process.  Defendant Hertlein informed defendant Roe that OHSL CEO and board member defendant Hanauer was not fully cooperating with in the merger process, in breach of his fiduciary duties.

57.    Additionally, defendant Hertlein was informed by Pat Condren a day before the October 25, 1999 Special Meeting of Shareholders that defendant Hanauer had voted his personal shares and those he controlled against the merger transaction, notwithstanding his vote as a director in favor of the transaction.  Despite this actual knowledge of defendant Hanauer's affirmative opposition to the merger with Provident, defendant Hertlein, and Dinsmore took no action, and did not even inform the managing partner of Dinsmore, defendant Roe, of defendant Hanauer's shareholder vote.

58.    Defendants Weiss and KMK had actual or constructive knowledge of defendant Hanauer's opposition to the transaction and would have had actual

knowledge had they made a reasonable inquiry into defendant Hanauer's position or examined the board minutes and internal memos of OHSL prior to the dissemination of the Proxy Materials/Registration Statement, which was something of an open secret at OHSL, although not disclosed to the investing public.

59.    Despite this actual and constructive knowledge by all defendants of defendant Hanauer's active opposition to the merger and his refusal to cooperate in the merger process, no defendant took any action whatsoever to inform the OHSL shareholders of defendant Hanauer's opposition to the merger, and did not supplement the Proxy Materials/Registration Statement in any way even to this day.    Hanauer's views, because of his special position as OHSL's largest shareholder, it's CEO, and only inside director, has special weight among investors generally and OHSL shareholders in particular.

### The October 25, 1999 Special Meeting of the OHSL Shareholders

60.    OHSL CEO, Board member, Chairman of the Board designate, and largest shareholder defendant Hanauer, despite changing his vote from abstain to reluctantly voting as a director in favor of the transaction because he "just gave up," voted his personal shares against the OHSL-Provident merger.    Although clearly material information, this was not disclosed and defendant Hanauer had the audacity to run the October 25, 1999 Special Meeting of OHSL shareholders and to encourage shareholders to vote in favor of the merger.    Defendant Hanauer also never disclosed that director Herron had resigned from the OHSL Board in part

because of his opposition to the OHSL-Provident merger, and, in an affirmative attempt to mislead OHSL's shareholders, did not comment on Mr. Herron's absence from the Special Meeting. Also not disclosed was that only 5 of the 7 OHSL directors present had voted in favor of the OHSL-Provident merger. This was an omission of a material fact.

61.    Additionally, as discussed above, defendants Roe, Hertlein, and Dinsmore had actual knowledge that defendant Hanauer opposed the merger and was refusing to cooperate in the process of effectuating the merger, and Weiss, and the entire KMK transactional team, and KMK had actual and/or constructive knowledge of same. Despite this actual knowledge of defendant Hanauer's opposition to the transaction, including the fact that defendant Hanauer had voted his personal shares and those he controlled against the merger, defendant Roe of Dinsmore attended the October 25, 1999 Special Meeting of OHSL shareholders, and even took questions from the audience. At no time did defendants Roe, Hertlein, and Dinsmore inform the shareholders in any way of defendant Hanauer's opposition to the merger, despite their actual knowledge of defendant Hanauer's opposition to and active opposition to the merger. Defendant Hanauer's opposition to the transaction is so clearly a matter of record after the fact--although not disclosed to the investing public in the Proxy Materials/Registration Statement or elsewhere--that his own counsel, James E. Burke of defendant KMK, has been quoted in the Cincinnati Business Courier as saying that defendant Hanauer was opposed to the OHSL-Provident merger.

62.    The cover letter accompanying the Proxy Materials states that:

Your Board of Directors unanimously approved the acquisition and believes that it is in the best interest of OHSL stockholders. The Board unanimously recommends and advises that you approve the acquisition at the Special Meeting so that the transaction may be completed.

This statement was an inducement - based upon false financials - that caused, *inter alia*, OHSL shareholders to narrowly approve the subject transaction and ultimately caused the financial loss now complained of. In point of fact, the OHSL Board did not unanimously approve the acquisition. Rather:

(a)    OHSL started 1999 with 8 directors. After voting <u>against</u> continued negotiations with PFGI on July 22, 1999, Director Tom Herron, who was Chairman of the OHSL Audit Committee, submitted his resignation as a director of OHSL on July 27, 1999, effective July 30, 1999. No 8-K was ever filed and the OHSL shareholders had absolutely no way of knowing that Mr. Herron was no longer an OHSL director after July 31, 1999 or that Mr. Herron had voted against continued negotiations of a definitive nature with Provident five days before he resigned.

(b)    Additionally, although present at the board meeting, OHSL's Chairman of the Board, Norbert G. Brinker, did not vote at all on the transaction, having changed his vote from in favor of continued negotiations with Provident on July 22, 1999 to abstain on August 2, 1999. Defendant Brinker's change in his vote from in favor of continued negotiations with Provident to abstain was not revealed to the investing public, because the defendants intended to mislead the OHSL shareholders into believing that the merger transaction has been unanimously approved by each and every OHSL director, including OHSL's Chairman of its Board of Directors.

(c)    OHSL Director Thomas McKiernan, a member of the *ad hoc* committee, also did not vote on the transaction because he was out of the country at the time the vote was taken.

(d)    All defendants knew, or in the exercise of reasonable care, should have known that the vote of the OHSL Board of Directors approving the merger was not unanimous. Indeed, a document bearing Bates # P/OHSL 00420 indicates that the materially false and misleading representation that the vote was unanimous was internally flagged by OHSL's CFO, Pat Condren, who circled the words unanimously as they referred to the vote of the OHSL directors and the belief that the transaction was in the best interest of OHSL and its shareholders, and wrote question marks by each word. In the margins, CFO Condren wrote "ok per Ken."

63.    On August 8, 2000, at Defendant Hanauer's most recent deposition in the Ohio action, he was informed that Defendant Brinker (OHSL's Chairman of the Board) did not vote at all on the transaction, but had abstained. He was also reminded that defendant McKiernan was out of the country on August 2, 1999 and did not vote. Confronted with these facts, defendant Hanauer conceded the obvious--that the vote was not unanimous and the Proxy Materials/Registration Statement were incorrect. None of this information was disclosed to the class at the time of the merger.

64.    The words "believes that [the acquisition] is in the best interests of OHSL stockholders" in the cover letter to the Proxy Materials/Registration Statement are also false. Indeed, former OHSL CEO defendant Hanauer testified in the Ohio Action that at no time did he believe that the acquisition was in the best interests of OHSL's stockholders. Rather, he testified that he later changed his vote from abstain to in favor of the transaction as a director, days after abstaining from the transaction, only after he entered into a contract providing for

an immediate $375,000 payment to him upon a merger or other change in control because he "just gave up." (*See*, ¶ 56) Despite defendant Hanauer's vote in favor of the transaction as a board member, he voted the approximately 130,000 shares that he controlled against the transaction. Additionally, despite this conflict and without revealing his opposition to the transaction and the vote of his personal shares against the transaction, defendant Hanauer ran the October 25, 1999 Special Meeting of OHSL shareholders where the stated purpose of the meeting was to approve the transaction. Thus, the OHSL shareholders who attended the Special Meeting called to approve the merger were not informed that OHSL's CEO, inside director, and largest shareholder, who ran the meeting calling for approval of the merger, had himself voted ***against*** the merger, proving beyond doubt that the merger was fraudulently induced.

65.     The section entitled "Security Ownership of Certain Beneficial Owners and Management," includes a table of all directors and executive officers as a group. The date of the table is July 31, 1999, one day after the resignation of director Tom Herron became effective. The selection of the date July 31, 1999 as opposed to July 30, 1999 or any date prior to July 30, 1999 was such that it did not disclose that Mr. Herron was opposed to the merger, that he was no longer a director, nor the real circumstances of his resignation.

### KMK's Dominant Role in Effectuating the OHSL-Provident Merger and the Manipulation of the Class' Interest Resulting in a Culture of Deception While Co-Authoring the Proxy Materials/Registration Statement in a Joint Effort with Dinsmore

66. KMK transactional attorneys testified that KMK violated standard and customary practice in mergers and acquisitions by not having an attorney read board minutes and major committee minutes of the seller (OHSL) for the last five years. Had KMK done so, KMK would have inevitably learned that far from the unanimous opinion that the Proxy Materials/Registration Statement indicated, there was considerable dissent, and that the eventual vote to approve the merger transaction was far from unanimous. In order to close the merger and fraudulently induce OHSL shareholders to approve the merger, no reference to any dissent was included in the Proxy Materials/Registration Statement.

67. KMK made no independent assessment of the financial sophistication of the OHSL directors, many of whom were elderly, infirm, and not sophisticated in complex business matters. As such, KMK had actual knowledge that the risk that the Proxy Materials/Registration Statement could be and in fact was materially false and misleading and contained the four misrepresentations now complained of, but they did not alter their due diligence inquiry to take the risks into account.

68. KMK, simultaneously defendants and defense counsel in the litigation resulting from the false Proxy Materials/Registration Statement in a belated attempt to "seal the deal" by controlling all witnesses and parties in the subject transaction have provided testimony that is adverse to the interests of at least some of KMK's clients, particularly former OHSL CEO and director Ken Hanauer, who, in the view of various KMK transactional attorneys, had a duty to

41