# Exhibit A

Page 1

```
 1
 2              UNITED STATES DISTRICT COURT
 3               SOUTHERN DISTRICT OF OHIO
 4                    WESTERN DIVISION
 5
 6                           - - -
 7    WALTER W. THIEMANN,    :
      on Behalf of Himself   :
 8    and of All Others      :
      Similarly Situated,    :
 9                           :
              Plaintiff,     :
10                           :
         VS.                 :  CASE NO. C-1-00-793
11                           :
      OHSL FINANCIAL         :
12    CORPORATION, et al.,   :
                             :
13           Defendants.     :
14                           - - -
15         Hearing before Magistrate Judge Thomas
16    S. Hogan held pursuant to the Federal Rules of
17    Civil Procedure, taken before me, Lee Ann
18    Williams, a Registered Professional Reporter
19    and Notary Public in and for the State of Ohio
20    via telephone, on Tuesday, December 9, 2003, at
21    10:42 a.m.
22
23
24
```

Page 2

```
 1  APPEARANCES:
 2     On behalf of the Plaintiffs:
 3        Michael G. Brautigam, Esq.
           and
 4        Gene I. Mesh, Esq.
           Gene Mesh & Associates
 5        2605 Burnet Avenue
           Cincinnati, Ohio 45219
 6
       On behalf of the Defendants:
 7
          James E. Burke, Esq.
 8        Keating, Muething & Klekamp
          1400 Provident Tower
 9        One East Fourth Street
          Cincinnati, Ohio 45202
10
       On behalf of the Defendant Dinsmore &
11     Shohl (via telephone):
12        John W. Hust, Esq.
           and
13        Michael Maundrell, Esq.
          Schroeder, Maundrell, Barbiere
14        & Powers
          110 Governor's Knoll
15        11935 Mason Road
          Cincinnati, Ohio 45249
16
       On behalf of the Defendants:
17
          John B. Pinney, Esq.
18        Graydon, Head & Ritchey
          1900 Fifth Third Center
19        511 Walnut Street
          Cincinnati, Ohio 45202
20
       On behalf of the Defendants:
21
          Thomas William Breidenstein, Esq.
22        Barrett & Weber
          105 East Fourth Street
23        Suite 500
          Cincinnati, Ohio 45202
24
```

Page 3

```
 1     On behalf of the Defendant Ernst &
       Young (via telephone):
 2
          James E. Gauch, Esq.
 3        Jones Day
          51 Louisiana Avenue, N.W.
 4        Washington D.C., 20001-2113
 5
 6              - - -
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 4

1          MR. BRAUTIGAM:  Good morning, Your
2    Honor.  Thank you very much for arranging to
3    meet with us, especially on short notice.  Your
4    Honor, the reason I asked for this meeting was
5    so that we could do the deposition of Norbert
6    Brinker, and I'd like to give you some
7    background.  Mr. Brinker was the former
8    chairman of the OHSL Board, he's a key player
9    in the transaction.
10         And in October of 2002, KMK moved
11   for protective order with respect to his
12   deposition and two other gentlemen.  Dinsmore
13   opposed that motion the next day, because they
14   never had any opportunity to take his
15   deposition.  The plaintiffs opposed that
16   several days later, so we're talking about
17   November of 2002.
18         In February of 2003, Your Honor,
19   you ruled denying the motion for protective
20   order and you said that when things would move
21   forward, we could take their depositions.  So
22   nothing happened between February 2003 and
23   October 20th of 2003, when Judge Beckwith
24   issued her order hopefully getting the case

Page 5

1    back on track.  Shortly after that I wrote to
2    Mr. Burke and I said, can we please have some
3    deposition dates for Mr. Brinker.
4          Mr. Burke wrote me back recently
5    and said that he met with Mr. Brinker in
6    October and he was fine, but now Mr. Brinker
7    may have suffered a mild stroke and he's in
8    some type of a rehab facility and is unable to
9    be deposed.
10         Your Honor, what we suggest is
11   that the plaintiffs go to this facility, Mr.
12   Brinker can have a doctor present if needed,
13   and we can depose him for an hour or two at a
14   time, whatever it takes to get it done.
15   Obviously if this does not happen, the
16   plaintiffs are going to be harmed and perhaps
17   irreparably harmed.
18         MR. BURKE:  Your Honor, just to
19   clarify, the protective order Mr. Brautigam was
20   referring to originally is the situation we
21   were all in where there was a debate over the
22   amended complaint.  That's been resolved.  And
23   frankly, we fully expected that Mr. Brinker
24   would be deposed by now, although we have

Page 6

1  raised an issue I'll get to in a second with
2  Mr. Brautigam about that deposition.
3      I met personally with Mr. Brinker
4  at the end of October and he was fine. I told
5  him that a deposition would be upcoming and he
6  said, what else can they ask me about. And
7  frankly we talked a little bit about that.
8      We tried to schedule a deposition.
9  In speaking with his daughter, she indicated
10  that he did have a mild stroke a couple of
11  weeks ago. I spoke to his doctor today, his
12  name is Dr. David Smith.
13      Dr. Smith indicated to me that Mr.
14  Brinker is wheelchair bound. He -- the impact
15  of the stroke was not mental. His mental
16  faculties are still good, but he's very frail.
17  He's undergoing physical therapy to resume his
18  ability to walk.
19      And what I've told Mr. Brautigam
20  is as soon as Mr. Brinker recovers reasonably
21  well, you know, we'll arrange for a deposition.
22  I would point out that it's hard for us to
23  imagine any prejudice, because this is Mr.
24  Brinker's deposition transcript.

Page 7

1      This was taken in the state court
2  action in 2000. There are 800 pages of
3  deposition going in detail through the merger,
4  the proxy statement, every possible factor.
5  And I'm willing to submit this to the Court
6  because one of the things we've raised to the
7  plaintiff is there is an existing transcript of
8  a related case of Mr. Brinker's testimony taken
9  much closer to the date and time that we're
10  talking about.
11      We don't want him to have to go
12  through this again. I mean, there are 800
13  pages of testimony that Mr. Brinker has already
14  talked about, which is why he said when told
15  that he might be deposed again, he said what
16  else can they possibly ask me, I've answered
17  all of these questions.
18      Our point is the gentleman is ill.
19  I think to suggest that a bunch of lawyers
20  descend upon a rehabilitation center and
21  conduct depositions is not just a disservice to
22  Mr. Brinker, but to the staff and the other
23  people there where we are. Mr. Brinker's
24  health improves, we'll produce him. And with

Page 8

1  this kind of record already in existence, I'm
2  hard pressed to see why we're here. There is
3  no dispute that this gentleman is ill. Mr.
4  Brautigam refused to accept my representation
5  in this regard.
6      I spoke to Dr. Smith about getting
7  us a brief letter that indicates, as he told me
8  today, that this gentleman is not capable of
9  sitting for a deposition now and I'm prepared
10  to do that.
11      THE COURT: What does he think in
12  terms of time?
13      MR. BURKE: To be honest with you,
14  I didn't ask him when. I can certainly ask him
15  and figure that out. I'm hopeful within the
16  next couple of months Mr. Brinker is in a home
17  environment instead of a care facility and
18  we'll set things up.
19      I don't want to go over the same
20  ground again, but on the other hand, we
21  understand the Court's admonition to get this
22  case moving. We're going to get Mr. Brinker in
23  as soon as his health improves. We're going to
24  produce him for deposition. We're not going to

Page 9

1  refuse to cooperate with anything. We're going
2  to get this case moving and get this case
3  decided.
4      MR. BRAUTIGAM: Your Honor, if I
5  can speak. And for Mr. Burke to wave an 800
6  page transcript and say that I don't know why
7  Mr. Brautigam is trying to do this, he's trying
8  to prejudice some elderly, frail man -- this
9  issue has been decided. I direct your
10  attention to document 142, you also have
11  already said that the deposition can go
12  forward, so that's not to be debated.
13      Now, with respect to the location
14  and the circumstances of Mr. Brinker's
15  deposition, he's wheelchair bound, he can't
16  walk, he's very frail, I understand that. He
17  doesn't have to walk anywhere for his
18  deposition. Your Honor, Mr. Mesh and I have an
19  obligation to the class to get this done.
20  We've tried to get it done for years.
21      The other point I wanted to say is
22  that Mr. Burke refers to a deposition that was
23  taken in the last century and different case.
24  He's repeatedly said that the plaintiffs are

Page 10

1  attempting to reinvent the case, it's a whole
2  new ball game, words to that effect, everything
3  is completely different, Your Honor, he's
4  trying to have us start over at point zero.
5       So how can he have things both
6  ways? Mr. Brinker is a critical witness.
7  Allow this deposition to go forward, Your
8  Honor. Respectfully I suggest that you issue
9  an order allowing us to go to his rehab
10 facility, have the deposition taken in hour or
11 two hour blocks in the presence of his doctor.
12      MR. BURKE: Will you pay for that?
13      MR. BRAUTIGAM: No. He's not
14 suffering from any mental incapacity, but that
15 could happen. Suppose he has another stroke.
16 Your Honor, one other point, although we're
17 here with respect to the deposition of Mr.
18 Brinker primarily --
19      MR. BURKE: Only, Your Honor.
20      MR. BRAUTIGAM: I disagree.
21      MR. BURKE: If you're going to
22 raise another issue, that's not fair, everyone
23 is not here to respond.
24      MR. BRAUTIGAM: My point is other

Page 11

1  gentlemen are similarly situated. My point is,
2  there are other gentlemen who are elderly.
3       THE COURT: You're saying that you
4  think that the Court's contact or Mr. Burke's
5  contact with Dr. Smith is an unnecessary step,
6  that we just schedule Brinker's deposition and
7  proceed like we were doctors? In other words,
8  estimate that he needs an hour on several
9  separate occasions or a half hour or an hour
10 and a half? Where is the Court supposed to
11 come up with that number, in left field?
12      I don't know what Mr. Brinker's
13 condition is. His doctor has said, according
14 to Mr. Burke, that he's unable to be deposed
15 now. So if -- if, in fact, we get ahold of Dr.
16 Smith and Dr. Smith says in two weeks he can be
17 deposed for an hour, or in a month he can be
18 deposed for the day or what, do you have any
19 opposition to this, what appears to me to be
20 meaningful colloquy with Dr. Smith one way or
21 the other?
22      MR. BRAUTIGAM: I have no
23 opposition to meaningful colloquy with Dr.
24 Smith. What I would ask is what it means to

Page 12

1  give a deposition. If Mr. Burke said, can Mr.
2  Brinker come downtown for a full day of
3  depositions, that's not what we're talking
4  about at all.
5       What I would ask for is a specific
6  representation, would it impact Mr. Brinker's
7  health if he were to sit in his wheelchair and
8  be deposed for an hour or two at a time. And
9  with that caveat --
10      THE COURT: Let me stop you a
11 second. How about we get Dr. Smith on the
12 phone jointly and ask him, would that be
13 acceptable?
14      MR. BRAUTIGAM: Absolutely, Your
15 Honor.
16      THE COURT: Why don't we set that
17 up.
18      MR. BURKE: I can have Dr. Smith
19 write a letter.
20      THE COURT: I hate to have him --
21      MR. BURKE: I think a fair
22 question, Your Honor, is when will he be
23 discharged, when will he be in a better
24 position to do this? I mean, it's unthinkable

Page 13

1  to me that a gentleman who is in a rehab
2  facility now, that Mr. Brautigam is seriously
3  coming to this Court to say force him to sit
4  for a deposition, but apparently that's what
5  he's doing.
6       I think it is a fair question.
7  This is a surprise to me, I thought Mr. Brinker
8  would be deposed by now in whatever fashion. I
9  think it's fair to say when will he be
10 discharged, when will he be able to sit for
11 several hours at a time in whatever location.
12      At this point the gentleman can't
13 walk, is having a great difficulty navigating
14 around. That's a problem. We will obtain that
15 information from Dr. Smith. I will tell the
16 Court to look at him -- I hope there's no
17 problem with that, that Dr. Smith could give us
18 some kind of written letter indicating some of
19 these dates.
20      Frankly, why every situation in
21 this case has to descend to this remains a
22 mystery to me, but I'm happy to make that call
23 and try to get that information for the Court.
24      THE COURT: Just as long as we

Page 14

1 understand. I imagine if you just say
2 deposition to a doctor, he's got one thing in
3 mind. If you say that there are options
4 available by taking bits of testimony so as to
5 not exhaust the patient --
6     MR. BURKE: Right.
7     THE COURT: -- whatever his
8 capacity is. I want to get going with it, but
9 I don't want to proceed in the absence of a
10 doctor's authorization and a tragedy occur, but
11 I don't know. We'll talk to the doctor.
12     MR. BURKE: I'll do that, Your
13 Honor. I told him we would be calling him
14 back. We had a very brief conversation when we
15 were trying to set up the conference call this
16 morning.
17     THE COURT: That may be real
18 workable to him. Maybe he can write something,
19 get him on a conference call so he probably can
20 tell you quickly if both of you guys won't
21 disagree, otherwise we can do it from here. I
22 mean I don't care. I asked Jim just a
23 question, would it be appropriate to write up
24 some guidelines with regard to the scope of

Page 15

1 the --
2     MR. BURKE: That's the second
3 question, Your Honor, which is as to new
4 claims, new matters, I have no problem with Mr.
5 Brautigam or Mr. Mesh inquiring of Mr. Brinker
6 about matters, but as to things that have been
7 covered in the prior state court litigation --
8 and we had stipulated with Mr. Brautigam's
9 former co-counsel who withdrew, Mr. Brualdi,
10 given the voluminousness of the transcript,
11 that we would admit this for all purposes of
12 this case so it does not have to be taken
13 again, just to spare Mr. Brinker the time and
14 the effort and, frankly, his counsel the time
15 and the effort of having to do it again.
16     So we do believe that it's
17 appropriate to say what's been covered before
18 should not be covered again. But we can take
19 that as it comes as we get closer.
20     MR. MESH: May I inquire of Mr.
21 Burke, what is Dr. Smith's specialty?
22     MR. BURKE: That's a good
23 question. I think he's just a general
24 practitioner. It's an internal medicine group

Page 16

1 that's out in the western side of town. That's
2 as much as I know, Gene.
3     THE COURT: I'm not sure what the
4 field would be for strokes and -- a
5 cardiovascular, I suppose, expert.
6     MR. MESH: It was on my mind.
7     THE COURT: I mean, if there's
8 somebody else maybe more qualified than Smith,
9 if you want the specialist, okay, rather than
10 Smith --
11     MR. BURKE: I'll raise it with Dr.
12 Smith if there's somebody else that we ought to
13 be speaking to.
14     THE COURT: Yes. If he's referred
15 him to a specialty more appropriate, then we
16 can bypass Dr. Smith and get right to it,
17 whoever it is.
18     MR. BURKE: I can have that
19 conversation.
20     MR. MESH: Thank you.
21     THE COURT: It just occurs to me
22 that that may not be actually true. The
23 specialist might say, hey, look, I'm a hired
24 gun to do this. The internist is really the

Page 17

1 person who knows more. I don't know who --
2     MR. BURKE: I understand he's his
3 principal treating physician.
4     THE COURT: Whoever. And maybe
5 they don't disagree.
6     MR. BURKE: Certainly, sir, we had
7 no desire to bring this before the Court. Mr.
8 Brinker's situation is something that developed
9 quite recently, and hopefully we will be able
10 to work through it.
11     THE COURT: Okay. Well, I need to
12 hear from you before I can call it.
13     MR. BURKE: I'll do it.
14     MR. BRAUTIGAM: Your Honor, there
15 are several other points related to this.
16 First of all, many of the OHSL directors are
17 similarly elderly. Mr. Hillebrand is at least
18 80. Mr. Hucke is at least 80. Mr. Tenoever is
19 at least 76. Mr. Zoellner is at least 81.
20     Your Honor, we respectfully submit
21 that for similar reasons, we need to take their
22 depositions right away, even with respect to
23 people have who been deposed in this case
24 because there are new issues. I respectfully

Page 18

1  submit that if this case keeps going on,
2  similar situations will arise. People will
3  have health problems, they're going to have
4  strokes, and the plaintiffs will be harmed by
5  not being able to take their deposition.
6      MR. BURKE: They have taken those
7  depositions, Your Honor, every one of the
8  gentlemen, he's already taken their depositions
9  in this case. We're not talking about the
10 state court action, in the Thiemann action he's
11 deposed those gentlemen. So I guess I'm a
12 little amazed as to what Mr. Brautigam could be
13 talking about, because he deposed several of
14 those gentlemen after he had filed his motion
15 to leave on at least one or two occasions.
16     MR. BRAUTIGAM: I'll be happy to
17 clear that up. Your Honor, there are certainly
18 issues related to the restatement that I want
19 to go back and ask each of these gentlemen
20 about. These relate to the original complaint.
21 Nobody has been deposed since March 5th of
22 2003, and I would like to say, hey, knowing
23 what you know now, that Provident filed
24 overvalued statements, would you do the deal,

Page 19

1  would you recommend this in the exercise of
2  your fiduciary duties, would you insist on
3  different terms.
4      So I have no intention of
5  replowing old ground, but, Your Honor, on
6  something of an expedited or emergency basis, I
7  would like an hour with people I've already
8  deposed to talk about this new information
9  before it's too late.
10     So rather than doing it seriatim,
11 Your Honor, I respectfully submit that we have
12 an order permitting this to go forward on a
13 blanket basis rather than coming back because
14 one director breaks his hip and another
15 director has the flu or something like that.
16     THE COURT: It will probably be
17 the same, if you want to somehow restrict it to
18 new ground.
19     MR. BURKE: Oh, absolutely. It
20 seems to me that there's no reason to try to
21 ask questions that have been previously asked
22 of these individuals.
23     THE COURT: Were they deposed in
24 the state court action, too?

Page 20

1      MR. BRAUTIGAM: Some were, some
2  were not, Your Honor.
3      THE COURT: And they're all
4  directors?
5      MR. BURKE: Of OHSL. I think Mr.
6  McKiernan and Mr. Brinker were deposed in the
7  state court action. Mr. Tenoever, Mr.
8  Hillebrand, Mr. Hucke and Mr. Zoellner were all
9  deposed in this action, the Thiemann action. I
10 believe that's accurate.
11     THE COURT: In other words, if I'm
12 remembering right, everybody has been deposed
13 in some form or another?
14     MR. BURKE: Yes, Your Honor, every
15 one of the directors.
16     THE COURT: Mike's point is he
17 wants to depose them based on information
18 learned since the original complaint.
19     MR. BURKE: And if that's the
20 point, information learned since the last
21 deposition of these gentlemen, that's fine. I
22 mean, none of those depositions have been
23 requested. We're over here talking about Mr.
24 Brinker right now. If Mr. Brautigam wants to

Page 21

1  set up a time where we can bring all of those
2  gentlemen in and go, one, two, three, four, for
3  an hour each and ask for information that has
4  not been requested --
5      MR. BRAUTIGAM: That is not what I
6  need.
7      THE COURT: Okay.
8      MR. PINNEY: The other point is I
9  think we should try to have some time
10 guidelines. Obviously we have a new rule with
11 the clock, but I think these are matters that
12 can and should be dealt with in a very prompt
13 manner and make sure that they don't go on for
14 hours, if not days.
15     MR. BRAUTIGAM: Your Honor, I'm
16 not sure what Mr. Pinney is referring to. He's
17 new in the case and perhaps --
18     THE COURT: Well, I think he's
19 referring to both things, that if I -- if
20 John's referring to the time of the
21 depositions, that's related to the issue we
22 just discussed about going over old ground. If
23 it's the timeliness of the depositions, trying
24 to get them in and all done by a certain time

Page 22

1  frame, I'm certainly for that.
2  　　　MR. BRAUTIGAM: Right.
3  　　　MR. PINNEY: I thought the concept
4  of having seriatim, you know, an hour slot here
5  and then the next one another hour, something
6  like that, makes a --
7  　　　MR. BURKE: I think that's what
8  Mike indicated.
9  　　　MR. BRAUTIGAM: Your Honor, I
10 agree with that. I have no intention of
11 plowing old ground.
12 　　　THE COURT: Probably the first
13 time you've agreed to anything.
14 　　　MR. BRAUTIGAM: There's hope, Your
15 Honor.
16 　　　THE COURT: Did you get that, Miss
17 Court Reporter? They actually agree.
18 　　　COURT REPORTER: Yes.
19 　　　MR. MESH: Everybody is nodding
20 yes. I don't know if you can see, Lee Ann.
21 　　　THE COURT: It's a shocking
22 development around the holidays. What time
23 frame are you talking about? Can they all be
24 done in a month?

Page 23

1  　　　MR. BRAUTIGAM: Yes, Your Honor.
2  　　　MR. BURKE: A month from now? I
3  would hope so, Your Honor. I would hope so.
4  I'll call Mr. Hucke when I get back to the
5  office and he can contact the other
6  individuals.
7  　　　The one thing I don't want to run
8  into, as we've run into every time, is the
9  location of the deposition. I would suggest
10 bringing these gentlemen down to my office or
11 Mr. Pinney's office and make them available in
12 our office so nobody has to drive all the way
13 up to Mr. Mesh's office. And we've had that
14 fight ad nauseam in this case.
15 　　　I think it would be relatively
16 easy for these gentlemen to get in and out of
17 our office, to come in and sit for a
18 deposition. That would be the end of that. I
19 hope we don't get into that fight again.
20 　　　MR. BRAUTIGAM: Your Honor, I
21 don't want to shock you, but I'm willing to
22 agree again.
23 　　　MR. BURKE: Thank you.
24 　　　THE COURT: This is a friendly

Page 24

1  environment.
2  　　　MR. MESH: Your Honor, I take
3  personal umbrage, rather, at the lack of
4  deference shown to my office.
5  　　　MR. BURKE: And the parking is
6  fine.
7  　　　MR. MESH: And the water.
8  　　　MR. BURKE: Well, the front
9  staircase is difficult for gentlemen of this
10 age. It is not a handicap-friendly spot.
11 　　　MR. BRAUTIGAM: We've worked this
12 out.
13 　　　THE COURT: At Keating, okay.
14 　　　MR. BRAUTIGAM: There's one other
15 point that I wanted to bring to your attention.
16 We have suggested that Keating has been very
17 active in resisting discovery in many areas.
18 And before the October 20th order, we were
19 successful in getting by subpoena the
20 depositions of four KMK transactional attorneys
21 who worked on the merger agreement.
22 　　　There were two remaining that were
23 scheduled and for reasons I can't exactly
24 articulate right now, when the Judge's order

Page 25

1  came down, they were unscheduled. And I'd like
2  to get them scheduled again, but the point that
3  I want to bring to your attention is in
4  addition to Mr. Burke and his camp of people
5  representing the Provident and the OHSL
6  defendants, there is another camp of KMK
7  attorneys who are actively working on the case
8  who have been writing letters in the case, and
9  in some circumstances have represented the
10 Provident and Oak Hills defendants, but have
11 not put in a notice of appearance.
12 　　　This is difficult for me. First
13 of all, I think it's improper, but it's also
14 difficult in terms of scheduling. I don't know
15 who to call. Mr. Breidenstein, whom I called
16 yesterday and said, can we work on getting
17 these depositions. And he said in substance, I
18 suggest you continue working with those people,
19 Mr. Gilligan and Mr. Fischer.
20 　　　I have letters Mr. Fischer has
21 written to me, and there are others. The point
22 is if they are going to be appearing on the
23 case, they should put in a notice of
24 appearance. And I respectfully request that

Page 26

1  you require them to do so.
2      MR. BURKE: Your Honor, I don't
3  know why it always has to be like this. Your
4  Honor ruled back in the summertime saying let's
5  take the discovery. We bent over backwards
6  trying to accommodate Mr. Brautigam's request,
7  produced several of KMK's attorneys for
8  deposition.
9      We produced every one of the
10 people with a meaningful role in the
11 transaction. Every one. They've all been
12 deposed by Mr. Brautigam. Mr. Brautigam, when
13 he began to threaten to sued us, actually sue
14 us, demanded to depose our people, we go into a
15 risk management scenario within our firm. When
16 our firm is put at risk, there are people at
17 our firm who, with the assistance of our
18 malpractice carrier, are designated to help
19 address those situations and to deal with those
20 situations.
21     It's out of my hands, Your Honor.
22 Mr. Gilligan and Mr. Fischer are our two
23 in-house partners. When our firm is being
24 accused of something or being sued, they are

Page 27

1  the people who are contractually required by
2  our malpractice be carrier to be involved. And
3  they have been involved with Mr. Brautigam
4  conducting these affairs. Mr. Breidenstein is
5  our counsel. Because we are lawyers, sometimes
6  we also will attempt to work pro se, working
7  through some of these issues. Mr. Gilligan and
8  Mr. Fischer represented the KMK lawyers at
9  their deposition.
10     What has happened in this is the
11 two lawyers he still wants to depose, we have
12 already represented to him have no information
13 that is relevant, okay? I understand he
14 doesn't accept that, that's fine. But more
15 importantly, when the Court issued its order on
16 the disqualification motion and on the motion
17 for leave to amend, then we talked scheduling
18 with Your Honor. One of the issues we talked
19 about was who -- what discovery can still go
20 and what discovery should not go.
21     Things were different at that
22 point in time. We were not just dealing with
23 the Court's issue, saying let's get discovery
24 going, if KMK wasn't a party, we would be a

Page 28

1  party pretty soon. The Court's order of
2  scheduling made it very clear that, I assume
3  after consultation with Judge Beckwith,
4  discovery shall continue as to the old parties,
5  discovery of the newly named parties, Ernst &
6  Young and KMK, is stayed.
7      THE COURT: You're right.
8      MR. BURKE: So when Mr. Brautigam
9  then said, I want to depose two more of your
10 lawyers, people who frankly had nothing to
11 offer, we said discovery has been stayed
12 pursuant to Court order. And we don't believe
13 that those depositions should occur now that we
14 are parties or will be parties when Mr.
15 Brautigam gets around to filing the complaint.
16 So I guess I'm at a loss, how he can read the
17 scheduling order, disregard it, and say I want
18 more KMK depositions.
19     MR. BRAUTIGAM: Your Honor, I
20 completely disagree with the procedural history
21 Mr. Burke has cited. I deposed four KMK
22 attorneys pursuant to the original complaint
23 because they worked on the proxy
24 materials/registration statements. Before

Page 29

1  Judge Beckwith's order of October 20th, we had
2  dates, we had schedules, we had agreements. I
3  believe it was going to be done at KMK.
4      And after the order, for some
5  reason that's all gone by the wayside. So I
6  have to attempt to negotiate, because this
7  relates back to the original complaint. And if
8  it relates -- if these depositions take place
9  after the first of the year, it will relate to
10 the consolidated amended complaint that you
11 directed us to file. So Your Honor, I don't
12 understand why they're objecting at all, let
13 alone why they have a separate camp of KMK
14 attorneys representing KMK, KMK witnesses.
15     And frankly, Your Honor, we
16 respectfully submit that this goes to the issue
17 of the permission of their clients. I have
18 reviewed the testimony of some of the KMK
19 attorneys this morning. I have found that it's
20 clearly adverse to at least some of their
21 clients. And Mr. Burke says they obtained
22 permission of the clients for continued
23 representation. Okay, well, when we depose
24 these people, we'll see. We'll see what that

8 (Pages 26 to 29)

Page 30

1  permission entails. I also want to point out
2  that even though Mr. Fischer and Mr. Gilligan,
3  Mr. Burke says that they represent KMK, et
4  cetera, they have represented the very same
5  defendants that Mr. Burke represents. In fact,
6  Mr. Burke -- Mr. Mesh and --
7       MR. BURKE: This is inappropriate,
8  Mr. Brautigam.
9       MR. BRAUTIGAM: -- and Mr.
10 Gilligan conducted a settlement conference when
11 Mr. --
12      MR. BURKE: Mr. Brautigam, Mr.
13 Mesh can speak for himself. Mr. Mesh called
14 Mr. Gilligan as an old friend, in that channel,
15 and attempted to start a settlement dialogue,
16 which has nothing to do with the issues you've
17 raised. Mr. Mesh is here and can say that.
18      Mr. Gilligan, out of respect for a
19 colleague of the bar and a friend, conducted
20 those discussions at Mr. Mesh's request. For
21 you to use that in an attempt to try to impugn
22 Mr. Gilligan is inappropriate.
23      MR. BRAUTIGAM: Jim, I --
24      MR. BURKE: Mr. Mesh is here to

Page 31

1  correct me if I have stated anything
2  incorrectly.
3       MR. BRAUTIGAM: I'm sure he will.
4       MR. MESH: Let me just state to
5  the Court that I called Mr. Gilligan regarding
6  some type of overall settlement. He undertook
7  it. Undertook the experience to represent all
8  of the defendants and getting back to me with
9  what he -- what he called a settlement offer to
10 which we never responded.
11      MR. BRAUTIGAM: Your Honor,
12 there's a letter -- Mr. Gilligan writes a
13 letter, pursuant to our settlement meeting.
14 Mr. Gilligan became engaged in these
15 negotiations, it's a fact.
16      MR. BURKE: What does that have to
17 do with anything?
18      MR. BRAUTIGAM: Your Honor, this
19 goes to the Fischer/Gilligan camp filing a
20 notice of appearance, because it goes to the
21 consent and the permission of the clients they
22 represent, and of the continued representation.
23      THE COURT: I have no idea what
24 the purpose --

Page 32

1       MR. MESH: I think we should add
2  also that Mr. Kreider was at many Board
3  meetings at or about the time of your document
4  review, his name appears. I think --
5       MR. BURKE: Right.
6       MR. MESH: -- he has relevant
7  information.
8       MR. BURKE: That's also
9  attorney-client privilege --
10      MR. MESH: Maybe, maybe not on a
11 public document and a public restatement.
12      MR. BURKE: But Ernst -- if you
13 want to depose Mr. Kreider on the restatement,
14 that's a different issue. That's a different
15 issue. We're not talking about that. We're
16 talking about the OHSL proxy material. That's
17 what Mr. Brautigam is requesting in these
18 depositions.
19      MR. MESH: And are they different
20 from the Provident proxy materials?
21      MR. BURKE: They are the same
22 proxy materials, but they have nothing to do
23 with the restatement.
24      MR. PINNEY: We're having ships

Page 33

1  pass in the night, because Mr. Brautigam is
2  referring, as I understand it, to conflict of
3  interest/representational issue kind of matters
4  and not merit issues with respect to the claims
5  in this litigation. They're obviously going to
6  be entitled to take depositions of all relevant
7  witnesses in due course of KMK, but that's
8  stayed for the time being.
9       And as a consequence, there seems
10 to be no reason to rush to judgment. And the
11 motivation, I suggest, is to either embarrass
12 or to create some kind of perceived conflict
13 issue beyond that which has already been dealt
14 with by Judge Beckwith, and not to go to the
15 merits of the dispute in the litigation.
16      MR. MESH: Maybe it would all be
17 clarified if they would file a notice of
18 appearance.
19      MR. BURKE: What does that do for
20 you, Gene? If they were to file notices, how
21 would that help you do anything?
22      MR. BRAUTIGAM: Your Honor, it
23 tells us who to deal with, who to negotiate
24 with, because I'm getting bounced around. And

Page 34

1   with all due respect --
2           THE COURT: Mike, in the real
3   world if you sue Keating, Muething & Klekamp,
4   I'm sure the word of this case has been
5   thoroughly digested through much of the firm.
6   And ultimate settlement discussions are going
7   to be conducted probably with the input of a
8   lot of people. What does that do for you in
9   terms of the merits of the case?
10          I mean, Fischer or Gilligan or
11  Burke or whoever it is that does the settlement
12  negotiations -- I thought this started with
13  your argument that you wanted Mr. Gilligan and
14  Mr. Fischer to file notices of appearance in
15  this case.
16          MR. BRAUTIGAM: Yes, Your Honor.
17          THE COURT: And if that happens,
18  what would that do for you?
19          MR. BRAUTIGAM: Well, Your Honor,
20  that would go to the consent, and with respect
21  to Judge Beckwith's order disqualifying them,
22  because in part they're protecting themselves.
23          MR. BURKE: There are four lawyers
24  -- the key four lawyers in the underlying

Page 35

1   document. This is akin to having a lawyer deal
2   directly with an in-house counsel. Are you
3   going to make the in-house counsel file notices
4   of --
5           THE COURT: No, I'm not. I'm not
6   going to make Mr. Gilligan or Fischer do it,
7   either. It is silly. It doesn't do anything
8   except create more chaos and this case needs
9   less.
10          MR. MESH: Your Honor, you know --
11  excuse me.
12          THE COURT: Go ahead.
13          MR. MESH: It should be noted that
14  during the depositions of the lawyers of KMK,
15  there were dozens of do-not-answer directions
16  on key issues of inquiry on the plaintiff's
17  side. They remain unanswered at this point in
18  time. If they are no longer qualified to
19  represent these particular individuals on those
20  inquiries, we have a right to go back into
21  those merit issues.
22          MR. BURKE: There is no -- I don't
23  understand, Gene. Without any specific
24  ruling --

Page 36

1           MR. PINNEY: Are you talking about
2   KMK lawyers, Gene?
3           MR. MESH: Yes, who were directed
4   not to answer questions posed to them, based on
5   the merits of the case.
6           THE COURT: So what you're
7   suggesting, if I'm following you, is that the
8   KMK lawyers who were defending the depositions
9   and giving the instructions to the deponent had
10  a conflict of interest and, therefore, you're
11  questioning whether or not their instructions
12  were proper?
13          MR. MESH: That's right.
14          MR. BURKE: Bring a motion to
15  compel.
16          MR. MESH: We should be able to
17  inquire into those areas again.
18          MR. BURKE: Bring a motion, Gene,
19  if you have anything specific, because I will
20  present those transcripts before the Court
21  tomorrow.
22          THE COURT: I don't necessarily
23  disagree with that, but I'm thinking what does
24  a notice of appearance have to do with that?

Page 37

1           MR. BRAUTIGAM: Your Honor,
2   perhaps we can simplify this. If you could
3   direct KMK or Mr. Breidenstein or someone to
4   negotiate with me to produce Mr. Kreider and
5   Mr. Rosenberg's deposition that were previously
6   scheduled, that would be fine.
7           MR. BURKE: Your Honor, discovery
8   is stayed as to KMK.
9           MR. BRAUTIGAM: It's not stayed
10  with respect to KMK, Jim. It's not stayed,
11  okay? I have deposed the four attorneys --
12          MR. BURKE: Please don't raise
13  your voice.
14          THE COURT: Do you have the
15  schedule?
16          MR. BURKE: I guess I fail to see
17  what is so difficult with the scheduling order.
18          MR. BRAUTIGAM: Jim, let me
19  explain it to you. I have deposed four KMK
20  attorneys --
21          THE COURT: I read it, because I
22  discussed it with Judge Beckwith. That was, in
23  fact, the only question presented to her, as I
24  told you guys the last time we met. The rest

Page 38

1  of this was worked out. The only other issue
2  was whether or not there was going to be a stay
3  of discovery with respect to anybody. And she
4  and I discussed that matter and I followed
5  through on what she wanted to do.
6      MR. BRAUTIGAM: Your Honor, I
7  don't understand why Mr. Burke is surprised. I
8  want to take the deposition of these two
9  additional KMK attorneys for the same reasons
10 that I took the depositions of the other four,
11 to talk about the proxy materials and
12 registration statement that they co-wrote. To
13 the extent that that relates back to the
14 original complaint, that's appropriate
15 discovery and it's not stayed.
16     MR. BURKE: But the original
17 complaint is superceded by the amended that you
18 are yet to file.
19     THE COURT: Is there a motion to
20 dismiss filed?
21     MR. BURKE: No, because they
22 haven't filed an amended complaint.
23     THE COURT: Isn't that the answer
24 to this? It's only stayed till the decision on

Page 39

1  the motion to dismiss is rendered?
2      MR. BRAUTIGAM: But Your Honor,
3  this does not go -- what I want to ask these
4  attorneys is not related to new issues directly
5  against KMK, it's related to the proxy
6  materials/registration statement that they
7  coauthored. So for the same reasons that I was
8  able to depose the four KMK attorneys over the
9  summer or the fall, I should be able to depose
10 these two.
11     MR. BURKE: There is a stay.
12     MR. BRAUTIGAM: The order allows
13 discovery to go forward with respect to this
14 topic.
15     THE COURT: I don't think so, but
16 I see what your point is, you're -- your point,
17 I think, is that that may not have been
18 contemplated when that order was written. It
19 could be true.
20     MR. BRAUTIGAM: Your Honor, I see
21 the six attorneys as the same. They all
22 participated to whatever extent in the writing,
23 the coauthoring of the proxy materials and
24 registration statement. I deposed four.

Page 40

1      There was some procedural
2  confusion surrounding the October 20th order
3  and now we're trying to get everything back on
4  track. And as part of that, I want to depose
5  the other two attorneys who actually worked on
6  the proxy materials/registration statement.
7      That relates to the original
8  complaint, to the original allegations, however
9  you want to put it. I want to put the proxy
10 materials in front of them and ask, as I did
11 with the others, what did you write.
12     THE COURT: Here's my suggestion
13 about how to do that. If you file a simple
14 motion -- don't get into 50 pages, a one page
15 thing that says that -- what you want to do and
16 why this order you think should not apply, or
17 it was overbroad or whether it was not intended
18 to cover what, what it says on its face. Let
19 Jim respond with a simple one page reply, and
20 I'll talk to Judge Beckwith about it and will
21 probably issue a joint order within a week and,
22 bingo, that's done.
23     MR. BURKE: Thank you, Your Honor.
24     MR. BRAUTIGAM: Thank you, Your

Page 41

1  Honor.
2      THE COURT: That seems to me --
3  you want to, and it may be -- I can see that it
4  may not have taken into consideration what
5  you're talking about.
6      MR. BRAUTIGAM: Your Honor, I --
7      THE COURT: You want to depose
8  them on things that would predate the concern
9  that they share with Ernst & Young.
10     MR. BRAUTIGAM: Your Honor, I
11 would argue that it should not apply and I
12 should therefore be able --
13     MR. BURKE: Maybe I can add one
14 other point while we're all here, and that is
15 that we haven't seen the new amended complaint
16 that presumably is forthcoming, but it just
17 strikes me that the plaintiffs have to make the
18 position themselves, so that if Judge Beckwith
19 has ruled that KMK attorneys are going to
20 ultimately be witnesses in the case, therefore
21 they can't serve as trial attorneys, that there
22 is another whole issue or area of dispute
23 that's manifesting itself today.
24     Otherwise, by naming KMK as a

11 (Pages 38 to 41)

Page 42

1  defendant in the case -- because the issue that
2  I think is creating this major problem here is
3  naming KMK as a defendant. And I'm not going
4  to opine, nor do I have an opinion with regard
5  to whether there's any merit, but it sure
6  confuses and complicates all of the issues in
7  the case and makes it a mess and makes us have
8  to come back time and time again to deal with
9  sticky issues that I think, unfortunately,
10 don't really go substantively to the merits of
11 the case and the likelihood of a successful
12 prosecution of claims or a defense of.
13         MR. MESH: May I ask the Court --
14         MR. PINNEY: I think you can go
15 ahead and take these depositions if you simply
16 withdraw your claims against KMK.
17         MR. MESH: I assumed that was
18 going to be suggested.
19         MR. BRAUTIGAM: Your Honor, I --
20         MR. BURKE: Your Honor, I would
21 suggest that at least Mr. Brautigam has now
22 given the Court a basis on which he thinks he
23 has the right to do this. Mr. Mesh on the
24 other hand has referred to Mr. Kreider's role

Page 43

1  in a restatement, which was clearly a post
2  amended fact.
3          Does the Court think it's
4  appropriate, that we can walk a fine line
5  between KMK as a witness to the proxy statement
6  in 1999, versus whatever claims these two
7  gentlemen choose to invent as to my firm?
8  Should we at least see what the amended
9  complaint is so we can try to parse out, is
10 this area of inquiry going to the old claims or
11 is it an attempt to sort of backdoor the stay
12 of discovery. Should we at least wait --
13         MR. BRAUTIGAM: This has already
14 been decided. You ruled that discovery should
15 move forward.
16         THE COURT: When are you going to
17 file the amended complaint?
18         MR. BRAUTIGAM: December 31st,
19 2003, Your Honor.
20         MR. BURKE: We're going to have to
21 schedule these depositions after that.
22         MR. BRAUTIGAM: Your Honor,
23 nothing happens in this case. And we
24 respectfully suggest that we move forward

Page 44

1  immediately. And, Your Honor, I have one other
2  point.
3          MR. BURKE: I have to file a
4  motion anyway, Mike.
5          MR. BRAUTIGAM: A motion for?
6          MR. BURKE: I mean, you're not
7  going to get it before the 31st anyway.
8  Secondly, I would point out that my
9  recollection when we had the scheduling order
10 was you were going to file your complaint the
11 next week or the next month, so we could have
12 been past that.
13         MR. BRAUTIGAM: Jim, I'm complying
14 with the orders of the Court, okay?
15         MR. BURKE: Okay.
16         MR. BRAUTIGAM: Your Honor, I
17 respectfully request that we have another
18 status conference in another month just to see
19 where we are, to see if anything has happened,
20 instead of doing this on sort of an ad hoc
21 basis.
22         I think if we had the hammer of a
23 deadline, a meeting, perhaps all parties would
24 compromise and be more reasonable. And in a

Page 45

1  month you can see if anything has happened or
2  if problems remain, so I would like to ask
3  schedule that, if possible.
4          THE COURT: Phone Barbara, I will
5  talk to you as often as you want.
6          MR. BRAUTIGAM: Thank you very
7  much, Your Honor.
8          THE COURT: I think just -- I kind
9  of think it does make sense from an analytical
10 point of view to follow the amended complaint
11 to see what claims are pending before you start
12 taking depositions.
13         I'm understanding -- everybody
14 understands this case is old and needs to get
15 moving. I mean, I have certainly said that
16 more than once, but I mean, it seems to me when
17 you move in a chaotic way, it just creates more
18 of a mess and takes more time. Jim, I -- Jim
19 is making sense here. I don't, you know, why
20 can't this happen after the amended complaint
21 is filed?
22         MR. BRAUTIGAM: Your Honor, I
23 would just remind you that from our earlier --
24         THE COURT: It puts the pressure

12 (Pages 42 to 45)

Williams & Oliver
(513)683-9626

Page 46

1  back on you to get the things filed.
2      MR. BRAUTIGAM: Your Honor, at our
3  earlier conference on Election Day, November
4  4th, I said we could reasonably file the
5  complaint by November 15th. And you said, no,
6  that's been decided, December 31st. I then
7  asked, Your Honor, if we filed the complaint
8  earlier, would you tie KMK and the other
9  defendants' time to when we file it. You said,
10 no, that issue has been decided. You have
11 until the 31st, they have until the 20th. So
12 it's not in our interest to file the complaint,
13 even if it were ready, before the 31st.
14     THE COURT: Okay. I've got you.
15 So I said the 31st and you want me to deliver
16 on the 31st. I can do that.
17     MR. BRAUTIGAM: Well, Your Honor,
18 we would have been happy to file it earlier,
19 Your Honor, as long as the dates for them to
20 respond were linked to when we actually filed.
21     THE COURT: I've got you.
22     MR. BURKE: If I understand, Your
23 Honor, just to recap so there's no
24 misunderstanding, I'm going to contact Dr.

Page 47

1  Smith either in a letter or some kind of a
2  conference, and try to get closure on some of
3  these issues.
4      The other two, we talked about the
5  other defendants being seriatim, about an hour
6  each at the offices of KMK in the reasonably
7  near future. Number three, the simple motion
8  that Mr. Brautigam is going to file to which we
9  will respond on the KMK depositions.
10     Now, whether -- I don't know
11 whether we have closure on whether that's
12 before or after the amended complaint. In any
13 event, pending the disposition of that motion,
14 we obviously can't take the depositions. But
15 after the motion is decided, we will arrange
16 for those to the extent they are --
17     THE COURT: I'm going to say
18 essentially that -- before the end of the day,
19 but beyond, okay?
20     MR. MESH: Thank you, Your Honor.
21     MR. BRAUTIGAM: Thank you very
22 much for your time.
23     MR. MESH: And happy holidays,
24 everybody.

Page 48

1      THE COURT: You, too.
2
3
4          - - -
5  (Hearing concluded at 11:17 a.m.)
6          - - -

Page 49

1          C E R T I F I C A T E
2
3      I, Lee Ann Williams, a Notary Public in
4  and for the State of Ohio, do hereby certify
5  that the foregoing is a true and correct
6  transcript of the proceedings in the foregoing
7  captioned matter, taken by me at the time and
8  place so stated and transcribed from my
9  stenographic notes.
10
11
    My commission expires:
12  August 26, 2004        Lee Ann Williams, RPR
                  Notary Public-State of Ohio