# EXHIBIT 1



**rrowe@kmklaw.com**

01/07/04 04:37 PM

To: mhperry@JonesDay.com
cc:
Subject: FW: clarification

-----Original Message-----
From:            Rowe, Rachael A.   Sent:        Tuesday, January 06,
2004 3:21 PM
To:            'mgbrautigam@mac.com'
Subject:            RE: clarification

Mike:  Sorry if there is a misunderstanding.  As I read the order, there is no
provision for us to respond to your motion for class certification.
Therefore, I assumed that we would be required to respond to the motion you
filed on December 31, 2003 withing the normal opposition time located in the
local rules - - 21 days.  That would make our response due on January 21,
2004, and I was requesting an extension until January 30, 2004.  Are you
saying that you understood that we are not to file a responsive brief until
after class discovery closes?  Your understanding makes sense since we cannot
meaningfully brief several of the class issues until after class discovery,
but I did not see any provision for responses in the Order.  Let me know on
that point.

I will pass on your offer of Meier and Thiemann to Jim and we will check on
the dates for Hanauer and Wieland, both with them and internally.  I will get
back to you on depositions as soon as possible.  Thanks, Rachael Rowe

-----Original Message-----
From:            mgbrautigam@mac.com [mailto:mgbrautigam@mac.com] Sent:
        Tuesday, January 06, 2004 3:05 PM
To:            Rowe, Rachael A.
Subject:            clarification

rachel--

first, please direct my attention to where it says that you must file your
opposition to the class motion by 30 january 2004.  i don't understand this,
since class discovery ends on 30 june 2004, but perhaps i missed something.
that being said, i do want to make both messrs. thiemann and meier available
in january 2004 if you like, at your convenience.

thiemann will be deposed in florida as per my agreement with jim.  meier is
local.

re ken hanauer, now that the CAC is filed and is the operative document, i am
ready to depose him.  is he available on the 22 or 23rd of january.  i would
also like to do marilyn weiland on one of those dates, if possible.

thanks, mike b

On Jan 6, 2004, at 2:47 PM, rrowe@kmklaw.com wrote:

> Mike:  I just wanted to touch base with you on a couple of issues.  > First,
I wanted to follow-up and see if you decided a time-frame > during which you
want to depose Ken Hanauer.  Second, I wanted see if > you would agree to
extend our time to file our opposition to class > certification until January
30, 2004.  We would of course agree to > similarly extend your reply time.  I
would really appreciate your > agreement.  Let me know, thanks, Rachael Rowe
> *******************************************************
> Rachael A. Rowe
> Keating, Muething & Klekamp, P.L.L.
> Tel: 513-579-6400
> Fax: 513-579-6457
> Internet Address: rrowe@kmklaw.com
> Website: www.kmklaw.com
>
>             --- CONFIDENTIALITY STATEMENT ---
> This e-mail transmission contains information that is
> intended to be privileged and confidential.  It is in-
> tended only for the addressee named above.  If you re-
> ceive this e-mail in error, please do not read, copy
> or disseminate it in any manner.  If you are not the
> intended recipient, any disclosure, copying, distri-
> bution or use of the contents of this information is
> prohibited.  Please reply to the message immediately by
> informing the sender that the message was misdirected.
> After replying, please erase it from your computer
> system.  Your assistance in correcting this error is
> appreciated.
> *******************************************************

  << File: ENVELOPE.TXT >>
*******************************************************
Rachael A. Rowe
Keating, Muething & Klekamp, P.L.L.
Tel: 513-579-6400
Fax: 513-579-6457
Internet Address: rrowe@kmklaw.com
Website: www.kmklaw.com

            --- CONFIDENTIALITY STATEMENT ---
This e-mail transmission contains information that is
intended to be privileged and confidential.  It is in-
tended only for the addressee named above.  If you re-
ceive this e-mail in error, please do not read, copy
or disseminate it in any manner.  If you are not the
intended recipient, any disclosure, copying, distri-
bution or use of the contents of this information is
prohibited.  Please reply to the message immediately by
informing the sender that the message was misdirected.
After replying, please erase it from your computer
system.  Your assistance in correcting this error is
appreciated.
*******************************************************

# EXHIBIT 2

LAW OFFICES OF GENE MESH AND ASSOCIATES

7 January 2004

By Fax 579.6457

Rachel Rowe, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

### Re: OHSL

Dear Ms. Rowe:

Pursuant to our exchange of emails and or conversation yesterday and the conversation we had with Gene Mesh this afternoon, I reviewed the record of the 4 November 2003 telephonic status conference. The record, at pages 25 to 27, indicates that all parties knew that the motion for class certification would be filed on or before 31 December 2003. KMK has already deposed Mr. Thiemann. Mr. Burke indicated that he understood that he had to depose Mr. Meier and his wife:

> MR. BURKE: So we will have to depose him and his wife, I guess.
>
> MR. BRAUTIGAM: We'll make them available. They are in Cincinnati.

Transcript of proceedings, page 27, lines 12-15.

2605 Burnet Avenue
at Taft Road
Cincinnati, Ohio 45219

TELEPHONE
(513) 221-8800

FAX
(513) 221-1097

Although Mr. Burke recognized the need to depose Mr. Meier more than two months ago, no one at KMK has ever requested his deposition. As I indicated, we are certainly willing to make Mr. Meier available for his deposition at any reasonable time. Mr. Meier attended most of the depositions that took place yesterday. If KMK had wanted to take his deposition, they could easily have done on Monday. The record is clear that you have had months to either take Mr. Meier's deposition or make arrangements to do so for several months. Your choice to take no action on this matter—including under circumstances when Mr. Meier was in the same room as a KMK attorney—is just that—a strategic choice.

In short, I can only conclude that Magistrate Judge Hogan intended for you to take these depositions in a way that you could meaningfully respond within the local rules. The overwhelming inference is that Magistrate Judge Hogan, in what the defense has characterized as a carefully considered order, intended for parties ___ class certification, to be able to depose Mr. Meier in a way to be ___ to your opposition should you choose to oppose class certification.

i

## LAW OFFICES OF GENE MESH AND ASSOCIATES

I will not agree to an extension, and I will vigorously oppose any attempts to obtain a second bite at the apple after you took absolutely no action for months, all the while knowing that this deadline was approaching.

Sincerely,

Michael G. Brautigam

cc:      All Counsel by Fax



2

# EXHIBIT 3

# JONES DAY

51 LOUISIANA AVENUE, N.W.

WASHINGTON, D.C. 20001-2113

TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

WRITER'S DIRECT NUMBER:
(202) 879-3493
mhperry@jonesday.com

776307:mhp

January 8, 2004

<u>VIA FACSIMILE\U.S. MAIL</u>

Michael G. Brautigam, Esq.
Gene Mesh and Associates
2605 Burnet Ave.
Cincinnati, OH  45219

Re:    <u>Thiemann v. OHSL et al., No. C-1-00-793 (S.D. Ohio)</u>

Dear Mr. Brautigam:

We have read your January 7, 2003 letter to Rachel Rowe, counsel to the OHSL and Provident defendants, with some interest.  We ask that you reconsider your position that defendants oppose plaintiffs' motion for class certification within the time provided by the local rules.  In the interests of maintaining an orderly discovery process and the efficient use of both the parties' and the Court's resources, defendants' oppositions should be due a reasonable time after the close of class discovery, which is set for June 30, 2004.

This approach makes sense, particularly in light of Judge Beckwith's recent conclusion that the Court had improvidently granted class certification earlier in the case "on an incomplete and undeveloped record."  Dec. 15, 2003 Order at 6 (Doc. No. 227).  As a newly added defendant, Ernst & Young has not yet taken any discovery of Mr. Thiemann, and no discovery of the Meier plaintiffs has been taken at all.  Although you may view this as a strategic choice -- as your letter to Ms. Rowe indicates -- the fact remains that defendants have until June 30th to develop the record on class issues, including those fact issues that you raised by affidavit in your motion for certification.  It is reasonable that defendants' responsive obligations should accrue only after this record is complete.

Judge Beckwith's December 15 Order also expressed the concern that future class certification efforts should proceed in a streamlined fashion, particularly in light of the addition of new parties and new claims.  Dec. 15, 2003 Order at 10.  Briefing class certification before the relevant discovery is completed will only thwart this goal.  The Court's disapproval of duplicative and wasteful efforts also is clear from its December 15 Order.  At a minimum, if the parties were to proceed in the manner that you insist upon, supplemental briefing will be required and Ernst & Young would expressly reserve its right to submit such papers after the close of class discovery.  This foreshadows some of the same circumstances that led to the precipitous certification of the *Thiemann* class, and to its subsequent decertification.  These circumstances

JONES DAY

Michael G. Brautigam, Esq.
January 8, 2004
Page 2

can be avoided, however, by having both sides complete their briefing after class discovery is complete.

      If we cannot reach agreement on this matter, we will ask Magistrate Judge Hogan to resolve the issue during the telephonic conference that is to be held on January 15th.

Very truly yours,

Mary Helen Perry
(petition for admission pro hac pending)

cc:    Counsel of Record (via fax)

# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann,<br>on behalf of himself and of<br>all others similarly situated, | ) ) ) ) | Case No. C-1-00-793 |
| | ) | Judge Sandra S. Beckwith |
| Plaintiffs, | ) ) | Magistrate Judge Hogan |
| vs. | ) | |
| OHSL FINANCIAL CORP., et al. | ) ) | |
| Defendants. | ) | |

## NOTICE OF DEPOSITION
## OF GARY AND LISA MEIER

Please take notice that the plaintiff class will take the deposition of Gary

and Lisa Meier will take place on **Monday 19 January 2004** at the offices of

Gene Mesh & Associates, 2605 Burnet Avenue, Cincinnati, Ohio 45219-2502

commencing at 2 pm.


Respectfully submitted,


By: _____

Gene Mesh (00027076)
Michael Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
Phone: (513) 221-8800
Fax:  (513) 221-1097
Attorneys for the Plaintiff Class

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of January, 2004, a true and correct copy of Notice of Deposition of Gary and Lisa Meier was served by fax and first class mail upon the following:

**By Fax:**

James E. Burke, Esq.
Keating, Muething & Klekamp PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
579-6457

J. Michael Debbeler
John B. Pinney
Graydon, Head & Ritchey
511 Walnut Street
Suite 1900, Fifth Third Center
P.O. Box 6464
Cincinnati, OH 45202-3157
Fax 513-651-3836

John W. Hust
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, OH 45249
Fax 513-583-4203

Michael R. Barrett
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, OH 45202
Fax 513-721-2139

James E. Gauch
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113
Fax 202-626-1700

Stephanie A. Hite

# EXHIBIT 5

1983 WL 1802                                                                Page 1
38 Fed.R.Serv.2d 1509, 1983-1 Trade Cases P 65,315
(Cite as: 1983 WL 1802 (N.D.Ohio))

**H**

United States District Court, N.D. Ohio, Eastern Division.

**In re Art Materials Antitrust Litigation (This document relates to all private entity actions).**

**MDL Docket No. 436**

Filed April 1, 1983

KRUPANSKY, Cir. J.

**Pretrial Order No. 14**

**\*1** Private Entity Plaintiffs (plaintiffs) have filed a joint motion for certification of all private entity actions as a consolidated class action under Rules 23(a) and 23(b)(3), Federal Rules of Civil Procedure. The proposed class of plaintiffs is stated as follows:

"All individuals, proprietorships, partnerships, corporations and other business entities which have from January 1, 1964, to August 31, 1979, purchased art materials directly from one or more of the defendant corporations, but specifically *excluding* (i) any federal, state, local government or governmental entity purchasers, and (ii) any defendant or other manufacturer of art materials, and any subsidiary or affiliate of any defendant or other manufacturer of art materials."

Only defendant Binney & Smith Company opposes the motion for certification. Pursuant to Pretrial Order No. 12, all parties have stipulated that discovery on the issues of class certification and standing is complete and that the motion for class certification may be decided on the briefs of the parties.

Fed. R. Civ. P. 23 sets forth the criteria to be applied in considering certification of a class action, stating in pertinent part:

"(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
* * *
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

These requirements will be discussed *seriatim*.

I. *Prerequisites to a Class Action.*

A. *Numerosity.*

Fed. R. Civ. P. 23(a)(1) provides that representative members may sue in behalf of a class of plaintiffs if the class is so numerous that joinder is impracticable. Plaintiffs assert that the proposed class includes thousands of direct purchasers of art materials from defendants spanning the fifteen year period at issue from 1964 through August 1979. Plaintiffs' Memorandum in Support of Joint Motion for Certification at 14. As evidence of their numbers, plaintiffs note that the purchaser and customer lists provided by the largest of the defendant-manufacturers, Binney & Smith and Joseph Dixon Crucible Company (Dixon), respectively contain 4,400 and 2,200 names. *Id.* at 15.

**\*2** Other courts have found that allegations of a proposed class numbering in the thousands, as here, satisfies that numerosity requirement. *Hedges Enterprises, Inc. v. Continental Group, Inc.* [1979-1 TRADE CASES P 62,536], 81 F. R. D. 461, 464-65 (E. D. Pa. 1979), citing *Cohen v. Uniroyal, Inc.,* 77 F. R. D. 685, 690 (E. D. Pa. 1977); *In re Plywood Antitrust Litigation,* 73 F. R. D. 322, 335 (E. D. Pa. 1976); *In re South Central States Bakery Products,* 86 F. R. D. 407, 415 (M. D. La. 1980). And the exact number of class members need not be known to fulfill this precondition to certification. *Plywood Antitrust Litigation* [1976-1 TRADE CASES P 60,805], 76 F. R. D. at 578. The Court thus finds that the class proposed by Private Entity Plaintiffs is too numerous to permit joinder, and that the requirement of Fed. R. Civ. P. 23(a)(1) is satisfied.

B. *Common Questions of Law and Fact.*

Plaintiffs in these private entity actions allege combination and conspiracy among defendants in restraint of trade to raise, fix, maintain, and stabilize the prices and terms and conditions of sale for art materials. See Amended Complaints of Private Entity Plaintiffs at P 9-11. To prevail,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1983 WL 1802
38 Fed.R.Serv.2d 1509, 1983-1 Trade Cases P 65,315
**(Cite as: 1983 WL 1802 (N.D.Ohio))**

members of the proposed class of plaintiffs must prove the existence of the aforesaid conspiracy. '[Q]uestions relating to the existence, scope, and efficacy "thereof are therefore common to the class. See e.g. *In re Glassine and Greaseproof Paper Antitrust Litigation* [1980-81 TRADE CASES P 63,631], 88 F. R. D. 302, 304 (E. D. Pa. 1980). Indeed, it has been observed that the nature of a price- fixing conspiracy itself imports common proofs in establishing its existence, scope, and effect. *In re Sugar Industries Antitrust Litigation* [1976-2 TRADE CASES P 61,215], 73 F. R. D. 322, 335 (E. D. Pa. 1975)."

Existing precedent has recognized common questions of law and fact to exist in horizontal price-fixing cases. See e.g. *In re Fine Paper Antitrust Litigation* [1979-1 TRADE CASES P 62,551], 82 F. R. D. 143, 150 (E. D. Pa. 1979); *In re Corrugated Container Antitrust Litigation* [1978-2 TRADE CASES P 62,220], 80 F. R. D. 244, 247 (S. D. Tex. 1978); *In re Master Key Antitrust Litigation* [1975-1 TRADE CASES P 60,377], 70 F. R. D. 23, 26 (D. Conn. 1975). Thus, the commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied.

*C. Claims and Defenses of Representative Parties Typical to Those of the Class.*

Fed. R. Civ. P. 23(a)(3) next requires that representatives of the putative class have claims or defenses typical of the class as a whole. While the nature and magnitude of individual claims of the proposed representative plaintiffs may differ from those of other class members, the common claims and proofs asserted above are typical of the class, and the fact that all class members are not identically situated does not preclude class treatment. *Phillips v. Joint Legislative Committee on Performance and Expenditure Review*, 637 F. 2d 1014 (5th Cir. 1981); *Mader v. Armel*, 402 F. 2d 158, 162 (6th Cir. 1968) cert. den., 394 U. S. 930 (1969), citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F. 2d 909, 914 (9th Cir. 1964), and 3 Moore's Federal Practice P 23.10, at 3454 (2d ed. 1963). Fed. R. Civ. P. 23(a)(3) is accordingly satisfied.

**\*3** D. *Fair and Adequate Protection of the Interests of the Class by Representative Parties.*

The final requirement of Fed. R. Civ. P. 23(a) is adequate protection of the class interests. Binney & Smith contests the representative capacity, claiming several of the named plaintiffs do not qualify as class members.

The requirement that representatives protect class interests fairly and adequately is grounded in due process which prevents class members from being bound by a judgment in which they were not properly represented. *Hansberry v. Lee*, 311 U. S. 32, 40, 44, 61 S. Ct. 115 (1940). This result, of course, defeats the efficacy of the class action device to

economically resolve disputes involving a large number of plaintiffs.

The adequacy of the protection named plaintiffs will afford the class is determined through inquiry into the interests of the individual representatives and the capability of their legal counsel. The interests of proposed class representatives must be compatible with and not antagonistic to the interests of the members of the class. *Albertson's, Inc. v. Amalgamated Sugar Co.* [[[1974-2 TRADE CASES P 75,261], 503 F. 2d 459, 463 (10th Cir. 1974); see also *Fowler v. Birmingham News Co.*, 608 F. 2d 1055, 1058 (5th Cir. 1979); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F. 2d 239, 247 (3d Cir. 1975); *Eisen v. Carlisle & Jacqueline* [1968 TRADE CASES P 72,381], 391 F. 2d 555 (2d Cir. 1968). The representatives through qualified counsel are mandated to vigorously prosecute the interest of the class. *Senter v. General Motors Corp.*, 532 F. 2d 511, 524-525 (6th Cir. 1976).

Plaintiff Big D Building Supply Corporation, Inc. (Big D) purchased its art materials from Dixon in the early 1970s. The most recent purchases by plaintiff Pearson Music Shop, Inc. (Pearson) were made in 1974. The likelihood that Big D and Pearson have not purchased art materials from any of the defendants for several years, however, does not mean, as Binney & Smith suggests, that their interests will be antagonistic to the interests of more recent purchasers.

Courts have recognized potential conflict among past and present customers in franchise cases. See *Free World Foreign Cars, Inc. v. Alfa Romeo*, 55 F. R. D. 26, 29 (S. D. N. Y. 1972). 'Between ordinary buyers and sellers, however, there is not the symbiotic relationship which exists between franchisee and franchisor where the franchisee quite literally "depends upon the economic viability of the defendants." *Hi-Co Enterprises, Inc. v. Con Agra, Inc.* [[1976-2 TRADE CASES P 61,053], 75 F. R. D. 628 (S. D. Ga. 1976) quoting *Free World Foreign Cars, supra.* Thus, in an ordinary commercial relationship as existed between plaintiffs and both their past and present customers, 'the likelihood of divergent interests . . . is of greatly reduced import and unlikely to cause a schism in the class.%" *Shelter Realty v. Allied Building Maintenance Corp.* [1977-2 TRADE CASES P 61,691], 75 F. R. D. 34, 39 (S. D. N. Y. 1977)."

**\*4** Binney & Smith also asserts that Big D and Pearson have not met their burden of proving membership within the proposed class by showing purchases of art materials within in the relevant period. To its memorandum in opposition, however, Binney & Smith itself appended invoices from defendant Dixon's American Crayon Division evidencing purchases by Pearson within the relevant period. The Court is therefore satisfied that Big D and Pearson are members of the class of plaintiffs they seek to represent.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1983 WL 1802
38 Fed.R.Serv.2d 1509, 1983-1 Trade Cases P 65,315
**(Cite as: 1983 WL 1802 (N.D.Ohio))**

1983 WL 1802, 1983 WL 1802 (N.D.Ohio), 38 Fed.R.Serv.2d 1509, 1983-1 Trade Cases P 65,315

END OF DOCUMENT

# EXHIBIT 6

**EXCERPT FROM THE**
**REPORT OF THE JUDICIAL CONFERENCE**
**COMMITTEE ON RULES OF PRACTICE AND PROCEDURE**

**TO THE CHIEF JUSTICE OF THE UNITED STATES AND MEMBERS OF THE**
**JUDICIAL CONFERENCE OF THE UNITED STATES:**

\* \* \* \* \*

**FEDERAL RULES OF CIVIL PROCEDURE**

<u>Rules Recommended for Approval and Transmission</u>

The Advisory Committee on Civil Rules submitted proposed amendments to Rules 23, 51, 53, 54, and 71A with a recommendation that they be approved and transmitted to the Judicial Conference. The amendments were circulated to the bench and bar for comment in August 2001. Public hearings were held on the proposed amendments in San Francisco, California, and Washington, D.C. More than 40 witnesses testified at the hearings. The advisory committee also sponsored a conference at the University of Chicago Law School on proposed amendments to Rule 23. In addition to the published amendments, the conference addressed preliminary proposals dealing with overlapping and competing class actions filed in state courts.

<u>RULE 23 (CLASS ACTIONS)</u>

Over the last ten years, the advisory committee has undertaken an intensive consideration and review of Rule 23, the class-action rule. This ongoing review by the advisory committee is the first review of Rule 23 following the thorough reworking of the Rule in amendments made in 1966. But in the now almost 40 years since that time, Rule 23 has figured prominently in the explosive growth of large-scale group litigation in federal and state courts, and has both shaped and — in its interpretation and application — been shaped by revolutionary developments in modern complex litigation. The drafters of the 1966 amendments knew that after some appropriate period of time it would be important to reconsider what they had done.

The present set of proposed amendments takes account of continuing rapid changes in Rule 23 practice and focuses on the persistent problem areas in the conduct of class suits. The proposals focus on class-action procedures rather than on substantive certification standards. The overall goal of the advisory committee has been to develop rule amendments that provide the district courts with the tools, authority, and discretion to closely supervise class-action litigation.

The advisory committee had before it an unusually rich record concerning the operation of Rule 23, including the voluminous record generated in the public comments on the proposed revisions to Rule 23 in 1996; the Federal Judicial Center's 1996 empirical study of federal class action suits; the RAND Institute for Civil Justice's publication in 2000 of *Class Action Dilemmas: Pursuing Public Goals for Private Gain*, analyzing the results of detailed case studies and surveys of lawyers engaged in class-action litigation in state and federal courts; and the extensive materials assembled by the Working Group on Mass Torts, including the 1999 *Report on Mass Tort Litigation*. In addition to these sources, the advisory committee obtained practical insight by consulting with a number of experienced class-action practitioners who represent all major points of view. Taken as a whole, the package is a balanced and neutral attempt to protect individual class members, enhance judicial oversight and discretion, and further the overall goals of the class-action device — efficiency, uniform treatment of like cases, and access to court for claims that cannot be litigated individually without sacrificing procedural fairness or bringing about other undesirable results.

The proposed amendments focus on four areas: the timing of the certification decision and notice; judicial oversight of settlements; attorney appointment; and attorney compensation.

*Rule 23(c)(1)(A):  The Timing of Certification*

In 1996, the advisory committee published a package of proposed amendments to Rule 23 dealing with class certification for comment. Included was a proposed amendment to Rule 23(c)(1) that would change the requirement that a certification decision be made "as soon as practicable" into a requirement that the decision be made "when practicable." Although public comment was largely favorable, the Standing Rules Committee declined to approve the amendment on two grounds. The first was that it would be better to consider all Rule 23 changes in a single package, the consideration of which had been deferred in anticipation of the Supreme Court's pending decision in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). The second was concern that the change in wording would encourage courts to delay deciding certification motions, leading to an unwarranted increase in precertification discovery into the merits of a class suit.

Amended Rule 23(c)(1)(A) recommends a new variation on the "when practicable" language, calling for a certification determination "at an early practicable time." The Committee Notes address the concerns previously identified. The proposed language is consistent with present good practices. Courts generally make certification decisions only after the deliberation required for a sound decision, as shown by Federal Judicial Center statistics on the time from filing to decision of certification motions. Courts decide certification motions promptly, but only after receiving the information necessary to decide whether certification should be granted or denied and how to define the class if certification is granted. The Committee Notes clearly state that the amended language is not intended to permit undue delay or permit extensive discovery unrelated to certification.

The proposed amendment at first reading may seem a matter of semantics. In fact, it authorizes the more flexible approach many courts take to class-action litigation, recognizing the important consequences to the parties of the court's decision on certification. The current rule's

emphasis on dispatch in making the certification decision has, in some circumstances, led courts to believe that they are overly constrained in the period before certification.  A certain amount of discovery may be appropriate during this period to illuminate issues bearing on certification, including the nature of the issues that will be tried; whether the evidence on the merits is common to the members of the proposed class; whether the issues are susceptible to class-wide proof; and what trial-management problems the case will present.

The proposed language is consistent with the practice of authorizing discovery on the nature of the merits issues, which may be necessary for certification decisions, while postponing discovery pertaining to the probable outcome on the merits until after the certification decision has been made.  As the Committee Notes discuss, certification discovery need not concern the weight of the merits or the strength of the evidence.   By making it clear that the timing of a certification decision, and related discovery, is limited to that necessary to determine certification issues, the amended Rule and Note give courts and lawyers guidance lacking in the present rule.  The proposed amendment brings the present rule into conformity with the approach taken by experienced judicial officers.  The relatively extensive public comment on this proposal was generally favorable.

*Rule 23(c)(1)(B):  The Order Certifying a Class*

Proposed Rule 23(c)(1)(B) specifies the contents of an order certifying a class action. Such a requirement facilitates application of the interlocutory-appeal provision of Rule 23(f) by requiring that a court must define the class it is certifying and identify the class claims, issues, and defenses.  The proposed amendment also requires that the order appoint class counsel under Rule 23(g).

*Rule 23(c)(1)(C):  The Conditional Nature of Class Certification*

Under proposed Rule 23(c)(1)(C) an order granting or denying class certification may be amended at any time up to "final judgment"; the current rule terminates the power at "the decision on the merits," an event that may happen before final judgment.  This change avoids possible ambiguity in the reference to "the decision on the merits," which may apply, for example, to a determination of liability made *before* final disposition.  Later proceedings to define the remedy may demonstrate the need to amend the class definition or subdivide the class.  Rule 23(c)(1)(C) would also be amended to delete the provision for conditional class certification.  The provision for conditional class certification is deleted to avoid the unintended suggestion, which some courts have adopted, that class certification may be granted on a tentative basis, even if it is unclear that the rule requirements are satisfied.  The court's power to later redefine or decertify the class is left undisturbed.

*Rule 23(c)(2): Notice*

Amended Rule 23(c)(2)(A) would recognize the court's authority to direct "appropriate" notice in (b)(1) and (b)(2) class actions.  Members of classes certified under (b)(1) or (b)(2) have interests that may deserve protection by notice.  Notice to such classes, as compared with (b)(3) classes, is intended to serve more limited, but important, interests, such as the interest in monitoring the conduct of the action.  The advisory committee, however, was sensitive to the concern that mandating notice in all (b)(1) and (b)(2) actions could overwhelm a public-interest group seeking class-action relief with only modest resources.  In response to public comment from members of the civil rights bar, the advisory committee revised the language — which had been mandatory — to place the giving of notice in (b)(1) and (b)(2) actions within the district court's discretion.  The Committee Note expressly cautions courts to exercise the authority to direct notice in these actions with care.  The court retains the discretion not to direct any type of notice after balancing the risk that notice costs may deter the pursuit of class relief against the

benefits of notice in the particular case. If the court decides that notice is appropriate, it also need not require notice to be made in the same manner as in a (b)(3) action by individual notice, because there is no right to request exclusion from (b)(1) and (b)(2) classes.

Proposed new Rule 23(c)(2)(B) carries forward the present notice requirement for (b)(3) class actions. It requires what the cases now treat as aspirational: class-action notices are to be in "plain, easily understood language."

*Rule 23(e): Settlement Review*

The need for improved judicial review of proposed class settlements, along with the abuses that can result without effective judicial review, was a recurring theme in the testimony and written statements submitted to the advisory committee during public comment on the 1996 rule proposals. The RAND study also called for closer judicial review of class-action settlements. The proposed amendments focus on strengthening the rule provisions governing the process of reviewing and approving proposed class settlements in a setting that often lacks the illumination brought by an adversary process.

New Rule 23(e)(1)(A) would limit the requirement of court approval of any settlement, voluntary dismissal, or compromise of a class claim to cases in which a class has been certified. Approval is not required if class allegations are withdrawn as part of a disposition reached before a class is certified since putative class members are not bound by the settlement.

New Rule 23(e)(1)(B) would require notice of a proposed settlement, but only when class members would be bound by the settlement. The notice is to issue to the class in a "reasonable" manner; individual notice is not required in all classes or all settlements.

New Rule 23(e)(1)(C) would adopt an explicit standard for approving a settlement for a class: the proposed settlement must be "fair, reasonable, and adequate." This is the standard that

has been stated in the case law. The district court must also make findings to support the conclusion that the settlement meets this standard.

New Rule 23(e)(2) would require the parties to file a statement identifying any agreement made in connection with a settlement. Such "side agreements" can be important to understanding the terms the parties and counsel have agreed to, but sometimes are not disclosed to the court. There is concern that some side agreements may influence the terms of settlement by trading away possible advantages for the class in return for advantages for others.

The disclosure of side agreements, however, should not automatically become the occasion for discovery by the parties. Nonetheless, a court can direct a party to provide to the court or to the other parties (with appropriate confidentiality safeguards) a copy of the full terms of any agreement identified by any party as made in connection with the settlement.

*Rule 23(e)(3): Second Opt-Out Opportunity*

New Rule 23(e)(3) would establish authority to permit a second opportunity to opt out of a (b)(3) class if settlement is proposed after expiration of the original opportunity to request exclusion. There is no presumption that a second opt-out opportunity should be afforded. That question is left entirely to the court's discretion. This provision would enhance judicial discretion to provide the same ability to opt out with knowledge of the settlement terms that is enjoyed by members of the many (b)(3) classes that are considered for certification — and thus afford a right to request exclusion — after a settlement has been reached.

When a case is certified for trial before settlement has been reached, the decision whether to opt out may be made well before the nature and scope of liability and damages are understood. Settlement may be reached only after the opportunity to request exclusion has expired, and after great changes in class members' circumstances and other aspects of the litigation. The proposal permits the court to refuse to approve a settlement unless it affords a new opportunity to request

exclusion, at a time when class members can make an informed decision based on the proposed settlement terms.  In appropriate cases, the court can establish an opportunity to opt out that is as meaningful as the opportunity afforded in the many cases that now reach settlement before certification is ordered.   And at a more basic level, the second opt-out opportunity gives class members the same opportunity to accept or reject a proposed settlement as persons enjoy in individual law suits.

     This proposal introduces a measure of class-member self-determination and control that best harmonizes the class action with traditional litigation.  The presumption of consent that follows a failure to affirmatively opt out at the time of certification may lose its footing when circumstances have changed materially from the time when the class action is finally settled.  In these cases, a second opt-out opportunity could relieve individuals from the unforeseen consequences of inaction or decisions made at the time of certification, when limited meaningful information was available.  The proposed second opt-out opportunity may provide added assurance to the supervising court that a settlement is fair, reasonable, and adequate.  It is just the sort of "structural assurance of fairness," mentioned in *Amchem Products Inc.*, that permits class actions in the first place.

     The proposal will only make a difference in cases in which the class is certified and the initial opt-out period expires before a settlement agreement is reached.  It is irrelevant in those cases in which a settlement agreement is submitted to the court simultaneously with a request that a class be certified.  Even when applicable, however, a court may decide that the circumstances make providing a second opportunity to request exclusion inadvisable.  The case may have been litigated to a stage that makes it similar to a fully tried suit and that reduces the need for a second opportunity to opt out.  There may not have been a significant change in circumstances or lapse in time between the initial opt-out opportunity and the settlement.  There

may be other circumstances that make the additional opt-out opportunity inadvisable. Accordingly, the amendments provide a court with broad discretion to assess and determine whether in the particular circumstances a second opt-out opportunity is warranted before approving a settlement.

The advisory committee received several comments on this proposal. It is fair to say that the comments, whether favorable or unfavorable, do not line up by plaintiffs and defendants. Some class-action plaintiffs' lawyers favor and some oppose the proposal. The same is true of the defense bar. Academic commentary has been favorable. District judge members of the advisory committee and of the Standing Rules Committee welcome the enhancement to their discretion.

The advisory committee carefully considered concerns that a second opt-out opportunity might inject additional uncertainty into settlement and create opportunities unrelated to the purpose of the second opt out, potentially defeating some settlements and making others more costly. Under this view, the proposal would create an opportunity for dissatisfied or mercenary counsel to woo class members away from the settlement with promises of a superior alternative settlement award. Balanced against these concerns is the fact that permission to opt out after a tentative settlement is reached is not novel in certain kinds of class-action litigation and generally has not been detrimental to these class-action settlements. Many cases settle before certification in the knowledge that class members must be given a first opportunity to opt out. And when settlements are reached after expiration of the original exclusion period, the terms — particularly in mass tort actions — often include a second opt-out opportunity. The possibility that "too many" class members may opt out during a second-opportunity stage, leaving a defendant with a less comprehensive settlement, is usually guarded against by including

provisions in the settlement agreement allowing the parties to abandon the settlement if a pre-determined number or proportion of the class takes advantage of the second opt-out opportunity.

Although providing a second opt-out opportunity may change the dynamics of the negotiation process in some cases, the advisory committee is persuaded that ensuring the fairness of the process outweighs any potential efficiency loss and that provision of the opportunity in appropriate cases, in the court's discretion, will not be unduly disruptive to settlement. District judges are by no means averse to class-action settlements, and they will apply their discretion to employ this new tool carefully.

New Rule 23(e)(4) would confirm the right of class members to object to a proposed settlement, and would require court approval for withdrawal of an objection.

*Rule 23(g): Class Counsel Appointment*

All recent examinations of class-action practice recognize the crucial significance of class counsel. But Rule 23 nowhere addresses the selection or responsibilities of class counsel. Until now, the adequacy of counsel has been considered only indirectly as part of the Rule 23(a)(4) determination whether the named class representatives will fairly and adequately protect the interests of the class. The proposed amendments build on experience under Rule 23(a)(4) and fill the gap by articulating the responsibility of class counsel and providing an appointment procedure.

Proposed paragraph (1)(A) recognizes the requirement that class counsel be appointed for each class that the court certifies, unless a statute such as the Private Securities Litigation Reform Act (Pub. Law No. 104-67) establishes different requirements.

Proposed paragraph (1)(B) states that class counsel "must fairly and adequately represent the interests of the class." The Committee Note discusses the distinctive role of class counsel, making it clear that the relationship between class counsel and individual class members,

Rules-Page 10

including the class representatives, is not the same as the one between a lawyer and an individual client.  Appointment as class counsel entails special, paramount responsibilities to the class as a whole.

Proposed paragraph (1)(C) sets out the criteria that a court must consider in appointing class counsel, including the work counsel has performed in the action, counsel's experience in complex litigation and knowledge of the applicable law, and the resources counsel will commit to the representation.  Under the proposed amendments, a court may also direct potential class counsel to provide additional information to assist it in making the appointment decision, including the proposed terms of an attorney fee award.  The provision encourages counsel and the court to reach early shared understandings about the basis on which fees will be sought.  Such a provision has been encouraged by judges emphasizing the importance of judicial control over attorney fee awards.   This feature might obviate later objections to the fee request, serve as a more productive way for the court to deal in advance with fee award matters that seem to defy regulation after the fact, and accommodate competing applications or innovative approaches when appropriate.

Proposed paragraph (2) sets out the appointment procedure for class counsel.  Paragraph (2)(A) would point out that the court may appoint interim counsel during the precertification period as a case-management measure.  Paragraph (2)(B) would recognize that the court's scrutiny of potential class counsel will differ depending on whether there are multiple applicants for the position.  If there is one applicant, the court may make the appointment only if the applicant is adequate under the criteria identified in Rule 23(g)(1)(C).  If there are multiple applicants, however, the court must appoint the applicant best able to represent the interests of the class.  The proposed rule takes no position on auctions or similar judicial efforts to engender competition.  The Note recognizes that one factor that may be important in selecting class

counsel in the multiple-applicant situation is an existing attorney-client relationship between the class representative and counsel. Paragraph 2(C) would specifically authorize the court to include provisions regarding attorney fees in the order appointing class counsel.

The advisory committee made several adjustments to the proposal in response to public comment. Most of the changes clarified the difference between the situation in which no applicant applies for appointment and the situation in which several lawyers or firms seek apointment.

*Rule 23(h):   Attorney Fees*

Attorney fees play a prominent role in class-action practice and are the focus of much of the concern about class actions. The award of large attorney fees in the absence of meaningful recoveries by class members in some class actions brings the civil justice system into disrepute. Courts have increasingly assumed significant responsibility for determining attorney's fees, rather than simply accepting previously negotiated arrangements. They have also examined the actual benefits accruing to the class members as opposed to speculative estimates (such as coupon recoveries). But the Civil Rules themselves provide little guidance in this area, which may have contributed to some inconsistency in application. The only provisions on fee awards in the Civil Rules appear in Rule 54(d)(2), but that Rule is not tailored to the special features of class actions. The proposed amendment addresses notification to the class of a motion for award of fees, the rights of objectors, and the criteria to be considered in determining the amount of the fee award.

Under proposed subdivision (h), a court may award attorney fees in a class action only if authorized by law or the parties' agreement. The award must be "reasonable," and it is the

court's duty to determine the reasonable amount. The proposed rule does not attempt to influence the ongoing case law development regarding a choice between (or combination of) the percentage and lodestar amounts. As emphasized in the Committee Note, because the class action is a creation of the court, the court has a special responsibility to monitor the attorney fee award, as it also does with regard to proposed settlements. The Note further recognizes the critical role of the court in ensuring that the class action achieved actual results for class members that warrant a substantial fee award.

Paragraph (1) would establish that the attorney fee motion is made under Rule 54(d)(2), "subject to the provisions of this subdivision, at a time set by the court." It is important to maintain the integration of all fee orders with the entry-of-judgment and appeal-time provisions of Civil Rule 58 and Appellate Rule 4, which — under amendments to take effect this December 1 — are explicitly integrated with Rule 54. But it also is important to recognize the distinctive features of class-action fee applications, particularly with respect to the appropriate time for a fee motion. Subdivision (h) would provide that a motion for fees must be made "at a time set by the court."

The proposed amendment also requires that notice regarding attorney fee motions by class counsel be directed to class members in a reasonable manner (similar to Rule 23(e) notice to the class of a proposed settlement). In a case in which settlement approval is contemplated, notice of class counsel's fee motion should be combined with notice of the proposed settlement. In an adjudicated case, the court may modify the notice to avoid undue expense.

Paragraph (2) would allow any class member or party from whom payment is sought to object to the attorney fee motion. The Committee Note points out that the court may direct discovery depending on the completeness of the material submitted in support of the fee motion,

which depends in part on the applicable fee-measurement standard.  The Note also makes clear

that broad discovery is not normally approved in regard to fee motions.

Proposed paragraph (3) calls for findings under Rule 52(a) and authorizes the court to

determine whether to hold a hearing on the motion.  In settled class actions, the hearing might

well be held in conjunction with proceedings under Rule 23(e), and in other situations there

should be considerable flexibility in determining what suffices as a hearing.  The findings

requirement provides important support for meaningful appellate review.  As under Rule

54(d)(2), the court can refer the motion to a special master or magistrate judge.  The Committee

Note sets out the factors that courts have recently, and consistently, found important to consider

in determining whether the fee sought is "reasonable."  The Note attempts to identify the analytic

framework for such determinations, recognizing that the case law will continue to develop and

will have subtle variations from circuit to circuit.  The factors discussed in the Note cut across

different methods of determining the size of fee awards, such as percentage of fund or lodestar.

RULE 51 (INSTRUCTIONS TO JURY: OBJECTION)

The Rule 51 project began with a specific request from the Ninth Circuit Judicial

Council.  Reviewing local district rules, the Ninth Circuit found that many districts had rules that

require submission of proposed jury instructions before trial begins.  The Council was concerned

that these rules may be invalid in light of Rule 51's provision for filing requests "[a]t the close of

the evidence or at such earlier time *during trial* as the court reasonably directs."  The proposed

amendments expressly validate the practices of these courts. The proposed amendments also are

designed to capture many of the interpretations of Rule 51 that have emerged in practice and

remove traps for the unwary.

Proposed amendments to subdivision (a) govern requests regarding instructions to the

jury.  The revision recognizes a court's authority to direct that the requests be submitted before

trial. But the amendment expressly allows a party to file a later request concerning issues that could not reasonably have been anticipated at the earlier time for requests set by the court. The court also may permit untimely requests on any issue.

The proposed amendments to subdivision (b) govern the instructions to the jury. Paragraph (1) requires the court to inform the parties of all instructions, not only action on requests, before instructing the jury and before jury arguments. Paragraph (2) makes explicit the parties' opportunity to object on the record to the proposed instructions. Paragraph (3) recognizes the practice of instructing the jury "at any time after trial begins and before the jury is discharged."

Under the present Rule 51, a party who wants an issue covered by instructions must do both of two things: make a timely request, and then separately object to failure to give the request as made. The requirement that a request be renewed by an objection is all too often overlooked. These common failures arise in part from the ambiguous language of present Rule 51. The requirement, however, serves useful purposes. Courts of appeals have explained that repetition is useful, at times to ensure that the court had not simply forgotten the request or its intention to give the requested instruction, and at other times to show the court that it has failed in its attempt to give the substance of a requested instruction in better form. These purposes may be fully satisfied by means short of a renewed formal objection. Proposed new Rule 51(d)(1)(B) accommodates these interests by two steps. First, it makes clear that both request and objection are required. But then it also provides that a request suffices without a later objection if "the court made a definitive ruling on the record rejecting the request."

Many circuits recognize a "plain," "clear," or "fundamental" error doctrine that allows reversal despite failure to comply with Rule 51. This doctrine is not reflected at all in the text of Rule 51, but is explicit in the general "plain errors" provision of Criminal Rule 52. The contrast

between Criminal Rule 52 and Rule 51 has led some circuits to reject the plain-error doctrine for civil jury instructions. Rule 51(d)(2) would be revised to adopt a plain-error provision parallel to the approach taken in Criminal Rule 52(b).

Rule 53 (Masters)

The Rule 53 project began several years ago, prompted by observations addressed to the advisory committee by two local district-court committees formed to develop Civil Justice Reform Act plans. In working through the Civil Rules, these committees observed that Rule 53 does not describe the uses of special masters that have grown up over the years. Present Rule 53 addresses only trial masters who hear trial testimony and report recommended findings. The Supreme Court has severely limited resort to trial masters. But masters have come to be used increasingly for pretrial and post-trial purposes. A study by the Federal Judicial Center confirmed the belief that masters are frequently appointed for pretrial and post-trial duties. The proposed amendment is designed to reflect contemporary practice, and to establish a framework to regularize the practice.

In general, proposed new Rule 53 brings pretrial and post-trial masters expressly into the rule, establishing the standard for appointment. It carries forward the demanding standard established by the Supreme Court for appointment of trial masters, and eliminates trial masters from jury-tried cases except upon consent of the parties. The rule establishes that a master's findings or recommendations for findings of fact are reviewed de novo by the court, with limited exceptions adopted with the parties' consent and the court's approval.

Rule 53(a)(1)(B) would continue to limit the use of trial masters to actions to be tried to the court without a jury when some "exceptional condition" warrants it or when there is need to perform an accounting or resolve difficult computations. But the present provision for appointment of a trial master in a jury trial is deleted, except when a statute provides otherwise

or with the consent of the parties.  Deleting the provision for use of a trial master in a jury trial does not foreclose other means of providing neutral assistance to a jury in a complex case, such as by a court appointment of an expert witness under Federal Rule of Evidence 706.  Some courts have found it possible to combine the functions of master and court-appointed expert in various ways.  Appointment as an expert witness ensures that the jury is informed, through examination and cross-examination, of the grounds for the expert's recommended conclusions and preserves procedural fairness.

Paragraph (1)(C) would expressly authorize a court to appoint a special master to handle pretrial and post-trial matters.  The proposed amendment is not designed to encourage — nor, for that matter, to discourage — use of special masters.  Appointment is limited to matters that cannot be addressed effectively and in a timely fashion by an available district judge or magistrate judge of the district.

Subdivision (b) would regularize the practice governing the appointment of a master. Parties are given the opportunity to be heard before the court appoints a master.   The appointment order must state the master's duties, the circumstances — if any — when ex parte communications are permitted, the record to be maintained, the terms of compensation for the master, and the procedures and standards for reviewing the master's findings and recommendations.

Proposed Rule 53(g)(3) increases the court's responsibility for fact matters.  It requires de novo determination of objections to fact findings unless the parties stipulate with the court's consent that review is for clear error, or that the findings of a master appointed by consent or for pretrial or post-trial duties will be final.  The Committee Note adds a reminder that the court may determine fact issues de novo even if no party objects.  The changes are consistent with several appellate decisions that reflect substantial reservations about the authority of an Article III judge

to delegate responsibility to a master.  A master's conclusions of law will continue to be reviewed de novo by the court.

Subdivision (h) would set out the procedures governing the compensation of a master.

Proposed subdivision (i) carries forward the provisions of present Rule 53(f), stating that a magistrate judge is subject to Rule 53 only when the order referring a matter to the magistrate judge expressly provides that reference is made under Rule 53.

*Technical and Conforming Amendments*

The citations to Rule 53 contained in Rules 54(d) and 71A(h) would be changed to reflect the renumbered provisions in amended Rule 53.

The advisory committee also recommended that the outdated references to the last century in three forms in the appendix to the Civil Rules be updated.  The proposed revisions would substitute references to "20__" for "19__" in Forms 19, 31, and 32.  The advisory committee concluded that neither public notice nor comment is appropriate or necessary because the proposals are purely technical and do not substantively change the forms.

The Committee concurred with the advisory committee's recommendations.  An excerpt from the advisory committee report describes the proposed amendments and is set out in Appendix B.

> **Recommendation**: That the Judicial Conference approve the proposed amendments to Civil Rules 23, 51, 53, 54, and 71A and the revisions to Forms 19, 31, and 32 and transmit these changes to the Supreme Court for its consideration with a recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

* * * * *