**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **WALTER W. THIEMANN,** | ) | **Case No. C-1-00-793** |
| | ) | |
| **Plaintiff,** | ) | **(Judge Sandra S. Beckwith)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **MEMORANDUM IN OPPOSITION TO** |
| **OHSL FINANCIAL CORPORATION,** | ) | **PLAINTIFF'S MOTION FOR CLASS** |
| **ET AL.,** | ) | **CERTIFICATION** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

---

Defendants OHSL Financial Corporation ("OHSL"), Oak Hills Savings & Loan Company, F.A. ("Oak Hills"), Norbert G. Brinker ("Brinker"), Kenneth L. Hanauer ("Hanauer"), William R. Hillebrand ("Hillebrand"), Alvin E. Hucke ("Hucke"), Thomas E. McKiernan ("McKiernan"), Joseph J. Tenoever ("Tenoever"), Howard J. Zoellner ("Zoellner"), Provident Financial Group, Inc. ("Provident"), Robert L. Hoverson ("Hoverson"), Jack M. Cook ("Cook"), Thomas D. Grote, Jr. ("Grote"), Phillip R. Myers ("Myers"), Joseph A. Pedoto ("Pedoto"), Joseph A. Steger ("Steger"), and Christopher J. Carey ("Carey") (collectively herein "Defendants"), hereby submit this Memorandum in Opposition to Plaintiffs' Motion for Class Certification.

## I.    **INTRODUCTION.**

Plaintiffs' second motion for class certification – virtually identical to the first – does nothing to correct the deficiencies that led the Court to vacate class certification on December 15, 2003.  (*See generally* Order Vacating Class Certification (the "12/15/03 Order") (Doc. 227)) Plaintiffs' counsel added a new named plaintiff and new defendants, but has not overcome the fundamental impediments to class treatment in this case:

1.    The two named Plaintiffs' claims are not typical of the claims of those they seek to represent because neither relied on or were damaged by any alleged misrepresentations.  This Court has already found that Plaintiff Thiemann "clearly was not misled by the [proxy] materials."  (12/15/03 Order at p. 8)  Moreover, Plaintiff Gary Meier – the new plaintiff – swears in his affidavit that he "voted against the merger."  (Meier Aff. at ¶ 3)  If Mr. Meier voted against the merger, then he could not have relied upon or been damaged by any misstatements or omissions.

2.    Plaintiffs' counsel has done nothing to allay the Court's concern that "a single lawyer" – one who has been scolded by the Court for a lack of "professionalism" and for engaging in conduct that "has been [a] considerable waste of everyone's time and resources" – "remains to prosecute this case."  (12/15/03 Order at pp. 9-11) That "single lawyer," who is not admitted to practice law in Ohio, nevertheless continues to act as the *de facto* "trial counsel" for Plaintiffs and is the lone signatory to the Amended Complaint.

3.    The Court found the "fraud-on-the-market" presumption "likely" does not apply in this case; therefore questions of individual reliance will predominate, making class certification inappropriate. *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 605 (S.D. Ohio 2003);

These reasons (and others discussed in detail below) are more than enough to deny class certification summarily.  If, however, the Court harbors any doubt at this stage, Defendants respectfully request that the Court withhold its decision until after class discovery closes on June 30, 2004 and Defendants have had a chance to supplement the record.[1]  The Court has already

---

[1]    On January 12, 2004, Defendants filed a "Position Paper," in which they asked the

recognized the problems with "certifying the class . . . based on an incomplete and undeveloped record." (12/15/03 Order at p. 6)[2] Those problems can be avoided by either (1) denying certification based upon the record now before the Court, or (2) withholding decision until after the close of class discovery.

## II.    ARGUMENT.

Plaintiffs' Amended Complaint alleges eleven claims – six based on the federal securities laws (sections 11, 12(2), and 15 of the Securities Act, and Sections 14, 10(b), and 20(a) of the Exchange Act) and five based on state statutory and common law (Ohio Revised Code §§ 1707.41 and 1707.43, spoliation, fraud, and breach of fiduciary duty). **Plaintiffs' motion for class certification only seeks class treatment of the federal securities claims.** *See Memorandum in Support* at pp. 5-6 (listing the purported common questions of law and fact – each of which applies only to claims relating to the alleged misrepresentations in the proxy statement). This is as required by the Securities Litigation Uniform Standards Act of 1988, 15 U.S.C. § 77p(b), which prohibits class actions based on the "statutory or common law of any State" when the claims allege misrepresentations in connection with the purchase or sale of securities.

---

Magistrate Judge to "enter an order providing that memoranda in opposition to Plaintiffs' motion for class certification be due July 15, 2004 – two weeks after the close of class discovery." (Doc. 239) The Magistrate Judge denied Defendants' request. (Doc. 241)

[2]    Plaintiffs' current motion has the same procedural posture as the motion to certify the first class. At the time Defendants' opposition to Plaintiff's first motion was due, Defendants had not had the chance to take any class discovery and thus could not adequately address many of the elements required for class certification. Similarly, within two weeks of the Court's 12/15/03 Order, Plaintiffs' counsel simultaneously filed a new complaint (with a new plaintiff) and a new motion for class certification. Although Defendants contend the Court can find the new plaintiff atypical and inadequate solely on the basis of the affidavit he attached to the motion for class certification, Defendants – as they did before – wish to reserve the right to supplement the record, as discovery unfolds, and offer additional evidence for why class certification is inappropriate. *See Prado-Steiman v. Bush*, 221 F.3d 1266, 1273-74 (11th Cir. 2000); *Simon v. Phillip Morris, Inc.*, 200 F.R.D. 21, 41 (E.D.N.Y. 2001).

A.    <u>**Legal Standard Under Rule 23.**</u>

Class certification is governed by the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Under Rule 23(a), one or more members of a class may sue as representative of the class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition to these prerequisites, the party seeking class certification must also satisfy one of the three provisions set forth in Rule 23(b).  *Id.*  Here, Plaintiffs rely upon Rule 23(b)(3), which requires "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

A party seeking class certification bears the burden of proof in establishing the requirements of Rule 23 by a preponderance of the evidence.  *In re American Medical Systems*, 75 F.3d 1069, 1079 (6th Cir. 1996).  In determining whether the Plaintiffs in this case have met their burden, this Court must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 have been met.  *Id.* at 1078-79.  To withstand this rigorous analysis, Plaintiffs must set forth specific facts indicating that *each* of the requirements of the Rule is fulfilled.  *Id.*  Mere repetition of the language in Rule 23 is not sufficient.  *Id.*

**B.**    **There Is No Presumption That Securities Cases Are Ideally Suited For Class Action Treatment.**

Contrary to Plaintiffs' threshold argument, federal courts do not uniformly favor class certification in securities cases.  Plaintiffs maintain that "a substantial line of authority in this Circuit and elsewhere has recognized and applauded the utility of the class action device in securities fraud litigation."  (*Memorandum in Support* (Doc. 233) at p. 2).  Plaintiffs' assertion, however, ignores numerous decisions denying class certification in securities cases.  *See, e.g., Mayer v. Mylod*, 988 F.2d 635 (6th Cir. 1993); *O'Neil v. Appel*, 165 F.R.D. 479 (W.D. Mich. 1996); *Ballan v. Upjohn Co.*, 159 F.R.D. 473 (W.D. Mich. 1994); *Yadlosky v. Grant Thornton, L.L.P.*, 197 F.R.D. 292 (E.D. Mich. 2000).  As noted by the Court in *O'Neil*, "[c]ourts do not certify classes in every securities case, as a class action is not invariably a superior method of proceeding."  165 F.R.D. at 507.

Even in cases in which the class is certified, the courts do so with some trepidation.  In fact, this Court stated that it "continues to be concerned about the apparent practice by lawyers of filing class action suits for the potential gains to themselves and using the named representatives as a means to those gains . . . ."  *In re Gibson Greetings, Inc. Sec. Litig.*, No. C-1-94-445 (S.D. Ohio 1996) (Beckwith, J.) (attached).

Regardless of whether Plaintiffs believe that securities cases are "ideally suited for class action treatment," Plaintiffs still must set forth sufficient evidence to withstand the "rigorous analysis" mandated by the Sixth Circuit.  *See American Medical Systems*, 75 F.3d at 1087-88 & n.20 (rejecting notion that class certification was appropriate just because, absent class certification, the plaintiffs would not have sufficient resources to litigate effectively).  As demonstrated more fully below, Plaintiffs have failed to meet their burden.

**C.**     <u>**Plaintiffs Have Not Satisfied The Numerosity Requirement.**</u>

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. The size of the putative class is not necessarily determinative of numerosity. "The 'real inquiry' under Rule 23(a)(1) is 'whether joinder would be impractical.'" *O'Neil*, 165 F.R.D. at 490 (*citing Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 603 (D. Colo. 1990)). "A relatively small class may be certified if joinder is impractical. However, the converse must also be true for relatively large classes; certification may be denied if all plaintiffs can be joined." *Id.*

The determination of whether joinder would be impracticable depends upon "all the circumstances surrounding a case, not on mere numbers." *Id.* (*citing Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Relevant factors for the Court to consider include the judicial economy arising from the avoidance of a multiplicity of actions; geographic dispersion of class members; financial resources of class members; the ability of claimants to institute individual suits; and the like. *Id.* In the instant case, Plaintiffs have submitted absolutely no evidence regarding any of these elements; or any other considerations for that matter. Instead, Plaintiffs make the conclusory statement that "[t]here can be no dispute that the Class is so numerous that joinder of all members in [sic] impracticable." (*Memorandum in Support*, at p. 4). Without evidence to support this conclusory allegation, Plaintiffs' motion certainly cannot withstand the "rigorous analysis" mandated by the Sixth Circuit. *American Medical Systems*, 75 F.3d at 1078-79.

**D.    Plaintiffs Thiemann And Meier Do Not Have Typical Claims And Are Inadequate Representatives.[3]**

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  To meet the typicality requirement, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).  If a class representative is not typical, he cannot be an adequate representative.  *See Newberg on Class Actions* § 3:22, pp. 411-12 ("when typicality of claims is absent, the class representative inherently has a conflict with the rest of the class because he or she has no incentive to prosecute class claims vigorously"; "satisfaction of the typicality test is an integral element of adequate representation").

Plaintiffs Thiemann and Meier do not have typical claims (and are thus inadequate representatives) for the following reasons:

**1)    Neither Plaintiff can prove reliance.**

The Amended Complaint alleges that "the class relied, to their damage, on the integrity of the solicitation materials in voting to approve the merger." (Amended Complaint (Doc. 234) at ¶ 151)  The evidence submitted thus far in this case proves that allegation is not true for the two named plaintiffs.

---

[3]    "Due to the close interrelationship between the typicality and adequate representation tests, courts frequently discuss both of them together in their class rulings." *Newberg on Class Actions* § 3:13., pp. 319-24.

Mr. Thiemann testified that he read the proxy materials, including the "Risk Factors" which discussed Provident's securitization activities.  (Thiemann Dep. at pp. 207-08)  After doing so, Thiemann concluded that Provident was a "bad investment," and he unloaded 17,000 OHSL shares (approximately 30% of his holdings) before the Provident-OHSL merger became effective.  (Thiemann Dep. at p. 83)  Thiemann realized more than a 100% profit on these shares, and would have sold more except for the fact that he did not want to pay more taxes:

> **Q:** Okay.  I was just trying to understand why you sold your shares in 1999, that's all.
> **A:** It was made strictly on the basis of opportunity.
> **Q:** Because $22 was a good price?
> **A:** Right.
> **Q:** And did you believe that $22 per OHSL share was a good price in December 1999?
> **A:** Well, at the time I had to take – I had to take advantage of it.
> **Q:** And when did you decide that?
> **A:** After I received the documents.
> **Q:** The proxy statement?
> **A:** Yes.
> **Q:** Did you try to sell more stock during that 1999 period?
> **A:** No.
> **Q:** Why not, if Provident was not a good investment?
> **A:** Because there was a tax implication [due to the substantial profit].

(Thiemann Dep. at pp. 79-81)

When asked why he did not vote against the merger if he believed Provident was a bad investment, Thiemann responded that holding Provident stock "fit into his plan":

> **Q:** Okay.  If you have concluded the Provident Financial Group was not a good investment, why did you vote for the transaction?
> **A:** Well, I had to base my opinion on what they were doing.  And I was going to take action to – by selling shares prior to the, to the merger, selling shares that – enough shares that would offset some of the – my feelings about [Provident].
> **Q:** So, after you – if I understand you, after reading the proxy and making your judgment about Provident, you decided to sell off enough shares to eliminate the risk that your perceived?

**A:** Part of the risk, right.

**Q:** Okay.  And that's what you did before the merger became final?

**A:** The day before.

**Q:** Okay.  But if Provident was a bad investment, why didn't you just vote no?  Because you had this plan?

**A:** This plan, that's correct.

**Q:** You had this plan to sell off shares before the merger became final?

**A:** That's right.

**Q:** And with that plan, you felt that the transaction made sense?

**Brautigam:** Objection.  Made sense to whom?

**Q:** To you.

**A:** Yes.

(Thiemann Dep. at pp. 126-27)

Thus, not only did Mr. Thiemann not rely to his detriment upon the allegedly misleading proxy materials, he was not misled at all.  To the contrary, he read the materials and, based upon the disclosures regarding Provident, he sold a large block of his OHSL stock at a huge profit just before the merger was consummated.[4]

The Court has already determined that the above-described evidence "indicates that not only did . . . Mr. Thiemann, not rely on the alleged misleading proxy statement, he concluded based on the proxy statement that the merger was a bad investment."  (12/15/03 Order at p. 7)  In their new motion for class certification, Plaintiffs do not offer any evidence that "indicates" the contrary.

---

[4]      Notably, both Thiemann and former OHSL Director (and current putative class member) Thomas Herron testified that before the merger announcement, OHSL stock was very thinly traded and that the price had remained flat for a long time.  (Thiemann Dep. at pp. 72-73; Herron Dep. at p. 279).  The merger announcement, therefore, greatly benefited Thiemann, who was able to sell nearly 20,000 shares of OHSL stock at a substantial profit in accordance with his "ten year plan" to dispose of his OHSL shares.  (*See* Thiemann Dep. at pp. 63-74)  Had the merger not been announced, Thiemann's plan would have been impossible (at least at such a large profit) due to the stock's historical illiquidity.  (*Id.*)

The only change Plaintiffs have made in response to this Court's 12/15/03 Order is the addition of a new named Plaintiff – Gary Meier – to the Complaint.[5]  Nevertheless, even the short affidavit that Mr. Meier submitted with the motion for class certification suggests that his claim is not typical of the class he seeks to represent.  In his Affidavit, Mr. Meier admits that he "***voted against the merger***."  (Meier Aff. at ¶ 3) (emphasis added).  Mr. Meier will be hard-pressed to prove that he relied on any misstatements or omissions allegedly designed to dupe the shareholders into approving the transaction when he was not among the duped.  On the basis of this evidence, alone, the Court should find that Mr. Meier, like Mr. Thiemann, cannot meet the typicality requirement of Rule 23(a).[6]

### 2)      <u>Mr. Thiemann cannot prove damages.</u>

Not only will Mr. Thiemann be unable to prove reliance, he will also be unable to prove damages.  In fact, Mr. Thiemann testified that he was quite pleased with the price he was able to obtain for his OHSL shares as a result of the Provident-OHSL merger:

> **Q:** Are you complaining about the price that was paid for your shares?
> **A:** No.
> **Q:** At the time of the transaction, of course.
> **A:** Am I objecting to the price?
> **Q:** Yes, sir.
> **A:** Well, I can always consider an increase.
> **Q:** We always like more.  My question is a little different Mr. Thiemann.  Have you performed any analysis or do you have any opinion or facts to suggest that this was an unfairly low price?
> **A:** No, I have no –

---

[5]      As discussed above, Defendants have not had an opportunity to take discovery to learn whether Mr. Meier has claims that are typical to the class he purports to represent.  Defendants therefore reserve the right to supplement this memorandum once they take that discovery.

[6]      Defendants submit that the failure to find any class representatives without these obvious taints after four years of searching raises the same concerns with class actions that this Court expressed in *In re Gibson Greetings*, No. C-1-94-445 (S.D. Ohio 1996).

> **Q:** Okay. You're not disputing the price that was paid as part of your lawsuit, correct?
>
> **Mr. Brautigam:** Objection. The complaint speaks for itself.
>
> **Q:** Is that correct?
>
> **A:** Whatever is in the complaint.
>
> **Q:** Are you aware whether the price is disputed in the Complaint?
>
> **A:** I don't believe it was.

(Thiemann Dep. at pp. 160-61)

In January, 1999, Thiemann held approximately 60,000 shares of OHSL, all bought at $10 per share. (*Id*. at pp. 60-63.) As a result of a subsequent stock split, Thiemann's basis in the stock was approximately $5 per share in early 1999. (*Id*. at pp. 62-64). Since 1993, Thiemann had been trying to get rid of his OHSL shares and had a "ten year plan" to sell off his shares. (*Id*. at pp. 61, 74)

For "practically the whole lifetime" of Thiemann's stock ownership prior to the merger, the stock price was flat and Thiemann had difficulty selling his shares of OHSL stock. (*Id*. at pp. 73-74) It was only after the merger announcement that the stock price began to move and Thiemann was able to sell his shares for a "good price." (*Id*. at pp. 72-73, 80). After the merger announcement, but before its consummation, Thiemann sold 17,000 of those shares at $22 per share. (*Id*. at 80) He would have sold more but chose not to because of the tax implications of his substantial profit on the shares. (*Id*. at p. 81) Since the merger, Thiemann has sold some of his converted Provident stock — again, at a substantial profit. (*Id*. at pp. 106-07, 210-19)

The Affidavit of David Branderhorst (attached as Ex. B to Doc. 65) calculates the profit Thiemann realized based upon his deposition and exhibits. (Branderhorst Aff. at ¶ 3) Thiemann realized a total profit on the sale of OHSL stock of $350,500 and a total profit on his sales of Provident Financial Group stock of $184,187. (*Id*. at ¶ 6) Rather than injuring Thiemann, the

merger allowed Thiemann to satisfy his objective of selling OHSL shares and realize a handsome profit.[7]

An individual who has not been injured by the alleged wrongful acts cannot serve as a class representative. *Shipp v. Memphis Area Office, Tennessee Dept. of Environment Sec.*, 581 F.2d 1167, 1172-73 (6th Cir. 1978), *cert. denied*, 440 U.S. 1980 (1979); *Katz v. Comdisco, Inc.*, 117 F.R.D. 403, 408 (N.D. Ill. 1987) (investors in securities fraud case who "suffered no injury, but instead profited during the alleged non-disclosure scheme . . . cannot serve as a representative of the proposed class"); *Centurions v. Ferruzzi Trading International*, 1994 WL 114860, *11 (N.D. Ill. Jan. 7, 1993) (attached) ("[b]y definition, a class representative who has suffered no injury is not an adequate representative"); *East Texas Motor*, 431 U.S. at 403 (class representative must "possess the same interest and suffer the same injury" as the other class members); *Giarrupto v. Union Provident Corp.*, 2000 WL 1701294 (D. Me. Nov. 8, 2000) (attached) (for section 14(a) claim, class representative "and the other class members must allege . . . how consummation of the merger caused them injury"). In fact, a proposed class representative who has not been injured does not even meet the constitutional standing requirement. *Schlesinger v. Reservists Committee To Stop The War*, 418 U.S. 208, 216 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must . . . suffer the same injury shared by all members of the class he represents.").

---

[7]    Thiemann has refused to produce any evidence of an alleged injury. In fact, after Defendants served Plaintiff with a set of discovery requests specifically inquiring into Thiemann's alleged damages, Thiemann responded with a complete refusal to answer a single request. Instead, Thiemann replied with summary objections. (*See* Thiemann's October 9, 2001 Objections to Defendants' discovery, attached as Ex. 1 to Doc. 52) Those responses have never been supplemented.

### 3)    Mr. Thiemann cannot prove scienter.

Mr. Thiemann's testimony also directly contradicts the Amended Complaint's allegation that Defendants "knowingly or recklessly" concealed material information, operating as a "fraud and deceit" upon the Class. (Amended Complaint at ¶ 146) Mr. Thiemann expressly denied any knowledge of fraudulent or reckless conduct by Defendants:

> **Q:** Sure.  Do you know whether or not in the lawsuit you have brought, you are alleging that Mr. Brinker, Mr. Hanauer, Mr. Hucke, Mr. Hillebrand, Mr. McKiernan and Mr. Tenoever intentionally misled Oak Hills shareholders?  Do you know whether you're contending that?
> **A.:** And you want a yes or a no answer?
> **Q:** Yes.  Do you know whether that's part of your lawsuit or not?
> **A.:** All I can say is that there were – there were omissions from the proxy, on the proxy statement. *And I could not determine whether they were deliberate or not.*
> **[ . . . ]**
> **Q:** Do you have any facts or information – are you in possession of any facts or information that would indicate that Mr. Brinker or any of the other OHSL directors [excepting Hanauer] knew that the proxy statement and the registration statement contained any false or misleading information?
> **A.:** I have no knowledge.

(Thiemann Dep. at pp. 40-41, 171) (emphasis added)  Moreover, Thiemann testified that, in his own experience serving on the Board of OHSL, he believed the OHSL Board members were honest, acted in the best interest of OHSL and did *not* intentionally defraud anybody.  (*Id.* at pp. 37-40)  Mr. Thiemann similarly was unaware whether the proxy materials contained any misrepresentations or omissions regarding Provident:

> **Q:** Mr. Thiemann, Exhibit 1, is the proxy statement, so feel free to refer to that at any time, it is in front of you.  Again, and I apologize, just to make sure we're clear, as we sit here today, are you aware of anything in that proxy statement that you reviewed that either omitted anything about Provident or misrepresented anything about Provident.
> **A.:** I don't recall.
> **Q:** You don't recall or --

12

**A.:** I, I don't recall anything.  I don't recall anything.

(Thiemann Dep. at pp. 155-56.)  Clearly class certification must be denied if the circumstances of the class representative bear no relationship to the allegations of the complaint or to the purported class.  *See Shipp*, 581 F.2d at 1172-73 (class representative inadequate where he or she cannot satisfy a required element of liability).

### 4)    Mr. Thiemann is a disgruntled former employee.

The evidence also demonstrates that Mr. Thiemann is a disgruntled former employee, who, because of his animosity toward certain current directors, cannot be expected to fairly and adequately represent the interests of the class.  As the Affidavit of Kenneth L. Hanauer (attached as Exhibit D to Doc. 65) attests, Thiemann had numerous conflicts with OHSL Board members and officers that created significant animosity.[8]  This animosity may impede Thiemann's ability to proceed effectively with the case as well as explain why this case has been so bitter and contentious.

Courts have recognized that the type of animosity possessed by Thiemann – long-standing animosity unrelated to the facts of the current lawsuit – constitutes a reason to deny certification of the class.  *See, e.g.*, *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1464 (9th Cir. 1995) (courts "consider vindictiveness as a factor in evaluating adequacy of representation . . . to

---

[8]    In 1987, Thiemann was passed over for the position of President and Chief Executive Officer.  (Hanauer Aff. at ¶ 5; Thiemann Dep. at p. 89)  Apparently, Thiemann was bitter about being passed over because he had been promised by the previous head of OHSL that he would take over after his resignation.  (Hanauer Aff. at ¶ 6)  Thiemann's bitterness was heightened when he was removed from the OHSL Board shortly after Hanauer's appointment.  (*Id*. at ¶ 7)  At the time of his retirement in 1995, Thiemann had other disputes with the directors of OHSL – relating to his retirement program and stock ownership under its Employee Stock Option Program.  (*Id*. at ¶¶ 9-10; *see also* Thiemann Dep. at p. 93)  These disputes were resolved only after Thiemann threatened the OHSL Board of Directors with lawsuits.  (Hanauer Aff. at ¶¶ 10-11)  After Mr. Thiemann retired from OHSL, he again asked to be re-appointed to the OHSL Board and was bitter when the Board refused to re-appoint him.  (*Id*. at ¶ 11; Thiemann Dep. at pp. 35-36)

render ineligible individuals who possess animosity that would preclude the possibility of a suitable settlement"); *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986) ("an unduly antagonistic litigant, or litigant who bears a grudge against the defendant is not an appropriate class representative"); *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976).

Because Thiemann's and Meier's individual circumstances cast doubt on their ability to prevail at trial, the Court should not certify the class. *See, e.g.*, *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (where each class member's circumstances impact the viability of his or her claims, the typicality requirement is not met and a class should not be certified).

### E.     **Class Counsel Is Inadequate.**

Rule 23(a)(4) also requires that Plaintiffs' counsel be able to adequately represent the class. *See Lewis v. National Football League*, 146 F.R.D. 5, 10 n.6 (D.D.C. 1992) (the Court "may certify a class only if counsel is adequate"). The Court is "entitled to consider what has been done in the case before it in order to evaluate whether counsel" is an adequate representative. *Dubin v. Miller*, 132 F.R.D. 269, 273 (D. Colo. 1990). Engaging in improper, unethical or unprofessional conduct during a case can be grounds for determining that class counsel is inadequate. *See, e.g.*, *Hatch v. Reliance Ins. Co.*, 785 F.2d 409 (9th Cir. 1985) (attempting to re-litigate decided issues, ignoring court orders, etc.); *Kingsepp v. Wesleyan University*, 142 F.R.D. 597 (S.D.N.Y. 1992) (denying motion for class certification when proposed class counsel's history of misconduct illustrated that he was unfit to serve as class counsel).

Make no mistake about it. If the Court certifies this class, then it will be represented by one person – Mr. Brautigam.[9]  Although Gene Mesh is listed as trial counsel, he has been largely uninvolved in this case to date.   Clearly, all day-to-day correspondence, communications, pleadings, and dealings regarding discovery are handled by Mr. Brautigam.  As this Court noted, "[b]y all appearances, a single lawyer remains to prosecute this complex securities action." (12/15/03 Order at p. 9)  Unfortunately, that "single lawyer" has engaged in a laundry list of inappropriate and "highly irregular" conduct which demonstrates his inability to adequately represent the proposed class.  That list includes the following:

- Although he has been practicing in Ohio since 1992 and maintaining an office in Ohio, Mr. Brautigam has never been admitted to the Ohio Bar.  For all practical purposes, Mr. Brautigam – not Mr. Mesh – is the trial attorney for Plaintiffs. Indeed, it was Mr. Brautigam, not Mr. Mesh, who signed the Amended Complaint.  It is clear that Mr. Brautigam may not participate as trial attorney under this Court's Local Rule 83.5, which requires that all parties be represented by a "trial attorney" who "is both a member of the bar of this court in good standing and a member in good standing of the bar of the Supreme Court of Ohio."[10]

- Mr. Brautigam has wasted the resources of this Court on numerous occasions:

---

[9]     As the Court noted in its 12/15/03 Order, two law firms have already withdrawn from representation and another lawyer – Ann Lugbill – entered an appearance and then withdrew within months.  The Brualdi Law Firm and Specter Specter Evan & Manogue P.C. withdrew because they had "irreconcilable differences about litigation strategy" with the Mesh firm.  (Doc. 83)

[10]    When this Court approved Mr. Brautigam's *pro hac vice* application, it expressly "disapprove[d] of [his] continued use of the *pro hac vice* privilege to practice law in the courts of Ohio."  (Doc. 28 at p. 4)  The Court also cautioned Mr. Brautigam that he "stands perilously close to the limits of this courtesy," and warned him that the Court "may not extend the pro hac vice privilege to [him] in future cases assigned to its docket."  (Doc. 28 at p. 5)  Mr. Brautigam, has not taken this warning to heart.  A review of the Court's docket indicates that Mr. Brautigam filed a new case in this Court in June, 2003 (*Tribble v. Graham*, Case No. C-1-03-00403 (Judge Spiegel)) and requested *pro hac vice* privileges in that case presumably without disclosing this Court's prior order.

o He filed a "baseless motion" to recuse Magistrate Judge Hogan from the case (Doc. 165). *See* 12/15/03 Order at p. 11.

o The Court has described his tactics as being "like a boxer who simply puts his head down and comes out swinging" (12/15/03 Order at p. 10) – a strategy that has necessitated numerous needless procedural and discovery disputes. *See* 12/15/03 Order at p. 10.

o After Magistrate Judge Hogan recommended denying leave to amend the complaint, he filed objections to the order, a motion to reconsider the order, and a "largely duplicative second lawsuit in an attempt to avoid the effect of that recommendation." *See* 12/15/03 Order at p. 11.

o After this Court vacated its prior order certifying the class, Mr. Brautigam filed a "motion for leave to submit a motion for reconsideration" of the 12/15/03 Order (Doc. 230), but then two days later filed the amended complaint and then a new motion for class certification.

• He has acted uncivilly and unprofessionally toward this Court and opposing counsel throughout the course of this litigation. For example:

o On June 10, 2003, Magistrate Judge Hogan issued orders deciding four discovery-related motions (Doc. 167, 168, 169, 170). Counsel for the Provident and OHSL Defendants had questions about the scope and meaning of the Orders and wanted to seek clarification from the Magistrate Judge regarding how he expected the parties to proceed with discovery. Counsel for the Provident and OHSL Defendants sought to schedule an informal discovery conference with the Magistrate Judge pursuant to S.D. Ohio Civ. R. 37.1, to resolve these issues in an expeditious and cost-effective manner. In a sequence of letters, emails, and voicemails from June 17-19, 2003, Mr. Brautigam refused to participate in an informal discovery conference to clarify the orders, refused to explore mutually agreeable discovery, and stated he would not participate in such a conference if it were scheduled by the Magistrate Judge. This sequence of events led the Magistrate Judge to issue an Order which, among other things, reminded counsel of the Southern District of Ohio's Introductory Statement on Civility. *See generally* Doc. 179, 197.

o Mr. Brautigam attempted to create a conflict of interest between defendants by tendering a settlement offer to an individual OHSL defendant, but not to the other defendants. *See* 12/15/03 Order at p. 10 n.4.

o At Defendants' deposition of putative class member Thomas Herron, Mr. Brautigam deposed Mr. Herron as if he were an unrepresented third party witness. When Defendants' counsel asked whether Mr. Brautigam

represented Mr. Herron. No answer was given. (Herron Dep. at p. 9) Later, Mr. Brautigam asked Mr. Herron "are you represented by counsel today?" Mr. Herron answered, "No." (*Id*. at p. 38) Later, Defendants' counsel again asked if Mr. Brautigam represented Mr. Herron, and the question went unanswered. (*Id*. at pp. 129-30) After Defendants' counsel began cross-examination, however, Mr. Herron testified that he was, in fact, represented by Mr. Brautigam, and Mr. Brautigam repeatedly instructed him not to answer questions on advice of counsel. (*Id*. at pp. 170, 232-35, 238)

o  On September 7, 2001, Mr. Brautigam wrote an unsolicited *ex parte* letter to the Court (in violation of Local Rule 7.2(d)), in which he asked the Court for an expedited ruling on class certification, disregarding the January 31, 2002 deadline in the Court's Amended Calendar Order. This Court's recent Order notes that that "unsolicited letter" had the "intended effect of stimulating an early ruling on the motion." (12/15/03 Order at p. 6)

o  Just recently, Mr. Brautigam filed a legally unfounded objection to the Magistrate Judge's Scheduling Order and attempted to notice the deposition of his own client apparently to force the newly added defendants to conduct discovery despite the automatic stay of discovery under the Private Securities Litigation Reform Act. Magistrate Judge Hogan was required to intervene. (Doc. 241)

This Court has already expressed its "concerns" about Mr. Brautigam's lack of "professionalism" and his continuing efforts to "waste" "everyone's time and resources." *See* 12/15/03 Order at pp. 8-11. Since the Court's Order, Mr. Brautigam has done nothing to allay the Court's concerns. He still is the "single lawyer" prosecuting this case. Even though he is not a member of the Ohio Bar, he still acts as "trial counsel." If Mr. Brautigam's conduct does meet the criteria for inadequate representation, nothing does.

## F.    Individual Issues Will Predominate Over Common Issues.

To satisfy Rule 23(b)(3), a plaintiff must demonstrate by a preponderance of the evidence that "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3)

(emphasis added). Although an alleged "common course of conduct" might satisfy the commonality requirement under Rule 23(a)(2), Rule 23(b)(3) raises different concerns. *Yadlosky*, 197 F.R.D. at 298 (citing *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)). The predominance and superiority requirements of Rule 23(b)(3) function to "keep the balance between the economies attained and lost by allowing class certification." *Id*. Thus, Plaintiffs have to allege more than a "common course of conduct" to withstand the Court's "rigorous analysis."

The evidence in the record thus far demonstrates that *individual* issues of reliance will predominate. Plaintiffs' 10b-5 claim requires proof that each class member relied on Defendants' alleged misrepresentations. *Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988). The law is clear that class treatment is inappropriate where individual reliance is an issue. *O'Neil*, 165 F.R.D. at 498 ("[N]umerous" courts "have refused to certify class actions for the very reason that individual proof of reliance would be necessary, thus creating an unmanageable lawsuit in which numerous 'mini-trials' on the issue of reliance and damages would overwhelm the common issues").

Although the "fraud-on-the market presumption" can substitute for reliance in securities fraud cases, this Court held just last month that the "evidence submitted thus far shows that [the presumption] likely would not be applicable in this case." (12/15/03 Order at p. 8) That evidence includes the following:

- o  Plaintiff Thiemann's testimony that the price of OHSL stock had been flat for "practically [its] whole lifetime" and that the stock "was not easy to trade." (Thiemann Dep., p. 73)

- o  Plaintiff Thiemann's and Mr. Herron's testimony that prior to the merger announcement, OHSL stock was very thinly traded and illiquid. (Thiemann Dep., pp. 72-73; Herron Dep., p. 279)

*See Freeman v. Laventhol & Horvath*, 915 F.2d 193, 197-98 (6th Cir. 1990) (the fraud-on-the-market theory "rests on the assumption that the price of an actively traded security in an open, well-developed, and efficient market reflects all available information about the value of the company"; theory cannot be applied if the stock was not traded in an open and efficient market); *Cammer v. Bloom*, 711 F. Supp. 1264, 1292-93 (D.N.J. 1989) (if the stock is inactively or thinly traded, or the market is not responsive to new information, the fraud-on-the-market theory does not apply); 12/15/03 Order at p. 7.

Plaintiffs' new motion for class certification not only fails to introduce contrary evidence in support of applying a "fraud-on-the-market" theory, but it also does not even mention "fraud-on-the-market."  Because Plaintiffs failed to submit any evidence of an efficient market, questions of individual reliance will predominate.  *See Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 605 (S.D. Ohio 2003) ("When the fraud on the market theory is unavailable, questions of individual reliance predominate and make class certification inappropriate.") (citing *Basic Inc*., 485 U.S. at 242); *Castillo v. Envoy Corp*., 206 F.R.D. 464, 468 (M.D. Tenn. 2002); *O'Neil*, 165 F.R.D. at 479 ("In the absence of such a presumption [of reliance], individual issues are more likely to predominate.").

The experience of Plaintiff Thiemann illustrates the point.  As this Court noted, Mr. Thiemann "clearly was not misled by the materials," legitimately "raising the possibility that other investors likewise were not fooled by the alleged misleading proxy statements" and "suggest[ing] that individual issues could predominate over class issues, at least with respect to claims which require reliance as an element."  (Court's Order at p. 8)  The "possibility" suggested by the Court has proven to be true for at least two other investors as well:  Plaintiff Meier (who could not have relied on any misrepresentations because he voted against the

19

merger), and purported class member Janet Nolte (who testified that she did not read the proxy materials, but instead threw them away (Nolte Dep. at pp. 99-101)).

Even Plaintiffs, themselves, have admitted to the Court that the focus of the inquiry will be on each individual class member's interpretation of and reaction to the proxy materials. *See Plaintiffs Motion for Leave to Submit Motion for Reconsideration* (Doc. 230) at pp. 4-5 (referring to the proxy materials as a "face-to-face, proxy solicitation of OHSL shareholders," and referring to the relevant transaction as a "face-to-face transaction").

"[N]umerous" courts "have refused to certify class actions for the very reason that individual proof of reliance would be necessary, thus creating an unmanageable lawsuit in which numerous 'mini-trials' on the issue of reliance and damages would overwhelm the common issues." *O'Neil*, 165 F.R.D. at 498. Because Plaintiffs will have to prove reliance for each face-to-face transaction, class treatment is inappropriate.

## III.  CONCLUSION.

For all the reasons discussed above and in the prior briefs submitted on this issue, which Defendants incorporate herein by reference (Doc. 35, 52, 56, 65, 79, 173, 197, 199), Defendants respectfully request that the Court deny Plaintiffs' motion for class certification.

Respectfully submitted,


*/s/ J. Michael Debbeler*
John B. Pinney
J. Michael Debbeler
Graydon Head & Ritchey LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, OH 45202
Tel: (513) 621-6464
Fax: (513) 651-3836
pinj@graydon.com
debj@graydon.com
Attorneys for Provident and OHSL
Defendants

OF COUNSEL:

James E. Burke (0032731)
Rachael A. Rowe (0066823)
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
(513) 579-6400

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the  21st  day of January, 2004, I electronically filed the foregoing **MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Michael G. Brautigam | John W. Hust |
| Gene I. Mesh | Schroeder, Maundrell, Barbiere & Powers |
| Gene Mesh & Associates | Governor's Knoll, Suite 110 |
| 2605 Burnet Avenue | 11935 Mason Road |
| Cincinnati, Ohio 45219-2502 | Cincinnati, Ohio 45249 |
| | |
| *Attorneys for Plaintiffs* | *Attorney for Dinsmore Defendants* |
| | |
| Michael R. Barrett | James E. Gauch |
| Thomas W. Breidenstein | Mary-Helen Perry |
| Barrett & Weber | Jones Day |
| 500 Fourth & Walnut Centre | 51 Louisiana Avenue, N.W. |
| 105 East Fourth Street | Washington, D.C. 20001-2113 |
| Cincinnati, Ohio 45202-4015 | |
| | *Attorney for Defendant Ernst & Young* |
| *Attorney for KMK Defendants* | |

/s/ *J. Michael Debbeler*

J. Michael Debbeler

370051.1