# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN, et al., | : | CIVIL ACTION NO. C-1-00-793 |
| | : | |
| Plaintiffs | : | (Judge Sandra S. Beckwith) |
| | : | (Magistrate Judge Timothy S. Hogan) |
| -v- | : | |
| | : | **MOTION TO DISMISS OF DEFENDANTS,** |
| | : | **DINSMORE & SHOHL, LLP, CLIFFORD** |
| | : | **ROE AND CHARLES HERTLEIN** |
| DINSMORE & SHOHL, LLP., et al, | : | **PURSUANT TO FEDERAL RULES OF** |
| | : | **CIVIL PROCEDURE 12(B)(6) AND THE** |
| Defendants. | : | **PRIVATE SECURITIES LITIGATION** |
| | : | **REFORM ACT OF 1995, AND MOTION** |
| | : | **TO STRIKE PORTIONS OF THE** |
| | : | **COMPLAINT** |

Pursuant to Rule 12(B)(6) of the Federal Rules of Civil Procedure and Section 9(b) of the Private Securities Litigation Reform Act of 1995, Defendants, Dinsmore & Shohl, LLP, Clifford Roe and Charles Hertlein (collectively herein "the Dinsmore Defendants") request this Court dismiss the claims asserted against them in the Consolidated and Amended Class Action Complaint (hereinafter "Complaint"). The Defendants also request, pursuant to Rule 12(f), this Court to strike that portion of the Complaint captioned "Introduction". Grounds in support of this Motion are set forth in the accompanying Memorandum in Support.

                              Respectfully submitted:

                              S/ Michael E. Maundrell
                              Michael E. Maundrell (0027110)
                              John W. Hust (0027121)
                              Attorneys for Defendants, Dinsmore & Shohl LLP,
                              Clifford Roe and Charles Hertlein
                              SCHROEDER, MAUNDRELL, BARBIERE & POWERS
                              11935 Mason Road, Suite 110
                              Cincinnati, OH 45249
                              (513) 583-4200
                              (513) 583-4203 facsimile
                              mmaundrell@schroederlaw.com

**MEMORANDUM IN SUPPORT**

**I.     Introduction**

To survive a 12(b)(6) motion to dismiss, a plaintiff's Complaint must contain either direct or inferential allegations respecting all material elements of the asserted causes of action. *Klusty v. Taco Bell Corp.,* 909 F.Supp.516, 520 (S.D. Ohio 1995)(citations omitted). Unsupported conclusions and unwarranted factual inferences are not sufficient to meet a 12(b)(6) motion. *Id*.

Under each of the causes of action asserted against the Dinsmore Defendants, Plaintiffs must plead that the proxy materials contained material misstatements and/or omissions.  Because Plaintiffs' claims include a purported cause of action pursuant to Section 10(b) of the Exchange Act and Rule 10(b)(5), the pleading requirement particularly with reference to the element of scienter are heightened. *Miller v. Champion Enterprises, Inc.*, 346 F.3d 660, 671-673 (6th Cir.2003)(a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").

From prior proceedings, this Court is well-acquainted with the background of the transaction at issue.   Defendants will focus on the factual allegations of the consolidated and amended class action complaint and claims asserted against them.

**II.     Summary of Essential Factual Allegations and Claims**

Plaintiffs allege that the Dinsmore Defendants, as counsel for OHSL Financial Corp. and OHSL, wrote "sections" of a proxy/registration statement filed with the SEC and sent to OHSL shareholders on or about September 27, 1999 in connection with the then-pending merger agreement between OHSL and the Defendant, Provident Financial Group, Inc. (hereinafter "PFGI") (Doc. 234, Complaint,¶¶ 1, 26).

The Complaint alleges that the proxy materials/registration statement (hereinafter "the proxy materials") contained four material misrepresentations:

1. a knowingly false statement that the Board of Directors of OHSL had unanimously approved of the acquisition and that the acquisition was in the best interest of OHSL shareholders (Complaint, ¶ 117);

2. that the discussion on page 13 of the proxy materials under "Risk Factors" of Provident "Securitizations" did not disclose that "Securitizations" represented a "risky earning stream" and held the potential for an adverse change in accounting treatment (Complaint, ¶ 118);

3. the resignation of OHSL director, Thomas Herron was not disclosed to OHSL shareholders (Complaint, ¶ 119); and

4. the fairness opinion rendered by OHSL's financial expert to the OHSL Board was based upon financial statements of PFGI, which some three and one half years after the transaction, were restated by PFGI (Complaint, ¶ 120).

Of the Complaint's ten counts, six counts are asserted against the Dinsmore Defendants, to wit: Count I (violation of Section 11 of the Securities Act, 15 U.S.C. §77(k); Count V (violations of Section 10(b), 15 U.S.C. §78(j)b of the Exchange Act and Rule 10(b)(5), 17 C.F.R. §240.10b-5); Count VII (Ohio securities law violations, under O.R.C. §1707.41); Count VIII (Ohio securities law violations under O.R.C. §1707.43); Count IX (spoliation of evidence); and Count X (common law fraud).

### III. Argument of Law

####      (A)    Introduction

A fair and complete reading of the Complaint reveals that of the four alleged misrepresentations, only those related to the unanimity of the Board of Directors and Herron's resignation are at all applicable to the Dinsmore Defendants. The other allegations relating to alleged errors and misstatements in PFGI financial statements do not involve the Dinsmore Defendants. In addition to the arguments discussed below, the statements in the proxy materials regarding the unanimity of the Board of Directors and Herron's resignation were neither material nor misleading and the Complaint should be dismissed on those grounds as well.

####     (B)    Count I - Alleged Violation of Section 11 of the Securities Act, 15 U.S.C. §77k.

Section 77k governs civil liabilities on account of false registration statements. Section 77k(a), enumerating persons liable under this section, provides, in pertinent part, as follows:

> (4) Every accountant, engineer or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation, which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him; ...

Although the Complaint falsely asserts in paragraph 129 that the Dinsmore Defendants gave "consent to being named as having prepared the registration statement..." this allegation is disposed of by a simple examination of the proxy materials

and registration statement attached to the Complaint. None of the Dinsmore Defendants' names appear anywhere on the proxy materials or registration statement as "having prepared or certified any part of the registration statement."

An attorney who prepares portions of a registration statement does not have liability under Section 11 of the Securities Act. See, *e.g.*, *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 690, n. 22 (1983); *In re Flight Transportation Corp. Securities Litigation*, 593 F.Supp. 612 (D. Minn. 1984). See, also, **Bloomenthal & Wolff, Securities and Federal Corporate Law** §12.49 (2d ed.)

For these reasons, the Court should dismiss Count 1 of the Complaint as to the Dinsmore Defendants, because it fails to state a claim upon which relief can be granted.

**(C)    Count V - Plaintiffs' 10(b)(5) Claim is Factually and Legally Insufficient.**

To state a claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, Plaintiffs must allege in connection with the purchase or sale of securities: (1) the misstatement or omission of a material fact, (2) made with scienter, (3) upon which the plaintiff justifiably relied, and (4) which proximately caused the plaintiff's injury. *In re Comshares, Inc. Securities Litigation*, 183 F.3d 542 548 (6th Cir.1999).

A review of the factual allegations of the Complaint reveals that the two alleged misrepresentations asserted against the Dinsmore Defendants were neither misleading nor material.[1]

---

[1] Counsel is aware that the Court overruled a 12(b)(6) motion with reference to these allegations as pled in the original Complaint. However, the new Complaint sets forth more factual allegations, and incorporates documents and deposition testimony which demonstrates that alleged misrepresentations are neither misleading nor material.

5

The first contention is that the shareholders were misled by a statement in the proxy materials that the Board of Directors of OHSL had unanimously approved the merger. (Doc. 234, Complaint, ¶ 53). This allegation is based upon the contention that at the August 2, 1999 meeting of the OHSL Board of Directors, the merger was approved by a vote of five to zero, with the chairman of the Board abstaining and the seventh director being absent from the country. Thus, the merger agreement was approved unanimously by all those directors who actually voted at the meeting. Further, a review of the other allegations of the Complaint reveals that the Chairman of the Board, Norbert Brinker, was in fact in favor of the merger, as he had previously voted in favor of continuing negotiations with Provident Bank. The other director, McKiernan had served on the ad hoc committee which had voted to hire the investment advisor to pursue a merger on behalf of OHSL. (Doc. 234, Complaint, ¶¶ 43, 45). The Complaint contains no allegations that Directors Brinker nor McKiernan opposed the transaction.

The Complaint does allege that Director Hanauer, even though he voted in favor of the transaction, was actually opposed to it as evidenced by the fact that he voted his personal shares against the transaction. (Doc. 234, Complaint, ¶¶ 53, 55). The Complaint actually quotes from a deposition given by Mr. Hanauer (Doc. 234, Complaint, ¶ 55).[2] First, Hanauer testified that he did not believe the proxy materials contained any material misstatements or omissions:

---

[2] Plaintiffs use "selected" portions of Hanauer's testimony, as well as other witnesses. Defendants would urge the Court to review the deposition testimony of Hanauer in its entirety so that it can understand the context of the selected statements. The Sixth Circuit has held that documents attached to a Motion to Dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to plaintiff's claim. *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999); *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88-89 (6th Cir.1997). A complete copy of the Hanauer deposition is found at Doc. 9, tab 10 of the Appendix of exhibits.

6

> **Q: (Plaintiffs' Attorney Brautigam)**: Do you think that there are any material facts in this document that are omitted?
> **Hanauer:** No.
> **Q:** Do you think that there are any material facts in this document that are misstated?
> **Hanauer:** No.

Hanauer Dep. 274.

Second, when asked if he thought the merger was a good transaction, Hanauer responded:

> In [the special meeting], when it was asked, is this – I believe the question was is this a good transaction, is it a good transaction I have to answer yes. Is it a transaction that Ken Hanauer would have gone out and sought, no, but that wasn't the question that I was asked. I wasn't ready to retire at fifty.

Hanauer Dep. p.118. Hanauer went on to testify that he kept his "personal feelings" out of the transaction and that if he had opposed the transaction he would have breached his "fiduciary responsibility to the shareholders." (Hanauer Dep. pp.118-119; 128-133).

Finally, Hanauer testified that the OHSL Board had unanimously voted to recommend the transaction. He explained that McKiernan, who was out of the country at the time of the vote, was extremely pro-merger, and that Brinker, as Chairman of the Board, was not required to vote unless there was a tie and often did not vote. Moreover, Hanauer testified that when Brinker called for a vote of the OHSL Board of the transaction, there were no "nays" and that Brinker, as the presiding director, declared the vote unanimous at the time. (Hanauer Dep. pp. 743-59). Also, Clifford Roe testified that the Board, later in August 1999, unanimously adopted and approved the resolutions passed at the August 2, 1999 meetings. (Roe Dep. pp. 72-73; 272-74).

Plaintiffs' other alleged material misrepresentation relates to the resignation

of Director, Thomas Herron, allegedly in protest over the merger and the failure to disclose that fact to the shareholders. (Doc. 234, Complaint, ¶119). Herron's written resignation says nothing regarding his alleged opposition to the transaction, but simply indicates he is resigning as a director due to the demands of his business. (Doc. 55; Herron Dep. EX 3). (Copy attached). Roe testified that Herron told the Board that business demands interfered with his service on the Board. (Roe Dep. pp. 54; 62). The Complaint goes on to allege that Mr. Herron's name was deliberately omitted from a table of the directors set forth in the proxy materials, because the table used the date of July 31, 1999, one day after the effective date of the resignation of Director Herron. That table listed security ownership of "certain beneficial owners and management." Had the proxy materials used an earlier date, which would have included Mr. Herron in that table, then Plaintiffs no doubt, would have alleged that the proxy statement was misleading for suggesting that Mr. Herron was still a director. Such a table also would have been misleading because the merger agreement was not approved by the Board of Directors until August 2, 1999, several days after Herron resigned. Accordingly, his inclusion in the table would have suggested to shareholders that he had voted in favor of it.[3]

Section 10(b) aims to prescribe "knowing or intentional misconduct." *In re Comshares, Inc. Securities Litigation,* F.3d at 548 citing *Ernst and Ernst v. Hochfelder*, 425 U.S.185, 193. "It is clear that some form of fraudulent intent is required." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 548 (6th Cir.2001).

---

[3] The proxy materials did not list Tom Herron as an OHSL Director at the time of the issuance thereof. All OHSL shareholders could determine that Herron had recently resigned his Board membership by comparing the Director list published in the proxy materials with the Director list published in OHSL's 1999 10k Annual Report, published a few months earlier. (Doc. 234, Complaint Proxy Materials, Ex. B, p. 63; OHSL 1999 10k, pp. 37-38, Doc. 9, App. of Exhibits, tab 9.)

8

10b-5 claims must satisfy both the requirements of Rule 9(b) of the Federal Rules of Civil Procedure, requiring plaintiff to state "the circumstances constituting fraud or mistake... with particularity", <u>and</u> the Private Securities Litigation Reform Act (PSLRA) requiring a complaint "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *In re Comshare, Inc. Securities Litigation*, 183 F.3d at 548. 15 U.S.C. §78u-4(b)(2) (1998).

While the PSLRA did not disturb the substantive law of scienter, or "required state of mind" for securities fraud actions, "... the PSLRA requires a plaintiff, in essence, to plead facts giving rise to a 'strong inference' of scienter." *Id*. at 549.

In discussing the requirement that allegations of the Complaint give rise to a "strong inference of false or misleading statements" combined with the required state of mind or scienter, the Sixth Circuit in *Miller v. Champion Enterprises, Inc.*, 346 F.3d 660, 676 stated:

> Under the PSLRA and our prior case law, these allegations must give rise to strong inference - **the most probable of competing inferences** - that the defendants made false or misleading statements with the required state of mind. (Emphasis supplied).

The Sixth Circuit has stated that : "While under Rule 12 (b)(6), all inferences must be drawn in plaintiff's favor, inferences of scienter do not survive if they are merely reasonable..." and to survive they must be "both reasonable and 'strong' inferences". *Helwig v. Vencor, Inc.,* 251 F.3d at 551 quoting *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir.1999). When viewed in light of the Sixth Circuit's pleading requirements for 10b-5 actions, the Complaint is woefully inadequate and fails to state a claim upon

which relief can be granted.

Plaintiffs' 10b-5 claim contains nothing more than conclusory allegations as to the Dinsmore Defendants. In fact, paragraphs 146 and 147 simply refer to "all defendants". Those paragraphs contain no specific allegations of the required elements of a 10b-5 claim as to the Dinsmore Defendants, including a complete lack of factual allegations sufficient to support a claim of scienter.

Paragraph 148 refers to the other defendants. Paragraph 149 of the 10b-5 claim mentions the Dinsmore Defendants along with the other law firm defendants. That paragraph alleges that the Dinsmore Defendants "benefitted from the misrepresentations and omissions in the proxy materials/registration statement, because they earned substantial legal fees from PFGI's purchase of OHSL for the authorization of the operative documents and its usage in the acquisition by Provident." The Sixth Circuit has stated clearly that "evidence of a defendant's motive and opportunity to commit securities fraud does not constitute "scienter" for the purposes of Section 10(b) a Rule 10b-5 liability." *In re Comshare, Inc. Securities Litigation*, 183 F.3d at 551. The Court went on to state:

> ... [T]he bare pleading of motive and opportunity does not, standing alone, constitute the pleading of a strong inference of scienter. Thus, under a plain interpretation of the PSLRA as informed by well-settled law on the contour of the "scienter" requirement, we hold that plaintiffs may meet PSLRA pleading requirements by alleging facts that give rise to a strong inference of reckless behavior but not by alleging facts that illustrate nothing more than the defendant's motive and opportunity to commit fraud.

183 F.3d at 551. The allegations that the prospect of earning legal fees from the merger provide a motive for fraud is absurd. The Dinsmore Defendants were to be paid for their services, regardless of the consummation of the merger and they stood to lose a valuable

client because of the merger.

With reference to the requisite mental state or scienter, the Sixth Circuit stated:

> As noted above, the Supreme Court has defined "scienter" as a "mental state embracing intent to deceive, manipulate or defraud. ... In *Hochfelder*, the Court rejected the notion that negligent conduct could give rise to liability under section 10(b) or under Rule 10b-5.

*In re Comshare, Inc. Securities Litigation,* 183 F.3d at 550.  The Sixth Circuit went on to note that while "recklessness" ("a mental state apart from negligence and akin to conscience disregard") may satisfy the scienter requirement, the formulation of "recklessness" is "stringent" and is not a form of negligence.  183 F.3d at 550. Recklessness has been interpreted by the Sixth Circuit to mean "highly unreasonable conduct, which is an extreme departure from the standards of ordinary care.  While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it."  *Bovee v. Coopers and Lybrand,* 211 F.Supp.2nd 985, 988 (S.D. Ohio 2002).

It is clear from the factual allegations surrounding the Board's actions leading up to the vote on the merger and Mr. Herron's resignation, that the statements in the proxy materials were neither misleading nor material.  These allegations could not give rise to a "strong inference" that the Dinsmore Defendants acted with a mental state "embracing intent to deceive, manipulate or defraud."  Moreover, even if Plaintiffs can argue that there are competing inferences from these facts, Plaintiffs must be able to plead facts that show that Plaintiffs' inference is "the most probable of competing inferences."  *Miller v. Champion Enterprises, Inc.*, 346 F.3d at 676.

Although under Rule 12(b)(6), all inferences are to be drawn in Plaintiffs' favor, "inferences of scienter do not survive if they are merely reasonable." *Helwig v. Vencor*, 251 F.3d 540, 551 (6th Cir.2001). Inferences of scienter survive a motion to dismiss only they are both reasonable and "strong" inferences. *Id*.

The facts as pled in the Complaint demonstrate that the Board of Directors, indeed, had unanimously approved the merger and that the resignation of Herron as a director was easily determinable by any shareholder in public corporate documents. Even giving Plaintiffs the benefit of doubt as to competing inferences, the facts pled in the Complaint would lead a reasonably prudent lawyer to conclude that the information was neither misleading or material. Further, as the Sixth Circuit has noted, it is not a question of "reasonableness" or "negligence", but a question of intent to deceive or "highly unreasonable conduct, which is an extreme departure from the standards of ordinary care."

For these reasons, Plaintiffs' 10b-5 claim fails to state a claim upon relief can be granted as to the Dinsmore Defendants.

### The 10b-5 Claim Against Defendant, Charles Hertlein is Untimely.

No claims were asserted against Charles Hertlein, nor any of the Dinsmore Defendants in the State Court Action referred to in the Complaint. The state court action was dismissed in August 2000. No such claim was ever asserted against Mr. Hertlein in this case until the proposed first amended complaint was tendered on February 4, 2002. That complaint was never ordered filed by leave of the Court.

It is clear that this amendment is barred by the governing statute of limitations. An action under Section 10(b) and Rule 10b-5 must be commenced within one year after the discovery of the facts constituting the violation <u>and</u> within three years after

such violation. See, *New England Healthcare Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495 (6th Cir.2003).

The Sixth Circuit held the one year limitation period applicable to securities fraud claims begins to run when a plaintiff should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud. *New England Healthcare Employees Pension Fund, supra.* The Court described this as "inquiry notice" being sufficient to trigger the one year limitations period for securities fraud actions brought under Section 10(b).[4]

In the instant case, Thiemann clearly was put on inquiry notice of the alleged facts giving rise to his purported Rule 10b-5 claim against Mr. Hertlein as early as November of 1999, when Plaintiffs' counsel, then representing Janet Nolte and a purported class of OHSL shareholders, sought an injunction in the State Court Action. Further, Plaintiffs Thiemann named Dinsmore and Shohl and Clifford Roe as Defendants when he initially commenced this action in September 2000. Even using this later date, Plaintiffs waited until February 4, 2002 to make his first attempt to add Mr. Hertlein. Even using this later date, Plaintiffs' claim against Mr. Hertlein is barred by the statute of limitations. The 10b-5 claim against Mr. Hertlein clearly is barred by the applicable statute of limitations.

### (D)   Counts VII and VIII - Ohio Securities Law Claims

The Complaint asserts claims under O.R.C. §1707.41 (civil liability of seller for fraud) and O.R.C. §1707.43 (remedies of purchaser in unlawful sale).

---

[4] The district courts from this Circuit that have addressed the issue also agree that inquiry notice is sufficient to begin the running of the Rule 10b-5 statute of limitations. See, *e.g. Havenick,* 981 F.Supp. at 513-14; *Picard Chemical, Inc. Profit Sharing Plan v. Perrigo Company,* 940 F. Supp.1101, 1118 (W.D. Mich. 1996).

O.R.C. §1707.41 imposes civil liability on a "seller" of a security who uses a written prospectus or circular to offer any security for sale. A fair reading of that statute indicates that it applies only to sellers of securities. O.R.C. §1707.43 is a remedy statute which permits a purchaser to rescind a sale made in violation of Chapter 1707.

The Complaint as to the Dinsmore Defendants fails to state a claim by virtue of O.R.C. §1707.431 which provides in pertinent part as follows:

> For purposes of this section, the following persons shall not be deemed to have effected, participated in, or aided the seller in any way in making, a sale or contract of sale in violation of sections 1707.01 to 1707.45 of the Revised Code:
> (A) Any attorney, accountant or engineer whose performance is incidental to the practice of the person's profession; ...

It has been observed that this section is simply a codification of prior Ohio case law holding that an attorney who merely prepares legal documents involved in the sale is not considered a "seller" or "participant". See, *Riedel v. Acutote of Colorado*, 773 F.Supp.1055 (S.D. Ohio 1991) (an attorney providing professional services is not liable under section 1707.43), citing *In re Bell and Beckwith v. Liberty Airlines, Inc.* 89 BR 632, 645 (Bankr. N.D. Ohio 1988). For the Ohio case law referred to as being codified in O.R.C. §1707.431; see, *Hild v. Woodcrest Association*, 59 Ohio Misc.13, 391 N.E.2d 1047 (Montgomery Common Pleas 1977) and *Leeth v. Decorators Manufacturing, Inc.*, 67 Ohio App.2nd 29, 425 N.E.2d 920 (1979). See, also, *Baker v. Conlan* (1990), 66 Ohio App.3d 454, 462, 585 N.E.2d 543 (to be held liable for involvement in the preparation of a prospectus one's involvement must exceed "that of accountants and lawyers who have merely provided professional services while assisting in the preparation of a prospectus.")

Counts VII and VII of the Complaint against the Dinsmore Defendants fail to

state a claim upon which relief can be granted and should be dismissed.

### (E) Count IX - Plaintiffs' Spoilation Claim is Factually and Legally Insufficient

The Complaint contends that Co-Defendants Hanauer, Brinker and Zoellner, (OHSL Directors) destroyed documents relevant to the lawsuit after litigation was originally commenced in state court on November 18, 1999. (Complaint, ¶¶ 173-177).

The Complaint alleges that the Dinsmore Defendants "had a clear legal duty to instruct its clients not to destroy relevant documents." (Complaint, ¶ 177). The Complaint contains no allegation that the Dinsmore Defendants instructed Co-Defendants to destroy any documents, relevant or otherwise.

Regardless of the merits of this claim, it is undisputed that these facts came to light during the depositions of Brinker and Hanauer in March and April 2000, during the pendency of the State Court Action. Plaintiffs now rely on the testimony from those state court depositions to support his new spoilation claim in this action, which was filed *after* the State Court Action was dismissed. Under Ohio law, Thiemann is precluded from bringing a claim for spoliation in this case based on testimony and activities that occurred during the State Court Action.

In *Davis v. Wal-Mart Stores, Inc.*, the Ohio Supreme Court ruled that claims for spoilation may not be brought after conclusion of the action during which the alleged spoilation occurred *unless evidence of the alleged spoliation was not discovered until after the conclusion of the primary action*. 93 Ohio St.3d 488, syllabus (Ohio 2001). Here, the testimony giving rise to Thiemann's new spoilation claim against Brinker, Hanauer and Zoellner occurred in the State Court Action.

Brinker was deposed on April 11 and 12, 2000. During that deposition, Brinker testified that, before the merger (and the filing of the State Court Action), he periodically destroyed his own copies of unspecified OHSL-related documents that he had at home to avoid "piling papers [ ...] sitting around". (Brinker Dep. 37).[5] Brinker also acknowledged that soon after the December 3, 1999 merger closing, he shredded some of his copies of OHSL documents because he believed that he would have no need for them in the future since OHSL had been merged into Provident. (*Id.* at 37-42). Also during the pendency of the State Court Action, Hanauer testified that he got rid of some OHSL documents shortly after Brautigam had filed the State Court Complaint. (Hanauer Dep. 690, App. Tab 10, p. 69). Significantly, however, OHSL and the other OHSL Directors did produce numerous copies of OHSL documents in the State Court Action, and there is not, nor has there ever been, any indication that the destroyed documents were anything other than irrelevant materials or duplicate copies of documents already produced by OHSL or other OHSL Directors.

Plaintiffs' counsel was aware of the facts giving rise to his new spoliation claim well before dismissal of the State Court Action on August 10, 2000. Yet, Plaintiffs never raised it in that case or even in this case when it first was filed. Indeed, after the State Court Action voluntarily was dismissed, the OHSL Directors were free to dispose of whatever they wished. Thiemann therefore, cannot raise the spoliation claim now in an entirely different case. See, *Davis v. Wal-Mart Stores, Inc.*, 2000 WL 504114, *4 (Ohio

---

[5] Brinker testified that he only got rid of documents which he did not believe were relevant to the lawsuit. (Brinker Dep. 37-42). The import of Brinker's testimony is that he got rid of the documents because they were duplicative of documents already produced and/or were irrelevant. The relevant excerpt from Brinker's deposition is set forth in the Appendix.

16

App. 8 Dist. April 27, 2000) (Citing *Williamson v. Rodenberg*, 1997 WL 360840, *4 (Ohio App.10 Dist. June 30, 1997) (attached) (where a party claiming spoliation learns of destroyed evidence prior to the conclusion of the action and the new claim of spoliation shows the same common nucleus of facts as in the original case – the party claiming spoliation cannot raise such claims in a later action.))

Plaintiffs' spoliation claim fails to state a claim upon relief can be granted and should be dismissed.

**(F)** **Count X - Plaintiffs' Claim for Common Law Fraud is Factually and Legally Insufficient**

In Ohio, the elements of fraud are as follows: (1) an actual or implied representation of a matter-of-fact; (2) which relates to the present or past; (3) which was material to the transactions; (4) was false when made; (5) statement must be made with knowledge of its falsity or with reckless disregard for whether it is true or not; (6) statement was made with the intent to mislead the other party and/or relying on it; (7) the other party was ignorant of the fact averred; (8) the other party justifiably relied on the statement; and (9) the party was injured by virtue of its justifiable reliance. *Moore v. Fenex, Inc.*, 809 F.2d 297, 301 (6th Cir.1987).

For the reasons set forth above pertaining to Plaintiffs' 10b-5 claim and in light of the testimony of the previously certified class representative Walter Thiemann that he was not defrauded by the Dinsmore Defendants (Thiemann Dep. pp. 79-81), Plaintiffs' claim for common law fraud likewise fails to state a claim upon relief can be granted.[6]

---

[6] The previously certified class representative, Walter Thiemann, was not defrauded by the Dinsmore Defendants (Thiemann Dep. 79-81).

**The Fraud Claim against Defendant, Charles Hertlein is Untimely.**

The transaction at issue was approved by the shareholders at a meeting on October 25, 1999. (Doc. 234, Complaint, ¶¶ 60-62). As alleged in the Complaint, OHSL shareholders brought an action in the Hamilton County Court of Common Pleas in an attempt to enjoin the closing of the merger scheduled for December 3, 1999. That request for relief was denied at a hearing on November 24, 1999. (Doc. 234, Complaint, ¶¶ 83-84.

Plaintiffs' Amended and Consolidated Class Action Complaint was filed on December 31, 2003. This is beyond the four-year statute of limitations for common law fraud actions under Ohio law. O.R.C. §2305.09.

For these reasons Plaintiffs' claims for common law fraud should be dismissed pursuant to Rule 12(b)(6).

**(G)   The Court Should Strike the "Introduction" of the Complaint.**

Plaintiffs' Complaint contains a five page introduction resembling an introductory summary to an argument in a brief. None of the "allegations" of the Introduction are numbered.

Rule 12(f) provides that "... [T]he Court may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter."

Rule 8(a)(2) requires that a claim for relief be "a short and plain statement of the claim showing that the pleader is entitled to relief, ..." Rule 8(e)(1) requires that each allegation of a pleading "... shall be simple, concise and direct." Unless a plaintiff follows these Rules, a defendant is unable to comply with the requirements of Rule 8(b) regarding defenses and forms of denial.

To the extent that the Introduction contains any factual allegations, the

18

Plaintiffs should be required to separately state those allegations so that Defendants can properly respond.

For these reasons, the Dinsmore Defendants request this Court either strike the allegations of the Introduction to the Complaint or order the Plaintiffs to file an amended complaint, which conforms to the requirements of Rule 8 of the Federal Rules of Civil Procedure.

## VI.    Conclusion

For the reasons set forth above, Plaintiffs' validated an amended class action complaint (Doc. 234) should be dismissed in its entirety as to the Defendants, Dinsmore and Shohl, LLP, Clifford Roe and Charles Hertlein.

Respectfully submitted:

S/ Michael E. Maundrell
Michael E. Maundrell (0027110)
John W. Hust (0027121)
Attorneys for Defendants,
Dinsmore & Shohl LLP, Clifford Roe and
Charles Hertlein
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, OH 45249
(513) 583-4200
(513) 583-4203
mmaundrell@schroederlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Daniel J. Donnellon, Rachel A. Rowe, Jamie Ramsey and James E. Burke, Attorneys for Defendants, OHSL Financial Corp., Provident Financial Group, Inc. and Keating, Muething & Klekamp, 1400 Provident Tower, One East Fourth Street, Cincinnati, OH 45202; Michael R. Barrett, Attorney for KEATING, MUETHING & KLEKAMP, P.L.L. and Mark Weiss, 105 East Fourth Street, Suite 500, Cincinnati, Ohio 45202-4015; John B. Pinney and J. Michael Debbeler, Attorneys for Defendants Oak Hills and Provident, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202; James E. Gauch, and **I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:** Gene Mesh and Michael G. Brautigam, Attorneys for Plaintiffs, 2605 Burnet Avenue, Cincinnati, Ohio 45219-2502; Melissa D. Star and Stephen J. Brogan, Attorneys for Ernst & Young, 51 Louisiana Avenue, N.W., Washington, D.C., 20001-2113.

                                                    S/ Michael E. Maundrell
                                                    Michael E. Maundrell

JW H:dlt
#7049-8