37

1  from the company, I had no reason to keep them.
2  I've read the suit and such and had that paper,
3  but when it finally started coming to Court, I
4  just destroyed everything.
5      Q.  When it finally started coming to
6  Court, you just destroyed everything --
7      A.  Well, after.
8      Q.  -- is that your testimony?
9      A.  That would have been after
10 December the 3rd.
11     Q.  So if I understand this correctly,
12 you destroyed all of the documents in your
13 possession related to Oak Hills after December
14 3rd, 1999, correct?
15         MR. BURKE:  Objection.  Calls for
16 speculation.  You may answer.
17     A.  Actually some before and some
18 after, yes.
19     Q.  Okay.
20     A.  All of them.
21     Q.  Why did you do this?
22     A.  Because there was too much -- I
23 mean, you know, in a home you don't keep piling
24 papers up and I didn't care to have all that
25 stuff sitting around.

LITIGATION SUPPORT SERVICES, INC.
CINCINNATI (513)241-5605 * DAYTON (937)224-1990

38

```
 1        Q.   Okay.
 2        A.   Since we were not a company
 3   anymore and I was not in there, I didn't think
 4   it bothered me at all.
 5        Q.   How did you destroy these
 6   documents?
 7        A.   Through the shredder.
 8        Q.   Did that take a long time?
 9        A.   Well, certainly, but I was doing
10   some from the company before that time, so --
11        Q.   Okay.  Let me direct your
12   attention to 1999.  When did you first start
13   destroying documents related to Oak Hills?
14             MR. BURKE:  And let me mention or
15   caution you, Norb, make sure you're testifying
16   from actual recollection as opposed to
17   assumptions.  He's asking you as to what
18   occurred in December 1999.
19             MR. BRAUTIGAM:  Actually I'm not,
20   Jim.  We don't need your speaking objections.
21   We don't need your instructions.  We don't need
22   your misstating my questions.  Have it read
23   back, please.
24             MR. BURKE:  Mr. Brautigam, please
25   control yourself.  Please control yourself and
```

                                                        39

1    act like a professional.
2            (Record read by Reporter.)
3       A.   Well, it would have been in
4    December of '99, I guess after the closing.
5       Q.   Well, a moment ago you said some
6    before and some after.
7       A.   Well, I was talking about papers
8    of the Oak Hills Savings and Loan, which I was
9    connected with, and part of before the thing.
10   Our company papers, and I destroyed all of
11   them. I had no reason to have them.
12      Q.   I'm interested in that as well.
13   When did you first start destroying documents
14   in 1999, related to Oak Hills in any way?
15      A.   Well, I would say I really can't
16   recollect the exact time.
17      Q.   Okay. Was it --
18      A.   But it was --
19      Q.   -- in the winter?
20           MR. BURKE: Objection. Asked and
21   answered. You may answer if you know.
22      A.   I really can't pinpoint a time. I
23   just know I started getting rid of papers
24   because they were piling up too much and -- and
25   it was Oak Hills papers, which I knew we

40

```
 1    wouldn't -- if the thing had gone through, I
 2    destroyed what I didn't -- wouldn't need.
 3            Q.   Okay.  How did you determine what
 4    you would need and what you wouldn't need?
 5            A.   Well, I'm talking about basically
 6    with -- the company records was like some
 7    copies of Board meetings and all of Oak Hills
 8    stuff, and I didn't figure I would have any
 9    need of them, whether this sale went through or
10    not.
11            Q.   Is there any way you can pinpoint
12    with greater specificity, when you started
13    destroying documents in 1999?
14            MR. BURKE:  Objection.  Asked and
15    answered.  You may answer again.
16            A.   As I said, I can't remember the
17    exact date, but it was -- I started on the Oak
18    Hills papers, gosh, I don't know, probably
19    earlier in 1999, because I had no reason to --
20    for the papers that I had, to keep for any
21    reason.
22            Q.   And what papers specifically are
23    we talking about?
24            A.   Reports from management to the
25    Board, copies of Board meetings, which I didn't
```

1   feel I needed, and all reports from different
2   committees.
3       Q.  And all of these documents were
4   shredded, correct?
5       A.  Um-hmm.
6       Q.  Yes?
7       A.  Yes, sir.
8       Q.  And you personally did the
9   shredding, correct?
10      A.  Yes, sir.
11      Q.  Why did you shred these documents?
12      A.  Because I didn't want to throw
13  them out as they were, just tear them up and
14  have the papers end up in a dump where they
15  would be whole. I shredded them so that they
16  couldn't be seen by anybody.
17      Q.  Please describe, for the record,
18  what your home office looked like where you did
19  your Oak Hills business.
20      A.  At home?
21      Q.  Yes.
22      A.  It was in our -- I live in a
23  condominium. We have living quarters on the
24  top and we have a big room downstairs, which I
25  had a desk and I did the work down there.

LITIGATION SUPPORT SERVICES, INC.
CINCINNATI (513)241-5605 * DAYTON (937)224-1990

42

1  Q.  And did you have these Oak Hills
2  related documents in file cabinets or in boxes?
3  Please describe to me how you had these
4  documents.
5  A.  Well, actually the biggest part of
6  them, or a big part of them were being piled up
7  on the desk.  And some of them were in books
8  that were -- would relate to one particular
9  thing, you know.
10 Q.  And during 1999, you maintained
11 books and records related to the proposed
12 merger with Provident or other potential
13 acquirers at your home, correct?
14 A.  You say books.  Yes, the book I
15 had was all of the resolutions and such that
16 had to be made and we had to have on record at
17 Oak Hills.
18 Q.  Now, during 1999, did you take
19 notes at Board meetings and committee meetings
20 and things like that?
21 A.  I didn't take notes, I just
22 conducted the meetings.  And I was always given
23 a copy of the meetings from our president, who
24 conducted -- who took his notes and really
25 conducted the business of the meeting, because

Thomas M. Herron

5512 Northglen Road
Cincinnati, Ohio 45248

July 27, 1999

Mr. Norbert G. Brinker, Chairman
Board of Directors
OHSL Financial Corp.
Oak Hills Savings & Loan Company, F.A.

Dear Norb:

Due to increasing responsibilities and time commitments with Michelman, Inc., I hereby tender my resignation as a member of the Board of Directors of OHSL Financial Corp. and of Oak Hills Savings & Loan Company, F.A., effective July 30, 1999.

I sincerely regret that I will not have the amount of time available that is required for the review and analysis of pertinent materials and issues, nor for meeting attendance called for as a member of those Boards.

The last seven years of contact with you, the other Board members, the Management Team and the staff of the organization have been exceptional for my professional and personal fulfillment. I will always be grateful for the opportunity that you and my fellow Board members provided for me over that time, as we saw the organization grow and prosper.

Please note that I do not intend to exercise the stock options available to me under the current plan.

I wish to express my sincere thanks to you and all of those who made this such a worthwhile and rewarding experience.

With best personal regards,

*[signature]*

Thomas M. Herron
5512 Northglen Road
Cincinnati, Ohio 45248

CONFIDENTIAL

K1945


EXHIBIT
Herron 3

Not Reported in N.E.2d  
(Cite as: 2000 WL 504114 (Ohio App. 8 Dist.))

Page 1

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eighth District, Cuyahoga County.

Bernadine DAVIS, Executrix, etc., Plaintiff-appellant  
v.  
WAL-MART STORES, INC., et al., Defendants-appellees

No. 75224.

April 27, 2000.

Character of Proceeding: Civil appeal from Common Pleas Court Case No. CV-327712. Reversed and Remanded.

William Martin Greene, Esq., Jean M. McQuillan, Esq., Brian N. Eisen, Esq., Greene & McQuillan Co., L.P.A., Cleveland, for plaintiff-appellant.

Clifford C. Masch, Esq., Roy A. Hulme, Esq., Reminger & Reminger Co., L.P.A., Cleveland, for defendants-appellees.

JOURNAL ENTRY AND OPINION

KARPINSKI, J.

*1 Plaintiff-appellant Bernadine Davis, executrix of the estate of Thomas Davis and representative of his next of kin, appeals from an order of the trial court granting summary judgment against her in her second action against defendant-appellee Wal-Mart Stores, Inc. dba Sam's Club ("Wal-Mart"). The trial court found that this action for spoliation of evidence against Wal-Mart and one of its employees was barred by *res judicata*.

In 1992, plaintiff filed against Wal-Mart and others an intentional tort wrongful death and survivor action after her husband Thomas was killed while operating a forklift at a loading dock at one of its facilities. *Bernadine Davis, extrx. etc. v. Sam's Club dba Wal-Mart Stores, Inc* Case No. CV-243067. On September 10, 1992, a produce truck the decedent was unloading for a lessee of space in its facility pulled away from the dock prematurely and the forklift he was driving fell off the dock and landed on top of him.

Plaintiff hired a private investigator, who obtained outside of the discovery process a one-page memorandum which referred to premature pull-away incidents. This document, referred to as Exhibit A, was created on January 23, 1992, approximately eight months before the incident. The memorandum adopted a policy of requiring truck drivers to surrender the keys until the vehicle was completely unloaded--a policy apparently not followed with the lessee's produce truck in this instance.

During the course of discovery in the intentional tort case, plaintiff specifically requested Wal-Mart produce information relating to loading dock incidents. Neither the Exhibit A memorandum nor any other documents were produced. Because plaintiff had independently obtained the Exhibit A document, however, her counsel conducted discovery during depositions and questioned Wal-Mart employees concerning the memorandum and any prior incidents.

Plaintiff sought to settle her claims before trial. She sought $250,000 to settle the claims against Wal-Mart, but Wal-Mart declined, instead offering $150,000. She ultimately settled her claims against the remaining co-defendant and dismissed the survivor claim against Wal-Mart. During the course of trial on the wrongful death claim against Wal-Mart, counsel for plaintiff referred to the fact that Wal-Mart had not produced the Exhibit A memorandum regarding the pull-away incidents.

The jury returned a general verdict against Wal-Mart. The jurors completed an interrogatory specifying that Wal-Mart committed an intentional tort because the workplace injury to plaintiff's decedent was substantially certain to occur. The jurors completed another interrogatory naming four specific acts which constituted the intentional tort. The jury awarded $2,000,000 in damages and the trial court subsequently entered judgment on the verdict.

Plaintiff also sought prejudgment interest on the damage award. During the course of discovery, plaintiff obtained a Wal-Mart legal team diary that

Not Reported in N.E.2d
(Cite as: 2000 WL 504114, *1 (Ohio App. 8 Dist.))

Page 2

referred to reports of premature pull-away incidents underlying the Exhibit A policy memorandum which had not been produced during discovery in the intentional tort wrongful death case. Following a hearing, the trial court awarded prejudgment interest.

*2 The trial court found that Wal-Mart failed to make a good faith effort to resolve the case whereas plaintiff had not. The trial court specifically found that Wal-Mart did not fully cooperate in discovery and did not rationally evaluate its legal risks and potential liability. The trial court also found that testimony of Wal-Mart witnesses during the prejudgment interest hearing conflicted with their deposition testimony.

This court affirmed the jury verdict and award of prejudgment interest in *Bernadine Davis, extrx. Etc. v. Sam's Club, dba Wal-Mart Stores, Inc* (Sept. 12, 1996), Cuyahoga App. Nos. 69647 and 70284, unreported. The Ohio Supreme Court denied further review. *Davis v. Sam's Clu* (1997), 77 Ohio St.3d 1526. Wal-Mart thereafter satisfied the judgment against it in the intentional tort wrongful death case.

Approximately one week thereafter, plaintiff filed the complaint in the case at bar against Wal-Mart and David Begnini, its loading dock manager, for spoliation of evidence. Plaintiff alleges *inter alia*, that she discovered during the post-trial proceedings for prejudgment interest that several employees of Wal-Mart provided false or misleading testimony during their depositions in the intentional tort case. She further alleged that she dismissed her survivor claim, which would have permitted her to seek additional compensatory and/or punitive damages, because of the false testimony and defendant Wal-Mart's failure to provide complete discovery.

During the course of discovery in the case at bar, plaintiff states that she obtained for the first time additional deposition testimony and exhibits regarding Wal-Mart employee injury claims recorded in loss prevention memoranda that were not disclosed in the prior intentional tort case. She maintains that Wal-Mart still has not provided notes of prior incidents referred to in the Exhibit A memorandum and legal team diary. Defendants argue that Wal-Mart produced all responsive information and that it did not improperly conceal or destroy any information.

Defendants Wal-Mart and Begnini filed a joint motion for summary judgment. Their motion argued, *inter alia* that plaintiff's claim for tortious interference with evidence against them was barred by *res judicat* [FN1] Specifically, the motion argued that this claim arose from the same transaction as the intentional tort case.

> FN1. Defendants' motion also argued that no civil liability exists for perjury and that plaintiff did not present *prima fa* case for spoliation of evidence because she presented no evidence of a wilful destruction of evidence, no evidence of disruption to her intentional tort case, and no evidence of damages. Defendants do not assert these arguments on appeal, however, and the trial court did not address them. On remand, the trial court should address these arguments in the first instance. See *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359-360.

Plaintiff filed a brief in opposition to summary judgment, and defendants filed a reply brief in support of summary judgment. Granting defendants' motion for summary judgment, the trial court stated as follows:

> Deft's *sic* ] motion for summary judgment is granted. The doctrine of res judicata bars the pltf's claim for tortious interference with evidence.

Plaintiff timely appeals raising the following sole assignment of error:
> BECAUSE THE DOCTRINE OF *RES JUDICATA* DOES NOT AND SHOULD NOT BAR THIS LAWSUIT, AND BECAUSE THERE REMAIN GENUINE ISSUES OF MATERIAL FACT, THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.

*3 This assignment is well taken.

Plaintiff argues the trial court improperly granted summary judgment by finding that her claim for spoliation of evidence was barred *res judicata*. Under the circumstances, we agree.

The standard for granting summary judgment is well settled. Summary judgment shall not be granted unless, after viewing the evidence in the light most favorable to the non-moving party, the record shows there is no genuine issue as to any material fact, reasonable minds can reach but one conclusion, and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C *Vahilla v. Ha* (1997), 77 Ohio St.3d 421.

Not Reported in N.E.2d
(Cite as: 2000 WL 504114, *3 (Ohio App. 8 Dist.))

Page 3

The Supreme Court reviewed a grant of summary judgment on the grounds of *res judicata* in *Ameigh v. Baycliffs Corp.* (1998), 81 Ohio St.3d 24. *Ameigh* involved three successive proceedings concerning a zoning permit to construct boat docks in a residential district. The *Ameigh* Court found that two prior administrative appeals regarding the zoning permit filed in the common pleas court did not constitute *res judicata* to bar a third action seeking a declaratory judgment that the zoning permit violated zoning laws.

Before reaching its conclusion, the *Ameigh* Court reviewed precisely what was determined in each prior action to determine whether the third action was barred. The common pleas court's limited holding in the first action was that the township trustees lacked authority to revoke a zoning permit unless the permit was issued upon a false statement. *Id.* at 250. The holding of the common pleas court in the second appeal was limited to its finding that the trustee's revocation of the permit on grounds that it was obtained through false statements was not adequately supported by the record *Id.* The *Ameigh* Court recognized that neither journal entry of the common pleas court in the prior proceedings discussed whether the proposed use of the land under the zoning permit would violate the zoning laws.

Because of the limited scope of the two prior actions, the *Ameigh* Court concluded that the third action, which sought a declaratory judgment that the zoning permit violated applicable zoning laws, was not barred by the judgment in either prior action. Before reaching its conclusion, the Court stated:
> Where the judgment of a court is not dispositive on issues which a party later seeks to litigate *res judicata* is not applicable. This is true even if the prior court decision has discussed the issues that are the subject of the current litigation.

*Id.* at 250-251 (citation omitted.) Accordingly, the Supreme Court reversed the judgment of the court of appeals which had held that the declaratory judgment action was barred by *res judicata*.

After viewing the record in the light most favorable to plaintiff, as we are required to do in the context of a motion for summary judgment, we find that the trial court improperly found that the claim for spoliation of evidence was barred by *res judicata* in the case at bar. Defendants insist to the contrary that the claim is barred, citing the syllabus *Grava v. Parkman* (1995), 73 Ohio St.3d 379, which provides in pertinent part as follows:
> *4 A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.

For *res judica* to apply under this theory, however, defendants' acts of allegedly concealing, destroying or intentionally interfering with evidence must arise from the same "transaction or occurrence" as that which lead to decedent's death in the intentional tort wrongful death action. We conclude from the record that the case at bar does not arise out of the same transaction or occurrence as the prior case.

The "occurrence" which triggered the intentional tort case was the decedent's death. The term "transaction" may be broader than "occurrence" and was defined in *Grava* to encompass events which arise from a "common nucleus of operative facts." *Id.* at 382. Concealing, destroying, misrepresenting, or intentionally interfering with evidence after a workplace death does not arise from a "common nucleus of operative facts" with those which arose before the death.

To recover on an intentional tort claim, the claimant must show that the employer disregarded a risk of injury or death to the employee that was substantially certain to occur. Nothing in the record shows that any other issue was raised or submitted to the jury in the intentional tort case.

Defendants have likewise not shown that a motion for prejudgment interest alleging a failure to make a good faith effort to settle an intentional tort case precludes subsequently raising a spoliation of evidence claim. This is particularly true, as in the case at bar, when alleged acts of concealing, destroying, misrepresenting, and/or intentionally interfering with evidence were not discovered until after the final judgment in the intentional tort litigation.

In *Dickens v. Bethlehem Baptist Churc* (Sept. 15, 1994), Cuyahoga App. No. 65740, unreported, this court envisioned a case like the one at bar. The *Dickens* court recognized that when a defendant's fraudulent representations conceal the basis for the second cause of action until after judgment in the first action, the second action is not barred by principles of *res judicata*. *Id.* at p. 2 (citing *Jackson*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in N.E.2d
(Cite as: 2000 WL 504114, *4 (Ohio App. 8 Dist.))

Page 4

*v. Lou Cohen, Inc.* (1992), 84 Ohio App.3d 693.)

Precisely because of the difference in the sequence of events, this case is distinguishable from *Williamson v. Rodenberg* (June 30, 1997), Franklin App. No. 96APE10-1395, unreported, upon which defendants rely. Th *Williamson* court specifically recognized that plaintiff discovered the basis for her spoliation claim asserted in the second action before the judgment in the first cas *Id.* at p. 2. In fact, plaintiff had already unsuccessfully argued during her prior age discrimination trial that the notes, which formed the basis for her subsequent spoliation claim, were destroyed to hide the fact that the interview process was used to discriminate based on age.

*5 The *Williamson* court stated as follows:
> This court holds that, in light of the fact that plaintiff learned of the destroyed evidence before the trial started and the claim of spoliation shares the same common nucleus of facts as the age discrimination case, plaintiff could have brought her claim for spoliation of evidence in the previous action.
> *Id.* at p. 3. U: *Williamson,* however, as discussed above, the record in the case at bar does not show that plaintiff learned of the spoliated evidence before the intentional tort trial started or that her claim of spoliation shares a common nucleus of operative facts with the intentional tort case.

Accordingly, plaintiff's sole assignment of error is sustained.

Judgment reversed and case remanded for further proceedings.

This cause is reversed and remanded.

It is, therefore, ordered that appellant recover of appellees her costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

ANN DYKE, P.J., and MICHAEL J. CORRIGAN, J., concur.

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).

2000 WL 504114 (Ohio App. 8 Dist.)

END OF DOCUMENT

Not Reported in N.E.2d  Page 1
(Cite as: 1997 WL 360840 (Ohio App. 10 Dist.))

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Tenth District, Franklin County.

Susan WILLIAMSON, Plaintiff-Appellant,
v.
William RODENBERG, Gary Liedel, Michael O'Sullivan, The Ohio Bell Telephone Company and Ameritech Services, Inc., Defendants-Appellees.

No. 96APE10-1395.

June 30, 1997.

APPEAL from the Franklin County Court of Common Pleas.

Law Offices of Russell A. Kelm, Russell A. Kelm and Joanne F. Weber, for appellant.

Porter, Wright, Morris & Arthur, and Bradd N. Siegel, for appellees.

PETREE, J.

*1 Plaintiff, Susan Williamson, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendants, William Rodenberg, Gary Liedel, Michael O'Sullivan, The Ohio Bell Telephone Company, and Ameritech Services, Inc. Plaintiff presents the following three assignments of error for our review:

"I. The trial court erred in granting summary judgment in reliance upon the doctrine of *res judicata* because the cause of action contained in the Complaint is dissimilar from the issues presented and decided in *Williamson v. Ameritech Corporation*.

"II. The trial court erred in granting summary judgment in reliance upon the doctrine of *res judicata* because the parties in this action were dissimilar from the parties involved in *Williamson v. Ameritech Corporation*.

"III. The trial court erred in granting summary judgment in this action in reliance upon the doctrine of *res judicata* because the jury verdict in *Williamson v. Ameritech Corporation* did not adjudicate the merits of Susan Williamson's claim against defendants for spoliation of evidence."

In 1994, plaintiff and a co-plaintiff brought an age discrimination suit against defendant Ohio Bell Telephone Company and Ameritech Corporation. The case proceeded to trial and, in November 1995, the jury returned a verdict for the defense; no appeal was taken from this judgment. Plaintiff filed the present spoliation of evidence action in May of 1996 alleging defendants had destroyed evidence which they knew was relevant and probative of age discrimination, and alleging the destruction of this evidence had precluded plaintiff from establishing her age discrimination claim and proximately caused damages to plaintiff. Defendants moved for summary judgment based on the doctrine of *res judicata;* the trial court granted their motion.

In 1993, Ameritech Corporation underwent a fundamental restructuring in which the company was essentially broken apart and put back together; existing structures were eliminated while new positions, work groups, and business units were created. This undertaking was called Breakthrough. Behavioral interviewing was used to fill the new positions. Before Breakthrough, plaintiff was one of six or seven distributor managers with defendant Ohio Bell. As a result of the restructuring, all but one of the distributor manager positions were eliminated; plaintiff was not selected to fill this position. Plaintiff was not hired into a new position and was terminated. Due to her termination, plaintiff filed an age discrimination suit against defendant Ohio Bell and against Ameritech Corporation alleging that Breakthrough was a pretext for age discrimination.

Before the age discrimination case proceeded to trial, plaintiff learned of allegations that defendant Liedel, a former director of human resources for Ohio Bell, had instructed hiring managers in the new Ameritech Services organization, including defendants O'Sullivan and Rodenberg, to destroy their interview notes. However, plaintiff did not seek to amend the complaint to include the spoliation claim, either in writing before trial or during the course of the trial. At the trial, plaintiff argued that, because Breakthrough and the behavioral interviewing process used in Breakthrough were a pretext for age discrimination, defendant Liedel had ordered the hiring managers to destroy their interview notes. Apparently the jury was not persuaded by plaintiff's

presentation, including her argument that interview notes were destroyed to conceal that the process was a pretext for age discrimination, as it returned a verdict for the defense.

\*2 Plaintiff's three assignments of error question the propriety of granting summary judgment based upon *res judicata* and will be considered together in this appeal.

In accordance with Civ.R. 56, a court will not grant a summary judgment motion unless it appears from the evidence that there is no genuine issue as to any material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion which is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46. The moving party bears the initial burden of informing the trial court of the basis of the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party satisfies its burden, the nonmoving party has a reciprocal burden to set forth specific facts establishing the existence of a genuine issue of fact. *Id.* Civ.R. 56(E). If the nonmoving party fails to respond in accordance with Civ.R. 56(E), summary judgment, if appropriate, shall be entered. *Id.* at 293, 662 N.E.2d 264. Appellate review of summary judgment is *de novo*. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411.

In *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, the Ohio Supreme Court overruled the prior law of Ohio with regard to the claim preclusive effect of the doctrine of *res judicata*. Under Ohio law before *Grava*, *res judicata* did not apply to a claim for relief which had not been brought in a prior action even though the claim for relief stemmed from the same transaction as the claim for relief in the prior action; *Grava* overruled this case law. The Ohio Supreme Court expressly adhered to the modern application of the doctrine of *res judicata* as stated in 1 Restatement of the Law 2d, Judgments (1982) 196, Sections 24-25 and held:

> "A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. \* \* \*" *Grava*, syllabus.

*Grava* discusses Comment *b* to Section 24 of the Restatement of Judgment which defines "transaction" as a "common nucleus of operative facts" and states that the existence of a number of different legal theories for imposing liability on an actor in a given episode does not create multiple transactions and hence multiple claims. *Grava*, at 382, 653 N.E.2d 226. *Grava* noted the rationale for the modern rule of *res judicata*, as set forth in Section 24 of the Restatement of Judgments, *supra*, is that " ' \* \* \* [t]he present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff \* \* \*; regardless of the variations in the evidence needed to report the theories or rights.' " *Grava* [emphasis sic], at 383, quoting Comment *a* to Section 24 of the Restatement of Judgments, *supra*, at 196-197. Thus, after *Grava*, a valid final judgment on the merits between parties to litigation is conclusive as to all claims which were or might have been litigated in the first lawsuit.

\*3 Plaintiff argues that *res judicata* does not apply to her present complaint because her action for spoliation of evidence was not actually or directly at issue or adjudicated in the prior age discrimination case and because there is no identity of parties in the two actions.

Plaintiff's argument that *res judicata* does not apply to her present action because there is no identity of parties in the two actions raises the issue of privity. The doctrine of *res judicata* only applies to parties or their privies. *Thirty Four Corp. v. Sixty Seven Corp.* (1993), 91 Ohio App.3d 818, 826, 633 N.E.2d 1179. The Ohio Supreme Court has recently defined "privity," generally, as " ' \* \* \* merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include the other within the res judicata.' " [Citation omitted.] *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 184, 637 N.E.2d 917.

Defendant Ohio Bell was also a defendant in the age discrimination case. Thus, the issue of privity concerns the remaining defendants in the present case: Rodenberg, O'Sullivan, Liedel, and Ameritech Services, Inc. In support of their motion for summary judgment, defendants submitted the affidavit of Edward Bettendorf, an in-house legal counsel of Ameritech Corporation. Bettendorf averred that as of January 1, 1993 through the date of the affidavit (July

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

16, 1996) the Ohio Bell Telephone Company was a wholly owned subsidiary of Ameritech Corporation. Bettendorf further averred that, as of January 1, 1993 through the date of the affidavit, "Ameritech Services, Inc., * * * was a wholly owned subsidiary of Ohio Bell and of Illinois Bell Telephone Company, Indiana Bell Telephone Company, Incorporated, Michigan Bell Telephone Company, and Wisconsin Bell, Inc.-- all of which were then and are now also wholly owned subsidiaries of Ameritech.' " (Bettendorf's affidavit, paragraph 3.)

The transcript of the age discrimination trial, which is part of the record before this court, establishes that the individual defendants Rodenberg, O'Sullivan, and Liedel, were employees of Ohio Bell before Breakthrough and subsequently became employees of Ameritech Corporation or a subsidiary of Ameritech Corporation.

Based upon the above undisputed facts, this court holds that privity exists between the defendants of the age discrimination action, Ohio Bell and Ameritech Corporation, and the defendants in the spoliation of evidence action, Ameritech Services, Rodenberg, O'Sullivan, and Liedel. See *Capraro v. Tilcon Gammino, Inc.* (C.A.1, 1985), 751 F.2d 56 (*res judicata* gives parent corporation benefit of *res judicata* bar against subsidiary); *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (Dec. 22, 1992), Franklin App. No. 92AP-1308, unreported (1992 Opinions 5960) (*res judicata* applies when in an subsequent action, an employee of a prior defendant is added).

*4 Having found privity between the defendants in the two actions, the final question presented by this appeal is whether the claim-preclusive effect of *res judicata* bars plaintiff from bringing the present action. Whether or not plaintiff's spoliation of evidence claim was actually or directly at issue or adjudicated in the prior action is not dispositive post-*Grava*. The determinative issue is whether plaintiff could have brought her spoliation claim in the previous action.

The elements of a claim for destruction (spoliation) of evidence are "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of plaintiff's case, and (5) damages proximately caused by the defendant's acts * * *." *Smith v. Howard Johnson Co., Inc.* (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037.

In support of her age discrimination claim, plaintiff argued at trial that the behavioral interviewing materials were destroyed to hide the fact that the process was used to discriminate against job candidates based on age. Accordingly, plaintiff's spoliation claim arises out of the same common nucleus of operative facts as her age discrimination case.

This court holds that, in light of the fact that plaintiff learned of the destroyed evidence before the trial started and that the claim for spoliation shares the same common nucleus of facts as the age discrimination case, plaintiff could have brought her claim for spoliation of evidence in the previous action. Therefore, the final judgment in plaintiff's age discrimination suit bars the present spoliation action.

Having found the defendants in the two actions to be in privity and that the doctrine of *res judicata* bars plaintiff from bringing the present action, plaintiff's three assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DESHLER and CLOSE, JJ., concur.

1997 WL 360840 (Ohio App. 10 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works