# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT CINCINNATI

FILED
JAMES BONINI
CLERK

04 JAN 22  PM 2:56

| | |
|---|---|
| WALTER W. THIEMANN, GARY AND LISA MEIER, AND GARY MEIER C-F LINDSEY MEIER | ) Civil Action No. C-1-00-793 |
| | ) |
| | ) Hon. Sandra S. Beckwith |
| on behalf of themselves and all others similarly situated, | ) |
| | ) Magistrate Judge |
| | ) Timothy Hogan |
| Plaintiffs, | ) |
| | ) (Class Action) |
| vs. | ) |
| | ) |
| OHSL FINANCIAL CORP. (OHSL), OAK HILLS SAVINGS AND LOAN COMPANY, F.A.,) NORBERT G. BRINKER, KENNETH L. HANAUER, WILLIAM R. HILLEBRAND, ALVIN E. HUCKE, THOMAS E. MCKIERNAN, JOSEPH J. TENOEVER, HOWARD N. ZOELLNER, PROVIDENT FINANCIAL GROUP, INC. (PROVIDENT), ROBERT L. HOVERSON, JACK M. COOK, THOMAS D. GROTE, JR., PHILIP R. MYERS, JOSEPH A PEDOTO, JOSEPH A. STEGER, CHRISTOPHER J. CAREY, CLIFFORD ROE, CHARLES HERTLEIN, DINSMORE & SHOHL LLP, MARK WEISS, KEATING, MUETHING & KLEKAMP, P.L.L., and ERNST & YOUNG | ) PLAINTIFFS MOTION FOR ) PARTIAL SUMMARY JUDGMENT ) PURSUANT TO RULE 56 OF THE ) FED. RULES OF CIV. PRO. ON ) LIABILITY ISSUES UNDER ) SECTION 11 OF THE 1933 ) SECURITIES ACT, 15 U.S.C. §77(k) ) AS ALLEGED IN PLAINTIFFS' ) CONSOLIDATED AMENDED ) COMPLAINT ("CAC") ) AGAINST THE DEFENDANT ) PROVIDENT FINANCIAL ) GROUP, INC. ("PROVIDENT") ) AND MEMORANDUM AND ) EXHIBITS THERETO |
| Defendants. | ) |

--------------------------------------------------------------

## MOTION

Plaintiffs now moves this Court for Partial Summary Judgment of Liability pursuant to Rule 56 of the Fed. Rules of Civ. Pro. only against the defendant Provident Financial Group, Inc. ("Provident") on the claims asserted under Sec. 11 of the 1933 Securities Act, 15 U.S.C. §77(k) in their Consolidated Amended Complaint ("CAC") (Doc. # 234) regarding the material untrue and misleading statement of facts and omissions of facts necessary to make those facts (hereinafter referred to as the RESTATEMENT or the RESTATEMENTS) as stated not misleading and untrue as

contained in the Proxy/Registration Materials ("Registration Statement") (Exhibits 1 and 2 hereto) now the subject of this litigation and which was the catylyst in the OHSL merger.

In 2003 Provident twice (once on March 5, 2003 and again on April 15, 2003) restated its earnings, assets, cash flow and Accounting Methodology ("Restatements") as originally set forth in the 1999 Registration Statement published and issued by Provident to effect its acquisition of Oak Hills Savings and Loan Company ("OHSL") thereby negatively changing all of the financial statements of Provident from 1994-2002. The second Restatement made the first Restatement false and misleading and includes the 1997-1999 time period (Exhibit 6). See post, pp. 9 to 17. The earnings, assets, cash flow and Accounting Methodology as contained in the Registration Statement prepared and issued by Provident to each OHSL shareholder in 1999 to cause the merger of Provident and Oak Hills Savings and Loan ("OHSL") and also contained in all Provident Press Releases including those related to the First Restatement only 40 days prior to the Second Restatement as well as all public SEC filings up to that time which had kept Provident shares at an artificially high price were negatively amended and altered twice, devastating the price of Provident share values (See Exhibits 5 and 9 hereto).

This overstatement of earnings and cash flow in the Registration Statement created a clear liability from the Provident defendant under Section 11 of the 1933 Securities Act, 15 USC §77k (Section 11), to the Plaintiffs, as Provident is the issuer and Registrant of the currency used in the OHSL Merger. Plaintiffs allegations in these regards can be found at pars. 87-103 and 120-130 of the Consolidated Amended Complaint ("CAC") filed on December 31, 2003.

This motion is supported by the attached memorandum of law and relevant exhibits Nos. 1-9 in the attached Appendix. The Plaintiffs respectfully submit that they are entitled to Judgment as a matter of law pursuant to Rule 56(f) of the Fed. R. Civ. Pro. upon the "Restatement" claims under Sec. 11 of the 1933 Securities Act (15 USC §77k)

as there are no genuine issues as to the material facts and, further, they have been admitted by Provident. A jury of reasonable minds could only come to one conclusion as to their meaning in the context of materiality, that being in favor of the Plaintiffs.

Respectfully submitted,

Gene Mesh & Associates

By

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219
(513) 221-8800
(513) 221-1097 (fax)

Counsel for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| WALTER W. THIEMANN, GARY AND LISA MEIER, AND GARY MEIER C-F LINDSEY MEIER<br><br>on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>   vs.<br><br>OHSL FINANCIAL CORP. (OHSL), OAK HILLS SAVINGS AND LOAN COMPANY, F.A., NORBERT G. BRINKER, KENNETH L. HANAUER, WILLIAM R. HILLEBRAND, ALVIN E. HUCKE, THOMAS E. MCKIERNAN, JOSEPH J. TENOEVER, HOWARD N. ZOELLNER, PROVIDENT FINANCIAL GROUP, INC. (PROVIDENT), ROBERT L. HOVERSON, JACK M. COOK, THOMAS D. GROTE, JR., PHILIP R. MYERS, JOSEPH A PEDOTO, JOSEPH A. STEGER, CHRISTOPHER J. CAREY, CLIFFORD ROE, CHARLES HERTLEIN, DINSMORE & SHOHL LLP, MARK WEISS, KEATING, MUETHING & KLEKAMP, P.L.L., and ERNST & YOUNG<br><br>              Defendants. | Civil Action No. C-1-00-793<br><br>Hon. Sandra S. Beckwith<br><br>Magistrate Judge Timothy Hogan<br><br>(Class Action) |

-----------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Gene Mesh & Associates
Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio  45219
(513) 221-8800
(513) 221-1097 (fax)

Counsel for Plaintiffs

# **Table of Contents**

Page

I.   INTRODUCTION: Liability for False Registration Statements    1
     Requiring Restatement of Income and Earnings

     A.   Section 11 Liability in Registration Statements    1
          (15 U.S.C. §77k)

II.  ARGUMENT    3

     A.   Rule 56 Legal Standard    3

     B.   The Two Restatements and Their Materiality To Plaintiffs'    4
          Claims; The Impact of the Restatements on the INCOME
          STATEMENTS and BALANCE SHEETS as included in the
          1999 Registration Statement and all Public Filing from
          1994-2002: RESTATEMENTS ONLY CORRECT
          MATERIAL MISSTATEMENTS (Exhibits 4, 5 and 8);
          The FACT of DAMAGE (Exhibit 9)

          1.   The Application of Accounting Standards    5

     C.   The Application of Section 11 (15 USC 77k) 1933 Act    6
          Claims to the Facts and the Legal Standard of Materiality

          1.   The Masters of Overstatement and Restatement    6
               Seek Immunity from Liability and Damages For
               Their Acts; Provident Admits on March 5, 2003 that
               "Off-the-Books" Accounting Procedures for Auto
               Loan Leases Was Financially Misleading Accounting
               Even Though Provident Never Explained in the
               Registration Statement or in any Public Filings such
               as the Annual Reports, 10-Ks or 10-Qs of Provident
               referenced in the Registration Statement the definition
               of "Off-the-Books" Accounting, Nor That
               "Off-the-Books" Accounting Was Used to
               Improperly Report Auto Lease Earnings and Cash
               Flow Requiring a Negative Write Down of
               $100,000,000 for years 1997-2002

          2.   The Provident Proxy/Registration Materials were    7
               a Showroom for False Financials

     D.   The Restatements: Provident's Appetite for Fiction    9

## Table of Authorities

|  | Page(s) |
|---|---|
| Anderson v. Liberty Lobby,<br>477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) | 3 |
| Barnes v. Osofsky,<br>373 F.2d 269, 271, 1 A.L.R. Fed. 1011 (2nd Cir., 1967) | 2 |
| Bomarko, Inc. v. Hemodynamichs, Inc.,<br>848 F.Supp. 1335 (1993) | 3 |
| Celotex Corp. v. Catrett,<br>477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) | 3 |
| Dasho v. Susquehanna Corp.,<br>461 F.2d 11, c.d. 158 | 6 |
| Ellis v. Carter,<br>291 F.2d 270, 272 (9th Cir., 1961) | 2 |
| Fischman v. Raytheon Mfg. Co.,<br>188 F.2d 783, 786 (2nd Cir., 1951) | 2 |
| Herman & Maclean v. Huddleston,<br>459 U.S. 375, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983) | 1, 12 |
| Howing Co. v. Nationwide Corp.,<br>826 F.2d 1470, 1473-1474 (6th Cir., 1987), c.d. 108 S.Ct. 2830 | 11 |
| In re Consumers Power Company Securities Litigation,<br>105 F.R.D. 583 (E.D. Mich. 1985) | 12 |
| Kronfeld v. TransWorld Airlines,<br>832 F.2d 726, 731 (2nd Cir., 1987), c.d. 108 S.Ct. 1470 | 11 |
| Llanos v. U.S.,<br>206 F.2d 852, c.d. 346 U.S. 923 | 6 |
| Lone Star Ladies Investment Club v. Schlotzsky's, Inc.,<br>238 F.2d 363, 368 (5th Cir., 2001) | 2 |
| Mader v. Armel,<br>402 F.2d 158 (6th Cir., *1968*) | 6 |

E.   Provident Financial is the <u>Issuer</u> and Registrant of            10
     Provident Financial Shares in the Acquisition of OHSL
     and has Absolute Liability for the Damages Sustained by
     the OHSL Shareholders under Section 11 of the Securities
     Act Once Materiality of the Misstatements or Omissions
     are Proved; the Restatements of Income and Earnings
     in this Registration Provides Such Proof

F.   Materiality in the Financial/Investor Sense and the relevant    10
     Sixth Circuit and Supreme Court cases

G.   Materiality in the Accounting Sense; 1997 Financials have    12
     Yet to be Restated; The Impact on Financial TRENDS
     (Exhibits 3, 4 and 7)

III.   CONCLUSION                                                   17

### Index of Exhibits

| <u>Number</u> | <u>Description</u> |
|---|---|
| 1 | Proxy Materials |
| 2 | S-4 Registration Materials* |
| 3 | Accounting Expert Report - Materiality |
| 4 | SAB 99 (Materiality) |
| 5 | Market Reactions to Restatements by Provident |
| 6 | March, 2003 Restatement; April, 2003 Restatement |
| 7 | Selected Accounting Principles |
| 8 | Schedule of Write Downs |
| 9 | Affidavit of Ervin Schoenblum, Plaintiffs Damage Expert |

---

It seems to be an accepted SEC Practice to permit the issuer to leave blanks in the Registration Statement as to final dates and prices until issuance because of late market condition changes. This practice was evidently followed by Provident on the subject S-4.

*i*

Matsushita Electric Industrial v. Zenith Radio Corp.,    3
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986),
    on remand, 807 F.2d 44 (3rd Cir., 1986)

Nations Mart Corp. Sec. Lit.,    2
    130 F.3rd 309, 315 (8th Cir., 1997)
    c.d. 524 U.S. 927, 118 S.Ct. 2321, 141 L.Ed.2d 696 (1998)

NEW ERA for Summary Judgments,    3
    116 F.R.D. 183 (1987)

Nixon v. Celotox,    3
    693 F.Supp. 547, 552 (W.D. Mich. 1988)

Saddle Rock Partners, Ltd. v. Hiatt,    11
    1996 WL 859986 (W.D. Tenn. 1996)

Starkman v. Marathon Oil Co.,    11
    772 F.2d 231 (6th Cir., 1985), c.d. 475 U.S. 1015 (Rule 10b-5)

TSC Industries v. Northway, Inc.,    10
    426 U.S. 438 at 444-450 (1976)

Wielgos v. Commonwealth Edison Co.,    2
    892 F.2d 509, 513, 7th Cir., 1989)

Other Authorities:

H.R. Rep. No. 85, 73d Cong., 1st Sess. 3-5, 9-10 (1933)    1

Loss on Investments, p. 2104, 3rd Ed.    2

SEC Form S-1, SA Rule 424, 17 CFR §230.424    6

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST PROVIDENT FINANCIAL GROUP, INC. (PROVIDENT)**

**I.    INTRODUCTION: Liability for False Registration Statements
Requiring Restatement of Income and Earnings**

The text of Section 11 of the 1933 Securities Act (15 USC 77k) ("Securities Act")
defines an absolute liability standard of conduct as to the issuer and Registrant
(Provident) of securities when those securities (Provident common shares) are sold or
exchanged pursuant to a faulty Registration Statement (such as was the procedure used
by Provident to cause the shareholders of OHSL to vote to be acquired by Provident for
consideration in the form of Provident shares artificially valued at approximately
$57,000,000). This liability pertains regardless of the issuer's state of mind as neither
Reliance nor Scienter is required under Section 11. Section 11 of the Securities Act of
1933 states in part and substance that if any part of the registration statement, when
such part became effective, contained an untrue statement of a material fact or omitted to
state a material fact required to be stated therein or necessary to make statements therein
not misleading, any person acquiring such security [unless it is proved that at the time of
such acquisition (she or) he knew of such untruth or omission] may, either at law or in
equity, in any court of competent jurisdiction, sue the issuer and obtain liability against
it.

**A.    Section 11 Liability in Registration Statements (15 U.S.C. §77k)**

The major purposes of the Securities Act fulfilled the objectives of providing
investors with complete and accurate information by means of accurate registration
statements. H.R. Rep. No. 85, 73d Cong., 1st Sess. 3-5, 9-10 (1933). The Supreme Court
in Herman v. Huddleston, 459 US 375, 381, 103 S.Ct. 683, 74 L.Ed.2d 548 said:

> The section was designed to assure compliance with the disclosure
> provisions of the Act by imposing a stringent standard of liability on the
> parties who play a direct role in a registration offering.

The issuers liability for misrepresentations or omissions is "virtually absolute, even for

innocent misstatements." Id. Accord: <u>Lone Star Ladies Investment Club v. Schlotzsky's, Inc.</u>, 238 F.2d 363, 368 (5th Cir., 2001). As one writer puts it "... it is immaterial whether the flaw (as to the issuer) are intentional, negligent or wholly innocent; plaintiff is relieved from proving scienter." See: <u>Ellis v. Carter</u>, 291 F.2d 270, 272 (9th Cir., 1961); <u>Fischman v. Raytheon Mfg. Co.</u>, 188 F.2d 783, 786 (2nd Cir., 1951); <u>Barnes v. Osofsky</u>, 373 F.2d 269, 271, 1 A.L.R. Fed. 1011 (2nd Cir., 1967); <u>Nations Mart Corp. Sec. Lit.</u>, 130 F.3rd 309, 315 (8th Cir., 1997), c.d. 524 U.S. 927, 118 S.Ct. 2321, 141 L.Ed.2d 696 (1998). <u>Wielgos v. Commonwealth Edison Co.</u>, 892 F.2d 509, 513, 7th Cir., 19⁇).

In 1999, the Securities Exchange Commission in its Staff Accounting Bulletin ("SAB") No. 99 discouraged exclusive reliance on quantitative assessments of materiality, SAB 99, 70 SEC Dock. 785 (1999) (Exhibit 4 hereto). It is the qualitative assessments even though small that impact materiality; misstatements below 5% could well be material. These assessments relate to earnings, income, or the registrants segment of revenue that plays an important part in "registrants operation or profitability." See <u>Loss on Investments</u>, (3rd ED.) p. 2104. Further at p. 2104 of the <u>Loss</u> text, "the demonstrated volatility of the price of registrant's securities in response to certain types of disclosures" such as the Market prices identifies materiality in the marketplace.

The Media reaction and Market Impact caused by the subject negative Restatements by Provident are found at Exhibit 5(A-M), and exquisitely articulate the materiality and importance of Provident's earnings and the restatements to the investments decisions of OHSL shareholders or anyone holding Provident stock, calling the Restatement a "blow to (Provident's) credibility" (Exhibit 5-B), "One for the Record Books" (Exhibit 5-E), a "Decision (that) made return on assets seem higher" (Exhibit 5-F), a "serious lapse in execution" (Exhibit 5-G), "a drag on Provident" (Exhibit 5-J), and a "major blow," called off-books accounting subject to great scrutiny because of Enron scandal (Exhibit 5-M), etc. etc. Plaintiffs' damage expert's affidavit as to the fact of damage resulting from the Restatements is found at Exhibit 9 and the

accounting expert's report analyzing Materiality in the accounting sense is Exhibit 3.

Rule 12b-2 of the 1934 Act Rules (_17_ C.F.R. §___) governs all registration statements issued pursuant to the Securities Act and defines materiality. The term "material" encompasses the furnishing of information as to _any_ subject in the registration statement which is information to which there is a substantial likelihood that a reasonable investor would attach importance in determining whether to buy or sell the securities registered. See infra, pp. 10 to 16 for further legal and accounting definitions of Materiality.

## II.   ARGUMENT

### A.   Rule 56 Legal Standard

The Supreme Court held in Matsushita Electric Industrial v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), on remand, 807 F.2d 44 (3rd Cir., 1986) that - even in complex anti-trust, RICO or securities litigation cases - "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine' issue for trial." Id. at 1356. The defendant Provident cannot demonstrate that their restatement which confirmed the misstatements and omissions in the Registration Statement presents any "genuine" issue for trial. See Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no possible length of any discovery period available for Provident to show or create a "genuine" issue of material fact as required by Rule 56(f). See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) decided on same day as Liberty Lobby. It is - in plain language - time to "put-up or shut-up." Id. at 2554. Accord: Nixon v. Celotox, 693 F.Supp. 547, 552 (W.D. Mich. 1988); Bomarko, Inc. v. Hemodynamichs, Inc., 848 F.Supp. 1335 (1993). See further as to NEW ERA for Summary Judgments, 116 F.R.D. 183 (1987).

**B.    The Two Restatements and Their Materiality To Plaintiffs' Claims; The Impact of the Restatements on the INCOME STATEMENTS and BALANCE SHEETS as included in the 1999 Registration Statement and all Public Filings from 1994-2002; RESTATEMENTS ONLY CORRECT MATERIAL MISSTATE-MENTS (Exhibits 4, 5 and 8); The FACT of DAMAGE (Exhibit 9)**

The earnings and cash flows upon which the subject transaction was based simply pervade the Proxy and Registration Statements. The following chart gives a sample of the location of the false Provident numbers to which OHSL shareholders were exposed and why Provident's numbers were not presented fairly in accorance with Generally Accepted Accounting Principles ("GAAP") (Exhibit 7-A).

| Proxy Statement (Exhibit 1) | Registration Statement (Exhibit 2) |
|---|---|
| See pp. 6, 7, 9, 10, 11, 12, 13<br>Summary (3-5), 22, 23, 24, 25, 26, 44-60, 65 | See pp. i ii, iii,<br>See pp. 6-13; 28, 43, 64 and 65;<br>Q&A: 2, 3; 23-26; |

As a result of the First and Second Restatements, Provident reduced its net income for the years 1997-2002 by $100 millions included projected decreased net income in future years. The actual reductions to actual $534 millions from actual $604.3 millions was 12% apprx. Within several weeks, Provident further reduced net income for the years 1994-2002 an additional amount of $44.4 millions or 7.1%. The cumulative negative impact on net income was $1.00 per share; the market price of Provident sharres fell 22.6% or $6.61 after the first restatement, from $28.07 per share to $22.46 the next day. See CAC Pars. 87-103, 120-130; Expert Affidavit, Exhibit 9, and pp. 9 to 10, infra. The second restatement had also made the first restatement false. There was an overnight reduction and loss of value in the consideration (i.e., the value of Provident shares) received by OHSL shareholders in the merger of approximately $17,000,000 - from $57,162,325 to approximately $40,000,000, all caused by the Restatement.

However, the Registration Statement in its first 3 unnumbered introductory pages and pp. i, ii, iii, 6, 7, 9, 10, 11, 28, 64, and 65 therein was overflowing with self praise and

warranties as to the accounting numbers and procedures followed by Provident and communicated to the shareholders of OHSL in the subject transaction of Merger and Acquisition in order to cause that Acquisition.

### 1.    The Application of Accounting Standards (See Source Report of Plaintiffs' Accounting Expert, Ex. 3)

Generally Accepted Accounting Procedures ("GAAP") requires a restatement of a company's previously issued financial statements sometimes to properly correct a material misstatement, called an "error" (whether it is an unintentional error or an intentional fraud) under the relevant accounting standard, APB No. 20.[1]  AU Section 9411 (Exhibit 7-B) and AU Section 420 (Exhibit 7-C) requires that consistency of accounting practices over time makes accounting information useful for financial statement users.  Without consistency, users have difficulty making comparisons over time and discerning whether, and to what extent, the company's performance is improving or deteriorating.  This is important, for providers of financing, whether debt or equity, in order to extrapolate from current trends in estimating a company's future prospects.  Thus, Accounting Principles Bulletin ("APB") No. 20, par. 38 (Exhibit 7-D), stresses that only a _material_ error or misstatement as to net income or the trend in earnings should be corrected via a restatement, since a restatement clashes with the desire for _consistency_ emphasized in AU 9411 SFAC No. 2 (Exhibit 7-B, C).  Providents' restatements were not only highly material, they were per se material and in violation of GAAP.  (Exhibit 7-A).

APB No. 20 states that a company's Net Income and Earnings Per Share, in every period of previously issued financial statements which are materially misstated, must be restated.  This means they should now be disclosed both as to what they originally were reported as well as what they are now corrected to be.  Some companies provide this disclosure in an amended 10-K or 10-Q.  Others provide this disclosure in an 8-K or in the next regular filing of the 10-K or 10-Q.  Provident has yet to disclose the full extent

---

[1]    All selected and referenced Accounting Principles Referred to herein are gathered at Exhibits 4 and 7 and indexed therein.

of the restatement in its financials for 2002.

C.    **The Application of Section 11 (15 USC 77k) 1933 Act Claims to the Facts and the Legal Standard of Materiality**

1.    **The Masters of Overstatement and Restatement Seek Immunity from Liability and Damages For Their Acts; Provident Admits on March 5, 2003 that "Off-the-Books" Accounting Procedures for Auto Loan Leases Was Financially Misleading Accounting Even Though Provident Never Explained in the Registration Statement or in any Public Filings such as the Annual Reports, 10-Ks or 10-Qs of Provident referenced in the Registration Statement the definition of "Off-the-Books" Accounting was, Nor That "Off-the-Books" Accounting Was Used to Improperly Report Auto Lease Earnings and Cash Flow Requiring a Negative Write Down of $100,000,000 for years 1997-2002[2]**

Plaintiffs need not prove reliance, nor prove that the violation caused the injury and damage for misrepresentations in a Registration Statement.  Section 11 creates liability absolutely and expressly against the issuer of the securities involved as defined in the 1933 Act at 15 USC §77k and the litany of cases decided thereunder so hold. Any Proxy included in the tainted registration statement suffers the same infirmities (SEC Form S-1, SA Rule 424, 17 CFR §230.424).  Provident is the issuer and Registrant of artificially inflated shares in this case as proscribed by Section 11.

The term "issuer" is defined as "every person who issues or proposes to issue any security."  15 U.S.C. §77b(4).  The 1933 Act further defines the term "sale" or "sell" to include "every contract or sale or disposition of a security or interest in a security, for value."  15 U.S.C. §77b(3).  An exchange of one security for another security is considered a "sale" by the 6th Circuit under the 1933 Act.  <u>Mader v. Armel</u>, 402 F.2d 158 (6th Cir., *1968*); See also: <u>Dasho v. Susquehanna Corp.</u>, 461 F.2d 11, c.d. 158; <u>Llanos v. U.S.</u>, 206 F.2d 852, c.d. 346 U.S. 923.

---

[2]    See Affidavit of Plaintiffs Expert, Exhibit 9 hereto; CAC Pars. 87-103, 120-130.

### 2.    The Provident Proxy/Registration Materials
### Were a Showroom for False Financials

In the Proxy/Registration Materials issued by Provident in order to accomplish the subject merger and acquisition transaction, the earnings, assets and cash flows of Provident were not only expressly put forward as inducement to OHSL shareholders but were incorporated by specific and general reference to other Public filings with the Securities Exchange Commission ("SEC") at several pages of the Registration.  (See Chart, p. 4, supra).  All of the numbers and financial statements in the Registration and Public SEC filings were based upon the improper accounting methods which had permeated all of Provident's Public Documents since 1994.  Then - after receiving a favorable but narrow majority vote - Provident exchanged Provident common stock which in reality had a value of $40,000,00 for Oak Hills Savings and Loan Company ("OHSL"), (a local financial institution and the acquired company) common stock which in reality had a true value of approximately $57,000,000.  There is no cure for this illness except the relief of rescissory damages requested by Plaintiffs or monetary damages equating the loss in value of Provident shares as a result of the Restatements, in an amount to be determined by the court at the appropriate time as to Plaintiffs Meier and Thiemann, holders of Provident stock in amounts of approximately $1,000,000 and $10,000, respectively, at the time of the Restatements.

In the Table of Contents to the Proxy/Registration Materials (Exhibits 1 and 2 hereto) - in bold letters - one sees the following over-arching captions and references which were a sugar-coated invitation to financial mayhem for OHSL shareholders at p. i, ii and iii:

[See next page]

7

PROVIDENT FINANCIAL
    SELECTED CONSOLIDATED
    HISTORICAL FINANCIAL DATA . . . . . . . . . . . . . . **6**

COMPARATIVE PER SHARE DATA . . . . . . . . . . . . . . . . . **9**

COMPARATIVE STOCK PRICE
    AND DIVIDEND INFORMATION . . . . . . . . . . . . . . . . 11

RISK FACTORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

PROVIDENT FINANCIAL GROUP . . . . . . . . . . . . . . . . . . . . **43**
    **General** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **43**
    **Recent Development** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **43**

The experts opinion of "fairness" based upon the fictitious numbers and representations of Provident is found at page 22 of the Registration. No mention can be found anywhere - even though the opportunities to do so were often present - that an "Off-the-Books" accounting treatment (rather than "On-the-Books") was used for almost a ten-year period by Provident, nor did Provident ever - until after the Restatements - define what "Off-the-Books" Accounting was - a major link in the chain of non-compliance with the 1933 Act.

Furthering this massive violation of Section 11 by the means of further incorrect information was found in the Section of the Registration Captioned COMPARATIVE PER SHARE DATA found in the Registration Statement pp. 9-11, Exhibit 2 whereat the values of Provident shares as advertised in the "selling" (rather than "disclosure") document i.e., the Proxy/Registration Statement, were pictorially but falsely based upon the net income, cash dividends and book value per common share of Provident for 1996-1999 (6 months).

Reference in the Registration Statement is then further made at Exhibit 2, pp. 64-65 to earnings and cash flow as contained in public governmental SEC filings such as 10-Ks, 10-Qs, 8-Ks and the Registration Form S-4 (Exhibit 2) which repeated and repeated all or part of the false earnings as contained in the transaction document, only in different clothing. The advantages to OHSL shareholders of Provident earnings and

cash flow as well as the expert opinion of McDonald and Company as to fairness were extolled by the issuer Provident on Exhibit 2, p. 28. Still no mention of "Off-the-Books" accounting either in the Registration or in any of the Provident public documents referenced therein. The Registration highlighted the "Securitization Method" of accounting used by Provident to manufacture the income and profits contained in the above referenced pages (See Exhibit 2, p. 13) without disclosing the full risks attendant thereto. This entire coterie of financial information was materially false and misleading and has no defense under Section 11.

### D.    The Restatements: Provident's Appetite for Fiction

The First Restatement while spanning the years 1997-2002 was originally attributable by Provident solely to errors in the accounting for the transactions that were originated between 1997 and 1999. The First Restatement showed that net income had been overstated for the period 1997 through 2002 by $70.3 million and by another estimated $9.8 million in 2003. The magnitude and materiality of the entire overstatement continues into 2004 and beyond in decreasing amounts. A reasonable estimate of the cumulative profit overstatement is in the $100 million range including the $88.1 millions already admitted. (See Exhibit 9 hereto).

The First Restatement caused a stock price drop for PFGI from $28.07 per share on March 4, 2003 to $22.46 the next day and an average of $21.72 in the first 10 trading days, or a decrease in market value of 22.6%. If the correct information were disclosed at the time the shares were exchanged the PFGI shares would have been valued in an amount 22.6% less than they were. OHSL shareholders received as a result of these fictional number 22.6% less than the $57,162,375 they were told, equivalent to being shortchanged by $12.9 million as a result of the March, 2003 Restatement alone.

The Second Restatement (April, 2003) was attributable to additional errors in the accounting for the transactions that occurred from 1994 through 2002. The aggregate profit restatement in the Second Restatement was a reduction of $44.4 million. Since the 2002 impact was $3.8 million and the 2001 impact was $4.2 million, the 1994

9

through 2000 impact in the amount of $36.4 million was the difference. The 1994 through 1999 period accounted for 6 of the 7 years or approximately a $31.2 million loss and caused a material and irreparable diminishment not only in the Provident shares but in the entire financial credibility of Provident and its accounting processes.

**E.     Provident Financial is the <u>Issuer</u> and Registrant of Provident Financial Shares in the Acquisition of OHSL and has Absolute Liability for the Damages Sustained by the OHSL Shareholders under Section 11 of the Securities Act Once Materiality of the Misstatements or Omissions are Proved; the Restatements of Income and Earnings in this Registration Provides Such Proof**

The language of §11 is clear and unabated and provides for remedies against the issuer of securities - whether an original issue or currency used in an acquisition or merger - if a registration statement at the time it became effective "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading ..." [Sec. 11(a)] Any person who acquired such a security covered by the registration can sue specified persons including and especially the issuer to recover the difference between the price paid for the security (the OHSL share value) and the value of the consideration received at the time of suit (the Provident shares). [Sec. 11(e)] All that the class must show to recover against the issuer is the fact of damage, not the quantities:

   (a)     that there was a material misstatement or omission in the registration statement, and

   (b)     that they lost money.

Reliance can be established without showing that anyone read the registration statement [§11(a)].

**F.     <u>Materiality in the Financial/Investor Sense and the relevant Sixth Circuit and Supreme Court cases</u>**

The Supreme Court in <u>TSC Industries v. Northway, Inc.</u>, 426 U.S. 438 at 444-450 (1976) sets out the objective test for materiality and we cite portions of that opinion as follows:

10

The question of materiality, it is universally agreed, in an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor.   Variations in the formation of a general test of materiality occur in the articulation of just how significant a fact must be or, put another way, how certain it must be that the fact would affect a reasonable investor's judgment.

....

In arriving at its broad definition of a material fact as one that a reasonable investor <u>might</u> consider important, the Court of Appeals in this case relied heavily upon the language of this Court in <u>Mills v. Electric Auto-Lite</u> (cite) ....  *396 U.S. 375 (1970)*

The general standard of materiality that we think best comports with the policies of Rule 14a-9 is as follows:  <u>An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote</u>.   It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote. . Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available. (emphasis added)

This definition has been followed in Section 11 cases as well as by the 6th Circuit in other comparable Securities Act or Securities Exchange Act Sections.  See <u>Kronfeld v. TransWorld Airlines</u>, 832 F.2d 726, 731 (2nd Cir., 1987), c.d. 108 S.Ct. 1470; <u>Howing Co. v. Nationwide Corp.</u>, 826 F.2d 1470, 1473-1474 (6th Cir., 1987), c.d. 108 S.Ct. 2830; <u>Starkman v. Marathon Oil Co.</u>, 772 F.2d 231 (6th Cir., 1985), c.d. 475 U.S. 1015 (Rule 10b-5).  Courts throughout the land have not found any difference in the meaning of materiality though the context may change.

In <u>Saddle Rock Partners, Ltd. v. Hiatt</u>, 1996 WL 859986 (W.D. Tenn. 1996).  The Court while addressing a 1934 Act claim found that an omitted fact is material under §10(b) of the Securities Exchange Act, if there is substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information trade available.  The tests under the 1933 or 1934 Acts as to materiality are the same; only the level of conduct (intent or lack thereof) is different.  It is greater under the 1934 Act.

In In re Consumers Power Company Securities Litigation, 105 F.R.D. 583 (E.D. Mich. 1985) the Court's attention was directed to Section 11. To establish a §11 claim the Court said all plaintiff need show is that he purchased a security that was part of a registered offering and the registration statement contained a material misstatement or omission. Liability is virtually absolute, even for innocent misstatements. /65 FRD 594 cite. See also Herman & Maclean v. Huddleston, 459 U.S. 375, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983).

The second Restatement of April 15, 2003, while less numerically than the first only served to re-affirm the materiality of the earlier misstatements and omissions and gave the lie to the Proxy/Registration Statement as well as the First Restatement. If Provident thought it necessary to restate again and again because of the importance thereof to the public generally, all the more so for the OHSL shareholders to whom they have not even sent a Thank-You note. Obviously, the public and the market thought so, but Provident has treated the OHSL shareholders as pariahs in this financial disaster.

**G.    Materiality in the Accounting Sense; 1997 Financials Have Yet to be Restated; The Impact on Financial TRENDS (Exhibits 3, 4 and 7)**

### APB No. 20

The Accounting Principles Board ("APB") was the immediate predecessor of today's Financial Accounting Standards Board (FASB). APB Opinion No. 20 (Exhibit 7-D) is titled "Accounting Changes." Ideally, there should be no accounting changes from one year, or quarter, to the next, because they impair consistency. Consistency (Exhibits 7-B-D) is the ability to meaningfully compare the financial statements of a company from one year, or quarter, to the next. Users of financial statements value consistency because consistency makes it easier to determine whether the company is improving or deteriorating, with regard to its performance. Consistency also makes it easier to determine whether the company is improving or deteriorating, with regard to its financial condition. Such trends, if any, suggest to financial statement users the nature

12

of the future prospects for the company. Thus, consistency is desired as a fundamental objective, in conformity with Generally Accepted Accounting Principles ("GAAP") (Exhibit 7-A).

APB No. 20 addresses the need to make accounting changes, notwithstanding the preference for consistency in financial reporting. APB No. 20 describes three permissible methods to disclose material accounting changes. If an accounting change is not material, no disclosure should be made (APB No. 20, par. 38). These three methods regarding accounting restatements are as follows:

- Current treatment of accounting changes requires reporting the cumulative effect of the accounting change in the current year's income statement as a special item. Prior period financial statements are not restated.

- Prospective treatment requires no restatement of prior period financial statements. Also, the cumulative effect of the accounting change is not shown in the current year's income statement. Only the current and future years' financial statements will reflect the effects of the accounting change.

- Retroactive treatment, requiring an adjustment to all current and prior period financial statements for the effect of the accounting correction. Prior period financial statements are restated and republished on a basis consistent with the correction.

Retroactive treatment, or restatement, is what was done with the Provident financial statements. Neither current treatment nor prospective treatment would be permissible in a case such as Provident, where the company itself states that the accounting was materially incorrect in the previously issued financial statements. A restatement is appropriate if and only if the "correction has a material effect on income before extraordinary items or on net income ... [or] a material effect on the trend of earnings...." (APB No. 20, par. 38) (Exhibit 7-D).

Provident's previously issued audited annual financial statements for the years

ended 1997, 1998, 1999, 2000 and 2001 were restated.[3]  Also, previously issued quarterly financial statements for the first three quarters of the year ended December 31, 2002, were restated.  The restatement was preliminarily disclosed to the public in Press Releases (Exhibit 5) or attached to a Form 8-K on March 5, 2003 (Exhibit 6-A, B).  Supplementary information about the restatement was disclosed in the company's Form 10-K, on April 15, 2003, as well as in a Form 8-K, also filed on April 15, 2003.  The company disclosed, in its April 15, 2003, filings, that the amount of the restatement was much larger and that the accounting problems were of greater depth, breadth and materiality than the company initially disclosed on March 5, 2003.

The restatement was described by the company in the above referenced filings as due to incorrect mathematical modeling and/or incorrect application of GAAP with regard to certain pools of automobile leases.  The company's filings stated that the lease assets and liabilities should have been placed on the balance sheet instead of off of the balance sheet.  With regard to the income statements, the company stated that net income and earnings per share were overstated.  This is the "soft-sell."

Regardless which characterization (incorrect mathematics or incorrect GAAP) is emphasized, APB No. 20 defines this financial statement restatement by the company as a clear assertion by the company that each and every one of the restated financial statements, when previously issued, was materially misstated:

> Errors in financial statements result from mathematical mistakes, mistakes in the application of accounting principles, or oversight or misuse of facts that existed at the time the financial statements were prepared....  A change from an accounting principle that is not generally accepted to one that is generally accepted is a correction or an error for purposes of applying this Opinion (APB No. 20, par. 13) (Exhibit 7-D).

This is the accurate picture.

---

[3]     Provident announced "a restatement to its operating results for the years 1997 through 2002" (SEC Form 8-K filed March 5, 2003).  However, this is accurate only in an informal sense.  A restatement under APB No. 20 only can occur with regard to financial statements that were previously issues.  The annual financial statements of a public company are not formally issued unless and until they are filed, with an audit report, with the SEC.  Thus, the company's annual financial statements for 2002 were not formally restated.  (See Exhibit 3)

APB No. 20 defines the act of a restatement as an assertion of the company that each restated financial statement was, when originally issued, materially misstated. However, APB No. 20 does not distinguish between corrections of unintentional errors versus intentional frauds. The word "error" is used to refer to both genres of material misstatement.

APB No. 20 requires before-and-after-restatement disclosure for each restated period, with regard to earnings per shares, net income, and (if any extraordinary items) income before extraordinary items (APB No. 20, par. 37). Provident provided the disclosure mandated by APB No. 20 for the years 2001 and 2000 in its 10-K filed April 15, 2003, in Note 3 in the Notes to Consolidated Financial Statements. Provident also provided the disclosure mandated by APB No. 20 for the years 1999 and 1998 in that 10-K's Selected Financial Data. However, Provident did not provide the required disclosure for the year ended <u>December 31, 1997</u>. Provident did not disclose why it contravened APB No. 20, par. 37, which is part of GAAP.

In Table 1 of the Proxy/Registration Materials, Exhibit 1 and 2, the data relevant to persons deciding on whether to vote for the merger and thus opt for Provident stock instead of their current OHSL stock, is presented. As indicated in the discussions above, as well as in Table 1, the full extent of the restatement to the previously issued audited annual financial statements for the year ended December 31, 1997, has not been disclosed to this date. The year ended December 31, 1998 was the last set of audited annual financial statements disclosed to OHSL stockholders who had to make a decision on the merger proposal, and thus were important in making that decision.

Another important aspect of the analysis concerns the restatement's impact on Prudential's earnings trend. Prudential originally reported EPS of $2.48 for 1998 and $3.08 for 1999. This was a 24% increase in EPS. Upon restatement, Prudential reported Earnings Per Share ("EPS") of $2.38 for 1998 and $2.58 for 1999. This is an 8% increase in EPS. An analysis of stock valuation involves the application of a formula to

expectations of future dividends, which are in turn based on the expectations of future growth in EPS, payout ratios, and other factors.

Table 1 of Exhibit 8 depicts the future EPS expectation of an OHSL stockholder in the later summer and early fall of 1999, based on the information available to an OHSL stockholder at that time. Table 1 is constructed using the originally reported and later restated EPS for 1998 and 1999 and then estimating, assuming the same rate of increase. Table 1 shows that the originally reported (24% annual increase trend) EPS expectation is much higher after a few years than the restated (8% annual increase trend) EPS expectation. Table 2 shows an almost identical analysis as to Provident's Net Income. This trend analysis is mandated by APB No. 20, par. 37, and had to have been the basis, in part, for the Provident decision to restate all the annual financial statements back to 1997. The correction of these accounting misstatements was manifestly material and speak for themselves. Such restatements were required by APB No. 20. One must similarly conclude that they were material to the holders of OHSL stock in the late summer and early fall of 1999, in deciding whether the accept Provident stock in a merger transaction.

Provident stated in its SEC filings both on March 5, 2003 and April 15, 2003, that it had misstated its annual financial statements for 1997, 1998, 1999, 2000 and 2001, as well as its quarterly misstatements for the first 3 quarters of 2002. It restated each and every one of these financial statements. APB No. 20 requires restatement if and only if the company concludes that the misstatements are material with regard to "net income... [or] the trend of earnings..." (APB No. 20, par. 38). Provident's restatement of each and every one of these financial statements thus makes the misstatements in each and every one of these financial statement *per se* material. The above analysis shows how the management of Provident reached its conclusion that the misstatement in each and every one of these financial statements is material.

The misstatements in the 1997 and 1998 annual financial statements were material to OHSL stockholders in deciding whether the accept the Provident merger proposal.

16

The financial statements for the first 2 quarters of 1999 were also material. The 1999 annual financial statements are a reasonable approach to use in the materiality trend analysis depicted in the figure, since the first 2 quarters of 1999 were not restated and Provident, in contravention of APB No. 20, par. 37, has not disclosed the full extent of the restatement to the 1997 annual financial statements. The figure suggests that the misstatements corrected by the restatement were more than material -- they were highly material.

**III.    CONCLUSION**

The Plaintiff Class submits that the Court should find Provident liable to the Plaintiffs under Section 11 of the 1933 Act (15 USC §77k) for the material omissions and commissions of fact in the Registration Statement as articulated by the Restatements of earnings and profits now the subject of this litigation as set out herein and grant Summary Judgment to plaintiffs as requested.

Respectfully submitted,

Gene Mesh & Associates

By _____

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219
(513) 221-8800
(513) 221-1097 (fax)

Counsel for Plaintiffs

*17*

## CERTIFICATE OF SERVICE

I hereby certified that a copy of the foregoing Motion for Summary

Judgment was served on this, the 22nd day of January, 2004.

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, OH  45202-3752

J. Michael Debbeler
John B. Pinney, Esq.
Graydon, Head & Ritchey
511 Walnut Street,Suite 1900
Fifth Third Center
P.O. Box 6464
Cincinnati, OH  45202-3157

Michael R. Barrett
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, OH  45202

**BY U.S. MAIL**

John W. Hust
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, OH  45249

James E. Gauch
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113

_____
Stephanie A. Hite