UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Walter W. Thiemann, on behalf of              :
Himself and all others similarly
situated                                      :
                                                    Case No. C-1-00-793
            Plaintiff
                                              :     Judge Sandra S. Beckwith
v.
                                              :     Magistrate Judge Timothy Hogan
OHSL Financial Corporation, (OHSL)                  (Class Action)
et al.
                                              :
            Defendants
                                              :

    **          **          **          **          **

## APPENDIX OF EXHIBITS

(Attached to and in support of Plaintiffs' Motion for Summary Judgment against
Provident Financial Corp.)


Respectfully Submitted,

GENE MESH & ASSOCIATES

By: _____

Gene Mesh (0002076)
Michael G. Brautigam
GENE MESH AND ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Walter W. Thiemann, on behalf of          :
Himself and all others similarly
situated                                  :
                                             Case No. C-1-00-793
              Plaintiff
                                          :   Judge Sandra S. Beckwith
v.
                                          :   Magistrate Judge Timothy Hogan
OHSL Financial Corporation, (OHSL)            (Class Action)
et al.
                                          :
              Defendants
                                          :

    **          **          **          **          **

## DECLARATION OF AUTHENTICITY

Michael G. Brautigam hereby states under oath as follows:

1.  That he is one of plaintiffs' counsel in this case;

2.  That he is familiar with and has reviewed the attached exhibits and exhibit list

    filed in support of Plaintiffs' Motion for Summary Judgment filed herewith;

3.  That all of the attached exhibits are true and correct copies of what they purport to

    represent.

4.  I declare under penalty of perjury that the forgoing is true and correct.


                              Respectfully Submitted,

                              **Michael G. Brautigam**

                              Gene Mesh (0002076)
                              Michael G. Brautigam
                              GENE MESH AND ASSOCIATES
                              2605 Burnet Avenue
                              Cincinnati, Ohio 45219-2502

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, on behalf of Himself and all others similarly situated | : | |
| | : | Case No. C-1-00-793 |
| Plaintiff | | |
| | : | Judge Sandra S. Beckwith |
| v. | | |
| | : | Magistrate Judge Timothy Hogan |
| OHSL Financial Corporation, (OHSL) et al. | | (Class Action) |
| | : | |
| Defendants | | |
| | : | |

      **       **       **       **       **

## INDEX OF EXHIBITS

| Number | Description |
|---|---|
| 1 | Proxy Materials |
| 2 | S-4 Registration Materials |
| 3 | Accounting Expert Report – Materiality |
| 4 | SAB 99 (Materiality) |
| 5 | Market Reactions to Restatements by Provident |
| 6 | March, 2003 Restatement; April, 2003 Restatement |
| 7 | Selected Accounting Principals |
| 8 | Schedule of Write Downs |
| 9 | Affidavit of Ervin Schoenblum, Plaintiffs Damage Expert |

# EXHIBIT 1

## Proxy Materials
## (Exhibit B to CAC, Doc. No. 234)

(For your convenience only the first page is attached)

# OHSL FINANCIAL CORP.
## 5889 Bridgetown Road
## Cincinnati, Ohio 45248

Dear OHSL Financial Corp. Stockholder:

You are cordially invited to attend a Special Meeting of Stockholders of OHSL to be held at 10:00 a.m. Eastern time on October 25, 1999, at Dante's Restaurant, Rybolt Road, Cincinnati, Ohio.

At the Special Meeting, you will be asked to vote on the proposed acquisition of OHSL by Provident Financial Group, Inc. If the acquisition is approved by the holders of a majority of OHSL shares and certain other conditions occur, OHSL stockholders will become Provident Financial stockholders.

The number of shares of Provident Financial common stock to be received by OHSL stockholders in exchange for each outstanding share of OHSL common stock will be determined based on an average Provident Financial share price. The average Provident Financial share price is the 10-day average closing price of Provident Financial common stock ending two days before the closing of the acquisition. Each OHSL stockholder will receive $22.50 worth of Provident Financial common stock if the average Provident Financial share price is between $40.00 and $50.00. If the average Provident Financial share price is below $40.00, each OHSL stockholder will receive 0.5625 shares of Provident Financial common stock for each share of OHSL common stock. If this price is above $50.00, each OHSL stockholder will receive 0.45 shares of Provident Financial common stock for each share of OHSL common stock.

Your Board of Directors has received an opinion from McDonald Investments Inc., its financial advisor, to the effect that the Exchange Ratio is fair to OHSL stockholders from a financial point of view.

Your Board of Directors unanimously approved the acquisition and believes that it is in the best interest of OHSL stockholders. The Board unanimously recommends and advises that you approve the acquisition at the Special Meeting so that the transaction may be completed.

In the materials accompanying this letter you will find a Notice of Special Meeting of Stockholders, a Proxy Statement/Prospectus and a proxy card. The Proxy Statement/Prospectus more fully describes the proposed transaction. We encourage you to read these materials carefully.

Whether or not you plan to attend the Special Meeting, please take the time to vote by completing, signing and returning to us the enclosed proxy card. A postage paid envelope is enclosed for your convenience. If you sign, date and return your proxy card without indicating how you want to vote, your proxy will be counted as a vote in favor of the transaction. Even if you plan to attend the Special Meeting, please complete, sign and return your proxy card. By following certain procedures discussed in the accompanying Proxy Statement/Prospectus, you can later revoke your proxy if you wish.

Sincerely,

Norbert G. Brinker
Chairman of the Board

DEFENDANT'S
EXHIBIT
1

# EXHIBIT 2

## Registration Statement
## (Exhibit F to CAC, Doc. No. 234)

(For your convenience only the first page is attached)

AS FILED WITH THE SECURITIES AND EXCHANGE COMMISSION ON AUGUST 26, 1999

Registration No. 333-

# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549

## FORM S-4
### REGISTRATION STATEMENT UNDER THE SECURITIES ACT OF 1933

# PROVIDENT FINANCIAL GROUP, INC.

(Exact name of registrant as specified in its charter)

| OH | 6022 | ⬛2792 |
|---|---|---|
| (State or other jurisdiction of | (Primary Standard Industrial Classification Code Number) incorporation or organization) | (I.R.S. Employer Identification Number) |

ONE EAST FOURTH STREET
CINCINNATI, OHIO 45202
(513) 579-2000

(Address, including zip code, and telephone number, including area code, of registrant's principal executive offices)

MARK E. MAGEE, ESQ.
VICE PRESIDENT, SECRETARY AND GENERAL COUNSEL
PROVIDENT FINANCIAL GROUP, INC.
ONE EAST FOURTH STREET
CINCINNATI, OHIO 45202
(513) 579-2000

(Name, address, including zip code, and telephone number, including area code, of agent for service)

COPIES TO:

MARK A. WEISS, ESQ.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 PROVIDENT TOWER
ONE EAST FOURTH STREET
CINCINNATI, OHIO 45202
(513) 579-6411

CLIFFORD A. ROE, JR., ESQ.
DINSMORE & SHOHL, LLP
255 EAST FIFTH STREET
CINCINNATI, OHIO 45202
(513) 977-8227

APPROXIMATE DATE OF COMMENCEMENT OF PROPOSED SALE TO THE PUBLIC: As soon as practicable after this Registration Statement becomes effective and all other conditions to the Acquisition described in the enclosed Proxy Statement/Prospectus have been satisfied or waived.

If the securities being registered on this form are being offered in connection with the formation of a holding company and there is compliance with General Instruction G, check the following box. [ ]

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. [ ]

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. [ ]

CALCULATION OF REGISTRATION FEE

| TITLE OF EACH CLASS OF SECURITIES TO BE REGISTERED | AMOUNT TO BE REGISTERED (1) | PROPOSED MAXIMUM OFFERING PRICE PER UNIT | PROPOSED MAXIMUM AGGREGATE OFFERING PRICE (2) | AMOUNT OF REGISTRATION FEE (2) |
|---|---|---|---|---|
| Common Stock, no par value | 1,429,060 shares | N/A | $50,493,432 | $14,038 |

(1)    Based upon the maximum number of shares of common stock that the Registrant may be required to issue in the transaction, calculated as the product of (i) 2,540,550, the aggregate number of shares of common stock of OHSL Financial Corp. ("OHSL") outstanding and shares of common stock of OHSL subject to stock option agreements and (ii) an assumed conversion number of .5625 share of the Registrant's common stock for each share of OHSL common stock.

(2)    Estimated solely for the purpose of calculating the registration fee required by Section 6(b) of the Securities Act of 1933 and computed pursuant to Rule 457(f)(1) thereunder on the basis of the market value of OHSL common stock to be exchanged in the transaction, computed, in accordance with Rule 457(c), as the product of (i) $19.875 (the average of the high and low prices per share of

# EXHIBIT 3

## Accounting Expert Report-
## Materiality

## Expert Opinion of Ross D. Fuerman on the Question of Materiality

### I. Introduction

I have been asked by plaintiffs in OHSD 1:00-cv-00793-SSB-TSH to give an opinion, as an expert in financial accounting and auditing. Specifically, I have been asked whether the Provident Financial Group, Inc. (Provident) accounting restatements are material to persons who used Provident financial statements to decide, during the class period (September 27, 1999 to December 3, 1999), whether to vote for a merger which would result in their exchanging their Oak Hill Savings & Loan (OHSL) stock for Provident stock.

As an expert on financial accounting and auditing, I base my opinion solely on the facts as I understand them, and the authorities of United States financial accounting and auditing.

### II. My Background

I am an Associate Professor in the Department of Accounting at Suffolk University's Sawyer School of Management in Boston, Massachusetts, where I teach financial accounting, auditing, and fraud examination. I am an authority on securities fraud litigation research related to accounting malpractice allegations. Restatements are my particular specialty. I was the first academic to document the empirical link between auditor legal responsibility and restated audited annual financial statements (Fuerman 1996). Most of my subsequent research has included the analysis of restated financial statements. I am cited for my work on restatements by Raghunandan, Read, and

Whisenant (2003) and by Palmrose and Scholz (2004). My resume, attached to this opinion, provides further details of my education, experience, research and affiliations. I have not previously been engaged as an expert in any litigation, administrative or regulatory proceeding. My opinion is independent and would be similar regardless who engaged me.

### III. The Question Presented and How it Should be Analyzed

Are the Provident restatements material? When answering questions concerning United States financial accounting and auditing, one must rely on the authoritative literature detailed in Statements on Auditing Standards (SAS) No. 69 (AU 411). One should place primary reliance on certain authorities, secondary reliance on other authorities, etc. This is known as the GAAP Hierarchy or the House of GAAP. Analysis of the financial accounting of a nongovernmental entity such as Provident therefore should primarily rely on the SAS No. 69 "authoritative body pronouncements," which are the following:

- FASB *Statements and Interpretations*
- APB *Opinions* and
- AICPA *Accounting Research Bulletins.*
- Of these three authoritative body pronouncements, there is only one on point: Accounting Principles Board (APB) Opinion No. 20.

Therefore, this expert opinion, in conformity with SAS No. 69, discusses materiality with regard to APB No. 20.

## IV. APB No. 20

The Accounting Principles Board was the immediate predecessor of today's Financial Accounting Standards Board (FASB). APB Opinion No. 20 is titled "Accounting Changes." Ideally, there should be no accounting changes from one year, or quarter, to the next, because they impair consistency. Consistency is the ability to meaningfully compare the financial statements of a company from one year, or quarter, to the next. Users of financial statements value consistency because consistency makes it easier to determine whether the company is improving or deteriorating, with regard to its performance. Consistency also makes it easier to determine whether the company is improving or deteriorating, with regard to its financial condition. Such trends, if any, suggest to financial statement users the nature of the future prospects for the company. Thus, consistency is desired as a fundamental objective, in US GAAP.

APB No. 20 addresses the need to sometimes make accounting changes, notwithstanding the preference for consistency in financial reporting. APB No. 20 describes three permissible methods to disclose material accounting changes. If an accounting change is not material, no disclosure should be made (APB No. 20, par. 38). These three methods are as follows:

- Current treatment of accounting changes requires reporting the cumulative effect of the accounting change in the current year's income statement as a special item. Prior period financial statements are not restated.

- Prospective treatment requires no restatement of prior period financial statements. Also, the cumulative effect of the accounting change is not shown in the current

year's income statement.  Only the current and future years' financial statements

will reflect the effects of the accounting change.

- Retroactive treatment, requiring an adjustment to all current and prior period

  financial statements for the effect of the accounting correction.  Prior period

  financial statements are restated and republished on a basis consistent with the

  correction.  Retroactive treatment, or restatement, is what was done with the

  Provident financial statements.  Neither current treatment nor prospective

  treatment would be permissible in a case such as Provident, where the company

  itself states that the accounting was materially incorrect in the previously issued

  financial statements.  A restatement is appropriate if and only if the "correction

  has a material effect on income before extraordinary items or on net income...

  [or] a material effect on the trend of earnings...." (APB No. 20, par. 38).

Provident's previously issued audited annual financial statements for the years

ended 1997, 1998, 1999, 2000 and 2001 were restated.[1]  Also, previously issued quarterly

financial statements for the first three quarters of the year ended December 31, 2002,

were restated.  The restatement was preliminarily disclosed to the public in an exhibit

(press release) attached to a Form 8K on March 5, 2003.  Supplementary information

about the restatement was disclosed in the company's Form 10-K, on April 15, 2003, as

well as in a Form 8-K, also filed on April 15, 2003.  The company disclosed, in its April

15, 2003, filings, that the amount of the restatement was much larger and that the

---

[1] Provident announced "a restatement to its operating results for the years 1997 through 2002" (SEC Form 8-K filed March 5, 2003).  However, this is accurate only in an informal sense.  A restatement under APB No. 20 only can occur with regard to financial statements that were previously issued.  The annual financial statements of a public company are not formally issued unless and until they are filed, with an audit report, with the SEC.  Thus, the company's annual financial statements for 2002 were not formally restated.  This kind of ambiguity in SEC filings and in the financial press is commonplace.

accounting problems were of greater depth and breadth than the company initially

disclosed on March 5, 2003.

The restatement was described by the company in the above referenced filings as

due to incorrect mathematical modeling and/or incorrect application of GAAP with

regard to certain pools of automobile leases.  The company's filings stated that the lease

assets and liabilities should have been placed on the balance sheet instead of off of the

balance sheet.  With regard to the income statements, the company stated that net income

and earnings per share were overstated.

Regardless which characterization (incorrect mathematics or incorrect GAAP) is

emphasized, APB No. 20 defines this financial statement restatement by the company as

a clear assertion by the company that each and every one of the restated financial

statements, when previously issued, was materially misstated:

> Errors in financial statements result from mathematical mistakes, mistakes in the
> application of accounting principles, or oversight or misuse of facts that existed at
> the time the financial statements were prepared.... A change from an accounting
> principle that is not generally accepted to one that is generally accepted is a
> correction or an error for purposes of applying this Opinion (APB No. 20, par.
> 13).

APB No. 20 defines the act of a restatement as an assertion of the company that

each restated financial statement was, when originally issued, materially misstated.

However, APB No. 20 does not distinguish between corrections of unintentional errors

versus intentional frauds.  The word "error" is used to refer to both genres of material

misstatement

APB No. 20 requires before-and-after-restatement disclosure for each restated

period, with regard to earnings per share, net income, and (if any extraordinary items)

income before extraordinary items (APB No. 20, par. 37).  Provident provided the

6

disclosure mandated by APB No. 20 for the years 2001 and 2000 in its 10-K filed April 15, 2003, in Note 3 in the Notes to Consolidated Financial Statements. Provident also provided the disclosure mandated by APB No. 20 for the years 1999 and 1998 in that 10-K's Selected Financial Data. However, Provident did not provide the required disclosure for the year ended December 31, 1997. Provident did not disclose why it contravened APB No. 20, par. 37, which is part of GAAP.

In Table 1, the data relevant to persons deciding on whether to vote for the merger and thus opt for Provident stock instead of their current OHSL stock, is presented. As indicated in the discussion above, as well as in Table 1, the full extent of the restatement to the previously issued audited annual financial statements for the year ended December 31, 1997, has not been disclosed.

The full extent of the restatement to the year ended December 31, 1998, both with regard to Net Income and EPS, was a 4% decrease. The year ended December 31, 1998 was the last set of audited annual financial statements disclosed to OHSL stockholders who had to make a decision on the merger proposal, and thus were important in making that decision.

The full extent of the restatement to the year ended December 31, 1999, both with regard to Net Income and EPS, was a 16% decrease. Although these audited annual financial statements were not disclosed to persons who had to make a decision on the merger, they are nonetheless important to consider. The 1999 first and second quarter quarterly financial statements were disclosed to persons who had to make a decision on the merger, and a first order approximation of their overstatement of Net Income and EPS is, logically, 16%. Since only annual, and not quarterly, financial statements were

restated for 1999, this approximation is necessary for a meaningful analysis of materiality.

Another important aspect of the analysis concerns the restatement's impact on Provident's earnings trend. Prudential originally reported EPS of $2.48 for 1998 and $3.08 for 1999. This was a 24% increase in EPS. Upon restatement, Prudential reported EPS of $2.38 for 1998 and $2.58 for 1999. This is an 8% increase in EPS. An analysis of stock valuation involves the application of a formula to expectations of future dividends, which are in turn based on the expectations of future growth in EPS, payout ratios, and other factors.

Figure 1 depicts the future EPS expectation of an OHSL stockholder in the late summer and early fall of 1999, based on the information available to an OHSL stockholder at that time. Figure 1 is constructed using the originally reported and later restated EPS for 1998 and 1999 and then estimating, assuming the same rate of increase. Figure 1 shows that the originally reported (24% annual increase trend) EPS expectation is much higher after a few years than the restated (8% annual increase trend) EPS expectation. As discussed above, trend analysis is mandated by APB No. 20, par 37, and had to have been the basis, in part, for the Provident decision to restate all the annual financial statements back to 1997. One must conclude that the correction of these accounting misstatements was material and that such restatements were required by APB No. 20. One must similarly conclude that they were material to the holders of OHSL stock in the late summer and early fall of 1999, in deciding whether to accept Provident stock in a merger transaction.

**V. Conclusion**

Provident stated in its SEC filings both on March 5, 2003 and April 15, 2003, that it had misstated its annual financial statements for 1997, 1998, 1999, 2000 and 2001, as well as its quarterly misstatements for the first 3 quarters of 2002. It restated each and every one of these financial statements. APB No. 20 requires restatement if and only if the company concludes that the misstatements are material with regard to "net income... [or] the trend of earnings..." (APB No. 20, par. 38). Provident's restatement of each and every one of these financial statements thus makes the misstatement in each and every one of these financial statement *per se* material. The above analysis, presented in a table and depicted in a figure, shows how the management of Provident reached its conclusion that the misstatement in each and every one of these financial statements is material. The misstatements in the 1997 and 1998 annual financial statements were material to OHSL stockholders in deciding whether to accept the Provident merger proposal. The financial statements for the first 2 quarters of 1999 were also material. The 1999 annual financial statements are a reasonable approximation to use in the materiality trend analysis depicted in the figure, since the first 2 quarters of 1999 were not restated and Provident, in contravention of APB No. 20, par. 37, has not disclosed the full extent of the restatement to the 1997 annual financial statements. The figure suggests that the misstatements corrected by the restatement were more than material – they were highly material.

9

# REFERENCES

American Institute of Certified Public Accountants, Statement of Auditing Standards No. 69, "The Meaning of Present Fairly in Conformity with Generally Accepted Accounting Principles," *Professional Standards*, Vol. 1, AU sec. 411).

American Institute of Certified Public Accountants, *Opinions of the Accounting Principles Board No. 20: Accounting Changes* (New York, AICPA, 1971).

Fuerman, R. D., "An Empirical Investigation of the Impact of *Central Bank of Denver* on Securities Disclosure-Related Auditor Litigation Risk," Ph.D. dissertation, University of Cincinnati, 1996.

Palmrose, Z-V. and S. Scholz, "The Circumstances and Legal Consequences of Non-GAAP Reporting: Evidence from Restatements," *Contemporary Accounting Research*, Vol. 21, No. 1, Spring 2004

Raghunandan, K., Read, W. J. and J. S. Whisenant, "Initial Evidence on the Association Between Nonaudit Fees and Restated Financial Statements," *Accounting Horizons*, Vol. 17, No. 3, September 2003, pp. 223-234.

Table 1: Analysis Based on Disclosures Mandated by APB No. 20

| Item | Year | Original Numbers | Preliminary Restatement | Final Restatement | Percent Decreased |
|------|------|------------------|-------------------------|-------------------|-------------------|
| Net Income | 1997 | 114.7 | 113.8 | Not Disclosed | Not Disclosed |
| EPS | 1997 | 2.38 | 2.36 | Not Disclosed | Not Disclosed |
| Net Income | 1998 | 122.4 | 120.4 | 118 | 4% |
| EPS | 1998 | 2.48 | 2.44 | 2.38 | 4% |
| Net Income | 1999 | 150.9 | 139.6 | 127 | 16% |
| EPS | 1999 | 3.08 | 2.85 | 2.58 | 16% |

| 1998 to 1999 Reported EPS Increase | 1998 to 1999 Restated EPS Increase |
|------------------------------------|------------------------------------|
| 24% | 8% |

Figure 1: Prudential EPS Trend: Reported vs. Restated 1998 to 2005 ( 2000 through 2005 estimated)

