# EXHIBIT 8

Schedule of Write Downs

Table 1: Analysis Based on Disclosures Mandated by APB No. 20

| Item | Year | Original Numbers | Preliminary Restatement | Final Restatement | Percent Decreased |
|---|---|---|---|---|---|
| Net Income | 1997 | 114.7 | 113.8 | Not Disclosed | Not Disclosed |
| EPS | 1997 | 2.38 | 2.36 | Not Disclosed | Not Disclosed |
| Net Income | 1998 | 122.4 | 120.4 | 118 | 4% |
| EPS | 1998 | 2.48 | 2.44 | 2.38 | 4% |
| Net Income | 1999 | 150.9 | 139.6 | 127 | 16% |
| EPS | 1999 | 3.08 | 2.85 | 2.58 | 16% |

| 1998 to 1999 Reported EPS Increase | 1998 to 1999 Restated EPS Increase |
|---|---|
| 24% | 8% |

Table 2: Analysis Based on Disclosures Mandated by APB No. 20

| Item | Year | Original Numbers | Preliminary Restatement | Final Restatement | Percent Decreased |
|---|---|---|---|---|---|
| Net Income | 1997 | 114.7 | 113.8 | Not Disclosed | Not Disclosed |
| EPS | 1997 | 2.38 | 2.36 | Not Disclosed | Not Disclosed |
| Net Income | 1998 | 122.4 | 120.4 | 118 | 4% |
| EPS | 1998 | 2.48 | 2.44 | 2.38 | 4% |
| Net Income | 1999 | 150.9 | 139.6 | 127 | 16% |
| EPS | 1999 | 3.08 | 2.85 | 2.58 | 16% |
|  |  | 1998 to 1999 Reported Net Income Increase | 1998 to 1999 Restated Net Income Increase |  |  |
|  |  | 23% | 8% |  |  |

Figure 1: Prudential EPS Trend: Reported vs. [?] 1998 to 2005 (2000 through 2005 estimated)



Table 3:

# EXHIBIT 9

Affidavit of Ervin Schoenblum, Plaintiffs Damage Expert

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann,<br>on behalf of himself and of<br>all others similarly situated, | : | Case No. C-1-00-793 |
| | : | Judge Sandra S. Beckwith |
| Plaintiff, | : | |
| | : | Magistrate Judge Hogan |
| vs. | : | |
| | : | **AFFIDAVIT OF**<br>**ERVIN SCHOENBLUM**<br>**IN SUPPORT OF**<br>**PLAINTIFFS MOTION**<br>**FOR SUMMARY**<br>**JUDGMENT AGAINST**<br>**PROVIDENT FINANCIAL**<br>**GROUP, INC.**<br>**("PROVIDENT")** |
| OHSL Financial Corporation, et al. | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

STATE OF NEW JERSEY     :
                        : SS:
COUNTY OF PASSAIC       :

**ERVIN SCHOENBLUM, being duly sworn, deposes and states as follows:**

1. I have been retained by plaintiffs as a testifying expert in the field of economic damages and have previously submitted my report on damages to the plaintiff class resulting from the Provident acquisition (the Provident – OHSL merger) of the Ohio Corporation, known as OHSL. Along with the report were my qualifications (attached hereto as Exhibit A) as an expert witness as required by the

1

Fed. R. Civ. Pro. in order to opine in matters such as at bar. Since that time, I have provided advice to the plaintiffs and their counsel in drafting the Consolidated Amended Complaint ("CAC") filed December 31, 2003, as well as other matters relating to economic damages and specifically how, if at all, the negative restatements of financial data as alleged in Pars. 87 to 103 and 120 to 121 of the CAC disclosed by Provident in 2003 affected the 1999 Provident – OHSL merger.

2. I make this affidavit in support of Plaintiffs' Motion for Summary Judgment on liability issues under Sec. 11 of the 1933 Securities Act, 15 U.S.C. § 77K brought against Provident Financial Corporation, Inc. ("Provident") which alleges that the restatements were material facts to investors and caused the loss in value of Provident shares shortly thereafter, and would have done so when the merger was considered in 1999.

3. Provident stock was overvalued during the period of September 27, 1999 to December 3, 1999. This is because Provident's March and April 2003 restatements admit the overvaluation in Provident's financial statements in prior years including 1999. Provident would have been materially less attractive as a merger partner had Provident properly accounted for hundreds of millions of dollars of auto lease transactions.

4. The market reaction on the NASDAQ Stock Exchange on which Provident shares were bought and sold by individuals and other entities on a daily basis indicated that the new negative information was quickly

incorporated into the market place where shares were traded. The market reaction was dramatic and Provident stock lost approximately $300 million in total market value of its shares in one trading day after the first negative restatement on March 5, 2003.

5. The <u>first</u> restatement on March 5, 2003 for the years 1997 to 2002 caused a drop in Provident market price from $28.07 per share at the close of trading on March 4, 2003 to $22.46 on March 5, 2003. The per share price for the ten trading days after the first restatement averaged $21.72 and represented a total decrease per share of 22.6%. Had the true financial picture been known when the merger was considered, that deflation alone would have reduced the total value of Provident shares used in the OHSL merger by $12.9 million (22.6% of $57, 162, 375).

6. The <u>second</u> restatement on April 15, 2003 for the years 1994 to 2002 further reduced Provident's profit numbers by $44.4 million. Had Provident's true financial picture been known when the merger was considered, the deflation caused by this second reduction in profit would have reduced the per share market price of Provident shares an additional estimated 7.1% of the original artificially inflated exchange value ($57,162, 375), or a further negative dollar drop of $4.1 million for OHSL shareholders.

3

7. The total negative impact on the market value of Provident shares used as the currency for the OHSL-Provident merger caused by the first and second restatements was approximately $17 million in fact.

8. This is the manner by which the market reacted to the restatements by Provident as computed only on the Provident shares used in the OHSL merger; the total market reaction was to decrease the total market capitalization of Provident shares by approximately $300 million almost immediately. This sudden downward spiral was attributable only to the materiality of the Provident restatements as all other comparable banks' share values in the industry remained stable at that time.

9. Provident has announced that the adverse impact on the financial statements resulting from the restatements will continue, albeit in decreasing amounts, for several years to come.

FURTHER AFFIANT SAYETH NAUGHT

*Ervin Schoenblum*
ERVIN SCHOENBLUM

Sworn to before me and subscribed in my presence this 20 day of January 2004.

Edward Azar
Notary Public of New Jersey
My Commission expires April 26, 2005

4

Exhibit 1 (p.1 of 2)

## Curriculum Vitae

ERVIN SCHOENBLUM
40 MANDEVILLE DRIVE
WAYNE, NEW JERSEY 07470
(973) 696-7682

### SUMMARY OF RELEVANT EXPERIENCE

Thirty-two years of management consulting in valuations, acquisitions and other investment evaluations, profit improvement programs and economic analyses in litigation matters. Participated in about 450 engagements in a broad range of industries. Prior to consulting, spent four years in engineering.

### EDUCATION

| | |
|---|---|
| 1966-68 | Harvard Business School - Master of Business Administration |
| 1962-65 | New Jersey Institute of Technology - MSEE (Cum Laude) |
| 1958-62 | New Jersey Institute of Technology - BSEE (top 10%) |

### BUSINESS EXPERIENCE

Nov. 82 to Present
Management Consultant
Self-Employed - Wayne, NJ
Performed valuations, acquisition and other reviews for investors and developed profit improvement programs in numerous industries. Also, prepared valuation and economic analyses in litigation matters and testified thereon. Recently, also Acting President of a publicly-held medical devices company.

May 81 to Oct. 82
Director of Acquisitions and Consulting
Page Mill Management Group - New York, NY
Performed valuations, acquisition and other reviews, oversaw several holdings and instituted productivity and profit improvement programs.

Exhibit 1 (p.2 of 2)

ERVIN SCHOENBLUM                                              PAGE TWO

| | |
|---|---|
| Aug. 68 to Apr. 81 | Manager, Management Consulting Department<br>**Peat, Marwick, Mitchell & Co. - New York, NY**<br>Coordinated big-8 accounting firm's litigation consulting practice. Managed and worked on litigation engagements in many industries with a broad range in client size. Also, worked on valuations, acquisitions and other reviews and profit improvement programs. |
| June 62 to Aug. 66 | Project Engineer in Navigation and Control<br>**Bendix Corporation - Teterboro, NJ**<br>Worked as an electrical and aeronautical engineer. |
| Sept. 65 to June 66 (evenings) | Adjunct Professor in Electrical Engineering<br>**New Jersey Institute of Technology - Newark, NJ** |

## PRESENTATIONS AND PUBLICATIONS

Keynote speaker at conferences and meetings on several management-related topics. Lecturer at American Bar Association and NJ Institute for Continuing Legal Education seminars on Economic Expert Testimony. Quoted in several publications including *The Wall Street Journal* and articles have appeared in numerous publications. Article, "Overview and Perspective on Productivity", awarded first prize in PMM&Co. Worldwide Author Awards.

## AFFILIATIONS

Member of numerous clubs and organizations including National Association of Forensic Economists, National Forensic Center, Harvard Business School Club and four academic honor fraternities. President of an investment group and past-President of a 400-member service organization. Advisory Board member of NJIT's College of Arts and Sciences, Board member of a publicly-held company and several community organizations.