EXHIBIT 1

**EXCERPT FROM THE**
**REPORT OF THE JUDICIAL CONFERENCE**
**COMMITTEE ON RULES OF PRACTICE AND PROCEDURE**

**TO THE CHIEF JUSTICE OF THE UNITED STATES AND MEMBERS OF THE**
**JUDICIAL CONFERENCE OF THE UNITED STATES:**

\* \* \* \* \*

**FEDERAL RULES OF CIVIL PROCEDURE**

<u>Rules Recommended for Approval and Transmission</u>

The Advisory Committee on Civil Rules submitted proposed amendments to Rules 23, 51, 53, 54, and 71A with a recommendation that they be approved and transmitted to the Judicial Conference. The amendments were circulated to the bench and bar for comment in August 2001. Public hearings were held on the proposed amendments in San Francisco, California, and Washington, D.C. More than 40 witnesses testified at the hearings. The advisory committee also sponsored a conference at the University of Chicago Law School on proposed amendments to Rule 23. In addition to the published amendments, the conference addressed preliminary proposals dealing with overlapping and competing class actions filed in state courts.

<u>RULE 23 (CLASS ACTIONS)</u>

Over the last ten years, the advisory committee has undertaken an intensive consideration and review of Rule 23, the class-action rule. This ongoing review by the advisory committee is the first review of Rule 23 following the thorough reworking of the Rule in amendments made in 1966. But in the now almost 40 years since that time, Rule 23 has figured prominently in the explosive growth of large-scale group litigation in federal and state courts, and has both shaped and — in its interpretation and application — been shaped by revolutionary developments in modern complex litigation. The drafters of the 1966 amendments knew that after some appropriate period of time it would be important to reconsider what they had done.

The present set of proposed amendments takes account of continuing rapid changes in Rule 23 practice and focuses on the persistent problem areas in the conduct of class suits. The proposals focus on class-action procedures rather than on substantive certification standards. The overall goal of the advisory committee has been to develop rule amendments that provide the district courts with the tools, authority, and discretion to closely supervise class-action litigation.

The advisory committee had before it an unusually rich record concerning the operation of Rule 23, including the voluminous record generated in the public comments on the proposed revisions to Rule 23 in 1996; the Federal Judicial Center's 1996 empirical study of federal class action suits; the RAND Institute for Civil Justice's publication in 2000 of *Class Action Dilemmas: Pursuing Public Goals for Private Gain*, analyzing the results of detailed case studies and surveys of lawyers engaged in class-action litigation in state and federal courts; and the extensive materials assembled by the Working Group on Mass Torts, including the 1999 *Report on Mass Tort Litigation*. In addition to these sources, the advisory committee obtained practical insight by consulting with a number of experienced class-action practitioners who represent all major points of view. Taken as a whole, the package is a balanced and neutral attempt to protect individual class members, enhance judicial oversight and discretion, and further the overall goals of the class-action device — efficiency, uniform treatment of like cases, and access to court for claims that cannot be litigated individually without sacrificing procedural fairness or bringing about other undesirable results.

The proposed amendments focus on four areas: the timing of the certification decision and notice; judicial oversight of settlements; attorney appointment; and attorney compensation.

*Rule 23(c)(1)(A): The Timing of Certification*

In 1996, the advisory committee published a package of proposed amendments to Rule 23 dealing with class certification for comment. Included was a proposed amendment to Rule 23(c)(1) that would change the requirement that a certification decision be made "as soon as practicable" into a requirement that the decision be made "when practicable." Although public comment was largely favorable, the Standing Rules Committee declined to approve the amendment on two grounds. The first was that it would be better to consider all Rule 23 changes in a single package, the consideration of which had been deferred in anticipation of the Supreme Court's pending decision in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). The second was concern that the change in wording would encourage courts to delay deciding certification motions, leading to an unwarranted increase in precertification discovery into the merits of a class suit.

Amended Rule 23(c)(1)(A) recommends a new variation on the "when practicable" language, calling for a certification determination "at an early practicable time." The Committee Notes address the concerns previously identified. The proposed language is consistent with present good practices. Courts generally make certification decisions only after the deliberation required for a sound decision, as shown by Federal Judicial Center statistics on the time from filing to decision of certification motions. Courts decide certification motions promptly, but only after receiving the information necessary to decide whether certification should be granted or denied and how to define the class if certification is granted. The Committee Notes clearly state that the amended language is not intended to permit undue delay or permit extensive discovery unrelated to certification.

The proposed amendment at first reading may seem a matter of semantics. In fact, it authorizes the more flexible approach many courts take to class-action litigation, recognizing the important consequences to the parties of the court's decision on certification. The current rule's

emphasis on dispatch in making the certification decision has, in some circumstances, led courts to believe that they are overly constrained in the period before certification.  A certain amount of discovery may be appropriate during this period to illuminate issues bearing on certification, including the nature of the issues that will be tried; whether the evidence on the merits is common to the members of the proposed class; whether the issues are susceptible to class-wide proof; and what trial-management problems the case will present.

The proposed language is consistent with the practice of authorizing discovery on the nature of the merits issues, which may be necessary for certification decisions, while postponing discovery pertaining to the probable outcome on the merits until after the certification decision has been made.  As the Committee Notes discuss, certification discovery need not concern the weight of the merits or the strength of the evidence.   By making it clear that the timing of a certification decision, and related discovery, is limited to that necessary to determine certification issues, the amended Rule and Note give courts and lawyers guidance lacking in the present rule.  The proposed amendment brings the present rule into conformity with the approach taken by experienced judicial officers.  The relatively extensive public comment on this proposal was generally favorable.

*Rule 23(c)(1)(B):  The Order Certifying a Class*

Proposed Rule 23(c)(1)(B) specifies the contents of an order certifying a class action.  Such a requirement facilitates application of the interlocutory-appeal provision of Rule 23(f) by requiring that a court must define the class it is certifying and identify the class claims, issues, and defenses.  The proposed amendment also requires that the order appoint class counsel under Rule 23(g).

*Rule 23(c)(1)(C):  The Conditional Nature of Class Certification*

Under proposed Rule 23(c)(1)(C) an order granting or denying class certification may be amended at any time up to "final judgment"; the current rule terminates the power at "the decision on the merits," an event that may happen before final judgment. This change avoids possible ambiguity in the reference to "the decision on the merits," which may apply, for example, to a determination of liability made *before* final disposition. Later proceedings to define the remedy may demonstrate the need to amend the class definition or subdivide the class. Rule 23(c)(1)(C) would also be amended to delete the provision for conditional class certification. The provision for conditional class certification is deleted to avoid the unintended suggestion, which some courts have adopted, that class certification may be granted on a tentative basis, even if it is unclear that the rule requirements are satisfied. The court's power to later redefine or decertify the class is left undisturbed.

*Rule 23(c)(2): Notice*

Amended Rule 23(c)(2)(A) would recognize the court's authority to direct "appropriate" notice in (b)(1) and (b)(2) class actions. Members of classes certified under (b)(1) or (b)(2) have interests that may deserve protection by notice. Notice to such classes, as compared with (b)(3) classes, is intended to serve more limited, but important, interests, such as the interest in monitoring the conduct of the action. The advisory committee, however, was sensitive to the concern that mandating notice in all (b)(1) and (b)(2) actions could overwhelm a public-interest group seeking class-action relief with only modest resources. In response to public comment from members of the civil rights bar, the advisory committee revised the language — which had been mandatory — to place the giving of notice in (b)(1) and (b)(2) actions within the district court's discretion. The Committee Note expressly cautions courts to exercise the authority to direct notice in these actions with care. The court retains the discretion not to direct any type of notice after balancing the risk that notice costs may deter the pursuit of class relief against the

benefits of notice in the particular case.  If the court decides that notice is appropriate, it also need not require notice to be made in the same manner as in a (b)(3) action by individual notice, because there is no right to request exclusion from (b)(1) and (b)(2) classes.

Proposed new Rule 23(c)(2)(B) carries forward the present notice requirement for (b)(3) class actions.  It requires what the cases now treat as aspirational: class-action notices are to be in "plain, easily understood language."

*Rule 23(e):  Settlement Review*

The need for improved judicial review of proposed class settlements, along with the abuses that can result without effective judicial review, was a recurring theme in the testimony and written statements submitted to the advisory committee during public comment on the 1996 rule proposals.  The RAND study also called for closer judicial review of class-action settlements. The proposed amendments focus on strengthening the rule provisions governing the process of reviewing and approving proposed class settlements in a setting that often lacks the illumination brought by an adversary process.

New Rule 23(e)(1)(A) would limit the requirement of court approval of any settlement, voluntary dismissal, or compromise of a class claim to cases in which a class has been certified. Approval is not required if class allegations are withdrawn as part of a disposition reached before a class is certified since putative class members are not bound by the settlement.

New Rule 23(e)(1)(B) would require notice of a proposed settlement, but only when class members would be bound by the settlement.  The notice is to issue to the class in a "reasonable" manner; individual notice is not required in all classes or all settlements.

New Rule 23(e)(1)(C) would adopt an explicit standard for approving a settlement for a class: the proposed settlement must be "fair, reasonable, and adequate."  This is the standard that

has been stated in the case law.  The district court must also make findings to support the conclusion that the settlement meets this standard.

New Rule 23(e)(2) would require the parties to file a statement identifying any agreement made in connection with a settlement.  Such "side agreements" can be important to understanding the terms the parties and counsel have agreed to, but sometimes are not disclosed to the court.  There is concern that some side agreements may influence the terms of settlement by trading away possible advantages for the class in return for advantages for others.

The disclosure of side agreements, however, should not automatically become the occasion for discovery by the parties.  Nonetheless, a court can direct a party to provide to the court or to the other parties (with appropriate confidentiality safeguards) a copy of the full terms of any agreement identified by any party as made in connection with the settlement.

*Rule 23(e)(3): Second Opt-Out Opportunity*

New Rule 23(e)(3) would establish authority to permit a second opportunity to opt out of a (b)(3) class if settlement is proposed after expiration of the original opportunity to request exclusion.  There is no presumption that a second opt-out opportunity should be afforded.  That question is left entirely to the court's discretion.  This provision would enhance judicial discretion to provide the same ability to opt out with knowledge of the settlement terms that is enjoyed by members of the many (b)(3) classes that are considered for certification — and thus afford a right to request exclusion — after a settlement has been reached.

When a case is certified for trial before settlement has been reached, the decision whether to opt out may be made well before the nature and scope of liability and damages are understood.  Settlement may be reached only after the opportunity to request exclusion has expired, and after great changes in class members' circumstances and other aspects of the litigation.  The proposal permits the court to refuse to approve a settlement unless it affords a new opportunity to request

exclusion, at a time when class members can make an informed decision based on the proposed settlement terms. In appropriate cases, the court can establish an opportunity to opt out that is as meaningful as the opportunity afforded in the many cases that now reach settlement before certification is ordered. And at a more basic level, the second opt-out opportunity gives class members the same opportunity to accept or reject a proposed settlement as persons enjoy in individual law suits.

This proposal introduces a measure of class-member self-determination and control that best harmonizes the class action with traditional litigation. The presumption of consent that follows a failure to affirmatively opt out at the time of certification may lose its footing when circumstances have changed materially from the time when the class action is finally settled. In these cases, a second opt-out opportunity could relieve individuals from the unforeseen consequences of inaction or decisions made at the time of certification, when limited meaningful information was available. The proposed second opt-out opportunity may provide added assurance to the supervising court that a settlement is fair, reasonable, and adequate. It is just the sort of "structural assurance of fairness," mentioned in *Amchem Products Inc.*, that permits class actions in the first place.

The proposal will only make a difference in cases in which the class is certified and the initial opt-out period expires before a settlement agreement is reached. It is irrelevant in those cases in which a settlement agreement is submitted to the court simultaneously with a request that a class be certified. Even when applicable, however, a court may decide that the circumstances make providing a second opportunity to request exclusion inadvisable. The case may have been litigated to a stage that makes it similar to a fully tried suit and that reduces the need for a second opportunity to opt out. There may not have been a significant change in circumstances or lapse in time between the initial opt-out opportunity and the settlement. There

Rules-Page 8

may be other circumstances that make the additional opt-out opportunity inadvisable. Accordingly, the amendments provide a court with broad discretion to assess and determine whether in the particular circumstances a second opt-out opportunity is warranted before approving a settlement.

The advisory committee received several comments on this proposal. It is fair to say that the comments, whether favorable or unfavorable, do not line up by plaintiffs and defendants. Some class-action plaintiffs' lawyers favor and some oppose the proposal. The same is true of the defense bar. Academic commentary has been favorable. District judge members of the advisory committee and of the Standing Rules Committee welcome the enhancement to their discretion.

The advisory committee carefully considered concerns that a second opt-out opportunity might inject additional uncertainty into settlement and create opportunities unrelated to the purpose of the second opt out, potentially defeating some settlements and making others more costly. Under this view, the proposal would create an opportunity for dissatisfied or mercenary counsel to woo class members away from the settlement with promises of a superior alternative settlement award. Balanced against these concerns is the fact that permission to opt out after a tentative settlement is reached is not novel in certain kinds of class-action litigation and generally has not been detrimental to these class-action settlements. Many cases settle before certification in the knowledge that class members must be given a first opportunity to opt out. And when settlements are reached after expiration of the original exclusion period, the terms — particularly in mass tort actions — often include a second opt-out opportunity. The possibility that "too many" class members may opt out during a second-opportunity stage, leaving a defendant with a less comprehensive settlement, is usually guarded against by including

provisions in the settlement agreement allowing the parties to abandon the settlement if a pre-determined number or proportion of the class takes advantage of the second opt-out opportunity.

Although providing a second opt-out opportunity may change the dynamics of the negotiation process in some cases, the advisory committee is persuaded that ensuring the fairness of the process outweighs any potential efficiency loss and that provision of the opportunity in appropriate cases, in the court's discretion, will not be unduly disruptive to settlement. District judges are by no means averse to class-action settlements, and they will apply their discretion to employ this new tool carefully.

New Rule 23(e)(4) would confirm the right of class members to object to a proposed settlement, and would require court approval for withdrawal of an objection.

### Rule 23(g): Class Counsel Appointment

All recent examinations of class-action practice recognize the crucial significance of class counsel. But Rule 23 nowhere addresses the selection or responsibilities of class counsel. Until now, the adequacy of counsel has been considered only indirectly as part of the Rule 23(a)(4) determination whether the named class representatives will fairly and adequately protect the interests of the class. The proposed amendments build on experience under Rule 23(a)(4) and fill the gap by articulating the responsibility of class counsel and providing an appointment procedure.

Proposed paragraph (1)(A) recognizes the requirement that class counsel be appointed for each class that the court certifies, unless a statute such as the Private Securities Litigation Reform Act (Pub. Law No. 104-67) establishes different requirements.

Proposed paragraph (1)(B) states that class counsel "must fairly and adequately represent the interests of the class." The Committee Note discusses the distinctive role of class counsel, making it clear that the relationship between class counsel and individual class members,

including the class representatives, is not the same as the one between a lawyer and an individual client.  Appointment as class counsel entails special, paramount responsibilities to the class as a whole.

Proposed paragraph (1)(C) sets out the criteria that a court must consider in appointing class counsel, including the work counsel has performed in the action, counsel's experience in complex litigation and knowledge of the applicable law, and the resources counsel will commit to the representation.  Under the proposed amendments, a court may also direct potential class counsel to provide additional information to assist it in making the appointment decision, including the proposed terms of an attorney fee award.  The provision encourages counsel and the court to reach early shared understandings about the basis on which fees will be sought. Such a provision has been encouraged by judges emphasizing the importance of judicial control over attorney fee awards.   This feature might obviate later objections to the fee request, serve as a more productive way for the court to deal in advance with fee award matters that seem to defy regulation after the fact, and accommodate competing applications or innovative approaches when appropriate.

Proposed paragraph (2) sets out the appointment procedure for class counsel.  Paragraph (2)(A) would point out that the court may appoint interim counsel during the precertification period as a case-management measure.  Paragraph (2)(B) would recognize that the court's scrutiny of potential class counsel will differ depending on whether there are multiple applicants for the position.  If there is one applicant, the court may make the appointment only if the applicant is adequate under the criteria identified in Rule 23(g)(1)(C).  If there are multiple applicants, however, the court must appoint the applicant best able to represent the interests of the class.  The proposed rule takes no position on auctions or similar judicial efforts to engender competition.  The Note recognizes that one factor that may be important in selecting class

counsel in the multiple-applicant situation is an existing attorney-client relationship between the class representative and counsel.  Paragraph 2(C) would specifically authorize the court to include provisions regarding attorney fees in the order appointing class counsel.

The advisory committee made several adjustments to the proposal in response to public comment.  Most of the changes clarified the difference between the situation in which no applicant applies for appointment and the situation in which several lawyers or firms seek apointment.

*Rule 23(h):   Attorney Fees*

Attorney fees play a prominent role in class-action practice and are the focus of much of the concern about class actions. The award of large attorney fees in the absence of meaningful recoveries by class members in some class actions brings the civil justice system into disrepute. Courts have increasingly assumed significant responsibility for determining attorney's fees, rather than simply accepting previously negotiated arrangements.  They have also examined the actual benefits accruing to the class members as opposed to speculative estimates (such as coupon recoveries).  But the Civil Rules themselves provide little guidance in this area, which may have contributed to some inconsistency in application.  The only provisions on fee awards in the Civil Rules appear in Rule 54(d)(2), but that Rule is not tailored to the special features of class actions.  The proposed amendment addresses notification to the class of a motion for award of fees, the rights of objectors, and the criteria to be considered in determining the amount of the fee award.

Under proposed subdivision (h), a court may award attorney fees in a class action only if authorized by law or the parties' agreement.  The award must be "reasonable," and it is the

court's duty to determine the reasonable amount. The proposed rule does not attempt to influence the ongoing case law development regarding a choice between (or combination of) the percentage and lodestar amounts. As emphasized in the Committee Note, because the class action is a creation of the court, the court has a special responsibility to monitor the attorney fee award, as it also does with regard to proposed settlements. The Note further recognizes the critical role of the court in ensuring that the class action achieved actual results for class members that warrant a substantial fee award.

Paragraph (1) would establish that the attorney fee motion is made under Rule 54(d)(2), "subject to the provisions of this subdivision, at a time set by the court." It is important to maintain the integration of all fee orders with the entry-of-judgment and appeal-time provisions of Civil Rule 58 and Appellate Rule 4, which — under amendments to take effect this December 1 — are explicitly integrated with Rule 54. But it also is important to recognize the distinctive features of class-action fee applications, particularly with respect to the appropriate time for a fee motion. Subdivision (h) would provide that a motion for fees must be made "at a time set by the court."

The proposed amendment also requires that notice regarding attorney fee motions by class counsel be directed to class members in a reasonable manner (similar to Rule 23(e) notice to the class of a proposed settlement). In a case in which settlement approval is contemplated, notice of class counsel's fee motion should be combined with notice of the proposed settlement. In an adjudicated case, the court may modify the notice to avoid undue expense.

Paragraph (2) would allow any class member or party from whom payment is sought to object to the attorney fee motion. The Committee Note points out that the court may direct discovery depending on the completeness of the material submitted in support of the fee motion,

which depends in part on the applicable fee-measurement standard.  The Note also makes clear that broad discovery is not normally approved in regard to fee motions.

Proposed paragraph (3) calls for findings under Rule 52(a) and authorizes the court to determine whether to hold a hearing on the motion.  In settled class actions, the hearing might well be held in conjunction with proceedings under Rule 23(e), and in other situations there should be considerable flexibility in determining what suffices as a hearing.  The findings requirement provides important support for meaningful appellate review.  As under Rule 54(d)(2), the court can refer the motion to a special master or magistrate judge.  The Committee Note sets out the factors that courts have recently, and consistently, found important to consider in determining whether the fee sought is "reasonable."  The Note attempts to identify the analytic framework for such determinations, recognizing that the case law will continue to develop and will have subtle variations from circuit to circuit.  The factors discussed in the Note cut across different methods of determining the size of fee awards, such as percentage of fund or lodestar.

RULE 51 (INSTRUCTIONS TO JURY: OBJECTION)

The Rule 51 project began with a specific request from the Ninth Circuit Judicial Council.  Reviewing local district rules, the Ninth Circuit found that many districts had rules that require submission of proposed jury instructions before trial begins.  The Council was concerned that these rules may be invalid in light of Rule 51's provision for filing requests "[a]t the close of the evidence or at such earlier time *during trial* as the court reasonably directs."  The proposed amendments expressly validate the practices of these courts. The proposed amendments also are designed to capture many of the interpretations of Rule 51 that have emerged in practice and remove traps for the unwary.

Proposed amendments to subdivision (a) govern requests regarding instructions to the jury.  The revision recognizes a court's authority to direct that the requests be submitted before

trial. But the amendment expressly allows a party to file a later request concerning issues that could not reasonably have been anticipated at the earlier time for requests set by the court. The court also may permit untimely requests on any issue.

The proposed amendments to subdivision (b) govern the instructions to the jury. Paragraph (1) requires the court to inform the parties of all instructions, not only action on requests, before instructing the jury and before jury arguments. Paragraph (2) makes explicit the parties' opportunity to object on the record to the proposed instructions. Paragraph (3) recognizes the practice of instructing the jury "at any time after trial begins and before the jury is discharged."

Under the present Rule 51, a party who wants an issue covered by instructions must do both of two things: make a timely request, and then separately object to failure to give the request as made. The requirement that a request be renewed by an objection is all too often overlooked. These common failures arise in part from the ambiguous language of present Rule 51. The requirement, however, serves useful purposes. Courts of appeals have explained that repetition is useful, at times to ensure that the court had not simply forgotten the request or its intention to give the requested instruction, and at other times to show the court that it has failed in its attempt to give the substance of a requested instruction in better form. These purposes may be fully satisfied by means short of a renewed formal objection. Proposed new Rule 51(d)(1)(B) accommodates these interests by two steps. First, it makes clear that both request and objection are required. But then it also provides that a request suffices without a later objection if "the court made a definitive ruling on the record rejecting the request."

Many circuits recognize a "plain," "clear," or "fundamental" error doctrine that allows reversal despite failure to comply with Rule 51. This doctrine is not reflected at all in the text of Rule 51, but is explicit in the general "plain errors" provision of Criminal Rule 52. The contrast

between Criminal Rule 52 and Rule 51 has led some circuits to reject the plain-error doctrine for civil jury instructions. Rule 51(d)(2) would be revised to adopt a plain-error provision parallel to the approach taken in Criminal Rule 52(b).

Rule 53 (Masters)

The Rule 53 project began several years ago, prompted by observations addressed to the advisory committee by two local district-court committees formed to develop Civil Justice Reform Act plans. In working through the Civil Rules, these committees observed that Rule 53 does not describe the uses of special masters that have grown up over the years. Present Rule 53 addresses only trial masters who hear trial testimony and report recommended findings. The Supreme Court has severely limited resort to trial masters. But masters have come to be used increasingly for pretrial and post-trial purposes. A study by the Federal Judicial Center confirmed the belief that masters are frequently appointed for pretrial and post-trial duties. The proposed amendment is designed to reflect contemporary practice, and to establish a framework to regularize the practice.

In general, proposed new Rule 53 brings pretrial and post-trial masters expressly into the rule, establishing the standard for appointment. It carries forward the demanding standard established by the Supreme Court for appointment of trial masters, and eliminates trial masters from jury-tried cases except upon consent of the parties. The rule establishes that a master's findings or recommendations for findings of fact are reviewed de novo by the court, with limited exceptions adopted with the parties' consent and the court's approval.

Rule 53(a)(1)(B) would continue to limit the use of trial masters to actions to be tried to the court without a jury when some "exceptional condition" warrants it or when there is need to perform an accounting or resolve difficult computations. But the present provision for appointment of a trial master in a jury trial is deleted, except when a statute provides otherwise

or with the consent of the parties.  Deleting the provision for use of a trial master in a jury trial does not foreclose other means of providing neutral assistance to a jury in a complex case, such as by a court appointment of an expert witness under Federal Rule of Evidence 706.  Some courts have found it possible to combine the functions of master and court-appointed expert in various ways.  Appointment as an expert witness ensures that the jury is informed, through examination and cross-examination, of the grounds for the expert's recommended conclusions and preserves procedural fairness.

Paragraph (1)(C) would expressly authorize a court to appoint a special master to handle pretrial and post-trial matters.  The proposed amendment is not designed to encourage — nor, for that matter, to discourage — use of special masters.  Appointment is limited to matters that cannot be addressed effectively and in a timely fashion by an available district judge or magistrate judge of the district.

Subdivision (b) would regularize the practice governing the appointment of a master. Parties are given the opportunity to be heard before the court appoints a master.   The appointment order must state the master's duties, the circumstances — if any — when ex parte communications are permitted, the record to be maintained, the terms of compensation for the master, and the procedures and standards for reviewing the master's findings and recommendations.

Proposed Rule 53(g)(3) increases the court's responsibility for fact matters.  It requires de novo determination of objections to fact findings unless the parties stipulate with the court's consent that review is for clear error, or that the findings of a master appointed by consent or for pretrial or post-trial duties will be final.  The Committee Note adds a reminder that the court may determine fact issues de novo even if no party objects.  The changes are consistent with several appellate decisions that reflect substantial reservations about the authority of an Article III judge

to delegate responsibility to a master. A master's conclusions of law will continue to be reviewed de novo by the court.

Subdivision (h) would set out the procedures governing the compensation of a master.

Proposed subdivision (i) carries forward the provisions of present Rule 53(f), stating that a magistrate judge is subject to Rule 53 only when the order referring a matter to the magistrate judge expressly provides that reference is made under Rule 53.

*Technical and Conforming Amendments*

The citations to Rule 53 contained in Rules 54(d) and 71A(h) would be changed to reflect the renumbered provisions in amended Rule 53.

The advisory committee also recommended that the outdated references to the last century in three forms in the appendix to the Civil Rules be updated. The proposed revisions would substitute references to "20__" for "19__" in Forms 19, 31, and 32. The advisory committee concluded that neither public notice nor comment is appropriate or necessary because the proposals are purely technical and do not substantively change the forms.

The Committee concurred with the advisory committee's recommendations. An excerpt from the advisory committee report describes the proposed amendments and is set out in Appendix B.

> **Recommendation**: That the Judicial Conference approve the proposed amendments to Civil Rules 23, 51, 53, 54, and 71A and the revisions to Forms 19, 31, and 32 and transmit these changes to the Supreme Court for its consideration with a recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

* * * * *

# EXHIBIT 2

**REPORT OF THE OSBA SPECIAL COMMITTEE ON
MULTIJURISDICTIONAL PRACTICE (MJP)
AS ADOPTED BY THE OHIO STATE BAR ASSOCIATION
COUNCIL OF DELEGATES**

In January, 2001, then OSBA President Reginald S. Jackson, Jr. appointed a Special Committee on Multijurisdictional Practice (MJP) to examine all of the aspects of MJP, including its relationship to the unauthorized practice of law and the regulation of the legal profession.

The Special Committee is composed of Robert N. Farquhar, Chair, Dayton; F. M. Apicella, Cleveland; Frank E. Bazler, Troy; Professor William C. Becker, Akron; Paula L. Brooks, Columbus; Richard D. Brooks, Jr., Columbus; Robert L. Ellis, Columbus; Jonathan W. Marshall, Columbus; Marcia J. Mengel, Columbus; Frederick L. Oremus, Athens; Mary Lee Pilla, Solon; Kenneth F. Seibel, Cincinnati; and Patricia A. Walker, Medina. Staff support was provided by William K. Weisenberg, Assistant Executive Director for Public Affairs and Government Relations and Eugene P. Whetzel, General Counsel.

The Special Committee met on May 3, 2001 and June 15, 2001. In addition, it reviewed numerous documents and reports from the American Bar Association Commission on MJP and other jurisdictions. Special Committee members Robert N. Farquhar and F. M. Apicella and staff counsel William K. Weisenberg attended hearings conducted by the ABA Commission, and the Special Committee conducted a survey of OSBA members that is included as an appendix to this report.

The Special Committee recognizes the changing landscape of the world in which we live, where commerce and industry seems without boundaries or barriers. Technology has ushered in an age of instant and boundless communication where geographic and jurisdictional boundaries appear as mere lines on a map. Today, the practicing lawyer can conduct business on behalf of a client across states, countries, and continents without leaving his or her home or office. If

necessary, the same lawyer could transact business in multiple locations in a single day.  The increase in the speed by which we travel and communicate brings with it rising client expectations concerning how fast can the "deal" be consummated and where to go next.  Clients want their lawyers to transact business on their behalf and want their lawyers to be front and center.  Today's lawyers are expected to be mobile and extra-territorial.

Increasingly, the practice of law is a national-international profession.  Lawyers transact business and provide representation across state lines more than ever, using teleconferencing, facsimiles, and other means of electronic communication.  What laws and ethical rules should apply to these endeavors?  Does the Ohio lawyer risk engaging in the unauthorized practice of law while representing a client in Illinois?  More substantively, should the lawyer be exposed to such a risk?  Should the Illinois lawyer representing a client "incidentally" in Ohio need to be licensed in Ohio?  Should the Illinois lawyer be subject to Ohio's disciplinary rules, continuing legal education rules, competence, character and fitness, and professional liability insurance rules?  What if the "foreign" lawyer sets up "shop" in Ohio or affiliates with an Ohio law firm?  Should the "foreign" lawyer be required to register or notify Ohio authorities?  Should the "foreign" lawyer be required to be licensed?  These are just a few of the questions examined by the Special Committee and parallel committees across the country.

The Special Committee weighed the survey of OSBA members, reports and commentary from the ABA Commission on MJP, literature from other states and entities and the diverse opinions of members of the Special Committee.

Both a majority and minority report were submitted to the Council of Delegates that considered the matter at its November 9, 2001 meeting.  The Council of Delegates adopted the majority report after amending into it several recommendations from the minority report.  The report as adopted by the Council thus assimilated the majority and minority report

recommendations into one cohesive document designed to provide optimum protection to the public.

What follows are the principles adopted by the Council of Delegates pertaining to the activities of lawyers in representing clients in a multijurisdictional capacity, as such activities pertain to the unauthorized practice of law[1]:

1.  A lawyer admitted in another jurisdiction who represents a client in Ohio shall be subject to the disciplinary rules of Ohio adopted by the Supreme Court of Ohio. In this regard, it is recommended that all states adopt reciprocal policies pertaining to discipline that afford full faith and credit to the disciplinary rules of the state where the misconduct or other breach occurs.

2.  A lawyer shall consent to the appointment of the Clerk of the Supreme Court of Ohio as agent upon whom service of process may be made for all actions against the lawyer or the lawyer's firm that may arise out of the lawyer's participation in legal matters in this jurisdiction.

3.  A lawyer admitted to practice in another jurisdiction who provides legal services in Ohio shall be in good standing in the jurisdiction where the lawyer is licensed and shall not be subject to a current or pending license suspension or disbarment in another state, and shall not hold himself or herself out as being admitted to practice in this jurisdiction.

4.  To open a law office in Ohio, a person must be admitted to practice in Ohio; otherwise, this constitutes the unauthorized practice of law. If a law firm opens an office, all lawyers resident in the office must be admitted in Ohio.

---

[1] The Council of Delegates recognizes that some of these principles are already well established rules in Ohio and restates them here simply for the purpose of clarity and completeness.

3

5.      In-house counsel should be permitted to represent his or her employer consistent with Gov. Bar Rule VI, Section 4, other than where *pro hac vice* must be obtained.

6.      Provision of services as a mediator or arbitrator does not constitute the practice of law and should be permitted without requiring any *pro hac vice* or other admission.

7.      The prohibition on the unauthorized practice of law shall not apply to an attorney duly licensed and authorized to practice law in another state while such attorney is temporarily in this state and is engaged with respect to existing clients in either (i) a particular matter, or (ii) particular matters to the extent such matters arise out of or are otherwise reasonably related to the lawyer's practice in such other state.

8.      A lawyer should not be considered engaged in the unauthorized practice of law while performing:

    a.      activities that a nonlawyer could perform;

    b.      activities that constitute advice or opinion work on a matter of special experience of the lawyer, if that expertise or experience is in an area of law that is federal, *e.g.* patent, trademark, copyright, federal taxation, Social Security, and the like.

    c.      Activities that constitute advice or opinion on a matter of special experience of the lawyer if that advice relates to the interpretations or application of another state's laws to an Ohio client.

The Committee recommends that the provisions of proposed Rule 5.5 of the Model Rules of Professional Conduct as reported by the Ethics 2000 Commission be considered as safe harbor

for a lawyer practicing outside his or her licensing jurisdiction. The relevant provisions are as follows:

". . . (b) A lawyer admitted to practice in another jurisdiction, but not in this jurisdiction, does not engage in the unauthorized practice of law in this jurisdiction when:

(1)     the lawyer is authorized by law or order to appear before a tribunal or administrative agency in this jurisdiction or is preparing for a potential proceeding or hearing in which the lawyer reasonably expects to be so authorized; or

(2)     other than engaging in conduct governed by paragraph (1):

(i)     a lawyer who is an employee of a client acts on the client's behalf, or in connection with the client's matters on behalf of the client's commonly owned organizational affiliates;

(ii)     the lawyer acts with respect to a matter that arises out of or is otherwise reasonably related to the lawyer's representation of *an existing* client in a jurisdiction in which the lawyer is admitted to practice; or

(iii)     the lawyer is associated in a particular matter with a lawyer admitted to practice in this jurisdiction who actively participates in the representation.

(c)     A lawyer shall not assist another person in the unauthorized practice of law."

ADOPTED BY THE
Ohio State Bar Association Council of Delegates
November 9, 2001

---

*The appendix that refers to a survey of OSBA members is available upon request.