# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **WALTER THIEMANN, et al,** | **Civil Action No. C-1-00-793** |
| **Plaintiff,** | **Judge Sandra S. Beckwith** |
| **v.** | **Magistrate Judge Timothy S. Hogan** |
| **OHSL FINANCIAL CORP., et al,** | |
| **Defendant.** | |

---

## DEFENDANT ERNST & YOUNG'S MOTION TO DISMISS
## THE CONSOLIDATED AMENDED COMPLAINT

Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, and the Securities Litigation Uniform Standards Act of 1998, Defendant Ernst & Young respectfully requests this Court dismiss with prejudice all claims asserted against it in the Consolidated and Amended Class Action Complaint.

Dated: January 30, 2004

Respectfully submitted,

s/James E. Gauch

Stephen J. Brogan
James E. Gauch (Ohio Bar. No. 0042161)
Mary Helen Perry
Heather Guilette Walser
Cheryl E. Forchilli
JONES DAY
51 Louisiana Ave. NW
Washington, D.C. 20001
Telephone:    (202) 879-3939
Facsimile:    (202) 626-1700

Attorneys for Defendant
Ernst & Young

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **WALTER THIEMANN, et al,** | **Civil Action No. C-1-00-793** |
| **Plaintiff,** | **Judge Sandra S. Beckwith** |
| **v.** | **Magistrate Judge Timothy S. Hogan** |
| **OHSL FINANCIAL CORP., et al,** | |
| **Defendant.** | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT ERNST & YOUNG'S MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES......................................................................................ii

STATEMENT OF FACTS......................................................................................1

ARGUMENT ......................................................................................................3

I.    PLAINTIFFS' FEDERAL SECURITIES CLAIMS ARE ALL TIME BARRED
      AND MUST BE DISMISSED.........................................................................3

      A.    §§11 and 12(a)(2) of the Securities Act of 1933 ..................................4

      B.    §§10(b) and 14(a) of the Securities Exchange Act of 1934.................6

II.   PLAINTIFFS' SECTION 10(B) AND SECTION 14(A) CLAIMS ALSO
      SHOULD BE DISMISSED BECAUSE THEY HAVE NOT ADEQUATELY
      ALLEGED THAT E&Y ACTED WITH FRAUDULENT INTENT .............................8

      A.    Plaintiffs' Allegations of Accounting Errors Do Not Establish A Strong
            Inference of Fraudulent Intent............................................................9

      B.    Plaintiffs' Allegations Concerning E&Y's Motive To Commit Securities
            Fraud are Insufficient to Show Fraudulent Intent...............................16

III.  PLAINTIFFS CANNOT STATE A CLAIM AGAINST E&Y UNDER §12(A)(2)
      BECAUSE E&Y IS NOT A "SELLER" OF SECURITIES .........................................17

IV.   PLAINTIFFS' STATE LAW CLAIMS ARE ALL BARRED BY THE
      SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998. .....................18

CONCLUSION ....................................................................................................20

## TABLE OF AUTHORITIES

## CASES

*Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422 (6th Cir. 1980)......................................7, 9

*Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354 (6th Cir. 1987)...................................................5

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) ....................................................9

*Burns v. Prudential Sec. Inc.*, 116 F. Supp. 2d 917 (S.D. Ohio 2000) ........................................19

*Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir. 1990)..................................................6

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) .................................................................16

*In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999)...........................................*passim*

*DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d  385 (9th Cir. 2002) ...............12, 14

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)................................................................16

*In re Envoy Corp. Sec. Litig.*, 133 F. Supp. 2d 647 (M.D. Tenn. 2001).....................................12

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ......................................................................9

*Ferritto v. Alejandro*, 743 N.E.2d 978 (Ohio Ct. App. 2000).....................................................20

*Fine v. American Solar King Corp.*, 919 F.2d 290 (5th Cir. 1990)..............................................10

*Finkel v. Stratton Corp.*, 962 F.2d 169 (2d Cir. 1992) .................................................................5

*French v. First Union Sec.*, 209 F. Supp. 2d 818 (M.D. Tenn. 2002)........................................19

*In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105 (N.D. Cal. 2003) ..........................................11

*Gilbert Family Partnership v. Nido Corp.*, 679 F. Supp. 679 (E.D. Mich. 1988) ........................5

*Glaser v. Enzo Biochem, Inc.*, 2003 U.S. Dist. LEXIS 14121 (E.D. Va. 2003) ...........................7

*In re Global Crossing, Ltd. Sec. Litig.*, 2003 U.S. Dist. LEXIS 22930 (S.D.N.Y. Dec. 18, 2003).................................................................................................................................4

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999)...................................................................3

*In re Hayes Lemmerz Int'l, Inc.*, 271 F. Supp. 2d 1007 (E.D. Mich. 2003).................................15

*Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) ........................................................ 9, 10, 14

*In re Heritage Bond Litigation*, 289 F. Supp. 2d 1132 (C.D. Cal. 2003) ...................................... 7

*Hines v. ESC Strategic Funds, Inc.*, 1999 U.S. Dist. LEXIS 15790 (M.D. Tenn. Sept. 17, 1999).............................................................................................................................. 20

*Hishon v. King & Spalding*, 467 U.S. 69 (1984) ......................................................................... 1

*Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742 (6th Cir. 1992).......................................... 4

*Hughes Aircraft Co. v. United States*, 520 U.S. 939 (1997) ........................................................ 7

*INS v. St. Cyr*, 533 U.S. 289 (2001).......................................................................................... 7

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697 (2d Cir. 1994).......................... 5

*In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881 (8th Cir. 2002)................................................... 13

*Kushner v. Beverly Enters., Inc.*, 317 F.3d 820 (8th Cir. 2003)................................................... 10

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) ...................... 4, 6

*Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101 (2d Cir. 2001)................................... 19

*Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994)............................................................. 14, 16, 17

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495 (6th Cir. 2003)................................................................................................... 6, 7, 8

*Phillips v. LCI Int'l Inc.*, 190 F.3d 609 (4th Cir. 1999) .............................................................. 17

*Pinter v. Dahl*, 486 U.S. 622 (1988) .................................................................................... 17, 18

*Riedel v. Acutote of Colorado*, 773 F. Supp. 1055 (S.D. Ohio 1991) ......................................... 17

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334 (11th Cir. 2002).............. 19

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ...................................................................... 11

*In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334 (W.D. Tenn. 2001)................. 11

*SEC v. Price Waterhouse*, 797 F. Supp. 1217 (S.D.N.Y. 1992) .................................................. 16

*Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357 (1st Cir. 1994)......................................... 9

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87 (1995) ............................................................. 13

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505 (S.D. Ohio 2000) ................ 15

*Smith v. American Nat'l Bank & Trust  Co.*, 982 F.2d 936 (6th Cir. 1992) ........................... 17, 18

*In re Software Toolworks, Inc.*, 50 F.3d 615 (9th Cir. 1994) ..................................................... 12

*Stevelman v. Alias Research Inc.*, 174 F.3d 79 (2d Cir. 1999) .................................................... 10

*Teagardener v. Republic-Franklin, Inc. Pension Plan*, 909 F.2d 947 (6th Cir. 1990) ................... 3

*In re Worldcom, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 20955 (S.D.N.Y. Nov. 21, 2003) .......... 4

*In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir. 1994) ............................................... 16

## STATUTES

15 U.S.C. §77h ....................................................................................................................... 6

15 U.S.C. §77l ...................................................................................................................... 17

15 U.S.C. §77m .................................................................................................................. 4, 6

15 U.S.C. §77p ................................................................................................................. 18, 19

15 U.S.C. §77r ...................................................................................................................... 19

15 U.S.C. §78i ........................................................................................................................ 6

15 U.S.C. §78u-4 ................................................................................................................... 9

28 U.S.C. §1658(b) ............................................................................................................... 7

Ohio Rev. Code §1707.41 ................................................................................................... 20

Ohio Rev. Code §1707.43 ................................................................................................... 20

Ohio Rev. Code §1707.431 ................................................................................................. 20

## MISCELLANEOUS

David M. Brodsky & Daniel J. Kramer, Federal Securities Litigation: Commentary &
    Forms 5-1 (2001) ........................................................................................................... 3

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ......................................... 9

This lawsuit, commenced in 2000, arose out of the acquisition of OHSL Financial

Corporation ("OHSL") by Provident Financial Group ("Provident") in 1999.  Plaintiffs were

holders of OHSL stock in 1999 who claim that the proxy statement contained material

misstatements for which the defendants are liable under federal securities laws.  Plaintiffs first

attempted to name Ernst & Young ("E&Y") as a defendant in March 2003, more than three and a

half years after the OHSL transaction and more than two years after Plaintiffs first raised claims

touching on alleged improper accounting at Provident.  Their belated securities claims against

E&Y under §§11 and 12(a)(2) of the Securities Act and §§10(b) and 14(a) of the Exchange Act

(Counts I, II, IV, and V) are barred by the statute of limitations and should be dismissed.

Apart from being time-barred, most of Plaintiffs' claims also fail on the merits as a matter

of law.  Their claims for securities fraud and proxy fraud under §10(b) and §14(a) rest

exclusively on accounting errors acknowledged in a 2003 restatement of Provident's financial

results that covered the period from 1994 to 2002 and on vague allegations that E&Y knew or

should have known of such errors.  Plaintiffs' allegations fall woefully short of the particularized

facts the Private Securities Litigation Reform Act ("PSLRA") requires to support a strong

inference that E&Y acted with the requisite fraudulent intent.  Plaintiffs' claims under §12(a)(2)

fail because E&Y is not a seller for purposes of that section.  Plaintiffs' state law claims

premised on asserted violations of Ohio Rev. Code §§1707.41 and 1707.43 as well as common

law fraud (Counts VII, VIII, and X) are barred by the Securities Litigation Uniform Standards

Act ("SLUSA").

## STATEMENT OF FACTS

As alleged by the Plaintiffs and taken to be true for purposes of this motion only, *see*

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), the facts are as follows.  E&Y is and was at

the relevant times Provident's outside auditor.  Consolidated and Amended Complaint (Dec. 31,

2003)("CAC") ¶32.  In that capacity, E&Y audited Provident's financial statements for the years
1997-2002.  CAC ¶¶104, 106.  E&Y gave unqualified opinions that it had conducted its audits of
Provident's financial statements in conformity with Generally Accepted Auditing Standards
("GAAS") and that the financial statements were in material respects in conformity with
Generally Accepted Accounting Principles ("GAAP").  CAC ¶¶32, 104, 106, Exs. C-E.  E&Y's
audit letters were included in Provident's Forms 10-K for the years 1997-2002 and in the Proxy
Materials and Registration Statement issued in conjunction with the 1999 OHSL transaction.
CAC ¶106.

On March 5, 2003, Provident issued a press release in which it announced that it was
restating its operating results for the period from 1997 through 2002.  CAC ¶87.  Provident had
discovered irregularities in the recording of income while testing a financial model and worked
with E&Y to determine the source of the error.  CAC, Ex. A.[1]  Ultimately, Provident and E&Y
determined that nine auto lease securitizations (in basic terms, a pooling and sale of consumer
automobile leases) originated between 1997 and 1999 were incorrectly accounted for off-
balance-sheet as a sale and lease-back of operating leases.  *Id.*  They concluded that the
securitizations should have been reported on-balance-sheet as financing leases.  *Id*.  This
decreased net income by approximately $70.3 million over the years 1997-2002, CAC ¶89, of
which less than $15 million was attributable to the years from 1997 through 1999, when the
OHSL acquisition occurred.  *See* CAC Ex. A.

Provident issued a second press release on April 15, 2003.  CAC Intro. at 2, ¶87.
Following the first press release, Provident's audit committee engaged PricewaterhouseCoopers
LLP ("PwC") to conduct an independent accounting review.  *See* April 15, 2003 Press Release

_____
[1] Because Plaintiffs make repeated references to the March 5, 2003 press release and attach
it to the Complaint, this Court may appropriately rely upon it in consideration of a motion to

(attached hereto as Exhibit A).[2] PwC confirmed that the errors announced in March were unintentional. *Id.* In the course of its independent review, however, PwC also detected technical problems with the residual value insurance ("RVI") Provident had historically maintained on pools of its automobile leases. *Id.* Due to those technical problems, Provident determined that although it historically reported its automobile leases as direct finance leases in the loan category, the leases had to be reclassified as operating leases and reported as leased equipment. *Id.*; CAC ¶18. This different treatment had a significant impact on the timing of Provident's recognition of certain income and expenses and therefore resulted in an aggregate reduction in after-tax income of $44.4 million for the years 1994-2002, CAC ¶¶18, 93, although a corresponding amount would be recognized in later years. April 15, 2003 Press Release (Ex. A).

<u>**ARGUMENT**</u>

**I.    PLAINTIFFS' FEDERAL SECURITIES CLAIMS ARE TIME BARRED AND MUST BE DISMISSED**

Plaintiffs first attempted to name E&Y as a defendant in this action in March, 2003, and did not formally name it until April 20, 2003. Because all of the alleged violations on which they base their §11, 15 U.S.C. §77k, and §12(a)(2),[3] 15 U.S.C. §77l(a)(2), claims occurred months prior to April 20, 2000, those claims are time-barred by the three-year statute of repose. Further, Plaintiffs' original complaint makes clear that they were at least on inquiry notice of

---

(continued…)

dismiss. *See Teagardener v. Republic-Franklin, Inc. Pension Plan*, 909 F.2d 947, 948-50 (6th Cir. 1990).

[2] Although Plaintiffs do not attach the April 15, 2003 press release, in light of Plaintiffs repeated references to it and citations to the data it contains, *see* CAC Intro. at 2, ¶¶87, 89, 93, the Court may also properly consider it. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802, n.2 (11th Cir. 1999) (considering a press release in a securities fraud case even though it was not attached to the complaint).

[3] Plaintiffs allege a claim for "violation of §12(2) of the Securities Act," CAC ¶¶131-36. However, the PSLRA amended what was previously §12(2) to include subsections (a) and (b), thereby redesignating the relevant Securities Act provision as §12(a)(2). David M. Brodsky & Daniel J. Kramer, Federal Securities Litigation: Commentary & Forms 5-1 (2001).

their potential §10(b), 15 U.S.C. §78j(b), and §14, 15 U.S.C. §78n, claims against E&Y at the time of its filing on September 20, 2000. Thus, their claims had to have been filed by September 19, 2001 to be timely, a deadline Plaintiffs missed by more than 18 months.

While failure to comply with the statute of limitations is generally an affirmative defense raised in the defendant's answer, "the statute may be raised on a motion to dismiss under Rule 12(b)(6) when it is apparent from the face of the complaint that the time limit for bringing the claim has passed." *Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992). The allegations in the CAC plainly demonstrate that Plaintiffs cannot offer any set of facts to support a timely cause of action against E&Y based on federal securities violations. This Court should therefore dismiss all of Plaintiffs' federal securities claims with prejudice.

A.    **§§11 and 12(a)(2) of the Securities Act of 1933**

Plaintiffs' causes of action based on §11 and §12(a)(2) are governed – and barred – by the two-tiered limitations provision found in §13, 15 U.S.C. §77m.[4] Section 13 establishes a one-year statute of limitations that begins to run either when a plaintiff discovers the allegedly untrue statement or omission or should have discovered it through reasonable diligence. *Id.* That provision is itself limited by an absolute three-year statute of repose:

> *In no event* shall any such action be brought to enforce a liability created under section 11 . . . more than three years after the security was bona fide offered to the public, or under section 12(a)(2) more than three years after the sale.

15 U.S.C. §77m (emphasis added). The Supreme Court has held, as is apparent from the statute's terms, that the three-year statute of repose is an absolute bar – an "outside limit" – on a plaintiff's right to sue for material misstatements or omissions. *Lampf, Pleva, Lipkind, Prupis &*

---

[4] The statute of limitations for private actions based on securities fraud created by the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") does not apply to claims brought under §§11 and 12(a)(2). *See In re Worldcom, Inc. Sec. Litig.*, 2003 U.S. Dist. LEXIS 20955, at *30-31 (S.D.N.Y. Nov. 21, 2003) (Sarbanes-Oxley "does not encompass Sections 11 and 12(a)(2)"); *In re Global Crossing, Ltd. Sec. Litig.*, 2003 U.S. Dist. LEXIS 22930, at *13 (S.D.N.Y. Dec. 18,

*Petigrow v. Gilbertson,* 501 U.S. 350, 363 (1991) (quotation omitted).  Therefore although, as explained in section I.B. below, Plaintiffs knew or should have known of potential claims against E&Y well more than a year before they filed such claims, that is irrelevant to Plaintiffs' §11 and §12 claims.  The "'in no event' three-year prohibition clause in section 13 [is] unconditional" and therefore applies even if Plaintiffs could not have discovered the alleged misstatements. *Gilbert Family Partnership v. Nido Corp.,* 679 F. Supp. 679, 683 (E.D. Mich. 1988); *see also Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 704 (2d Cir. 1994) ("The three-year period [in §13] is an absolute limitation which applies whether or not the investor could have discovered the violation.") (citation omitted); *Finkel v. Stratton Corp.*, 962 F.2d 169, 172 (2d Cir. 1992) ("Even where this one-year limit is satisfied, the plaintiff must also bring the action within" the three-year period).  Because Plaintiffs failed to file their §11 and §12 claims within three years "after the security was bona fide offered to the public" or within "three years after the sale," these claims must be dismissed with prejudice.

The three-year period began for §11 when the registration statement became effective. *See Finkel*, 962 F.2d at 173 ("a security is 'bona fide offered to the public' at the effective date of the registration statement"); *see also Auslender v. Energy Mgmt. Corp.,* 832 F.2d 354, 356 (6th Cir. 1987) (using the effective date of the registration as the beginning of the 3-year period). While Plaintiffs have failed to plead the requisite facts necessary to determine the exact date the statute of repose began to run, the Registration Statement from the OHSL acquisition, included as Exhibit F to the CAC, states on the first page that it was "filed with the Securities and Exchange Commission on August 26, 1999."  Typically, a registration statement becomes

_____

(continued…)

2003) ("by its plain text, the [Sarbanes-Oxley] amendment does not apply to claims under section 11").

effective 20 days after its filing, 15 U.S.C. §77h, here, September 15, 1999. Even if the statute

of repose were deemed to have begun to run from the date the Prospectus was filed on

September 27, 1999, the 3-year period would have been triggered at the latest on October 17,

1999, twenty days after that filing. Plaintiffs did not name E&Y as a defendant until April 20,

2003, when they initiated the *Meier* suit, nearly six months after the expiration of the statute of

repose. Even Plaintiffs' first attempt to add E&Y in *Thiemann*, on March 7, 2003, was more

than four months after the statute of repose expired.

The three-year period for §12(a)(2) claims began to run "after the sale" of the securities

at issue. 15 U.S.C. §77m. The OHSL acquisition was completed on December 3, 1999. CAC at

6. Thus, Plaintiffs' §12(a)(2) claim is barred by the statute of repose because it was filed four

months after the expiration of the statute of repose on December 3, 2002.

### B.     §§10(b) and 14(a) of the Securities Exchange Act of 1934

Because the private rights of action under §10(b) and §14(a) were judicially created, they

were not governed by an express statute of limitations. The Supreme Court, however, applied

the one- and three-year structure in §9(e) of the Exchange Act, 15 U.S.C. §78i(e), to §10(b).

*Lampf*, 501 U.S. at 364, n.9. The Sixth Circuit has construed these limitations and repose

provisions to function virtually identically to those in §13 of the Securities Act, discussed above.

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 500

(6th Cir. 2003). Courts have also applied §9(e) to §14 claims. *See, e.g., Ceres Partners v. GEL

Associates,* 918 F.2d 349, 364 (2d Cir. 1990). Plaintiffs' §10(b) and §14(a) claims against E&Y

are barred by the one-year statute of limitations because the Plaintiffs were on inquiry notice, if

not actual notice, of their potential fraud claim no later than September 20, 2000.[5]

---

[5] In 2002, Sarbanes-Oxley expanded the applicable periods of limitation and repose to
two years and five years, respectively, for claims involving "fraud, deceit, manipulation, or
contrivance in contravention of a regulatory requirement concerning the securities laws," 28

Under the "inquiry notice standard," the statute of limitations begins to run when "a plaintiff should have discovered, by exercising reasonable diligence, the facts underlying the alleged fraud." *New England Health Care*, 336 F.3d at 501. Inquiry notice can, in the appropriate case, be determined simply based on the plaintiff's pleadings. In *New England Health Care*, for example, the Sixth Circuit affirmed the dismissal of securities claims on statute of limitations grounds in circumstances very similar to those here. The court held that the plaintiff was on inquiry notice as to its potential securities claims against an accounting firm, E&Y, because an earlier complaint filed against E&Y's client addressed the same issues as the later complaint against E&Y. *Id*. at 501-02.

In this case, Plaintiffs' earlier complaint demonstrates that they had inquiry notice, if not actual notice, of their potential claims against E&Y no later than September 20, 2000. Plaintiffs knew from the proxy materials and Provident's SEC filings that E&Y served as Provident's auditors during the relevant period. CAC ¶106. Moreover, Plaintiffs' original complaint, filed September 20, 2000, challenged Provident's "'securitization accounting,'" First Compl. ¶52, and noted "the potential for an adverse change in accounting treatment." *Id.; see also* Order Granting in Part and Den. in Part Defs.' Mot. to Dismiss First Compl. at 21 (July 25, 2001)(Doc.

_____

(continued…)

U.S.C. §1658(b), but that statute has no effect on Plaintiffs' claims. Sarbanes-Oxley has been applied to §10(b) claims, *see In re Heritage Bond Litigation,* 289 F. Supp. 2d 1132 (C.D. Cal. 2003), and because a §14(a) claim against accountants requires a showing of fraudulent intent, *see Adams v. Standard Knitting Mills, Inc.,* 623 F.2d 422, 431 (6th Cir. 1980), it also likely applies to those claims. Nevertheless, although the statute purports to "apply to all proceedings addressed by this section that are commenced on or after the date of enactment," July 30, 2002, 28 U.S.C. §1658(b), under settled law it cannot revive a cause of action that was barred under the prior statute of limitations before it was enacted. *See Glaser v. Enzo Biochem, Inc.*, 2003 U.S. Dist. LEXIS 14121 (E.D. Va. 2003) (construing the Sarbanes-Oxley statute of limitations, and citing *INS v. St. Cyr*, 533 U.S. 289 (2001) and *Hughes Aircraft Co. v. United States*, 520 U.S. 939 (1997)); *Heritage Bond*, 289 F. Supp. 2d at 1148 (holding that Sarbanes-Oxley "cannot apply to claims already barred at the time of its enactment, regardless of the filing date"). Therefore, because the one-year limitations period expired on Plaintiffs' §10(b) and §14(a) claims no later than September 20, 2001, Sarbanes-Oxley cannot revive them. Even if Sarbanes-Oxley did apply, however, Plaintiffs' claims would also be barred under its two-year statute of limitations, *see* 28 U.S.C. §1658(b)(1), for the reasons discussed below.

No. 46)(denying motion to dismiss Plaintiffs' claim relating to disclosure of "a disfavored accounting methodology"). Thus, Plaintiffs had notice of claims relating to E&Y's accounting with respect to these transactions, but chose not to assert those claims until after the March 2003 restatement. *See* Pl. Mot. for Leave to File Second Am. Compl. at 3 (March 7, 2003)(Doc. No. 146). As the Sixth Circuit noted in *New England Health Care*, the twelve months after the filing of their initial complaint was "ample time, it seems to us, for a diligent investigation." 336 F.3d at 502. Having sat on their rights for nearly two and a half years, Plaintiffs are barred from asserting them now. Their §10(b) and §14 claims must therefore be dismissed with prejudice.

## II. PLAINTIFFS' SECTION 10(B) AND SECTION 14(A) CLAIMS ALSO SHOULD BE DISMISSED BECAUSE THEY HAVE NOT ADEQUATELY ALLEGED THAT E&Y ACTED WITH FRAUDULENT INTENT

Plaintiffs cannot maintain their securities fraud claims under §§10(b) and 14(a) for an entirely independent reason as well: they fail to allege facts to support an inference, let alone a strong inference, that in auditing and certifying Provident's financial statements E&Y acted with the requisite fraudulent intent. Plaintiffs do not implicate E&Y in connection with any of the misstatements addressed in this Court's earlier ruling on Plaintiffs' initial complaint. Rather, their claims against E&Y rest exclusively on the notion that Provident's restatement of its financial results in March and April of 2003 establishes not only that the financial statements at the time of the OHSL transaction contained material misstatements or omissions, but also that E&Y's certification of them was knowingly false or recklessly so. Plaintiffs have alleged not one fact, however, that suggests that E&Y actually knew of the erroneous accounting treatment at the time. Nor have they alleged any particularlized facts to support a strong inference that E&Y acted recklessly. Accordingly, the §§10(b) and 14(a) claims against E&Y should be dismissed.

The Sixth Circuit has recognized that securities fraud litigation "'presents a danger of vexatiousness different in degree and kind from that which accompanies litigation in general.'" *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739-44 (1975)). Securities fraud complaints are "'often based on nothing more than a company's announcement of bad news, not evidence of fraud.'" *Comshare*, 183 F.3d at 548 (quoting S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690). Provident's restatement of its financial results and the litigation that followed is a vivid example. To curb such abuses of the securities laws, the PSLRA "strengthened the minimum showing necessary to survive a motion to dismiss." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 550 (6th Cir. 2001) (en banc). Section 10(b) requires a "mental state embracing intent to deceive, manipulate, or defraud" the investing public. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, n.12 (1976); *see also Comshare*, 183 F.3d at 548.[6] The PSLRA expressly requires the complaint to "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2) (emphasis added). This "strong inference" requirement means that the Complaint's allegations must support not merely a permissible inference of the requisite intent, but "the *most plausible* of competing inferences." *Vencor*, 251 F.3d at 553 (emphasis added).

    **A.**    **Plaintiffs' Allegations of Accounting Errors Do Not Establish A Strong Inference of Fraudulent Intent**

The Sixth Circuit, as well as many others, has clearly held that a plaintiff may not maintain a claim for securities fraud under §10(b) based simply on disclosure of accounting errors: "[t]he failure to follow GAAP is, by itself, insufficient to state a securities fraud claim." *Comshare*, 183 F.3d at 553 (citing *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 362

---

[6] Similarly, under governing Sixth Circuit precedent, scienter "is an element of liability in private suits under [the provisions of §14(a)] as they apply to outside accountants." *Adams*, 623

(1st Cir. 1994), and *Fine v. American Solar King Corp.*, 919 F.2d 290, 297-98 (5th Cir. 1990)).

Thus, Plaintiffs cannot adequately allege scienter based merely on the 2003 restatements. *Cf.*

CAC ¶32 (alleging that the restatements "indicate that E&Y did not conduct its audits in

accordance with GAAS. . . ."). As *Comshare* clearly held with regard to the later revelation of

an accounting error, "Plaintiffs' claim that a subsequent revelation of the falsehood of previous

statements implies scienter lacks merit, since '[m]ere allegations that statements in one report

should have been made in earlier reports do not make out a claim of securities fraud.'"

*Comshare*, 183 F.3d at 553-54 (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d

Cir. 1999)).

Instead of simply pleading that accounting errors were made, Plaintiffs must plead facts

that give rise to a strong inference that E&Y knew the accounting was incorrect at the time, or

acted in conscious disregard of the correct treatment: "Without allegations of particular facts

demonstrating how the defendants . . . *were aware of a GAAP violation and disregarded it*, a

showing in hindsight . . . does not demonstrate fraudulent intent." *Kushner v. Beverly Enters.,*

*Inc.*, 317 F.3d 820, 827 (8th Cir. 2003) (affirming dismissal of complaint) (emphasis added). To

sustain that burden, Plaintiffs must specifically allege the attendant facts to support their claims,

and the strength of any resulting inference of fraudulent intent "depends on how closely a

conclusion of misconduct follows from [the] proposition of fact." *Vencor*, 251 F.3d at 553. As

the Sixth Circuit stressed, to withstand a motion to dismiss, the "inferences [must] leave little

room for doubt as to misconduct." *Id.*

The CAC alleges no facts to suggest, much less leave little room for doubt, that E&Y

actually knew of the accounting errors at the time they were made. To be sure, the CAC asserts

_____

(continued…)

F.2d at 428.

that conclusion.  For example, Plaintiffs allege that E&Y "had actual knowledge that [the] financial statements . . . were materially false and misleading." CAC ¶107.  As the Sixth Circuit held in *Comshare*, such conclusory allegations are insufficient to state a claim under the PSLRA: "While Plaintiffs claim Defendants 'were aware of, or were recklessly indifferent to' the [accounting] errors, they allege no facts to show that Defendants knew or could have known of the errors, or that their regular procedures should have alerted them to the errors sooner than they actually did."  183 F.3d at 553.  (affirming dismissal of complaint with prejudice); *see also In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105, 1113 (N.D. Cal. 2003) (dismissing securities fraud claim based on erroneous financial statements where plaintiffs' allegations "fail[ed] to establish with detailed, verifiable facts, that defendants knew the [information] they reported [was] inaccurate").  At most, Plaintiffs offer vague assertions that "Provident files contained warnings and discussions by industry analysts and experts of this accounting method and the attendant risks to cash flow and earnings, all of which were known by Provident and E&Y prior to the transaction."  CAC ¶73; *see also* CAC ¶103.  The mere (alleged) fact that Provident files contained such information does not warrant an inference that E&Y knew about it.  *See Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (affirming dismissal on grounds that accountant's knowledge of client's product sales data could not be inferred from the allegation that the accountant had served as the client's outside auditor); *In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 360 (W.D. Tenn. 2001) (dismissing complaint on grounds that plaintiffs' allegation that accountant had access to client's contracts and documents that allegedly revealed improper revenue recognition failed to support a strong inference of scienter).  Even if that alleged knowledge were imputed to E&Y, however, those allegations do nothing to establish that either Provident or E&Y had information to indicate that the accounting treatment was incorrect

at the time.  It appears from the face of the pleading that the "risks" outlined in the CAC do not have anything to do with the propriety of the accounting treatment itself; rather they relate to various business and credit risks inherent in the securitization transactions.  *See* CAC ¶103.

Without any alleged facts indicating that E&Y knew of the errors at the time, Plaintiffs must plead facts creating a strong inference that E&Y acted at least recklessly in failing to discover them.  In the securities context, the standard for recklessness "is more stringent than that applied as a form of negligence."  *In re Envoy Corp. Sec. Litig.*, 133 F. Supp. 2d 647, 660 (M.D. Tenn. 2001).  The Sixth Circuit has defined recklessness as "a mental state apart from negligence and akin to conscious disregard" involving "highly unreasonable conduct which is an extreme departure from the standards of ordinary care.  While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it."  *Comshare*, 183 F.3d at 550 (citation omitted).  In the context of a claim that a defendant recklessly failed to detect accounting errors, therefore, a plaintiff must plead facts showing that "the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that *no reasonable accountant would have made the same decisions* if confronted with the same facts."  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) (quoting *In re Software Toolworks, Inc.*, 50 F.3d 615, 627-28 (9th Cir. 1994) (emphasis added).[7]  Plaintiffs have pleaded no facts to support such a showing as to the accounting errors at issue here.

Considering that Plaintiffs ask this Court to draw a strong inference of fraudulent intent from accounting errors, the Complaint is remarkably silent about the nature of the accounting

---

[7] The Ninth Circuit's definition of recklessness is virtually identical to the Sixth Circuit's. *See DSAM*, 288 F.3d at 389 (describing reckless as "not merely simple, or even inexcusable

errors in question.  Accounting issues are far more complex than Plaintiffs let on.  As the

Supreme Court has observed:

> GAAP is not [a] lucid or encyclopedic set of pre-existing rules . . . .  Far from a
> single-source accounting rulebook, . . . . GAAP changes and, even at any one
> point, is often indeterminate. . . . .  There are 19 different GAAP sources, any
> number of which might present conflicting treatments of a particular accounting
> question.  When such conflicts arise, the accountant is directed to consult an
> elaborate hierarchy of GAAP sources to determine which treatment to follow.

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 101 (1995) (citations omitted); *see also In re K-

tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889-90 (8th Cir. 2002).  It is not enough for Plaintiffs

merely to assert that E&Y "knew, or absent a reckless disregard for the truth should have known,

that Provident was maintaining 'off the books' accounts," CAC ¶109, without alleging particular

facts to establish that E&Y knew at the time that such accounting was erroneous.  Yet apart from

repeated vague references to "off the books" accounting and unwarranted allusions to Enron, *see*

CAC ¶¶32, 88, 101, 109, the CAC says nothing about the grounds on which the transactions in

question were originally accounted for off-balance-sheet as a sale and lease-back of operating

lease or why Provident and E&Y ultimately determined that that accounting treatment was

incorrect, much less how they should have known that at the time.  The CAC makes only a slight

mention of the notion that "both PFGI and E&Y had actual knowledge that PFGI's accounting

did not meet the technical requirements of FAS 13." CAC ¶107.[8]  The CAC nowhere describes

that standard, however, or explains how it relates to the errors.   Such "boilerplate averments that

---

(continued…)

negligence, but an extreme departure from the standards of ordinary care . . . that is either known
to the defendant or is so obvious that the actor must have been aware of it").

   [8]Indeed, the only other reference to FAS 13 in the complaint is in a quote from
Provident's 2002 Annual Report that indicates that the failure to meet FAS 13's technical
requirements was not discovered until 2003.  CAC ¶18.

the accountants violated particular standards are not, without more, sufficient to support inferences of fraud." *Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994).

Absent any analysis of the accounting errors themselves, Plaintiffs fall back on vague allegations suggesting that E&Y recklessly violated appropriate auditing standards by failing to find the errors. Here again, Plaintiffs have failed to plead with particularity facts that "leave little room for doubt as to misconduct." *Vencor*, 251 F.3d at 553. Plaintiffs cite various auditing standards in GAAS that they claim E&Y violated, *see* CAC ¶¶104, 106, 111-116, but they utterly fail to relate any of these standards to particularized facts that would support a strong inference of fraudulent intent. Just as in *Comshare*, "Plaintiffs have not alleged specific facts that illustrate 'red flags' that should have put Defendants on notice of the [accounting] errors, or that demonstrate reasons for Defendants to have questioned" the accounting treatment. 183 F.3d at 553; *cf. DSAM Global*, 288 F.3d at 390 (in which plaintiffs pointed to start-up fees 50 times greater than any start-up fee the company had ever recognized, timed suspiciously on the last day of the fiscal year, as "red flags" indicative of scienter; the appeals court found even that inadequate). Instead, the Complaint merely alleges in the vaguest possible terms that E&Y should have caught the errors in question. Paragraph 112, for example, alleges that "[l]ittle existed in the way of controls over the preparation of Provident's management's estimates and the data upon which E&Y approved the estimates and E&Y failed to provide better methods. . . ." CAC ¶112. Plaintiffs do not say to what estimates or data they are referring, nor do they specify the "better methods" E&Y should have provided or why an auditor would be expected to do so. Similarly, in ¶115, the CAC faults E&Y for "not giv[ing] any consideration or react[ing] at all to the disclosure and findings of E&Y or Provident employees by performing additional procedures with respect to some or all of those findings," but it does not provide the slightest

clue what these findings were, when they were made, who at either E&Y or Provident made them, or what additional procedures should have been performed.

Such conclusory assertions do not state a claim for securities fraud, as another judge of this Court has held:

> Plaintiffs plead that because errors were committed, Defendants must have violated the procedures set up to catch such errors and had they not violated these procedures, they would have caught the errors.  These allegations fail under the PSLRA as overly general and speculative.

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 517 (S.D. Ohio 2000) (Sargus, J.).  District courts have routinely dismissed securities fraud claims based on nothing more than such allegations.  In *SmarTalk,* the court rejected plaintiffs' claim against an accounting firm based on GAAS because "absent from the allegations is *any particular fact or document that would have come to light to show that a GAAP violation existed* or at least to make the existence of a GAAP violation so obvious that any reasonable person would have known of it."  *Id.* at 517 (emphasis added).  Similarly, another district court within this circuit dismissed a securities fraud claim against an audit firm based on a $250 million restatement of financial results.  *See In re Hayes Lemmerz Int'l, Inc.*, 271 F. Supp. 2d 1007, 1019 (E.D. Mich. 2003).  Noting that "the complaint must identify specific, highly suspicious facts and circumstances available to the auditor at the time of the audit and allege that these facts were ignored either deliberately or recklessly," *id.* (quotation omitted), that court dismissed the claims because "Plaintiffs have not cited *specific deficiencies* in the review that KPMG conducted; instead, they merely assert that KPMG should have found these schemes without explaining why or how that is the case."  *Id.* (citation omitted).  The same failure to plead any specific deficiencies and to relate them to the facts that should have been uncovered dooms Plaintiffs' §10(b) and §14(a) claims here.

**B.**     **Plaintiffs' Allegations Concerning E&Y's Motive To Commit Securities Fraud are Insufficient to Show Fraudulent Intent**

It is well established within this Circuit that a plaintiff cannot "establish a 'strong inference' of scienter merely by alleging facts demonstrating motive and opportunity where those facts do not simultaneously establish that the defendant acted recklessly or knowingly, or with the requisite state of mind." *Comshare*, 183 F.3d at 551. Plaintiffs' allegations fall far short. Notably absent from Plaintiffs' complaint is any allegation that E&Y stood to benefit from the alleged fraud. To support an inference of fraudulent intent, Plaintiffs must allege a motive "entail[ing] concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996). Plaintiffs do not allege any benefit to E&Y apart from its normal auditing fees. They allege that E&Y "allowed Provident to engage in 'desired results' accounting . . . in exchange for large auditing and consulting fees." CAC ¶32; *see also* CAC ¶150. This alleged "motive," however, has been consistently rejected by the courts.

Circuit courts have long held, even before the PSLRA's heightened pleading standard, that allegations of fees that an accounting firm would earn in a client relationship are not a sufficient basis from which to infer scienter. *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1427 n.7 (9th Cir. 1994); *Melder*, 27 F.3d at 1103-04; *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990); *see also SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1242 (S.D.N.Y. 1992). Indeed, as the Fifth Circuit explained,

> A contrary conclusion would universally eliminate the state of mind requirement in securities fraud actions against accounting firms. This follows from the indisputable proposition that accounting firms – as with all rational economic actors – seek to maximize their profits. . . . we will not indulge irrational inferences of the firm's fraudulent intent based on these generic allegations.

*Melder*, 27 F.3d at 1103-04.  Where, as here, a plaintiff "[m]erely alleg[es] facts that lead to a 'strained and tenuous inference' of motive, [it] is insufficient to satisfy the pleading standard." *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 621 (4th Cir. 1999).  Accordingly, Plaintiffs' claims against E&Y should be dismissed.

### III.    PLAINTIFFS CANNOT STATE A CLAIM AGAINST E&Y UNDER §12(A)(2) BECAUSE E&Y IS NOT A "SELLER" OF SECURITIES

Plaintiffs' claim under §12(a)(2) of the Securities Act fails as a matter of law because they have alleged no facts to support their conclusory allegation that E&Y acted as a "seller" under that section.  CAC ¶133.  Liability under §12(a)(2) is expressly limited to those who "offer or sell a security" by means of a false or misleading "prospectus or oral communication."  15 U.S.C. §77l.  In construing §12, the Supreme Court has noted, "the buyer does not, in any meaningful sense, 'purchas[e] the security from'" professionals such as accountants, "whose involvement is only the performance of their professional services."  *Pinter v. Dahl*, 486 U.S. 622, 651 (1988); *see also Riedel v. Acutote of Colorado*, 773 F. Supp. 1055, 1062 (S.D. Ohio 1991) (holding that §12 does not reach "*professionals, such as* attorneys or *accountants*, whose participation is confined to providing professional services") (emphasis added).  Rather, the Court expressly held that liability extends only to:  (1) "the owner who passed title . . . to the buyer for value;" and (2) "the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  *Pinter*, 486 U.S. at 642, 647.  While the claim in *Pinter* was brought under §12(a)(1), the Sixth Circuit has explicitly adopted this analysis for claims under §12(a)(2) as well.  *Smith v. American Nat'l Bank & Trust Co.*, 982 F.2d 936, 942 (6th Cir. 1992).  Thus, a non-owner of the securities at issue in a §12(a)(2) claim, "cannot be a seller . . . unless he urges a prospective purchaser to buy."  *Smith*, 982 F.2d at 941.

Plaintiffs' claim fails, therefore, because they have alleged no facts – and can allege none – suggesting that E&Y either passed title of the Provident shares or solicited an offer from Plaintiffs to purchase them. *See, e.g., Smith*, 982 F.2d at 942 (citing *Pinter*, 486 U.S. at 650). In fact, Plaintiffs do not allege *any* contact between themselves and E&Y, much less that E&Y "actively participate[d] in the solicitation" of Plaintiffs' acquisition of the Provident securities. *Id.* at 942. Whether E&Y stood to benefit in some sense from the transaction by virtue of its fees is irrelevant: "It is not enough that the putative seller stands to benefit if the sale goes through; to be liable under a solicitation theory, he must have engaged in actual solicitation." *Id.* at 941. The CAC does not allege that E&Y participated in the solicitation, but merely that it provided professional services as "PFGI's independent auditor," CAC ¶32, and that "E&Y consented to the inclusion of its audit opinion" in the Proxy Materials/Registration Statement. CAC ¶106. Under the clear authority of *Pinter*, these professional services cannot support a finding that E&Y was a "seller" for purposes of §12(a)(2), and Plaintiffs' §12 claim should be dismissed.

**IV.   PLAINTIFFS' STATE LAW CLAIMS ARE BARRED BY THE SECURITIES LITIGATION UNIFORM STANDARDS ACT OF 1998.**

The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") bars class action securities fraud claims based on state law and unequivocally mandates their dismissal. 15 U.S.C. §77p. Counts VII, VIII and X of Plaintiffs' complaint meet all the requirements of the SLUSA and must therefore be dismissed. In relevant part, the SLUSA states:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging . . . an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security. . . .

15 U.S.C. §77p(b). To invoke the SLUSA, it must therefore be shown that (1) Plaintiff's suit is a "covered class action," (2) Plaintiffs' claims are based on state law, (3) Plaintiff's state law claims concern a "covered security," and (4) Plaintiff's state law claims "allege[] untrue,

manipulative, or deceptive statements or omissions in connection with the sale or purchase of the security." *French v. First Union Sec.,* 209 F. Supp. 2d 818, 824 (M.D. Tenn. 2002) (citation omitted); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1342 (11th Cir. 2002), *cert. denied*, 537 U.S. 950 (2002); *Burns v. Prudential Sec. Inc.,* 116 F. Supp. 2d 917, 921 (S.D. Ohio 2000).

Plaintiffs' state law claims meet all of the requirements for dismissal under the SLUSA. Obviously, Counts VII, VIII and X are based on state law, either the Ohio Revised Code or state common law. Just as obviously, those counts rest on alleged untrue statements in connection with the Provident/OHSL transaction. *See* CAC ¶¶161, 169, 179. Further, this lawsuit satisfies the definition of a "covered class action" because Mr. Thiemann and the Meiers bring it "on behalf of themselves and all others similarly situated" and the CAC asserts that "common questions of law or fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class." *Compare* CAC ¶35 *with* 15 U.S.C. §77p(f)(2)(A)(i)(II). Finally, it concerns a "covered security," which the SLUSA, 15 U.S.C. §77p(f)(3), defines with reference to §18(b) of the 1933 Securities Act, 15 U.S.C. §77r(b). Among the "covered securities" in §18(b)(1)(A) are those "listed . . . on the National Market System of the Nasdaq Stock Market," as were both Provident's and OHSL's stock, the securities at issue in the Plaintiffs' claims. CAC ¶1. Because Plaintiffs' state law claims satisfy all elements of the SLUSA, they must be dismissed pursuant to the statute's prohibition against any such class action being "maintained in any State or Federal court." 15 U.S.C. §77p(b); *See Lander v. Hartford Life & Annuity Ins. Co.,* 251 F.3d 101, 120 (2d Cir. 2001) (affirming district court's dismissal of plaintiffs' state law claims as barred by the SLUSA); *Riley,* 292 F.3d at 1347

(same); *Hines v. ESC Strategic Funds, Inc.,* 1999 U.S. Dist. LEXIS 15790, at *9 (M.D. Tenn. Sept. 17, 1999) (dismissing state law claims with prejudice pursuant to the SLUSA).

Even if the SLUSA did not require dismissal of all of Plaintiffs' state law claims, they would each fail for other reasons. All of the state law causes of action are barred by the two-year statute of limitations. *See* Ohio Rev. Code §1707.41(D); Ohio Rev. Code §1707.43(B); *Ferritto v. Alejandro*, 743 N.E.2d 978, 982 (Ohio Ct. App. 2000); Sec. I(B), *supra.* Plaintiffs' claim under §1707.41 must fail because there are no allegations in the CAC to suggest that E&Y "offered any security for sale" or "receive[d] the profits accruing from such sale." *See* Sec. III, *supra.* Section 1707.431 expressly excludes accountants from liability under §1707.43 when the accountant's "performance is incidental to the practice of the person's profession." Ohio Rev. Code §1707.431(A). The CAC offers no facts to suggest that E&Y's involvement in the OHSL acquisition was anything other than in its role as Provident's auditor, and that claim must therefore be dismissed. Finally, Plaintiffs' common law fraud claim must fail because the CAC pleads no facts to support any inference of fraudulent intent. *See* Sec. II, *supra.*

<u>**CONCLUSION**</u>

For the foregoing reasons, Counts I, II, IV, V, VII, VII and X against E&Y should be dismissed with prejudice.

Dated: January 30, 2004                    Respectfully submitted,


                                           s/James E. Gauch
                                           _____
                                           Stephen J. Brogan
                                           James E. Gauch (Ohio Bar. No. 0042161)
                                           Mary Helen Perry
                                           Heather Guilette Walser
                                           Cheryl E. Forchilli
                                           JONES DAY
                                           51 Louisiana Ave. NW
                                           Washington, D.C.  20001
                                           Telephone:     (202) 879-3939
                                           Facsimile:     (202) 626-1700

                                           Attorneys for Defendant
                                           Ernst & Young

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that copies of the foregoing MOTION TO DISMISS AND

MEMORANDUM IN SUPPORT THEREOF were served upon:

  Michael G. Brautigam, Esq.
  Gene Mesh & Associates
  2605 Burnet Avenue
  Cincinnati, Ohio 45219-2502
  Attorney for Plaintiff

by facsimile and ordinary U.S. mail, this 30th day of January, 2004, and upon all other counsel of

record via the Court's electronic case filing system.


<u>/s/ James E. Gauch</u>
James E. Gauch