## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **WALTER W. THIEMANN,** *et al.,* | ) | **Case No. C-1-00-793** |
| | ) | |
| **Plaintiffs,** | ) | **(Judge Sandra S. Beckwith)** |
| | ) | **(Magistrate Judge Timothy S. Hogan)** |
| **-v-** | ) | |
| | ) | |
| **OHSL FINANCIAL CORPORATION,** *et al.,* ) | | |
| | ) | |
| **Defendants.** | ) | |

---

### DEFENDANTS KEATING, MUETHING & KLEKAMP PLL AND MARK A. WEISS MOTION TO DISMISS WITH MEMORANDUM IN SUPPORT

---

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), the Private Securities Litigation Reform Act of 1995, and the Securities Litigation Uniform Standards Act of 1998, Defendants Keating, Muething & Klekamp PLL and Mark A. Weiss respectfully request that the Court dismiss all Plaintiffs' claims asserted against them in the December 31, 2003 Consolidated and Amended Class Action Complaint. The grounds for this motion are more fully explained in the accompanying memorandum in support.

Dated:  January 30, 2004

Respectfully submitted,

/s/ Thomas W. Breidenstein
Michael R. Barrett (0018159)
Thomas W. Breidenstein (0064299)
BARRETT & WEBER, LPA
500 Fourth & Walnut Centre
105 East Fourth Street
Cincinnati, Ohio 45202
Tel:  513-721-2120
Fax:  513-721-2139
mrbarrett@barrettweber.com
twbreidenstein@barrettweber.com
*Attorney for Defendants,*
*Keating, Muething & Klekamp PLL*
*and Mark A. Weiss, Esq.*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    <u>INTRODUCTION</u>**

Despite the fact that Plaintiff Walter Thiemann originally instituted this action more than three years ago on September 30, 2000, Plaintiff filed a Consolidated and Amended Class Action Complaint ("CAC") (*T.d.* 233) on December 31, 2003 adding two new class representatives and four new defendants, including Keating, Muething & Klekamp PLL ("KMK") and one of its partners, Mark A. Weiss ("Weiss") (collectively "KMK Defendants").   Plaintiffs assert five claims (out of the eleven claims pled in the CAC) against the KMK Defendants: (a) Count I (violation of Section 11 of the Securities Act of 1933 (15 U.S.C. § 77k)); (b) Count V (violation of Rule 10b-5 and Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78(j)b)); and (c) Counts VII, VIII, and X (violations of Ohio statutory (O.R.C. §§ 1707.41, 1707.43) and common law (common law fraud)).   The federal claims have been pending against other defendants since the original complaint was filed; the state law claims are recently added but mirror the originally pled federal claims in substance.

Plaintiffs' claims against the KMK Defendants should be dismissed for several reasons. First and foremost, the claims are clearly time-barred.   Second, the KMK Defendants are not experts who certified any statement creating Section 11 liability, and the Section 11 elements of materiality and reliance are not established by testimony or adequately pled in the CAC.   Third, the scienter requirement for 10b-5 liability is both factually lacking and inadequately pled. Fourth, the state law claims are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and alternatively do not apply to attorneys.   Other grounds for dismissal, including the lack of materiality of any of the alleged misstatements upon which the CAC is

premised, are being fully briefed by other defendants; to preserve resources, the KMK Defendants incorporate these additional reasons supporting their dismissal by reference.

The Court is familiar with the tortured history of this litigation and Plaintiffs and Plaintiffs counsel's "quest to bring KMK into this case." *T.d.* 227 at 11. Plaintiffs have finally asserted claims against the KMK Defendants in the CAC; however, the claims are unfounded in law and offensive in fact. The time has come to put an end to Plaintiffs' assault against the KMK Defendants. The Court should dismiss the KMK Defendants from this litigation.

## II.    **STATEMENT OF FACTS**

Recognizing that the Court has summarized the factual background of this case in prior orders (e.g., *T.d.* 46 (July 25, 2001 Order); *T.d.* 215 (*October 20, 2003 Order*); and *T.d.* 247 (December 15, 2003 Order Vacating Class Certification)), the KMK Defendants offer a brief statement of facts limited to those relevant to the claims asserted against the KMK Defendants.

This lawsuit arises out of the 1999 merger between OHSL Financial Corporation ("OHSL") and Provident Financial Group, Inc. ("Provident"). While this action was instituted in September of 2000, Plaintiffs' counsel began litigation regarding the Provident/OHSL merger in Ohio state court in November of 1999. The state court litigation was dismissed after the court denied plaintiff's motion to enjoin the Provident/OHSL merger and defendants filed a motion to revoke plaintiff counsel's *pro hac vice* admission of counsel, Michael Brautigam.

The OHSL shareholders approved the Provident/OHSL merger on October 25, 1999. *Eighty percent* (80%) of the OHSL shareholders who voted cast their vote in favor of the transaction.

Despite this high percentage of approval by OHSL shareholders, Plaintiffs, Walter Thiemann and Gary and Lisa Meier as Custodian for ("C-F") Lindsey Meier, have instituted this action on behalf of a class of OHSL shareholders, who held such shares between September 27,

1999 and December 3, 1999, seeking to rescind the merger. They allege that the Proxy Materials (attached to the CAC as Exhibit B) and the publicly filed Registration Statement (attached to the CAC as Exhibit F) contained four materially false and/or misleading statements regarding: (1) the unanimity of OHSL's board of directors in approving the Provident/OHSL merger; (2) the non-disclosure of material facts concerning the "Risk Factors" relating to Provident's accounting methodology known as "Securitization"; (3) the non-disclosure of OHSL director Thomas M. Herron's resignation from the board; and (4) the "fairness" opinion rendered by a financial expert relying on Provident's financial data that was subsequently restated due to accounting errors disclosed by Provident in March and April of 2003. *T.d.* 233 at *¶¶ 117-121*.

The Registration Statement filed with the SEC by Provident identifies "Mark A. Weiss, Esq., Keating, Muething & Klekamp, PLL" on page 1 of the statement. The Registration Statement was identified and cited by Plaintiff Thiemann in his initial September 20, 2000 Complaint as one of the documents containing the misleading statements that formed the basis of this action. *T.d.* 1 *in passim*. The claims asserted against defendants Dinsmore & Shohl and Clifford Roe in the September 20, 2000 Complaint were based on their alleged participation in the preparation, writing and knowledge of the Registration Statement; Clifford Roe and Dinsmore & Shohl appear on the same page of the Registration Statement as Mark A. Weiss and Keating, Muething & Klekamp, PLL.

Plaintiffs and their counsel have litigated claims related to these misrepresentations for over four years in state and federal courts. Over four years since Plaintiffs' counsel filed suit in state court, and over three years since Plaintiffs and Plaintiffs' counsel began this litigation,

Plaintiffs have formally asserted claims against the KMK Defendants in the December 31, 2003 CAC.[1]

## III.    ARGUMENT

The standard for considering a motion to dismiss is clear.  While the Court is typically bound to accept well pleaded factual allegations in the CAC as true, the Court is not required to accept any legal conclusions allegedly resulting from the pleaded facts.  Blackburn v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1971); Morgan v. Church's Fried Chicken, 829 F.2d 10 (6th Cir. 1987); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983).

A plaintiff's complaint must contain either direct or inferential allegations respecting all material elements of the asserted causes of action to survive a Rule 12 motion to dismiss.  Klusty v. Taco Bell Corp., 909 F. Supp. 516, 520 (S.D. Ohio 1995) (citations omitted); See also Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

The Court may also consider any and all documents and information that Plaintiffs rely upon in their complaint without transforming the motion into a motion for summary judgment.  Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 949-50 (6th Cir. 1990); Havenick v. Network Express, Inc., 981 F. Supp. 480, 509 (E.D. Mich. 1997).

---

[1] The Court will recall that Plaintiff, without leave of Court, filed an amended complaint on February 4, 2002, that purported to add the KMK Defendants as additional defendants.  The Court treated the filing as a motion for leave to file an amended complaint (*T.d.* 82), and Magistrate Hogan later denied Plaintiff leave to file an amended complaint, voiding the February 4, 2002 filing .  *T.d.* 110.

Plaintiff filed its motion for leave to file an amended complaint (which, among other points, sought to add the KMK Defendants) on March 7, 2003.  *T.d.* 146.  After additional and voluminous briefing on this and other issues, the Court granted Plaintiffs leave to file an amended complaint in its October 20, 2003 Order (*T.d.* 215), which resulted in the December 31, 2003 filing of the CAC.

Plaintiff also filed an identical lawsuit, Meier v. OHSL Financial Corp., et al., Case No. 20-613, on August 23, 2002 adding the KMK Defendants, in a "transparent attempt to avoid the consequences of Judge Hogan's denial of the motion to amend the complaint."  *T.d.* 215.  The case was stayed and eventually consolidated into this action and closed.  *T.d.* 215.  To the extent the Meier complaint is relevant, the first complaint against the KMK Defendants was filed 33 months after Plaintiff's counsel filed suit in state court, and over 21 months after Plaintiff and Plaintiff's counsel began this litigation.

The December 31, 2003 CAC therefore is the first complaint where claims are properly being asserted against the KMK Defendants.

### A.    Plaintiffs' Claims Against the KMK Defendants Are Time-Barred

All five claims asserted by Plaintiffs against the KMK Defendants, on all four alleged

misrepresentations, are time barred by the applicable statutes of limitations.

> **1.    Plaintiffs' Section 11 and Section 10(b)/Rule 10b-5 claims relating to the board unanimity, risk factors, and the Herron resignation are barred by the applicable one year statute of limitations contained in 15 U.S.C. 77m.**

Claims arising out of Section 11 of the Securities Act and Section 10(b)/Rule 10b-5 of

the Securities Exchange Act are subject to a one year statute of limitations and a three year

statute of repose.  Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 362

(1991); 15 U.S.C. §77m; 15 U.S.C.§77i(e).   The Sixth Circuit, as well as numerous other

circuits, have held that "inquiry notice" is the appropriate standard for the limitations period

applicable to Section 11 and Section 10(b)/Rule 10b-5 claims.   New England Health Care

Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 499 (6th Cir. 2003).[2]   A

plaintiff is put on inquiry notice "when the plaintiff has been presented with evidence suggesting

the possibility of fraud."  Isaak v. Trumbull Sav. & Loan Co., 169 F.3d 390, 399 (6th Cir. 1999);

see also Eckstein v. Balcor Film Investors, 58 F.3d 1162, 1168 (7th Cir. 1995) ("The year begins

when a reasonable investor knew, or through the exercise of reasonable diligence could have

learned, enough to commence an inquiry into the possibility of deceit").   "The plaintiff need only

possess a low level of awareness; he need not fully learn of the alleged wrongdoing.  Knowledge

of all facts is not required to set off the prescriptive clock.  Thus, the clock begins to tick when a

plaintiff senses "storm warnings," not when he hears thunder and sees lighting."  Isaak, 169 F.3d

---

[2] See also Dobbs v. Cigna Securities, Inc., 12 F.3d 346, 350 (2d Cir. 1993); Olcott v. Delaware Food Co., 76 F.3d 1538, 1549 (10th Cir. 1996); Howard v. Haddad, 962 F.2d 328, 330 (4th Cir. 1992); Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7th Cir. 1993).

at 399.  On inquiry notice, "anything he could have discovered by a diligent search will be imputed to him." In re Arm Financial Group, Inc. Securities Litig., 2002 U.S. Dist. Lexis 13451 (W.D. Ky. July 18, 2002) (relying upon Harner v. Prudential-Bache Securities, Inc., 35 F.3d 565 (6th Cir. 1994)) (copy attached).

The "inquiry notice" analysis in this case is clear.  The August 26, 1999 Registration Statement clearly listed Weiss and KMK as Provident's counsel with respect to the merger transaction and the underlying documents.  Plaintiffs and their counsel have been aware of KMK and Weiss's involvement with the Proxy Materials/Registration Statement before they filed the state court action in November, 1999 and over a year before they filed this action.

The claims now asserted against the KMK Defendants regarding the alleged misrepresentations on Board unanimity, risk factors, and Mr. Herron's resignation are the same claims asserted against other Defendants in Plaintiff's initial September, 2000 Complaint. Plaintiff Thiemann chose at that time to bring suit against defendants Dinsmore & Shohl and Clifford Roe regarding their involvement in the documents but not the KMK Defendants – even though their names appear side by side on the Registration Statement.  Plaintiffs had actual notice, and obviously inquiry notice, of the KMK Defendants involvement in the Proxy Materials/Registration Statement since at least August, 1999, and certainly when Plaintiff filed the September 2000 Complaint - - more than one year before they filed any complaint against the KMK Defendants.

Plaintiffs imply in the CAC that they were unaware of the extent of KMK and Weiss's role in the preparation of the Proxy Materials/Registration Statement until the depositions of Defendants Roe and Hertlein were taken. *T.d.* 233 *at ¶ 30*.  The statement, even if assumed to be true, is irrelevant.  The Registration Statement was filed on August 26, 1999.  Plaintiff filed a

state court proceeding and conducted extensive discovery on this matter in 1999 and through the summer of 2000.  Plaintiffs filed a multi-count complaint against multiple parties alleging a dozen misrepresentations and omissions.  Plaintiffs and their counsel were required to exercise reasonable diligence in attempting to uncover the misconduct purportedly committed by KMK and Weiss, at the very latest, by September of 2001.  See, e.g., Picard Chemical Inc. v. Perrigo Co., 940 F. Supp. 1101, 1118 (W.D. Mich. 1996).  Plaintiffs and Plaintiffs' counsel clearly possessed, at the very least, a "low level awareness" and had conducted extensive discovery in the state court proceedings such that they were aware or should have been aware of the KMK Defendants' involvement.  Neither the CAC nor the improperly filed Meier complaint were filed by September of 2001.

Plaintiffs had actual and inquiry notice of the KMK Defendants involvement in the Proxy Materials/Registration Statement, and failed to timely file a claim against them.  The Section 11 and 10(b)/Rule 10b-5 claims related to board unanimity, risk factors, and Herron resignation alleged misrepresentations are now time-barred and should be dismissed.

> **2.    Plaintiff's Section 11 and Section 10(b)/Rule 10b-5 claims relating to the Provident restatement of financials alleged misrepresentation are now time-barred by the applicable three year statute of repose.**

In addition to the one year statute of limitations, 15 U.S.C. § 77m also establishes an absolute three year statute of repose: "[i]n no event shall any action be brought to enforce a liability created under section 11 . . . more than three years after the security was bona fide offered to the public, or under section 12(a)(2) more than three years after the sale."  The Supreme Court has determined that the three year statute of repose sets an "outside limit." Lampf, 501 U.S. at 363.  "The three year period is an absolute limitation which applies whether or not the investor could have discovered the violation."  Jackson National Life Ins. Co. v. Merrill Lynch, 32 F.3d 697, 704 (2d Cir. 1994); Securities and Exchange Commission v.

Seaboard Corp., 677 F.2d 1301, 1308 (9th Cir. 1982) ("the statutory language requires the conclusion that Congress meant the bar to be absolute").  Courts have rejected attempts by plaintiffs to file amended complaints asserting new claims and evidence learned after the expiration of the three year statute of repose and relate them back to existing complaints.

> [A]llowing relation back of claims of plaintiffs in consolidated, untimely actions totally defeats the reasoning and import of Lampf.  The Lampf Court provided that claims under Section 10(b) and Rule 10b-5 must be brought no later than three years after the accrual of the cause of action and specifically rejected the equitable tolling doctrine as "fundamentally inconsistent with the 1-and-3-year structure."  This decisive limitation would be rendered meaningless if a plaintiff who discovers fraud after the three year period has elapsed may effectively benefit from the equitable tolling doctrine by piggybacking his action which, if tried separately, would be clearly barred, on a timely one through consolidation.

In re Arm Financial, 2002 U.S. Dist. Lexis at *16-18 (quoting Morin v. Trupin, 778 F. Supp. 711 (S.D.N.Y. 1991).

There is no debate that the securities in this merger were offered and the sale took place by December 3, 1999.  Provident's restatement of its financials in March and April of 2003 occurred more than three years after the offer and sale.  Any Section 11 or Section 10(b)/Rule 10b-5 claim regarding this alleged misrepresentation is not related to the merger transaction itself, and allowing Plaintiffs to relate this claim back to a prior complaint would defeat the fundamental purpose of the statute of repose enacted by Congress and approved by the Supreme Court.  Lampf and the clear intent of the statute require dismissal of these claims related to this misrepresentation.

### 3.    Plaintiffs' State Law Claims are Time-Barred

Ohio Revised Code § 1707.43(B) states:

> No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707 of the Revised Code shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful,

or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

O.R.C. § 1707.43(B); see also O.R.C. 1707.41(D). Plaintiffs' statutory law claims and common law fraud claims predicated on the sale of securities, are all governed by a two year statute of limitations. Ferritto v. Alejandro (2000), 139 Ohio App.3d 363, 743 N.E.2d 978; Lynch v. Dean Witter Reynolds, Inc. (1999), 134 Ohio App. 3d 668, 731 N.E.2d 1205.

As discussed above, Plaintiffs were clearly put on notice of the alleged facts giving rise to the state law claims against the KMK Defendants as early as November of 1999. Plaintiffs did not assert any of the state law claims against the KMK Defendants, either in the CAC (December 31, 2003) or the Meier complaint (common law fraud asserted August of 2002; statutory claims first asserted April of 2003), until more than two years after they actually knew of the KMK Defendants' involvement. Therefore, the state law statute of limitations has also run, and the state law claims against the KMK Defendants should be dismissed.

**B.    Alternatively This Court Should Dismiss Plaintiffs' Claim Under Section 11 of the Securities Act, 15 U.S.C. § 77k, Because Plaintiffs' Allegations are Insufficient to Subject Defendants to Liability Under This Provision**

**1.    KMK and Weiss are Not "Experts" Subject to Section 11 Liability**

Section 11 of the Securities Act allows purchasers of a registered security to sue certain enumerated parties in a registered offering when false or misleading information is included in a registration statement. Picard Chemical Inc. Profit Sharing Plan, 940 F. Supp. at 1131; 15 U.S.C. § 77k(a). Section 11(a) of the Securities Act provides, in pertinent part:

(a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact required to be stated therein or necessary to make the statements therein not misleading , any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue – (1) every person who signed the registered statement; (2) every person who was a director of . . . the issuer at the time the

> filing of the part of the registration statement with respect to which his liability is asserted; . . . (4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has, with his consent been named as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such a registration statement, report or valuation, which purports to have been prepared or certified by him . . .

15 U.S.C. § 77k(a). Included within the enumeration of prospective Section 11 defendants are experts who "have prepared or certified any report or valuation which is used in connection with the registration statement, report, or valuation, which purports to have been prepared or certified by him." Id. at §77 (b)(3). The inclusion of "experts," however, is interpreted very narrowly, and attorneys and the law firms with which they are associated fall into this category only under very limited circumstances. See, e.g. Liability Of Attorneys And Accountants For Securities Transactions, 896 PLI/Corp. 777, 780 (1995). Plaintiffs in various cases have argued that attorneys are experts within the meaning of Section 11 if they draft the registration statement or otherwise provide legal advice on disclosure issues in connection with its preparation. The Supreme Court rejected this position. See Herman & MacLean v. Huddleston, 459 U.S. 375, 386 (1983).[3] The overwhelming majority of case law on the subject holds that, "[t]o state that the entire registration statement is expertised because some lawyer prepared it would be an unreasonable construction of the statute." See Herman & MacLean, 459 U.S. at 386. The attempt to extend liability to law firms and individual attorneys on the ground that the attorneys acted as experts for the entire document is simply insufficient to state a claim under Section 11. Id.

Plaintiffs in various cases have also attempted to extend liability to law firms and attorneys by asserting that the law firm and the attorney "had extensive knowledge of the

[corporation's] business affairs and a high degree of involvement in the note offering." See Ahern, 611 F. Supp. at 1482. This argument also fails. Id. Even where an attorney provided a formal opinion as to the legality of the securities being registered (as a filed exhibit to the registration statement), courts have held that the attorney and the law firm with which he was associated were not liable under Section 11. Id.; see also ZZZZ Best Securities Litig., Fed. Sec. L. Rep. (CCH) § 94, 485, 93, 082-83 (C.D. Cal. 1989) (copy attached).

In the present action, Plaintiffs assert that, "Defendant Weiss was the KMK partner with overall responsibility for writing and assembling the final version of the Proxy Materials/Registration Statement." T.d. 233 at § 31. Plaintiffs continue, "Defendant Weiss knew as an expert in writing Proxies Materials/Registration Statements as well as Prospectuses and in the exercise of due care should have known that the subject Proxy Materials/Registration Statement contained materially false and misleading statements and omitted to state material facts." Id.

Essentially, Plaintiffs fill the pages of their CAC with unsupported allegations and innuendo as to KMK and Weiss's role in the drafting of the relevant Proxy Materials/Registration Statement. Even accepting Plaintiffs' allegations as true for purposes of the present motion to dismiss, Plaintiffs fail to state a claim under Section 11.[4] At no point do

---

[3] See also Ahern v. Gaussoin, 611 F. Supp. 1465, 1482 (D. Or. 1985); In re Flight Transportation Corporation Securities Litigation v. Reavis & McGrath, 593 F. Supp. 612, 615-16 (D. Minn. 1984); Hagert v. Glickman, Lurie, Eiger & Co., 520 F. Supp. 1028, 1035 (D. Minn. 1981).

[4] In the August 22, 2003 deposition of Weiss, the record clearly indicates that Weiss was essentially the compiler of the Proxy Materials/Registration Statement. Weiss explained, and Plaintiffs' counsel agreed, that Weiss was essentially charged with compiling information - - from OHSL and its attorneys, the accountants involved in the transaction, and Provident - - into the final document. For example, Plaintiffs' counsel asked, "Were you the person assigned with the ministerial task of collecting the information and assembling it into Defendant's Exhibit A (Proxy Materials/Registration)." Weiss answered, "Yes." Weiss Depo. at 37:17-21. Later in the deposition, Plaintiffs' counsel asked, "What were your duties and responsibilities as you understood them on August 2, 1999, with respect to this merger?" Weiss answered, "I couldn't put it any better than you put it at the beginning. I was the ministerial compiler of the document." Weiss Depo. at 154:1-7. There is no discussion in the Weiss deposition of him doing anything more than putting the Proxy Materials/Registration Statement together. There is no evidence or even

Plaintiffs allege that KMK or Weiss are experts who "prepared or certified any report or valuation which is used in connection with the registration statement . . ."  15 U.S.C. § 77k(b). KMK and Weiss at no time "prepared or certified" such a report or valuation.  To the contrary, the Proxy Materials/Registration Statement shows that the only part signed off on by KMK or Weiss is the required formal opinion as to the legality of the securities being registered (as a filed exhibit to the registration statement) - - which does not trigger Section 11 liability.  See ZZZZ Best Securities Litig., Fed. Sec. L. Rep. (CCH) § 94, 485, 93, 082-83 ("[a]n attorney who assists in the preparation of a registration statement does not thereby render [the law firm] experts for the entire Registration Statement . . .").

Section 11 was specifically drafted for the purpose of barring claims against counsel such as the one before this Court today.  Therefore, even accepting Plaintiffs' unsubstantiated allegations as true for purposes of this motion to dismiss, Plaintiffs fail to state a claim under Section 11 upon which relief can be granted.

> **2.     Plaintiffs' Fail to Allege Facts Sufficient to Establish that the Proxy Materials/Registration Statement Contain Material Misstatements and/or Omissions**

Even if KMK and Weiss could be considered experts, nothing in the Proxy Materials/Registration Statement was misleading or omitted, thereby negating Section 11 liability.  To preserve resources, the KMK Defendants rely upon and incorporate by reference the arguments and analysis of other Defendants who are addressing this issue.

> **C.     Alternatively This Court Should Dismiss Plaintiffs' Claim Under Section 10(b) and Rule 10b-5 Because Plaintiffs Have Failed To Adequately Allege Both Scienter and Facts Sufficient to Establish that the Proxy Materials/Registration Statement Contains Material Misstatements and/or Omissions**

---

indication from the cross-examined sworn testimony that Weiss expertised any part of the document as required by Section 11.

1.    **Plaintiffs' Have Failed to Adequately Allege Scienter**

    a.    **The Allegations Contained in Plaintiffs' CAC Insufficiently Plead Scienter**

Plaintiffs' CAC does not contain allegations against the KMK Defendants sufficient to state a claim under the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). "To state a claim under § 10(b) of the Securities and Exchange Act of 1934 (the "1934 Act") and Rule 10b-5, a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." _In re Comshare, Inc. Sec. Litigation_, 183 F.3d 542, 548 (6th Cir. 1999).

In 1995, Congress passed the PSLRA to address its concern that Federal Rule of Civil Procedure 9(b) had "not prevented abuse of the securities laws by private litigants." _Id._ (citing H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 818). The PSLRA addressed this concern by placing more demanding pleading requirements on plaintiffs. Under the PSLRA, plaintiffs who adequately allege a misstatement or omission of material fact with specificity must also "establish that the defendant acted with the requisite scienter, i.e., they must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" _Fidel v. AK Steel Holding Corp._, 2002 WL 31545952, at *5 (S.D. Ohio 2002) (quoting 15 U.S.C. § 78u-4(b)(2)) (copy attached). This "strong inference" requirement means that a plaintiff is entitled "only to the most plausible of competing inferences." _Miller v. Champion Enterprises, Inc._, 346 F.3d 660, 673 (6th Cir. 2003) (holding "if certain factors are not met in the complaint – factual particularity and the most plausible of competing inferences – the court shall, on the motion of any defendant, dismiss the complaint"); _Helwig v. Vencor, Inc._, 251 F.3d 540, 551 (6th Cir. 2001) (although all inferences must be drawn in favor of the plaintiff

under 12(b)(6), inferences of scienter will not survive a motion to dismiss if they are simply reasonable; rather, such inferences must be both reasonable and strong).

In the Sixth Circuit, as in most other circuits, the required state of mind for securities fraud cases is actual knowledge or "recklessness," that is, "highly unreasonable conduct which is an <u>extreme</u> departure from the standards of ordinary care.  While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it."  <u>Id</u>. at 672 (quoting <u>Mansbach v. Prescott, Ball & Turben</u>, 598 F.2d 1017, 1025 (6th Cir. 1979)) (emphasis added).   Simple, or even inexcusable, negligence is <u>not</u> sufficient to satisfy the PSLRA's recklessness requirement.  <u>See</u> <u>Comshare</u>, 183 F.3d at 550 (recklessness is a mental state "apart from negligence and akin to conscious disregard").

Therefore, Plaintiffs' CAC must contain specific, well-pleaded facts establishing that KMK and Weiss knew about or consciously disregarded specific "red flags" that should have put the KMK Defendants on notice of the alleged misrepresentations/omissions in the Proxy Materials/Registration Statement.   <u>See</u> <u>Comshare</u>, 183 F.3d at 553.   Plaintiffs' allegations, however, are legally and factually deficient and fail to state a claim upon which relief can be granted.

Plaintiffs' 10(b)/Rule 10b-5 claim against KMK and Weiss contains nothing but generalized and conclusory allegations without factual bases.  Paragraphs 145 through 148 of Plaintiffs' CAC references all defendants generally and concludes, without foundation, that defendants had "actual and/or constructive knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them."  *T.d.* 233 at ¶ 148.  To survive a motion to dismiss in the post-PSLRA era, however, Plaintiffs must

plead actual facts – not merely assert speculation or conclusions – that give rise to a "strong inference" of actual knowledge or recklessness. Miller, 346 F.3d at 676. The source of KMK and Weiss's knowledge regarding the purported misrepresentations/omissions cannot be found anywhere under Plaintiffs' 10(b)/Rule 10b-5 claim.

The only reference specifically to KMK and Weiss under this claim regards Plaintiffs' contention that these Defendants benefited through the misrepresentations/omissions because they earned huge legal fees from the Provident/OHSL merger and resulting litigations. *T.d.* 233 at ¶ 149. This allegation does nothing but reference KMK and Weiss's purported motive. Numerous courts, including the Sixth Circuit, have consistently held that "evidence of a defendant's motive and opportunity to commit securities fraud does not constitute 'scienter' for the purposes of Section 10(b) and Rule 10b-5 liability." Comshare, 183 F.3d at 551.

Section Five of Plaintiffs' CAC entitled "Allegations of Fact Upon Which Claims For Relief Are Based", including paragraphs 66-86, similarly fail to establish that KMK and Weiss intended to "deceive, manipulate or defraud." Comshare, 183 F.3d at 550. Paragraphs 70-71 and 77 are mere conclusory statements without any foundation. Paragraphs 68, 78, and 82 address KMK and Weiss's purported motive for making the misrepresentations/omissions alleged in the CAC, which, as previously stated, is not sufficient to prove scienter. See Comshare, 183 F.3d at 551. Paragraphs 66-67, 69, 73-74, and 76 reference KMK and Weiss's purported failure to inquire into information that would have enabled them to learn of the alleged misrepresentations in the Proxy Materials/Registration Statement. Even accepting these unsupported allegations as true, they do not support, or even hint at, scienter on the part of the KMK Defendants. Plaintiffs fail to allege facts that make fraudulent intent and reckless disregard the "most plausible of competing inferences" to the exclusion of others. Plaintiffs'

allegations, at most, accuse KMK and Weiss of negligence, and it is clear that allegations of negligence, even inexcusable negligence, are not sufficient to support the necessary strong inference of scienter.  Comshare, 183 F.3d at 550.  Finally, paragraphs 72, 75, 79-81 and 83-86 reference isolated instances unrelated to any particular alleged misrepresentation/omission.  Such allegations are clearly not sufficient to support a finding of scienter necessary to state a claim under Section 10(b)/Rule 10b-5.  See Miller, 346 F.3d at 674 ("other allegations of scienter were not asserted in relation to a statement or omission of a material fact, but rather with respect to Champion's substantive actions throughout the underlying situation, and thus do not allege scienter sufficient as a basis for a securities fraud action").

Therefore, construing all of the unsubstantiated allegations asserted against KMK and Weiss in Plaintiffs' CAC as true, the allegations simply do not rise to the level of "highly unreasonable conduct which is an extreme departure from the standards of ordinary care."  Id. at 672 (emphasis added).  Because Plaintiffs have failed to adequately allege scienter sufficient to state a claim, Plaintiffs' Section 10(b)/Rule 10b-5 claim should be dismissed as asserted against KMK and Weiss.

### b.    Weiss's Deposition Testimony Controverts Plaintiffs' Allegations of Scienter[5]

It is important to note that the allegations against KMK and Weiss are wholly inapposite to the deposition testimony of Weiss.  Rather than establish scienter and knowledge of a grand deception or fraud, the Weiss deposition confirms that he was nothing more than the compiler of the Proxy Materials/Registration Statement:

---

[5] Because Plaintiffs quote "selected" portions of Weiss's deposition testimony in the CAC, the Court may consider the entire deposition in ruling on this motion to dismiss.  See In re Gupta Corp. Sec. Litig., 900 F. Supp. 1217, 1228 (N.D. Cal. 1994) (when ruling on a motion to dismiss, a court may consider a variety of documents in addition to the complaint including, but not limited to, documents whose contents are alleged in the complaint but which are not physically attached to the pleading); Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999) (court may

> Q.     Were you the person assigned with the ministerial task of collecting the information and assembling it into Defendant's Exhibit A (Proxy Materials/Registration).
>
> A.     Yes.

Weiss Depo. at 37:17-21.

> Q.     What were your duties and responsibilities as you understood them on August 2, 1999, with respect to this merger?
>
> A.     I couldn't put it any better than you put it at the beginning.  I was the ministerial compiler of the document.

Weiss Depo. at 154:1-7.  As Weiss repeatedly explained:

> …Provident and KMK had a duty to point out any known deficiencies in the document, but not to independently verify information from different sources.  I've never – I've never even been asked to look at accountants papers, for example, but in order to verify information statements, that's what I would have to do.

Id. at 38:11-18.  There is no evidence in the Weiss deposition of knowledge or reckless disregard for the truth by the KMK Defendants with respect to any of the four alleged misrepresentations.

## 2.     Alternatively, Plaintiffs' Fail to Establish that the Proxy Materials / Registration Statement Contains Material Misstatements and/or Omissions

Other defendants are more fully addressing arguments regarding materiality of the alleged misrepresentations in the Rule 10(b)/Rule 10b-5 context and the KMK Defendants incorporate those arguments by reference.

## D.     This Court Should Dismiss Plaintiffs' State Statutory and Common Law Claims Against KMK and Weiss Because These Claims are Preempted by the Securities Litigation Uniform Standards Act ("SLUSA") and are Factually and Legally Deficient

### 1.     Plaintiffs' state law claims are preempted by SLUSA

---

consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim).

Plaintiffs' CAC asserts claims against the Defendants under O.R.C. Section 1707.41 (civil liability of seller for fraud), O.R.C. Section 1707.43 (remedies of purchaser of unlawful sale), and for common law fraud. These state statutory and common law claims against KMK and Weiss are clearly preempted by SLUSA. 15 U.S.C. § 77p(b).

In 1998, Congress passed SLUSA in reaction to numerous plaintiffs eluding the strict pleading requirements of the PSLRA by alleging securities fraud under state statutory and common law. See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 123 (2d Cir. 2003); Behlen v. Merrill Lynch, 311 F.3d 1087, 1091-1092 (11th Cir. 2002). To eradicate this litigation tactic, Congress mandated that certain class actions must be governed solely by federal rather than state law and, therefore, preempted certain state class action claims. See Behlen, 311 F.3d at 1092. Falkowski v. Imation Corp., 309 F.3d 1123, 1128 (9th Cir. 2002) (Congress may "so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character. (citations omitted) SLUSA provides for just such complete preemption"). State law claims are preempted by SLUSA if: (1) the lawsuit is a "covered class action"; (2) Plaintiffs' state law claims allege untrue statements or omissions of material fact, or deceptive devises employed by a defendant, in connection with the sale or purchase of a covered security; and (3) the securities involved are "covered securities". See 15 U.S.C. § 77p(b); See also Behlen, 311 F.3d at 1092-1095.

Simple application of SLUSA preempts the state law claims asserted in the CAC. First, the action initiated by Plaintiffs satisfies the definition of a "covered class action" since this lawsuit constitutes a group of lawsuits pending in the same court in which damages are sought on behalf of more than fifty (50) people and the lawsuit is a consolidation of suits proceeding as a single action. See 15 U.S.C. § 77p(f)(2)(A). In the action at bar, the case of Meier v. OHSL

18

Financial Corporation, et. al., C-1-02-613, was consolidated with the Thiemenn case and both are proceeding in the Southern District Court of Ohio, Western Division on behalf of more than fifty (50) class plaintiffs. *T.d.* 215 at 20.

Second, although SLUSA does not define the phrase "in connection with the sale or purchase of a covered security," the Supreme Court has held that this phrase has the same meaning under SLUSA as it does under Section 10(b)/Rule 10b-5 since SLUSA amended the Securities and Securities Exchange Acts. See Behlen, 311 F.3d at 1093. Plaintiffs' state law claims arise out of the same four alleged untrue statements or omissions of material fact that form the basis for Plaintiffs' federal securities claims that arose in connection with the purchase or sale of a covered security. See 15 U.S.C. § 77p(b)(1); *T.d.* at ¶¶ 158-172, 178-179). Thus, if these state law claims did not arise "in connection with the sale or purchase of a security," neither would Plaintiffs' Section 10(b)/Rule 10b-5 claim. Moreover, numerous courts have held that in the context of a merger, the sale or trade of a plaintiff's shares constitutes the purchase or sale of a security. See Greaves v. McAuley, 264 F. Supp.2d 1078, 1082 (N.D. Ga. 2003) (citing SEC v. Nat'l Secs., Inc., 393 U.S. 453, 467 (1969); Warner v. Alexander Grant & Co., 828 F.2d 1528 (11th Cir. 1987); Phillips v. LCI Int'l, Inc., 190 F.3d 609 (4th Cir. 1999)). Lastly, Plaintiffs' even concede in their state law claims that defendants are purportedly liable for their "purchase" of such securities. (See, e.g., CAC ¶¶ 163, 170).

Third, the Provident OHSL merger was facilitated through an exchange of OHSL common stock for Provident common stock. Under SLUSA, a "covered security" is any security listed, or authorized for listing, on the National Market System of the Nasdaq Stock Market. 15 U.S.C. § 77r(b)(1)(A). Plaintiffs' CAC admits that both OHSL and Provident stock is traded on

the Nasdaq Market. *T.d.* 233 at ¶ 1. Thus, the securities involved in this case clearly fit within the definition of "covered" securities under the statute.

The state law claims are clearly preempted by SLUSA and should therefore be dismissed as to the KMK Defendants.[6]

### 2.    Plaintiffs' State Statutory and Common Law Claims are Factually and Legally Deficient

Plaintiffs' Ohio securities claims should be dismissed on several additional grounds, including:  (1) O.R.C. §§ 1707.41 and 1707.43 are applicable only to "sellers" of securities and not attorneys involved in the preparation of legal documents; and (2) Plaintiffs have not adequately pled fraud under Rule 9(b) of the Federal Rules of Civil Procedure.  These and other additional arguments are more fully briefed by other defendants, and the KMK Defendants incorporate the arguments by reference.  For the purpose of preserving resources, KMK and Weiss adopt and incorporate by reference the arguments contained in other defendants' motions concerning the required dismissal of Plaintiffs' Ohio securities and common law fraud claims.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' CAC should be dismissed against the KMK Defendants.

---

[6] Although SLUSA provides for a Delaware carve-out exception that preserves certain state law claims under specific, narrow circumstances based on the state law where the issuer is incorporated, this exception does not apply to Plaintiffs' state law claims against KMK and Weiss.  See 15 U.S.C. § 77p(d).  KMK and Weiss are neither an issuer of Provident or OHSL stock, nor are they affiliates of the issuers because they do not control, are not controlled by, and are not under common control with, the issuer of such stock.  See id. § 77p(f)(1); See also, Greaves, 264 F. Supp.2d at 1084.

Respectfully submitted,


/s/ Thomas W. Breidenstein
Michael R. Barrett (0018159)
Thomas W. Breidenstein (0064299)
BARRETT & WEBER, LPA
500 Fourth & Walnut Centre
105 East Fourth Street
Cincinnati, Ohio 45202
Tel:  513-721-2120
Fax:  513-721-2139
mrbarrett@barrettweber.com
twbreidenstein@barrettweber.com
*Attorney for Defendants,*
*Keating, Muething & Klekamp PLL*
*and Mark A. Weiss, Esq.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 30, 2004, I electronically filed the foregoing Motion to Dismiss with Memorandum in Support with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered counsel electronically.  Pursuant to that notification, to any party or counsel not receiving electronic service, see below, from CM/ECF a true copy of the foregoing was mailed by ordinary U.S. Mail on this 30th day of January, 2004.


    Michael G. Brautigam
    Gene Irving Mesh
    Gene Mesh & Associates
    2605 Burnet Avenue
    Cincinnati, Ohio  45219-2502
    Attorney for the Plaintiff

    Stephen J. Brogan
    Melissa D. Stear
    Jones Day
    51 Louisiana Avenue, N.W.
    Washington, DC 20001
    Attorney for Defendant Ernst & Young


              /s/ Thomas W. Breidenstein
              Thomas W. Breidenstein