2002 U.S. Dist. LEXIS 13451, *

LEXSEE 2002 US DIST. LEXIS 13451

IN RE: ARM FINANCIAL GROUP, INC. SECURITIES LITIGATION

CIVIL ACTION NO. 3:99CV-539-H

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY, LOUISVILLE DIVISION

*2002 U.S. Dist. LEXIS 13451*

**July 18, 2002, Decided**

**DISPOSITION:** [*1] Defendants' motion to dismiss sustained in part and denied in part. Claims under §§ 11 and 12(a)(2) of Securities Act of 1933 dismissed with prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In consolidated actions, plaintiff investors sued defendants, investment companies and officers, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (1934 Act) and violations of §§ 11 and 12(a)(2) of the Securities Act of 1933 (1933 Act). The investment companies moved to dismiss the investors' third amended complaint as untimely.

**OVERVIEW:** After a chief executive officer and directors of a financial company resigned, the investment companies fully divested itself of their interest in the financial company. Subsequently, the financial company lost millions of dollars due to risky ventures. The investors alleged fraudulent misstatements and omissions. The court determined that the claims asserted under the 1934 Act were not subject to dismissal, because the investment companies failed to persuade the court that the investors were on inquiry notice of any misconduct by the investment companies one year before the 1934 Act claims were filed. However, the 1933 Act claims were untimely because suit was not filed within one year of inquiry notice and the 1933 Act claims did not relate back to the prior complaint under *Fed. R. Civ. P. 15(c)*.

**OUTCOME:** The court sustained in part the motion to dismiss and dismissed the 1933 Act claims. The court denied the motion as to all other claims.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

*Securities Law > Additional Offerings, Disclosure & the Securities Exchange Act of 1934 > Scope & Jurisdiction > Limitations on Remedies*
[HN1] The limitations period on claims asserted under § 10(b) of the Securities Exchange Act of 1934 (1934 Act) is one year after the fraud is reasonably discoverable, or three years after the fraud is perpetrated, whichever comes first. Because § 20(a) of the 1934 Act claims are derivative, they take on the limitations period of the underlying claim. By statute, the one-year/three-year limitations period applies to claims under §§ 11 and 12(a)(2) of the Securities Act of 1933. *15 U.S.C.S. § 77m.*

*Securities Law > Additional Offerings, Disclosure & the Securities Exchange Act of 1934 > Scope & Jurisdiction > Limitations on Remedies*
[HN2] Where untimeliness is asserted as a defense to a claim of fraud, the running of the statute of limitations begins when a plaintiff is put on inquiry notice -- that is, when the plaintiff has been presented with evidence suggesting the possibility of fraud. The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing. Knowledge of all facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses "storm warnings," not when he hears thunder and sees lightning. Once a plaintiff is on inquiry notice, anything he could have discovered by a diligent search will be imputed to him. Storm warnings come in various forms. The defense that the relevant limitations period has expired is an

Case 1:00-cv-00793-SSB-TSH    Document 256-2    Filed 01/30/2004    Page 2 of 7

Page 2
2002 U.S. Dist. LEXIS 13451, *

affirmative defense. Thus, the burden lies with the defendant to prove when the plaintiff was on inquiry notice -- that is, when the storm warnings sufficed to alert a reasonable investor as to the possibility of fraud.

*Securities Law > Additional Offerings, Disclosure & the Securities Exchange Act of 1934 > Scope & Jurisdiction > Limitations on Remedies*
[HN3] When determining the commencement date for a statute of limitations in a securities case, the facts upon which the district court may rely must be sufficient to enable a court to conclude as a matter of law that a reasonably diligent person should have discovered the participation of the particular defendant by the date the fraud should have been discovered.

*Securities Law > Additional Offerings, Disclosure & the Securities Exchange Act of 1934 > Scope & Jurisdiction > Limitations on Remedies*
[HN4] In the fact-intensive context of securities fraud, the question of inquiry notice is often ill-suited for determination on a motion to dismiss. It is difficult to determine whether facts which are as yet unproven could have been discovered with reasonable diligence prior to a time specific.

*Civil Procedure > Pleading & Practice > Pleadings > Relation Back*
[HN5] See *Fed. R. Civ. P. 15(c)*.

*Civil Procedure > Pleading & Practice > Pleadings > Relation BackCivil Procedure > Trials > Consolidation of Actions*
[HN6] The purpose of *Fed. R. Civ. P. 15* is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities. The consolidation rule, on the other hand, has as its end to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties. Thus, while Rule 15 may be said to have substantive objectives, consolidation is a trial management device for which the policies of Rule 15 have no relevance.

*Civil Procedure > Pleading & Practice > Pleadings > Relation Back*
[HN7] While *Fed. R. Civ. P. 15(c)* permits the change of the party or the naming of the party against whom a claim is asserted but for a mistake concerning the identity of the proper party, it does not envision the addition of a new plaintiff with new claims. Amendments will not survive preclusive application of the statute of limitations unless the amendments are corrections of misnomers.

**COUNSEL:** For HELENE GOTTLIEB, TRUST ADVISORS EQUITY PLUS, LLC, CHARLES A. SHAHEEN, JR., JOHN SCHUMACHER, plaintiffs: Ronald R. Parry, Parry, Deering, Futscher & Sparks, Covington, KY.

For HELENE GOTTLIEB, plaintiff: Steven G. Schulman, Samuel H. Rudman, Andrea McBarnette, Deborah Clark-Weintraub, Elaine Simek Kusel, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY.

For HELENE GOTTLIEB, JOHN SCHUMACHER, plaintiffs: Marc S. Henzel, Philadelphia, PA.

For HELENE GOTTLIEB, plaintiff: Lee S. Shalov, Shalov, Stone & Bonner, New York, NY.

For HELENE GOTTLIEB, plaintiff: Beverly R. Storm, Arnzen, Parry & Wentz, Covington, KY.

For GERALDINE KEHOE, plaintiff: Fred Taylor Isquith, Gregory Mark Nespole, Daniel W. Krasner, David A.P. Brower, Wolf, Haldenstein, Adler, Freeman & Herz, New York, NY.

For GERALDINE KEHOE, GREGORY YURKOSKI, ALLEN GROSS, ELOI CHAVETON, JOHN SCHUMACHER, plaintiffs: Richard S. Wayne, William K. Flynn, Strauss & Troy, Cincinnati, OH.

For TRUST ADVISORS EQUITY PLUS, LLC, JOHN SCHUMACHER, [*2] plaintiffs: Andrew M. Schatz, Jeffrey S. Nobel, Schatz & Nobel, Hartford, CT.

For AL GALLI, JOHN SCHUMACHER, plaintiffs: Jeffrey Krinsk, Arthur L. Shingler, Finkelstein & Associates, San Diego, CA.

For AL GALLI, JOHN SCHUMACHER, plaintiffs: P. Stephen Gordinier, Louisville, KY.

For AL GALLI, JOHN SCHUMACHER, plaintiffs: Paul J. Geller, Shepherd & Geller, Boca Raton, FL.

For ALLEN GROSS, ELOI CHAVETON, plaintiffs: Joseph H. Weiss, Jack I. Zwick, Weiss & Yourman, New York, NY.

For ALLEN GROSS, ELOI CHAVETON, JOHN SCHUMACHER, plaintiffs: Jules Brody, Stull, Stull & Brody, New York, NY.

For CHARLES A. SHAHEEN, JR., JOHN

SCHUMACHER, plaintiffs: Paul F. Bennett, Steven O. Sidener, Joseph M. Barton, Gold, Bennett Cera & Sidener, LLP, San Francisco, CA.

For NORMAN TASMAN, ALICE TASMAN, RON FADEL, GERALD MANSBACH, ROBERT JONES, plaintiffs: Edward J. Smith, Louisville, KY.

For NORMAN TASMAN, ALICE TASMAN, RON FADEL, GERALD MANSBACH, ROBERT JONES, JOHN SCHUMACHER, plaintiffs: Clifford B. Altfeld, Leonard, Felker, Altfeld, Greenberg & Battaile, Tucson, AZ.

For JOHN SCHUMACHER, plaintiff: Janice M. Weiss, Gray & Weiss, Louisville, KY.

For JOHN SCHUMACHER, [*3] plaintiff: Keith Fleischman, Elaine Simek Kusel, Milberg, Weiss, Bershad, Hynes & Lerach, New York, NY.

For JOHN SCHUMACHER, plaintiff: Jack I. Zwick, Weiss & Yourman, New York, NY.

For JOHN SCHUMACHER, plaintiff: Fred Taylor Isquith, Gregory Mark Nespole, Wolf, Haldenstein, Adler, Freeman & Herz, New York, NY.

For JOHN SCHUMACHER, plaintiff: Lee S. Shalov, Ralph M. Stone, James P. Bonner, Shalov, Stone & Bonner, New York, NY.

For MARTIN H. RUBY, DAVID E. FERGUSON, WILLIAM H. PANNING, JOHN R. LINDHOLM, EDWARD L. ZEHMAN, BARRY G. WARD, defendants: Janet P. Jakubowicz, John K. Bush, Greenebaum Doll & McDonald, Louisville, KY.

For MARTIN H. RUBY, DAVID E. FERGUSON, WILLIAM H. PANNING, JOHN R. LINDHOLM, EDWARD L. ZEHMAN, BARRY G. WARD, defendants: John F. Hartmann, Robert J. Kopecky, Andrea R. Wood, Kirkland & Ellis, Chicago, IL.

For MORGAN STANLEY DEAN WITTER & CO., MORGAN STANLEY LEVERAGED EQUITY FUND II, L.P., MORGAN STANLEY CAPITAL PARTNERS III L.P., MORGAN STANLEY CAPITAL INVESTORS, L.P., ALAN GOLDBERG, ROBERT H. NIEHAUS, defendants: K. Gregory Haynes, Michelle DeAnn Wyrick, Wyatt, Tarrant & Combs, Louisville, KY.

For MORGAN STANLEY DEAN WITTER & [*4] CO., defendant: Karin A. DeMasi, Keith R. Hummel, Evan R. Chesler, Daniel Slifkin, Cravath, Swaine & Moore, New York, NY.

For MORGAN STANLEY LEVERAGED EQUITY FUND II, L.P., MORGAN STANLEY CAPITAL PARTNERS III L.P., MORGAN STANLEY CAPITAL INVESTORS, L.P., ALAN GOLDBERG, ROBERT H. NIEHAUS, defendants: Daniel Slifkin, Cravath, Swaine & Moore, New York, NY.

For COLLIN F. RAYMOND, defendant: Martin Flumenbaum, Danya E. Perry, John D. Tortorella, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY.

**JUDGES:** JOHN G. HEYBURN II, CHIEF JUDGE, U.S. DISTRICT COURT.

**OPINIONBY:** JOHN G. HEYBURN

**OPINION:**

**MEMORANDUM OPINION**

The claims here arise from the demise of ARM Financial Group, Inc. ("ARM"), a Louisville-based financial services company. The Court is advised that ARM and several other individual defendants have already settled with Plaintiffs. The remaining Defendants, Morgan Stanley Dean Witter & Co.; Morgan Stanley Leveraged Equity Fund II, L.P.; Morgan Stanley Capital Partners III, L.P.; Morgan Stanley Capital Investors, L.P.; and MSCP III 892 Investors, L.P. (collectively "Morgan Stanley"), move the Court to dismiss Plaintiffs' third amended complaint. This opinion examines only [*5] Morgan Stanley's first defense: that the claims are untimely. In subsequent opinions, the Court will consider the merits of various other defenses which the motions raise.

I.

In 1993, Morgan Stanley purchased a 95% interest in ARM, a financial company engaged in asset accumulation and management. ARM sold financial products -- annuities, life insurance policies, and guaranteed investment contracts, primarily -- and invested the monies in higher yielding securities. In 1997, ARM held an initial public offering of 9.2 million shares at $ 15 per share. Morgan Stanley's interest in ARM dropped to 53%.

ARM co-founders and chief executive officers, John Franco and Martin Ruby, came to disagree over investment strategies, with Franco preferring conservative strategies and Ruby urging more risk-taking.

Case 1:00-cv-00793-SSB-TSH    Document 256-2    Filed 01/30/2004    Page 4 of 7

Page 4
2002 U.S. Dist. LEXIS 13451, *

Franco and two of ARM's eight directors resigned on February 10, 1998. Patricia Winter, Franco's deputy, was promoted to executive vice president and took over implementation of Franco's strategies. On February 20, two managing directors of Morgan Stanley, Alan Goldberg and Robert Niehaus, became directors of ARM, filling the two board vacancies. As board members they joined Colin Raymond, [*6] a Morgan Stanley employee and ARM director since 1997, and five non-Morgan Stanley directors.

On May 8, 1998, ARM held a secondary offering of 12.4 million shares at $ 22 per share, and Morgan Stanley fully divested itself of its interest. Goldberg and Niehaus resigned that same day. Three weeks later, Winter resigned. With Franco and his deputy gone, ARM engaged in allegedly riskier ventures. Specifically, ARM focused on guaranteed investment contracts, which improved its bottom line in the short term but left it highly vulnerable to major losses if and when a substantial number of the contracts were redeemed.

On July 29, 1999, ARM announced a net loss of $ 173.9 million, or $ 7.30 per share. By August 25, the stock price had fallen to 25 cents per share, a decline in value of over 98%. The next day, the New York Stock Exchange suspended trading of ARM stock.

On August 18, 1999, Plaintiffs filed their first complaints against ARM and some of its officers, alleging violations of § § 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"). In April 2000, Plaintiffs filed a Consolidated and Amended Class Action Complaint, alleging numerous fraudulent misstatements and [*7] omissions between October 27, 1998 and August 3, 1999. On June 2, 2000, Plaintiffs Norman and Alice Tasman filed their own action against Morgan Stanley and certain individuals. The following month, this Court consolidated that action, styled *Tasman v. Ruby*, with the present action.

On September 15, 2000, Plaintiffs filed a Second Amended Complaint, which added § § 10(b) and 20(a) claims against Morgan Stanley and alleged a class period of February 10, 1998 to August 3, 1999. Specifically, Plaintiffs alleged that Morgan Stanley had "engineered" ARM's "dramatic collapse" by ousting Franco and moving ARM to jettison its conservative investment strategy in favor of a riskier approach. On May 4, 2001, Plaintiff John Schumacher filed a class action against all Defendants, asserting claims against under § § 11 and 12(a)(2) of the Securities Act of 1933 (the "1933 Act") on behalf of himself and others who purchased shares of ARM in its secondary offering of May 8, 1998. Plaintiffs filed a Third Amended Complaint on June 8, 2001, to include these claims.

II.

[HN1] The limitations period on claims asserted under § 10(b) of the 1934 Act is one year after the fraud is reasonably discoverable, [*8] or three years after the fraud is perpetrated, whichever comes first. See *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364, 115 L. Ed. 2d 321, 111 S. Ct. 2773 (1991). Because § 20(a) claims are derivative, they take on the limitations period of the underlying claim. See *Theoharous v. Fong*, 256 F.3d 1219, 1228 n.12 (11th Cir. 2001). By statute, the one-year/three-year limitations period applies to claims under § § 11 and 12(a)(2) of the 1933 Act. See 15 U.S.C. § 77m.

Morgan Stanley argues that the alleged fraud was reasonably discoverable by August 26, 1999, at the latest; thus, because the 1934 Act claims against it were filed September 15, 2000, and the 1933 Act claims against it were filed May 4, 2001, all of the claims must fail.

It is well settled that [HN2] where untimeliness is asserted as a defense to a claim of fraud, "the running of the statute of limitations begins when a plaintiff is put on inquiry notice -- that is, when the plaintiff has been presented with evidence suggesting the possibility of fraud." *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 399 (6th Cir. 1999) (citing *Harner v. Prudential-Bache Sec., Inc.*, 35 F.3d 565 (table), 1994 WL 494871, [*9] at *4 (6th Cir. Sept. 8, 1994)). The Sixth Circuit has explained:

> The plaintiff need only possess a low level of awareness; he need not fully learn of the alleged wrongdoing. Knowledge of all facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses "storm warnings," not when he hears thunder and sees lightning.

*169 F.3d at 399* (citation omitted). Once a plaintiff is on inquiry notice, "anything he could have discovered by a diligent search will be imputed to him." *Harner, 35 F.3d 565, 1994 WL 494871* at *4 (citations omitted).

Storm warnings come in various forms. See *35 F.3d 565, id.* at *5 ("Given the contradictory information contained in the Prospectus, the Brochure, and the Fact Sheet, as a matter of law plaintiffs were on notice of the potential fraud."); *Isaak, 169 F.3d at 400* (plaintiffs' awareness of resort developers' extremely lavish lifestyle constituted inquiry notice); *Havenick v. Network Express, Inc., 981 F. Supp. 480, 514 (E.D. Mich. 1997)* (storm warning is "any substantial or concrete indication of

serious problems ahead for the company [such as a document [*10] filed with the Securities and Exchange Commission ("SEC")], the Prospectus, or subsequent press releases and reports . . ."); *but see Berti v. VideoLan Techs., Inc., 1998 U.S. Dist. LEXIS 18066,* at *17-*19 (W.D. Ky. 1998) (cryptic statement in SEC filing that company could not guarantee "significant" sales did not put plaintiffs on inquiry notice); *Picard Chem., Inc., Profit Sharing Plan v. Perrigo Co., 940 F. Supp. 1101, 1118 (W.D. Mich. 1996)* (drop in stock price alone does not place plaintiffs on inquiry notice).

The defense that the relevant limitations period has expired is an affirmative defense. See *Hoover v. Langston Equipment Assoc., Inc., 958 F.2d 742, 744 (6th Cir. 1992).* Thus, the burden lies with Morgan Stanley to prove when Plaintiffs were on inquiry notice -- that is, when the storm warnings sufficed to alert a reasonable investor as to the possibility of fraud. Clearly, Plaintiffs suspected fraud of some kind by the end of August 1999, as is evident from the fact that they filed an action against ARM and certain of its officers by that time. The real question is whether Defendants need only show that Plaintiffs were [*11] on inquiry notice of the possibility of fraud generally, or whether Defendants must show that Plaintiffs were on inquiry notice of the possibility of Morgan Stanley's involvement in that fraud.

The Sixth Circuit has said that [HN3] when determining the commencement date for a statute of limitations in a securities case, "the facts upon which the district court may rely must be sufficient to enable a court to conclude as a matter of law that a reasonably diligent person should have discovered the participation of the *particular* defendant by the date the fraud should have been discovered." *Herm v. Stafford, 663 F.2d 669, 682 (6th Cir. 1981)* (emphasis added) (citation omitted). *Also see City of Painesville v. First Montauk Financial Corp., 178 F.R.D. 180, 195 (N.D. Ohio 1998).* In *Herm,* the Sixth Circuit considered the facts giving inquiry notice as to the misconduct of each defendant or group of defendants, and evaluated inquiry notice as to the involvement of each. *See 663 F.2d at 682-83.* Thus, for the reasons that follow, this Court concludes that Morgan Stanley must prove that Plaintiffs should have discovered its participation in the alleged fraud [*12] prior to September 15, 1999 as to the 1934 Act claims and prior to May 4, 2000 as to the 1933 Act claims.

III.

In their Second Amended Complaint, which stated claims against Morgan Stanley and alleged fraudulent misstatements and omissions predating Morgan Stanley's divestment of its interest in ARM, Plaintiffs based their claims on specific factual allegations:

. Morgan Stanley, with motive to "dress up" ARM for profitable sale, pushed a plan for more aggressive profit-making strategies through ARM's board of directors in November 1996, over Franco's objections.

. Morgan Stanley engineered the ouster of conservative analyst Franco, and knowingly concealed the subsequent abandonment of asset/liability risk procedures.

. Morgan Stanley had frequent contact with its employee directors of ARM in order to ensure its scheme went smoothly.

If Plaintiffs' claims against Morgan Stanley were premised only upon the fact of Morgan Stanley's status as majority shareholder, inquiry notice could be fairly said to have arisen by August 1999, because other shareholders were on inquiry notice of that fact. However, that is not our case. Plaintiffs' claims rest on specific factual [*13] allegations. Therefore, Morgan Stanley must convince this Court that, acting with reasonable diligence, Plaintiffs should have discovered those facts before September 15, 1999.

As this Court has observed, [HN4] in the fact-intensive context of securities fraud, the question of inquiry notice is often "ill-suited for determination on a motion to dismiss." *Berti, 1998 U.S. Dist. LEXIS 18066* at *18. It is difficult to determine whether facts which are as yet unproven could have been discovered with reasonable diligence prior to a time specific. The Court finds too many disputed circumstances and inferences to reach a clear picture of what facts Plaintiffs could have discovered prior to September 15, 1999. At this juncture, Morgan Stanley has not persuaded the Court that Plaintiffs were on inquiry notice by September 15, 1999, of any misconduct by Morgan Stanley.

IV.

The Court now considers whether the 1933 Act claims were timely filed. Schumacher alleges that he and others similarly situated purchased shares of ARM in its secondary offering of May 8, 1998, in reliance upon misleading statements in ARM's prospectus and registration statement filed with the SEC. Plaintiffs [*14] concede that Schumacher did not file suit within one year of inquiry notice. Rather, Plaintiffs argue that these claims "relate back" to a prior complaint within the meaning of [HN5] *Rule 15(c) of the Federal Rules of Civil Procedure.* That rule provides, in pertinent part:

**Relation Back of Amendments.** An amendment of a pleading relates back to the date of the original pleading when

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, [*15] the action would have been brought against the party. . . .

Plaintiffs first justify the augmentation of 1933 Act claims by stating that they relate back to the Tasmans' complaint, which was timely filed. Essentially, Schumacher seeks to "piggyback" his claims onto another action. The Court must reject this tactic for reasons well articulated by another court in similar circumstances.

In *Morin v. Trupin, 778 F. Supp. 711 (S.D.N.Y. 1991)*, the court considered § 10(b) claims by several groups of fraudulently induced investors in a commercial real estate enterprise. The first group of plaintiffs filed timely claims, while other groups who filed later did not. The court consolidated all of the cases, and the plaintiff class submitted a consolidated amended complaint which argued that the latter, untimely claims should survive dismissal because they related back to the first plaintiffs's complaint under Rule 15(c). *Id. at 732-33.* The court rejected this argument, distinguishing between the purposes of Federal Rules 15(c) and 42:

> [HN6] The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than [*16] on procedural technicalities. The consolidation rule, on the other hand, has as its end to give the court broad discretion to decide how cases on its docket are to be tried so that the business of the court may be dispatched with expedition and economy while providing justice to the parties. Thus, while Rule 15 may be said to have substantive objectives, consolidation is a trial management device for which the policies of Rule 15 have no relevance.

*Id. at 733-34* (internal quotation marks, citations omitted). The court then noted the inconsistency of Plaintiffs' argument with Supreme Court precedent:

> Moreover, allowing relation back of claims of plaintiffs in consolidated, untimely actions totally defies the reasoning and import of *Lampf*. The *Lampf* Court provided that claims under § 10(b) and Rule 10b-5 must be brought no later than three years after the accrual of the cause of action and specifically rejected the equitable tolling doctrine as "fundamentally inconsistent with the 1-and-3-year structure." This decisive limitation would be rendered meaningless if a plaintiff who discovers fraud after the three-year period has elapsed may effectively [*17] benefit from the equitable tolling doctrine by piggybacking his action which, if tried separately, would be clearly barred, on a timely one through consolidation.

*Id. at 734* (citation omitted). This Court agrees with *Morin*: consolidation is not a tool for undercutting the public policy purposes behind the limitations period established in *Lampf*.

Alternatively, Plaintiffs contend that the 1933 Act claims relate back to the Second Amended Complaint. [HN7] While Rule 15(c) permits the "change[ of] the party or the naming of the party against whom a claim is asserted . . . but for a mistake concerning the identity of the proper party," it does not envision the addition of a new plaintiff with new claims. See *Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996)* ("Amendments will not survive preclusive application of the statute of limitations unless the amendments are corrections of misnomers."). Plaintiffs cite *Miller v. American Heavy Lift Shipping, 231 F.3d 242 (6th Cir. 2000)*, in which the Sixth Circuit

permitted plaintiffs to amend their complaint to include causes of action which would have been untimely unless they related [*18] back to the original complaint. In *Miller*, however, the new causes of action were stated by the original plaintiffs, not by new plaintiffs with entirely different causes of action. *Id. at 248-250*. Accordingly, the Court finds that the 1933 Act claims are untimely, and must be dismissed.

The Court will enter an Order consistent with this Memorandum Opinion.

JOHN G. HEYBURN II

CHIEF JUDGE, U.S. DISTRICT COURT

**ORDER**

Defendants Morgan Stanley Dean Witter & Co.; Morgan Stanley Leveraged Equity Fund II, L.P.; Morgan Stanley Capital Partners III, L.P.; Morgan Stanley Capital Investors, L.P.; and MSCP III 892 Investors, L.P., have moved to dismiss Plaintiffs' claims because they are barred by the statute of limitations. In its accompany Memorandum Opinion, the Court has discussed Defendants' main arguments as to the statute of limitations issues. The Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to dismiss is SUSTAINED IN PART and the claims under § § 11 and 12(a)(2) of the Securities Act of 1933 are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the motion is DENIED IN PART and all other claims, including those [*19] under § § 10(b) and 20(a) of the Securities Exchange Act of 1934, shall remain.

This 18th day of July, 2002.

JOHN G. HEYBURN II

CHIEF JUDGE, U.S. DISTRICT COURT