Page 1
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

LEXSEE 1989 US DIST. LEXIS 8083

IN RE ZZZZ BEST SECURITIES LITIGATION

No. CV 87-3574-RSWL

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

1989 U.S. Dist. LEXIS 8083; Fed. Sec. L. Rep. (CCH) P94,485

May 19, 1989, Decided
May 25, 1989, Filed

**OPINIONBY:** [*1]

LEW

**OPINION:**

ORDER

RONALD S. W. LEW, UNITED STATES DISTRICT JUDGE

Certain defendants have filed separate motions to dismiss the plaintiffs' Corrected Consolidated Complaint (hereinafter "Complaint") for violation of the federal securities laws, the racketeer influenced and corrupt organizations act and state law. Subsequent to the filing of the motions, plaintiffs filed a Second Amended Consolidated Complaint, and a Third Amended Consolidated Complaint. It has been represented to the Court that the subsequent complaints do not affect the substance of the arguments raised in the motions to dismiss. Plaintiffs and defendants have filed a Stipulation and the Court has entered an Order regarding responses to the Third Amended Consolidated Complaint on March 7, 1989. To that extent, the Order reflected herein shall also substantively apply to the Third Amended Consolidated Complaint.

The following motions have been filed by defendants:

I. Defendants Hughes, Hubbard & Reed and Mark R. Moskowitz's Motion to Dismiss Counts I, II, V, VI, VII, VIII, IX, X and XI of the Corrected Consolidated Complaint pursuant to *Fed. R. Civ. P. 12(b)(6)* and Counts III, VI and VIII pursuant to *Fed. R. Civ. P. 9(b)*;
[*2]
II. Defendants Ladenburg, Thalmann & Co. Inc. and Robert Grossman's Motion to Dismiss portions of plaintiffs' Corrected Consolidated Class Action Complaint under *Fed. R. Civ. P. 12(b)(6)* and *9(b)* and in the alternative for a more definite statement pursuant to *Fed. R. Civ. P. 12(e)*;

III. Defendants Rauscher, Pierce Refsnes, Inc., UN Financial Corp., formerly Underwood, Neuhaus & Co., Inc., Baer & Company, Incorporated, Cantor Fitzgerald & Co., Inc., Engler-Budd & Company, Inc., Evans & Co., Inc., Rosenkrantz Lyon & Ross, Incorporated, Steinberg & Lyman, and Whale Securities Corporation's Motion of Non-Managing Underwriter Defendants to Dismiss the Corrected Consolidated Class Action Complaint pursuant to *Fed. R. Civ. P. 12 (b)(6)* and *9(b)* or in the alternative for a more definite statement pursuant to *Fed. R. Civ. P. 12(e)*;

IV. Defendants Greenspan & Company and S. George Greenspan's Motion to Dismiss Corrected Consolidated Class Action;

V. Defendants Steven A. Greenberg and Anametrics Advisors, Inc.'s Motion to Dismiss the Corrected Consolidated Complaint for failure to state a claim and for failure to plead fraud with particularity;

VI. Defendants Freshman, Marantz, Orlanski, [*3]

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 2 of 16

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

Page 2

Cooper & Klein and Mark A. Klein's Motion to Dismiss Counts II, III, V, VI, VII, VIII, IX, X, and XI of the Corrected Consolidated Class-Action Complaint pursuant to *Fed. R. Civ. P. 12 (b)(6) and 9(b)*;

VII. Defendant Ernst & Whinney's Motion to Dismiss the Corrected Consolidated class Action Complaint; and

VIII. Defendant Edward M. Krivda's Motion to Dismiss Portions of the Third Amended Consolidated Complaint or in the alternative for a more definite statement.

Defendant Edward M. Krivda has also filed a series of joinders in co-defendants' motions to dismiss:

- Notice of Joinder in Hughes, Hubbard & Reed and Mark R. Moskowitz's Motion to Dismiss;

- Notice of Joinder in Steven A. Greenberg and Anametrics Advisors, Inc.'s Motion to Dismiss;

- Notice of Joinder In Greenspan & Company and S. George Greenspan's Motion to Dismiss;

- Notice of Joinder in Freshman, Marantz, Orlanski, Cooper & Klein and Mark A. Klein's Motion to Dismiss;

- Notice of Joinder in the Non-Managing Underwriter defendants' Motion to Dismiss; and

- Notice of Joinder in Ladenburg and Grossman's Motion to Dismiss.

Collectively, those motions were originally scheduled for hearing on October 7, 1988. [*4] Pursuant to *Fed. R. Civ. P. 78*, the Court took the matter off calendar and under submission for disposition on the papers. After careful consideration of the voluminous papers filed in support of and in opposition to the motions, along with all other documents contained within the file, the Court issues the following:

The motions to dismiss are granted in part and denied in part, as delineated below.

Plaintiffs' Complaint raises causes of action alleging violation of Section 11 of the Securities Act, Section 12 of the Securities Act; Section 10(b) of the 1934 Securities Exchange Act and SEC Rule 10b-5; for violation of the Racketeer Influenced and Corrupt Organization Act of 1970; negligent misrepresentation; fraud and deceit; violation of Section 25400 of the California Corporations Code; violation of Section 25401 of the California Corporations Code; violation of Section 2254 of the California Corporations Code; violation of Section 1507 of the California Corporations Code; and negligence.

The standard in reviewing motions to dismiss is to construe all the allegations of material fact as true and viewed in the light most favorable to the non-moving party. *Usher v. City of Los* [*5] *Angeles, 828 F.2d 556, 561 (9th Cir. 1987); Plaine v. McCabe, 797 F.2d 713, 716-17 (9th Cir. 1986)*. "To dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven." Id.

I. HUGHES HUBBARD & REED AND MARK R. MOSKOWITZ'S MOTION TO DISMISS

Defendants Hughes, Hubbard & Reed and Mark R. Moskowitz (hereinafter collectively as appropriate "HH&R") have raised a number of issues in their motion to dismiss. This Order will sequentially address each issue in the order in which the arguments were raised in the moving papers.

A. Whether plaintiff's first cause of action under Section 11 of the Securities Act of 1933 should be dismissed.

Section 11 of the 1933 Securities Act itemizes the types of persons who may be held liable on account of false registration statements. *15 U.S.C. § 77k*. That section imposes liability on certain persons involved in the filing of the registration statement if it contains an untrue statement of material fact or omits a material fact which is false or misleading. Liability extends to accountants, engineers, appraisers or any other person, i.e. experts, whose profession lends [*6] authority to their statements. The initial question raised by HH&R is whether they can be qualified as "experts" under § 11 and therefore subject to liability.

An attorney who assists in the preparation of a registration statement does not thereby become an expert as required by § 11. See *Escott v. Barchris Const. Corp., 283 F. Supp. 643, 683 (S.D.N.Y. 1968)*. HH&R have argued that plaintiffs fail to properly raise allegations that HH&R were such experts. n1 The Court is convinced of the same.

---

n1 HH&R notes that plaintiffs predicate their claim on the allegation that HH&R "assisted in preparing, filing and circulating the December 9, 1986 Registration Statement and Prospectus included therein." (Complaint, para. 172).

---

Mere assistance in the preparation of a registration statement does not thereby render HH&R experts for the entire Registration Statement. It has been established

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 3 of 16

Page 3

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

that,

"certain individuals who are involved in preparing the registration generally cannot be reached by a § 11 action. These include . . . lawyers not acting as 'experts' . . . ."

*Ahern v. Gaussoin, 611 F. Supp. 1465 (D.C. Or. 1985),* citing *Herman & MacLean v. Huddleston, 459 U.S. 375, 386,* [*7] *103 S. Ct. 683, 690, 74 L.Ed.2d 548 (1983).* The district court in *Ahern v. Gaussoin, 611 F. Supp. 1465, 1482 (D.C. Or. 1985),* found no case law supporting the proposition that the defendant attorneys were liable because they had extensive knowledge of the corporation in question business' affairs and a high degree of involvement in the note offering. n2

> n2 It was a motion for summary judgment before the court in *Ahern v. Gassouin, 611 F.Supp. 1465 (D.C. Or. 1985)* and accordingly the court was making factual findings. However, this Court cannot address any factual findings as this is only the pleading stage. In addition, plaintiffs have not even been able to properly plead that HH&R were experts as required.

It is acknowledged by both plaintiffs and HH&R that an attorney who assists in the preparation of the registration statement does not thereby become an expert. Rather, plaintiffs attempt to draw the distinction that a lawyer who expressly consents to the inclusion of or reference to his opinion in a registration statement is clearly an "expert." See e.g., 27 Boston College Law Review, 325, 328 (March 1986). The "opinion" referred to is the December 1986 letter [*8] of HH&R's which was included with the registration statement. (See Complaint, para. 153.) The only opinion of HH&R included with the statement was the December 5, 1986 letter from HH&R to ZZZZ Best listed as Exhibit 5.1 to the registration statement. This letter was included as required under Item 601(b)(5) of Regulation S-K under the 1933 Securities Act.

In reviewing the language of the letter, it does not appear to render an expert opinion that would create secondary liability under § 11. Liability for persons not especially enumerated in the statute should generally not be found. See *In re Equity Funding Corporation of America Securities Litigation, 416 F. Supp. 161, 181 (C.D. Cal. 1976).* To hold that an attorney, who is required to submit an opinion letter pursuant to Regulation S-K additionally liable under § 11 for rendering an expert opinion because they adhered to such a requirement, would create an entire field of professionals not specifically enumerated by Congress. n3 HH&R's motion to dismiss § 11 liability claims based upon their rendering expert opinions is granted with prejudice.

> n3 Furthermore, plaintiffs have failed to plead that HH&R's opinion letter regarding the legality of the securities at issue is not alleged to be false or misleading. [*9]

The second question raised is whether HH&R can be secondarily liable under § 11 as aiders or abettors. It is unclear whether plaintiffs' complaint intends to raise allegations against HH&R based upon aider and abettor liability in accordance with § 11. HH&R moves to have this claim dismissed as courts have almost uniformly held that the doctrine has no application to § 11. see, *Hagert v. Glickman, Lurie, Eiger & Co., 520 F. Supp. 1028, 1034 (D. Minn. 1981); In re Equity Funding Corp. of America Securities Litigation, 416 F. Supp. at 181.* Plaintiffs do not address the issue regarding aider and abettor liability under § 11 in their opposition papers and this Court can only look upon such silence as acquiescence. n4

> n4 The language in this district is clear. "[W]here a statute specifically limits those who may be held liable for the conduct described by the statute, the courts cannot extend liability, under a theory of aiding and abetting, to those who do not fall within the categories of potential defendants described by the statute. To impose such liability would circumvent the express intent of Congress in enacting these statutes that proscribe narrowly defined conduct and allow relief from precisely defined parties." *In re Equity Funding Corp. of America Securities Litigation, 416 F.Supp. 161, 181 (C.D. Ca. 1976).* [*10]

Furthermore, even if plaintiffs had properly plead aider and abettor liability under § 11 of the 1933 Act, the complaint would remain unable to state a claim upon which relief could be granted as this type of secondary liability does not exist. *In re Equity Funding Corp. of America Securities Litigation, 416 F. Supp. 161, 181 (C.D. Cal. 1976)* held that there is no aider and abettor liability under § 11 of the 1933 Act because the statute has specifically limited the categories of persons that can be held liable. See also, *McFarland v. Memorex, 493 F. Supp. 631, 632 (N.D. Cal. 1980).* Accordingly, there can be no aider and abettor liability under § 11 of the 1933 Act.

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 4 of 16

Page 4
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

For the foregoing reasons, insofar as Count I of the plaintiffs' Complaint purports to charge HH&R with aider and abettor liability under § 11, it fails to state a claim for relief and is hereby dismissed with prejudice.

B. Whether plaintiffs" Second Cause of Action under § 12(2) of the 1933 Securities Act should be dismissed.

HH&R contend that they do not qualify as "sellers" as defined in § 12(2) on for two reasons: 1) that the decision issued by the Supreme Court in *Pinter v. Dahl*, U.S. , [*11] *108 S. Ct. 2063, 100 L.Ed.2d 658 (1988)* sub silentio overruled the "substantial factor" test previously followed by the Ninth Circuit; and 2) even if the substantial factor test were to apply, plaintiffs have failed to raise adequate allegations to satisfy the test.

Section 12(2) of the 1933 Act provides that "[a]ny person who offers or sells a security . . . by means of a prospectus or oral communication" which contains a misrepresentation or omission of a material fact "shall be liable to the person purchasing such security from him." *15 U.S.C. § 77l*. Accordingly, a defendant is only liable if he was a "seller" of the security allegedly sold by means of a misleading prospectus.

The Ninth Circuit has used the "substantial factor" or "substantial participation" test in determining who qualifies as a seller under 12(2). In such an instance, the defendant's behavior must have proximately caused or have been a substantial factor in causing the sale of the securities. See *Admiralty Fund v. Jones, 677 F.2d 1289, 1294-5*. Accordingly, the term "seller" as used in § 12(2) has included people other than the one who actually passes title. In re Equity Funding Corp. of America Securities [*12] *Litigation, 416 F. Supp. at 181 (C.D. Cal. 1976)*, citing *In re Caesars Palace Securities Litigation, 360 F. Supp. 366 (S.D.N.Y. 1973)*.

However, since the Supreme Court's decision in Pinter v. Dahl, there has been a question as to the viability of the "substantial participation" test of liability under § 12(2). In Pinter, the Supreme Court rejected the Fifth Circuit's application of the substantial factor test in a § 12(1) action for rescission. The Court held that "[b]eing merely a 'substantial factor' in causing the sale of unregistered securities is not sufficient in itself to render a defendant liable under § 12(1)." *Pinter, 108 S. Ct. at 2082*. The Court rejected the substantial factor test because a partial effect would be to "extend § 12(1) liability to participants only remotely related to the relevant aspects of the sales transaction," including "securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services." *Id. at 2081*.

The Supreme Court continued to opine that "no congressional intent to incorporate tort law doctrines of reliance and causation into § 12(1) emerges from the language [*13] or the legislative history of the statute." Id. In noting legislative intent, the Court stated that "[w]e find it particularly unlikely that Congress would have ordained sub silentio the imposition of strict liability . . . on an unpredictably defined class of defendants." Id.

Plaintiffs have strenuously argued the differences between § § 12(1) and 12(2). In attempts to draw a distinction, it is noted that § 12(1) deals with the illegal sale of securities in the absence of a registration statement for which there is strict liability and there is no burden to prove that any false or misleading statements were made in connection with the sale. Section 12(2) encompasses situations where there is a registration statement which contains materially false or misleading information. In the latter, a due diligence defense is available and there is no absolute liability. Notably, what plaintiffs fail to address is the Supreme Court's interpretation of the definition of "seller."

The opinion in Pinter was limited to the question of the scope of a statutory seller for purposes of § 12(1) and the Court refused to rule on § 12(2). However, the Court noted the similarity between the [*14] definition of seller in both sections:

"20. The 'offers or sells' and the 'purchasing such security from him' language that governs § 12(1) also qoverns § 12(2), which provides a securities purchaser with a similar rescission cause of action for misrepresentation. See *15 U.S.C. § 77l*. Most courts and commentators have not defined the defendant class differently for purposes of the two provisions . . . . See also *Schillner v. H. Vaughan Clarke & Co., 134 F.2d 875, 878 (CA2 1943)*. ("Clearly the word [sell] has the same meaning in subdivision (2) as in subdivision (1) of § 12").

The question whether anyone beyond the transferror of title, or immediate vendor, may be deemed a seller for purposes of § 12 has been litigated in actions under both § 12(1) and § 12(2). Decisions under § 12(2) addressing the 'seller' question are thus relevant to the issue presented to us in this case, and, to that extent, we discuss them here. Nevertheless, this case does not present, nor do we take a position on, the scope of a statutory seller for purposes of § 12(2)."

Pinter at 2076, n. 20 (emphasis added).

HH&R has postulated that it is unlikely that the substantial factor test will have [*15] any continued applicability with respect to § 12(2) claims in light of

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 5 of 16

Page 5
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

Pinter's rejection of the test under § 12(1). This Court is inclined to agree in light of the decision in Pinter and past decisions in this jurisdiction.

Even prior to the Pinter decision, the Ninth Circuit questioned the vitality of the substantial participation test: "[T]he broad reading of 'seller' may be in some doubt in light of recent Supreme Court cases that prescribe a strict statutory construction approach to the securities acts and reject their expansion with tort and criminal theories." *Admiralty Fund v. Jones, 677 F.2d 1289, 1294, n. 3 (9th Cir. 1982); In re Diasonics Securities Litiqation, 599 F. Supp. 447, 456 (N.D. Cal. 1984).* In light of the Pinter decision and the Ninth Circuit's statutory interpretations, courts are questioning and seemingly moving away from an application of interpreting seller liability through use of the substantial factor or participation test. n5

   n5 The recent decision in *In re Worlds of Wonder Securities Litiqation, 694 F.Supp. 1427, 1434-5 (N.D. Cal. 1988)* examined the question of whether the accounting firm of Deloitte, Haskins & Sells ("DH&S") were liable as sellers under § 12(2). The court first noted that "[t]he definition of a seller under Section 12 is one who 'successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." Id., citing *Pinter v. Dahl,    U.S.   , 108 S.Ct. 2063 2079, 100 L.Ed.2d 658 (1988).* Notably, no distinction was made regarding the definition of seller under § 12(1) versus § 12(2).

   The court granted DH&S' motion to dismiss as there were insufficient allegations to establish that they were sellers. The allegation was that DH&S "jointly finalized the Registration Statement and Prospectus and caused the Registration Statement to become effective as of June 4, 1987." Id. at 1435. Plaintiffs failed to allege facts "which demonstrate[d] that defendants 'solicited' the purchase of the securities at issue. Id. (emphasis added). [*16]

Based upon the foregoing, HH&R's motion to dismiss is granted without prejudice as plaintiffs have failed to state a cause of action pursuant to *Fed. R. Civ. P. 12(b)(6)* insomuch as HH&R cannot be liable under § 12(2) as plaintiffs have not alleged that they actually sold ZZZZ Best securities or that they "solicited" the purchase of the securities.

C. *Whether HH&R can be held liable as aiders and abettors under § 12(2).*

Courts in this jurisdiction have held that aider and abettor liability is unavailable under § 12. See *In re National Mortgage Equity Corp. Mortg. Pool Certificates Securities Litiqation, 636 F. Supp. 1138, 1169 (C.D. Cal. 1986); In re Fortune Systems Securities Litiqation, 604 F. Supp. 150 (N.D. Cal. 1984); Hokama v. E.F. Hutton & Co. Inc., 566 F. Supp. 636 (C.D. Cal. 1983).* See also *Parquitex Partners v. Registered Financial Planning Services, Inc., [1987]Fed. Sec. L. Rep. (CCH) para. 93,255 at 96,226 (D. Or. 1987); Ahern v. Gassouin, 611 F. Supp. 1465 (D. Ore. 1985).* Additionally, in *Admiralty Fund v. Jones, 677 F.2d 1289, 1294-5 (9th Cir. 1982),* the Ninth Circuit noted the "doubtful nature" of aider and abettor liability under § [*17] 12(2) "in light of recent construction approach to the securities acts and reject[ed] their expansion with tort and criminal theories." n6

   n6 Plaintiffs have argued that the Ninth Circuit has not determined whether aiding and abetting liability exists under § 12 (2). There is lack of consistent authority. See e.g., *In re Itel Securities Litiqation, 89 F.R.D. 104, 117 (N.D. Cal. 1981).* However, that decision was made prior to the decision in *Admiralty Fund, supra, Hokama v. E.F. Hutton & Co. Inc., supra,* and Parquitex, supra.

Co-conspirator liability under § 12(2) is also a secondary theory of participation and liability. As such, it ca be likened to aider and abettor theories of recovery. Cf. *In re Fortune Systems Securities Litiqation, 604 F. Supp. 150, n. 21 (N.D. Cal. 1984)* (where court noted that aider and abettor liability is not available for violations of § 12(2); the scope of secondary liability was limited to "control persons" as defined in § 15 of the 1933 Act).

Plaintiffs' argument that the weight of authority in the Ninth Circuit and lower courts allow for secondary liability under of a theory of aider and abettor or co-conspirator pursuant to § [*18] 12(2) is unpersuasive. n7 Therefore, HH&R's motion to dismiss the claims of aider and abettor or co-conspirator liability under § 12(2) are hereby dismissed with prejudice.

   n7 Also, the Court at this time is not inclined to determine whether *Pinter v. Dahl, supra,* intended to support such secondary theories of liability in light of the Supreme Court's decision to disaffirm the substantial participation test.

D. Whether the claims against HH&R for liability as

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 6 of 16

Page 6
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

controlling persons under §§ 11 and 12(2) are sufficient to withstand a motion to dismiss.

Section 15 of the 1933 Act imposes secondary liability on one who "controls" any person guilty of a primary violation of either § 11 or § 12. *15 U.S.C. § 77o*. HH&R contends that the complaint fails to raise specific § 15 violations and accordingly should be dismissed.

The Ninth Circuit has defined control as the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise." *Safeway Portland Employees' Federal Credit Union v. C.H. Waqner & Co., 501 F.2d 1120, 1124 & n. 17 (9th Cir. 1974)*. [*19] In order to establish that one is a controlling person, there must be evidence that highlights a relationship between the controlling and controlled parties and that actual power or influence was exerted over the alleged controlled person. See *In re Diasonics, 599 F. Supp. 447, 459 (N.D. Cal. 1984)*. HH&R contend that the complaint alleges no more control than what a normal rendering of legal services requires.

Plaintiffs, in turn, argue that the question of whether one is a controlling person is a question of fact. In *Wool v. Tandem Computers, Inc., 818 F.2d 1433 (9th Cir. 1987)*, the lower court dismissed plaintiff's controlling person claims on the same grounds advanced by defendants here, i.e. the failure to allege facts demonstrating control. The court reversed, observing that:

"[T]he issue of control is a complex question of fact requiring a close examination of the particular situation and organization . . . [b]ecause the concept of control, in the context of securities law, is an elusive notion for which no clear-cut rule or standard can be devised, the two-pronged test for establishing control should be construed liberally and flexibly."

*Id. at 1441*. See also [*20] *In re Diasonics Securities Litigation, 599 F. Supp. 447, 459 (N.D. Cal. 1984)* (where the extent of the defendant's control appeared to be a factual question); *In re Convergent Technologies Securities Litigation, 108 F.R.D. 328, 343 (N.D. Cal. 1985)* (where the court stated "[o]ne thing that the cases and commentary do make clear is that the question of who is a control person, or within a control group, is a question of fact that can be answered only on a case by case basis and only after considering a wide range of potentially relevant factors.")

The complaint in this matter contains sufficient allegations that could cause a jury to believe that Mr. Minkow and ZZZZ Best were under the control of HH&R and/or Mr. Moskowitz. Plaintiffs have made allegations that indicate control, especially when read in conjunction with Wool v. Tandem where the test for control is to be construed liberally and flexibly. n8

> n8 Some of the allegations made by plaintiff include the following:
>
> - that Moskowitz acquired 25,000 shares of stock at a price well below the market value;
>
> - that one could infer from Minkow's relatively young age and HH&R's vast experience, that they may have had more control than in a regular attorney/client relationship;
>
> - that HH&R threatened Ernst & Whinney with a law suit when they threatened to disclose the true reason for their resignation;
>
> - on the day before ZZZZ Best filed for bankruptcy, HH&R filed an action on behalf of the company alleging that Minkow had embezzled $ 18 million. The details in that complaint regarding the close relationship between HH&R and ZZZZ Best's management would seem to infer more control than under normal circumstances; and
>
> - that HH&R was a principal drafter of the Prospectus and participated in a wide variety of irregular as well as regular activities on behalf of ZZZZ Best. [*21]

Only by considering a wide range of potentially relevant factors can the finder of fact determine whether there was ample control. See *In re Convergent Technologies, 108 F.R.D. 328, 343 (N.D. Cal. 1985)*. In light of the considerations to be made by the Court at the dismissal stage of a case, and since plaintiffs have made sufficient allegations of control, the motion to dismiss the claims of secondary liability as controlling persons is denied.

E. Whether the cause of action alleging a violation of § 10(b) of the Exchange Act and Rule 10b-5 is plead with the sufficiency required by *Fed. R. Civ. P. 9(b)*.

*Federal Rule of Civil Procedure 9(b)* requires that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person can be averred generally.

Specifically, HH&R has set forth that plaintiffs have

Case 1:00-cv-00793-SSB-TSH   Document 256-3   Filed 01/30/2004   Page 7 of 16

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

Page 7

not met the particularity standard of *Fed. R. Civ. P. 9(b)* and that the complaint fails to delineate whether HH&R is charged with primary or secondary violations of Rule 10b-5.

The purpose of *Fed. R. Civ. P. 9(b)* is to insure that allegations of fraud are specific [*22] enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong. *Bosse v. Crowell Collier & Macmillan, 565 F.2d 602, 611 (9th Cir. 1977); Gottreich v. San Francisco Investment Corp., 552 F.2d 866 (9th Cir. 1977).*

The complaint raises allegations that HH&R is subject to primary and secondary liability under § 10(b) and Rule 10b-5. *Fed. R. Civ. P. 8(e)(2)* authorizes the pleading violations in the alternative. See e.g., *Seidel v. Public Service Co., 616 F. Supp. 1342, 1362 (D.N.H. 1985)* (where the court found that there was no reason to order a dismissal because of the claims that there was a failure to distinguish between primary and secondary liability on the part of the respective law firm defendants); Cf. *Cohen v. Goodfriend, 665 F. Supp. 152 (E.D.N.Y. 1987).* If the complaint alleges activities that would seem to create alternative violations, then pleading in the alternative is upheld. See *Lazar v. Sadlier, 622 F. Supp. 1248 (C.D. Cal. 1985).*

Case authority indicates that attorneys can be held liable as primary violators [*23] of § 10(b) of the Exchange Act and Rule 10b-5 when they knowingly or recklessly issue false or misleading opinions or make false or misleading statements in connection with the sale of securities. See e.g., *In re North American Acceptance Corp. Securities Cases, 513 F. Supp. 608, 627-8 (N.D. Ga. 1981); Rose v. Arkansas Valley Environmental & Utility Authority, 562 F. Supp. 1180, 1205-6 (W.D. Mo. 1983); T. J. Raney & Sons v. Fort Cobb, Oklahoma Irrigation Fuel Authority, 717 F.2d 1330 (10th Cir. 1983),* cert. denied, *465 U.S. 1026 (1984).* Furthermore, the extent of the duty owed by HH&R and Mr. Moskowitz to the plaintiffs will be determined by the application of the "flexible duty" standard set forth in *White v. Abrams, 495 F.2d 724 (9th Cir. 1974)* (where it was stated that the extent of a duty owed or whether a duty exists is a question of fact for the jury to determine). But see *Lubin v. Sybedon, 688 F. Supp. 1425 (S.D. Cal. 1988).* In Lubin, the district court held that the question of duty would be more proper on a motion for summary judgment. That, however, did not negate plaintiffs' burden to plead facts sufficient to support a finding of duty. The court [*24] emphasized that the plaintiffs had failed to plead the particulars of their relationship enough to infer a duty. *Id. at 1448.*

An attorney who participates in a deceptive public offering may be liable for breaching their duty to investors. *In re National Mortgage Equity Corp. Mortgage Pool, 636 F. Supp 1138, 1165 (N.D. Cal. 1986); In re Flight Transportation Corp. Securities Litiqation, 593 F. Supp. 612, 617-18 (D. Minn. 1984).* Here, the complaint alleges that HH&R and Mr. Moskowitz had a duty to the investors and breached that duty by engaging in wrongful conduct. While this Court is mindful of the requirements stated above, under *In re National Mortg. Equity Corp Mortg. Pool, supra,* it appears that plaintiffs have sufficiently alleged a duty at this stage of the proceedings.

Plaintiffs' complaint further raises allegations that HH&R and Mr. Moskowitz were in breach of that duty because they,

". . . participated in the issuance of, or aided and abetted the preparation and issuance of false and misleading statements to the investing public which were contained in various documents, including, without limitation thereto, the Registration Statement and Prospectus, and [*25] failed to disclose material facts about ZZ Best to the investing public."

(Plaintiffs' Complaint, p. 126, para. 189.)

Further allegations regarding the fraud under § 10(b) of the Exchange Act and Rule 10b-5 thereunder charge that the defendants:

"(a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; (c) engaged in acts, practices and a course of business which operated as a fraud or deceit upon plaintiffs and other members of the plaintiff class in connection with their purchases of ZZZZ Best securities during the class period; (d) and said defendants aided and abetted in violations of § 10(b) and Rule 10b-5."

(Plaintiffs' Complaint, para. 191).

Plaintiffs must set forth the time, place and specific content of the alleged false representations as well as the parties to the misrepresentations. See *Semegen v. Weidner, 780 F.2d 727 (9th Cir. 1985); Miscellaneous Service Workers Drivers & Helpers v. Philco-Ford Corp., 661 F.2d 776, 782 (9th Cir. 1981).* Plaintiffs have [*26] alleged that HH&R knowingly and recklessly

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 8 of 16

Page 8
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

drafted a Registration Statement and Prospectus riddled with false and misleading statements. They have stated the types of misrepresentations made. Further, they have indicated that those misrepresentations were made during the promulgation of statements connected with the registration statement and prospectus. In Blake v. Dierdorff, F.2d (9th Cir. 1988), the plaintiff's allegations for fraud included the issuance of false and misleading corporate reports, press releases, and offering circulars. In Blake the plaintiff bought stock in a savings and loan association and then the stock declined. Plaintiff brought suit against a number of people, including the directors of the association. The court noted that with respect to actions alleged against a group that is in control of publishing information, that a "plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations." Id. citing *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir. 1987). The Ninth Circuit found that [*27] plaintiff had sufficiently made allegations of fraud, noting that "[t]he complaint provides, in nineteen separate paragraphs, the date of each of these publications, specific descriptions of the representations made, the reasons for their falsity, and, where possible, the role of the individual defendants in preparations and dissemination." This is similar to the situation before the Court. Accordingly, HH&R's motion to dismiss this count is denied.

F. Whether plaintiffs can plead reliance on the integrity of the market in Counts V. VI and XI.

The issue presented to the Court is whether plaintiffs must plead actual reliance or whether-they can allege reliance on the integrity of the market, in the common law counts for fraud and deceit, negligence and negligent misrepresentation. It is the belief of the Court that plaintiffs are entitled to plead reliance on the integrity of the market in place of actual reliance.

While it is noted by all parties that the concept of "reliance on the integrity of the market" attributes its genesis to the securities statute, the question before the Court is whether the same concept can be applied to the common law counts in this matter. Under California [*28] law, an inference of reliance will arise as to an entire class, if the trial court finds that material misrepresentations were made to the class members. *Vasquez v. Superior Court*, 4 Cal.3d 800, 814, 94 Cal. Rptr. 796, 484 P.2d 964 (1971). Some of the moving defendants, inclusive of HH&R, have attempted to distinguish Vasquez on the grounds that it was a situation where representations were made to each and every plaintiff. They further attempt to distinguish the use of pleading fraud on the market in common law counts to instances where a court is only considering whether to certify a class. The Court is not inclined to make that limitation.

In *Zatkin v. Primuth*, 551 F. Supp. 39, 46 (S.D. Cal. 1982) it was noted that even if plaintiffs were required to plead reliance in an action for negligent misrepresentation, the allegations made in the complaint were sufficient. Further, the court noted that in *In re Equity Funding Corporation of America Securities Litigation*, 416 F. Supp. 161, 183 (C.D. Cal. 1976), it was determined that an "allegation of 'purpose and effect,' coupled with the clear materiality of misrepresentations alleged, satisfied the reliance and causation [*29] requirements imposed on pleadings that assert fraud claims in California." *Zatkin v. Primuth*, 551 F. Supp. at 46.

The court in In re Equity Funding Corp. held that plaintiff had sufficiently alleged reliance necessary to sustain a fraud claim under California law against the defendants. Specifically, it was noted,

"In paragraph 22(d)(1) of the Complaint, for example, it is alleged these defendants and others disseminated EFCA and EFLIC financial statements 'for the purpose and with the effect of influencing and manipulating the price of Equity Funding securities and for the purpose and with the effect of influencing open market purchasers of EFCA securities to purchase such securities'. . . ." This allegation of 'purpose and effect,' coupled with the clear materiality of the misrepresentations alleged, satisfies the reliance and causation requirements imposed on pleadings that assert fraud claims in California." *In re Equity Funding Corp., supra, at 182-3.*

Plaintiffs' fifth count for negligent misrepresentation fails to allege the purpose and effect of the "various documents, release and statements" (Complaint, para. 205), in order to comply with the requirements of [*30] Zatkin and In re Equity Funding Corp.. However, the sixth cause of action clearly state that the purpose and effect of the misrepresentations were to maintain an artificially "high market price." Accordingly, plaintiffs' fifth count shall be dismissed with leave to amend. The motion to dismiss the sixth count of fraud and deceit shall be denied.

The eleventh claim is premised on a professional negligence claim. Plaintiffs cite to Courtney v. Waring, 191 Cal. ppp. 1434 (1987), to establish the elements of a legal malpractice claim brought by third parties based upon an improperly prepared prospectus. In Courtney, each plaintiff was alleged to have relied upon the

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 9 of 16

Page 9
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

franchise prospectus which contained the supposed material misrepresentations. Id. at 1437-8. HH&R contends that plaintiffs fail to allege that each of them relied upon the purported misrepresentations. However, for the reasons stated above, plaintiffs have adequately plead reliance in a professional negligence context. (Complaint, para. 230). Accordingly, the motion to dismiss the eleventh count for professional negligence is denied.

G. Whether plaintiffs' sixth cause of action for fraud and deceit must [*31] be dismissed as to HH&R for failure to plead fraud with particularity.

In accordance with the application of *Fed. R. Civ. P. 9(b)* as discussed hereinabove, plaintiffs' sixth cause of action for fraud and deceit is not dismissed.

H. Whether plaintiffs' seventh cause of action under § 25400 of the California Corporations Code must be dismissed as to HH&R as they are not a seller within the meaning of the statute.

One who is not liable as a "seller" under § 12 of the 1933 Act is also not liable under § 25400 of the California Corporations Code. See e.g., *In re Activision, 621 F. Supp. 415, 422, 426-7; Hudson v. Capital Management International, Inc., 565 F. Supp. 615, 628 (N.D. Cal. 1983)*. As the Court has already determined that HH&R could not have been sellers, plaintiffs' seventh cause of action is dismissed without prejudice.

I. Whether plaintiffs' eighth cause of action under § 25401 of the California Corporations Code should be dismissed as to HH&R for failure to plead fraud with requisite particularity.

The plaintiffs eighth cause of action charges that HH&R violated § 25401 of the California Corporations Code. HH&R contends that they are unable to determine [*32] whether they are charged with primary or secondary violations and that in either situation, the fraud allegations were not plead with sufficient particularity. Again, for the reasons stated hereinabove, HH&R's motion to dismiss this cause of action is granted without prejudice.

J. Whether plaintiffs' ninth cause of action under § 2254 of the California Corporations Code applies only to directors, officers or agents of a corporation and whether there is a private right of action under § 2254.

Under § 2254 of the California Corporations Code, it is a felony for "every director, officer or agent of any corporation" to either knowingly give false written statements to shareholders or others concerning the financial affairs of the corporation, or to refuse "to make any book entry or post any notice required by law in the manner required by law." The plaintiffs' complaint does not allege that HH&R falls within any of the enumerated categories.

Likewise, plaintiffs have not been able to show that there is a private right of action under § 2254. Plaintiffs' reliance upon *In re Washington Public Power Supply System Securities Litiqation, 823 F.2d 1349 (9th Cir. 1987)* is unconvincing. [*33] There is no apparent legislative intent to create a private right of action. Generally, in determining whether a statute gives rise to a private right of action, "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Chilkat Indian Village v. Johnson, No. 86-4312, slip op. at 2719 (9th Cir. March 23, 1989)* citing *Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979)*. See also, *Solberg v. Superior Court, 19 Cal. 3d 182, 198 (1977); People v. Belleci, 24 Cal.3d 879, 884 (1979)* (where California courts have stated that in determining legislative intent when words of the statute are clear on their face there is no need for construction). Section 2254 makes no reference, either in the statute itself or in the statutory structure, of any intent to create a private right of action. In fact, the language of the statute itself refers to the violation as being felonious. The cause of action alleging a violation of Section 2254 is dismissed with prejudice.

K. Whether the tenth cause of action under § 1507 of the California Corporations Code applies to HH&R as there are only four categories of persons [*34] who may be liable under the statute.

Section 1507 of the California Corporations Code allows a corporation or injured person to sue any officers, directors, employees or agents of a corporation for damages arising from the issuance of false reports, or the making of false entries in the books of the corporation, with an intent to deceive. Again, plaintiffs fail to allege that HH&R fall into any of the enumerated categories listed within the statute. Accordingly, this cause of action is dismissed without prejudice.

L. Whether the fifth sixth and eleventh causes of action for negligent misrepresentation, fraud and deceit and professional negligence are barred by § 1974 of the California Code of Civil Procedure.

HH&R contends that the fifth, sixth and eleventh causes of action should be barred by § 1974 of the California Code of Civil Procedure because evidence of such representations alleged are precluded from evidence. Section 1974 reads as follows:

"No evidence is admissible to charge a person upon a representation as to the credit of a third person, unless

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 10 of 16

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

Page 10

such representation, or some memorandum thereof, be in writing, and either subscribed by or in the handwriting of the [*35] party to be charged. This section is a Statute of Frauds provision and is to be applied in a manner that is consistent with the manner in which subdivision 2 of § 1624 of the Civil Code is applied."

HH&R sets forth that the test in determining whether the representations fall within the statute is "[w]here the primary purpose in making the representation is to procure credit for another, the representation comes within the purview of the statute, even though in making it the person also makes false representations concerning himself or derives an incidental benefit therefrom." See *Baron v. Lange, 92 Cal. App. 2d 718, 721 (1949)*. HH&R argues that the alleged representations they were to have made pertained to the credit of a third party within the meaning of § 1974. Additionally, those writing prepared by them were not signed. This argument is fallacious for a number of reasons.

This is not a "credit" situation because the securities issued were equity instruments, not debt instruments. § 1974 is a special statute of frauds, which courts have interpreted to apply to cases in which the ultimate transaction is a loan or extension of credit to a third party. See *Baron v. Lange,* [*36] *92 Cal. App. 2d 718, 721 (1949); Bank of America v. Western Constructors Inc., 125 Cal. App. 2d 193, 198 (1954)* (where the court stated that "only when the primary object of the representations is to induce the procurement of credit to a third person should liability be found).

The alleged misrepresentations in this matter were not made to the plaintiffs for the purpose of obtaining credit for ZZZZ Best or any other third party. All of the cases cited by HH&R deal with a loan or credit transaction, neither which apply to the case before the Court.

Furthermore, while any representation as to the business affairs of a third person might have some effect to its' credit, the statute is not interpreted so broadly as to encompass all possible representations. In *Southern California Thrift & Loan Association v. Sylvanis Electric Products, Inc., 248 Cal. App. 2d 642, 648-9 (1967),* a false representation by the defendant that it would continue doing business with Pioneer, which induced the lender to loan money to Pioneer, was not regarded as a representation as to credit. The court stated, "[i]n our opinion, Sylvania made no 'representation' as to Pioneer's ability to pay within the [*37] meaning of Code of Civil Procedure, § 1974. . . ." . . . The statute does not encompass all representations made that have an effect on credit and the type of misrepresentation alleged here does not seem to be the type that the statute historically intended to deter. Lastly, even if the section were to apply, both the Registration Statement and the Prospectus have the name HH&R and the individual name of Mark Moskowitz displayed on them and the statement contains the opinion letter of HH&R. For all of the foregoing grounds, HH&R's motion to dismiss the fifth, sixth and eleventh causes of action should is denied.

## II. DEFENDANTS LADENBURG THALMANN & CO. INC. AND ROBERT GROSSMAN'S MOTION TO DISMISS

*Defendant Ladenburg, Thalmann & Co., Inc. ("Ladenburg") is alleged to be a registered broker-dealer that acted as a market maker in the issuance of ZZZZ Best stock. It is further alleged that Ladenburg issued research reports and disseminated information regarding ZZZZ Best. Defendant Robert Grossman ("Grossman") was an employee of Ladenburg who authored such reports.*

*A. Whether the complaint states a valid cause of action based upon a violation of § 12(2) of the 1933 Securities* [*38] *Act.*

*Defendants contend that the complaint fails to allege that Grossman sold any ZZZZ Best securities to plaintiff's, controlled a seller of the same securities or was a necessary and substantial participant in such sales. For the reasons set forth above, it is unnecessary for the Court to determine whether plaintiffs have properly pleaded substantial participant allegations.*

*Defendants question whether plaintiffs' complaint fails to allege that Ladenburg or Grossman sold ZZZZ Best securities by "means of a prospectus or oral communication" pursuant to 15 U.S.C. § 77l.*

*Plaintiffs fail to specifically address the arguments raised by Ladenburg and Grossman, but instead refer to the arguments elsewhere made in their opposition papers totalling 204 pages. Plaintiffs, however, do concede that if Ladenburg had no involvement in the public offering, then this cause of action under § 12(2) should be dismissed. There is nothing before the Court that would indicate any activity on the part of Ladenburg in the public offering.*

*With respect to Grossman, plaintiff contends that it would be inappropriate to dismiss him because he was employed previously by Rooney, Pace, the lead underwriter in* [*39] *the public offering. However, his association alone, without specific allegations is insufficient. Accordingly, the cause of action under § 12(2) shall be dismissed without prejudice as it pertains to both Ladenburg and Grossman.*

Case 1:00-cv-00793-SSB-TSH   Document 256-3   Filed 01/30/2004   Page 11 of 16

Page 11

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

B. *Whether plaintiffs claims for negligent misrepresentation and fraud lack the requisite reliance.*

Defendants allege that plaintiffs cannot plead reliance on the integrity of the market as a substitute for actual reliance in their negligent misrepresentation and fraud counts (counts V and VI, respectively). Based on the rationale set forth above in discussion of the same issue raised by defendants HH&R, the Court denies the motion to dismiss these two claims.

Defendants make the final contention that the statements allegedly made by them asserting that ZZZZ Best would be in a "very attractive situation" after the public offering and that Barry Minkow was "a great manager" were statements of opinion and therefore not actionable in tort. However, defendants contentions are not persuasive since whether those statements were opinion or fact is not to be determined at this stage of discovery.

C. *Whether plaintiffs' claim for violation of California Corporations* [*40] *Code § § 25400 and 25500 alleges that Grossman was a seller or broker-dealer.*

Defendants contend that the plaintiffs' Complaint alleges that Count VII, asserting violations of California Corporations Code § § 25400, 25500, is asserted against the same defendants as Counts I and II but that it is unclear whether they are being charged. (Complaint, para. 214). Ladenburg and Grossman are named as defendants in Count II, but not Count I. The plain reading of the Complaint indicates that the defendants in Count I and Count II are included in Count VII. However, as discussed hereinabove, a § 25400 seller is similar to the definition of seller under § 12. As there are no allegations that either moving defendant was a seller, this count should be dismissed without prejudice.

D. *Whether Count VIII states the required elements and particularity.*

Ladenburg and Grossman allege that Count VII, for alleged violations of California Corporations Code § 25401 and corresponding liability under § 25501, fail to state a claim for relief for a number of reasons. First, that the Complaint fails to state "strict privity" as required under the law. Second, that there are no allegations that Grossman [*41] controlled a seller of securities or was a broker-dealer who materially aided in a violation of § 25501.

California Corporations Code § 25401 imposes liability when a person makes or attempts to make a transaction relating to a security by means of an untrue statement of material fact or omission of a material fact that would make the statement not misleading. Section 25501 creates primary civil liability for any person who violates § 25401. Only actual sellers, i.e. the transferrers of title, can be liable under § 25501. See *Admiralty Fund v. Jones*, 677 F.2d 1289, 1296 (9th Cir. 1982). Plaintiffs contend that "controllers" of the actual sellers are also liable under § 25504 which is a term to be construed liberally. See *Wool v. Tandem Computers, Inc.*, 818 F.2d at 1440-1.

Grossman indicates that there are no "controller" allegations raised against him and the Court is in agreement. Accordingly, the Complaint fails to state a claim against Grossman under § § 25401, 25501 or 25504 and should be dismissed accordingly without prejudice.

The allegations raised against Ladenburg adequately allege that they were controllers of sellers of securities and will not be dismissed in accordance [*42] with *Wool v. Tandem Computers, Inc.*.

The next argument raised by movants is that Ladenburg and Grossman are not persons potentially liable under § 25504.2. Those persons include experts who have given written consent to be named in the prospectus or offering circular pursuant to the rule of the Commissioner of Corporations See *Koehler v. Pulvers*, 614 F. Supp. 829, 846 (S.D. Cal. 1985). Plaintiffs admit that this allegation applies to accountants and lawyers, and do not refute Ladenburg and Grossman's motion to dismiss. Accordingly, to the extent the pleadings state a claim against Ladenburg and Grossman pursuant to § 25504.2, these claims shall be dismissed with prejudice.

The final argument made by movants is that the count fails to allege that Ladenburg or Grossman materially aided or assisted in the fraudulent sale by others. California Corporations Code § § 25504 and 25504.1 impose liability one who "materially aids" and "materially assists" in fraudulent sales of securities by others. However, the Court finds the allegations sufficient and denies the motion to dismiss on these grounds.

Section 25504.1 creates liability for those who aid and abet in § 25401 violations. [*43] In re *National Mortgage Equity Corp. Mortgage Pool*, 636 F. Supp. 1138, 1170 (C.D. Cal. 1986). Parties must have engaged in such actions knowingly and recklessly. See In re *Diasonics Securities Litiqation*, 599 F. Supp. 447 (N.D.Cal. 1984). Plaintiffs have alleged intent sufficient for § 25504.1 (Complaint, para. 191). Likewise, the Complaint sufficiently links Ladenburg and Grossman's reports and statements with sales of ZZZZ Best

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 12 of 16

Page 12
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

securities.

The Court also denies Ladenburg and Grossman's request under Fed. R. Civ. P. 12(e) for a more definite statement regarding whether they were involved in the preparation or issuance of the prospectus. The Court directs movants to review paras. 55, 56, 86, 98, 103 and 108 of plaintiffs' complaint.

E. Whether there is a private right of action under Corporations Code § 2254.

For the reasons set forth hereinabove, this cause of action shall be dismissed as there is no private right of action under § 2254.

F. Whether the Complaint fails to allege agency.

Ladenburg and Grossman contend that they are neither officers, directors, employees or agents of ZZZZ Best and therefore Count X alleging violations of California Corporations Code § [*44] 1507 should be dismissed.

However, plaintiffs have alleged an agency relationship as to Ladenburg, but not Grossman. (Complaint, para. 47). Whether or not an agency relationship exists, raise questions of fact. Nichols v. Arthur Murray, Inc., 248 Cal. App. 2d 610, 614-5 (1967). Accordingly, the motion to dismiss Count X as to Ladenburg shall be denied; as it pertains to Grossman, it shall be granted without prejudice.

III. RAUSCHER PIERCE REFSNES INC., UN FINANCIAL CORPORATION formerly UNDERWOOD, NEUHAUS & CO., INC., BAER & COMPANY INC. CANTOR FITZGERALD & CO., INC., ENGLER-BUDD & COMPANY INC., EVANS & CO., INC., ROSENKRANTZ, LYON & ROSS INC., STEINBERG & LYMAN, WHALE SECURITIES CORPORATION'S MOTION TO DISMISS.

Defendants Rauscher, Pierce Refsnes, Inc., UN Financial Corp., formerly Underwood, Neuhaus & Co., Inc., Baer & Company, Inc., Cantor, Fitzgerald & Co., Inc., Engler-Budd & Company, Inc., Evans & Co., Inc., Rosenkrantz Lyon & Ross, Inc., Steinberg & Lyman, and Whale Securities Corporation (hereinafter collectively "non-managing defendants") move for an order dismissing Counts I through X of the Complaint. n9 The nonmanaging defendants were underwriters in the public [*45] offering of the ZZZZ Best securities.

---

n9 The Court notes plaintiffs objections to these defendants self-proclaimed name of "non-managing underwriters." Noting those objections and realizing the role that these defendants had, the Court only refers to them as "non-managing underwriters" as a term of reference, for sake of clarification and not to impute any other meaning to it.

---

A. Whether the entire complaint and all counts alleged therein against the non-managing underwriter defendants must be dismissed for failure to plead fraud with particularity.

Movants state that the entire Complaint, insomuch as it contains fraud allegations throughout, fails to meet the requirements of Fed. R. Civ. P. 9(b) for three reasons.

First, that the Complaint fails to set forth the time, place and manner of the misrepresentations as stated in Gottreich v. San Francisco Investment Corp., 552 F.2d 866, 867 (9th Cir. 1977).

The Court in Cooper v. Hwang, [1987 Transfer Binder] Fed. Sec. L. Rep. (CCH) para. 93,289 (N.D. Cal. 1987) denied a motion to dismiss when it found that allegations of an underwriters' access to inside information, coupled with general averments of knowledge consistent [*46] with Rule 9(b), were sufficient to state a 10 b-5 claim. See also Lazar v. Sadlier, 622 F. Supp. 1248 (C.D. Cal. 1985). The Complaint states, among other charges, that the non-managing underwriters for ZZZZ Best conducted due diligence into the financial soundness and prospects, omitted salient facts regarding certain financial conditions in the prospectus and registration statement. Accordingly, the Court finds that the Complaint adequately states the basis for the fraud claims.

The second contention is that each particular defendant must be notified of the alleged misrepresentations and omissions allegedly attributed to them. See Bruns v. Ledbetter, 583 F. Supp. 1050, 1052 (S.D. Cal. 1984). However, if defendants are members of an identifiable group, then pleading allegations against the group shall be permitted. See In re Equity Funding, 416 F. Supp. 161, 181 (C.D. Cal. 1976). Also, in circumstances of corporate fraud, the pleading requirements are relaxed. Wool v. Tandem, supra. And finally, courts have held that the pleading rule is relaxed where information is only within the opposing party's knowledge. Michaels Building Co. v. Ameritrust Co., 848 F.2d 674, [*47] 680 (6th Cir. 1988). The Michaels court specifically stated that "[e]specially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control." Id.

Also, movants' argument that the complaint does not specify between a primary or secondary violation of § 10(b) is unpersuasive for the reasons set forth earlier.

Case 1:00-cv-00793-SSB-TSH   Document 256-3   Filed 01/30/2004   Page 13 of 16

Page 13
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

*Rauscher's final argument is that the facts pleaded within the Complaint fail to provide a detailed factual basis. However, the movants are incorrect on this ground. The factual ground alleged was that the underwriter defendants conducted a due diligence investigation of the statements contained within the prospectus and that they therefore should have known of the misrepresentations and fraudulent statements contained therein. See also Wool v. Tandem, 818 F.2d 1433, 1439 (9th Cir. 1987) (Rule 9(b) is to be relaxed in matters of corporate fraud, where the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing). The motion to dismiss the entire Complaint for failure to plead fraud is denied.*

*B. Whether the Complaint [\*48] fails to state a § 10(b) claim because it fails to specify whether liability is premised on a primary violation for aiding and abetting.*

*For the reasons set forth immediately above, the Court finds that the Complaint adequately states a § 10(b) violation against the movants. Likewise, the Court has already determined that alternative pleading of primary and secondary liability contained within the Complaint is adequate. Accordingly, the motion to dismiss the § 10(b) claim is denied.*

*C. Whether Count I which alleges § 11 liability under the 1933 Act should be dismissed.*

*Movants allege that Count I, alleging § 11 liability should be dismissed for any one of the following reasons: (1) plaintiffs have no standing, or (2) there is no aider and abettor liability under § 11.*

*In reference to the latter contention, plaintiffs concede that they are not alleging aider and abettor liability against these underwriters. To that extent, the motion to dismiss a claim for secondary liability under § 11 is granted.*

*It is acknowledged by both parties that under § 11 an underwriter is listed as one of the persons who may be held liable for preparation and filing of the registration statement. For [\*49] § 11 liability to attach, a plaintiff must be able to trace the purchased stock back to the registration statement. See Abbey v. Computer Memories, Inc., 634 F. Supp. 870 (N.D. Cal. 1986). While § 11 itself does not require "direct tracing," there must be more than a showing that a plaintiff's stock might have come from the pertinent offering. See McFarland v. Memorex Corp., 493 F. Supp. 631 (N.D. Cal. 1980); Kirkwood v. Taylor, 590 F. Supp. 1375 (D. Minn. 1984).*

*Courts have universally held that "in order to have a valid § 11 cause of action, [the plaintiff] must plead and prove that his stock was issued pursuant to the particular registration statement alleged to be defective. Abbey v. Computer Memories, Inc., 634 F. Supp. at 872, citing Lorber v. Beebe, 407 F. Supp. 279, 286 (S.D.N.Y. 1975). Because § 11 provides for a conclusive presumption of reliance to persons who have acquired securities pursuant to a registration statement, it is necessary to limit plaintiffs to those who can show that their shares were purchased in the offering. See generally Abbey at 875.*

*However, the motion before the Court is not one for summary judgment, but one for dismissal [\*50] for insufficient pleading. Plaintiffs have alleged that they purchased ZZZZ Best securities, "some or all of which had been issued or distributed pursuant to the prospectus, dated December 9, 1986." It is the view of this Court, that plaintiffs' complaint sufficiently raises allegations of stock purchases directly pursuant to the initial offering and the registration statement inclusive therein. It is a question of proof regarding which stocks were purchased in the direct offering, and which purchases are too attenuated to invoke § 11 protection. Cf. In re Lilco Securities Litigation, 111 F.R.D. 663, 671 (E.D.N.Y. 1986). See also, In re Seagate Technologies Securities Litiqation, 115 F.R.D. 264, 267 (N.D. Cal. 1987) (where the Court in determining a class certification motion noted that the decision in @e was distinguishable because it involved a summary judgment motion which was brought after discovery which then revealed that plaintiffs could not trace their shares back to the registration statement at issue). Accordingly, movants' motion to dismiss this claim is denied.*

*D. Whether the plaintiffs' claim of a violation of § 12(2) should be dismissed.*

*Movants contend that [\*51] the complaint fails to allege a purchaser-seller relationship between plaintiffs and these underwriting defendants. A complaint that alleges a § 12(2) violation against underwriters must contain an allegation that the firms sold stock to the plaintiffs. Fine v. Rubin, 623 F. Supp. 171, 174 (N.D. Cal. 1985).*

*It is well established that in order to establish that defendants are "sellers" within the meaning of § 12(2), plaintiffs must allege facts which demonstrate that the defendants solicited the purchase of the securities at issue. In re Worlds of Wonder Securities Litiqation, 694 F. Supp. 1427, 1435 (N.D. Cal. 1988) (where the court dismissed defendants where it was only alleged that they jointly finalized the Registration Statement and Prospectus and caused the Registration Statement to become effective). See also Lubin v. Sybedon Corp., 688 F. Supp. 1425, 1437 (S.D. Cal. 1988) (where allegations*

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 14 of 16

Page 14
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

of a § 12(2) violation were not dismissed because plaintiff was able to allege that the defendants was the direct, hands-on seller of the limited partnerships). Plaintiffs allege in their opposition that the moving defendants solicited sales of the ZZZZ Best securities. However, [*52] plaintiffs do not indicate, where in their complaint, the allegations are specified. As noted in In re Worlds of Wonder Securities Litiqation, mere indication of the typical role an underwriter plays will not sustain a motion to dismiss. Accordingly, movant underwriters' motion to dismiss the § 12(2) is granted without prejudice.

It is also asserted that the Complaint fails to plead that any of the movants substantially participated in the sale in question. The Court has already addressed this argument, and consequently, for purposes of these moving defendants, it is irrelevant whether plaintiff has pleaded that they were substantial participants in the sale.

Lastly, movants correctly allege that there is no aiding and abetting liability under § 12(2). In re National Mortgage Equity Corp. Mortgage Pool Certificate Securities Litiqation, 636 F. Supp. 1138, 1169-70 (C.D. Cal. 1986). Plaintiffs do not refute this proposition in their opposing papers. Therefore, to the extent that aider and abettor allegations under § 12(2) are raised against the moving defendants, they are hereby dismissed with prejudice.

E. Whether plaintiffs' complaint fails to state a cause of action for [*53] fraud or negligent misrepresentation.

Movants allege that the complaint fails to state a cause of action for fraud as set forth in Crocker-Citizens National Bank v. Control Metals Corp., 566 F.2d 631, 636 (9th Cir. 1977) and for negligent misrepresentation as enumerated in Christiansen v. Roddy, 186 Cal. App. 3d 780, 785, 231 Cal. Rptr. 72 (1986). However, the Court finds to the contrary. Plaintiff has properly plead the fraudulent and negligent roles of these underwriting defendants in the Complaint. (See Complaint, paras. 45, 46, 204-7, 210, 211.) Further, as stated previously, plaintiffs are entitled to plead reliance on the integrity of the market in lieu of actual reliance. Therefore, movants' motion to dismiss the claims for fraud and negligent misrepresentation are hereby denied.

F. Whether Count IV should be dismissed for failure to state a cause of action under RICO.

Moving defendants make a series of arguments why plaintiffs have failed to state a cause of action under RICO pursuant to 18 U.S.C. § 1962: (1) that plaintiffs have not and cannot allege the requisite pattern of racketeering activity; (2) that the Complaint fails to adequately apprise them of the [*54] underlying basis of the § 1962 liability and fails to adequately identify the RICO enterprise alleged to be involved in the violation; and (3) that the complaint fails to set forth the facts sufficient to state a proper RICO nexus.

Movants contend that the Complaint fails to state a claim for relief in accordance with RICO because it does not sufficiently allege a "pattern" of racketeering activity and does not allege a "threat of continuing activity." The Complaint alleges that movants committed predicate acts inclusive of using the mails to distribute misleading prospectuses, commencing sales made in part on the strength of false prospectuses during two different time periods, and filing and disseminating false and misleading post-effective amendments to the Registration Statement and supplements to the prospectus. While these predicate acts all relate to the December 9, 1986 public offering, the allegations are sufficient to constitute a "pattern." The law in this circuit is clear: predicate acts may constitute a pattern of activity under RICO even though only a single scheme is involved. U.S. v. Kirk, 844 F.2d 660 (9th Cir. 1988) cert. denied,     U.S.    , 109 S. [*55] Ct. 222, 102 L.Ed.2d 213 (1988). See also United Energy Owners v. United States Energy Management Systems, 837 F.2d 356 (9th Cir. 1988).

The Ninth Circuit has continuously explored what constitutes a "pattern" of racketeering. See United Energy Owners v. United States Energy Management Systems, supra; Jarvis v. Regan, 833 F.2d 149, 152-3 (9th Cir. 1988). In discussing the necessity for a threat of continuing activity, the court in Sun Savings and Loan Association v. Dierdorff, 825 F.2d 187, 193-4 (9th Cir. 1987) stated that "[t]he continuity requirement set forth in Sedima is aimed only at eliminating RICO actions against perpetrators of isolated or sporadic acts and is not an attempt to limit RICO to complicated systems or multiple schemes of criminal activity."

In determining whether continuity exists, the Ninth Circuit has examined whether the predicate acts are isolated or sporadic. See Medallion Television Enterprises v. SelecTV of California, 833 F.2d 1360 (9th Cir. 1987); United Energy, supra; Sun Savings, supra. The court in Medallion Television determined that no continuing threat existed because the matter involved a single alleged fraud [*56] with a single victim. 833 F.2d 1360, 1363. The court likened their facts to those in Schreiber Distributing Co. v. Serv-Well Furniture, 806 F.2d 1393, 1399 (9th Cir. 1986) where the allegations that the defendant had fraudulently obtained a single shipment of goods to sell in violation of Schreiber's exclusive distributing agreement did not establish a

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 15 of 16

Page 15
1989 U.S. Dist. LEXIS 8083, \*; Fed. Sec. L. Rep. (CCH) P94,485

pattern because there was no thereat of continuing activity. However, the Ninth Circuit has found a threat of continuing activity where a scheme covered up a whole series of alleged kickbacks and receipts of favors, occurring over several months and in no way completed the criminal scheme. *Sun Savings* at 194. Where there have been multiple fraudulent sales and multiple victims, and the alleged inducements continued for five months, continuity has been found. *Id.* at 1469. See also *United Energy*, 837 F.2d at 861. Single frauds committed on single victims have been distinguished from situations involving multiple fraudulent sales to multiple victims where the alleged misrepresentations constituted continuing activity over a five month period. *California Architectural Building Products v. Franciscan Ceramics*, 818 F.2d [\*57] 1466 (9th Cir. 1987). The facts pleaded in the Complaint at issue adequately raise allegations of a threat of continuing harm through a duration of time. This matter is more closely assimilated to the facts in *California Architectural* and *Sun Savings*.

To state a cause of action under 18 U.S.C. § 1962(c) there must be a sufficient connection or nexus that entails a relationship between the enterprise and the racketeering activity. *Sun Savings supra*, at 195. The racketeering activity must in some way stem from the enterprise's activities or otherwise have some relationship to the enterprise. *Id.* RICO requires that the defendant directly or indirectly conduct or participate in the enterprise's affairs through a pattern of racketeering activity. Plaintiffs' allegations that as a result of the fraudulent acts committed by the moving underwriters, ZZZZ Best was able to induce investors and raise over $ 14 million through the public sale of securities is ample pleading of a nexus.

An enterprise is an entity separate from the pattern of activity in which it engages. *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524, L.Ed.2d (1981). Movants claim [\*58] that the Complaint first alleges that ZZZZ Best was the enterprise, then alleges that all the defendants comprise the enterprise and finally states that various groups of defendants, or combinations thereof, constitute the requisite enterprise. (See Complaint, paras. 24, 72, 96.) Plaintiffs have listed all of the three groups as "enterprises" pursuant to Fed. R. Civ. P. 8(c) which provides for alternative pleading. Therefore, there are no pleading deficiencies regarding who or what constitute the necessary enterprise in this RICO action. Likewise, plaintiffs have raised allegations of movants' violation of all four subsections to § 1962. At this time, the Court does not find it improper to raise violations of all four subsections. Cf. *In re National Mortgage Equity Corp., supra*, 636 F.Supp. at 1171 (upholding claims under § § 1962 (a), (b) and (c) and granting leave to replead § 1962 (d) claims). Accordingly, the motion to dismiss the RICO cause of action is denied.

G. Whether there is a private right of action under § 2254 of the California Corporations Code and whether § 1507 applies to these moving defendants.

As stated hereinabove, there is no private right of action under [\*59] California Corporations Code § 2254 and accordingly movants' motion to dismiss this claim is granted with prejudice.

Second, movants claim that it has not been alleged, nor do they fall under any of the categories of directors, officers, employees or agents listed in § 1507. However, the complaint does allege that the underwriters were "agents of the Company through which the stock of the Company was sold to plaintiffs and members of the plaintiff class." (See Complaint, para. 47). Furthermore, as previously stated, allegations of agency raise questions of fact. The motion to dismiss the § 1507 claim is denied.

H. Whether Count VII should be dismissed because the movants are not alleged to be sellers within the meaning of California Corporations Code § 25400.

One who does not qualify as a seller under § 12 of the 1933 Act likewise does not qualify as a seller as specified in § 25400 of the California Corporations Code. See *In re Activision*, 621 F. Supp. 415 (N.D. Cal. 1985). As plaintiffs have failed to state a claim for relief pursuant to § 12(2), the have failed to meet the pleading requirements under § 25400. The motion to dismiss Count VII is granted without prejudice. [\*60]

I. Whether Count VIII should be dismissed for failure to state a cause of action under § 25401 of the California Corporations Code.

Section 25401 of the California Corporations Code makes it unlawful to partake in a sale or purchase of securities by means of written or oral communications containing false statements or omissions. n10 Section 25501 creates civil liability for a § 25401 violation. Additionally, § 25504 creates joint an several liability for those who control sellers liable under § 25501.

---

n10 It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make statements made, in light of the circumstances under which they were made, not misleading. California

Case 1:00-cv-00793-SSB-TSH    Document 256-3    Filed 01/30/2004    Page 16 of 16

Page 16
1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

*Corporations Code § 25401.*

In order to invoke § 25401 liability, one must be an actual seller of the security. *Admiralty Fund v. Jones,* 677 F.2 1289, 1296 (9th Cir. 1982). Movants claim that there is no privity in their situation since the complaint fails to allege that they sold securities [*61] to any of the named plaintiffs.

Plaintiffs admit that one mast be an actual seller under § 25501. They attempt to establish § 25401 liability through the § 25504 "controller" vehicle. However, such an attempt is in error. Under § 25504, strict privity is still required. As stated in *In re Diasonics Securities Litigation,* 599 F. Supp. 447, 459 (N.D. Cal. 1984),

The plaintiffs attempt to argue that their claim survives by virtue of § 25504 (joint and several liability of principals and agent) and § 25504.1 (joint and several liability of persons who assist in violations). The plaintiffs' use of this statute is unavailing. Section 25504, by its terms, applies to violations of § 25501. Hence, strict privity is still required.

To the extent that the Complaint raises allegations of movants being sellers or controllers and subject to liability under § § 25401, 25501 and 25504, those claims are dismissed without prejudice. However, to the extent that the Complaint raises allegations of aider and abettor liability pursuant to California Corporations Code § 25504.1, the motion to dismiss is denied. Cf. *In re National Mortgage Equity Corp. Mortgage Pool,* 636 F. Supp. 1138, 1170 (C.D. [*62] Cal. 1986).

IV. GREENSPAN & COMPANY'S MOTION TO DISMISS

It is alleged that Greenspan & Company ("Greenspan") acted as an independent certified public accounting firm that audited financial statements of ZZZZ Best. Those financial statements were allegedly included as part of the December 9, 1986 Prospectus.

A. Whether the Complaint fails to meet the requirements of Fed. R. Civ. P. 9(b).

For the reasons set forth above, Greenspan's motion to dismiss the entire complaint for failure to plead with particularity as required by Fed. R. Civ. P. 9(b) is denied.

Greenspan argues that allegations premised on information and belief are also inadequate for a fraud action. While allegations of fraud based on information and belief usually do not satisfy the degree of particularity required under Rule 9(b), the rule may be relaxed as to matters peculiarly within the opposing party's knowledge. *Wool v. Tandem,* 818 F.2d 1433, 1439 (9th Cir. 1987), citing 5 Wright & Miller, § 1298, at 416 & n. 95. Furthermore, this type of exception applies in matters of corporate fraud because the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrong. *Zatkin* [*63] *v. Primuth,* 551 F. Supp. at 42. In the Complaint, plaintiffs have identified the misrepresentations and omissions that allegedly were made, they have stated the documents which contained such errors and the dates the documents were issued. In light of the consideration of pleading in corporate fraud matters, the Court finds the allegations adequately based on information and belief.

B. Whether Count I should be dismissed because no aiding and abetting liability exists under § 11 of the 1933 Act.

For the reasons set forth above, the Court dismisses with prejudice Count I insofar as it raises allegations of aider and abettor liability pursuant to § 11 of the 1933 Act.

C. Whether Count II should be dismissed as no aiding and abetting liability or substantial participant liability exists under § 12(2) of the 1933 Act.

For the reasons set forth above, the Court dismisses Count II insomuch as it raises allegations of aider an abettor liability pursuant to § 12(2) of the 1933 Act, with prejudice. Likewise, the Court has previously determined that there is no substantial participant liability under the same section.

D. Whether Counts VII and VIII should be dismissed because Greenspan [*64] & Company was not a seller of securities.

There are currently no allegations as to which of the § 25400 subdivisions that Greenspan supposedly violated. There are also no allegations that Greenspan were sellers of securities. Accordingly, consistent with the previous rationale of the Court, Count VII is dismissed without prejudice.

As stated above, with respect to allegations of a violation of California Corporations Code § 25401, there must be strict privity between a seller and a purchaser. Since the complaint contains no allegations of such against Greenspan, Count VIII is dismissed without prejudice.

E. Whether Counts IX and X should be dismissed because Greenspan & Company are not alleged to have been a director, officer, agent or employee of ZZZZ Best and there is no private right of action to pursue those counts.