1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

Greenspan contends that there are no allegations contained within the Complaint that they were a director, officer or agent of ZZZZ Best. However, the plaintiffs' opposition indicates that Greenspan may have acted as financial advisors to ZZZZ Best, issued press releases for ZZZZ Best and provided a financial market for the securities. As stated above, there [*65] is at least a question of an agency relationship. For that reason, the motion to dismiss the § 1507 cause of action is denied.

As there is no private right of action under California Corporations Code § 2254, that cause of action is dismissed with prejudice.

## V. STEVEN A. GREENBERG AND ANAMETRICS ADVISORS, INC.'S MOTION TO DISMISS

It is alleged that defendants Steven A. Greenberg and Anametrics Advisors, Inc. (collectively "Greenberg") provided financial consulting to ZZZZ Best. They allegedly acted as stock promoters who manipulated the market for ZZZZ Best securities. Specifically, Greenberg is alleged to have issued three press releases containing false information about ZZZZ Best between March and May 1987.

A. Whether plaintiffs can state a claim for relief against Greenberg and Anametrics under § 12 of the 1933 Act.

Count II of the Complaint raise allegations of § 12 of the 1933 Act violations. Greenberg indicates that there are no allegations of their being a "seller" contained therein. This contention is correct, and furthermore plaintiffs' do not oppose this in their opposition papers. The motion to dismiss Count II is granted.

Likewise, plaintiffs do not oppose the [*66] dismissal of Count VIII, alleging a violation of California Corporations Code § 25401. Accordingly, Count VIII is also dismissed.

B. Whether the Complaint sufficiently states a cause of action under Rule 10b-5 against Greenberg.

Greenberg contends that the Complaint fails to plead a cause of action under Rule 10b-5 for either primary or secondary liability. n11

n11 The elements for a cause of action for primary liability under Rule 10b-5 are set forth in Dirks v. Securities Exchange Commission, 463 U.S. 646 (1983) (where the elements were: 1) a misrepresentation, or a statement that is rendered false and misleading by virtue of an omission or a complete nondisclosure; 2) the existence of a duty; 3) scienter; 4) materiality; 5) reliance; and 6) injury). The elements for secondary, aider and abettor liability is set forth in Harmsen v. Smith, 693 F.2d 932, 943 (9th Cir. 1982) cert. denied 464 U.S. 822 (1983) (a showing of the following is required: 1) an independent primary wrong; 2) actual knowledge by the alleged aider and abettor of the wrong and of their role in furthering it; and 3) substantial assistance in the wrong).

The Complaint alleges that Greenberg and Anametrics [*67] were stock promoters who "as purported financial advisors to ZZ Best, received 'cheap' warrants to purchase the common stock of ZZ Best and participated in manipulating the market for ZZ Best securities and in the dissemination of information which was materially false and misleading and omitted material facts about ZZ Best. Among other things, Greenberg and Anametrics issued press releases for ZZ Best, dated March 16, 1987, April 16, 1987 and May 18, 1987, which are hereinafter described." (Complaint, para. 54). Greenberg indicates that the representations made consisted of statements previously made by ZZZZ Best and Mr. Minkow and therefore are not allegations of a representation or omission originally made by them. However, at this pleading stage, the allegation that the entire press release issued by them is sufficient.

Likewise, plaintiffs' have properly alleged a duty on behalf of Greenberg to them. Greenberg's factual paralleling to Kidwell v. Meikle, 597 F.2d 1273 (9th Cir. 1979) for the illustration that an arms-length transaction does not impose the required duty under Rule 10(b)(5) is misplaced. In Kidwell, the court found that no duty of disclosure was owed because [*68] the party alleging duty was in a situation where they were presumed to have known as much about the financial status of its' own affairs as the defendants did. This matter is more factually similar to the decision in Zweig v. Hearst, 594 F.2d 1261 (9th Cir. 1979) where the court applied a flexible duty standard. In Zweig, the defendant was the author of an article regarding the investment in question. The defendant was an informal financial adviser in a medium that the plaintiffs offered to prove influenced the market for the stock. The defendant controlled the information that he owned the stock and intended to sell, and he kept those facts secret. Id. at 1269. Further, the defendant owed a duty to those investors who did not even read the relevant article because they relied upon an honest and fully informed market. Instead they were relying upon a market that was affected by the article drafted by the defendant. n12 While Greenberg makes a number of arguments regarding his disclosure and the types of statements

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

contained therein, this type of argument is not proper for a motion to dismiss, but moreso in a motion for summary judgment. At this point, the Court only addresses [*69] the sufficiency of the complaint and not the merits of proof.

n12 The court in Zweig v. Hearst, supra, noted that their decision was consistent with that of the many cases in which receivers and givers of inside tips have been held liable for violations of § 10(b) and Rule 10b-5. "When a corporate insider gives a tip, even if he or she does not gain from the transaction that results, and even if the receiver of the tip has no fiduciary duty to the plaintiff, the congressional concern for the integrity of the marketplace compels liability. See e.g., S.E.C. v. Texas Gulf Sulphur, 446 F.2d 1301 (2nd Cir. 1971) cert. denied 404 U.S. 1005. Even outsiders to a corporation can be held criminally liable under the federal securities laws for improperly influencing the market for the corporation's shares. See United States v. Charnay, 537 F.2d 341 (9th Cir. 1976) cert. denied, 429 U.S. 1000, 97 S. Ct. 527, 50 L. Ed. 2d 610 (1976)." Id. at 1270-1, n. 16.

Plaintiffs have also sufficiently alleged scienter, albeit in a rudimentary form. Their allegation that all defendants, knowingly and recklessly, engaged in acts which operated as a fraud on the plaintiffs, is [*70] adequate when taken in context with the previous allegations of misrepresentations being made through press releases.

Lastly, Greenberg does not place in issue the contentions of materiality, reliance and injury. Accordingly, the motion to dismiss the Rule 10(b)(5) claim is denied.

C. Whether there is aider and abettor liability pled under Rule 10(b)(5).

When considering whether certain acts constitute secondary liability under Rule 10b-5, the flexible duty standard used to consider primary liability does not apply. Kersh v. General Council of The Assemblies of God, 804 F.2d 546, 551 (9th Cir. 1986). n13

n13 The Ninth Circuit noted that "application of the flexible duty standard would transform what was once an extension of the participation requirement . . . into a new rule that inaction alone can result in secondary liability as long as the defendant owed a duty to the plaintiff to act. As we have previously held, we are 'unwilling to extend vicarious liability where the secondary defendant's activity has been mere inaction.'" Kersh v General Council of Assemblies of God, 804 F.2d 546

(9th Cir. 1986).

Greenberg contends that there has been a failure to allege "actual [*71] knowledge", attributable to them, of the false contents of the three releases that substantially assisted the wrongs of ZZZZ Best and Minkow. Plaintiffs' Complaint, does however, allege actual knowledge. (Complaint, paras. 188, 189, 190). Greenberg intimates that they had very few business dealings with ZZZZ Best and that they had no reason to suspect the accuracy of information prepared and given to them by ZZZZ Best, their accountants, lawyers and other professionals. However, this is an argument towards sufficiency of evidence and not one for pleading. Lastly, the Complaint adequately alleges "substantial assistance" by issuing the misleading press releases. (Complaint, para. 54). Accordingly, Greenberg's motion to dismiss the secondary liability claims under Rule 10b-5 is hereby denied.

D. Whether the Complaint must be dismissed for failure to comply with Fed. R. Civ. P. 9(b).

As Greenberg indicates, all pleadings of fraud must be particularized, stating the time, place and content of the actual misrepresentations. In this instance, plaintiffs' complaint clearly meets the requirements for pleading fraud. The Complain specifies which press releases they contend contained misrepresentations, [*72] the date of these releases, the content contained therein and the factual reasons why these were in error. (Complaint, para. 99, 102, 105, 113 and 114).

Greenberg's claim that all of the allegations contained within a complaint must be particularized lacks citation to proper authority. And the argument that the releases contained statements made by others, that Greenberg only repeated, but were not statements of their own, is an argument as to evidence. Accordingly, the motion to dismiss the Complaint for failure to comply with Fed. R. Civ. P. 9(b) is denied.

E. Whether the Complaint fails to state a claim for negligent misrepresentation and fraud and deceit.

Greenberg argues that the complaint does not contain allegations of either "privity" or "actual reliance" on their part. As previously stated, plaintiffs can and have plead reliance on the integrity of the market, enough to state a cause of action under negligent misrepresentation and fraud.

Next, Greenberg argues that there are no allegations of misrepresentations on their part. However, that is precisely the claim made against them, to wit, that the statements contained within the press releases were misrepresentative. [*73] The motion to dismiss these

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

common law claims is denied.

F. Whether the Complaint fails to state a claim against Greenberg under California Corporations Code § § 25400, 25500 and 2254.

Greenberg's motion to dismiss Count VII is granted as they are not alleged to have been "sellers". As this Court has already stated, § 2254 claims shall be dismissed with prejudice as there is no private right of action.

G. Whether California Corporations Code § 1507 should be dismissed against Greenberg.

Section 1507 only applies to directors, officers, employees or agents of a corporation. Plaintiffs have stated in their opposition that Greenberg issued press releases as financial advisors for ZZZZ Best. It is further alleged that they acted as ZZZZ Best agents. This is sufficient pleading of an agency relationship. Accordingly, the claim alleging § 1507 violations against Greenberg is dismissed.

VI. FRESHMAN MARANTZ, ORLANSKI, COOPER & KLEIN AND MARK A. KLEIN'S MOTION TO DISMISS

It is alleged that the law firm of Freshman, Marantz, Orlanski, Cooper & Klein, and one of its partners, Mark A. Klein (collectively "Freshman") were retained by the lead underwriters to act as counsel in the ZZZZ [*74] Best December 9, 1986 public offering.

A. Whether Count II for violation of Section 12 of the Securities Act of 1933 should be dismissed.

Section 12(1) of the 1933 Securities Act creates liability for "[a]ny person . . . who offers or sells a security" in violation of the registration requirement of the Securities Act. Section 12(2) creases liability for "any person who offers or sells a security . . . by means of a prospectus or oral communication" which contains a misrepresentation or omission of material fact. One cannot be liable under Section 12 unless they are an offeror or seller.

Freshman sets forth that they could not possibly qualify as sellers or offerors under Section 12. They were not the ones who actually parted with title to the securities and did not solicit plaintiffs to purchase the securities. Freshman is alleged to have been a "participant" in the sales process by "provid[ing] the necessary expertise and necessary marketing and distribution networks" and "participat[ing] substantially in drafting the Prospectus." (Complaint, para. 181, 182). However, a this Court has already determined, the Court in Pinter v. Dahl, supra, has indicated that the

substantial [*75] participation test has no application in § § 12(1) and 12(2). Additionally, the plaintiffs have failed to indicate allegations contained within the complaint that Freshman were controlling persons of ZZZZ Best; It is questioned whether the plaintiffs will, at any rate, be able to make such allegations given the relationship that Freshman had with ZZZZ Best and Mr. Minkow, to wit, being one, if not two, steps removed. Accordingly, Freshman's motion to dismiss Count II, to the extent that it alleges primary violations, is granted.

For the reasons set forth above, the aider and abettor allegations against Freshman shall be dismissed with prejudice.

B. Whether Count III for violation of Section 10(b) should be dismissed.

Count III of the plaintiffs' Complaint alleges violations of Section 10(b) of the 1934 Exchange Act and Rule 10b-5 promulgated thereunder. Section 10(b) states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange -

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities [*76] exchange or any security not so registered, any manipulative or deceptive device or continuance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. 15 U.S.C. § 78 j(b).

Rule 10b-5 states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) to employ any device, scheme, or artifice to defraud,

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.106-5.

*Freshman contends that Count III, alleging violations of Section 10(b), should be dismissed because plaintiffs have failed to delineate whether they are charging primary or secondary violations. In light of the [\*77] findings of the Court, as set forth hereinabove, plaintiffs are entitled to plead alternative allegations against Freshman pursuant to Fed. R. Civ. P. 8(e)(2). Therefore, Freshman's argument that the Complaint fails to specify whether a primary or secondary violation is charged is unpersuasive.*

*Further, it is alleged that Count III fails to meet the requirements of Fed. R. Civ. P. 9(b). As both parties have acknowledged, in order to satisfy the requirements of Rule 9(b), a complaint raising allegations of fraud, should state the content of the alleged misrepresentations or omissions. See Gottreich v. San Francisco Inv. Corp., 552 F.2d 866, 867 (9th Cir. 1977). The Complaint adequately specifies the fraudulent behavior alleged to be attributed to Freshman. (Complaint, paras. 161-166). Moreso, the Complaint meets the time, place and content requirements of Rule 9(b). Paragraphs 85, 87, and 88 specify the exact dates of the Registration Statement and amendments that allegedly contained misrepresentations and omissions. n14 Therefore, the motion to dismiss Count III is denied.*

*n14 The Complaint states as follows: "85. On November 3, 1986, ZZ Best, with the assistance of the Lawyer Defendants, the Statement on Form S-1 with the SEC, Registration No. 33-9914, which was signed by the defendants who were directors of ZZ Best and by defendant Andersen, which covered shares of ZZ Best common stock, and which contained a preliminary Prospectus setting forth the same information and statements as the preliminary Prospectus of October 23, 1986, as is detailed in paragraphs 82 and 83 above. . . . 87. On December 2 and 3, 1986 respectively, assisted by the Lawyer Defendants, Underwriter Defendants and Accountant Defendants, ZZ Best filed amendments to the Registration Statement for the 1,150,000 units and 525,000 warrants/150,000 shares of common stock, both of which were signed by the ZZ Best Defendants who were directors of the Company and by defendant Andersen. Both these Amendments repeated and republished the statements and information contained in the earlier filings. . . . 88. On December 9, 1986, assisted by the Underwriter Defendants, the Lawyer Defendants and the Accountant Defendants, ZZ Best filed an amendment to the Registration Statement covering 1,265,000 units of common stock and warrants which was signed by the ZZ Best defendants who were directors of ZZ Best and by defendant Andersen. The Registration*

*Statement became effective on December 9, 1986, and thereafter the units were sold at $ 12 per unit. The Registration Statement, as effective, represented that ZZ Best was a highly profitable and rapidly expanding company and included the following financial information. . ." [\*78]*

*C. Whether Counts VII VIII and X for violations of the California Corporations Code should be dismissed.*

*Freshman contends that Count VII of the Complaint raises allegations of § 25400 violations. As the Complaint has failed to raise proper allegations of liability under § 12 of the 1933 Act, so too does it fail to raise allegations under § 25400. Count VII is hereby dismissed without prejudice.*

*Count VIII, alleging violations of § 15401 of the Corporations Code should be dismissed as plaintiffs have failed to specify "strict privity." Count IX, raising claims under § 2254 of the California Corporations Code, is also dismissed for reasons previously stated. It is also asserted that there are no violations that Freshman were directors, officers, employees or agents of a corporation and therefore they cannot be held liable under § 1507 of the Corporations Code. The Complaint does not allege that Freshman were directors, officers, or employees. Instead, the contention is whether Freshman is alleged to have been agents of ZZZZ Best. Plaintiffs' only argument in opposition is that Freshman acted as legal counsel to the underwriters, not to ZZZZ Best and that Freshman was not involved [\*79] in litigation. While plaintiffs may be correct in their assertion that California law establishes an agency relationship between the principal and an attorney hired through an agent of the principal empowered, it is of no consequence when those allegations are not contained within the complaint. See Miller v. Ballerino, 135 Cal. 566 (1902). In addition, plaintiffs are incorrect in pointing out paras. 47, 70, 71 and 72 as being indicative of showing that there are allegations of an agency relationship between Freshman and ZZZZ Best. Without specific allegations of agency, or even agency based upon a relationship between a principal and their agent's attorneys, the plaintiffs have failed to meet their pleading burden. Therefore, the motion to dismiss § 1507 claims of liability is granted without prejudice.*

*D. Whether Counts V and VI fail to state a claim against Freshman for negligent misrepresentation and fraud.*

*A claim for negligent misrepresentation requires plaintiffs to allege: 1) a misrepresentation of past or existing material facts; 2) lack of reasonable grounds for believing in the truth of the representations; 3) intent to*

Case 1:00-cv-00793-SSB-TSH     Document 256-4     Filed 01/30/2004     Page 5 of 11

Page 21

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

*induce reliance; 4) actual and justifiable* [*80] *reliance; and 5) resulting damage. See Christiansen v. Roddy, 186 Cal. App. 3d 780, 785-6 (1986).*

A claim for fraud and deceit under California common law requires the following elements: 1) the defendant made a false representation; 2) defendant had knowledge of the falsity; 3) defendant intended to induce reliance; 4) plaintiff actually and reasonably relied; and 5) plaintiff suffered actual damages. See Vasquez v. Superior Court, 4 Cal. 3d 800, 811 (1971).

The Complaint alleges that Freshman rendered substantial and active assistance to the other defendants by assisting in the drafting, preparing and filing of a preliminary and final Prospectus and assisting in the investigation into ZZZZ Best's financial condition, business operations, prospects and financial, accounting and management operations systems. (Complaint, para. 1(f)). It is also claimed that the underwriter defendants, through their counsel, either obtained knowledge of or recklessly or negligently disregarded the misrepresentations and omissions set forth in para. 113(a)-(s). (Complaint, para. 46). Here, it is the prospectus, both in preliminary and final stages, that allegedly contain the essential misrepresentations [*81] and omissions. When it is the precise item that the lawyers were hired to produce or work on, that cause the alleged breach of duty of disclosure, then the lawyers owe the investors a duty of disclosure. See Roberts v. Peat, Marwick, Mitchell & Co., [Current Transfer Binder], Fed. Sec. L. Rep. (CCH) para. 94,028 (9th Cir. 1988).

Freshman alleges that the case of Goodman v. Kennedy, 18 Cal. 3d 335 (1976) is controlling as establishing that lawyers do not owe a duty of care to third persons. However, the Court finds the situation at hand more analogous to the decision in Courtney v. Waring, 191 Cal. App. 3d 1434 (1987). In Courtney, the plaintiffs negligently prepared a franchise prospectus which failed to disclose material information known to defendants but unknown to plaintiffs. The defendants knew that the prospectus would be shown to prospective franchisees and that the information contained therein would be used to induce plaintiffs to purchase such franchises. "In simple terms, defendants are alleged to have prepared a false and/or misleading document, the purpose of which was to influence plaintiffs' conduct." Id. It was the combination of the attorneys' [*82] knowing that what their work product was intended for which created a duty to the third persons. See Roberts v. Ball, Hunt, Hart, Brown & Baerwitz, 57 Cal. App. 3d 104 (1976) (where the court held that the attorney owed plaintiff a duty of care in providing the advice because

*the plaintiff's anticipated reliance upon it is the end aim of the transaction). Freshman's attempt to distinguish Courtney as being a situation where the attorneys failed to include information known to them, only invite questions of fact. Freshman's motion to dismiss these claims is hereby denied.*

E. Whether the Complaint sufficiently pleads conspiracy against Freshman.

Plaintiffs aver that their Complaint adequately pleads civil conspiracy because the purpose, means of maintenance, acts in furtherance of, and damages resulting from the conspiracy are all alleged. Now, "[t]o state a claim for conspiracy, plaintiffs must plead an agreement to participate in an unlawful act and an injury caused by an unlawful overt act performed in furtherance of the agreement." Roberts v. Heim, 670 F. Supp. 1466, 1484 (N.D. Cal. 1987), citing Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. [*83] 1983). The Complaint fails to plead any type of agreement on Freshman's part to participate in the series of misrepresentations and omissions that misled plaintiffs into investing. Accordingly, the motion to dismiss the conspiracy allegations is hereby granted without prejudice.

F. Whether Count XI states a valid cause of action for professional malpractice against Freshman.

Freshman contends that plaintiffs cannot plead professional malpractice as they cannot allege any duty owed to them. However, for the same reasons as set forth above in the Court's discussion of liability for negligent misrepresentation or fraud and deceit, contained in Counts V and VS, the Court finds that a sufficient duty has been alleged in Count XI.

However, Freshman is incorrect is stating that Count XI is surplusage of Counts V and VS and should therefore be stricken. Therefore, the motion to dismiss the professional malpractice claim is denied. Additionally, the Court does not find that the counts for negligent misrepresentation, fraud and § 10(b) violations fail to meet Rule 9(b) requirements.

## VII. ERNST & WHINNEY'S MOTION TO DISMISS

Plaintiffs allege that the role Ernst & Whinney ("E&W") had [*84] in this matter revolved around a limited review of interim financial statements of ZZZZ Best, for the three month period, ending July 31, 1986 that they conducted. (Complaint, para. 120).

A. Whether the Complaint should be dismissed for failure to comply with Rule 9(b).

E&W detail the "limited" role they played in

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

*providing accounting services to ZZZZ Best. They distinguish themselves as not being accountants who provide auditing services in accordance with generally accepted accounting principles. E&W argues that they are being lumped together with other defendants in allegations of fraudulent activity. From here, they have set forth that plaintiffs' complaint fails to meet the specificity required under Rule 9(b) as set forth in Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). E&W alleges that "[v]acuous allegations that an accounting firm violated generalized accounting principles requiring, for example, adequacy and fairness of disclosure [citation] are simply inadequate under Rule 9(b)." (E&W's Motion to Dismiss, p. 15).*

*Plaintiffs' Opposition cites to what amounts to approximately six pages of allegations contained within the Complaint. At this juncture, having [\*85] carefully read those allegations, it appears that plaintiffs have properly pled time, place and content of the fraudulent actions allegedly on E&W's part. The dates of the statements and any additions to them are noted; the fraudulent use of E&W's "limited quarterly review" as incorporated into the prospectus and other written material disseminated to investors is additionally stated therein. E&W's argument that the duty of an auditor, much less a limited reviewer, is narrow, can only be determined upon a weighing of the facts as discovered. See Pegasus Fund v. Laraneta, 617 F.2d 1335, 1341 (9th Cir. 1980) (the court used the White v. Abrams' flexible duty approach to determine an auditor's duty of disclosure and noted that findings of a reckless disregard of a duty to disclose should be done sparingly). In light of the same, the Court is inclined to agree that, if E&W did perform such a limited review, the duty of disclosure is in fact narrow. The motion to dismiss the complaint for failure to specify in accordance with Rule 9(b) is denied.*

*B. Whether the Complaint states a claim against Ernst & Whinney for a violation of Section 11 of the Securities Act.*

*First, in conformance [\*86] with what the Court has previously determined, there is no aider and abettor liability available under § 11 and accordingly those claims are dismissed with prejudice.*

*Second, is the question of whether E&W can be liable for primary violations of § 11. Plaintiffs note in their Opposition that there are no § 11 of the 1934 Act allegations made against E&W as there is no application of that section as defined in Regulation S-K § 436(c); 17 C.F.R. § 230.436(c).*

*C. Whether the Complaint states a valid cause of action under Section 12 of the Securities Act.*

*E&W is correct in their statement that no secondary liability is available under Section 12. To that extent, any claims of aiding and abetting under § 12 raised in the Complaint against E&W are dismissed with prejudice.*

*Notably, to the extent that co-conspirator allegations are raised under § 12, they too are dismissed. Cf. Admiralty Fund v. Jones, supra, 677 F.2d at 1295 (where the Ninth Circuit stated that while some courts have implied co-conspirator liability in the terms of § 10(b) and Rule 10b-5, the same has not been implied in § 12(2)); McFarland v. Memorex Corporation, 493 F. Supp. 631, 647 (N.D.Cal. 1980) (co-conspirator [\*87] liability is not available under Section 12).*

*As this Court has stated already, liability premised on a violation of § 12 of the Securities Act requires that the defendant be an "offeror or seller" of a security. See 15 U.S.C. § 771. There are no allegations contained in the Complaint that E&W either offered or sold ZZZZ Best securities. Neither are there allegations that the ZZZZ Best plaintiffs purchased any securities from them. As the substantial participant test does not apply under these circumstances, there is no alleged primary violation by E&W under § 12. Plaintiffs do not address this issue in their opposition as it pertains to E&W. Accordingly, t the extent that there are Section 12 allegations in the Complain against E&W, they are dismissed with prejudice.*

*D. Whether the Complaint properly states a cause of action under Section 10(b) and Rule 10b-5.*

*Plaintiffs premise their allegations against E&W on the false and misleading representations, which materially deviated from their professional standards (specifically Auditing Standard AU § 722), in its Review Report which "was included in the July 31, 1986 financial statements and its involvement in the preparation [\*88] of ZZZZ Best's Form 10-Q for the quarter ended January 31, 1987. Plaintiffs also claim that E&W failed to act on or to correct a false and misleading Form 8-K filed by zzzz Best on or about June 17, 1987 which falsely represented the reasons for their resignation as ZZZZ Best's auditors. This behavior is only a part of the general conspiratorial conduct alleged.*

*In determining whether an accountancy firm can be liable for preparation of an unaudited review statement that is then incorporated into a Registration Statement, along with language acknowledging that the accountant's review was unaudited, the Court must determine if there is a duty under Rule 10b-5 and if so, if the proper pleading requirements have been met. n15*

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

1517, 1531 n. 46 (C.D.Cal. 1986) n17

n15 Both sides acknowledge that the report issued by E&W was unaudited. Contained within the Registration Statement was the following: "With respect to the unaudited interim financial statements for the three months ended July 31, 1986, included in this registration statement, Ernst & Whinney have reported that they have applied limited procedures in accordance with professional standards for a review of such information. However, their separate report for the interim period included herein, states that they did not audit and they do not express an opinion on, that interim financial information. Accordingly, the degree of reliance on their report on such information should be restricted in light of the limited nature of the review procedures applied. . . ." (Registration Statement, p.31). [*89]

E&W factually argue that they did not certify any of the financial information reprinted in the Registration Statement or Form 10-Q (Complaint, paras. 100, 101), and therefore they cannot be held liable for any false or misleading statements or omissions contained within the same. The Registration Statement (p. 31) denoted that the E&W financial statement for the three months ended July 31, 1986 was unaudited.

Liability based upon Rule 10b-5 requires a showing of: 1) a misrepresentation, or a statement that is rendered false as misleading by virtue of an omission, or a complete non-disclosure; 2) the existence of duty; 3) scienter; 4) materiality; 5) reliance; and 6) injury. See Gruber v. Prudential-Bache Securities, Inc., 679 F.Supp. 165, 175 (D.Conn. 1987).

E&W argues that a review report by an independent accountant does not constitute a basis for liability under Section 10(b) and Rule 10b-5 as it is very different from an audited report. See Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg, 651 F. Supp. 877 (D.Conn. 1986). There, the court held that a claim based upon an accountant's review of financial projections was not the same as a claim [*90] of auditing an hence there was no cause of action under the securities laws. n16 See also Rich v. Touche Ross & Co., 415 F. Supp. 95 (S.D.N.Y. 1976) (there can be no reliance on misrepresentations by accountants when the statements are marked "unaudited"). In fact, in a footnote to a decision rendered by another judge sitting in the Central District of California, the difference between an accounting firm who had bean hired to review an audit of a business to determine net worth versus the key players in the case invoked distinction. See DMI Furniture Inc. v. Brown, Kraft & Company, 644 F. Supp.

n16 The Andreo matter involved a report which noted that the accountants had not verified such data, "[s]ince Peat Marwick [the accountants] told the plaintiffs that it did not verify the data upon which the projections were based, and that the results could vary materially from projections, its review of those projections cannot be a basis for plaintiffs' claim that Peat Marwick acted in reckless disregard of the truth." Id. at 881.

n17 The Court specifically stated, "46. . . . [t]he Court holds in the alternative, however, that the amended complaint should be dismissed even if Arthur Young acted 'in connection with' a securities transaction. While recklessness is normally a sufficient degree of scienter to support a claim of a primary violation of section 10(b), it is not always the proper standard, and should not be employed in the circumstances presented here. It is patently unfair for an advisor such as Arthur Young to be held to the same standard of scienter as the key actors in this transaction. The duties of disclosure and investigation of the type of advisor surely are significantly less, under this circuit's flexible duty standard applied in Pegasus, [cite], than the duties owed by the seller of stock and its auditor. In addition, all of the reasons that militate against recognition of primary cause of action against Arthur Young apply to the question of what degree of scienter ought to be required. The recklessness standard poses the maximum possible potential for abuse and costliness, and the nebulous and subjective character of the duties of advisors such as Arthur Young adds greatly to the potential for vexatious suits. While, for the reasons set out in the text, an actual knowledge standard will not eliminate the 'deep pocket' problem entirely, it plainly will present a significantly smaller opportunity for abuse. [*91]

With respect to the question of duty where an unaudited statement has been prepared, cases cited have been more fact specific and do not indicate a clear consensus. The Second Circuit in United States v. Natelli, 527 F.2d 311 (2d Cir. 1975) cert. denied, 425 U.S. 934 (1976), found a duty on the part of the accountant and stated specifically:

This raises the issue of the duty of the CPA [certified public accountant] in relation to an unaudited financial statement contained within a proxy statement where the figures are reviewed and to some extent supplied by the auditors. It is common ground that the auditors were "associated" with the statement and were required to

*object to anything they actually "knew" to be materially false. In the ordinary case involving an unaudited statement, the auditor would not be chargeable simply because he failed to discover the invalidity of booked accounts receivable, inasmuch as he had not undertaken an audit with verification. In this case, however, Natelli "knew" the history of post-period bookings and the dismal consequences later discovered. Was he under a duty in these circumstances to object or to go beyond the usual scope of an accountant's [\*92] review and insist upon some independent verification? The American Institute of Certified Public Accountants, Statement of Auditing Standards No. 1 - Codification of Auditing Standards and Procedures [cite], recognizing that 'if the certified public accountant concludes in the basis of facts known to him that unaudited financial statements with which he may become associated are not in conformity with generally accepted accounting principles, which include adequate disclosure, he should insist . . . upon appropriate revision . . . ' [emphasis deleted]*

*We do not think this means, in terms of professional standards, that, the accountant may shut his eyes in reckless disregard of his knowledge that highly suspicious figures, known to him to be suspicious, were being included in the unaudited earnings figures with which he was 'associated' in the proxy statement. Id. at 320.*

*While it does not appear that the cases cited generally hold an accountant liable where they have prepared unaudited statements, Natelli seems to make an exception to cases where the accountant "knows" of the falsity at the time of the report. See also Blakely v. Lisac, 357 F. Supp. 255 (D. Ore. 1972). [\*93]*

*Plaintiffs have plead that E&W knew or recklessly disregarded that Z Best's July 1986 and January 31, 1987 interim financial statements were false, both for making inadequate disclosure of internal control deficiencies and for inflated income figures arising from reporting of insurance restoration revenues. (Complaint, paras. 132-145). This allegation of "knowledge" meets the requisite pleading required to fit into the narrow area of liability for accountants who have prepared unaudited statements as stated in Natelli. However, the plaintiffs are reminded that this is a very limited area, and should discovery not bear the allegations true, the Court would encourage E&W to file another motion at that time. E&W's motion to dismiss the Section 10(b) and Rule 10b-5 claims is denied.*

*E. Whether there is aiding and abetting liability under Rule 10b-5.*

*E&W alleges that the Complaint fails to properly*

*plead secondary violations of Rule 10b-5. The Court has previously stated that secondary liability under Rule 10b-5 is viable.*

*E&W set forth that plaintiffs have not sufficiently plead "actual knowledge" of any alleged fraud or "knowledge of the role" that it played in the fraud. However, [\*94] the Court is inclined to disagree having reviewed portions of the Complaint. (Complaint, paras. 132-145) Unlike the Mendelsohn v. Capital Underwriters Inc., 490 F. Supp. 1069 (N.D. Cal. 1979) case that is cited to, we are at this point faced with a question of pleading and not with a weighing of facts. Therefore the motion to dismiss the claims of aider and abettor liability under Rule 10b-5 is denied.*

*However, plaintiffs have not sufficiently alleged a charge of conspiracy here as there is no charge that E&W had an "agreement" to participate in an unlawful act. Cf. Roberts v. Heim, 670 F. Supp. 1466, 1484 (N.D.Cal. 1987). Likewise, to the extent that plaintiffs plead a failure on the part of E&W to disclose to the public why they resigned as ZZZZ Best's independent accountants, they have failed to allege from where the duty arises. To that regard, the charges of conspiracy and claim of liability based upon E&W's resignation as ZZZZ Best's independent accounts are dismissed without prejudice.*

*F. Whether the pendent state claims should be dismissed.*

*As the Court has jurisdiction over the federal claims, as set forth above, it is inappropriate for the Court to address the [\*95] issue at this time.*

*G. Whether the Complaint sufficiently states a claim for negligent misrepresentation or fraud pursuant to Rule 9(b).*

*Plaintiffs failed to address the issue of whether fraud has been sufficiently pled in the Complaint. It is necessary to plead that E&W: 1) made a false representation; 2) that they had knowledge of the falsity; 3) that they intended to induce reliance; 4) that plaintiffs actually and justifiably relied upon such representation; and 5) that plaintiff suffered damages therefrom. See generally Crocker-Citizens National Bank v. Control Metals Corp., 566 F.2d 631, 636-637 (9th Cir. 1977). It does not appear that plaintiffs have pleaded the requisite elements and therefore the Court finds that the claim for fraud is dismissed without prejudice.*

*Whether plaintiffs have pleaded a proper cause of action for negligent misrepresentation has been put into issue by E&W. The elements of such a cause of action was set forth in Christiansen v. Roddy, 186 Cal. App. 3d*

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

780, 785-786 (1986): 1) a misrepresentation of past or existing material facts; 2) lack of reasonable grounds for believing in the truth of the representations; 3) intent to induce reliance; [*96]    4) actual and justifiable reliance; and 5) resulting damage.

E&W claim that no "positive assertion" has been attributed to them in the Complaint. A material fact is a positive assertion by the party. See Huber, Hunt & Nickels Inc. v. Moore, 67 Cal. App. 3d 278, 304 (1977). See also Cal. Civ. Code § § 1572(2) and 1710(1).

Even though plaintiffs do not respond to this argument directly, it seems as if the assertion here is the unaudited review statement included in the prospectus. While that review contained disclaimers, it did make a statement as to a financial condition, even if in a limited sense. At this juncture, the review seemed to lend some semblance to limited financial soundness.

It is claimed by E&W that neither actual nor justifiable reliance is present in their fact situation. For the same reasons stated above in discussion of other defendants, the court finds that pleading reliance on the integrity of the market is sufficient to establish the actual reliance element of negligent misrepresentation.

In addressing the question of justifiable reliance, E&W again distinguishes themselves as having prepared an unaudited interim financial statement, rather than an [*97] audited review. From this point, E&W argues that there can be no justifiable reliance. See e.g. Podlasky v. Price, 87 Cal. App. 2d 151, 159 (1948). See also Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir. 1986). For the reasons set forth below, the Court finds this argument unpersuasive at this time.

H. Whether plaintiffs have failed to state claims for negligence and negligent misrepresentation because E&W were not parties in privity with plaintiff and therefore a claim must be predicated on an opinion on audited financial statements.

Once again, E&W raise the issue of duty and justifiable reliance: they contend that since plaintiffs were not in privity with them, in order to establish liability, they must be able to plead and prove "justifiable reliance."

The court in International Mortg. Co. v. Butler, 177 Cal. App. 3d 806 (1986) created a duty analysis approach when confronted with a situation where no privity existed between the two parties in a common law negligence claim. The Butler court found that the auditor's duty ran to "foreseeable" third parties who relied on an auditor's opinion regarding an unqualified financial statement. Citing to Goodman v. Kennedy,

[*98]   18 Cal. 3d 355 (1976), E&W argues that it is a legal determination as to whether policy considerations dictate the imposition of liability under the circumstances. The specific" considerations were enumerated in Biakanja v. Irving, 49 Cal. 2d 647, 650 (1958) where the California Supreme Court stated:

The determination whether in a specific case the defendant will be held liable to a third person not in privity as a matter of policy involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that plaintiff suffered injury, the closeness of the connection between defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, arid the policy of preventing future harm.

E&W claims that if investors were allowed to make common law negligence claims, the result would be to "eviscerate the immunity from liability for review reports embodied in 17 C.F.R. § 230.436(c), and would compel accountants to essentially conduct a full scale audit even though they have been retained only to 'review' financial statements." (E&W Motion [*99]  to Dismiss, p. 45-46).

However, the opinion in Butler depicts the ever-changing role of accountants and the type of reliance placed upon them. They are the "public watchdogs" and public policy dictate holding them accountable for their negligence:

"An innocent plaintiff who foreseeably relies on an independent auditor's unqualified financial statement should not be made to bear the burden of the professional's malpractice. The risk of such loss is more appropriately placed on the accounting profession which is better able to pass such risk to its customers and the ultimate consuming public. By doing so, society is better served; for such a rule provides a financial disincentive for negligent conduct and will heighten the profession's cautionary technique." Id. at 820.

In this instance, after consideration of the rights of both E&W and plaintiffs, it appears that the balance of public policy tips in favor of the plaintiffs. While it may appear attenuated to hold E&W potentially liable for an unaudited review for a limited financial period, the justifiable reliance which might have ensued by the innocent investors tips the balance in favor of th plaintiffs. Finally, under [*100]    a foreseeability standard, an auditor is liable only to those third parties who reasonably and foreseeably rely on the audited statements. Plaintiffs correctly assert that reliance and

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

*foreseeability are questions of fact. Accordingly, the Court finds that plaintiffs have properly plead a duty on the part of E&W. Also, the Court does not find the claims for negligence and negligent misrepresentation to be redundant.*

*I. Whether plaintiffs' Complaint fails to state a claim against E&W under California Corporations Code § § 25400 an 25500.*

*Plaintiffs have claimed that E&W violated § 25400 of the California Corporations Code and are therefore liable for damages under § 25500. Liability in this instance requires the defendant to be one who "purchases or sells" a security.*

*E&W is correct in their assertion that subdivision (a) through (d) of § 25400 requires them to be actual sellers. No allegations of such have been made. Likewise, E&W cannot be held violative of that section based on substantial participation arguments. And finally, no allegations are contained in the Complaint that would state a cause of action under subdivision (e) of § 25400. Plaintiffs did not refute this in their [*101] opposition papers. Therefore, E&W's motion to dismiss these allegations is granted.*

*J. Whether plaintiffs state a cause of action against E&W pursuant to California Corporations Code § 25401.*

*In order to assert a cause of action under § 25401, there must be strict privity. The complaint is absent as to those types of allegations. As previously stated in this Order, to the extent that the Complaint raises allegations of E&W being sellers or controllers and subject to liability under § § 25401, 25501 and 25504, those claims are dismissed without prejudice.*

*Plaintiffs' have argued that E&W are liable pursuant to § § 25504.1 and 25504.2. In order to establish liability under § 25504.1 the Complaint must plead "actual knowledge" of the fraudulent investment scheme and that they substantially assisted that fraud. See Orloff v. Allman, 819 F.2d 904, 907-908 (9th Cir. 1987) (the test for liability under § 25504.1 is more strict than the Harmsen v. Smith test regarding secondary liability under § 10(b) of the Securities Exchange Act of 1934. The current allegation of a reckless failure to discover the fraud is insufficient. To the extent that the Complaint raises allegations of [*102] aider and abettor liability pursuant to § 25504.1, those claims are dismissed without prejudice.*

*Section 25504.2 imposes liability on experts who supply material for use in an offering and who lend their professional authority to material statements contained*

*therein. n18 However, the statute itself limits liability to those accountants who have given written consent pursuant to the rule of the commissioner to be named in any prospectus as having prepared or certified any part of the prospectus. Such allegations are missing from the Complaint. Therefore, the motion to dismiss the claim under § 25504.2 is granted without prejudice.*

*n18 Section 25504.2 reads in part, "[a]ny accountant, engineer, appraiser, or other person whose profession gives authority to a statement made by such person, who pursuant to rule of the commissioner has given written consent to be and has been named in any prospectus or offering circular distributed in connection with the offer or sale of securities as having prepared or certified in such capacity either any part of such document or any written report or valuation which is distributed with or referred to in any such document is jointly and severally liable with any other person liable under Section 25501. . . ." (emphasis in original).* [*103]

*J. Whether there is a private right of action pursuant to California Corporations Code § 2254.*

*For the reasons set forth above, the cause of action asserted against E&W pursuant to § 2254 is dismissed with prejudice.*

*K. Whether the Complaint states a cause of action against E&W pursuant to § 1507 of the California Corporations Code.*

*E&W can only be liable to plaintiffs under § 1507 if they were agents of ZZZZ Best. Plaintiffs do not address this issue in their opposition papers and the Court can only infer that they did not intend for these allegations to stand. In addressing the argument as to why the accountants should be liable, plaintiffs only refer to defendants Greenspan and Greenberg. (Opposition, p. 203-4). Plaintiffs have failed to state a claim of violating § 1507 against E&W and accordingly, those claims shall be dismissed.*

**VIII: EDWARD M. KRIVDA'S JOINDER IN OTHER DEFENDANTS' MOTION TO DISMISS.**

*Defendant Edward M. Krivda ("Krivda") has filed a motion to dismiss portions of the third amended consolidated complaint or in the alternative, for a more definite statement as to portions of the complaint. Defendant Krivda has based this motion on his previously filed [*104] joinders in the motions to dismiss filed by defendants Ernst & Whinney, Freshman, Marantz, Orlanski, Cooper & Klein and Mark A. Klein,*

1989 U.S. Dist. LEXIS 8083, *; Fed. Sec. L. Rep. (CCH) P94,485

Ladenburg and Grossman, Greenspan & Company and S. George Greenspan, Non-Managing Underwriter Defendants, Hughes, Hubbard & Reed and Marc R. Moskowitz, and Steven A. Greenberg and Anametrics Advisors, Inc. While the Court is cognizant of Krivda's efforts to save judicial time in reviewing repetitive briefs, and Krivda's conservation of their own time and expense, the Court does not deem the joinders to be proper. As highlighted in this Order, each of the moving defendants had different roles and consequently different responsibilities. To apply the differing standards, across the board, to Krivda would be in error. Krivda was allegedly a supplier of carpet to ZZZZ Best, a role entirely different than rendering of professional services in a securities matter.

However, mindful of conserving both attorney and judicial time, combined with the desire to keep all parties at a relatively similar stage of the proceedings, the Court will allow the Complaint to be dismissed as to defendant Krivda. The single allegation contained within para. 64 of the Complaint, [*105] in light of a 138 page complaint is hardly sufficient pleading. Furthermore, plaintiffs choose not to address Krivda's contentions in their opposition. Accordingly, the Court hereby dismisses the Complaint, in its entirety, without prejudice, against defendant Krivda.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that plaintiffs have 45 days in which to file a Fourth Amended Complaint repleading the causes of action and claims that have been dismissed without prejudice.

DATED: May 19, 1989