# UNREPORTED CASES

Not Reported in N.E.2d  
(Cite as: 2000 WL 504114 (Ohio App. 8 Dist.))  
<KeyCite History>

Page 1

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eighth District, Cuyahoga County.

Bernadine DAVIS, Executrix, etc., Plaintiff-appellant  
v.  
WAL-MART STORES, INC., et al., Defendants-appellees

No. 75224.

April 27, 2000.

Character of Proceeding: Civil appeal from Common Pleas Court Case No. CV- 327712. Reversed and Remanded.

William Martin Greene, Esq., Jean M. McQuillan, Esq., Brian N. Eisen, Esq., Greene & McQuillan Co., L.P.A., Cleveland, for plaintiff-appellant.

Clifford C. Masch, Esq., Roy A. Hulme, Esq., Reminger & Reminger Co., L.P.A., Cleveland, for defendants-appellees.

JOURNAL ENTRY AND OPINION

KARPINSKI, J.

*1 Plaintiff-appellant Bernadine Davis, executrix of the estate of Thomas Davis and representative of his next of kin, appeals from an order of the trial court granting summary judgment against her in her second action against defendant-appellee Wal-Mart Stores, Inc. dba Sam's Club ("Wal-Mart"). The trial court found that this action for spoliation of evidence against Wal-Mart and one of its employees was barred by *res judicata.*

In 1992, plaintiff filed against Wal-Mart and others an intentional tort wrongful death and survivor action after her husband Thomas was killed while operating a forklift at a loading dock at one of its facilities. *Bernadine Davis, extrx. etc. v. Sam's Club dba Wal-Mart Stores, Inc.,* Case No. CV-243067.

On September 10, 1992, a produce truck the decedent was unloading for a lessee of space in its facility pulled away from the dock prematurely and the forklift he was driving fell off the dock and landed on top of him.

Plaintiff hired a private investigator, who obtained outside of the discovery process a one-page memorandum which referred to premature pull-away incidents. This document, referred to as Exhibit A, was created on January 23, 1992, approximately eight months before the incident. The memorandum adopted a policy of requiring truck drivers to surrender the keys until the vehicle was completely unloaded--a policy apparently not followed with the lessee's produce truck in this instance.

During the course of discovery in the intentional tort case, plaintiff specifically requested Wal-Mart produce information relating to loading dock incidents. Neither the Exhibit A memorandum nor any other documents were produced. Because plaintiff had independently obtained the Exhibit A document, however, her counsel conducted discovery during depositions and questioned Wal-Mart employees concerning the memorandum and any prior incidents.

Plaintiff sought to settle her claims before trial. She sought $250,000 to settle the claims against Wal-Mart, but Wal-Mart declined, instead offering $150,000. She ultimately settled her claims against the remaining co-defendant and dismissed the survivor claim against Wal-Mart. During the course of trial on the wrongful death claim against Wal-Mart, counsel for plaintiff referred to the fact that Wal-Mart had not produced the Exhibit A memorandum regarding the pull-away incidents.

The jury returned a general verdict against Wal-Mart. The jurors completed an interrogatory specifying that Wal-Mart committed an intentional tort because the workplace injury to plaintiff's decedent was substantially certain to occur. The jurors completed another interrogatory naming four specific acts which constituted the intentional tort. The jury awarded $2,000,000 in damages and the trial court subsequently entered judgment on the verdict.

Plaintiff also sought prejudgment interest on the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



damage award. During the course of discovery, plaintiff obtained a Wal-Mart legal team diary that referred to reports of premature pull-away incidents underlying the Exhibit A policy memorandum which had not been produced during discovery in the intentional tort wrongful death case. Following a hearing, the trial court awarded prejudgment interest.

*2 The trial court found that Wal-Mart failed to make a good faith effort to resolve the case whereas plaintiff had not. The trial court specifically found that Wal-Mart did not fully cooperate in discovery and did not rationally evaluate its legal risks and potential liability. The trial court also found that testimony of Wal-Mart witnesses during the prejudgment interest hearing conflicted with their deposition testimony.

This court affirmed the jury verdict and award of prejudgment interest in *Bernadine Davis, extrx. Etc. v. Sam's Club, dba Wal-Mart Stores, Inc.* (Sept. 12, 1996), Cuyahoga App. Nos. 69647 and 70284, unreported. The Ohio Supreme Court denied further review. *Davis v. Sam's Club* (1997), 77 Ohio St.3d 1526. Wal-Mart thereafter satisfied the judgment against it in the intentional tort wrongful death case.

Approximately one week thereafter, plaintiff filed the complaint in the case at bar against Wal-Mart and David Begnini, its loading dock manager, for spoliation of evidence. Plaintiff alleged, *inter alia,* that she discovered during the post-trial proceedings for prejudgment interest that several employees of Wal-Mart provided false or misleading testimony during their depositions in the intentional tort case. She further alleged that she dismissed her survivor claim, which would have permitted her to seek additional compensatory and/or punitive damages, because of the false testimony and defendant Wal-Mart's failure to provide complete discovery.

During the course of discovery in the case at bar, plaintiff states that she obtained for the first time additional deposition testimony and exhibits regarding Wal-Mart employee injury claims recorded in loss prevention memoranda that were not disclosed in the prior intentional tort case. She maintains that Wal-Mart still has not provided notes of prior incidents referred to in the Exhibit A memorandum and legal team diary. Defendants argue that Wal-Mart produced all responsive information and that it did not improperly conceal or destroy any information.

Defendants Wal-Mart and Begnini filed a joint motion for summary judgment. Their motion argued, *inter alia,* that plaintiff's claim for tortious interference with evidence against them was barred by *res judicata.* [FN1] Specifically, the motion argued that this claim arose from the same transaction as the intentional tort case.

> FN1. Defendants' motion also argued that no civil liability exists for perjury and that plaintiff did not present a *prima facie* case for spoliation of evidence because she presented no evidence of a wilful destruction of evidence, no evidence of disruption to her intentional tort case, and no evidence of damages. Defendants do not assert these arguments on appeal, however, and the trial court did not address them. On remand, the trial court should address these arguments in the first instance. See *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359-360.

Plaintiff filed a brief in opposition to summary judgment, and defendants filed a reply brief in support of summary judgment. Granting defendants' motion for summary judgment, the trial court stated as follows:
Deft's [*sic*] motion for summary judgment is granted. The doctrine of res judicata bars the pltf's claim for tortious interference with evidence.

Plaintiff timely appeals raising the following sole assignment of error:
BECAUSE THE DOCTRINE OF *RES JUDICATA* DOES NOT AND SHOULD NOT BAR THIS LAWSUIT, AND BECAUSE THERE REMAIN GENUINE ISSUES OF MATERIAL FACT, THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.
*3 This assignment is well taken.

Plaintiff argues the trial court improperly granted summary judgment by finding that her claim for spoliation of evidence was barred by *res judicata.* Under the circumstances, we agree.

The standard for granting summary judgment is well settled. Summary judgment shall not be granted unless, after viewing the evidence in the light most

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



favorable to the non-moving party, the record shows there is no genuine issue as to any material fact, reasonable minds can reach but one conclusion, and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Vahilla v. Hall* (1997), 77 Ohio St.3d 421.

The Supreme Court reviewed a grant of summary judgment on the grounds of res judicata in *Ameigh v. Baycliffs Corp.* (1998), 81 Ohio St.3d 247. *Ameigh* involved three successive proceedings concerning a zoning permit to construct boat docks in a residential district. The *Ameigh* Court found that two prior administrative appeals regarding the zoning permit filed in the common pleas court did not constitute res judicata to bar a third action seeking a declaratory judgment that the zoning permit violated zoning laws.

Before reaching its conclusion, the *Ameigh* Court reviewed precisely what was determined in each prior action to determine whether the third action was barred. The common pleas court's limited holding in the first action was that the township trustees lacked authority to revoke a zoning permit unless the permit was issued upon a false statement. *Id.* at 250. The holding of the common pleas court in the second appeal was limited to its finding that the trustee's revocation of the permit on grounds that it was obtained through false statements was not adequately supported by the record. *Id.* The *Ameigh* Court recognized that neither journal entry of the common pleas court in the prior proceedings discussed whether the proposed use of the land under the zoning permit would violate the zoning laws.

Because of the limited scope of the two prior actions, the *Ameigh* Court concluded that the third action, which sought a declaratory judgment that the zoning permit violated applicable zoning laws, was not barred by the judgment in either prior action. Before reaching its conclusion, the Court stated:
> Where the judgment of a court is not dispositive on issues which a party later seeks to litigate, *res judicata* is not applicable. This is true even if the prior court decision has discussed the issues that are the subject of the current litigation.

*Id.* at 250-251 (citation omitted.) Accordingly, the Supreme Court reversed the judgment of the court of appeals which had held that the declaratory judgment action was barred by *res judicata*.

After viewing the record in the light most favorable to plaintiff, as we are required to do in the context of a motion for summary judgment, we find that the trial court improperly found that the claim for spoliation of evidence was barred by *res judicata* in the case at bar. Defendants insist to the contrary that the claim is barred, citing the syllabus of *Grava v. Parkman* (1995), 73 Ohio St.3d 379, which provides in pertinent part as follows:
*4 A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.

For *res judicata* to apply under this theory, however, defendants' acts of allegedly concealing, destroying or intentionally interfering with evidence must arise from the same "transaction or occurrence" as that which lead to decedent's death in the intentional tort wrongful death action. We conclude from the record that the case at bar does not arise out of the same transaction or occurrence as the prior case.

The "occurrence" which triggered the intentional tort case was the decedent's death. The term "transaction" may be broader than "occurrence" and was defined in *Grava* to encompass events which arise from a "common nucleus of operative facts." *Id.* at 382. Concealing, destroying, misrepresenting, or intentionally interfering with evidence after a workplace death does not arise from a "common nucleus of operative facts" with those which arose before the death.

To recover on an intentional tort claim, the claimant must show that the employer disregarded a risk of injury or death to the employee that was substantially certain to occur. Nothing in the record shows that any other issue was raised or submitted to the jury in the intentional tort case.

Defendants have likewise not shown that a motion for prejudgment interest alleging a failure to make a good faith effort to settle an intentional tort case precludes subsequently raising a spoliation of evidence claim. This is particularly true, as in the case at bar, when alleged acts of concealing, destroying, misrepresenting, and/or intentionally interfering with evidence were not discovered until after the final judgment in the intentional tort litigation.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in N.E.2d                                                                  Page   4
(Cite as: 2000 WL 504114, *4 (Ohio App. 8 Dist.))

In *Dickens v. Bethlehem Baptist Church* (Sept. 15, 1994), Cuyahoga App. No. 65740, unreported, this court envisioned a case like the one at bar. The *Dickens* court recognized that when a defendant's fraudulent representations conceal the basis for the second cause of action until after judgment in the first action, the second action is not barred by principles of *res judicata*. *Id.* at p. 2 (citing *Jackson v. Lou Cohen, Inc.* (1992), 84 Ohio App.3d 693.)

Precisely because of the difference in the sequence of events, this case is distinguishable from *Williamson v. Rodenberg* (June 30, 1997), Franklin App. No. 96APE10-1395, unreported, upon which defendants rely. The *Williamson* court specifically recognized that plaintiff discovered the basis for her spoliation claim asserted in the second action before the judgment in the first case. *Id.* at p. 2. In fact, plaintiff had already unsuccessfully argued during her prior age discrimination trial that the notes, which formed the basis for her subsequent spoliation claim, were destroyed to hide the fact that the interview process was used to discriminate based on age.

*5 The *Williamson* court stated as follows:
This court holds that, in light of the fact that plaintiff learned of the destroyed evidence before the trial started and the claim of spoliation shares the same common nucleus of facts as the age discrimination case, plaintiff could have brought her claim for spoliation of evidence in the previous action.
*Id.* at p. 3. Unlike *Williamson,* however, as discussed above, the record in the case at bar does not show that plaintiff learned of the spoliated evidence before the intentional tort trial started or that her claim of spoliation shares a common nucleus of operative facts with the intentional tort case.

Accordingly, plaintiff's sole assignment of error is sustained.

Judgment reversed and case remanded for further proceedings.

This cause is reversed and remanded.

It is, therefore, ordered that appellant recover of appellees her costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

ANN DYKE, P.J., and MICHAEL J. CORRIGAN , J., concur.

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).

2000 WL 504114 (Ohio App. 8 Dist.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio,
Eleventh District, Geauga County.

James FERRY, et al., Plaintiffs-Appellants,
v.
Robert C. SHEFCHUK, Defendant-Appellee.

No. 2002-H-2480.

Decided May 16, 2003.

Investors brought action alleging fraud and conversion against investment advisor. Investment advisor filed motion to dismiss, arguing that cause of action was statutory and that investors did not comply with statutory limitations period. The Court of Common Pleas, Geauga County, No. 02 P 000362, granted motion. Customers appealed. The Court of Appeals, William M. O'Neill, J., held that: (1) cause of action for fraud was governed by four-year limitations period that was applicable to common-law fraud, and (2) investors complied with procedural rule requiring that fraud be plead with particularity.

Reversed and remanded.

Judith A. Christley, J., filed dissenting opinion.

[1] Fraud ⚖═38

184k38 Most Cited Cases

Investors' cause of action for fraud against investment advisor was governed by four-year limitations period that was applicable to common-law fraud, not two- year limitations period for statutory claim for fraudulent sale of securities, since investment advisor did not make false representations about the securities, but rather allegedly fabricated entire existence of securities in order to gain control over investors' monies and pocket funds for himself. R.C. §§ 1707.43, 2305.09.

[2] Pleading ⚖═18
302k18 Most Cited Cases

Investors who brought claim for common law fraud against investment advisor complied with procedural rule requiring that fraud be plead with particularity, because complaint identified advisor, provided transaction dates, and indicated nature and extent of alleged fraudulent conduct. Rules Civ.Proc., Rule 9(B).

Civil Appeal from the Court of Common Pleas, Case No. 02 P 000362.

Abraham Cantor, Johnnycake Commons, Concord, OH, for plaintiffs-appellants.

Daniel F. Gourash, Robert D. Anderle, and Howard G. Strain, Cleveland, OH, for defendant-appellee.

WILLIAM M. O'NEILL, J.

*1 {¶ 1} This accelerated appeal arises from the Geauga County Court of Common Pleas wherein, James Ferry, Thelma Ferry, Dennis Stone, Karen Stone, and the Stone Family Partnership, Ltd., (collectively known as appellants), filed a complaint on April 4, 2002, against appellee, Robert C. Shefchuk, alleging fraud.

{¶ 2} In early 1988, appellants began consulting with appellee regarding investment advice. Appellee urged appellants to invest in a reinsurance company named R & G Associates. From 1988 until May 1998, appellants had an ongoing business relationship with appellee, which included monies invested in R & G Associates. Appellee would regularly present appellants with documents reflecting their investments with R & G Associates.

{¶ 3} On May 15, 1998, appellants learned that appellee had been providing them with false documents regarding their alleged investments with R & G Associates. Appellants eventually learned that appellee had not invested any of their funds and that R & G Associates did not exist as an Ohio corporation.

{¶ 4} Appellants originally filed suit in federal court for federal securities fraud. [FN1] Appellants subsequently filed a voluntary motion to dismiss the federal case without prejudice, concluding that a state law claim was more appropriate. The district court granted appellants' motion to dismiss in August 1999. Appellants subsequently filed this suit on April 4, 2002, alleging fraud and conversion under common law.

FN1. *Ferry v. Money Concepts Capital Corp.* (N.D.Ohio, 1999), case No. 1:99CV1141.

{¶ 5} Appellee filed a Civ.R. 12(B)(6) motion to dismiss on June 28, 2002, contending that R.C. 1707.43, not common law fraud, was the applicable law and, as such, appellants' claim was barred by a two-year statute of limitations pursuant to R.C. 1707.43. Appellee argued in the alternative that appellants failed to plead fraud with the required particularity. Appellants filed a brief in opposition to the motion dismiss on August 5, 2002. The trial court granted appellee's motion to dismiss on September 17, 2002,

holding that "R.C. 1707.43 acts as a complete bar to plaintiffs' complaint."

{¶ 6} Appellants then filed this timely appeal, citing two assignments of error.

{¶ 7} Appellants' first assignment of error is:

{¶ 8} "The trial court committed prejudicial error in applying the two year statute of limitations of R.C. 1707.43 to bar plaintiffs' claims when plaintiffs' cause of action arose at common law, and not under R.C. Chapter 1707."

[1] {¶ 9} An appellate court reviews a motion to dismiss de novo. [FN2] Dismissal of a claim pursuant to Civ.R. 12(B)(6) is appropriate only where it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. [FN3] The trial court must review the complaint and presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the nonmoving party. [FN4]

> FN2. *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 230, 551 N.E.2d 981.
>
> FN3. *In Defense of Deer v. Cleveland Metroparks* (2000), 138 Ohio App.3d 153, 160, 740 N.E.2d 714, citing *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 327 N.E.2d 753.
>
> FN4. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

*2 {¶ 10} The affirmative defense of statute of limitations is generally not properly raised in a Civ.R. 12(B)(6) motion, as it usually requires reference to materials outside the complaint. [FN5] Only when it is apparent from the face of the complaint, may such an affirmative defense be raised in a Civ.R. 12(B)(6) motion. [FN6] The complaint must show the relevant statute of limitations and the absence of factors which would toll the statute or make it inapplicable. [FN7]

> FN5. *Steiner v. Steiner* (1993), 85 Ohio App.3d 513, 518, 620 N.E.2d 152.
>
> FN6. (Citation omitted.) *Helman v. EPL Prolong, Inc.* (2000), 139 Ohio App.3d 231, 241, 743 N.E.2d 484.
>
> FN7. *Id.*

{¶ 11} Appellants argue in the first assignment of error that the trial court improperly dismissed the action pursuant to R.C. 1707.43, as their cause of action arises out of common law fraud, codified as R.C. 2305.09.

{¶ 12} R.C. 2305.09 includes a four-year statute of limitations for claims of common-law fraud. In actions alleging the fraudulent sale of securities, R.C. 1707.43 applies.

{¶ 13} R.C. 1707.43 reads, in pertinent part:

{¶ 14} "No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of the sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than four years from the date of such sale or contract for sale, whichever is the shorter period."

{¶ 15} Thus, pursuant to R.C. 1707.43, if a complaint alleging common-law fraud is predicated upon the sale of securities, the applicable statute of limitations is two years, and not four years as set forth in R.C. 2305.09. [FN8]

> FN8. *Ferritto v. Alejandro* (2000), 139 Ohio App.3d 363, 743 N.E.2d 978.

{¶ 16} In order to determine whether R.C. 1707.43 applies, we must look to the actual nature of the case rather than the form in which it is pleaded. [FN9] Appellants' complaint stated a cause of action for common-law fraud, not a claim for redress pursuant to R.C. 1707.43. Appellants complaint alleges that appellee informed them that they were investing in R & G Associates, a reinsurance company. The complaint further alleges that those statements were knowingly false, misleading, and made to induce appellants into giving appellee funds, which were never invested in any securities, but rather, converted by appellee for his own use. Nowhere in the complaint do appellants allege that any securities existed, as defined by R.C. 1707.43.

> FN9. *Lawyers Cooperative Publishing Co. v. Muething* (1992), 65 Ohio St.3d 273, 603 N.E.2d 969.

{¶ 17} In *Ferritto v. Alejandro,* the Ninth District held that the two-year statute of limitations of R.C. 1707.43 does not apply when the action arises out of common-law fraud. [FN10] In *Ferritto,* an investment advisor purchased investments for less than the amount of funds that the Ferrittos had given him to purchase the investments and kept the remaining funds for himself. In that case, there was, at least, a purchase of securities, albeit not in the amount requested by the purchasers.

> FN10. *Ferritto v. Alejandro,* 139 Ohio App.3d 363, 743 N.E.2d 978.

{¶ 18} In the instant case, appellee claimed to be making regular purchases of securities and continued to supply appellants with documentation claiming such purchases had been made. However, there was never any purchase of any securities, an even more compelling fact than was at issue in *Ferritto.*

*3 {¶ 19} The Sixth Circuit Court of Appeals has also addressed this issue:

{¶ 20} " '(W)e do not agree that the two year limitation period in § 1707.43 was intended to apply to *all* cases of securities law fraud, including those based solely upon the common law of fraud. * * * It applies to cases where the plaintiff claims his recovery is "based upon" or "arise(s) out of" a violation of the blue sky provisions(.)' " [FN11]

> FN11. (Emphasis sic.) *Ferritto,* at 368, 743 N.E.2d 978, quoting *Nickels v. Koehler Mgt. Corp.* (C.A.6, 1976), 541 F.2d 611, 616.

{¶ 21} In the instant case, appellee did not make false representations about the securities, but rather, fabricated the entire existence of securities in order to gain control over appellants' monies and pocket the funds for himself. Thus, appellants' claim is one that arises out of common-law fraud and not out of the blue sky provisions of R.C. 1707.43.

{¶ 22} Therefore, the four-year statute of limitations governed by R.C. 2305.09 for common-law fraud apply in the instant case and not the two-year statute of limitations set forth in R.C. 1707.43. Thus, the trial court improperly granted appellee's Civ.R. 12(B)(6) motion to dismiss.

{¶ 23} Appellants' first assignment of error is well taken.

{¶ 24} Appellants' second assignment of error is:

{¶ 25} "Plaintiffs complied with Rule 9(B) of the Ohio Rules of Civil Procedure in sufficiently pleading fraud with specificity in their complaint."

[2] {¶ 26} Appellants argue that their complaint alleging fraud complied with the particularity requirements set forth in Civ.R. 9(B). Appellee's motion to dismiss argued in the alternative that the pleading was insufficient. In its judgment entry, the trial court held that appellee's motion to dismiss was granted based upon the statute of limitations provisions of R.C. 1707.43, and did not address whether the complaint was pled with sufficient particularity.

{¶ 27} A complaint alleging fraud must state the specific circumstances surrounding the alleged fraud with particularity. [FN12] In order to meet the particularity requirements of Civ.R. 9(B), the complaint must specify the false statements, the time and place where the statements were made, and identify the defendant who made the statements. [FN13]

> FN12. See Civ.R. 9(B).

> FN13. *Argyle Prods., Inc. v. Ticketmaster-Indiana* (Dec. 17, 1999), 11th Dist. No. 98-T-0154, 1999 Ohio App. LEXIS 6098, at *4.

{¶ 28} A review of the complaint in the instant case reveals that appellants properly identified the appellee, provided transaction dates, and indicated the nature and extent of the alleged fraudulent conduct. We, therefore, conclude that appellants properly conformed with the particularity requirements of Civ.R. 9(B).

{¶ 29} Appellants' second assignment of error is with merit.

{¶ 30} Based on our analysis of the first assignment of error, the judgment of the trial court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

DIANE V. GRENDELL, J., concurs.

JUDITH A. CHRISTLEY, J., dissents with dissenting opinion.

JUDITH A. CHRISTLEY, J., dissenting.

*4 {¶ 31} I respectfully dissent from the majority's judgment and opinion. The majority holds that the four-year statute of limitations per R.C. 2305.09, rather than the two-year statute of limitations per R.C. 1707.43, is applicable to the case at bar. In reaching this result, the majority concludes that because no securities were actually purchased or sold, appellants' recovery, if any, is not based upon a violation of R.C. Chapter 1707. For the reasons that follow, I respectfully disagree.

{¶ 32} R.C. 1707.01(J) defines "fraud," "fraudulent," "fraudulent acts," "fraudulent practices," or "fraudulent transactions," as "anything recognized * * * as such in courts of law or equity; any device, scheme, or artifice to defraud or to obtain money or property by means of any false pretense, representation, or promise; *any fictitious or pretended purchase or sale of securities;* and any act, practice, transaction, or course of business relating to the purchase or sale of securities that is fraudulent or that has operated or would operate as a fraud upon the seller or purchaser." (Emphasis added.) When read in conjunction

Slip Copy  
2003-Ohio-2535  
**(Cite as: 2003 WL 21139014 (Ohio App. 11 Dist.))**

Page 4

with R.C. 1707.44(M)(1)(b), which provides that no investment advisor or investment advisor representative shall "[e]ngage in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person[,]" it is obvious that the General Assembly intended to include the type of conduct at issue in this case under Ohio's Blue Sky Law.

{¶ 33} The fact that no securities actually existed here is irrelevant to the question of whether appellee violated R.C. Chapter 1707. Rather, by persuading appellants to give him money to invest in nonexistent securities, which money he then converted for his own use, appellee clearly engaged in the "fictitious or pretended purchase or sale of securities[.]" The majority's reliance on *Ferritto* is misplaced as I would respectfully suggest that *Ferritto* is bad law for the reasons stated in this dissent.

{¶ 34} It is evident in the instant matter that appellants' claims are either based upon or arose out of a violation of Ohio's Blue Sky Law. Therefore, I would affirm the judgment of the trial court because appellants did not file their complaint within the applicable two-year statute of limitations.

2003 WL 21139014 (Ohio App. 11 Dist.), 2003-Ohio-2535

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works