UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

FILED
JAMES BONINI
CLERK

04 FEB -3 PM 12: 01

WEST [illegible] OHIO
[illegible] CINCINNATI

| | | |
|---|---|---|
| Walter W. Thiemann, on behalf of Himself and all others similarly situated | : | |
| | : | Case No. C-1-00-793 |
| **Plaintiff** | | |
| | : | Judge Sandra S. Beckwith |
| v. | | |
| | : | Magistrate Judge Timothy Hogan |
| OHSL Financial Corporation, (OHSL) et al. | | (Class Action) |
| | : | |
| **Defendants** | | |
| | : | |

\*\*          \*\*          \*\*          \*\*          \*\*

## <u>PLAINTIFFS' REPLY MEMORANDUM AND EXHIBITS IN FURTHER SUPPORT OF CLASS CERTIFICATION</u>

## TABLE OF CONTENTS

I.     INTRODUCTION

II.    SUMMARY OF PLAINTIFFS ARGUMENTS IN REPLY (REPLY)
       MEMORANDUM IN FURTHER SUPPORT OF CLASS CERTIFICATION

       1.    The action for securities fraud against Defendants who
             accomplished the fraud by misstatements and omission in the
             documents causing the merger of two corporations is particularly
             well suited for Class Certification

       2.    The Prerequisites of Fed. R. Cir. P 23(A) are satisfied.

       3.    The Requirements of Rule 23(b)(3) are satisfied.

III.   THE PLAINTIFFS

       A.    Plaintiffs are Typical of the Class

IV.    ARGUMENT

       A.    This Case Is Ideally Suited For Class Action Treatment

       B.    The Prerequisite of Fed. R. Civ. P. 23(A) Are Satisfied In This Case

             1.    The Members Of The Class Are So Numerous That Joinder Is
                   Impracticable

             2.    There Are Questions Of Law Or Fact Common To The Class

             3.    The Class Representatives' Claims Are Typical Of Those Of The
                   Members Of The Class They Seek To Represent

             4.    The Class Representatives Will Fairly And Adequately Protect The
                   Interests Of The Class

V.     CLASS COUNSEL IS WEL-QUALIFIED TO REPRESENT THE CLASS

             1.    The Objective Qualifications Of The Mesh Firm Are Beyond
                   Question

             2.    The Results So Far Speak For Themselves

             3.    Mr. Brautigam Is Well-Qualified To Represent The Class

A.    Plaintiffs Meet All The Requirements Of Fed. R. Civ. P. 23(b)(3)

1.    Common Questions Of Law Or Fact Predominate Over Individual Questions

2.    Rule 10b-5 Claims Should Be Certified

3.    Amounts Of Damages Are Not Class Issues

4.    The Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of The Controversy

5.    The Procedural Posture Of The Case Heavily Favors Class Certification

VI.    CONCLUSION

## TABLE OF AUTHORITIES

### CASES

*Affiliated Ute Citizens v. United States,* 406 U.S. 128 (1972)    4, 21

*In re American Med. Sys. Inc.,* 75 F.3d 1069    14

*Basile v. Merrill Lynch, Pierce, Fenner & Smith,* 105 F.R.D. at 508    4, 11

*Bovee v. Coopers & Lybrand* 216 F.R.D. 596 (2003)    4, 13

*In re Cardizem CD Antitrust Litig.,* 2001 U.S. Dist. LEXIS 4521 * 27
(E.D. Mich. March 14, 2001)    20

*In re Cincinnati Gas & Electric Securities Litigation,* [1984-1985]
[Transfer Binder] Fed. Sec. L. Rep.    4, 5

*In re Computer Memories Securities Litigation,* 111 F.R.D. 675 (A.D. Cal. 1986) 3

*Consumers Power Co. Secs. Litig., In re,* 105 F.R.D. 583    11

*Cross v. National Trust Life Insurance Co.,* 553 F.2d 1026    4, 15

*Davis v. Avco Corp.,* 371 F. Supp. 782    4, 5, 8, 11, 19

*Dolgow v. Anderson,* 43 F.R.D. 472, 484-85 (E.D.N.Y. 1968)    25

*Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2nd Cir. 1968)    15

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974)    4, 8

*Fischer v. Wolfinbarger,* 55 R.R.D. 417 (S.D. N.Y. 1984)    8

*Fradkin v. Ernst,* 98 F.R.D. 478 (1983)    4, 12

*General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147    4, 9

*Hines v. ESC Strategic Funds, Inc.,* 1999 Fed. Sec. L. Rep.    20

*Ingram v. Joe Conrad Chevrolet,* 90 F.R.D. 129, 133 (E.D. KY, 1982)    5, 27

*Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris, Inc.,*
182 F.R.D. 523, 540 (N.D. Ohio 1998)    21

*Jordan v. Global Natural Resources*, 102 F.R.D. 45, 49 (S.D. Ohio, 1984)    4, 8, 10, 22

*Kamm v. California City Development Company*, 509 F.2d 205 (9th Cir. 1975)    27

*Korn v. Franchard Corp.*, 456 F. 2d 1206    22

*Levison v. Basic*, 786 F.2d. 741 (6th Cir., 1984)    4, 12

*Lozada v. Dale Baker Oldsmobile, Inc*, 197 F.R.D. 321    21

*Mader v. Armel*, 402 F. 2d 158 (Sixth Cir. 1968)    3, 11, 22

*Mills v. Electric Auto-Lite*, 396 U. S. 375    3

*Newberg on Class Actions*, (3rd Ed)    24

*Poughkeepsie Sav. Bk., FSB v. Morash*, 1989 Fed. Sec. L. Rep.
(CCH) ¶ 94,422 (S.D.N.Y.)    20

*In re Revco Litigation* 142 F.R.D. (R.D. Ohio, 1992)    3, 5, 8, 21, 26

*In re Rospatch Sec. Litig.*, 1991 Fed. Sec. L. Rep.    22

*Shamberg v. Ahlstrom*, 111 F.R.D. 689 (D.N.J. 1986)    10

*Sinter v. General Motors Corp.*, 532 F.2d at 524    4, 15

*Stoller v. Baldwin – United Corp.*, [1985-1986 Transfer Binder], Fed.Sec.L,Rep.    5, 11, 28

*The Contemporary Function of the Class Suit*, 8 U. Chi. L. Rev. 684    25

*Thompson v. Midwest Foundation Independent Physicians Association*,
117 F.R.D. 108    5. 10, 19

*TSC Industries v. Northway*, 426 U.S. 438    3

*Wright v. National Warranty Co.*, 953 F.2d 256, 262 (6th Cir. 1992)    20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, on behalf of Himself and all others similarly situated | : | |
| | : | Case No. C-1-00-793 |
| Plaintiff | : | Judge Sandra S. Beckwith |
| v. | : | Magistrate Judge Timothy Hogan |
| OHSL Financial Corporation, (OHSL) et al. | | (Class Action) |
| | : | |
| Defendants | : | |
| ** ** ** ** ** | : | |

**PLAINTIFFS' REPLY MEMORANDUM AND EXHIBITS IN FURTHER
SUPPORT OF CLASS CERTIFICATION**

## I.    INTRODUCTION

More than 39 months after the inception of this case, more than 27 months after a

class was initially certified, and only weeks after the class was decertified, lead plaintiff

Walter W. Thiemann and new plaintiffs Gary and Lisa Meier filed a second motion for

class certification at the direction of the Court. The second motion for class certification

makes the same arguments that have been previously been made—because the essential

elements of class certification existed then and exist now, and builds on and flows from

plaintiff's motion for lead plaintiff (Doc. No. 10), and the Court's Order certifying Walter

W. Thiemann as lead plaintiff (Doc. No. 33). In the lead plaintiff Order, the Court made

preliminary determinations that the requirements of Rule 23 had been met. Because these

relatively simple arguments were attacked in motions to decertify the class, motions for

reconsideration, and various and sundry other attacks, the plaintiffs cannot respond to all

these transparent and duplicative arguments within the twenty page limit. Instead, in the interest of judicial economy, plaintiffs attach and incorporate Plaintiff's Response in Opposition to Motion to Decertify the Class (Doc. No. 74) as Exhibit A, and incorporate by reference Plaintiff's Motion for Leave to Submit Motion For Reconsideration (Doc. No. 230)[1]. These documents, along with their attachments, address issues that defendants recycle in the current opposition[2].

In spite of the divisive nature of the discovery and motion practice in this case and in spite of cavalier statements by the Court that it would rather not be involved in class actions and in spite of the Court's statements in other class actions as to the nature and motivation of all class counsel, (*See*, Exhibit 1 to the class Opposition), plaintiffs believe that an objective analysis of the facts and law mandate class treatment

Whether the Provident/ OHSL merger is characterized as a Direct Personal transaction or Direct Impersonal Transaction[3] the courts have long recognized that not only is a merger an exchange, purchase or sale (or all three) of securities but well within the protection of the securities fraud acts and §10 of the 1934 Securities Exchange Act

---

[1] Plaintiffs include Doc. No. 74 as an attachment for the convenience of the Court, because it has not been scanned and does not appear to be available to the Court in electronic form. Similarly, because Doc. No. 230 is available in electronic form, plaintiffs respectfully incorporate it by reference.

[2] For example, the defendants falsely state that Mr. Thiemann was a disgruntled former employee, and thus cannot be a suitable class representative. This statement is false. Mr. Thiemann is not a disgruntled former employee, yet defendants repeat it in the current opposition, despite the fact that these scurrilous accusations are definitively rebutted by affidavits attached to Doc. No. 74. Defendants apparently do not challenge the plaintiffs' evidence and do not submit any new—or correct—information on this point.

[3] Plaintiffs' counsel may have been improvident if they referred to the merger as singularly personal. In any event, it is the fact of the merger and not anyone's characterization of it, that controls. Here, there is no doubt that Provident solicited OHSL shares through a forcible conversion and falsely induced merger. The writers and the cases seem to use terms such as "personal" or "impersonal" when referring to mergers interchangeably. The substantive issue is whether mergers are covered by the 1933 and 1934 Securities Acts and whether certification is appropriate.

and Rule 10b-5. *See*, <u>Securities and Exchange Commission on National Securities Inc.</u>,

393 U.S. 453, 464-469, 89 S.Ct. 564, 21 L. Ed. 2d. 668 (1969). Nor is a merger which

is accomplished by a proxy statement as at bar – immune. Id.393 U.S. 453, 468-469, 89

S.Ct. 564, 21 L.Ed. ed 668. *Mader v. Armel* 402 F. 2d 158 (6th Cir. 1968), C.D. 1969 (89

S.Ct. 1188), similarly, §11 and 12 (2) of the 1933 Act are compatible with plaintiffs' case

and can all be alleged along with state law class claims, when arising from the very same

transaction. *See, In re Revco Litigation* 142 F.R.D. (R.D. Ohio, 1992); *In re Computer*

*Memories Securities Litigation*, 111 F.R.D. 675 (A.D. Cal. 1986). In *Mader, supra*, 402

F. 2d at 161, the Sixth Circuit squarely holds that mergers are embraced by all of the

fraud provisions of the Securities Fraud Acts and further held:

> This is not a case where some shareholders were treated differently.
> Proxy statements alleged to contain misrepresentations and material
> omissions were mailed to all shareholders. Questions of fact and law are
> therefore common to all of them. Using the language of the court in Vine,
> supra, it is a classic example of deception of an entire class, id 374 F.2d at
> 635.

Certainly, the court has heard sufficient argument that positive proof of reliance is

not required when transaction loss, materiality, causation and omissions are shown. *See,*

*Mills v. Electric Auto-Lite*, 396 U. S. 375, 384, 90 S.Ct., 616, 24 L. Ed. 2d 593 (1970);

*TSC Industries v. Northway*, 426 U.S. 438, 96 S.Ct. 2126, 48 L. Ed. 2d 757 (1976);

*Affiliated Ute v. U.S.*, 406 U.S. 128, 153, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972).

As stated in Bromberg, *Direct Personal Dealing*, 4:5, pp 4-31 to 4-32 as to Rule

10b-5:

> It is clear by now, as there could ever been much doubt, that a corporation
> issuing its won shares is a seller and one purchasing them is a buyer. An
> individual exchanging securities in one corporation for those in another is both a
> buyer and seller. Third persons, though not themselves buyers or sellers, may be
> within the Rule's sweeping language "any person, directly or indirectly… in
> connection with the purchase or sale of any security." Thus they are proper
> parties and may be held liable if they actively participate in the violation. They

can also be held liable as non-participations if they are in control of the violation (footnoted citations omitted).

## II.    SUMMARY OF PLAINTIFFS ARGUMENTS IN REPLY (REPLY) MEMORANDUM IN FURTHER SUPPORT OF CLASS CERTIFICATION[4]

This reply memorandum is intended to once again place before the court the

cogent reasons for Class Certification of the issues set out in Plaintiffs Consolidated

Amended Complaint (CAC) filed on December 31, 2003. The reasons and supporting

arguments are as follows:

1.    The action for securities fraud against Defendants who accomplished the fraud by misstatements and omission in the documents causing the merger of two corporations is particularly well suited for Class Certification.
      *See*, pp. 8 to 14 of Reply; *In re Cincinnati Gas & Electric Securities Litigation*, [1984-1985 Transfer Binder] Fed. Sec. L. Rep. ¶ 92,039 (S.D. Ohio, 1984); *Davis v. Avco*, 371 F. Supp. 782, 792 (N.D. Ohio, 1974), affd. 739 F.2d. 1057, 1062 (6th Cir., 1974)

2.    The Prerequisites of Fed. R. Cir. P. 23(A) are satisfied.
      *See*, pp. 9 to 14, reply; *Jordan v. Global Natural Resources*, 102 F.R.D. 45, 49 (S.D. Ohio, 1984).
      a.    Merits not to be considered, even though Plaintiffs have survived first round of dismissal motions.
            *See*, p. 9, reply *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *In re Revco Securities Litigation*, 142 F.R.D. 659, 662 (N.D. Ohio, 1992).

      b.    Commonality of Facts and/or Law exist thereby creating typicality.
            a.    *See*, pp. 10 to 13. Reply; *General Telephone v. Falcon*, 475 U.S. 147, 157, 102 S. Ct. 2364 12 L. Ed 740 (1982); *Basile v. Merrill Lynch*, 105 F.R.D. 508 (S. D. Ohio, 1985); *Levison v. Basic*, 786 F.2d. 741 (6th Cir., 1984) vac. on other grounds, 485 U.S. 224 (1988); *Fradkin v. Ernst*, 98 F.R.D. 478, 487 – 488 (1983).
      c.    Counsel for Plaintiffs are fully qualified and conflict free
            a.    *See*, pp. 21 to 25, Reply; *Bovee v. Coopers & Lybrand* 216 F.R.D. 596 (2003); *Cross v. Natl. Trust Life*, 553 F.2d 1026, 1031 (6th Cir., 1977); *Sinter v. General Motors*, 532 F.2d at 534.

---

[4] Submitted pursuant to Local Rule 7.2 (a) (3)

3. The requirements of Rule 23 (b)(3) are satisfied. *See*, 19 to 23, Reply.
    a. Commonality of Law or Fact question Predominate because of common nucleus of operative facts.
        a. *Thompson v. Midwest Foundation*, 111 F.R.D. 108, 111 (S.D. Ohio, 1984); *Davis v. Avco*, 371 F. Supp. 782, 791 (N.D. Ohio, 1974). See pp. 19 to 26. Reply; *In re Revco Sec. Litig.*, 142 F.R.D. 669 (N.D. Ohio); *Ingram v. Joe Conrad Chevrolet*, 90 F.R.D. 129, 133 (E.D. KY, 1982); *Stoller v. Baldwin – United Corp.*, [1985-1986 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶ 92,298 at 92,031 (S.D. Ohio, 1985).

## III.   <u>THE PLAINTIFFS</u>

The proposed class representatives seek to represent the approximately 900 former OHSL shareholders who held shares of OHSL at the time they received the materially false and misleading Registration Statements issued by Provident and exchanged their shares in OHSL for shares of Provident. Although it is clear that this entire class was defrauded *en masse* at one point in time with respect to the merger itself and the forcible conversion of their OHSL shares to materially overvalued PFGI shares; regardless of the label given by plaintiffs or defendants to this case, it is in form and substance a merger and exchange of shares. There were no open market purchases that are complained of; the case involves only the forced conversion on 3 December 1999 of OHSL stock into Provident stock pursuant to a narrow shareholder vote approving the merger clearly a common issue. There are no other relevant dates except the meger date as to the viability of the claims. There is no open-market fraud period. Wherein the timing of various purchases throughout the class period, and the different information in the marketplace at different times, is often an issue. Here, there is no issue because the only operative relevant date is 3 December 1999 and one set of documents. Nor is there any issue as to the pro or con nature of Theimann's or Meier's vote, it is the transaction loss and materiality that are at issue.

Similarly, the defendants claim that Thiemann greatly benefited from the **merger announcement** (Opposition at 8, Footnote 4) is entirely irrelevant. This case is not about the merger announcement on individual class members' profits or loss before or after the transaction documents, i.e., the Proxy Materials/Registration Statement. It is about the fraudulently induced merger, full disclosure, and the damages to the OHSL shareholders.

A.     **Plaintiffs are Typical of the Class**

Plaintiffs Walter W. Thiemann and Gary and Lisa Meier are adequate representatives and typical of the class, and both submit affidavits in this filing attesting to their qualifications, and affirming their choice of counsel. (*See*, Exhibits B and C). Their exchanges of OHSL for Provident shares are no different from the approximately 900 other OHSL shareholders they wish to represent and their concern for other class members is clear and distinct. Plainitff Thiemann has "hung in there" for several years, presented himself for deposition and is willing to be available for trial speaks volumes as to his representation. Mr. Thiemann has also participated in several conferences calls with Magistrate Judge Hogan. Mr. Thiemann has already been certified as the lead plaintiff, and has testified at length and been certified as a class representative only to be decertified because the certification decision was "improvidently granted." Plaintiffs respectfully submit that when all of the appropriate evidence is considered, the Court will certify the class and not split the class into those who voted for and against the merger. The law does not require such tampering with Rule 23.

The Meier plaintiffs have also been actively involved in the representation of the class since their involvement began in or about August of 2001. In addition to conferring with counsel on a fairly frequent basis, Gary Meier has attended the recent depositions of several of the former OHSL directors. Both Gary and Lisa Meier were also scheduled to

be deposed on 19 January 2004 before Magistrate Judge Hogan inexplicably cancelled the depositions, limiting the plaintiffs to affidavit evidence on their opening brief even though Plaintiffs carry the burden of proof as to Class Certification.

## IV.    ARGUMENT

### A.    This Case Is Ideally Suited For Class Action Treatment

Each of the approximately 900 former OHSL shareholders (*See* p. 16 of Joint Proxy Statement Exhibit 1 to CAC) were asked to approve the merger based on the materially false and misleading Proxy Materials/Registration Statement, which is now admittedly materially false and misleading due to the revelation of massive materially negative Provident restatements in 2003, and which relate back to the class period and are still resulting in negatives to Provident's financial statements, albeit in decreasing amounts.  The class period asserted herein is a logical, discrete, and very brief time period, thus eliminating any possible confusion.  Additionally, there can be no conflict or even issue with people who purchased at various times with different information.  Here, all of the former OHSL shareholders "purchased" their PFGI stock at exactly the same time (3 December 1999, the date the merger was consummated) based on the same information (the materially false and misleading Proxy Materials/Registration Statement) that was disseminated to OHSL shareholders at the same time (27 September 1999) and which – when ultimately considered in light of Provident's financial Restatements in 2003 caused an overnight 20% drop in Provident's share values.

As demonstrated below, this action is a classic and prototypical example of the type which required class action treatment.  It satisfies all the requirements of Rule 23(a) and additionally satisfies the requirements of Rule 23(b)(3).  Courts across the nation and in Ohio have recognized the utility of, and the necessity for, class actions in securities

fraud litigation such as at bar. *See, In re Cincinnati Gas & Electric Securities Litigation*, [1984-1985 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶92,039 (S.D. Ohio 1984) (Speigel, J.); *Davis v. Avco Corp.*, 371 F.Supp. 782, 792 (N.D. Ohio 1974), aff'd, 739 F.2d 1057, 1062 (6th Cir. 1974); *Fischer v. Wolfinbarger*, 55 R.R.D. 417 (S.D. N.Y. 1984):

> It is well settled that a class action is the best, if not the only practicable method of adjudicating a 10b-5 case involving a large number of relatively small transactions on a national securities exchange.

**B.    The Prerequisite of Fed. R. Civ. P. 23(A) Are Satisfied In This Case**

Fed. R. Civ. P. 23(a) provides:

> One or more member of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In the present litigation, each of the above prerequisites are met. In determining whether the requirements of Rule 23 have been met, courts have given it a broad, liberal interpretation. *Jordan v. Global Natural Resources, Inc.*, 102 F.R.D. 45, 49 (S.D. Ohio 1984). Although generally the Court is not to consider the merits of plaintiffs' claims in its determination of the propriety of class certification, *See, Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *In Re Revco Securities Litigation*, 142 F.R.D. 659, 662 (N.D. Ohio 1992), in this case the Court has already ruled that the plaintiffs have filed a meritorious complaint.

**1.    The Members Of The Class Are So Numerous That Joinder Is Impracticable**

8

In this case, there are approximately 900 shareholders, as the public filings of the defendants indicate (*See* Exhibit 1 to CAC, **p. 16**) and as this Court has previously held.

Former OHSL CEO also testified that OHSL had approximately 900 shareholders:

> Q    During 1999, Oak Hills had approximately 900 shareholders, correct?
> A    Yes, sir.

Testimony of former OHSL CEO and Board member Kenneth Hanauer, page 86, lines 10-12

900 shareholders make joinder impractical, and are sufficient to satisfy the numerosity requirement, as this court has previously held in the Lead Plaintiff Order:

> In this case, the proposed class has approximately 900 members.  <u>See,</u> Complaint ¶ 26.  Therefore, joinder of all class members is impracticable. Plaintiff's claims and those of the proposed class arise from a common nucleus of facts and, therefore, Plaintiff and the class share common questions of fact and law.

(Doc. No. 33 at 3)

That defendants challenge to numerosity, **in light of the Court's prior Order and** their own statements in public documents, borders on contempt.

## 2.    <u>There Are Questions Of Law Or Fact Common To The Class</u>

The United States Supreme Court has observed that:

> The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.  Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest...

*General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S. Ct. 2364, 2370 n. 13, 12 L.Ed.2d 740 (1982).

Fed. R. Civ. P. 23(a)(2) requires that there must be "questions of law or fact common to the class."  A single issue common to all class members will suffice.  *See,*

9

*Shamberg v. Ahlstrom*, 111 F.R.D. 689 (D.N.J. 1986). There are many questions of law

or fact common to the class in this litigation including – *inter alia* – the requirements of

Reliance or Non-Reliance. The CAC sets out the common nucleus of wrongful conduct

which is the hallmark of a securities fraud action under Rule 23. Among the questions of

law and/or fact common the members of the Class are:

 a)  Whether the federal securities laws (§10b of the 1934 Securities Exchange
   Act and rule 10b-5 thereunder, §§11 and 12 (2) of the 1933 Act as to
   Registration Statements and offers of sale or sale of securities and §14 of the
   1934 Act as to the Proxy Statements as well as the OHIO state statute
   prohibiting securities fraud, *See*, CAC, ¶¶ 66 to 82) were violated by
   defendants' acts all alleged herein in the CAC;

 b)  Whether the public announcements, releases, and statements disseminated to
   the investing public during the class period omitted or misrepresented material
   facts about the true financial condition of Provident (including, but not limited
   to, the revenue and net income of the company);

 c)  Whether the defendants acted willfully or recklessly in omitting to state or
   misrepresenting material facts;

 d)  Whether the market price of Provident securities during the class period was
   artificially inflated at the time of the OHSL merger due to the non-disclosure
   or misrepresentations complained of herein;

 e)  Whether the public accounting firm of Ernst & Young violated any of the
   provisions of the 1933 or 1934 Act by preparing false financials;

 f)  Whether the members of the class have sustained damage and, if so, what is
   the proper measure of damages.

   The forgoing issues of law and/or fact are the core questions of plaintiffs' CAC,

and these issues are common to all member of the Class. Courts in this Circuit have

consistently held that Rule 23(a)(2) must be construed liberally, and find that common

questions exist whenever the action arises from a common nucleus of operative facts all

pointing toward violations of the same legal interests. This is not a novel concept.

*Thompson v. Midwest Foundation Independent Physicians Association*, 117 F.R.D. 108,

111 (S.D. Ohio 1987); *See*, *Jordan v. Global Natural Resources, Inc.*, 102 F.R.D. at 49;

*Davis v. Avco Corp.*, 371 F. Supp. 782, 792 (N.D. Ohio 1974); *Consumers Power Co. Secs. Litig., In re,* 105 F.R. D. 583 (E.D. Mich., 1985); *Stoller v. Baldwin-United Corp.,* [1985-1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶92,298 (S.D. Ohio, 1985). In this case, virtually each and every material question of law and fact which make up the core of the plaintiffs' allegations are common to the members of the class and can be proven by the same body of evidence which will give rise to the same legal duties. This action involves "a classic example of deception of an entire class." *Mader v. Armel*, 402 F2d 158, 161 (6th Cir. 1068), <u>cert.</u> <u>denied</u>, 349 U.S. 930 (1969).

3.     <u>**The Class Representatives' Claims Are Typical Of Those Of The Members Of The Class They Seek To Represent**</u>

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." As noted in *Basile v. Merrill Lynch, Pierce, Fenner & Smith*, 105 F.R.D. at 508 (S.D. Ohio, 1985). "Typicality should be found if the claims arise from the same set of operative facts." Further,

> In the area of securities class actions, typicality may be met when the named plaintiff and class members have sustained monetary injury from the defendant's conduct and seek to recover damages for losses resulting from misrepresentations and omissions which affect all class members. In securities fraud cases, the plaintiff must show the existence of a material omission or misrepresentation. The majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met. Under this view, the typicality prerequisite maybe satisfied through varying fact patterns may underlie individual claims,

H. Newberg & Alba Conte, *Newberg on Class Actions*, Section 22.17 at pages 61-63 (Third Edition 1995 Cumulative Supplement).

The main point, which bears repetition and which relates to both commonality and typicality, is that each class member received the materially false and misleading Proxy Materials/Registration Statement.  The issue is whether the defendants concealed and misrepresented material facts regarding the financial condition of Provident, particularly with respect to Provident's profits and losses, whether intentionally or unintentionally, requiring the application of the 1933 and 1934 Act anti-fraud provisions.

Additionally, there is no conflict or antagonism over any legal or factual issue between the proposed class representative and the absent members of the class.  They were all damaged in the same manner based on the same document which each class member received at about the same time—**the materially false and misleading Proxy Materials/Registration Statement that each class member received**--thus creating common liability issues.  Thus, the typicality requirement has been fulfilled.  *See*, *Levinson v. Basic*, 786 F.2d 741 (6th Cir., 1984) vacated on other grounds, 485 U.S. 224 (1988); *Fradkin v. Ernst*, 98 F.R.D. 478 (1983) at pp. 487-488.

4.    **The Class Representatives Will Fairly And Adequately Protect The Interests Of the Class**

Rule 23(a)(4) of the Fed. Rules of Civ. Pro. requires the court to ensure that "the representative parties will fairly and adequately protect the interests of the class."  Here, the Court has already done that in part by determining that Walter W. Thiemann is an appropriate lead plaintiff (but that improvidence required another look), and that his choice of lead counsel should be respected.  Defendants always find themselves in an impossible position on the adequacy matter as they complain that plaintiffs are inadequate – which suggests that they – the defendants – are truly interested in the qualification of the plaintiffs; in fact, they seek no class, no issue, no damages.  Surely the Court sees this point by now.  No credence should be given to such an argument that

would find inadequate the firm that has litigated this case for 42 months, litigated a

predecessor action for almost a year, has hired a team of experts and produced expert

reports, and is by far, the most knowledgeable by far about the unique facts and

circumstances of this case[5].

## V.  CLASS COUNSEL IS WELL-QUALIFIED TO REPRESENT THE CLASS

### 1. The Objective Qualifications of the Mesh Firm are Beyond Question

As pointed out in the opening brief (Doc. No. 233), it is truly unfortunate that the

defendants are challenging the qualifications of plaintiffs' counsel at all, let alone with

the active encouragement of the Court evidenced by the Court's opprobrium directed to

plaintiffs' counsel throughout the record.  In the *Bovee, et al. v. Coopers & Lybrand, et*

*al.*, 216 F.R.D. 596, a Judge in this District has recently found that plaintiffs counsel are

well-qualified to represent the class in a case seeking more than $120 million in damages.

Significantly, the defense counsel there, some of the most prominent in this District and

across the country, chose not to contest the adequacy of counsel; not has plaintiffs'

counsel – after 40 years of practice in this field – ever been so maligned.  If they want a

fight, they will get one.  Of course in *Bovee*, none of the defense firms had any role in

---

[5] In their various and sundry *ad hominem* attacks on plaintiffs and their counsel that have
continued over the years and intensified recently, the KMK defendants have repeatedly
called counsel inadequate and worse. Surely if they were acting rationally, they would be
happy to have "inadequate" counsel, over whom they could run roughshod, yet the Court
continues to approve defendants rhetoric while regularly chastising plaintiffs' counsel.  It
should be further noted that law firms who write proxies and registration statements are
considered "experts" under §11 of the 1933 Act and Reg. S-K, Item 601(6)(5)
promulgated thereunder.
    Despite the fact that the plaintiffs are battling numerous large firms with virtually
unlimited resources, the record on adequacy speaks for itself.  At the end of the day,
plaintiffs' counsel has achieved a commendable result thus far, and the single-minded
pursuit of attacking plaintiffs counsel to the exclusion of other issues shows that the
defendants have no viable defenses to the allegations in the CAC.  Since the case has
been pending, all of the defendants combined have taken a single deposition — Walter W.
Thiemann.  Yet they insisted on delay, delay, delay.   This shows that their best and only
strategy is to continue to attack plaintiffs and their counsel.

writing the operative documents, no lawyers from these firms will be witnesses in the case, nor are these law firms acting simultaneously in the dual conflicting roles of defense counsel and defendants

## 2. The Results So Far Speak for Themselves

The facts of this litigation speak for themselves. Counsel, who have had extensive experience in securities class actions, (*See*, Exhibit 1 to the Mesh Declaration attached to Doc. No. 233) have tenaciously pursued every avenue required to bring this case to this point. Tens of thousands of dollars have been expended in the process and thousands of man hours have been spent. It is respectfully submitted that the requirements of this circuit as set out in *In re American Med. Sys. Inc.*, 75 F.3d 1069, 1083 (6th Cir.1996) have been met, in spite of the venality with which defendants view counsel and in spite of the aggressiveness of plaintiffs' counsel which this court has called "errant" or "unusual." It is still a job well done against dozens of defense counsel who are not ashamed to play the bully and prefer that role to the truly independent practice of law – but the case proceeds towards trial. To disqualify plaintiffs' counsel because of the size of their firm or their methods of prosecution against dozens of well-staffed defense lawyers, many of whom have a conflict and thus an interest in not cooperating at all—as has been the case for years—would do the gravest harm to the rights of the class members at this late date.

In determining when the requirements of Fed. R. Civ. P. 23(a)(4), which provide for adequacy of representation for absent class members, are met, this circuit has generally inquired into the following two matters: (1) whether plaintiffs' attorneys are qualified, experiences, and generally able to conduct the proposed litigation; and (2) whether the representatives' interests are in common with, and not antagonistic to, those

14

of the absent class members. *Cross v. National Trust Life Insurance Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977); *Sinter v. General Motors Corp.*, 532 F.2d at 524.

The case-law dealing with the adequacy requirement of rule 23(a)(4) places primary emphasis on the skill and experience of plaintiffs' counsel. Thus, in *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2nd Cir. 1968), the Court said:

> What are the ingredients that enable one to be termed "an adequate representative of the class?" To be sure, an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class.

In arguing as to the adequacy of class counsel, it is déjà vu all over again. The results of the case speak for themselves. Progress has been made. Even the Court has acknowledged "technical competence." Plaintiffs' counsel are experienced in class actions and complex litigation and have participated in dozens of class actions and have many reported cases. Class counsel has already taken the initiative in the case at bar, by filing a class action complaint, not once, not twice, but now three times in the form of the CAC, carefully analyzing the case and obtaining the necessary documentation fro the plaintiffs. Class counsel has also obtained preliminary opinions on the issues of liability and damages, on the requirement of plain language in the context of public disclosures, and more recently accounting and auditing (especially restatements) issues. They have retained experienced, competent experts in these areas and their reports have been submitted to the Court pursuant to the Court's earlier orders. The defendants have yet to complete their submissions. In summary, even before the CAC was filed pursuant to Court Order on 31 December 2003 class counsel has been acting with extreme

15

professional care in deciding who to prosecute and how to conduct this litigation[6]. More recently, plaintiffs have filed a substantial motion for summary judgment (Doc. No. 249) based on the 2003 restatements against Provident. This document does not "swing wildly," but focuses, with laser-like precision, on a single (but massive) issue in the case against a single defendant, which has admittedly defrauded class members out of tens of millions of dollars.

### 3. Mr. Brautigam is Well-Qualified to Represent the Class

It is perhaps indicative of how this case has disintegrated into a series of *ad hominem* attacks on Messrs. Mesh, Brautigam, Thiemann, and Meier, and class member Janet Nolte[7] that Mr. Brautigam's status as a non-member of the Ohio bar—as opposed to his qualifications--has perhaps become the definitive issue on class certification, and thus whether the approximately 900 former OHSL shareholders who have been defrauded by the defendants, (including defense counsel KMK) will be able to have counsel of their choice to represent them and then class. The irony of course, is that KMK touted the importance of the parties being able to choose their own counsel in their opposition to the

---

[6] Class counsel is aware of the Court's view that one of the attorneys is like a boxer swinging wildly, language, which the defendants have included in their opposition brief. First, class counsel has moved for leave to submit a motion for reconsideration of that Order, because counsel respectfully submits that it is based on a series of mistakes, which will be addressed and corrected should the Court grant the motion for leave. Second, counsel is uncertain as to why they are being criticized for conducting diligent discovery, uncovering evidence that implicates others, (not only the KMK firm), and then criticized for filing meritorious claims against the culpable individuals and entities. Such conduct should be praised, not criticized, especially since plaintiffs and their counsel have erred on the side of caution in not making any allegations against anyone where there was not virtually overwhelming evidence of wrongdoing.

[7] Although it is true that Janet Nolte, like the entire OHSL Board, did not read the entire Proxy Materials/Registration Statement, there is no such requirement in the law; she did read enough to learn of the material misrepresentations regarding the lack of unanimity of the OHSL Board. The Herron resignation was, of course, an omission, and the massive restatements were not known at the time Ms. Nolte was deposed in a different case in a different court in a different century alleging different issues. For a more detailed discussion, See Exhibit A, pages 7 to 8.

motion to disqualify, though they repeatedly and falsely stated that the former OHSL directors had specifically selected KMK to represent them. In fact, at least with respect to the former OHSL directors, most if not all, believe that counsel was appointed for them by the insurance company, and they have had no role in the selection and retention of counsel, and no choice in the matter. Indeed, some still do not know that they are defendants and have no idea that their personal assets are at risk.

There is no doubt that Mr. Brautigam is qualified to appear in the Courts of the United States, as this Court has previously held. (*See*, Doc. No. 28). Mr. Brautigam is well-qualified in that he is a member of the Bar of the states of New York, Connecticut, Florida, and Kentucky. He is a member of various District Courts throughout the United States, including the Northern District of Ohio and the Eastern District of Kentucky. He is a member of the Second Circuit, Third Circuit, Sixth Circuit (before which he has repeatedly argued), and Seventh Circuit. Mr. Brautigam is a member of the Bar of the United States Supreme Court.

With respect to the Southern District of Ohio, Mr. Brautigam meets the published requirements of being appointed a United States Magistrate Judge. The requirements for being appointed a United States Magistrate Judge in relevant part are that the applicant must

> be, and have been for at least five (5) years, a member in good standing of the bar of the highest court in a state, the District of Columbia, the Commonwealth of Puerto Rico, or the Virgin Islands of the United States, and have been engaged in the active practice of law for a period of at least five (5) years (with some substitutes authorized);

(*See*, Public Announcement of Appointment of a United States Magistrate Judge, attached as Exhibit D.)

Mr. Brautigam has been engaged in the active practice of law for almost five years in this case alone. The requirements say nothing about admittance to the bar of the State of Ohio, because a United States Magistrate Judge does not preside in the Courts of the State of Ohio, just as a Judge who is a member of the Court of Appeals for the Sixth Circuit need not be a member of the Ohio bar. Undoubtedly some are not, though they may be based in Cincinnati. Similarly, Mr. Brautigam has sought and has been granted permission to practice in this Court in this case, an issue that was decided 37 months ago[8].

What the defendants cannot accept is that Mr. Brautigam has refused to be intimidated by the bullying tactics that he has been repeatedly subjected to, where the defendants seem to expect less vigorous representation because of Mr. Brautigam's *pro hac vice* status. Because Mr. Brautigam and the Mesh firm will not represent the class half-heartedly as though they have something to be ashamed of, the defendants have collectively struck back with a fury, making Mr. Brautigam the main focus of the entire case. Truly this confuses the ridiculous with the sublime. Mr. Brautigam is able to and, in conjunction with Gene Mesh, will take any appeal to the Sixth Circuit and perhaps the United States Supreme Court, but the defendants, with the seeming encouragement of the Court, attempt to make it appear that Mr. Brautigam's presence in this Federal Court is

---

[8] It is ironic that plaintiffs' counsel has been criticized for what has been characterized for re-litigating the same issue, while the defendants have been attempting to re-litigate this issue since the *pro hac vice* decision was granted. Virtually every document filed by the KMK firm attempts to re-litigate this issue to some extent. These baseless attacks almost exclusively made by the KMK firm, counsel that has been properly disqualified and is now a defendant in the litigation, have essentially focused on the issue of "politeness," although no specific example of "impoliteness" has been provided because none exists. Clearly KMK feels that it is impolite to sue a large, Cincinnati based firm, regardless of the extent of their wrongdoing. That plainitffs' counsel is willing to do so is really a powerful argument of their qualifications to represent the class and should not be viewed by the court as a personal vendetta in spite of KMK's all consuming disapproval.

unwelcome. The Court permitted Mr. Brautigam to appear *pro hac vice*, permitted Mr.

Brautigam to represent the class that was certified for more than 27 months before its

decertification Order and to revoke same approximately 15 months prior to trial would be

a disaster to the OHSL shareholder class – exactly what the defendants wish.

A.    **PLAINTIFFS MEET ALL THE REQUIREMENTS OF FED. R. CIV. P. 23(b)(3)**

In order to certify a class action, this court must find that the action, in addition to

meeting the prerequisites of Fed. R. Civ. P. 23(a), also satisfies one of the conditions of

subdivision (b).  Here, the conditions of Fed. R. Civ. P. 23(b)(3) are satisfied.  That rule

provides, in pertinent part:

> CLASS ACTIONS MAINTAINABLE.  An action may be
> maintained as a class action if the prerequisite of subdivision (A) are
> satisfied, and in addition:…(3) the court finds that the question of law or
> fact common to the members of the class predominate over any questions
> affecting only individual members, and that a class action is superior to
> other available methods for the fair and efficient adjudication of the
> controversy.

### 1.    Common Questions Of Law Or Fact Predominate Over Individual Questions

Plaintiffs herein assert the same legal claims and will use the same body of

evidence to prove them as they arise out of a common nucleus of operative facts.

*Thompson v. Midwest Foundation*, 117 F.R.D. 108, 111 (S.D. Ohio, 1984); *Davis

v. Avco*, 371 F.Supp. 782, 791 (N.D. Ohio, 1974).  ("whatever may be individual

variations in the practice which plaintiffs claims took place, this court feels that

the heart of this complaint is a common nucleus of operative facts all pointing

toward violations of the same legal interests.")  There is no uniqueness in the

parameters of each plaintiff who all seek to represent just one class.

### 2. Predominance; Commonality; Typicality; Rule 10b-5 Claims Should Be Certified

The Court need only determine that Mr. Thiemann and the Meiers were holders of OHSL shares at the time of the impact of the 1999 Proxy Material/Registration statement in order to qualify them as a Class Representatives.  The centerpiece of defendants' argument on this issue is that because plaintiff's Rule 10b-5 claim of the Securities Exchange Act (the fifth claim in plaintiff's eleven claim complaint) contains reliance as one of its elements, common issues will not predominate.  There is no mention of reliance in §10 of the 1934 Act or Rule 10b-5.  Further the Supreme Court set out the test of 10b materiality as the substitute for positive reliance in a class case or omissions case in *Basic v. Levinson*, 485 U.S. 224, 231-2, 108 S. Ct. 978, 99 L. Ed. 2d. 194.  It is the same as Sec. 11.  Moreover, in making this argument, defendants ignore the fact that the three claims in plaintiff's complaint [for violations of Section 11 and 12(2) of the Securities Act and Section 14 of the Securities Exchange Act) (pp. 66-73 of CAC)] are strict liability claims based upon full disclosure requirements, transaction loss and materiality, where, absent certain defenses such as due diligence, defendants are strictly liable for misleading and untrue statements made in a proxy or registration statement or in the offer of sale or sale of securities.  *See, Wright v. National Warranty Co.*, 953 F.2d 256, 262 (6th Cir. 1992); *Hines v. ESC Strategic Funds, Inc.*, 1999 Fed. Sec. L. Rep. (CCH) ¶ 90,684 (M.D. Tenn.); *Poughkeepsie Sav. Bk., FSB v. Morash*, 1989 Fed. Sec. L. Rep (CCH) ¶ 94,422 (S.D.N.Y.).  Class Certification is the norm in such cases.

As such, it is clear that even if the determination of reliance were required for one of plaintiff's claims, that reliance in any form or by any other name would be a common issue that would predominate.  *See, In re Cardizem CD Antitrust Litig.*, 2001 U.S. Dist. LEXIS 4521 * 27 (E.D. Mich. March 14, 2001) ("a claim will meet the predominance

requirement where there exists evidence which proves or disproves an element on a

simultaneous class-wide basis, since such proof obviates the need to examine each class

member's individual position"); *Lozada v. Dale Baker Oldsmobile, Inc*, 197 F.R.D. 321,

332 (W.D. Mich. 2000) (rejecting defendants' argument that individual issues

predominate and holding that the purported "distinctions do not affect the centrality of

the principal legal questions"); *Iron Workers Local Union No. 17 Ins. Fund v. Phillip

Morris, Inc.*, 182 F.R.D. 523, 540 (N.D. Ohio 1998) ("[i]n this case [plaintiffs allege] that

defendants engaged in a common course of misrepresentations designed to affect all

plaintiffs in a like fashion ...[t]hese allegations sufficiently establish [the predominance

of] issues common to the class"); *In re Revco Sec. Litig.*, 142 F.R.D. 659, 662 (N.D. Ohio

1992) ("predominance is  usually decided on the question of liability, and if the liability

issue is common to the class, common issues are held to predominate over individual

questions").

     Misleading statements will defraud purchasers of stock even if the purchasers do

not directly rely on the misstatements.  The casual connection between the defendants'

fraud and the plaintiff's purchase of stock in such a case as at bar is no less significant

than in a case of direct reliance on misstatements"); *In re Revco Sec. Litig.*, 142 F.R.D. at

664-65 ("In certain instances, courts have recognized the existence of rebuttable

presumptions of reliance... In *Affiliated Ute Citizens v. United States*, 406 U.S. 128

(1972) the Court determined that individual proof of reliance can be dispensed with in

omissions cases if the omissions are material...whether defendants can refute a

presumption of reliance is speculative, goes to the merits of the litigation, and does not

defeat class certification"); *In re Rospatch Sec. Litig.*, 1991 Fed. Sec. L. Rep. (CCH)

¶96,160 (W.D. Mich.)

Mr. Thiemann's testimony in regard to "reliance" or "non-reliance" on the tainted Proxy Material/Registration Statement as to 10b [or 14(a) claims] claims is not the class issue; nor is the fact that Mr. Thiemann made a "profit" on the sale of OHSL shares by selling some of his holdings as long as he held at the time of the fraud moment, i.e. when the merger was accomplished. The same can be said for the Meiers non-action. <u>The issues of reliance or non-reliance</u> are class issues and should be certified for class wide treatment. *See*, *Korn v. Franchard Corp.*, 456 F. 2d 1206, 1210, Fed. Sec. L. Rep. (CCH) ¶ 93397 (2d. Cir., 1972).

And at all events, the central issue with respect to Rule 10b-5 claims, as with plaintiff's other five federal claims, is whether false and misleading statements were made. Thus, even if the rule 10b-5 claim were the only claim plaintiff had brought, and even if an individualized showing of reliance were necessary, common issues would predominate. *See*, *Jordan v. Global Natural Resources, Inc.* 102 F.R.D. 45, 51 (S.D. Ohio 1984) (rejecting arguments similar to those made by defendants here that issues of individual reliance should defeat class certification);

> This is not a case where some shareholders
> were treated differently. Proxy statements
> alleged to contain misrepresentations and material
> omissions were mailed to all shareholders. Questions
> of fact and law are therefore common to all of them.
> using the language of the court in Vine, it is a classic
> Example of deception of an entire class, id. 374 F.2d at 635.

*Mader v. Armel*, 402 F. 2d 158 (Sixth Cir. 1968) at 161.

The correct and only interpretation of the law in a direct, non-open market merger case such as at bar does not require actual reliance on false Registration materials but permits reliance to be presumed from the loss caused by the transaction at bar. (*See*, Report of Plaintiffs' damages expert as to damages ascertainable at the time of the

22

Registration and Proxy issuance and affidavit of Plaintiffs' damage expert, attached as Exhibit 9 to Plaintiffs' Motion for Summary Judgment relating to the Restatement Issues, Doc. No. 249).

The District Court, in its decertification order, has mistaken this case for an open market, fraud-on-the-market, securities case requiring proof of an efficient market for the securities in issue thereby permitting in such a matter the presumption of reliance. At bar, the claims of the 1934 Act, §10 and rule 10b-5 (as well as all of the Federal and State claims) were invoked in a non-open-market merger case involving a direct, face-to-face Proxy Registration case. The only "market" requirement in this case is that the securities involved traded on a National Securities Exchange like the NASDAQ. The "efficient market" requirement is not present herein as there is no open-market fraud. There is a direct <u>MERGER</u> fraud upon OHSL shareholders through the medium of a single Proxy Materials/Registration Statement.

The Supreme Court held at 459 U.S. 382, 387, 103 S. Ct. 683, 74 L. Ed. 2d. 548 that "the availability of an express remedy under §11 of the 1933 Act does not preclude defrauded purchasers of registered securities from maintaining an action under §10(b) of the 1934 Act." This language applies to this direct, one corporation on one corporation type of merger transaction effectuated by the use of false Proxy Materials and Registration Statements.

### 3. Amounts of Damages are Not Class Issues

Defendants falsely claim that the plaintiffs have not suffered damage. The only requirement for Mr. Theimann is that he held shares of OHSL and exchanged them for overvalued Provident shares at the time of the merger, pursuant to a false Proxy and Registration Statement giving rise to claims under §§10 and 14 of the 1934 Act. The

transaction losses are made clear by the Schoenblum affidavit, attached as Exhibit D to

Doc. No. 74.  Additionally, defendants also claim that plaintiff Thiemann is somehow

deficient with his "refusal" to answer damages questions in discovery.  This, too, is false,

in that this information was provided to defendants on 13 February 2002.  (*See*, Doc. No.

74 at 6, Footnote 2).

Counsel would be hard pressed to improve upon this textual statement of their

position:

> Typicality refers to the nature of the claim or defense of the class
> representative; and not to the specifics facts from which it arose or
> the relief sought or defended against.  Thus, with respect to
> plaintiff class actions, for example, differences in the amount of
> damage, the size or manner of purchase, the nature of the
> purchaser and even the representation influencing the purchase will
> not render a claim atypical in most securities cases.

*Newberg on Class Actions*, (3rd Ed), §22.18, pp. 22-66 to 22-67.

While the cases which support this statement are legion, plaintiffs will be specific.

Variances in times of purchase or costs or profits of OHSL shares thereof do not

impact typicality as long as plaintiffs intend to rely on the same proof to establish

a common course of conduct or common scheme to defraud.  At bar, the

transaction causing the damage happened at one moment – there are no variances

in times or proofs. Additionally, all former OHSL shareholders were harmed in

exactly the same way in the sense that each was harmed by having the

fraudulently induced merger approved by a razor-thin margin (customarily the

votes in favor of such mergers are overwhelming) eliminating OHSL as a

business and forcibly converting OHSL shares into materially overvalued PFGI

shares.  Are those whose proxy vote were for or against the merger because of the

material omissions and misrepresentations therein allocated different rights?  The answer is simple: the proxy votes were all nullities.

Thus, the class action device is not only a superior method, it is the only feasible method where, as here, those who have been injured "are in a poor position to seek legal redress, wither because they do not know enough or, because such redress is disproportionately expensive." *Dolgow v. Anderson*, 43 F.R.D. 472, 484-85 (E.D.N.Y. 1968), citing Kalven & Rosenfield, *The Contemporary Function of the Class Suit*, 8 U.  Chi. L. Rev. 684, 686 (1941).

The issues as to the defendant's liability – whether defendants misrepresented or omitted facts as alleged in the CAC (*See*, ¶¶ 26 to 66), whether those facts are material, and whether the defendants acted with the requisite state of mind – are common to all members of the Class.  The common issues in this action predominate over individual issues and will be the subject of one uniform body of evidence at trial.  There can be no doubt that the predominating issue in this litigation will be defendant's fraudulent Proxy Materials/Registration Statement—**which all class members received and which contained Provident's materially false and misleading financial statements**--induced investors to trade OHSL shares, for Provident shares at inflated prices through the issuance of false and misleading statements, including Provident's admittedly materially false financial statements.  (*See*, ¶¶ 49 to 66 for summaries of material misstatements and omission of material facts).  Should plaintiffs prevail and prove defendants' liability under the securities laws they will establish the basis not only for their individual claims, but for the claims of all class members as well.  The appropriateness of class certification under such circumstances is clear.

25

The predominance test is not a mathematical formula.  As the late Herbert

Newberg the noted author of the leading class action treatise has noted:

> The predominance test is not a numerical test and does not require
> the court to add up the common issues and the individual issues
> and determine which is greater.  It is generally settled that proof of
> the existence of a misstatement or omission with scienter and
> materiality presents questions common to a class.  Reliance,
> causation and damages issues may be amenable to common class
> showing or may require individual proofs, depending on the
> particular underlying facts involved.  In most cases, common
> issues of liability are deemed to predominate even when reliance
> and damages issues must be individually proved.

H. Newberg & Alba Conte, *Newberg on Class Actions*, Section 22.48 at pages

190-192 (Third Edition, 1995 Cumulative Supplement).

### 4.   The Class Action Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of The Controversy

Fed. R. Civ. P. 23(b)(3) also requires a determination that a "class action is superior to

other available methods for the fair and efficient adjudication of the controversy."  In

making that determination, the Court is instructed to consider:

> (A) the interests of members of the class in individually controlling
> the prosecution...of separate actions: (B) the extent and nature of
> any litigation concerning the controversy already commenced
> by...members of the class; (C) the desirability...of concentrating
> the litigation of the claims in a particular forum; and (D) the
> difficulties likely to be encountered in the management of a class
> action.

As discussed above, the class action form is vital to the effective prosecution of securities

fraud actions.  *In re Revco Securities Litigation*, 142 F.R.D. at 669.

Clearly, "the interests of members of the class in individually controlling the

prosecution...of separate actions" is minimal in the present litigation.  The great majority

of members of the Class are likely to be small investors for whom the prosecution of an

individual action for damages would be impractical.  The costs and expenses of such

individual actions, when weighed against the individual recoveries obtainable, would be prohibitive.

As the U.S. District Court in the Eastern District of Kentucky has observed in a Truth in Lending Act case, failure to certify the class would leave a large number of possible plaintiffs, who have been harmed by the defendants' conduct, without an available legal or equitable remedy.  For these thousands, it is the class action and due process or nothing:

> The only plausible alternative to a class action by which this dispute could be resolved is to require that claimants pursue individual actions.  This would require a massive duplication of effort.  The gravamen of every complaint would be the same, violations of the TILA.  The named plaintiff is an adequate class representative.  There does not appear to be any valid interest in the conduct of separate lawsuits.  See Fed.R.Civ.P. 23(b)(A).  A class action is both fairer and more efficient than individual suites.  The primary analysis is of the predominance of common over individual questions and the superiority of class action treatment.  The conclusions reached by this analysis, however, may be confirmed by a consideration of the four factors enumerated in rule 23(b)(3).  The Court notes that this list is not exhaustive.  Proposed Rules of Civil Procedure, 39 F.R.D. 69, 104 (1966); *Kamm v. California City Development Company*, 509 F.2d 205 (9th Cir. 1975). (Emphasis added)

*Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 133 (E.D. Kentucky 1982).

For the foregoing reasons, the appropriateness of class certification is clear.

In addition, the four factors specified in Rule 23(b)(3) favor class certification in this case.  First, more than four years after the merger, there is no indication that members of the class would prefer to individually control the prosecution of their claims.  If some do, they will have the opportunity to opt out.  Secondly, it is presumed that any litigation will be transferred to this Court and consolidated with this litigation.  Third, it is obviously desirable to concentrate the

litigation on one forum. Inconsistent adjudications will be avoided promoting

fairness and efficiency. Fourth, this case presents no unusual difficulties in

management of the class action or notice to the class, and the proposed class and

its members are clearly identifiable from the trading records in defendants

possession. Class counsel and the courts have handled numerous similar actions

and the appropriate procedures and techniques for the management of such suits

are well established. Accordingly, plaintiffs have met the requirements of Rules

23(a) and 23(b)(3) and this Court should certify the proposed class defined as

follows:

> All persons, other than the corporate defendants,
> Their parents, subsidiaries and affiliates, their
> Officers and directors, the Individual Defendants
> And members of their immediate families, as well
> As any entity in which any defendant has a controlling
> Interest, and the legal representative, heirs, successors
> Or assigns of the defendants) who received the materially
> False and misleading Proxy Materials/Registration Statement
> On or about September 27, 1999, which caused the vote
> Approving the merger to be approved by a razor-thin
> Margin resulting in the merger on December 3, 1999 of
> OHSL and Provident.

As Senior Judge Porter observed in a securities class action in this District:

> Finally, we conclude that proceeding with this case as a class action "is
> superior to other available methods for the fair and efficient adjudication
> of the controversy," Rule 23(b)(3). Class Certification is clearly the most
> fair procedure for the plaintiffs, as the class will be represented by counsel
> with substantial experience in litigation of class action securities cases,
> and the unnamed class members will be relieved of the obvious burden
> attendant to filing their own lawsuits.

*Stoller v. Baldwin-United Corporation*, [1985-1986 Transfer Binder]
Fed.Sec.L.Rep. (CCH) ¶92,298 AT 92,031 (S.D. Ohio 1985).

**5. The Procedural Posture of the Case Heavily Favors Class Certification**

The obvious reality is that the only way that the case can proceed in an economically rational manner is if it proceeds as a class action. This is especially true, given the bizarre procedural posture of the case.

The result is that the lead plaintiff and his counsel have been actively prosecuting this case for forty-two months, and before that plaintiffs' counsel prosecuted another merger-related case for almost a year. The detailed factual and legal knowledge of the case obtained over the years is simply irreplaceable. No other attorney or firm can come into this case and litigate it effectively at this junction, and no other counsel has sought, in the almost five years since the merger, to represent the OHSL shareholders. The exceedingly clear reality is that the class **must** be certified, or almost 900 former OHSL shareholders, who have been significantly harmed by the merger, will have no remedy.

**VI.    CONCLUSION**

For the forgoing reasons, Plaintiffs respectfully request that this Court grant their motion for an order permitting this Action to be maintained as a class action.

Gene Mesh (OH Bar # 0002076)
Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (fax)

*Attorneys for Plaintiffs and the
Putative Class*

29

# CERTIFICATE OF SERVICE

I hereby certified that a copy of the foregoing Memorandum and Exhibits in further

Support of Class Certification was served on this, the 3nd day of February, 2004.

## BY HAND DELIVERY

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202-3752

J. Michael Debbeler
John B. Pinney, Esq.
Graydon, Head & Ritchey
511 Walnut Street, Suite 1900
Fifth Third Center
P.O. Box 6464
Cincinnati, OH 45202-3157

Michael R. Barrett
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, OH 45202

## BY U.S. MAIL

John W. Hust
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, OH 45249

James E. Gauch
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

Stephanie A. Hite