# EXHIBIT A



UNITED STATES DISTRICT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Walter W. Thiemann, <br> on behalf of himself and of <br> all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> OHSL Financial Corporation, et al. <br><br> Defendants. | Case No. C-1-00-793 <br><br> Judge Sandra S. Beckwith <br><br> Magistrate Judge Hogan |

**FILED**

FEB 1 9 2002

KENNETH J. MURPHY, Clerk
CINCINNATI, OHIO

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DECERTIFY THE CLASS

### I. INTRODUCTION

In yet another desperate attempt to derail a routine class certification order in a garden variety securities fraud case, the OHSL and Provident defendants have filed another frivolous motion to decertify the class heretofore certified by this Court pursuant to Federal Rule of Civil Procedure 23 on September 12, 2001. In chronological order, these defendants have appealed to the United States Court of Appeals for the Sixth Circuit, filed a motion for Reconsideration before this Court, and now filed a motion to decertify the class[1]. This is, of course, in addition to their previous filings

---

[1] Ironically, the law firm that has filed these *seriatim* motions is now a defendant in this action, due to the sworn testimony received since the original class certification. Plaintiffs' First Amended Complaint was filed on February 4, 2002 naming three additional defendants: Charles Hertlein of defendant Dinsmore & Shohl, Keating, Muething & Klekamp, P.L.L ("KMK"), and Mark Weiss, a KMK partner.

1

opposing class certification. All should be summarily denied.

## II. WALTER W. THIEMANN IS AN ADEQUATE REPRESENTATIVE

**1. Walter W. Thiemann has fairly and adequately represent the interests of the class and will continue to do so**

In its March 2, 2001 Order, this Court held that Walter W. Thiemann meets the requirements for the selection as lead plaintiff, holding:

> In this case, the Court finds that Plaintiff meets the requirements for appointment as lead plaintiff. Plaintiff filed the initial complaint in this matter and no other purported class member has sought appointment as lead counsel. Plaintiff held 40,000 shares of stock, valued at approximately $900,000, during the class period no other purported class member has come forward with a greater financial stake. Accordingly, the Court finds that Plaintiff has the largest financial interest in the relief sought by the class.
>
> Finally, the Court finds that Plaintiff has made a preliminary showing that he meet the requirements of Rule 23. Under Rule 23, one member of a class may sue on behalf of the class if:
>
>> (1) the class is so numerous that joinder of all class members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> Fed. R. Civ. P. 23 (a). In this case, the proposed class has approximately 900 members. See Complaint ¶ 26. Therefore, joinder of all class members is impracticable. Plaintiff's claims and those of the proposed class arise from a common nucleus of facts and, therefore, Plaintiff and the share common questions of fact and law. Finally, as the class member with the largest financial stake, Plaintiff will fairly and adequately protect the interests of the class.

Order at 2-3.

Defendants opposed the appointment of Walter W. Thiemann even though, in plaintiff's view, they lacked standing to address this issue. In any event, their arguments were soundly rejected. This rejection continued in the Court's Order on class certification, which went on to amplify the Court's preliminary ruling on lead plaintiff

that Walter W. Thiemann was an adequate plaintiff. Nothing has changed since then, and these defendants have submitted no credible evidence of changed circumstances, nor substantive legal argument to suggest that plaintiff Thiemann is not a fair and adequate class representative. However, they continue to seek a reversal of this Court's Order by personally attacking plaintiff and plaintiff's counsel.

### 2. Walter W. Thiemann bears no animosity to any OHSL directors unrelated to this case

It is unfortunate that the Court should be burdened with "He says, she says" arguments, yet some response for the record is required. Defendants most recent motion on this issue is simply an unwarranted and demonstrably incorrect personal attack on class representative Walter W. Thiemann. Walter Thiemann is retired in Florida. To describe plaintiff Thiemann as a disgruntled former employee is simply ridiculous: the complaint alleges that plaintiff Thiemann voted in favor of the transaction based on the Proxy Materials/Registration Statement, which included the representations, which plaintiff Thiemann believed at the time to be true. Additionally, the deposition testimony of certain of the individual defendants who filed this motion show that, far from being a disgruntled former employee, Mr. Thiemann was a respected member of senior management until his retirement in 1995, who was friends with many of the OHSL Individual defendants, who still consider him to be a friend. Particularly illustrative is the testimony of defendant Howard Zoellner. Mr. Zoellner testified about monthly meetings that six of the former OHSL directors have had since the merger. Questioned by plaintiffs' attorney, defendant testified as follows:

> Q  And can you tell me anything that was discussed at any of these meetings?
> A  The biggest discussion is, is that Walt Thiemann and how--we didn't understand how Walt could do this. That's about the extent of it, because we have nothing else to refer to that I can think of at this point.

alluded to in the Hanauer affidavit, since defendant Brinker would clearly have personal knowledge of promises he made to plaintiff Thiemann to become CEO. The silence is deafening.

Plaintiffs also submit the affidavit of former OHSL director Thomas M. Herron, who served on the OHSL board the entire time OHSL was a public company until he resigned, in part in protest of the merger that is the subject of this litigation. The Herron affidavit (Exhibit 2 hereto) provides evidence that squarely refute the Hanauer affidavit. If defendant Hanauer had specific evidence, he should have submitted it in opposition to the motion for class certification, not now. Plaintiff also submits the affidavit of Thomas Gerges, (Exhibit 3 hereto) who was also a member of OHSL's senior management during the time plaintiff Thiemann was allegedly "very bitter." Mr. Gerges's affidavit also indicates that defendant Hanauer's affidavit is demonstrably untrue.

### 3. Walter W. Thiemann was harmed by the acts complained of

Certain defendants assert that, far from being harmed by the acts complained of, Walter W. Thiemann made a profit of more than $500,000 in trading on his OHSL stock. This wild allegation is supported not by an independent expert, but by a Provident employee, David Branderhorst. This argument, completely without merit in its own right, does not even address plaintiff's rescissory claim in that plaintiff and the class were fraudulently induced to convert their OHSL stock into PFGI stock and now seek to be made whole. In any event, Mr. Branderhorst's calculations are completely irrelevant, and reflect a fundamental misunderstanding of the case. The class, as defined, was not economically harmed until the merger was closed on or about December 3, 1999 and OHSL stock was forcibly and illegally converted into Provident stock due to the fraudulent inducement to OHSL shareholders in the Proxy Materials. Once plaintiff and

the class were defrauded into exchanging and selling their company by virtue of the false and misleading Proxy Materials/Registration Statement and were in possession of Provident stock were damages triggered. No shares of OHSL stock would have been forcibly converted in PFGI shares but for the fraud, and for that reason plaintiffs seek rescissory damages--not trading damages--as compensation.

Plaintiff's claim of damages is supported by the supporting affidavit of plaintiff's independent damages expert, Ervin Schoenblum. (Exhibit 4 hereto). Mr. Schoenblum's affidavit makes it clear not only that Mr. Thiemann was harmed economically as well as through the loss of his company, and provides a detailed analysis of exactly how Mr.Thiemann and the class were harmed[2].

The cases cited by defendants on this issue are, once again, completely inapposite. Generally, they stand for the unremarkable proposition that the class representative must be a member of the class he seeks to represent, and he must have experienced similar harm. Plaintiff agrees with this general principle, and simply urges the court to recognize the obvious as it has done repeatedly: Walter Thiemann is a member of the class he represents and he has been harmed[3].

---

[2] Defendants state that plaintiff has simply refused to provide any calculation of plaintiff's damages, and have not supplemented interrogatory responses. These were provided on February 13, 2002. Any delay in responding to certain interrogatories is due to the continual delay in the production of documents by defendants. For example, the most recent document production by these defendants--containing several critical documents--took place on January 30, 2002, months after defendants had agreed to complete the production.

[3] To greatly oversimplify, Walter Thiemann (and the class) were fraudulently forced to convert their OHSL stock into PFGI stock on or about December 3, 1999. The fact that OHSL stock would have been substantially more valuable today than the PFGI shares received in the illegal exchange, constitutes the economic harm suffered by plaintiff and the class, and the entire transaction should be considered a nullity.

### 4. Individual Issues do not Predominate As Plaintiff Thiemann Seeks the Same Damages and will Offer the Same Body of Evidence that is Co-Extensive with All Class Claims

In a blatant attempt to confuse and mislead the Court, these defendants keep insisting that individual issues predominate, and continually, though incorrectly, refer to the testimony of class member Janet Nolte, plaintiff in the state-court case. Although the testimony is clear that she did not read the entire Proxy Materials, it is equally clear that she read and relied upon the first page of the Proxy Materials--the letter to shareholders signed by OHSL Chairman of the Board Norbert Brinker (that Ken Hanauer directed that his name be removed from)--which contains many of the misrepresentations alleged in the complaint and in the first amended complaint, that falsely indicated that the OHSL board of directors had unanimously approved the transaction and believed it to be in the best interests of OHSL and its shareholders. Defendants state: "By comparison, putative class member Janet Nolte testified that she did not rely on, or even read the materials containing the alleged misstatements." (Motion at 3). This statement is simply false. As Janet Nolte testified:

> Q   Have you ever seen this document [the Proxy Materials] before?
> A   Yes.
> Q   When did you first see this?
> A   Whenever it was that they mailed it to me.
> Q   And after you got it, what did you do with it?
> A   I read this, this, and got the proxy thing out and threw the rest away.
> Q   Okay. It's hard for the record to say this and this and know what we are talking about.
> A   The letter from Mr. Brinker.
> Q   You read the first page of Defendants' Exhibit 1?
> A   And the notice of the meeting.

Nolte State Court Deposition at 99-100.

Additionally, defendants simply fabricate a quote from the Court's Order certifying the class. Defendants state: "Moreover, the class certification order was

premised upon an erroneous conclusion that Defendants "**did not contest**" that certain of the Rule 23 requirements were met. (*Id.* Defendants' Motion at 10-12) emphasis added.

This quote does not appear in the Court's opinion. The Court actually found as follows:

> Defendants do not appear to **seriously contend** that the commonality requirement is not satisfied in the case but do argue that individual issues, primarily the issue of individual reliance, predominate the common issues so that 23 Rule (b) (3) is not satisfied. Therefore, since Defendants do not challenge the commonality requirement, the Court shall assume it has been satisfied and address Defendants' Rule 23 (b) (3) arguments below.

Order at 11-12 (emphasis added)

These defendants, whose argument was found to be not persuasive by the Court, simply omit the phrase "Defendants do not seriously contend" and fabricate a quote more to their liking. Such conduct should not be tolerated. In any event, it is not at all persuasive.

### III. PLAINTIFF'S COUNSEL IS ZEALOUSLY REPRESENTING THE CLASS YET PERSONAL ATTACKS ON PLAINTIFF'S COUNSEL HAVE BECOME EVEN MORE EGREGIOUS SINCE THE PERVASIVE ROLE OF KMK IN THE FRAUD HAS BECOME CLEAR

**1. The Court Should be Skeptical of Defendants' attempts to speak for the class**

Any Court should be inherently skeptical of defendants who protest too much against their adversary. As Judge Higgenbotham wrote in *Umbriac v American Snacks, Inc.*, 386 F. Supp 265 (1975):

> It is the nature of motion practice on class determination issues that defendants, who naturally have no interest in the successful prosecution of a class action suit against them, are called upon to interpose arguments in opposition to class determination motions verbally grounded upon a concern for the "best" representation for the class while the implicit, but nonetheless real, objective of their vigorous legal assaults is to insure "no" representation for the class.

At 275.

Similarly, other courts have noted the incongruity of the defendants attempting to speak for the class, when their interests are diametrically opposed[4].

> Before addressing each of these contentions, it is worth noting that the defendants concern over the typicality and adequacy of the plaintiffs' class representative is somewhat problematic. As the Seventh Circuit has stated:
>
>> it is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether the "representative parties will fairly and adequately represent the interests of the class,"... It is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.

At 451.

Finally, another court also observed:

> The Court also believes that the source of objections to the adequacy of class representation must be considered. Other courts have noted the irony in strenuous objections made by defendants to the adequacy of plaintiff class representatives. (Internal citations omitted) In this case, Fine is the sole representative for the plaintiff classes relating to the section 11 and section 12 (2) claims. Thus, if successful, defendants' attack on Fine's integrity would preclude class action treatment of those claims. A court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy whey the effect may be to eliminate any class representation...." *Kline v Wolf*, 702 F 2d 400 (2d Cir 1983)

At 682.

The Court has addressed the issue of adequacy of plaintiff and his counsel on

---

[4] This does not seem to bother the defendants, who have represented three groups of defendants each with mutually antagonistic interests, in violation of applicable ethical rules, since the beginning of the litigation.

three previous occasions: first, with respect to the motions for admission *pro hac vice*, second, with respect to the motion for lead plaintiff, and third, with respect to the motion for class certification. The issue of plaintiff's counsel was first addressed in the motions for admission *pro hac vice*. These motions were resolved in plaintiff's favor. The basic standards for class counsel are "vigorous prosecution" and "absence of conflict" with class members rights and claims as set out in *Eisen v Carlisle & Jacquelin*, 391 F2d 555 (2d Cir 1968), revd. 479 F 2d 1005 (2d Cir, 1973) vacated 417 U.S. 156 (1974) and *Sosna v. Iowa*, 419 U.S. (1975) are being satisfied by plaintiffs' counsel.

The Court's September 12, 2002 Order Granting class certification, in which the Court stated: "Furthermore, Plaintiff's counsel is well-qualified to handle this class action securities fraud litigation. Therefore, the Court concludes that the adequacy of representation requirement of Rule 23 (a) (4) is satisfied."
Order at 13.

Lead counsel has zealously represented the interests of plaintiff and the class. As discussed in more detail in the Mesh affidavit (Exhibit 5 hereto), plaintiff's counsel has conducted this litigation in an exemplary fashion, and continues to litigate the case in accordance with the highest standards of the bar. Plaintiff's counsel takes its responsibility to plaintiffs and the class very seriously, has the financial resources to bring this case to a successful resolution, has been in frequent contact with plaintiff Walter Thiemann, who travelled from Florida for his deposition, as well as new plaintiffs Gary and Lisa Meier. Moreover, plaintiff's counsel have had serious abut productive debates between themselves as to strategy, as any worthy trial counsel should have. Plaintiff Walter Thiemann has been routinely informed about every aspect of his case from before the filing of the initial complaint. Nothing has changed with respect to the

qualifications of plaintiff's counsel, except that they have successfully moved the case forward, much to the dismay of the defendants.

Since defendants have been woefully unsuccessful on the merits, they have focused, almost exclusively on *ad hominem* attacks on plaintiff and his counsel and have arrogated to themselves the role of protecting the class from its counsel. This is particularly disturbing since the law firm bringing these scurrilous accusations--this motion and others like it have not been joined by the Dinsmore defendants--is now a defendant in the action. Plaintiffs respectfully submit that many of the motions filed by the law firm of defendant Keating, Muething & Klekamp ("KMK") were filed, not on behalf of the clients it claimed to represent, but to derail the proceedings so its own major role in the fraud would not be uncovered, the trial date postponed, and the class left without counsel. When plaintiff and his counsel, as a result of the extensive deposition of defendant Clifford Roe, Managing Partner of defendant Dinsmore & Shohl,[5] appeared to be discovering the pervasive role of KMK in perpetrating this fraud and controlling the process of drafting, printing, and mailing the false and misleading Proxy Materials/Registration Statement, KMK renewed a series of blistering attacks--all without merit--against plaintiff and his counsel.

Finally, the results obtained by plaintiffs counsel speak for themselves and are not subject to debate. This plaintiff's counsel has produced a series of good results for plaintiffs and the class, and is preparing to take the case through discovery to trial. Plaintiffs' counsel has so far:

---

[5]Defendants Dinsmore & Shohl and Roe have not joined in these personal attacks.

- conducted a pre-filing investigation and filed a class action complaint on September 20, 2000

- certified a lead plaintiff March 2, 2001

- had its complaint sustained, July 25, 2001

- produced documents to the defendants

- had the class certified, September 13, 2001

- reviewed tens of thousands of pages of documents that have been produced to date while continuing to request and review material and enlightening documents not originally produced by defendants for one reason or another

- taken several depositions

- defended the deposition of plaintiff Walter W. Thiemann

- appeared before Magistrate Judge Hogan for scheduling conferences

- filed an Amended Complaint as per Magistrate Hogan's Order.

- hired experts in the fields of finance, disclosure, and damages in anticipation of expert disclosure by April 1, 2002 and expert reports on May 1, 2002

None of the acerbic, personal attacks advanced by the defendants represented by now defendant KMK have been adopted by the Dinsmore co-defendants.

The Provident defendants' counsel has arrogated to himself the role of protecting the class from its counsel in spite of the unblemished record of significant accomplishment in the case to date. What is really being desired by defendants counsel is that the trial date be delayed and that the class have no representation.

### 2. Defendants' Cases Are Not Applicable Here

Defendants cite two cases for the proposition that a class action may not proceed where class counsel is not adequate, *Lewis v National Football League*, 146 F.R.D. 5 (D.D.C. 1992) and *Dubin v Miller*, 132 F.R.D. 269 (D. Col. 1990). Both cases are readily distinguished. *Lewis v. National Football League* involved a purported class of

NFL players who sought to take on the NFL and its 28 member teams. After a thoughtful discussion of the requirements of class certification, the Court found that all the requirements for class certification had been met--adequacy of counsel--and counsel in *Lewis* was inadequate because of a conflict of interest. The Court held:

> Counsel have, quite simply, offered to betray almost ten percent of the plaintiff class. Such behavior clearly demonstrates that counsel's loyalty truly lies with the NFLPA, not with its members.

At 14.

The Court ordered that the plaintiff class renew its motion with conflict-free counsel. This is hardly a ground breaking proposition of law. Here, there is no allegation of disloyalty on the part of class counsel to the class, or any segment of the class. Here, class counsel represents the entire class, conflict free, and is zealously representing the entire class through discovery and on to the trial.

*Dubin v Miller* is a case related to a motion to decertify a class, and is therefore almost on point here. But the *Dubin* case merely illustrates and amplifies how high the standard that must be met to decertify a class on the basis that plaintiff is inadequate. Plaintiff Malcolm Dubin had myriad of problems, both substantive and procedural. The Court seemed to place great emphasis on the fact that the plaintiff seemed to suffer from hallucinations:

> There are, however, other problems which are so serious as to preclude a finding that plaintiff is an adequate representative. Some relate to plaintiff's credibility. It is undisputed that on three separate occasions plaintiff requested employment with Denelcor and was refused. Also, according to documents before me, plaintiff believed that Denelcor officials had threatened his life and suspected that Denelcor's financial problems may have been the result of a conspiracy headed by a competitor or a foreign power bent on stopping Denelcor's research on its high-performance computer systems. If these assertions had any basis in fact, one would expect plaintiff to tell me what it is; on the record before me, I can only conclude that the assertions are the product

13

> of a wild imagination. At the very least, it must be acknowledged that plaintiff's credibility is subject to extraordinary attack and that this problem may well divert the fact finders' attention from the merits and thus infect the claims of the class as a whole. Indeed, the potential attack on plaintiff's credibility creates another unique defense making plaintiff's claims atypical.

At 272.

Whatever shortcomings Walter W. Thiemann may have as the lead plaintiff and the certified class representative--and plaintiffs do not concede that he has any shortcomings--they certainly do not rise to the level of hallucinations. Indeed, plaintiff Thiemann, though perhaps not wearing a halo, has clearly fulfilled his fiduciary responsibilities to the class: he has produced documents, and traveled from his home in Florida to his deposition in Cincinnati. He has monitored the litigation, has submitted an affidavit here in opposition to the motion to decertify the class, and has devoted sufficient time and resources to the case. Nothing in plaintiff Thiemann's background comes close to the level of problems that plaintiff Dubin suffered from. Most importantly, plaintiff Thiemann is a member of the class he seeks to represent, as this court has found twice. As the Schoenblum affidavit makes crystal clear, Walter W. Thiemann was harmed by the fraudulently induced merger.

The other cases cited by these defendants are completely inapposite. Defendants have searched far and wide, but the cases cited cases have nothing to do with the issue before the court: whether the class should be decertified or are so factually far afield as to be laughable. Since a motion for decertification can only be brought after a class is certified, **defendants** clearly have a high burden, especially as they present the court with no new evidence whatsoever to suggest that the Court initially erred in its opinion. For example, plaintiff Thiemann's alleged animosity seems to date back to 1987, and was supposedly well known to defendants. If they wished to assert this as a defense to class

14

certification, they should have asserted it at that time. They chose not to do, and thus should be precluded from doing so here. There is absolutely nothing in the Hanauer affidavit that could not have been submitted in opposition to plaintiff's motion for class certification.

## IV. CONCLUSION

For the foregoing reasons and for the reasons previously stated in this Court's Orders on the Motions for Admission *Pro Hac Vice*, the Motion for Lead Plaintiff, and the Motion for Class Certification., the motion to decertify the class should be denied.

Dated: February 18th, 2002.

GENE MESH & ASSOCIATES

By: /s/ Michael G. Brautigam

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiff and the Class

Of Counsel:

Richard B. Brualdi
**THE BRUALDI LAW FIRM**
29 Broadway, Suite 1515
New York, New York 10006
(212) 952-0602
(212) 952-0608 (Facsimile)


David J. Manogue
**SPECTER SPECTER EVANS & MANOGUE, P.C.**
The Koppers Building, 26th Floor
Pittsburgh, PA 15219
(412) 642-2300
(412) 642-2309 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February 2002, a true and correct copy of Plaintiff's Response in Opposition to Defendants' Motion to Decertify the Class was served by ordinary U.S. Mail, postage prepaid upon the lawyers listed below.

*BY HAND DELIVERY →*

James E. Burke, Esq.
Keating, Muething & Klekamp P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
(513) 579-6400 (phone)
(513) 579-6457 (fax)

John Hust, Esq.
SCHROEDER, MAUNDRELL,
  BARBERIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249
(513) 583-4200 (phone)
(513) 583-4203 (fax)

_____
Michael G. Brautigam