# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann,<br>on behalf of himself and of<br>all others similarly situated,<br><br>         Plaintiff,<br><br>   vs.<br><br>OHSL Financial Corporation, et al.<br><br>         Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. C-1-00-793<br><br>Judge Sandra S. Beckwith<br><br>Magistrate Judge Hogan<br><br><br>**AFFIDAVIT OF ERVIN<br>SCHOENBLUM** |

STATE OF NEW JERSEY   :
                            : SS:
COUNTY OF PASSAIC    :

**ERV SCHOENBLUM, being duly sworn, deposes and states as follows:**

1. I am a management consultant and economic expert in the area of damages. My C.V. is attached. I have been retained by the Mesh firm as an expert in damages for the purposes of opining on monetary damages to Walter W. Thiemann and the class in the this case.

2. I respectfully submit this affidavit in opposition to the motion to decertify the class, and specifically in opposition to the Affidavit of David Brandershort in Support of Motion to Decertify the Class.

3. I have reviewed the following materials in coming to the conclusion that plaintiff **Walter W. Thiemann** did indeed suffer damages as a result of the forced conversion of his OHSL stock into PFGI stock as a result of the merger:

- Complaint
- Amended Complaint

1

- Deposition testimony of Thiemann, Hanauer, Herron, Hertlein and Roe
- Project WKRP; MOE Analysis, prepared by Stifel, Nicolaus and Company, Inc.
- Confidential Descriptive Memorandum of OHSL Financial Corp., prepared by McDonald Investments, Inc.
- Proxy Statement/Prospectus
- Exchange Ratio Calculation by Patrick J. Condren
- Order (on Motion to Dismiss)
- Reply Memorandum in Support of Motion to Reconsider Order Granting Plaintiff's Motion for Class Certification, with Attached Affidavit of James E. Burke
- "Time Line for OHSL" chart
- Schedule of Buys and Sales of OHSL and PFGI Stocks in Accounts of Walter W. Thiemann
- Stock prices of OHSL pre-merger, as well as PFGI and 11 banks comprising McDonald Investments, Inc.'s "OHSL Peer Group" pre-merger through the present time
- Affidavit of David Branderhorst

4.    In making my calculations and forming my conclusions, I have assumed liability.

5.    **Mr. Branderhorst's** conclusions cannot be supported because his methodology is fatally flawed. Because of the fatal flaw in Mr. Branderhorst's methodology, it is pointless to dispute his calculations, which are meaningless. The class in this case is defined in such a way that monetary damages only begin to be triggered

once the forced conversion of OHSL stock into PFGI stock occurred. This occurred on or about December 3, 1999, the date the OHSL-PFGI merger transaction closed. It was only when OHSL shareholders converted their stock into PFGI stock that monetary damages commenced.

6.    Mr Branderhorst begins his conclusions with the concept that plaintiff Thiemann profited from his ownership of OHSL stock, prior to December 3, 1999, in fact, from when OHSL went public in February 1993, but this is completely irrelevant to the damages in this case. To greatly oversimplify matters, the concept is as follows: Mr. Thiemann was forced to convert his OHSL shares into PFGI shares on December 3, 1999. As of the date of the conversion, Mr. Thiemann's OHSL shares were worth $387,285. Due to the decrease in the price of PFGI stock, because, inter alia, of the disfavored accounting treatment with respect to securitizations, PFGI stock has diminished significantly, by approximately 32% on September 20, 2000, the day the complaint was filed. Since that time, PFGI stock has continued to fall, and is currently down about 45% since the merger, and monetary damages to plaintiff Thiemann and the class have increased.

7.    My calculations also include what would have happened had the merger not occurred and plaintiff Thiemann had retained his OHSL stock. I made certain conclusions based on an index of eleven comparable banks that McDonald Investments, Inc. had identified as OHSL's peer group as shown in the Proxy Statement/Prospectus. Had the forced conversion not occurred and plaintiff Thiemann continued to hold OHSL stock, I conclude that it would have declined only about 10%, compared to the 32% drop in PFGI's share price as of the day the complaint was filed. At the present time, the OHSL stock price would have increased by about 21% since the merger date, whereas

3

PFGI's stock price declined 45%.

8.    My calculations indicate that plaintiff Thiemann lost $84,151.78 as of September 20, 2000, the day the complaint was filed, and $138,017.84 as of January 29, 2002. The analyses follow.

9.    On December 3, 1999, Thiemann's 17,554 shares of OHSL had a forced conversion to 9,580 shares of PFGI, which had a closing price that day of $40.375, giving the shares a value of $386,792.50. On June 15, 2000, Thiemann sold 300 shares at $32.25/share, generating proceeds of $9,675. On September 20, 2000, the day the complaint was filed, PFGI's closing price was $27.5625/share, giving his 9,280 retained shares a value of $255,780. Combined with his proceeds, Thiemann's shares yielded $265,455, for a loss of $121,337.50, or 31.4%, since the merger date.

10.    Subsequent to September 20, 2000, Thiemann periodically disposed of PFGI shares. From the merger date through January 29, 2002, he generated $222,786.57 as net proceeds. On January 29, 2002, he still retained 2,628 shares, and with a closing price of $23.00, they had a value of $60,444. Combined with his proceeds, Thiemann's shares yielded $283,230.57, for a loss of $103,561.93, or 26.8%, since the merger date.

11.    In order to ascertain whether Thiemann would have been monetarily better off if the merger had not occurred, and thus  he would not have experienced a forced conversion of his OHSL shares into PFGI shares, we need to project the likely OHSL share price since December 3, 1999, absent the merger. In monetary damage calculations related to securities, it is customary for economists to project what a specific company's stock price would have been over a period of time by utilizing a peer group of companies as a proxy for the specific company.

4

12.    In this matter, McDonald Investments, Inc. had already identified the "OHSL Peer Group" of eleven publicly traded banks, which matched OHSL's characteristics, on page 25 of the Proxy Statement/Prospectus. I developed an index of these eleven stocks to ascertain whether there was a good correlation of tracking between the share price of OHSL and the index for several years prior to the merger announcement in August 1999. An analysis of over three years ending in July 1999 shows that the OHSL share price and the index track each other closely and they experienced an almost identical price increase of 40% during that time frame. I concluded that the peer group index was a good proxy for the OHSL share price prior to the merger announcement date. I also concluded that, consequently, the index could be used to project the OHSL share price subsequent to December 3, 1999, absent the merger.

13.    Utilizing the index as a proxy, I calculated what the OHSL share price would have been, absent the merger, from December 3, 1999 through January 29, 2002. I then assumed that Thiemann would have sold a sufficient number of OHSL shares on the same days that he actually sold PFGI shares to generate the same number of dollars as he actually did.

14.    The peer group analysis projects that on June 15, 1999, the OHSL shares would have closed at $19.11. Therefore, Thiemann would have had to sell 506 of his 17,554 OHSL shares to generate $9,669.66, which is what he actually generated with his PFGI shares. On September 20, 2000, the closing price according to the peer group analysis, would have been $19.94. Therefore, his retained OHSL shares would have had a value of $339,937.12. Combined with his proceeds, Thiemann's shares would have yielded $349,606.78 as of September 20, 2000. Since his PFGI shares yielded $265,455.

5

as depicted in paragraph 9 herein, Thiemann sustained a loss of $84,151.78 by September 20, 2000 as a result of the forced conversion of PFGI shares for his OHSL shares.

15.    Subsequent to September 20, 2000, Thiemann would have periodically disposed of OHSL shares to generate the same funds on the same dates as he actually did with PFGI shares.  Utilizing the peer group analysis to project what the OHSL share price would have been, my calculations show that by January 29, 2002, Thiemann would have disposed of 10,143 of his 17,554 OHSL shares that he started with, generating proceeds of $222,781.83.  The value of his retained 7,411 shares at a projected share price of $26.78 would be $198,466.58.  Combined with his proceeds, Thiemann's shares would have yielded $421,248.41 as of January 29, 2002.  Since his PFGI shares yielded $283,230.57, as depicted in paragraph 10 herein, Thiemann sustained a loss of $138,017.84 by January 29, 2002 as a result of the forced conversion of PFGI shares for his OHSL shares.

16.    It is ridiculous to talk about any profit made by plaintiff Thiemann as a result of the merger.

FURTHER AFFIANT SAYETH NAUGHT

_____
Ervin Schoenblum

Sworn to and subscribed
before me, a Notary Public, this
15th day of February, 2002.

_____
Notary Public

MARGOT WATSON
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES SEPT. 24, 2004

6

## Curriculum Vitae

**ERVIN SCHOENBLUM**
**40 MANDEVILLE DRIVE**
**WAYNE, NEW JERSEY 07470**
**(973) 696-7682**

SUMMARY OF RELEVANT EXPERIENCE

Thirty-two years of management consulting in valuations, acquisitions and other investment evaluations, profit improvement programs and economic analyses in litigation matters. Participated in about 450 engagements in a broad range of industries.  Prior to consulting, spent four years in engineering.

EDUCATION

| | |
|---|---|
| 1966-68 | Harvard Business School - Master of Business Administration |
| 1962-65 | New Jersey Institute of Technology - MSEE (Cum Laude) |
| 1958-62 | New Jersey Institute of Technology - BSEE (top 10%) |

BUSINESS EXPERIENCE

| | |
|---|---|
| Nov. 82 to Present | Management Consultant<br>Self-Employed - Wayne, NJ<br>Performed valuations, acquisition and other reviews for investors and developed profit improvement programs in numerous industries.  Also, prepared valuation and economic analyses in litigation matters and testified thereon.  Recently, also Acting President of a publicly-held medical devices company. |
| May 81 to Oct. 82 | Director of Acquisitions and Consulting<br>Page Mill Management Group - New York, NY<br>Performed valuations, acquisition and other reviews, oversaw several holdings and instituted productivity and profit improvement programs. |

ERVIN SCHOENBLUM                              PAGE TWO

| | |
|---|---|
| Aug. 68 to Apr. 81 | Manager, Management Consulting Department<br>Peat, Marwick, Mitchell & Co. - New York, NY<br>Coordinated big-8 accounting firm's litigation consulting practice.  Managed and worked on litigation engagements in many industries with a broad range in client size.  Also, worked on valuations, acquisitions and other reviews and profit improvement programs. |
| June 62 to Aug. 66 | Project Engineer in Navigation and Control<br>Bendix Corporation - Teterboro, NJ<br>Worked as an electrical and aeronautical engineer. |
| Sept. 65 to June 66 (evenings) | Adjunct Professor in Electrical Engineering<br>New Jersey Institute of Technology - Newark, NJ |

PRESENTATIONS AND PUBLICATIONS

Keynote speaker at conferences and meetings on several management-related topics.  Lecturer at American Bar Association and NJ Institute for Continuing Legal Education seminars on Economic Expert Testimony.  Quoted in several publications including *The Wall Street Journal* and articles have appeared in numerous publications.  Article, "Overview and Perspective on Productivity", awarded first prize in PMM&Co. Worldwide Author Awards.

AFFILIATIONS

Member of numerous clubs and organizations including National Association of Forensic Economists, National Forensic Center, Harvard Business School Club and four academic honor fraternities.  President of an investment group and past-President of a 400-member service organization.  Advisory Board member of NJIT's College of Arts and Sciences, Board member of a publicly-held company and several community organizations.