# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **WALTER W. THIEMANN,** *et al.*, | ) | **Case No. C-1-00-793** |
| | ) | |
| **Plaintiffs,** | ) | **(Judge Sandra S. Beckwith)** |
| | ) | **(Magistrate Judge Timothy S. Hogan)** |
| **-v-** | ) | |
| | ) | |
| **OHSL FINANCIAL CORPORATION,** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants**. | ) | |
| | ) | |

## AMENDED MOTION TO DISMISS OF DEFENDANTS OHSL FINANCIAL CORPORATION, OAK HILLS SAVINGS & LOAN COMPANY, F.A., PROVIDENT FINANCIAL GROUP, INC., BRINKER, HANAUER, HILLEBRAND, HUCKE, MCKIERNAN, TENOEVER, ZOELLNER, HOVERSON, COOK, GROTE, MYERS, PEDOTO, STEGER AND CAREY WITH MEMORANDUM IN SUPPORT

Dated:  February 6, 2004

Respectfully submitted,

/s/ John B. Pinney
John B. Pinney
J. Michael Debbeler
GRAYDON, HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Tel:  (513) 621-6464
Fax:  (513) 651-3836
Attorneys for OHSL and Provident
Defendants

OF COUNSEL:

James E. Burke
Rachael A. Rowe
Jennifer J. Morales
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

## AMENDED MOTION

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), the Private Securities Litigation Reform Act ("PSLRA") of 1995, and the Securities Litigation Uniform Standards Act ("SLUSA") of 1998, Defendants OHSL Financial Corporation ("OHSL"), Oak Hills Savings & Loan Company, F.A. ("Oak Hills"), Norbert G. Brinker ("Brinker"), Kenneth L. Hanauer ("Hanauer"), William R. Hillebrand ("Hillebrand"), Alvin E. Hucke ("Hucke"), Thomas E. McKiernan ("McKiernan"), Joseph J. Tenoever ("Tenoever"), Howard J. Zoellner ("Zoellner"), Provident Financial Group, Inc. ("Provident"), Robert L. Hoverson ("Hoverson"), Thomas D. Grote, Jr. ("Grote"), Jack M. Cook ("Cook"), Phillip R. Myers ("Myers"), Joseph A. Pedoto ("Pedoto"), Joseph A. Steger ("Steger"), and Christopher J. Carey ("Carey") (collectively herein "Defendants") move the Court for an Order dismissing Plaintiffs' Consolidated and Amended Class Action Complaint (the "CAC") for failure to state a claim and failure to adequately plead securities fraud and scienter. This Amended Motion is supported by the attached Amended Memorandum in Support and the exhibits filed in support of Defendants' original Motion to Dismiss, which are incorporated herein by reference. The reason for the Amended Motion is explained on page 1 of the Amended Memorandum in Support.

Respectfully submitted,

/s/ John B. Pinney
John B. Pinney
J. Michael Debbeler
GRAYDON, HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Tel:  (513) 621-6464
Fax:  (513) 651-3836
Attorneys for OHSL and Provident
Defendants

OF COUNSEL:

James E. Burke
Rachael A. Rowe
Jennifer J. Morales
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

## TABLE OF CONTENTS

I.   INTRODUCTION ...........................................................................................................1

II.  SUMMARY OF POINTS RAISED AND PRIMARY AUTHORITIES RELIED
     UPON ........................................................................................................................4

     A.   The Court Should Dismiss Plaintiffs' Section 10(b), 12(2) and 14 Claims
          Because They Fail to Allege Facts Sufficient to Establish that the Proxy
          Materials Contain Material Misstatements and/or Omissions ...............................4

          1.   Plaintiffs' False Allegations of Misstatements and/or Omissions ..............5

     B.   The Court Should Dismiss Plaintiffs' Claim of Securities Fraud Under
          Section 10(b)/Rule 10b-5 Because Plaintiffs Have Failed to Adequately
          Allege Scienter and Show Reliance on the Proxy Materials..................................5

          1.   Plaintiffs' Section 10(b)/Rule 10b-5 Claim Fails as a Matter of
               Law Because Plaintiffs Have Not Adequately Pled Scienter.....................5

          2.   Plaintiffs' Failure to Demonstrate Reliance on the Allegedly
               Misleading Proxy Materials is Fatal to Their Securities Fraud
               Claim .........................................................................................................6

     C.   The Court Should Dismiss Plaintiffs' Section 11 Claim for the Additional
          Reason that the Individual Defendants are Not Liable Under Section 11
          for the Expertised Portions of the Proxy Materials ................................................6

     D.   Dismissal of Plaintiffs' Section 12(2) Claim Against the Individual
          Defendants is Further Warranted on the Basis that Plaintiffs Have Failed
          to Allege Any Facts Demonstrating that They Were Statutory Sellers..................6

     E.   Plaintiffs' Federal Securities Claims are All Time-Barred ....................................7

     F.   The CAC Fails to Adequately Plead Control Person Liability as to
          Hanauer, Hoverson, and Cook ..............................................................................7

     G.   Four of Plaintiffs' Five State Law Claims are Preempted by SLUSA....................8

     H.   Plaintiffs' Claims Under Ohio Securities Law are Time-Barred ...........................8

     I.   Plaintiffs' Common-law Fraud Claim Must Also be Dismissed for Failure
          to Plead Fraud with the Requisite Particularly and Show Reliance, and
          Also Because it is Time-Barred ..............................................................................8

     J.   Plaintiffs' Breach of Fiduciary Duty Claim Previously Has Been Stricken
          by the Court and Voluntarily Withdrawn by Plaintiffs' Counsel...........................8

K.      Plaintiffs' Spoliation Claim is Barred Under Ohio Law ........................................ 9

III.    STATEMENT OF FACTS ............................................................................................. 9

A.      Background of OHSL and Its Search for an Acquisition........................................ 9

B.      OHSL's Arms Length Negotiations with Provident ............................................. 10

C.      The First Restatement............................................................................................. 11

D.      The Second Restatement ........................................................................................ 12

E.      The Provident Stock Price...................................................................................... 13

F.      Summary of Plaintiffs' Allegations in the CAC ................................................... 14

IV.     ARGUMENT ................................................................................................................. 15

A.      The Court Should Dismiss Plaintiffs' Section 10(b), 12(2) and 14 Claims
        Because They Fail to Allege Facts Sufficient to Establish that the Proxy
        Materials Contain Material Misstatements and/or Omissions ............................... 15

        1.      Plaintiffs' False Allegations of Misstatements and/or Omissions ........... 16

B.      The Court Should Dismiss Plaintiffs' Claim of Securities Fraud Under
        Section 10(b)/Rule 10b-5 Because Plaintiffs Have Failed to Adequately
        Allege Scienter and Show Reliance  on the Proxy Materials................................ 24

        1.      Plaintiffs' Section 10(b)/Rule 10b-5 Claim Fails as a Matter of
                Law Because Plaintiffs Have Not Adequately Pled Scienter.................... 25

        2.      Plaintiffs' Failure to Demonstrate Reliance on the Allegedly
                Misleading Proxy Materials is Fatal to Their Securities Fraud
                Claim ......................................................................................................... 30

C.      The Court Should Dismiss Plaintiffs' Section 11 Claim for the Reason that
        the Individual Defendants are Not Liable Under Section 11 for the
        Expertised Portions of the Proxy Materials........................................................... 31

D.      Dismissal of Plaintiffs' Section 12(2) Claim Against the Individual
        Defendants is Further Warranted on the Basis that Plaintiffs Have Failed
        to Allege Any Facts Demonstrating that They Were Statutory Sellers................. 32

E.      The Court Should Dismiss Plaintiffs' Section 10(b), 11, 12(2) and 14
        Claims Because They Are All Time-Barred ......................................................... 34

F.      The CAC Fails to Adequately Plead Control Person Liability as to
        Hanauer, Hoverson, and Cook .............................................................................. 35

G.    Four of Plaintiffs' Five State Law Claims are Preempted by SLUSA .................. 38

H.    Plaintiffs' Claims Under Ohio Securities Law are Time-Barred .......................... 40

I.    Plaintiffs' Common-law Fraud Claim Must Also be Dismissed for Failure to Plead Fraud with the Requisite Particularly and Show Reliance, and Also Because it is Time-Barred .............................................................. 41

J.    Plaintiffs' Breach of Fiduciary Duty Claim Previously Has Been Stricken by the Court and Voluntarily Withdrawn by Plaintiffs' Counsel ......................... 42

K.    Plaintiffs' Spoliation Claim is Barred Under Ohio Law ....................................... 43

V.    CONCLUSION ............................................................................................................ 45

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abada v. Charles Schwab & Co.*, 68 F. Supp. 2d 1160 (S.D. Cal. 1999) ......................... 38

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988) ......................................................... 15, 18, 19

*Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1974)............................................. 15

*Burns v. Prudential Securities, Inc.*, 116 F. Supp. 2d 917 (N.D. Ohio 2000).................. 39

*In re Comshare, Inc. Securities Litigation*, 183 F.3d 542 (6th Cir. 1999)............................................................................. 5, 16, 24, 25, 26, 28

*Copland v. Grumet*, 88 F. Supp. 2d 326 (D.N.J. 1999)...................................................... 34

*Cortec Industrial, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991)......................... 12

*In re Digital Island Securities Litigation.*, 223 F. Supp. 2d 546 (D. Del. 2002) ............. 37

*Endo v. Albertine*, 812 F. Supp. 1479 (N.D. Ill. 1993) ..................................................... 33

*In re Enron Corp. Securities, Derivative & ERISA Litigation*, 235 F. Supp. 2d 549 (S.D. Tex. 2002)............................................................................................ 38, 39

*In re Fritz Companies Securities Litigation*, 282 F. Supp. 2d 1105 (N.D. Cal. 2003)................................................................................................................ 29, 30

*Green v. Ameritrade*, 279 F.3d 590, 596 (8th Cir. 2002).................................................. 39

*Grossman v. Novell, Inc.*, 120 F.3d 1112 (10th Cir. 1997).............................................. 15

*In re Gupta Corp. Securities Litigation*, 900 F. Supp. 1217 (N.D. Cal. 1994)…………….................................................................. 5, 12, 16, 17, 22, 24, 44

*Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir. 1999) ....................................................... 12

*Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001)............................................. 5, 26, 27

*Herm v. Stafford*, 663 F.2d 669 (6th Cir. 1981) ............................................................... 35

*Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999) ....................................... 20, 22

*Jackson National Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697 (2d Cir. 1994)................................................................................................................... 35

*John Nuveen & Co., Inc. v. Sanders*, 450 U.S. 1005 (1981) ......................................... 6, 31

*Kauthar SDN BHD v. Sternberg*, 149 F.3d 659 (7th Cir. 1998) ....................................... 37

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) ........ 34, 35

*Klusty v. Taco Bell Corp.*, 909 F. Supp. 516 (S.D. Ohio 1995) .............. 5, 7, 15, 16, 21, 37

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ............................................. 17

*Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820 (8th Cir. 2003) ................................. 29

*Leff v. CIP Corp.*, 540 F. Supp. 857 (S.D. Ohio 1982) ..................................................... 16

*Mabon, Nugent & Co. v. Borey*, 127 B.R. 727 (Bankr. S.D.N.Y. 1991) ..................... 33, 34

*Management Assistance, Inc. v. Edelman*, 584 F. Supp. 1021 (S.D.N.Y. 1984) .......... 5, 16

*Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir. 1979) ............................. 25

*In re Merrill Lynch & Co. Inc. Research Reports Securities Litigation*, 272
        F. Supp. 2d 243 (S.D.N.Y. 2003) ................................................................................ 13

*Miller v. Champion Enterprises, Inc.*, 346 F.3d 660 (6th Cir. 2003) .................... 24, 25, 26

*Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) ............................. 15

*Morse v. McWhorter*, 290 F.3d 195 (6th Cir. 2002) ........................................................ 24

*Phillips v. Kidder, Peabody & Co.*, 933 F. Supp. 303 (S.D.N.Y. 1996) ........... 5, 16, 24, 37

*Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101
        (W.D. Mich. 1996) ................................................................................................. 16, 18

*Pinter v. Dahl*, 486 U.S. 622 (1988) ...................................................................... 7, 32, 33

*Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003) ................................................ 29

*SEC v. Falstaff Brewing Co.*, 629 F.2d 62 (D.C. Cir. 1980) ........................................ 7, 35

*SEC v. Seaboard Corp.*, 677 F.2d 1301 (9th Cir. 1982) ................................................... 35

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988) ..................... 15

*Smith v. American National Bank & Trust Co.*, 982 F.2d 936 (6th Cir. 1992) ................ 33

*In re Software Toolworks, Inc. Sec. Litigation*, 789 F. Supp. 1489 (N.D. Cal. 1992), *aff'd in part, rev'd in part*, 38 F.3d 1078 (9th Cir. 1994)................................. 31

*Spielman v. Merrill Lynch Pierce, Fenner & Smith*, 332 F.3d 116 (2d Cir. 2003)........... 38

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ..................................... 15, 21

*Weiglos v. Commonwealth Edison*, 892 F.2d 509 (7th Cir. 1989)................................... 18

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir.1997) .................................................... 20

*Wilson v. Saintine Exploration & Drilling Corp.*, 872 F.2d 1124 (2d Cir. 1989)............. 33

*In re Worlds of Wonder Securities Litigation*, 35 F.3d 1407 (9th Cir. 1994), *cert. denied*, 116 S. Ct. 185 (1995)............................................................................. 6, 31, 32

*Wright v. National Warranty Co.*, 953 F.2d 256 (6th Cir. 1992)...................................... 16

*Yamamoto v. Omiya*, 564 F.2d 1319 (9th Cir. 1977) .................................................... 7, 35

## STATE CASES

*Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St. 3d 488...................................................... 8, 43

*Davis v. Wal-Mart Stores, Inc.*, 2000 WL. 504114 (Ohio App. 8 Dist. April 27, 2000)................................................................................................................ 45

*Ferry v. Shefchuk*, 2003 WL. 21139014 (Ohio App. 11 Dist. May 16, 2003).............. 8, 42

*Fidel v. AK Steel Holding Corp.*, 2002 WL. 31545952 (S.D. Ohio Sept. 19, 2002) ........ 29

*Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54 (1987) ...................................... 8, 41

*Svezzese v. Duratek, Inc.*, 2003 WL. 21357313 (4th Cir. June 12, 2003)........................ 29

*Williamson v. Rodenberg*, 1997 WL. 360840 (Ohio App. 10 Dist. June 30, 1997).... 44, 45

## FEDERAL STATUTES

15 U.S.C. § 77k .......................................................................................................... 6, 31

15 U.S.C. § 77l(a)(2)................................................................................................... 7, 32

15 U.S.C. § 77m ................................................................................................. 7, 34

15 U.S.C. § 77p ....................................................................................... 8, 38, 39, 41

15 U.S.C. § 77r(b)(1) ............................................................................................ 39

15 U.S.C. § 78i(e) ............................................................................................. 7, 34

Fed. R. Civ. P. 9(b) .................................................................................... 4, 8, 25, 30

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 12

## STATE STATUTES

Ohio Rev. Code § 1707.41 ............................................................... 8, 14, 39, 40, 41

Ohio Rev. Code § 1707.43 ........................................................... 8, 14, 39, 40, 41, 42

Ohio Civil Rule 9(B) ........................................................................................... 42

## MISCELLANEOUS

H.R. Conf. Rep. No. 104-369 (1995) ..................................................................... 25

H.R. Conf. Rep. No. 803, 105th Cong., 2d Sess. (1998) ..................................... 38

*Janet Nolte v. OHSL Financial Corporation*, Case No. A-9907039 .................................. 1

*Meier v. OHSL Financial Corporation, et al.*, Case No. C-1-02-613............................ 3, 4

## AMENDED MEMORANDUM IN SUPPORT

Defendants OHSL Financial Corporation, Oak Hills Savings & Loan Company, F.A., Provident Financial Group, Inc., Brinker, Hanauer, Hillebrand, Hucke, McKiernan, Tenoever, Zoellner, Hoverson, Cook, Grote, Myers, Pedoto, Steger and Carey (collectively herein "Defendants") submit this Amended Memorandum in Support of their Amended Motion to Dismiss. In this Amended Motion and Memorandum, Defendants have withdrawn the arguments reflected in Section A(2), entitled "Plaintiffs' Fourth Alleged Misstatement is Legally Immaterial." Upon reflection, Defendants believe that the issue of the immateriality of the restatements is more appropriately addressed in connection with Plaintiffs' pending Motion for Partial Summary Judgment on his claim pursuant to Section 11 of the Securities Act of 1933, rather than through a Fed. Rule Civ. Proc. 12(b)(6) motion.

## I.     INTRODUCTION

On December 31, 2003 — nearly three and a half years after filing his original complaint in this action, and more than four years after his counsel filed the now abandoned State Court Action[1] — Plaintiff Walter Thiemann, together with Plaintiffs Gary and Lisa Meier (as custodians for Lindsey Meier), filed an eleven count Consolidated and Amended Class Action Complaint (the "CAC"). (Doc. 234).

The original complaint filed in this case asserted six causes of action (which parallel the first six counts of the CAC) premised upon twelve categories of fact allegations. (*See* Complaint (Doc. 1); 7/25/01 Order (Doc. 46) at 5-15). Thiemann claimed that these twelve categories of

---

[1] On November 18, 1999, the same law firm that is listed as trial counsel for the Plaintiffs in this action, Gene Mesh & Associates (the "Mesh Firm"), filed a purported class action challenging the merger of OHSL Financial Corporation ("OHSL") with Provident Financial Group, Inc. ("Provident") in the Hamilton County Court of Common Pleas. That case was captioned *Janet Nolte v. OHSL Financial Corporation*, Case No. A-9907039 (the "State Court Action"). After nine months of expensive, time-consuming litigation in the State Court Action, the Mesh Firm started all over again in this Court on September 20, 2000, with a new plaintiff, Walter Thiemann, and a new action challenging the OHSL-Provident merger.

alleged misstatements and/or omissions in the September 24, 1999 proxy statement for the OHSL-Provident merger (the "Proxy Statement") violated the federal securities laws. This Court granted in part and denied in part Defendants' motion to dismiss for failure to state a claim, which was filed on November 20, 2000. (Doc. 46). The Court ruled that nine of the twelve categories of facts alleged by Thiemann either were immaterial as a matter of law, or adequately were disclosed. (*See* 7/25/01 Order (Doc. 46) at 19-26). Furthermore, the Court held that the "control person" claims alleged by Thiemann in Counts III and VI of the original complaint failed to state a claim against any Defendant except Kenneth Hanauer. (*See id.* at 25).

The remaining claims after the Court's July 25, 2001 Order pertained to: (1) statements in the Proxy Statement that OHSL's Board unanimously approved and recommended the merger; (2) the disclosures relating to Provident's securitization activity; and (3) the table in the proxy materials listing OHSL's current directors and their beneficial ownership (which the Court held was potentially material insofar as it relates to the issue of the OHSL Board's unanimity). Thus, Counts I, II, IV, and V of the original complaint remained pending as alleged, but only to the extent supported by the undismissed categories of factual allegations, and Counts III and VI were dismissed as against all Defendants except Hanauer.[2]

On February 4, 2002, Thiemann filed without leave of the Court a pleading captioned First Amended Class Action Complaint (Doc. 67), which, while largely reiterating the allegations contained in his original complaint, also added state law claims for spoliation of

---

[2]  The Court additionally struck paragraphs 56 and 62 from the Complaint to the extent that they pleaded state law claims for breach of fiduciary duty, as Thiemann voluntarily withdrew any such claims in his brief in opposition to Defendants' motion to dismiss. (*See* 7/25/01 Order (Doc. 46) at 26; Pl.'s Opp'n to Mot. to Dismiss (Doc. 21) at 16).

evidence, common-law fraud, and breach of fiduciary duty.[3]  (*See* 10/20/03 Order (Doc. 215) at

2-3).  On March 7, 2002, the Court issued an Order (Doc. 82) clarifying that the filing of

Plaintiff's First Amended Complaint should be construed as a motion for leave to file a first

amended complaint, and instructed the Clerk of Court to re-docket the pleading accordingly.

(*See* 10/20/03 Order (Doc. 215) at 3-4).

Magistrate Judge Hogan rejected Thiemann's proposed first amendment on August 6,

2002.[4]  (*See* 8/6/02 Order (Doc. 110)).  In response, Thiemann filed an objection to the order,

and, before the time even had expired for Defendants to submit a brief in opposition, a motion

for reconsideration thereof.  Moreover, in what this Court has deemed to have been "a

transparent attempt to avoid the consequences of Judge Hogan's denial of the motion to amend

the complaint," Thiemann's counsel filed a lawsuit styled *Meier v. OHSL Financial*

*Corporation*, *et al.*, Case No. C-1-02-613, with a complaint that nearly was identical to

Thiemann's proposed first amended complaint in this case.  (10/20/03 Order (Doc. 215) at 5).

On March 7, 2003 — nearly two and a half years after filing his original complaint, more

than one year after filing his proposed first amended complaint, and seven months after

Magistrate Judge Hogan rejected the first amendment — Thiemann filed a motion for leave to

file a second amended complaint.  (Doc. 146).  The second proposed amendment was prompted

by Provident's March 5, 2003 announcement that it was restating its operating results from 1997-

---

[3]  The First Amended Complaint further added Gary and Lisa Meier as named plaintiffs; Charles Hertlein, another
partner with Dinsmore & Shohl, as a defendant; and Keating, Muething & Klekamp ("KMK") and Mark Weiss, a
partner with KMK, as defendants.

[4]  Among the several findings he made, Magistrate Judge Hogan found that Thiemann's proposed spoliation claim
was futile because it should have been raised in the previous State Court Action.  (*See* 10/20/03 Order (Doc. 215) at
4).

2002 due to an accounting error in unrelated auto lease transactions.[5]  (*See* Exhibit A to the CAC at 1).  An identical amendment was filed by Thiemann's counsel in the *Meier* case as a first amended complaint.  The *Meier* Plaintiffs then moved to consolidate their case with Thiemann's.

This Court granted Thiemann leave to file a second amended complaint on October 20, 2003.  (*See* 10/20/03 Order (Doc. 215) at 19).  At the same time, the Court consolidated the *Meier* case with this one, and ordered that the *Meier* case be closed.  (*See id.* at 20).

Pursuant to the Court's October 20th Order, Plaintiffs filed their 85-page, eleven count CAC on December 31, 2003.  (Doc. 234).  For the reasons explained below, the CAC must be dismissed in its entirety because it fails to pass legal muster under Federal Rules of Civil Procedure 9(b) and 12(b)(6), the Private Securities Litigation Reform Act ("PSLRA"), and the Securities Litigation Uniform Standards Act ("SLUSA").

## II.   SUMMARY OF POINTS RAISED AND PRIMARY AUTHORITIES RELIED UPON[6]

### PLAINTIFFS' FEDERAL CLAIMS

**A.   The Court Should Dismiss Plaintiffs' Section 10(b), 12(2) and 14 Claims Because They Fail to Allege Facts Sufficient to Establish that the Proxy Materials Contain Material Misstatements and/or Omissions**

The existence of material misstatements or omissions in the Proxy Materials is an element of each of Plaintiffs' causes of action for primary liability under the federal securities laws.  The "facts" alleged by Plaintiffs, however, are not sufficient to establish that the Proxy Materials contain any material misstatements or omit any material facts.  The Court therefore

---

[5]  Clearly, the only aspect of this accounting issue relevant to this case is the accounting impact prior to September 24, 1999, the date of the Proxy Statement for the OHSL-Provident merger.  Any alleged financial impact in subsequent years is irrelevant to whether the Proxy Statement was materially accurate and correct at the time it was prepared and distributed to OHSL's shareholders on September 24, 1999.

[6]  Submitted pursuant to S.D. Ohio L.R. 7.2(a)(3).

should dismiss the CAC pursuant to Rule 12(b)(6).  *Klusty v. Taco Bell Corp.*, 909 F. Supp. 516, 520 (S.D. Ohio 1995).

### 1.    Plaintiffs' False Allegations of Misstatements and/or Omissions

Although the Court must accept as true all well-pleaded facts contained in the CAC when ruling on this Motion, it need not credit unwarranted factual inferences.  *Klusty*, 909 F. Supp. at 520.  Moreover, dismissal is appropriate in situations, like this case, where the disputed proxy materials actually disclose the information alleged to be missing.  *Phillips v. Kidder, Peabody & Co.*, 933 F. Supp. 303, 320 (S.D.N.Y. 1996).  Where, as here, Defendants can demonstrate that allegedly omitted information was disclosed, or that allegedly misstated information accurately was portrayed, the Court should grant a motion to dismiss despite contrary allegations in the complaint.  *Id.  See also In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994); *Management Assistance, Inc. v. Edelman*, 584 F. Supp. 1021, 1027 (S.D.N.Y. 1984).

### B.    The Court Should Dismiss Plaintiffs' Claim of Securities Fraud Under Section 10(b)/Rule 10b-5 Because Plaintiffs Have Failed to Adequately Allege Scienter and Show Reliance on the Proxy Materials

### 1.    Plaintiffs' Section 10(b)/Rule 10b-5 Claim Fails as a Matter of Law Because Plaintiffs Have Not Adequately Pled Scienter

Under the Private Securities Litigation Reform Act ("PSLRA"), plaintiffs must plead actual facts — not speculation or conclusions — that give rise to a strong inference that the Defendants acted with the required state of mind (knowledge or recklessness).  *Helwig v. Vencor, Inc.*, 251 F.3d 540, 550-52 (6th Cir. 2001); *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 550-51 (6th Cir. 1999).  The CAC does not contain any facts that prove that Defendants knew of or recklessly ignored any of the alleged misstatements or omissions in the Proxy Materials.  Plaintiffs therefore fail to state a claim under Section 10(b)/Rule 10b-5.

> **2.    Plaintiffs' Failure to Demonstrate Reliance on the Allegedly Misleading Proxy Materials is Fatal to Their Securities Fraud Claim**

This Court has found that Thiemann did <u>not</u> rely on the allegedly misleading Proxy Materials. (*See* 12/15/03 Order (Doc. 227) at 7.) Neither did the Meiers, who did not vote on the merger and, therefore, effectively voted against it. Accordingly, Plaintiffs' failure to demonstrate reliance on the Proxy Materials is fatal to their Section 10(b)/Rule 10b-5 claim.

> **C.    The Court Should Dismiss Plaintiffs' Section 11 Claim for the Reason that the Individual Defendants are Not Liable Under Section 11 for the Expertised Portions of the Proxy Materials**

Persons other than the issuer may avoid liability under Section 11 by showing that they relied on the opinion of an expert in regard to any part of a registration statement, and that this reliance was reasonable. 15 U.S.C. § 77k(b)(3)(C). The courts recognize that "almost by definition, it *is* reasonable to rely upon financial statements certified by public accountants." *John Nuveen & Co., Inc. v. Sanders*, 450 U.S. 1005, 1010 (1981) (Powell, J., joined by Rehnquist, J., dissenting from denial of certiorari) (emphasis in original). *See also In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994), *cert. denied*, 116 S. Ct. 185 (1995). Defendant Ernst & Young, Provident's independent auditor, expressed opinions on all of the Provident financials that appear in the Proxy Materials. Given that the proper classification of revenue falls squarely within the category of certified information upon which Section 11 permits non-experts to rely, the Individual Defendants are entitled to the dismissal of Plaintiffs' Section 11 claim to the extent it is based on the alleged accounting errors.

> **D.    Dismissal of Plaintiffs' Section 12(2) Claim Against the Individual Defendants is Further Warranted on the Basis that Plaintiffs Have Failed to Allege Any Facts Demonstrating that They Were Statutory Sellers**

Section 12(2) imposes liability on a defendant who "offers or sells a security" for material misstatements or omissions contained in a "prospectus or oral communication" to the

purchaser. 15 U.S.C. § 77l(a)(2). The Supreme Court has stated that a person is liable as a Section 12 "statutory seller" of a security only if he passed title to the purchaser, offered to sell the security, or solicited the purchase, "motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 641-48 (1988). The CAC contains no allegations that the OHSL and Provident Individual Defendants either passed title to or directly solicited offers from anyone. Accordingly, Plaintiffs fail to state a claim under Section 12(2).

####    E.    Plaintiffs' Federal Securities Claims are All Time-Barred

Plaintiffs' federal securities claims related to any misstatements or omissions concerning Provident's restatement of earnings in 2003 are barred by the three-year statute of repose. 15 U.S.C. §§ 77m and 78i(e).

####    F.    The CAC Fails to Adequately Plead Control Person Liability as to Hanauer, Hoverson, and Cook

The mere appearance of one's name in allegedly false and misleading proxy materials is insufficient as a matter of law to trigger control person liability. *SEC v. Falstaff Brewing Co.*, 629 F.2d 62, 68 (D.C. Cir. 1980); *Yamamoto v. Omiya*, 564 F.2d 1319, 1322-23 (9th Cir. 1977). Because the only fact Plaintiffs allege about Cook and Hoverson is that they signed the Proxy Materials, Plaintiffs' control person claims against these Defendants fail as a matter of law.

Plaintiffs' allegations of control person liability with respect to Defendant Hanauer are not supported by Hanauer's deposition testimony in the State Court Action. Plaintiffs cannot defeat a motion to dismiss with conclusory allegations or unwarranted factual inferences. *Klusty*, 909 F. Supp. at 520; *Phillips*, 933 F. Supp. at 320.

## PLAINTIFFS' STATE LAW CLAIMS

### G.    Four of Plaintiffs' Five State Law Claims are Preempted by SLUSA

SLUSA bars Plaintiffs' state law claims of common-law fraud, breach of fiduciary duty, and Ohio securities law violations.  15 U.S.C. § 77p(b).  Under SLUSA, no class action based on the statutory or common-law of any state alleging misrepresentations, omissions, or the use of deception in connection with the purchase or sale of a covered security may be maintained by a private party in federal or state court.  *Id.*

### H.    Plaintiffs' Claims Under Ohio Securities Law are Time-Barred

Plaintiffs' claims asserted under Ohio Rev. Code §§ 1707.41 (civil liability of a seller for fraud) and 1707.43 (remedies of purchaser in unlawful sale), in addition to being barred by SLUSA, also are barred by the applicable statutes of limitations.

### I.    Plaintiffs' Common-law Fraud Claim Must Also be Dismissed for Failure to Plead Fraud with the Requisite Particularly and Show Reliance, and Also Because it is Time-Barred

Given that Federal Rule of Civil Procedure 9(b) requires that fraud be pled with particularity, Plaintiffs' claim for common-law fraud must be dismissed for failure to adequately allege scienter, as well as for failure to demonstrate reliance on the alleged misrepresentations in the Proxy Materials.  *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987).  In any event, the two-year statute of limitations has run on Plaintiffs' common-law fraud claim.  *Ferry v. Shefchuk*, 2003 WL 21139014, at *2 (Ohio App. 11 Dist. May 16, 2003).

### J.    Plaintiffs' Breach of Fiduciary Duty Claim Previously Has Been Stricken by the Court and Voluntarily Withdrawn by Plaintiffs' Counsel

The Court struck paragraphs 56 and 62 from the original complaint in this case "to the extent they [pled] state law claims for breach of fiduciary duty" after Plaintiff's counsel

consented to striking these allegations. (7/25/01 Order (Doc. 46) at 26). The Court should not permit Plaintiffs to maintain a claim which Plaintiffs' counsel already agreed to strike.

### K.    Plaintiffs' Spoliation Claim is Barred Under Ohio Law

Plaintiffs are precluded from bringing a claim for spoliation of evidence against select Directors Hanauer, Brinker, and Zoellner based on testimony and activities that occurred during the State Court Action. *Davis v. Wal-Mart Stores, Inc.*, 93 Ohio St.3d 488, syllabus (2001).

## III.    STATEMENT OF FACTS

### A.    Background of OHSL and Its Search for an Acquisition

In January 1997, Alvin E. Hucke, a member of the OHSL Board of Directors, formally recommended to the Board that it seriously consider offering OHSL for sale. (*See* Proxy Statement, Exhibit B to the CAC at 19). The OHSL Board declined to do so at that time but held several presentations during 1997 with select investment banking firms to keep the Board informed on the status of acquisitions in the thrift industry. (*Id*.). During the period from January 1997 to February 1999, OHSL received unsolicited expressions of interest from three institutions. The Board decided at that time, however, to remain an independent thrift. (*Id*.).

In February of 1999, the Board appointed an a*d hoc* Committee consisting of three members of the Board to research and evaluate any benefits from the sale of OHSL. (*Id*.). After several meetings of the *ad hoc* Committee, the full Board voted to engage McDonald Investments, Inc. ("McDonald") in May of 1999 to provide general financial advisory services to OHSL, including the evaluation of a sale or merger transaction involving OHSL. (*Id*. at 20). After this meeting of the Board, McDonald prepared a Confidential Descriptive Memorandum designed to describe OHSL to potential acquirors. (*Id*.). This Memorandum was approved by the Board on June 1, 1999 and was circulated on and after June 3, 1999 by McDonald to six potential acquirors identified by McDonald and approved by the Board. (*Id*.).

B.    <u>OHSL's Arms Length Negotiations with Provident</u>

Provident responded to the OHSL sale Memorandum with a non-binding indication of interest in a merger with OHSL.  (*See* Proxy Statement at 20).  On June 22, 1999, the Board discussed the terms of the proposal from Provident and authorized McDonald to invite Provident to conduct a due diligence investigation.  (*Id.*).  On July 22, 1999, the OHSL Board reviewed Provident's offer and concluded that it was the best alternative for enhancing the value of OHSL common stock for all OHSL shareholders.  The OHSL Board then voted to engage in the negotiation of a definitive merger agreement with Provident, which resulted in a $1.00 per share increase over Provident's original offer.

On September 24, 1999, OHSL sent its shareholders the Proxy Statement outlining the proposed transaction.  The 67-page Proxy Statement and its approximately 150 pages of attachments provided OHSL shareholders with a detailed account of the background of the proposal, the terms of the transaction itself, the risks involved, and other contemplated consequences.  It also discussed, and attached as part of the Proxy Statement, the opinion rendered by McDonald to the effect that the proposed merger was fair to OHSL shareholders from a financial point of view as of September 3, 1999.  (*See* Proxy Statement, Annex C).  Finally, the Proxy Statement expressly advised OHSL shareholders that OHSL was responsible for the information contained therein related to OHSL, and that Provident was responsible for the information related to Provident.  (*See* Proxy Statement, Prospectus of Provident).

After much negotiation with Provident, the Board, a majority of whom were disinterested outsiders, unanimously approved the Agreement and Plan of Merger (the "Agreement") and recommended approval by the shareholders of OHSL.  (*See id.* at 3).  Subsequently, on October 25, 1999, the shareholders of OHSL approved the Agreement.  Sixty-five percent (65%) of

OHSL shareholders voted on the merger proposal and all votes not cast were counted as votes against the merger. (*See id.* at 17). The merger was approved by fifty-two percent (52%) of all OHSL shareholders. Of the votes actually cast by OHSL shareholders, however, a full eighty percent (80%) voted in favor of the transaction, nineteen percent (19%) opposed it, and one percent (1%) abstained.[7] Plaintiff Walter Thiemann voted in favor of the OHSL-Provident merger. (CAC ¶ 7). The Meiers, who did not vote on the merger, effectively voted against it. (*Id.* ¶ 8).

## C.    The First Restatement

On March 5, 2003, Provident issued a press release announcing that it was restating its operating results for the years 1997 through 2002. (A copy of this press release is attached to the CAC as Exhibit A.) The restatement resulted from Provident's discovery of accounting errors in a financial model created to predict income and expense on nine auto lease securitization transactions that were entered into between 1997 and 1999. (*See* Exhibit A to the CAC at 1). While testing a new model, Provident discovered that the income that it had recorded on the auto lease securitizations was more than it should have been. (*See id.* at 1-2). As a result, Provident reduced its reported net income ($122.4 million) for 1998 by $2 million, and its reported net income ($150.9 million) for 1999, the year the Proxy Materials were issued, by $11.3 million.[8] (*Id.*). Because the Proxy Materials only included Provident financial data through June 30, 1999, only about half of this reduction in income (i.e., approximately $5.65 million) would have been

---

[7] The Mesh Firm filed the State Court Action challenging the merger on November 18, 1999, naming as defendants OHSL, the OHSL Officers and Directors, and Provident Bank. On November 19, 1999, the state court denied the motion filed by Plaintiff's counsel to enjoin the OHSL-Provident merger. The merger then closed on December 3, 1999. Shortly thereafter, on January 13, 2000, the court granted Provident's motion to dismiss all claims asserted against it, thus terminating Provident's involvement in the State Court Action. OHSL, on the other hand, produced thousands of pages of documents and participated in 11 days of depositions in the State Court Action.

[8] The Provident financial statements that were incorporated by reference in the Proxy Materials included all of 1998 but only the first six months of 1999. (*See* Proxy Statement at 64-65).

reflected in the Provident financials which were part of the Proxy Materials. (*See* Proxy Statement at 6; Exhibit A to the CAC).

The review of the accounting for the nine auto lease securitizations by Provident's outside accounting firm Ernst & Young LLP ("E&Y") further concluded that these transactions should not have been reported off Provident's balance sheet as operating leases, as had been done since 1997. (*See* Exhibit A to the CAC at 1). As a result, the assets and liabilities associated with the securitization transactions were added back to Provident's balance sheet as direct finance leases (i.e., as loans). (*Id.*). Among other things, this aspect of the restatement meant that the $2.0 million reduction in Provident's income for 1998 and the $5.65 million reduction in Provident's income for the first six months of 1999, as reported in the Proxy Materials, would have been countered by a <u>$1.3 billion increase</u> in Provident's reported assets. (*Id.* at 2).

### D.    **The Second Restatement**

On April 15, 2003, Provident announced a second restatement of earnings. (A copy of the press release to this effect is Exhibit A to Defendants' original Memorandum in Support.)[9][10] Following the first restatement, Provident's Audit Committee, through legal counsel, engaged the accounting firm of PricewaterhouseCoopers, LLP ("PwC"), which does not audit Provident's

---

[9]   Instead of re-attaching the exhibits to this Amended Memorandum in Support, Defendants hereby incorporate by reference Exhibits A-D, which were attached to their original Memorandum in Support.

[10]   Because Plaintiffs have relied extensively in the CAC upon "selected" portions of Provident's press releases and public filings, this Court may consider these materials in their entirety notwithstanding the fact that this is a motion pursuant to Fed. R. Civ. P. 12(b)(6). *See In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994) (*quoting Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (when ruling on a motion to dismiss, a court may consider documents whose contents are alleged in the complaint and "public disclosure documents required by law to be and which actually have been filed with the SEC"). *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (considering a press release on a motion to dismiss even though it was not attached to the complaint because "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute").

financial statements, to conduct an independent review of the circumstances underlying the first restatement.    (*See* Exhibit A at 1).    Based upon PwC's independent review, Provident's management affirmed that the first restatement resulted from unintentional accounting errors. (*Id.*).  As a result of PwC's work, however, it was determined that Provident's auto leases from 1994 – 2002 which, with the agreement of Provident's independent auditor E&Y, had been classified as direct finance leases on Provident's financial statements since 1994, did not satisfy certain technical accounting requirements for direct finance leases.  (*Id.*).  This reclassification included the auto leases in the nine securitization transactions which, with the input of E&Y, had just been reclassified as direct finance leases one month earlier as part of the first restatement. (*Id.*).  As a result, Provident reclassified the auto leases on its balance sheet as operating leases and reported them in the asset category of leased equipment.  (*Id.*).  As a result of the differences between how income and expense are generated and reported for operating leases (i.e., leased equipment) versus direct finance leases (i.e., loans), Provident's reported income decreased by an additional $44.4 million on a cumulative basis for the eight year period from 1994 through 2002. (*Id.*).  At the same time, however, this accounting change meant that Provident's income would increase by approximately the same amount in future years.  (*Id.*).  The issue underlying the second restatement was the timing of certain income, not a net reduction of income.

### E.    The Provident Stock Price

Although Provident's stock price dropped following the March 5, 2003 restatement from the pre-announcement level of $28.07 per share to $19.90 per share, the stock quickly recovered.[11]  The stock closed at $34.45 on January 22, 2004, more than $6.25 above the price prior to the first restatement last March.    Indeed, beginning after the second restatement

---

[11]   The Court may take judicial notice of public quotations of stock prices, even on a motion to dismiss.  *See In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 254 n.9 (S.D.N.Y. 2003).

announcement on April 15, 2003, Provident's stock price rose and it has continued to rise ever since.

### F.    Summary of Plaintiffs' Allegations in the CAC

Plaintiffs' CAC alleges eleven causes of action against Defendants — six causes of action based on the federal securities laws, and five causes of action based on state statutory and common law.  As in Thiemann's original complaint in this action, Plaintiffs allege violations of Sections 11, 12(2), and 15 of the Securities Act of 1933 (the "1933 Act") and Sections 10(b), 14, and 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act").  These federal securities law claims are premised on four alleged misstatements or omissions in the Prospectus, Registration Statement and Proxy Statement (the "Proxy Materials") prepared and issued relative to the OHSL-Provident merger.  (CAC ¶¶ 117-21).  Three of the four fact allegations were raised in the original complaint.  In essence, Plaintiffs maintain that Defendants intentionally misled investors by publishing Proxy Materials with allegedly false, misleading, or inadequate disclosures about:  (1) the unanimity of OHSL's Board regarding the merger with Provident; (2) Provident's level of securitization activity; and (3) OHSL Director Herron's resignation from the Board before it voted to recommend the merger to OHSL's shareholders.  (*Id.* ¶¶ 117-19).  Plaintiffs also inject the following new, unrelated fact allegation into this case as their fourth basis for relief:  the Proxy Materials were materially false and misleading because the Provident financial data contained therein was inaccurate due to unintentional auto lease accounting errors disclosed by Provident in March and April of 2003.  (*Id.* ¶¶ 87-97, 120-21).

In addition, Plaintiffs allege five state law claims, including violations of Ohio Rev. Code §§ 1707.41 and 1707.43 (CAC ¶¶ 158-72), and common-law claims for spoliation (*Id.* ¶¶ 173-77), fraud (*Id.* ¶¶ 178-79),  and breach of fiduciary duty (*Id.* ¶¶ 180-82).

## IV.    ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must contain either direct or inferential allegations respecting all material elements of the asserted causes of action. *Klusty v. Taco Bell Corp.*, 909 F. Supp. 516, 520 (S.D. Ohio 1995); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Although well-pleaded factual allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff, courts need not accept as true conclusions of law or unwarranted factual inferences. *Klusty*, 909 F. Supp. at 520 (*citing Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1974). Moreover, in the federal securities law context, a plaintiff cannot defeat a Rule 12(b)(6) motion with allegations (well-pleaded or otherwise) of statements or omissions that are immaterial as a matter of law. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119-20 (10th Cir. 1997) (dismissing federal securities claims pursuant to 12(b)(6) where allegations of misstatements and omissions, even if true, were immaterial as a matter of law). A misrepresentation or omission is material only if there is a substantial likelihood that a reasonable investor would have viewed the omitted or misrepresented fact "as having significantly altered the total mix of information made available." *Basic*, *Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (*quoting TSC Industries, Inc. v. Northway*, *Inc.*, 426 U.S. 438, 449 (1976)).

### PLAINTIFFS' FEDERAL CLAIMS

**A.     The Court Should Dismiss Plaintiffs' Section 10(b), 12(2) and 14 Claims Because They Fail to Allege Facts Sufficient to Establish that the Proxy Materials Contain Material Misstatements and/or Omissions**

The existence of material misstatements or omissions in the Proxy Materials is an element of each of Plaintiffs' causes of action for primary liability under the federal securities

laws.[12]  The "facts" alleged by Plaintiffs, however, are not sufficient to establish that the Proxy Materials contain any material misstatements or omit any material facts.  Therefore, the Court should dismiss the CAC pursuant to Rule 12(b)(6).  *Klusty*, 909 F. Supp. at 520.

In essence, the CAC fails as a matter of law because the "factual" allegations of the supposed material misstatements and/or omissions have been fabricated by Plaintiffs' counsel — these matters clearly were disclosed, constitute unwarranted factual inferences, or are legally immaterial even when taken as true.

### 1.    Plaintiffs' False Allegations of Misstatements and/or Omissions

Although the Court must accept as true all well-pleaded facts contained in the CAC when ruling on this Motion, it need not credit unwarranted factual inferences.  *Klusty*, 909 F. Supp. at 520.  Moreover, dismissal is appropriate in situations, like this case, where the disputed proxy materials actually disclose the information alleged to be missing.  *Phillips v. Kidder, Peabody & Co.*, 933 F. Supp. 303, 320 (S.D.N.Y. 1996).  Where, as here, Defendants can demonstrate that allegedly omitted information was disclosed, or that allegedly misstated information accurately was portrayed, the Court should grant a motion to dismiss despite contrary allegations in the complaint.  *Id.*  *See also In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994); *Management Assistance, Inc. v. Edelman*, 584 F. Supp. 1021, 1027 (S.D.N.Y. 1984) ("fair

---

[12]  To state a claim for securities fraud under Section 10(b)/Rule 10b-5, "a plaintiff must allege, in  connection with the purchase or sale of securities, the misstatement or omission of a **material** fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury."  *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (emphasis added).  To state a Section 11 claim, a plaintiff needs to "show that he purchased a security issued pursuant to a registration statement and that the statement made a **material** misrepresentation or omission."  *Picard Chemical Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1131 (W.D. Mich. 1996) (emphasis added).  To establish a Section 12(2) violation, "a plaintiff must show that (1) defendants offered or sold a security, (2) by the use of any means of communication in interstate commerce; (3) through a prospectus or oral communication; (4) by making a false or misleading statement of a **material** fact or by omitting to state a material fact; (5) plaintiff did not know of the untruth or omission; and (6) defendants knew, or in the exercise of reasonable care could have known of the untruth or omission."  *Wright v. National Warranty Co.*, 953 F.2d 256, 262 n.3 (6th Cir. 1992) (emphasis added).  To establish a Section 14(a) violation, a plaintiff must prove the defendants solicited proxies in violation of the federal securities laws, i.e., containing **material** misstatements or omissions.  *See Leff v. CIP Corp.*, 540 F. Supp. 857, 865-66 (S.D. Ohio 1982).

accuracy, not perfection," conveying "sufficiently accurate picture so as not to mislead," is standard by which statements in securities filings are judged) (citations omitted).

### *Information which Plaintiffs claim was omitted from the Proxy Materials actually was disclosed*

Plaintiffs allege that the Proxy Materials were materially misleading because they purportedly failed to disclose that Provident's business relied upon securitizations (CAC ¶ 118), and that former OHSL Director Herron resigned (allegedly in part in protest over the merger) before the Board voted to recommend the merger to OHSL's shareholders (*Id.* ¶ 119). Plaintiffs' assertions that these facts were not disclosed are simply incorrect.

### a)    **Provident's securitization activity**

Plaintiffs claim that the Proxy Materials were misleading because the discussion at page 13 thereof (entitled "Risk Factors") allegedly did not disclose the extent to which Provident relied on securitization of loans to generate corporate profits, or the nature of the risks involved with the activity. (CAC ¶ 118). This Court has recognized that the Proxy Materials adequately disclosed the risks of securitizing loans. (*See* 7/25/01 Order (Doc. 46) at 21). In addition, Provident's Form 10-K for December 31, 1998, as well as its Form 10-Qs for March 31, 1999 and June 30, 1999, provided extensive disclosures both of the securitization activity and of its impact on Provident's overall profits.[13] (*See* Provident 1998 10-K Annual Report at 18-20; Provident March 31, 1999 10-Q at 4, 18-19; Provident June 30, 1999 10-Q at 4, 20-22). The information in these documents expressly was incorporated by reference into the Proxy Materials. (*See* Proxy Statement at 64-65).

---

[13]  *See Gupta*, 900 F. Supp. at 1228 (when considering a 12(b)(6) motion, courts may look to disclosure documents required to be filed with the SEC); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 769-70 (2d Cir. 1991) (same).

Investors are assumed to be aware of such publicly available information. *Weiglos v. Commonwealth Edison*, 892 F.2d 509, 515 (7th Cir. 1989); *see also Picard Chemical, Inc. v. Perrigo Co.*, 940 F. Supp. 1101, 1123 (W.D. Mich. 1996) (where information is contained in a document filed with the SEC, investors are deemed to have knowledge of such matters); *Basic, Inc.*, 485 U.S. at 231-32 (omissions immaterial if investors have knowledge of the truth). Provident's public filings clearly are part of the "total mix of information" that was made available to OHSL shareholders — the information contained in the filings did not have to be included in the Proxy Materials. Any investor could determine how much of Provident's overall net profits in 1998 and 1999 resulted from securitization activities through a simple arithmetic calculation.[14] These facts, therefore, clearly were disclosed in Provident's public SEC filings which are incorporated in the Proxy Materials, and supplement them, as a matter of law.[15] Plaintiffs' claims related to Provident's securitization activity fail to state a claim for relief.

**b)    Herron's resignation**

Plaintiffs contend that the table listing OHSL directors and executive officers found at page 63 of the Proxy Materials was presented in such a manner as to conceal Herron's resignation from the Board and his purported opposition to the merger. (CAC ¶¶ 50, 65). Plaintiffs also argue that the OHSL shareholders had no way of knowing that Herron was no longer an OHSL director after July 31, 1999 because no Form 8-K ever was filed. (*Id.* ¶¶ 50, 62(a)). Nothing could be further from the truth.

---

[14]  This is the same calculation apparently performed by Plaintiffs' counsel, from publicly available information, in connection with Thiemann's opposition brief to Defendants' motion to dismiss the original complaint in this case. *See* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss at 7 ("In fact, nearly half of Provident's reported earnings were attributable to such transactions . . . .").

[15]  At the very least, these circumstances refute of a finding of actionable scienter necessary to sustain Plaintiffs' Section 10(b)/Rule 10b-5 claim. *See infra*, at 27-28.

First, any OHSL shareholder could determine that Herron had recently resigned his Board membership by comparing the table published in the Proxy Materials — which does not list Herron as an OHSL Director as of July 31, 1999 — with the Director list published in OHSL's 1998 10-K Annual Report, published a few months earlier and incorporated by reference into the Proxy Materials.  (*See* Proxy Statement at 63-65; OHSL 1998 10-K Annual Report at KMK 01036).   Herron's resignation was thus publicly available and readily determinable information, making the Proxy Materials' failure to specifically discuss it immaterial as a matter of law.  *Basic, Inc.*, 485 U.S. at 231-32 (omissions immaterial if investors have knowledge of the truth).

Second, the OHSL Defendants had no duty to disclose Herron's resignation in a Form 8-K.[16]   Item 6 ("Resignations of Registrant's Directors"), under the section of the General Instructions to SEC Form 8-K entitled "Information to be Included in the Report," provides:

> If a director has resigned or declined to stand for re-election to the board of directors since the date of the last annual meeting of shareholders <u>because of</u> a disagreement with the registrant on any matter relating to the registrant's operations, policies or practices, <u>and</u> if the director has furnished the registrant with a <u>letter describing such disagreement and requesting that the matter be disclosed</u>, the registrant shall state the date of such resignation or declination to stand for re-election and summarize the director's description of the disagreement.

SEC Form 8-K, Item 6, subsection (a) (emphasis added).   Herron's July 27, 1999 letter of resignation says absolutely nothing about any disagreement with the Board's decision to pursue the merger with Provident, much less request that the matter be disclosed.[17]   Herron's own letter

---

[16]  As noted above, the Proxy Statement made it clear that OHSL solely was responsible for the OHSL information included in the Proxy Materials, and that Provident solely was responsible for the information related to Provident also included therein.  *See supra*, at 10.

[17]  Given Plaintiffs' reference to Herron's submission of his resignation (CAC ¶ 62(a)) and the letter's obvious relevance to Plaintiffs' claim that "Herron had resigned in part because of his opposition to the OHSL-Provident merger" (*Id.* ¶ 51), Defendants have attached Herron's resignation letter as Exhibit B to their original Memorandum

unequivocally states that Herron resigned "[d]ue to increasing responsibilities and time commitments with Michelman, Inc."  Even assuming that Herron had resigned from the OHSL Board "<u>in part</u> because he strongly disagreed with the decision to engage in negotiations of a definitive nature with PFGI" (which Defendants deny), such partial motivation is not sufficient to trigger OHSL's obligation to disclose the resignation in a Form 8-K.[18]   (CAC ¶ 50) (emphasis added).   Pursuant to the plain language of Item 6, such duty only arises when a director has resigned "<u>because of</u> a disagreement with the registrant," and "furnished the registrant with a letter <u>describing</u> such disagreement and <u>requesting</u> that the matter be disclosed."  Herron did none of these things.  As a matter of law, his resignation did not have to be disclosed <u>because of Herron's own actions</u>.

Finally, even if Plaintiffs' allegations regarding Herron's motivation for resigning were true, it was totally immaterial to the merger.  Proxy statements are designed to provide material information so that shareholders can make an informed choice about a corporate decision, such as whether OHSL should merge with Provident.  No definitive merger agreement existed at the time of Herron's resignation on July 27, 1999.  Thus, the alleged reasons for his resignation could not possibly be material to the Provident merger proposal presented to OHSL shareholders

---

in Support.  *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (*citing Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir.1997)) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.").

[18] Clearly Plaintiffs premise their allegation that Herron resigned from the OHSL Board partially in protest over the proposed merger on Herron's deposition testimony.  It is worth noting in this regard that when Plaintiffs' Counsel, Michael Brautigam, first asked Herron if he was "resigning in part in protest," Herron responded:  "I don't know that 'protest' characterizes it.  It was a very low profile type of thing."  (Herron Dep., Vol. I at 30).  Ten days later, however, Herron's testimony totally flip-flopped without explanation.  During the continuation of his deposition, Brautigam handed Herron a copy of the transcript from his first deposition session, asking if there was anything Herron "would like to change" or "amplify with respect to the first day of [his] deposition."  (*Id*., Vol. II at 59).  In response, Herron referred to page 30 and recharacterized his testimony as follows:  "[T]he question was had I resigned in part in protest.  Being from the 1960s, my immediate image of protest is something a little more violent than what I was involved with here.  Protest, of course, is just an expression of disapproval.  And in that sense, I certainly resigned in protest."  (*Id*. at 61).  Clearly this ambiguous and suspicious sequence of testimony does not rise to the level of a material "fact" requiring disclosure.

in the September 24, 1999 Proxy Materials.  Under *TSC Industries*, this information, even if true, would have been immaterial as a matter of law.  Even if one assumes that Herron resigned because he opposed a sale of OHSL, this cannot be said to be "so obviously important to investors to have significantly altered the 'total mix' of information" concerning the ultimate merger proposal.  *TSC Industries*, 426 U.S. at 449-50.  Plaintiffs want this Court to assume that Herron's alleged position in July of 1999 somehow equates to opposition to a merger proposal which he never saw.  Such a leap of faith cannot defeat a motion to dismiss.  *Klusty*, 909 F. Supp. at 520.

### *Information Plaintiffs falsely claim was misstated*

Plaintiffs assert that the cover letter accompanying the Proxy Materials materially misstated the truth about dissension on the OHSL Board and the purported lack of unanimity in approving the OHSL-Provident merger.   (CAC ¶¶ 62, 117).   The cover letter includes the following contested statement:

> Your Board of Directors unanimously approved the acquisition and believes that it is in the best interest of OHSL stockholders. The Board unanimously recommends and advises that you approve the acquisition at the Special Meeting so that the transactions may be completed.

(*See* Proxy Statement at 1).  Plaintiffs premise their allegation that this statement is materially false and misleading upon the following "facts":

(1)   Despite his vote as a director in favor of the transaction, OHSL CEO and Board member defendant Hanauer, voted his personal shares against the merger and did not believe it was in the best interest of OHSL's shareholders (CAC at ¶¶ 55, 64);

(2)   OHSL Director Herron resigned in part in protest of the merger (*Id.* ¶¶ 50, 62(a));

(3)   Brinker abstained from voting on the transaction (*Id.* ¶¶ 11, 62(b));

> (4) OHSL Director McKiernan, a member of the *ad hoc* committee, did not vote on the transaction because he was out of the country at the time the vote was taken (*Id.* ¶ 62(c)).

Plaintiffs' claims that Hanauer did not believe that the proposed transaction was in the best interests of OHSL and its shareholders (CAC ¶ 64), and that Hanauer believed that the statement in the Proxy Materials that OHSL's Board unanimously had approved the merger was misleading because Brinker and McKiernan did not vote (*Id.* ¶ 68), are not supported by Hanauer's deposition testimony.[19]  In May, 1999, Hanauer opposed pursuing <u>any</u> possible sale or merger transactions for OHSL because he wanted OHSL to remain independent.  (*See* Hanauer Dep. at 93).  Once the OHSL Board made the strategic decision to pursue a possible sale, however, Hanauer never voted against the Provident transaction in his capacity as director.  (*See id.* at 63 (Hanauer voted in favor of the merger at the OHSL Board meeting on August 2, 1999)).  Hanauer testified repeatedly that the deal <u>was fair</u>, which was why he voted for it.  (*See id.* at 118, 128, 257).  Indeed, when asked if he thought that the merger was a good transaction, Hanauer responded:

> In [the October 25, 1999 Special Meeting], when it was asked, is this — I believe the question was, is this a good transaction, is it a good transaction I have to answer yes.  Is it a transaction that Ken Hanauer would have gone out and sought, no, but that wasn't the question I was asked.  I wasn't ready to retire at 50.

(*Id.* at 118).

Moreover, Hanauer testified that the OHSL Board <u>had</u> unanimously voted to recommend the transaction.  He explained that McKiernan, who was out of the county at the time of the vote,

---

[19]  Because Plaintiffs quote "selected" portions of Hanauer's testimony in the CAC, the Court may consider the entire deposition in ruling on this motion. *See Gupta*, 900 F. Supp. at 1228 (when ruling on a motion to dismiss, a court may consider a variety of documents in addition to the complaint including, but not limited to, documents whose contents are alleged in the complaint but which are not physically attached to the pleading); *Jackson*, 194 F.3d at 745 (court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim).  A complete copy of the Hanauer deposition previously has been filed with the Court; relevant portions will be referred to herein.

was extremely pro-merger, and that Brinker, as Chairman of the Board, was not required to vote unless there was a tie, and often did not vote.[20]   (Hanauer Dep. at 743-59).   Hanauer further testified that when Brinker called for a vote of the OHSL Board on the transaction, there were no "nays" and that Brinker, as the presiding director, declared the vote unanimous at the time.   (*Id.*). Indeed, although McKiernan was not present at the August 2, 1999 Special Meeting during which the Board voted to approve the Agreement, the minutes from the subsequent August 26, 1999 meeting — at which McKiernan <u>was</u> present — clearly indicate the Board's unanimous approval of the minutes from the August 2nd meeting, which stated that "the Board concluded that the Definitive Agreement" between Provident and OHSL "was satisfactory," and that "the attached resolutions were unanimously adopted."[21]

Hanauer complied with his fiduciary duty as an OHSL Director by making an informed, good faith vote, in the best interest of OHSL's shareholders, in favor of the Provident transaction at the Board level.   He had no duty at the October 25, 1999 Special Meeting, or at any other time, to disclose to the shareholders that he intended to vote his personal shares against the OHSL-Provident merger, nor is there any allegation that he had reached any such decision before the Proxy Materials were sent out on September 24, 1999.   Similarly, Hanauer had no further duty to the shareholders to disclose his personal motivations, namely, that he intended to vote his own shares against the transaction because he was "not ready to retire at 50."   (Hanauer Dep. at 118).

---

[20]   Even Herron testified that he had "no doubt at all" that McKiernan would vote in favor of the transaction, and that Brinker, who would only vote "[i]f a tie needed to be broken" was in favor of "continu[ing] negotiations with Provident Financial in order to complete a definitive agreement."   (Herron Dep., Vol. II at 261-63).

[21]   The minutes from both of these meetings were introduced as Plaintiff's Exhibit 13 to Clifford Roe's deposition, which Plaintiffs cite in the CAC.   For the reasons cited *supra*, note 19, the Court may consider the entire Roe deposition in ruling on this Motion to Dismiss.   Accordingly, Defendants have attached the August 2, 1999 and August 26, 1999 minutes to their original Memorandum in Support as Exhibits C and D, respectively.   The notation "M.U.C." in the August 26, 1999 minutes approving the August 2, 1999 resolution means "motion unanimously carried."   (Hanauer Dep. at 412).

Significantly, the CAC completely fails to allege that Hanauer told any of the other OHSL directors or anyone at Provident about how he intended to vote his personal shares.[22]   As Hanauer himself testified, his personal feelings about the merger simply were not material to OHSL's shareholders.  (*See id.* at 128, 242, 262).

Finally, as explained above, Herron's purported motivation for resigning from the OHSL Board, which is refuted by his own letter of resignation, was not material to the merger.  *See supra*, at 20-21.

Given this undisputed testimony, Plaintiffs' allegations that the cover letter to the Proxy Materials allegedly misstated information lack evidentiary support.  The unanimity of the OHSL Board accurately was portrayed.   Accordingly, the Court should dismiss Plaintiffs' claims premised on the cover letter.  *Phillips*, 933 F. Supp. at 320; *Gupta*, 900 F. Supp. at 1228.

**B.     The Court Should Dismiss Plaintiffs' Claim of Securities Fraud Under Section 10(b)/Rule 10b-5 Because Plaintiffs Have Failed to Adequately Allege Scienter and Show Reliance on the Proxy Materials**

Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder by the SEC prohibit "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security."  *Miller v. Champion Enterprises*, *Inc.*, 346 F.3d 660, 671 (6th Cir. 2003) (*quoting Morse v. McWhorter*, 290 F.3d 195, 799 (6th Cir. 2002)).  In order to state a claim under Section 10(b)/Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury."   *Id*. (*quoting In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999).

---

[22]  Quite the opposite, Plaintiffs specifically allege that Hanauer did <u>not</u> disclose his intentions to anyone.  (CAC ¶ 60).

1.    **Plaintiffs' Section 10(b)/Rule 10b-5 Claim Fails as a Matter of Law Because Plaintiffs Have Not Adequately Pled Scienter**

In 1995, Congress passed the PSLRA to address its concern that Federal Rule of Civil Procedure 9(b) had "not prevented abuse of the securities laws by private litigants." *Id.* (*citing* H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 818). The PSLRA addressed this concern by placing more demanding pleading requirements on plaintiffs. Under the PSLRA, plaintiffs who adequately allege a misstatement or omission of material fact with specificity must also establish that the defendant acted with the requisite scienter, i.e., the complaint must "state *with particularity* facts giving rise to a strong inference that the defendant acted with the required state of mind." *Miller*, 346 F.3d at 671-72 (*quoting* 15 U.S.C. § 78u-4(b)(2)). In the Sixth Circuit, as in most other circuits, the required state of mind for securities fraud cases is actual knowledge or "recklessness," the latter of which has been defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979); *see also Miller*, 346 F.3d at 672 (quoting same in noting that recklessness is the required state of mind for "statements of present or historical fact").

To survive a motion to dismiss in the post-PSLRA era, plaintiffs must plead actual facts — not merely assert speculation or conclusions — that give rise to a "strong inference" that the defendant(s) made false or misleading statements with actual knowledge or recklessness. *Miller*, 346 F.3d at 676. "Plaintiffs may not plead scienter by alleging facts merely establishing that defendant had a motive and opportunity to commit securities fraud if those facts do not establish simultaneously that defendant acted with the requisite state of mind." *Fidel v. AK Steel Holding Corp.*, 2002 WL 31545952, at *6 (S.D. Ohio Sept. 19, 2002); *see also Comshare*, 183

F.3d at 551 ("the bare pleading of motive and opportunity does not, standing alone, constitute the pleading of a strong inference of scienter"); *Miller*, 346 F.3d at 676 (holding that a "strong inference" is "the most probable of competing inferences").

The Sixth Circuit has expressly instructed its District Courts to ignore conclusory labels in a plaintiff's complaint and concentrate on the facts alleged therein to determine whether those facts "produce a strong inference of scienter in securities fraud." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 551-52 (6th Cir. 2001). If sufficiently particular facts are absent from a complaint, it must be dismissed. *Miller*, 364 F.3d at 673. In this case, then, the CAC must contain specific, well-pleaded facts establishing that Defendants knew about or recklessly disregarded evidence that: (1) Provident relied extensively on securitization of loans to generate profits; (2) the table in the Proxy Materials listing OHSL's current directors and their beneficial ownership concealed from the OHSL shareholders the fact of Herron's resignation and his purported opposition to the merger; (3) the OHSL Board did not unanimously approve and recommend the merger; and (4) Provident's financial statements included in or incorporated by reference in the Proxy Materials were inaccurate due to accounting errors on nine auto lease securitization transactions.

The requisite specific facts include "red flags" that should have put Defendants on notice of these alleged misstatements and omissions in the Proxy Materials. *Comshare*, 183 F.3d at 553. Nowhere in the CAC, however, do Plaintiffs allege any facts that demonstrate the "who, what, when, where or why" of the alleged fraud. Indeed, Plaintiffs do not point to a single "red flag" that Defendants intentionally or recklessly ignored. The Sixth Circuit has provided a list of factors that are typically relevant to scienter in securities fraud actions:

> (1)    insider trading at a suspicious time or in an unusual amount;

(2)     divergence between internal reports and external statements on the same subject;

(3)     closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information;

(4)     evidence of bribery by a top company official;

(5)     existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit;

(6)     disregard of the most current factual information before making statements;

(7)     disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication;

(8)     the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and

(9)     the self-interested motivation of defendants in the form of saving their salaries or jobs.

*Helwig*, 251 F.3d at 552.

The CAC is most notable for the absence of *any* of the above facts.  Instead, Plaintiffs plead unsubstantiated, conclusory allegations like:

> Defendants had actual and/or constructive knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose the true facts, even though such facts were available to them.

(CAC ¶ 148).  Without any particularized facts that demonstrate Defendants knew of or recklessly ignored the alleged misstatements and omissions in the Proxy Materials, Plaintiffs are not entitled to relief under Section 10(b) or Rule 10b-5.

As mentioned above, the extensive disclosures in both the Proxy Materials themselves and in Provident's public filings about Provident's securitization activity and the risks associated therewith refute a finding of actionable scienter with respect to this fact allegation.  The same is

true regarding Herron's resignation, which was disclosed in the Proxy Materials and in OHSL's public filings, and which Defendants had no duty to disclose in a Form 8-K. And as regards the statement in the cover letter on the subject of the OHSL Board's unanimous recommendation of the merger, Plaintiffs have not pled actual facts giving rise to a "strong inference" that Defendants did not truly believe the Board to be unanimous. In fact, the evidence adduced thus far indicates that the opposite is true.

Finally, with respect to Plaintiffs' allegation that the Proxy Materials contained inaccurate Provident financial data, Plaintiffs have not alleged any "red flags" that should have put any of the Defendants — least of all the OHSL Defendants — on notice that the auto lease transactions had been improperly accounted for. They have not raised any allegations of suspicious insider trading. They do not (and cannot) allege that there were any internal reports that contained different information from that contained in Provident's public filings. To be sure, because the accounting errors went unnoticed for years, they cannot allege that the correction was close in time to the fraud. Plaintiffs raise no allegations of bribery or ancillary lawsuits. They allege no facts to support an allegation that any of the Defendants disregarded current information before they made public statements. They do not allege that the Proxy Materials were purposefully complicated to obscure misstatements. They do not allege insider trading by interested directors, or threats to Defendants' salaries or jobs. Plaintiffs allege nothing.

Plaintiffs' allegations do not raise any inference, let alone the "strong inference" of scienter required by the PSLRA. Instead, Plaintiffs base their fraud claim on the sole fact that an accounting error was made and later corrected. Allegations of accounting errors alone, however, do not constitute sufficient bases for a securities fraud claim in the post-PSLRA era. *Comshare*,

183 F.3d at 553 ("failure to follow GAAP is, by itself, insufficient to state a securities fraud claim"); *see also Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1191 (10th Cir. 2003) ("[c]laims of accounting irregularities or violations of Generally Accepted Accounting Principles ('GAAP') support a claim of scienter only when 'coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors'") (citation omitted); *Svezzese v. Duratek, Inc.*, 2003 WL 21357313, at *4 (4th Cir. June 12, 2003) (dismissing action where plaintiffs "fail to point to any evidence that Duratek's management knew of or recklessly disregarded the problematic accounting practices"); *Kushner v. Beverly Enterprises, Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) ("[a]llegations of GAAP violations are insufficient to state a securities fraud claim unless coupled with evidence of corresponding fraudulent intent").

The District Court's discussion of the inadequacies of the plaintiffs' complaint in *In re Fritz Companies Securities Litigation*, 282 F. Supp. 2d 1105 (N.D. Cal. 2003), is particularly relevant to this case. In *Fritz*, a typical allegation in the plaintiffs' complaint stated: "Defendants knew or recklessly disregarded that Fritz's financial statements for the quarter ended 2/29/96 materially overstated the Company's results." *Id.* at 1112-13. The plaintiffs also alleged that the defendants' financial statements "were artificially and improperly inflated." The plaintiffs failed, however, "to establish with detailed, verifiable facts, that defendants knew the costs they reported were inaccurate." *Id.* at 1113. Moreover, the plaintiffs' complaint primarily relied on the fact that the defendants had to restate Fritz's financial results, which, the plaintiffs claimed, showed the defendants have "admitted that each document publishing the original financial result for the quarter ended February 29, 1996 contained an untrue statement of material fact." *Id.* Noting that the plaintiffs were correct to allege that "restatements are only permitted to correct material accounting errors that existed at the time the financial statements

were issued," the Court nevertheless stated: "This allegation proves at best that defendants made a mistake, not that they had intentionally deceived plaintiffs. Furthermore, the publication of a false statement cannot rise to the PSLRA standard without some precise, verifiable allegations concerning defendants' knowledge of the actual circumstances at the time of the statement." *Id*. (citation omitted).

Like the complaint in *Fritz*, the CAC in this case contains nothing more than generalized allegations about accounting errors and other alleged misrepresentations without any detailed, verifiable factual allegations to support the securities fraud claim. Accordingly, because Plaintiffs have failed to plead their allegations against Defendants with the requisite particularity under Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA, the Court should dismiss Plaintiffs' Section 10(b)/Rule 10b-5 claim.

### 2. Plaintiffs' Failure to Demonstrate Reliance on the Allegedly Misleading Proxy Materials is Fatal to Their Securities Fraud Claim

Contrary to Plaintiffs' allegation at paragraph seven of the CAC, this Court has found that Thiemann did <u>not</u> rely on the allegedly misleading Proxy Materials, and that he concluded on the basis of the proxy that "the merger was a bad investment." (12/15/03 Order (Doc. 227) at 7). Thiemann therefore "clearly was not misled by the materials." (*Id*. at 8). Neither were the Meiers, who did not vote on the merger and, therefore, effectively voted against it. (CAC ¶ 8). The Meiers cannot claim that they relied on any alleged misrepresentations in the Proxy Materials if they effectively opposed the proposed merger. Thus, for the additional reason that Plaintiffs have not demonstrated reliance on the allegedly misleading Proxy Materials, Plaintiffs fail to state a claim under Section 10(b) and Rule 10b-5.

**C.**    **The Court Should Dismiss Plaintiffs' Section 11 Claim for the Reason that the Individual Defendants are Not Liable Under Section 11 for the Expertised Portions of the Proxy Materials**

Section 11 of the 1933 Act imposes liability upon certain enumerated persons for material misstatements or omissions contained in a registration statement.    15 U.S.C. § 77k. Persons other than the issuer, however, may also avoid liability under Section 11 by showing that they relied on the opinion of an expert in regard to any part of the registration statement, and that this reliance was reasonable.    15 U.S.C. § 77k(b)(3)(C).[23]    In particular, the courts widely recognize that directors of large companies should not be forced to second guess the informed decisions of experts.    "[A]lmost by definition, it *is* reasonable to rely upon financial statements certified by public accountants."    *John Nuveen & Co., Inc. v. Sanders*, 450 U.S. 1005, 1010 (1981) (Powell, J., joined by Rehnquist, J., dissenting from denial of certiorari) (emphasis in original).    *See also In re Worlds of Wonder Sec. Litig.* ("*WOW*"), 35 F.3d 1407, 1421 (9th Cir. 1994), *cert. denied*, 116 S. Ct. 185 (1995) (holding that the independent auditor accounting decisions (to permit revenue recognition) upon which plaintiffs attacked defendants' financial statements "represent precisely the type of 'certified' information on which section 11 permits non-experts to rely").

As Plaintiffs allege, Defendant E&Y has at all relevant times been Provident's independent auditor (CAC ¶ 32), contractually undertaking and agreeing with Provident to provide expert services "in connection with the subject transaction and so [holding] themselves out as such in the Proxy Materials/Registration Statement" (*Id.* ¶ 58).    E&Y thus expressed

---

[23] The standard of reasonableness under Section 11 is "that required of a prudent man in the management of his own property." 15 U.S.C. § 77k(c). Though the exercise of reasonable care does involve some factual investigation, it has been said that whether a Section 11 defendant exercised due diligence is a question best decided as a matter of law. *In re Software Toolworks, Inc. Sec. Litig.*, 789 F. Supp. 1489 (N.D. Cal. 1992), *aff'd in part, rev'd in part*, 38 F.3d 1078 (9th Cir. 1994) (detailing that because of the importance of the issues, the need for uniformity, the statutory nature of the defense, and the complexity of the issues, a decision by the court is appropriate).

opinions on all of the Provident financial data that appears in the Proxy Materials, determining that this information was accurate, contained no material misrepresentations, and was prepared in accordance with GAAP.  (*Id*. ¶ 32).

Clearly, the OHSL and Provident Individual Defendants were justified in relying upon E&Y's expert certification of the Provident financial data included in the allegedly misleading Proxy Materials.  Moreover, there is no contention in the CAC that any of the Defendants withheld relevant information from E&Y as it blessed the classification of the auto leases as originally designated.  Given that the proper classification of revenue falls squarely within the category of certified information upon which Section 11 permits non-experts to rely, the OHSL and Provident Individual Defendants are entitled to the dismissal of Plaintiffs' Section 11 claim to the extent it is based on allegations of accounting errors.  *WOW*, 35 F.3d at 1421.

### D. Dismissal of Plaintiffs' Section 12(2) Claim Against the Individual Defendants is Further Warranted on the Basis that Plaintiffs Have Failed to Allege Any Facts Demonstrating that They Were Statutory Sellers

The CAC charges that the OHSL and Provident Individual Defendants violated Section 12(2) of the 1933 Act.  15 U.S.C. § 77l(a)(2).  Section 12(2) imposes liability on a defendant who "offers or sells a security" for material misstatements or omissions contained in a "prospectus or oral communication" to the purchaser.  15 U.S.C. § 77l(a)(2).  The Supreme Court has articulated an exacting standard for determining when a party "offers or sells" a security for purposes of this section.  *See Pinter v. Dahl*, 486 U.S. 622 (1988).  Under *Pinter*, a person is liable as a Section 12 "statutory seller" of a security only if he passed title to the purchaser, offered to sell the security, or solicited the purchase, "motivated at least in part by a desire to serve his own financial interests or those of the securities owner."[24]  *Id*. at 641-48.

---

[24]  Although *Pinter* was decided under Section 12(1), courts have almost uniformly applied the rationale of the case to Section 12(2).  *See, e.g., Smith v. American Nat. Bank & Trust Co.*, 982 F.2d 936, 942 (6th Cir. 1992) (the test for

Unless one of these factors is present, substantial participation in causing a sale to take place, even if accompanied by scienter, is insufficient to bring a defendant within the ambit of Section 12(2).  *Id.* at 648-54.  As the *Pinter* Court observed, "[Section] 12's failure to impose express liability for mere participation in unlawful sales transactions suggests that Congress did not intend that the section impose liability on participants' collateral to the offer or sale."  *Id.* at 650.

The lower federal courts have interpreted the *Pinter* decision on facts similar to those in this case.  For example, in *Mabon, Nugent & Co. v. Borey*, 127 B.R. 727 (Bankr. S.D.N.Y. 1991), the plaintiff claimed that the board of directors of a corporation from which the plaintiff purchased securities had violated Section 12(2).  The "main thrust" of the plaintiff's Section 12(2) claim against these defendants was that "they were members of the board of directors which authorized the transactions."[25]  *Id.* at 735.  The court held that such allegations were legally insufficient to state a Section 12(2) claim.  *Id.*  A director cannot be deemed a statutory seller for purposes of Section 12(2) merely for serving in an executive position.  Moreover,

> [a] director's act in authorizing the sale of a company's securities is not sufficient to constitute him a seller of those securities under § 12(2).  On the contrary: such individuals are quintessentially collateral participants; and *Pinter* teaches that this will not do.

*Id.*

Other courts are in accord with *Mabon's* interpretation and application of *Pinter*.  *See, e.g., Endo v. Albertine*, 812 F. Supp. 1479, 1494 (N.D. Ill. 1993) (holding that allegation that

---

Section 12(2) liability is "whether the defendant either passed title or offered to do so, or solicited an offer"); *Wilson v. Saintine Exploration & Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir. 1989) (regarding the language in Sections 12(1) and 12(2) as identical in meaning, and therefore applying *Pinter* analysis to Section 12(2) claims).

[25]  More specifically, the complaint alleged that the directors were "'sellers or offerors' by reason of their review, approval and authorization of the offer, solicitation, and sale of securities to [plaintiff] by means of the several documents alleged; their knowledge of the material untrue statements and omissions contained in those documents, or the knowledge they would have had but for their lack of exercise of reasonable care; and their financial interest in the sale of the securities to [plaintiff] resulting from their positions as directors, and officers of the companies and their significant equity holdings in [the company whose securities plaintiff purchased]."  *Id.* at 734.

directors "played a substantial part in the sale of the securities by assisting or participating in the preparation of the Registration Statement and Prospectus," without indication of any meaningful contact between plaintiffs and directors, failed to state a claim for Section 12(2) liability); *Copland v. Grumet*, 88 F. Supp. 2d 326 (D.N.J. 1999) (granting motion to dismiss where complaint contained no allegations of direct solicitation of plaintiffs by defendant, merely allegations that defendant was involved in producing information that was incorporated into Registration Statement and Prospectus).

In light of the foregoing authority, it is clear that Plaintiffs' allegations regarding the OHSL and Provident Individual Defendants are insufficient in law to state a Section 12(2) claim. The CAC contains no allegations that these Defendants either passed title to or directly solicited offers from anyone. And though the CAC does allege that the Individual Defendants were aware of material misrepresentations in the Proxy Materials, the court in *Mabon* deemed an identical allegation in the complaint legally insufficient to support a Section 12(2) claim. 127 B.R. at 734; *see also supra*, note 26. In short, because Plaintiffs' argument hinges on the OHSL and Provident Individual Defendants' mere status as directors, the CAC fails to state a claim under Section 12(2).

**E.      The Court Should Dismiss Plaintiffs' Section 10(b), 11, 12(2) and 14 Claims Because They Are All Time-Barred**

Plaintiffs' federal securities claims related to alleged misrepresentations based on Provident's restatement of earnings in 2003 are time-barred by the three-year statute of repose. *See* 15 U.S.C. §§ 77m and 78i(e). It is clear that the securities in the OHSL-Provident merger were offered and the sale took place by December 3, 1999, and that Provident's restatement of its financials in March and April of 2003 occurred more than three years after this offer and sale. The Supreme Court has ruled that the three-year statute of repose sets an "outside limit." *Lampf,*

*Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). "The three-year period is an absolute limitation which applies whether or not the investor could have discovered the violation." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 704 (2d Cir. 1994). *See also SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982) ("the statutory language requires the conclusion that Congress meant the bar to be absolute").

The OHSL and Provident Defendants incorporate by reference the arguments of the other defendants who address this issue in greater detail.

### F.  The CAC Fails to Adequately Plead Control Person Liability as to Hanauer, Hoverson, and Cook

Here, Plaintiffs claim that Defendants Hanauer, Hoverson, and Cook should be deemed control persons under Section 15 of the 1933 Act and Section 20(a) of the 1934 Act. (*See* Counts III and IV of the CAC). "A director of a corporation is not automatically liable as a controlling person." *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir. 1981). To state a claim for control person liability, a plaintiff must allege that the particular defendant had some actual influence over the allegedly misleading information, or actually participated in the corporation's operation. *Id.*

Plaintiffs fail to allege that Provident Director Cook participated in preparation of the Proxy Materials in any way. Literally, the only fact Plaintiffs allege about Cook is that he "signed the Registration Statement containing the Proxy Materials filed with the SEC, and distributed to plaintiffs, and class members." (CAC ¶ 19). This Court has stated that "[t]he mere appearance of one's name in allegedly false and misleading proxy materials is insufficient as a matter of law to trigger control person liability." (7/25/01 Order (Doc. 46) at 24 (*citing SEC v. Falstaff Brewing Co.*, 629 F.2d 62, 68 (D.C. Cir. 1980); *Yamamoto v. Omiya*, 564 F.2d 1319,

1322-23 (9th Cir. 1977))). Hence, Plaintiffs' control person claim against Cook must be dismissed for failure to state a claim.

Similarly, Plaintiffs assert that Hoverson "signed the Proxy Materials/Registration Statement," which, Plaintiffs further allege, "contained materially false and misleading statements, including [Provident's] admittedly materially false and misleading financial statements." (CAC ¶ 18). Plaintiffs quote two public statements made by Hoverson regarding the unintentional accounting errors that caused the 2003 restatements, presumably to imply that Hoverson controlled the content of the financial statements that were incorporated in the Proxy Materials. (*Id*.). Yet Plaintiffs do not actually allege that Hoverson had any involvement with the auto lease securitization transactions or the erroneous financial model that accounted for them. They simply allege that, as "President and Chief Executive Officer of [Provident] at all relevant times prior to the merger," Hoverson "directed, managed and controlled the daily activities of Provident." (*Id*.). This is nothing more than a conclusory allegation that is insufficient to state a claim for control person liability as pertains to the allegedly misleading Proxy Materials. Accordingly, the Court should dismiss Plaintiffs' Section 15 and 20(a) claims against Hoverson.

With respect to Hanauer, Plaintiffs contend that "Defendant Hanauer, because of his position of control and authority as both an officer and director of OHSL, controlled the contents of the Proxy Materials/Registration Statement that he signed and distributed on his own and OHSL's behalf." (CAC ¶ 16). Plaintiffs' allegation supposedly is supported by Hanauer's deposition testimony in the State Court Action, which Plaintiffs summarize and twist to concoct a completely inaccurate description of his role with respect to the Proxy Materials that OHSL issued to its shareholders. Plaintiffs cannot, however, defeat a motion to dismiss with conclusory

allegations or unwarranted factual inferences. *Klusty*, 909 F. Supp. at 520; *Phillips*, 933 F. Supp. at 320. Hanauer unambiguously testified that he did not believe that the Proxy Materials contained any material misstatements or omissions:

> **Q (Plaintiffs' Attorney Brautigam):** Do you think that there are any material facts in this document that are omitted?
>
> **Hanauer:** No.
>
> **Q:** Do you think that there are any material facts in this document that are misstated?
>
> **Hanauer:** No.

(Hanauer Dep. at 274). Given Hanauer's unequivocal denial that any of the alleged misstatements were material, or that any of the alleged omissions should have been included in the Proxy Materials, it is clear that Plaintiffs' false portrayal of Hanauer's role in the preparation of the Proxy Materials is legally insufficient and fails to state a claim.

In addition, Plaintiffs fail to allege that Hanauer actually participated in drafting or otherwise influenced the expertised portions of the Proxy Materials. Plaintiffs do not allege that Hanauer had any involvement with or control over the contents of Provident's allegedly false financial statements, the descriptions of the accounting methodology used by Provident, or the descriptions of Provident's securitization activity included in the Proxy Materials. (*See* CAC ¶ 120). Consequently, Plaintiffs fail to state a claim against Hanauer for control person liability, at least with respect to the expertised parts of the Proxy Materials.

Finally, because control person liability is derivative, Plaintiffs' failure to state a claim under Sections 10(b), 11, 12(2), and 14 requires the Court's dismissal of their Section 15 and 20(a) claims as well. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 669 (7th Cir. 1998) ("a control person can be held accountable only if there is an underlying violation of the securities laws"). *See also In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 560 (D. Del. 2002)

(plaintiff must establish an underlying violation by a controlling person or entity in order to maintain a cause of action for control person liability under Section 20(a)); *In re Enron Corp. Sec.*, *Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 598 (S.D. Tex. 2002) (to survive a motion to dismiss a claim for controlling person liability under Section 15, plaintiff must allege an underlying primary violation).

## PLAINTIFFS' STATE LAW CLAIMS

### G.    Four of Plaintiffs' Five State Law Claims are Preempted by SLUSA

SLUSA bars Plaintiffs' state law claims of common-law fraud, breach of fiduciary duty, and Ohio securities law violations.[26]  Under SLUSA, no "covered class action" based on the statutory or common-law of any state alleging misrepresentations, omissions, or the use of deception in connection with the purchase or sale of a "covered security" may be maintained by a private party in federal or state court.  15 U.S.C. § 77p(b).  A "covered class action" includes any lawsuit, like this one,

> in which damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members.

15 U.S.C. § 77p(f)(2)(A)(i)(I).

---

[26]  *See In re Enron Corp. Sec.*, *Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 632 (S.D. Tex. 2003) (*citing Spielman v. Merrill Lynch Pierce, Fenner & Smith*, 332 F.3d 116, 121-23 (2d Cir. 2003)) ("SLUSA, which amended the Securities Act of 1933 and the Securities and Exchange Act of 1934, aimed to protect corporations from securities fraud strike suits and 'meritless class actions' and abusive discovery practices of litigious investors by making federal courts the exclusive venue for securities class actions and establishing various procedural hoops and pleading requirements designed to screen out frivolous suits.").  *See also Abada v. Charles Schwab & Co.*, 68 F. Supp. 2d 1160, 1163 (S.D. Cal. 1999) (*citing* H.R. Conf. Rep. No. 803, 105th Cong., 2d Sess. at 13 (1998) ("It appears that Congress's intention . . . was to completely preempt state securities class actions alleging fraud or manipulation relating to covered securities when it enacted [SLUSA].").

The face of the CAC demonstrates that this lawsuit meets the relevant criteria.[27]  First, Plaintiffs bring the suit on behalf of themselves and a class of all others similarly situated, which numbers approximately 900.  (CAC ¶¶ 1, 34).  Second, Plaintiffs allege that "[c]ommon questions of law or fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class."  (*Id.* ¶ 35).  Third, the securities at issue are "covered securities" for purposes of SLUSA, which includes those securities "listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed . . . on the National Market System of the Nasdaq Stock Market."  15 U.S.C. § 77r(b)(1) (incorporated by reference in 15 U.S.C. § 77p(f)(3)).[28]  Fourth, Plaintiffs allege claims based on state law.  (CAC ¶¶ 158-82).  Last, Plaintiffs allege that Defendants misrepresented or omitted material facts "in connection with the purchase or sale of a covered security."  15 U.S.C. § 77p(b)(1).

Plaintiffs assert four state law claims against Defendants that plainly are predicated upon the sale or purchase of securities:  (1) violation of Ohio Rev. Code § 1707.41; (2) violation of Ohio Rev. Code § 1707.43; (3) common-law fraud; and (4) breach of fiduciary duty (against the OHSL Director Defendants only).  Plaintiffs' claims that Defendants violated Ohio securities law are based on "the transaction in which the class purchased Provident shares," and on allegations of material misstatements or omissions in the Proxy Materials.  (CAC ¶¶ 160-63, 167-71).  Similarly, Plaintiffs' common-law fraud claim is premised on alleged misrepresentations or

---

[27] Broken down into its component parts, a claim falls within the preemptive scope of SLUSA if it meets the following requirements:  (1) the claim is based on state law; (2) the suit is a 'covered class action' as defined in the statute; (2) there has been a purchase or sale of a "covered security"; (3) the complaint alleges that the defendants misrepresented or omitted a material fact, or used or employed a manipulative or deceptive device or contrivance; and (4) the complaint alleges that the defendants' wrongful conduct was "in connection with" the purchase or sale of the covered security.  *See Enron*, 284 F. Supp. 2d at 634 (*citing Green v. Ameritrade*, 279 F.3d 590, 596 (8th Cir. 2002)); *see also Burns v. Prudential Sec., Inc.*, 116 F. Supp. 2d 917, 921 (N.D. Ohio 2000).

[28] Plaintiffs assert that "OHSL stock was traded on the NASDAQ and Provident stock continues to be traded on the NASDAQ under the symbol 'PFGI.'"  (CAC ¶ 1).

omissions of material facts in the Proxy Materials distributed to the class in connection with the OHSL-Provident transaction. (*Id.* ¶ 179). Finally, Plaintiffs' breach of fiduciary duty claim against the OHSL Individual Defendants specifically alleges that these defendants "did not fulfill their fiduciary duties to plaintiffs and the class . . . because they disseminated a materially false and misleading Proxy Materials/Registration Statement in an attempt to mislead plaintiffs and the class into voting in favor of the merger transaction." (*Id.* ¶ 181).

Accordingly, Plaintiffs' state law claims of fraud, breach of fiduciary duty, and Ohio securities law violations are preempted because they fall within the scope of SLUSA's limitations on class actions. 15 U.S.C. § 77p(b)(1).

### H.    Plaintiffs' Claims Under Ohio Securities Law are Time-Barred

Plaintiffs' claims asserted under Ohio Rev. Code §§ 1707.41 (civil liability of a seller for fraud) and 1707.43 (remedies of purchaser in unlawful sale), in addition to being barred by SLUSA, also are barred by the applicable statutes of limitations.

Section 1707.41 provides:

> No action brought against any director, based upon the liability imposed by this section, shall be brought unless it is brought <u>within two years</u> after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or the director were unlawful, <u>or within five years</u> after the purchase of the securities, <u>whichever is the shorter period</u> . . . .

Ohio Rev. Code § 1707.41(D) (emphasis added). Given the history of this lawsuit and the fact that Plaintiffs clearly knew in November of 1999, when the State Court Action was filed, and unquestionably by September, 2000, when the original complaint was filed with this Court, "of the facts by reason of which the actions" of the Defendants allegedly "were unlawful," the shorter of these statutory limitations periods undoubtedly applies. Plaintiffs raise their Section 1707.41 claim for the first time in the CAC, which was filed on December 31, 2003 — over

three years since filing the original complaint in this action and over four years after filing the State Court Action. Moreover, Plaintiffs have alleged no facts to toll or make the two-year statute of limitations inapplicable here. Plaintiffs' claim under Section 1707.41 therefore must be dismissed because the applicable statute of limitations has expired.

Section 1707.43 similarly provides:

> No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought <u>more than two years</u> after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, <u>or more than five years</u> from the date of such sale or contract for sale, <u>whichever is the shorter period</u>.

Ohio Rev. Code § 1707.43(B) (emphasis added). Again, Plaintiffs clearly knew in September of 2000 "the facts by reason of which the actions" of the Defendants allegedly "were unlawful." Thus, for the same reasons explained above with respect to Section 1707.41, Plaintiffs' claim under Section 1707.43 must be dismissed.

**I.      Plaintiffs' Common-law Fraud Claim Must Also be Dismissed for Failure to Plead Fraud with the Requisite Particularly and Show Reliance, and Also Because it is Time-Barred**

Plaintiffs' common-law fraud claim is nothing more than a restatement of their Section 10(b)/Rule 10b-5 claim. Under Ohio law, the essential elements of an action in civil fraud are: (1) a material false representation or a concealment; (2) knowingly made or concealed, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (3) with the intent of misleading another into relying upon it; (4) justifiable reliance upon the representation or concealment by the party claiming injury; and (5) injury resulting from the reliance. *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987).

Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with particularity.[29] For the reasons set forth above with regard to Plaintiffs' Section 10(b)/Rule 10b-5 claim, Plaintiffs' claim for common-law fraud must be dismissed for failure to adequately allege scienter. *See supra*, at 25-30.

Furthermore, Plaintiffs fail to state a claim for common-law fraud because they have failed to demonstrate reliance on the alleged misrepresentations in the Proxy Materials. *See supra*, at 30.

Lastly, the statute of limitations has run on Plaintiffs' fraud claim. Under Ohio law, if a complaint alleging common-law fraud is predicated upon the sale of securities, the statutory limitations period is, pursuant to Ohio Rev. Code § 1707.43, two years. *Ferry v. Shefchuk*, 2003 WL 21139014, at *2 (Ohio App. 11 Dist. May 16, 2003). Accordingly, for the reasons explained above with respect to Ohio Rev. Code § 1707.43 and Plaintiffs' failure to comply with the statute of limitations therein, Plaintiffs' common-law fraud claim must be dismissed. *See supra*, at 40-41.

**J.      Plaintiffs' Breach of Fiduciary Duty Claim Previously Has Been Stricken by the Court and Voluntarily Withdrawn by Plaintiffs' Counsel**

The Court should dismiss Plaintiffs' claim for breach of fiduciary duty. (CAC ¶¶ 180-182). Plaintiffs' counsel, who also was class counsel in the State Court Action, asserted a breach of fiduciary duty claim in that case, which was filed more than four years ago and then voluntarily dismissed. In this action, the Court struck paragraphs 56 and 62 from the original complaint "to the extent they [pled] state law claims for breach of fiduciary duty" after Plaintiff's

---

[29] Ohio Civil Rule 9(B) likewise requires that a complaint alleging fraud state the specific circumstances surrounding the alleged fraud with particularity.

counsel consented to striking these allegations.[30]  (7/25/01 Order (Doc. 46) at 26).  Nevertheless, in the CAC, Plaintiffs assert a state law claim for breach of fiduciary duty against the OHSL Individual Defendants.  The Court should not permit Plaintiffs to maintain a claim which Plaintiffs' counsel already agreed to strike.  Moreover, as explained above, this claim is barred under SLUSA because it is predicated on the alleged "materially false and misleading" Proxy Materials.  (CAC ¶ 181).

### K.    Plaintiffs' Spoliation Claim is Barred Under Ohio Law

Plaintiffs assert a purported spoliation of evidence claim against certain of the OHSL Directors (Hanauer, Brinker, and Zoellner) because they disposed of some unidentified OHSL documents in December, 1999, during the pendency of the State Court action.  Regardless of the merits of this claim, it is undisputed that these facts came to light when Plaintiffs' counsel deposed Brinker and Hanauer in March and April, 2000, during the pendency of the State Court Action.  Plaintiffs now rely on the testimony from those state court depositions to support the spoliation claim in this action, which was filed after the State Court Action was dismissed. Under Ohio law, however, Plaintiffs are precluded from bringing a claim for spoliation in this case based on testimony and activities that occurred during the State Court Action.  Indeed, Magistrate Judge Hogan previously has found that Plaintiffs' spoliation claim is futile because it should have been raised in the State Court Action.  (*See* 10/20/03 Order (Doc. 215) at 4).

In *Davis v. Wal-Mart Stores, Inc.*, the Ohio Supreme Court ruled that claims for spoliation may not be brought after conclusion of the action during which the alleged spoliation occurred unless evidence of the alleged spoliation was not discovered until after the conclusion of the primary action.  93 Ohio St.3d 488, syllabus (2001).  Here, the testimony giving rise to

---

[30]  Thiemann's opposition brief to Defendants' Motion to Dismiss the original complaint stated:  "Plaintiff has no objection to striking those portions of [paragraphs 56 and 62 of the original complaint] that reference a purported breach of fiduciary duty."  (Pl.'s Opp'n to Mot. to Dismiss (Doc. 21) at 16).

Plaintiffs' spoliation claim against Brinker, Hanauer, and Zoellner occurred in the State Court Action.[31]

Plaintiffs' counsel deposed Brinker on April 11 and 12, 2000. During that deposition, Brinker testified that, before the merger (and the filing of the State Court Action), he periodically destroyed his own copies of unspecified OHSL-related documents that he had at home to avoid "piling papers [ . . . ] sitting around."[32] (Brinker Dep. at 37). Brinker also acknowledged that soon after the December 3, 1999 merger closing, he shredded some of his copies of OHSL documents because he believed that he would have no need for them in the future since OHSL had been merged into Provident.[33] (*Id.* at 37-42) Moreover, during the pendency of the State Court Action, Hanauer testified that he got rid of some OHSL documents shortly after Plaintiffs' counsel had filed the State Court Complaint. (Hanauer Dep. at 690). Significantly, however, OHSL and the other OHSL Directors produced thousand of pages of OHSL documents in the State Court Action, and there is not, nor has there ever been, any indication that the destroyed documents were anything other than irrelevant materials or duplicate copies of documents already produced by OHSL or other OHSL Directors.

Plaintiffs' counsel was aware of the facts giving rise to the newly-alleged spoliation claim well before he dismissed the State Court Action on August 10, 2000. Yet, he never raised

---

[31]  Plaintiffs' counsel, Michael Brautigam, did not depose Zoellner until after he had dismissed the State Court Action and filed this one. He certainly could have, however, and because Zoellner's alleged spoliation arose from the same common nucleus of facts as addressed in the State Court Action, he cannot now raise the claim against Zoellner. *See Williamson v. Rodenberg*, 1997 WL 360840, at *4 (Ohio App. 10 Dist. June 30, 1997).

[32]  Although Plaintiffs rely in the CAC on Brinker's deposition taken in the State Court Action, they failed to attach this document to the CAC. When ruling on a motion to dismiss, the court may consider a variety of documents in addition to the complaint, including documents whose contents are alleged in a complaint but which are not physically attached to the pleading. *Gupta*, 900 F. Supp. at 1228. A complete copy of the Brinker deposition previously has been filed with the Court; relevant portions will be referred to herein.

[33]  Plaintiffs allege that Brinker "testified in substance" that he shredded these documents "so that they couldn't be seen by anybody." (CAC ¶ 175). In fact, Brinker testified that he only got rid of documents which he did not believe were relevant to the lawsuit. (Brinker Dep. at 37-42). The import of Brinker's testimony is that he got rid of the documents because they were duplicative of documents already produced and/or irrelevant.

the issue in that case or even in this case when it first was filed.  Indeed, after Plaintiffs' counsel voluntarily dismissed the State Court Action, the OHSL Directors were free to dispose of whatever they wished.  Plaintiffs therefore cannot now raise the spoliation claim in an entirely different case.  *See Davis v. Wal-Mart Stores, Inc.*, 2000 WL 504114, at *4 (Ohio App. 8 Dist. April 27, 2000) (*citing Williamson v. Rodenberg*, 1997 WL 360840 (Ohio App. 10 Dist. June 30, 1997) (where a party claiming spoliation learned of the destroyed evidence prior to the conclusion of the action and the claim of spoliation shares the same common nucleus of operative facts as the original case, the party claiming spoliation cannot raise such claims in a later action).  Plaintiffs' spoliation claim is barred and must be dismissed.

## V.    <u>CONCLUSION</u>

For all the reasons discussed above, Defendants respectfully request that the Court dismiss, with prejudice, Plaintiffs' Consolidated and Amended Class Action Complaint in its entirety.

Respectfully submitted,

/s/  John B. Pinney
John B. Pinney
J. Michael Debbeler
GRAYDON, HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Tel:  (513) 621-6464
Fax:  (513) 651-3836
Attorneys for OHSL and Provident
Defendants

OF COUNSEL:

James E. Burke
Rachael A. Rowe
Jennifer J. Morales
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **AMENDED MOTION TO DISMISS** was served upon the following electronically or by ordinary U.S. mail, this 6th of February, 2004.

Michael G. Brautigam
Gene I. Mesh
Gene Mesh & Associates
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502

*Attorneys for Plaintiffs*

John W. Hust
Michael E. Maundrell
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249

*Attorneys for Dinsmore Defendants*

James E. Gauch
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

*Attorney for Defendant Ernst & Young*

Michael R. Barrett
Thomas W. Breidenstein
Barrett & Weber
500 Fourth & Walnut Centre
105 East Fourth Street
Cincinnati, Ohio 45202-4015

*Attorneys for KMK Defendants*

/s/ John B. Pinney
John B. Pinney

1201608.1