LEXSEE 2000 U.S. APP. LEXIS 15723

**ALLIED MECHANICAL SERVICES, INC., Plaintiff-Appellant, v. LOCAL 337 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY; LOCAL 357 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY; LOCAL 7 OF THE SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, Defendants-Appellees.**

No. 99-1494

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*2000 U.S. App. LEXIS 15723*

**June 26, 2000, Filed**

**NOTICE: [\*1]** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *2000 U.S. App. LEXIS 24108.*

**PRIOR HISTORY:** On Appeal from the United States District Court for the Western District of Michigan. 98-00113. Miles. 3-30-99.

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff appealed from a ruling entered in the United States District Court for the Western District of Michigan, which dismissed plaintiff's claims for damages under §§ 301, 303 of the Labor Management Relations Act, *29 U.S.C.S. §§ 185,* 187.

**OVERVIEW:** Plaintiff was a mechanical contractor who bargained with defendants for a collective bargaining agreement (CBA). Plaintiff was also a signatory to a multi-employer CBA with a third defendant. Plaintiff alleged that two of the defendants threatened or coerced the third defendant from providing plaintiff with job targeting funds for three jobs. Plaintiff's grievance was denied. Plaintiff then filed a complaint, which was dismissed. On appeal, plaintiff sought damages under §§ 301, 303 of the Labor Management Relations Act, *29 U.S.C.S. §§ 185,* 187, and alleged violations of § 8(b)(4) of the National Labor Relations Act, *29 U.S.C.S. § 158*(b)(4). The appellate court affirmed. Plaintiff could not state a claim of unfair labor practices under § 8(b)(4)(i) or (ii) because the alleged coercion did not have as an object to force or require defendant to cease doing business with plaintiff. Also, plaintiff's allegations of breach of the collective bargaining agreement were not sufficient to withstand the motion to dismiss.

**OUTCOME:** The lower court's ruling was affirmed, since plaintiff failed to state a claim of unfair labor practices under the requisite statute and plaintiff's allegations of breach of the collective bargaining agreement were not sufficient to withstand the motion to dismiss.

**CORE TERMS:** targeting, grievance, customers, summary judgment, signatory, coerced, secondary boycott, plumbing, arbitrator, withhold, restrained, bid, sheet metal, cease doing business, doing business, secondary, failure to state a claim, induce, grievance procedure, motion to dismiss, pipefitting, contractual, inducement, induced, failure to exhaust, motions to dismiss, contractor, binding, futile, collective bargaining agreement

**LexisNexis (TM) HEADNOTES- Core Concepts:**

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
[HN1] The court of appeals reviews a district court's procedural decision to grant summary judgment sua sponte for abuse of discretion.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN2] A plaintiff cannot avoid dismissal of a legally de-

ficient claim by failing to attach a dispositive document to the complaint.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to DismissCivil Procedure > Appeals > Standards of Review > De Novo Review*
[HN3] A district court's decision to grant a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)* is reviewed de novo.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*
[HN4] A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Civil Procedure > Appeals > Standards of Review*
[HN5] A court of appeals construes a complaint in the light most favorable to the plaintiff and accepts the well-pled factual allegations as true. Nonetheless, the appellate court need not accept the plaintiff's legal conclusions or draw unwarranted factual inferences.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Strikes & Work Stoppages*
[HN6] See § *29 U.S.C.S. § 158*(b)(4).

*Labor & Employment Law > Collective Bargaining & Labor Relations > Strikes & Work StoppagesGovernments > Legislation > Interpretation*
[HN7] Section 8(b)(4) of the National Labor Relations Act, *29 U.S.C.S. § 158*(b)(4), cannot be literally construed, or else it would ban most strikes historically considered to be lawful primary activity.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Strikes & Work Stoppages*
[HN8] The National Labor Relations Act, *29 U.S.C.S. § 158*(b)(4)(i), is intended to encompass union pressure calculated to induce the employees of a secondary employer to withhold the services of their employment in order to force their employer to cease dealing with the primary employer. Employees must be induced; they must be induced to engage in a strike or concerted refusal; and an object must be to force or require their employer or another person to cease doing business with a third person.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Strikes & Work Stoppages*
[HN9] A labor organization's right to exert legitimate pressure aimed at the employer with whom there is a primary dispute is primary activity which is protected even though it may seriously affect neutral third parties.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Strikes & Work StoppagesGovernments > Legislation > Interpretation*
[HN10] Harmony between *29 U.S.C.S. § 158*(b)(4)(i), (ii) of the National Labor Relations Act is best achieved by construing subsection (i) to prohibit inducement of the managers to withhold their services from their employer, and subsection (ii) to condemn an attempt to induce the exercise of discretion only if the inducement would "threaten, coerce, or restrain" that exercise.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Arbitrator's Authority*
[HN11] When parties to a collective bargaining agreement provide for arbitration of grievances, they have bargained for the arbitrator's decision and not the decision of a court.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Exhaustion of RemediesLabor & Employment Law > Collective Bargaining & Labor Relations > Enforcement*
[HN12] While courts have jurisdiction to enforce collective bargaining agreements under § 301 of the Labor Management Relations Act, *29 U.S.C.S. § 185,* the agreed upon grievance and arbitration procedures must be exhausted, and courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > AwardsLabor & Employment Law > Collective Bargaining & Labor Relations > Judicial Review*
[HN13] When the parties have authorized an arbitrator to give meaning to the language of an agreement, a court should not reject an award on the ground that the arbitrator misread the contract. As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement*
[HN14] A final binding resolution reached under a contractual grievance procedure is enforceable under § 301 of the Labor Management Relations Act, *29 U.S.C.S. § 185,* even if it is not an arbitrator's decision.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Awards*
[HN15] An award fails to derive its essence from a collective bargaining agreement when it: conflicts with express terms of a collective bargaining agreement; imposes additional requirements not expressly provided for in the collective bargaining agreement; is not rationally supported by or derived from the collective bargaining agreement; or is based upon general considerations of fairness and

equity, rather than the exact terms of the collective bargaining agreement.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Exhaustion of Remedies*

[HN16] Exhaustion is not required when the effort to proceed formally with contractual or administrative remedies would be wholly futile. Before excusing the failure to exhaust contractual remedies, a clear and positive showing of futility is required. The test for futility is not whether the party's grievances would succeed, but whether the party could have availed itself of the grievance procedure.

**COUNSEL:** For ALLIED MECHANICAL SERVICES, INC., Plaintiff – Appellant: Craig H. Lubben, Peter J. Kok, Daniel P. Perk, Miller, Johnson, Snell & Cummiskey, Kalamazoo, MI.

For LOCAL 337 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY, LOCAL 357 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY, LOCAL 7 OF THE SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, Defendants – Appellees: Tinamarie Pappas, Ann Arbor, MI.

**JUDGES:** BEFORE: GUY, NORRIS, and BATCHELDER, Circuit Judges.

**OPINION:**

**PER CURIAM.** Plaintiff, Allied Mechanical Services, Inc. (Allied), appeals from the dismissal of its claims seeking [*2] damages under §§ 301 and 303 of the Labor Management Relations Act (LMRA), *29 U.S.C. §§ 185* and *187*. Allied's § 303 claims alleged violation of the secondary boycott provisions in § 8(b)(4) of the National Labor Relations Act (NLRA), *29 U.S.C. § 158*(b)(4), by Local 337/357 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (UA Local 337/357). In its § 301 claim, Allied alleged that Local 7 of the Sheet Metal Workers' International Association (SMWIA) breached their collective bargaining agreement by refusing to provide Allied with job targeting funds with respect to three separate construction jobs.

Allied not only argues that the district court erroneously dismissed these claims, but also contends that the district court abused its discretion by converting the defendants' motions to dismiss into motions for summary judgment. After a review of the record and the arguments presented on appeal, we affirm. n1

> n1 Although the district court also dismissed Allied's claims against the international unions, Allied has abandoned any appeal with respect to claims against either the Sheet Metal Workers' International Association, or the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, AFL-CIO-CLC.

[*3]

I.

Allied is a mechanical contractor that bids and performs both sheet metal work and plumbing and pipefitting work throughout western Michigan. Allied and UA Local 337 began bargaining in July 1991 for a collective bargaining agreement (CBA) to cover Allied's plumbing and pipefitting employees. A CBA still had not been reached in March 1998, when UA Locals 337 and 513 merged to become UA Local 357. n2

> n2 Unfair labor practice charges by UA Local 337 against Allied were the subject of a prior appeal to this court. *See Allied Mechanical Servs., Inc. v. NLRB, 113 F.3d 623 (6th Cir. 1997)* (enforcing NLRB order). Despite suggestions to the contrary, the court did not resolve Allied's claim that UA Local 337 had engaged in unprotected intermittent work stoppages since the issue had not been raised before the NLRB. *See id. at 627.*

During the relevant time period, Allied was a signatory to a multi-employer CBA with SMWIA Local 7, which covered Allied's sheet metal employees. [*4] Allied was eligible as a signatory to this agreement to participate in a job targeting program, which provided funds to union contractors to enable them to lower their bids on targeted jobs and gain a competitive advantage over non-union contractors. The job targeting program was funded by members of SMWIA Local 7, including employees of Allied. Allied alleged that it received job targeting funds in the past, used those funds to lower its bid prices by the amount of the funds provided, and was awarded contracts on construction jobs as a result.

Asserting violations of § 8(b)(4)(i) and (ii) of the NLRA in several counts, Allied claimed that UA Local 337/357 threatened, coerced, or otherwise restrained SMWIA Local 7 from providing Allied with job targeting funds for three jobs in early 1998. Specifically, Allied

alleged that UA Local 337/357 threatened or coerced "an individual(s) with decision-making ability and/or authority" in Local 7 to ensure that Allied would not be provided with job targeting funds. Allied was informed by Local 7's business agent that it would not receive the funds because it was not a signatory to a CBA with UA Local 337/357. Allied was denied job targeting [*5] funds to use in bidding on the Kalamazoo Red Cross job, the Kalamazoo Chamber of Commerce job, and the YMCA Sherman Lake project.

Allied filed a grievance with respect to the denial of job targeting funds for the Red Cross project under its CBA with SMWIA Local 7. At the third and final step, the grievance was denied and no contract violation found. Allied alleged that SMWIA Local 7 violated the CBA, specifically, "Addendum 16G," by denying it job targeting funds when other signatories to the CBA received such funds. Although Allied concedes that it did not exhaust the grievance procedures with respect to either the YMCA or the Chamber of Commerce projects, it alleged that exhaustion would have been futile.

Upon receipt of the complaint, defendants promptly filed several motions to dismiss the complaint for failure to state a claim upon which relief may be granted. After the motions were fully briefed and before any discovery had been conducted, the district court granted the motions and dismissed the complaint for the reasons set forth in its written opinion dated March 30, 1999. This timely appeal followed.

## II.

### A. Procedural Error

Allied argues that the district court [*6] erred by converting the motions to dismiss to motions for summary judgment. [HN1] We review a district court's procedural decision to grant summary judgment *sua sponte* for abuse of discretion. *See Salehpour v. University of Tenn., 159 F.3d 199, 203 (6th Cir. 1998), cert. denied, 526 U.S. 1115, 119 S. Ct. 1763, 143 L. Ed. 2d 793 (1999).* In this case, the district court set forth the standard for evaluating a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, but also indicated that the motions would be treated as motions for summary judgment because "matters outside the pleadings" had been presented and considered. We are convinced, however, that the district court did not convert the motions to motions for summary judgment.

First, the district court specifically found that the claims against UA Local 337/357 would be dismissed "for failure to state a claim." The district court's opinion also concluded by granting defendants' motions to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*, and dismissing the complaint in its entirety. Second, the district court's consideration of materials presented in connection with the motion to dismiss did not convert the [*7] motion to one for summary judgment because the materials reiterated the contents of the complaint, were referred to in the complaint, or were central to the claims asserted. *See Weiner v. Klais and Co., 108 F.3d 86, 89 (6th Cir. 1997); Song v. Elyria, Ohio, 985 F.2d 840, 842 (6th Cir. 1993).*

In this case, the district court was presented with three documents that had not been attached to the complaint. Plaintiff provided a copy of (1) the multi-employer CBA with SMWIA Local 7, including Addendum 16G; and (2) the SMWIA constitution, which was offered in support of the claims against the international union. Local 7 provided the court with a copy of the final unanimous decision of the National Joint Adjustment Board (NJAB), which denied Allied's grievance with respect to the Red Cross project. These documents were not relevant to the secondary boycott claims asserted against UA Local 337/357, so were not considered in connection with those claims.

While the district court considered the terms of the CBA and the effect of the NJAB's denial of the grievance in connection with the breach of contract claim, we are convinced that these documents were not [*8] matters "outside the pleadings." The complaint specifically referred to both the CBA, including Addendum 16G, and the NJAB's decision, and these materials were central to Allied's claim against Local 7. [HN2] A plaintiff cannot avoid dismissal of a legally deficient claim by failing to attach a dispositive document to the complaint. *See Weiner, 108 F.3d at 89.*

We find no procedural error on the part of the district court, despite its conflicting indications about the basis for dismissing the claims against the local and international unions. n3

> n3 Even if the materials in this case were outside the pleadings, we would find that Allied could not claim to be surprised by their consideration. When materials outside the pleadings are filed in connection with a motion to dismiss for failure to state a claim, the parties generally cannot claim surprise if the motion is then converted to one for summary judgment. *See Salehpour, 159 F.3d at 204; Song, 985 F.2d at 842.*

[*9] ### B. Unfair Labor Practices under § 8(b)(4) of the NLRA

[HN3] A district court's decision to grant a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)* is reviewed *de novo*. [HN4] "[A] complaint should not be dismissed for failure

to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* [HN5] We construe the complaint in the light most favorable to the plaintiff and accept the well-pled factual allegations as true. *See Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).* Nonetheless, we need not accept the plaintiff's legal conclusions or draw unwarranted factual inferences. *See Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 405-406 (6th Cir. 1998).*

Section 303 of the LMRA creates a private cause of action for whoever is injured by a violation of § 8 of the NLRA, including the secondary boycott provisions found in § 8(b)(4)(i) and (ii). The secondary boycott provisions, adopted in 1947 and amended in 1959, have a twofold purpose: "the preservation of the right of labor organizations [*10] to place pressure on employers with whom there is a primary dispute as well as the protection of neutral employers and employees from the labor disputes of others." *International Longshoremen's Ass'n v. Allied Int'l, Inc., 456 U.S. 212, 223 n.20, 72 L. Ed. 2d 21, 102 S. Ct. 1656 (1982)* (citing *NLRB v. Denver Bldg. & Constr. Trades Council, 341 U.S. 675, 692, 95 L. Ed. 1284, 71 S. Ct. 943 (1951)).* Not a sweeping prohibition of secondary boycotts, § 8(b)(4) describes and condemns certain union conduct directed to specific objectives. *See Local 1976, United Bhd. of Carpenters v. NLRB, 357 U.S. 93, 98, 2 L. Ed. 2d 1186, 78 S. Ct. 1011 (1958).*

The relevant portions of § 8(b)(4) [HN6] state that "it shall be an unfair labor practice for a labor organization or its agents"

> (4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to [*11] threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
>
> . . . .
>
> (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person . . . *Provided,* That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing[.]

*29 U.S.C. § 158*(b)(4). The Supreme Court has explained that [HN7] these provisions cannot be literally construed, or else they would ban most strikes historically considered to be lawful primary activity. *See Local 761, Int'l Union of Elec., Radio & Mach. Workers v. NLRB, 366 U.S. 667, 672, 6 L. Ed. 2d 592, 81 S. Ct. 1285 (1961).* "The impact of the section was directed toward what is known as the secondary boycott whose 'sanctions bear, not upon the employer who alone is a party to the dispute, but upon some third party who has no concern in it.'" *Id.* (citation omitted).

The Supreme Court explained [*12] in *NLRB v. Servette, Inc., 377 U.S. 46, 52-54, 12 L. Ed. 2d 121, 84 S. Ct. 1098 (1964),* that [HN8] subsection (i) is intended to encompass union pressure calculated to induce the employees of a secondary employer to withhold the services of their employment in order to force their employer to cease dealing with the primary employer. "Employees must be induced; they must be induced to engage in a strike or concerted refusal; [and] an object must be to force or require their employer or another person to cease doing business with a third person." *Local 1976, 357 U.S. at 98.* On the other hand, subsection (ii) was added by amendment to extend the scope of § 8(b)(4) to cover threats of labor trouble made to the secondary employer itself when the conduct would "threaten, coerce, or restrain." *See Servette, 377 U.S. at 53-54.* In addition to the conduct requirements, § 8(b)(4)(B) requires that the conduct have an illegal objective, in this case, to force or require one to cease doing business with another.

Allied alleged that UA Local 337/357 violated the secondary boycott provisions in several ways. All of the claims rest, however, on the [*13] allegation that UA Local 337/357 threatened, coerced, or otherwise restrained individuals with decision-making authority in the SMWIA Local 7 to ensure that Allied would not be provided job targeting funds. We accept this allegation as true, as did the district court, in evaluating the dismissal of these claims. n4

> n4 The local unions argued that the denial of job targeting funds was not prohibited coercion, relying upon *Grinnell Corp. v. Road Sprinkler Fitters Local 669, 1997 U.S. Dist. LEXIS 7897, No. H-94-3309, 1997 WL 311498,* at *14 (D. Md. June 3, 1997), *aff'd, 133 F.3d 914* (Table) (4th Cir. 1998), *cert. denied, 119 S. Ct. 71 (1998).* In *Grinnell,* however, the court concluded that the union's withdrawal of job targeting funds from Grinnell, the *primary* em-

ployer, did not constitute coercion but was a lawful bargaining strategy employed by the union.

In one theory, Allied alleges that the denial of job targeting funds indirectly restrained Allied from doing business with neutral [*14] customers, and created an economic barrier that restrained neutral customers from doing business with Allied. Although Allied's potential customers were neutral secondary employers, the job targeting funds were withheld from Allied, not Allied's customers. Allied does not allege that UA Local 337/357 made any contact with those customers, much less threatened, coerced, or restrained them. Nor were any employees induced to withhold their services from those potential customers. Accepting as true that the denial of job targeting funds caused Allied's bids to be less attractive and impacted upon Allied's ability to successfully bid for a contract with those customers, this indirect effect is too tenuous to state a claim under either § 8(b)(4)(i) or (ii). The alleged disruption of Allied's business prospects, alone, is not sufficient to establish a violation of § 8(b)(4). [HN9] A labor organization's right to exert legitimate pressure aimed at the employer with whom there is a primary dispute is primary activity which is "protected even though it may seriously affect neutral third parties." *NLRB v. Local 825, Int'l Union of Operating Eng'rs, 400 U.S. 297, 302-303, 27 L. Ed. 2d 398, 91 S. Ct. 402 (1971).* [*15]

Next, Allied has alleged that UA Local 337/357 indirectly induced or encouraged individual sheet metal, plumbing, and pipefitting employees to "withhold their services," and prevented them from "doing business" with Allied. Allied reasons that UA Local 337/357 coerced Local 7 to withhold the job targeting funds, which caused Allied's bids to be less attractive, which resulted in Allied not getting contracts with the neutral customers, which caused Allied to not hire the individual workers for the jobs. As discussed above, however, § 8(b)(4)(i) prohibits pressure calculated to induce individual employees of a secondary employer to refuse to perform the services of their employment. This theory fails to state a claim under § 8(b)(4)(i) as a matter of law. n5

 n5 Allied also alleged that UA Local 337/357 coerced and restrained Allied's plumbing and pipefitting employees in the exercise of their rights under § 7 of the NLRA by preventing Local 7 from providing Allied with job targeting funds. UA Local 337/357 argued that such a claim arises under § 8(b)(1) and is not cognizable in federal court. *See San Diego Bldg. Trades Council Local 2020 v. Garmon, 359 U.S. 236, 245, 3 L. Ed. 2d 775, 79 S. Ct. 773 (1959).* Allied did not contest this proposition in the district court or on appeal.

[*16]

Finally, Allied alleges that UA Local 337/357 violated § 8(b)(4)(i) and (ii), by inducing individuals with decision-making authority to withhold job targeting funds, or restraining Local 7 from providing job targeting funds. This theory fails to allege conduct prohibited by subsection (i). In *Servette,* the Court specifically held that the union's conduct in asking supermarket managers to discontinue handling merchandise supplied by the primary employer, a wholesale distributor, was not an attempt to induce the managers to refuse to perform their managerial duties in order to force their neutral employer to cease doing business with the distributor. The Court explained:

> [HN10]
> Harmony between (i) and (ii) is best achieved by construing subsection (i) to prohibit inducement of the managers to withhold their services from their employer, and subsection (ii) to condemn an attempt to induce the exercise of discretion only if the inducement would "threaten, coerce, or restrain" that exercise.

*Servette, 377 U.S. at 54.* As in *Servette,* Allied alleged the inducement of individuals to exercise their discretion on behalf of Local 7. Allied did not allege an [*17] inducement of individuals to refuse to perform the duties of their employment in order to pressure their employer. n6

 n6 Local 7 argues that it is not a neutral secondary employer for purposes of § 8(b)(4). While a labor organization can act as an employer, *see 29 U.S.C. § 152*(2), the allegations in this case center upon Local 7's representational activities under the multi-employer CBA.

Accepting as true that UA Local 337/357 threatened or coerced Local 7 into withholding the job targeting funds, Allied contends that the object was to force or require Local 7, or its members, to cease "doing business" with Allied. Allied again reasons that the denial of job targeting funds adversely impacted its ability to secure contracts with potential customers, which prevented Allied from employing sheet metal workers under the CBA with Local 7. Local 7 represented the sheet metal workers, including those employed by Allied, under the CBA. Local 7 distributed the job targeting funds collected [*18] from the members for the purpose of helping signatories to the CBA compete against non-union contractors. In this context, Local 7 cannot be said to have been "doing business" with Allied. Accordingly, Allied cannot state a claim under § 8(b)(4)(i) or (ii) under this theory because

the alleged coercion did not have as an object to force or require Local 7 to cease doing business with Allied. n7

> n7 We are not persuaded that a contrary result is dictated by the decisions in *Limbach Co. v. Sheet Metal Workers International Ass'n, 949 F.2d 1241 (3d Cir. 1991)* (en banc); *Mine Workers (New Beckley Mining Corp.), 304 N.L.R.B. 71, 138 L.R.R.M. 1334 (1991), enforced 977 F.2d 1470 (D.C. Cir. 1992)*; or *George E. Hoffman & Sons, Inc. v. Teamsters Local 627, 617 F.2d 1234 (7th Cir. 1980)*.

**C. Breach of Collective Bargaining Agreement**

In Count III, Allied alleged that SMWIA Local 7 breached the CBA, specifically Addendum 16G, by withholding job targeting funds from **[*19]** Allied while providing job targeting funds to other signatories to the CBA for the Red Cross, Chamber of Commerce, and YMCA projects. Addendum 16G states:

> G. The Union will not extend or permit in any Company or Association within the jurisdiction of Local Union 7 Zone 1 (Lansing) any base rates, fringe benefit cost or working conditions more favorable to an Employer than those contained in this Agreement, unless same be granted to members of The Five Cities Association upon their request. The Union will report to the Association Secretary any present or new conditions or rates or fringes differing from those expressed in this Agreement.

Article X of the CBA provides a procedure for the resolution of grievances of the employer or union "arising out of interpretation or enforcement of this Agreement." Allied alleged that its grievance concerning the denial of job targeting funds for the Red Cross job proceeded to a "final and binding" decision of the NJAB. The grievance squarely presented the question of whether the denial of job targeting funds violated Addendum 16G. The NJAB found no contract violation. Allied alleged that the denial of this olatiance represented an infidelity **[*20]** to the essence of the CBA, was not supported by the CBA, and unlawfully changed the CBA.

The Supreme Court has made clear that [HN11] when parties to a CBA provide for arbitration of grievances, they have bargained for the arbitrator's decision and not the decision of a court. *See Monroe Auto Equip. Co. v. International Union, United Auto., Aerospace, and Agric. Implement Workers, 981 F.2d 261, 265 (6th Cir. 1992)*.

[HN12] While courts have jurisdiction to enforce CBA's under § 301, the agreed upon grievance and arbitration procedures must be exhausted, and courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 98 L. Ed. 2d 286, 108 S. Ct. 364 (1987)*. [HN13] When the parties have authorized an arbitrator to give meaning to the language of an agreement, "a court should not reject an award on the ground that the arbitrator misread the contract." *Id.* "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious **[*21]** error does not suffice to overturn his decision." *Id. at 38.* n8

> n8 [HN14] A final binding resolution reached under a contractual grievance procedure is enforceable under § 301 of the LMRA, even if it is not an arbitrator's decision. *See General Drivers, Local 89 v. Riss & Co., 372 U.S. 517, 9 L. Ed. 2d 918, 83 S. Ct. 789 (1963)* (per curiam).

This court has explained that [HN15] an award fails to derive its essence from a CBA when it conflicts with express terms of a CBA; imposes additional requirements not expressly provided for in the CBA; is not rationally supported by or derived from the CBA; or is based upon "general considerations of fairness and equity," rather than the exact terms of the CBA. *See Monroe, 981 F.2d at 268.* The district court found that Allied's allegations were not sufficient to withstand a motion to dismiss under Rule 12(b)(6) because the NJAB's final decision rejected Allied's position that Local 7 violated Addendum 16G by withholding job targeting **[*22]** funds on the Red Cross project. The court explained that:

> Given Addendum 16G's lack of an express reference to job targeting funds, and given Allied's failure to identify any other express contractual provisions relating to such funds, the court concludes that the panel's decision does not, as a matter of law, fail to derive its essence from the parties' agreement. That "final and binding" decision is therefore not subject to review.
>
> Allied is undoubtedly frustrated by the NJAB panel's decision, and perhaps some of this frustration comes from the realization that the collective bargaining agreement did not expressly anticipate the issue of job targeting funds. However, the fact remains that in this situation, resort to the grievance ma-

chinery by which Allied agreed to be bound "is at the very heart of the system of industrial self-government[.]" . . . If Allied finds itself dissatisfied with the outcome of the grievance process, it should attempt to resolve its concerns with Local 7 not here in court, but during the parties' next round of bargaining.

(Citation omitted.) Reviewing the dismissal of this claim *de novo*, we are compelled to agree with the district **[*23]** court. Were we free to interpret the contract, or review the claims of factual or legal error, however, we would be inclined to view this claim differently than the NJAB.

Allied argues that the denial of job targeting funds was a breach of Addendum 16G because job targeting funds impact base rates, fringe benefits, and working conditions by subsidizing an employer's costs. While that may be true, it presents a question of contract interpretation. Allied also contends that discovery would have demonstrated that the parties had consistently interpreted Addendum 16G to require that job targeting funds be provided to all signatories to the CBA. The district court found that "even assuming that the parties had interpreted Addendum 16G to apply to job targeting funds," the NJAB's decision did not fail to derive its essence from the agreement. Giving the final binding resolution of the grievance and the deference it must be afforded, Allied cannot state a claim for breach of contract with respect to the denial of job targeting funds for the Red Cross job.

Conceding that no grievance concerning the denial of job targeting funds was filed for the Chamber of Commerce job and that the grievance **[*24]** procedure had not been exhausted for the YMCA job, Allied alleged and argued that its failure to exhaust the contractual grievance procedures should be excused as futile. Since these claims present the same issue of whether the denial of job targeting funds violated Addendum 16G, Allied argues that the outcome would be a foregone conclusion and exhaustion would be futile.

[HN16] Exhaustion is not required when "the effort to proceed formally with contractual or administrative remedies would be wholly futile." *Glover v. St. Louis-San Francisco Ry., 393 U.S. 324, 330, 21 L. Ed. 2d 519, 89 S. Ct. 548 (1969).* Before excusing the failure to exhaust contractual remedies, a clear and positive showing of futility is required. *See Miller v. Chrysler Corp., 748 F.2d 323, 326 (6th Cir. 1984).* The test for futility is not whether Allied's grievances would succeed, but whether Allied could have availed itself of the grievance procedure. *See Mason v. Continental Group, Inc., 763 F.2d 1219, 1224 (11th Cir. 1985).* We agree that Allied's allegation that its grievances would not have been successful is insufficient as a matter of law to excuse the failure **[*25]** to exhaust the contractual grievance procedure, and dismissal was appropriate. *See Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033 (6th Cir. 1989).* Nevertheless, even if we were to accept Allied's claim of futility, the result would be the same. That is, if the Red Cross grievance sufficiently settled the question of whether the denial of job targeting funds violated the CBA so that the failure to exhaust should be excused, then the NJAB's decision should be entitled to deference and dismissal would be proper for failure to state a claim.

**AFFIRMED.**