UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **WALTER W. THIEMANN,** *et al.*, | ) | Case No. C-1-00-793 |
| | ) | |
| Plaintiffs, | ) | (Judge Sandra S. Beckwith) |
| | ) | (Magistrate Judge Timothy S. Hogan) |
| -v- | ) | |
| | ) | |
| **OHSL FINANCIAL CORPORATION,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT PROVIDENT FINANCIAL GROUP, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT ON LIABILITY ISSUES UNDER SECTION 11 OF THE 1933 ACT**

## I.  INTRODUCTION.

Less than one month after filing an amended complaint and a second motion for class certification, Plaintiffs filed a motion for partial summary judgment on a newly added Section 11 claim (the "Restatement Claim"). In their Restatement Claim, Plaintiffs allege that Provident Financial Group, Inc's ("Provident") March and April, 2003 restatements of operating results (the "First" and "Second Restatements," respectively) prove that certain financial data contained in the September 24, 1999 OHSL-Provident Proxy Materials was misstated. Plaintiffs' motion for partial summary judgment seeks a ruling from this Court that those misstatements in the 1999 Proxy Materials, which were disclosed by the Restatements in 2003, were material for the purposes of establishing liability under Section 11 of the 1933 Act.

This Court should deny Plaintiffs' motion for three reasons. First, Plaintiffs' Restatement Claim is barred by the three-year statute of repose in 15 U.S.C. § 77m. Second, Plaintiffs have not established that the misstatements would have been "so obviously important" to an investor deciding whether to approve the OHSL-Provident merger "that reasonable minds cannot differ on the question of materiality." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). To the contrary, as described in detail below, the evidence suggests that the restated financials would have had an *immaterial* impact on the 1999 OHSL-Provident merger. Third, Plaintiffs filed this motion less than one month after adding the Restatement Claim in their amended complaint. At the least, Provident is entitled to a reasonable time to retain an expert to testify on the issue of materiality. To the extent this Court does not deny Plaintiffs' motion for the aforementioned reasons, Provident separately moves this Court, under Fed. R. Civ. P. 56(f), for additional time to retain an expert on the issue of materiality.

II.  **STATEMENT OF FACTS.**

Rather than recounting the entire background to this case in detail, Provident incorporates by reference, as if fully rewritten herein, the "Statement of Facts" contained in the Provident and OHSL Defendants' Amended Memorandum In Support Of Their Amended Motion To Dismiss (Doc. 264). The specific facts necessary to the Court's consideration of Plaintiffs' motion for partial summary judgment are set forth below.

A.  **The Proxy Statement.**

On September 24, 1999, OHSL sent its shareholders a Proxy Statement outlining the proposed merger of OHSL into Provident. The 67-page Proxy Statement and its approximately 150 pages of attachments provided OHSL shareholders with a detailed account of the background of the proposal, the terms of the transaction itself, the risks involved, and other contemplated consequences. The Proxy Statement also stated Provident's financial results for the first six months of 1999, as well as prior years. On October 25, 1999, the shareholders of OHSL approved the merger.

B.  **The First Restatement.**

On March 5, 2003, Provident issued a press release announcing that it was restating its operating results for the years 1997 through 2002. (A copy of this press release is attached to the Consolidated Amended Complaint ("CAC") as Exhibit A). The restatement resulted from Provident's discovery of accounting errors in a financial model created to predict income and expense on nine auto lease securitization transactions that were entered into between 1997 and 1999. (*See* Exhibit A to the CAC at 1). While testing a new model, Provident discovered that the income that it had recorded on the auto lease securitizations was more than it should have been. (*See id.* at 1-2). As a result, Provident reduced its reported net income ($114.7 million) for 1997 by $900,000, its reported net income ($122.4 million) for 1998 by $2 million, and its

reported net income ($150.9 million) for 1999, the year the Proxy Materials were issued, by $11.3 million. (*Id.*).

C.   **The Second Restatement.**

On April 15, 2003, Provident announced a Second Restatement. (A copy of the press release to this effect is attached hereto as Exhibit A). Following the First Restatement, Provident's Audit Committee, through legal counsel, engaged the accounting firm of PricewaterhouseCoopers, LLP ("PwC"), which does not audit Provident's financial statements, to conduct an independent review of the circumstances underlying the First Restatement. (*See* Exhibit A at 1). Based upon PwC's independent review, Provident's management affirmed that the First Restatement resulted from unintentional accounting errors. (*Id.*) As a result of PwC's work, however, it was determined that Provident's auto leases from 1994 – 2002 which, with the agreement of Provident's independent auditor E&Y, had been classified as direct finance leases on Provident's financial statements since 1994, did not satisfy certain technical accounting requirements for direct finance leases. (*Id.*) This reclassification included the auto leases in the nine securitization transactions which, with the input of E&Y, had just been reclassified as direct finance leases one month earlier as part of the First Restatement. (*Id.*) As a result, Provident reclassified the auto leases on its balance sheet as operating leases and reported them in the asset category of leased equipment. (*Id.*)

As a result of the differences between how income and expense are generated and reported for operating leases (i.e., leased equipment) versus direct finance leases (i.e., loans), Provident's reported income decreased by $44.4 million on a cumulative basis for the eight year period from 1994 through 2002. (*Id.*) At the same time, however, this accounting change meant that Provident's income would <u>increase</u> by approximately the same amount in future years. (*Id.*)

- 3 -

The issue underlying the Second Restatement was the timing of certain income, not a net reduction of income.

Although Provident's stock price dropped following the March 5, 2003 restatement from the pre-announcement level of $28.07 per share to $19.90 per share, the stock price was unaffected by the Second Restatement, which, as mentioned above, only restated the timing (as opposed to the amount) of Provident's income. *See* Affidavit of Tayfun Tuzun ("Tuzun Aff.") at Ex. 1.

### D. Plaintiffs Amend Their Complaint To Include The Restatement Claim.

Plaintiff Thiemann, along with Plaintiff Meier, filed an amended complaint on December 31, 2003. One of Plaintiffs' new allegations is that the Proxy Materials were materially false and misleading because the Provident financial data contained therein was inaccurate due to the accounting errors disclosed by Provident in the First and Second Restatements.

Plaintiffs have now moved for partial summary judgment on their claim that Provident violated Section 11 of the 1933 Act by including inaccurate financial data for the years 1997, 1998 and half of 1999 in the Proxy Materials. For the reasons discussed below, this Court should deny summary judgment.

## III. ARGUMENT.

### A. Plaintiffs' Restatement Claim Is Time-Barred Under The Three-Year Statute Of Repose.

Plaintiffs' Section 11 claim as it relates to alleged misrepresentations based on Provident's restatement of earnings in 2003 is time-barred by the 1933 Act's statute of repose, which states: "*In no event* shall any . . . action be brought to enforce a liability created under [Section 11] more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m (emphasis added).

- 4 -

It is clear that the securities in the OHSL-Provident merger were offered on December 3, 1999, and that Provident's restatement of its financials in March and April of 2003 occurred more than three years after this offer. The Supreme Court has ruled that the three-year statute of repose sets an "outside limit." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991). "The three-year period is an absolute limitation which applies whether or not the investor could have discovered the violation." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 704 (2d Cir. 1994). *See also SEC v. Seaboard Corp.*, 677 F.2d 1301, 1308 (9th Cir. 1982) ("the statutory language requires the conclusion that Congress meant the bar to be absolute").

Plaintiffs cannot get around the "absolute limitation" in the three-year statute of repose by relating their Restatement Claim back to the claims in the original complaint under Fed. R. Civ. P. 15(c). Rule 15(c) does not allow relation back if the amended claim "sets forth a new set of operational facts." *Pruiss v. Bosse*, 912 F. Supp. 104, 106 (S.D.N.Y. 1996); *Carter v. Rental Uniform Service of Culpeper, Inc.*, 977 F.Supp. 753, 762 (W.D.Va. 1997) (noting that "the question is whether the factual basis for the claims is the same"). Plaintiffs' Restatement Claim – which alleges an entirely new misstatement in the Proxy Materials – involves an entirely new set of operational facts from the three misstatements at issue from the original complaint. That Plaintiffs have moved for summary judgment only on the Restatement Claim demonstrates that the Restatement Claim involves an entirely separate factual basis. Consequently, the Restatement Claim must have been brought within the three-year statute of repose.

However, even if the Restatement Claim falls within the scope of Fed. R. Civ. P. 15(c), this Court should still not allow relation back because it would be contrary to the public policy behind the three-year statute of repose. *Cf*. *In re Arm Financial Group, Inc. Sec. Litig.*, 2002 WL

1586397, *5 (W.D. Ky. 2002) (holding that consolidation "is not a tool for undercutting the public policy purposes behind the limitations period established in Lampf"); *Morin v. Trupin*, 778 F. Supp. 711 (S.D.N.Y. 1991) (the statute of repose's "decisive limitation would be rendered meaningless if a plaintiff who discovers fraud after the three year period has elapsed may effectively benefit from the equitable tolling doctrine by piggybacking his action which, if tried separately, would be clearly barred, on a timely one through consolidation").

Allowing Plaintiffs to relate their Restatement Claim back to their original complaint would defeat the fundamental purpose of the statute of repose enacted by Congress and approved by the Supreme Court in *Lampf* – namely to impose an "outside limit" to the time period within which a party may challenge financial statements.

### B. The Restated Financials Were Not Material To The Provident-OHSL Merger; At Best, There Is A Genuine Issue Of Material Fact As To The Materiality.

"The issue of materiality may be characterized as a mixed question of law and fact . . . ." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 563 (6th Cir. 2001). An omitted fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC*, 426 U.S. at 449. Summary judgment for the plaintiff is appropriate "[o]nly if the established omissions are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *Id*. at 450 (quoting *Johns Hopkins University v. Hutton*, 422 F.2d 1124, 1129 (4th Cir. 1970)); *see also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (noting that materiality "presents a factual question for a jury to decide"); *In re Control Data Corp. Sec. Litig.*, 9333 F.2d 616, 621 (8th Cir. 1991) ("The trier of fact is uniquely competent to determine

materiality, as that inquiry requires delicate assessments of inferences a reasonable investor would draw from a given set of facts.").

The essence of Plaintiffs' argument is that because Provident restated its earnings, therefore the misstatements were "per se material." *See* Plaintiffs' Memo. in Support of MSJ at p. 16. That is not the law. *See Gebhardt v. ConAgra Foods, Inc.*, 335 F.3d 824, 829 (8th Cir. 2003) ("[w]e do not believe that restating earnings makes the original misstatement material *per se* . . ."). Instead, the Court must decide whether the misstated financials in the Proxy Statement were *material to the reasonable investor who was deciding whether to approve the OHSL-Provident merger*.

Although Plaintiffs and their expert conclusorily claim that "[t]he misstatements in the 1997 and 1998 annual financial statements were material to OHSL stockholders in deciding whether to accept the Provident merger proposal," and that "[t]he financial statements for the first 2 quarters of 1999 were also material" (Plaintiff's MSJ at pp. 16-17 and Ex. 3 at pp.7-8), they give no analysis as to why those numbers would have been so "obviously important" to an OHSL stockholder in September, 1999.

Provident respectfully submits that the following analyses demonstrate that the misstatements in the 1997, 1998 and first-half of 1999 financial numbers were not so obviously important to the merger transaction:

> **1. The restated numbers would have had an immaterial impact on the stock price at the time of the OHSL merger.**

As Tayfun Tuzun, Provident's Senior Vice President, states in his affidavit, the Second Restatement involved a restatement of the timing of income, not the amount of income. (Tuzun Aff. at ¶ 4) In other words, Provident's net income did not change as a result of the Second Restatement. That a portion of Provident's 1997, 1998 and 1999 income would be deferred until

later years would not have had any impact on Provident's stock price in 1999. (Tuzun Aff. at ¶ 5) The immateriality of the Second Restatement in general is evidenced by the market's reaction to it. As Exhibit 1 to Mr. Tuzun's affidavit demonstrates, Provident's stock price steadily increased after the Second Restatement. *Id.* The market's reaction to the Second Restatement in 2003 indicates that Provident's stock price in 1999 would also have been unaffected had the pre-September 24, 1999 portion of the Second Restatement been included in the Proxy Materials. *Id.*

Although the First Restatement *did* reduce Provident's net income, that reduction would not have materially affected the OHSL-Provident merger. As Mr. Tuzun explains, Provident's reported earnings for the full year 1999 were $3.08 per share. (Tuzun Aff. at ¶ 6) 1999 earnings after the First Restatement would have been $2.85 per share. *Id.* Assuming, hypothetically (and conservatively), that reductions in earnings per share correlate directly to a dollar-for-dollar reduction in share price, the $.23 reduction in 1999 earnings per share would have translated into an expected potential negative impact on Provident's share price of $3.01 per share in 1999 ($.23 per share multiplied by 13.1, which was Provident's average price/earning ratio for the second half of 1999). *Id.* A $3.01 change in the share price would not have been material to a reasonable investor at the time of the OHSL-Provident merger because Provident's stock regularly fluctuated by $3.00 per share during that period.[1] *Id.*

The fact that the First Restatement would not have had a material impact on the Provident stock price at the time of the merger, at the least, creates a disputed issue of fact as to whether restated earnings numbers were "so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *TSC*, 426 U.S. at 450.

---

[1] $3.00 is the standard deviation of Provident's stock price in 1999. (Tuzun Aff. at ¶ 6)

### 2. The restated numbers resulted in an immaterial reduction in net income for the period 1997, 1998, and the first half of 1999.

As a result of the First Restatement, Provident restated the following net income results for 1997, 1998, and the first half of 1999[2]:

|  | Original Net Income | Restated Net Income | Percentage Change |
|---|---|---|---|
| 1997 | $114.7 million | $113.8 million | .78% |
| 1998 | $122.4 million | $120.4 million | 1.63% |
| First half of 1999 | $75.45 million | $69.8 million | 7.49% |
| **Total for the 2½ years** | **$312.55 million** | **$304 million** | **2.74%** |

In other words, the net effect of the First Restatement on the financial data included in the Proxy Statement was a 2.74% reduction in Provident's net income for the period 1997, 1998 and half of 1999.[3] If anything, a 2.74% reduction is *immaterial* as a matter of law. *See, e.g.*, *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 714 n.14 (3d Cir. 1996) (noting "rule of thumb" of 5 to 10% of net income widely used as a materiality criterion in the accounting profession); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997) (holding defendants' alleged overstatement of assets by $6.8 million was immaterial as a matter of law where the amount represented only 2% of Gateway's total assets); *Glassman v. Computervision Corp.*, 90 F.3d 617, 633 & n.26 (1st Cir. 1996) (omission of 3% to 9% of actual revenues is immaterial); *In re*

---

[2]  Because the Proxy Materials only included Provident financial data through June 30, 1999, Provident has approximated the financial data for the first six months of 1999 by taking the financial data for all of 1999 and dividing it in half.

[3]  As described in detail above, it is proper to look at the numbers as restated after the First Restatement rather than the Second Restatement because the Second Restatement affected only the timing of income rather than the amount of income earned. The immateriality of the Second Restatement is amply demonstrated by the fact that Provident's stock price increased after the Second Restatement was announced.

*Convergent Technologies Sec. Litig.*, 948 F.2d 507, 514 (9th Cir. 1991) (holding immaterial a ten percent quarterly revenue shortfall); *In re The First Union Corp. Sec. Litig.*, 128 F.Supp.2d 871, 895 (W.D.N.C. 2001) (alleged $79 million understatement of losses was immaterial where it "amounts to a mere 2.1 percent of operating earnings and 2.8 percent of earnings after" "merger-related and restructuring charges").

More importantly, for the purposes of this motion, Plaintiffs cannot establish that a 2.74% reduction in income for the two-and-a-half year period relevant to the Proxy Statement was "so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *TSC*, 426 U.S. at 450. Therefore, Provident respectfully requests that the Court deny Plaintiffs' motion for summary judgment.

### C. Pursuant To Fed R. Civ. Proc. 56(f), Provident Requests Additional Time To Conduct Discovery On The Issue Of Materiality.

To the extent this Court does not deny Plaintiffs' motion for the reasons discussed above, Provident separately moves this Court, under Fed. R. Civ. Proc. 56(f), for additional time to retain an expert on the issue of the materiality of the Restatements. Provident explains the grounds for the Rule 56(f) motion in the motion itself, which Provident incorporates herein by reference.

### IV. CONCLUSION.

For all the reasons discussed above, Provident respectfully requests that the Court deny Plaintiffs' motion for partial summary judgment.

Respectfully submitted,

/s/  John B. Pinney
John B. Pinney
J. Michael Debbeler
GRAYDON, HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
Tel:  (513) 621-6464
Fax:  (513) 651-3836
Attorneys for OHSL and Provident Defendants

OF COUNSEL:

James E. Burke
Rachael A. Rowe
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing defendant PROVIDENT FINANCIAL GROUP, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT ON LIABILITY ISSUES UNDER SECTION 11 OF THE 1933 ACT was served upon the following, by ordinary U.S. mail, this 12th day of February, 2004.

| | |
|---|---|
| Michael G. Brautigam<br>Gene I. Mesh<br>Gene Mesh & Associates<br>2605 Burnet Avenue<br>Cincinnati, Ohio 45219-2502<br><br>*Attorneys for Plaintiffs* | John W. Hust<br>Michael E. Maundrell<br>Schroeder, Maundrell, Barbiere & Powers<br>11935 Mason Road, Suite 110<br>Cincinnati, Ohio 45249<br><br>*Attorneys for Dinsmore Defendants*<br><br>James E. Gauch<br>Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001-2113<br><br>*Attorney for Defendant Ernst & Young*<br><br>Michael R. Barrett<br>Thomas W. Breidenstein<br>Barrett & Weber<br>500 Fourth & Walnut Centre<br>105 East Fourth Street<br>Cincinnati, Ohio 45202-4015<br><br>*Attorneys for KMK Defendants*<br><br>/s/ John B. Pinney<br>John B. Pinney |

1201608.1