UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, on behalf of himself and of all others similarly situated, | : | Case No. C-1-00-793 |
| | : | Judge Sandra S. Beckwith |
| Plaintiff, | : | Magistrate Judge Hogan |
| vs. | : | **Oral Argument Requested** |
| OHSL Financial Corporation, et al. | : | |
| Defendants. | : | |

**REPLY BRIEF IN FURTHER SUPPORT OF EMERGENCY MOTION (DOC. NO. 261) TO STRIKE CERTAIN DEFENDANTS' MOTIONS TO DISMISS, OR IN THE ALTERNATIVE, TO CONVERT THEM INTO RULE 56 MOTIONS FOR SUMMARY JUDGMENT AND TO ALLOW ADEQUATE TIME FOR DISCOVERY AND BRIEFING TO SUPPORT A PROPER RULE 56 RESPONSE AND MOTION FOR A STATUS CONFERENCE**

*This case is REMANDED to Magistrate Judge Hogan to establish a new trial calendar. Once established, the Magistrate Judge should not grant any request for extension of the deadlines therein.*

**Doc. No. 215 at 20.**

I.  INTRODUCTION

Plaintiffs respectfully submit this reply brief in further support of their emergency motion to strike certain defendants' motions to dismiss, or in the alternative, convert them into Rule 56 motions for summary judgment and motion for a status conference. As will be shown, the defendants opposition is neither factually or legally correct, and

1

continue their *modus operandi* of attacking plaintiffs and their counsel to the exclusion of any other strategy or defense, because they have no other strategy or defense. Additionally, defendants fault plaintiffs for refusing "Defendants counsel the courtesy of even brief extensions of time on other briefs and is therefore afraid that if he makes such a request of Defendants or the Court, he will get what he gave." (Doc. No. 262 at 1-2.) In light of the above-referenced quote, it is absolutely astonishing that Defendants would fault plaintiffs for complying with an operative Order of this Court, but they have been doing that virtually from inception of the case.

## II.     ARGUMENT

### 1. The Documents the Defendants Ask to be Considered are Hotly Disputed, and Therefore Not Proper for the Court to Consider at This Time

Plaintiffs can find no case where a Court properly considered documents outside the pleadings where the documents were hotly contested, and not something where the accuracy of the document could not be established beyond doubt, are intensely factual, and developed in a completely different case. Neither can the defendants. Although it would be appropriate for the Court to consider certain documents technically outside the pleadings, such as, public filings, (documents that plaintiffs have attached to the CAC), or even facts that the Court could take judicial notice of, such as the closing price of a stock during a given period, the documents that KMK seeks to have considered are inappropriate on a motion to dismiss. Additionally, defendants argue that it is appropriate for the Court to consider the entire deposition transcripts, but refer to and attach only misleading excerpts that are taken out of context, and in many cases, directly rebutted by later testimony. (Plaintiffs will attach the entire transcripts.) Depositions, by

2

their very nature, are not the type of documents that it is appropriate to consider on a 12(b)(6) motion, since they subject to various interpretations, and deal more with factual nuances than with pure legal issues. At best, they are to be considered on a motion for summary judgment, although even at that stage of the proceedings, all factual inferences should be resolved in favor of the non-moving party.

Defendants cite *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217 for the proposition that a court may consider documents whose contents are alleged in the complaint, yet the *Gupta* Court held that the documents in question were not relevant to the Court's determination, so it denied the motion to strike as moot. Similarly, *Cortec. Indus., Inc. v. Sum Holding L.P.* 949 F.2d 42 does not support defendants positions. In *Cortec*, the Court considered only documents whose contents could not reasonably be disputed—a stock purchase agreement, an offering memoranda, and warrants. No case cited by the defendants stands for the proposition that out of context excerpts from depositions taken in another case not even a securities case in another court be considered in a Federal Securities case on a motion to dismiss.

Although the CAC is greatly detailed, it is simply inaccurate to say that the contents of the depositions the defendants attach are alleged in the complaint. Together, there are thousands of pages of deposition testimony, the vast majority taken in another court in another case that was not even a securities case. Since these are documents where the content is in dispute, it is inappropriate for the Court to consider on a motion to dismiss. Simply stated, deposition testimony is not like the fact of a Prospectus, or a 10-K, or the closing price of a particular security on a particular date, where the document facts speak for themselves and the content of which is not subject to reasonable dispute,

(although the interpretation may be.) The contents of the depositions are very different animals. What is said at page 274 is often corrected or retracted at a later page, as was amply pointed out in plaintiffs' opening emergency motion. Defendants state that plaintiffs suggests that "the Court should not review the entire transcripts when considering Defendants Motions to Dismiss because that would require that a "detailed factual determination be made." This statement is off base. Plaintiffs respectfully request that <u>the entire transcript</u> of relevant witnesses <u>who gave testimony in this case</u> be considered on a <u>motion for summary judgment</u>. It is the out of context sound bites that the plaintiffs object to. The very fact that the Defendants are asking the Court to consider deposition testimony shows that *per se*, the defendants want the Court to make detailed factual findings based on an incomplete record that was developed almost entirely in another case.

Finally, plaintiffs include the Rule 56 (f) affidavit of one of plaintiffs' counsel, Michael G. Brautigam. The purpose of this affidavit is to place evidence in the record that, in the professional judgment of plaintiffs' counsel, plaintiffs are unable to fully and fairly respond to the motions filed based on the current state of the record. (*See*, Brautigam affidavit, attached as Exhibit A).

2. **The Plaintiffs Comply With The Letter and the Spirit of All Orders of This Court**

> *This case is REMANDED to Magistrate Judge Hogan to establish a new trial calendar. Once established, the Magistrate Judge should not grant any request for extension of the deadlines therein.*

**Doc. No. 215 at 20.**

4

Unlike the defendants, the plaintiffs have complied and will always comply with the letter and the spirit of all Orders of this Court, and once again, plaintiffs and their counsel are faulted for their adherence to the rules. And while defendants continually barrage plaintiffs with unfounded personal attacks regarding a lack of cooperation, defendants do not, and cannot explain, why they only selectively comply with Orders of this Court, as it suits their needs at the moment. The most egregious example, of course, is the defendants' utter contempt for the previous Order of this Court, (Doc. No. 46), since they have chosen to re-argue materiality with respect to three issues that have already been decided. As John Hust, counsel for the Dinsmore defendants put it, this strategy may be **"out on a limb"** and may be **"overstepping,"** but he believed that if this were the case, the Court would immediately recognize it and immediately issue guidance. Plaintiffs agree, thus the emergency motion. The OHSL and Provident defendants also apparently agree at least in part, in that they have filed an amended motion to dismiss, apparently agreeing with plaintiffs that at least some of their arguments belong in a discussion of summary judgment and not in a motion to dismiss.

Only at the 5 February 2004 Status Conference did Magistrate Judge Hogan state in substance that the true meaning of the Order related only to the trial date, and that other dates that would not effect the trial date could be changed as needed for good cause. Had plaintiffs known that this was allowed, plaintiffs, of course, would have consented to any reasonable extension to accommodate the defendants. (*See*, transcript of proceedings, attached as Exhibit B).

5

### 3. Defendants Falsely State That they Did Not Object to the Scheduling Order

In another gratuitous slap at plaintiffs and their counsel, defendants state in footnote 1 "Defendants did not object to the Scheduling Order and have complied with its dictates." This is true only in the most technical sense, in that the Defendants have, once again, disguised the name of the filing so that their statement is technically true, but intentionally misleading. Any fair reading of Doc. No. 239, the Defendants' joint "Position Paper," will surely conclude that it is, in form and substance, an objection to the Scheduling Order, which plaintiffs did object to. Defendants, in their continuing attempt to mislead the Court, have filed a virulent opposition to the plaintiffs' objection with the District Court telling the District Court that the Order was a model of jurisprudence, while filing a "Position Paper" with Magistrate Judge Hogan asking that the Order be significantly modified. The result—and intent—is to mislead both the District Court and the Magistrate Judge through these mutually antagonistic positions. (For a more detailed discussion of these issues, *See*, Transcript of Status Conference of 16 January 2004, Attached as Exhibit C¹). With the benefit of this transcript, the Court can decide for itself whether the defendants objected to the Scheduling Order.

---

¹ Although plaintiffs Gary and Lindsey Meier attended the deposition of Mr. Brinker, for some reason, Mr. Meier was inexplicably denied access to the Status Conference. Mr. Meier left the Brinker deposition slightly before it was completed to take his daughter to a doctor's appointment. He returned to the Court and went to Magistrate Judge Hogan's chambers, identified himself as a plaintiff in the case, yet was denied admittance to chambers and was therefore not able to attend the status conference.

### 4. Mr. Pinney's Letter to the Court is Unauthorized and Intentionally Misleading

Mr. Pinney, who claims to represent clients who are unaware of his services, has submitted an unauthorized letter to the Court that is intentionally misleading[2]. Mr. Brautigam's letter was specifically authorized by the Court to allow plaintiffs to bring an important issue to the attention of the District Court in a timely fashion. Mr. Pinney's unauthorized letter serves no purpose beyond re-arguing his opposition to the emergency motion, and attacking plaintiffs' counsel. More troubling is Mr. Pinney's decision to intentionally mislead the Court by not referring to the Amended Motion to Dismiss that the OHSL and Provident defendants have filed, in partial recognition that plaintiffs were correct in their arguments that at least some of the motion to dismiss is more appropriately included in motions for summary judgment[3]. This is what the Amended Motion does. Given the fact of the Amended Motion, it is Mr. Pinney and his firm, in conjunction with the disqualified KMK firm, not plaintiffs' counsel, who apparently lack the resources to comply—in an appropriate fashion—with the Scheduling Order. (Copies of Mr. Pinney's letter to the Court and Mr. Brautigam's' letter to Mr. Pinney are collectively attached as Exhibit D.)

---

[2] The recent deposition testimony of former OHSL COB Norbert Brinker established that he has no idea that he is represented by any firm other than KMK. While Mr. Brinker, who is 86 and easily confused, was heavily and obviously coached to use the word "disqualification," he had no idea what it meant, and could not have made an informed decision to have KMK continue its representation of him, since he had no idea who the defendants and witnesses were in the case. Similarly, Mr. Brinker was completely oblivious to the services of Mr. Pinney and the Graydon firm, though he did state in substance that he might have to convene another OHSL board meeting to seek additional representation.

[3] Plaintiffs will respond to the Amended Motion to dismiss within the time provided by in the local rules.

7

### 5. The Dinsmore Opposition

The Dinsmore defendants have submitted a two page opposition (Doc. No. 267) that merely incorporates by reference the arguments of the other defendants, though it goes on to states that "counsel's letter fails to accurately reflect the comments of counsel for these Defendants." (Opposition at 1). Curiously, they do not say how defense counsel was misquoted, nor do they attach a copy of the transcript of the proceedings, although plaintiffs are happy to. The transcript shows that defense counsel was accurately quoted:

> ...we were mindful that the Court had overruled
> the 12 (B) (6) as to those claims or allegations back
> at the original complaint, but the new complaint made
> additional factual allegations, incorporated other documents,
> and made specific references to testimony of various witnesses.
>
> **So we've gone out on a limb**, so to speak, and said, we think
> We're entitled to attack those three remaining misrepresentations
> Because the new complaint contains vastly more allegations than
> The original. If I'm wrong, I'm sure Judge Beckwith will let me
> Know that—if I've **overstepped** the bounds in our motion.

Transcript of Proceedings at 9-10, Attached as Exhibit B. (emphasis added).

Counsel for the Dinsmore defendants clearly stated that their strategy meant that they had "**gone out on a limb**." Plaintiffs agree. Their attempt to disavow this admission, though understandable, is unavailing.

### 6. The KMK Defendants

The KMK defendants have submitted a confusing opposition that has little to do with the Emergency Motion, but appears to be an extension of their opposition (Doc. No. 232) to plaintiffs' motion to take the deposition of two KMK attorneys who provided

8

legal services to Provident related to the merger. (Doc. No. 225.) The KMK opposition is almost entirely irrelevant to the issue before the Court, cites to unpublished cases with zero precedential value that discuss the application of the PSLRA to discovery in this case. (Plaintiffs have adequately addressed these issues in their motion and the reply brief, Docs. No. 225 and 235).

The KMK defendants virtually demand that certain motions be decided on a schedule set by KMK, so that they will avoid the cost and expense of participating in the litigation. Regrettably, they do not show similar concern for plaintiffs, whom the KMK defendants have essentially forced to respond to in the tight guidelines provided for in the Scheduling Order, an Order to which plaintiffs have objected. On the contrary, KMK, by filing a motion that is contemptuous of the Court's previous Order, wants to force plaintiffs and their counsel through the time and expense of responding to their baseless and frivolous motion, which, in the view the Court can rule on at a later date.

The KMK opposition is contemptuous of Orders of both the District Judge and the Magistrate Judge. At footnote 2 on page 3, the KMK defendants state:

> Plaintiffs have already circumvented the PSLRA by deposing four attorneys at KMK, and then attempting to add the KMK defendants as additional defendants in an amended complaint.

The first part of this comment is extremely disrespectful to Magistrate Judge Hogan, who the KMK defendants presumably believe aid and abetted plaintiffs in permitting plaintiffs to depose KMK attorneys as fact witnesses because they wrote the materially false and misleading Proxy Materials/Registration Statement. (*See*, Doc. No. 168). The second part of the statement is contemptuous of an Order of the District Court, which specifically permitted KMK to be added as a defendant. (*See*, Doc. No. 215).

Finally, the KMK defendants deliberately mis-state the discovery schedule as reflected in the Scheduling Order. KMK states:

> ... the Court's current scheduling Order explicitly states that no discovery will be conducted against the KMK defendants while the motions to dismiss are pending. No valid reason exists to modify the finding and ignore the PSLRA.

KMK Opposition at 3, footnote 2.

In fact, the Order actually states:

> A stay of discovery pending the Court's decision on motions to dismiss **shall pertain only to the claims asserted against the newly added parties**, namely Defendants Keating Muething & Klekamp, and Ernst & Young.

Doc. 221 at 2. (emphasis added).

This distinction is extremely important. Discovery is to proceed, except for KMK **as a defendant**. But discovery is to proceed with respect to KMK as witnesses, because they co-authored the materially false and misleading Proxy Materials/Registration Statement as Magistrate Judge Hogan properly held in his Order allowing these depositions to go forward[4]. So much for the KMK defendants' ability to read Court Orders.

### III.  CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the so-called motions to dismiss filed by the OHSL and Provident defendants, the Dinsmore defendants, and the KMK defendants be stricken, and that the plaintiffs be excused of any

---

[4] A motion to take the depositions of two KMK attorneys who also performed services related to the merger is fully briefed and pending before Magistrate Judge Hogan. (*See*, Docs. No. 225, 232, and 235).

obligation to respond to such documents. In the alternative, should the Court not wish to strike these documents in their entirety, plaintiffs respectfully request that the motions be converted into what they are—motions for summary judgment pursuant to Rule 56—and that plaintiffs be given adequate time for discovery in this case to respond, and that a reasonable schedule for same be set. Finally, plaintiffs respectfully a status conference with the Court to discuss these matters and the logical presentation of issues at trial.

Respectfully Submitted,

**GENE MESH & ASSOCIATES**

Dated: 13 February 2004

By: /s/ Michael L. B.

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
513 221 8800 telephone
513 221 1097 fax

## CERTIFICATE OF SERVICE

I hereby certified that a copy of the foregoing was served on this, the 13$^d$ day of February, 2004.

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202-3752

J. Michael Debbeler
John B. Pinney, Esq.
Graydon, Head & Ritchey
511 Walnut Street, Suite 1900
Fifth Third Center
P.O. Box 6464
Cincinnati, OH 45202-3157

Michael R. Barrett
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, OH 45202

**BY U.S. MAIL**

John W. Hust
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, OH 45249

James E. Gauch
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

Stephanie A. Hite