# EXHIBIT C

```
 1              UNITED STATES DISTRICT COURT
 2               SOUTHERN DISTRICT OF OHIO
 3             WESTERN DIVISION AT CINCINNATI
 4
 5
 6                          - - -
 7   WALTER W. THIEMANN, on    :
     behalf of himself and     :
 8   of all others similarly   :
     situated,                 :
 9                             :
             Plaintiff,        :
10                             :
         VS.                   : CASE NO. C-1-00793
11                             :
     OHSL FINANCIAL CORP.,     :
12   OAK HILLS SAVINGS AND     :
     LOAN COMPANY, F.A.,       :
13   NORBERT G. BRINKER,       :
     KENNETH L. HANAUER,       :
14   WILLIAM R. HILLEBRAND,    :
     ALVIN E. HUCKE, THOMAS    :
15   E. MCKIERNAN, JOSEPH J.   :
     TENOEVER, HOWARD N.       :
16   ZOELLNER, PROVIDENT       :
     FINANCIAL GROUP, INC.,    :
17   ROBERT L. HOVERSON,       :
     JACK M. COOK, THOMAS D.   :
18   GROTE, JR., PHILIP R.     :
     MYERS, JOSEPH A. PEDOTO,  :
19   JOSEPH A. STEGER,         :
     CHRISTOPHER J. CAREY,     :
20   CLIFFORD ROE, and         :
     DINSMORE & SHOHL, LLP,    :
21                             :
             Defendants.       :
22
                            - - -
23
24         Transcript of hearing held
```

Williams & Oliver
(513)683-9626

Page 2

1  telephonically before Magistrate Judge Hogan,
2  pursuant to the Federal Rules of Civil
3  Procedure, taken before me, Lee Ann Williams, a
4  Registered Professional Reporter and Notary
5  Public in and for the State of Ohio, on Friday,
6  January 16, 2004, at 10:15 a.m.
7
8  APPEARANCES:
9      On behalf of the Plaintiff:
10         Gene Mesh, Esq.
                and
11         Michael G. Brautigam, Esq.
           Gene Mesh & Associates
12         2605 Burnet Avenue
           Cincinnati, Ohio 45219
13
       On behalf of the Defendants:
14
           James E. Burke, Esq. (Of Counsel)
15         Keating, Muething & Klekamp
           1400 Provident Tower
16         One East Fourth Street
           Cincinnati, Ohio 45202
17
       On behalf of the Defendants Dinsmore &
18     Shohl, Roe and Hertlein:
19         John W. Hust, Esq.
           Schroeder, Maundrell, Barbiere
20         & Powers
           110 Governor's Knoll
21         11935 Mason Road
           Cincinnati, Ohio 45249
22
23
24

Page 3

1      On behalf of the Defendants:
           John B. Pinney, Esq.
2          Graydon, Head & Ritchey
           1900 Fifth Third Center
3          511 Walnut Street
           Cincinnati, Ohio 45202
4
       On behalf of the Defendants:
5
           Thomas William Breidenstein, Esq.
6          Barrett & Weber
           105 East Fourth Street
7          Suite 500
           Cincinnati, Ohio 45202
8
       On behalf of the Defendants:
9
           James E. Gauch, Esq.
10         Jones Day
           51 Louisiana Avenue, N.W.
11         Washington, D.C. 20001
12 ALSO PRESENT: Walter Thiemann
13
14
            - - -
15
16
17
18
19
20
21
22
23
24

Page 4

1         THE COURT: Good morning.
2         MR. MESH: This is Gene Mesh
3  speaking. Other counsel are there. Since I
4  signed the notice, may I lead off?
5         THE COURT: Sure.
6         MR. MESH: I'm not sure I
7  understand the defendants' position as being
8  anything but an objection to the timing of the
9  deposition and that it's inconvenient for them.
10 And I'd like to hear if that is the extent of
11 their objection to going forward on Friday.
12        MR. GAUCH: What topic are we
13 talking about, Gene?
14        MR. MESH: Talking about the
15 Notice of the deposition of Gary Meier.
16        MR. GAUCH: Jim Gauch for Ernst &
17 Young. Our objection is twofold, one is to the
18 timing and two -- the particular timing, but
19 two, we're operating under a discovery stay as
20 far as we're concerned as to discovery relating
21 to Ernst & Young.
22        There is a period that the Court
23 set for class discovery that runs through the
24 end of June. And to the extent that you are

Page 5

1  attempting to produce the Meiers for deposition
2  now and foreclose a later deposition during
3  that period, we object in anticipation of that.
4         MR. MESH: But let me ask you,
5  sir, the Court indicated a scheduling order
6  that you thought was very good. We objected to
7  it, but we accepted it. We have a motion for
8  class certification. We have to support it
9  with evidence because your next argument will
10 be if we don't, that we've failed to carry our
11 burden. How else are we supposed to do it
12 without deposition testimony?
13    (Mr. Pinney entered the hearing.)
14        MR. BURKE: John, we've just begun
15 and the discussion so far is the deposition
16 whereby Mr. Brautigam and Mr. Mesh noticed
17 their own client's deposition.
18        MR. BRAUTIGAM: Is Walt Thiemann
19 on the line?
20        MR. PINNEY: He is.
21        MR. GAUCH: To answer your
22 question as to the Meiers, I assume that you
23 can put in affidavits. You've already
24 supported various other pleadings on class

Page 6

1   certification by way of affidavit. And we will
2   presumably depose your affiants and maybe some
3   other people at a later point and put all that
4   before the Court at the appropriate time.
5       MR. MESH: But once again, sir,
6   why do we as plaintiffs have to be controlled
7   by your thoughts as to how the discovery should
8   go forward? And I ask this very respectfully.
9   Why can't we do our own discovery in our own
10  manner in a timely fashion, because the next
11  thing that will happen is, and you know it, is
12  that the defendants will argue that we have not
13  supported our burden.
14      MR. BURKE: Gene, what's wrong
15  with an affidavit?
16      MR. MESH: A deposition is better
17  and it gives you a chance for
18  cross-examination.
19      MR. BURKE: What we'd like to do
20  is, frankly, brief the motion to dismiss, take
21  Mr. Meier's deposition in the time frame that
22  the Court has allowed. And one of the things
23  Mr. Brautigam has objected to is supplementing
24  the record after motions on class certification

Page 7

1   are filed, so I guess I'm a little lost as
2   to -- as to what -- how there can be any
3   problem with taking Mr. Meier in the time frame
4   that the Court has permitted.
5       MR. BRAUTIGAM: Your Honor, this
6   is Mike Brautigam. I'd like to address that
7   issue very briefly. You issued an order,
8   document 221, and you said that the deadline
9   for the filing for the motion for class
10  certification was December 31st, 2003. We
11  complied with that. Overall we didn't like the
12  order and we objected to it.
13      And here's what KMK said in
14  response to our objection. This is reading
15  from document 226. Absolutely no part of
16  Magistrate Judge Hogan's scheduling order is
17  either clearly erroneous or contrary to law so
18  as to warrant that it be modified or set aside.
19  In fact, the record reflects that Magistrate
20  Judge Hogan invested substantial time, thought
21  and energy in developing a suitable trial
22  calendar for this case with the full input of
23  Thiemann's counsel and with Thiemann on the
24  phone.

Page 8

1       It then goes on to say, Section
2   III, subheading A, the scheduling order
3   reflects the understanding of the parties and
4   contains no obvious error. Down further in the
5   page. A scheduling order is not clearly
6   erroneous or contrary to law simply because a
7   party is unhappy with it, especially when, as
8   in the case at bar, the trial calendar is a
9   product of a conference in which all parties
10  participated and were heard by the Court.
11      It goes on to say, the scheduling
12  order is undoubtedly appropriate and fair.
13  Now, Your Honor, at the same time they're
14  saying, now that they understand it, they don't
15  want to comply with it. And we think that
16  that's wrong and we think that they're
17  misleading the district court with their
18  objections, taking diametrically opposed
19  positions in the one Court and a different
20  position before you.
21      MR. BURKE: Mike, since you quoted
22  me so much, I guess you think it ought to be
23  granted. I do take issue with your suggestion
24  that we're misleading the Court. That's

Page 9

1   incorrect. Mike, in the scheduling order you
2   objected to the dates that were set forth which
3   we believe were appropriate.
4       MR. BRAUTIGAM: If you believe the
5   dates are appropriate, you should comply with
6   the order.
7       MR. BURKE: Mr. Brautigam, I
8   didn't interrupt you. The dates are not -- do
9   not cover the date for us filing a response to
10  the class certification motion. We attempted,
11  as lawyers in the Southern District of Ohio are
12  expected to do, to try to work out something
13  with you.
14      And you refused as, unfortunately,
15  has happened many, many times in this case. So
16  therefore we have to come back to the Court and
17  ask for guidance on a date that was not
18  contained in the scheduling order because we
19  cannot get an agreement with you. That's why
20  we're on the phone today, Mike.
21      All we're trying to do is get the
22  Court's analysis of Mr. Gauch's position on
23  behalf of all defendants, which was give us a
24  date for responding and either it should be

Page 10

1  after the close of discovery or it can be
2  beforehand with a stipulation that we can
3  supplement the record when discovery is
4  finished.
5           MR. BRAUTIGAM: Jim --
6           MR. BURKE: And with that we are
7  prepared to move forward, but you wouldn't
8  agree to either one of those.
9           MR. BRAUTIGAM: Jim, that's simply
10 not true. You have a date for when your motion
11 is due. If you don't like the date, at least
12 be up-front and admitting. You don't want to
13 comply with the Judge's order, you want him to
14 modify it. That's not the position you took
15 before Judge Beckwith.
16          MR. BURKE: I disagree with you.
17 I'll let the others talk.
18          THE COURT: Jim, there was a
19 motion to -- I guess it wasn't a -- did Judge
20 Beckwith ever resolve that or am I wrong? I
21 thought there was an objection to the Court's
22 scheduling order filed.
23          MR. BURKE: That was Mr.
24 Brautigam's objection, Your Honor. That's been

Page 11

1  briefed, I don't believe it's been decided.
2           THE COURT: Doesn't that end it?
3  Her response to that objection is the end of
4  the game, isn't it?
5           MR. BURKE: I would think so, Your
6  Honor. The only -- the only additional issue
7  that we're talking about today is that the date
8  for defendants to respond to the motion for
9  class certification was not set in the order.
10 And all we're trying to do is reach an
11 agreement on what date that ought to be. And
12 regrettably we asked for some dates from Mr.
13 Brautigam, tried to propose some dates, and he
14 was unwilling to do so.
15          MR. BRAUTIGAM: Your Honor, that's
16 not exactly right. What Mr. Burke wanted was
17 an open ended extension where he could
18 supplement the record and repeat the chaos that
19 happened last time. Since the status
20 conference on November 4th when you set the
21 schedule, since the order on November 18th when
22 you formalized that in writing, Mr. Burke
23 hasn't even requested the depositions of Mr.
24 Thiemann or the Meiers.

Page 12

1           So we took the bull by the horns
2  and set that out, because we want the evidence.
3  And it's fully consistent with the order you
4  issued, document 221. What Mr. Burke is
5  reluctant to say is that he doesn't want to
6  comply with the order, even though he's told
7  Judge Beckwith what a great order it is and how
8  it's not clearly erroneous or contrary to law.
9           MR. GAUCH: Your Honor, James
10 Gauch. The fundamental problem here is the
11 scheduling order set the close for class
12 discovery for June 30th. I think everyone
13 except the plaintiffs' counsel assumed there
14 would be an opportunity for briefing after that
15 so we can put before the Court whatever was
16 discovered in the course of class discovery.
17          And Mr. Brautigam has taken the
18 position that -- not only that our initial
19 responses motion is due in the time period set
20 by the local rules, but also that he will
21 vigorously oppose any attempt at any time to do
22 any supplemental briefing to bring to the
23 Court's attention any of the discovery we get
24 after we file our briefs.

Page 13

1           So we're looking for clarification
2  from the Court that, number one, we will be
3  able to file supplemental briefing at minimum
4  after the close of class discovery and, two, we
5  suggest to the Court that it makes a lot more
6  sense to simply have one round of briefing once
7  the discovery is completed.
8           MR. BRAUTIGAM: Your Honor,
9  they've known about this for months, since at
10 least November 4th, and they've taken no
11 action.
12          MR. HUST: Why would we depose
13 people before we even see your motion for class
14 certification?
15          MR. MESH: You should have seen
16 it, we had it filed in opening motion.
17          MR. HUST: We go back to your old
18 motion.
19          MR. MESH: We filed a new motion,
20 you should have gotten it.
21          MR. HUST: Right. Why would we
22 take discovery between November 14th and
23 December 31st when we didn't see your motion
24 for class certification before December 31st?

Page 14

1    MR. MESH: I'm sorry, John, I
2    didn't understand.
3        MR. PINNEY: We also have the
4    consolidated new Complaint.
5        MR. MESH: Well, you've seen now
6    the new motion, you've seen the new Complaint.
7    We want to support our motion for class
8    certification.
9        MR. GAUCH: But it's not going to
10   be dealt with and decided by the Court until
11   after the discovery with regard to class issues
12   is complete.
13       MR. MESH: Well, then the risk is
14   on us if we don't do it right. But it's better
15   to do it some way than not at all. I've been
16   through this too many times when the lack of
17   plaintiffs' aggressiveness on discovery is
18   faulted. And the next argument you make is
19   they're not worthy because they didn't produce
20   any evidence and support the record.
21       MR. BURKE: But Gene, you have
22   until June 30th to do that.
23       MR. MESH: That's the end of
24   discovery.

Page 15

1    MR. BURKE: That's what I'm
2    saying. So I guess I don't understand if
3    you've got until June 30th to produce evidence,
4    what possible prejudice can you -- can you
5    claim?
6        MR. MESH: One never knows what
7    defendants' lawyers are going to do. We're
8    just simply taking the active part that we need
9    to take as plaintiff's lawyers and noticing the
10   deposition. And you're entitled to come in
11   cross-examination -- and cross-examine and
12   we'll get that part done. How many depositions
13   will you need of this man?
14       MR. BURKE: Gene knows there is a
15   stay of discovery pending the filings of
16   motions to dismiss.
17       MR. MESH: But there is a
18   scheduling order regarding class briefing.
19       MR. BURKE: And that basically
20   continues for two months after the Court has
21   targeted for decision on the motion to dismiss.
22       MR. MESH: Well, I don't know that
23   it controls the time we're allowed to produce
24   evidence.

Page 16

1    MR. BRAUTIGAM: Your Honor --
2        MR. MESH: Anything in the
3    scheduling order that says we can't take class
4    discovery at this moment? Nothing.
5        THE COURT: All right. So the
6    issues involved are the response to the class
7    cert motion and the current pending deposition
8    of Gary Meier, right?
9        MR. MESH: Right.
10       MR. BRAUTIGAM: Well, Your Honor,
11   that's scheduled for Monday.
12       MR. BURKE: Unilaterally, Your
13   Honor. Nobody had agreed to that date, they
14   just sort of set it.
15       THE COURT: All right.
16       MR. BURKE: They didn't even
17   attempt to coordinate with anybody else's
18   schedule.
19       MR. BRAUTIGAM: That's correct,
20   Your Honor. We wanted to set it for a time at
21   which KMK and the other defendants would have
22   time to get the deposition and use it
23   meaningfully with respect to their opposition
24   of our motion for class certification.

Page 17

1    THE COURT: And Mr. Meier is a
2    plaintiff?
3        MR. BURKE: Yes.
4        MR. BRAUTIGAM: Yes, Your Honor.
5    It's his wife.
6        THE COURT: All right. I've got
7    what I need.
8        MR. BRAUTIGAM: Your Honor,
9    there's at least one other issue on the agenda.
10       THE COURT: And is that --
11       MR. BRAUTIGAM: Your Honor, last
12   time we spoke, I believe it was on December
13   9th, we talked about Mr. Norbert Brinker's
14   health condition. He's the former chairman of
15   the OHSL Board.
16       THE COURT: Right.
17       MR. BRAUTIGAM: And you suggested
18   that we get his doctor, Dr. Smith, on the
19   phone, whereby Mr. Burke prevailed on you to
20   get a letter which he said would be forthcoming
21   in a couple of days. Well, it took two weeks
22   and I believe that Dr. Smith's letter was
23   forwarded to you. It's dated December 22nd,
24   2003.

Page 18

1  THE COURT: Right.
2  MR. BRAUTIGAM: And Your Honor,
3  respectfully it does not address the things
4  that you said it should address. First of all,
5  because you said when you -- a doctor thinks of
6  a deposition, he probably thinks that it's an
7  all day thing and he has to come downtown and
8  things like that.
9  And the letter doesn't take those
10 things into account at all. But what's even
11 more interesting, Your Honor, is that any fair
12 reading of the letter suggests that Mr. Brinker
13 is going to continue his stay at the Western
14 Hills Retirement Village.
15 And I was very surprised to learn
16 during the examination of one of his fellow
17 OHSL directors that Mr. Brinker was home either
18 as of December 22nd, which is the testimony, or
19 the next day, which I believe Mr. Burke found
20 out from Mr. Brinker's daughter.
21 The point is, the Court has
22 perhaps been misled. It certainly hasn't been
23 updated and circumstances are very different
24 now. So we would like to find out if we can

Page 19

1  take this man's deposition. I asked Mr. Burke
2  if he could get Dr. Smith on the phone today.
3  Apparently Dr. Smith is too busy.
4  MR. BURKE: I do take issue with
5  your suggestion that we're misleading the
6  Court, Mr. Brautigam. Your Honor, Mr. Brinker
7  is at home. He is wheelchair bound. He is
8  confined to his residence. He is at this point
9  in time, according to his daughter, whom I
10 spoke with yesterday, okay, his condition is
11 all right.
12 She does not believe -- she's not
13 a doctor, but she does not believe that he
14 would be able to sit for a deposition. I might
15 add, Your Honor, that we have produced three of
16 the other four OHSL directors for a deposition
17 by Mr. Brautigam as the Court had asked us to
18 do.
19 I would further submit that Mr.
20 Brautigam's, shall we say, the techniques of
21 his questioning at those depositions, which are
22 on video and we're prepared to share with the
23 Court, make me even more certain that having
24 him go into Mr. Brinker's home, given his

Page 20

1  current health situation, would be
2  inappropriate and untimely. I, I -- the
3  gentleman is 86 years old.
4  Mr. Brautigam's treatment of the
5  other directors, as I believe the video
6  reflects, was anything but respectful. And I
7  just don't think it's appropriate necessarily.
8  We've got a letter from Dr. Smith. I've asked
9  him for an update. I have not yet received
10 that update.
11 We'll do what the Court wants, but
12 I think that, as we've said before, with 700
13 pages of deposition testimony already, with
14 three of the other four OHSL directors already
15 deposed on these so-called new issues, and
16 their testimony was very consistent, I just
17 don't see why Mr. Brautigam has the need, other
18 than for pure harassment, to go into Mr.
19 Brinker's home while he is in a wheelchair and
20 attempt to do the same thing to him.
21 MR. BRAUTIGAM: Your Honor, first
22 of all, those deposition transcripts will be
23 filed if they have not been filed already and
24 they speak for themselves. I was extremely

Page 21

1  respectful with these gentlemen as I am with
2  all of the witnesses.
3  With respect to Mr. Burke's final
4  comments, I simply don't understand why he is
5  permitted to continuously attempt to
6  re-litigate something he filed papers on, you
7  ruled on, and presumably we're going to proceed
8  on. But every time he makes the same arguments
9  over and over again on issues that you decided
10 literally years ago.
11 So the point is, Your Honor, I
12 don't believe that Ms. Weiland is an
13 appropriate expert in whether or not her father
14 can be deposed or not. This is a delaying
15 tactic. Mr. Brinker is 86 years old, he's not
16 getting any younger. You've consistently ruled
17 that I'm permitted take his deposition on
18 behalf of the plaintiffs and I suggest that it
19 be sooner rather than later.
20 MR. BURKE: Your Honor, I'm
21 prepared to give you Ms. Weiland's phone number
22 and you can speak to her yourself.
23 THE COURT: This is a little
24 unusual even for me, but I think what we

Page 22

1  probably ought to do is to say that I want to
2  make contact with Dr. Smith myself and ask him,
3  and make clear to him what a -- I'm sure he
4  knows what a deposition is, he's probably been
5  deposed a number of times himself.
6          I want him to understand that it
7  can be on several different days at very
8  convenient times and maybe at Brinker's home.
9  And I'm even willing to go there myself and
10 preside over it just to make sure that Dr.
11 Smith's guidelines are followed.
12         MR. BRAUTIGAM: We welcome that,
13 Your Honor.
14         THE COURT: And I don't know any
15 other way to do it, you know. You guys are
16 going to say -- Jim's going to say that Mike's
17 misbehaving at the scenes of depositions. And
18 I -- I just feel if somebody is in a precarious
19 medical state that I can best control this by
20 talking to the doctor myself and then setting
21 some guidelines that he outlines so that we
22 don't injure Mr. Brinker's health.
23         I don't want him to be a person
24 who in a precarious state of health really

Page 23

1  can't excuse himself on the deposition all
2  together, but it ought to be controlled so that
3  we get the truth and he doesn't suffer the
4  consequences of some undue anxiety that's
5  brought on by the whole thing.
6          MR. BURKE: That's fine, Your
7  Honor. I can give you his number right now.
8          THE COURT: I will outline in a
9  written form the summary of what he tells me.
10 And if we can proceed with Mr. Brinker's
11 deposition, even if it means a half hour at a
12 time in his residence or someplace else, I'm
13 willing to do it to get the thing moving.
14         MR. BURKE: Your Honor, this is
15 Jim Burke again. It's W. David Smith, S M I T
16 H. He's at 5525 Marie Avenue in Bridgetown,
17 598-1300.
18         THE COURT: Okay.
19         MR. MESH: Again, I think all
20 counsel truly appreciate your effort in this
21 regard.
22         THE COURT: I'll do what I can
23 there, because I think I understand that issue
24 better than the other two, but we'll get right

Page 24

1  on this and an order will be forthcoming. All
2  right?
3          MR. MESH: Thank you very much,
4  Judge Hogan.
5          MR. BURKE: Thank you.
6          MR. HUST: Thank you, Your Honor.
7
8          - - -
9  (Proceedings concluded at 10:34 a.m.)
10         - - -

Page 25

CERTIFICATE

I, Lee Ann Williams, a Notary Public in
and for the State of Ohio, do hereby certify
that the foregoing is a true and correct
transcript of the proceedings in the foregoing
captioned matter, taken by me at the time and
place so stated and transcribed from my
stenographic notes.

My commission expires:
August 26, 2004       Lee Ann Williams, RPR
                      Notary Public-State of Ohio

# EXHIBIT D

# Graydon Head & Ritchey LLP

*Attorneys at Law*

John B. Pinney
Direct Dial: (513) 629-2730
E-Mail: jpinney@graydon.com

February 11, 2004

**VIA HAND DELIVERY**

The Honorable Sandra S. Beckwith
United States District Court
Southern District of Ohio, Western Division
810 Potter Stewart Courthouse
100 E. Fifth St.
Cincinnati, OH 45202

Re: Thiemann, et al. v. OHSL, et al.
Case No. C-1-00-793

Dear Judge Beckwith:

I am writing in response to the letter that Michael Brautigam sent you on February 6, 2004. The Court's November 19, 2003 Scheduling Order required Plaintiffs to file an amended complaint on December 31, 2003, and required Defendants to file any motions to dismiss by January 31, 2004. (Doc. No. 221). In accordance with that Scheduling Order, Plaintiffs filed the Consolidated Amended Class Action Complaint (the "CAC") on December 31, 2003, and our clients, the OHSL and Provident Defendants, filed a Motion to Dismiss on January 30, 2004.[1] Under the terms of the Scheduling Order, Plaintiffs have until February 16, 2004 to file memoranda opposing Defendants' motions to dismiss. (*Id.*).

On February 3, 2004, Plaintiffs filed an "Emergency Motion," asking the Court to strike the motions to dismiss of all Defendants except Ernst & Young. (Doc. No. 261). In support of the request to strike, Plaintiffs raise certain arguments about the motions to dismiss filed by certain Defendants. These arguments are not well taken, as noted below. The simple fact of the matter, however, is that, if Plaintiffs believe that Defendants' motions are not well taken for any reason, they can and should raise such arguments in their memoranda opposing the motions to dismiss. There is absolutely no legal basis for filing a motion to strike inappropriately seeking an advance ruling, in a

---

[1] Mr. Brautigam claims that Defendants had "months" to prepare the Motion to Dismiss. By my calculation, however, December 31, 2003 to January 31, 2004 is 31 days, or one month.

www.graydon.com

372863.1

*Mailing Address*
P.O. Box 6464
Cincinnati, Ohio 45201-6464

*Cincinnati Office*
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202-3157

*Kentucky Office*
2500 Chamber Center Drive
Suite 300
Ft. Mitchell, Kentucky 41017-7070

The Honorable Sandra S. Beckwith
February 11, 2004
Page 2

vacuum, on Defendants' legal arguments. If Plaintiffs have a point to make that, they believe, impacts the motions to dismiss, they should include it in their memoranda in opposition. This clearly is not a legally appropriate situation for a motion to strike.

Plaintiffs' individual arguments also are without merit. First, Plaintiffs claimed that Defendants' motions to dismiss re-argue issues dispositively decided by the Court in its July 25, 2001 Order (Doc. No. 46). The reasons that we dispute this claim are fully set forth in our Memorandum in Opposition to Plaintiffs' Emergency Motion. (Doc. No. 262). In summary, however, the reasons are as follows:

(1)  The CAC is a new complaint that contains new factual allegations and references that were not part of the original Complaint. Defendants have the right, and obligation, to test the sufficiency of the allegations in the new CAC;

(2)  Sixth Circuit caselaw interpreting the federal securities laws and the legal sufficiency of complaints alleging securities law violations is much different now than it was in July, 2001. The applicable law clearly mandates dismissal of all of Plaintiffs' claims. Defendants have the right to argue for dismissal of all the allegations of the CAC based upon the current state of the law;

(3)  The Court's July, 2001 Order dispositively held that certain of Plaintiffs' allegations failed as a matter of law. The Order did not, however, dispositively rule that Plaintiffs' surviving allegations were legally material, only that they were sufficient "at the pleading stage." Defendants believe that they are entitled to dispute the legal sufficiency of these allegations, particularly in the context of the new CAC, which references documents and testimony which, when viewed in context, demonstrates the legal insufficiency of Plaintiffs' allegations.

The Court should not strike any of the motions to dismiss.

As an alternative to striking the motions to dismiss, Plaintiffs' "Emergency Motion" requests that the Court summarily convert the motions to dismiss to motions for summary judgment. In support of this argument, Plaintiffs state that the motions to dismiss cite deposition testimony from "another case in another court that was not a securities case." (See Mr. Brautigam's 2/6/04 letter to the Court, at n. 1). Plaintiffs ignore two crucial facts on this point, however. First, the only reason that Defendants discuss these depositions (which were taken in Mr. Brautigam's abandoned State Court Action relating to the Provident-OHSL merger) is that the CAC cites to testimony in these depositions and largely is based upon Plaintiffs' mischaracterizations of what the testimony was. Second, the law is quite clear; a motion to dismiss under Rule 12(b) may rely upon and incorporate any documents referenced in the complaint. See *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim."); *In re Gupta Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D.

372663.1

The Honorable Sandra S. Beckwith
February 11, 2004
Page 3

Cal. 1994) (*quoting Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). In other words, because Plaintiffs excerpted and relied upon depositions in the CAC, Defendants, properly have the right to rely upon and cite the Court to the full content of these same depositions in the motions to dismiss, and the consideration of such testimony by the Court does not require converting the motions to dismiss into motions for summary judgment.

What really is going on here is something much more mundane. Plaintiffs are required to respond to the motions to dismiss by February 16, 2004 under the present Scheduling Order (to which Plaintiffs inexplicably have filed objections). Plaintiffs evidently need more time to respond to the pending motions. Plaintiffs apparently reluctant to request it, however, because just a few weeks ago, Plaintiffs refused to grant Defendants any extension of time to respond to Plaintiffs' renewed Motion for Class Certification. (See Defendants' Position Paper (Doc. No. 239)). As Defendants' counsel advised both Plaintiffs' counsel and Magistrate Judge Hogan last week, however, Defendants' have no objection to an extension. If Plaintiffs need a reasonable extension of time to respond to these motions to dismiss, Defendants will not oppose it. There is no basis for a motion to strike or convert, however, and Plaintiffs' "Emergency Motion" therefor should be denied.

Sincerely,

GRAYDON HEAD & RITCHEY LLP

John B. Pinney

JBP:jaw

cc: Magistrate Judge Timothy S. Hogan (via hand-delivery)
Michael G. Brautigam (via facsimile)
John W. Hust
James E. Gauch
Michael R. Barrett
Thomas W. Breidenstein
James E. Burke
Rachael A. Rowe

372883.1

**LAW OFFICES OF GENE MESH AND ASSOCIATES**

11 February 2004

By Fax 651 6464

John B. Pinney, Esq.
GRAYDON HEAD & RITCHEY LLP
P.O. Box 6464
Cincinnati, OH 45201-6464

<u>Re: Thiemann, et al. v. OHSL, et. al.</u>

Dear Mr. Pinney:

I write in response to your 11 February 2004 letter to Judge Beckwith that was submitted without authorization in violation of the local rules. Your letter is little more than a personal attack on me, and an attempt to re-argue points already made in your opposition to the emergency motion. These scurrilous comments will be responded to at the appropriate time and in the appropriate context.

You state that plaintiffs are required to respond to various motions by 16 February 2004 pursuant to the Scheduling Order. I respectfully disagree. Perhaps you forgot that you filed an Amended Motion to Dismiss on 6 February 2004 in recognition that plaintiffs were correct that (at least some of) your argument that your Motion to Dismiss was more appropriately considered in the summary judgment context. The filing of your Amended Motion (Doc. No. 264) thus starts the clock for the response time, and provides for the normal amount of time under the local rules. Please be advised that I am aware of and reject Mr. Burke's unique view that the filing of the Amended Motion has no effect on our response date. (As you know, the current Scheduling Order provides significantly less time that allowed [in normal circumstances] under the local rules, which is one of the reasons for our objections. )

2605 Burnet Avenue
at Taft Road
Cincinnati, Ohio 45219

TELEPHONE
(513) 221-8800

FAX
(513) 221-1097

I respectfully request that you amend your letter to Judge Beckwith, to at least inform Judge Beckwith with respect to the filing of the Amended Motion to Dismiss. Should you not amend your letter, the only reasonable conclusion is that you wish to continue to deliberately mislead the Court, something that you have repeatedly done even given your recent appearance in the case[1].

Finally, on page 2 of your letter you state that the caselaw interpreting the federal securities laws and the sufficiency of the complaint has dramatically changed since July 2001. Would you kindly tell me which cases you are referring to?



---

[1] ery statement on behalf of the OHSL and Provident defendants that plaintiffs filed ...ed Complaint on 4 February 2002 without leave of the Court is a knowingly false statement.

**LAW OFFICES OF GENE MESH AND ASSOCIATES**

Thank you for your cooperation.

Sincerely,

Michael G. Brautigam

cc: All Counsel



# Graydon Head & Ritchey LLP

*Attorneys at Law*

John B. Pinney
Direct Dial: (513) 629-2730
E-Mail: jpinney@graydon.com

February 12, 2004

*Via Facsimile (221-1097)*

Michael G. Brautigam, Esq.
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, OH 45229

Re:   *Theiman v. OHSL, et al.*

Responding to your letter of February 11, I obviously thought that Judge Beckwith needed to consider your letter of February 6 to her in context and believed it appropriate to set forth my clients' position to allow her to do so. With respect to your response date to the motions to dismiss, I believe that the scheduling order speaks for itself. However, you certainly may interpret that order as you please.

Nonetheless, I again invite you to request an extension for a reasonable time, or, alternatively, if you believe the operative date is not February 16th (or 17th due to the holiday) that you consider confirming with the Court that it is not expecting your response to my clients' motion until March 1, 2004, as indicated in your letter.

Sincerely,

GRAYDON HEAD & RITCHEY LLP

John B. Pinney

JBP/tsl
c:   James E. Burke, Esq.
     Rachael A. Rowe, Esq.
     J. Michael Debbeler, Esq.
     John W. Hust, Esq.
     James E. Gauch, Esq.
     Michael R. Barrett, Esq.
     Thomas W. Breidenstein, Esq.

373171.1

www.graydon.com

Mailing Address
P.O. Box 6464
Cincinnati, Ohio 45201-6464

Cincinnati Office
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202-3157
telephone (513) 621-6464
fax (513) 651-3836

Kentucky Office
2500 Chamber Center Drive
Suite 300
Ft. Mitchell, Kentucky 41017-7070
telephone (859) 282-8800
fax (859) 525-0214

**LAW OFFICES OF GENE MESH AND ASSOCIATES**

12 February 2004

By Fax 651 6464

John B. Pinney, Esq.
GRAYDON HEAD & RITCHEY LLP
P.O. Box 6464
Cincinnati, OH 45201-6464

      Re: <u>Thiemann, et al. v. OHSL, et. al.</u>

Dear Mr. Pinney:

I write in response to your 11 February 2004 letter. I understand that you and Mr. Burke have a unique view on the meaning of the filing of an amended motion (that it has no effect). Frankly, I think this is silly. Our position is that the filing of an amended motion moots the previous motion, and starts the clock all over. This is consistent with the information listed on Pacer, which calls for a 1 March 2004 response to the Amended Motion by the OHSL and Provident defendants. Still, your point is well-taken. How do you suggest that I confirm with the Court short of the status conference that I have asked for and you have opposed?

As things stand now and absent some relief from Judge Beckwith, I hope to comply with the Court's Scheduling Order and file our responses to all but your Amended Motion on Tuesday. I do, however, appreciate your offer to grant a reasonable extension of time if needed, an offer I note was also graciously extended by some of your co-counsel on the defense side, and one I may yet need. Finally, contrary to your personal attacks on me, I did not grant an extension of time only because I reasonably believed that the schedule was "carved in stone" and not allowed to be changed. Magistrate Judge Hogan's comments about the true intent of the Scheduling Order was enlightening, although I had no way of knowing his views at the time. As things turned out, Magistrate Judge Hogan agreed with my interpretation, at least with respect to when your response was due. But I feel that I must point out that had I known that I was empowered to grant a reasonable extension, I would have done so, and will do so in the future. Since you are becoming more involved in the case, I wish to extend my hand in the spirit of cooperation.

2605 Burnet Avenue
at Taft Road
Cincinnati, Ohio 45219

TELEPHONE
(513) 221-8800

FAX
(513) 221-1097

Sincerely,

Michael G. Brautigam

cc: All Counsel

