## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRUCT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **WALTER THIEMANN, et al.** | : | **Case No. C-1-00-793** |
| **Plaintiffs,** | : | **Judge Sandra S. Beckwith** |
| **vs.** | : | **Magistrate Judge Timothy Hogan** |
| **OHSL FINANCIAL CORP., et al.** | : | |
| **Defendants.** | : | |
| | : | |

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ERNST & YOUNG'S MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

### *UBI JUS IBI REMEDIUM*

Dated: February 17, 2004

**GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the Class

i

Plaintiffs, by and through counsel, pursuant to Rule 12(b)(6) and Section 9(b) of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, and the Securities Litigation Uniform Standards Act of 1998, hereby respond to Defendant Ernst & Young's Motion to Dismiss the Consolidated Amended Complaint (hereinafter "Motion to Dismiss") and submit the following Memorandum in support thereof.

Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the Class

## **TABLE OF CONTENTS**

I.    INTRODUCTION...................................................................1-4

II.   SUMMARY OF ARGUMENTS RAISED AND PRIMARY
      AUTHORITIES RELIED UPON...................................................4-8

      A.    Plaintiffs Section 10(b) and 14(a) Claims of the Securities
            Exchange Act of 1934 are Not Barred by the Applicable Statute
            of Limitations or Statute of Repose...........................................4-5

            1.    Plaintiffs had No Inquiry Notice Until March 5, 2003................5

      B.    Plaintiffs Adequately Pled Their Claim for a Violation of Section
            10(b) of the Securities Exchange Act of 1934......…..........….................6-8

            1.    Accountants Can be Liable for a Section 10(b) Claim...............6

            2.    Plaintiffs Adequately Pled the Material Misstatement of
                  Omission Element of a Section 10(b) Claim........................6-7

            3.    Plaintiffs Adequately Pled the Scienter Element of a Section
                  10(b) Claim...…………………………………………............7-8

      C.    Plaintiffs Adequately Pled Their Claim for a Violation of
            Section 14(a) of the Securities Exchange Act of 1934...........…..….......8

III.  STATEMENT OF FACTS..........................................................…...9-12

IV.   LEGAL ARGUMENT...............................................................…..12-42

      A.    Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Standard...................12-13

      B.    Defendant E&Y Violated GAAP and GAAS.............................13-14

      C.    There Can be No Doubt that the Restatements are Material............14-16

      D.    Plaintiffs' Section 10(b) and Section 14(a) Claims of the
            Securities Exchange Act of 1934 are Not Barred by
            a Statute of Limitations or Statute of Repose............................17-25

            1.    Plaintiffs Had No "Inquiry Notice" Regarding
                  Defendant E&Y's conduct Prior to March 5, 2003..............19-25

      E.    Plaintiffs Adequately Pled Their Claim for a Violation
            of Section 10(b) of the Securities Exchange Act of 1934...............25-40

1.   Accountants Can be Liable for a Section 10(b) Claim..........29-31

2.   Plaintiffs Adequately Pled that Defendant E&Y
     Violated Section 10(b)...............................................31-40

     a.   Plaintiffs Adequately Pled the Material
          Misstatements or Omissions Element of a
          Section 10(b) Claim.......................................31-34

     b.   Plaintiffs Adequately Pled the Scienter
          Element of a Section 10(b) Claim.......................34-40

F.   Plaintiffs Adequately Pled Their Claim for a Violation of
     Section 14(a) of the Securities Exchange Act of 1934.................40-41

G.   Plaintiffs Adequately Pled a Common Law Fraud Claim...................42

V.   CONCLUSION...............................................................43

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ades v. Deloitte & Touche*, 799 F. Supp. 1493 (S.D.N.Y. 1992)…………………………36

*Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301 (9th Cir. 1982)……………32,35

*Anixter v. Home-Stake Production Co.*, 77 F.3d 1215 (10th Cir. 1996)…………………29

*Basic, Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978 (1988)……………………7,34,40

*Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46 (2d. Cir. 1987)………….……..37

*Blakely v. Lisac,* 357 F. Supp. 255 (D. OR. 1972)……………………………………..14, 33

*Blatt v. Merrill Lynch,* 916 F. Supp. 1343 (D.N.J. 1996)……………………………….20

*Bovee, et al.  v. Coopers & Lybrand*, et al., 272 F. 3d. 356 (S.D. Ohio 2002)…………17

*Cashman v. Coopers & Lybrand*, 877 F.Supp. 425 (N.D. IL 1995)…..…………………32

*CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158 (S.D.N.Y. 1990)…35

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164, 114 S.Ct. 1439 (1994)………………………………………………..6,29

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, (1990)………………………………..19

*Cortec. Indus. Inc. v. Sum Holding L.P.*, 839 F. Supp. 1021, (S.D.N.Y. 1993)…………35

*De La Fuente v. Dci Telecoms*, 206 F.R.D. 369 (S.D.N.Y. 2002)…………………………24

*Drake v. Thor Power Tool Co.*, 282 F. Supp. 94 (N.D. Ill. 1967)…………………………33

*Ernst & Ernst v. Hoschfelder*, 425 U.S. 185, 96 S.Ct. 1375 (1976)………………………27

*Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544 (E.D. NY. 1971)…31-32

*Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533 (M.D. Fla 1997)……………4,17

*Fischer, et al. v. Kletz, et al.*, 266 F. Supp. 180 (S.D.N.Y. 1967)……………………34,39

*Florida State Bd. of Admin.*, 270 F.3d 645 (8th Cir. 2001)………………………………..35

*Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333 (6th Cir. 1994)……………..…4,17

*Frymire-Brinati* v. *KPMG Peat Marwick*, 2 F.3d 183 (7th Cir. 1993)......................29

*Fujisawa Pharmaceutical Co., Ltd. V. Kapoor*, 115 F.3d 1332 (7th Cir. 1997).........19,22

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314 (S.D.N.Y. 1982)...35

*Goldman v. Belden*, 754 F.2d 1059 (2d. Cir. 1985)..............................................34

*Gomez v. Toledo*, 446 U.S. 635 (1980)...........................................................17

*Helwig v. Vencor*, 251 F.3d 540 (6th Cir. 2001)...............................................28

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683 (1983).................29

*Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F. Supp. 112 (S.D.N.Y. 1974), *Aff'd*, 540 F.2d 27 (2d Cir. 1976)...................................................16

*Hirsch v. du Pont*, 553 F.2d 750 (2d Cir. 1977)..............................................6,34

*Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229 (1984)..........................12

*H.L. Green Company v. Lewie F. Childree*, 185 F. Supp. 95 (S.D.N.Y. 1960). ...........31

*Howard v. United States*, 377 U.S. 953 (1964)................................................43

*In re Baesa Sec. Litig.*, 969 F.Supp. 238 (S.D.N.Y. 1997)................................27,37

*In re Comshares, Inc. Securities Litigation*, 183 F.3d 542 (6th Cir. 1999)...............................................7,26-28,34-35,37

*In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litigation*, 467 F.Supp. 227 (W.D. TX 1979)...................................................16

*In re Damlerchrysler AG Securities Litigation*, 269 F.Supp.2d 508 (D. Del. 2003)........20

*In re Enron Corp. Securities*, 235 F.Supp.2d 549 (5th Cir. 2002)...........................30

*In re Health Management Sec. Litig.*, 970 F. Supp. 192 (E.D.N.Y. 1997)..................36

*In re Initial Public Offering Sec. Litigation*, 241 F. Supp.2d 281 (S.D. NY 2003).........26

*In re Nivram Corp. v. Harcourt Brace Jovanovich*, 840 F. Supp. 243 (S.D.N.Y.). .......20

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 487 (S.D. OH 2000) TX 1979)................................................................28

*In re Touche, Niven, Bailey & Smart*, 37 S.E.C. 629 (1957)..........................6,30,33,43

*Knapp v. Ernst & Whinney*, 90 F.3d 1431 (9th Cir. 1996).................................29

*Kohler v. Kohler*, 319 F.2d 634 (7th Cir. 1963)....................................32

*Lampf, Pleva, Lipkind, Prupris & Petigrow v. Gilbertson*, 501 U.S. 351,
      111 S.Ct. 2773 (1991)...... .............................................................5,17

*Levitt v. Bear Stearn & Co., Inc.,* 340 F.3d 94 (2nd Cir. 2003)...............................22

*Malone v. Microdyne Corp.,* 2 F.3d 471 (4th Cir. 1994).......................................15

*Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir. 1979).....................27

*Marks v. CDW Computer Centers, Inc.,* 122 F.3d 363 (7th Cir. 1997)......................19

*Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239 (3rd. Cir. 2001)...................19

*Molecular Technology Corp. v. Valentine*, 925 F.2d 910 (6th Cir. 1991). .................40

*Nelson v. Serwald*, 576 F.2d 1332 (9th Cir. 1978)...............................................33

*New England Heathcare Employees Pension Fund v. Ernst & Young, LLP,*
      336 F.3d 495 (6th Cir. 2003)...........................................................5,19-20,22

*Papasan v. Allain,* 478 U.S 265, 106 S.Ct. 2932 (1986)......................................13

*Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.,* 940 F. Supp. 1101
      (W.D. Mich. 1996). ......................................................................17

*Potts v. SEC*, 151 F.3d 810 (8th Cir. 1998).....................................................13

*Rebenstock v. Deloite & Touche,* 907 F.Supp. 1059 (E.D. Mich. 1995)....................20

*Robin v. Arthur & Young Co.*, 915 F.2d 1120 (7th Cir. 1990)...............................37

*Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263 (6th Cir. 1998)..........................29

*Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292 (1977)....................26

*Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434(6th Cir. 1988). ........................13

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).................................13

*SEC v. Arthur Young & Co.*, 590 F.2d 785 (9th Cir. 1979)............................13-14,16

*S.E.C. v. Caserta*, 75 F.Supp.2d 79 (E.D.N.Y. 1999)...........................................24

*SEC v. Coffey,* 493 F.2d 1304 (6th Cir. 1974).................................................29

*SEC v. GLT Dain Rauscher, Inc*, 254 F.3d 852 (9th Cir. 2001)................................13

*SEC v. Washington County Util. Dist.*, 676 F.2d 218 6th Cir. 1982)........................30

*SEC v. Wills*, 472 F. Supp. 1250 (D.D.C. 1978)..................................................33

*Siebert v. Nives,* 871 F. Supp. 110 (D. Conn. 1994)............................................33

*Siemens Info. Sys., Inc. v. TPI Enters., Inc.,* 1992 U.S. Dist. LEXIS 3018
    (S.D. N.Y. 1992)..........................................................................22

*Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567 (11th Cir. 1990)............................17,4

*Thiemann v. OHSL Financial Corp.*, No. C-1-00-CV-793, (S.D. OH 2001)...............32

*Trust v. United States*, 77 F.3d 483, (6th Cir. 1996).........................................19

*United States v. Arthur Young & Co.*, 465 U.S. 805, 104 S.Ct. 1495 (1984)..............30

*United States v. Benjamin*, 328 F.2d 854 (2nd Cir. 1964)....................................43

*United States v. Natelli*, 527 F.2d 311 (2d. Cir. 1975), *cert. denied*, 425 U.S. 934,
    96 U.S. 1663 (1976)......................................................................34

*United States v. Simon,* 425 F.2d 796 (2d. Cir. 1969)......................................15,16

*Vivram v. Harcourt Brace Jovanovich, Inc., et al.,* 840 F. Supp.243 (S.D.N.Y. 1993)...21

*Voege v. Magnavox Co.*, 439 F. Supp. 935 (D.Del. 1977)...................................33

*Yancos v. Lake* County, 953 F. Supp. 187 (N.D. Ohio 1996)................................12

*Young v. Lepone,* 305 F.3d 1 (1st. Cir. 2002)..................................................20

### STATE CASES

*Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206............8-9,42

*State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas*

(2002), 97 Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92........................42

*Tri-State Computer Exchange v. Burt* (June 20, 2003), 2003 Ohio 3197, Hamilton
    App. No. C-020345....................................................................9,42

*Tenant's Corp. v. Max Rothenberg & Co.*, 36 A.D.2d 804, 319 N.Y.S.2d (1972)…...14,33

## FEDERAL STATUTES AND RULES

15 U.S.C. §77(k)..................................................................................4

15 U.S.C. §77l(2)................................................................................4

15. U.S.C. §78i(e)...............................................................................5

15 U.S.C. §78(j)b............................................................................4,25

15. U.S.C. §78(l).................................................................................8

15. U.S.C. §78(n)............................................................................4,40

17 C.F.R. §240.10b-5...................................................................4,25-26, 28

17 C.F.R. §240.14a-9........................................................................4,40

28 U.S.C. §1658(b). ..........................................................................18

Fed. R. Civ. P. 9(b) .....................................................................13,26-27

Fed. R. Civ. P. 12(b)(6)................................................... ......................12

Section 10(b) of the 1934 Securities Exchange Act…...4,6-8,13,17-18,24-26,28-29,34, 40

Section 11 of the Securities Act.................................................................4

Section 12(a)(2) of the Securities Act……....................................................4

Section 14(a) of the Securities Exchange Act................................…...4,8, 13, 17-18,40

SEC Rule 10b-5............................................................4,15, 18, 25, 28, 40

SEC Rule 14a-9..............................................................................4,40

## STATE STATUTES AND RULES

Ohio Rev. Code §1707.41…………………………………………………………………4

Ohio Rev. Code §1707.43…………………………………………………………………4

Ohio Rev. Code §2305.09……………………………………………………………...8,42

Ohio Civil Rule 9(B)…………………………………………………………………8,26,42

## MISCELLANEOUS

Harvey L. Pitt, et al., "*Promises Made, Promises Kept: The Practical Implications of the Private Securities Litigation Reform of 1995*," 33 *San Diego L. Rev.* 845 (1996)………30

S. Rep. No. 104-98……………………………………………………………………26

## I.    **INTRODUCTION**

This action is filed on behalf of a class of OHSL Financial Corp. shareholders ("OHSL") as a result of Provident Financial Group ("PFGI" or "Provident") acquiring OHSL in 1999. Plaintiffs claim that the Proxy Materials/Registration Statement (hereinafter "Proxy Materials") contained material misstatements and omissions of fact which artificially inflated the value of the Provident stock, caused a narrow favorable vote for the merger, and ultimately caused the losses to OHSL shareholders for this transaction.

However, this case is also about corporate suffrage, and about the rights of a public company to vote to merge or not to merge based upon accurate, truthful, and complete information. In the present case, a change in the vote of a mere 63,000 shares would have stopped the merger that Plaintiffs seek to undo.  The lead Plaintiff, Walter W. Thiemann, who voted his 40,000 shares in favor the merger, based upon the materially false and misleading Proxy Materials, has alleged and submitted affidavits that had he known the true facts, he would have voted his shares against the merger. Simple math shows that a change in the vote of a mere 23,000 shares would have had the effect of having the merger voted down.  Consequently, had the following facts been disclosed, it is clear to a reasonable degree of business certainty that the fraudulently induced merger would not have been approved:

1.    The former OHSL CEO, Board Member, COB designate, and by far its largest shareholder Ken Hanauer had voted his personal shares against the merger and -contrary to the Proxy Materials- did not believe the merger to be in the best interest of the shareholders;

2.    That Hanauer changed his vote from abstain to in favor of not because he believed in the merge, but because he just gave up;

1

3.  That contrary to the Proxy Materials, former OHSL Chairman Norbert Brinker changed his vote from in favor of to abstain and thus did not vote to approve the merger;

4.  That former OHSL director Thomas M. Herron, whose father had long served on the OHSL Board, and whose family had been associated with OHSL for decades, voted against continued negotiations with Provident, resigned from the OHSL Board days before the final vote on the merger with Provident, voted his shares against the merger (by not voting) and, although it was obvious, called each director to inform him of his opposition to the merger the day he resigned (or shortly thereafter, in the case of OHSL director Thomas McKiernan, who was out of the country);

5.  That Provident stock was materially overvalued by approximately $17 million due to "off the books accounting," similar to Enron, making the merger a $40 million transaction instead of a $57 million deal; and

6.  That only half of OHSL's management was in favor of the merger.

On March 5, 2003, and April 15, 2003, the First and Second Restatements indicated that Defendant Ernst & Young (hereinafter "E&Y") did not conduct its audits in accordance with GAAS at least as far back as 1994.  Provident has admitted that the financial statements in the Proxy Materials/Registration State were materially false and misleading. (CAC, ¶100). The end result of the First Restatement was a reduction in net income for PFGI in the amount of $14.2 million for the years 1997 to 1999 and $70.3 million for the period of 1997 through 2002. (CAC, ¶89). The end result of the Second Restatement was an additional reduction in net income of Provident in the amount of $44.4 million for 1994 through 2002. (CAC, ¶89).  As a result, this Second Restatement resulted in also making the First Restatement materially false.

As a result of the materially false and misleading Proxy Materials, the end result was that the OHSL Board approved a merger valued at slightly more than $57 million to be paid in Provident stock, and that shareholders narrowly voted to approve the transaction. In short, the OHSL board relied upon Defendant E&Y when they

recommended the merger to the shareholders, and the shareholders relied upon Defendant E&Y's assurances that Provident's financial statements were free of material misstatement.

However, the true facts, as indicated in the affidavit submitted by Plaintiffs' expert, Ervin Schoenblum (Attached as Exhibit A), indicate that the true value of the transaction, once the artificial inflation is removed, was approximately $40 million. Plaintiffs respectfully submit that the OHSL Board, in the exercise of their fiduciary duties, could not have recommended the merger on these terms because it would not have been a fair transaction and the OHSL Board would have been unable to obtain a fairness opinion at that price.

As a result of the foregoing conduct, Plaintiffs have alleged that several defendants, including Defendant E&Y, are liable for the material misstatements and omission of fact contained in the Proxy Materials. Plaintiffs have alleged that Defendant E&Y is liable because they performed Generally Accepted Auditing Standards ("GAAS") audits applying Generally Accepted Accounting Principles ("GAAP"), and knowingly or recklessly expressed an opinion that Provident's financial statements were free of material misstatements. Furthermore, it is important to note that the conduct of Defendant E&Y was not merely negligent, but amounted to a knowing recklessness as alleged by Plaintiffs in the CAC because the accounting errors alleged relate to one of the most basic decisions in auditing: whether or not to include certain transactions as "on the balance sheet" or "off the balance sheet." This is particularly the case for Defendant E&Y since a large percentage of Provident's business deals with car loans. As a result,

accounting for car loans is a transaction with which Defendant E&Y is intimately familiar, and one for which it cannot feign ignorance.

In particular, Plaintiffs have alleged that Defendant E&Y violated: (Count I) Section 11 of the Securities Act, 15 U.S.C. Section 77k; (Count II) Section 12(2) of the Securities Act, 15 U.S.C. Section 77l(2); (Count IV) Section 14 of the Exchange Act, 15 U.S.C. Section 78n(a) and SEC Rule 14a-9, 17 C.F.R. Section 240.14a9; (Count V) Section 10(b), 15 U.S.C. Section 78(j)b of the Exchange Act and Rule 10b-5, 17 C.F.R. Section 240.10b.5; (Count VII) O.R.C. Section 1707.41; (Count VIII) O.R.C. Section 1707.43; and (Count X) Common Law Fraud.

## II.    SUMMARY OF ARGUMENTS RAISED AND PRIMARY AUTHORITIES RELIED UPON

### PLAINTIFFS' FEDERAL CLAIMS

### A.    Plaintiffs Section 10(b) and 14(a) Claims of the Securities Exchange Act of 1934 are Not Barred by the Applicable Statute of Limitations or Statute of Repose.

It is generally inappropriate to address the statute of limitations in a motion to dismiss. *Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533, 537 (M.D. Fla 1997) citing (*Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567, 1572 (11th Cir. 1990)). However, even if this Court decides to do so, then Plaintiffs still meet the applicable statute of limitations for their Section 10(b) and 14(a) claims.

Sections 10(b) and 14(a) are not subject to an express statute of limitations because they were judicially created. *Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333, 338 (6th Cir. 1994). However, the Supreme Court has applied the one-year statute of limitations and three-year statute of repose to said claims as set forth in §9(e) of the

Exchange Act, 15 U.S.C. §78i(e), to §10(b). *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). In 2002, the Sarbanes-Oxley Act expanded the applicable periods of limitation and repose to two years and five years. Plaintiffs meet this statute of limitations because they did not have any "Inquiry Notice" of Defendant E&Y's fraud until March 5, 2003.

           1.    **Plaintiffs had No Inquiry Notice Until March 5, 2003.**

The discovery of the act or omission is based upon an inquiry notice. *New England Heathcare Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495 (6th Cir. 2003). Knowledge of suspicious facts merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud. Id. at 501. There were no "storm warnings" or indications of any fraudulent conduct on the part of Defendant E&Y prior to March 5, 2003. Defendant E&Y certified its compliance with GAAP and GAAS in relation to the Proxy Materials, and filed no restatements prior to March 5, 2003 which would indicate otherwise. (CAC ¶100). In fact, Defendant E&Y did not require Provident to correct the financial statements that E&Y had certified as being free of material misstatement until PricewwaterhouseCoopers ("PwC") required Provident to do so. (CAC ¶106). As a result, Defendant E&Y's conduct amounts to a continuing fraud which continued up until March 5, 2003. Plaintiffs moved for leave to amend their complaint to name Defendant E&Y two days after the First Restatement was filed. As a result, there can be no doubt that Plaintiffs were not on inquiry notice until March 5, 2003, and that their claims fall within the applicable statute of limitations and statute of repose.

**B.    Plaintiffs Adequately Pled Their Claim for a Violation of Section 10(b) of the Securities Exchange Act of 1934.**

**1.    Accountants Can be Liable for a Section 10(b) Claim**

Any person or entity, including an accountant, may be liable as a primary violator under Section 10(b). *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 1455 (1994). The responsibility of a statutory "independent public accountant "is not only to the client who pays his fee, but also to investors, creditors and others who may rely on the financial statements which he certifies. . . . The public accountant must report fairly on the facts as he finds them whether favorable or unfavorable to his client. His duty is to safeguard the public interest, not that of his client." In the *In re Matter of Touche, Niven, Bailey & Smart*, 37 S.E.C. 629, 670-671 (1957).

**2.    Plaintiffs Adequately Pled the Material Misstatement of Omission Element of a Section 10(b) Claim**

GAAP and GAAS require an accountant to read the forepart of the Proxy Materials and Registration Statement with understanding and to identify anything contained therein which contradicts the financial and other information contained in the audited financial statements and to make timely corrections thereto. (CAC ¶106). GAAP also requires that there be a statement of a company's previously issued financial statements to properly correct a material misstatement, called an "error" under the relevant accounting standard, APB No. 20. (CAC ¶98). Where financial statements have been certified and released to the public, courts have imposed a continuous duty to disclose after-acquired information which casts doubt on the reliability of the certified

figures *with respect to the period covered by the audit. See,* e.g., *Hirsch v. du Pont,* 553 F.2d 750, 761 (2d Cir. 1977). Since Defendant E&Y filed Restatements in March and April of 2003 which provided that the net income of PFGI had been materially overstated during the class period, Plaintiffs have met the material misstatement element of their claim. (CAC ¶¶88, 93).

### 3. Plaintiffs Adequately Pled the Scienter Element of a Section 10(b) Claim

The scienter element is properly alleged by pleading facts showing a strong inference of recklessness. *In re Comshares, Inc.,* 183 F.3d at 549. Inquiries into these areas are inherently fact-specific and are generally left to the trier of facts. *Basic, Inc. v. Levinson,* 485 U.S. 224, 235, 108 S.Ct. 978 (1988). However, if this Court decide to rule on the pleading of the scienter element at this time, Defendant E&Y's Motion to Dismiss the 10(b) claims should still be denied since Plaintiffs have adequately alleged facts giving rise to a strong inference of recklessness on the part of Defendant E&Y.

Plaintiffs have alleged Defendant E&Y made knowingly or recklessly material misstatements regarding Provident's earnings despite the fact that it had access to Provident's financial statements, and knew that Provident's earnings were materially misstated in the Proxy Materials. (CAC ¶¶ 107,110). Plaintiffs have also alleged that Defendant E&Y recklessly disregarded GAAP and GAAS, and did not conduct its audits in accordance with GAAS at least as far back as 1994. (CAC ¶32). This is especially true in relation to the accounting for auto lease transactions, and the fundamental decision of whether or not to include them on or off balance sheets (CAC ¶32). This was not an unusual transaction to Defendant E&Y, but a very common one since it made up a large

percentage of Provident's business. (CAC ¶32).  Thus, since Plaintiffs have adequately

alleged that Defendant E&Y knowingly and recklessly certified material misstatements in

the Proxy Materials in exchange for large auditing and consulting fees, Plaintiffs' Motion

to Dismiss should not be dismissed based upon the scienter element of their Section 10(b)

claim. (CAC ¶32).

     **D.**    **Plaintiffs Adequately Pled Their Claim for a Violation of Section 14(a)
of the Securities Exchange Act of 1934**

Plaintiffs have adequately pled their Section 14 (a) because they have alleged that

Defendant E&Y permitted the use of its name to solicit any proxy or consent or

authorization in respect of any security (other than an exempted security) registered

pursuant to section 12 of this title [15 U.S.C.S. §78l]. Id.  (CAC, ¶¶¶¶32, 105, 106, 142).

Plaintiffs have also adequately pled that these Proxy Materials contained numerous

materially false and misleading statements of fact and omissions of material fact, which

fraudulently induced and proximately caused the OHSL shareholders to vote for and

approve the subject merger by a narrow majority. (CAC ¶141). As a result, Plaintiffs'

Section 14(a) should not be dismissed.

## PLAINTIFFS' STATE LAW CLAIMS

     **E.**    **Plaintiffs Adequately Pled Their Common Law Fraud Claim and It is
Not Barred by the Applicable Statute of Limitations.**

Plaintiffs common law fraud claim should not be dismissed because Plaintiffs

have pled with the particularity all of the elements of the fraud claim as required by Ohio

Rule 9(B).  Further, Plaintiffs' fraud claim is not barred by its applicable four-year statute

of limitations pursuant to §2305.09 because Plaintiffs did not discover, and could not

have discovered, Defendant E&Y's fraudulent behavior until March 5, 2003. *Investors*

*REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 181, 546 N.E.2d 206; *Tri-State Computer Exchange v. Burt* (June 20, 2003), 2003 Ohio 3197, Hamilton App. No. C-020345.

## III.  STATEMENT OF FACTS

### A.  Background

Defendant E&Y is an independent auditor who has represented Provident for decades, and was intimately familiar with PFGI's improper financial accounting methods and procedures. (CAC, ¶32). Throughout the merger transaction, Defendant E&Y contractually undertook and agreed with Provident to provide expert services to Provident in connection with the subject transaction, as well as held itself out as an expert in accounting and auditing in the Proxy Materials, and consented to the inclusion of its audit opinion in the Proxy Materials. (CAC, ¶¶32, 105, 106). Defendant E&Y knew that OHSL Board would rely upon E&Y's audits in recommending the merger, and that OHSL shareholders would rely upon E&Y's audits in order to cast an informed vote as to the subject transaction as the value of Provident shares was one of the key elements of such vote. (CAC ¶104).

E&Y's role in relation to the proxy statement was to prepare GAAS audits apply GAAP, and to express an opinion on whether PFGI's financial statements were free of material misstatement. (CAC, ¶32). As part of its services, E&Y provided unqualified opinions that it had conducted its audits of Provident's financial statements in conformity with GAAS and that that the financial statements were in material respects in conformity with Generally Accepted Accounting Principles GAAP. CAC ¶¶32, 104, 106, Exs. C-E. E&Y provided opinions on all of the Provident financials that appear in the Proxy Materials (OHSL Motion to Dismiss, p. 6). E&Y's opinion letters were included in

Provident's Forms 10-K for the years 1997 to 2002 and in the Proxy Materials and Registration Statement issued in conjunction with the 1999 OHSL transaction. CAC ¶106. The 1994-1999 financials were presented to the Plaintiffs in the Proxy Material/Registration Statement either directly or by incorporation by reference in order to induce the Plaintiffs to approve the merger between OHSL and Provident. (CAC, ¶32).

On March 5, 2003, Provident issued a press release in which it announced that it was restating its operating results for the period from 1997 through 2002. (CAC ¶87). The financial press described this as "the longest continuous string of amendments in member for a U.S. Corporation." (CAC ¶88). The First Restatement was attributable solely to errors in the accounting for the transactions that were originated between 1997 and 1999. (CAC ¶91). The First Restatement revealed that the Proxy Materials contained materially false and misleading statements as to both the accounting procedures and income numbers promulgated by PFGI to the class. (CAC ¶87)

Although the press release purported to deal with only nine auto leases, the Restatements of March and April of 2003 dealt with thousands of auto leases. In particular, the lease transactions were inappropriately recorded as "off balance sheet," and should have been recorded on PFGI's financial statements. (CAC ¶88). The effect of this fraudulent accounting was that PFGI's net income was materially overstated during the class period as these lease transactions were financed by PFGI with borrowings and debt from other sources but the interest expense of those borrowings and debt were kept "off the books" and not reflected as a deduction (or expense) to income during the relevant years. (CAC ¶88). The First Restatement showed that net income had been

overstated $14.2 million for the years 1997 to 1999, by $70.3 million for the period of 1997 through 2002, and by another estimated $9.8 million in 2003. (CAC ¶91).

The First Restatement, and this $100 million decrease in cumulative profit, caused a stock price drop for PFGI from $28.07 per share on March 4, 2003 to $22.46 the next day and an average of $21.72 in the first ten trading days after the restatement, or a decrease of 22.6%. (CAC ¶92). As a result, if the correct information had been disclosed at the time OHSL shares were forcibly converted into PFGI shares, the shares would have been valued at 22.6% less than the $57,162,375 at which they were sold. (CAC ¶92). Consequently, the shareholders were shortchanged by about $12.9 million. (CAC ¶92).

On April 15, 2003, Provident issued a second press release. The Second Restatement was attributable to additional errors in the accounting for the transactions that occurred from 1994 to 2002. (CAC ¶93). The result of the Second Restatement was an additional reduction in profit for Provident in the amount of $44.4 million, and a determination that the First Restatement was also materially false and misleading. (CAC ¶93). The 2002 impact was $3.8 million, and the 2001 impact was $4.2 million. (CAC ¶93). As a result, the 1994 through 2000 impact was the difference between the aggregate $44.4 million and the $3.8 million and $4.2 million for 2001 and 2002, or $36.4 million. (CAC ¶93). The 1994 through 1999 period accounted for 6 of the 7 years or approximately a $31.2 million loss. (CAC ¶93).

In the same way that the market determined that a $100 million decrease in cumulative profit would have resulted in a 22.6% decrease in the market valuation of PFGI shares at the time the shares were converted, a $31.2 million decrease in cumulative profit would equate to a 7.1% decrease in the market valuation of PFGI shares. (CAC

¶94). Thus, the OHSL shareholders received $4.1 million less in PFGI shares than they should have rightfully received. (CAC ¶94).

The resulting impact of both restatements is that the OHSL shareholders received approximately $17 million less of PFGI shares than they rightfully should have received when their shares were forcibly converted into OHSL shares because of the accounting errors not being disclosed by PFGI management and directors and included in the materially false and misleading Proxy Materials. (CAC ¶ 95).    Provident was, from a financial standpoint, a dramatically different company from the company that the OHSL shareholders were asked to merge with and surrender their OHSL shares for materially artificially inflated PFGI shares. (CAC ¶ 97). Thus, the $57 million transaction that the OHSL Board recommended and the OHSL shareholders knowingly approved was actually about $40 million, and not $57 million, an obviously unfair amount. If the Defendants believe that $40 million is a fair price, they should feel free to attempt to obtain a fairness opinion for this price and attempt to sell it to OHSL shareholders at these terms. (*See*, Affidavit of Ervin Schoenblum, Attached as Exhibit A.)

## IV.    LEGAL ARGUMENT

### A.    Fed.R. Civ. P. 12(b)(6) Motion to Dismiss Standard

A motion to dismiss can only be granted if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 104 S.Ct. 2229 (1984). Although matters of public record, orders, items appearing in the record and attached exhibits may be taken into account, when deciding a motion brought pursuant to Federal Rule12(b)(6), the inquiry is essentially limited to the content of the complaint. *Yancos v. Lake* County, 953 F. Supp.

187, 191 (N.D. Ohio 1996). To survive a motion to dismiss under Federal Rule 12(b)(6), a "complaint must contain direct or inferential allegation respecting all of the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434, 436 (6th Cir. 1988). A court must accept all the allegations stated in the complaint as true, and view the complaint in the light most favorable to the plaintiff, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S 265, 286, 106 S.Ct. 2932 (1986). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

Defendant E&Y's Motion to Dismiss should be denied as to the Section 10(b) and 14(a) claims because these claims have been adequately pled pursuant to Fed. Rule 9(b) and the Private Securities Litigation Reform Act, and because neither of Plaintiffs' claims are barred by the applicable statute of limitations.

## B.    Defendant E&Y Violated GAAP and GAAS.

GAAP establish guidelines relating to the process by which the transactions and events of a business entity are measured, recorded, and classified in accordance with a conventional format. *SEC v. Arthur Young & Co.*, 590 F.2d 785, 789 n.4 (9th Cir. 1979) GAAS guidelines establish accounting standards that are explicitly defined in authoritative, publicly available pronouncements issued by recognized sources and utilized throughout the accounting profession. *SEC v. GLT Dain Rauscher, Inc,* 254 F.3d 852  (9th Cir. 2001). See, *Potts v. SEC*, 151 F.3d 810, 812 (8th Cir. 1998) (GAAS are "well-established norms of the accounting profession"). GAAS thus differs from GAAP;

the former involves how an auditor goes about obtaining information, while the latter involves the format in which to present the information. *SEC v. Arthur Young & Co.*, 590 F.2d at 789, n.4.

### C.    There is No Doubt that The Restatements are Material

GAAP and GAAS require an accountant to read the forepart of the Proxy Materials and Registration Statement with understanding and to identify anything contained therein which contradicts the financial and other information contained in the audited financial statements and to make timely corrections thereto. (CAC ¶106). Similarly, in performing audits, an accountant is required to obtain sufficient evidentiary matter to support its opinions as expressed in its audit reports. (CAC ¶108). *Blakely v. Lisac,* 357 F. Supp. 255, 266 (D. OR. 1972) citing *Tenant's Corp. v. Max Rothenberg & Co.*, 36 A.D.2d 804, 319 N.Y.S.2d (1972), aff'd 30 N.Y.2d 585, 330 N.Y.S. 2d 800, 281 N.E.2d 846 (1972).

GAAP requires that there be a statement of a company's previously issued financial statements to properly correct a material misstatement, called an "error" under the relevant accounting standard, APB No. 20.    (CAC ¶98). Statement on Financial Accounting Concepts No.2 states that consistency of accounting practices over time makes accounting information useful for financial statement users. Id. Without consistency, users have difficulty making comparisons over time and discerning whether, and to what extent, the company's performance is improving or deteriorating.  (CAC ¶98).  Thus, APB No. 20 stresses that only a material error or misstatement should be corrected via a restatement since a restatement clashes with the desire for consistency emphasized in SFAC No. 2. Id. In particular, APB No. 20 states that a company's Net

Income and Earnings Per Share, in every period of previously issued financial statements, which are materially misstated, must be restated. (CAC ¶99).

AU 561 requires the auditors of companies to make sure that this disclosure is made soon after the material misstatements are discovered. (CAC ¶99).[1] This disclosure can be made in an amended 10-KA or 10-QA. (CAC ¶99).

GAAP violations are not necessary to find liability for accountants under 10b-5. A securities fraud complaint need not allege GAAP violations to establish that a material misstatement occurred in a company's financial statement. The accounting standards and the requirements of Rule 10b-5 are not "perfectly coextensive." *Malone v. Microdyne Corp.*, 2 F.3d 471, 478 (4th Cir. 1994). Compliance with GAAP does not provide immunity from 10b-5 liability. Id. at 478. Accountants have been held criminally liable for certifying false or misleading financial statements even though they followed GAAP. *United States v. Simon,* 425 F.2d 796, 805-506 (2d. Cir. 1969).

Here, there can be no doubt that Defendant E&Y did not perform GAAS audits applying GAAP. The accounting at issue, "off balance sheet" transactions vs. "on balance sheet" transactions, are so basic that it is incomprehensible that Defendant E&Y could have performed GAAP audits and miss this most basic of transactions. This is also particularly unbelievable given the fact that the transactions at issue were accounting transactions which the Defendant E&Y dealt with on a continuing basis. The transactions, or accounting for car loans, were not obscure, but related instead to a large percentage of Provident's business.

---

[1]    This can be done by an amended 10-KA or 10-QA. Others provide this disclosure in an 8-K or in the next regular filing of the 10-K or 10-Q. (CAC ¶99)

However, on the other hand, compliance with GAAS and GAAP alone is not enough to escape liability under 10b-5. GAAS does not provide protection from liability when the accountant "fails to reveal material facts which he knows or which, but for a deliberate refusal to become informed, he should have known" should be revealed.    In *SEC v. Arthur Young & Co.*, 590 F.2d 785 (9th Cir. 1979), the Ninth Circuit declined to hold that compliance with GAAS alone would immunize an accountant who failed to reveal material facts that were known or which, but for a deliberate refusal to become informed, should have been known. Id. at 788-89; *United States v. Simon*, 425 F.2d 796 (2d. Cir. 1969), cert. denied, 397 U.S. 1006, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970).

Similarly, in *In re Commonwealth Oil/Tesoro Petroleum Corp. Sec. Litigation,* 467 F.Supp. 227, 255 (W.D. TX 1979) the court stated that it agreed with the proposition that an auditor, acting with scienter, who prepares or certifies a financial statement which states amounts and numbers accurately but nonetheless conveys an inaccurate overall picture of the company's financial condition is liable for his misleading certification. "Compliance with generally accepted accounting principles is not necessarily sufficient for an accountant to discharge his public obligation. Fair presentation is the touchstone for determining the adequacy of disclosure in financial statements. While adherence to generally accepted accounting principles is a tool to help achieve that end, it is not necessarily a guarantee of  fairness." *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F. Supp. 112, 122 (S.D.N.Y. 1974), *Aff'd,* 540 F.2d 27 (2d Cir. 1976).  In the present case, there can be no doubt that there the Restatements are material.  (*See,* Expert Report of Ross Fuerman, Attached as Exhibit B)

**D. Plaintiffs' Section 10(b) and Section 14(a) Claims of the Securities Exchange Act of 1934 are Not Barred by a Statute of Limitations or Statute of Repose.**

The statute of limitations is an affirmative defense, for which the defendant bears the burden of proof. *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1118 (W.D. Mich. 1996). Plaintiffs are not required to negate the affirmative defense of the statute of limitations in their Complaint; it is defendants' burden at all stages of the litigation. Id. (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). For this reason, it is generally inappropriate to address the statute of limitations on a motion on the papers--particularly when the defense is that plaintiffs should have discovered the facts underlying their claim. *Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533, 537 (M.D. Fla 1997) citing (*Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567, 1572 (11th Cir. 1990)). However, if this Court decides to do so at this juncture, then the facts of this case show that Plaintiffs have met the statute of limitations for their 10(b) and 14(a) causes of action.

Sections 10(b) and 14(a) are not subject to an express statute of limitations because they were judicially created. *Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333, 338 (6th Cir. 1994). However, the Supreme Court has applied the one-year statute of limitations and three-year statute of repose to said claims as set forth in §9(e) of the Exchange Act, 15 U.S.C. §78i(e), to §10(b). *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). This limitations period is triggered when the defendant "commits the act that gives rise to liability under §10(b)." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 604 (S.D. OH 2003)(internal quotations omitted).

In 2002, the Sarbanes-Oxley Act expanded the applicable periods of limitation and repose to two years and five years. In particular, on July 30, 2002, Congress amended § 1658 by designating the quoted language as subsection (a) and adding subsection (b) which provides:

> Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 15U.S.C. 78c(a)(47)), may be brought not later than the earlier of --
>
> > (1) 2 years after the discovery of the facts constituting the violation; or
> >
> > (2) 5 years after such violation.

Id.; 28 U.S.C. §1658(b). The language of the Sarbanes-Oxley Act directly mirrors 10(b) and 10b-5 which provide the private causes of action for securities fraud. As a result, unlike a Section 11 claim, the Sarbanes-Oxley Act is directly applicable to Plaintiff's 10b and 10b-5 claims such that it extends the applicable statute of limitations to two years and statute of repose to five years.

Defendant E&Y argues that although the Sarbanes-Oxley Act would be applicable if the Plaintiffs' §10(b) and §14(a) causes of actions were still viable at the time that the Sarbanes-Oxley Act was enacted, but that the Sarbanes-Oxley Act is not applicable because Plaintiffs' claims were barred under the prior one-year statute of limitations before the Sarbanes-Oxley Act was enacted. (Motion to Dismiss, p.7, n. 5). Defendant E&Y sets the date that the statute of limitations would begin to run on September 20, 2000 because this is the date that the Plaintiffs were on inquiry notice, if not actual notice, of their potential fraud claim. However, Defendant E&Y has misapplied the concept of "inquiry notice" in this case.

**a.    Plaintiffs Had No "Inquiry Notice" Regarding Defendant E&Y's conduct Prior to March 5, 2003.**

The discovery of the act or omission is based upon an inquiry notice. *New England Heathcare Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495 (6th Cir. 2003). Knowledge of suspicious facts merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud. Id. at 501; see also *Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239, 262 (3rd. Cir. 2001)(facts must alert investor to "probability that misleading statements or significant omissions had been made"); *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 115 F.3d 1332, 1335 (7th Cir. 1997)("[F]acts constituting [inquiry] notice must be sufficiently probative of fraud--sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated-- not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit.").  The Sixth Circuit found that this rule reflected an appropriate balance between "the staunch federal interest in requiring plaintiffs to bring suit promptly . . . and the equally strong interest in not driving plaintiffs to bring suit . . . before they are able, in the exercise of reasonable diligence, to discover the facts necessary to support their claims." Id.

Courts have also routinely held that the issue of inquiry notice is a factual matter to be resolved by the jury. *See, e.g., Trust v. United States,* 77 F.3d 483, ** 3 (6th Cir. 1996)("A determination of inquiry notice is a question of fact.")(citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 401-402 (1990));  *see also Marks v. CDW Computer Centers, Inc.,* 122 F.3d 363, 367 (7th Cir. 1997)("Whether a plaintiff had sufficient facts to place him on inquiry notice of claim for securities fraud under S.E.C. Rule 10b-5 is

question of fact."); *Young v. Lepone,* 305 F.3d 1,9 (1st. Cir. 2002)("In the archetypical case. . ., it is for the fact finder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice.")  While, in certain circumstances, inquiry notice may be found as a matter of law, this is so only in "extreme circumstances," *Blatt v. Merrill Lynch,* 916 F. Supp. 1343, 1356 (D.N.J. 1996), where "the uncontroverted evidence irrefutably demonstrates when the plaintiff discovered or should have discovered the fraudulent conduct." *In re Nivram Corp. v. Harcourt Brace Jovanovich,* 840 F. Supp. 243 (S.D.N.Y.).  Plaintiffs submit that the determination of whether Plaintiffs were on inquiry notice in relation to Defendant E&Y's conduct is a matter of factual determination reserved for a jury. However, if this Court disagrees, there is still ample evidence before this Court to determine that Plaintiffs were not on inquiry notice until March 5, 2003.

There were no "storm warnings" regarding Defendant E&Y until March 5, 2003. It is well-established that the presence of "storm warnings" only trigger the duty to inquire. *New England Health Care*, 336 F.3d at 500. The circumstances must "suggest to the person of ordinary intelligence the probability" of fraud.  *Rebenstock v. Deloite & Touche,* 907 F.Supp. 1059, 1063 (E.D. Mich. 1995). (internal citation omitted).

In *In re Damlerchrysler AG Securities Litigation,* 269 F.Supp.2d 508 (D. CT 2003), the defendants claimed that Chysler's shareholders should have known that the merger between Chrysler and other companies was not a "merger of equals" because numerous articles and press releases had questioned Chrysler's ability to survive after the merger, because shareholders had expressed concern at the vote on the merger, and because of the monthly reports referring to Chrysler as a "division."  The plaintiffs-

investors countered that defendants had actively attempted to conceal the true nature of the takeover, such that there was a "mix of information in the public domain." 269 F. Supp. 2d at 512. Accordingly, plaintiffs claimed, they could not have known that the merger was "effectively a takeover" of Chrysler." 269 F. Supp.2d at 511.

The district court agreed with plaintiffs, holding that, "where there is a mix of information available to the plaintiffs such that any negative statements are tempered by positive statements from a company's management and others," negative disclosures about a company do not trigger inquiry notice. 269 F. Supp.2d at 514. The court's holding on this point is particularly apropos:

> "Defendants contend that the storm warnings in this case were Category V, hurricane-type warnings. However, Defendants neglect to point out that they were the weathermen with all the technology and expertise to render the forecast. They assured Plaintiffs and the public that the partly cloudy skies and mild winds were not the precursors of any storm. Rather, the clouds would surely break and the wind would surely die down, giving way to an overall calm and sunny day for DaimlerChrysler. Given this forecast, I cannot fault Plaintiffs for being caught without their umbrellas."

269 F. Supp. 2d at 518.

Likewise, in *Vivram v. Harcourt Brace Jovanovich, Inc., et al.,* 840 F. Supp.243 (S.D.N.Y. 1993), the defendants asserted that plaintiffs were on inquiry notice of the alleged fraud when the company announced that it had sold certain entities in order to satisfy working capital requirements, in contrast to previous forecasts indicating that such sales would not be necessary. According to defendants, these incorrect forecasts, together with the pendency of other civil actions relating to the company's recapitalization, provided plaintiffs with sufficient indicia of fraud to trigger the statute of limitations period. Id. at 249.

The court rejected the defendants' claim, finding that, as a matter of law, plaintiffs were not on notice of their claims more than a year before the filing of their suit.   The court found that forecasts and subsequent reappraisals thereof were weak indicia of defendants' misrepresentations. It noted that [t]his indicium of alleged fraud [was] further weakened by its coupling with assurances in the public filings which "conveyed the impression to investors that defendant was in a position to escape the adverse consequences [of its highly-leveraged financial position] and continue to grow and prosper." Id. at 254. (internal citation omitted). *See also, Siebert v. Nives,* 871 F. Supp. 110 (D. Conn. 1994) (disclosure of government investigation did not trigger duty to inquire where company simultaneously announced that it had revised its policies to address investigators' concerns).

These cases reflect the balance that the Sixth Circuit is trying to achieve.  In *New England Health Care*, the Sixth Circuit stated that in determining whether a plaintiff's complaint was timely filed, the Court should also attempt to balance "the staunch federal interest in requiring plaintiffs to bring suit promptly. . . and the equally strong interest in not driving plaintiffs to bring suit. . . before they are able, in the exercise of reasonable diligence, to discover the facts necessary to support their claims." *New England Health Care,* 336 F.3d at 501 (internal quotations omitted).  "Inquiry notice....must not be construed so broadly that the statute of limitations starts running too soon for the victim of the fraud to be able to bring suit with a year." *Fujisawa*, 115 F.3d at 1335. Along the same lines, given the heightened pleading standard imposed by the PSLRA," plaintiffs alleging federal securities violations must be provided adequate time to investigate their claims so as to avoid early dismissal of their claims. *See, e.g., Levitt v.. Bear Stears &*

*Co., Inc.*, 340 F.3d 94, 104 (2nd Cir. 2003)(heightened pleading standards of PSLRA in reversing dismissal of securities fraud claim).  As was well stated in *Levitt v. Bear Stearn & co., Inc.*, 340 F.3d 94, 104 (2nd Cir. 2003):

> "It makes little sense from a policy perspective to require specific factual allegations-- on pain of dismissal in cases of this sort-- and then punish the pleader for waiting until the appropriate factual information can be gathered by dismissing the complaint as time barred."

Id.

In the present case, a finding of inquiry notice before March 5, 2003 would result in punishing the Plaintiffs for waiting until the appropriate factual information could be gathered to file their claims against Defendant E&Y. There were no "storm warnings" in relation to Defendant E&Y's conduct before March 5, 2003.  This was in large part because Defendant E&Y only presented evidence to the contrary.  Defendant E&Y certified its compliance with GAAP and GAAS in relation to the Proxy Materials, and filed no restatements prior to March 5, 2003 which would indicate otherwise. (CAC ¶100).  In fact, Defendant E&Y did not correct the financial statements that it had certified until PricewaterhouseCoopers ("PwC") required Defendant E&Y to do so. (CAC ¶106).  As a result, there was nothing that Plaintiffs could have inquired about prior to March 5, 2003. It is true that Plaintiffs could have telephoned Mr. Hoverson and asked if Provident was committing accounting fraud, the absurdity of this course of action is self-evident.

Similarly, a finding of inquiry notice prior to March 5, 2003 would be inconsistent with the continuous fraud doctrine. The continuing wrong doctrine tolls the statute of limitations until the last act in the scheme has been committed. The continuing fraud doctrine only applies when a violation occurring outside the limitation period is so

closely related to other violations which are not time barred as to be viewed as part of the continuing practice for which recovery should be had for all violations. *S.E.C. v. Caserta*, 75 F.Supp.2d 79, 89 (E.D.N.Y. 1999), cited in *De La Fuente v. Dci Telecoms*, 206 F.R.D. 369, 386 (S.D.N.Y. 2002).

In the present case, the first indication that the investing public had any knowledge that anything was amiss with respect to Provident's financial statements was March 5, 2003. Plaintiffs moved for leave to amend the complaint on March 7, 2003, so it can hardly be said that plaintiffs slept on their rights. Furthermore, this is the first day that Defendant E&Y did not conceal their knowingly reckless auditing conduct in relation to Provident's financial statements. As a result, from the date of its certification and opinions, up until March 5, 2003, Defendant E&Y took part in a continuous fraudulent course of conduct that went on for several years. Therefore, since Defendant E&Y continuously committed fraud up until March 5, 2003, and Plaintiffs filed within two days of receiving notice of said fraud, the continuous fraud doctrine should toll the statute of limitations in this action such that Plaintiffs' claim is not time barred. It would be unquestionably unjust for the statute of limitations for Plaintiffs' Section 10(b) claim to run before Plaintiffs had a chance to discover it, and would, in essence, permit Defendant E&Y to get away with the "perfect crime."

Finally, the best evidence in support of Plaintiffs' lack of inquiry notice in this case is the fact that Plaintiffs did not file any claims against Defendant E&Y prior to March 2003 despite the fact that some of Plaintiffs' claims against Defendant E&Y may

be barred by their applicable statute of limitations.[2] Once Plaintiffs learned of the First Restatement, Plaintiffs properly moved for leave to amend their complaint two days later so as to include Defendant E&Y. Given the zealousness which Defendants' counsel collectively attributes to the undersigned in this action, it is incomprehensible that Plaintiffs would not have filed earlier against Defendant E&Y if they thought there was any evidentiary basis for doing so. As a result, since Plaintiffs moved about as swiftly as they possibly could to properly amend their complaint and name Defendant E&Y once Plaintiffs were finally put on notice of Defendant E&Y's fraud through the first restatement, Defendant E&Y should not be rewarded for their considerable skill in concealing their accounting fraud for such an extended period.

Therefore, based upon the foregoing, these facts show that Plaintiffs could not have had any inquiry notice of Defendant E&Y's conduct prior to March 5, 2003. As a result, since the statute of limitations for Section 10(b) claims has been extended to five years, and the statute of repose has been extended to five years pursuant to the Sarbanes-Oxley Act, Plaintiffs have timely filed their Section 10(b) claim since they filed it within two days of receiving notice of Defendant E&Y's knowingly reckless or intentionally fraudulent conduct.

**E.    Plaintiffs Adequately Pled Their Claim for a Violation of Section 10(b) of the Securities Exchange Act of 1934.**

Plaintiffs have adequately alleged their claims for violations of Sections 10(b) of the Securities Exchange Act of 1933. In order to state a claim pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. §78(j)b and S.E.C. Rule 10b-5, 17

---

[2]    There is not only an issue before this Court as to whether or not Plaintiffs' 10(b) and 14(a) claims for violations of the Securities Exchange Act of 1934 are barred by the applicable statute of limitations, but also Sections 11 and 12(a)(2) of the Securities Act of 1933.

C.F.R. §240.10b-5 (hereinafter "Section 10(b)), a plaintiff must allege, in connection

with the purchase or sale of securities, the misstatement or omission of a material fact,

made with scienter, upon which the plaintiff justifiably relied and which proximately

caused the plaintiff's injury. *In re Comshares, Inc. Securities Litigation*, 183 F.3d 542,

548 (6th Cir. 1999). In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 475-76, 97 S.Ct.

1292 (1977), the United States Supreme Court stated that:

> [The] cases forcefully reflect the principal that "[§] 10(b) must read
> flexibly, not technically and restrictively" and that the statute provides a
> cause of action for any plaintiff who "suffer[s] an injury as a result of
> deceptive practices touching its sale [or purchase] of securities. . . .,"

Id.

Plaintiffs' Section 10(b) claim meets the requirements of Fed.R. 9(b) and the

PSLRA. While Fed. Rule 9(b) and the Private Securities Litigation Reform Act

("PSLRA") are often considered interchangeable in relation to claims of securities law, a

plain reading of the two provisions shows they are in fact quite different. *In re Initial*

*Public Offering Sec. Litigation*, 241 F. Supp.2d 281, 334 (S.D. NY 2003). PSLRA and

Rule 9(b) both apply to claims of securities fraud, but never at the same time to the same

elements. Id. at 335. PSLRA requires that the complaint shall, with respect to each act or

omission alleged to violate this chapter, state with particularity facts giving rise to a

strong inference that the defendant acted with the required state of mind. Congress

intended that the PSLRA supersede the Federal Rules only as to those elements which the

PSLRA explicitly mentions: scienter and material misstatements and omissions. Id. See

S. Rep. No. 104-98, at 15. In all other respects, the Federal Rules are to govern these

pleadings. Id. As a result, Federal Rule 9(b) governs the pleading of the remaining elements of the claims: loss causation, reliance and damages. Id.

"The PSLRA changed the pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." Id. citing *Lipton* 284 F.3d at 1034, n.12. Interestingly, the PSLRA "nowhere defines what the 'required state of mind' is for any of the kinds of actions that might be brought" under the Securities Act. *In re Baesa Sec. Litig.*, 969 F.Supp. 238, 240 (S.D.N.Y. 1997). However, it has been determined that the PSLRA did not disturb the well-settled understanding that "scienter" is the requisite mental state for liability under § 10b or Rule 10b-5 cases. *Ernst & Ernst v. Hoschfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375; *In re Comshares, Inc.* at 550, n.5. Under current Sixth Circuit law, "recklessness satisfies the § 10(b)/Rule 10b-5 scienter requirement." *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1024 (6th Cir. 1979). In *Mansbach*, this Court expressed generally that "recklessness [is] highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." Id. at 1025.

However, since the PSLRA pleading standard does now require a heightened pleading standard, the plaintiff must now also plead facts giving rise to a "strong inference" of scienter. Id. at 553. This does not mean alleging facts giving rise to "a strong inference of knowing misrepresentation or intent." *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542 (6th Cir. 1999). In *In re Comshares, Inc.*, the Sixth Circuit stated that the "required state of mind" for the scienter element is defined as follows:

> We conclude that plaintiffs may plead scienter in § 10b or Rule 10b-5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud. Consequently, we must reject the reasoning of the district court to the extent it concluded that plaintiffs must "plead specific facts that create a strong inference of knowing misrepresentation on the part of the defendants" in order to establish a defendant's scienter in a securities fraud case brought under § 10(b) or Rule 10b-5.

Id. at 549.  Thereafter, in *Helwig v. Vencor*, 251 F.3d 540, 553 (6th Cir. 2001), the Sixth Circuit provided the following definitive explanation as to the meaning of a "strong inference":

> "Inferences must be reasonable and strong--but not irrefutable. "Strong inferences" nonetheless involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact. Plaintiffs need not foreclose all other characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder. Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences.

Id.

Finally, motive can help give rise to a finding of the requisite scienter. In *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 487 (S.D. OH 2000), this Court stated that the Sixth Circuit's point with respect to motive and opportunity in *In re Comshares, Inc.* was subtle. Id. at 500, n.8. "The statute requires scienter for liability and not just motive and opportunity; nonetheless, facts showing motive and opportunity may 'on occasion' give use to an inference of scienter." Id.

In the present case, the Plaintiffs have met all four elements for their Section 10(b) claim.

### 1.    Accountants Can be Liable for a Section 10(b) Claim

Any person or entity, including an accountant, may be liable as a primary violator under Section 10(b). *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 1455 (1994). In *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683 (1983), the Supreme Court upheld a verdict imposing direct § 10(b) liability on "the accounting firm, Herman & MacLean, which had issued an opinion concerning certain financial statements and a *pro forma* balance sheet that were contained in the registration statement and prospectus." Id. at 378 (footnote omitted). *See also, Knapp v. Ernst & Whinney*, 90 F.3d 1431 (9th Cir. 1996) (upholding § 10(b) liability for an outside accounting firm based on its audit report); *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1227 (10th Cir. 1996) (upholding § 10(b) liability for an outside accounting firm that knew its false audit opinions would reach the investing public). While an outside accounting firm might be blameless where it had no reason to know that its client would use its audit report to sell securities, or where it instructed its client not to release the report to the public, *Frymire-Brinati* v. *KPMG Peat Marwick*, 2 F.3d 183, 189-190 (7th Cir. 1993), an accountant can be liable if it consents to the use of its opinions in the Proxy Materials/Registration Statement as Defendant E&Y did in this case. (CAC ¶¶105-106).

An accountant or lawyer, for instance, who prepares a dishonest statement is a primary participant in a violation even though someone else may conduct the personal negotiations with a security purchaser." *Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, 267 (6th Cir. 1998) citing *SEC v. Coffey,* 493 F.2d 1304, 1315, n.24 (6th Cir. 1974). "A person undertaking to furnish information which is misleading because of a failure to

disclose a material fact is a primary participant." Id. citing *SEC v. Washington County Util. Dist.*, 676 F.2d 218, 223 6th Cir. 1982).

Significantly, although a major goal of the PSLRA was to limit the exposure of corporations to frivolous strike suits targeting "deep-pocket" defendants by heightening pleading standards and imposing procedural hoops, in contrast Congress expanded independent public accountants' watchdog duties. Id. citing Harvey L. Pitt, et al., "*Promises Made, Promises Kept: The Practical Implications of the Private Securities Litigation Reform of 1995*," 33 *San Diego L. Rev.* 845, 848-851 (1996).

Independent certified public auditors have assumed a peculiar relationship with the investing public. The responsibility of a statutory "independent public accountant "is not only to the client who pays his fee, but also to investors, creditors and others who may rely on the financial statements which he certifies. . . . The public accountant must report fairly on the facts as he finds them whether favorable or unfavorable to his client. His duty is to safeguard the public interest, not that of his client." In the *Matter of Touche, Niven, Bailey & Smart*, 37 S.E.C. 629, 670-671 (1957).

There is also no accountant/client privilege analogous to that accorded to lawyers. The United States Supreme Court has held, "By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a public responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to the investing public." *In re Enron Corp. Secs.*, 235 F. Supp.2d. 549,611 (5th Cir. 2002) citing *United States v. Arthur Young & Co.*, 465 U.S. 805, 817-818, 104 S.Ct. 1495 (1984).

As a result, based upon the foregoing, accountants clearly cannot be immunized from a Section 10(b) claim. *H.L. Green Company v. Lewie F. Childree*, 185 F. Supp. 95 (S.D.N.Y. 1960).

**2.    Plaintiffs Adequately Pled that Defendant E&Y Violated Section 10(b)**

**a.    Plaintiffs Adequately Pled the Material Misstatement or Omission Element of a Section 10(b) Claim**

Defendant E&Y knowingly or recklessly made material misrepresentations or omissions in the Proxy Materials related to the OHSL sale. Had the true facts been known, and had Defendant E&Y not falsely and fraudulently certified Provident's materially false and misleading financial statement, the merger never would have closed. (*See*, Expert Report of Candace Preston, Attached as Exhibit C).

The objective in relation to proxy materials is to provide the shareholder with full disclosure of the facts regarding the transaction. The objective of full disclosure can be fully achieved only by complete revelation of facts that would be material to the sophisticated investor or the securities professional not just the average common shareholder. *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 566 (E.D. NY. 1971). But, at the same time, the prospectus must not slight the less experienced. They are entitled to have within the four corners of the document an intelligible description of the transaction. Id.

"An omission or misrepresentation is material if there is a substantial likelihood that a reasonable investor would have viewed the omitted or misrepresented fact as having significantly altered the total mix of information available." *Thiemann v. OHSL Financial Corp.*, No. C-1-00-CV-793, (S.D. OH 2001). *Feit,* 332 F. Supp. 544 at 569 (The basic test of "materiality" is whether "reasonable man" would attach importance to

the fact misrepresented in determining his choice of action in the transaction in question). Material facts include not only information disclosing the earnings and distributions of a company but also those facts that affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities. *Feit*, 332 F. Supp. 544 at 570 citing *Kohler v. Kohler*, 319 F.2d 634, 642 (7th Cir. 1963). A fair summary of the rule stated in terms of probability is that a fact is proved to be material when it is more probable than not that a significant number of traders would have wanted to know it before deciding to deal in the security at the time and price in question. *Feit*, 332 F.Supp. 544 at 571. What is statistically significant will vary with the legal situation. Id. However, being a formal and legally required document, a prospectus must satisfy a high standard of disclosure -- i.e., disclosure is required when only a relatively small percentage of traders would want to know before making a decision. Id.  Anything in the order of 10 percent of either the number of potential traders or those potentially making 10 percent of the volume of sales would seem to more than suffice. Id.  In non-quantitative terms a fact is "material" in a registration statement whenever a rational connection exists between its disclosure and a viable alternative course of action by any appreciable number of investors. Id. Consequently, materiality is a question of fact to be determined in the context of a particular case.  Id.

An accounting firm can be held primarily liable for allegedly making or failing to make material misrepresentations in financial statements which lead to a fraud on the market.  *Cashman v. Coopers & Lybrand*, 877 F.Supp. 425 (N.D. IL 1995). (An accountant is directly liable for intentional or reckless misrepresentations if he knows his

statements will be communicated to third parties). *See, e.g., Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1312 (9th Cir. 1982).

Misrepresentation in the prospectus is a manipulative and deceptive device within the meaning of the rule. *See, SEC v. Wills*, 472 F. Supp. 1250 (D.D.C. 1978); *Voege v. Magnavox Co.*, 439 F. Supp. 935 (D.Del. 1977) (proxy statement). An accountant may be liable for direct violation of the rule if its participation in the misrepresentation is direct and if it knows or is reckless in not knowing that the facts reported in the prospectus materially misrepresent the condition of the issuer. *Ernst & Ernst v. Hochfelder*, *supra*; *Nelson v. Serwald*, *supra*.

An individual who is held out in the offering prospectus as a financial consultant is required by 10b-5 to undertake at least a minimal investigation into the accuracy of the prospectus. A financial advisor is liable to those stockholders who purchased in reliance on the prospectus. Whether the financial advisor profited from the misrepresentations in the prospectus is irrelevant. *Drake v. Thor Power Tool Co.*, 282 F. Supp. 94 (N.D. Ill. 1967). Even when performing an unaudited write-up, an accountant is under a duty to undertake at least a minimal investigation into the figures supplied to him. He is not free to disregard suspicious circumstances. *Blakely v. Lisac*, 357 F. Supp. 255, 266 (D. OR. 1972) citing *Tenant's Corp. v. Max Rothenberg & Co.*, 36 A.D.2d 804, 319 N.Y.S.2d (1972), aff'd 30 N.Y.2d 585, 330 N.Y.S. 2d 800, 281 N.E.2d 846 (1972).

The responsibility of a statutory independent public accountant "is not only to the client who pays his fee, but also to investors, creditors and others who may rely on the financial statements which he certifies. . . . The public accountant must report fairly on the facts as he finds them whether favorable or unfavorable to his client. His duty is to

safeguard the public interest, not that of his client." In the *In re Matter of Touche, Niven, Bailey & Smart*, 37 S.E.C. 629, 670-671 (1957).

Where financial statements have been certified and released to the public, courts have imposed a continuous duty to disclose after-acquired information which casts doubt on the reliability of the certified figures *with respect to the period covered by the audit.* See, e.g., *Hirsch v. du Pont,* 553 F.2d 750, 761 (2d Cir. 1977); *United States v. Natelli,* 527 F.2d 311 (2d. Cir. 1975), *cert. denied,* 425 U.S. 934, 48 L.Ed.2d 175, 96 U.S. 1663 (1976); *Fischer v. Kletz,* 266 F. Supp. 180, 189-194 (S.D.N.Y. 1967).

In the present case, there can be no dispute between the parties that there were material misstatements in the Proxy Materials/Registration Statement. This is confirmed by the First and Second Restatements filed in March and April of 2003. (CAC ¶128). As stated above in greater detail, these restatements stated, in essence, that the net income of PFGI had been materially overstated during the class period. (CAC ¶¶88, 93). Thus, the first element of the 10(b) claim is met.

### b. **Plaintiffs Adequately Pled the Scienter Element of a Section 10(b) Claim**

Plaintiffs have also adequately pled the scienter element of their Section 10(b) claim. As stated above, the scienter element is properly alleged by pleading facts showing a strong inference of recklessness. *In re Comshares, Inc.,* 183 F.3d at 549. In cases involving "recklessness", the main issue generally centers around the sufficiency of disclosures or materiality of the misrepresentations coupled with reliance. Inquiries into these areas are inherently fact-specific and are generally left to the trier of facts. *Basic, Inc. v. Levinson,* 485 U.S. 224, 235, 108 S.Ct. 978 (1988); *Goldman v. Belden,* 754 F.2d 1059, 1068 (2d. Cir. 1985). However, if this Court wants to rule on the recklessness issue

at this time, Defendant E&Y's Motion to Dismiss the 10(b) claims should still be denied since Plaintiffs have adequately alleged alleging facts giving rise to a strong inference of recklessness on the part of Defendant E&Y.

There are several different ways to meet the scienter element.  First, a "classic" fact pattern giving rise to a strong inference of scienter is that defendants made statements when they knew or had access to information suggesting these public statements to be materially inaccurate. *Florida State Bd. of Admin.*, 270 F.3d 645, 665 (8th Cir. 2001) (finding the plaintiffs' allegations of scienter sufficient because the investors alleged that defendants published statements with knowledge of specific facts, set forth in the complaint, indicating that crucial information in the statements was based on discredited assumptions).

Second, an accountant's "recklessness" is sufficient to give rise to primary liability. See, e.g., *CL-Alexanders Laing & Cruickshank v. Goldfeld*, 739 F. Supp. 158, 163 (S.D.N.Y. 1990); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1356 (S.D.N.Y. 1982); *Cortec. Indus. Inc. v. Sum Holding L.P.*, 839 F. Supp. 1021, 1025, n. 10 (S.D.N.Y. 1993) (an accountant's recklessness is sufficient to give rise to primary liability); *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1312 (9th Cir. 1982). ("an accountant may be liable for a direct violation of Rule 10b-5 if its participation in the alleged misrepresentation(s) is direct and if it knows or is reckless in not knowing that the facts reported in the prospectus materially misrepresent the condition of the issuer.").

In their amicus brief for *In re Comshares, Inc.*, the American Institute of Certified Public Accountants expressed concern that allegations of securities fraud based on mere recklessness would "expose accountants and other perceived 'deep pocket'

defendants to potential liability without, in the words of Congress, 'regard to their actual culpability.'" Id. at 550, n.7 citing Br. at 30. However, the Sixth Circuit believed that the question of whether recklessness sufficed to prove scienter was well-settled, and the Sixth Circuit was unpersuaded by amici's characterization of the PSLRA as setting forth a uniform substantive standard of scienter as opposed to a procedural standard of heightened pleading. Id. Other courts have agreed with this appraisal.

In particular, a knowing or reckless disregard of GAAP principles and GAAS standards adequately alleges a 10(b) claim. In *Ades v. Deloitte & Touche*, 799 F. Supp. 1493, 1501 (S.D.N.Y. 1992), the district court concluded that the Amended Complaint satisfactorily pled Deloitte and Touche's (D&T) scienter with respect to the GAAS/GAAP allegations since they specified the various accounting standards violated by the accounting of these transactions in the financial statements, and alleged that D&T knowingly or recklessly ignored these principles in conducting the Review. The allegations supporting an inference of recklessness with respect to the overstatements attributable to the sales also served to undergird the allegation of recklessness with respect to D&T's representation that the financial statements were in conformity with GAAP and other accounting standards. Id.

Similarly, in *In re Health Management Sec. Litig.*, 970 F. Supp. 192, 203 (E.D.N.Y. 1997), the district court found a strong inference of recklessness where defendant allegedly failed to follow proper audit procedures, that GAAP violations led to material misstatements, and that defendant ignored numerous "red flags." Id.; *Siemens Info. Sys., Inc. v. TPI Enters., Inc.,* 1992 U.S. Dist. LEXIS 3018 (S.D. N.Y. 1992) (the district court stated that the pleading satisfied the scienter requirement where it alleged

36

accountant's "awareness of Siemens' concern over 'potential problems' with the Financial Statements.").

Finally, "a common method for establishing a strong inference of scienter is to allege facts showing" motive and opportunity. *In re Comshares, Inc. at 551* citing *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 *(2d. Cir. 1987)*. Although plaintiffs may not establish a "strong inference" of scienter merely by alleging facts demonstrating motive and opportunity where those facts do not simultaneously establish that the defendant acted recklessly or knowingly, or with the requisite state of mind, facts regarding motive and opportunity may be "relevant to pleading circumstances from which a strong inference of fraudulent scienter may be inferred." Id. citing *In re Baesa*, 969 F. Supp. 238, 242 (S.D.N.Y. 1997). On occasion, such pleading may rise to the level of creating a strong inference of reckless or knowing conduct. Id. For example, in *Robin v. Arthur Young & Company*, 915 F.2d 1120, 1126 (7th Cir. 1990), the Seventh Circuit stated that if the plaintiff does not have direct evidence of scienter, the court should ask whether the fraud (or cover-up) was in the interest of the defendants. "Did they gain by bilking the buyers of the securities?" Id.

In the present case, Plaintiffs have met more than one of these methods for adequately pleading scienter.  First, Plaintiffs have alleged Defendant E&Y made material misstatements when they knew or had access to information suggesting these public statements to be materially inaccurate. (CAC ¶¶ 32, 148).  In particular, Plaintiffs alleged that Defendant E&Y had access to Provident's financial statements, and knew that Provident's earnings were materially misstated in the Proxy Materials. (CAC ¶¶ 107,110).  As a result, Defendant E&Y had actual knowledge that its opinion on those

financial statements were materially false and misleading due to the fact that Provident's accounting did not meet the technical requirements of FAS 13. (CAC ¶ 108). Similarly, Plaintiffs also alleged that Defendant E&Y knew, or absent a reckless disregard for the truth should have known, that Provident's earnings were of a magnitude as to have materially misstated earnings and cash flow for each year in which E&Y performed an audit. (CAC ¶ 110).

Also, Plaintiffs have alleged that Defendant have recklessly disregarded GAAP and GAAS. Defendant E&Y did not conduct its audits in accordance with GAAS at least as far back as 1994. (CAC ¶32). The accounting for auto lease transactions, and the decision of whether or not to include them on or off balance sheets, is fundamental to Provident's business, and the decision of how to properly account for such auto lease transactions is fundamental to audits. (CAC ¶32). This is one of those issues that Defendant E&Y cannot genuinely believe that any objective party would find that Defendant E&Y did not know how to properly account for such auto lease transactions. As a result, based upon the information which was received on and after March 5, 2003, it is difficult to reach any other conclusion than that Defendant E&Y allowed Provident to engage in "desired results" accounting. (CAC ¶32). In other words, Defendant E&Y abandoned its professional obligations to PFGI and the class to conduct GAAS audits applying GAAP, in exchange for large auditing and consulting fees. (CAC ¶32).

Similarly, nowhere in the deceptive Proxy Materials/Registration Statement section as to Risk Factors or the sub-section as to Securitizations did there appear any disclosure as to the "off the books" accounting procedures. (CAC ¶ 101(b)). Plaintiffs have alleged that Defendant E&Y knew, or absent a reckless disregard for the truth

should have known, that Provident was maintaining "off the books" accounts which did not properly reflect the investor's risk to Provident revenues and earnings, and that such treatment and disclosures of the massive auto lease financial results of Provident were incorrect and misleading. (CAC ¶ 109).  Defendant E&Y intentionally concealed these "off the books" transactions since it wanted to avoid being associated with Enron and Arthur Andersen.  Of course, even with the disclosure of the true facts, Provident stock would have melted down, as it did on March 5, 2003.  Thus, based upon the foregoing, the allegation that Defendant E&Y recklessly disregarded GAAP and GAAS, is the most probable of the competing inferences, and is further supported by the evidence of motive in this action.

Plaintiffs alleged that Defendant E&Y had a financial motive to recklessly disregard the Provident financial statements and accounting standards. (CAC ¶¶ 32, 150). In particular, Plaintiffs allege that "Defendant E&Y benefited from the misrepresentations by continuing to receive huge fees for its auditing services prior to and during the 1999 merger as well as thereafter, despite the fact that E&Y knowingly and/or recklessly failed to perform GAAS audits applying GAAP, which finally forced Provident to twice restate its earlier financials. . ." (CAC ¶150).  Defendant E&Y argues that Plaintiffs have not sufficiently pled a motive.  Although Plaintiffs disagree based upon the case law cited above, the lack of motive is not a hindrance to the denial of this motion to dismiss. In *Fischer, et al. v. Kletz, et al.*, 266 F. Supp. 180, CCH Federal Securities Law Reporter P91,919 (No. 65 Civ. 787 S.D.N.Y. 1967), it was alleged that defendant Peat, Marwick  failed to disclose that financial statements which it certified contained false and misleading figures and that interim statements were false and

misleading. Id. The court refused to dismiss the common law fraud allegation and also found the defendant liable under Rule 10b-5 despite the fact that there was an absence of any allegation of gain on the part of defendant Peat, Marwick. Id. Although Plaintiffs concede that the motive alleged in this case in not sufficient to meet the scienter element, Plaintiffs argue that it should properly be considered in addition to the other allegations pled in this Complaint.

Defendant E&Y's Motion to Dismiss should be denied because all of the elements of Plaintiffs' Section 10(b) claim have adequately pled. There can be no doubt that the Restatements contained material misstatements based upon the two restatements filed in March and April of 2003. There can be no doubt that Defendant E&Y acted with extreme recklessness and/or with fraudulent intent based upon its inability to correctly account for accounting transactions which Defendant E&Y does on a routine basis. There can be no doubt that Plaintiffs relied upon these misrepresentations because reliance is presumed when the fraud alleged is "fraud on the market," and there exists a sufficient allegation that the misrepresentation is material. *Basic Inc. v. Levinson*, 485 U.S. at 227; *Molecular Technology Corp. v. Valentine*, 925 F.2d 910, 918 (6th Cir. 1991) (the element of reliance on the part of a buyer may be presumed in the case of an omission or nondisclosure of material facts). Finally, there can be no doubt that damages resulted from this conduct.

**F.    Plaintiffs Adequately Pled Their Claim for a Violation of Section 14(a) of the Securities Exchange Act of 1934.**

Plaintiffs have adequately pled their claim pursuant to §14(a) of the Securities Exchange Act of 1934, 15 U.S.C.S. §78n(a) and S.E.C. Rule 14a-9, 17 C.F.R. §240.14a9 (hereinafter "§14(a)"). In order to state a claim pursuant to §14(a), the plaintiff must

allege that a person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, solicited or permitted the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C.S. §78l]. Id.

Plaintiffs have adequately pled this Section 14(a) claim for two reasons. First, as stated in greater detail above, Plaintiff has adequately pled that Defendant E&Y acted in contravention the rules and regulations the Securities Exchange Commission has prescribed as necessary or appropriate in the public interest or for the protection of investors. In particular, Plaintiffs have alleged that the Proxy Materials/Registration Statement sent to the plaintiffs and all class members contained numerous materially false and misleading statements of fact and omissions of material fact, which fraudulently induced and proximately caused the OHSL shareholders to vote for and approve the subject merger by a narrow majority. (CAC ¶141). (*See also*, Expert Report of Candace Preston, Attached as Exhibit C). Finally, Plaintiffs have also adequately alleged that Defendant E&Y consented to the use of its name in relation to the Proxy Materials/Registration Statement in relation to the sale of OHSL. (CAC, ¶¶¶¶32, 105, 106, 142).

Thus, for the foregoing reasons, Defendant E&Y's Motion to Dismiss as to the Section 14(a) claim should be denied.

**G.    Plaintiffs Adequately Pled a Common Law Fraud Claim**

Plaintiffs' common law fraud claim is factually and legally sufficient pursuant to Ohio Civil Rule 9(B).  Common law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas* (2002), 97 Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92 at p. 24.

For the reasons set forth above pertaining to Plaintiffs' Section 10(b) claim, Plaintiff's fraud claim should not be denied because it states a claim upon which relief can be granted.

Further, this claim is also not barred by its applicable statute of limitations. R.C. §2305.09 provides a four-year statute of limitations for relief on the ground of fraud. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 181, 546 N.E.2d 206.  The statute begins to run when the plaintiff discovers, or should have discovered, the complained-of injury. *Tri-State Computer Exchange v. Burt* (June 20, 2003), 2003 Ohio 3197, Hamilton App. No. C-020345 at P17.  In the present case, as discussed in greater detail above, Plaintiffs did not, and could not, have discovered Defendant E&Y's fraud until March 5, 2003.  As a result, Plaintiffs have not only adequately pled their common law fraud claim with the required specificity, but they have also pled it in a timely

manner. Thus, for the foregoing reasons, Plaintiffs' common law fraud claim should not be dismissed.

## V.    **CONCLUSION**

The critical importance of the auditing accountant's role in insuring full disclosure for Proxy Materials cannot be overestimated. The SEC has emphasized that in certifying statements the accountant's duty "is to safeguard the public interest, not that of his client." *In re Touche, Niven, Bailey & Smart*, 37 S.E.C. 629, 670-671 (1957). "In our complex society the accountant's certificate and the lawyer's opinion can be instruments for inflicting pecuniary loss more potent than the chisel or the crowbar. " *United States v. Benjamin*, 328 F.2d 854, 863 (2nd Cir.), cert. denied *sub nom. Howard v. United States*, 377 U.S. 953 (1964).  This was the situation in the present case since not only the OHSL Board, but the OHSL shareholders relied upon the opinions and certifications provided by Defendant E&Y in relation to the Proxy Materials.

Thus, since Plaintiffs have adequately pled that Defendant E&Y knowingly and/or with extreme recklessness disregarded accepted accounting procedures, and rejected information available to it, Plaintiffs respectfully request that this Court deny Defendant Ernst & Young's Motion to Dismiss the Consolidated Amended Complaint as to all causes of action except the state law claims.

Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
Attorneys for Plaintiffs and the Class
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502

(513) 221-8800
FAX: (513) 221-1097

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs'

Memorandum in Opposition to Defendant Ernst & Young's Motion to Dismiss the

Consolidated Amended Complaint was served upon the following persons this 17th day of

February 2004.

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

J. Michale Debbeler, Esq.
John B. Pinney, Esq.
Graydon, Head & Ritchey
511 Walnut Street, Suite 1900
Fifth Third Center
P.O. Box 6464
Cincinnati, Ohio 45202-3157

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202

**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

44

James E. Gauch, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

_____
Stephanie A. Hite