

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **WALTER W. THIEMANN, et al.** | : | **Civil Action No. C-1-00-793** |
| **Plaintiffs,** | : | **Judge Sandra S. Beckwith** |
| **vs.** | : | **Magistrate Judge Timothy Hogan** |
| **OHSL FINANCIAL CORP., et al.** | : | |
| **Defendants.** | : | |

---

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OF DINSMORE & SHOHL, LLP, CLIFFORD ROE AND CHARLES HERTLEIN PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 AND MOTION TO STRIKE PORTIONS OF THE COMPLAINT

*UBI JUS IBI REMEDIUM*

Dated: February 17, 2004

**GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the Class

*There is nothing special about Barnhart's status as an attorney*
*that negates his Rule 10b-5 duty to disclose, a duty*
*that ordinarily would devolve under Rule 10b-5 upon a third party*
*under these circumstances....*

*An accountant or lawyer, for instance, who prepares a dishonest*
*statement is a primary participant in a violation even though someone*
*else may conduct the personal negotiations with a securities purchaser.*
*A person undertaking to furnish information which is misleading*
*because of a failure to disclose a material fact is a primary participant.*

*Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, at 267  (Sixth Cir. *en banc*, 1998)
(internal citations omitted) (emphasis added)

Plaintiffs, by and through counsel, pursuant to Rule 12(b)(6) and Section 9(b) of

the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of

1995, hereby respond to the Motion to Dismiss of Defendants Dinsmore & Shohl, LLP,

Clifford Roe, and Charles Hertlein Pursuant to Federal Rules of Civil Procedure 12(b)(6)

and the Private Securities Litigation Reform Act of 1995, and Motion to Strike Portions

of the Complaint (hereinafter "Motion to Dismiss"), and submit the following

Memorandum and exhibits in support thereof.

Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the Class

TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1-4

II.     SUMMARY OF ARGUMENTS RAISED AND PRIMARY
        AUTHORITIES RELIED UPON..................................................................4-8

        A.     Plaintiffs Adequately Plead a Claim for Violation of Section 11
               of the Securities Act, 15 U.S.C. Section 77k Upon Which Relief
               Can be Granted...........................................................................4-5

        B.     Plaintiffs' Adequately Pled a Section 10(b) Claim Upon Which
               Relief Can be Granted....................................................................5-6

               1.      Attorneys Can be Liable for a Section 10(b) Claim.................5

               2.      Plaintiffs Adequately Pled that the Proxy Materials
                       Contained Material Misstatements.........................................5

               3.      Plaintiffs Adequately Pled the Scienter Element of the
                       Section 10(b) Claim............................................................6

        C.     Plaintiffs Timely Filed their Section 10(b) Claim Against
               Defendant Hertlein........................................................................6-7

        D.     Plaintiffs Adequately Pled Claims for Violations of R.C.
               Sections 1707.41 and 1707.43.............................................................7

        E.     Plaintiffs Adequately Pled Their Spoliation Claim...........................8

        F.     Plaintiffs' Adequately Pled Their Common Law Fraud Claim.............8

        H.     Plaintiffs Timely Filed Their Common LawFraud Claim Against
               Hertlein........................................................................................8-9

        I.     The "Introduction" Should Not be Stricken from Plaintiffs'
               Amended and Consolidated Class Action Complaint..........................9

III.    STATEMENT OF FACTS.......................................................................9-10

IV.     LEGAL ARGUMENT.........................................................................10-41

        A.     Fed.R. Civ. P. 12(b)(6) Motion to Dismiss Standard....................10-12

        B.     Plaintiffs Adequately Plead a Claim for Violation of Section
               11 of the Securities Act, 15 U.S.C. Section 77k Upon Which

Relief Can be Granted………………………………………..12-13

C.    Plaintiffs' Adequately Pled a Section 10(b) Claim Upon Which
Relief Can be Granted………………………………………..13-29

    1.    Attorneys Can be Liable for a Section 10(b) Claim………….15-17

    2.    The Material Misstatements and Scienter Elements
of a 10(b) Claim Must be Pled in Accordance with
the Private Securities Litigation Reform Act………………..17-19

    3.    Plaintiffs Adequately Pled that the Proxy Materials
Contained Material Misstatements or Omissions…………….19-26

    4.    Plaintiffs' Adequately Pled the Scienter Element of the
Section 10(b) Claim……...…………………………………26-29

D.    Plaintiffs Timely Filed their Section 10(b) Claim Against
Defendant Hertlein……………...…………………………………30-34

E.    Plaintiffs Adequately Pled Claims for Violations of R.C.
Sections 1707.41 and 1707.43.……………………………………34-37

F.    Plaintiffs Adequately Pled a Spoliation Claim…………………….37-40

G.    Plaintiffs' Adequately Pled Their Common Law Fraud Claim………...40

H.    Plaintiffs Timely Filed Their Common Law Fraud Claim
Against Hertlein……………………………………………..…….40-41

I.    The "Introduction" Should Not be Stricken from Plaintiffs'
Amended and Consolidated Class Action Complaint………………41-42

V.    CONCLUSION…………………………………………………………43

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Ackerman v. Schwartz*, 947 F.2d 841 (7th Cir. 1991)............................................16

*Affiliated Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456 (1972)...............16

*Baker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490 (7th Cir. 1986)..............28

*Blatt v. Merrill Lynch*, 916 F. Supp. 1343 (D.N.J. 1996).....................................32

*Bovee, et al. v. Coopers & Lybrand*, et al., 272 F. 3d. 356 (S.D. Ohio 2002).........29-30

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, (1990).....................................32

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375 (1976).......................26,27

*Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544 (E.D. NY. 1971)...19-20

*Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533 (M.D. Fla 1997)..................30

*Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333 (6th Cir. 1994).....................30

*Gomez v. Toledo*, 446 U.S. 635 (1980)........................................................30

*Helwig v. Vencor*, 251 F.3d 540 (6th Cir. 2001).........................................18,27

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683 (1983)..........12,15,35

*Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229 (1984)..........................10

*In re Baesa Sec. Litig.*, 969 F.Supp. 238 (S.D.N.Y. 1997)....................................26

*In re Comshares, Inc. Securities Litigation*, 183 F.3d 542 (6th Cir. 1999).......14,18,26-29

*In re Flight Transportation Corp. Securities Litigation*, 593 F. Supp 612
    (D. Minn. 1984)..........................................................................13

*In re Initial Public Offering Sec. Litigation*, 241 F. Supp.2d 281 (S.D. NY 2003).........17

*In re Nivram Corp. v. Harcourt Brace Jovanovich*, 840 F. Supp. 243 (S.D.N.Y.). .......32

*In re Rospatch Securities Litigation*, 760 F. Supp. 1239 (W.D. MI 1991)..................28

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 487 (S.D. OH 2000)......27

*Kohler v. Kohler*, 319 F.2d 634 (7th Cir. 1963)……………………………………………….20

*Lampf, Pleva, Lipkind, Prupris & Petigrow v. Gilbertson*, 501 U.S. 351,
    111 S.Ct. 2773 (1991)……………………………………………………………….30

*Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017 (6th Cir. 1979)…………………..27

*Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363 (7th Cir. 1997)…………………..32

*Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239 (3rd. Cir. 2001)………………..31

*Molecular Technology Corp. v. Valentine*, 925 F.2d 910 (6th Cir. 1991)….15-17,28-29,35

*New England Heathcare Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d
    495 (6th Cir. 2003)……………………………………………………………..31

*Papasan v. Allain*, 478 U.S 265, 286, 106 S.Ct. 2932 (1986). …………………………..11

*Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101
    (W.D. Mich. 1996). …………….…………………………………………….30

*Riedel v. Acutote of Colorado*, 773 F.Supp. 1055 (S.D. OH 1991)……………………..15

*Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263 (6th Cir. 1998)……………..16-17,35

*Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292 (1977)…………………14

*Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434(6th Cir. 1988)……………………..11

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683 (1974)…………………………………...11

*SEC v. Frank*, 388 F.2d 486 (2nd Cir. 1968)……………………………………………...28

*Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567 (11th Cir. 1990)…………………………...30

*Thiemann v. OHSL Financial Corp.*, No. C-1-00-CV-793, (S.D. OH 2001)……………19

*Trust v. United States*, 77 F.3d 483, ** 3 (6th Cir. 1996)………………………………...32

*Yancos v. Lake County*, 953 F. Supp. 187 (N.D. Ohio 1996)…………………………….10

*Young v. Lepone*, 305 F.3d 1 (1st. Cir. 2002)……………………………………………..32

**STATE CASES**

*Davis v. Wal-Mart Stores, Inc.* (2001), 93 Ohio St.3d 488, 756 N.E.2d 657............37-39

*Grava v. Parkman Township* (1995), 73 Ohio St.3d 379, 653 N.E.2d. 226................38

*Hild v. Woodcrest Association*(1977), 59 Ohio Misc.13, 391 N.E. 1047...................36

*Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206................40

*Leeth v. Decorator's Mfg., Inc.* (1979), 67 Ohio App.2d 29, 425 N.E.2d 920.............36

*State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas* (2002), 97 Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92......................................40

*Thirty Four Corp. v. Sixty Seven Corp.* (1993), 91 Ohio App.3d 818, 826 N.E.2d. 1179.............................................................................37

*Tri-State Computer Exchange v. Burt* (June 20, 2003), 2003 Ohio 3197, Hamilton App. No. C-020345.......................................................40

*Williamson v. Rodenberg* (June 30, 1997), Franklin App. No. No. 96APE10-1395.......39

**FEDERAL STATUTES AND RULES**

15. U.S.C. §77(k)..................................................................12

15 U.S.C. §78(j)b..................................................................13

15 U.S.C. §78i(e)..................................................................30

28 U.S.C. §1658(b)..............................................................31,34

Fed. R. Civ. P. 9(b) ............................................................17-18

Fed. R. Civ. 12(b)(6)..............................................................10

Fed. R. Civ. P. 15(c)..............................................................41

Section 9(e) of the Securities Exchange Act.............................................30

Section 10(b) of the Securities Exchange Act..................13-15,17-18, 26-27, 30-31,34

Section 11 of the Securities Act.................................................12,13

17 C.F.R. §240.10b-5..........................................................14,16

SEC Rule 10b-5……………………………………………………..13-16,18,27

## STATE STATUTES AND RULES

Ohio Rev. Code §1707.41………………………………………………34-35

Ohio Rev. Code §1707.43…………………………………………………35

Ohio Rev. Code §1707.431…………………………………………………36

Ohio Rev. Code §2305.09…………………………………………………40

Ohio Civil Rule 9(B)…………………………………………………40-41

## MISCELLANEOUS

S. Rep. No. 104-98……………………………………………………18

**I.**     **INTRODUCTION**

This class action lawsuit was commenced in 2000. It was filed on behalf of a class of OHSL Financial Corp. shareholders ("OHSL") as a result of Provident Financial Group ("PFGI" or "Provident") acquiring OHSL in 1999. Plaintiffs have alleged that the Proxy Materials/Registration Statement (Hereinafter "Proxy Materials") contained material misstatements and omissions of fact which artificially inflated the value of the Provident stock, caused a narrow favorable vote for the merger, and ultimately caused the losses to OHSL shareholders for this transaction.

However, this case is also about corporate suffrage, and about the rights of a public company to vote to merge or not to merge based upon accurate, truthful, and complete information. In the present case, a change in the vote of a mere 63,000 shares would have stopped the merger that Plaintiffs seek to undo. (*See*, Expert Report of Candace Preston, Attached as Exhibit A). The lead Plaintiff, Walter W. Thiemann, who voted his 40,000 shares in favor the merger, based upon the materially false and misleading Proxy Materials, has alleged and submitted affidavits that had he known the true facts, he would have voted his shares against the merger. Simple math shows that a change in the vote of a mere 23,000 shares would have had the effect of having the merger voted down. Consequently, had the following facts been disclosed, it is clear to a reasonable degree of business certainty that the fraudulently induced merger would not have been approved:

1.     The former OHSL CEO, Board Member, COB designate, and by far its largest shareholder, Ken Hanauer, had voted his personal shares against the merger and--contrary to the Proxy Materials--did not believe the merger to be in the best interest of the shareholders;

1

2.    That Hanauer changed his vote from abstain to in favor of not because he believed in the merge, but because he just gave up;

3.    That contrary to the Proxy Materials, former OHSL Chairman Norbert Brinker changed his vote from in favor of to abstain and thus did not vote to approve the merger;

4.    That former OHSL director Thomas M. Herron, whose father had long served on the OHSL Board, and whose family had been associated with OHSL for decades, voted against continued negotiations with Provident, resigned from the OHSL Board days before the final vote on the merger with Provident, voted his shares against the merger (by not voting) and, although it was obvious, called each director to inform him of his opposition to the merger the day he resigned (or shortly thereafter, in the case of OHSL director Thomas McKiernan, who was out of the country);

5.    That Provident stock was materially overvalued by approximately $17 million due to "off the books accounting," similar to Enron, making the merger a $40 million transaction instead of a $57 million deal; and

6.    That Provident stock was materially overvalued by approximately $17 million dollars due to "off the books" accounting similar to Enron, thus making the merger a $40 million transaction instead of a $557 million deal.

7.    That only half of OHSL's management was in favor of the merger.

8.    That the risk of Provident's securitization's was not adequately disclosed.

9.    That Provident had engaged in fraudulent "off the books" accounting that For years, and that its stock was materially overvalued as a result. (*See*, Affidavit of Ervin Schoenblum, Attached as Exhibit B).

Plaintiffs have alleged that several defendants including, Dinsmore & Shohl, L.L.P., Clifford Roe, and Charles Hertlein (hereinafter "Dinsmore Defendants"), are liable for the material misstatements and omission of fact contained in the Proxy Materials. In particular, the Dinsmore Defendants are named as defendants in this action based upon their preparation and/or creation of "sections" of the Proxy Materials filed with the SEC and sent to OHSL shareholders on or about September 27, 1999 in

connection with the pending merger agreement between OHSL and PFGI. (Consolidated Amended Complaint ("CAC"), ¶27 ).

As a result of their actions in relation to the writing of "sections" of the Proxy Materials, Plaintiffs have alleged six causes of action against the Dinsmore Defendants. They are as follows: Count I (Violation of Section 11 of the Securities Act, 15 U.S.C. §77(k); Count V (violations of Section 10(b), 15 U.S.C. §78(j)b of the Exchange Act and Rule 10(b)(5), 17 C.F.R. Section 240.10b-5); Count VII (Ohio Securities Law Violations under R.C. §1707.41); Count VIII (Ohio securities law violations under R.C. §1707.43); Count IX (spoliation of evidence); and Count X (common law fraud).

By Order of July 25, 2001, this Court previously determined that there are three material misrepresentations contained in the Proxy Materials. (Doc. No. 46). They are as follows: (1) The unanimity of OHSL's Board; (2) Risk Factors/Securitization of the Loans; and (3) Resignation of Thomas Herron (Doc. No. 46). Although Plaintiffs will concur with the Dinsmore Defendant that only (1) and (3) are applicable to them, Plaintiffs also note at this juncture that the Dinsmore Defendants' have taken the rather disturbing position of dedicating the majority of their Motion to Dismiss to arguing the lack of materiality of these statements in the Proxy Materials. As stated above, this Court has already made specific conclusions of law as to what may or may not be material in this action. In arguing their Motion to Dismiss, the Dinsmore Defendants completely dismiss this previous ruling of this Court and are arguably in contempt of this Court for doing so.

Further, the Dinsmore Defendants also incomprehensibly argue that the allegations of Plaintiffs' Complaint are deficient under the law for purposes a

Fed.R.12(b)(6) Motion. Once again, the Dinsmore Defendants ignore or disregard the past rulings of this Court. The CAC added Defendant Hertlein as a party and additional specificity to the allegations which was present in the previous Complaint. If the allegations of materiality were sufficient against the Dinsmore Defendants in the original complaint, it is logically inconsistent for some of those same allegations, which are now re-pled with additional specificity, to somehow be deficient in the CAC.[1] The only argument that could potentially change this result would be a change in the law. The Dinsmore Defendants however have not alleged such a change in the law, and there has been no case which would change this result.

## II.    SUMMARY OF ARGUMENTS AND PRIMARY AUTHORITIES RELIED UPON

### PLAINTIFFS' FEDERAL CLAIMS

**A.    Plaintiffs Adequately Plead a Claim for Violation of Section 11 of the Securities Act, 15 U.S.C. Section 77k Upon Which Relief Can be Granted**

Section 11 of the 1933 Securities Act identifies the types of persons who may be held liable for their involvement in the filing of registration statements which contain an untrue statement of material fact or omits a material fact which is false or misleading. 15 U.S.C. §77(k). Liability extends to any person, or expert, whose profession lends authority to their statements. Id. Federal case law has interpreted this section to

---

[1]    The Dinsmore Defendants argue in footnote 1 of their Motion to Dismiss that Plaintiffs have incorporated more factual allegations, documents, and deposition testimony which demonstrate that the alleged misrepresentations are neither misleading nor material. (Motion to Dismiss, p. 5, n.1). For the reasons cited above, this argument is without logic or merit. The allegations which Plaintiffs re-pled in its Consolidated Amended Complaint with additional specificity were appropriate because they were related to findings that had been dismissed without prejudice. Further, at this juncture it should be noted that although Plaintiffs may not completely agree with the findings of this Court as to what is material or immaterial, Plaintiffs have still respected the findings of this Court, and have not directly challenged them in the manner the Dinsmore Defendants have done in this Motion. Plaintiffs argue and respectfully request that they not be required to repeatedly respond to issues that have already been decided by this Court.

include attorneys when they act as experts. *Herman & MacLean v.* Huddleston, 459 U.S. 375, 103 S.Ct. 683, 690, n. 22 (1983). Thus, Plaintiffs have adequately pled their Section 11 claim.

**B.    Plaintiffs' Adequately Pled a Section 10(b) Claim Upon Which Relief Can be Granted**

Plaintiffs have adequately pled that the Dinsmore Defendants, in connection with the purchase or sale of securities, made misstatement or omission of a material fact, with scienter, upon which the plaintiffs justifiably relied and which proximately caused the plaintiff's injury. *In re Comshares, Inc. Securities Litigation*, 183 F.3d 542, 548 (6th Cir. 1999).

**1.    Attorneys Can be Liable for a Section 10(b) Claim**

Although attorneys are not usually liable under the federal securities laws because they normally merely provide professional services, this does not mean that they are never liable for such claims. *Riedel v. Acutote of Colorado*, 773 F. Supp. 1055, 1065 (S.D. OH 1991). Preparation of a prospectus constitutes participation in a securities sale which invokes Section 10(b)'s anti-fraud provisions. *Molecular Technology Corp. v. Valentine*, 925 F.2d 910 (6th Cir. 1991).

**2.    Plaintiffs Adequately Pled that the Proxy Materials Contained Material Misstatements or Omissions**

"An omission or misrepresentation is material if there is a substantial likelihood that a reasonable investor would have viewed the omitted or misrepresented fact as having significantly altered the total mix of information available." *Thiemann v. OHSL Financial Corp.*, No. C-1-00-CV-793, (S.D. OH 2001). By Order of July 25, 2001, this Court previously determined that there are three material misrepresentation contained in

the Proxy Materials. (Doc. No. 46). Two of these apply to the Dinsmore Defendants: (1) The unanimity of OHSL's Board; and (2) Resignation of Thomas Herron (Doc. No. 46).

Thus, since the allegations which Plaintiffs have pled in the CAC are the same as they previously pled or have additional specificity, and since only one material misstatement is sufficient to end the materiality inquiry at the motion to dismiss stage, the Plaintiffs have successfully pled the materiality element of the Section 10(b) claim.

3.    **Plaintiffs' Adequately Pled the Scienter Element of the Section 10(b) Claim**

Plaintiffs have alleged facts which give rise to a strong inference of recklessness on the part of the Dinsmore Defendants. *In re Comshare, Inc. Securities Litigation.* 183 F.3d 542, 548-549. The Plaintiffs have alleged that the Dinsmore Defendants acted recklessly by disregarding their actual knowledge of the material misstatements or omissions in the Proxy Materials. The Dinsmore Defendants also benefited from the misrepresentations and omissions by earning substantial legal fees from PFGI's purchase of OHSL for the authorization of the operative documents and its usage in the acquisition by Provident. (CAC, ¶149). Thus, the Dinsmore Defendants' Motion to Dismiss should not be granted because Plaintiffs have adequately pled the scienter element of their Section 10(b) claim.

D.    **Plaintiffs Timely Filed their Section 10(b) Claim Against Defendant Hertlein**

It is generally inappropriate to address the statute of limitations on a motion to dismiss. *Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533, 537 (M.D. Fla. 1997). However, if this Court decides to make this decision at this juncture, Plaintiffs Section 10(b) claim would not be barred by the applicable statute of limitations.

Section 10(b) is not subject to an express statute of limitations because it was judicially created. *Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333, 338 (6th Cir. 1994). However, the Supreme Court has applied the one-year statute of limitations and three-year statute of repose to said claims as set forth in §9(e) of the Exchange Act, 15 U.S.C. §78i(e), to §10(b). *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). In 2002, the Sarbanes-Oxley Act expanded the applicable periods of limitation and repose to two years and five years. The Sarbanes-Oxley Act "applies to all proceedings addressed by this section that are commenced on or after the date of enactment." 28 U.S.C. § 1658(b). Since it was enacted on July 30, 2002, the Sarbanes-Oxley Act applies to Plaintiffs' claims against Defendant Hertelin. Therefore, since Plaintiffs were not put on inquiry notice of Defendant Hertlein's fraudulent conduct until December 17, 2001, the Section 10(b) claim against Defendant Hertlein should not be dismissed for being untimely filed since it was filed within the two-year statute of limitations set forth in the Sarbanes-Oxley Act.

**E.**  **Plaintiffs Adequately Pled Claims for Violations of R.C. Sections 1707.41 and 1707.43**

R.C. § 1707.41 provides for civil liability of the seller of securities for fraud. Id. As the agent of the seller, the Dinsmore Defendants can be liable to a buyer who suffered a loss as a result of relying upon the falsity of any material statement contained therein or from the omission of material facts.

Similarly, R.C. §1707.43 gives the purchaser of an unregistered security a remedy for the purchase price of the security against the seller and against every person who has participated in or aided the seller in any way in making such sale or contract for sale. Id. Plaintiffs have adequately alleged that the Dinsmore Defendants were intimately involved

in the preparation of the Proxy Materials and had actual knowledge of the facts behind it, including knowledge that Mr. Hanauer was opposed to the merger and had voted his personal shares against it. (CAC, ¶¶27, 28).

Thus, Plaintiffs claims for violations of R.C. Section 1707.41 and 1707.43 should be denied.

### F.    Plaintiffs Adequately Pled a Spoliation Claim

The Dinsmore Defendants argue that this claim is barred by the doctrine of *res judicata* because Plaintiffs knew of this claim during the previous state court action, but did not raise it. However, the doctrine of *res judicata* is inapplicable to the present case because it only applies to parties or their privies, and actions which are similar. *Thirty Four Corp. v. Sixty Seven Corp.* (1993), 91 Ohio App.3d 818, 826 N.E.2d. 1179. Plaintiff Thiemann was not a party in the previous state court action which is largely unrelated to the present federal securities action. Thus, it was impossible for him to have raised his spoliation claim in that dissimilar action. Thus, Plaintiffs' spoliation claim should not be dismissed.

### G.    Plaintiffs Adequately Pled Their Common Law Fraud Claim

Plaintiffs' common law fraud claim should not be dismissed because pursuant to Ohio Rule 9(B), Plaintiffs have adequately alleged that the Dinsmore Defendants, with knowledge of their falsity, and with the intent of misleading another into relying upon it, made material misrepresentations and concealed facts upon which the Plaintiffs justifiably relied and incurred damages. *State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas* (2002), 97 Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92 at P24.

**H.    Plaintiffs' Timely Filed Their Common Law Fraud Claim Against Hertlein**

Plaintiffs' fraud claim against Defendant Hertlein should not be dismissed as untimely because it was filed within four years of the discovery of the fraud pursuant to R.C. §2305.09. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 181, 546 N.E.2d 206; *Tri-State Computer Exchange v. Burt* (June 20, 2003), 2003 Ohio 3197, Hamilton App. No. C-020345 at P17. As discussed in greater detail above, Plaintiffs did not learn of the facts regarding the fraudulent conduct of Defendant Hertlein until December 17, 2001, less than four year before the filling of Plaintiffs' CAC in 2003.

**I.    The "Introduction" Should Not be Stricken from Plaintiffs' Amended and Consolidated Class Action Complaint**

There are no federal rules which proscribe such an introduction. However, Plaintiffs are willing to leave this issue to the Court's discretion.

## III.    STATEMENT OF FACTS

Plaintiffs allege that the Dinsmore Defendants, Dinsmore & Shohl, LLP, Clifford Roe, and Charles Hertlein (hereinafter "Dinsmore Defendants"), as counsel for OHSL Financial Corporation and OHSL, in cooperation with the Cincinnati law firm of Keating, Muething and Klekamp, P.L.L., wrote "sections" of the Proxy Materials filed with the SEC and sent to OHSL shareholders on or about September 27, 1999 in connection with the pending merger agreement between OHSL and the Defendant, Provident Financial Group, Inc. (CAC, ¶27 ).

Defendant Roe was the lead Dinsmore partner responsible for providing legal advice to OHSL and the Oak Hills Individual Defendants in conjunction with the merger and in conjunction with the preparation and distribution of the Proxy Materials. (CAC,

¶27).  Defendant Roe was present during the August 2, 1999 meeting in which the board of directors voted upon the acquisition and had personal knowledge as to who was present and who voted during the meeting. (CAC, ¶27; Hanauer deposition, p. 759). This information gave him actual knowledge that some of statements contained in the Proxy Materials were materially false. These material misstatements included, but were not limited to, the statement that "Your Board of Directors unanimously approved the acquisition and believes that it is in the best interests of the OHSL stockholders." (Letter to OHSL Financial Corp. stockholders accompanying OHSL Financial Corp. Proxy Materials/Prospectus dated September 24, 1999). Defendant Roe also knowingly created some of the materially false information which was included in the Proxy Materials. (CAC, ¶27).  Defendant Roe eliminated a section of the Proxy Materials which detailed the thought processes that the ad hoc committee had gone through to reach its decision, and set forth the makeup and members of the ad hoc committee. (Hanauer dep. p. 805). This information would have given the shareholders greater insight into the true make-up of the August 2, 1999 vote, that Mr. Herron did not vote since he had resigned a few days earlier, and that he had had voted against continued negotiation with Provident; additionally, no mention is made of the change of vote of defendants Brinker and Hanauer.

Similarly, Defendant Hertlein provided legal advice related to the merger transaction. (CAC, ¶ 28).  He also had actual and constructive knowledge that Mr. Hanauer opposed the merger with Provident, and that there was no unanimity in relation to the vote, but took no action to supplement or correct the Proxy Materials. (CAC, ¶ 28).

III.    **LEGAL ARGUMENT**

    A.    **Fed.R. Civ. P. 12(b)(6) Motion to Dismiss Standard**

A motion to dismiss can only be granted if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 104 S.C.t 2229 (1984). Although matters of public record, orders, items appearing in the record and attached exhibits may be taken into account, when deciding a motion brought pursuant to Federal Rule12(b)(6), the inquiry is essentially limited to the content of the complaint. *Yancos v. Lake* County, 953 F. Supp. 187, 191 (N.D. Ohio 1996). To survive a motion to dismiss under Federal Rule 12(b)(6), a "complaint must contain direct or inferential allegation respecting all of the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434, 436 (6th Cir. 1988). A court must accept all the allegations stated in the complaint as true, and view the complaint in the light most favorable to the plaintiff, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S 265, 286, 106 S.Ct. 2932 (1986). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

In their Motion to Dismiss, the Dinsmore Defendants utilize selected excerpts of testimony from a state court action that did not involve securities claims to support some of their arguments in this Motion to Dismiss. As a result, Plaintiffs suggest that the Dinsmore Defendants have really filed what is in essence a Motion for Summary rather than a Motion to Dismiss. Counsel for the Dinsmore Defendants basically agrees.

At a status conference on February 5, 2004, John Hust, Esq. acknowledged as much when he stated in substance, that the "**defendants may be out on a limb**" and may have "**overstepped**" with respect to this strategy. However, he also added that they did so with the belief that this Court would immediately recognize if they overstepped, and would provide guidance to the parties as to how to proceed if this was the case.

The Plaintiffs agree that this Court will be highly skeptical, if not reject, evidence in the Dinsmore Defendants' Motion to Dismiss which is inconsistent with a motion to dismiss. The acceptance of such additional, unrelated evidence is especially prejudicial to Plaintiffs since Magistrate Judge Hogan has specifically ruled that with the filing of the CAC, Plaintiffs are entitled to take new depositions and discovery related to the CAC, so that topics can be covered which had previously not been. Thus, this Motion to Dismiss should not be decided on the basis of evidence taken at all, let alone testimony from a state court case which did not even contain securities claims.

Therefore, based upon the foregoing, and the arguments set forth in greater detail below, the Dinsmore Defendants' Motion to Dismiss should be denied in its entirety because Plaintiffs have stated claims upon which relief can be granted as to all six of the claims alleged in Plaintiffs' Consolidated and Amended Class Action Complaint.

**B.      Plaintiffs Adequately Pled a Claim for Violation of Section 11 Upon Which Relief Can be Granted.**

Section 11 of the 1933 Securities Act identifies the types of persons who may be held liable on account of their involvement in the filing of registration statements which contain an untrue statement of material fact or omits a material fact which is false or misleading. 15 U.S.C. §77(k). Liability extends to accountants, engineers, appraisers or any other person, i.e. experts, whose profession lends authority to their statements. Id.

12

Federal case law has interpreted this section to include attorneys when they act as experts. *Herman & MacLean v.* Huddleston, 459 U.S. 375, 103 S. Ct. 683, 690, n. 22 (1983) The Dinsmore Defendants have not disputed that the registration statement contained untrue statements of material fact or omitted a material fact which was false and misleading. Rather, the Dinsmore Defendants solely argue that 15 U.S.C. §77(k) is inapplicable to them.

Defendants have misrepresented the liability of attorneys under Section 11 of the Securities Act. Defendants cite to *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 690, n. 22 (1983) for the proposition that an attorney who prepares portions of a registration statement does not have liability under Section 11 of the Securities Act. Id. However, this footnote does not state that an attorney who prepares portions of a registration statement does not have liability under Section 11 of the Securities Act, but rather that "certain individuals who play a part in preparing the registration statement "generally" cannot be reached by a Section 11 action. Id. These individuals include lawyers not acting as "experts." Id. Thus, the inverse must also be true. Attorneys, acting as "experts," can be reached by a Section 11 action.

*In re Flight Transportation Corp. Securities Litigation*, 593 F. Supp 612 (D. Minn. 1984), does not offer any additional support for two reasons. One, this case is of questionable legal authority and, two, this case does not contradict the proposition that attorneys who serve as "experts" can be reached a Section 11 action. Id. at 616.

In this case, Plaintiffs have alleged that Defendants undertook the authorship of the Proxy Materials and consented to being named as having prepared the Registration Statement.  (CAC, ¶129). Further, Plaintiffs have alleged that after accepting the

heightened duty to speak the truth in the Proxy Materials, and co-authoring Proxy Materials which were false and misleading, Plaintiffs have been damaged as alleged in the Complaint.  (CAC, ¶130). As a result, taking Plaintiffs allegations as being true, Plaintiffs have alleged a Section 11 claim of the Securities Act against the Dinsmore Defendants upon which relief can be granted.

### C.    Plaintiffs' have Alleged a Section 10(b) Claim Upon Which Relief Can be Granted.

This Court has already alleged that Plaintiffs have adequately plead their Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. §78(j)b and S.E.C. Rule 10b-5, 17 C.F.R. §240.10b-5 claim against the Dinsmore Defendants.  The Dinsmore Defendants largely do not provide any new arguments to counter these allegations. Rather, Defendants Dinsmore and Roe largely repeat arguments which have been made by others and rejected by this Court. As stated above, the most troubling and surprising argument Defendants make is that the specific allegations of Plaintiffs' CAC are not material.  Since the issue of the sufficiency of the pleading of materiality was previously decided by this Court by order of July 25, 2001, and since Plaintiffs' allegations in the CAC have been plead with even greater specificity than the allegations of the original complaint, Plaintiffs are unsure as to why the Dinsmore Defendants have taken these positions. However, Plaintiffs will do their best to respond to these questionable arguments.

In order to state a claim pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. §78(j)b and S.E.C. Rule 10b-5, 17 C.F.R. §240.10b-5 (hereinafter "Section 10(b)"), a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon

which the plaintiff justifiably relied and which proximately caused the plaintiff's injury.

*In re Comshares, Inc. Securities Litigation*, 183 F.3d 542, 548 (6th Cir. 1999). In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 475-76, 97 S.Ct. 1292 (1977), the United States Supreme Court stated that:

> [The] cases forcefully reflect the principal that "[§] 10(b) must read flexibly, not technically and restrictively" and that the statute provides a cause of action for any plaintiff who "suffer[s] an injury as a result of deceptive practices touching its sale [or purchase] of securities. . . .,"

Id. Although the Plaintiffs have met all four elements for their claim under Section 10(b) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5 claim against the Dinsmore Defendants in this action, the Dinsmore Defendants do not challenge all four of these elements. As a result, Plaintiffs will interpret the Dinsmore Defendants' argument to mean that the reliance and damages elements are not at issue, and concentrate the majority of their response to the materiality and scienter elements of the 10b-5 claim.

### a.    Attorneys Can be Liable for a Section 10(b) Claim

The Dinsmore Defendants qualify as individuals who can be liable under a Section 10(b) claim for material misstatements or omissions. Although attorneys are not usually liable under the federal securities laws because they normally merely provide professional services, this does not mean that they are never liable for such claims. *Riedel v. Acutote of Colorado*, 773 F.Supp. 1055, 1065 (S.D. OH 1991). In particular, Section 10(b) applies to lawyers engaging in fraudulent conduct. *Huddleston* at 386-387 and n.22. Preparation of a prospectus constitutes participation in a securities sale which invokes Section 10(b)'s anti-fraud provisions. *Molecular Technology Corp. v. Valentine*, 925 F.2d 910 (6th Cir. 1991).

In *Molecular Technology*, the Sixth Circuit held that a buyer of securities showed facts sufficient to establish a Rule 10b-5 violation where the seller's attorney knowingly prepared a securities-offering circular that contained misleading statements, without disclosing to prospective purchasers certain material facts necessary to make the circular not misleading. Id. In reversing the district court's judgment in favor of the seller, the Sixth Circuit emphasized that the test for reasonable reliance is the absence of recklessness, and concluded that where a buyer has no special knowledge of the facts misrepresented by the seller (or his agent), no actual access to information that would have revealed the fraud, and no personal knowledge of the seller prior to the transaction at issue, the buyer cannot be deemed reckless in relying on misrepresentations made by the seller's attorney.   Id.

Similarly, in *Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263 (6th Cir. 1998), a lawyer touted his client's securities to prospective investors, failing to mention the company's banking default. Id. at 268.  When the company filed for bankruptcy, the investors sued it as well as the lawyer for securities fraud. Id. Sitting *en banc*, the Sixth Circuit disagreed with the panel majority opinion that had found no duty of disclosure under Rule 10b-5. Concluding that the lawyer was under a duty not to omit material facts, the Sixth Circuit noted:

> In sum, while an attorney representing the seller in a securities transaction may not always be under an independent duty to volunteer information about the financial condition of his client, he assumes a duty to provide complete and non-misleading information with respect to subjects on which he undertakes to speak.

Id. As amply stated by the Seventh Circuit in *Ackerman v. Schwartz*, 947 F.2d 841, 848 (7th Cir. 1991), under Rule 10b-5, 17 C.F.R. §240.10b-5, the lack of an independent duty

does not excuse a material lie. Id.  In the case of omission or nondisclosure of material facts, the element of reliance on the part of the buyers may be presumed. *Molecular Technology Corp. v. Valentine*, 925 F.2d 910, 918 (6th Cir. 1991). Positive proof of reliance is not a prerequisite to recovery in a failure-to-disclose case. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154, 92 S.Ct. 1456 (1972).

In *Rubin*, the attorneys raised several arguments in an attempt to eliminate their liability in the case. The one which the Sixth Circuit was the least persuasive was that that attorneys should be treated differently from other defendants in securities-fraud cases. Id. at 269.  In *Rubin*, the attorneys argued that they were different because they already had an obligation of confidentiality based upon their duties as an attorney. In response the Sixth Circuit quite correctly retorted that "It is perhaps symptomatic of the current debate over the state of legal ethics that the defendants would invoke the attorney's duty of confidentiality to justify what, if Rubin's and Weiss's affidavits are correct, amount to outright lies." Id. In any event, the Sixth Circuit concluded that the mere fact that one party generally may not be entitled to rely on the advice of counsel for another party is an insufficient reason to ignore the statutory rule prohibiting "any person" -- not excepting lawyers -- from making material misrepresentations in connection with the sale of securities. Id. at 269-270.

Thus, pursuant to *Rubin* and *Molecular Technology,* the Dinsmore Defendants, as attorneys, can be liable under a Section 10(b) claim for material misstatements or omissions made in relation to their preparation of the Proxy Materials.

17

**b.    The Material Misstatements and Scienter Elements of a 10(b) Claim Must be Pled in Accordance with the Private Securities Litigation Reform Act**

Plaintiffs' Section 10(b) claim meets the requirements of Fed.R. 9(b) and the PSLRA. While Fed. Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA") are often considered interchangeable in relation to claims of securities law, a plain reading of the two provisions shows they are in fact quite different. *In re Initial Public Offering Sec. Litigation*, 241 F. Supp.2d 281, 334 (S.D. NY 2003). The PSLRA and Rule 9(b) both apply to claims of securities fraud, but never at the same time to the same elements. Id. at 335. PSLRA requires that the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. Congress intended that the PSLRA supersede the Federal Rules only as to those elements which the PSLRA explicitly mentions: scienter and material misstatements and omissions. Id. See S. Rep. No. 104-98, at 15. In all other respects, the Federal Rules are to govern these pleadings. Id. As a result, Federal Rule 9(b) governs the pleading of the remaining elements of the claims: loss causation, reliance and damages. Id.

However, since the PSLRA pleading standard does now require a heightened pleading standard, the plaintiff must now also plead facts giving rise to a "strong inference" of scienter. Id. at 553. This does not mean alleging facts giving rise to "a strong inference of knowing misrepresentation or intent." *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542 (6th Cir. 1999). In *In re Comshares, Inc.*, the Sixth Circuit stated that the "required state of mind" for the scienter element is defined as follows:

> We conclude that plaintiffs may plead scienter in § 10b or Rule 10b-5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud. Consequently, we must reject the reasoning of the district court to the extent it concluded that plaintiffs must "plead specific facts that create a strong inference of knowing misrepresentation on the part of the defendants" in order to establish a defendant's scienter in a securities fraud case brought under § 10(b) or Rule 10b-5.

Id. at 549.  Thereafter, in *Helwig v. Vencor,* 251 F.3d 540, 553 (6th Cir. 2001), the Sixth

Circuit provided the following definitive explanation as to the meaning of a "strong

inference":

> "Inferences must be reasonable and strong--but not irrefutable. "Strong inferences" nonetheless involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact. Plaintiffs need not foreclose all other characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder. Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences.

Id.

### c.     Plaintiffs Adequately Pled That the Proxy Materials Contained Material Misstatements or Omissions

The objective in relation to proxy materials is to provide the shareholder with full

disclosure of the facts regarding the transaction. The objective of full disclosure can be

fully achieved only by complete revelation of facts that would be material to the

sophisticated investor or the securities professional not just the average common

shareholder. *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 566 (E.D.

NY. 1971). But, at the same time, the prospectus must not slight the less experienced.

They are entitled to have within the four corners of the document an intelligible description of the transaction. Id.

"An omission or misrepresentation is material if there is a substantial likelihood that a reasonable investor would have viewed the omitted or misrepresented fact as having significantly altered the total mix of information available." *Thiemann v. OHSL Financial Corp.*, No. C-1-00-CV-793, (S.D. OH 2001). *Feit,* 322 F.Supp. at 569 (The basic test of "materiality" is whether "reasonable man" would attach importance to the fact misrepresented in determining his choice of action in the transaction in question). Material facts include not only information disclosing the earnings and distributions of a company but also those facts that affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities. *Feit,* 322 F.Supp. at 570 citing *Kohler v. Kohler*, 319 F.2d 634, 642 (7th Cir. 1963). A fair summary of the rule stated in terms of probability is that a fact is proved to be material when it is more probable than not that a significant number of traders would have wanted to know it before deciding to deal in the security at the time and price in question. *Feit,* 322 F.Supp. at 571. What is statistically significant will vary with the legal situation. Id. However, being a formal and legally required document, a prospectus must satisfy a high standard of disclosure-- i.e., disclosure is required when only a relatively small percentage of traders would want to know before making a decision. Id. Anything in the order of 10 percent of either the number of potential traders or those potentially making 10 percent of the volume of sales would seem to more than suffice. Id.  In non-quantitative terms a fact is "material" in a registration statement whenever a rational connection exists between its disclosure and a viable alternative

course of action by any appreciable number of investors. Id. Consequently, materiality is a question of fact to be determined in the context of a particular case. Id.

In the present case, this Court has already once concluded that the Plaintiffs alleged misrepresentations and omissions by the Dinsmore Defendants which were misleading and material. The representation that "Your Board of Directors unanimously approved the transaction and believes that it is in the best interests of the OHSL stockholders" can only logically be interpreted in one way: that not only was the approval for the transaction unanimous, but also the belief that the transaction was in the best interests of the OHSL stockholders.  This is misleading and material in two main ways.  First, it falsely gave the shareholders the impression that the entire eight member board voted in favor of the merger.  This was not true.  Shareholders were not informed that Director Tom Herron submitted his resignation effective July 30, 1999, only five days after voting against continued negotiations with Provident and only three days before the August 2, 1999 vote regarding the merger, and after he personally called each OHSL director to personally tell each one that he was resigning because he opposed the merger. (CAC, ¶¶50, 51).  The shareholders were also not informed that the Chairman of the Board, Norbert Brinker, who had previously voted in favor of the merger, changed his vote to abstain during the vote on August 2, 1999, and that OHSL's CEO, board member, and largest shareholder Ken Hanauer voted as a director in favor of the merger because he just gave up. (CAC, ¶55). Finally, the shareholders were not informed that Director McKiernan was not present at the meeting because he was out of the country at the time of the vote.  (CAC, ¶53). If there was one abstention or one person not present during the vote, there cannot be a unanimous vote.  As a consequence, and as this Court had

previously held, it was false and misleading to state in the Proxy Materials that there was a unanimous vote. (*See*, Expert Report of William Lutz, Attached as Exhibit C).

This statement was also misleading and material in that it falsely gave the impression that all eight of the directors "believed" that the merger was in the best interest of the company. The actions of some of the board members indicated differently. First, Kenneth Hanauer, the CEO of OHSL, and the largest shareholder of OHSL, did not vote his personal shares in favor of the merger.[2] (CAC, ¶55). If he believed that the merger was in the best interest of the shareholders, why would he vote his own shares against the merger? And wouldn't other OHSL shareholders want to know that the CEO, board member, member of management, and OHSL's largest shareholder, did not believe that the merger was in the best interest of OHSL shareholders and voted his personal shares against the merger? Defendant Roe, an expert in mergers and acquisitions charging OHSL $325.00 per hour, was aware of Mr. Hanauer's opposition to the merger, as was Defendant Hertlein.[3] The other Dinsmore Defendants also had actual or constructive knowledge of this fact prior to the August 2, 1999 meeting. However, despite this knowledge, the Dinsmore Defendants did nothing to change the presentation to the OHSL shareholders that the directors were unified in their belief that the merger was in the best interest of the shareholders. (*See*, Expert Report of Candace Preston, Attached as Exhibit A).

---

[2]    Other acts or factors which evidenced his belief that the merger was not in the best interests of the shareholders were as follows: (1) The fact that Mr. Hanauer voted in favor of the merger because he received a contract specifying that he would receive $375,000 in the event of a merger or other change in control of OSHL, and because he just "gave up" the fight. (Hanauer dep. pp. 764, (CAC, ¶55); and (2) The fact that Mr. Hanauer refused to sign the cover letter to the Proxy Materials that was distributed to the shareholders when his signature and Mr. Brinker's signature had previously jointly appeared on all such communications to the shareholders in the past.

[3]    However, he was not the only one with this knowledge. James Burke, Esq. of defendant Keating, Muething & Klekamp, P.L.L. stated in an article in the Cincinnati Business Courier that Mr. Hanauer was opposed to the merger. (Attached as Exhibit D).

In response, the Dinsmore Defendants argue that Mr. Hanauer has testified that he did not think that Proxy Materials contained any material omissions or misstatements. However, this argument is without merit for two reasons. First, as stated above, it is this Court and not Mr. Hanauer that makes a determination regarding the materiality of misstatements or omissions. Second, the Dinsmore Defendants are concentrating on the first half of Mr. Hanauer's deposition testimony to the exclusion of the second half. During the second half of the deposition, Mr. Hanauer stated the following about his understanding or knowledge or the term material, "To be very specific, I do not know what makes up material versus immaterial." (Hanauer dep. p. 802). However, he did clearly indicate that there were numerous factual errors in the Proxy Materials which, in hindsight, he would have corrected.

In response to the issue of unanimity of the vote by the board of directors, Mr. Hanauer replied as follows: "As I---as I mentioned, from a legal standpoint, the term unanimously here is obviously causing you and probably is causing other folks difficultly." (Hanauer deposition, p. 761). He stated that the term "unanimously should have been stricken from this document" and that the page containing this misstatement should have been read and reread at all levels. (Hanauer deposition, p. 762). Similarly, in relation to Mr. McKiernan not being present at the August 2, 1999 meeting, Mr. Hanauer stated that "Again, it is, it is a misstatement, as you pointed out, that Mr. McKiernan was not there." Id. Finally, in relation to Mr. Brinker's abstention from voting, he stated that he would stipulate that if he had known that he had abstained from voting, he would have put that in the Proxy Materials. (Hanauer dep., p. 779). In particular, he also stated:

> "If it is his [Brinker's] testimony and intent to have abstained, yes. If he purposely, if he purposely did not vote, then I believe that should have been disclosed."

(Hanauer, dep., p. 757).

The second material misstatement or omission made by the Dinsmore Defendants was their failure to disclose to the OHSL shareholders in the Proxy Materials that Thomas Herron had resigned in protest effective three days prior to the August 2, 1999 merger vote.[4] In his deposition, when asked if her resigned in protest, Mr. Herron stated: "Protest, of course, is just an expression of disapproval. And in that sense, I certainly resigned in protect." (Herron Deposition, p. 61). This is further illustrated by the fact that Mr. Herron chose not to profit from a transaction in which he did not believe. Mr. Herron had the opportunity to exercise stock options that would have paid him tens of thousand dollars, as well as receive $900/month for 24 months for serving in the entirely honorific role of a Provident "advisory director." However, he honorably opted to forego this payment since he did not want to be associated with Provident. This conduct is obviously in conflict with approval of the merger, and would have been information both the sophisticated and unsophisticated investor would have wanted to know prior to voting on the merger.

Furthermore, in relation to the omission of the resignation of Mr. Herron, Mr. Hanauer testified that he and/or other members of the Board of Directors wanted to clarify this issue, but were instructed by Defendant Roe not to do so. (Hanauer dep. p.

---

[4] The Dinsmore Defendants have stated that Mr. Herron resigned because he was moving to South America and would be unable to attend board meetings. However, he did not move. Further, it is difficult to understand why Mr. Herron would have to resign for an inability to attend board meetings when these board meetings would no longer occur if the merger took place and OHSL was no longer in existence.

779-780).  When Mr. Hanauer was asked whether or not more information should have

been disclosed about Mr. Herron's resignation, Mr. Hanauer responded in part as follows:

> "We disclosed, albeit in a somewhat of a left-handed format, that he was
> not on the, on the Board, because he's not listed as a Board member. Did
> we disclose that Mr. Herron several days before the vote was taken,
> tendered his resignation?  We did not.  That is something that was brought
> up with our legal counsel and they felt that it should stay out of the
> document and we left it out.  That's something I broached with him and he
> said leave it out and we did not dwell on that.  It's immaterial to the
> transaction, his opinion. And that's what we did."

(Hanauer dep., p. 779-780).  However, when Mr. Hanauer was asked about this statement

regarding materiality, he replied that: "Cliff said it's immaterial. I didn't say that."

(Hanauer dep. p. 780).

　　　　The Dinsmore Defendants make the argument that they were in a "no win"

situation in relation to the date picked for the table. They argued that Plaintiffs were upset

that the directors used a date for the table which came a day after Mr. Herron resigned

from the Board of Directors, but that the Plaintiffs would have been upset if they had

used an earlier date for the table since it would have been a misrepresentation  to have

listed Mr. Herron as a director when he had subsequently resigned.  (Motion to Dismiss,

p. 8).  It is rather sad that the Dinsmore Defendants have become so adept at trying to

disguise the truth, that they do not see the perfectly obvious third option: list Mr. Herron

as a member of the board of directors, but place a notation or footnote by his name which

indicated that he resigned effective July 30, 1999.  Then any date could have been used,

and would have accurately reflected the status of Mr. Herron.

　　　　Further, the Dinsmore Defendants also argue that there was no prejudice to the

shareholders because they could have determined that Mr. Herron had resigned by

comparing the Director list published in the proxy materials with the Director list

published in OHSL's 1999 10-K Annual Report, published a few months earlier[5].
(Motion to Dismiss, p. 8, n.3). Once again, this illustrates how much the Dinsmore
Defendants have lost touch with the true purpose of Proxy Materials.  The Proxy
Materials at issue stated that its purpose was to "more fully describe the proposed
transaction" which is "the proposed acquisition of OHSL by Provident Financial Group,
Inc." (Letter from Norbert G. Brinker to Stockholders). The writer of the proxy materials
bears the burden of clear communication.  (Plaintiffs' Exhibit C, Preliminary Report of
William Lutz, Ph.D., J.D.)    A shareholder should never have to piece together the
meaning of the Proxy Materials by searching and including information from other
sources. (Plaintiffs' Exhibit C, Preliminary Report of William Lutz, Ph.D., J.D.)  Such a
situation would indicate nothing less than that the board of directors are trying to keep
information away from the stockholders rather than present them with the information
necessary to render an informed decision.   (Plaintiffs' Exhibit C, Preliminary Report of
William Lutz, Ph.D., J.D.)

   Thus, since this Court has already recognized that the Plaintiffs have successfully
pled two material misstatements and omissions against Dinsmore in the Proxy Materials,
and since only one material misstatement is sufficient to end the materiality inquiry at the
motion to dismiss stage, the Plaintiffs have successfully plead the materiality element of
the 10b-5 claim.

---

[5] This is not true, because in describing the negotiations leading up to the merger, the Proxy Materials uses
the phrase "Board of Directors" without mentioning that the composition of the Board changed during the
negotiations because Director Herron resigned in part in protest during this period.  Defendants deliberately
sanitized the Proxy Materials so as not to disclose this fact.

### d. **Plaintiffs' Adequately Pled the Scienter Element of the Section 10(b) Claim**

Plaintiffs' CAC also properly alleged the scienter element of the 10(b) claim. "The PSLRA changed the pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." Id. citing *Lipton* 284 F.3d at 1034, n.12. Interestingly, the PSLRA "nowhere defines what the 'required state of mind' is for any of the kinds of actions that might be brought" under the Securities Act. *In re Baesa Sec. Litig.*, 969 F.Supp. 238, 240 (S.D.N.Y. 1997). However, it has been determined that the PSLRA did not disturb the well-settled understanding that "scienter" is the requisite mental state for liability under Section 10(b) cases. *Ernst & Ernst v. Hoschfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375; *In re Comshares, Inc Securities Litigation* at 550, n.5. In *In re Comshare, Inc. Securities Litigation*, the court stated that pursuant to the PSLRA, the "required state of mind" is defined as follows:

> We conclude that plaintiffs may plead scienter in § 10b or Rule 10b-5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud. Consequently, we must reject the reasoning of the district court to the extent it concluded that plaintiffs must "plead specific facts that create a strong inference of knowing misrepresentation on the part of the defendants" in order to establish a defendant's scienter in a securities fraud case brought under § 10(b) or Rule 10b-5.

Id. at 548-49. Under current Sixth Circuit law, "recklessness satisfies the § 10(b)/Rule 10b-5 scienter requirement." *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1024 (6th Cir. 1979). In *Mansbach*, this Court expressed generally that "recklessness [is] highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known it." Id at 1025.

Similarly, in *Helwig v. Vencor,* the United States Court of Appeals for the Sixth Circuit provided a definitive explanation of the meaning of a "strong inference":

> "Inferences must be reasonable and strong--but not irrefutable. "Strong inferences" nonetheless involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact. Plaintiffs need not foreclose all other characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder. Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences.

251 F.3d at 553.

Finally, motive can help give rise to a finding of the requisite scienter. In *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 487 (S.D. OH 2000), this Court stated that the Sixth Circuit's point with respect to motive and opportunity in *In re Comshares, Inc.* was subtle. Id. at 500, n.8. "The statute requires scienter for liability and not just motive and opportunity; nonetheless, facts showing motive and opportunity may 'on occasion' give use to an inference of scienter." Id.

Thus, to survive a motion to dismiss, plaintiffs are not required to "allege facts giving rise to a strong inference of knowing misrepresentation or intent."    *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542 (6th Cir. 1999). Rather, Plaintiffs are required to plead facts which indicate "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375 (1976).

Based upon the foregoing standards and definitions, the Sixth Circuit has determined that the scienter requirement is met if an attorney knows of the misleading or omitted material information in the proxy materials. *Molecular Technology* at 921. *In re Rospatch Securities Litigation,* 760 F. Supp. 1239, 1249 (W.D. MI 1991) citing *SEC v.*

*Frank*, 388 F.2d 486, 489 (2nd Cir. 1968). The silence of a law firm or other professional entity, however, does not imply scienter. *Baker v. Henderson, Franklin, Starnes &* Holt, 797 F.2d 490, 497 (7th Cir. 1986). Without direct evidence or motive to engage in fraud, such an inference cannot be supported. *See*, e.g., id. (charges of fraud are "inconceivable" because a law firm and an accounting firm received no proceeds or fees from securities sales to plaintiff). In *Baker,* the Seventh Circuit stated that if the plaintiff does not have direct evidence of scienter, the court should ask whether the fraud (or cover-up) was in the interest of the defendants. "Did they gain by bilking the buyers of the securities?" Id. at 497.

In the present case, Plaintiffs have met the pleading requirements of the PSLRA as to scienter element of the Section 10(b) claim. As stated above, it has already been established by this Court and Plaintiffs' Memorandum that the statements in the Proxy Materials were material misstatements or omissions. The Dinsmore Defendants acted recklessly by disregarding their actual knowledge of these material misstatement or omissions when preparing the Proxy Materials. In fact, defendant Roe of Dinsmore had detailed discussions with OHSL CEO Hanauer, in which Hanauer referred to a marked up version of the Proxy Materials in his own handwriting and discussed these issues with Roe. Not a single thing was changed as a result of these discussion. (*See*, Proxy Materials with Hanauer's handwriting, Attached as Exhibit E). Any reasonable man or woman would know that it is reckless—and untrue--to state that the vote in support of the merger was unanimous when one director was not present, one abstained from voting, and one resigned in protest a few days before the vote. *Bovee, et al. v. Coopers & Lybrand, et al.*, 272 F.3d 356 (S.D. Ohio 2002) citing *In re Comshares*, 183 F.3d at 550.

These allegations give rise to a "strong inference" that the Dinsmore Defendants acts with a mental state embracing an intent to deceive, manipulate or defraud. This is the most probable of the competing inferences, and is further supported by the evidence of motive in this action. The Dinsmore Defendants benefited from the misrepresentations and omissions by earning substantial legal fees from PFGI's purchase of OHSL for the authorization of the operative documents and its usage in the acquisition by Provident. (CAC, ¶149).  Although the Dinsmore Defendants argue that receiving fees is not a motive for fraud, as stated above, other courts have decided differently. Although a motive without evidence can be insufficient to find scienter, it is a definitely a factor which can be considered in conjunction with the other evidence required by the courts.

Thus, since Plaintiffs have successfully pled the first two elements of the Section 10(b) claim, and since the element of reliance on the part of a buyer may be presumed in the case of an omission or nondisclosure of material facts, the Motion to Dismiss the Section 10(b) claim must be denied as to Plaintiffs' Section 10(b) claim. *Molecular Technology Corp. v. Valentine*, 925 F.2d 910, 918 (6th Cir. 1991).

**D.    Plaintiffs Timely Filed their Section 10(b) Claim Against Defendant Hertlein.**

The Section 10(b) claim alleged as to Defendant Hertlein was timely filed. The statute of limitations is an affirmative defense, for which the defendant bears the burden of proof.  *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1118 (W.D. Mich. 1996). Plaintiffs are not required to negate the affirmative defense of the statute of limitations in their Complaint; it is defendants' burden at all stages of the litigation. Id. (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). For this reason, it is generally inappropriate to address the statute of limitations on a motion on the papers--

particularly when the defense is that plaintiffs should have discovered the facts underlying their claim. *Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533, 537 (M.D. Fla 1997) citing (*Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567, 1572 (11th Cir. 1990)). However, if this Court decides to do so at this juncture, then the facts of this case show that Plaintiffs have met the statute of limitations for their 10(b) cause of action against Defendant Hertlein.

Sections 10(b) is not subject to an express statute of limitations because it was judicially created. *Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333, 338 (6th Cir. 1994). However, the Supreme Court has applied the one-year statute of limitations and three-year statute of repose to said claims as set forth in §9(e) of the Exchange Act, 15 U.S.C. §78i(e), to §10(b). *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). This limitations period is triggered when the defendant "commits the act that gives rise to liability under §10(b)." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 604 (S.D. OH 2003)(internal quotations omitted).

In 2002, the Sarbanes-Oxley Act expanded the applicable periods of limitation and repose to two years and five years. In particular, on July 30, 2002, Congress amended § 1658 by designating the quoted language as subsection (a) and adding subsection (b) which provides:

> Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 15U.S.C. 78c(a)(47)), may be brought not later than the earlier of --
>
> > (1) 2 years after the discovery of the facts constituting the violation; or
> >
> > (2) 5 years after such violation.

Id.; 28 U.S.C. §1658(b). The language of the Sarbanes-Oxley Act directly mirrors Section 10(b) which provides the private causes of action for securities fraud. As a result, unlike a Section 11 claim, the Sarbanes-Oxley Act is directly applicable to Plaintiff's Section 10(b) claim against Defendant Hertlein claims such that it extends the applicable statute of limitations to two years and statute of repose to five years.

Plaintiffs claims against Defendant Hertlein were timely filed because Plaintiffs were not on inquiry notice of his conduct until December 17, 2001. The discovery of the act or omission is based upon an inquiry notice. *New England Heathcare Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495 (6th Cir. 2003). Knowledge of suspicious facts merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud. Id. at 501; see also *Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239, 262 (3rd. Cir. 2001)(facts must alert investor to "probability that misleading statements or significant omissions had been made"); *Fujisawa Pharmaceutical Co., Ltd. V. Kapoor*, 115 F.3d 1332, 1335 (7th Cir. 1997)("[F]acts constituting [inquiry] notice must be sufficiently probative of fraud--sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated--not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit."). The Sixth Circuit found that this rule reflected an appropriate balance between "the staunch federal interest in requiring plaintiffs to bring suit promptly . . . and the equally strong interest in not driving plaintiffs to bring suit . . . before they are able, in the exercise of reasonable diligence, to discover the facts necessary to support their claims." Id. at 501.

Courts have also routinely held that the issue of inquiry notice is a factual matter to be resolved by the jury. *See, e.g., Trust v. United States*, 77 F.3d 483, ** 3 (6th Cir. 1996)("A determination of inquiry notice is a question of fact.")(citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-402 (1990)); *See also, Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 367 (7th Cir. 1997)("Whether a plaintiff had sufficient facts to place him on inquiry notice of claim for securities fraud under S.E.C. Rule 10b-5 is question of fact."); *Young v. Lepone,* 305 F.3d 1, 9 (1st. Cir. 2002)("In the archetypical case. . ., it is for the fact finder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice.")   While, in certain circumstances, inquiry notice may be found as a matter of law, this is so only in "extreme circumstances," *Blatt v. Merrill Lynch,* 916 F. Supp. 1343, 1356 (D.N.J. 1996), where "the uncontroverted evidence irrefutably demonstrates when the plaintiff discovered or should have discovered the fraudulent conduct."  *In re Nivram Corp. v. Harcourt Brace Jovanovich,* 840 F. Supp. 243 (S.D.N.Y.).  Plaintiffs submit that the determination of whether Plaintiffs were on inquiry notice in relation to Defendant Hertlein's conduct is a matter of factual determination reserved for a jury. However, if this Court disagrees, there is still ample evidence before this Court to determine that Plaintiffs were not on inquiry notice until December 17, 2001, and that Plaintiffs' claims against Defendant Hertlein were timely filed.

The original complaint was filed on September 20, 2000. (Doc. No. 1). Defendant Hertlein was not named in that Complaint, but was named in the First Amended Complaint filed on February 4, 2002. Although the Dinsmore Defendants argue that Plaintiff were not granted leave of court to file this First Amended Complaint,

this argument is yet another example of how the Dinsmore Defendants attempt to manipulate the truth. [6] The Dinsmore Defendants also argue that Plaintiff Thiemann was put on inquiry notice as to the allege facts giving rise to the Section 10(b) claim against Defendant Hertlein as early as the state court action in 1999. However, this is not the case. The 1999 action was merely a state court action which did not even involve any securities claims. Plaintiffs only began to develop some of the information that comprises the allegations in original Complaint during this action. Plaintiffs did not learn of any suspicious facts regarding Defendant Hertlein which would have necessitated a further investigation of him at that time. There was no evidentiary basis to sue defendant Hertlein at that time, and plaintiffs exercised admirable restraint in waiting until they had direct evidence of Hertlein's actual knowledge of and participation in the fraud. (*See*, Deposition of Hertlein, Attached as Exhibit F).

Next, the Dinsmore Defendants argue that Plaintiffs should have been on notice regarding their claims against Defendant Hertelin when they filed their September 20, 2000 Complaint. Once again, Plaintiffs did not have the suspicious facts to justify or necessitate an investigation of Defendant Hertlein at that time.

The Dinsmore Defendants are trying to put Plaintiffs in the unenviable and thankless position of having to sue all possibly related parties so as to protect their right to bring the claim, and then gradually dismiss the parties who should not have been originally named. *New England Healthcare Employees Pension Fund* indicated that this is the very approach that courts are trying to prevent.

---

[6] For a complete explanation of the procedural evolution of this action, *See*, Plaintiffs' Motion for Reconsideration, Doc. No 230.

It was not until December 17, 2001 that Plaintiffs learned of allegations which necessitated claims being brought against Defendant Hertlein. During Defendant Hertlein's deposition, Plaintiffs learned of Defendant Hertlein's association with Pat Condren, OHSL's former Chief Financial Officer. From Mr. Condren, Defendant Hertlein learned that Defendant Hanauer was opposed to the merger, and that he had voted his personal shares against the merger. (CAC, ¶29).

Since the Sarbanes-Oxley Act has extended "applies to all proceedings addressed by this section that are commenced on or after the date of enactment," and it was enacted on July 30, 2002, the Sarbanes-Oxley Act applies to Plaintiffs' claims against Defendant Hertelin. 28 U.S.C. § 1658(b). Thus, since all allegations are to be construed in favor of the Plaintiffs, and Plaintiffs did not learn of the suspicious facts giving rise to the claims against Defendant Hertlein until after December 17, 2001, the claims against Defendant Hertlein should not be dismissed for being untimely filed since they were filed within the two-year statute of limitations set forth in the Sarbanes-Oxley Act.

**E.    Plaintiffs Adequately Pled Claims for Violations of R.C. Sections 1707.41 and 1707.43.**

The Dinsmore Defendants are liable under R.C. § 1707.41 for their participation as agents to the sellers in their preparation of the Proxy Materials. R.C. § 1707.41 provides for civil liability of the seller of securities for fraud. Id. As discussed above, an attorney who prepares portions of a registration statement can be reached by a §11 action if the attorney was acting as an "expert." *Herman & MacLean*, 103 S.Ct. at 690. Similarly, pursuant to *Rubin* and *Molecular Technology,* an attorney can be held liable under the much heightened pleading standard of a 10b-5 claim for preparing proxy materials which contain false or misleading statements. 143 F.3d at 268. Consequently,

the concept is the same in relation to R.C. § 1707.41. As the agent of the seller, the Dinsmore Defendants are also liable to a buyer who suffered a loss as a result of relying upon the falsity of any material statement contained therein or from the omission of material facts. In the present case, this Court has already established that the statements contained in the Proxy Materials are material misstatements or omissions. Further, it has not been disputed that the Plaintiff in this case suffered a loss as a result of relying upon the falsity of any material statement contained therein or from the omission of material facts. Thus, Plaintiffs have adequately plead their R.C. § 1707.41 claim.

Similarly, R.C. §1707.43 gives the purchaser of an unregistered security a remedy for the purchase price of the security against the seller and against every person who has participated in or aided the seller in any way in making such sale or contract for sale. Id. This statute makes such individuals jointly and severally liable to such purchaser, in an action at law in any court of competent jurisdiction. Id. Further, since §1707.43 applies to anyone who "participated in or aided the seller in any way" in a sale violating Ohio's securities laws, this provision is much broader than the parallel federal provision in Section 12(1). This wide-ranging application is typical of most states' securities laws. *Molecular Technology* 925 F.2d at 920, n. 7. (most states' Blue Sky laws do not require scienter).

In *Leeth v. Decorator's Mfg., Inc.* (1979), 67 Ohio App.2d 29, 425 N.E.2d 920, the court provided that an attorney who is an officer of a corporation and who performs the normal duties of an attorney for the corporation must participate in some other manner in the affairs of the corporation, such as the signing of the investment agreement, to be liable under R.C. §1707.43. Based upon issues addressed in *Leeth* and *Hild v.*

*Woodcrest Association* (1977), 59 Ohio Misc.13, 391 N.E. 1047, the Ohio Legislature passed an amendment to the Ohio Securities Act in the form of R.C. §1707.431. This section states that an attorney, accountant, or engineer, whose performance in a transaction is incidental to the practice of their profession, will not be deemed to have "participated" because of that activity.

However, in the present case, the facts alleged indicate that the Dinsmore Defendants did much more than participate in a transaction which was incidental to the practice of their profession. The Dinsmore Defendants did not just review the Proxy Materials, or rely upon the knowledge and information of the OHSL Directors, but rather had their own actual knowledge of the facts and actively participated in its creation. In particular, as stated above, both Defendant Roe and Defendant Hertlein were aware that Mr. Hanauer was opposed to the merger and had voted his personal shares against it. (*See*, Roe Deposition, attached as Exhibit G). (CAC, ¶¶27, 28). Similarly, Defendant Roe edited a portion of the Proxy Materials which had previously indicated who had been involved in the ad hoc committees, their participation and, most importantly, the fact that Mr. Herron had resigned just days before the merger vote and that Hanauer opposed the merger. Finally, Roe discussed with Hanauer the handwritten comments on the Proxy Materials (Exhibit E), but did not make a single change to the materially false and misleading Proxy Materials/Registration Statement. These actions show a recklessness and level of participation in the process that is much greater than merely incidental to the practice of their profession.

Thus, since all facts are to be construed in favor of the Plaintiffs, and it has already been determined by this Court that the Dinsmore Defendants incorporated

materially false misstatements and omissions in the Proxy Materials, the Dinsmore
Defendants' Motion to Dismiss Plaintiffs' R.C. Sections 1707.41 and 1707.43 claims
must be denied.

    **F.**    <u>Plaintiffs Adequately Pled a Spoliation Claim.</u>

       The acts of the Dinsmore Defendants have lead to the spoliation of evidence in
this case. There is no dispute that Defendants Hanauer, Brinker, and Zoellner destroyed
documents relevant to this action after litigation was originally commenced in state court
on November 18, 1999. Mr. Brinker shredded his entire file, Mr. Hanauer destroyed
certain documents he believed to be duplicative, Mr. Zoellner shredded his entire file,
Mr. Tenoever shredded his entire file, Mr. Hillebrand ripped up his entire file, and the
Dinsmore Defendants presumably cannot locate a lavender legal pad which was turned
over to them by Mr. Hanauer. (CAC, ¶177). As a result, the only issue before this Court
is whether or not Plaintiffs' claim has been timely raised. Plaintiffs submit that it has
been timely filed.

       The Dinsmore Defendants argue that Plaintiffs cannot bring the spoliation in the
present case because they had knowledge of this claim during the state court action, but
did not raise the claim until a second action was filed. In support of this argument, the
Dinsmore Defendants largely rely upon *Davis v. Wal-Mart Stores, Inc.* (2001), 93 Ohio
St.3d 488, 756 N.E.2d 657. In *Davis*, the Supreme Court of Ohio stated that "[c]laims for
spoliation of evidence may be brought after the primary action has been concluded only
when evidence of spoliation is not discovered until after the conclusion of the primary
action." Id. at syllabus. However, a further reading of this case indicates that the basis for
this decision was the doctrine of *res judicata*. Id. at 489-490.

The doctrine of *res judicata* is inapplicable to the present case for two reasons.
First, the doctrine of *res judicata* only applies to parties or their privies. *Thirty Four
Corp. v. Sixty Seven Corp.* (1993), 91 Ohio App.3d 818, 826 N.E.2d. 1179. Plaintiff
Thiemann was not a party to the state court action referenced by Dinsmore. Thus, it was
impossible for him to have raised his spoliation claim prior to the present action, and it is
impossible for the doctrine of *res judicata* to bar Plaintiff's spoliation in this action.
Furthermore, as stated above, these two actions are completely different types of cases.
Unlike the previous state court action which involved state law claims, this present
federal action involves securities claims. Therefore, there is not only no overlap of
plaintiffs, but little to no commonality as to the claims involved.

Second, the Ohio Supreme Court has stated that *res judicata* is not a shield to
protect the blameworthy. *Davis,* 93 Ohio St.3d at 491. In particular, the court stated that:

> "The doctrine of res judicata is not a mere matter of practice or procedure
> inherited from a more technical time, but rather a rule of fundamental and
> substantial justice, or public policy and of private peace. As a result, the
> position has been taken that the doctrine of res judicata is to be applied in
> particular situations as fairness and justice require, *and that it is not to be
> applied so rigidly as to defeat the ends of justice or so as to work an
> injustice.*"

Id. citing *Grava v. Parkman Township* (1995), 73 Ohio St.3d 379, 386, 653 N.E.2d. 226.
The Dinsmore Defendants have not disputed that the individuals listed above have not
destroyed their files. Rather, they have the audacity to dismiss the severity of this act.[7]
Not only do the Dinsmore Defendants make no apologies for their failure to instruct their
clients to not destroy their files, the Dinsmore Defendants state in their Motion to

---

[7]    Defendant Keating, Muething & Klekamp, P.L.L. has recognized the seriousness of this matter as
evidenced by its affirmative effort to distance itself from the document destruction by informing this Court
in other memoranda that it was not the counsel who represented the OHSL Defendants at the time that the
shredding occurred.

Dismiss that the "OHSL Directors were free to dispose of whatever they wished" after the completion of the state court action. (Motion to Dismiss, p. 16). Once again the Dinsmore Defendants miss the point. Although this statement was highly disturbing since the Dinsmore Defendants were aware that the state court action was dismissed not because there was no basis for Plaintiffs' claims, but because Plaintiffs had discovered information during the course of that action which necessitated filing a federal action with securities claims, this statement is completely irrelevant because the documents were destroyed <u>during</u> the statute court litigation.

Similarly, the Dinsmore Defendants also too quickly discount the importance and value of the documents which have been already shredded. However, this insults the intelligence of the Plaintiffs and this Court. Mr. Brinker, the chairman of the board of a publicly traded company, put it best when he responded to why he had shredded his file. He replied:

> "Because I didn't want to throw them out as they were, just tear them up and have the papers end up in a dump where they would be whole. **I shredded them so that they couldn't be seen by anybody.**"

(Brinker Deposition, p. 41). It is very convenient for the Dinsmore Defendants to argue that these files are of no importance when no one is able to evaluate them. As a result, the Plaintiffs would submit to this Court that it was precisely because of their importance that they were shredded in unison by the OHSL directors. Thus, since *Davis* and *Williamson v. Rodenberg* (June 30, 1997), Franklin App. No. No. 96APE10-1395 are factually inapplicable to the present action, and since *res judicata* cannot be used as a shield to protect the blameworthy, the Dinsmore Defendants' Motion to Dismiss as to the spoliation claim must be denied.

**G.    Plaintiffs Adequately Pled their Fraud Claim**

Plaintiffs' fraud claim is factually and legally sufficient pursuant to Ohio Civil Rule 9(B).   Common law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas* (2002), 97 Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92 at P24.

For the reasons set forth above pertaining to Plaintiffs' 10b-5 claim, Plaintiffs' fraud claim should not be denied because it states a claim upon which relief can be granted.

**H.    Plaintiffs' Timely Filed Their Common Law Fraud Claim Against
         Hertlein**

Plaintiffs' fraud claim against Defendant Hertlein was not untimely.   R.C. §2305.09 provides a four-year statute of limitations for relief on the ground of fraud. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 181, 546 N.E.2d 206.   The statute begins to run when the plaintiff discovers, or should have discovered, the complained-of injury. *Tri-State Computer Exchange v. Burt* (June 20, 2003), 2003 Ohio 3197, Hamilton App. No. C-020345 at P17.

The Dinsmore Defendants argue that the Plaintiffs' Amended and Consolidated Class Action Complaint was filed on December 31, 2003, more than four years after the attempt to enjoin the merger scheduled for December 3, 1999, and more than four years

beyond the four-year statute of limitations for common law fraud actions under Ohio law pursuant to R.C. §2305.09. However, the Dinsmore Defendants neglect to mention that Plaintiffs first raised claims against Defendant Hertlein in the February 4, 2002 First Amended Complaint which was filed with the permission of Magistrate Judge Hogan. (*See*, Doc. No. 62) As discussed in greater detail above, Plaintiffs did not learn of the facts regarding the fraudulent conduct of Defendant Hertlein until December 17, 2001. As a result, since the December 31, 2003 Complaint was filed within four years of Plaintiffs' inquiry notice regarding Defendant Hertlein's fraudulent conduct, and since the December 31, 2003 CAC relates back to the February 4, 2002 First Amended Complaint pursuant to Federal Rule 15(c), the Dinsmore Defendants' Motion to Dismiss as to the fraud claim against Defendant Hertlein must be dismissed.

**I.    The "Introduction" Should Not be Stricken from Plaintiffs' Amended and Consolidated Class Action Complaint.**

Plaintiffs' Introduction Section should not be stricken from this Complaint because Plaintiff is aware of no federal rule that prohibits the use of a narrative section in a complaint. Plaintiffs incorporated this Introduction because they thought it might provide a concise picture of the numerous parties and complex facts involved in this action. If the Plaintiffs are wrong, they leave this to the discretion of this Court. Plaintiffs respect the directives of this Court unlike the Dinsmore Defendants. Otherwise, they would not have requested that "[t]o the extent that the Introduction contains any factual allegations, the Plaintiffs should be required to separately state those allegations so that Defendants can properly respond." (Motion to Dismiss, p. 19). This flies in the face of this Court's previous Order that "Leave to further amend this complaint shall not be

granted." The Dinsmore Defendants should pay more attention to the orders of this Court, and not insult or waste this Court's time with such requests.

## IV.    CONCLUSION

Thus, for the foregoing reasons, Plaintiffs respectfully request that this Court deny the Motion to Dismiss of Defendants Dinsmore & Shohl, LLP, Clifford Roe, and Charles Hertlein Pursuant to Federal Rules of Civil Procedure 12(b)(6) and the Private Securities Litigation Reform Act of 1995 and Motion to Strike Portions of the Complaint in its entirety.

Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
Attorneys for Plaintiffs and the Class
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097

**CERTIFICATE OF SERVICE**

      This is to certify that a true and accurate copy of the foregoing Plaintiffs' Memorandum in Opposition to Motion to Dismiss of Defendants Dinsmore & Shohl, LLP, Clifford Roe, and Charles Hertlein Pursuant to Federal Rules of Civil Procedure 12(b)(6) and the Private Securities Litigation Reform Act of 1995, and Motion to Strike Portions of the Complaint was served upon the following persons on this 17th day of February, 2004.

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

J. Michale Debbeler, Esq.
John B. Pinney, Esq.
Graydon, Head & Ritchey
511 Walnut Street, Suite 1900
Fifth Third Center
P.O. Box 6464
Cincinnati, Ohio 45202-3157

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202

**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

James E. Gauch, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

Stephanie A. Hite

44