# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, | : | Case No. C-1-00-793 |
| on behalf of himself and of | | |
| all others similarly situated, | : | Judge Sandra S. Beckwith |
| Plaintiff, | : | Magistrate Judge Hogan |
| vs. | : | **Oral Argument Requested** |
| OHSL Financial Corporation, et al. | : | |
| Defendants. | : | |

---

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE KMK DEFENDANTS' SO-CALLED MOTION TO DISMISS (DOC. NO. 256)

### *UBI JUS IBI REMEDIUM*

**GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
513 221 8800 telephone
513 221 1097 fax

# TABLE OF CONTENTS

I.      **INTRODUCTION**                                                                      2

II.     **COUNTER-STATEMENT OF FACTS**                                            7

III.    **SUMMARY OF POINTS MADE AND PRIMARY AUTHORITIES
        RELIED ON SUBMITTED PURSUANT TO LOCAL RULE 7.2(A)(3)**         9

        1.  Motion to Dismiss Standard                                                  9

        2.  Convert Motion to Dismiss to Motion for Summary Judgment       10

        3.  Plaintiffs Section 11 and 10(b) Claims are Not Barred by Applicable
            Statue of Limitations                                                       11

        4.  Plaintiffs' Section 11 and 10(b) Claims are Not Time-Barred by the Applicable
            Statute of Repose                                                           14

        5.  Plaintiffs have Sufficiently Pled Their Section 11 Claim               15

        6.  Plaintiffs have met the Scienter Element of a Section 10(b) Claim    16

        7.  Plaintiffs Adequately Pled their Common Law Fraud Claim           17

IV.     **LMK'S ROLE IN THE MERGER AND THE CAC ALLEGATIONS**         18

        1.  KMK's Role in the Merger was to Make Sure the Merger Closed
            at all Costs                                                                 18

        2.  The Facts Against KMK are Adequately Pled                            19

V.      **THE KMK MOTION TO DISMISS SHOULD BE STRICKEN**              20

VI.     **THE KMK MOTION TO DISMISS IS A DISGUISED MOTION
        FOR SUMMARY JUDGMENT PURSUANT TO RULE 56**                   21

        1.  The Defendants Ask that the Case Be Dismissed Based Almost Exclusively
            on Testimony from Another Case in Another Court that Did Not Assert
            Securities Claims                                                           21

            A.  KMK Incorporates by Reference the Arguments of Other Defendants    21

            B.  The Weiss Testimony                                                    23

2.  When a Motion for Summary Judgment Masquerades as a Motion
    to Dismiss The Court Must Provide Notice and a Full and Fair Opportunity to
    Respond                                                                    24

VII.  **THE CASE AGAINST KMK IS NOT TIME BARRED**                              26

1.  The Statute of Limitations in an Affirmative Defense Raising Factual
    Questions That Must Be Resolved by a Jury                                  26

2.  Claims Against KMK Relate Back to the Filing of the Original Complaint     27

VIII.  **CONCLULSION**                                                         28

# TABLE OF AUTHORITIES

*Arizona v. California*, 460 U.S                                                                20

*In re ARM Financial Group, Inc. Securities Litigation* 2002 WL 1586397          27

*In re Arm Financial,*  2002 U.S. Dist. LEXIS 13451                                      14

*Basic, Inc. v. Levinson*, 485 U.S. 224                                                       17

*Blatt v. Merrill Lynch*, 916 F. Supp. 1343                                               14, 27

*Bovee v. Coopers & Lybrand*, 216 F.R.D. 596                                            12

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384                                       13, 26

*Dayco Corp .v. Goodyear Tire & Rubber*, 523 F.2d 389, 393 (6th Cir. 1975)       25

*In re Enron Securities Litigation*, 235 F. Supp. 549 (S.D. of Texas, 2002).       24

*Fischler v. AmSouth BanCorporation*, 971 F. Supp 533                             11, 26

*Fleishfresser v. Directors of School Dist. 200*, 15 F.3d 680                         10

*Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333                                 12

*Fujisawa Pharmaceutical Co., Ltd. V. Kapoor*, 115 F.3d  1332                     13

*Goldman v. Belden*, 754 F.2d 1059                                                            17

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980)                                              11

*Helwig v. Vencor*, 251 F.3d 540                                                                17

*Herman & MacLean v.* Huddleston, 459 U.S. 375                                      16

*Hildebrand v. Board of Trustees*, 607 F.2d 705                                         10

*Hishon v. King & Spaulding*, 467 U.S. 69                                                  9

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991)    12

*Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017                                16

*Marks v. CDW Computer Centers, Inc.* 122 F. 3d 363                13, 26

*Mathews v. Kidder, Peabody & Co., Inc.*, 260 F.3d 239            13

*Miller v. American Heavy Lift Shipping*, 231 F. 3d. 242          28

*Morin v. Turpin*, 778 F.Supp. 711 (S.D.N.Y. 1991)               14

*New England Heathcare Employees Pension Fund v. Ernst & Young, LLP*,
336 F.3d 495                                                      13

*In re Nivram Corp. v. Hartcourt Brace Jovanovich*, 840 F. Supp. 243    14, 27

*Papasan v. Allain*, 478 U.S 265                                 9

*Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101    11, 26

*Rubin, v. Scottenstein Zox & Dunn*, 143 F. 3d 263              24

*Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434             9

*Scheuer v. Rhodes*, 416 U.S. 232                               10

*Smith v. Duff & Phelps, Inc.* 891 F.2d 1567                    11, 26

*State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas*
(2002), 97 Ohio St.3d 69                                         18

*Trust, v. United States*, 77 F. 3d 483 (6th Cir. 1996)       13, 26

*United Bhd. Of Carpenters & Joiners, Dresden Local No. 267 v. Ohio
Carpenters Health and Welfare Fund, 926 F.2d 550*               25

*Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429    10

*Yancos v. Lake County*, 953 F. Supp. 187                       9

*Young v. Lepone*, 305 F. 3d 1                                   14, 26

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann,<br>on behalf of himself and of | : | Case No. C-1-00-793 |
| all others similarly situated, | : | Judge Sandra S. Beckwith |
| Plaintiff, | : | Magistrate Judge Hogan |
| vs. | : | **Oral Argument**<br>**Requested** |
| OHSL Financial Corporation, et al. | : | |
| Defendants. | : | |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO THE KMK DEFENDANTS'
### SO-CALLED MOTION TO DISMISS

> *There is nothing special about Barnhart's status as an attorney that negates his Rule 10b-5 duty to disclose, a duty that ordinarily would devolve under Rule 10b-5 upon a third party under these circumstances....*
>
> *An accountant or lawyer, for instance, who prepares a dishonest statement is a primary participant in a violation even though someone else may conduct the personal negotiations with a securities purchaser. A person undertaking to furnish information which is misleading because of a failure to disclose a material fact is a primary participant.*

*Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, at 267  (Sixth Cir. *en banc*, 1998) (internal citations omitted) (emphasis added)

## I.    INTRODUCTION

This is a case about corporate suffrage, about the rights of shareholders of a public company to vote to merge or not to merge based on accurate, truthful, and complete information.  But the materially false and misleading Proxy Materials/Registration Statement did not disclose even a hint of dissent.  It is a document carefully crafted—by KMK—to mislead the shareholders, and it did, in fact mislead the shareholders.  (*See*, Expert Report of William Lutz, Attached as Exhibit A).

Here, a change in the vote of a mere 63,000 shares would have stopped the merger that plaintiffs seek be undone, and lead plaintiff Walter W. Thiemann, who voted his 40,000 shares in favor of the merger, based on the materially false and misleading Proxy Materials/Registration Statement, has alleged and submitted affidavits that had he known the true facts, he would have voted his shares against the merger.  This means that the change in vote of a mere 23,000 shares would have had the effect of having the merger voted down.  (*See*, Expert Report of Candace Preston, Attached as Exhibit B).  Had the following facts been disclosed, it is clear to a reasonable degree of business certainty that the fraudulently induced merger would not have been approved:

1. That former OHSL CEO, Board member, COB designate, and by far its largest shareholder had voted his personal shares against the merge and—contrary to the Proxy Materials/Registration Statement—did not believe the merger was in the best interests of OHSL shareholders.

2. That Hanauer changed his vote from abstain to in favor of not because he believed in the merge, but because he just gave up.

3. That contrary to the Proxy Materials, former OHSL Chairman Norbert Brinker changed his vote from in favor of to abstain and thus did not vote to approve the merger.

4. That former OHSL director Thomas M. Herron, whose father had long served on the OHSL Board, and whose family had been associated with OHSL for decades, voted against continued negotiations with Provident, resigned from the OHSL Board a mere three days before the final vote on the merger with Provident, voted his shares against the merger (by not voting) and, although it was obvious, called each director to inform him of his opposition to the merger the day he resigned (or shortly thereafter, in the case of OHSL director Thomas McKiernan, who was out of the country).

5. That former OHSL director Howard Zoellner changed his vote from against the merger of to in favor of the merger in a matter of days.

6. That Provident stock was materially overvalued by approximately $17 million due to "off the books accounting," similar to Enron, making the merger a $40 million transaction instead of a $57 million deal.

7. That only half of OHSL's management was in favor of the merger.

8. The risk of Provident's securitizations was not adequately disclosed.

9. That Provident had engaged in fraudulent "off the books" accounting for years, and that its stock was materially overvalued as a result. (*See*, Affidavit of Ervin Schoenblum, Attached as Exhibit C and Expert Report of Ross Feurman, Attached as Exhibit D).

KMK, in a desperate attempt to evade liability and focus the blame elsewhere—including clients of the KMK litigation team, submits mere snippets of the deposition testimony of defendant Mark Weiss that allegedly support their arguments. These out of context snippets, when read in the context of Mr. Weiss's entire transcript, along with that of his partner Timothy B. Matthews[1], strongly suggests that Mr. Hanauer's opposition to the merger was required to be included in the Proxy Materials/Registration Statement.  For example, KMK includes the excerpt from the Weiss deposition that he was the "mere ministerial compiler of the document," but deliberately omits the very next question and answer:

---

[1] KMK partner Timothy B. Matthews was the "lead outside counsel retained to coordinate the various aspects of the transaction."  Matthews, page 34, lines 8-10. with respect to the merger. (Entire transcript attached as Exhibit E).

> Q  Okay.  Does that mean that you exercised no professional judgment in the entire transaction?
> A  I would say that, that I also represent Provident and, in that capacity I would have advised Provident on how to disclose certain things.
> Q  And did you, in fact, do that?
> MR. BURKE:  Objection.  Calls for attorney-client communications.
> A  I don't recall.

Weiss, page 154, lines 8-14. (Entire Transcript attached as Exhibit F).

It is excerpts like this that KMK does not include that clearly show that it is inappropriate for the Court to consider these out of context snippets, and not the entire transcripts which plaintiffs have attached.  This shows why these intensely factual decisions cannot be made on a motion to dismiss.

What were KMK's clients paying them for—mere ministerial office work—as KMK suggests but the record does not support—or professional services to close the deal at all costs as the **evidence** suggests?  KMK was not shy about taking huge fees from its work on the merger transaction, and KMK is not shy in continuing to accept fees from clients it is blaming for the fraud.  KMK has been riding the long gravy train for years.

KMK attorneys who worked on the merger suggest that KMK was snookered, in that they were lead to believe that the OHSL Board and management was firmly behind the transaction when it was not[2].  A fair reading of the entire transcript of the testimony of Messrs. Weiss and Matthews suggests that KMK has now acknowledged the fraud, and suggested that they have been defrauded themselves—by Ken Hanauer and other OHSL directors, (whom the litigation team represents) and the Dinsmore defendants.  But

---

[2] It is curious how KMK's litigation team can continually represent defendants, especially former OHSL CEO Ken Hanauer, who members of the transactional team seem to blame for the fraud.

4

Weiss and KMK, the co-authors of the materially false and misleading Proxy

Materials/Registration Statement, cannot escape liability on this basis or any other.

Against this backdrop, KMK moves to dismiss the Consolidated Amended

Complaint ("CAC") as a matter of law.  What is astonishing about this motion is the utter

contempt it shows for previous Orders of this Court—the law of the case—in that KMK

continues to argue materiality.  (*See*, Doc. No. 46)

Plaintiffs respectfully submit this opposition to the KMK defendants' motion to

dismiss.  As will be shown, the KMK defendants' motion to dismiss is, in form and

substance, not a motion to dismiss, but a motion for summary judgment that attempts to

re-argue prior decisions of this Court, and is therefore, contemptuous of the decisions of

this court.  The KMK motion states that the CAC should be dismissed on four grounds:

that it is time barred, that KMK is not an expert, that plaintiffs have failed to show

scienter, and that the claims alleged are not material.  All of the grounds for dismissal are

faulty.

The KMK defendants ask this Court to dismiss this complaint based on the

materially false and misleading Proxy Materials/Registration Statement that they co-

authored, that was maintained on KMK's computer system under the control of defendant

KMK partner Mark Weiss, that contained materially false and misleading information.

Any fair reading of the Proxy Materials/Registration Statement shows that it is carefully

crafted to present a misleading picture of the true facts surrounding the merger, including

sections of the Proxy Materials/Registration Statement that KMK wrote.  Of course, there

is no pride of authorship for the first page of the document, which contains several false

statements on unanimity.  This is a mystery.  The Dinsmore defendants deny writing it,

and suggests that it was written by KMK.  (*See*, Transcript of Clifford Roe, attached as

Exhibit G at 39).  KMK denies writing it, and suggests that it was written by a client that

KMK—as defense counsel—represents, former OHSL COB Norbert Brinker, which is

not the first time that KMK attorneys have blamed certain of their clients for the fraud,

though of course they do not blame their premier client, Provident, for anything.  Mr.

Brinker denies writing the letter, and is unable to identify who wrote it, and how it was

presented to him for his signature[3].  (*See*, Cincinnati Business Courier article, quoting

KMK defense counsel James E. Burke as stating the obvious—that Hanauer opposed the

merger, Attached as Exhibit H).   Somehow, Mr. Burke's knowledge never made it into

the Proxy Materials/Registration Statement, which was carefully purged by KMK to

remove any hint of opposition to the merger.  KMK believes that the CAC based

materially false and misleading Proxy Materials/Registration statement—a document that

gave the false impression of unanimity and did not even hint at dissent—is not actionable

against KMK.  Perhaps this appalling lack of responsibility indicates how and why the

financial markets are repeatedly wracked with corporate fraud, with the willing assistance

of law and accounting firms, as here, as primary violators.  In short, the KMK motion for

summary judgment, disguised as a motion to dismiss, raises detailed factual issues that

plaintiffs, even at this early stage, have rebutted.  The motion should be denied in its

entirety, and KMK and its counsel should be sanctioned for bringing it.

---

[3] Mr. Brinker is 86 years old and easily confused.  His recollection of events is often at
odds with what would otherwise be undisputed.  For example, Mr. Brinker testified in
substance that KMK represented OHSL during the merger, when it is undisputed that
Dismore represented OHSL during the merger.  This is merely one of many examples
where Mr. Brinker was easily confused.

Finally, because the defendants' motions to dismiss are interlocking, plaintiffs incorporate by reference to the fullest extent applicable the legal arguments made in the opposition memoranda in response to the Dinsmore and the Ernst & Young defendants' motions to dismiss the CAC filed contemporaneously herewith, as well as the arguments in the forthcoming response to the OHSL and Provident defendants' amended motion to dismiss.

## II. COUNTER-STATEMENT OF FACTS

In their zeal to attack plaintiffs and their counsel, the KMK defendants submit a statement of facts that is largely fictitious and entirely self-serving. In keeping with the strategy of all defendants, they include information about an irrelevant non-securities action, and falsely imply that OHSL shareholders were overwhelming in favor of the transaction[4]. KMK states "Despite this high percentage of approval by OHSL shareholders...." (motion at 2) The true facts, in the words of KMK's own client, are contradictory. This continues KMK's strategy in the state court, as the testimony of Ken Hanauer clearly indicates:

> Q And aside from the directors who voted for the transaction, did anyone come up and say, hey, I think this is a good idea, I'm glad you're selling the

---

[4] This is the same strategy that was successfully used by KMK attorney James E. Burke when he falsely stated to the state court that the vote in favor of the merger had been overwhelming. (*See*, Testimony of former OHSL CEO Ken Hanauer, Attached as Exhibit I). Mr. Hanauer, unprompted, stated that the shareholder vote was "less than overwhelming." (page 87). KMK's faulty math derives the 80% number from torturing the plain language of the Proxy Materials to avoid the inescapable conclusion that not voting was voting against the transaction. (*See*, Expert Report of Candace Preston, Attached as Exhibit B). With KMK math, the votes against (by not voting) of plaintiffs Gary and Lisa Meier, and Thomas M. Herron, and even Janet Nolte, all of whom were opposed to the merger, are counted as being in favor of the merger. Such a perverse result can only be obtained with KMK math. Even KMK admits in the motion to dismiss they originally filed that only 52% of the OHSL shareholders approved the merger. (*See*, Document No. 9 at 10).

company to Provident on these terms?

A  Shareholders came to me and said that—**I cannot recall any conversations where shareholders were elated or interested in the transaction, that would come to me and say that.  I don't know that I had any discussions with shareholders that thought it was a good transaction.**

Q  **Did you have any discussions with shareholders who thought it was a bad idea to sell the company to Provident on these terms?**
A  Yes.
Q  Okay.  **Which shareholders?**
A  **Well, there were quite a few.**  There was a couple that were former directors that contacted me and just, whether it be Provident, whether it be the structure of the transaction, or whether it be the company going away, they were not in favor of it.  And they indicated that they would not support it.
Q  Do you have any idea out of these approximately 900 shareholders how many—I'm not talking about voting shares, I'm talking about how many voted in favor of the transaction, how many voted against, and how many just didn't vote?
A  I had those numbers, but I can't recall what those numbers are.
Q  Okay.  How would you characterize the vote approving the transaction?
MR. BURKE:  Objection, ambiguous.
A  **How would I characterize the vote?  Less than overwhelming.**

Hanauer, page 86 line 13 -87 lines 25.  (emphasis added.)

Additionally, KMK is simply unable to grasp even undisputed details of the

procedural history of the case, such as the filing date of the original complaint[5].  Footnote

1 (motion at 4) is similarly incorrect, and entirely self-serving[6].  Among other things, the

footnote states that the CAC is "the first complaint where claims are properly being

---

[5] The correct date is 20 September 2000.  Interestingly, KMK repeats a mistake originally made by KMK acting as defense counsel, which suggests that the motion filed by KMK as defendants is merely a cut and paste job from KMK as defense counsel.
[6] It is truly unfortunate that despite their obligations as officers of the Court, all defendants have filed motions that falsely state that plaintiffs filed the first amended complaint without leave of the Court.  This is knowingly false, and is rebutted by evidence submitted in the motion for reconsideration. (Doc. No. 230)  Presumably if there was a factual dispute, or if the affidavits submitted by plaintiffs' counsel, and confirmed in the record and by Magistrate Judge Hogan's statements, someone would come forward and submit some evidence challenging the sworn evidence.  No one has done so, and the silence is deafening.  These defendants prefer to make knowingly false statements in their motions, and not swear to something they know is untrue.

asserted against the KMK defendants." This statement is puzzling, since Magistrate

Judge Hogan granted plaintiffs motion to amend the complaint specifically to add KMK

as a defendant based on the then-recent testimony of Roe and Hertlein from Dinsmore.

Thus, KMK has been properly named as a defendant since 4 February 2002, when

plaintiffs filed the First Amended Complaint with the explicit permission of Magistrate

Judge Hogan. (*See*, Third Amended Calendar Order, Doc. No. 62)

## III.    SUMMARY OF POINTS MADE AND PRIMARY AUTHORITIES RELIED ON SUBMITTED PURSUANT TO LOCAL RULE 7.2 (a) (3)

### 1. Motion to Dismiss Standard

A motion to dismiss can only be granted if it is clear that no relief could be

granted under any set of facts that could be proved consistent with the allegations. *Hishon*

*v. King & Spaulding*, 467 U.S. 69, 73 104 S. Ct. 2229 (1984). Although matters of public

record, orders, items appearing in the record and attached exhibits may be taken into

account, when deciding a motion brought pursuant to Federal Rule12 (b)(6), the inquiry

is essentially limited to the content of the complaint.  *Yancos v. Lake* County, 953 F.

Supp. 187, 191 (N.D. Ohio 1996).  To survive a motion to dismiss under Federal Rule

12(b)(6), a "complaint must contain direct or inferential allegation respecting all of the

material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny*

*Farmer Candy Shops*, 859 F.2d 434, 436 (6th Cir. 1988).  A court must accept all the

allegations stated in the complaint as true, and view the complaint in the light most

favorable to the plaintiff, but a court is "not bound to accept as true a legal conclusion

couched as a factual allegation." *Papasan v. Allain*, 478 U.S 265, 286, 106 S.Ct. 2932

(1986).  The issue is not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

### 2. Convert Motion to Dismiss to Motion for Summary Judgment

When examining a complaint, one must look solely at the allegations made and assume that they are true. If a judge considers affidavits or other materials, a motion to dismiss a complaint is converted into a motion for summary judgment. Federal Rule 12(c). *Hildebrand v. Board of Trustees,* 607 F.2d 705, 709-710 (6th Cir. 1979); *Fleishfresser v. Directors of School Dist. 200,* 15 F.3d 680, 684 (7th. Cir. 1994) (where materials extraneous to pleadings are under consideration, Rule 12(b) compels district court to treat motion to dismiss as one for summary judgment); *Venture Associates Corp. v. Zenith Data Systems Corp.,* 987 F.2d 429, 431 (7th Cir. 1993) (Rule 12(b) is mandatory, so that if materials outside pleadings are before district court and not excluded, court must convert 12(b)(6) motion to one for summary judgment).

Should the Court not wish to strike these motions or otherwise not consider these motions in their entirety, the Court should convert them into motions for summary judgment, and set a reasonable briefing schedule to allow the plaintiffs to respond.

Reduced to lowest terms, the KMK defendants join the OHSL and Provident defendants and the Dinsmore defendants and ask that the case be dismissed on the basis of an alleged lack of materiality of certain allegations made in the CAC. This position is incredible—and not defensible—since the Court previously dismissed nine of the twelve allegations of the original complaint, and allowed plaintiffs to proceed with only three of the original allegations, along with new allegations regarding Provident's massive 2003 restatements. Plaintiffs have complied with the letter and the spirit of the Court's Order.

Defendants have not.  The KMK defendants incorporate by reference the same spurious arguments that have been previously made and rejected by this Court.  They simply, and contemptuously, ignore the law of this case and bring the very same arguments that the Court has previously rejected in another attempt to clog the progress of the case and require the Court to re-adjudicate and plaintiffs to re-argue the very same issues[7].  This reflects the strategy of the defendants to move the case backwards, not forwards.

### 3.  Plaintiffs Section 11 and 10(b) Claims are Not Barred by Applicable Statute of Limitations

Plaintiffs' Section 11 and 10(b) claims against Defendant KMK were timely filed. The statute of limitations is an affirmative defense, for which the defendant bears the burden of proof.  *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1118 (W.D. Mich. 1996). Plaintiffs are not required to negate the affirmative defense of the statute of limitations in their Complaint; it is defendants' burden at all stages of the litigation. Id. (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). For this reason, it is generally inappropriate to address the statute of limitations on a motion on the papers--particularly when the defense is that plaintiffs should have discovered the facts underlying their claim.  *Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533, 537 (M.D. Fla 1997) citing (*Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567, 1572 (11th Cir. 1990)).  However, if this Court decides to do so at this juncture, then the facts of this case

---

[7] Since the KMK defendants have adopted the arguments made by other defendants, this presumably carries over the comments made by John Hust on behalf of the Dinsmore defendants at a 5 February 2004 Status Conference before Magistrate Judge Hogan. Mr. Hust stated in substance that they may "**be out on a limb**" and may have "**overstepped.**" Indeed they have. (*See*, Transcript of proceedings, Attached as Exhibit J).

show that Plaintiffs have met the statute of limitations for their Section 11 and 10(b) cause of action against KMK.

Sections 10(b) is not subject to an express statute of limitations because it was judicially created. *Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333, 338 (6th Cir. 1994). However, the Supreme Court has applied the one-year statute of limitations and three-year statute of repose to both Section 10(b) and 11 claims as set forth in §9(e) of the Exchange Act, 15 U.S.C. §78i(e). *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). This limitations period is triggered when the defendant "commits the act that gives rise to liability under §10(b)." *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 604 (S.D. OH 2003)(internal quotations omitted).

In 2002, the Sarbanes-Oxley Act expanded the applicable periods of limitation and repose to two years and five years for Section 10(b) claims. In particular, on July 30, 2002, Congress amended § 1658 by designating the quoted language as subsection (a) and adding subsection (b) which provides:

> Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 15U.S.C. 78c(a)(47)), may be brought not later than the earlier of --
>
> > (1) 2 years after the discovery of the facts constituting the violation; or
> >
> > (2) 5 years after such violation.

*Id.*; 28 U.S.C. §1658(b). The language of the Sarbanes-Oxley Act directly mirrors Section 10(b) which provides the private causes of action for securities fraud. As a result, unlike a Section 11 claim, the Sarbanes-Oxley Act is directly applicable to a

Section 10(b) claim against Defendant KMK such that it extends the applicable statute of limitations to two years and statute of repose to five years.

The discovery of the act or omission is based upon an inquiry notice. *New England Heathcare Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495 (6th Cir. 2003). Knowledge of suspicious facts merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud. *Id.* at 501; *see also Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239, 262 (3rd. Cir. 2001)(facts must alert investor to "probability that misleading statements or significant omissions had been made"); *Fujisawa Pharmaceutical Co., Ltd. V. Kapoor,* 115 F.3d 1332, 1335 (7th Cir. 1997)("[F]acts constituting [inquiry] notice must be sufficiently probative of fraud--sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated-- not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit."). The Sixth Circuit found that this rule reflected an appropriate balance between "the staunch federal interest in requiring plaintiffs to bring suit promptly . . . and the equally strong interest in not driving plaintiffs to bring suit . . . before they are able, in the exercise of reasonable diligence, to discover the facts necessary to support their claims." *Id.* at 501.

Courts have also routinely held that the issue of inquiry notice is a factual matter to be resolved by the jury. *See, e.g., Trust v. United States,* 77 F.3d 483, ** 3 (6th Cir. 1996)("A determination of inquiry notice is a question of fact.")(citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 401-402 (1990)); *See also, Marks v. CDW Computer Centers, Inc.,* 122 F.3d 363, 367 (7th Cir. 1997)("Whether a plaintiff had sufficient facts

13

to place him on inquiry notice of claim for securities fraud under S.E.C. Rule 10b-5 is question of fact."); *Young v. Lepone,* 305 F.3d 1,9 (1st. Cir. 2002)("In the archetypical case. . ., it is for the fact finder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice.")  While, in certain circumstances, inquiry notice may be found as a matter of law, this is so only in "extreme circumstances," *Blatt v. Merrill Lynch,* 916 F. Supp. 1343, 1356 (D.N.J. 1996), where "the uncontroverted evidence irrefutably demonstrates when the plaintiff discovered or should have discovered the fraudulent conduct." *In re Nivram Corp. v. Harcourt Brace Jovanovich,* 840 F. Supp. 243 (S.D.N.Y.).  Plaintiffs respectfully submit that the determination of whether Plaintiffs were on inquiry notice in relation to Defendant KMK's conduct is a matter of factual determination reserved for a jury. However, if this Court disagrees, there is still ample evidence before this Court to determine that Plaintiffs were not on inquiry notice until December 2001, after testimony had been obtained from Defendants Roe and Hertlein which indicated that KMK had a much larger role in the preparation of the Proxy Materials than was originally and previously known.

### 4.  Plaintiffs' Section 11 and 10(b) Claims are Not Time-Barred by the Applicable Statute of Repose

Plaintiffs' Section 11 claim is not time barred. It was initially filed within 3 years of December 3, 1999 on February 4, 2002. Defendant KMK cites to *In re Arm Financial,* 2002 U.S. Dist. LEXIS 13451 at *16-18 (quoting *Morin v. Turpin,* 778 F.Supp. 711 (S.D.N.Y. 1991) for the proposition that Plaintiffs cannot relate their Section 11 claim filed in the CAC back to the February 4, 2002 complaint. However, *In re Arm Financial* is factually inapplicable because it dealt with a case where the plaintiffs did not timely file the 1933 Act claims in the first complaint, but tried to get the 1933 Act claims which

would otherwise be barred by the applicable statute of limitations in through the amended complaint pursuant to Fed. Rule 15(c). Id. at 16-17. Here, the Section 11 was timely filed within the three-year statute of repose in the February 4, 2002 amended complaint such that it is not barred by the three year statute of repose since the CAC's Section 11 claim relates back to the timely filed February 4, 2002 claim pursuant to Fed. Rule 15(c).

Plaintiffs' Section 10(b) claim is not barred by the applicable statute of repose for the same reasons stated above, as well as based upon the Sarbanes-Oxley Act. As stated above, in 2002, the Sarbanes-Oxley Act expanded the applicable periods of limitation and repose to two years and five years. Id.; 28 U.S.C. §1658(b). Further, Plaintiffs could take advantage of the extended statute of limitations and statute of repose because their Section 10(b) was still viable at the time Sarbanes-Oxley was enacted in July of 2002. Defendant KMK was added as a defendant in Plaintiffs' amended complaint on February 4, 2002. As a result, since Plaintiffs' Section 10(b) claim was filed prior to the end of the three-year statute of repose which expired on December 3, 2002, and since Plaintiffs had a viable Section 10(b) claim at the time the Sarbanes-Oxley Act was enacted, Plaintiffs are able to take advantage of the extended five year statute of repose for their Section 10(b) claim.

### 5.  Plaintiffs have Sufficiently Pled Their Section 11 Claim.

Section 11 of the 1933 Securities Act identifies the types of persons who may be held liable on account of their involvement in the filing of registration statements which contain an untrue statement of material fact or omits a material fact which is false or misleading. 15 U.S.C. §77(k). Liability extends to accountants, engineers, appraisers or any other person, i.e. experts, whose profession lends authority to their statements.  Id.

Federal case law has interpreted this section to include attorneys when they act as experts. *Herman & MacLean v.* Huddleston, 459 U.S. 375, 103 S.Ct. 683, 690, n. 22 (1983).

Defendant KMK cites to *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 690, n. 22 (1983), for the proposition that attorneys are not experts within the meaning of Section 11 if they draft the registration statement or otherwise provide legal advice on disclosure issues in connection with its preparation. (Motion to Dismiss, p. 10). However, this is untrue. The United States Supreme Court stated in a footnote that "certain individuals who play a part in preparing the registration statement "generally" cannot be reached by a Section 11 action. Id. These individuals include lawyers not acting as "experts." Id. Thus, the inverse must also be true. Attorneys, acting as "experts," can be reached by a Section 11 action.

### 6.  Plaintiffs have Met the Scienter Element of a Section 10(b) Claim

In *In re Comshares, Inc.,* the Sixth Circuit stated that the "required state of mind" for the scienter element is defined as follows:

> We conclude that plaintiffs may plead scienter in § 10b or Rule 10b-5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud. Consequently, we must reject the reasoning of the district court to the extent it concluded that plaintiffs must "plead specific facts that create a strong inference of knowing misrepresentation on the part of the defendants" in order to establish a defendant's scienter in a securities fraud case brought under § 10(b) or Rule 10b-5.

Id. at 549. Under current Sixth Circuit law, "recklessness satisfies the § 10(b)/Rule 10b-5 scienter requirement." *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1024 (6th

Cir. 1979). In *Mansbach*, this Court expressed generally that "recklessness [is] highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known it." Id at 1025.

Thereafter, in *Helwig v. Vencor*, 251 F.3d 540, 553 (6th Cir. 2001), the Sixth Circuit provided the following definitive explanation as to the meaning of a "strong inference":

> "Inferences must be reasonable and strong--but not irrefutable. "Strong inferences" nonetheless involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact. Plaintiffs need not foreclose all other characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder. Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences.

Id.

In cases involving "recklessness", the main issue generally centers around the sufficiency of disclosures or materiality of the misrepresentations coupled with reliance. Inquiries into these areas are inherently fact-specific and are generally left to the trier of facts. *Basic, Inc. v. Levinson*, 485 U.S. 224, 235, 108 S.Ct. 978 (1988); *Goldman v. Belden*, 754 F.2d 1059, 1068 (2d. Cir. 1985).

### 7.  Plaintiffs Adequately Pled their Common Law Fraud Claim

Plaintiffs' fraud claim is factually and legally sufficient pursuant to Ohio Civil Rule 9(B).  Common law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with

such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas* (2002), 97 Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92 at P24.

For the reasons set forth above pertaining to Plaintiffs' 10b-5 claim, Plaintiff's fraud claim should not be denied because it states a claim upon which relief can be granted.

## IV.    KMK'S ROLE IN THE MERGER AND THE CAC ALLEGATIONS

### 1.    KMK's Role in the Merger was to Make Sure the Merger Closed at All Costs

KMK would have this Court believe that it played a passive role in the merger transaction that would best be described as a mere scrivener of the materially false and misleading Proxy Materials/Registration Statement. Such a characterization is false. KMK's role, bluntly stated, was to ensure that the transaction closed at all costs to benefit its premier client, Provident, in whose building the KMK firm resides. To accomplish this goal on behalf of its premier client, KMK actually wrote the materially false and misleading document, which was knowingly and fraudulently scrubbed to remove any hint of dissent, which KMK knew would result in the merger being voted down. (*See*, Expert Report of William Lutz, Ph.d., J.D., Attached as Exhibit A and Expert Report of Candace Preston, Attached as Exhibit B). Nothing more is required at the motion to dismiss stage of the litigation.

## 2.  The Facts Against KMK are Adequately Pled

KMK would have this Court believe that the facts alleged against KMK are mere

conclusions that are inadequately pled as a matter of law.  This is false.  The allegations

against KMK are detailed and specific.  For example:

¶ 12  KMK had actual knowledge that Hanauer opposed the merger.  In fact, Hanauer's opposition to the merger was so obvious that his own counsel, James Burke of KMK, stated as much to the Cincinnati Business Courier:  "Burke's response:  Hanauer opposed the takeover because he wanted Oak Hills to remain independent."

¶ 53  KMK defendants believed that the disclosure of any opposition to the merger from OHSL's Board would prevent the merger from being completed;

¶ 56  KMK had actual or constructive knowledge of Hanauer's opposition to the merger;

¶ 57  Weiss and KMK had actual knowledge of Hanauer's opposition to the merger;

¶ 61  Weiss and KMK had actual and/or constructive knowledge that Hanauer opposed the merger and was refusing to cooperate in the process;

¶ 62 (d)  All defendants knew or should have known that the OHSL Board vote approving the merger was not unanimous, *See*, Bates # P/OHSL 00420, that indicates that KMK had actual knowledge of dissent;

¶ 66 KMK violated industry practice by not reading board minutes of the company to be acquired;  (KMK cannot be willfully ignorant of the true facts, write a materially false and misleading document, and then claim that they cannot be held liable, because they knew nothing.)

¶ 67  KMK failed to assess the financial sophistication of OHSL's Board;

¶ 69  KMK did not make proper inquiries of PFGI and OHSL to ensure that the document that they wrote would not be materially false and misleading;

¶ 70  KMK knew but intentionally failed to disclose that Herron had resigned in part in protest of the merger;

¶ 71 KMK violated industry practice by not reading board minutes of the company to be acquired;  (KMK cannot be willfully ignorant of the true facts, write a materially false and misleading document, and then claim that they cannot be held liable, because they knew nothing.)

¶ 73  KMK did not enquire about the propriety of "off the books" transactions;

¶ 74  KMK did not adequately interview OHSL and PFGI personnel;

¶ 75  KMK's work was a cut and paste job that falsely portrayed the merger;

¶ 76  KMK had actual knowledge that Provident's "off the books" transactions were improper;

¶ 77  KMK's role was to make sure that the true facts were not disclosed;

¶ 78  KMK shared information with Roe of Dinsmore from previous transactions;

¶ 79  KMK had a conflict of interest; a conflict that obviously continues with KMK attorneys providing testimony adverse to certain clients (but not anyone associated with Provident);

¶ 80 KMK maintained drafts of the materially false and misleading Proxy Materials/Registration Statement on its computer system;

The specificity of these allegations is sufficient for plaintiffs to survive at the motion to dismiss stage. The materially false and misleading Proxy Materials/Registration Statement was co-authored by KMK, KMK maintained the document on its computer system, and had ultimate control over the document. This Court has already determined that three of the allegations in the CAC state a claim against all of the pre-existing defendants, and it logically follows that the CAC states a claim against the new defendants, as applicable, to these same allegations, which, if anything, are re-pled with greater specificity.

## V.    THE KMK MOTION TO DISMISS SHOULD BE STRICKEN

The motion that KMK wishes to pass off as a motion to dismiss is, in fact, a motion for summary judgment. It has the look and feel of a motion for summary judgment, attaches documents outside the pleadings that demand a factual response, as well as showing complete and utter contempt for previous Orders of this Court (*See*, Doc. No. 46). It is appropriate for the Court to strike or otherwise not consider KMK's motion pursuant to Rule 12 (f), since all of them deliberately flout the Court's Order (Doc. No. 46) as to what is and is not material. Since the plaintiffs were limited by this Order in what they could allege, it logically follows that the defendants not be given repeated opportunities to argue materiality with respect to three of the four issues remaining in the case. *See*, *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed. 2d 318 (1983).

## VI.  THE KMK MOTION TO DISMISS IS A DISGUISED MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

### 1.  The Defendants Ask that the Case Be Dismissed Based Almost Exclusively on Testimony from Another Case in Another Court That Did Not Assert Securities Claims

#### A.  KMK Incorporates by Reference the Arguments of Other Defendants

Defendants truly confuse the ridiculous with the sublime.  The bulk of their contemptuous arguments—arguments that the Court has previously rejected—deal with testimony that was not taken in this case.  This is the height of absurdity.  These defendants ask that the case be dismissed based largely on the testimony of former OHSL CEO and Director Hanauer and former OHSL Chairman Brinker, which in many instances, they allege is not disputed.  Virtually every quote that these defendants include is disputed, and more often than not, directly rebutted by other testimony at some other point in the transcript.

Defendants are certainly enamored with the quote from Hanauer that they include on page 38 of the OHSL and Provident opposition (which KMK incorporates by reference), where Hanauer responds "No" to two questions about materiality. Defendants introduce the statement as follows:

> Hanauer unambiguously testified that he did not believe that the Proxy Materials contained any material misstatements or omissions.

They then go on to describe his testimony as follows:

> Given Hanauer's unequivocal denial that any of the alleged misstatements were material, or that any of the alleged omissions should have been included in the Proxy Materials, it is clear that Plaintiffs' false portrayal of Hanauer's role in the preparation of the Proxy Materials is legally

insufficient and fails to state a claim.

OHSL and Provident Opposition at 38.

Unambiguous testimony?  Unequivocal denial? KMK must be kidding, or perhaps

they did not read the transcript past page 274, which so captured their interest.  In the

fourth volume of his testimony, (attached as Exhibit K[8],) Hanauer clearly testifies that he

believes that the document contains a number of material misstatements, only one of

which is included here:

> Q  Do you believe that the vote or non-vote of the Chairman of the Board of Directors
> on this transaction is material information?
> A  Whether he voted or not?
> Q  Yes.
> A  I believe that—yeah, I believe that that could be material information.
> Q  Okay.  Do you believe that it's properly disclosed in the document, based on our
> conversation today?
> MR. RAMSEY:  Objection.
> A  It is not in the document, that he did not vote, if that is his testimony that he did not
> vote.

Hanauer at 755.

Mr. Hanauer goes on to clarify his position.

> Q  Do you believe that whatever Mr. Brinker did as Chairman of the Board
> Should have been disclosed to shareholders?  In other words, if he didn't vote to approve
> the transaction, fine, he could have said the directors who were there and who were
> eligible to vote did vote to unanimously approve the transaction, but I abstained.  Do
> you think that would have been better?
> A  If it is his testimony and intent to have abstained, yes.  If he purposely, if he
> purposely did not vote, then I believe that should have been disclosed, yes sir.
> Q  Okay.

---

[8] The fourth volume of Hanauer's testimony refutes many, if not all of the unsupported
contentions that Hanauer did not believe that there were material misstatements and
omissions in the documents which center around the issues that this Court held to be
potentially material.  These include Hanauer's testimony that the Proxy
Materials/Registration Statement was wrong (page 753), that he believes that the
document contains a misstatement (page 761), that the term unanimously should have
been stricken from the document (page 762), and that he does not know what makes
something material or immaterial (page 802).

A  I believe that.

Hanauer at 757.

Of course it is the Court and not one of the defendants who ultimately decides the issue of materiality, so Mr. Hanauer's testimony, whatever it is, is flimsy, only partially presented, and not controlling on legal questions.  But the fact that there are hotly contested factual issues that plaintiffs have no choice but to respond to clearly shows that these disputed facts cannot be resolved at the motion to dismiss stage of the litigation, nor at the summary judgment stage of the litigation.  Plaintiffs concede nothing, and only respectfully request that they have sufficient notice and a full and fair opportunity to gather evidence and respond in this case.

### B.  The Weiss Testimony

Out of the 231-page transcript of defendant Mark Weiss, KMK includes several lines of testimony, apparently in an attempt to gain sympathy for Weiss and KMK for being only the "ministerial compiler" of the document[9].  KMK does not include testimony from any of the three other KMK witnesses who were deposed to date.  Taken together, the role of KMK is far more than that of ministerial compiler of the document.  KMK wrote the document.  KMK took the document to the printers.  KMK had final authority over the document.

Interestingly, no one has taken responsibility for the first page of the materially false and misleading Proxy Materials/Registration Statement, but have instead engaged in a "blame game," with Dinsmore suggesting that KMK wrote the first page (Roe at 39), and KMK denying that anyone at KMK wrote it, but having no idea how it got in the

_____

[9] _See also_, Introduction, page 3, for a more detailed discussion of defendants Weiss's true role.

document (Weiss at 43-44). Mr. Brinker seems to believe that Dinsmore wrote the document. And while it is understandable that no one wants the pride of authorship of a part of the document that is so obviously intentionally misleading, KMK cannot escape liability, at the motion to dismiss or any other stage of pretrial proceedings, for materially false statements in a document that they co-wrote and controlled.

Finally, KMK's conduct is exactly what this Circuit sitting *en banc* found to be actionable. (*See*, *Rubin, v. Scottenstein Zox & Dunn*, 143 F. 3d 263.). KMK asserts a "Sergeant Schulz" defense—they cannot be liable because they hear nothing, they see nothing. Or perhaps it is more of a Nurenberg defense—they cannot be liable because they were simply following the Orders of their clients, their co-defendants Provident. If their clients wanted them to produce and disseminate a materially false and misleading Proxy Materials/Registration Statement, who were they to object? Either way, this disingenuous defense will not work because of *Rubin* and other cases, such as *In re Enron Securities Litigation*, 235 F. Supp. 549 (S.D. of Texas, 2002), which supports the position that in circumstances such as this, where attorneys are primary actors in the commission of securities fraud, that lawyers can be held accountable. As the Sixth Circuit held *en banc* in *Rubin,* lawyers, because of their status and positions as members of the bar, may indeed have a higher duty in such circumstances. *Rubin*, supra.

## 2. When a Motion for Summary Judgment Masquerades as a Motion to Dismiss The Court Must Provide Notice and a Full and Fair Opportunity to Respond

KMK's motion is, in form and substance, a motion for summary judgment. Each motion asks the Court to make detailed factual determinations and to dismiss the case based on this basis. Of course, the Court has already made certain factual determinations,

and ordered that allegations that had previously been deemed not material not be included in the CAC.

Defendants, however, mock the Court's previous Order by re-arguing the very same points in the very same way, in many cases with the exact same language. (*See*, Table of Contents of Motion to Dismiss the Original Complaint by the OHSL and Provident defendants, and the Motion to Dismiss the CAC, Attached as Exhibits L and M). This direct challenge to the Court's authority was not expected, and, if the Court deems a response appropriate, cannot be fully and fairly responded to within the time limits set by the current Scheduling Order, (Doc. No. 221) which has been objected to. (Doc. No. 222). [10] (*See also*, Rule 56 (f) Affidavit of Michael G. Brautigam, attached as Exhibit N).

When matters outside the pleadings are presented to the trial court, it has the effect of converting the motion to dismiss under Rule 12 into a motion for summary judgment under Rule 56. As the Sixth Circuit has previously held:

> When a court considers dismissing an action for the legal insufficiency of the claim, and matters outside the pleadings are presented to the court and not excluded by it, the proceedings must be considered one for summary judgment. Fed. R. Civ. P. 12 (b) (6). Where one party is likely to be surprised by the change of proceedings, notice is required. *Dayco Corp. v. Goodyear Tire & Rubber*, 523 F.2d 389, 393 (6th Cir. 1975)

*United Bhd. Of Carpenters & Joiners, Dresden Local No. 267 v. Ohio Carpenters Health and Welfare Fund*, 926 F.2d 550, 558.

---

[10] It is appropriate for the Court to consider the arguments of all defendants, because the KMK defendants incorporate by reference the arguments of the OHSL and Provident defendants.

## VI.    THE CASE AGAINST KMK IS NOT TIME BARRED

### 1.  The Statute of Limitations is an Affirmative Defense Raising Factual Questions That Must Be Resolved by a Jury

Once the procedural irregularities are dealt with, it is obvious that KMK has no substantive defense.  The emperor has no clothes.  KMK indicates that their first and foremost argument is the statute of limitations, but the statute of limitations is an affirmative defense, for which the defendant bears the burden of proof.  *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1118 (W.D. Mich 1996). Plaintiffs are not required to negate the affirmative defense of the statute of limitations in their Complaint--it is defendants' burden at all stages of the litigation.  Id. (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  For this reason, it is generally inappropriate to address the statute of limitations at the motion to dismiss stage, or even at the summary judgment stage, particularly when the defense is that plaintiffs should have discovered facts underlying their claims.  *Fischler v. AmSouth BanCorporation*, 971 F. Supp 533, 537 (M.D. Fla. 1997) (citing *Smith v. Duff & Phelps, Inc.* 891 F.2d 1567. 1572 (11th Cir. 1990)).

Consistent with this principle, Courts have routinely held that the issue of inquiry notice is a factual matter to be resolved by the jury.  *See, Trust, v. United States*, 77 F. 3d 483 (6th Cir. 1996) ("A determination of inquiry notice is a question of fact.") (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-402 (1990)), see also, *Marks v. CDW Computer Centers, Inc.* 122 F. 3d 363, 367 (7th Cir. 1997) ("Whether a plaintiff had sufficient facts to place him on inquiry notice of claims for securities fraud under S.E.C. Rule 10b-5 is a question of fact.")  *Young v. Lepone*, 305 F. 3d 1, 9 (1st Cir. 2002) ("In the archetypical case...., it is for the fact finder to determine whether a particular collection

of data was sufficiently aposematic to place an investor on inquiry notice.")   While, in

certain circumstances, inquiry notice may be found as a matter of law, this is so only in

"extreme circumstances," *Blatt v. Merrill Lynch*, 916 F. Supp. 1343, 1356 (D. N.J. 1996)

where "the uncontroverted evidence irrefutably demonstrates when the plaintiff

discovered or should have discovered fraudulent conduct."  *In re Nivram Corp. v.*

*Hartcourt Brace Jovanovich*, 840 F. Supp. 243, 249 (S.D.N.Y. 1993).

### 2. The Claims Against KMK Relate Back to the Filing of the Original Complaint

The purpose of Rule 15 is to provide maximum opportunity
for each claim to be decided on its merits rather than on
procedural technicalities.

*In re ARM Financial Group, Inc. Securities Litigation* 2002 WL 1586397 (W.D. Ky.)


Rule 15 c (2) provides for the relation back of amendments to the date of the

original complaint if "the claim or defense asserted in the amended pleading arose out of

the conduct, transaction, or occurrence set forth or attempted to be set forth in the original

pleading."  Here, the information developed before the filing of the original complaint, as

per the testimony of the former OHSL directors, indicated that the Dinsmore firm wrote

the materially false and misleading Proxy Materials/Registration Statement.  Plaintiffs

justifiably relied on that information, and only moved for and received permission to

amend the complaint once the testimony of Dinsmore attorneys Roe and Hertlein

indicated that KMK had a much greater role than had been previously learned.

KMK cries crocodile tears that they were not sued in the original complaint, but

this is disingenuous.  Surely KMK does not seriously contend that it would have been

legally justifiable—or appropriate public policy--for plaintiffs to sue KMK without an

adequate evidentiary basis, which would surely give rise to Rule 11 sanctions[11].  Plaintiffs chose the more conservative course, only requesting and receiving permission to amend the complaint once KMK's role came into sharp focus.  (*See*, Doc. No. 62).

The caselaw is consistent with this interpretation.  *See, Miller v. American Heavy Lift Shipping*, 231 F. 3d. 242 (6th Cir. 2000) The allegations against KMK should be considered by a jury on the merits, not thrown out of court on the basis of a procedural technicality where KMK and Weiss have not met their burden of proof.

## VII.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the so-called motions to dismiss filed by the KMK defendants be stricken, and that the plaintiffs be excused of any obligation to respond to such documents.  In the alternative, should the Court not wish to strike these documents in their entirety, plaintiffs respectfully request that the motions be converted into what they are—motions for summary judgment pursuant to Rule 56—and that plaintiffs be given adequate time for discovery in this case to respond, and that a reasonable schedule for same be set.  Should the Court wish to consider the motion, plaintiffs respectfully request that the motion to dismiss be denied.

---

[11] KMK has repeatedly threatened plaintiffs with Rule 11 sanctions even after this Court found the original complaint meritorious and allowed discovery to proceed.

Respectfully Submitted,

**GENE MESH & ASSOCIATES**

Dated: 2 February 2004

By:

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
513 221 8800 telephone
513 221 1097 fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February 2004, a true and correct copy of the Memorandum in Opposition to KMK Defendants' Motion to Dismiss was served as follows:

**BY HAND DELIVERY**
James E. Burke, Esq.
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

John B. Pinney, Esq.
J. Michael Debbler, Esq.
GRAYDON HEAD & RITCHEY
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45201-6464

Michael R. Barrett, Esq.
BARRETT & WEBER
500 Fourth & Walnut Center
105 East Fourth Street
Cincinnati, Ohio 45202-4015


**and BY U. S. MAIL**
John W. Hurst, Esq.
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
Governor's Knoll
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249

James E. Gauch, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113

Michael G. Brautigam