UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN, et al., | : | CIVIL ACTION NO. C-1-00-793 |
| Plaintiffs | : | (Judge Sandra S. Beckwith) |
| | : | (Magistrate Judge Timothy S. Hogan) |
| -v- | : | |
| | : | **REPLY MEMORANDUM IN** |
| DINSMORE & SHOHL, LLP., et al, | : | **SUPPORT OF MOTION TO DISMISS** |
| | : | **OF DEFENDANTS, DINSMORE &** |
| Defendants. | : | **SHOHL, LLP, CLIFFORD ROE AND** |
| | : | **CHARLES HERTLEIN** |

### Introduction

Plaintiffs concede that the issues involving the Dinsmore Defendants relate to statements in the proxy materials concerning: (1) the unanimity of the vote at the OHSL Board meeting approving the merger; and (2) the resignation of Director Herron prior to the vote of the OHSL Board approving the merger (Doc. 273, p. 3). For each of the securities-related causes of action asserted against these Defendants, Plaintiffs must plead sufficient facts to show that the proxy materials contained material misstatements and/or omissions. The Dinsmore Defendants are mindful of the prior order of this Court in which it declined at that time to dismiss the claims based on the Board vote and Herron's resignation. Plaintiffs argue that the "additional specificity" of their Consolidated and Amended Class Action Complaint ("CAC") combined with this Court's earlier ruling insulates the CAC from a motion to dismiss. In fact, it is this "additional specificity" by which Plaintiffs plead themselves out of court.[1]

---

[1] Plaintiffs quote out-of-context statements made by counsel at a conference with Magistrate Hogan discussing the Court's earlier ruling. The complete remarks of movant's counsel in that conference are attached hereto as Exhibit A.

## **Section 11 of the Securities Act**

This claim is easily disposed of by reference to the express language of Section 11(a) of the Securities Act, 15 U.S.C. §77k and the registration statement attached to the CAC. Section 11(a) of the Securities Act provides, in pertinent part:

> (a) In case any part of the registration statement, when such part became effective, contained an untrue statement of material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless is it proved that at the time of such acquisition he knew of such untruth or omissions), may, either at law or in equity, in any court of competent jurisdiction, sue – (1) every person who signed the registered statement; (2) every person who was a director of ... the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted; ... (4) every accountant, engineer, or appraiser or any other person whose profession gives authority to a statement made by him, who has, with his consent been named as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such a registration statement, report or valuation, which purports to have been prepared or certified by him ...

Examination of the proxy materials and registration statement attached to the CAC reveals that none of the Dinsmore Defendants' names appear anywhere in or on the proxy materials or registration statement "as having prepared or certified any report or valuation which is used in connection with the registration statement ..."

The Supreme Court has rejected Plaintiffs' argument that attorneys are "experts" within the meaning of Section 11 if they draft the registration statement or otherwise provide legal advice on disclosure issues in connection with its preparation. *Herman & Maclean v. Huddleston*, 459 U.S.375, 386 (1983).

For these reasons, the Court should dismiss count 1 of the CAC as to the Dinsmore Defendants, as it fails to state a claim upon which relief can be granted.

**Count V – Plaintiffs' 10(b)(5) Claim**

To state a claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, Plaintiffs must allege in connection with the purchase or sale of securities: (1) the misstatement or omission of a material fact, (2) made with scienter, (3) upon which the plaintiff justifiably relied, and (4) which proximately caused the plaintiff's injury. *In re Comshares, Inc. Securities Litigation*, 183 F.3d 542 548 (6th Cir.1999).[2]

The CAC alleges that the Dinsmore Defendants were parties to two misrepresentations. The statements in question were neither misleading nor material. Further the allegations do not even establish the required state of mind (scienter) to support a 10(b)(5) claim.

Plaintiffs' first contention is that the cover letter accompanying the proxy materials materially misstated the truth about the unanimity of the OHSL Board in approving the merger. This allegation is based upon the contention that at the August 2, 1999 meeting of the OHSL Board, the merger was approved by a vote of 5 to 0, with the Chairman of the Board (Brinker) abstaining and the seventh director (McKiernan) being absent from the country. Plaintiffs also contend that the CEO, Hanauer, was actually opposed to the transaction and that a former director, Herron, had resigned in protest of the merger, even though his resignation took place five days prior to the vote on August 2, 1999.

The merger agreement was approved unanimously by those directors who actually voted at the meeting. Further, a review of other allegations of the Complaint reveals that Chairman Brinker was, in fact, in favor of the merger, as he had previously voted in favor

---

[2] While these Defendants did not brief the elements of reliance and damages, other defendants have adequately addressed them.

3

of continuing negotiations with Provident Bank. Further, Hanauer testified that when Brinker called for a vote of the Board on the transaction, there were no "nays" and that Brinker, as presiding director, declared the vote unanimous at the time. (Hanauer dep. 743-59). The director who was out of the country at the time of this meeting, McKiernan, had served on the ad hoc committee which had voted to hire the investment advisor to pursue a merger on behalf of OHSL (Doc. 234, Complaint ¶¶ 43, 45). The CAC does not allege that either Brinker or McKiernan opposed the transaction. Minutes from a later meeting of the Board on August 26, 1999, – at which McKiernan was present – clearly indicate the Board's unanimous approval of the minutes from the August 2 meeting, which stated that "the board concluded that the Definitive Agreement" between Provident and OHSL "was satisfactory", and that "the attached resolutions were unanimously adopted." The minutes from both of these meetings were introduced as Plaintiffs' Exhibit 13 to Clifford Roe's deposition, which Plaintiffs cite in the CAC.

The CAC does allege that Director Hanauer, even though he voted in favor of the transaction, was actually opposed to it, as evidenced by the fact that he voted his personal shares against the transaction. (Doc. 234, Complaint, ¶¶ 53, 55). The CAC actually quotes from a deposition given by Mr. Hanauer (Doc. 234, Complaint, ¶ 55).[3] First, Hanauer testified that he did not believe the proxy materials contained any material misstatements or omissions:

---

[3] Plaintiffs use "selected" portions of Hanauer's testimony, as well as other witnesses. Defendants would urge the Court to review the deposition testimony of Hanauer in its entirety so that it can understand the context of the selected statements. The Sixth Circuit has held that documents are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to plaintiff's claim. *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999); *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88-89 (6th Cir.1997). A complete copy of the Hanauer deposition is found at Doc. 9, tab 10 of the Appendix of exhibits.

4

> **Q: (Plaintiffs' Attorney Brautigam)**: Do you think that there are any material facts in this document that are omitted?
> **Hanauer:** No.
> **Q:** Do you think that there are any material facts in this document that are misstated?
> **Hanauer:** No.

Hanauer Dep. 274.

Second, when asked if he thought the merger was a good transaction, Hanauer responded:

> In [the special meeting], when it was asked, is this – I believe the question was is this a good transaction, is it a good transaction I have to answer yes. Is it a transaction that Ken Hanauer would have gone out and sought, no, but that wasn't the question that I was asked. I wasn't ready to retire at fifty.

Hanauer Dep. p.118. Hanauer went on to testify that he kept his "personal feelings" out of the transaction and that if he had opposed the transaction he would have breached his "fiduciary responsibility to the shareholders." (Hanauer Dep. pp.118-119; 128-133).

Plaintiffs' other alleged material misrepresentation relates to the resignation of Thomas Herron from the Board allegedly in protest over the merger and the failure to disclose that fact to the shareholders. (Doc. 234, Complaint, ¶119). Herron's written resignation says <u>nothing</u> regarding his alleged opposition to the transaction but simply indicates he is resigning as a director due to the demands of his business. (Doc. 55; Herron Dep. EX 3). Roe testified that Herron told the Board that business demands interfered with his service on the Board. (Roe Dep. pp. 54; 62). The CAC goes on to allege that Mr. Herron's name was deliberately omitted from a table of the directors set forth in the proxy materials, because the table used the date of July 31, 1999, one day after the effective date of the resignation of Director Herron. That table listed security ownership

of "certain beneficial owners and management." In addition, any OHSL shareholder could determine that Herron had recently resigned his Board membership by comparing the table published in the proxy materials – which does not list Herron as an OHSL Director as of July 31, 1999 – with the Director list published in OHSL's 1998 10-K Annual Report published a few months earlier and incorporated by reference into the proxy materials. (See discussion and brief of Provident/OHSL Defendants, Doc. 253, pp. 18-20).

To establish scienter under 10(b)(5), the allegations of Plaintiffs' Complaint must give rise to a strong inference – the most probable of competing inferences – that the Defendants made false or misleading statements with the required state of mind, *Miller v. Champion Enterprises*, Inc. 346 F.3d 660, 676 (6th Cir.2003). Allegations of scienter must indicate "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S.185, 193 (1976).

As pointed out by the Provident/OHSL Defendants' Motion to Dismiss (Doc. 253, p. 27-28), these allegations of fact in the CAC do not demonstrate the "who, what, when, where or why" of the alleged fraud, nor do Plaintiffs' allegations refer to any of the factors the Sixth Circuit has noted as relevant to scienter and securities fraud actions. *Helwig v. Vencor, Inc.* 251, F.3d 552 (6th Cir.2001).

It is clear from the factual allegations surrounding the Board's actions leading up to the vote on the merger and Mr. Herron's resignation, that the statements in the proxy materials were neither misleading nor material. These allegations could not give rise to a "strong inference" that the Dinsmore Defendants acted with a mental state "embracing intent to deceive, manipulate or defraud." Even though Plaintiffs may argue that there are competing inferences from these facts, Plaintiffs must be able to plead facts that show that

Plaintiffs' inference is "the most probable of competing inferences." *Miller v. Champion Enterprises, Inc.*, 346 F.3d at 676.

Although under Rule 12(b)(6), all inferences are to be drawn in Plaintiffs' favor, "inferences of scienter do not survive if they are merely reasonable." *Helwig v. Vencor*, 251 F.3d 540, 551 (6th Cir.2001). Inferences of scienter survive a motion to dismiss only they are both reasonable and "strong" inferences. *Id*.

The facts as pled in the Complaint demonstrate that the Board of Directors, indeed, had unanimously approved the merger and that the resignation of Herron as a director was easily determinable by any shareholder in public corporate documents. Even giving Plaintiffs the benefit of doubt as to competing inferences, the facts pled in the Complaint would lead a reasonably prudent lawyer to conclude that the information was neither misleading nor material. Further, as the Sixth Circuit has noted, it is not a question of "reasonableness" or "negligence", but a question of intent to deceive or "highly unreasonable conduct, which is an extreme departure from the standards of ordinary care."

For these reasons, Plaintiffs' 10b-5 claim fails to state a claim upon relief can be granted as to the Dinsmore Defendants.

### The 10b-5 Claim Against Defendant, Charles Hertlein is Untimely

No claims were asserted against Charles Hertlein, nor any of the Dinsmore Defendants in the State Court Action referred to in the Complaint. The state court action was dismissed in August 2000. The Complaint in this action was filed in September 2000 and named Dinsmore and Shohl, LLC and Clifford Roe as defendants. No claim was ever asserted against Mr. Hertlein in this case until the proposed first amended complaint was tendered on February 4, 2002.

It is clear that this amendment is barred by the governing statute of limitations. An action under Section 10(b) and Rule 10b-5 must be commenced within one year after the discovery of the facts constituting the violation <u>and</u> within three years after such violation. See, *New England Healthcare Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495 (6th Cir.2003). Plaintiffs acknowledge that the statute begins to run when a "reasonably diligent investigation would have discovered the fraud." *Id.* 501.

Apparently, Plaintiffs' diligent investigation led them to commence this action within a month after dismissal of their state court action. Even using the date of the commencement of this action (September 2000), Plaintiffs waited seventeen months to make their first attempt to add Mr. Hertlein to this case. Plaintiffs were well aware from deposition testimony of Mr. Hertlein's involvement. (Brinker pp. 326-28; Hanauer pp. 85; 453; 483-84; 596-98). Even using this later date, Plaintiffs' 10b-5 claim against Mr. Hertlein is barred by the statute of limitations.

### Counts VII and VIII - Ohio Securities Law Claims

Plaintiffs contend that the Dinsmore Defendants somehow were agents of the seller and thus, are also liable to a buyer who suffers a loss relying on the falsity of any material statements contained in the proxy materials or from the admission of material facts in the proxy materials. Plaintiffs ignore that the Ohio Legislature, by express statute rejected Plaintiffs' arguments regarding an attorney's liability under R.C. §§1707.41 and 1707.43. O.R.C. §1707.431 provides in pertinent part as follows:

> For purposes of this section, the following persons shall not be deemed to have effected, participated in, or aided the seller in any way in making, a sale or contract of sale in violation of section 1707.01 to 1707.45 of the revised code:
> (A) Any attorney, accountant or engineer whose performance is incidental to the practice of the person's profession.

8

As pointed out in the movant's opening brief, it has been observed that this section is simply a codification of prior Ohio case law holding that an attorney who merely prepares legal documents involved in the sale is not considered a "seller" or "participant". (See cases cited in Doc. 246, p. 14). Plaintiffs' brief in opposition simply ignores 1707.431, no doubt because it clearly applies to Plaintiffs' claims in this case. Accordingly, Counts VII and VIII of the Amended Complaint against the Dinsmore Defendants fails to state a claim upon which relief can be granted and it should be dismissed.

### Count IX - Plaintiffs' Spoliation Claim is Factually and Legally Insufficient

The spoliation claim against Dinsmore & Shohl and three other defendants consists of four paragraphs alleging: (1) that Defendants Hanauer, Brinker and Zoellner destroyed documents relevant to this case after related litigation was filed in the state court on November 18, 1999; (2) that Defendants Brinker and Zoellner destroyed their entire file of OHSL materials and that Brinker did so so that they could not be seen by anyone; (3) that Defendant Zoellner destroyed all of his file after litigation was commenced in the state court; and (4) that Dinsmore & Shohl, as the firm representing the OHSL directors, in "the initial phase of the state court litigation, had a clear legal duty to instruct its clients not to destroy relevant documents" and that a "lavender legal pad" of Hanauer's was turned over to Dinsmore and has disappeared.

The elements of a claim for interference with or destruction of evidence are: (1) pending or probable litigation involving the Plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful destruction of evidence by defendant designed to disrupt plaintiff's case; (4) disruption of the plaintiff's case; and (5) damages proximately caused by the defendant's acts. *Smith v. Howard Johnson, Co., Inc.*

9

(1993), 67 Ohio St.3d 28, 615 N.E.2d 1037.

The CAC is woefully inadequate in pleading these elements of a spoliation claim, and for good reason – they do not exist. In addition, despite Plaintiffs' attempts to rewrite the Supreme Court of Ohio's subsequent decision in *Davis v. Walmart Stores, Inc.* (2001), 93 Ohio St.3d 488, 756 N.E.2d 657, the Supreme Court established in the syllabus to the opinion that:

> Claims for spoliation of evidence may be brought after the primary action has been concluded only when evidence of spoliation is not discovered until after the conclusion of the primary action.

93 Ohio St.3d at 488.[4]

*Davis* clearly defeats the very first element of Plaintiffs' spoliation claim. The "pending" litigation at the time of the alleged spoliation was the state court action. Plaintiffs would have the defendants' attorneys – not the defendants – foresee the likelihood that Plaintiffs would voluntarily dismiss the state court action and commence a subsequent federal court suit in order to establish the "probable" requirement of the first element. Similarly, the second requirement also underscores the holding of *Davis*, i.e. that spoliation claims must be brought by the Plaintiff in the primary case unless it was not discovered until after the conclusion of the primary action.

With reference to the third element, the CAC makes no allegation that Dinsmore & Shohl destroyed any evidence.[5] Instead, the CAC conjures up a nonexistent legal duty on

---

[4] Contrary to Plaintiffs' assertion, *Davis* was not based upon doctrine of res judicata, the fact that there is a different name Plaintiffs in this class action versus the class action in the state court, is immaterial.

[5] Regarding the Hanauer lavender legal pad, Hanauer testified that he gave the pad to Pat Condren (an OHSL official) who may have turned it over to Dinsmore. (Hanauer pp. 363;788).

the part of an attorney to anticipate, but for admonition from him, that a client is going to destroy documents. Further, there is no allegation that any of the OHSL directors inquired of Dinsmore & Shohl prior to the destruction of the documents, nor is there any allegations that Dinsmore & Shohl instructed the OHSL directors to destroy evidence. Finally, Plaintiffs can allege no disruption of the current case, nor any damages allegedly caused by the destruction of the documents.

### **Count X - Plaintiffs' Claim for Common Law Fraud is Factually and Legally Insufficient**

In Ohio, the elements of fraud are as follows: (1) an actual or implied representation of a matter-of-fact; (2) which relates to the present or past; (3) which was material to the transactions; (4) was false when made; (5) statement must be made with knowledge of its falsity or with reckless disregard for whether it is true or not; (6) statement was made with the intent to mislead the other party and/or relying on it; (7) the other party was ignorant of the fact averred; (8) the other party justifiably relied on the statement; and (9) the party was injured by virtue of its justifiable reliance. *Moore v. Fenex, Inc.*, 809 F.2d 297, 301 (6th Cir.1987).

For the reasons set forth in movant's opening brief, and for the reasons set forth above pertaining to Plaintiffs' 10b-5 claim, and in light of the testimony of the previously certified class representative Walter Thiemann that he was not defrauded by the Dinsmore Defendants (Thiemann Dep. pp. 79-81), Plaintiffs' claim for common law fraud likewise fails to state a claim upon relief can be granted and should be dismissed.

## The Fraud Claim against Defendant, Charles Hertlein is Untimely

The transaction at issue was approved by the shareholders at a meeting on October 25, 1999. (Doc. 234, Complaint, ¶¶ 60-62). As alleged in the Complaint, OHSL shareholders brought an action in the Hamilton County Court of Common Pleas in an attempt to enjoin the closing of the merger scheduled for December 3, 1999. That request for relief was denied at a hearing on November 24, 1999. (Doc. 234, Complaint, ¶¶ 83-84.

Plaintiffs' Amended and Consolidated Class Action Complaint was filed on December 31, 2003. This is beyond the four-year statute of limitations for common law fraud actions under Ohio law. O.R.C. §2305.09.

For these reasons set forth in the Dinsmore Defendants' opening brief, the claim for fraud against Mr. Hertlein is untimely. It should also be noted that under Ohio law, if a complaint alleging common law fraud is predicated upon the sale of securities, the statutory limitations is, pursuant to Ohio Revised Code Section 1707.43, two years. *Ferry v. Shefchuck*, 203 WL 21139014, at *2 (Ohio App.11 Dist. 5/16/03). Accordingly, for these reasons, Plaintiffs' claims for common law fraud against Mr. Hertlein should be dismissed.

## The Court should strike the "Introduction" to the Complaint

For the reasons set forth in the Dinsmore Defendants' opening brief, the Court should strike the five page "Introduction" to the CAC because it contains redundant, immaterial and impertinent matter and fails to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

## Conclusion

For the reasons set forth above, Plaintiffs consolidated and amended class action complaint (Doc. 234) should be dismissed in its entirety as to Defendants Dinsmore & Shohl LLP, Clifford Roe and Charles Hertlein.

Respectfully submitted:

S/ Michael E. Maundrell
Michael E. Maundrell (0027110)
John W. Hust (0027121)
Attorneys for Defendants, Dinsmore & Shohl LLP,
Clifford Roe and Charles Hertlein
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, OH 45249
(513) 583-4200
(513) 583-4203 facsimile
mmaundrell@schroederlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2004, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Daniel J. Donnellon, Rachel A. Rowe, Jamie Ramsey and James E. Burke, Attorneys for Defendants, OHSL Financial Corp., Provident Financial Group, Inc. and Keating, Muething & Klekamp, 1400 Provident Tower, One East Fourth Street, Cincinnati, OH 45202; Michael R. Barrett, Attorney for KEATING, MUETHING & KLEKAMP, P.L.L. and Mark Weiss, 105 East Fourth Street, Suite 500, Cincinnati, Ohio 45202-4015; John B. Pinney and J. Michael Debbeler, Attorneys for Defendants Oak Hills and Provident, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202; James E. Gauch, and **I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:** Gene Mesh and Michael G. Brautigam, Attorneys for Plaintiffs, 2605 Burnet Avenue, Cincinnati, Ohio 45219-2502; Melissa D. Star and Stephen J. Brogan, Attorneys for Ernst & Young, 51 Louisiana Avenue, N.W., Washington, D.C., 20001-2113.

S/ Michael E. Maundrell
Michael E. Maundrell

JW H:dlt
#7049-8