IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **WALTER THIEMANN, et al,** | Civil Action No. C-1-00-793 |
| Plaintiff, | Judge Sandra S. Beckwith |
| v. | Magistrate Judge Timothy S. Hogan |
| **OHSL FINANCIAL CORP., et al,** | |
| Defendant. | |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT ERNST & YOUNG'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFFS CONCEDE THEIR SECTION 11 AND 12 CLAIMS AND STATE LAW STATUTORY CLAIMS AGAINST E&Y ................................................................ 2

II. PLAINTIFFS' SECTION 10(B) AND 14(A) CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS. ........................................................................................... 2

    A. The Sixth Circuit Has Held In Nearly Identical Circumstances that Inquiry Notice May Be Determined on the Pleadings ............................................................ 2

    B. Plaintiffs' Initial Complaint Demonstrates That They Were on Inquiry Notice Well Before March 2003 .................................................................................. 3

III. PLAINTIFFS HAVE NOT ADEQUATELY PLEADED FRAUDULENT INTENT AS REQUIRED FOR THEIR SECTION 10(B) CLAIM ..................................... 5

    A. Under the PSLRA, Lack of Scienter May Be Decided on the Pleadings ............... 5

    B. Plaintiffs Fail To Address Any of the Deficiencies E&Y Has Identified ............... 6

IV. PLAINTIFFS HAVE NOT ADEQUATELY PLEADED FRAUDULENT INTENT AS REQUIRED FOR THEIR SECTION 14(A) CLAIM ..................................... 10

V. PLAINTIFFS' COMMON LAW FRAUD CLAIM ALSO FAILS AS A MATTER OF LAW. ................................................................................................................ 11

CONCLUSION. ................................................................................................................................ 11

## TABLE OF AUTHORITIES

**CASES**

*Abrams v. Baker Hughes, Inc.*, 292 F.3d 424 (5th Cir. 2002) ........................................................6

*Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422 (6th Cir. 1980)..........................................11

*Ades v. Deloitte & Touche*, 799 F. Supp. 1493 (S.D.N.Y. 1992) ....................................................9

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)..................................................................................5

*Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343 (D.N.J. 1996).................3

*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ......................................................................6

*City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245 (10th Cir. 2001)...........................................6

*In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542 (6th Cir. 1999) ............................................. *passim*

*DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002).......................6, 8

*Ferritto v. Alejandro*, 743 N.E.2d 978 (Ohio Ct. App. 2000) .......................................................11

*Ferry v. Shefchuk*, No. 2002-H-2480, 2003 WL 21139014 (Ohio Ct. App. 2003) .......................11

*Florida State Board of Administration v. Green Tree Financial Corp.*, 270 F.3d 645 (8th
    Cir. 2001) ............................................................................................................................7

*In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105 (N.D. Cal. 2003) ...............................................6

*Goldberg v. Household Bank*, 890 F.2d 965 (7th Cir. 1989).............................................................6

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985)..........................................................................5

*In re Hayes Lemmerz Int'l, Inc.*, 271 F. Supp. 2d 1007 (E.D. Mich. 2003)......................................6

*In re Health Management, Inc. Sec. Litig.*, 970 F. Supp. 192 (E.D.N.Y. 1997).......................7, 8, 9

*Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001) ......................................................1, 6, 7, 10

*In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) ..............................5

*In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881 (8th Cir. 2002) ........................................................6

*Kushner v. Beverly Enters., Inc.*, 317 F.3d 820 (8th Cir. 2003) ...................................................6, 8

*Marks v. CDW Computer Centers Inc.*, 122 F.3d 363 (7th Cir. 1997) ............................................. 3

*New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495 (6th Cir. 2003) ................................................................................................... *passim*

*Nivram Corp. v. Harcourt Brace Jovanovich Inc.*, 840 F. Supp. 243 (S.D.N.Y. 1993) .................. 3

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505 (S.D. Ohio 2000) ..................... 6

*Trust v. United States*, No. 94-2189, 1996 U.S. App. LEXIS 5717 (6th Cir. Feb. 20, 1996) ........................................................................................................................ 3

*Young v. Lepone*, 305 F.3d 1 (1st Cir. 2002) .................................................................................. 3

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001) ........................................................ 6

**STATUTES**

Ohio Rev. Code § 1707.43 ............................................................................................................. 11

Ohio Rev. Code § 2305.09 ............................................................................................................. 11

**MISCELLANEOUS**

S. Rep. No. 104-98, at 4-5 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683-84 .......................... 6

Plaintiffs' lengthy opposition brief, more than twice Defendant Ernst & Young's ("E&Y") opening brief, is more remarkable for what it does not say than for what it does. Plaintiffs do not dispute that their claims against under §§ 11 and 12 of the Securities Act (Counts I and II) are barred by the applicable statute of limitations, nor do they dispute that their state statutory claims (Counts VII and VIII) are barred by the Securities Litigation Uniform Standards Act ("SLUSA"). Plaintiffs instead choose to defend only their fraud claims under §§ 10(b) and 14(a) of the Exchange Act (Counts III and IV) and their common law fraud claim (Count IX). Those claims fail as a matter of law on two grounds. First, those claims are also barred by the applicable statute of limitations – a point this Court may decide on the pleadings just as in *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 500 (6th Cir. 2003), *cert. denied*, --- S. Ct. ---, 2004 WL 323399 (2004). Yet more fundamentally, Plaintiffs' fraud claims must fail because Plaintiffs have alleged no facts from which this Court could draw an inference, much less the required "most plausible of competing inferences," that the restatements here stemmed from fraud rather than an honest mistake. *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001) (en banc). Accounting errors and restatements of earnings are not by themselves indicative of fraud. To withstand a motion to dismiss, securities fraud claims premised on admitted accounting errors must include specific facts supporting an inference of fraudulent intent, not merely "speculation and conclusory allegations." *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999) (citation omitted). Plaintiffs' Opposition demonstrates, however, that their claims against E&Y rest on nothing more than the fact that accounting errors were made, coupled with strident rhetoric and conclusory allegations that E&Y must have or should have known of them. Without any alleged

facts supporting any inference, let alone a strong one, of fraudulent intent, Plaintiffs' fraud claims clearly fail as a matter of law.

## ARGUMENT

### I. PLAINTIFFS CONCEDE THEIR SECTION 11 AND 12 CLAIMS AND STATE LAW STATUTORY CLAIMS AGAINST E&Y.

Although Plaintiffs in their conclusion ask this Court to deny E&Y's motion to dismiss as to all of their federal claims, Pl. Opp. at 43, they make no response whatsoever to E&Y's challenges to their § 11 and § 12 claims. To the contrary, they only mention those claims twice – once in describing their complaint, Pl. Opp. at 4, and again in a footnote after Plaintiffs ambiguously concede "that some of Plaintiffs' claims against Defendant E&Y may be barred by their applicable statute of limitations." Pl. Opp. at 24-25. In fact, for the reasons already stated in E&Y's opening brief, Plaintiffs' §§ 11 and 12(a) claims are clearly barred by the applicable 3-year statute of repose. Counts I and II should therefore be dismissed with prejudice.

Similarly, Plaintiffs make no argument regarding their state statutory claims, which, for the reasons stated in E&Y's opening brief, are expressly barred and must be dismissed pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p(b). Accordingly, Counts VII and VIII should be dismissed with prejudice.

### II. PLAINTIFFS' SECTION 10(B) AND 14(A) CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

#### A. The Sixth Circuit Has Held In Nearly Identical Circumstances that Inquiry Notice May Be Determined on the Pleadings

Plaintiffs argue that it would be inappropriate for this Court to address inquiry notice on a motion to dismiss, Pl. Opp. at 19-20, but on that point they ignore *New England Health Care,* in which the Sixth Circuit affirmed the dismissal of a § 10(b) claim on precisely that ground. *See* 336 F.3d at 502. The only Sixth Circuit case Plaintiffs cite to the contrary is an irrelevant

unpublished Sixth Circuit case interpreting provisions of the Internal Revenue Code and Michigan state law. Pl. Opp. at 19 (citing *Trust v. United States,* No. 94-2189, 1996 U.S. App. LEXIS 5717, at *7-*12 (6th Cir. Feb. 20, 1996)). In fact, Plaintiffs cite no authority from any jurisdiction supporting the proposition that a court may not, in an appropriate case, decide inquiry notice on the pleadings.[1] This case is, like *New England Health Care*, one in which the Court need look no further than Plaintiffs' initial complaint to conclude as a matter of law that Plaintiffs were on inquiry notice of their potential claims against E&Y at the time of its filing.

> B.  **Plaintiffs' Initial Complaint Demonstrates That They Were on Inquiry Notice Well Before March 2003**

As argued in E&Y's opening brief, Plaintiffs' original complaint against Provident and others, filed September 20, 2000, alleged material misstatements in the Proxy Materials related to Provident's "securitization accounting." That complaint cited figures relating to the "sale of loans and leases" taken from Provident's publicly filed 1998 and 1999 financial statements. First Compl. ¶ 52. Those publicly filed financial statements are replete with references to the off-balance-sheet accounting applied to the securitization transactions. *See, e.g.,* Provident Financial Group Inc., 1998 Annual Report, filed with the SEC on March 30, 1999, at 10 ("Management remains committed to moving assets off-balance sheet"). Among those securitizations are precisely the securitizations involved in the 2003 restatements that form the core of Plaintiffs'

---

[1] Plaintiffs seek to create the illusion that inquiry notice may not be decided on the pleadings – notwithstanding *New England Health Care* – by misrepresenting another of the decisions they cite. Plaintiffs cite *Marks v. CDW Computer Centers Inc.,* 122 F.3d 363, 367 (7th Cir. 1997) for the proposition that inquiry notice "is a question of fact", Pl. Opp. 19-20, but disingenuously omit the qualifying phrase that immediately follows that quote: "and as such is *often* inappropriate for resolution on a motion to dismiss." *Marks*, 122 F.3d at 367 (emphasis added). In fact, *all* of Plaintiffs' relevant authorities acknowledge that inquiry notice may be determined on the pleadings in the appropriate case. *See Young v. Lepone*, 305 F.3d 1, 8 (1st Cir. 2002) (noting that when signs of fraud are sufficient, they "may as a matter of law be deemed to alert a reasonable investor to the possibility of fraudulent conduct"); *Blatt v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 916 F. Supp. 1343, 1356 (D.N.J. 1996) (acknowledging that inquiry notice may be found as a matter of law in some circumstances); *Nivram Corp. v. Harcourt Brace Jovanovich Inc.,* 840 F. Supp. 243, 250 (S.D.N.Y. 1993) (noting that an inquiry notice "determination is not precluded on a motion to dismiss").

claims against E&Y.[2]  Indeed, Plaintiffs repeatedly stress that their current claims relate to the off-balance-sheet accounting originally applied to these securitizations.  *See, e.g.,* Pl. Opp. at 3, 10, 15, 38-39; CAC ¶¶ 100, 101, 108, 109.  Plaintiffs' Opposition fails even to address the allegations in their original complaint, much less to refute the fact that such allegations demonstrate that Plaintiffs were on inquiry notice when they filed that complaint in 2000.

      Instead of responding to E&Y's argument, Plaintiffs assert that the "best evidence in support of [their] lack of inquiry notice in this case is the fact that Plaintiffs did not file any claims against Defendant E&Y prior to March 2003."  Pl. Opp. at 24.  Whether Plaintiffs actually knew and understood that they had potential claims against E&Y, however, is not the issue.  Rather, "the limitations period begins to run when a plaintiff *should have discovered*, by exercising reasonable diligence, the facts underlying the alleged fraud."  *New England Health Care*, 336 F.3d at 501 (emphasis added).  That Plaintiffs had such notice here can be determined, as it was in *New England Health Care,* simply by reference to Plaintiffs' original complaint against E&Y's client.  For this reason, Plaintiffs' lengthy discussion of "storm warnings", Pl. Opp. at 20-22, is also irrelevant to this Court's inquiry.  The "storm warning" analysis in a typical case seeks to determine "when the plaintiff learned facts that would cause a reasonable investor to investigate the possibility of fraud."  *New England Health Care*, 336 F.3d at 501.  In *New England Health Care*, however, the Sixth Circuit did not evaluate such warnings because the fact that the plaintiffs had previously filed a complaint against the defendant-accountants' client demonstrated as a matter of law that plaintiffs were on inquiry notice of related claims

---

[2] It should be noted that although Plaintiffs at various points imply that Provident and/or E&Y misrepresented the restatement because the March 5, 2003 press release "purported to deal with only nine auto leases", see, *e.g.,* Pl. Opp. at 10, the press release – attached to the Consolidated Amended Complaint ("CAC") as Exhibit A – in fact quite clearly referenced "nine auto lease financing transactions," CAC, Ex. A, which in context referred to the securitizations of pools of auto leases that Provident had done over a period of years.  It is impossible to fathom that Plaintiffs or their counsel – or any reasonable investor – could believe that nine *individual*

against the accountants themselves regarding the same transactions. *See id.* at 501-502. The same is true here. This Court need not assess the existence of "storm warnings" to determine inquiry notice because the original complaint against Provident, which alleged accounting irregularities related to the same transactions that are the subject of the CAC, demonstrates as a matter of law that Plaintiffs' duty to investigate potential claims against Provident's accountants had already been triggered.

Accordingly, this Court should hold that Plaintiffs were on inquiry notice of their potential claims against E&Y more than two years before they first filed a claim on April 20, 2003. Thus, whether the Court applies the one-year statute of limitations established by the Supreme Court or the two-year statute of limitations created in Sarbanes-Oxley, Plaintiffs' §§ 10(b) and 14(a) claims against E&Y are time-barred and should be dismissed with prejudice.

### III. PLAINTIFFS HAVE NOT ADEQUATELY PLEADED FRAUDULENT INTENT AS REQUIRED FOR THEIR SECTION 10(B) CLAIM

#### A. Under the PSLRA, Lack of Scienter May Be Decided on the Pleadings

Plaintiffs argue that the question of scienter is "inherently fact specific" and should be left to the trier of fact. Pl. Opp. at 34. In support, however, they erroneously rely on pre-PSLRA caselaw. Pl. Opp. at 34 (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 235 (1988), and *Goldman v. Belden*, 754 F.2d 1059, 1068 (2d Cir. 1985)). Plaintiffs themselves acknowledge that the PSLRA, enacted in 1995, " 'changed the pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter.' " Pl. Opp. at 27 (quoting *In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 335 n.57 (S.D.N.Y. 2003)). In fact, scienter was a prime focus of the Reform Act's effort to curb abusive

---

(continued…)

auto leases would account for an error of more than $70 million. Plaintiffs' statements to the contrary simply illustrate how far they will go to invent a misrepresentation where there is none.

securities litigation. *See* S. Rep. No. 104-98, at 4-5 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683-84. Although Congress did not alter the substantive standards, it did "strengthen[] the minimum showing necessary to survive a motion to dismiss." *Vencor*, 251 F.3d at 550. This Court should reject Plaintiffs' invitation to ignore this heightened pleading standard. Under the PSLRA, courts regularly dismiss complaints for failure to adequately allege scienter. *See, e.g., Comshare*, 183 F.3d at 553 (affirming dismissal of complaint with prejudice for failure to adequately allege scienter); *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 827 (8th Cir. 2003) (same); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 517 (S.D. Ohio 2000); *In re Hayes Lemmerz Int'l, Inc.*, 271 F. Supp. 2d 1007, 1019 (E.D. Mich. 2003); *In re Fritz Cos. Sec. Litig.*, 282 F. Supp. 2d 1105, 1113 (N.D. Cal. 2003).

**B.    Plaintiffs Fail To Address Any of the Deficiencies E&Y Has Identified**

Although financial restatements stemming from fraud grab headlines, it is a fact of corporate life that "[r]estatements of earnings are common" and often result from "honest error." *Goldberg v. Household Bank*, 890 F.2d 965, 967 (7th Cir. 1989). For that reason, it is clear beyond dispute, as the Sixth Circuit and others have held, that a court cannot infer the requisite fraudulent intent merely from the fact of accounting errors or a restatement of financial statements. *See Comshare*, 183 F.3d at 553.[3] That is true even if those errors are large. *See Hayes Lemmerz*, 271 F. Supp. 2d at 1019 (dismissing claim against auditor based on $250 million restatement for lack of scienter where plaintiff did not allege "specific deficiencies" in

---

[3] *Accord Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996)("Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim"); *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002) (holding that "the mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter"); *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881 (8th Cir. 2002); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1261 (10th Cir. 2001) ("Only where such allegations [of violations of GAAP] are coupled with evidence that the violations or irregularities were the result of the defendant's fraudulent intent to mislead investors may they be sufficient to state a claim."); *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1208 (11th Cir. 2001).

accountants' review). And it is true even if those errors continued for a long period of time. *See Comshare*, 183 F.3d at 553 ("Although Plaintiffs speculate that it is likely that Defendants knew of the GAAP violations because they occurred over a long period of time, claims of securities fraud cannot rest on speculation and conclusory allegations") (internal quotation omitted). The cases upon which Plaintiffs rely support the same proposition. *See, e.g., In re Health Management, Inc. Sec. Litig.*, 970 F. Supp. 192, 203 (E.D.N.Y. 1997) ("[V]iolations of GAAP and GAAS provisions, without corresponding fraudulent intent, are insufficient to state a securities fraud claim.").

Plaintiffs have failed to plead any facts to support an inference of fraudulent intent rather than honest error here. They claim to have done so in two ways. First, they claim that E&Y had actual knowledge of the accounting errors at the time. CAC ¶ 107. There are, however, no facts alleged in the complaint to support that assertion. Unlike the case they cite, *Florida State Board of Administration v. Green Tree Financial Corp.*, 270 F.3d 645, 665 (8th Cir. 2001), or Sixth Circuit cases such as *Vencor*, Plaintiffs allege no internal information to which E&Y had access that would support an inference of knowledge. In *Green Tree*, plaintiffs alleged that the defendants knew specific facts at the time that discredited the assumptions on which the financial statements were based. *Id.* at 665. In *Vencor*, plaintiffs pointed to statements the defendants made to their employees that were contrary to the statements the company was making to securities markets. *See* 251 F.3d at 557, 563. Plaintiffs allege nothing of the kind here. Although Plaintiffs make much of cases such as *Green Tree*, their argument that E&Y had access to information showing actual knowledge rests only on the assertion "that Defendant E&Y had access to Provident's [erroneous] financial statements." Pl. Opp. at 37. Coupled with the unsupported conclusory assertion that E&Y "knew that Provident's earnings were materially

misstated", *id.*, Plaintiffs conclude that "[a]s a result, Defendant E&Y had actual knowledge that its opinion on those [erroneous] financial statements were [*sic*] materially false and misleading." *Id.* at 37-38. This is an utter tautology: E&Y had actual knowledge, Plaintiffs claim, because it had access to the erroneous financial statements and knew they were false. Such doubletalk seeks to conceal the absence of even one alleged fact suggesting, let alone showing, that E&Y had actual knowledge of an accounting error before March, 2003. A claim of securities fraud cannot rest on such "speculation and conclusory allegations." *Comshare,* 183 F.3d at 553 (citation omitted).

Second, Plaintiffs argue that they have adequately alleged that E&Y recklessly disregarded GAAP and GAAS standards. They only repeat, however, the conclusory allegations to that effect in the CAC. In securities cases, the Sixth Circuit has stressed that recklessness is "akin to conscious disregard." *Id.* at 550. Thus, a plaintiff cannot establish fraudulent intent based merely on a hindsight showing of error "[w]ithout allegations of particular facts demonstrating how the defendants . . . were aware of a GAAP violation and disregarded it." *Kushner*, 317 F.3d at 827 (affirming dismissal of complaint). At a minimum, Plaintiffs must allege facts suggesting "an egregious refusal to see the obvious." *DSAM Global Value Fund*, 288 F.3d at 390 (citation omitted). Put another way, to draw a strong inference of fraudulent intent, Plaintiffs must "allege[] specific facts that illustrate 'red flags' that should have put Defendants on notice of the [accounting] errors, or that demonstrate reasons for Defendants to have questioned" the accounting treatment. *Comshare*, 183 F.3d at 553.

The cases Plaintiffs cite stand for the same proposition. In *Health Management*, for example, the red flags included the facts that nearly 50% of the company's year-end fiscal inventory was counted as "in-transit" during physical inventory counts, despite the fact that the

company "rarely, if ever, shipped significant amounts of inventory between its facilities" and that auditors failed to "exercise heightened scrutiny" after an SEC inquiry regarding the company's accounts receivable. 970 F. Supp. at 203. Similarly, in *Ades v. Deloitte & Touche*, 799 F. Supp. 1493 (S.D.N.Y. 1992), the plaintiffs had alleged specific "red flag warnings" that went unheeded, including the fact that sales booked on the last day of the fiscal year included approximately 20% of the client's total receivables, and that the auditor had to delay its audit opinion in order to resolve issues with respect to accounts receivable. *Id.* at 1500-01.

Here, Plaintiffs have alleged no such "red flags" from which this Court could draw a strong inference that E&Y consciously disregarded potential accounting errors. E&Y detailed in its opening brief how the CAC's allegations fall short. E&Y Br. at 10-15. In their Opposition, Plaintiffs do not answer those points but merely characterize the decision whether to treat auto leases as on- or off-balance-sheet as "fundamental" and assert that no objective party could find that "E&Y did not know how to properly account for such auto lease transactions." Pl. Opp. at 38. Such irrelevant speculation notwithstanding, Plaintiffs have alleged no facts from which this Court could infer that E&Y "conscious[ly] disregard[ed]" the proper accounting treatment. *Comshare*, 183 F.3d at 550.[4]

Finally, although Plaintiffs continue to argue that E&Y had the motive to commit fraud, they acknowledge that such allegations cannot by themselves supply the missing fraudulent intent. Pl. Opp. at 40. They also utterly fail to respond to E&Y's argument that the facts pleaded here – a client relationship and the accompanying audit fees – would not establish motive in any

---

[4] It is worth noting that the CAC itself cites a Provident press release acknowledging that PricewaterhouseCoopers ("PwC") concluded that the errors were unintentional. *See* E&Y Br., Ex. A. This same press release, effectively incorporated into the CAC, also contradicts Plaintiffs' frequent assertion in their Opposition that E&Y did not change the accounting treatment for these transactions until PwC forced it to do so. Pl. Opp. at 5, 23. The press release indicates that PwC was not retained until March 12, 2003, a week after Provident, in consultation with E&Y, announced the discovery of the accounting error.

case. Plaintiffs note their "disagree[ment] based upon the case law cited above", Pl. Opp. at 39, but they address none of the authorities E&Y cited on this point. E&Y Br. at 16-17. Further discussion, therefore, is unnecessary. Plaintiffs have alleged no motive that would bolster their assertion of fraudulent intent.

In sum, Plaintiffs have failed to meet their PSLRA burden of pleading with particularity facts supporting a strong inference of scienter. As already noted, the Sixth Circuit, sitting en banc, has held that the PSLRA requires Plaintiffs to establish fraudulent intent as the "most plausible of competing inferences." *Vencor*, 251 F.3d at 553. Here, it is not. The press releases attached to and cited in Plaintiffs' complaint state that Provident discovered accounting irregularities while testing a financial model and in the course of examining those irregularities determined that it had made errors in the accounting treatment for a number of auto lease securitizations. CAC, Ex. A. E&Y then worked with Provident immediately to correct those errors, *id*., as Plaintiffs acknowledge auditors are required to do. Pl. Opp. at 15. Plaintiffs have alleged no facts suggesting that E&Y knew these errors existed before March, 2003. They have alleged no warning signs that E&Y ignored. They have alleged no reason why E&Y would have concealed these errors, only to reveal them in March 2003. They have alleged nothing that E&Y had to gain from concealing them. The most plausible of competing inferences – indeed, the only possible inference from these facts – is that there was no fraud here.

IV.   **PLAINTIFFS HAVE NOT ADEQUATELY PLEADED FRAUDULENT INTENT AS REQUIRED FOR THEIR SECTION 14(A) CLAIM**

Plaintiffs' claim against E&Y under § 14(a) of the Exchange Act, even if not time-barred, fails as a matter of law for the same reason as their § 10(b) claim: they have failed to adequately allege scienter. Plaintiffs do not dispute that, as the Sixth Circuit has expressly held, scienter "is an element of liability in private suits under [the provisions of § 14(a)] as they apply to outside

accountants." *Adams v. Standard Knitting Mills, Inc.,* 623 F.2d 422, 428 (6th Cir. 1980). Accordingly, even if they have adequately pleaded § 14(a)'s other elements, *see* Pl. Opp. at 40-41, their claim fails on this critical element.

### V.   PLAINTIFFS' COMMON LAW FRAUD CLAIM ALSO FAILS AS A MATTER OF LAW.

Plaintiffs' common law fraud claim fails on multiple grounds. E&Y explained in its opening brief how all of Plaintiffs' state law claims, including the common law fraud claim, are subject to and expressly barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p(b). In response, Plaintiffs do not mention the argument or even cite to the statute. Even if SLUSA did not bar the common law fraud claim, however, it fails for other independent reasons. First, Plaintiffs are incorrect that their common law fraud claim is governed by the four-year statute of limitations in Ohio Rev. Code § 2305.09. Pl. Opp. at 42. Rather, it is well-settled under Ohio law that a common law fraud claim "predicated upon the sale of securities" is subject to the two-year statute of limitations found in Ohio Rev. Code § 1707.43. *Ferry v. Shefchuk,* No. 2002-H-2480, 2003 WL 21139014, at *2 (Ohio Ct. App. 2003) (citing *Ferritto v. Alejandro,* 743 N.E.2d 978 (Ohio Ct. App. 2000)). As Plaintiffs' common law fraud claim is predicated entirely on the OHSL merger transaction, their claim is governed by the two-year statute of limitations and is therefore barred for the reasons explained in Sec. II above. Second, for the reasons stated in Sec. III above, Plaintiffs have failed to allege fraud with the requisite particularity.

### CONCLUSION

For the foregoing reasons as well as those set forth in E&Y's opening brief, Counts I, II, IV, V, VII, VIII and X against E&Y should be dismissed with prejudice.

Dated: February 27, 2004                    Respectfully submitted,

                                            s/James E. Gauch
                                            _____
                                            Stephen J. Brogan
                                            James E. Gauch (Ohio Bar. No. 0042161)
                                            Mary Helen Perry
                                            Heather Guilette Walser
                                            Cheryl E. Forchilli
                                            JONES DAY
                                            51 Louisiana Ave. NW
                                            Washington, D.C.  20001
                                            Telephone:    (202) 879-3939
                                            Facsimile:    (202) 626-1700

                                            Attorneys for Defendant
                                            Ernst & Young

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing REPLY AND MEMORANDUM IN SUPPORT OF ERNST & YOUNG'S MOTION TO DISMISS was served upon:

Michael G. Brautigam, Esq.
Gene Mesh & Associates
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
Attorney for Plaintiff

by facsimile and ordinary U.S. mail, this 27th day of February, 2004, and upon all other counsel of record via the Court's electronic case filing system.

/s/ James E. Gauch
James E. Gauch