LEXSEE 1994 U.S. APP. LEXIS 27508

**LOGAN O. CHANCE, Plaintiff-Appellant, v. F. N. WOLF & COMPANY, INCORPORATED; ROBERT H. TAGGART, Defendants-Appellees.**

No. 93-2390

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

*1994 U.S. App. LEXIS 27508*

**June 6, 1994, Argued**
**September 30, 1994, Decided**

**NOTICE:** [*1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *36 F.3d 1091, 1994 U.S. App. LEXIS 33912*.

**PRIOR HISTORY:** Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-93-344-A).

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The United States District Court for the Eastern District of Virginia, at Alexandria, found in favor of appellee stock broker in appellant investor's claim under state and federal securities laws.

**OVERVIEW:** Investor filed the securities fraud action against the stockbroker after the investor's stock portfolio dropped significantly in value. He charged that the stockbroker ignored his instruction that he purchase only safe stocks and pressured him, with misleading information about the reliability of risky ventures, to invest in them. The trial court concluded that the fluctuations in the investor's portfolio and the explicit warnings given to him in the prospectuses put him on notice very early in his dealings with the stockbroker that extraordinary risks were being taken. Because the one-year statute of limitations for private causes of action under the federal securities laws ran from the date the fraud should have been discovered, the trial court concluded that the federal counts were barred by the statute of limitations. The trial court also concluded that, because of the portfolio fluctuations and the prospectus warnings, the investor was not justified in relying upon the alleged misrepresentations committed by the stockbroker. On appeal, the court analyzed and agreed with the trial court conclusions.

**OUTCOME:** The trial court ruling was affirmed.

**CORE TERMS:** stock, misrepresentation, prospectuses, portfolio, warnings, dropped, statute of limitations, notice, federal securities, common law fraud, matter of law, prospectus, monthly, broker, statute of limitations defense, investor, fluctuations, invest, drop, Virginia Securities Act, Securities Act, fiduciary relationship, limitations period, breach of contract, equitable tolling, inquiry notice, assurances, justifiable reliance, conservative, initiated

**LexisNexis (TM) HEADNOTES- Core Concepts:**

*Civil Procedure > Appeals > Standards of Review*
[HN1] Judgment as a matter of law under Rule 50 will be upheld on appeal if under the governing law there can be but one reasonable conclusion as to the verdict. In reviewing the district court's decision, the court must view the evidence in the light most favorable to the non-movant.

*Securities Law > Bases for Liability*
[HN2] The Securities Act of 1934 provides that a claim is timely filed only if it is filed within one year after the discovery of the facts constituting the violation and within three years of such violation. *15 U.S.C.S. § 78i*(e).

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN3] The objective standard of due diligence requires reasonable investigation of the possibility of a misrepresentation once an individual has been placed on inquiry notice of wrong-doing. Where the underlying facts are undisputed, the issue of whether the plaintiff has been put on inquiry notice can be decided as a matter of law.

Inquiry notice is triggered by evidence of the possibility of fraud, not by complete exposure of the alleged scam. Merely bringing suit after the scheme has been laid bare will not satisfy the requirements of due diligence when there have been prior warnings that something was amiss.

*Governments > Legislation > Statutes of Limitations > Equitable Estoppel*

[HN4] The doctrine of equitable estoppel prevents a defendant from "lulling his adversary into a false sense of security" about application of the statute of limitations, and then pleading the statute of limitations defense. *Barry v. Donnelly, 781 F.2d 1040, 1042 (4th Cir. 1986)*. It is typically applied where a defendant has by words or conduct induced a plaintiff not to file within the statutory period, e.g., by settlement negotiations coupled with assurances.

**COUNSEL:** Argued: John Peter Connolly, LAW OFFICES OF JOHN P. CONNOLLY, Alexandria, Virginia, for Appellant.

Argued: James Christopher Cosby, MALONEY, YEATTS & BARR, P.C., Richmond, Virginia, for Appellees.

On Brief: H. Richard Mayberry, Jr., RICHARD MAYBERRY & ASSOCIATES, Washington, D.C., for Appellant.

On Brief: John S. Barr, Steven S. Biss, MALONEY, YEATTS & BARR, P.C., Richmond, Virginia, for Appellees.

**JUDGES:** Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and NIEMEYER, Circuit Judges.

**OPINIONBY:** NIEMEYER

**OPINION: OPINION**

NIEMEYER, Circuit Judge:

Logan O. Chance filed this securities fraud action in March 1993 against Robert H. Taggart, his stock broker, and F.N. Wolf & Company, Taggart's employer, after his stock portfolio dropped significantly in value. He charged that defendants ignored his instruction that he purchase **[*2]** only safe stocks and pressured him, with misleading information about the reliability of risky ventures, to invest in them. His complaint alleges, inter alia, violations of federal and Virginia securities laws and common law fraud. The district court granted defendants' motion for judgment as a matter of law at the close of plaintiff's case, concluding that the federal securities claims were not filed within the applicable statute of limitations and that the Virginia claims were defective because there was no justifiable reliance by Chance upon any alleged misrepresentations by defendants. Finding no error, we affirm.

I

Chance retired from the United States Navy in 1992 after 26 years of active service, having developed expertise in such areas as engineering, military weaponry, heavy artillery, maintenance, and navigation. Upon retirement, he accepted a position with Hughes Aircraft Corporation, where he was involved in the management and repair of submarine torpedoes. He has a Bachelor of Science degree in mathematics and a Master of Science degree in systems management. Until the early 1990's, he had invested his savings conservatively, in mutual funds, certificates of deposit, **[*3]** and bonds, and he had accumulated assets of approximately $80,000 to $100,000.

In January 1991, Chance received an unsolicited telephone call from Charles Tyrrell, a stock broker employed by defendant F.N. Wolf & Company, in Reston, Virginia. Having recently attended investment seminars, Chance was contemplating putting some of his assets in the stock market, and he agreed to meet with Tyrrell. Tyrrell visited Chance at Chance's office in February 1991 when, as Chance states, he told Tyrrell that he would be interested in investing about $15,000 to $20,000 in the stock market, but that he sought long-term growth through safe investments that would preserve principal. Since Chance planned to use these assets to supplement his Navy retirement income, he emphasized that he wanted to avoid speculative investments. Chance was never asked to sign a new account agreement or document.

A few days later, Tyrrell called Chance to urge that he invest $5,000 in Nacoma Consolidated Industries, Inc. Tyrrell said, "It was a small company, very good company, it was ready to grow. It was a very good company for [Chance]." Acting on the advice, Chance purchased almost $6,000 worth of Nacoma stock. **[*4]**

In March 1991 Tyrrell left F.N. Wolf, and defendant Robert Taggart assumed responsibility for Chance's account. On Taggart's advice, Chance made his second stock purchase in March 1991, this one involving almost $20,000 worth of Communications Group, Inc. stock. After Chance "reviewed diligently" the March monthly statement of his stock portfolio, which covered only four days of his ownership of Communications Group stock, Chance noticed that the stock had dropped 36% in value, representing a total loss to Chance of more than $7,000. The April monthly statement showed that Communications Group dropped even further, and by the

end of May it had lost more than half of its original value. Nevertheless, on May 17 and 30, 1991, Chance followed Taggart's advice and purchased more than $7,000 worth of two other stocks. One of these stocks, Vision Technologies International, Inc., dropped more than 42% on the first day he owned it, representing a loss to Chance of almost $1,800.

In the ensuing months, Taggart convinced Chance to invest in more stocks. Four of the stocks for which Chance paid almost $20,000, were initial public offerings, and Chance received prospectuses detailing the [*5] goals of the companies and the risks associated with investing in them. On the front page of each of those prospectuses, in bold and/or capital letters, were warnings about the high degree of risk associated with the stocks. Typical of these warnings was that on the prospectus for Great American Recreation, Inc., which read:

> These Securities Involve a High Degree of Risk and Immediate Substantial Dilution and Should Not Be Purchased By Investors Who Cannot Afford the Loss of Their Entire Investment. See "Risk Factors" and "Dilution".

Among the seven pages of "risk factors" detailed in the Great American Recreation prospectus were the absence of any liability insurance, a working capital deficiency, a history of significant losses, the company's dependence upon favorable weather conditions, and the planned immediate dilution of stock value. Chance was provided with these prospectuses, either before or shortly after he made purchases, during the period from June to November 1991. Chance stated at trial that when he asked about the warnings, that Taggart reassured him that he need not be concerned because the language in the prospectuses was "boilerplate."

When Chance received [*6] the June 1991 statement from F.N. Wolf, it showed that his investments had lost approximately 10% in that month alone. Chance initiated a meeting with Taggart and Michael Dunn, the F.N. Wolf office manager and Taggart's boss, because Chance was concerned about the prospect of losing his original investment. Chance expressed his concerns, but he left the meeting reassured that his account was being handled properly. According to Chance, Dunn and Taggart told him that there was nothing in the account that was not appropriate for his conservative investment goals.

On Taggart's urging, Chance continued to invest in new stocks through early 1992. Chance stated that Taggart employed high pressure sales tactics, calling him as often as 10-12 times per week at home, at the office, and while he was travelling. According to Chance, none of these conversations ever touched upon the risks involved in any of the purchases. By the middle of May 1992, over a year after he opened an account with F.N. Wolf, Chance had invested in 12 different stocks, and the value of his portfolio reached a high of almost $80,000.

Chance claims that he did not discover that defendants had ignored his investment goals [*7] until May 25, 1992, when he realized, in reviewing his monthly statement, that the value of his portfolio had dropped from an initial investment of $110,000 to a value of slightly less than $60,000. While he understood that losses in the range of 10% might reflect unavoidable fluctuations in the market, he could not conceive of why "conservative" investments could drop almost 50% during a period when the market as a whole was healthy. Chance sent two letters to F.N. Wolf seeking an explanation for the poor performance of his stocks, but neither letter was answered. Eventually, he moved his portfolio to another broker and sold the majority of the stocks which he had purchased through F.N. Wolf.

Chance filed this action on March 16, 1993. His complaint alleged that defendants' knowing disregard for his stated investment objectives violated federal securities laws, including §§ 12(2) & 15 of the Securities Act of 1933, *15 U.S.C. §§ 77l (2) & 77o*, §§ 10(b) & 20(a) of the Securities Act of 1934, *15 U.S.C. §§ 78j(b) & 78t(a)*, and Rule 10b-5 promulgated under § 10(b), *17 C.F.R. § 240.10b-5*, along with the Virginia [*8] Securities Act, *Va. Code Ann. § 13.1-502*. In addition, he alleged breach of contract, fraud, and breach of fiduciary duty, all under Virginia law.

The case proceeded to trial on all counts, and Chance testified to his experiences with defendants and presented testimony of a securities broker to the effect that the stocks recommended by defendants were highly speculative and not appropriate for one looking for conservative investments to nurture retirement assets. At the close of Chance's case, the district court granted defendants' motion for judgment as a matter of law under *Federal Rule of Civil Procedure 50* on all counts. The court concluded that the fluctuations in Chance's portfolio and the explicit warnings given to him in the prospectuses put him on notice very early in his dealings with defendants, and almost two years before the complaint was filed, about the alleged fraud. Because the one-year statute of limitations for private causes of action under the federal securities laws runs from the date the fraud should have been discovered, the court concluded that the federal counts were barred by the statute of limitations. The court also concluded that, because of the portfolio [*9] fluctuations and the prospectus warnings, Chance was not justified in relying upon the alleged misrepresentations committed by

defendants. Since justifiable reliance is an essential element of a Virginia Securities Act violation and common law fraud, the court dismissed those counts. The court dismissed Chance's breach of contract count because no contract had been proved, and it dismissed the breach of fiduciary count because, under Virginia law, the relationship between stock broker and client is not a fiduciary relationship.

Chance now appeals the dismissal of the federal and state securities counts and the common law fraud count. He argues that he did not have sufficient notice of defendants' fraud until May 1992, when he learned of the precipitous drop in the value of his portfolio. According to Chance, the repeated reassurances he received from defendants justified his continuing faith in them despite the stock losses and the "boilerplate" language in the prospectuses. Alternatively, he argues, the continuing misrepresentations by defendants equitably estopped them from pleading the statute of limitations defense. He also challenges the district court's finding that he was not [*10] justified in relying upon the alleged misrepresentations, arguing that the jury should have been permitted to decide his claim for fraud and his claim under the Virginia Securities Act. He does not appeal the district court's ruling on the breach of contract and breach of fiduciary counts.

II

[HN1] Judgment as a matter of law under Rule 50 will be upheld on appeal "if under the governing law there can be but one reasonable conclusion as to the verdict." *Goedel v. Norfolk & Western Ry. Co., 13 F.3d 807, 810 (4th Cir. 1994)* (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986))*. In reviewing the district court's decision, we must view the evidence in the light most favorable to the non-movant. Id.

As all parties agree, Chance's federal securities claims are subject to the statute of limitations set forward in § 9(e) of the Securities Act of 1934. See *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 & n.9, 115 L. Ed. 2d 321, 111 S. Ct. 2773 (1991)*. [HN2] That Act provides that [*11] a claim is timely filed only if it is filed "within one year after the discovery of the facts constituting the violation and within three years of such violation," *15 U.S.C. § 78i*(e), and Chance must plead and prove facts which show that his action was filed within the specified limitations period. *SeeCaviness v. Derand Resources Corp., 983 F.2d 1295 (4th Cir. 1993)*. Because the complaint was filed on March 16, 1993, it could survive the motion for judgment as a matter of law only if Chance could show that he did not know of facts constituting the alleged violation until after March 16, 1992. Moreover, as we have held, the limitations period may start to run before the plaintiff knows all of the facts supporting his claim:

> [HN3]
> The objective standard of due diligence requires reasonable investigation of the possibility of a misrepresentation once an individual has been placed on inquiry notice of wrong-doing. Where the underlying facts are undisputed, the issue of whether the plaintiff has been put on inquiry notice can be decided as a matter of law. Inquiry notice is triggered by evidence of the possibility [*12] of fraud, not by complete exposure of the alleged scam. Merely bringing suit after the scheme has been laid bare . . . will not satisfy the requirements of due diligence when there have been prior warnings that something was amiss.

*Brumbaugh v. Princeton Partners, 985 F.2d 157, 162 (4th Cir. 1993)* (internal citations omitted)(emphasis added). This rule encourages plaintiffs to take actions to bring the alleged fraud to light, grants some sense of repose to defendants, and assures that evidence presented on the claim will be fresh. Id.

We agree with the district court that Chance was put on notice with sufficient facts to discover the alleged misrepresentations before March 16, 1992. As the district court noted, the monthly statements sent to Chance from the beginning revealed precipitous fluctuations in the value of his assets and substantial losses. For instance, his $2,500 investment in Vision Technologies International, Inc. in May 1991 dropped to a value of $310 by October 1991. In the course of the month of December 1991, Chance witnessed the value of his investment in Nacoma Consolidated Industries, Inc. drop by almost 50%, from $34,375 [*13] to $17,969. In discussions with Taggart and Dunn, Chance raised the issue of drops in the value of his portfolio, but he failed to make any further inquiry after receiving their reassurances.

If any doubt remained about the issue, the prospectuses sent to Chance placed him on notice that investments which he undertook were not as secure as he had hoped. Even the most cursory examination of those prospectuses, with their explicit warnings placed prominently in bold letters on the front page, alerted the reader about the risky quality of those stocks. As we held in Brumbaugh, "when a prospectus sufficiently discloses the risks inherent in an investment, the investor is on inquiry notice of his claims and the limitations period begins to run from the date of sale on claims of fraud in that prospectus." *Id. at 163*. Chance cannot escape this ruling simply because he as-

serts that he did not receive some of the prospectuses until a short time after he actually bought the stocks because even then he was put on notice of the risky nature of his investments well before March 1992.

Chance's argument that defendants should be equitably estopped from pleading the **[*14]** statute of limitations defense because of their assurances about the quality of the stocks must also fail. [HN4] The doctrine of equitable estoppel prevents a defendant from "lulling his adversary into a false sense of security" about application of the statute of limitations, and then pleading the statute of limitations defense. *Barry v. Donnelly, 781 F.2d 1040, 1042 (4th Cir. 1986)*. It is typically applied where a defendant has by words or conduct induced a plaintiff not to file within the statutory period, e.g., by settlement negotiations coupled with assurances. See *Caviness v. Derand Resources Corp., 983 F.2d 1295, 1302 (4th Cir. 1993)*. We have never read the doctrine of equitable estoppel into the federal securities laws, see *Caviness, 983 F.2d at 1302,* and we need not decide here whether it would be appropriate to do so because Chance has not presented any evidence which might give rise to such a defense. None of the conduct Chance points to in any way induced him to delay filing his action or would cause him to believe the defendants would waive the statute of limitations defense if **[*15]** he waited longer to file.

The evidence that Chance relies on for his estoppel argument is that defendants prevented him from knowing of the existence of his claim through the same conduct that supports his discovery argument under the statute of limitations. These allegations could relate only to a claim of equitable tolling, not equitable estoppel, and the Supreme Court in Lampf concluded that equitable tolling is inconsistent with the structure of the federal limitations statute. See *501 U.S. at 363.* Thus, under either theory, equitable estoppel or equitable tolling, Chance cannot prevail.

### III

Chance also challenges the district court's ruling that he failed to prove his federal and state securities claims and his Virginia common law fraud claim because, even if defendants made fraudulent misrepresentations to him, Chance was not justified in relying upon those misrepresentations. See *Myers v. Finkle, 950 F.2d 165, 167 (4th Cir. 1991)* (setting forward requirement of justifiable reliance for securities claims); *Metrocall of Delaware v. Continental Cellular Corp., 246 Va. 365, 437 S.E.2d 189, 193 (Va. 1993)* **[*16]** (same for Virginia common law fraud). In Myers, we listed eight factors relevant to this inquiry:

> (1) the sophistication and expertise of the plaintiff in financial and securities matters; (2) the existence of long standing business or personal relationships; (3) access to relevant information; (4) the existence of a fiduciary relationship; (5) concealment of the fraud; (6) the opportunity to detect the fraud; (7) whether plaintiff initiated the stock transaction or sought to expedite the transaction; and (8) the generality or specificity of the misrepresentation.

*950 F.2d at 167* (quoting *Foremost Guaranty Corp. v. Meritor Sav. Bank, 910 F.2d 118, 123-24 (4th Cir. 1990))*.

While consideration of a number of these factors might, when considered alone, favor Chance's position — defendants initiated all of the stock transactions, and although Chance is well educated and attended seminars on investment strategies, it would be difficult to call him a sophisticated investor — a consideration of them all inescapably leads to the conclusion that Chance was not justified in his reliance and had every reason to question whatever **[*17]** assurances may have come from defendants. Most importantly, as noted above, Chance had access to relevant information about the volatility of his stocks and had abundant opportunities to discover the alleged fraud when he saw his monthly statements and the prospectuses. As we noted in Myers, "knowledge of information should be imputed to investors who fail to exercise caution when they have in their possession documents apprising them of the risks attendant to the investments." *950 F.2d at 167.* Moreover, Chance cannot overcome this knowledge given to him by a reliance on a special relationship between him and defendants. Chance has not challenged the district court's finding that there was no fiduciary relationship between him and the defendants, and there was no long-standing personal or business relationship between them which might arguably have given to Chance a false sense of security.

For largely the same reasons which control disposition of the statute of limitations issue, we conclude, in agreement with the district court, that Chance was not justified in relying upon defendants' alleged misrepresentations.

The judgment of the district court **[*18]** is

AFFIRMED.