LEXSEE 2001 U.S. DIST. LEXIS 11189

**JEFFREY CROSS and NANCY CROSS, on behalf of themselves and all others similarly situated, Plaintiffs,-against-21ST CENTURY HOLDING COMPANY, EDWARD J. LAWSON, MICHELLE V. LARSON, RONALD A. RAYMOND, PATRICK D. DOYLE, JOSEPH A. EPSTEIN, CARLA L. LEONARD, BRUCE SIMBERG, GILFORD SECURITIES, INC., BREAN MURRAY & COMPANY, INC., FIRST OF MICHIGAN CORPORATION, HOBBES MELVILLE SECURITIES CORPORATION, HOEFER & ARNETT, INC., ORMES CAPITAL MARKETS, PENNSYLVANIA MERCHANT GROUP, PRIME CHARTER LTD., REDWINE & COMPANY, INC., SANDS BROTHERS & COMPANY, and VAN KASPER & COMPANY, Defendants.**

**00 Civ. 4333 (AGS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2001 U.S. Dist. LEXIS 11189*

**August 6, 2001, Decided
August 6, 2001, Filed**

**DISPOSITION:** [*1] Defendants' motion to dismiss complaint granted in part and denied in part. Plaintiffs' motion for class certification denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendants moved to dismiss for failure to state a claim pursuant to *Fed. R. Civ. P. 12(b)(6)*, and plaintiffs moved certify a class of plaintiffs pursuant to *Fed. R. Civ. P. 23* on their claims under §§ 11 and 15 of the Securities Act of 1933 (1933 Act), codified at *15 U.S.C.S. §§ 77k,* 77o, and under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (1934 Act), codified at *15 U.S.C.S. §§ 78j*(b), 78t(a).

**OVERVIEW:** Plaintiff investors' complaint asserted four causes of action: the first charged that all defendants violated § 11 of the 1933 Act because an Amended Registration Statement contained inaccurate or misleading statements, and the third charged that the § 10(b) defendants violated § 10(b) of the 1934 Act as well as S.E.C. Rule 10b-5 by knowingly or recklessly making false or misleading statements about the company. Defendants moved to dismiss the complaint in its entirety, contending, inter alia, that the claims were untimely. The district court granted in part and denied in part this motion. In granting the motion as to plaintiffs' first cause of action, the court held plaintiffs obtained constructive notice of material misstatements in the Amended Registration Statement but did not file their complaint until almost eighteen months after receiving notice. However, the court denied in part dismissal of plaintiffs' third cause of action holding that the plaintiffs were not, as a matter of law, on inquiry notice regarding certain 1998 financial results at the tolling of the relevant statute, *15 U.S.C.S. § 78i*(e), and had adequately pled scienter as to these claims.

**OUTCOME:** Defendants' motion to dismiss the complaint was granted in part and denied in part. Accordingly, plaintiffs' motion for class certification was denied as premature.

**CORE TERMS:** cause of action, press release, ceding, restated, commission income, investor, misstatement, misleading, motion to dismiss, inquiry notice, scienter, financial information, statute of limitations, interview, first cause, notice, pro rata basis, restatement, class certification, matter of law, probability, discovery, accounting, incorrect, pled, intelligence, announced, untimely, finances, leave to replead

**LexisNexis (TM) HEADNOTES- Core Concepts:**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] A court may not dismiss a complaint pursuant to *Fed. R. Civ. P. 12* unless, even when the complaint is liberally construed, it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. On a motion to dismiss, a court must accept as true all of the facts alleged in the complaint. A court must also must draw all reasonable inferences in the light most favorable

Case 1:00-cv-00793-SSB-TSH   Document 279-4   Filed 02/27/2004   Page 2 of 11

Page 2
2001 U.S. Dist. LEXIS 11189, *1

to the plaintiff.

***Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss Securities Law > Securities & Exchange Commission***
[HN2] In deciding a motion to dismiss, a court may consider not only the complaint, but any documents annexed thereto or incorporated therein by reference. A court may also consider documents relied upon and integral to the complaint, even if the plaintiffs have not annexed those documents to the complaint. In deciding a motion to dismiss a securities action, a court may consider public disclosure documents that a defendant was legally required to, and did, file with the Securities Exchange Commission.

***Securities Law > Initial Public Offerings & the Securities Act of 1933 > Statutes of Limitations***
[HN3] A cause of action under § 11 of the Securities Act of 1933 is governed by the statute of limitations set forth in § 13 of the Securities Act of 1933, as amended, codified at *15 U.S.C.S. § 77m. 15 U.S.C.S. § 77m.* Section 13 states, in relevant part, that an action under section 11 is time-barred unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence. *15 U.S.C.S. § 77m.* Section 13 further provides that a § 11 action may not be brought more than three years after the securities were offered to the public.

***Securities Law > Initial Public Offerings & the Securities Act of 1933 > Statutes of Limitations***
[HN4] For purposes of *15 U.S.C.S. § 77m,* a plaintiff in a federal securities case will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud. The test as to when fraud should with reasonable diligence have been discovered is an objective one. The means of knowledge are the same thing in effect as knowledge itself. Moreover, when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry. Such circumstances are often analogized to "storm warnings."

***Securities Law > Initial Public Offerings & the Securities Act of 1933 > Statutes of Limitations***
[HN5] For purposes of triggering the statute of limitations in a federal securities case, while the question of when a reasonable investor of ordinary intelligence would have discovered the existence of a fraud or misstatement sometimes presents an issue of fact, the question may, in appropriate circumstances, be resolved as a matter of law.

***Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss***
[HN6] While it is true that a court must accept as true the facts alleged in a complaint, a court need not accept conclusory allegations. Bald assertions and conclusions of law will not suffice to withstand a motion to dismiss, and the court need not blind itself to facts contained in cognizable documents.

***Securities Law > Initial Public Offerings & the Securities Act of 1933 > Statutes of Limitations***
[HN7] For purposes of surviving a motion to dismiss as untimely under *15 U.S.C.S. § 77m,* an investor need not have notice of the full extent of the fraud or misstatements to be put on inquiry notice. Knowledge of facts giving rise to a duty of inquiry into a portion of the fraud or misstatements is sufficient.

***Securities Law > Initial Public Offerings & the Securities Act of 1933 > Statutes of Limitations***
[HN8] For purposes of dismissal as untimely under *15 U.S.C.S. § 77m,* once an investor is on inquiry notice, he or she must exercise reasonable diligence in investigating the potential for a claim. If the investor does not exercise reasonable diligence, he or she is considered to have possessed constructive knowledge of the fraud or misstatement.

***Securities Law > Bases for Liability > Controlling Persons Liability***
[HN9] A necessary element of a cause of action under § 15 of the Securities Act of 1933 is a primary violation of the Securities Act of 1933, such as a violation of § 11 of the Act. *15 U.S.C.S. § 77o.*

***Securities Law > Initial Public Offerings & the Securities Act of 1933 > Statutes of Limitations***
[HN10] Causes of action under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, codified at *15 U.S.C.S. §§ 78j*(b), 78t(a), and S.E.C. Rule 10b–5 are governed by the statute of limitations set forth in § 9(e) of the Securities Exchange Act of 1934, as amended, codified at *15 U.S.C.S. § 78i*(e). Section 9(e) provides that an action must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation. *15 U.S.C.S. § 78i*(e). The standards for determining discovery under § 9(e) are the same as those set forth for determining discovery under § 13 of the Securities Act of 1933. *15 U.S.C.S. § 77m.*

***Securities Law > Initial Public Offerings & the Securities Act of 1933 > Statutes of Limitations***
[HN11] For purposes of *15 U.S.C.S. § 77m,* knowledge that a press release contained some incorrect or fraudulent financial information is sufficient to put plaintiffs on inquiry notice.

*Securities Law > Initial Public Offerings & the Securities Act of 1933 > Statutes of Limitations*
[HN12] Courts have generally reserved dismissal based on inquiry notice under the statute of limitations, for situations in which the available information directly contradicted the allegedly fraudulent statements.

*Securities Law > Bases for Liability > Deceptive Devices*
[HN13] In order to state a claim under section 10(b) of the Securities Exchange Act of 1934, *15 U.S.C.S. § 77j*(b), and S.E.C. Rule 10b-5, a plaintiff must allege that in connection with the purchase or sale of securities, defendant, acting with scienter, either made a false material representation or omitted to disclose material information so that plaintiff — acting in reliance either on defendant's false representation or its failure to disclose material information — suffered injury and damages. The complaint must also specify each statement alleged to have been misleading, and the reason or reasons why the statement is misleading. *15 U.S.C.S. § 78u-4*(b)(1). Furthermore, the complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. *15 U.S.C.S. § 78u-4*(b)(2).

*Securities Law > Bases for Liability > Deceptive Devices*
[HN14] Pursuant to claims under § 10(b) of the Securities Exchange Act of 1934, codified at *15 U.S.C.S. § 78j*(b), a plaintiff may plead scienter by (a) alleging facts demonstrating that defendants had both the motive and an opportunity to commit fraud or (b) otherwise alleging facts to show strong circumstantial evidence of defendants' conscious misbehavior or recklessness. To qualify as reckless conduct, defendants' conduct must have been "highly unreasonable" and "an extreme departure from the standards of ordinary care" to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it. A strong inference of scienter arises where the complaint sufficiently alleges that the defendants: (1) benefited in a concrete and personal way from the purported fraud, (2) engaged in deliberately illegal behavior, (3) knew facts or had access to information suggesting that their public statements were not accurate, or (4) failed to check information they had a duty to monitor.

*Securities Law > Bases for Liability > Deceptive Devices*
[HN15] A necessary element of a cause of action under § 20(a) of the Securities Exchange Act of 1934, codified at *15 U.S.C.S. § 78t*(a), is a primary violation of the Securities Exchange Act of 1934, such as a violation of § 10(b) of the Act. *15 U.S.C.S. § 78t*(a).

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN16] It is the usual practice upon granting a motion dismiss to allow leave to replead. Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion.

**COUNSEL:** For JEFFREY CROSS, NANCY CROSS, plaintiffs: Stanley M. Grossman, Robert J. Axelrod, Pomerantz, Haudek, Block, Grossman & Gross, L.L.P., New York, NY.

For JEFFREY CROSS, NANCY CROSS, plaintiffs: James S. Bailey, Jr., Bailey & Peterson, P.C., Denver, CO.

For JEFFREY CROSS, NANCY CROSS, plaintiffs: Allen D. Black, David E. Romine, Fine, Kaplan and Black, Philadelphia, PA.

For 21ST CENTURY HOLDING COMPANY, EDWARD J. LAWSON, MICHELLE V. LARSON, RONALD A. RAYMOND, PATRICK D. DOYLE, JOSEPH A. EPSTEIN, CARLA L. LEONARD, BRUCE SIMBERG, defendants: Christopher Gerard Kelly, Holland & Knight LLP, New York, NY.

**JUDGES:** ALLEN G. SCHWARTZ, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ALLEN G. SCHWARTZ

**OPINION:**

### MEMORANDUM ORDER

ALLEN G. SCHWARTZ, UNITED STATES DISTRICT JUDGE

Plaintiffs bring this purported class action pursuant to sections 11 and 15 of the Securities Act of 1933, as amended, *15 U.S.C. §§ 77k,* 77o, and sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended, *15 U.S.C. §§ 78j*(b), **[*2]** 78t(a). Currently before the Court are defendants' motion to dismiss the complaint for failure to state a claim, pursuant to *Fed. R. Civ. P. 12(b)(6)*, and plaintiffs' motion to certify a class of plaintiffs, pursuant to *Fed. R. Civ. P. 23*. For the reasons set forth below, defendants' motion to dismiss is granted in part and denied in part, and plaintiffs' motion for class certification is denied with leave to renew.

### I. BACKGROUND

The following facts are drawn from the complaint and are assumed to be true for purposes of this motion. *See Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).* Plaintiffs are two individuals who,

between November 5, 1998 and August 13, 1999, purchased common stock of defendant 21st Century Holding Company ("21st Century" or the "Company") traceable to 21st Century's initial public offering ("IPO"). (Compl. P 9.) Common stock of 21st Century is publicly traded on the NASDAQ stock market. (*Id.* P 10.) 21st Century is an insurance holding company that engages in insurance underwriting, distribution, and claims processing through its various subsidiaries. (*Id.* P 11.) 21st Century reinsures a portion of its [*3] insurance risks. (*Id.* P 12.) In doing so, 21st Century "cedes" a portion of its risk exposure to the reinsurer, which also receives a share of the premium paid to 21st Century as compensation. (*Id.*) To compensate 21st Century for acquiring the reinsured policies, the reinsurer pays 21st Century a "ceding commission." (*Id.*) The manner in which 21st Century accounted for these ceding commissions has given rise to this action.

Defendant Edward J. Lawson is a co-founder of 21st Century and has at all times since its formation served as its President, Chief Executive Officer, and Chairman of the Board. (*Id.* P 13.) Defendant Michele V. Lawson, incorrectly referred to in the complaint's caption as Michele V. Larson, is a co-founder of 21st Century and has at all times since its formation served as its Vice President-Agency Operations and Treasurer. (*Id.* P 14.) Defendant Ronald A. Raymond has at all relevant times served as a director of 21st Century and as president of one of its subsidiaries. (*Id.* P 15.) Defendant Patrick D. Doyle has at all relevant times served as a director and as Secretary of 21st Century. (*Id.* P 16.) Defendants Joseph A. Epstein, Carla L. [*4] Leonard, and Bruce Simberg have each served as a director of 21st Century at all relevant times. (*Id.* PP 17-19.) Mr. Lawson, Ms. Lawson, Mr. Raymond, Mr. Doyle, Mr. Epstein, Ms. Leonard, and Mr. Simberg are collectively referred to as the "Individual Defendants." The Individual Defendants and 21st Century are together referred to as the "Section 10(b) Defendants." Defendants Gilford Securities, Inc., Brean Murray & Company, First of Michigan Corporation, Hobbes Melville Securities, Inc., Hoefer & Arnett, Inc., Ormes Capital Markets, Pennsylvania Merchant Group, Prime Charter Ltd., Redwine & Company, Sands Brothers & Company, and Van Kasper & Company are each a corporation that served as an underwriter of 21st Century's IPO. (*Id.* PP 25-35.)

On September 17, 1998, 21st Century filed with the United States Securities and Exchange Commission (the "SEC") its Initial Registration Statement, Form SB-2, for the IPO. (*Id.* P 48.) On November 4, 1998, 21st Century filed with the SEC its Amended Registration Statement, Form SB-2/ A. (*Id.*) The Amended Registration Statement included, among other things, financial information for the six-month periods ended June 30, 1997 and 1998, [*5] as well as for the years ended December 31, 1996 and 1997. (*Id.* PP 49, 51.) n1 The Amended Registration Statement also stated, in relevant part, that, "commission income is earned on a pro rata basis over the life of the policies." (*Id.* P 50.) The Amended Registration Statement registered 1,250,000 shares of 21st Century common stock. (*Id.* P 49.) The IPO took place on November 5, 1998, providing 21st Century with $9,000,000 in proceeds after expenses. (*Id.* P 58.) On December 2, 1998, 21st Century issued a press release, which was published on *Business Wire*, announcing its financial results for the three-and nine-month periods ended September 30, 1998 and comparing those results to the results for the comparable periods in 1997. (*Id.* P 59.)

n1 Plaintiffs make various allegations about the contents of "the Registration Statement," but do not define that term. Given the context, the Court construes all references to "the Registration Statement" to be references to the Amended Registration Statement filed November 4, 1998.

[*6]

On December 22, 1998, 21st Century filed with the SEC a Notification of Late Filing, Form 12B-25. That Notification stated that 21st Century could not timely file its Form 10-QSB for the quarter ended September 30, 1998 because "'a change needed to be made in the manner in which the Company recognized certain ceding commission income." (*Id.* P 60.) On December 28, 1998, 21st Century filed with the SEC its Form 10-QSB for the quarter ended September 30, 1998. That Form included financial results for the nine-month period ended September 30, 1998. It also stated that the Company's financial results for 1997 had to be restated "'to reflect the effect of recording unearned ceding commissions for ceded premiums. Previously, the Company had earned the ceding commissions on a written basis.'" (*Id.* P 61.) As a result of that restatement, 21st Century's Deferred Acquisition Costs and Retained Earnings for 1997 were lower than had been reported in the Amended Registration Statement. (*Id.* P 62.)

On January 14, 1999, Mr. Lawson appeared in an interview on the financial television station CNNfn. In response to a question regarding 21st Century's experience of going public, Mr. Lawson [*7] stated that "'for the last three years, we've had 100 percent growth rate with the company.'" (*Id.* P 63.) On March 30, 1999, 21st Century issued a press release, which was published on *Business Wire*, announcing its financial results for the quarter and year ended December 31, 1998. (*Id.* P 64.) These financial results were incorporated in 21st Century's Form 10-

KSB, which was filed with the SEC on March 31, 1999, and in its Form 10-KSB/A, which was filed with the SEC on May 1, 1999. (*Id.*) Both the Form 10-KSB and the Form 10-KSB/A stated that "'commission income is earned on a pro rata basis over the life of the policies.' and that ceding commissions are recognized 'based on the current loss experience for the policy year premiums.'" (*Id.*)

On August 11, 1999, the Company issued a press release, which was published on *PR Newswire*, announcing its financial results for the six-month period ended June 30, 1999. (*Id.* P 67.) For purposes of comparison, the press release also listed net income and earnings per share for the six-month period ended June 30, 1998. However, the financial results provided in the press release for the first half of 1998 were lower than **[*8]** the financial results for the first half of 1998 provided in the Amended Registration Statement. The press release did not explain why the press release's results differed from those in the Amended Registration Statement. (*Id.*) On August 13, 1999, the Company filed with the SEC its Form 10-QSB for the quarter ended June 30, 1999. In this Form, 21st Century revealed for the first time that its financial statements for the periods ended March 31, 1998 and June 30, 1998 required restatement for the same reason 21st Century had previously restated its 1997 financial statements. (*Id.* P 68.) The restated financial results for the six-month period ended June 30, 1998 contained lower Deferred Acquisition Costs, lower Retained Earnings, higher Amortization of Deferred Acquisition Costs, lower Net Income, and lower Net Income Per Share, than the financial results for the same time period presented in the Amended Registration Statement. (*Id.* P 69.) As a result of the disclosures in the August 13, 1999 Form 10-QSB, the price of 21st Century's common stock decreased by more than 22%. (*Id.* P 70.)

Plaintiffs filed the instant action on June 12, 2000. The complaint asserts four causes **[*9]** of action. The first cause of action charges that all defendants violated section 11 because the Amended Registration Statement contained inaccurate or misleading statements (Compl. PP 72-79.) The second cause of action charges that the Individual Defendants are liable under section 15 because they were controlling persons of the Company at the time of the alleged section 11 violation. (Compl. PP 80-82.) The third cause of action charges that the Section 10(b) Defendants violated section 10(b), and Rule 10b-5 promulgated thereunder, *17 C.F.R. § 240.10b-5*, by knowingly or recklessly making false or misleading statements about the Company, thereby damaging plaintiffs. (Compl. PP 83-87.) The fourth cause of action charges that the Individual Defendants are liable under section 20 because they were controlling persons of the Company at the time of the alleged section 10(b) violation. (Compl. PP 88-90.) Defendants now move, pursuant to Rule 12(b)(6), to dismiss the complaint in its entirety. Plaintiffs move for class certification, pursuant to Rule 23.

II. MOTION TO DISMISS

[HN1] A court may not dismiss a complaint pursuant to *Fed. R. Civ. P. 12* unless, even **[*10]** when the complaint is liberally construed, it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. *Jaghory, 131 F.3d at 329.* On a motion to dismiss, a court must accept as true all of the facts alleged in the complaint. *Id.* A court must also must draw all reasonable inferences in the light most favorable to the plaintiff. *Id.* [HN2] In deciding a motion to dismiss, a court may consider not only the complaint, but any documents annexed thereto or incorporated therein by reference. *Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991).* A court may also consider documents relied upon and integral to the complaint, even if the plaintiffs have not annexed those documents to the complaint. *Id.* In deciding a motion to dismiss a securities action, a court may consider public disclosure documents that a defendant was legally required to, and did, file with the SEC. *Id.*

III. THE FIRST CAUSE OF ACTION

Defendants seek to dismiss the first cause of action on the grounds that it is barred by the applicable statute of limitations. (Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss the **[*11]** Compl. Pursuant to *Rule 12(b)(6) of the Fed. R. Civ. P.* ("Defs.' Mem.") at 8-12.) Plaintiffs respond that they complied with the statute of limitations or that the issue may not be decided as a matter of law on the present record. (Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Pls.' Mem.") at 4-18.) The Court finds that the first cause of action must be dismissed as untimely.

[HN3] A cause of action under section 11 is governed by the statute of limitations set forth in section 13 of the Securities Act of 1933, as amended, *15 U.S.C. § 77m. 15 U.S.C. § 77m; Dodds v. CIGNA Securities, Inc., 12 F.3d 346, 349 (2d Cir. 1993).* Section 13 states, in relevant part, that an action under section 11 is time-barred "unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." *15 U.S.C. § 77m.* Section 13 further provides that a section 11 action may not be brought more than three years after the securities were offered to the public. *Id.* Because 21st Century's IPO took place in November **[*12]** 1998, and this action was filed in June 2000, it is undisputed that plaintiffs have complied with the three-

year requirement. However, the parties dispute whether plaintiffs filed their complaint within one year of the time when they discovered, or should have discovered, the misstatements in the Amended Registration Statement.

[HN4] The time of discovery is determined using the following standards:

> A plaintiff in a federal securities case will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud. . . . "The test as to when fraud should with reasonable diligence have been discovered is an objective one. 'The means of knowledge are the same thing in effect as knowledge itself.'" . . . Moreover, when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry. . . . Such circumstances are often analogized to "storm warnings." . . .

*Dodds, 12 F.3d at 350.* [HN5] While the question [*13] of when a reasonable investor of ordinary intelligence would have discovered the existence of a fraud or misstatement sometimes presents an issue of fact, *e.g. Salinger v. Projectavision, Inc., 934 F. Supp. 1402, 1408 (S.D.N.Y. 1996); In re Executive Telecard, Ltd. Sec. Litig., 913 F. Supp. 280, 283 (S.D.N.Y. 1996),* the question may, in appropriate circumstances, be resolved as a matter of law. *E.g., Dodds, 12 F.3d at 350; Salinger, 934 F. Supp. at 1408; In re Executive Telecard, 913 F. Supp. at 283; Siebert v. Nives, 871 F. Supp. 110, 116 (D. Conn. 1994)* (Cabranes, J.)

Plaintiffs allege that "less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which the complaint is based." (Compl. P 79.) They argue that the Court is bound by this allegation, and so may not dismiss. (Pl.'s Mem. at 4–5.) Plaintiffs are incorrect. [HN6] While it is true that a court must accept as true the facts alleged in a complaint, *e.g., Jaghory, 131 F.3d at 329,* a court need not accept conclusory allegations, *e.g., Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)* [*14] ("bald assertions and conclusions of law will not suffice" to withstand a motion to dismiss), and need not blind itself to facts contained in cognizable documents. *See Cortec, 949 F.2d at 48* (certain documents outside the complaint may be considered on a motion to dismiss). Accordingly, the Court now considers the facts alleged in the complaint and contained in other cognizable documents.

The Amended Registration Statement represented that 21st Century recognized commission income on a pro rata basis and provided financial results for, *inter alia*, the year ended December 31, 1997 and the six months ended June 30, 1998. (Defs.' Ex. 2.) The December 28, 1998 Form 10–QSB restated 21st Century's financial results for the year ended December 31, 1997 and the nine months ended September 30, 1997. It explained that the restatement was necessary because 21st Century had previously recognized ceding commission income on a written, rather than a pro rata, basis. (Defs.' Ex. 4.) The December 28, 1998 Form 10–QSB therefore made clear that the Amended Registration Statement misstated the manner in which ceding commission income was recognized and contained inaccurate financial [*15] results for the year ended December 31, 1997. At a minimum, the December 28, 1998 Form 10–QSB put plaintiffs on inquiry notice; that Form suggested to an investor of ordinary intelligence the probability that information contained in the Amended Registration Statement was incorrect. *See, e.g., Arduini/Messina P'ship v. National Med. Fin. Svcs. Corp., 74 F. Supp. 2d 352, 357–59 (S.D.N.Y. 1999).* The Court does not address the issue of actual notice, as that issue is unnecessary for the resolution of the instant motion.

Plaintiffs make several arguments why they were not on inquiry notice. First, they claim that defendants waived the inquiry notice argument as to the first cause of action. (Pls.' Mem. at 5.) This is incorrect. (Defs.' Mem. at 8.) Next, plaintiffs argue that there was only a "possibility" of a misstatement, not a probability. (Pls.' Mem. at 6.) While a mere possibility of a fraud or misstatement is insufficient to give rise to inquiry notice, *Arduini/Messina, 74 F. Supp. 2d at 358; Salinger, 934 F. Supp. at 1409,* circumstances here demonstrated at least a probability of misstatement. The December 28, 1998 Form 10–QSB [*16] expressly restated the 1997 financial results, and explained that the Company had to restate those results because ceding commission income had been recognized on a written basis. By their terms, these express statements contradict the Amended Registration Statement, which presented different 1997 financial results and stated that all commission income was recognized on a pro rata basis. That is sufficient to suggest a probability of fraud or misstatement. *See, e.g., Arduini/Messina, 74 F. Supp. 2d at 356–59.* Plaintiffs' last argument on this issue is that the December 28, 1998 Form 10–QSB did not give notice of the fact that the financial results for the first half of 1998 required restatement for the same reason as the 1997 financial results. (Pls.' Mem. at 6–14.) The Court addresses that issue below, with respect to the third cause of action. However, the issue of the 1998 financial results is irrelevant to the limitations period for the first cause of ac-

tion. As discussed above, on or about December 28, 1998 plaintiffs were put on inquiry notice that the Amended Registration Statement contained misstatements relating to the manner in which ceding commission income [*17] was recognized. [HN7] An investor need not have notice of the full extent of the fraud or misstatements to be put on inquiry notice. *E.g., Dodds, 12 F.3d at 352; Addeo v. Braver, 956 F. Supp. 443, 450 (S.D.N.Y. 1997)* (Sotomayor, J.); *Siemens Solar Indus. v. Atlantic Richfield Co., 1994 U.S. Dist. LEXIS 3026,* at *11, No. 93 Civ. 1126 (LAP) (S.D.N.Y. Mar. 16, 1994). Knowledge of facts giving rise to a duty of inquiry into a portion of the fraud or misstatements is sufficient. *See Kosovich v. Thomas James Assocs., Inc., 1995 U.S. Dist. LEXIS 3883, No. 93 Civ. 5443 (AGS), 1995 WL 135582,* at *3 (S.D.N.Y. Mar. 29, 1995). Because plaintiffs were on inquiry notice that the Amended Registration Statement contained incorrect financial information for the year ended December 31, 1997 and misstated the manner in which ceding commission income was recognized in 1997, plaintiffs were on inquiry notice as to their entire section 11 claim.

[HN8] Once an investor is on inquiry notice, he or she must exercise reasonable diligence in investigating the potential for a claim. *Addeo, 956 F. Supp. at 449; Kosovich, 1995 WL 135582,* at *4. If the [*18] investor does not exercise reasonable diligence, he or she is considered to have possessed constructive knowledge of the fraud or misstatement. *Addeo, 956 F. Supp. at 449.* The complaint in this action is devoid of any allegation of reasonable diligence. Accordingly, the Court finds, as a matter of law, that on or about December 28, 1998 plaintiffs obtained constructive notice of material misstatements in the Amended Registration Statement. Plaintiffs did not file the instant complaint until June 12, 2000, almost eighteen months after they constructively discovered the misstatements giving rise to their first cause of action. Accordingly, the first cause of action is dismissed as untimely under section 13.

### III. THE SECOND CAUSE OF ACTION

Defendants seek to dismiss the second cause of action on the grounds that a section 15 cause of action depends on a viable section 11 cause of action, which they contend is not present here. (Defs.' Mem. at 34.) Plaintiffs respond that the second cause of action should not be dismissed because the first cause of action should not be dismissed. (Pl.'s Mem. at 25 n.10.) [HN9] A necessary element of a cause of action under section 15 is [*19] a primary violation of the Securities Act of 1933, such as a violation of section 11. *15 U.S.C. § 77o.* Because the Court has dismissed plaintiffs' section 11 claim as untimely, plaintiffs' section 15 claim necessarily fails. Accordingly, the second cause of action is dismissed.

### IV. THE THIRD CAUSE OF ACTION

Defendants seek to dismiss the third cause of action on the grounds that it is barred by the applicable statute of limitations and that it is inadequately pled. (Defs.' Mem. at 12-22.) Plaintiffs respond that they complied with the statute of limitations or that the issue may not be decided as a matter of law on the present record. (Pls.' Mem. at 4-18.) They also argue that they have pled their claim with the necessary particularity. (Pls.' Mem. at 18-25.) The Court finds that the third cause of action must be dismissed in part.

A. The Statute of Limitations

[HN10] Causes of action under Sections 10(b) and 20(a) and Rule 10b-5 are governed by the statute of limitations set forth in section 9(e) of the Securities Exchange Act of 1934, as amended, *15 U.S.C. § 78i*(e). *Dodds, 12 F.3d at 349-50; Kosovich, 1995 WL 135582,* [*20] at *1. Section 9(e) provides that an action must be commenced "within one year after the discovery of the facts constituting the violation and within three years after such violation." *15 U.S.C. § 78i*(e). The standards for determining discovery under section 9(e) are the same as those set forth above for determining discovery under section 13 of the Securities Act of 1933. *See Dodds, 12 F.3d at 349-50* (setting forth one analysis for both statutes of limitations). Again, there is no question that the complaint complied with the three-year requirement. All of the acts alleged in the complaint occurred in 1998 and 1999, while the complaint was filed in 2000. However, the parties again disagree about whether plaintiffs filed suit within one year of discovery of the facts giving rise to their causes of action.

Plaintiffs allege six (mis)statements giving rise to their third cause of action: a December 2, 1998 press release; the December 28, 1998 Form 10-QSB; a January 14, 1999 interview given by Mr. Lawson; a March 30, 1999 press release; a March 31, 1999 Form 10-KSB; and a May 1, 1999 Form 10-KSB/A. (Compl. PP 59-65.) With respect to the December 2, 1998 press [*21] release, the statute of limitations began to run on or about December 28, 1998 for substantially the reasons that it began to run at that time with respect to the Amended Registration Statement. The December 2, 1998 press release contained financial results for the nine months ended September 30, 1997. (Defs.' Ex. 6.) Those same results were restated in the December 28, 1998 Form 10-QSB because of the method previously used to account for ceding commissions. (Defs.' Ex. 4.) The fact that, twenty-six days after issuing the press release, defendants restated some of the same financial results because they had previously used an accounting method different than the one they claimed

they used, would have suggested to an investor of ordinary intelligence the probability that he or she had been defrauded. *See, e.g., Arduini/Messina, 74 F. Supp. 2d at 356-59.* As noted above, whether plaintiffs realized, or even could have realized, the full extent of the fraud or misstatements at that time is irrelevant. [HN11] Knowledge that the press release contained some incorrect or fraudulent financial information was sufficient to put plaintiffs on inquiry notice. *Dodds, 12 F.3d at 352;* **[\*22]** *Addeo, 956 F. Supp. at 450; Kosovich, 1995 WL 135582,* at *3. Plaintiffs were thus on inquiry notice and obligated to investigate with reasonable diligence. However, as noted above, the complaint alleges no reasonably diligent investigation. Accordingly, as a matter of law, the Court finds that on or about December 28, 1998 plaintiffs were on constructive notice of their section 10(b) claim to the extent that the claim arises out of the December 2, 1998 press release. To the extent that press release forms the basis for the third cause of action, that cause of action is untimely because plaintiffs did not file the complaint until June 12, 2000. Accordingly, the third cause of action is dismissed in so far as it is based on the December 2, 1998 press release.

With respect to the other five statements giving rise to the section 10(b) claim, however, the Court cannot now state as a matter of law that plaintiffs had notice on or about December 28, 1998. None of the five statements in question are alleged to have contained the original (i.e. not restated) 1997 financial results. Thus, notice cannot be found based on the rationale applicable to the Amended **[\*23]** Registration Statement and the December 2, 1998 press release. Defendants argue that public documents available in December 1998 unquestionably put the plaintiffs on notice that the originally reported financial results for the first half of 1998 needed to be restated. (Defs.' Mem. at 12-20.) Defendants contend that the Company's December 22, 1998 Notice of Late Filing alerted investors that the Company needed to change its method of recognizing ceding commission income. This change, defendants claim, obviously was taking place as of December 1998. (*Id.* at 16.) They next contend that the December 28, 1998 Form 10-QSB, which restated the 1997 financial results because of the accounting change, obviously applied to all financial results prior to those contained in the Form 10-QSB. (*Id.*) Next, they contend that the mix of available information, including the discrepancy between the December 2, 1998 press release and the December 28, 1998 Form 10-QSB, made clear that all financial results prior to December 1998 had to be restated. (*Id.* at 17-18, 20.) Lastly, defendants argue that stock markets are perfectly efficient, immediately incorporating all available information into **[\*24]** the stock price, but that the Company's stock price did not drop in the four business days after the August 13, 1999 filing that plaintiffs say gave them notice. (*Id.* at 18-20.)

Plaintiffs respond that the documents in question did not put the plaintiffs on notice that the originally reported financial results for the first half of 1998 needed to be restated. (Pls.' Mem. at 6-15.) They claim that the December 22, 1998 Notice of Late Filing stated only that 21st Century was changing its method of accounting for certain ceding commission income. (*Id.* at 7-8.) The December 28, 1998 Form 10-QSB, according to plaintiffs, makes absolutely clear that the change in accounting practices applied only to the 1997 financial results, not the 1998 financial results. (*Id.* at 8-9.) The total mix of information would not, plaintiffs contend, have given a reasonable investor notice that the 1998 financial results required restatement. They point out that the Amended Registration Statement, the December 2, 1998 press release, and the December 28, 1998 Form 10-QSB all contain some of the same financial data. (*Id.* at 9-10.) Plaintiffs have also alleged that the price of 21st Century's **[\*25]** common stock did drop as a result of the August 13, 1999 filing. (Compl. P 70.)

The Court has examined the documents in question, all of which are relied upon in and integral to the complaint, and some of which are public disclosure documents that 21st Century was legally required to, and did, file with the SEC. (Compl. PP 48-66; Defs.' Exs. 2-4, 6.) Despite the vehemence with which the parties assert their respective arguments, on the current record the Court finds the documents, and the mix of information, to be ambiguous. The December 22, 1998 Notice of Late Filing states that the Form 10-QSB for the third quarter of 1998 "could not be filed within the prescribed period as a result of the determination that a change needed to be made in the manner in which the Company recognized certain ceding commission income." (Defs.' Ex. 3 at 2.) The word "certain" could reasonably be interpreted to mean that some, but not all, ceding commission income had to be accounted for differently. However, "certain" could also reasonably be interpreted to mean that an unknown percentage, possibly all, of the ceding commission income had to be accounted for differently. The December 28, 1998 Form 10-QSB **[\*26]** is similarly susceptible to more than one interpretation. That document states, in relevant part, that:

> The Company's financial statements as of December 31, 1997 and for the three months and nine months ended September 30, 1997 have been restated to reflect the effect of recording unearned ceding commissions for ceded premiums. Previously, the Company had earned the ceding commissions on a writ-

ten basis. The Company's ceding commissions are now amortized over the life of the related policy. . . .

(Defs.' Ex. 4 at 9.) Taking this statement as a whole, a reasonable investor could read "previously" and "now" to refer either to before and after December 28, 1998 or to before and after December 31, 1997. Having not used any dates in the last two sentences quoted above, 21st Century failed to make clear, one way or the other, when it changed the manner in which it recognized income from ceding commissions. The total mix of information does not clarify matters. The 1998 financial information contained in the Amended Registration Statement, the December 2, 1998 press release, and the December 28, 1998 Form 10-QSB is in some respects consistent and in some respects inconsistent. [*27] (Defs.' Exs. 2, 4, 6.) Nowhere is there an express statement, as there is with respect to the 1997 financial information, that a change has been made. Thus, while the mix of information does present some discrepancies, and perhaps even a possibility of fraud, it does not necessarily suggest a probability of fraud. Finally, the Court declines to hold as a matter of law that stock markets are perfectly efficient and instantaneously incorporate every piece of information into stock prices the moment that information becomes available. The current record, then, could permit a reasonable factfinder to conclude that the plaintiffs were, or were not, on inquiry notice regarding the 1998 financial results on or about December 28, 1998. In this situation dismissal is inappropriate. *See In re Executive Telecard*, 913 F. Supp. at 282-85; *In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1296-97, 1299 (S.D.N.Y. 1996). [HN12] Courts have generally reserved dismissal based on the statute of limitations for situations in which the available information directly contradicted the allegedly fraudulent statements. *See, e.g., Dodds*, 12 F.3d at 349-52 (affirming dismissal [*28] of claim that defendant lied about investments being conservative where prospectuses stated that investments were high-risk and illiquid); *Arduini/Messina*, 74 F. Supp. 2d at 358-59 (dismissing claim where public disclosure documents expressly stated facts that plaintiffs asserted were omitted); *Salinger*, 934 F. Supp. at 1408-12 (dismissing complaint where allegedly fraudulent statements were directly contrary to written disclosures); *Rohland v. Syn-Fuel Assocs. - 1982 Ltd. P'ship*, 879 F. Supp. 322, 329-31 (S.D.N.Y. 1995) (dismissing claim that defendants misrepresented tax risks of investment where memoranda and opinion letters expressly disclosed the tax consequences of which plaintiffs complained). While the parties are free to develop the record and revisit statute of limitations issues on a motion for summary judgment, the Court cannot dismiss the third cause of action as untimely in so far as it arises out of the December 28, 1998 Form 10-QSB; Mr. Lawson's January 14, 1999 interview; the March 30, 1999 press release; the March 31, 1999 Form 10-KSB; or the May 1, 1999 Form 10-KSB/A.

### B. Pleading Requirements

[HN13] In order to state a [*29] claim under section 10(b) and Rule 10b-5, a plaintiff "must allege that in connection with the purchase or sale of securities, defendant, acting with scienter, either made a false material representation or omitted to disclose material information so that plaintiff — acting in reliance either on defendant's false representation or its failure to disclose material information — suffered injury and damages." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir. 2001). The complaint must also "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." 15 U.S.C. § 78u-4(b)(1). Furthermore, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Defendants argue that plaintiffs have failed to adequately plead falsity and scienter. (Defs.' Mem. at 25-33.) Plaintiffs respond that they sufficiently pled that defendants' statements were false or misleading and that defendants acted with scienter. (Pls.' Mem. at 18-25.) The Court finds that [*30] plaintiffs have adequately pled that most of the statements in question were false or misleading and have adequately pled scienter.

### 1. False or Misleading Statements

Plaintiffs clearly identify five specific statements that they allege to be false or misleading: the December 28, 1998 Form 10-QSB; Mr. Lawson's January 14, 1999 interview; the March 30, 1999 press release; the March 31, 1999 Form 10-KSB; or the May 1, 1999 Form 10-KSB/ A. (Compl. PP 61, 63, 64.) Plaintiffs identify who made each statement, the date it was made and the circumstances in which it was made. (*Id.*) Plaintiffs allege that the press release and the three SEC filings contained financial information for 1998. (*Id.* PP 61, 64.) Plaintiffs also allege that the three SEC filings represented that commission income was recognized on a pro rata basis over the life of the policies. (*Id.*) According to plaintiffs, the press release and SEC filings were false or misleading because they failed to explain, as the Section 10(b) Defendants eventually did in August 1999, that the previously-reported financial results for the first half of 1998 had recognized commission income on a written basis, rather than a pro [*31] rata basis. This omission, plaintiffs allege, presented investors and potential investors with an inaccurate depiction of the Company's finances. Plaintiffs specifically allege several respects in which the previously-reported financial results for the first half of 1998 present a more optimistic assessment of 21st Century's fi-

nances than the restated financial results for the same time period, which 21st Century released in August 1999. (*Id.* PP 65-69.) Finally, the complaint alleges that when the Section 10(b) Defendants made these statements, they knew, or were reckless in not knowing, that the financial results for the first half of 1998 had to be restated for the same reason that defendants had previously restated the financial results for 1997. (*Id.* P 65.) Accordingly, plaintiffs have sufficiently pled that the December 28, 1998 Form 10-QSB; the March 30, 1999 press release; the March 31, 1999 Form 10-KSB; and the May 1, 1999 Form 10-KSB/ A were false or misleading. *See In re Scholastic, 252 F.3d at 69-74; Rothman v. Gregor, 220 F.3d 81, 89-90 (2d Cir. 2000).*

Plaintiffs fail, however, to adequately allege the falsity of Mr. Lawson's January 14, 1999 interview. [*32] Plaintiffs allege that" in response to a question concerning 21st Century's experience of going public, [Mr. Lawson stated] that 'for the last three years, we've had 100 percent growth rate with the company.'" (Compl. P 63.) It is unclear how this statement relates to the misstated financial information for the first half of 1998. The statement, on its face, is not even necessarily related to the Company's finances. For all that is alleged in the complaint, Mr. Lawson could have been talking about growth in the number of policies written, growth in the number of employees, or any other manner of growth. Even if the Court draws the reasonable inference that the statement concerns financial information, that is insufficient to establish that the statement was false or misleading. There would still be no reference in the statement to any particular 1998 financial data. The complaint does not allege what type of financial growth is at issue (e.g. revenue, total income, commission income), nor does it allege how the restated financial results for the first half of 1998 prevent whatever growth is at issue from reaching 100 percent. The complaint also does not allege what the relevant financial [*33] information was for 1996 or 1997, which is obviously relevant to a claim of 100 percent growth each year over the three year period. Without more, plaintiffs fail to specify why Mr. Lawson's statement during the January 14, 1999 interview was false or misleading. Accordingly, the third cause of action is dismissed only to the extent it arises out of the January 14, 1999 interview.

2. Scienter

[HN14] A plaintiff may plead scienter by "(a) alleging facts demonstrating that defendants had both the motive and an opportunity to commit fraud or (b) otherwise alleging facts to show strong circumstantial evidence of defendants' conscious misbehavior or recklessness." *In re Scholastic, 252 F.3d at 74; Rothman, 220 F.3d at 90; Novak v. Kasaks, 216 F.3d 300, 307-11 (2d Cir. 2000).*

"To qualify as reckless conduct, defendants' conduct must have been 'highly unreasonable' and 'an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *In re Scholastic, 252 F.3d at 76* (quoting *Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47 (2d Cir. 1978).* [*34] Precedent from the Second Circuit suggests that a strong inference of scienter arises "where the complaint sufficiently alleges that the defendants: (1) benefited in a concrete and personal way from the purported fraud . . . (2) engaged in deliberately illegal behavior . . . (3) knew facts or had access to information suggesting that their public statements were not accurate . . . or (4) failed to check information they had a duty to monitor . . . ." *Novak, 216 F.3d at 311.* Defendants argue that the complaint lacks any facts supporting an inference of scienter. (Defs.' Mem. at 28-33.) Plaintiffs contend that the facts alleged in the complaint fit within the third *Novak* category. (Pls.' Mem. at 22-23.) The Court finds that the complaint alleges that the Section 10(b) Defendants had access to information suggesting that their public statements were not accurate.

In November 1998, 21st Century filed its Amended Registration Statement. That document represented that the Company had particular financial results for 1996, 1997, and the first half of 1998. That document also represented that the Company followed a particular accounting policy: recognition of commission [*35] income on a pro rata basis. (Compl. PP 50-51.) The Company announced in its December 22, 1998 Notice of Late Filing that it had determined that it needed to change the manner in which it had recognized "certain" ceding commission income. (Compl. P 60; Defs.' Ex. 3.) Six days later, in its Form 10-QSB, the Company restated its 1997 financial results because the Company had not, in fact, recognized ceding commission income on a pro rata basis. Instead, it had recognized that income on a written basis. No mention was made of having used the written basis in any year other than 1997. (Compl. P 61; Defs.' Ex. 4.) In August 1999, the Section 10(b) Defendants announced that the financial results for the first half of 1998 required restatement for the same reason that the 1997 results had been restated nine months earlier. (Compl. PP 67-69.) From the allegations in the complaint, and from the possible facts that are not alleged, one can reasonably infer from the complaint that the restatement of the 1998 results was based upon the same information as the restatement of the 1997 results, rather than upon any new information learned during 1999. Accordingly, it is alleged that from December 28, 1998 through [*36] August 13, 1999, the Section 10(b) Defendants at least had access to information suggesting that the results for the first half of 1998 needed to be restated and that the Section 10(b)

Defendants had not followed their announced accounting policy during the first half of 1998. In other words, it is alleged that the danger that the financial results for the first half of 1998 were incorrect, because the wrong accounting policy had been used, was so obvious that the Section 10(b) Defendants must have been aware of it. Despite having access to the information described above, despite the obviousness of the danger, the Section 10(b) Defendants made, or caused to be made, statements about the Company's finances that did not acknowledge that the results for the first half of 1998 needed to be restated because the Company had not followed its announced accounting practice. (Compl. PP 61-65.) These statements were misleading because the original (i.e. not restated) results for the first half of 1998 were inflated, thereby presenting an overly optimistic picture of the Company's finances. (Compl. P 69) These statements were also misleading because they suggested that the Company had in 1998 [*37] followed an accounting policy that it had not, in fact, employed. (Compl. P 68.) The complaint therefore alleges that the Section 10(b) Defendants had access to information suggesting that their statements were inaccurate. This is sufficient to allege recklessness. *See In re Scholastic, 252 F.3d at 76-78* (recklessness alleged where, despite access to facts suggesting increasing rate of returns, defendants did not disclose increase in returns, adjust financial information, or follow policy regarding evaluation of inventory); *Rothman, 220 F.3d at 90-92* (recklessness alleged where defendants had not followed announced policy of expensing unrecoverable royalty advances despite knowledge that advances could not be recovered); *Novak, 216 F.3d at 311-12* (scienter alleged where defendants had made statements suggesting conformity with markdown policy and acceptable inventory levels despite knowledge that company markdown policy was not being followed and that inventory level was too high). Accordingly, the Court denies the motion to dismiss the third cause of action for failure to plead scienter.

## V. THE FOURTH CAUSE OF ACTION

Defendants [*38] seek to dismiss the fourth cause of action on the grounds that a section 20(a) cause of action depends on a viable section 10(b) cause of action which (they contend) is not present here. (Defs.' Mem. at 34.) Plaintiffs respond that the fourth cause of action should not be dismissed because the third cause of action should not be dismissed. (Pl.'s Mem. at 25 n.10.) [HN15] A necessary element of a cause of action under section 20(a) is a primary violation of the Securities Exchange Act of 1934, such as a violation of section 10(b). *15 U.S.C. § 78t*(a). The Court has dismissed the section 10(b) cause of action to the extent that it arises out of the December 2, 1998 press release or the January 14, 1999 interview. Accordingly, the motion to dismiss the fourth cause of action is denied except with regard to the December 2, 1998 press release and the January 14, 1999 interview, as to which it is granted.

## IV. LEAVE TO REPLEAD

Plaintiffs have requested leave to replead in the event that any part of their complaint is dismissed. (Pls.' Mem. at 25 n.11.) " [HN16] It is the usual practice upon granting a motion dismiss to allow leave to replead. . . . Although leave to replead is [*39] within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *Cortec, 949 F.2d at 48.* Here, it may be possible for the plaintiffs to allege valid claims in an amended complaint. In addition, the motion to dismiss was directed to the original complaint; plaintiffs have not yet filed an amended pleading. Accordingly, leave to replead is granted.

## V. CLASS CERTIFICATION

Plaintiffs have moved for class certification. Because the Court has dismissed the complaint in part, and because plaintiffs may or may not file an amended complaint, a motion for class certification is premature at this time. Accordingly, the motion is denied without prejudice. Plaintiffs may renew their motion for class certification after the parties have filed all of their pleadings.

## VI. CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint is granted in part and denied in part. Plaintiffs' motion for class certification is denied with leave to renew after all pleadings have been filed. If plaintiffs wish to file an amended complaint, they must do so not later than thirty days from the date of [*40] this order.

SO ORDERED.

ALLEN G. SCHWARTZ, U.S.D.J.

Dated: New York, New York

August 6, 2001