UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN, et al. | : | Civil Action No. C-1-00-793 |
| Plaintiffs, | : | Judge Sandra S. Beckwith |
| vs. | : | Magistrate Judge Timothy Hogan |
| OHSL FINANCIAL CORP., et al. | : | |
| Defendants. | : | |

## PLAINTIFFS' MOTION TO STRIKE OR OTHERWISE NOT CONSIDER THE AFFIDAVIT OF TAYFUN TUZUN SUBMITTED WITH PROVIDENT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs hereby move this Court to strike or otherwise not consider the affidavit of Tayfun Tuzun submitted with Provident's memorandum in opposition to plaintiffs' motion for summary judgment. As grounds for the motion, Plaintiffs respectfully submit that the Tuzun affidavit should be stricken because:

1. Tuzun does not qualify as a witness "qualified as an expert by knowledge, skill, experience, training, or education" within the meaning of Fed. R. Evid. 702 to offer the opinions included in the affidavit; and

2. Tuzun's affidavit does not otherwise satisfy the admissibility requirements established by Red. R. Evid. 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993);

1

3. Tuzun is not only a Provident Senior Vice President—and thus cannot even claim to be an independent expert, but is also a fact witness who was intimately involved in the "off balance sheet" transactions. Tuzun's affidavit is entirely self-serving, and thus unreliable, since he is merely opining on his own work which he, not surprisingly, finds satisfactory;

4. In addition to Mr. Tuzun's complete lack of qualifications to offer expert testimony in this case, Mr. Tuzun is not qualified as an expert by "knowledge, skill, experience, training, or education" in the area of accounting and auditing, because he is not an accountant, and according to his affidavit, has no special skills in that area. Not surprisingly, the Tuzun affidavit is almost completely devoid of accounting terminology, since Mr. Tuzun is apparently unfamiliar with accounting and auditing terms and concepts.

A memorandum in support of this motion is attached hereto.

Dated: 27 February 2004

**GENE MESH & ASSOCIATES**

Respectfully Submitted,

*/s/ Gene Mesh*

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the Class

2

## MEMORANDUM IN SUPPORT OF MOTION TO STRIKE

### I.  PRELIMINARY STATEMENT

Rule 702 of Evidence, which governs the admissibility of expert testimony, provides that

> if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.

In their opposition brief opposing plaintiffs' motion for partial summary judgment, Provident offers an affidavit from Tayfun Tuzun, Ph.D. presumably in opposition to the Fuerman expert report. The Tuzun affidavit should be stricken or otherwise not considered by this Court.

There is nothing in the affidavit to indicate that Tuzun is qualified to offer opinions on any accounting term or concept, or that his "observations" satisfy Fed. R. Evid. 702. By his own sworn statement, Tuzun is an economist, not an accountant, and it does not appear that he has specialized knowledge, training, or expertise in assessing the adverse impacts of the restatements. Further, it does not appear that Mr. Tuzun performed the studies, analysis, or testing necessary to make any opinion reliable and thus admissible under Rule 702.

The available evidence is quite to the contrary. Far from being an independent expert—or one who could even claim independence with a straight face—Mr. Tuzun is a Provident Senior Vice President. But it gets worse. Not only is Mr. Tuzun a Provident Senior Vice President, but in the course of his duties and responsibilities, he had intimate

3

involvement with the cause of the problems—"off the books accounting" leading to the massive restatements. Indeed, his name appears frequently in the more than 100,000 pages of documents reviewed by plaintiffs' counsel on this issue alone, because Tuzun was intimately involved in many aspects of this fraudulent accounting.

What Provident appears to be doing is touting the credentials of the affiant—that he has a Ph.D.—which under some circumstances would suggest a degree of expertise in a certain area, and then because of this so-called expertise, have him slip his opinion in, on another topic, even though this is not appropriate for a fact witness. Provident cannot have it both ways.

## II.   ARGUMENT

### The Tuzun Affidavit Should Be Stricken Because It Does Not Comply With Rule 702 of the Federal Rules of Evidence

The Federal Rules of Evidence establish clear rules governing the admission of expert testimony. To express an opinion as an expert witness, an individual must be "qualified as an expert by knowledge, skill, experience, training, or education" in the area in which he will testify. *See*, Fed. R. Evid. 702. Moreover, the witness must demonstrate that his testimony "is based on sufficient facts or data" and "is the product of reliable principles and methods," and that he or she "has applied the principles and methods reliably to the facts of the case." Id. *See also, Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The Tuzun affidavit does not satisfy any of those requirements.

As the Sixth Circuit has noted, "the issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a *specific question*." *Berry v. Detroit*, 25 F. 3d 1342,

1351, (6th Cir. 1996) (emphasis added). Here, there is no evidence that Tuzun is qualified….by knowledge, skill, experience, training or education" to offer an opinion on the "specific questions" of the adverse impact of the Restatements. *See*, Fed. R. Evid. 702. Indeed, his own affidavit claims only that he is an "economist" with a Ph.D. from Ohio State University. He has zero qualifications as an accounting expert.

As noted in the Preliminary Statement, Tuzun is also a Provident employee. He cannot make a *prima facie* showing of independence, just as he cannot make a *prima facie* showing of expertise in accounting and auditing, or GAAP and GAAS, concepts that must be unfamiliar to him, since they do not appear in his affidavit.

Moreover, there is no indication, from his own description of his qualifications or that Tuzun has ever before performed studies, written articles, or expressed opinions on Restatements, GAAP or GAAS, or anything directly related to accounting or auditing. The Sixth Circuit has held that a witness does not become qualified as an expert merely by attempting to offer an "expert" opinion. *See, Pride v. BIC Corp.*, 218 F. 3d at 577. Thus because there is no showing that Tuzun is qualified to testify as an expert in Restatements or anything to do with GAAP, GAAS, or accounting and auditing, his affidavit should be stricken or otherwise not considered.

Tuzun's affidavit should also be excluded because there is no showing that the opinions he expresses are reliable. Although Tuzun claims to have formed an opinion that Dr. Fuerman is wrong, he does not say with any degree of specificity what documents, if any, he reviewed and relied on in reaching his conclusions. While Tuzun is likely competent to testify if called as a witness at trial as a fact witness, his testimony would be limited to what he saw, heard, and did; he would be incompetent to offer expert

testimony, i.e. opinion testimony, which is what he is surreptitiously attempting to do here.

Any opinions that Tuzun expresses about complex accounting issues—in effect, opining on his own decisions about keeping a high percentage of Provident's financial transactions "off the books" and finding them correct, appear to be inherently unreliable, since he is seemingly attempting to offer expert opinions on behalf of himself and his employer that their conduct was entirely appropriate. In other words, he appears to be attempting to justify and minimize the impact of decisions he made related to the ultimate issue—the appropriateness of the accounting treatment of pools of auto leases that caused the massive restatement.

The Federal Rules of Evidence are carefully crafted to exclude such nonsense. If Tuzun is to testify, it will be as a fact witness, not as an expert. Additionally, there is almost no basis for plaintiffs to assess what documents Tuzun consulted because he does not provide such a list. Plaintiffs are thus left to guess at what Tuzun reviewed. Similarly, plaintiffs are left to guess at his credentials, since they are nowhere included. All Tuzun states is that he has a Ph.D. in economics and has worked for Provident for more than a decade. While these may be impressive credentials in the appropriate context, these credentials, without more, do not automatically qualify Tuzun as an expert in accounting and auditing, and in GAAP and GAAS. Indeed, given the paucity of facts with which to evaluate Tuzun's credentials, it is impossible for plaintiffs—and the Court—to fully evaluate his background, as no CV is included. What little is known about his background—that he has a Ph.D. in economics and that he has worked for

Provident for more than a decade—should have the effect of <u>disqualifying</u> Tuzun as he attempts to offer expert testimony in this case.

Tuzun's affidavit is also obscure in describing the scope of his assignment or what he actually did. A fair reading of Tuzun's affidavit is that he disagrees with Dr. Fuerman, but he is not in a position to offer any opinion with respect to Dr. Fuerman because he is not qualified. He does not have an accounting background. He is not familiar with GAAP and GAAS. His affidavit does not incorporate accounting terms that one would expect to see in an affidavit of this nature. Tuzun is merely attempting to defend decisions he made, and those made by his employer. So far as it appears from his affidavit, his assignment consisted entirely of reviewing the Fuerman affidavit and disagreeing with it.

With respect to areas that Tuzun may arguably be more qualified to address, plainitiffs, and the Court, are unable to assess Tuzun's credentials to determine his fitness to offer opinions with respect to materiality and to the markets in general. Some of his conclusions, however, seem so bizarre that they do not even rise to the level of "junk science," and would get laughed out of court before they are ever presented to a jury.

The best example of this laughable economics is the Provident party line, which Tuzun swears to, found in the last few sentences of ¶ 4 of the Tuzun affidavit, where Tuzun states as follows:

> As a result of the difference in how income and expenses are generated and reported for operating leases versus leased equipment, this reduced Provident's reported net income for the 8 year period from 1994 through 2002 by an additional $44.4 million on a cumulative basis. This reduction in income, however, was only a matter of timing, not an overall reduction of net income. As a result

7

> of this change, it meant that, although previously reported income would be reduced by $44 million, Provident's future net income would be <u>increased</u> by approximately the same amount. The issue underlying the Second Restatement was just the timing of certain income. Provident's overall net income as an enterprise did not change to any significant extent.

Tuzun's conclusions on this point do not take into account the time value of money over a period of many years, an amazing position for a bank to take. The ridiculousness of Tuzun's (and Provident's) position is amply demonstrated by the Schoenblum affidavit submitted in opposition to the Tuzun affidavit. (Attached as Exhibit A). Unlike Tuzun, Schoenblum is both independent and a true expert in these matters (although not accounting matters) and has testified in many state and federal courts across the country, and has always been recognized as an expert in the area of economic damages.

The absence of an event study regarding the price rise shortly after the Second Restatement makes Tuzun's conclusions entirely unreliable, because an event study is a necessary first step in any such analysis. Indeed, courts have found expert opinions about the causes of stock price movements to be unreliable if the testifying expert has failed to perform an event study. *See, In re Northern Telecom Ltd. Sec. Litig.,* 116 F. Supp. 2d 446, 460 (S.D.N.Y. 2000); *Goldkrantz v. Griffin*, 1999 WL 191540, slip op. At *4-5 (S.D. N.Y. April 6, 1999), aff'd, 201 F. 3d 431 (2d Cir. 2000) Attached as Exhibit B; *In re Executive Telecard, Ltd. Sec. Litig.* 979 F. Supp. 1021, 1025-1027 (S.D.N.Y. 1997); *In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1181 (N.D. Cal. 1993); *See also, Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355, 370-372 (E.D.N.Y. 2000). As one court explained, an expert's "failure to conduct a thorough 'event study' would be reason enough to

8

exclude his proposed testimony." *In re Executive Telecard, Ltd. Sec. Litig.*, 979 F. Supp. At 1027.

Without any information indicating that Tuzun's opinions and observations are based upon an accepted methodology, his affidavit is unreliable and therefore inadmissible. *Downs v. Perstorp Components, Inc.* ,2002 WL 22000, slip op. At *3 (6th Cir. January 4, 2002) (expert testimony was properly excluded when expert "simply formed a hypothesis based on his observations of Downs and what he knew of Downs' medical history" and "failed to take the necessary step of either supporting his hypothesis through reference to existing scientific literature or conducting his own tests to prove reliability") Attached as Exhibit C. *Kalamazoo River Study Group v. Rockwell International Corp.*, 171 F. 3d. 1065, 1072, (6th Cir. 1999) (opinions failed to satisfy Daubert, becsue "the inadequate factual basis makes [the expert's] affidavit scientifically unreliable.")

In addition, the affidavit is simply littered with conclusory statements that do not appear to be supported by any source except Tuzun and Tuzun's employer, Provident. For example, Tuzun asserts, without citation to any supporting study or research:

1. Mr. Fuerman is incorrect. (Affidavit ¶ 2).

2. I disagree with Mr. Fuerman's analysis.... (Affidavit ¶ 5).

3. Similarly, I disagree with Mr. Fuerman's opinion that the financial impact of the First Restatement would have been material to Provident's stock price during 1999 or to the OHSL merger. (Affidavit ¶ 6).

In short, Tuzun simply disagrees with Fuerman and Schoenblum, which is hardly surprising given Tuzun's position. He is simply defending indefensible decisions that he likely made and that his employer treated as "off the books" transactions, reminiscent of

9

Enron, which also appears to be defending the various litigations against it based on the advice of professionals. Because Tuzun is attempting to defend his own work and that of his employer, his conclusions, though understandable in these circumstances, are inherently unreliable, are not scientific, and should be laughed out of court.

Because Tuzun's affidavit consists largely of his personal opinions, unsupported by any facts or studies, it should be excluded as unreliable. *See also, Smelser v. Norfolk Southern Ry. Co.* 105 F. 3d at 302 (expert opinion that was predicated upon unsupported assumptison was "unreliable" and should have been excluded); *Berry v. Detroit*, 25 F. 3d at 1352 (statistical expert's "methodology was as suspect of his conclusion" when expert based analysis of whether police shootings were justified on summary data without reviewing "the underlying facts of these cases to determine, among other things, whether the suspect was unarmed"); *Quinnones-Pachecho v. American Airlines*, 979 F. 2d 1, 6-7 (1st Cir. 1992) (testimony properly excluded when expert's analysis was "predicated on an assumption not supported by the record"); *Brown v. Parker-Hannifin Corp.*, 919 F. 2d 308, 311-312 (5th Cir. 1990) (testimony "amounts to speculation" when experts did not investigate relevant conditions and did not test his theories).

### III. CONCLUSION

In opposing summary judgment by denying the materiality of the massive restatements in this case while admitting the materiality of the restatements to the world in March and April 2003, Provident has offered affidavits that violate the Federal Rules of Evidence. The Tuzun affidavit does not dispute—and cannot dispute—that Provident's stock price dropped more than 22% when the First Restatement was announced, leading to the inevitable conclusion that prior to this announcement,

Provident's financial statements were materially false and misleading, and that Provident's stock was materially overvalued. The Tuzun affidavit should be stricken or otherwise not considered because there is no showing that Tuzun would be qualified to offer any expert opinion in this case because of his position as an employee and fact witness on the transactions at issue. Additionally, because there is no showing that Tuzun is qualified to testify as an expert on he adverse impact of Restatements or has provided opinions sufficiently reliable to be admissible under Fed. R. Evid. 702. For the forgoing reasons, Plaintiffs respectfully request that this Court grant their motion to exclude the Tuzun Affidavit.

Dated: 27 February 2004                    Respectfully Submitted,

                                           _____
                                           Gene Mesh (OH Bar # 0002076)
                                           Michael G. Brautigam
                                           GENE MESH & ASSOCIATES
                                           2605 Burnet Avenue
                                           Cincinnati, Ohio 45219-2502
                                           (513) 221-8800
                                           (513) 221-1097 (fax)

                                           *Attorneys for Plaintiffs and the
                                           Putative Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs' Motion to Strike or Otherwise Not Consider the Affidavit of Tayfun Tuzun was served this 27th day of February 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

J. Michale Debbeler, Esq.
John B. Pinney, Esq.
Graydon, Head & Ritchey
511 Walnut Street, Suite 1900
Fifth Third Center
P.O. Box 6464
Cincinnati, Ohio 45202-3157

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202

**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

James E. Gauch, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

/s/ Stephanie A. Hite
Stephanie A. Hite