

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **WALTER W. THIEMANN, et al.** | : | **Civil Action No. C-1-00-793** |
| **Plaintiffs,** | : | **Judge Sandra S. Beckwith** |
| **vs.** | : | **Magistrate Judge Timothy Hogan** |
| **OHSL FINANCIAL CORP., et al.** | : | |
| **Defendants.** | : | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO AMENDED MOTION TO DISMISS OF DEENDANTS OHSL FINANCIAL CORPORATION, OAK HILLS SAVINGS & LOAN COMPANY, F.A., PROVIDENT FINANCIAL GROUP, INC., BRINKER, HANAUER, HILLEBRAND, HUCKE, MCKIERNAN, TENOEVER, ZOELLNER, HOVERSON, COOK, GROTE, MYERS, PEDOTO, STEGER AND CAREY WITH MEMORANDUM IN SUPPORT.**

*UBI JUS IBI REMEDIUM*

Dated: 1 March 2004                **GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the Class

Plaintiffs, by and through counsel, pursuant to Rule 12(b)(6) and Section 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, hereby respond to the Amended Motion to Dismiss of Defendants OHSL Financial Corporation, Oak Hills Savings & Loan Company, F.A., Provident Financial Group, Inc., Brinker, Hanauer, Hillebrand, Hucke, McKiernan, Tenoever, Zoellner, Hoverson, Cook, Grote, Myers, Pedoto, Steger and Carey with Memorandum in Support (hereinafter "Amended Motion to Dismiss"), and submit the following Memorandum and exhibits in support thereof.

Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the Class

## TABLE OF CONTENTS

I.      INTRODUCTION...................................................................1-5

II.     SUMMARY OF ARGUMENTS RAISED AND PRIMARY
        AUTHORITIES RELIED UPON.................................................6-10

        A.      Plaintiffs' Sufficiently Pled a Section 10(b) Upon Which Relief
                Can be Granted.............................................................6

                1.      Plaintiffs Sufficiently Pled that the Proxy Materials
                        Contained Material Misstatements.............................6

                2.      Plaintiffs Sufficiently Pled the Scienter Element of the
                        Section 10(b) Claim.............................................7

        B.      Plaintiffs Timely Filed their Section 10(b) Claim Against the OHSL
                and Provident Defendants Related to the Restatement......................7

                C.      Plaintiffs Sufficiently Pled a Section 11 Claim Upon
                        Which Relief Can be Granted...................................7

                D.      Plaintiffs Sufficiently Pled a Section 12(2) Claim Upon
                        Which Relief Can be Granted...................................8

        E.      Plaintiffs' Timely Filed Their Section 11 and Section 12(2)
                of the Securities Act Against the OHSL and Provident Defendants........8

        F.      Plaintiffs Sufficiently Pled a Section 14 Claim Upon Which Relief
                Can be Granted.............................................................9

        G.      Plaintiffs Sufficiently Pled a Claim for Control Person Liability
                Pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. §77(o)...........9

        H.      Plaintiffs' Sufficiently Pled a Spoliation Claim .............................10

        I.      Plaintiffs' Sufficiently Pled a Claim for Common Law Fraud..............10

        J.      Plaintiffs Sufficiently Pled a Breach of Fiduciary Claim....................10

III.    STATEMENT OF FACTS.........................................................11-22

        A.      OHSL Defendants.......................................................11-13

        B.      Provident Defendants....................................................13-15

C.    Background Behind Merger Between OHSL and Provident............15-18

D.    Materially False and Misleading Proxy Materials/Registration
      Statement.......................................................................18-20

E.    First and Second Restatements.............................................20-22

IV.   LEGAL ARGUMENT...........................................................22-78

A.    Fed.R. Civ. P. 12(b)(6) Motion to Dismiss Standard...................22-23

B.    Plaintiffs' Sufficiently Pled a Section 10(b) Claim of the Exchange
      Act, 15 U.S.C. §78(j)b, Upon Which Relief Can be Granted..........23-39

      1.    The Material Misstatements and Scienter Elements of a
            10(b) Claim Must be Pled in Accordance with the
            Private Securities Litigation Reform Act.........................25-27

      2.    Plaintiffs Sufficiently Pled that the Proxy Materials
            Contained Material Misstatements or Omissions................27-29

            a.    "Your Board of Directors unanimously approved
                  the acquisition and believes that it is in the best
                  interests of the OHSL stockholders."....................29-31

            b.    Opposing a Transaction is Different from Believing
                  that a Deal is "Fair."......................................31-33

            c.    The Resignation of Mr. Herron............................34-37

            d.    Securitization of the Loans................................37-39

      3.    Plaintiffs' Sufficiently Pled the Scienter Element of the
            Section 10(b) Claim...........................................39-45

      4.    Plaintiffs Sufficiently Pled the Reliance Element of the
            Section 10(b) Claim...........................................45-46

C.    Plaintiffs Timely Filed a Section 10(b) Claim Against the OHSL
      and Provident Defendants....................................................46-51

D.    Plaintiffs Sufficiently Plead a Section 11 Claim of the Securities
      Act, 15 U.S.C.§77k, Upon Which Relief Can be Granted..............52-55

E.    Plaintiffs Sufficiently Pled a Section 12(2) Claim of the Securities
      Act, 15 U.S.C. §77l(2), Upon Which Relief Can be Granted..........55-59

F.   Plaintiffs Timely Filed Claims for Violations of Section 11 and
     Section 12(2) of the Securities Act Against the OHSL and
     Provident Defendants.................................................................59-61

G.   Plaintiffs Sufficiently Pled a Section 14 Claim of the Exchange
     Act, 15 U.S.C. §78n(a), Upon Which Relief Can be Granted .........66-66

H.   Plaintiffs Sufficiently Pled a Claim for Control Person Liability
     Pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. §77(o).....66-70

I.   Plaintiffs' Spoliation Claim Should be Not Dismissed Because It
     is Not Barred by the Doctrine of *Res Judicata*...........................71-73

J.   Plaintiffs' Sufficiently Pled a Common Law Fraud Claim Upon
     Which Relief Can be Granted.................................................73-75

K.   Plaintiffs Sufficiently Pled a Breach of Fiduciary Duty Claim
     Upon Which Relief Can be Granted.........................................75-78

V.   CONCLUSION...........................................................................78

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Alessi v. Beracha*, 244 F.Supp.2d 354 (D.C. Del. 2003)..........................................77

*Amercian Pipe and Construction Co.,et al.  v. Utah, et al.*, 414 U.S. 538, 94 S.Ct. 756
        (1974)...................................................................................................51

*Aronson v.TPO, Inc.*, 410 F.Supp. 1375 (S.D.N.Y. 1976)...............................8,56,57

*Ash v. GAF Corp.*, 723 F.2d 1090 (3rd. Cir. 1983).......................................62,64

*Basic, Inc v. Levinson,* 485 U.S 224, 108 S.Ct. 978 (1988)................…..........................45

*Blatt v. Merrill Lynch,* 916 F. Supp. 1343 (D.N.J. 1996)….........…..........................49

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 755 (1975)........................53

*Bovee, et al.  v. Coopers & Lybrand*, et al., 272 F. 3d. 356 (S.D. Ohio 2002)......25,43,47

*Brown v. Enstar Group, Inc.,* 84 F.3d 393, 396 (11th Cir. 1996)............................67

*Brown v. Mendel*, 864 F. Supp. 1138 (M.D. Ala. 1994)….......….........................67

*Carley Capital Group v. Deloitte & Touche*, 27 F.Supp.2d 1324 (N.D. Ga. 1998)….....42

*Central Foundry Co. v. Gondelman,* 166 F.Supp. 429 (D.C. NY 1958)....................63

*Cheney v. Cyberguard Corp.*, 2000 U.S. Dist. LEXIS 16351 at 20, No. 98-6879-CIV-
        GOLD (S.D. Fla.  Jul 31, 2000)....................................................................68

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, (1990)…..…..............................48

*Dasho v. Susquehanna Corp.*, 461 F.2d 11 (7th Cir. 1972)…...................................62

*De La Fuente v. Dci Telecoms*, 206 F.R.D. 369, 386 (S.D.N.Y. 2002).....................50

*Eisen v.Carlisle and Jacquelin, et al.,* 417 U.S. 156, 94 S.Ct. 2140 (1974)................51

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375 (1976)...................39,41,53

*Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544 (E.D. NY. 1971)...27,28

*Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533 (M.D. Fla 1997).........7,8,46,59

*Frandkin v. Ernst*, 571 F. Supp. 829 (N.D. OH 1983)......................................63

*Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333 (6th Cir. 1994).....................46

*Fujisawa Pharmaceutical Co., Ltd. V. Kapoor*, 115 F.3d 1332 (7th Cir. 1997)............48

*Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281 (2d. Cir. N.Y. 1973).......................63

*Gilbert v. Nixon*, 429 F.2d 348 (10th Cir. 1970).................................................62

*Globus v. Law Research Service, Inc.*, 418 F.2d 1276 (2nd Cir. 1969)…….................52

*Goldstein v. Alodex Corp.*, 409 F. Supp. 1201 (E.D. PA, 1976)………......................53

*Gomez v. Toledo*, 446 U.S. 635 (1980).......................................................46,59

*Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761 (3d. Cir. Del. 1976).................64

*Halpern v. Armstrong*, 491 F. Supp. 365, (S.D.N.Y. 1980)...................................63

*Helwig v. Vencor*, 251 F.3d 540 (6th Cir. 2001)........................................27,28,40

*Hill v. Equitable Bank, Nat. Asso.*, 599 F. Supp 1062 (DC Del 1984)...................56,60

*Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680
        (5th Cir. 1971).........................................................................8,56

*Hishon v. King & Spaulding*, 467 U.S. 69, 104 S.Ct. 2229 (1984)..........................22

*Howard v. Everex Sys. Inc.*, 228 F.3d 1057 (9th Cir. 2000).................................66

*I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*, P.C. 936 F.2d 759 (2nd Cir. 1991)…57

*In re Arm Financial*, 2002 U.S. Dist. LEXIS 13451 .....................................50,61

*In re Baesa Sec. Litig.*, 969 F.Supp. 238 (S.D.N.Y. 1997)...................................39

*In re Comshares, Inc. Securities Litigation*, 183 F.3d 542
        (6th Cir. 1999)....................................................... 6,7,24,26,39-41,43

*In re Digital Island Securities Litigation*, 223 F.Supp.2d 546, 560 (D.C. Del. 2002)…9,66

*In re Initial Public Offering Sec. Litigation*, 241 F. Supp.2d 281 (S.D. NY 2003)….…..25

*In re Microstrategy, Inc. Securities Litigation*, 115 F. Supp.2d 620
        (E.D. Va. 2000)...................................................................42-43

*In re Nivram Corp. v. Harcourt Brace Jovanovich,* 840 F. Supp. 243 (S.D.N.Y.). .......49

*In re Ramp Networks, Inc. Securities Litigation,* 201 F.Supp.2d 1051 (N.D. CA 2002)..41

*In re SmarTalk Teleservices, Inc. Sec. Litig.,* 124 F. Supp. 2d 487 (S.D. OH 2000)...40-41

*In re The Baan Co. Sec. Litig.,* 103 F. Supp.2d 1 (D.D.C. 2000)……...…….……….42

*In re Warner Communications Securities Litigation,* 618 F. Supp. 735
   (S.D.N.Y. 1985)…………………………………………………………………….42

*John Nuveen & Co. v.* Sanders, 450 U.S. 1005, 101 S. Ct. 1719 (1981)……………..53,54

*Kaplan v. Rose,* 49 F.3d 1363 (9th Cir. 1994)…………………………………………...67

*Kohler v. Kohler,* 319 F.2d 634 (7th Cir. 1963)………………………………………….28

*Lampf, Pleva, Lipkind, Prupris & Petigrow v. Gilbertson,* 501 U.S. 351,
   111 S.Ct. 2773 (1991)………………………………………………………………….47

*Lipton v. Pathogenesis Corp.,* 284 F.3d 1027 (9th Cir. 2002)…………………………...39

*Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir. 1979)…………………40

*Marks v. CDW Computer Centers, Inc.,* 122 F.3d 363 (7th Cir. 1997)…………………48

*Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239 (3rd. Cir. 2001)……………….48

 *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616 (1970)…………..32,62,64-65

*Molecular Technology Corp. v. Valentine,* 925 F.2d 910 (6th Cir. 1991)……………….45

*Morin v. Turpin,* 778 F.Supp. 711 (S.D.N.Y. 1991)……………………………………..50,61

*New England Heathcare Employees Pension Fund v. Ernst & Young, LLP,*
   336 F.3d 495 (6th Cir. 2003)………………………………...……………………...47-48

*Nickel v. Koehler Mgt. Corp.,* 541 F.2d 611 (6th Cir. 1979)…………………………….74

*Nordstrom, Inc. v. Chubb & Son, Inc.,* 54 F.3d 1424 (9th Cir. 1995)………...…………41

*Papasan v. Allain,* 478 U.S 265, 286, 106 S.Ct. 2932 (1986). …………………………23

*Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111 (5th Cir. 1980)………67

*Pharo v. Smith,* 621 F.2d 656 (5th Cir. 1980)…………………………………..8,57,66-67

*Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101
(W.D. Mich. 1996). ………….....………………………………………46,59

*Richland v. Crandall*, 262 F. Supp. 538 (S.D.N.Y. 1967)……………………………63

*Romine v. Acxiom Corp.*, 296 F.3d 701 (8th Cir. 2002)………………………….52-53

*San Francisco-Oklahoma Petroleum Exploration Corp. v. Carstan Oil Co.*, 765
F.2d 962, (10th Cir. 1985)……....……………………………………………..68

*Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292 (1977)…………………24

*Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434(6th Cir. 1988)……………………23

*Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683 (1974)…………………………………..23

*S.E.C. v. Caserta*, 75 F.Supp.2d 79, 89 (E.D.N.Y. 1999)………………………………..50

*Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3rd. Cir. 1992)………………………….53

*Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567 (11th Cir. 1990)………………………46,60

*Thiemann v. OHSL Financial Corp.*, No. C-1-00-CV-793, (S.D. OH 2001)………….6,28

*Trucker v. Arthur Andersen & Co.*, 646 F.2d 721 (2nd. Cir. 1981)………….…………52

*Trust v. United States*, 77 F.3d 483, ** 3 (6th Cir. 1996)………………………………48

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126 (1976)……………62,64

*Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182 (1953)…………………………………….57

*Wilson v. Great Am. Indus.*, 855 F.2d 987 (2d. Cir. NY 1988)…...…………………63,64

*Woodward v. Wright*, 266 F.2d 108 (10th Cir. 1959)………………………………...57,59

*Yancos v. Lake* County, 953 F. Supp. 187 (N.D. Ohio 1996)………………………….23

*Young v. Lepone,* 305 F.3d 1 (1st. Cir. 2002)…………………………………………48

## STATE CASES

*Belvedere Condominium Unit Owners' Association v. R.E. Roark Cos.* (1993), 67 Ohio

St.3d 274,  617 N.E.2d 1075……………………………………………………75

*Crosby v. Beam* (1989), 47 Ohio St.2d 105, 548 N.E.2d 217 ...............................75

*Davis v. Wal-Mart Stores, Inc.* (2001), 93 Ohio St.3d 488, 756 N.E.2d 657...........71-73

*Grava v. Parkman Township* (1995), 73 Ohio St.3d 379, 653 N.E.2d. 226.................72

*Gries Sports Enterprises, Inc. v Cleveland Browns Football Co.* (1986), 26 Ohio St.3d
    15, 496 N.E.2d 959...............................................................................75

*In re Termination of Employment of Pratt* (1974), 40 Ohio St.2d 107, 321
    N.E.2d 603...................................................................................75

*Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206.................74

*State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas* (2002), 97
    Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92.....................................10,74

*Thirty Four Corp. v. Sixty Seven Corp.* (1993), 91 Ohio App.3d 818, 826
    N.E.2d. 1179..................................................................................10,72

*Thomas v. Matthews* (1916), 94 Ohio St. 34, 113 N.E. 669...................................76

*Thompson v. Central Ohio Cellular, Inc.* (1994), 93 Ohio St.3d 530, 639 N.E.2d 462...75

*Tri-State Computer Exchange v. Burt* (June 20, 2003), 2003 Ohio 3197,
    Hamilton App. No. C-020345.............................................................74

*Williamson v. Rodenberg* (June 30, 1997), Franklin App. No. No. 96APE10-1395.......73

## FEDERAL STATUTES AND RULES

15. U.S.C. §77e....................................................................................56

15. U.S.C. §77k............................................................................2,3,7,52,53,60

15. U.S.C. §77l................................................................................57,60

15. U.S.C. §77(a)(1)...............................................................................60

15. U.S.C. §77(a)(2)...............................................................................60

15. U.S.C. §77l(2)........................................................................2,3,8,55-58

15. U.S.C. §77m...................................................................................60

15. U.S.C. §77(o).........................................................................3,9,66,68

15. U.S.C. §773…………………………………………………………..……………56

15 U.S.C. §78(j)b……………………………………………………………………...3,23,24

15 U.S.C. §78i(e)………………………………………………………………………...47

15. U.S.C. §78(n)(a)………………………………………………………..…………3,9,63-65

15. U.S.C. §78t…………………………………………………………….……………66

28 U.S.C. §1658(b)……………………………………………………………………...47

Fed.R.Civ.P.8…………………………………………………………………………52

Fed. R. Civ. P. 9(b) …………………………………………………...25-26,52,53,73

Fed. R. Civ. 12(b)(6)……………………………………………………………..22

Fed. R. Civ. P. 15(c)…………………………………………………………...7,9,50,61

Local Rule 7.2(a)(3)…………………………………………………………….6

Section 9(e) of the Securities Exchange Act……….…………………………….46

Section 10(b) of the Securities Exchange Act………3,6,7,23-27,39,40,43-51,57,66, 68,69

Section 11 of the Securities Act……..…………………3,7,8,51-55,57,59, 60-61,66,68,69

Section 12(a)(1) of the Securities Act……………………………………………60

Section 12(a)(2) of the Securities Act……………………………………...2,3,8, 55-61,66

Section 14 of the Securities Exchange Act……………………………………3,9,61,64,66

Section 20 of the Securities Exchange Act………………………………………3,9,66-70

17 C.F.R. §230.405…………………………………………………………………67

17 C.F.R. §240.10b-5………………………………………………………………..3,24

SEC Rule 10b-5………………………………………………3,24, 26,39,40,48, 62, 64

SEC Rule 14a-9………………………………………………………………………62-64

## STATE STATUTES AND RULES

Ohio Rev. Code §1707.41……………………………………………………………3

Ohio Rev. Code §1707.43…………………………………………………....3,74

Ohio Rev. Code §2305.09……………………………………………………10, 74

## MISCELLANEOUS

Douglas & Bates, *The Federal Securities Act of 1933*, 43 Yale L.J. 171, 208 (1933)….53

S. Rep. No. 104-98……………………………………………………………26

**I.    <u>INTRODUCTION</u>**

This class action lawsuit was commenced on September 20, 2000. It was filed on behalf of a class of OHSL Financial Corp. shareholders ("OHSL") as a result of Provident Financial Group ("PFGI" or "Provident") acquiring OHSL in 1999. Plaintiffs have alleged that the OHSL and Provident Defendants made misstatements of material fact and deliberately omitted to state material facts in the Proxy Materials/Registration Statement (hereinafter "Proxy Materials") in connection with the purchase or sale of securities. In particular, Plaintiffs have alleged that the material misstatements and omissions of material fact artificially inflated the value of the Provident stock, caused a narrow favorable vote for the merger and ultimately caused OHSL shareholders to incur a substantial financial loss as a result of this transaction.

However, this case is also about corporate suffrage, and about the rights of a public company to vote to merge or not to merge based upon accurate, truthful, and complete information. In the present case, a change in the vote of a mere 63,000 shares would have stopped the merger that Plaintiffs seek to undo. (*See*, Expert Report of Candace Preston, Attached as Exhibit A). The lead Plaintiff, Walter W. Thiemann, who voted his 40,000 shares in favor the merger, based upon the materially false and misleading Proxy Materials, has alleged and submitted affidavits that had he known the true facts, he would have voted his shares against the merger. Simple math shows that a change in the vote of a mere 23,000 shares would have had the effect of having the merger voted down. Consequently, had the following facts been disclosed, it is clear to a reasonable degree of business certainty that the fraudulently induced merger would not have been approved:

1. That former OHSL CEO, Board Member, COB designate, and by far its largest shareholder, Ken Hanauer, had voted his personal shares against the merger and--contrary to the Proxy Materials--did not believe the merger to be in the best interest of the shareholders; (See, Preliminary Expert Report of William Lutz, Ph.D., J.D., Attached as Exhibit B)

2. That Hanauer changed his vote from abstain to in favor of not because he believed in the merge, but because he just gave up; (See, OHSL Board minutes, collectively attached as Exhibit C).

3. That contrary to the Proxy Materials, former OHSL Chairman Norbert Brinker changed his vote from in favor of to abstain and thus did not vote to approve the merger; (See, Exhibit C).

4. That former OHSL director Thomas M. Herron, whose father had long served on the OHSL Board, and whose family had been associated with OHSL for decades, voted against continued negotiations with Provident, resigned from the OHSL Board days before the final vote on the merger with Provident, voted his shares against the merger (by not voting) and, although it was obvious, called each director to inform him of his opposition to the merger the day he resigned (or shortly thereafter, in the case of OHSL director Thomas McKiernan, who was out of the country);

5. That Provident stock was materially overvalued by approximately $17 million dollars due to "off the books" accounting similar to Enron, thus making the merger a $40 million transaction instead of a $57 million deal. (See, Expert Report of Ross D. Fuerman, Attached as Exhibit D).

6. That only half of OHSL's management was in favor of the merger.

7. That the risk of Provident's securitizations was not adequately disclosed. (See, Expert Report of Ross D. Fuerman, Attached as Exhibit D).

8. That Provident had engaged in fraudulent "off the books" accounting that For years, and that its stock was materially overvalued as a result. (See, Expert Report of Ross D. Fuerman, Affidavit of Ervin Schoenblum Attached as Exhibits D and E).

Plaintiffs have alleged eleven causes of action against Defendants OHSL and the

Individual OHSL Defendants (hereinafter "OHSL Defendants") as well as against

Defendants Provident and the Individual Provident Defendants (hereinafter "Provident

Defendants"). They are as follows: Count I (Violation of Section 11 of the Securities Act,

15 U.S.C. §77(k); Count II (Violation of Section 12(2) of the Securities Act, 15 U.S.C. §77l(2); Count III (Violation of Section 15 of the Securities Act, 15 U.S.C. §77(o); Count IV (Violation of Section 14 of the Exchange Act, 15 U.S.C. §78n(a)); Count V (Violation of Section 10(b), 15 U.S.C. §78(J)b of the Exchange Act and Rule 10(b)(5), 17 C.F.R. Section 240.10b-5); Count VI (Violation of Section 20(a) of the Exchange Act); Count VII (Ohio Securities Law Violations under R.C. §1707.41); Count VIII (Ohio securities law violations under R.C. §1707.43); Count IX (spoliation of evidence); Count X (common law fraud); Count XI (Breach of Fiduciary Duty).

By Order of July 25, 2001, this Court previously determined that there are three material misrepresentations contained in the Proxy Materials. (Doc. No. 46). They are as follows: (1) The unanimity of OHSL's Board; (2) Risk Factors/Securitization of the Loans; and (3) Resignation of Thomas Herron (Doc. No. 46). The OHSL and Provident Defendants have taken the rather disturbing position of dedicating the majority of their Amended Motion to Dismiss to arguing the lack of materiality of these statements in the Proxy Materials. As stated above, this Court has already made specific conclusions of law as to what may or may not be material in this action. In arguing their Motion to Dismiss, the OHSL and Provident Defendants completely dismiss this previous ruling of this Court and are arguably in contempt of this Court for doing so.

Further, the OHSL and Provident Defendants also incomprehensibly argue that the allegations of Plaintiffs' Complaint are deficient under the law for purposes a Fed.R.12(b)(6) Motion. Once again, the OHSL and Provident Defendants ignore or disregard the past rulings of this Court. They have the audacity to suggest that the CAC "fails to pass legal muster," (Amended Motion to Dismiss, p. 4), apparently overlooking

the indisputable fact that the substance of the allegations of the CAC have already passed legal muster, and that each new amendment is not an opportunity to get a second bite at the apple[1].

If the allegations of materiality were sufficient against the OHSL and Provident Defendants in the original complaint, it is logically inconsistent for some of those same allegations, which are now re-pled with additional specificity, to somehow be deficient in the CAC. The only argument that could potentially change this result would be a change in the law. The OHSL and Provident Defendants however did not allege any such change in the law in their Motion to Dismiss or Amended Motion to Dismiss.

The only support for such an argument came in the form of the unauthorized letter that John Pinney, counsel for the OHSL and Provident Defendants, submitted to this Court in opposition to the authorized letter submitted by Plaintiffs' counsel. In his letter Mr. Pinney stated:

> "Sixth Circuit caselaw interpreting the federal securities laws and the legal sufficiency of complaints alleging securities law violations is **much different now than it was in July, 2001**. The applicable law clearly mandates dismissal of all of Plaintiffs' claims. Defendants have the right to argue for dismissal of all the allegations of the CAC bases upon the current state of the law;"

(*See*, Pinney Letter of February 11, 2004 to the Honorable Sandra S. Beckwith at 2, Attached as Exhibit G) (emphasis added).

---

[1] The amended motion to dismiss is little more than a cut and paste job from the original motion to dismiss (*See,* Doc. No. 29, Attached as Exhibit F). Additionally, the OHSL and Provident defendants borrow liberally from their motion to dismiss in the *Merzin* case, C-1-03-165, simply cutting and pasting the same unfounded legal arguments and the same catch phrases, such as the CAC "fails to pass legal muster." (*See,* Doc. No. 220 in *Merzin* at 4.) Although the defendants are clearly enamored with this phrase, its rote repetition, in light of overwhelming facts to the contrary in both cases, renders it meaningless. The gravamen of the CAC has already passed legal muster.

As stated above, Plaintiffs did not see any new case law in Defendants' Motion to Dismiss or Amended Motion to Dismiss which would indicate that the law was "much different" from July 2001. As a result, in an excess of caution, Plaintiffs' counsel respectfully requested that Mr. Pinney clarify this point. On February 11, 2004, Plaintiffs' counsel sent Mr. Pinney the first of two letters. The first letter stated, in part, as follows:

> Finally, on page 2 of your letter [to the Court] you state that the caselaw interpreting the federal securities laws and the sufficiency of the complaint has dramatically changed since July 2001. Would you kindly tell me which cases you are referring to?

(*See,* Correspondence from Michael G. Brautigam to John Pinney on this topic, collectively attached as Exhibit H). On February 21, 2004, Plaintiffs' counsel sent Mr. Pinney a second letter that followed-up on his earlier request that Mr. Pinney inform Plaintiffs' counsel as to which cases he was referring in his February 11, 2004 letter to the Court. Id. Mr. Pinney has yet to respond to either letter. Thus, since Plaintiffs have been unable to find any case law in Defendants' Amended Motion to Dismiss that illustrates a dramatic change in the law, and since Mr. Pinney has not provided Plaintiffs with any case law in support of his argument, the only logical conclusion is that Mr. Pinney deliberately made a false statement to this Court. Such conduct should not be without consequences.

## II.    SUMMARY OF ARGUMENTS RAISED AND PRIMARY AUTHORITIES RELIED UPON[2]

### PLAINTIFFS' FEDERAL CLAIMS

### A.    Plaintiffs' Sufficiently Pled a Section 10(b) Claim Upon Which Relief Can be Granted

Plaintiffs have adequately pled their Section 10(b) claim because they have pled that the OHSL and Provident Defendants, in connection with the purchase or sale of securities, made misstatements or omissions of a material fact, with scienter, upon which the Plaintiffs justifiably relied, and proximately caused injury to the Plaintiffs. *In re Comshares, Inc. Securities Litigation*, 183 F.3d 542, 548 (6th Cir. 1999).

#### 1.    Plaintiffs Sufficiently Pled that the Proxy Materials Contained Material Misstatements and Omissions

"An omission or misrepresentation is material if there is a substantial likelihood that a reasonable investor would have viewed the omitted or misrepresented fact as having significantly altered the total mix of information available." *Thiemann v. OHSL Financial Corp.*, No. C-1-00-CV-793, (S.D. OH 2001). By Order of July 25, 2001, this Court previously determined that there are three material misrepresentation contained in the Proxy Materials. (Doc. No. 46). Additionally, the CAC makes allegations regarding Provident's "off balance sheet" transactions related to pools of auto leases which were intended to and did mislead the investing public, including the class, into believing that Provident's financial statements were in better shape than they were in reality. (Expert Report of Ross D. Fuerman, Attached as Exhibit D).

---

[2]  This Summary of Arguments and Primary Authorities Relied Upon is submitted pursuant to Local Rule 7.2(a)(3).

### 2. Plaintiffs' Sufficiently Pled the Scienter Element of the Section 10(b) Claim

Plaintiffs have alleged facts which give rise to a strong inference of recklessness on the part of the OHSL and Provident Defendants. *In re Comshare, Inc. Securities Litigation.* 183 F.3d 542, 548-549. The Plaintiffs have alleged that the OHSL and Provident Defendants acted recklessly by disregarding their actual knowledge of the material misstatements or omissions in the Proxy Materials/Registration Statement.

### B. Plaintiffs Timely Filed their Claim Against the OHSL and Provident Defendants Related to the Restatement

The OHSL and Provident Defendants only argue the statute of limitations argument with respect to the restatement claim. It is generally inappropriate to address the statute of limitations on a motion to dismiss.[3] *Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533, 537 (M.D. Fla. 1997). However, even if it is decided at this juncture, based upon the Sarbanes-Oxley Act, the fact that the restatement claim should relate back to the Section 10(b) claim alleged in the original complaint of September 20, 2000 and amended complaint of February 4, 2002 pursuant to Fed.R.Civ.P. 15(c), and the continuing fraud doctrine, the restatement claim should not be dismissed.

### C. Plaintiffs Sufficiently Pled a Section 11 Claim Upon Which Relief Can be Granted

Pursuant to Section 11 of the 1933 Securities Act, liability extends to any person, or expert, whose profession lends authority to their statements. Id. Here, as this Court has previously held, the Plaintiffs have adequately alleged that the OHSL and Provident

---

[3] *See Also*, Plaintiffs' forthcoming response regarding this issue in their reply brief in further support of summary judgment and opposition to cross-motion for summary judgment.

Defendants who signed and promulgated the materially false and misleading Proxy Materials/Registration Statement are liable for these acts.

**D.    Plaintiffs Sufficiently Pled a Section 12 Claim Upon Which Relief Can be Granted.**

Plaintiffs have sufficiently pled their Section 12(2) claim because they have alleged that the OHSL and Provident Defendants misstated or omitted to state certain material facts, that such misstatements or omissions rendered the statements made misleading, and that the Plaintiffs did not know the truth. *Aronson v. TPO, Inc.*, 410 F. Supp. 1375 (S.D.N.Y. 1976) citing *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 696 (5th Cir. 1971). Since courts have interpreted this statute somewhat broadly such that it applies when either privity exists between a plaintiff and defendant, or a defendant's actions constitute a "substantial factor" in causing a particular transaction to take place, Plaintiffs have adequately pled the Section 12(2) claim against the OHSL and Provident Defendants. *See, Pharo v. Smith*, 621 F.2d 656, 666-67 (5th Cir. 1980), *remanded in part on other grounds*, 625 F.2d 1226 (5th Cir. 1980) (per curiam).

**E.    Plaintiffs' Timely Filed Their Section 11 and Section 12(2) of the Securities Act Against the OHSL and Provident Defendants.**

It is generally inappropriate to address the statute of limitations on a motion to dismiss.[4] *Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533, 537 (M.D. Fla. 1997). However, if this Court decides to make this decision at this juncture, Plaintiffs Section 11 and 12(2) claims would not be barred by the applicable statute of because they relate

---

[4] *See Also*, Plaintiffs' forthcoming response regarding this issue in their reply brief in further support of summary judgment and opposition to cross-motion for summary judgment.

back to the initial claims filed in the September 20, 2000 and February 4, 2002 complaints pursuant to Fed.R.Civ.P.15(c).

**F.**   **Plaintiffs Sufficiently Pled a Section 14 Claim Upon Which Relief Can be Granted**

Plaintiffs have sufficiently pled their Section 14(a) claim because Plaintiffs have pled that the OHSL and Provident Defendants knew, or absent a reckless and negligent disregard of their responsibilities would have known, that the Proxy Materials/Registration Statement sent to Plaintiffs contained numerous materially false and misleading statements of fact and omissions of material fact which fraudulently induced and proximately caused OHSL shareholders to vote for and approve the subject merger by a narrow majority. (CAC ¶¶141, 142).

**G.**   **Plaintiffs Sufficiently Pled a Claim for Control Person Liability Pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. §77(o).**

Plaintiffs have sufficiently alleged that Defendants Carey, Hoverson and Hanauer were "control persons" who aided and abetted violations of the Exchange Act because of their executive, managerial and directorial positions at OHSL and Provident. Plaintiffs alleged that these Defendants had access to material non-public information alleged herein, and acted to conceal and/or omitted to disclose such information in the Proxy Materials/Registration Statement to the Plaintiffs and other OHSL shareholders. (CAC, ¶156). Thus, since Plaintiffs have sufficiently pled claims for violations of Sections 10(b), and 14, Defendants can qualify for liability under the derivative claim of control person liability. *In re Digital Island Sec. Litig.*, 223 F. Supp.2d 546, 560 (D. C. Del. 2002).

**H.**    **Plaintiffs Sufficiently Pled Their Spoliation Claim**

Plaintiffs' spoliation claim is barred by the doctrine of *res judicata* because it only applies to parties or their privies, and actions which are similar. *Thirty Four Corp. v. Sixty Seven Corp.* (1993), 91 Ohio App.3d 818, 826 N.E.2d. 1179. Plaintiffs Walter Thiemann, Gary Meier, and Lisa Meier were not parties in the previous state court action which is largely unrelated to the present federal securities action. Thus, it was impossible for them to have raised this spoliation claim in that dissimilar action.

**I.**    **Plaintiffs Adequately Pled a Claim for Common Law Fraud Claim**

Plaintiffs' common law fraud claim should not be dismissed because Plaintiffs have adequately alleged that the OHSL and Provident Defendants, with knowledge of their falsity, and with the intent of misleading another into relying upon it, made material misrepresentations and concealed facts upon which the Plaintiffs justifiably relied and incurred damages, and that Plaintiffs timely filed this claim within the applicable statute of limitations. *State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas* (2002), 97 Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92 at P24; §2305.09

**J.**    **Plaintiffs Sufficiently Pled a Breach of Fiduciary Duty Claim**

Plaintiffs have adequately pled their breach of fiduciary duty claim. Plaintiffs have alleged that the OHSL and Provident directors breached their fiduciary duty to the OHSL shareholders by, *inter alia,* attempting to fool them into approving the OHSL-Provident merger based on the materially false and misleading Proxy Materials/Registration Statement. Thus, Plaintiffs' breach of fiduciary duty claim should not be dismissed.

III.    **STATEMENT OF FACTS**

A.    **OHSL Defendants.**

Oak Hills Savings and Loan Company, F.A., ("Oak Hills") was a federally chartered thrift institution which served the financial needs of families and local businesses in its primary market of Southwestern Hamilton County, Ohio. (CAC, ¶10). Oak Hills was also a wholly owned subsidiary of OHSL, a Delaware Corporation headquartered in Cincinnati, Ohio. (CAC, ¶9). OHSL's primary business was running Oak Hills. OHSL, among others, issued the Proxy Materials/Registration Statement to Plaintiff and the class members that contained materially false and misleading statements, including PFGI's financial statements. (CAC, ¶9). OHSL ceased to exist shortly after the merger with PFGI on or about December 3, 1999. (CAC, ¶9).

Defendant Norbert G. Brinker ("Brinker") was the Chairman of OHSL's Board of Directors prior to the merger with PFGI on or about December 3, 1999. (CAC, ¶11). Brinker signed both the Proxy Materials/Registration Statement distributed to the Plaintiffs and class members that contained materially false and misleading statements and omitted to state material facts. (CAC, ¶11). Although Brinker voted in favor of continued negotiations with Provident at a July 22, 1999 Special Meeting of OHSL's Board of Directors, at the August 2, 1999 Special Meeting of the OHSL Board of Directors to vote on the final merger, Brinker changed his vote to abstain. (CAC, ¶11). As a result, contrary to the Proxy Materials/Registration Statement, Brinker did not vote in favor of the merger, and there was not a unanimous vote of the board of directors in favor of the merger. (CAC, ¶11). (*See*, Board Minutes for August 2, 1999 Special Meeting, Attached as Exhibit C).

Defendant Kenneth L. Hanauer ("Hanauer") was a director of OHSL and Chief Executive Officer of Oak Hills prior to the December 3, 1999 merger. (CAC, ¶12). Defendant Hanauer was the only member of OHSL's management to serve on OHSL's board, and the OHSL's largest shareholder. (CAC, ¶12). Defendant Hanauer ran the daily operations of OHSL, directed its activities including merger negotiations, and managed the affairs of OHSL. (CAC, ¶¶12, 16). Consequently, Defendant Hanauer was a control person of OHSL. (CAC, ¶12). However, despite the fact his views on the merger were of particular importance based upon his position of control and authority at OHSL, and the fact that he did not think that the merger was in the best interest of OHSL, he recommended to unsuspecting OHSL shareholders that the merger was in their best interests. (CAC, ¶12). This is best evidenced by the fact that he voted his approximately 130,000 personal shares against the merger and refused to sign the cover letter to the Proxy Materials/Registration Statement because he did not want the merger to be seen as coming from him. (CAC, ¶12). As a result, he directed that his signature, which was electronically affixed to the document, be removed. (CAC, ¶12). Furthermore, Defendant Hanauer's opposition to the merger is also clearly set forth in his deposition transcript and was so obvious that his own counsel, James E. Burke, Esq. was quoted in the Cincinnati Business Courier as stating "**Hanauer opposed the Provident takeover because he wanted Oak Hills to remain independent**." (CAC, ¶12) (*See*, Cincinnati Business Courier Article, Attached as Exhibit I, emphasis added). Of course, Hanauer's opposition to the merger was also noted by Roe of Dinsmore (CAC, ¶ 41). Had Hanauer's opposition to the merger been revealed to the OHSL shareholders as they were considering how to vote, it is overwhelmingly likely that the proposed combination

would have been voted down. (*See,* Expert Report of Candace Preston and Preliminary Expert Report of William Lutz, J.D., Ph.D., Attached as Exhibits A and B). Finally, it is important to remember that Hanauer never believed the OHSL-Provident merger was in the best interests of OHSL's shareholders. On the contrary, Hanauer changed his vote as a director from abstain on July 22, 1999 to in favor of on August 2, 1999 not because he suddenly believed in the transaction, but because he just gave up—in violation of his fiduciary duties to OHSL shareholders. (CAC, ¶¶ 55, 64).

Defendants Alvin E. Hucke ("Hucke"), Thomas E. McKiernan ("hereinafter "McKiernan"), Joseph J. Tenoever ("Tenoever"), William R. Hillebrand ("Hillebrand") and Howard Zoellner ("Zoellner) were all directors of OHSL prior to the merger with Provident in December of 1999. (CAC, ¶¶13, 14). Defendant Hucke was the chairman of the OHSL *ad hoc* committed formed in February of 1999 that was to consider various strategic alternatives for OHSL, and Defendants McKiernan and Tenoever were members of this *ad hoc* committee. (CAC, ¶13). Defendants Hanauer, Hucke, McKiernan, Tenoever, and Zoellner all signed the Registration Statement containing the Proxy Materials/Registration Statement, and Defendants Hucke, McKiernan and Tenoever all had input into the Proxy Materials/Registration Statement. (CAC, ¶¶13, 14, 16)

However, Defendant Hanauer, because of his position of control and authority as both an officer and director of OHSL, controlled the contents of the Proxy Materials/Registration Statement that he signed and distributed on his own and OHSL's behalf. (CAC, ¶16). Defendant Hanauer had the power and ability to ensure that the Proxy Materials/Registration Statement were correct and did not contain materially false

and misleading statements and omit to state material facts, but failed to do so, such that the OHSL shareholders narrowly voted in support of the merger. (CAC, ¶16).

## B.  <u>Provident Defendants</u>

Defendant Provident Financial Group, Inc. ("PFGI" or "Provident") is an Ohio corporation located in Cincinnati, Ohio. It is a banking and financial services company with full serve banking operations in Ohio, Northern Kentucky and Southwestern Florida. (CAC, ¶17).   As of June 30, 1999, PFGI falsely claimed that it had total assets of $8.5 billion, loans and leases of $5.8 billion, deposits of $5.8 billion and stockholders equity of $717 million. (CAC, ¶17).   PFGI also serviced an additional $4.5 billion of loans and leases. (CAC, ¶17).

PFGI, along with the OHSL Defendants, issued the materially false and misleading Proxy Materials/Registration Statement which was filed with the SEC and distributed to Plaintiffs and class members. (CAC, ¶17).   The Proxy Materials/Registration Statement omitted to state material facts, including PFGI's financial statements, which were admittedly false and misleading. (CAC, ¶17).

Provident's activities were and are managed, directed and controlled by Defendant Robert L. Hoverson ("Hoverson") and the several directors which are identified below.  Defendant Hoverson was the President and Chief Executive Officer of PFGI at all times prior to the merger and he directed, managed, and controlled the daily activities of Provident. (CAC, ¶18).  As a result of this position of control and authority, Defendant Hoverson was a control person. (CAC, ¶24).

At all relevant times herein, Defendants Jack M. Cook ("Cook"), Thomas D. Grote ("Grote"), Philip R. Myers ("Myers"), Joseph A. Pedoto ("Pedoto"), Christopher J.

Carey ("Carey"), and Joseph A. Steger ("Steger") were directors of Provident. (CAC, ¶¶¶¶¶¶19, 20, 21, 22, 23, 24). Defendants Hoverson, Cook Grote, Myers, Pedoto, Carey and Steger all signed the Registration Statement containing the Proxy Materials filed with the SEC, and distributed to Plaintiff and class members which contained materially false and misleading statements and omitted to state material facts. (CAC, ¶¶¶¶¶¶18, 19, 20, 21, 22, 23, 24).

Defendant Carey was also PFGI's Executive Vice President and Chief Financial Officer. (CAC, ¶23).  Defendant Carey directed, managed and controlled the daily activities of Provident. (CAC, ¶23).  Based upon his position of control and authority, Defendant Carey was also a control person. (CAC, ¶24).

Defendant Carey also admitted to the material falsity of PFGI's previous financial statements to the New York Times. In an article in that publication, Defendant Carey was quoted as saying that the accounting errors in Provident's previous financial statements were a "dumb mistake." (CAC, ¶23).

Defendant Steger, as the Chairman of the Audit Committee, was also intimately involved in the issues related to the restatements. (CAC, ¶24).

**C.    Background Behind Merger Between OHSL and Provident**

In early 1999, certain members of the OHSL Board decided to sell OHSL. (CAC, ¶39).  On February 25, 1999, the Chairman of the Board appointed an *ad hoc* committee consisting of Hucke (Chairman), Tenoever and McKiernan to determine a valuation of OHSL.  (CAC, ¶39).  Although Hanauer initially agreed to be appointed to the *ad hoc* committee, he later requested that he be removed from the committee. (CAC, ¶39). In March 1999, the *ad hoc* committee met with Defendant Clifford Roe of Dinsmore &

Shohl, LLP (hereinafter "Dinsmore") and Charles Crowley of McDonald Investments to discuss valuation of OHSL. (CAC, ¶40).

At the meeting and subsequent thereto, Crowley presented to the *ad hoc* committee a detailed analysis of OHSL's comparative valuation to its peer group; its stock market performance during the last twelve months; a selected list of potential merger partners; a merger pricing dilution analysis and a graph of OHSL's stand alone estimated stock price appreciation potential compared to its possible growth if a sale occurred at an acquisition premium. (CAC, ¶42). All of this information was based upon false and misleading financial statements as well as upon the overstatement of income of PFGI from 1994 to 1999. (CAC, ¶42).    Essentially the same was information was presented to the OHSL Board in May of 1999.

On July 22, 1999, the OHSL board met to receive an update from McDonald as to its negotiations with prospective acquirors of OHSL. (CAC, ¶48).  McDonald presented an offer from PFGI and the Board voted to engage in negotiations with Provident in a definitive nature. (CAC, ¶48).  In particular, Herron voted against continued negotiations with PFGI, Brinker voted in favor of continued negotiations, and Hanauer abstained from the vote. (CAC, ¶48).  Hanauer changed his vote from abstain to in favor of only after his change of control contract, calling for a payment to him of $375,000.00 in the event of a Provident takeover, was finalized. (CAC, ¶48).

On July 27, 1999, Herron resigned from the OHSL Board effective July 30, 1999. The materially false and misleading Proxy Materials/Registration Statement disclosed the composition of the board as of July 31, 1999,  a date deliberately chosen to mislead OHSL shareholders, since it was one day after Herron's resignation became effective and

nine days after he voted against the merger. [5](CAC, ¶50).  Herron did so because he strongly disagreed with the decision in engage in negotiations of a definitive nature with PFGI.  (CAC, ¶50). No Form 8-K was ever filed with the SEC, and the shareholders were never informed of Herron's resignation or the reasons thereof. (CAC, ¶50).  Further, Herron was not included in the prospectus at page 63 as of July 31, 1999. (CAC, ¶50).

On July 27, 1999, Herron called each OHSL director, except for McKiernan, and informed each director, among other things, that he was resigning in part in protest of the OHSL-Provident Merger. (CAC, ¶51).  Herron did not call McKiernan because he was out of the country at the time, but called him upon his return to the United States. (CAC, ¶51).  Thus, each of the individual directors had actual knowledge that Herron was opposed to the merger and that he resigned in part as a result of this opposition. (CAC, ¶51).

From July 22, 1999 to August 2, 1999, the OHSL Board, McDonald, and the Defendants Clifford Roe ("Roe") and Dinsmore engaged in negotiations with PFGI related to a definitive agreement. (CAC, ¶52).  These discussions are discussed in the

---

[5]  Defendants have repeatedly and disingenuously suggested that Herron resigned for merely personal reasons that had nothing to do with his opposition to the OHSL-Provident merger, but was based on his travel schedule and his inability to attend future board meetings.  This fails as a matter of fact and as a matter of logic.  Herron resigned because he opposed the merger. He testified as such, and it is alleged in the CAC at ¶51. Herron left tens of thousands of dollars on the table, since he was exceedingly careful not to profit from a transaction he did not believe in, the equivalent of blood money.  Even if the demands on Herron's time were such that he would have trouble making future board meetings, the likelihood of the merger meant that there would be no future board meetings, since OHSL would no longer exist. At a minimum, the overwhelming influence must go to the Plaintiffs at this stage of the litigation, so that they will be able to present this evidence to a jury, and the jury will be able to make its own factual determination.

Proxy Materials/Registration Statement. However, so are materially false and misleading statements as well as omissions of material fact.

On October 25, 1999, Hanauer ran the Special Meeting of OHSL shareholders to encourage the shareholders to vote in favor of the merger despite the fact that he, as the largest OHSL shareholder, CEO and Chairman of the Board designate for OHSL, voted his personal shares against it, and did not think that the merger was in the best interests of OHSL shareholders. (CAC, ¶60) (*See,* Script Read by Hanauer at the Meeting, Attached as Exhibit J). It was also not disclosed that Herron had resigned in part in protest over the merger, that only 5 of the 7 directors affirmatively voted in favor of the merger, or that only 4 of the original 8 directors believed the merger to be in the best interests of the OHSL shareholders. (CAC, ¶60).

### D.    <u>Materially False and Misleading Proxy Materials/Registration Statement</u>

Plaintiffs allege that the OHSL and Provident Defendants are liable for the omissions and materially false and misleading Proxy Materials/Registration Statement. This Court has already once concluded that the Plaintiffs' alleged misrepresentations and omissions by the OHSL and Provident Defendants in the Proxy Materials/Registration Statement were misleading and material. In particular, the following three statements were found to be misleading and material: (1) The representation that "Your Board of Directors unanimously approved the acquisition and believes that it is in the best interests of the OHSL stockholders." (Letter to OHSL Financial Corp. stockholders accompanying OHSL Financial Corp. Proxy Materials/Prospectus dated September 24, 1999); (2) Risk Factors/Securitization of the Loans; and (3) The failure to disclose to the OHSL

shareholders in the Proxy Materials that Thomas Herron had resigned in protest effective three days prior to the August 2, 1999 merger vote.

In essence, the Proxy Materials falsely misstated facts and omitted to state material facts that were necessary for the OHSL shareholders to fully understand the merger that they were being asked to approve.  If properly presented to the OHSL shareholders, these facts would have revealed that the OHSL Board and management was divided on whether the proposed merger was in the best interests of OHSL and its shareholders, and that the OHSL Board had actual knowledge of this division. (CAC, ¶52).

Several of the directors opposed the merger. McKiernan did not vote in favor of the merger because he was out of the country at the time of the vote. (CAC, ¶52). Brinker did not vote in favor of the merger, but rather changed his vote to abstain. (CAC, ¶52) (*See Also,* Exhibit C).  Similarly, as stated above, all of the directors were aware that Herron was not in favor of the merger because he had resigned at least in part based upon his opposition to it. (CAC, ¶52). Finally, the shareholders were not informed that Hanauer changed his vote from abstain to voting from the merger as a direct result of the finalization of his change in control contract which provided for a cash payment of $375,000, plus other benefits, if the merger with Provident was completed. (CAC, ¶52).

As a result, in order for the merger to be approved, the OHSL and Provident Defendants made a conscious and affirmative effort to make sure that the shareholders were not aware of the opposition to the merger that would have been apparent if the above-mentioned information had been disclosed to them.

Similarly, Provident's financial information was also presented in a materially false and misleading way. First, the risk of Provident's securitizations was not adequately disclosed, as this Court has previously held. (*See*, Doc. No. 46). Second, Provident's massive 2003 restatements—due to "off the books accounting" similar to Enron—presented a materially false and misleading picture of the company that the OHSL shareholders were asked to merge with. It is exceedingly likely that the merger would not have closed, or at least never would have closed on anything close to the same terms, if the Provident stock had been properly valued instead of materially overvalued. (*See*, Expert Report of Candace Preston Preliminary Report of William Lutz, Ph.D., J.D.; Expert Report of Ross D. Fuerman; and Affidavit of Ervin Schoenblum, Hucke Deposition Testimony, Attached as Exhibits A, B, D, E, and K).

### E.    First and Second Restatements

On March 5, 2003, Provident issued a press release in which it announced that it was restating its operating results for the period from 1997 through 2002. (CAC ¶87). The financial press described this as "the longest continuous string of amendments in memory for a U.S. Corporation." (CAC ¶88). The First Restatement was attributable solely to errors in the accounting for the transactions that were originated between 1997 and 1999. (CAC ¶91). The First Restatement revealed that the Proxy Materials contained materially false and misleading statements as to both the accounting procedures and income numbers promulgated by PFGI to the class. (CAC ¶87)

Although the press release purported to deal with only nine auto leases, the Restatements of March and April of 2003 dealt with thousands of auto leases. In particular, the lease transactions were inappropriately recorded as "off balance sheet,"

and should have been recorded on PFGI's financial statements. (CAC ¶88). The effect of this fraudulent accounting was that PFGI's net income was materially overstated during the class period as these lease transactions were financed by PFGI with borrowings and debt from other sources but the interest expense of those borrowings and debt were kept "off the books" and not reflected as a deduction (or expense) to income during the relevant years. (CAC ¶88). The First Restatement showed that net income had been overstated $14.2 million for the years 1997 to 1999, by $70.3 million for the period of 1997 through 2002, and by another estimated $9.8 million in 2003. (CAC ¶91).

The First Restatement, and this $100 million decrease in cumulative profit, caused a stock price drop for PFGI from $28.07 per share on March 4, 2003 to $22.46 the next day and an average of $21.72 in the first ten trading days after the restatement, or a decrease of 22.6%. (CAC ¶92). As a result, if the correct information had been disclosed at the time OHSL shares were forcibly converted into PFGI shares, the shares would have been valued at 22.6% less than the $57,162,375 at which they were sold. (CAC ¶92). Consequently, the shareholders were shortchanged by about $12.9 million. (CAC ¶92).

On April 15, 2003, Provident issued a second press release. The Second Restatement was attributable to additional errors in the accounting for the transactions that occurred from 1994 to 2002. (CAC ¶93). The result of the Second Restatement was an additional reduction in profit for Provident in the amount of $44.4 million, and a determination that the First Restatement was also materially false and misleading. (CAC ¶93). The 2002 impact was $3.8 million, and the 2001 impact was $4.2 million. (CAC ¶93). As a result, the 1994 through 2000 impact was the difference between the aggregate $44.4 million and the $3.8 million and $4.2 million for 2001 and 2002, or

$36.4 million.  (CAC ¶93).  The 1994 through 1999 period accounted for 6 of the 7 years or approximately a $31.2 million loss. (CAC ¶93).

In the same way that the market determined that a $100 million decrease in cumulative profit would have resulted in a 22.6% decrease in the market valuation of PFGI shares at the time the shares were converted, a $31.2 million decrease in cumulative profit would equate to a 7.1% decrease in the market valuation of PFGI shares. (CAC ¶94).  Thus, the OHSL shareholders received $4.1 million less in PFGI shares than they should have rightfully received. (CAC ¶94).

The resulting impact of both restatements is that the OHSL shareholders received approximately $17 million less of PFGI shares than they rightfully should have received when their shares were forcibly converted into OHSL shares because of the accounting errors not being disclosed by PFGI management and directors and included in the materially false and misleading Proxy Materials.[6] (CAC ¶ 95).  Provident was, from a financial standpoint, a dramatically different company from the company that the OHSL shareholders were asked to merge with and surrender their OHSL shares for materially artificially inflated PFGI shares. (CAC ¶ 97).  Thus, the $57 million transaction that the OHSL Board recommended and the OHSL shareholders approved was actually about $40 million, and not $57 million, an obviously unfair amount. If the Defendants believe that $40 million is a fair price, they should feel free to attempt to obtain a fairness opinion for

---

[6]  Of course, the OHSL shareholders, in addition to having suffered monetary damages, should have had the right to vote the merger down based upon a true understanding of the risks associated with Provident stock, the fact that Provident was fraudulently reporting its financial position to the investing public for literally years, as well as the fact that the OHSL directors were far from unanimous in their views on the proposed merger.

this price and attempt to sell it to OHSL shareholders at these terms. (*See Also,* Hucke Deposition Testimony, attached as Exhibit K*).

## IV.    LEGAL ARGUMENT

### A.    Fed.R. Civ. P. 12(b)(6) Motion to Dismiss Standard

A motion to dismiss can only be granted if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spaulding*, 467 U.S. 69, 73 104 S.Ct. 2229 (1984). Although matters of public record, orders, items appearing in the record and attached exhibits may be taken into account, when deciding a motion brought pursuant to Federal Rule 12(b)(6), the inquiry is essentially limited to the content of the complaint,. *Yancos v. Lake* County, 953 F. Supp. 187, 191 (N.D. Ohio 1996). To survive a motion to dismiss under Federal Rule 12(b)(6), a "complaint must contain direct or inferential allegation respecting all of the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops*, 859 F.2d 434, 436 (6th Cir. 1988). A court must accept all the allegations stated in the complaint as true, and view the complaint in the light most favorable to the plaintiff, but a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S 265, 286, 106 S.Ct. 2932 (1986). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683 (1974).

Based upon the following standard, the OHSL and Provident Defendants' Amended Motion to Dismiss should be denied in its entirety.

### B.    Plaintiffs' Sufficiently Pled a Section 10(b) Claim of the Exchange Act, 15 U.S.C. §78(j)b, Upon Which Relief Can be Granted.

This Court has already found that Plaintiffs have adequately pled their Section 10(b) of the Securities Exchange Act of 1934 claim against the OHSL and Provident Defendants in the original complaint. These corporate and individual Defendants largely do not provide any new arguments to counter these allegations. Rather, they largely repeat arguments which have been made by others and rejected by this Court. As stated above, the most troubling and surprising argument Defendants make is that the specific allegations of Plaintiffs' CAC are not material. In particular, Defendants OHSL and Provident have attempted to deliberately mislead this Court by sending it a letter that stated that the case law had changed significantly since July, 2001. Although Mr. Pinney did not specify which area in the law had changed, Defendants' Amended Motion to Dismiss does not argue any change in the law at all, let alone dramatic developments from the Sixth Circuit. Mr. Pinney's statement to the Court regarding significant changes to the law since July 2001 is false. There is no significant change in the law as to any issue before the Court with the exception of Sarbanes-Oxley, which favors plaintiffs, and there is no argument to make in relation to a significant change in the law of this Circuit, as Mr. Pinney falsely states. Although Plaintiffs can understand why the OHSL and Provident Defendants would loudly want to make such an argument if it was viable, the silence in the Amended Motion to Dismiss as to this significant change in the law is deafening.

Thus, since the issue of the sufficiency of the pleading of materiality was previously decided by this Court by order of July 25, 2001, since Plaintiffs' allegations in the CAC have been pled with even greater specificity than the allegations of the original complaint, and since there has been no substantial change in the case law, Plaintiffs are

unsure why the OHSL and Provident Defendants have taken this position. However, Plaintiffs will do their best to respond to this questionable argument.

In order to state a claim pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.S. §78(j)b and S.E.C. Rule 10b-5, 17 C.F.R. §240.10b-5 (hereinafter "Section 10(b)"), a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury. *In re Comshares, Inc. Securities Litigation*, 183 F.3d 542, 548 (6th Cir. 1999). In *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 475-76, 97 S.Ct. 1292 (1977), the United States Supreme Court stated that:

> [The] cases forcefully reflect the principal that "[§] 10(b) must read flexibly, not technically and restrictively" and that the statute provides a cause of action for any plaintiff who "suffer[s] an injury as a result of deceptive practices touching its sale [or purchase] of securities. . . .,"

Id. In the present case, there is absolutely no doubt that these Plaintiffs have suffered injury as a result of OHSL and Provident's deceptive practices in relation to the Proxy Materials/Registration Statement and merger.

1.    **The Material Misstatements and Scienter Elements of a 10(b) Claim Must be Pled in Accordance with the Private Securities Litigation Reform Act**

Plaintiffs' Section 10(b) claim meets the requirements of Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). While Fed. Rule 9(b) and the PSLRA are often considered interchangeable in relation to claims of securities law, a plain reading of the two provisions shows they are in fact quite different. *In re Initial Public Offering Sec. Litigation*, 241 F. Supp.2d 281, 334 (S.D. NY 2003). The PSLRA

and Rule 9(b) both apply to claims of securities fraud, but never at the same time to the same elements. Id. at 335.

Fed. R. Civ. P. 9(b) requires that "in all averments of fraud. . . the circumstances constituting fraud. . . shall be stated with particularity." As courts have noted, Rule 9(b) has three broad purposes: (1) it ensures that allegations are specific enough to inform a defendant of the act of which the plaintiff complains, and to enable him to prepare an effective response and defense; (2) it eliminates those complaints filed as a pretext for the discovery of unknown wrongs; and (3) it seeks to protect a defendant from unfounded charges of wrongdoing which injure their reputations and goodwill. *Bovee, et al. v. Coopers & Lybrand, C.P.A.*, 272 F.3d 356, 362 (6th Cir. 2001). In the present case, the Defendants are definitely informed of the violations of which the Plaintiffs complain. Further, as a result of the restatements, Plaintiffs' allegations could not harm the reputations of the OHSL and Provident Defendants any more than they already were with the announcement of the restatements.

The PSLRA, on the other hand, requires that the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. Id. Only one allegation must satisfy this pleading requirement in order to survive the dismissal of the complaint. Id. Congress intended that the PSLRA supersede the Federal Rules only as to those elements which the PSLRA explicitly mentions: scienter and material misstatements and omissions. Id. *See, S. Rep. No. 104-98*, at 15. In all other respects, the Federal Rules are to govern these pleadings. Id. As a result, Federal Rule

9(b) governs the pleading of the remaining elements of the claims: loss causation, reliance and damages. Id.

However, although the PSLRA now requires a heightened pleading standard, this does not mean that a plaintiff must allege facts giving rise to "a strong inference of knowing misrepresentation or intent." *In re Comshares, Inc. Securities Litigation*, 183 F.3d 542 (6th Cir. 1999). In *In re Comshares, Inc.*, the Sixth Circuit stated that the "required state of mind" for the scienter element is defined as follows:

> We conclude that plaintiffs may plead scienter in § 10b or Rule 10b-5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive and opportunity to commit securities fraud. Consequently, we must reject the reasoning of the district court to the extent it concluded that plaintiffs must "plead specific facts that create a strong inference of knowing misrepresentation on the part of the defendants" in order to establish a defendant's scienter in a securities fraud case brought under § 10(b) or Rule 10b-5.

Id. at 549. Thereafter, in *Helwig v. Vencor*, 251 F.3d 540, 553 (6th Cir. 2001), the Sixth Circuit provided the following definitive explanation as to the meaning of a "strong inference":

> "Inferences must be reasonable and strong--but not irrefutable. "Strong inferences" nonetheless involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact. Plaintiffs need not foreclose all other characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder. Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences.

Id. The most plausible of competing inferences in this case is that the OHSL and Provident Defendants violated Section 10(b) by deliberately and recklessly misstating

material facts in the Proxy Material/Registration Statement and by deliberately and recklessly omitting material statements from the Proxy Materials/Registration

### 2.   Plaintiffs Sufficiently Pled that the Proxy Materials Contained Material Misstatements or Omissions

Plaintiffs sufficiently pled that the Proxy Materials/Registration Statement contained material misstatements and omitted material facts. The objective in relation to proxy materials is to provide the shareholder with full disclosure of the facts regarding the transaction. The objective of full disclosure can be fully achieved only by complete revelation of facts that would be material to the sophisticated investor or the securities professional not just the average common shareholder. *Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 566 (E.D. NY. 1971). But, at the same time, the prospectus must not slight the less experienced. They are entitled to have within the four corners of the document an intelligible description of the transaction. Id.

"An omission or misrepresentation is material if there is a substantial likelihood that a reasonable investor would have viewed the omitted or misrepresented fact as having significantly altered the total mix of information available." *Thiemann v. OHSL Financial Corp.*, No. C-1-00-CV-793, (S.D. OH 2001). *Feit,* 322 F.Supp. at 569 (The basic test of "materiality" is whether "reasonable man" would attach importance to the fact misrepresented in determining his choice of action in the transaction in question). Material facts include not only information disclosing the earnings and distributions of a company but also those facts that affect the probable future of the company and those which may affect the desire of investors to buy, sell, or hold the company's securities. Id at 570 citing *Kohler v. Kohler*, 319 F.2d 634, 642 (7th Cir. 1963).

A fair summary of the rule stated in terms of probability is that a fact is proved to be material when it is more probable than not that a significant number of traders would have wanted to know it before deciding to deal in the security at the time and price in question. Id. at 571. What is statistically significant will vary with the legal situation. Id. However, being a formal and legally required document, a prospectus must satisfy a high standard of disclosure-- i.e., disclosure is required when only a relatively small percentage of traders would want to know before making a decision. Id. Anything in the order of 10 percent of either the number of potential traders or those potentially making 10 percent of the volume of sales would seem to more than suffice. Id. In non-quantitative terms a fact is "material" in a registration statement whenever a rational connection exists between its disclosure and a viable alternative course of action by any appreciable number of investors. Id. Consequently, materiality is a question of fact to be determined in the context of a particular case. Id.

In the present case, this Court has already once concluded that the Plaintiffs alleged factually material and misleading misrepresentations and omissions by the OHSL and Provident Defendants that were misleading and material. **All** of the OHSL shareholders would likely have been interested in the true views of CEO, Board member, and largest shareholder Hanauer, and how he intended to vote his shares—exactly the information that was misstated and omitted. (*See*, Expert Report of Candace Preston and Preliminary Report of William Lutz, Ph.D., J.D., Attached as Exhibits A and B.) Plaintiffs will discuss each one in turn.

**a.**     **"Your Board of Directors unanimously approved the acquisition and believes that it is in the best interests of the OHSL stockholders."**

The OHSL and Provident Defendants made a material and misleading statement when they represented that "Your Board of Directors unanimously approved the acquisition and believes that it is in the best interests of the OHSL stockholders." This statement can only fairly be read in one way: that all eight of the OHSL directors voted unanimously in favor of the merger AND believed that the acquisition was in the best interests of OHSL and its shareholders. However, in reality, this simply was not true.

As alleged in the complaint and supported by the attachments to this document, only five of the eight directors voted to approve the merger. In particular, Hanauer, OHSL's CEO, Chairman of the Board designate, largest shareholder, and only member of management on OHSL's board, did not vote in favor of the merger because he believed it to be in OHSL's best interests, but because he merely gave up. (*See*, Board Minutes collectively attached as Exhibit C). At no time did he believe the merger transaction was in the best interest of OHSL's shareholders.  As a result, he did not vote his approximately 130,000 shares in favor of the merger.[7]  (CAC, ¶55).  If he believed that the merger was in the best interest of the shareholders, why would he vote his own shares (4.9% of OHSL, the largest share block by far) against the merger?  And wouldn't other OHSL shareholders want to know that the CEO, board member, member of management,

---

[7]    Other acts or factors which evidenced his belief that the merger was not in the best interests of the shareholders were as follows:  (1) The fact that Hanauer voted in favor of the merger because he received a contract specifying that he would receive $375,000 in the event of a merger or other change in control of OSHL, and because he just "gave up" the fight. (Hanauer dep. pp. 764, (CAC, ¶55); and (2) The fact that Hanauer refused to sign the cover letter to the Proxy Materials that was distributed to the shareholders when his signature and Brinker's signature had previously jointly appeared on all such communications to the shareholders in the past.

and OHSL's largest shareholder, did not believe that the merger was in the best interest of OHSL shareholders and voted his personal shares against the merger? It is a virtual certainty that all OHSL shareholders would have wanted to know not only that Hanauer voted his personal shares against the merger, but all of the information discussed above. (*See,* Expert Report of Candace Preston, and Preliminary Report of William Lutz, Ph.D., J.D., Attached as Exhibits A and B).

On the other hand, the OHSL and Provident Defendants were aware of all of this information, and of Hanauer's opposition to the merger, but did nothing to change the presentation to the OHSL shareholders that the directors were unified in their belief that the merger was in the best interest of the shareholders. This was because if Hanauer's opposition to the merger had been revealed to the OHSL shareholders as they were considering how to vote, it is overwhelmingly likely that the proposed combination would have been voted down. (*See,* Expert Report of Candace Preston and Preliminary Lutz Report, Attached as Exhibits A and B).[8]

However, Hanauer was not the only director who was not in support of the merger and/or did not vote in favor of it. Shareholders were also not informed that Herron submitted his resignation effective July 30, 1999, only three days before the August 2, 1999 vote regarding the merger, and after he personally called each OHSL director to personally tell each one that he was resigning because he opposed the merger. (CAC,

_____

[8] Additionally, OHSL director Howard Zoellner had been a vocal proponent of remaining independent and had consistently voted against any merger until he inexplicably changed his vote from against to in favor of at the July 22, 1999 OHSL Special Board Meeting. Although at his deposition Zoellner repeatedly answered that he changed his vote because the deal had improved, this answer is questionable at best since he was unable to provide a single example of how the deal had improved or why he changed his vote. (*See,* Deposition of Howard Zoellner, Attached as Exhibit L).

¶¶50, 51).  The shareholders were also not informed that Brinker, who had previously voted in favor of the merger, abstained during the vote on August 2, 1999. (CAC, ¶53). Finally, the shareholders were not informed that McKiernan was not present at the meeting because he was out of the country at the time of the vote.  (CAC, ¶53).  If there was one abstention or one person not present during the vote, there cannot be a unanimous vote.  As a consequence, it was false and misleading to state in the Proxy Materials that there was a unanimous vote.

### b.    Opposing a Transaction is Different from Believing that a Deal is "Fair."

The OHSL and Provident Defendants, in response, argue that Hanuaer has testified that he thought that the deal "was fair."[9] (Amended Motion to Dismiss, p. 22). This may be true, but this argument is without merit for two main reasons. First, the issue is not whether or not the deal was "fair," but whether or not the OHSL and Provident

---

[9]    Of course, Hanauer was last deposed in another case in 2000 in which he was not a defendant. Hanauer has not yet been questioned as to whether or not, given the new information about the massive restatements, the deal is still "fair."  The OHSL and Provident Defendants' have attempted to shift the focus of the CAC away from the material misrepresentations and omissions to whether or not the deal was "fair."  Further, they unfairly argue this point based upon stale testimony in another case that preceded the massive restatements. Even Al Hucke, the most vocal pro-sale voice on OHSL's board, conceded that in light of the restatements, the merger would have been restructured to reflect the fact that Provident stock was materially overvalued, and that OHSL was deceived by this artificial inflation. (See, Hucke testimony, Attached as Exhibit K).

Thus, if this Court agrees with the Defendants that this "fairness" argument is valid, then Plaintiffs respectfully request an opportunity to supplement this brief by submitting Hanauer's deposition testimony on this new topic once he is deposed. Although Plaintiffs believe that they have already provided overwhelming evidence, even at the motion to dismiss stage of the litigation, that the deal was unfair, Plaintiffs submit that, given the OHSL and Provident Defendants' emphasis on the fairness of the deal, it is only proper to allow Plaintiffs to supplement the record with Hanauer's new testimony once he has been questioned about the restatement and all other relevant information relating to the alleged fairness of the deal.

Defendants violated securities laws. Allowing fairness of the merger as a complete defense would confront small shareholders with an additional obstacle to making a successful challenge to a proposal recommended through a defective proxy statement. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 382, 90 S.Ct. 616 (1970). The risk that they would be unable to rebut the corporation's evidence of the fairness of the proposal, and thus to establish their cause of action, would be bound to discourage such shareholders from the private enforcement of the proxy rules that "provides a necessary supplement to Commission action." Id. Thus, such an argument is disfavored.

Second, even if this Court does determine that it is relevant whether or not the deal was "fair," it is this Court, and not Hanauer, that makes this determination. Finally, Hanauer's belief that the deal was "fair" is contradicted by his simultaneous testimony that there were material misstatements in the Proxy Materials as well as material statements that were omitted from the Proxy Materials/Registration Statement. (*See Also,* Footnote 9.)

The OHSL and Provident Defendants are concentrating on the first half of Hanauer's deposition testimony to the exclusion of the second half. [10] Hanauer stated that

---

[10] The Defendants argue in a footnote that the Plaintiffs have quoted "selected" portions of Hanauer's testimony in the CAC, and that this Court should consider the entire deposition in ruling on this motion. Plaintiffs agree, but also believe that Defendants have selectively selected portions of Hanauer's deposition testimony in support of their arguments. Further, although Plaintiffs agree that this Court should consider the entire deposition testimony of Hanauer in evaluating his testimony, Plaintiffs believe that such a need is further support of the fact that the Defendants' Amended Motion to Dismiss is really more akin to a motion for summary judgment than a motion to dismiss. Since Plaintiffs have not been given an opportunity to conduct their any significant discovery in relation to this CAC, any factual ruling in support of dismissal would be highly unfair and prejudicial.

he thought that there were several factual errors in the Proxy Materials which, in hindsight, he would have insisted it be corrected.

In response to the issue of unanimity of the vote by the board of directors, Hanauer replied as follows: "As I---as I mentioned, from a legal standpoint, the term unanimously here is obviously causing you and probably is causing other folks difficulty." (Hanauer deposition, p. 761). He stated that the term "unanimously should have been stricken from this document" and that the page containing this misstatement should have been read and reread at all levels. (Hanauer deposition, p. 762). Similarly, in relation to McKiernan not being present at the August 2, 1999 meeting, Hanauer stated that "Again, it is, it is a misstatement, as you pointed out, that McKiernan was not there." Id. Finally, in relation to Brinker's abstention from voting, he stated that he would stipulate that if he had known that he had abstained from voting, he would have put that in the Proxy Materials. (Hanauer dep., p. 779). In particular, he also stated:

> "If it is his [Brinker's] testimony and intent to have abstained, yes. If he purposely, if he purposely did not vote, then I believe that should have been disclosed."

(Hanauer, dep., p. 757). Thus, although it is difficult to see how Hanauer could find that the deal was "fair" given the importance of the information which was misstated or omitted, there is at least agreement that it was materially false and misleading to state that the directors were unanimously in favor of the merger. (*See*, Volume IV of Hanauer's deposition, attached as Exhibit M)

c.    **The Resignation of Mr. Herron.**

The second material misstatement or omission made by the OHSL and Provident Defendants was their failure to disclose to the OHSL shareholders in the Proxy Materials

that Herron had resigned in protest effective three days prior to the August 2, 1999 merger vote.[11]  Although Herron may not have stated in his letter of resignation that he was resigning in protest, this was obvious from the circumstances and timing of the resignation. Additionally, Herron called each director the day that he resigned to personally inform them that he was resigning in protest. (CAC, ¶51). The only exception was McKiernan, whom Herron called him as soon as McKiernan returned to the United States.  This was confirmed at his deposition. When asked if he resigned in protest, Herron stated: "Protest, of course, is just an expression of disapproval.  And in that sense, I certainly resigned in protest." (Herron Deposition, p. 61).   This is further illustrated by the fact that Herron chose not to profit from a transaction in which he did not believe. Herron had the opportunity to exercise tens of thousands of stock options, as well as receive $900/month for 24 months for serving in the entirely honorific role of Provident "advisory director." However, he honorably opted to forego this payment since he did not want to be associated with Provident. This conduct is obviously in conflict with approval of the merger, and would have been information both the sophisticated and unsophisticated investor would have wanted to know prior to voting on the merger.

Furthermore, in relation to the omission of Herron's resignation, Hanauer testified that he and/or other members of the Board of Directors wanted to clarify this issue, but were instructed by Defendant Roe not to do so. (Hanauer at 779-780).  When Hanauer

---

[11]   The Dinsmore Defendants have stated that Herron resigned because he was moving to South America and would be unable to attend board meetings.  However, he did not move.  Further, it is difficult to understand why Herron would have to resign for an inability to attend board meetings when these board meetings would no longer occur if the merger took place and OHSL was no longer in existence.

was asked whether or not more information should have been disclosed about Herron's resignation, Hanauer responded in part as follows:

> "We disclosed, albeit in a somewhat of a left-handed format, that he was not on the, on the Board, because he's not listed as a Board member. Did we disclose that Mr. Herron several days before the vote was taken, tendered his resignation? We did not. That is something that was brought up with our legal counsel and they felt that it should stay out of the document and we left it out. That's something I broached with him and he said leave it out and we did not dwell on that. It's immaterial to the transaction, his opinion. And that's what we did."

(Hanauer dep., p. 779-780). However, when Hanauer was asked about this statement regarding materiality, he replied that: "Cliff said it's immaterial. I didn't say that." (Hanauer dep. p. 780).

Further, the OHSL and Provident Defendants argue that there was no prejudice to the shareholders because they could have determined that Mr. Herron had resigned by comparing the Director list published in the proxy materials with the Director list published in OHSL's 1999 Annual Report, published a few months earlier. (Amended Motion to Dismiss, p. 21). However, this is simply false. Although the OHSL and Provident Defendants have argued in their previous motions to dismiss and in this one, despite this Court's clear ruling to the contrary, that the Herron resignation was disclosed, it never was. The Proxy Materials/Registration Statement was crafted in such a way so as to be materially false and misleading, and to intentionally misstate or omit facts that would have thrown approval of the merger in doubt. Indeed, even Defendant Roe himself, admits that the Herron resignation was not disclosed:

Q.    Mr. Roe, was Mr. Herron's resignation disclosed to the shareholders?

A.    No. I'm not aware that it was.

Q.    Okay. Why not?

36

(Objections omitted).

MR. BRAUTIGAM:  Mr. Roe, the action is over here. I'm not going to respond to her.

THE WITNESS:        That's fine. Do you want to repeat your question?
(Record read by Reporter)

A.      My answer to that is, you should ask the people that prepared this document that question.

Q.      Who should I ask?

A.      The lawyers at Keating firm, the individuals at Oak Hills who participated in the preparation of what normally is company documents in connection with a proxy statement.

(Roe dep. at 87-88, Attached as Exhibit N).

OHSL's argument that Herron's resignation was disclosed, or that it could have been discovered, further illustrates how much the OHSL and Provident Defendants have lost touch with the true purpose of the Proxy Materials/Registration Statement.  The Proxy Materials at issue stated that its purpose was to "more fully describe the proposed transaction" which is "the proposed acquisition of OHSL by Provident Financial Group, Inc." (*See,* Letter from Norbert G. Brinker to Stockholders, Attached as Exhibit O). The writer of the proxy materials bears the burden of clear communication. (*See*, Preliminary Lutz Report, Attached as Exhibit B) A shareholder should never have to piece together the meaning of the Proxy Materials by searching and including information from other sources. Id. Such a situation would indicate nothing less than that the board of directors are trying to keep information away from the stockholders rather than present them with the information necessary to render an informed decision. Id.

The Proxy Materials/Registration Statement was specifically crafted to mislead the OHSL shareholders. Id.  In particular, the OHSL and Provident Defendants did so by

repeatedly referring to the "OHSL board" without any additional language which would reflect the reality that the composition of the OHSL board had changed at a crucial point in the consideration of the merger. Id. The OHSL board composition changed throughout the acquisition and merger process, but this was never acknowledged in the Proxy Materials/Registration Statement. It cannot be disputed that the July 22, 1999 OHSL board in which Herron was still a member was not the same OHSL board that continued negotiations and concluded the deal on August 2, 1999. Because the OHSL and Provident Defendants wanted to close the deal at all costs, it is understandable that they would not want to tell the OHSL shareholders of this material change in the make up of the OHSL board. However, just because it is understandable, does not mean that it is fair or even legal. In fact, the OHSL and Provident Defendants' conduct was a material misstatement/omission that violated securities laws.

    **d.**    **<u>Securitization of the Loans</u>**

Plaintiffs have alleged that the OHSL and Provident Defendants did not disclose the extent to which Provident relied on securitization of loans to generate corporate profits, or the nature of the risks involved with the activity. (CAC, ¶118); (*See,* Expert Opinion of Ross D. Fuerman, Attached as Exhibit D). Under the "Risk Factors" section of the Proxy Materials, there was a subsection entitled "Provident Financial May be Unable to Maintain Value of Securitizations." (CAC, ¶118). In particular, the Plaintiffs alleged that this subsection did not disclose the proportion of Provident's Financial's reported earning relating to its huge loan portfolio nor that thousands of auto leases were incorrectly treated." (CAC, ¶118). Rather, it misled the OHSL shareholders into believing that only nine auto leases were affected instead of nine pools containing tens of

thousands of auto loans. (CAC, ¶118); (*See*, Expert Opinion of Ross D. Fuerman, Attached as Exhibit D).

The Plaintiffs also alleged that this subsection did not disclose that $37 million of the $81 million pretax earnings (51%) for the year that ended December 31, 1998 were "non cash." (CAC, ¶118). On August 22, 2000, less than one year following the date of the Proxy Materials, Defendant Provident announced a change in accounting for the "non-cash" gains arising from this "securitization" activity to a realistic "secured financings" methodology from a "gain on sale" methodology, causing Provident Financial to reduce by 26% its estimate of operating earnings for 2000 to $2.65 per share from $3.60 per share. (CAC, ¶118). By this time, as a result of the foregoing, the per share price of PFGI stock had dropped approximately 8% in response to the August 22, 2000 announcement, thereby diminishing the value of the securities that the class had been deceived into receiving. (CAC, ¶118).

The OHSL and Provident Defendants counter that the OHSL shareholders could have calculated the amount of Provident's overall net profits in 1998 and 1999 which resulted from securitization activites through cross referencing of documents and simple arithmetic. (Amended Motion to Dismiss, p. 18). However, once again, instead of openly and directly providing the OHSL shareholders, to whom they owe a fiduciary duty, the information which would allow them to make an educated decision, the OHSL and Provident Defendants required the OHSL shareholders to independently search for the information, and make mathematical calculations, in the hope that the majority of them will (1) not realize that such independent research or calculation is necessary, and/or (2) not take the time to do it. However, such intensive research and labor on the part of the

shareholder was not intended in relation to Proxy Materials, and it does not negate the fact that these are material and misleading misstatements in them. (*See,* Expert Opinion of Ross D. Fuerman, Attached as Exhibit D).

Thus, since this Court has already recognized that the Plaintiffs have successfully pled two material misstatements and one omission of material fact in the Proxy Materials, and since only one material misstatement or omission is sufficient to end the materiality inquiry at the motion to dismiss stage, the Plaintiffs have successfully pled the materiality element of the 10b-5 claim.

### 3.    Plaintiffs' Sufficiently Pled the Scienter Element of the Section 10(b) Claim

Plaintiffs' CAC also properly alleged the scienter element of the 10(b) claim. "The PSLRA changed the pleading requirements in private securities fraud litigation by requiring that a complaint plead with particularity both falsity and scienter." *Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1034, n.12 (9th Cir. 2002). Interestingly, the PSLRA "nowhere defines what the 'required state of mind' is for any of the kinds of actions that might be brought" under the Securities Act. *In re Baesa Sec. Litig.*, 969 F.Supp. 238, 240 (S.D.N.Y. 1997). However, it has been determined that the PSLRA did not disturb the well-settled understanding that "scienter" is the requisite mental state for liability under Section 10(b) cases. *Ernst & Ernst v. Hoschfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375; ." *In re Comshare, Inc. Securities Litigation*, 183 F.3d 542, 550, n.5 (6th Cir. 1999).

In *In re Comshare, Inc. Securities Litigation*, the court stated that pursuant to the PSLRA, the "required state of mind" is defined as follows:

> We conclude that plaintiffs may plead scienter in § 10b or Rule 10b-5 cases by alleging facts giving rise to a strong inference of recklessness, but not by alleging facts merely establishing that a defendant had the motive