> and opportunity to commit securities fraud. Consequently, we must reject the reasoning of the district court to the extent it concluded that plaintiffs must "plead specific facts that create a strong inference of knowing misrepresentation on the part of the defendants" in order to establish a defendant's scienter in a securities fraud case brought under § 10(b) or Rule 10b-5.

Id. at 548-49. Under current Sixth Circuit law, "recklessness satisfies the § 10(b)/Rule 10b-5 scienter requirement." *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1024 (6th Cir. 1979). In *Mansbach,* this Court expressed generally that "recklessness [is] highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known it." Id at 1025.

Similarly, in *Helwig v. Vencor,* the United States Court of Appeals for the Sixth Circuit provided a definitive explanation of the meaning of a "strong inference":

> "Inferences must be reasonable and strong--but not irrefutable. "Strong inferences" nonetheless involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact. Plaintiffs need not foreclose all other characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder. Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences.

251 F.3d at 553.

Finally, motive can help give rise to a finding of the requisite scienter. In *In re SmarTalk Teleservices, Inc. Sec. Litig.,* 124 F. Supp. 2d 487 (S.D. OH 2000), this Court stated that the Sixth Circuit's point with respect to motive and opportunity in *In re Comshares, Inc. Securities Litigation* was subtle. Id. at 500, n.8. "The statute requires scienter for liability and not just motive and opportunity; nonetheless, facts showing motive and opportunity may 'on occasion' give use to an inference of scienter." Id.

Thus, to survive a motion to dismiss, plaintiffs are not required to "allege facts giving rise to a strong inference of knowing misrepresentation or intent. Id. Rather, Plaintiffs are required to plead facts which indicate "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375 (1976).

"Corporate scienter relies heavily on the awareness of the directors and officers, who -- unlike the public relations or personnel departments -- are necessarily aware of the requirements of SEC regulations and state law and of the danger of misleading buyers and sellers." *Nordstrom, Inc. v Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995). In *In re Ramp Networks, Inc. Securities Litigation,* 201 F. Supp. 1051, 1080 (N.D. CA 2002), the plaintiffs failed to establish scienter as to individual corporate officers and the district court found that there could be no scienter on the part of the corporation based on the awareness of these individuals. Id.  However, the court added that to the extent that the plaintiffs could amend their complaint to establish that GAAP violations occurred, they might be able to show scienter on the part of the CEO, President and Chairman of the Board, and if they find scienter on the part of the CEO, then plaintiffs will also have adequately alleged scienter as to the corporation. Id. *See, In re SmarTalk Teleservices Inc. Securities Litigaiton,* 124 F. Supp.2d 527, 539 *(S.D. Oh. 2000)* ("Although allegations of accounting errors in violation of GAAP are, by themselves, insufficient to establish scienter for a securities fraud claim . . . such violations are relevant when combined with allegations to show that Defendants knew or could have known of the errors.").

The court in *In re Warner Communications Securities Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d. Cir. 1986), noted that a corporation's scienter could be different from that of an individual director or officer. Id. at 752. The court expressly stated that such scienter would require a showing that one or more members of top management knew of material information, but failed to stop the issuance of misleading statements, or recklessly failed to set up a procedure that insured the dissemination of correct information. Id.

Similarly, in *In re Microstrategy, Inc. Securities Litigation*, 115 F. Supp.2d 620, 636 (E.D. Va. 2000), the district court found that a significant overstatement of revenues tended to support a finding of scienter. Id at 636-637; *Carley Capital Group v. Deloitte & Touche*, 27 F.Supp.2d 1324, 1339-40 (N.D. Ga. 1998) ("While alleging a misapplication of Generally Accepted Accounting Principles standing alone is insufficient, such allegation when combined with a drastic overstatement of financial results can give rise to a strong inference of scienter. . . . [and] the totality and magnitude of the . . . accounting violations [may] constitute strong circumstantial evidence of reckless or conscious misbehavior." S*ee Also, In re The Baan Co. Sec. Litig.*, 103 F. Supp.2d 1, 21 (D.D.C. 2000) ("The magnitude of the [GAAP] error can play a role" in inferring scienter.). Indeed, common sense and logic dictate that the greater the magnitude of a restatement or violation of GAAP, the more likely it is that such a restatement or violation was made consciously or recklessly. Id. at 636. Although this is a matter of degree, it cannot be gainsaid that some violations of GAAP and some restatements of financials are so significant that they, at the very least, support the inference that conscious fraud or recklessness as to the danger of misleading the investing

public was present. Id. at 636-637. As a result, in *In re Microstrategy, Inc. Securities Litigation,* the district found that the alleged GAAP violations and the subsequent restatements were of such a great magnitude--amounting to a night-and-day difference with regard to MicroStrategy's representations of profitability--as to compel an inference that fraud or recklessness was afoot. Id. at 637.

In the present case, Plaintiffs have met the pleading requirements of the PSLRA as to scienter element of the Section 10(b) claim. As stated above, it has already been established by this Court and Plaintiffs' Memorandum that the Proxy Materials contained material misstatements or omitted material facts. This includes not only statement regarding the unanimity of the vote in favor of the merger, but a material misstatement regarding Provident's financial statements and securitization activity. In fact, the First Restatement was the "longest continuous string of amendments in memory for a U.S. corporation."  (CAC, ¶88).

The OHSL and Provident Defendants acted intentionally or recklessly by disregarding their actual knowledge of these material misstatements and omissions when preparing the Proxy Materials. Any reasonable person would know that it is reckless, at a minimum, or perhaps intentionally false and misleading, to state that the vote was unanimous in support of the merger when one director was not present, one abstained from voting, and one resigned in protest a few days before the vote. *Bovee, et al. v. Coopers & Lybrand, et al.*, 272 F.3d 356 (S.D. Ohio 2002) citing *In re Comshares*, 183 F.3d at 550. Similarly, any reasonable person would know that it is intentional or reckless to state that the vote was unanimous when one of the directors resigned in protest three days before the vote and individually contacted each of the other OHSL directors to

inform them of the reasons for his resignation. Further, any reasonable person would know that it is reckless to fail to state the extent to which Provident relied on securitization of loans to generate corporate profits. Finally, any reasonable person would know that it was reckless for Provident to mislead the investing public into thinking that there were only nine auto leases affected when, in reality, there were thousands. (CAC, ¶118).

These allegations give rise to a "strong inference" that the OHSL and Provident Defendants acted with a mental state embracing an intent to deceive, manipulate or defraud. This is the most probable of the competing inferences, and is further supported by the evidence of motive in this action. The OHSL and Provident Defendants benefited from the misrepresentations and omissions because PFGI was able to acquire OHSL for artificially inflated currency in the form of Provident shares. (CAC, ¶148). Defendant Hanauer benefited from the newly added change of control provisions in his contract, and the OHSL Defendants benefited from their positions as Provident "Advisory Directors, " or no-show honorifics, for which OHSL directors were paid tens of thousands of dollars. (CAC, ¶148).

Defendants attempt to argue that Plaintiffs have only really alleged generalized allegations about accounting errors and other alleged misrepresentations without any detailed factual allegations to support this Section 10(b) claim. (Amended Motion to Dismiss, p. 30). However, this is clearly not the case. Plaintiffs have set forth allegations regarding defendants' knowledge of the actual circumstances at the time of the Proxy Materials. Furthermore, even if this case only amounted to an accounting error, which it is not, this is much more than a normal accounting error. The accounting for auto lease

transactions, and the decision of whether or not to include them on or off balance sheets, is fundamental to Provident's business, and the decision of how to properly account for such auto lease transactions is fundamental to audits. (CAC ¶32). Further, as stated above, these mere accounting errors led to the "longest continuous string of amendments in memory for a U.S. corporation." (CAC ¶88). The OHSL and Provident Defendants cannot sincerely argue that Defendant E&Y did not know how to properly account for such auto lease transactions, or that they were unaware that such "desired results" accounting was taking place. (CAC ¶32).

### 4.  Plaintiffs Sufficiently Pled the Reliance Element of the Section 10(b) Claim.

Plaintiffs have sufficiently pled the reliance element of the Section 10(b) claim. The element of reliance on the part of a buyer may be presumed in the case of an omission or nondisclosure of material facts. *Molecular Technology Corp. v. Valentine*, 925 F.2d 910, 918 (6th Cir. 1991)(the element of reliance on the part of a buyer may be presumed in the case of an omission or nondisclosure of material facts); *Basic Inc. v. Levinson*, 485 U.S. 224, 227, 108 U.S.S.Ct. 978 (1988) (there can be no doubt that Plaintiffs relied upon these misrepresentations because reliance is presumed when the fraud alleged is "fraud on the market," and there exists a sufficient allegation that the misrepresentation is material). As stated above, Plaintiffs have amply pled allegations which show that there were material misrepresentations and omissions in the Proxy Materials. As a result, the fact that Plaintiff Thiemann voted against the merger does not prevent a finding of reliance in this case. Furthermore, Defendants do not cite to any case law which provides that reliance cannot be found if a party does not vote in favor of a merger based upon material misrepresentations in Proxy Material.

Thus, since Plaintiffs have met the first two elements of a Section 10(b) claim, and the element of damages is not challenged by Defendants, the Motion to Dismiss the Section 10(b) claim must be denied as to Plaintiffs' Section 10(b) claim.

**C.    Plaintiffs Timely Filed a Section 10(b) Claim Against the OHSL and Provident Defendants.**

Plaintiffs timely filed their Section 10(b) claim as to the OHSL and Provident Defendants. The statute of limitations is an affirmative defense, for which the defendant bears the burden of proof. *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1118 (W.D. Mich. 1996). Plaintiffs are not required to negate the affirmative defense of the statute of limitations in their Complaint; it is defendants' burden at all stages of the litigation. Id. (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). For this reason, it is generally inappropriate to address the statute of limitations on a motion on the papers--particularly when the defense is that plaintiffs should have discovered the facts underlying their claim. *Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533, 537 (M.D. Fla 1997) citing (*Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567, 1572 (11th Cir. 1990)). However, if this Court decides to do so at this juncture, then the facts of this case show that Plaintiffs have timely filed their Section 10(b) cause of action as to the OHSL and Provident Defendants.

Sections 10(b) is not subject to an express statute of limitations because it was judicially created. *Freeman v. Laventhol & Horwath, et al.*, 34 F.3d 333, 338 (6th Cir. 1994).  However, the Supreme Court has applied the one-year statute of limitations and three-year statute of repose to said claims as set forth in §9(e) of the Exchange Act, 15 U.S.C. §78i(e), to §10(b). *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991).  This limitations period is triggered when the defendant "commits the

act that gives rise to liability under §10(b)." *Bovee v. Coopers & Lybrand*, 216 F.R.D.

596, 604 (S.D. OH 2003)(internal quotations omitted).

In 2002, the Sarbanes-Oxley Act expanded the applicable periods of limitation

and repose to two years and five years. In particular, on July 30, 2002, Congress amended

§ 1658 by designating the quoted language as subsection (a) and adding subsection (b)

which provides:

> Notwithstanding subsection (a), a private right of action that involves a
> claim of fraud, deceit, manipulation, or contrivance in contravention of a
> regulatory requirement concerning the securities laws, as defined in
> section 3(a)(47) of the Securities Exchange Act of 1934 15U.S.C.
> 78c(a)(47)), may be brought not later than the earlier of --
>
> > (1) 2 years after the discovery of the facts
> > constituting the violation; or
> >
> > (2) 5 years after such violation.

Id.; 28 U.S.C. §1658(b).  The language of the Sarbanes-Oxley Act directly mirrors

Section 10(b) which provides the private causes of action for securities fraud.  As a

result, unlike a Section 11 claim, the Sarbanes-Oxley Act is directly applicable to

Plaintiff's Section 10(b) claim against Defendants such that it extends the applicable

statute of limitations to two years and statute of repose to five years.

The only claim in relation to Plaintiffs' Section 10(b) claims which is being

challenged on the basis of statute of limitations is Plaintiffs' restatement claim.  This

claim was timely filed because Plaintiffs were not on notice of Defendants' conduct until

March 5, 2003. The discovery of the act or omission is based upon an inquiry notice.

*New England Heathcare Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495

(6th Cir. 2003). Knowledge of suspicious facts merely triggers a duty to investigate, and

that the limitation period begins to run only when a reasonably diligent investigation

would have discovered the fraud.  Id. at 501; see also *Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239, 262 (3rd. Cir. 2001)(facts must alert investor to "probability that misleading statements or significant omissions had been made"); *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1335 (7th Cir. 1997)("[F]acts constituting [inquiry] notice must be sufficiently probative of fraud--sufficiently advanced beyond the stage of a mere suspicion, sufficiently confirmed or substantiated-- not only to incite the victim to investigate but also to enable him to tie up any loose ends and complete the investigation in time to file a timely suit.").  The Sixth Circuit found that this rule reflected an appropriate balance between "the staunch federal interest in requiring plaintiffs to bring suit promptly . . . and the equally strong interest in not driving plaintiffs to bring suit . . . before they are able, in the exercise of reasonable diligence, to discover the facts necessary to support their claims." Id. at 501.

Courts have also routinely held that the issue of inquiry notice is a factual matter to be resolved by the jury. *See, e.g., Trust v. United States*, 77 F.3d 483, ** 3 (6th Cir. 1996)("A determination of inquiry notice is a question of fact.")(citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401-402 (1990));  *See Also, Marks v. CDW Computer Centers, Inc.*, 122 F.3d 363, 367 (7th Cir. 1997)("Whether a plaintiff had sufficient facts to place him on inquiry notice of claim for securities fraud under S.E.C. Rule 10b-5 is question of fact."); *Young v. Lepone,* 305 F.3d 1,9 (1st. Cir. 2002)("In the archetypical case. . ., it is for the fact finder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice.")  While, in certain circumstances, inquiry notice may be found as a matter of law, this is so only in "extreme circumstances," *Blatt v. Merrill Lynch,* 916 F. Supp. 1343, 1356 (D.N.J. 1996), where

"the uncontroverted evidence irrefutably demonstrates when the plaintiff discovered or should have discovered the fraudulent conduct." *In re Nivram Corp. v. Harcourt Brace Jovanovich,* 840 F. Supp. 243 (S.D.N.Y.).  Plaintiffs submit that the determination of whether Plaintiffs were on inquiry notice in relation to their Section 10(b) claim related to the Restatement is a matter of factual determination reserved for a jury.  However, if this Court disagrees, there is still ample evidence that Plaintiffs' Section 10(b) claim in relation to the Restatement was timely filed.

As stated above, the date for inquiry notice in this case is, and must be, March 5, 2003, or the date the First Restatement was filed.  A finding of inquiry notice before March 5, 2003 would result in punishing the Plaintiffs for waiting until the appropriate factual information could be gathered to file their claims against Defendants.  There were no "storm warnings" in relation to the Provident's financial statements or securitizations before March 5, 2003.  This was in large part because Defendants had only presented evidence to the contrary.  Defendant E&Y certified its compliance with GAAP and GAAS in relation to the Proxy Materials, and filed no restatements prior to March 5, 2003 which would indicate otherwise. (CAC ¶100).  In fact, Defendant Provident did not correct the materially false and misleading Financial Statements that Defendant E&Y had falsely certified until PricewaterhouseCoopers ("PwC") required Defendant E&Y to do so. (CAC ¶106).  As a result, there was nothing that Plaintiffs could have inquired about prior to March 5, 2003.

Similarly, Plaintiffs' Section 10(b) claim in relation to the restatements would relate back to the filing of the original complaints pursuant to Fed.R. 15(c).  This is not a situation like in *In re Arm Financial,* 2002 U.S. Dist. LEXIS 13451 at *16-18 (quoting

*Morin v. Turpin*, 778 F.Supp. 711 (S.D.N.Y. 1991), where the plaintiffs did not timely file the 1933 Act claims in the first complaint, but tried to get the 1933 Act claims which would otherwise be barred by the applicable statute of limitations in through the amended complaint pursuant to Fed. Rule 15(c). Id. at 16-17. Rather, here, the Section 10(b) claim was already timely filed within the applicable statute of limitations and statute of repose pursuant to the September 20, 2000 original complaint, and the February 4, 2002 amended complaint.  The restatement is merely an additional argument under the previously timely filed Section 10(b) claim.  As a result, the restatement claim is not barred by the applicable statute of limitations and statute of repose because it relates back to the Section 10(b) claim which was previously timely filed in the September 20, 2000 and February 4, 2002 complaints pursuant to Fed. Rule 15(c).

Finally, a finding of inquiry notice prior to March 5, 2003 would be inconsistent with the continuous fraud doctrine. The continuing fraud doctrine tolls the statute of limitations until the last act in the scheme has been committed. It only applies when a violation occurring outside the limitation period is so closely related to other violations which are not time barred as to be viewed as part of the continuing practice for which recovery should be had for all violations. *S.E.C. v. Caserta*, 75 F.Supp.2d 79, 89 (E.D.N.Y. 1999), cited in *De La Fuente v. Dci Telecoms*, 206 F.R.D. 369, 386 (S.D.N.Y. 2002).

As stated above, the first indication that the investing public had any knowledge that anything was amiss with respect to Provident's financial statements was March 5, 2003.  Furthermore, this is the first day that Defendant E&Y did not conceal their knowingly reckless auditing conduct in relation to Provident's financial statements. As a

result, from the date of its certification and opinions, up until March 5, 2003, Defendants took part in a continuous fraudulent course of conduct that went on for many years. Therefore, since Defendants continuously committed fraud up until March 5, 2003, and Plaintiffs filed within two days of receiving notice of said fraud, the continuous fraud doctrine should toll the statute of limitations in this action such that Plaintiffs' claim is not time barred.  It would be unquestionably unjust for the statute of limitations for Plaintiffs' Section 10(b) claim to run before Plaintiffs had a chance to discover it, and would, in essence, permit Defendants to get away with the "perfect crime."[12]

Therefore, based upon the foregoing, these facts show that Plaintiffs could not have had any inquiry notice regarding Provident's materially false financial statements and securitizations prior to March 5, 2003.  As a result, since the statute of limitations for Section 10(b) claims has been extended to two years, and the statute of repose has been extended to five years pursuant to the Sarbanes-Oxley Act, as since Plaintiffs had previously timely filed their Section 10(b) claim in the September 20, 2000 and February 4, 2002 complaint, Plaintiffs timely filed their Section 10(b) as to the Restatement claim since they filed it within two days of receiving notice of Provident's materially false financial statements on  March 5, 2003.

**D.    Plaintiffs Sufficiently Pled a 11 Claim of the Securities Act, 15 U.S.C. §77k, Upon Which Relief Can be Granted.**

Section 11, 15 U.S.C.S. 77k of the Securities Exchange Act of 1933 provides a cause of action if any part of a registration statement contained an untrue statement of a

---

[12]  There is also support  in *Eisen v.Carlisle and Jacquelin, et al.,* 417 U.S. 156, 94 S.Ct. 2140 (1974) and *Amercian Pipe and Construction Co.,et al.  v. Utah, et al.*, 414 U.S. 538, 94 S.Ct. 756 (1974), for the proposition that the commencement of a class action tolls the statute of limitations.

material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading. 15 U.S.C.S. 77k(a). The statute sets forth five groups of people who may be liable for the misrepresentation: (1) anyone who signed the registration statement; (2) anyone who was a director or partner in the issuer at the time of the filing; (3) anyone who is named in the registration statement as being a director or partner; (4) anyone who has certified any part of the registration statement; and (5) any underwriter of the security. Id.

Civil liability under Section 11 and similar provisions was designed not so much to compensate the defrauded purchaser as to promote enforcement of the Securities Act and to deter negligence by providing a penalty for those who fail in their duties. *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2nd Cir. 1969). By making all those who take part in preparing a registration statement jointly and severally liable if it contains any false or misleading statements or material omissions, Subsection f(1) acts as a deterrent and distributes the obligation to pay damages. *Trucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727, n.7 (2nd. Cir. 1981).

15 U.S.C.S. §77k does not require a showing of fraud and imposes a stringent standard of liability on the parties who play a direct role in a registered offering. Consequently, pleading under Section 11 is governed solely by Rule 8 rather than 9(b) because fraud is not an element of a Section 11 claim. *Romine v. Acxiom Corp.*, 296 F.3d 701 (8th Cir. 2002). Several circuits have distinguished between allegations of fraud and allegations of negligence, applying Rule 9(b) only to claims pled under Section 11 and Section 12(a)(2) that sound in fraud. *See, Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3rd. Cir. 1992).

A corporation director is a proper defendant under Section 11 of Securities Act (15 U.S.C.S. §77k) where he either signs registration statement or is director at time that statement is filed if the statement contains untrue statement of material fact or omits material fact required to be stated therein. *Goldstein v. Alodex Corp.*, 409 F. Supp. 1201, 1206 (E.D. PA, 1976). However, a director is not liable if he sustains his burden of proof by showing that he had, after reasonable investigation, reasonable grounds to believe, and did believe, at the time that a defective registration statement became effective, that the statements therein were true and that there was no omission to state a material fact. Id.

In providing standards of care under the 1933 Act, Congress thus used different language for different situations. Although "reasonable investigation " is required for registered offerings under § 11, nothing more than "mer[e]... 'reasonable care '" is required by § 12 (2). *John Nuveen & Co. v. Sanders*, 450 U.S. 1005, 1008, 101 S. Ct. 1719 (1981) citing Douglas & Bates, *The Federal Securities Act of 1933*, 43 Yale L.J. 171, 208 (1933). The difference in language is significant, because in the securities Acts Congress has used its words with precision. Id. at 1009. *See, e.g., Ernst & Ernst v. Hoschfelder*, 425 U.S. 185, 198-201 (1976); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 755, 756 (1975) (POWELL, J., concurring). "Investigation" commands a greater undertaking than "care." Id. See Douglas & Bates, supra , at 208, n. 205.

In the present case, the Individual OHSL and Provident Defendants have not come forward with evidence that they conducted a reasonable investigation, obtained a reasonable and independent verification of the registration statement, or that after such investigation they had reasonable grounds to believe, and did believe, the accuracy of the

registration statement. Any reasonable investigation would begin with what is included on or off the balance sheet. Such a decision is the logical starting point for the presentation of the company's financial statements, and is also the starting point for GAAS audits applying GAAP. At this stage of the litigation, the overwhelming inference is that because these allegedly inadvertent accounting errors were both so basic and so massive that they would have been caught in any reasonable investigation, the Defendants have not met their burden that they conducted a sufficient investigation in good faith.

Rather, the OHSL and Provident Defendants just state that they relied upon Defendant E&Y's expert certification of the Provident financial data included in the allegedly misleading Proxy Materials. (Motion to Dismiss, p. 32). In support of this argument, the Individual OHSL and Provident Defendants cite to *John Nuveen & Co., Inc. v. Sanders,* 450 U.S. 1005, 1010. In *John Nuveen & Co.,* the United States Supreme Court stated that under Section 11 of the Act, an underwriter is explicitly absolved of the duty to investigate with respect to "any part of the registration statement purporting to be made on the authority of an expert" such as a certified accountant if "he had no reasonable ground to believe and did not believe" that the information therein was misleading. Id. at 1019. The critical part of this sentence is if "he had no reasonable ground to believe and did not believe" that the information therein was misleading. This is not the situation in the present case. Plaintiffs have alleged sufficient evidence to the contrary.

As set forth in greater detail above, Plaintiffs have alleged that the statements contained within the Proxy Materials were materially false. Plaintiffs have also alleged that the Individual OHSL and Provident Defendants were directors of their respective companies at the time the false Proxy Material/Registration Statement were sent to Plaintiffs and the class, and at the time that they signed the Registration Statement containing the false and misleading Proxy Materials on behalf of themselves and Defendants OHSL and PFGI. (CAC, ¶128). Finally, Plaintiffs have alleged that they have been damaged as a result of the aforementioned violations of Section 11 of the Securities Act. (CAC, ¶130).

Thus, since Section 11 does not require a finding of scienter, and since it is a factual issues as to whether or not the OHSL and Provident Defendants had reasonable grounds to believe, and did believe, at the time that a defective registration statement became effective, that the statements therein were true and that there was no omission to state a material fact, the OHSL and Provident Defendants' Motion to Dismiss the Section 11 Claim must be denied.

**E.**     **Plaintiffs Sufficiently Pled a Section 12(2) Claim of the Securities Act, 15 U.S.C. §77l(2), Upon Which Relief Can be Granted.**

The OHSL and Provident Defendants violated Section 12(2) of the Securities Act, 15 U.S.C. § 77l(2) This Section, which deals with civil liabilities arising in connection with prospectuses and communications states, in pertinent part, as follows:

(a) In general. Any person who--

    (1) offers or sells a security in violation of section 5 [15 USCS §773] or

> (2) offers or sells a security (whether or not exempted by the provisions of section 3 [15 USCS §773] other than paragraphs (2) and (14) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

Id.

In other words, to recover under Section 12(2) plaintiffs must show that defendants misstated or omitted to state certain material facts, that such misstatements or omissions rendered the statements made misleading, and that plaintiffs did not know the truth. *Aronson v. TPO, Inc.*, 410 F. Supp. 1375 (S.D.N.Y. 1976) citing *Hill York Corp. v. American International Franchises, Inc.*, 448 F.2d 680, 696 & N. 25 (5th Cir. 1971). Section 12 of the 1933 Act imposes strict civil liability upon any person who "offers or sells a security" in violation of the registration requirement of section 5, 15 U.S.C. §77e. *See,* 15 U.S.C. §77l.

Although the statutory language implies that only actual sellers may properly be sued, courts have interpreted the statute somewhat more broadly to include situations in which either privity exists between a plaintiff and defendant, or a defendant's actions constitute a "substantial factor" in causing a particular transaction to take place. *See,*

*Pharo v. Smith*, 621 F.2d 656, 666-67 (5th Cir. 1980), *remanded in part on other grounds*, 625 F.2d 1226 (5th Cir. 1980) (per curiam).

The test for whether a statement is materially misleading under Section 12(a)(2) is identical to that under Section 10(b) and Section 11: whether representations, viewed as a whole, would have misled a reasonable investor. *See, I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*, P.C. 936 F.2d 759, 761 (2nd Cir. 1991).

Also, as with a Section 11 Claim, a claim for a violation of Section 12(2) of the Securities Act of 1933 also does not require that plaintiffs allege the scienter or reliance elements of a fraud cause of action. The right given to purchaser of securities by Section 12(2) of Securities Act of 1933 (15 USCS §77l(2)) to recover for misrepresentation of seller differs substantially from common-law action, in that seller is made to assume burden of proving lack of scienter. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182 (1953). Where buyer has met the burden of proving falsity, materiality and excusable ignorance, he is entitled to recover unless the seller sustains the burden of showing that he did not know statements were false or could not have known in the exercise of reasonable care. *Woodward v. Wright*, 266 F.2d 108 (10th Cir. 1959).

In *Aronson v. TPO, Inc.*, 410 F. Supp. 1375 (S.D.N.Y. 1976), the district court found that a chairman of the board of directors for a corporation, who was also principal stockholder of corporation, was liable to a person who purchased securities from a corporation as result of omissions of material fact made by chairman during negotiations in violation of § 12(2) of Securities Act (15 USCS §77l(2). Id. at 1379-1380.

In the present case, Plaintiffs have alleged that the OHSL and Provident Defendants were the sellers of PFGI shares sold and exchanged through the merger

agreement and the Proxy and Registration Materials.  (CAC, ¶133).  These were misstatements that OHSL CEO Hanauer repeated at the October 25, 1999 Special Meeting.  In particular, Hanauer read from a script prepared by Defendant Dinsmore that contained and re-affirmed many of the material misstatements made in the Proxy Materials/Registration Statement. In reality, Hanauer was defrauding the OHSL shareholders by running a Special Meeting which called for them to vote in favor of the merger when he himself neither believed in the merger nor voted any of his personal shares in favor of it.  (CAC, ¶¶12, 15).  Although Defendant Roe was in the room with Hanauer as well, and even took questions from the audience, both Defendants succeeded in concealing the true facts regarding the merger from the OHSL shareholders.

As discussed in greater detail above, Plaintiffs also alleged that Proxy Materials/Registration Statement that OHSL and PFGI issued were materially false and misleading. (CAC, ¶134).  In particular, Plaintiffs alleged that it contained financial information for 1997-1999, and by reference for the years 1994-1999, that were falsely certified by Defendant E&Y, and that the Individual OHSL and Provident Defendants each signed the materially false and misleading Proxy Materials. (CAC, ¶134).  Further, Plaintiffs alleged that OHSL and Provident Defendants knew, or absent a failure to exercise reasonable care would have known, of the existence of these untrue statements of material fact and omissions of material fact in the Proxy Materials including the fact that the vote the OHSL board was not unanimous, and the fact that Herron's resignation was not disclosed to the OHSL shareholders (CAC, ¶133). Finally, Plaintiffs alleged that as a result of this violation of the Section 12(2) of the Securities Act, Plaintiffs and class members have been damaged in the full amount of the subject transaction. (CAC, ¶136).

The OHSL and Provident Defendants argue that Plaintiffs have only alleged that they were members of the board of directors, who were aware of material misrepresentations in the Proxy Materials, and that this is not enough to sufficiently plead a Section 12(2) Claim. However, this is not true. Plaintiffs have pled sufficient facts to survive a motion to dismiss.  As stated above, Plaintiffs have alleged falsity and materiality in the Proxy Materials, and excusable ignorance on the part of the Plaintiffs and class members.  As a result, Plaintiffs are entitled to recover unless Defendants show that they can prove that they did not know the statements were false or could not have known in exercise of reasonable care. *Woodward v. Wright,* 266 F.2d 108 (10th Cir. 1959). Thus, since this has not been, and cannot be, accomplished through a motion to dismiss, Defendants' Motion to Dismiss as to the Section 12(2) claim should be denied.

F.      **Defendants' Timely Filed Claims for Violations of Section 11 and Section 12(2) of the Securities Act Against the OHSL and Provident Defendants.**

As stated above, the statute of limitations is an affirmative defense, for which the defendant bears the burden of proof.  *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.,* 940 F. Supp. 1101, 1118 (W.D. Mich. 1996). Plaintiffs are not required to negate the affirmative defense of the statute of limitations in their Complaint; it is defendants' burden at all stages of the litigation. Id. (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)). For this reason, it is generally inappropriate to address the statute of limitations on a motion on the papers--particularly when the defense is that plaintiffs should have discovered the facts underlying their claim.  *Fischer v. AmSouth BanCorporation,* 971 F. Supp. 533, 537 (M.D. Fla 1997) citing (*Smith v. Duff & Phelps, Inc.,* 891 F.2d 1567, 1572 (11th Cir. 1990)).  However, if this Court decides to do so at this juncture, then the

facts of this case show that Plaintiffs timely filed their claims under Sections 11 and 12(2) of Securities Act (Act).

15 U.S.C.S. §77l and §77k are governed by the statute of limitations in § 13 of Act 15 U.S.C.S. §77m. 15 U.S.C. 77m provides as follows:

> No action shall be maintained to enforce any liability created under section 11 or section 12(a)(2) [15 U.S.C.S. 77k or § 77l(a)(2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12(a)(1) [15 U.S.C.S. 77l(a)(1)], unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 or section 12(a)(1) [15 U.S.C.S. 77k or § 77l(a)(1)] more than three years after the security was bona fide offered to the public, or under section 12(a)(2) [15U.S.C.S. 77l(a)(2)] more than three years after the sale.

Id. As a result, Section 13 contains two slightly different three-year provisions; one applies to section 11 and section 12(a)(1) claims, and the other to section 12(2) claims. Section 11 claim runs from the time the security was bona fide offered to the public, and the provision applicable to section 12(a)(2) claims, which runs from the date of sale. *Hill v. Equitable Bank, Nat. Asso.*, 599 F. Supp 1062 (DC Del 1984). In no event, may Sections 11 or 12(2) claims be brought more than 3 years after the security was bona fide offered to the public or three years after the sale of the security at issue. Id.

Plaintiffs' Sections 11 and 12(2) claims are not time barred because they were initially filed within 3 years of December 3, 1999 on September 20, 2000 and then again, with the specific permission of Magistrate Judge Hogan, on February 4, 2002 (*See*, Doc. No. 62)[13]. Since the OHSL and Provident Defendants argue that they are incorporating

---

[13] Gary and Lisa Meier also filed a separate action in August 2002, also well within the 3 year statute of limitations. Although Plaintiffs were severely criticized by Defendants and the Court for this filing, the necessity of the *Meier* complaint is clear given that the Defendants attempt to assert the statute of limitations as a defense.

by reference the arguments of other Defendants, Plaintiffs will assume that they are referring to Defendant KMK argument based upon *In re Arm Financial,* 2002 U.S. Dist. LEXIS 13451 at *16-18 (quoting *Morin v. Turpin,* 778 F.Supp. 711 (S.D.N.Y. 1991). Defendant KMK cited to *In re Arm Financial* for the proposition that Plaintiffs cannot relate their Section 11 claim filed in the CAC back to the earlier complaints. However, *In re Arm Financial* is factually inapplicable because it dealt with a case where the plaintiffs did not timely file the 1933 Act claims in the first complaint, but tried to get the 1933 Act claims which would otherwise be barred by the applicable statute of limitations in through the amended complaint pursuant to Fed. Rule 15(c). Id. at 16-17. Here, the Sections 11 and 12(2) Claims were timely filed within the one-year statute of limitations and three-year statute of repose in the September 20, 2000 original complaint, and then again in the February 4, 2002 amended complaint. As a result, the Sections 11 and 12(2) claims are not barred by the one-year statute of limitations and three-year statute of repose since the CAC's claims relate back to the timely filed September 20, 2000 and February 4, 2002 complaints pursuant to Fed. Rule 15(c).

Thus, based upon the foregoing, Plaintiffs' claims for violations of Section 11 and 12(2) are not time barred and should not be dismissed on this basis.

### G.    Plaintiffs Sufficiently Pled a Section 14 Claim of the Exchange Act, 15 U.S.C. §78n(a), Upon Which Relief Can Be Granted.

Defendants' Motion to Dismiss as to Plaintiffs' claim for a Violation of Section 14(a) should be dismissed because Plaintiffs have properly pled all of the elements of said claim. Section 14(a) provides as follows:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or any facility of a national securities exchange or otherwise, in contravention of such rules

> and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

Id. To prevail on a Section 14(a) claim, a plaintiff must show that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was "an essential link in the accomplishment of the transaction." *See, Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 622 (1970); *Ash v. GAF Corp.*, 723 F.2d 1090, 1092-93 (3rd. Cir. 1983). The Court has explained that an omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132 (1976).

The test of materiality under Rules 14a-9 and 10b-5 is the same. *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616 (1970); *Gilbert v. Nixon*, 429 F.2d 348, 355 (10th Cir. 1970). As a result, Plaintiffs incorporate by reference the arguments made above in relation to materiality, and submit that this element has been sufficiently pled.

In order to prevail in a civil action alleging violation of 15 USCS §78n, it is not necessary to establish evil motive or even reckless disregard of facts. Lack of intent to deceive is no defense to charge of violating proxy rules. *Dasho v. Susquehanna Corp.*, 461 F.2d 11 (7th Cir. 1972), *cert. den.* (1972) 408 US 925, 92 S.Ct. 2496.

Under Rule 14a-9, plaintiffs need not demonstrate that omissions and misrepresentations in proxy statement resulted from knowing conduct undertaken by

director defendants with intent to deceive. Rather, liability can be imposed against corporate insiders for negligently drafting a proxy statement which contains materially false or misleading statements or has omitted material facts which are sufficient to satisfy this negligence standard. *Wilson v. Great Am. Indus.*, 855 F.2d 987 (2d. Cir. NY 1988). With respect to civil actions under proxy provisions, a broad standard of culpability serves to reinforce a high duty of care owed by corporation, and those in control thereof, to minority stockholders in preparation of proxy statement seeking acquiescence of stockholders in transactions such as merger. *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281 (2d. Cir. N.Y. 1973). As a result, preparation of a materially misleading proxy statement by corporate insiders is sufficient as matter of law to show negligence for purposes of a violation of 15 USCS §78n and Rule 14a-9. *Frandkin v. Ernst*, 571 F. Supp. 829 (N.D. OH 1983).

If a challenged statement is false or misleading, it is immaterial whether misstatements were made willfully or inadvertently. *Central Foundry Co. v. Gondelman,* 166 F.Supp. 429 (D.C. NY 1958). Intent to defraud is not element of finding of violation of proxy provisions. In an action based upon alleged violation of proxy requirements of 15 U.S.C.S. §78n(a), those bringing an action are required only to prove that those charged with violations knew or should have known of statement and material facts. *Richland v. Crandall*, 262 F. Supp. 538 (S.D.N.Y. 1967). *Halpern v. Armstrong*, 491 F. Supp. 365, (S.D.N.Y. 1980) (It need not be shown that misrepresentations in proxy statement are drawn with intent to deceive stockholders). And while Plaintiffs have made a compelling case in the CAC that the misstatements and omissions were deliberate, even unintentional misrepresentations will do to survive this motion to dismiss.

The standard of liability for a director of a corporation issuing misleading proxy materials in violation of § 14(a) of Securities Exchange Act 15 U.S.C.S. §78n(a) and SEC Rule 14a-9, is also that of negligence, with a showing of scienter being unnecessary. *Gould v. American-Hawaiian S.S. Co.,* 535 F.2d 761, 777 (3d. Cir. Del. 1976). The negligence standard applies to outside (non-management) directors as well as to inside directors and management, and directors may be liable for violation of proxy requirements, notwithstanding the contention that it is reasonable for directors to expect legal counsel involved in preparation of proxy statement to comport statement with actual agreements. Id.

In *Wilson v. Great Am. Indus.,* 855 F.2d 987, 995 (2d. Cir. NY 1988), the officers and directors of two corporations who had issued joint proxy statements in connection with the proposed merger of the two corporations were held liable under Section 14(a) where the proxy statement was determined to contain material misstatements and omissions and where all defendants were shown to have had reason to be aware of at least some of the material misstatements or omissions. Id.

In *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 389-390, 90 S.Ct. 616 (1970), the United States Supreme Court found that a merger proxy solicitation sent to shareholders, containing an omission of fact that the board of directors who recommended the merger was under the control and domination of the corporation wishing to merge with theirs, had such a significant propensity to affect their voting that the protesting shareholders had right to redress under 15 U.S.C.S. §78n(a). This was the case even though merger was "fair," as the United States Supreme Court stated that fairness had no part in casual

relationship between omission and merger, but was only a factor in determining remedy which was appropriate. Id. at 382.

In the present case, Plaintiffs alleged that the OHSL and Provident Defendants were all sellers of OHSL stock, and that the Proxy Materials/Registration Statement sent to Plaintiffs contained numerous materially false and misleading statements of fact and omissions of material fact, which fraudulently induced and proximately caused OHSL shareholders to vote for and approve the subject merger by a narrow majority. (CAC, ¶¶141, 142). In particular, Plaintiffs alleged that the OHSL and Provident Defendants knew, or absent a reckless and negligent disregard of their responsibilities would have known, of the misleading and untrue nature of the statements. (CAC, ¶142).

Further, Plaintiffs alleged that the OHSL and Provident Defendants all profited by virtue of the misleading and untrue material statements contained in the Proxy Materials/Registration Statement. Plaintiffs alleged that Defendants OHSL and PFGI and Defendant Hanauer profited by virtue of the misleading and untrue material statements contained in the Proxy Materials/Registration Statement since the false and misleading Proxy Materials enabled them to mislead shareholders and acquire OHSL (CAC, ¶142). Similarly, the Plaintiffs alleged that the OHSL Individual Defendants profited by virtue of the misleading and untrue material statements contained in the Proxy Materials/Registration Statement because they enabled the merger to occur and, subsequently, the directors to receive substantial additional fees as Provident "Advisory Directors." Id.    Finally, Plaintiffs alleged that the Plaintiffs were all injured in the full amount of the subject transaction since they were induced to vote to end OHSL's life as

an independent entity based upon materially false and misleading information.  (CAC, ¶143).

Thus, based upon the following, Plaintiffs have sufficiently pled their Section 14 claim, and Defendants' Motion to Dismiss should be denied as to this claim.

**H.    Plaintiffs Sufficiently Pled a Claim for Control Person Liability Pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. §77(o).**

Since Plaintiffs have sufficiently pled claims for violations of Sections 10(b), 12(2) and 14, Defendants can qualify for liability under the derivative claim of control person liability. *In re Digital Island Sec. Litig.*, 223 F. Supp.2d 546, 560 (D. Del. 2002). Defendants Carey, Hoverson and Hanauer are liable under Section 20(a) because they were "control persons" who aided and abetted violations of the Exchange Act. Section 20(a) of the 1934 Act, 15 U.S.C. §78t sets forth which persons or entities can be held secondarily liable for violations of the securities laws, and provides as follows:

> "Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation of a cause of action."

Id.

In order to prove a *prima facie* case under Section 20(a), a plaintiff must prove: (1) "a primary violation of federal securities law" and (2) "that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys. Inc.,* 228 F.3d 1057, 1065 (9th Cir. 2000). "In order to make out a prima facie case, it is not necessary to show actual participation or the exercise of  power; however, a defendant is entitled to a good faith defense if he can show no scienter and an effective lack of participation." Id.

"'Whether [the defendant] is a controlling person is an intensely factual question, involving scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions.' " *Id.* (alterations in original) (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1382 (9th Cir. 1994). "Control" is defined in the regulations as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. §230.405 (emphasis added). Under Section 20(a), a "controlling person" may include not only partners or principals under agency law, but also any person who has the power to control the conduct of another person who has violated securities laws. *See, Brown v. Enstar Group, Inc.,* 84 F.3d 393, 396 (11th Cir. 1996) (holding that a defendant is liable as a controlling person if he had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws, and had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability), *aff'g Brown v. Mendel*, 864 F. Supp. 1138 (M.D. Ala. 1994) *cert. denied,* 519 U.S. 1112, 117 S.Ct. 950 (1997).

Liability under Section 20(a), however, is not equivalent to liability under the common law of agency. *See, Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 1111, 1118 (5th Cir. 1980) (holding that common law agency principles, including the doctrine of respondeat superior, are distinct from § 20(a), and that both § 20(a) and respondeat superior are distinct theories which may be relied upon in imposing secondary liability for violations of the Securities Exchange Act). As a result, Section 20(a) liability may, in some instances, be imposed where agency liability would not. Under section 15

of the 1933 Act, 15 U.S.C. §77(o), officers or directors may be held liable as "controlling persons" of an issuer or other entity that violates section 15. *See, San Francisco-Oklahoma Petroleum Exploration Corp. v. Carstan Oil Co.*, 765 F.2d 962, 964-965 (10th Cir. 1985) (per curiam); *Cheney v. Cyberguard Corp.*, 2000 U.S. Dist. LEXIS 16351 at 20, No. 98-6879-CIV-GOLD (S.D. Fla.  Jul 31, 2000) (holding that shareholder-plaintiffs stated a Section 20(a) claim against a corporation's Chairman of the Board, President, and CEO, based on his power to control the corporate policy that resulted in corporate liability under § 10(b)).  Thus, corporate officers and directors, persons who are presumptively beyond the reach of respondeat superior, may be caught in the net of Section 20(a).

In the present case, Plaintiffs have alleged that because of their executive, managerial and directorial positions at OHSL and Provident, or their professional positions, Defendants Hanauer, Hoverson and Cook had access to material non-public information alleged herein, acted to conceal and/or omit such information from Plaintiffs and other OHSL shareholders, and finally disseminated the Proxy Materials/Registration Statement with false and misleading statements so that the OHSL shareholders would approve the merger to the benefit of Defendants and to the detriment of the OHSL shareholders. (CAC, ¶156).  Finally, Plaintiffs alleged that Defendants Hanauer, Hoverson and Cook were liable to Plaintiffs and the other class members because they had the power and influence to control and/or prevent the OHSL and the Provident

Defendants' violations of Section 14(a) and Section 10(b) of the Exchange Act, but failed to do so.[14] (CAC, ¶156).

In response, Defendants argue that Defendant Cook cannot be liable as a control person because Plaintiffs only alleged that he signed the registration statement and that this is not enough for liability. (Amended Motion to Dismiss, p. 35). However, this is not the case. Plaintiffs alleged that Defendant Carey, and not Defendant Cook, was the control person. (CAC, ¶23). Further, Plaintiffs specifically alleged that Defendant Cook was the Vice President and Chief Financial Officer and that at all times he directed, managed and controlled the daily activities of Provident. (CAC, ¶23). As a result, Plaintiffs adequately alleged facts which would qualify him as a control person.

Similarly, Defendants allege that Hoverson cannot be liable as a control person because Plaintiffs have only alleged that Hoverson made two public statements regarding the accounting errors, but did not allege that he actually participated in them. (Amended Motion to Dismiss, p. 36). However, Plaintiffs alleged that he directed, managed and controlled the daily activities of Provident. (CAC, ¶18). Thus, since a finding of whether a person is a control person is an intensely factual question, Plaintiffs have sufficiently pled their control person liability claim as to Defendant Hoverson, and Defendants' Motion to Dismiss should not be granted on this basis.

Finally, Defendants unbelievably argue that Defendant Hanauer is not a control person when this Court has already determined that he was a control person. They do so

---

[14] As with much of the Amended Motion to Dismiss, the OHSL and Provident Defendants simply repeat arguments, often verbatim, that were made to and rejected by this Court. (*See,* Doc. 29, Motion to Dismiss the Complaint, [Attached as Exhibit F] and Doc. No. 46, this Court's Order). Plaintiffs simply do not understand why they must re-argue clear decisions by this Court. This results in a wasteful, duplicative and burdensome process not only for Plaintiffs, but also for this Court.

in part by arguing that Hanauer did not believe that the Proxy Materials contained any material misstatements. (Amended Motion to Dismiss, p. 37). However, Plaintiffs have argued in great detail above that even Hanauer thought that it was error to state that the OHSL board voted unanimously in support of the merger, and to fail to state that Herron had resigned from the OHSL board. Further, when specifically asked if he understood the term material he stated, "To be very specific, I do not know what makes up material versus immaterial." (Hanauer dep. p. 802).

Defendants next argue that Plaintiffs failed to allege that Defendant Hanauer actually participated in the drafting of the Proxy Materials. This is not true. As discussed in greater detail in Plaintiffs' Memorandum in Opposition to the Dinsmore Defendants' Motion to Dismiss, Plaintiffs did state that Defendant Hanauer and others wanted to clarify the issue regarding the resignation of Herron in the Proxy Materials, but were instructed by Defendant Roe not to do so. Hanauer reviewed a marked up copy of the Proxy Materials/Registration Statement with Defendant Roe in an attempt to have the document changed to better reflect the truth, but not a single change was made. (*See,* Copy of Proxy Materials/Registration Statement marked up in Hanauer's own handwriting, Attached as Exhibit E to Plaintiff's Opposition to KMK's Motion to Dismiss, Doc. No. 274).

Thus, since a determination of whether a person is a control person under Section 20(a) is an intensely factual analysis, and since Plaintiffs have sufficiently pled this control person liability claim, Defendants' Motion to Dismiss as to the Section 20(a) claim must be denied.

I.  **Plaintiffs' Spoliation Claim Should Not be Dismissed Because It is Not Barred by the Doctrine of *Res Judicata.***

The actions and conduct of the Defendants Hanauer, Brinker and Zoellner have led to the spoliation of evidence in this case. There is no dispute that Defendants Hanauer, Brinker, and Zoellner destroyed documents relevant to this action after litigation was originally commenced in state court on November 18, 1999. Brinker shredded his entire file, Hanauer destroyed certain documents he believed to be duplicative, Zoellner shredded his entire file, Tenoever shredded his entire file, Hillebrand ripped up his entire file, and the Dinsmore Defendants presumably cannot locate a lavender legal pad which was turned over to them by Mr. Hanauer. (CAC, ¶177).[15] As a result, the only issue before this Court is whether or not Plaintiffs' claim has been timely raised. Plaintiffs submit that it has been timely filed.

Defendants Hanauer, Brinker and Zoellner argue that Plaintiffs cannot bring the spoliation in the present case because they had knowledge of this claim during the state court action, but did not raise the claim until a second action was filed. In support of this argument, the Defendants Hanauer, Brinker and Zoellner largely rely upon *Davis v. Wal-Mart Stores, Inc.* (2001), 93 Ohio St.3d 488, 756 N.E.2d 657. In *Davis*, the Supreme Court of Ohio stated that "[c]laims for spoliation of evidence may be brought after the primary action has been concluded only when evidence of spoliation is not discovered

_____

[15]  Although Plaintiffs suspected that Hillebrand had destroyed documents since no documents appeared to have been turned over by him, Plaintiffs did not include a claim for spoliation against Hillebrand in the CAC, despite the fact that this Court had ruled that no further amendments to the CAC would be permitted, since Plaintiffs were unable at that point to allege in good faith that Hillebrand had destroyed the documents. Yet only days after the CAC was filed pursuant to Court Order, Hillebrand proudly testified that he had ripped up his entire file while litigation in the state court was pending. (*See,* Hillebrand Deposition Testimony on this topic at 10-14, Attached as Exhibit P).

until after the conclusion of the primary action." Id. at syllabus.  However, a further reading of this case indicates that the basis for this decision was the doctrine of *res judicata*. Id. at 489-490.

The doctrine of *res judicata* is inapplicable to the present case for two reasons. First, the doctrine of *res judicata* only applies to parties or their privies. *Thirty Four Corp. v. Sixty Seven Corp.* (1993), 91 Ohio App.3d 818, 826 N.E.2d. 1179. Plaintiffs Walter Thiemann, Gary Meier and Lisa Meier were not parties to the state court action referenced by Defendants Hanauer, Brinker and Zoellner. Thus, it was impossible for them to have raised his spoliation claim prior to the present action, and it is impossible for the doctrine of *res judicata* to bar Plaintiffs' spoliation in this action. Furthermore, as stated above, these two actions are completely different types of cases.  Unlike the previous state court action which involved state law claims, this present federal action involves securities claims. Therefore, there is not only no overlap of plaintiffs, but little to no commonality as to the claims involved.

Second, the Ohio Supreme Court has stated that *res judicata* is not a shield to protect the blameworthy. *Davis,* 93 Ohio St.3d at 491. In particular, the court stated that:

> "The doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time, but rather a rule of fundamental and substantial justice, or public policy and of private peace. As a result, the position has been taken that the doctrine of *res judicata* is to be applied in particular situations as fairness and justice require, *and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice.*"

Id. citing *Grava v. Parkman Township* (1995), 73 Ohio St.3d 379, 386, 653 N.E.2d. 226. Defendants Hanauer, Brinker and Zoellner have not disputed that they destroyed their files. Thus, no extraordinary means should be taken to excuse their behavior.

Finally, the Defendants also too quickly discount the importance and value of the documents which have been already shredded. However, this insults the intelligence of the Plaintiffs and this Court. Brinker, the chairman of the board of a publicly traded company, put it best when he responded to why he had shredded his entire file. He replied:

> "Because I didn't want to throw them out as they were, just tear them up and have the papers end up in a dump where they would be whole. **I shredded them so that they couldn't be seen by anybody.**"

(Brinker Deposition, p. 41). It is very convenient for the Defendants to argue that these files are of no importance when no one is able to evaluate them. As a result, the Plaintiffs would submit to this Court that it was precisely because of their importance that they were shredded in unison by the OHSL directors at a time when they were represented by the Dinsmore defendants, which also destroyed key documents. (*See*, CAC ¶ 177)

Thus, since *Davis* and *Williamson v. Rodenberg* (June 30, 1997), Franklin App. No. No. 96APE10-1395 are factually inapplicable to the present action, and since *res judicata* cannot be used as a shield to protect the blameworthy, Defendants Hanauer, Brinker and Zoellner's Motion to Dismiss as to the spoliation claim must be denied.

### J.    Plaintiffs Sufficiently Pled their Common Law Fraud Claim

Plaintiffs' fraud claim is factually and legally sufficient pursuant to Ohio Civil Rule 9(B). Common law fraud requires proof of the following elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may

be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *State ex rel. Illuminating Co. v. Cuyahoga County Court of Common Pleas* (2002), 97 Ohio St.3d 69, 2002 Ohio 5312, 776 N.E.2d 92 at P24. Plaintiffs incorporate by reference the arguments made above which illustrate that the Defendants committed fraud in this action.

Further, this claim is also not barred by its applicable statute of limitations. R.C. §2305.09 provides a four-year statute of limitations for relief on the ground of fraud, and not R.C. 1707.43 as the Defendants suggest. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 181, 546 N.E.2d 206. The Sixth Circuit Court of Appeals has addressed this issue and stated as follows:

> "'(W)e do not agree that the two year limitation period in R.C. Section 1707.43 was intended to apply to *all* cases of securities law fraud, including those based solely upon the common law of fraud. *** It applies to cases where the plaintiff claims his recovery is "based upon" or "arise(s) out of "a violation of the blue sky provisions(.)'"

*Nickel v. Koehler Mgt. Corp.*, 541 F.2d 611, 616 (6th Cir. 1979). As a result, the statute begins to run when the plaintiff discovers, or should have discovered, the complained-of injury. *Tri-State Computer Exchange v. Burt* (June 20, 2003), 2003 Ohio 3197, Hamilton App. No. C-020345 at P17.

In the present case, as discussed in greater detail above, the only claim for which the statute of limitations is at issue is the claim in relation to the Restatement. Plaintiffs first discovered Defendants fraud as to Provident's financial statements on March 5, 2003 in the announcement of the First Restatement. Thus, since Plaintiffs immediately sought leave to amend their complaint once the First Restatement was announced, Plaintiffs have

not only adequately pled their fraud claim, but they have also filed it in a timely manner. Consequently, based upon the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' common law fraud claim should be denied.

### K.    Plaintiffs Sufficiently Pled Their Breach of Fiduciary Claim.

The Individual OHSL and Provident Defendants breached their fiduciary duty to the Plaintiffs and class members. A "fiduciary relationship" is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. *In re Termination of Employment of Pratt* (1974), 40 Ohio St.2d 107, 115, 321 N.E.2d 603, 609. The person in whom the special confidence and trust are reposed, the fiduciary, has a duty to act for someone else's benefit, while subordinating his or her personal interests to that of the other person. *Black's Law Dictionary* (6 Ed.1990) p. 625. A fiduciary may not possess an interest of any sort that might conflict with an interest of the person to whom he or she owes a duty. *Belvedere Condominium Unit Owners' Association v. R.E. Roark Cos.* (1993), 67 Ohio St.3d 274, 282, 617 N.E.2d 1075.

It is well-settled that corporations and their officers and directors occupy a fiduciary relationship with corporate shareholders. *Thompson v. Central Ohio Cellular, Inc.* (1994), 93 Ohio St.3d 530, 540, 639 N.E.2d 462 citing *Crosby v. Beam* (1989), 47 Ohio St.2d 105, 548 N.E.2d 217 and *Gries Sports Enterprises, Inc. v Cleveland Browns Football Co.* (1986), 26 Ohio St.3d 15, 496 N.E.2d 959. The Ohio Supreme Court described this duty as follows:

> "* * * Directors must manage the corporate business with a view solely to the common interest, and cannot directly or indirectly derive

> personal profit or advantage from their position which is not shared by all the stockholders. The maxim * * * of the civil law applies without limitation or restriction to their relation to the corporate property and business. [Corporate directors] occupy a strictly fiduciary relation to the stockholders and are accountable to them on principles governing that relationship.

*Thomas v. Matthews* (1916), 94 Ohio St. 34, 43, 113 N.E. 669.

OHSL is a Delaware corporation headquartered in Cincinnati, Ohio, whereas Provident is an Ohio corporation also based in Cincinnati. (CAC, ¶¶9,17). The directors of OHSL and Provident owed a fiduciary duty to the Plaintiffs and class members. In particular, as chairman and members of the *ad hoc* committee, Defendant Hucke and Defendants McKiernan and Tenoever had heightened fiduciary responsibilities to OHSL's shareholders, including the duty to provide full and complete information with respect to the proposed merger. (CAC, ¶13). However, the Individual OHSL and Provident Defendants clearly breached their fiduciary duties to the Plaintiff and class members in this case.

The Proxy Materials/Registration Statement was part of a deliberate strategy to sell OHSL to Provident at all costs. The OHSL and Provident Defendants, along with various professionals, wrote and disseminated a materially false and misleading Proxy Materials/Registration Statement that was purged of any hint of dissent, and that made sure that the merger closed. (*See*, Preliminary Report of William J. Lutz, Attached as Exhibit B). Because the OHSL and Provident Defendants realized that the proposed merger would be voted down if OHSL shareholders were given accurate and complete information, it became imperative that the truth not be told. The OHSL and Provident Defendants intentionally deceived the OHSL shareholders into voting for the merger by deliberately misstating material facts and omitting material facts from the Proxy

Materials/Registration Statement which resulted in the OHSL shareholders being unable to make an informed decision regarding the merger. Make no mistake-the Proxy Materials/Registration Statement was intentionally materially misleading.

Finally, not only did the Individual OHSL and Provident Defendants breach their fiduciary duties in order to obtain personal profit or advantage from the merger, but they profited at the expense of the OHSL shareholders. The Plaintiffs and class members suffered substantial financial losses as a direct result of intentionally deceptive or conduct of the OHSL and Provident Defendants.

In response, Defendants submit two procedural arguments that are unrelated to the merits of this cause of action. First, the Defendants argue that this cause of action should be dismissed because Plaintiff previously agreed to strike the breach of fiduciary duty claim from the original complaint. However, this is without merit for Plaintiffs has now decided to re-assert the breach of fiduciary claim because it corresponds to a specific count of the CAC. Of course the Meier plaintiffs, aspects of whose case are now combined with this one in the CAC, never agreed to strike anything. Defendants cite to no legal authority that would prevent Plaintiffs, including the *Meier* Plaintiffs, from asserting breach of fiduciary claims in the CAC.

Second, Defendants argue that the claim is barred by SLUSA. However, in *Alessi v. Beracha*, 244 F.Supp.2d 354 (D.C. Del. 2003), the district court stated that SLUSA did not bar the plaintiff's breach of fiduciary duty claim. Id. at 359-360. The district court stated that the State of Delaware had well developed and established laws regarding the fiduciary duty of disclosure of corporate directors with respect to shareholders. Id. at 359. As a result, the district court concluded that this is exactly the type of action Congress

intended to exempt from the preemption provisions of SLUSA. Id. Based upon the law set forth above, this exception from preemption provision of SLUSA should also apply in this case.

As a result, since Plaintiffs have sufficiently pled a claim for breach of fiduciary duty, and since the Individual OHSL and Provident Defendants' arguments in opposition are without merit, Plaintiffs request that the OHSL and Provident Defendants' Motion to Dismiss Plaintiffs' breach of fiduciary duty claim be denied.

## IV. CONCLUSION

Thus, for the foregoing reasons, as well as for the reasons stated in Plaintiffs' Opposition to KMK's Motion to Dismiss, the Dinsmore Defendants' Motion to Dismiss, and E&Y's Motion to Dismiss, Plaintiffs respectfully request that this Court deny the Amended Motion to Dismiss of Defendants OHSL Financial Corporation, Oak Hills Savings & Loan Company, F.A, Provident Financial Group, Inc., Brinker, Hanauer, Hillebrand, Hucke, McKiernan, Tenoever, Zoellner, Hoverson, Cook, Grote, Myers, Pedoto, Steger and Carey with Memorandum in Support.

1 March 2004                                         Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs' Memorandum in Opposition to the Amended Motion to Dismiss of Defendants OHSL, Financial Corporation, Oak Hills Savings & Loan Company, F.A., Provident Financial Group, Inc., Brinker, Hanauer, Hillebrand, Hucke, McKiernan, Tenoever, Zoellner, Hoverson, Cook, Grote, Myers, Pedoto, Steger and Carey with Memorandum in Support was served upon the following persons on the 1st day of March 2004.

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

J. Michale Debbeler, Esq.
John B. Pinney, Esq.
Graydon, Head & Ritchey
511 Walnut Street, Suite 1900
Fifth Third Center
P.O. Box 6464
Cincinnati, Ohio 45202-3157

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202

**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

James E. Gauch, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

Stephanie A. Hite