# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, | : | |
| on behalf of himself and of | | Case No. C-1-00-793 |
| all others similarly situated, | : | |
| | | Judge Sandra S. Beckwith |
| Plaintiff, | : | |
| | | Magistrate Judge Hogan |
| vs. | : | |
| | | **AFFIDAVIT OF** |
| OHSL Financial Corporation, et al. | : | **ERVIN SCHOENBLUM** |
| | | **IN SUPPORT OF** |
| | : | **PLAINTIFFS MOTION** |
| | | **FOR SUMMARY** |
| | : | **JUDGMENT AGAINST** |
| | | **PROVIDENT FINANCIAL** |
| | : | **GROUP, INC.** |
| | | **("PROVIDENT")** |
| Defendants. | : | |

---

STATE OF NEW JERSEY                    :
                                       :  SS:
COUNTY OF PASSAIC                      :

**ERVIN SCHOENBLUM**, being duly sworn, deposes and states as follows:

1. I have been retained by plaintiffs as a testifying expert in the field of economic damages and have previously submitted my report on damages to the plaintiff class resulting from the Provident acquisition (the Provident – OHSL merger) of the Ohio Corporation, known as OHSL. Along with the report were my qualifications (attached hereto as Exhibit A) as an expert witness as required by the

Fed. R. Civ. Pro. in order to opine in matters such as at bar. Since that time, I have provided advice to the plaintiffs and their counsel in drafting the Consolidated Amended Complaint ("CAC") filed December 31, 2003, as well as other matters relating to economic damages and specifically how, if at all, the negative restatements of financial data as alleged in Pars. 87 to 103 and 120 to 121 of the CAC disclosed by Provident in 2003 affected the 1999 Provident – OHSL merger.

2. I make this affidavit in support of Plaintiffs' Motion for Summary Judgment on liability issues under Sec. 11 of the 1933 Securities Act, 15 U.S.C. § 77K brought against Provident Financial Corporation, Inc. ("Provident") which alleges that the restatements were material facts to investors and caused the loss in value of Provident shares shortly thereafter, and would have done so when the merger was considered in 1999.

3. Provident stock was overvalued during the period of September 27, 1999 to December 3, 1999. This is because Provident's March and April 2003 restatements admit the overvaluation in Provident's financial statements in prior years including 1999. Provident would have been materially less attractive as a merger partner had Provident properly accounted for hundreds of millions of dollars of auto lease transactions.

4. The market reaction on the NASDAQ Stock Exchange on which Provident shares were bought and sold by individuals and other entities on a daily basis indicated that the new negative information was quickly

incorporated into the market place where shares were traded. The market reaction was dramatic and Provident stock lost approximately $300 million in total market value of its shares in one trading day after the first negative restatement on March 5, 2003.

5. The <u>first</u> restatement on March 5, 2003 for the years 1997 to 2002 caused a drop in Provident market price from $28.07 per share at the close of trading on March 4, 2003 to $22.46 on March 5, 2003. The per share price for the ten trading days after the first restatement averaged $21.72 and represented a total decrease per share of 22.6%. Had the true financial picture been known when the merger was considered, that deflation alone would have reduced the total value of Provident shares used in the OHSL merger by $12.9 million (22.6% of $57, 162, 375).

6. The <u>second</u> restatement on April 15, 2003 for the years 1994 to 2002 further reduced Provident's profit numbers by $44.4 million. Had Provident's true financial picture been known when the merger was considered, the deflation caused by this second reduction in profit would have reduced the per share market price of Provident shares an additional estimated 7.1% of the original artificially inflated exchange value ($57,162, 375), or a further negative dollar drop of $4.1 million for OHSL shareholders.



7. The total negative impact on the market value of Provident shares used as the currency for the OHSL-Provident merger caused by the first and second restatements was approximately $17 million in fact.

8. This is the manner by which the market reacted to the restatements by Provident as computed only on the Provident shares used in the OHSL merger; the total market reaction was to decrease the total market capitalization of Provident shares by approximately $300 million almost immediately. This sudden downward spiral was attributable only to the materiality of the Provident restatements as all other comparable banks' share values in the industry remained stable at that time.

9. Provident has announced that the adverse impact on the financial statements resulting from the restatements will continue, albeit in decreasing amounts, for several years to come.


**FURTHER AFFIANT SAYETH NAUGHT**


**ERVIN SCHOENBLUM**


Sworn to before me and subscribed in my presence this 2⁰ day of January 2004.

Edward Azar
Notary Public

4

Exhibit 1 (p.1 of 2)

<u>Curriculum Vitae</u>

ERVIN SCHOENBLUM
40 MANDEVILLE DRIVE
WAYNE, NEW JERSEY 07470
(973) 696-7682

SUMMARY OF RELEVANT EXPERIENCE

Thirty-two years of management consulting in valuations, acquisitions and other investment evaluations, profit improvement programs and economic analyses in litigation matters. Participated in about 450 engagements in a broad range of industries. Prior to consulting, spent four years in engineering.

EDUCATION

| | |
|---|---|
| 1966-68 | Harvard Business School - Master of Business Administration |
| 1962-65 | New Jersey Institute of Technology - MSEE (Cum Laude) |
| 1958-62 | New Jersey Institute of Technology - BSEE (top 10%) |

BUSINESS EXPERIENCE

| | |
|---|---|
| Nov. 82 to Present | Management Consultant<br><u>Self-Employed - Wayne, NJ</u><br>Performed valuations, acquisition and other reviews for investors and developed profit improvement programs in numerous industries. Also, prepared valuation and economic analyses in litigation matters and testified thereon. Recently, also Acting President of a publicly-held medical devices company. |
| May 81 to Oct. 82 | Director of Acquisitions and Consulting<br><u>Page Mill Management Group - New York, NY</u><br>Performed valuations, acquisition and other reviews, oversaw several holdings and instituted productivity and profit improvement programs. |

Exhibit 1 (p.2 of 2)

ERVIN SCHOENBLUM                                                    PAGE TWO

Aug. 68 to Apr. 81        Manager, Management Consulting
                          Department
                          Peat, Marwick, Mitchell & Co. - New
                          York, NY
                          Coordinated big-8 accounting firm's
                          litigation consulting practice.  Managed
                          and worked on litigation engagements in
                          many industries with a broad range in
                          client size.  Also, worked on
                          valuations, acquisitions and other
                          reviews and profit improvement programs.

June 62 to Aug. 66        Project Engineer in Navigation and
                          Control
                          Bendix Corporation - Teterboro, NJ
                          Worked as an electrical and aeronautical
                          engineer.

Sept. 65 to June 66       Adjunct Professor in Electrical
(evenings)                 Engineering
                          New Jersey Institute of Technology -
                          Newark, NJ

PRESENTATIONS AND PUBLICATIONS
Keynote speaker at conferences and meetings on several
management-related topics.  Lecturer at American Bar Association
and NJ Institute for Continuing Legal Education seminars on
Economic Expert Testimony.  Quoted in several publications
including The Wall Street Journal and articles have appeared in
numerous publications.  Article, "Overview and Perspective on
Productivity", awarded first prize in PMM&Co. Worldwide Author
Awards.

AFFILIATIONS

Member of numerous clubs and organizations including National
Association of Forensic Economists, National Forensic Center,
Harvard Business School Club and four academic honor
fraternities.  President of an investment group and past-
President of a 400-member service organization.  Advisory Board
member of NJIT's College of Arts and Sciences, Board member of a
publicly-held company and several community organizations.

# EXHIBIT F

#29

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN, | ) | Case No. C-1-00-793 |
| | ) | |
| Plaintiff, | ) | (Judge Sandra S. Beckwith) |
| | ) | |
| -vs- | ) | |
| | ) | |
| OHSL FINANCIAL CORPORATION, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS OHSL FINANCIAL CORPORATION, OAK HILLS SAVINGS AND LOAN, F.A., PROVIDENT FINANCIAL GROUP, INC., BRINKER, HANAUER, HILLEBRAND, HUCKE, MCKIERNAN, TENOEVER, ZOELLNER, HOVERSON, COOK, GROTE, MYERS, PEDOTO, STEGER AND CAREY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995

---

Dated: November 20, 2000

James E. Burke (0032731)
Daniel J. Donnellon (0036726)
Rachael A. Rowe (0066823)
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
(513) 513-579-6486
Attorneys for all Defendants other than
Dinsmore & Shohl, LLP and Clifford Roe

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY OF POINTS RAISED AND PRIMARY AUTHORITIES RELIED UPON   3

    A.   The Court Should Dismiss Plaintiff's Section 11, 12(2), 10(b) and 14 Claims Because He Fails to Allege Facts Sufficient to Establish that the Proxy Materials Contain Material Misstatements and/or Omissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        1.   Plaintiff's False Allegations of Misstatements and Omissions . . . . . . . . 4

        2.   Facts Allegedly Misstated and Omitted Immaterial as a Matter of Law . . 4

        3.   The Remainder of Plaintiff's Claims Involve Unsupported Conclusory Allegations or Claims for Breach of Fiduciary Duty Disguised as Federal Securities Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   The Court Should Dismiss Plaintiff's Section 15 and 20(a) Control Person Claims Because Plaintiff Fails to Allege Sufficient Facts . . . . . . . . . . . . . . . . . . . . . . . . 7

        1.   No facts to support control person claims against Provident or Provident Individual Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        2.   No facts to support control person claims against OHSL Individual Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.   Background of OHSL and Its Search for an Acquisition . . . . . . . . . . . . . . . . . . 8

    B.   OHSL's Arms Length Negotiations with Provident . . . . . . . . . . . . . . . . . . . . 9

    C.   Summary of Plaintiff's Allegations in the Latest, Federal Court, Class Action Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.   The Court Should Dismiss Plaintiff's Section 11, 12(2), 10(b) and 14 Claims Because He Fails to Allege Facts Sufficient to Establish that the Proxy Materials Contain Material Misstatements and/or Omissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        1.   Plaintiff's False Allegations of Misstatements and Omissions . . . . . . . . 14

WWT 0389

2.    Certain of Plaintiff's Alleged Misstatements and Omissions are Immaterial As a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3.    Remainder of Plaintiff's Claims Either Unsupported Conclusory Allegations or Claims for Breach of Fiduciary Duty Disguised as Federal Securities Nondisclosure Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

B.    The Court Should Dismiss Plaintiff's Section 15 and 20(a) Control Person Claims Because Plaintiff Fails to Allege Sufficient Facts . . . . . . . . . . . . . . . . . . . . . . . . 28

1.    No facts to support control person claims against Provident or Provident Individual Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

2.    No facts to support control person claims against OHSL Individual Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

814338.2

WWT 0390

<u>**MEMORANDUM IN SUPPORT**</u>

**I.    <u>INTRODUCTION</u>**

This case involves a startling example of forum shopping between state and federal courts in an effort to get "a second bite at the apple." This action is the reincarnation of a proceeding which was litigated in the Hamilton County Court of Common Pleas for 9 months. When the state court case appeared to be going badly, Plaintiff's counsel unilaterally dismissed and refiled in this Court. As shown below, forum shopping cannot salvage claims that are insufficient as a matter of law and this case should, once again, be dismissed.

On October 25, 1999, the shareholders of OHSL Financial Corporation, the parent corporation of Oak Hills Savings & Loan (both are referred to herein as "OHSL") approved a merger with Provident Financial Group, Inc. ("Provident"). On November 18, 1999, the same law firm which is listed as trial counsel in this action, Gene Mesh & Associates (the "Mesh Firm"), filed a purported class action challenging the merger in the Hamilton County Court of Common Pleas styled <u>Janet Nolte v. OHSL Financial Corp.</u>, Case No. A-9907039 (the "State Court Action"). (Appendix of Exhibits, Tab 1).[1] The Mesh Firm, with Michael Brautigam acting as lead counsel, named as defendants OHSL, the OHSL Officers and Directors and Provident Bank.

On November 19, 1999, the state court denied the motion filed by Plaintiff's counsel to enjoin the OHSL - Provident merger. (Appendix of Exhibits, Tab 2). The merger then closed on December 3, 1999. On January 13, 2000 the Court of Common Pleas granted Provident's motion to dismiss all claims asserted against it, thus terminating Provident's involvement in the State Court

---

[1] This court can take judicial notice of the pleadings filed in the State Court Action. <u>Granader v. Public Bank</u>, 417 F.2d 75, 82-83 (6th Cir. 1989).

WWT 0391

Action.  (Appendix of Exhibits, Tab 3).  OHSL produced thousands of pages of documents, and participated in 11 days of depositions in the State Court Action.

Plaintiff's motion for class certification was fully briefed in the State Court Action.  OHSL opposed class certification on several grounds and, in a supplemental filing, alerted the court to the startling fact that one of Plaintiff's counsel, Michael Brautigam, appeared to be engaged in the unauthorized practice of law in Ohio.[2] (Appendix of Exhibits, Tab 4).  The day before Plaintiff's counsel was required to respond to this issue, Mr. Brautigam withdrew the class certification motion filed on behalf of the plaintiff, with prejudice.  OHSL subsequently filed a motion to revoke Mr. Brautigam's *pro hac vice* admission in the State Court Action on August 7, 2000 based upon the same issue.  The day before the response to this motion was due, instead of filing a responsive memorandum, Mr. Brautigam filed a unilateral dismissal of the State Court Action without prejudice.

Thus, after 9 months of expensive, time-consuming litigation in the State Court Action, the Mesh Firm has decided to start all over again in this Court, with a new plaintiff, Walter Thiemann, and a new action challenging the Provident - OHSL merger.[3]  Not only does the complaint herein bring Provident back in as a defendant, it now names all of the Provident directors as defendants.  Although Plaintiff and his counsel have postured the latest proceeding as an action under the federal securities laws, it is just a rehash of the same allegations that were made in the State Court Action.

---

[2] Mr. Brautigam, who had practiced with the Mesh firm in its Cincinnati, Ohio office since the late 1980's had never been admitted to the Ohio bar.  See Cincinnati Bar Assn. v. Telford, 85 Ohio St.3d 111, 112 (Ohio 1999); Land Title & Trust v. Dworken, 129 Ohio St. 23 (Ohio 1934).

[3] Mr. Brautigam of the Mesh Firm again is listed as counsel for the Plaintiff in this action, even though he apparently still is not admitted to practice in Ohio, and is not admitted to practice in the Southern District of Ohio, which requires admission to the Ohio bar.  See S.D. Ohio Civ. R. 83.4(b).  He recently filed an application for admission *pro hac vice* which Defendants will oppose.

                              WWT 0392

Indeed, as discussed herein, the Complaint largely is based upon inaccurate characterizations of testimony in the State Court Action.

The procedural device of dismissing the State Court Action and refiling in this Court, apparently in the hope of burdening the parties with all new discovery and all new motions cannot be countenanced.[4] The parties are not writing on a blank slate. This Court is entitled to take judicial notice of the State Court Action in assessing whether the instant action states a claim. As noted herein, it does not.

## II.     SUMMARY OF POINTS RAISED AND PRIMARY AUTHORITIES RELIED UPON[5]

### A.     The Court Should Dismiss Plaintiff's Section 11, 12(2), 10(b) and 14 Claims Because He Fails to Allege Facts Sufficient to Establish that the Proxy Materials Contain Material Misstatements and/or Omissions. (p. 13)

To survive a 12(b)(6) motion to dismiss, a plaintiff's complaint must contain either direct or inferential allegations respecting all material elements of the asserted causes of action. Klusty v. Taco Bell Corp., 909 F. Supp. 516, 520 (S.D. Ohio 1995) (citations omitted). Unsupported conclusions and unwarranted factual inferences are not sufficient to defeat a 12(b)(6) motion. Id.

To state a claim under each of the causes of action under which Plaintiff claims relief, Plaintiff must plead that the Proxy Materials contained material misstatements and/or omissions. Stavaroff v. Meyo, 1997 WL 720475, *4 (6th Cir. Nov. 12 1997) (elements of Section 10(b) claim), Appendix of Exhibits, Tab 5; Wright v. National Warranty Company, L.P., 953 F.2d 256, 262, n. 26 (6th Cir. 1992) (elements of Section 11 claim); Picard Chemical, Inc. v. Perrigo Co., 940 F. Supp.

---

[4] See Van-American Ins. Co. v. Schiappa, 191 F.R.D. 537, 539 (S.D. Ohio 2000) (type of forum shopping engaged in by Plaintiff frowned upon by this Court).

[5] Submitted pursuant to S.D. Ohio L.R. 7.2(a)(3).

WWT 0393

1101, 1131, n. 26 (W.D. Mich. 1996) (elements of Section 12(2) claim); Leff v. CIP Corp., 540 F.

Supp. 857, 865 (S.D. Ohio 1982) (elements of Section 14(a) claim); Herm v. Stafford, 663 F.2d 669,

684 (6th Cir. 1981) (Section 15 and 20(a) claims).

1.    **Plaintiff's False Allegations of Misstatements and Omissions (p. 14)**

The Complaint falsely alleges that facts which were actually disclosed in the Proxy Materials

were omitted. Where proxy materials actually disclose purportedly omitted facts, a plaintiff's claims

of material omissions fail as a matter of law. Phillips v. Kidder Peabody & Co., 933 F. Supp. 303,

320 (S.D. N.Y. 1996). Plaintiff's Complaint also fabricates misstatements by drawing inferences

from alleged "facts." Unwarranted factual inferences are not sufficient to survive a 12(b)(6) motion.

Klusty, 909 F. Supp. at 520. Id.

2.    **Facts Allegedly Misstated and Omitted Immaterial as a Matter of Law**
      **(p. 18)**

Omitted or misstated facts are "material" for purposes of the securities laws only if they

would be so obviously important to an investor as having significantly altered the "total mix" of

information available. TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449-50 (1976). Moreover,

courts must balance the need for disclosure against the need to avoid overwhelming shareholders

with minutiae. Id. at n. 10:

The Complaint alleges that the Proxy Materials were misleading because they contained a

three week old fairness opinion. The fairness opinion was, however, clearly dated and annexed to

the Proxy. (Proxy pp. 5, 22-23; Proxy Annex C). Accordingly, a plaintiff cannot make a material

misrepresentation claim based on "staleness." Wallerstein v. Primerica Corp., 701 F. Supp. 393, 398

(E.D. N.Y. 1988). There is no legal duty to update fairness opinions rendered in connection with

a merger transaction. Id.

WWT 0394

Plaintiff further claims that Defendants should have disclosed Hanauer's purported motive (his change in control contract) for recommending the merger to OHSL shareholders. Even assuming Hanauer was motivated by the contract -- which he was not -- courts have held that a director's motivation for voting a particular way is immaterial for the purposes of the federal securities laws' disclosure requirements. _In re_ Craftmatic Secs. Litig. v. Kraftstow, 890 F.2d 628, 638 (3d Cir. 1990).

The Complaint alleges that the Proxy materials were materially misleading because they did not disclose that OHSL purportedly had strategic "options" other than the Provident merger. Although it is undisputed that there were no such options, a proxy statement that fails to state possible alternatives to the course of action for which the board seeks approval is not false or misleading for that reason. Doyle v. Milton, 73 F. Supp. 281, 285 (S.D. N.Y. 1947).

Plaintiff also alleges the Proxy Materials were materially misleading because they did not disclose the composition of the _Ad Hoc_ Committee. The Proxy did, however, disclose that the Committee was made up of members of OHSL's Board and went on to identify those members and describe the detail of this activity. (Proxy pp. 20, 63). The exact identification of the Committee members is the type of minutiae that need not be disclosed. Northway, 426, U.S. 449-50, n. 10.

Plaintiff claims the Proxy Materials were materially misleading because they did not state that OHSL management did not publish a management recommendation on the merger. However, Hanauer testified that management's sentiments on the merger would not have been helpful to OHSL shareholders because management knew that the merger would likely cost them their jobs. The lack of a published group management recommendation is immaterial as a matter of law. Northway, 426 U.S. at 449-50.

WWT 0395

Plaintiff claims the Proxy Materials should have disclosed that the OHSL Directors were not forced to enter voting agreements as a condition of the merger. Failure to disclose the non-existence of facts cannot be substantially likely to alter the total mix of information available. Northway, 426 U.S. at 449-50.

The Complaint alleges that Proxy Materials should have disclosed that Mr. Lindner is the controlling shareholder of Provident. Omissions are not, however, material if the investors have knowledge of the truth. Basic, Inc. v. Levinson, 485 U.S. 224, 231-32 (1988). Investors are assumed to be aware of publicly available information. Weiglos v. Commonwealth Edison, Co., 812 F.2d 509, 515 (7th Cir. 1989). Where information is contained in a document filed with the (SEC the exact number of shares of Provident controlled by Mr. Lindner are reported in Provident's 1999 Schedule 14a Disclosures at p. 8) investors are deemed to have knowledge of such matters and omission is immaterial. Picard Chemical, Inc., 940 F. Supp. at 1123.

Plaintiff claims that the September 24, 1999 Proxy Materials were misleading because they failed to disclose events that did not occur until October 25, 1999. This absurdity is insufficient as a matter of law.

3.    **The Remainder of Plaintiff's Claims Involve Either Unsupported Conclusory Allegations or Claims for Breach of Fiduciary Duty Disguised as Federal Securities Claims (p. 25)**

Plaintiff makes unsupported, conclusory allegations that Defendants violated the securities laws. Such base allegations, unsupported by any factual detail, are insufficient to defeat a 12(b)(6) motion. Klusty, 909 F. Supp. at 520; *In re* Glenfed, Inc. Secs. Litig. v. Glenfed, Inc., 60 F.3d 591, 593 (9th Cir. 1995); *In re* Syntex Corp. Secs. Litig., 855 F. Supp. 1086, 1100 (N.D. Cal. 1994);

WWT 0396

Hines v. ESC Strategic Funds, Inc. 1999 WL 1705503, *12 (M.D. Tenn. Sept. 17, 1999), Appendix of Exhibits, Tab 6.

The Complaint alleges that the OHSL Individual Defendants breached their fiduciary obligations. A plaintiff cannot, however, state a claim under the federal securities laws alleging facts amounting to a breach of fiduciary duty. Santa Fe Industries v. Green, 430 U.S. 462, 479 (1977); In re Craftmatic, 890 F.2d at 638; Wallerstein, 701 F. Supp. at 396.

**B.     The Court Should Dismiss Plaintiff's Section 15 and 20(a) Control Person Claims Because Plaintiff Fails to Allege Sufficient Facts (p. 28)**

To state a claim for control person liability, a plaintiff must allege that the particular defendant had some actual influence over the allegedly misleading information. Herm v. Stafford, 663 F.2d 669, 684 (6th Cir. 1981); Bomarko v. Hemodynamics, 848 F. Supp. 1335, 1339 (W.D. Mich. 1993). The mere status as a corporate director, or participation on a special committee is insufficient to give rise to control person liability without evidence that such persons actually participated in or influenced misleading communications. In re ASK Computer Sys. Secs. Litig., [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,023, at 90,127. 90,130-31 (N.D. Cal. March 11, 1991), Appendix of Exhibits, Tab 7; In re Rospatch Secs. Litig., 760 F. Supp. 1239, 1264 (W.D. Mich. 1991); In re Crazy Eddie Secs. Litig., 747 F. Supp. 850, 861 (E.D. N.Y. 1990).

**1.     No facts to support control person claims against Provident or Provident Individual Defendants (p. 29)**

Plaintiff offers no evidence to support "control person" claims against Provident or the Provident Individual Defendants, except that the Provident Individual Defendants signed the materials. Such allegations are insufficient under Herm, Bomarko, and In re Glenfed.

WWT 0397

**2.    No facts to support control person claims against OHSL Individual Defendants (p. 30)**

Plaintiff failed to allege the OHSL Individual Defendants actually participated in preparing or influenced the allegedly misleading Proxy Materials. Such allegations are insufficient to state "control person" claims under Herm, Bomarko, *In re* Ask Computer Svs., *In re* Rospatch and *In re* Crazy Eddie:

## III.    STATEMENT OF FACTS

### A.    Background of OHSL and Its Search for an Acquisition

In January 1997, Alvin E. Hucke, ~                         ;, formally recommended to the Board that it seriously                         Financial Corp. 9/24/99 Proxy Statement (hereinafter                         9).[6] The OHSL Board declined to do so at that time b                         th select investment banking firms to keep the Board                         e thrift industry. (Id.). During the period from January                         licited expressions of interest from three institutions.                         emain an independent thrift. (Id.).

In February of 1999, the Board appointed an *Ad Hoc* Committee consisting of three members of the Board to research and evaluate any benefits from the sale of OHSL. (Id.). After several

---

[6] Plaintiff's entire complaint is premised on the OHSL Proxy Statement and on the purported deposition testimony of Kenneth Hanauer, yet neither document is attached to the Complaint. Defendants are filing both documents along with this Motion. Courts *should* consider relevant documents referenced in the complaint or required by the securities laws to be filed with the SEC when considering a motion to dismiss a complaint alleging material misrepresentations and omissions in such documents. Kramer v. Time Warner, Inc., 937 F.2d 767, 769 (2d Cir. 1991); see also In re: Gupta Corp Secs. Litig., 900 F. Supp. 1217, 1228 (N.D. Cal. 1994) (when ruling on a motion to dismiss, a court may consider a variety of documents in addition to the complaint including, but not limited to, documents whose contents are alleged in the complaint but which are not physically attached to the pleadings and public disclosure documents required by law to be filed, and which have actually been filed, with the SEC).

-8-

WWT 0398

meetings of the *Ad Hoc* Committee, the full Board voted to engage McDonald Investments, Inc. ("McDonald") in May, 1999 to provide general financial advisory services to OHSL including the evaluation of a sale or merger transaction involving OHSL. (Id. at 20). After this meeting of the Board, McDonald prepared a Confidential Descriptive Memorandum designed to describe OHSL to potential acquirors. (Id.). This Memorandum was approved by the Board on June 1, 1999 and was circulated on and after June 3, 1999 by McDonald to 6 potential acquirors identified by McDonald and approved by the Board. (Id.).

### B.   OHSL's Arms Length Negotiations with Provident

Provident responded to the OHSL sale Memorandum with a non-binding indication of interest in a merger with OHSL. (See Proxy, Appendix of Exhibits Tab 8 at p. 20). On June 22, 1999 the Board discussed the terms of the proposal from Provident and authorized McDonald to invite Provident to conduct a due diligence investigation. (Id.). On July 22, 1999, OHSL Board reviewed Provident's offer and concluded that it was the best alternative for enhancing the value of OHSL common stock for all OHSL shareholders. The OHSL Board then voted to engage in negotiations with Provident, which resulted in a $1.00 per share increase over Provident's original offer.

On September 21, 1999, OHSL sent its shareholders the Proxy outlining the proposed transaction. The 67 page Proxy and its approximately 150 pages of attachments provided OHSL shareholders with a detailed account of the background of the proposal, the terms of the transaction itself, the risks involved and other contemplated consequences. (See Proxy). It also discussed, and attached as part of the Proxy Statement, the opinion rendered by McDonald to the effect that the proposed merger was fair to OHSL shareholders from a financial point of view as of September 3, 1999. (Proxy, Annex C). Finally, the Proxy expressly advised OHSL shareholders that OHSL was

WWT 0399

responsible for the information in the Proxy related to OHSL, and Provident was responsible for the information related to Provident. (Prospectus of Provident, at the third page of the Proxy Materials).

After much negotiation with Provident, the Board, a majority of whom were disinterested outsiders, unanimously approved the Agreement and Plan of Merger ("the Agreement") and recommended approval by the shareholders of OHSL. (Id.).

On October 25, 1999, OHSL shareholders approved the Agreement. Sixty-five percent (65%) of OHSL shareholders voted on the merger proposal and all votes not cast were counted as votes against the merger. (See Proxy, p. 17). The merger was approved by fifty-two percent (52%) of *all* OHSL shareholders. Of the votes actually cast by OHSL shareholders, however, a full *eighty percent* (80%) voted in favor of the transaction, nineteen percent (19%) opposed it and one percent (1%) abstained. The current plaintiff Walter Thiemann voted in favor of the Provident-OHSL merger.

**C.**    **Summary of Plaintiff's Allegations in the Latest, Federal Court, Class Action Complaint**

In this action, Plaintiff's counsel has taken failed breach of fiduciary claims which the State Court dismissed and re-cast them as securities laws violations. Plaintiff now claims that Defendants violated Sections 11, 12(2) and 15 of the Securities Act of 1933 (the "33 Act") and Sections 14, 10(b) and 20(a) of the Exchange Act of 1934 (the "34 Act") by issuing a Prospectus, Registration Statement and Proxy Statement (the "Proxy Materials") containing misstatements material to the potential Provident-OHSL merger (the "Merger") and omitting certain other material information. Plaintiff's Complaint adopts a familiar "throw everything at the wall" approach in the hope that something sticks. When carefully reviewed with the scrutiny required under the Private Securities Litigation Reform Act of 1995, however, it is clear that each of these claims fails as a matter of law.

WWT 0400

See Hines, 1999 WL 1705503, *11 (the Private Securities Litigation Reform Act, 15 U.S.C. 78u -

4(b)(2), provides that a plaintiff alleging a misstatement or omission must "state with particularity

facts giving rise to a strong inference that each defendant acted with the required state of mind").

For the Court's convenience the following chart summarizes each allegation, the reason it fails as

a matter of law, and the page at which it is discussed in this Memorandum.

| Complaint ¶ | Summary of Allegation | Reason the Court Should Dismiss |
|---|---|---|
| 47, 55 | Proxy allegedly failed to disclose date of McDonald fairness opinion. | The dated fairness opinion actually was attached to the Proxy Statement (p. 15); fact that opinion was 3 weeks old at time of Proxy Materials immaterial as a matter of law (p. 19). |
| 52 | Proxy allegedly failed to disclose extent of Provident's Securitization activities. | This fact was disclosed, p. 15. |
| 59 | Proxy allegedly failed to disclose OHSL's "fiduciary out" | This fact was disclosed, p. 15. |
| 60 | Proxy allegedly failed to disclose Herron resigned from OHSL Board. | This fact was disclosed, p. 15. |
| 46, 50 | Proxy allegedly materially misleading because cover letter signed by Brinker and not by Hanauer supposedly because Hanauer did not believe merger in shareholders' best interests. | Alleged misstatement based upon mischaracterization of Hanauer's deposition testimony in State Court Action, p. 17. |
| 48-49 | Statement in proxy that OHSL Board unanimously approved recommendation of merger to shareholders allegedly misleading. | False allegation of misstatement based on Plaintiff's mischaracterization of Hanauer's deposition testimony in State Court Action, p. 17. |
| 53 | Proxy's failure to disclose composition of *Ad Hoc* Committee allegedly misleading. | Immaterial as a matter of law, p. 22. |

WWT 0401

| Complaint ¶ | Summary of Allegation | Reason the Court Should Dismiss |
|---|---|---|
| 51 | Proxy was misleading because it failed to disclose that Hanauer vote in favor of recommending merger allegedly motivated by change in control contract. | Immaterial as a matter of law, pp. 19-20. |
| 54 | Proxy did not expressly disclose (1) Carl Lindner as Provident controlling shareholder; (2) no published management recommendation on merger; and (3) no voting agreements. | Immaterial as a matter of law, pp. 22-24. |
| 57 | Proxy Materials failed to disclose other "options" available to OHSL. | Immaterial as a matter of law, pp. 21-22. |
| 64-65 | Plaintiff claims September 24, 1999 Proxy Materials failed to disclose events that occurred one month later, on October 25, 1999. | Nonsensical, pp. 24-25. |
| 1, 14 | Conclusory claims that Proxy Materials were materially misleading and that OHSL Individual Defendants controlled their contents. | Claims based upon unsupported conclusions, pp. 25-27. |
| 56, 62 | Claims that OHSL Individual Defendants breached their fiduciary duties. | Breach of fiduciary duty claims are insufficient to state claims for federal securities laws violations pp. 27-28. |

The Complaint completely fails to allege any of the following facts:

✱    Plaintiff does not allege that any of the Provident Individual Defendants had specific involvement in the preparation of the Proxy Materials.

✱    Plaintiff does not allege that Provident or any of the Provident Individual Defendants had any involvement in compiling or approving of any of the information contained in the Proxy Materials other than the information relating to Provident. (see Proxy, Appendix of Exhibits Tab 8, Proxy Cover Sheet, Prospectus of Provident Financial Group, Inc. stating, "OHSL has provided the information concerning OHSL and Provident has provided the information concerning Provident Financial").

WWT 0402

✖    Plaintiff does not allege that any of the information relating to Provident is materially misleading.

✖    Plaintiff does not allege any specific facts to indicate that Tenoever, Hillebrand, Hucke, Brinker, McKiernan or Zoellner were involved in details of the preparation of the Proxy Materials.

✖    Plaintiff does not allege that Defendant Oak Hills Savings and Loan engaged in any wrongdoing.

IV.    **ARGUMENT**

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's complaint must contain either direct or inferential allegations respecting all material elements of the causes of action under which the plaintiff claims relief. Klusty v. Taco Bell Corp., 909 F. Supp. at 520; Fed. R. Civ. P. 12(b)(6). And, while all well-pleaded factual allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff, courts need not accept as true legal conclusions or unwarranted factual inferences. Klusty, 909 F. Supp. at 520 (citing Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)).

A.    **The Court Should Dismiss Plaintiff's Section 11, 12(2), 10(b) and 14 Claims Because He Fails to Allege Facts Sufficient to Establish that the Proxy Materials Contain Material Misstatements and/or Omissions**

In this action, the existence of material misstatements or omissions in the Proxy Materials is an element of each of Plaintiff's causes of action for primary liability.[7] The "facts" alleged by

---

[7]    In order to prevail on a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must establish (1) a misrepresentation or omission, (2) of a material fact, (3) made with scienter, (4) justifiably relied on by the plaintiff and (5) proximately causing her injury. Stavaroff, 1997 WL 720475,*4 (citing Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1409 (6th Cir. 1991)). In order to establish violation of Sections 11 and 12(2), a plaintiff must show that (1) defendants offered or sold a security, (2) by the use of any means in interstate commerce, (3) through a prospectus or oral communication, (4) by making a false or misleading statement of material fact or omitting a material fact, (5) plaintiff did not know of the untruth or omission and (6) defendants knew, or in the exercise of reasonable care could have known of the untruth or omission. Wright v. National Warranty Company, L.P., 953 F.2d 256, 262, n. 2 (6th Cir. 1992) (citation omitted) (Section 12(2); Picard Chemical, Inc., 940 F. Supp. at 1131, n. 26 (Section 11). To establish a Section 14(a) violation, a plaintiff must prove the defendant(s) solicited proxies in violation of the federal securities laws, i.e., containing material misstatements or omissions. See Leff v. CIP Corp., 540 F.Supp 857, 865 (S.D. Ohio 1982). Finally, to secure liability against a defendant as a "control person" under Sections 15 and 20(a), a plaintiff must allege that the

-13-

Plaintiff, however, are not sufficient to establish that the Proxy Materials contain any material misstatements or omit any material facts. Therefore, the Court should dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). Klusty, 909 F. Supp. at 520; Fed. R. Civ. P. 12(b)(6).

In essence, Plaintiff's complaint fails as a matter of law because the "factual" allegations of the supposed material misstatements and/or omissions are fabricated by Plaintiff's counsel because these matters clearly were disclosed, constitute unwarranted factual inferences, or are legally immaterial even when taken as true.

### 1. Plaintiff's False Allegations of Misstatements and Omissions

Although the Court must accept as true all well-pleaded facts contained in Plaintiff's Complaint when ruling on this Motion, it need not credit or consider legal conclusions or unwarranted factual inferences. Klusty, 909 F. Supp. at 520. Moreover, dismissal is appropriate in situations, like this case, where the disputed proxy materials actually disclose the information alleged to be missing. Phillips v. Kidder Peabody & Co., 933 F. Supp. 303, 320 (S.D. NY. 1996). Where, as here, Defendants can demonstrate that information which Plaintiff claims was omitted from the Proxy Materials was actually disclosed, or that information Plaintiff claims was misstated was actually *not* misstated, the Court may grant a motion to dismiss despite contrary allegations. Id.; see also *In re* Gupta, 900 F. Supp. at 1228.

### Information which Plaintiff claims was omitted from the Proxy Materials actually was disclosed

Plaintiff claims the Proxy Materials were materially misleading because they allegedly omitted that: (1) the McDonald fairness opinion was three weeks old (Compl. ¶ 47); (2) Provident's

---

defendant participated in the activities of a corporation constituting securities laws violations, i.e., disseminating proxy materials containing material misstatements or omissions. Herm v. Stafford, 663 F.2d 669, 684 (6th Cir. 1981) (citations omitted).

WWT 0404

business relied upon securitizations (Compl. ¶ 52); (3) OHSL retained a "fiduciary-out" -- i.e., that

the OHSL Board could abandon the transaction (Compl. ¶ 59); and (4) former Director Herron

resigned before the Board voted to recommend the merger to OHSL's shareholders (Compl. ¶ 60).

Plaintiff's allegations that these facts were not discussed in the Proxy Materials are simply false. The

Proxy Materials disclosed all of these facts, as the document attached as Tab 8 to Defendants'

Appendix of Exhibits clearly attests:

- The September 24, 1999 Proxy Materials included as Annex C an actual copy
  of the McDonald fairness opinion, unambiguously dated "September 3, 1994"
  on each of its four pages, and clearly state that the McDonald's opinion
  determined that the merger was fair from a financial point of view "as of such
  date." (Proxy pp. 5, 22-23; Proxy Annex C).

- The Proxy Materials clearly disclosed to OHSL shareholders that OHSL
  retained the ability to terminate the merger agreement if Provident's ten
  day/two day average stock price fell below $36.60. (Proxy pp. 4, 41).

- The Proxy Materials clearly, and in detail, disclosed that Provident "may be
  unable to maintain volume of securitizations" and go on to describe the risks
  associated with securitization activity. Moreover, the Proxy Materials inform
  OHSL shareholders that additional information is available to them through
  Provident's SEC filings and instruct shareholders how to obtain copies
  thereof. (Proxy pp. 13, 65).

- The Proxy Materials do not list Tom Herron as an OHSL Director at the time
  of the issuance thereof. All OHSL shareholders could determine that Herron
  had recently resigned his Board membership by comparing the Director list
  published in the Proxy Materials with the Director list published in OHSL's
  1999 10K Annual Report, published a few months earlier. (Proxy p. 63;
  OHSL 1999 10K, pp. 37-38, Appendix of Exhibits, Tab 9[8]).

Plaintiff has falsely alleged that the above information was omitted from the Proxy Materials

when, in fact, it was not. The Court should disregard the allegations contained in Complaint

---

[8] See *In re* Gupta, 900 F. Supp. at 1228 (when considering 12(b)(6) motion, court may look to disclosure
documents required to be filed with the SEC).

paragraphs 47, 52, 59 and 60 in considering this Motion. Phillips, 933 F. Supp. at 320. The Court cannot permit Plaintiff to fabricate purported "omissions" and use those fabrications to defeat a motion to dismiss. Id.

**Information Plaintiff falsely claims was misstated**

Throughout his Complaint, Plaintiff also makes various allegations supposedly supported by Hanauer's deposition testimony in the State Court Action. Plaintiff excerpts and twists snippets of testimony from Hanauer's 16 hour, 800 page deposition to create a completely false impression.[9] Plaintiff, however, cannot defeat a motion to dismiss with conclusory allegations or unwarranted factual inferences. Klusty, 909 F. Supp. at 520; Phillips, 933 F. Supp. at 320. Most critically of all, Hanauer unambiguously testified that the Proxy Materials did not contain any material misstatements or omissions:

> **Q (Plaintiff's Attorney Brautigam):** Do you think that there are any material facts in this document that are omitted?
>
> **Hanauer:** No.
>
> **Q:** Do you think that there are any material facts in this document that are misstated?
>
> **Hanauer:** No.

(Hanauer Dep. 274).

Plaintiff claims, purportedly based on Hanauer's testimony, that the Proxy Materials were materially misleading because: (1) Brinker signed the cover letter to the Proxy instead of Hanauer

---

[9] As Plaintiff insists on using "selected" portions of Hanauer's testimony, albeit improperly, Defendants urge the Court to review the deposition in its entirety so that it can understand the context of the selected statements and view Plaintiff's counsel's tactics first-hand. Because Plaintiff referred selected portions of Hanauer's testimony in his Complaint, the Court may consider the entire deposition in ruling on this Motion. See *In re* Gupta, 900 F. Supp. at 1228 (court may refer to items whose contents are alleged in Complaint when deciding 12(b)(6) motion). A complete copy of the Hanauer deposition is attached behind Tab 10 of the Appendix of Exhibits, and relevant portions will be referred to herein.

WWT 0406

and Hanauer insisted his signature be removed "because he did not believe the proposed transaction was in the best interests of OHSL and its shareholders" (Compl. ¶¶ 46, 50); and (2) Hanauer believed that the statement in the Proxy Materials that OHSL's board unanimously had approved the merger was misleading because Brinker and McKiernan did not vote (Compl. ¶ 49). (Compl. ¶ 53). Neither claim is supported by Hanauer's deposition.

- Contrary to Plaintiff's claims, Hanauer explained the fact that Brinker's signature appears on the cover letter as follows:

  I just, in reading it, said that I felt it would be better if [Brinker's] signature appeared on it, that, you know, this was a transaction that he supported more than I did. And so it was changed to his signature.

  (Hanauer Dep. 146).

- Moreover, when asked if he thought the merger was a good transaction, Hanauer responded:

  In, [the Special Meeting], when it was asked, is this -- I believe the question was, is this a good transaction, is it a good transaction I have to answer yes. Is it a transaction that Ken Hanauer would have gone out and sought, no, but that wasn't the question I was asked. I wasn't ready to retire at 50.

  (Hanauer Dep. 118).

- Hanauer testified that the OHSL Board had unanimously voted to recommend the transaction. He explained that McKiernan, who was out of the county at the time of the vote, was extremely pro-merger, and that Brinker, as Chairman of the Board, was not required to vote unless there was a tie and often did not vote. Moreover, Hanauer testified that when Brinker called for a vote of the OHSL Board on the transaction, there were no "nays" and that Brinker, as the presiding director, declared the vote unanimous at the time. (Hanauer Dep. 743-59).

Just as the Court must disregard Plaintiff's fabricated "omissions," it must similarly disregard Plaintiff's false allegations of misstatements based upon mischaracterizations of Hanauer's

WWT 0407

testimony. Klusty, 909 F. Supp. at 520 (unwarranted factual inferences not enough to defeat 12(b)(6) motion); Phillips, 933 F. Supp. at 320 (court may dismiss claims based on purported omissions if information was actually disclosed). Paragraphs 46, 50, 59, and 53 of Plaintiff's Complaint, therefore, provide no support for any claim. Id.

> ### 2. Certain of Plaintiff's Alleged Misstatements and Omissions are Immaterial As a Matter of Law

Misstatements and/or omissions are actionable under the federal securities laws only if they are "material." Section 11 of the 33 Act, 15 U.S.C. § 77K; Section 12(2) of the 33 Act, 15 U.S.C. § 77L(2); Section 10(b) of the 34 Act, 15 U.S.C. § 78j(b). Omitted or misstated facts are "material" for purposes of the securities laws only if they would be so obviously important to an investor as having significantly altered the "total mix" of information available. TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449-50 (1976). Moreover, courts must balance the need for disclosure against the need to avoid overwhelming shareholders with minutiae. Id. at n. 10; see also Management Assistance, Inc. v. Edelman, 584 F. Supp. 1021, 1027 (S.D. N.Y. 1984) ("fair accuracy, not perfection," conveying "sufficiently accurate picture so as not to mislead" is standard by which statements in securities filings are judged) (citations omitted).

The Proxy Statement contained a detailed and comprehensive analysis of the Provident-OHSL merger and the pros and cons of the transaction. Plaintiff's allegations of material misstatements or omissions in Complaint paragraphs 47, 55, 51, 57, 53, 54, 64 and 65 are perfect examples of the kind of nit-picking, hyper-technical objections that do not alter the "total mix" of information. These allegations must be disregarded because they are immaterial for purposes of the federal securities laws, as a matter of law. See Northway, 426 U.S. at 449-50 (do not alter the total mix).

WWT 0408

### Outdated fairness opinion immaterial

In paragraphs 47 and 55 of his Complaint, Plaintiff claims that Defendants violated the federal securities laws because they included the September 3, 1999 McDonald fairness opinion in the September 24, 1999 Proxy Materials. (Compl. ¶¶ 47, 55). Courts have routinely held, however, that, where a fairness opinion which is clearly dated is annexed to the proxy materials, a plaintiff cannot make a claim of material misrepresentation based on "staleness." Wallerstein v. Primerica Corp., 701 F. Supp. 393, 398 (E.D. Ny. 1988).

The fairness opinion in Wallerstein was eight weeks old when the proxy materials were issued and the Court reasoned that because the opinion was clearly dated and annexed to the proxy, and because Wallerstein failed to allege that the fairness opinion was false or misleading "at the time and in light of the circumstances under which it was made," the fact that is was outdated was not, as a matter of law, material. Id. The facts in this case are nearly identical to those in Wallerstein except that here, the clearly dated McDonald fairness opinion, which was attached to the Proxy, was just three weeks old. Additionally, Plaintiff does not, and cannot allege that the McDonald opinion was false or misleading on the date it was given, September 3, 1999.[10] Finally, the Wallerstein Court held that there is no legal duty to update fairness opinions rendered in connection with a merger transaction. Id. Plaintiff's claim based upon the date of McDonald's fairness opinion, as a matter of law, fails to state a claim under the federal securities laws.

### Hanauer's alleged motive for voting to recommend
### merger to shareholders immaterial

In paragraph 51 of his Complaint, Plaintiff alleges that the Proxy Materials should have disclosed that Hanauer entered into his change in control contract in July, 1999, allegedly after he

---

[10] Notably, the McDonald letter opines that the merger Exchange Ratio was fair to OHSL shareholders from a financial point of view "as of the date of the opinion," September 3, 1999. (Proxy Annex C).

WWT 0409

"changed his vote" on the Provident transaction and that Hanauer's August 2 vote in favor of recommending the merger to the OHSL shareholders was supposedly motivated by his change in control contract. (Compl. ¶ 51).

First, it should be noted that Plaintiff blatantly mischaracterizes the facts. Hanauer did not "change his vote" on the Provident merger, and never testified that his vote had anything whatsoever to do with his change of control agreement. (Hanauer Dep. 324-25). In May, 1999, Hanauer was against hiring McDonald to pursue *any* possible sale or merger transactions for OHSL, because he wanted OHSL to remain as an independent company. (Hanauer Dep. 93). Once the OHSL Board made the strategic decision to pursue a possible sale, however, Hanauer never voted against the Provident transaction in his capacity as director (Hanauer Dep. 63 (Hanauer voted in favor of merger at OHSL board meeting on August 2, 1999)). Indeed, Hanauer repeatedly testified that the final Provident transaction was fair. (Hanauer Dep. 118, 128, 257).

Even assuming that Hanauer's change of control contract had an impact on his vote as a director, courts have held that a director's purported motivation for voting a particular way is not material, as a matter of law, for the purposes of the disclosure requirements of the federal securities laws. *In re* Craftmatic Secs. Litig. v. Kraftsow, 890 F.2d 628, 638 (3d Cir. 1990) (citing Panter v. Marshall Field & Co., 646 F.2d 271, 288 (7th Cir. 1980)) (securities laws do not obligate defendants to reveal the culpability of their activities or their alleged impure motives for entering a transaction -- fiduciary duty claims cannot be disguised as federal violations).

Plaintiff's allegation that the Proxy Materials should have disclosed Hanauer's alleged motive for voting in favor of the merger is insufficient to support claims for violation of the disclosure requirements. Id. In considering this Motion, the Court should disregard paragraph 51 of Plaintiff's Complaint.

WWT 0410

**Other "options" purportedly available to OHSL immaterial**

In paragraph 57, Plaintiff claims the Proxy Materials were materially misleading because they did not disclose other options that purportedly were available to OHSL at the time of the merger with Provident, such as a merger of equals or remaining independent. (Compl. ¶ 57). Courts, however, have held that omission of discussions of available options in addition to those contemplated in the proxy are not material for purposes of the disclosure provisions of the securities laws. In <u>Doyle v. Milton</u>, 73 F. Supp. 281, 285 (S.D. N.Y. 1947), the court held that a proxy statement that fails to state possible alternatives to the course of action for which the board seeks approval is not false or misleading for that reason. Once again, however, Plaintiff's claims of "other options" is baseless. In the Hanauer deposition, upon which Plaintiff's claim is based, he clearly testified that at the time of the merger, there was no better alternative available:

> **Q (Plaintiff's Attorney Brautigam):** So, is it fair to say that there was a better deal on the table or contemplated for [OHSL] at or about the time the Board of Directors agreed to enter this transaction with Provident?
>
> \*   \*   \*
>
> **Hanauer:** No sir. No. That's not true. There was no better deal on the table.
>
> \*   \*   \*
>
> **Hanauer:** We had a, we had a transaction in front of us. We had at this point no one else who was clamoring -- if somebody would have contacted me and said we would like to take Provident out of the transaction, then we would have stepped it up, but I looked at it as an exercise in futility if you don't have anybody standing there interested in you.

(Hanauer Dep. 94, 171). Thus, there were no other viable alternatives to disclose. Even if there had been, however, such an omission was immaterial as a matter of law. <u>Doyle</u>, 73 F. Supp. at 285.

WWT 0411

## Composition of *Ad Hoc* Committee immaterial

In Complaint Paragraph 53, Plaintiff alleges that the Proxy Materials were false and misleading because they did not specifically identify the members of the *Ad Hoc* Committee. (Compl. ¶ 53).  Such a detail, however, is immaterial as a matter of law as the identity of the committee cannot be said to be substantially likely to significantly alter the "total mix" of information available to OHSL shareholders.  OHSL shareholders knew who the Directors were and knew the *Ad Hoc* Committee were members of the Board.  Moreover, the Proxy discusses the activities of the *Ad Hoc* Committee in detail. (Proxy pp. 19-20).  Finally, shareholders were directed to contact OHSL for any additional information they might want. (Id. at 65-66).  In other words, if a shareholder did personally know the Board members and, as a result, wished to know which of them were on the *Ad Hoc* Committee, he or she could contact OHSL.  The identification of the Committee members is the exact type of minutiae that is superfluous to shareholders.  Northway, 426 U.S. at 449-50, n. 10.

Finally, in paragraphs 54, 64 and 65, Plaintiff claims that the Proxy Materials were materially misleading because they did not explicitly state that: (1) Carl Lindner controls Provident; (2) OHSL management did not issue a recommendation as to the transaction; (3) OHSL did not force its directors to enter voting agreements as a condition of the merger; and (4) former director Herron was "not at the dais" at the Special Meeting.  (Compl. ¶¶ 54, 64-65).

## Absence of OHSL management recommendation immaterial

Plaintiff claims the Proxy Materials were materially misleading because they did not state that there was no OHSL management recommendation published on the Provident merger.  (Compl. ¶ 54).  Again, Plaintiff manipulates the facts to suit his needs.  Plaintiff implies that OHSL management, as a group, was against the merger.  The facts, however, demonstrate otherwise.  In

WWT 0412

fact, Hanauer, Oak Hills' CEO and the only member of management on the OHSL Board, voted to recommend the merger to OHSL shareholders. Indeed, Hanauer testified that any additional disclosure of management sentiment would have been misleading to OHSL shareholders because the management team necessarily had subjective misgivings about the merger knowing that they would lose their jobs. (Hanauer Dep. 264). In other words, the Oak Hills management team may have been against the merger because they wanted to maintain their positions, even though the transaction was in the best interests of the OHSL shareholders. (Hanauer Dep. 118). Based on Northway's admonition against overwhelming shareholders with minutiae, coupled with its holding that information is legally material only if there is a substantial likelihood that it would alter the total mix of information available to investors, the lack of a published group management recommendation on the merger is immaterial as a matter of law. See Northway, 426 U.S. at 449-50.

### Absence of voting agreements immaterial

Plaintiff claims the Proxy Materials were materially misleading because they did not state that OHSL's Directors were not forced to enter into voting agreements as a condition of merger. (Compl. ¶ 54). Plaintiff's inexplicable claim, therefore, is that the Proxy Statement failed to disclose the non-existence of certain facts. Under no circumstances can the fact that Provident did not require OHSL's Directors to enter voting agreements as a condition of the merger be material to OHSL shareholders. Northway 426 U.S. at 449-450. Perhaps the existence of voting agreements may be material; but there is no plausible reason why the absence of such agreements would be. Otherwise, there could be endless claims of the failure to disclose the non-existence of facts. Voting agreements are a tool often used by the acquiring entity to guarantee that the acquired company's directors vote in favor of a change in control. In such circumstances the acquired company's directors promise to vote their shares in favor of the transaction *ahead of time*. In this case, Provident agreed to move

forward without such agreements, allowing the Directors to vote as they saw fit.  Unbelievably,

Plaintiff seems to be complaining of this.  Disclosing the universe of facts that did not transpire is

not required by the securities laws.  See <u>Radol v. Thomas</u>, 772 F.2d 244, 252 (6th Cir. 1985) (only

disclosure of ***existing*** material facts is required).

### Mr. Lindner's status as significant Provident shareholder known to public

Plaintiff claims the Proxy Materials were materially misleading because they did not disclose

that Mr. Lindner is purportedly the controlling Provident shareholder.  (Compl. ¶ 54).  The fact that

Mr. Lindner is the controlling stockholder of Provident is public knowledge and has been public

knowledge for years.  It is clearly disclosed in Provident's SEC filings, which are incorporated by

reference to in the Proxy Materials (Proxy, p. 65; <u>see also</u> Provident's 1999 Schedule 14a

Disclosures, filed with the SEC, Appendix of Exhibits, Tab 11, at p.8).  Moreover, the Proxy advised

OHSL shareholders how to obtain Provident's SEC filings.  (Proxy, p. 65).  Misrepresentations and

omissions are not material if the investors have knowledge of the truth.  <u>Basic, Inc.</u>, 485 U.S. at 231-

32.  Investors are assumed to be aware of general economic trends, regulatory matters, competition

*and other publicly available information.*  <u>Weiglos v. Commonwealth Edison Co.</u>, 892 F.2d 509, 515

(7th Cir. 1989).  And, where information is contained in a document filed with the SEC, investors

are deemed to have knowledge of such matters.  <u>Picard Chemical</u>, 940 F. Supp. at 1123.  Thus,

because Mr. Lindner's status as controlling shareholder of Provident is disclosed in Provident's SEC

filings, its omission from the Proxy Materials is immaterial as a matter of law.

### Cannot disclose facts that have not yet occurred

Plaintiff claims the Proxy Materials were materially misleading because they did not state

that Hanauer and Zoellner voted their personal shares against the merger and that Herron was

WWT 0414

"missing from the dais" at the October 25, 1999 Special Meeting[11]. (Compl. ¶¶ 64-65). Even assuming the truth of these allegations, it was impossible to disclose the events of the *October* 25, 1999 Special Meeting in the *September* 24, 1999 Proxy Materials. Plaintiff's claims that these events should have been disclosed are nonsensical.

3. **The Remainder of Plaintiff's Claims Involve Either Unsupported Conclusory Allegations or Claims for Breach of Fiduciary Duty Disguised as Federal Securities Claims**

The remaining allegations Plaintiff cites in support of his claims are insufficient to state claims under the federal securities laws because they are either (1) unsupported, conclusory legal allegations or (2) claims for breach of fiduciary duty against the OHSL Individual Defendants that Plaintiff is trying to bootstrap into federal disclosure claims.

### Unsupported conclusory allegations

Paragraphs 1 and 14 of Plaintiff's Complaint contain conclusory allegations that all Defendants "deliberately and/or recklessly" disseminated false and misleading statements to Plaintiff in the Proxy Materials and that the OHSL Individual Defendants "because of their positions of control and authority as officers and directors" controlled the contents of the Proxy Materials. Plaintiff's conclusory claims are legally insufficient to state violations of the federal securities laws.

It is well settled law that conclusory, unsupported allegations are insufficient to defeat a motion to dismiss. Klusty, 909 F. Supp. at 520. Moreover, a plaintiff cannot survive a motion to dismiss brought by outside directors of a corporation in federal securities cases related to primary violations of the disclosure requirements (Secs. 11, 12(2), 10(b) and 14) unless the complaint contains allegations that the outside directors engaged in the day-to-day corporate activities or

---

[11] Zoellner categorically denies that he voted his OHSL shares against the Merger. See Defendants' Answer, ¶ 65.

WWT 0415

actually participated in preparing the allegedly misleading communications. *In re* Glenfed, Inc. Secs. Litig. v. Glenfed, Inc., 60 F.3d 591, 593 (9th Cir. 1995); *In re* Syntex Corp. Secs. Litig., 855 F. Supp. 1086, 1100 (N.D. Cal. 1994).

In Complaint paragraph 1, Plaintiff makes broad, conclusory claims that all Defendants engaged in fraud through dissemination of false and misleading Proxy Materials without any supporting facts. The Court should disregard paragraph 1 in deciding this Motion. Klusty, 909 F. Supp at 520; see also Hines, 1999 WL 1705503, *11 (in federal securities law cases, complaint must, with respect to each act or omission alleged to have violated law, state with particularity facts giving rise to a strong inference that each implicated defendant acted with the required state of mind (outlining pleading requirements of Fed. R. Civ. P. 9(b) and Private Securities Litigation Reform act of 1995, 15 U.S.C. § 78u(b), *et seq.*)). In paragraph 14 of the Complaint, Plaintiff relies upon conclusory, unsupported allegations that the OHSL Individual Defendants "controlled" the contents of the Proxy Materials. In fact, however, Plaintiff fails to allege a single activity engaged in to support his claim that Brinker, Tenoever, McKiernan, Zoellner, Hucke or Hillebrand controlled the contents of the Proxy Statement or personally participated in its preparation. Nor does Plaintiff allege any other acts that could constitute violations of the federal securities laws by the OHSL Individual Defendants.[12] Thus, even if the Proxy Materials contained material misstatements or omissions, Plaintiff's Section 11, 12(2), 10(b) and 14 claims against Brinker, Tenoever, McKiernan,

---

[12] Plaintiff does allege facts sounding in state law claims of breach of fiduciary duty in paragraphs 56 and 62 of his Complaint. As discussed below, however, Plaintiff cannot bootstrap those claims into federal securities law disclosure claims. Santa Fe Indus. v. Green, 430 U.S. 462, 479 (1977).

WWT 0416

Zoellner, Hucke and Hillebrand must be dismissed.[13]  *In re* Glenfed, 60 F.3d at 593; *In re* Syntex,

855 F. Supp. at 1100; Hines, 1999 WL 1705503, *11.

Similarly, the only allegations in support of his claims against the Provident Individual

Defendants are contained in paragraphs 16 through 21 of the Complaint and state nothing more than

the purported fact that the Provident Individual Defendants signed the Proxy Materials.  (Compl. ¶¶

16-21).  Because Plaintiff fails to allege a single fact to support a claim that the Provident Individual

Defendants were involved in drafting, compiling or preparing the contested portions of the Proxy

Materials (i.e., those portions discussed in Compl. paragraphs 46-65), Defendants Hoverson, Cook,

Grote, Myers, Pedoto, Steger and Carey -- must be dismissed.[14]  *In re* Glenfed, 60 F.3d at 593 (must

allege more than that outside directors signed proxy materials); *In re* Syntex, 855 F. Supp. at 1100;

Hines, 1999 WL 1705503, *11.  Plaintiff completely fails to state any claim against Provident or the

Provident Individual Defendants for primary liability under Sections 11, 12(2), 10(b) or 14.

### Breach of fiduciary duty claims disguised as federal securities claims

Complaint paragraphs 56 and 62 are nothing more than claims that the OHSL Individual

Defendants breached their fiduciary duties, disguised as federal non-disclosure claims.  In Complaint

paragraph 56 of the Complaint, Plaintiff alleges that the OHSL Board could not have recommended

the merger "in good faith" because the McDonald fairness opinion was three weeks old and, in

---

[13] Allegations that Hucke, Tenoever and McKeirnan were members of the *Ad Hoc* Committee are insufficient, without more, to subject them to liability under Sections 11, 12(2), 10(b) or 14.  *In re* Gupta, 900 F. Supp. at 1241.

[14] The Proxy Materials make clear that Provident supplied only information relating to Provident; Provident had no involvement in the OHSL information.  Provident Prospectus, at page four of the Proxy.  Plaintiff does not allege that any of the information relating to Provident is false or misleading.  (Compl.).  Thus, Provident and the Provident Individual Defendants should be summarily dismissed from this action.  *In re* Syntex, 855 F. Supp. at 1100 (no liability for group published information where defendants were not actually involved in the alleged fraud).

WWT 0417

paragraph 62, Plaintiff claims that the OHSL Directors breached their fiduciary duties because Hanauer allegedly did not believe the merger was in the best interests of the OHSL shareholders.[15] (Compl. ¶¶ 56, 62).

Courts have consistently held that a plaintiff cannot state a claim for violation of the federal securities laws by alleging facts amounting to breach of fiduciary duty. Santa Fe, 430 U.S. at 479; In re Craftmatic, 890 F.2d at 638; Wallerstein, 701 F. Supp. at 396. Thus, Plaintiff cannot survive a motion to dismiss in this action based on his allegations that the OHSL Individual Defendants breached their fiduciary duties to the OHSL shareholders.

### B. The Court Should Dismiss Plaintiff's Section 15 and 20(a) Control Person Claims Because Plaintiff Fails to Allege Sufficient Facts

A director of a corporation is not automatically liable as a control person under Sections 15 and 20(a). Plaintiff must allege specific acts of actual participation in the corporation's operation or some influence over the allegedly misleading communications before the consequences of control may be imposed just as he must allege such actual participation before liability for direct violations of Sections 11, 12(2), 10(b) or 14 can attach under a group published information theory. Herm, 663 F.2d at 684 (requirements for indirect, "control person" liability); Bomarko, 848 F. Supp. at 1339 (same); see also In re Glenfed, 60 F.3d at 593 (requirements for direct liability under group published information theory); In re Syntex, 885 F.Supp. at 1100 (same). Moreover, participation on a special committee alone does not give rise to control person liability without evidence that the committee members actually participated in or influenced the allegedly misleading communications. In re Ask Computer Sys., [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,023, at 90,127,

---

[15] Notably, Plaintiff never alleges that Hanauer communicated this belief to the other OHSL Directors even though he deposed Hanauer in the State Court Action for more than 16 hours, generating more than 800 pages of testimony.

WWT 0418

90,130-31 (outside director who was member of audit committee was not control person for purposes of the public offering); *In re* Rospatch Secs. Litig., 760 F. Supp. at 1264; *In re* Crazy Eddie Secs. Litig., 747 F. Supp. at 861.

Here, Plaintiff claims Provident, the Provident Individual Defendants, and the OHSL Individual Defendants should be deemed control persons under Section 15 of the 33 Act and Section 20(a) of the 34 Act. (See Counts III and VI of Compl.). Plaintiff, however, fails to allege a single fact sufficient to support his control person claims.

### 1.    No facts to support control person claims against Provident or Provident Individual Defendants

Plaintiff fails to allege that the Provident Individual Defendants participated in preparation of the Proxy Materials in any way. Literally, the only fact Plaintiff alleges about the Provident Individual Defendants is that they signed the Proxy Materials. (Compl. ¶¶ 16-21). Plaintiff's Section 15 and 20(a) control person claims against the Provident Individual Defendants must be dismissed for failure to state a claim. Herm, 663 F.3d at 684; *In re* Glenfed, 60 F.3d at 593; *In re* Syntex, 855 F. Supp. at 1100; Hines, 1999 WL 1705503 *11.

Similarly, Plaintiff fails to allege any facts to support the claim that Provident controlled the allegedly misleading portion of the Proxy Materials. It is undisputed that Provident provided only that information specifically ***about Provident*** contained in the Proxy Materials. (Provident Prospectus at page four of the Proxy). Because Plaintiff does not claim that any of the information ***about Provident*** contained in the Proxy Materials is misleading, his control person claims against Provident must be dismissed. Herm, 663 F.2d at 684 (to control person, must actually participate in or influence *portion of communication* that was misleading).

WWT 0419

### 2. No facts to support control person claims against OHSL Individual Defendants

Finally, Plaintiff fails to allege that any of the OHSL Individual Defendants other than Hanauer actually participated in drafting or otherwise influenced the Proxy Materials.[16] Nor does he allege that Hanauer communicated his alleged concerns about the contents of the Proxy Materials to any of the other OHSL Individual Defendants. Thus, Plaintiff has failed to state a claim against the any of OHSL Individual Defendants other than Hanauer for control person liability. Herm, 663 F.2d at 684; In re Glenfed, 60 F.3d at 593; In re Syntex, 855 F. Supp. at 1100; Hines, 1999 WL 1705503, *12.

## IV.   CONCLUSION

The attempt of Plaintiff and his counsel to resurrect a failed state claim and start all over again in this Court cannot be permitted. Plaintiff's counsel raised similar, meritless claims based upon the same conclusory and fabricated "fact" allegations in the State Court Action with a different plaintiff. Plaintiff's counsel abandoned the State Court Action after withdrawing his motion for class certification and suffering a dismissal of his claims against Provident. After abandoning the State Court Action, however, counsel found a new plaintiff, Mr. Thiemann, and re-engineered his claims in an attempt to fit them into the federal non-disclosure framework.

Plaintiff's allegations of misstatements and non-disclosures are either fabricated or relate to information that is immaterial as a matter of law. The Court should not permit Plaintiff to continue to abuse the system. Plaintiff's Class Action Complaint should be dismissed with prejudice.

---

[16] Plaintiff may have alleged that Hanauer actually participated in the preparation of the Proxy Materials. However, Plaintiff's control person claims against Hanauer fail nonetheless because Plaintiff fails to state sufficiently a claim for any underlying securities violations. Herm, 663 F.3d at 684 (must allege that defendant actually participated in the fraud -- if there is no underlying fraud, there can be no control person liability).