### 149

```
13:16:38  1   If it would end up lower, then you've got a bad
13:16:43  2   one.
13:16:43  3       Q.  Mr. Zoellner, in your previous --
13:16:45  4       MR. BURKE:  Did you finish your
13:16:46  5   answer, Mr. Zoellner?
13:16:48  6       A.  Yes.
13:16:48  7       Q.  Mr. Zoellner, in your previous
13:16:50  8   answer you said something about one bid and
13:16:52  9   then referred to something being higher or
13:16:55 10   lower.
13:16:56 11       A.  Well --
13:16:56 12       Q.  Can I finish my question?
13:16:57 13       A.  Yes.
13:16:58 14       Q.  My question is:  If you have one
13:16:59 15   bid, how can it be higher or lower to anything?
13:17:03 16       MR. BURKE:  Objection to form.
13:17:04 17       A.  No, comparison I'm talking about.
13:17:06 18   You're anxious to get more than one bid so that
13:17:08 19   you have a comparison to say whether this one
13:17:12 20   is better than this one.
13:17:14 21       Q.  Right.  And when you didn't have
13:17:15 22   more than one bid --
13:17:17 23       A.  Yeah.
13:17:17 24       Q.  -- you sold anyway, correct?
13:17:20 25       A.  Yes.
```

### 150

```
13:17:22  1       Q.  Do you think that was a good
13:17:23  2   business decision in retrospect?
13:17:25  3       MR. BURKE:  Objection.  This --
13:17:26  4   I'll object to relevance, Mr. Brautigam.  When
13:17:29  5   you had a breach of fiduciary duty claim, you
13:17:33  6   pursued security litigation claims.  Now that
13:17:36  7   you have a security claim, you're going after
13:17:40  8   breach of fiduciary duty.  Object to relevance.
13:17:42  9   You can answer the question.
13:17:43 10       MR. BRAUTIGAM:  Jim, I'm really
13:17:44 11   doing fine without your speaking objections,
13:17:47 12   but what can I tell you.
13:17:48 13       MR. MOORE:  Same objection.
13:17:48 14   BY MR. BRAUTIGAM:
13:17:49 15       Q.  Can you answer my question?
13:17:50 16       A.  What's the question?
13:17:51 17       Q.  The question is:  Do you believe
13:17:53 18   in retrospect that this was a good business
13:17:56 19   decision?
13:17:58 20       A.  Well, until what happened to the
13:17:59 21   stock market it was good, but with the stock
13:18:03 22   market all taking a tumble, it ended up bad in
13:18:11 23   my opinion.  That's my opinion.
13:18:14 24       Q.  The next sentence is "each
13:18:16 25   director had an opportunity to express his
```

### 151

```
13:18:18  1   opinion as to the process and whether it was in
13:18:20  2   the best interest of the shareholders to
13:18:22  3   proceed."  Did I read that sentence correctly?
13:18:24  4       A.  Yes.
13:18:25  5       Q.  Did you express an opinion at this
13:18:26  6   meeting?
13:18:27  7       A.  I probably did, but I don't know
13:18:28  8   what I expressed, what my opinion was.
13:18:31  9       Q.  Okay.  Do you have any idea if it
13:18:32 10   was pro independence or pro sale?
13:18:34 11       A.  I don't know.
13:18:37 12       Q.  Okay.  Next sentence, "reflecting
13:18:38 13   on the initial intent of this process, Mr.
13:18:41 14   Hillebrand felt we had our number and moving to
13:18:45 15   the due diligence phase would not prove
13:18:48 16   beneficial."  Did I read that correctly?
13:18:51 17       A.  Yes.
13:18:51 18       Q.  What does it mean in that sentence
13:18:52 19   where it says Mr. Hillebrand felt, quote, we
13:18:56 20   had our number?
13:19:02 21       A.  I don't know what it means now.
13:19:09 22       Q.  All right.  The first part of that
13:19:10 23   sentence refers to "the initial intent of this
13:19:12 24   process."  Do you see that?
13:19:14 25       A.  The first sentence?
```

### 152

```
13:19:15  1       Q.  The first part of that sentence.
13:19:22  2       A.  Reflecting to the -- I do not know
13:19:40  3   what he meant by that.
13:19:44  4       Q.  What process is Mr. Hillebrand
13:19:48  5   talking about, as reflected in that sentence?
13:19:50  6       MR. BURKE:  Objection.  Calls for
13:19:50  7   speculation.  Asked and answered.
13:19:52  8       A.  I do not know.
13:19:55  9       Q.  Was there a process in place on or
13:19:58 10   about June 24th, 1999?
13:20:02 11       A.  I do not know.
13:20:07 12       Q.  Are you familiar with the phrase
13:20:08 13   due diligence phase?
13:20:18 14       A.  No.  Not in this instance, no.
13:20:24 15       Q.  Mr. Zoellner, these are OHSL Board
13:20:26 16   minutes, correct?
13:20:33 17       MR. BURKE:  We've established
13:20:33 18   that, counselor.  There's no need to be
13:20:33 19   argumentative with the witness.
13:20:33 20       MR. BRAUTIGAM:  I'm not being
13:20:35 21   argumentative.
13:20:35 22       MR. BURKE:  We don't need to --
13:20:37 23       MR. BRAUTIGAM:  Jim, I'm doing
13:20:38 24   fine.
13:20:39 25       MR. BURKE:  No, you're not.
```

**153**

| | | |
|---|---|---|
|13:20:40| 1| Please don't be argumentative. That's my|
|13:20:42| 2| request.|
|13:20:42| 3| BY MR. BRAUTIGAM:|
|13:20:44| 4|    Q. Mr. Zoellner, these are OHSL Board|
|13:20:46| 5| minutes --|
|13:20:46| 6|    MR. BURKE: We'll stipulate to|
|13:20:47| 7| that.|
|13:20:49| 8|    Q. -- is that correct?|
|13:20:50| 9|    MR. BURKE: You don't have to|
|13:20:50|10| answer that question.|
|13:20:53|11|    Q. And Mr. Zoellner, you were an OHSL|
|13:20:55|12| Board member at that time, too?|
|13:20:57|13|    MR. BURKE: We know that, too,|
|13:20:58|14| counsel. Asked and answered.|
|13:21:01|15|    MR. BRAUTIGAM: Jim, it's not time|
|13:21:02|16| for your deposition to be taken.|
|13:21:04|17|    MR. BURKE: You're being|
|13:21:06|18| argumentative. Just --|
|13:21:06|19| BY MR. BRAUTIGAM:|
|13:21:07|20|    Q. Mr. Zoellner, my question is: How|
|13:21:08|21| could you fulfill your fiduciary duties on the|
|13:21:10|22| OHSL Board and not be able to interpret the|
|13:21:14|23| Board minutes?|
|13:21:15|24|    MR. BURKE: Objection. Calls for|
|13:21:16|25| speculation. Calls for legal conclusion,|

**154**

|13:21:17| 1| irrelevant.|
|---|---|---|
|13:21:22| 2|    A. You know, I just don't recall all|
|13:21:24| 3| this. That's been years ago and I'm not up on|
|13:21:27| 4| everything like I should be. And it -- and|
|13:21:30| 5| it's just a matter of time that I can't recall|
|13:21:34| 6| all these different things.|
|13:21:38| 7|    Q. Okay. The next sentence is, "this|
|13:21:39| 8| view was shared by Mr. Hanauer, Herron and|
|13:21:44| 9| Zoellner as well." Do you see that?|
|13:21:53|10|    A. Yeah.|
|13:21:53|11|    Q. And that refers to the previous|
|13:21:55|12| sentence, meaning "reflecting on the initial|
|13:22:01|13| intent of this process, Mr. Hillebrand felt we|
|13:22:05|14| had our number and moving to the due diligence|
|13:22:07|15| phase would not prove beneficial."|
|13:22:09|16|    MR. BURKE: Is that a question?|
|13:22:11|17|    Q. Yeah, that's a question.|
|13:22:15|18|    MR. BURKE: Objection to form.|
|13:22:16|19| Mischaracterizes the document. You may answer|
|13:22:18|20| it.|
|13:22:18|21|    A. I don't know what they're|
|13:22:19|22| referring to there.|
|13:22:21|23|    Q. Okay. Mr. Zoellner, this is a|
|13:22:22|24| serious discussion taking place --|
|13:22:24|25|    A. Okay.|

**155**

|13:22:25| 1|    Q. -- on June 24th, 1999 about the|
|---|---|---|
|13:22:26| 2| direction of Oak Hills, correct?|
|13:22:28| 3|    A. Yes.|
|13:22:30| 4|    Q. And as reflected in these minutes,|
|13:22:31| 5| Mr. Hillebrand says, in substance, let's not|
|13:22:35| 6| move forward with the due diligence process.|
|13:22:39| 7| Is that fair?|
|13:22:39| 8|    MR. BURKE: Objection. That's not|
|13:22:39| 9| what the document says. He said he had no|
|13:22:43|10| recollection. Objection to the|
|13:22:44|11| mischaracterization of the record. Calls for|
|13:22:46|12| speculation. You may answer.|
|13:22:47|13|    A. I'm not familiar with that. I've|
|13:22:49|14| forgotten all about what that is.|
|13:22:52|15|    Q. Okay. Mr. Zoellner, were you in|
|13:22:56|16| favor of moving forward with the due diligence|
|13:22:59|17| phase?|
|13:23:00|18|    A. I do not know that.|
|13:23:01|19|    Q. Can you figure out --|
|13:23:02|20|    A. I don't know when -- I don't know|
|13:23:03|21| when I -- it should show up in the minutes|
|13:23:06|22| someplace where I did vote for -- to move|
|13:23:09|23| forward, but until I see that, I do not know.|
|13:23:14|24|    Q. Move forward with what?|
|13:23:16|25|    A. With the merger or a sale.|

**156**

|13:23:19| 1|    Q. Any merger or sale?|
|---|---|---|
|13:23:21| 2|    A. Well, with -- well, at that point,|
|13:23:23| 3| yes. We haven't decided on any particular one|
|13:23:26| 4| at this point.|
|13:23:28| 5|    Q. All right. Was your view on or|
|13:23:33| 6| about June 24th, 1999, pro sale or pro|
|13:23:37| 7| independence?|
|13:23:38| 8|    A. I, I do not know that without|
|13:23:40| 9| looking at the date in the minutes where I|
|13:23:44|10| approved the sale.|
|13:23:45|11|    Q. But Mr. Zoellner, we have the June|
|13:23:48|12| 24th, 1999 minutes.|
|13:23:50|13|    A. Yeah.|
|13:23:51|14|    Q. And isn't a fair reading of this|
|13:23:53|15| document that you're against moving forward|
|13:23:55|16| with the process?|
|13:23:56|17|    MR. BURKE: Objection. Asked and|
|13:23:57|18| answered. You can go ahead and answer again.|
|13:24:03|19|    A. At this point I don't know whether|
|13:24:04|20| I was for it or against it. I do not know.|
|13:24:07|21|    Q. Mr. Zoellner, could you read the|
|13:24:09|22| sentence that begins, "this view," please, out|
|13:24:13|23| loud?|
|13:24:13|24|    A. "This view was shared by Mr.|
|13:24:15|25| Hanauer, Herron and Zoellner as well."|

157

13:24:19  1    Q. Okay. Let me stop you right
13:24:21  2  there.
13:24:22  3    A. Okay.
13:24:24  4    Q. All right. On or about June 24th,
13:24:25  5  1999, was Mr. Hanauer in favor of moving
13:24:28  6  forward with the sale of OHSL?
13:24:31  7        MR. BURKE: Objection.
13:24:31  8  Foundation, calls for speculation. You may
13:24:33  9  answer.
13:24:33 10    A. I do not know at this point. I
13:24:37 11  would have to see in here where it says how we
13:24:41 12  voted. We should have minutes after this where
13:24:42 13  it shows how we voted, I think, because I don't
13:24:47 14  know from this.
13:24:48 15    Q. Mr. Zoellner, we're not there yet.
13:24:50 16  We're still on June 24th.
13:24:52 17    A. All right.
13:24:52 18    Q. And I understand that these
13:24:54 19  minutes do not reflect a formal vote, but they
13:24:56 20  do discuss an opportunity to express the
13:25:00 21  opinion of each director, correct?
13:25:02 22    A. Yes.
13:25:04 23    Q. Okay. Was Mr. Hanauer's opinion
13:25:05 24  on June 24th, 1999, at the regular meeting of
13:25:10 25  the OHSL directors that you attended, was it in

158

13:25:14  1  favor of independence, in favor of sale, or
13:25:17  2  something else?
13:25:20  3    A. What Ken Hanauer was? I don't
13:25:23  4  know what Ken Hanauer -- if I understand your
13:25:26  5  question, I don't know what Ken Hanauer was
13:25:27  6  thinking.
13:25:28  7    Q. You don't know what he was
13:25:29  8  thinking on June 24th, 1999, as reflected at
13:25:32  9  this meeting?
13:25:38 10        MR. BURKE: Objection. Asked and
13:25:38 11  answered.
13:25:38 12    A. I do not know what he --
13:25:39 13    Q. Okay. Next question, at the June
13:25:41 14  24th, 1999 regular meeting of the OHSL Board of
13:25:46 15  Directors, do you know what Mr. Herron's view
13:25:49 16  was with respect to pro sale, pro independence,
13:25:53 17  or something else?
13:25:58 18    A. I do not know. It's the matter of
13:26:01 19  a date again. At one time I knew he was, but I
13:26:04 20  don't know when, whether it was before this,
13:26:07 21  after it, or what.
13:26:08 22    Q. Mr. Zoellner, you said you knew he
13:26:10 23  was what?
13:26:11 24    A. He was against the sale.
13:26:13 25    Q. Mr. Herron?

159

13:26:14  1    A. Yes. At one -- and at one time he
13:26:17  2  changed, and I don't know when that time was
13:26:19  3  when he changed.
13:26:21  4    Q. Mr. Herron?
13:26:22  5    A. I thought he did.
13:26:25  6    Q. Okay.
13:26:25  7    A. I --
13:26:26  8    Q. Now let's talk about Mr.
13:26:28  9  Hillebrand. At the June 24th, 1999 regular
13:26:33 10  meeting of the OHSL directors that you
13:26:35 11  attended, what was Mr. Hillebrand's position
13:26:39 12  with respect to a proposed sale or proposed
13:26:42 13  independence?
13:26:44 14    A. Well, according to what the
13:26:45 15  minutes say here, he felt that our number was
13:26:50 16  up and it was -- that we should be doing
13:26:53 17  something, that we should move. I think it
13:26:57 18  said that there.
13:26:58 19    Q. Could I ask you to read that again
13:27:00 20  out loud and for the record?
13:27:03 21    A. Hillebrand felt we had our number
13:27:06 22  and moving to the due diligence phase would not
13:27:10 23  prove beneficial.
13:27:12 24    Q. Is that consistent with the
13:27:13 25  testimony you gave a minute ago?

160

13:27:19  1        MR. BURKE: Objection to form.
13:27:20  2    A. I, I -- what did I agree to
13:27:23  3  before? I'm sorry.
13:27:24  4    Q. Read back his --
13:27:26  5        MR. BURKE: No, no.
13:27:26  6    Q. -- previous answer.
13:27:26  7        (Record read by Reporter.)
13:27:45  8    A. Well, it didn't say that, did it?
13:27:49  9    Q. No, it didn't.
13:27:50 10    A. So I was mistaken --
13:27:52 11    Q. Okay.
13:27:52 12    A. -- there.
13:27:52 13    Q. So Mr. Hillebrand was against
13:27:55 14  moving forward toward a proposed sale, correct?
13:27:58 15    A. Yes. That's what it says in the
13:27:59 16  minutes.
13:28:00 17    Q. And it says Mr. Hanauer agreed
13:28:01 18  with Mr. Hillebrand, correct?
13:28:05 19        MR. BURKE: Objection.
13:28:05 20    A. That's what it says.
13:28:06 21    Q. Okay. And it says Mr. Herron
13:28:08 22  agreed with Mr. Hillebrand, correct?
13:28:10 23    A. Yes.
13:28:11 24    Q. And it says Mr. Zoellner, that's
13:28:12 25  you, agreed with that, correct?

161

| | | |
|---|---|---|
| 13:28:14 | 1 | A. Yes, yes. |
| 13:28:15 | 2 | Q. Now, putting the minutes aside for |
| 13:28:16 | 3 | a moment, is that consistent with your |
| 13:28:19 | 4 | recollection that in or about June of 1999, |
| 13:28:22 | 5 | that's how the Board was divided? |
| 13:28:24 | 6 | MR. BURKE: Objection. |
| 13:28:25 | 7 | Q. You have Hillebrand against sale, |
| 13:28:27 | 8 | Hanauer against sale, Herron against sale, and |
| 13:28:31 | 9 | Zoellner against sale; is that fair? |
| 13:28:34 | 10 | MR. BURKE: Objection. |
| 13:28:35 | 11 | Mischaracterizes the document. |
| 13:28:37 | 12 | Mischaracterizes prior testimony. Calls for |
| 13:28:39 | 13 | speculation and foundation. |
| 13:28:41 | 14 | MR. BRAUTIGAM: We're not talking |
| 13:28:42 | 15 | about the document anymore. |
| 13:28:44 | 16 | MR. BURKE: He's already told you |
| 13:28:45 | 17 | he has no recollection. So unless you're |
| 13:28:47 | 18 | talking about the document, the question has |
| 13:28:49 | 19 | been asked and answered. You may answer it. |
| 13:28:53 | 20 | A. I don't know. I don't remember |
| 13:28:55 | 21 | Bill Hillebrand being against it. |
| 13:28:55 | 22 | BY MR. BRAUTIGAM: |
| 13:28:58 | 23 | Q. Okay. But you do remember Mr. |
| 13:29:00 | 24 | Hanauer being against it, correct? |
| 13:29:01 | 25 | A. At one time or another. |

162

| | | |
|---|---|---|
| 13:29:05 | 1 | Q. Well, wait a second. Wasn't Mr. |
| 13:29:07 | 2 | Hanauer consistently against any sale of Oak |
| 13:29:10 | 3 | Hills up to and including June 24th, 1999? |
| 13:29:13 | 4 | A. I do not know. |
| 13:29:15 | 5 | Q. Wasn't Mr. Herron consistently |
| 13:29:17 | 6 | against any sale of Oak Hills up to and |
| 13:29:20 | 7 | including -- |
| 13:29:21 | 8 | A. I do not know -- |
| 13:29:22 | 9 | Q. Can I finish my question, please? |
| 13:29:24 | 10 | A. -- because of those dates. Pardon |
| 13:29:25 | 11 | me. |
| 13:29:25 | 12 | Q. Up to and including June 24th, |
| 13:29:27 | 13 | 1999? |
| 13:29:28 | 14 | A. I do not know. |
| 13:29:30 | 15 | Q. And weren't you against any |
| 13:29:32 | 16 | proposed sale of OHSL up to and including June |
| 13:29:36 | 17 | 24th, 1999? |
| 13:29:39 | 18 | MR. BURKE: Objection. Asked and |
| 13:29:40 | 19 | answered on at least ten occasions. |
| 13:29:41 | 20 | A. I do not remember. |
| 13:29:44 | 21 | Q. Okay. What was Mr. Brinker's |
| 13:29:45 | 22 | position in June of 1999? |
| 13:29:53 | 23 | A. I do not know. |
| 13:29:55 | 24 | Q. Okay. The last sentence of that |
| 13:29:55 | 25 | paragraph says "The chairman indicated the |

163

| | | |
|---|---|---|
| 13:29:57 | 1 | process would continue through the due |
| 13:29:59 | 2 | diligence phase." Do you see that? |
| 13:30:01 | 3 | A. The chairman. The last page? |
| 13:30:05 | 4 | Q. The last sentence of this |
| 13:30:06 | 5 | paragraph. |
| 13:30:07 | 6 | A. Oh, up here. What was the |
| 13:30:15 | 7 | question? |
| 13:30:17 | 8 | Q. Do you see that sentence, the -- |
| 13:30:19 | 9 | A. Yes, I do. I see the -- |
| 13:30:21 | 10 | Q. Okay. Can you interpret that |
| 13:30:24 | 11 | sentence for me? What happened that is |
| 13:30:27 | 12 | reflected in that sentence? |
| 13:30:28 | 13 | MR. BURKE: Objection to form. |
| 13:30:29 | 14 | Calls for speculation. Document speaks for |
| 13:30:31 | 15 | itself. |
| 13:30:32 | 16 | A. I do not remember. |
| 13:30:34 | 17 | Q. Okay. Mr. Zoellner, June 24th, |
| 13:30:37 | 18 | 1999, special -- regular meeting of the OHSL |
| 13:30:42 | 19 | Board, correct? |
| 13:30:43 | 20 | MR. BURKE: We've established |
| 13:30:44 | 21 | that, counsel, now on about ten occasions. |
| 13:30:46 | 22 | Please just ask a question. That's not at |
| 13:30:48 | 23 | issue. We've said that. Just ask your |
| 13:30:50 | 24 | question. |
| 13:30:51 | 25 | MR. BRAUTIGAM: Jim, the witness |

164

| | | |
|---|---|---|
| 13:30:52 | 1 | seems confused, I'm trying to focus him, okay? |
| 13:30:55 | 2 | MR. BURKE: Okay. |
| 13:30:55 | 3 | BY MR. BRAUTIGAM: |
| 13:30:56 | 4 | Q. Mr. Zoellner, you're at the |
| 13:30:57 | 5 | meeting, correct? I think the only |
| 13:30:59 | 6 | interpretation of these minutes is that you |
| 13:31:06 | 7 | have four directors against moving forward; is |
| 13:31:06 | 8 | that fair? |
| 13:31:06 | 9 | MR. BURKE: Move to strike. |
| 13:31:08 | 10 | MR. MOORE: Object to that |
| 13:31:08 | 11 | characterization. |
| 13:31:08 | 12 | MR. BURKE: You have no right to |
| 13:31:09 | 13 | characterize the document. You can ask him for |
| 13:31:10 | 14 | his best recollection. He's given you his best |
| 13:31:13 | 15 | recollection on numerous occasions, Michael, |
| 13:31:14 | 16 | and I think you're badgering the witness. Go |
| 13:31:17 | 17 | ahead. Can you ask the question? |
| 13:31:19 | 18 | MR. BRAUTIGAM: I've already asked |
| 13:31:19 | 19 | it. |
| 13:31:21 | 20 | MR. BURKE: And I objected to it. |
| 13:31:22 | 21 | MR. BRAUTIGAM: Fine. Jim, we |
| 13:31:22 | 22 | don't need speaking objections. Just object. |
| 13:31:22 | 23 | MR. BURKE: I will state my |
| 13:31:25 | 24 | objections as I think I should. |
| 13:31:25 | 25 | MR. BRAUTIGAM: Do what you have |

## 165

```
13:31:26  1   to do. Can we have the question read back,
13:31:28  2   please?
13:31:28  3              (Record read by Reporter.)
13:31:43  4              MR. BURKE: Objection.
13:31:44  5              MR. MOORE: Objection to
13:31:44  6   characterization.
13:31:45  7              MR. BURKE: Mischaracterizes the
13:31:46  8   document. Mischaracterizes prior testimony.
13:31:48  9   You may answer.
13:31:56 10        A.   That said there were four against
13:31:58 11   it? I do not remember that.
13:32:12 12        Q.   Okay. Do you remember Mr. Brinker
13:32:14 13   saying we're going to move forward anyway?
13:32:16 14        A.   No, I don't.
13:32:18 15        Q.   Is that reflected in these
13:32:19 16   minutes?
13:32:20 17              MR. BURKE: Objection.
13:32:22 18        A.   I don't know.
13:32:24 19        Q.   Okay. What does the sentence mean
13:32:25 20   to you, "The chairman indicated the process
13:32:27 21   would continue through the due diligence
13:32:29 22   phase"?
13:32:45 23        A.   I really don't know what that
13:32:47 24   means.
13:32:49 25        Q.   What happened after this meeting?
```

## 166

```
13:32:52  1              MR. BURKE: Objection to form,
13:32:53  2   vague.
13:32:54  3        A.   I do not know.
13:32:57  4        Q.   Do you know what your position was
13:33:00  5   on or about June 24th, 1999?
13:33:03  6              MR. BURKE: Objection. Asked and
13:33:04  7   answered.
13:33:05  8        A.   I do not know.
13:33:15  9        Q.   Please take a look at Zoellner
13:33:18 10   Deposition Exhibit 17. Okay. Mr. Zoellner,
13:33:57 11   have you seen these minutes before?
13:33:58 12        A.   Yes.
13:33:59 13        Q.   And do they reflect the special
13:34:00 14   meeting of the OHSL Financial Corporation Board
13:34:04 15   of Directors on July 22nd, 1999?
13:34:06 16        A.   Yeah, as much as I've read of it.
13:34:08 17        Q.   And did you attend this meeting?
13:34:10 18              MR. BURKE: Read through the rest
13:34:11 19   of it, Howard. He'll be asking you questions
13:34:14 20   so you might as well read the document first.
13:35:04 21        A.   Okay.
13:35:04 22        Q.   Now, this reflects a special
13:35:06 23   meeting, correct?
13:35:07 24        A.   Yes.
13:35:07 25        Q.   And why was this special meeting
```

## 167

```
13:35:09  1   called?
13:35:09  2        A.   This was called to get more
13:35:10  3   information on the -- whether we should sell.
13:35:16  4        Q.   Sell to anyone or sell to
13:35:17  5   Provident?
13:35:34  6        A.   Oh, according to the minutes there
13:35:36  7   it was Provident.
13:35:40  8        Q.   Okay. And what information did
13:35:45  9   you need to make this determination? We've
13:35:48 10   talked about getting more information. What
13:35:50 11   information did you need?
13:35:51 12              MR. BURKE: Objection to form.
13:35:53 13        A.   I think the minutes, they
13:35:56 14   discussed the offer. And also the employees,
13:36:04 15   the benefits of the employees. I think it said
13:36:07 16   that in the minutes after I read it.
13:36:10 17        Q.   Okay. Where does it say that in
13:36:11 18   the minutes?
13:36:29 19        A.   It says here in the second to the
13:36:31 20   last paragraph, Mr. Roe pointed out that a
13:36:35 21   decision needed to be reached on the employment
13:36:39 22   agreements for management.
13:36:41 23        Q.   Okay. Does that refer to all of
13:36:43 24   the employees?
13:36:46 25        A.   Well, when I read it the first
```

## 168

```
13:36:48  1   time I thought so, but now when I read it this
13:36:50  2   time, it talks about management, so it probably
13:36:55  3   wasn't -- the point was for management, I
13:36:59  4   guess, at that time.
13:37:00  5        Q.   And who was management at that
13:37:01  6   time?
13:37:02  7        A.   Ken Hanauer and the CFO. It's
13:37:26  8   terrible, I can't think of the guy's name. I,
13:37:36  9   I called it the management team, which is Ken
13:37:39 10   Hanauer and -- oh, it had -- their names were
13:37:43 11   someplace else there. I can't recall all their
13:37:47 12   names.
13:37:47 13        Q.   Okay. Mr. Zoellner --
13:37:49 14        A.   I can't think of their names now.
13:37:51 15        Q.   Did McDonald Investments prepare a
13:37:56 16   book for the Board to review?
13:38:06 17        A.   I do not remember whether it was
13:38:07 18   before that meeting, for that meeting, or after
13:38:11 19   that meeting, but they did prepare a book.
13:38:13 20        Q.   And did you receive that book?
13:38:15 21        A.   Yes.
13:38:15 22        Q.   And where is that book now?
13:38:16 23        A.   In shreds.
13:38:17 24        Q.   Okay. Do you remember anything of
13:38:20 25   substance about that presentation?
```

169

```
13:38:21  1        A.  No, I don't.
13:38:28  2        Q.  Okay.  Do you see the fourth
13:38:30  3   paragraph beginning "The Board concluded that
13:38:33  4   the offer from Provident Financial was the best
13:38:35  5   alternative for enhancing the value of OHSL
13:38:39  6   stock."  Do you see that?
13:38:41  7        A.  Yeah.
13:38:41  8        Q.  And my question is, alternative to
13:38:43  9   what?
13:39:13 10        A.  The way I read that, the best way
13:39:16 11   they could enhance the value of OHSL's stock is
13:39:19 12   by merging with Provident.
13:39:21 13        Q.  And did you believe that on July
13:39:22 14   22nd, 1999?
13:39:25 15        A.  I would probably think so.
13:39:26 16        Q.  And did you believe that before
13:39:27 17   July 22nd, 1999?
13:39:38 18        A.  I don't remember.
13:39:38 19        Q.  Okay.  Mr. Zoellner, you've talked
13:39:40 20   about how you changed your vote, correct?
13:39:41 21        A.  Yes.
13:39:42 22        Q.  And I believe this is the day,
13:39:43 23   July 22nd.
13:39:45 24        A.  I do not know what day I changed.
13:39:47 25        Q.  Okay.  Do you know why you changed
```

170

```
13:39:49  1   your vote?
13:39:49  2        A.  Because it was in the best
13:39:52  3   interest of the stockholders.
13:39:53  4        Q.  Okay.  And was that based on
13:39:55  5   objective or subjective factors or some
13:39:58  6   combination?
13:39:59  7        A.  Well, the best financially for the
13:40:01  8   stock.
13:40:02  9        Q.  Okay.  What went into your
13:40:04 10   analysis to come to that conclusion?
13:40:05 11        A.  Gee, I don't know.  I don't know
13:40:08 12   what I thought at that time.
13:40:11 13        Q.  Do you remember when you changed
13:40:13 14   for the first time?
13:40:15 15        MR. BURKE:  Objection.  Asked and
13:40:15 16   answered.
13:40:16 17        A.  No, I don't remember.
13:40:18 18        Q.  Is it possible that you just gave
13:40:20 19   up, you were sick of fighting?
13:40:26 20        A.  No, no.
13:40:26 21        Q.  You know, that's what Ken Hanauer
13:40:26 22   testified to.
13:40:26 23        MR. BURKE:  That's an absolute
13:40:28 24   mischaracterization of the record and you don't
13:40:28 25   have to accept that.
```

171

```
13:40:29  1        MR. BRAUTIGAM:  Actually I'll show
13:40:30  2   him it later.
13:40:31  3        MR. BURKE:  Well, if you want to
13:40:32  4   show him something, that's fine.  Mr. Zoellner
13:40:34  5   can answer your questions, but not your
13:40:36  6   characterizations of the testimony.  Don't
13:40:38  7   answer that question, Howard.
13:40:39  8        MR. BRAUTIGAM:  Can I have it read
13:40:40  9   back, please?
13:40:40 10        (Record read by Reporter.)
13:40:54 11        MR. BURKE:  What is what Ken
13:40:54 12   Hanauer testified to?
13:40:56 13        MR. BRAUTIGAM:  That he just gave
13:40:56 14   us.
13:40:57 15        MR. BURKE:  That Mr. Zoellner --
13:40:58 16        MR. BRAUTIGAM:  No, that Mr.
13:40:59 17   Hanauer gave us.
13:41:00 18        MR. BURKE:  The question was
13:41:00 19   misleading.
13:41:02 20        MR. BRAUTIGAM:  I didn't mean to
13:41:02 21   mislead.
13:41:03 22        MR. BURKE:  Go ahead and answer
13:41:04 23   the question.
13:41:05 24        MR. BRAUTIGAM:  Jim, it was a very
13:41:06 25   good objection.
```

172

```
13:41:07  1        A.  No, I didn't give up and I didn't
13:41:10  2   think Ken gave up, either, but that's all
13:41:13  3   right.  That has nothing to do with me, what
13:41:14  4   Ken thought, I guess.
13:41:14  5   BY MR. BRAUTIGAM:
13:41:30  6        Q.  Okay.  We'll just hold this for
13:41:32  7   now.  So on July 22nd, 1999, you felt that the
13:41:38  8   Provident transaction represented the best way
13:41:43  9   to maximize OHSL shareholder value; is that
13:41:46 10   correct?
13:41:46 11        A.  That is correct.
13:41:47 12        Q.  And that was a change from your
13:41:48 13   previous thinking, but you don't know when that
13:41:51 14   change took place?
13:41:51 15        A.  I do not know when that changed.
13:41:54 16        Q.  And aside from what you've
13:41:55 17   previously testified to, you can't articulate
13:41:58 18   the reasons?
13:41:59 19        A.  Do what?
13:42:00 20        Q.  You can't articulate the reasons
13:42:02 21   for this change?
13:42:03 22        MR. BURKE:  Objection.  Asked and
13:42:04 23   answered.
13:42:05 24        A.  I don't know what the reasons
13:42:05 25   were, no, not at this time.
```

### Page 173

```
13:42:08  1      Q.  Now, did it surprise you that Mr.
13:42:10  2  Herron voted against the continued negotiations
13:42:14  3  at this meeting?
13:42:19  4      A.  I don't know.  I don't know.
13:42:21  5      Q.  Did it surprise you that Mr.
13:42:23  6  Hanauer abstained?
13:42:26  7      A.  I didn't know he abstained.
13:42:29  8      Q.  You didn't know he abstained?
13:42:30  9      A.  But it's in the letter that he
13:42:31 10  did -- Hanauer abstained from the vote, so I --
13:42:38 11  nothing surprised me really.  Everybody is
13:42:41 12  entitled to their opinion.
13:42:46 13      Q.  Did it surprise you that Mr.
13:42:48 14  Herron resigned five days later, effective July
13:42:51 15  30th?
13:42:52 16          MR. BURKE:  Objection.
13:42:52 17      A.  Well, that -- I wouldn't
13:42:54 18  necessarily -- it's all according to the
13:43:05 19  definition of surprise.  I guess I'd say I was
13:43:13 20  surprised that Ken did.
13:43:16 21          MR. BURKE:  That what?
13:43:17 22      A.  Surprised that, that Ken -- what
13:43:24 23  was the question?
13:43:25 24      Q.  We were talking about Mr. Herron's
13:43:26 25  resignation.
```

### Page 174

```
13:43:28  1      A.  But Ken was in there, too?
13:43:30  2          MR. BURKE:  No, they're separate
13:43:31  3  questions.  Let's start again.
13:43:33  4      A.  Okay.
13:43:34  5      Q.  Okay.
13:43:34  6          MR. BURKE:  Let's take five
13:43:35  7  minutes.
13:43:35  8              (Brief recess.)
13:46:54  9          (Record read by Reporter.)
13:46:54 10      Q.  Okay.  New question.  Were you
13:46:56 11  surprised that Mr. Herron resigned on July
13:46:59 12  27th, 1999, effective July 30th?
13:47:02 13      A.  Yes, I was surprised with Ken --
13:47:04 14  or Tom.
13:47:06 15      Q.  And why were you surprised?
13:47:07 16      A.  Because he was active and a good
13:47:10 17  man.  I liked him and -- a friend of yours that
13:47:14 18  decides that he's going to, well, for business
13:47:19 19  reasons -- well, I'll -- that he said he left.
13:47:28 20      Q.  Did you ever learn that Mr. Herron
13:47:29 21  was resigning at least in part in protest of
13:47:32 22  the merger between --
13:47:33 23      A.  No, I never knew that.
13:47:35 24      Q.  Can I finish my question, please?
13:47:36 25      A.  Oh, okay.
```

### Page 175

```
13:47:37  1      Q.  -- between OHSL and Provident?
13:47:41  2          MR. BURKE:  You'd better reread
13:47:41  3  it.  That was an incomplete question.
13:47:44  4      Q.  Okay.
13:47:44  5          MR. BURKE:  Let's start again.
13:47:48  6      Q.  Did you ever learn that Mr. Herron
13:47:50  7  had resigned at least in part because of his
13:47:53  8  disagreement with the direction that the
13:47:55  9  company was going in with respect to the merger
13:47:57 10  with Provident?
13:48:01 11      A.  No.
13:48:07 12      Q.  Okay.  Would you turn to -- this
13:49:26 13  is from Tom Herron's deposition, and he's --
13:49:30 14  it's on page 33.  He's talking about the phone
13:49:35 15  call he made on or about July 27th, 1999 to the
13:49:39 16  directors.  And this is what he has to say to
13:49:39 17  you --
13:49:44 18          MR. BURKE:  Let me have that
13:49:45 19  volume one.  Let me see where you're starting.
13:49:54 20  I'll stand behind you if that's okay.
13:49:56 21      Q.  That's fine.  And I asked Mr.
13:49:58 22  Herron:  Were you able to reach Howard Zoellner
13:50:00 23  that night?
13:50:01 24      Answer:  Yes, I was.
13:50:03 25      Question -- I'm asking Mr. Herron:
```

### Page 176

```
13:50:04  1  What did you say to Howard and what did he say
13:50:07  2  to you?
13:50:07  3      Answer:  Same thing.  It was the
13:50:11  4  same basic content as the other phone calls.
13:50:13  5  And Howard was probably the most affected by
13:50:17  6  it.  And he expressed that he was sorry that I
13:50:20  7  was doing this, but understood.  And also used
13:50:22  8  the word honorable.
13:50:24  9      Question:  Was there anything
13:50:26 10  extra in the phone conversation between you and
13:50:28 11  Mr. Zoellner, because previously, at least for
13:50:32 12  a time, you and Mr. Zoellner had been on the
13:50:34 13  same side, opposing the transaction.
13:50:37 14      And Mr. Burke says objection to
13:50:39 15  the form.
13:50:39 16      And Mr. Herron answers:  He, as he
13:50:42 17  did before meetings, expressed his disbelief we
13:50:45 18  had gotten this far.
13:50:46 19      Question:  Do you remember what
13:50:53 20  words he used?
13:50:53 21      Answer:  I can't believe that
13:50:53 22  we've gotten this far.
13:50:54 23      And what, if anything, did you say
13:50:57 24  in response?
13:50:57 25      Answer:  Sorry, Howard, that's
```

**177**

```
13:51:00  1  something the majority of the Board apparently
13:51:02  2  wants.
13:51:03  3              Does that refresh your
13:51:05  4  recollection with respect to your conversation
13:51:07  5  with Mr. Herron?
13:51:08  6      A.  Some of it.
13:51:13  7      Q.  Okay.  Do you remember using the
13:51:14  8  word "honorable" now?
13:51:15  9      A.  No, I don't remember using that.
13:51:17 10      Q.  Do you remember questioning how we
13:51:20 11  had gotten that far?
13:51:21 12      A.  No.  I don't remember that,
13:51:22 13  either.
13:51:23 14      Q.  Okay.  How was your recollection
13:51:24 15  refreshed by my reading that?
13:51:26 16      A.  Well, that he had called me and
13:51:31 17  that I said that he shouldn't leave, he should
13:51:34 18  stay with us, we'd like it if he would, you're
13:51:38 19  a good man and all of those good things.  And
13:51:41 20  that was about the extent of it, that I was
13:51:43 21  sorry to see him make that decision.
13:51:46 22      Q.  But you understood that he was
13:51:47 23  making the decision at least in part --
13:51:49 24      A.  No, I don't know what he was
13:51:51 25  making it in part.
```

**178**

```
13:51:54  1      Q.  Excuse me, can I finish my
13:51:55  2  question?
13:51:55  3      A.  I'm sorry.  I've got to take it
13:51:57  4  easy.
13:51:58  5          MR. BURKE:  You have answered it
13:51:58  6  several times, Howard, so don't worry about it.
13:52:02  7      A.  I have to hold off here.
13:52:03  8      Q.  -- at least in part because he
13:52:04  9  disagreed with the merger?
13:52:06 10          MR. BURKE:  Objection.  Asked and
13:52:07 11  answered.  Mischaracterizes prior testimony.
13:52:09 12  You may answer.
13:52:09 13      A.  I don't know.
13:52:10 14      Q.  He didn't tell you that?
13:52:11 15      A.  I don't know.  I don't recollect
13:52:12 16  that.
13:52:15 17      Q.  Well, you knew he was against the
13:52:17 18  transaction, correct?
13:52:18 19          MR. BURKE:  Objection.  Asked and
13:52:21 20  answered.
13:52:21 21      A.  No.  All the phone call was was
13:52:26 22  that he was leaving, he wasn't going to run for
13:52:29 23  the Board.
13:52:30 24      Q.  Excuse me, what do you mean, "run
13:52:31 25  for the Board"?
```

**179**

```
13:52:32  1      A.  That he wasn't -- well, he was up
13:52:34  2  to run for the Board.
13:52:36  3      Q.  Actually he wasn't.
13:52:37  4          MR. BURKE:  Wait.  Please let the
13:52:39  5  witness finish.
13:52:40  6      Q.  Okay, fine.
13:52:44  7          MR. BURKE:  You know, every time
13:52:46  8  that happens, we sort of lose our track, so I
13:52:49  9  don't know what the question is right now.
13:52:49 10          (Record read by Reporter.)
13:53:19 11  BY MR. BRAUTIGAM:
13:53:19 12      Q.  Mr. Zoellner, please look at
13:53:21 13  Zoellner Deposition Exhibit 17.  And if you
13:53:24 14  look at the fourth paragraph, it says Mr.
13:53:27 15  Herron voted against the motion, correct?
13:53:36 16      A.  One, two, three, four.  All right,
13:53:51 17  I've got it.
13:53:52 18      Q.  And the motions mean --
13:53:54 19          MR. BURKE:  Wait, wait.
13:53:55 20      A.  Motion carried with Mr. Herron
13:53:57 21  voting against the motion and Mr. Hanauer
13:54:01 22  abstaining from the vote.
13:54:03 23      Q.  And the motion was to continue
13:54:05 24  negotiations with Provident, correct?
13:54:08 25          MR. BURKE:  Objection.  Document
```

**180**

```
13:54:09  1  speaks for itself.  You may answer.
13:54:11  2      A.  Yes, that's what it says.
13:54:16  3      Q.  And Mr. Herron was against moving
13:54:19  4  forward with continued negotiations, correct?
13:54:22  5          MR. BURKE:  Objection.  Document
13:54:23  6  speaks for itself.
13:54:29  7      A.  What was that question again?  I'm
13:54:30  8  sorry, my train of thought is --
13:54:34  9      Q.  Mr. Herron was against continued
13:54:35 10  negotiations with Provident, correct?
13:54:38 11      A.  It says in the minutes that he
13:54:39 12  voted against the motion, so I guess that's
13:54:41 13  true.
13:54:41 14      Q.  And then five days later he
13:54:44 15  resigned, correct?
13:54:45 16      A.  I don't know about five days, but
13:54:46 17  he did resign.
13:54:47 18      Q.  Well, let's do the math.  This is
13:54:50 19  July 22nd.
13:54:51 20      A.  Um-hmm.
13:54:52 21      Q.  That's the day Mr. Herron voted
13:54:54 22  against continued negotiations, correct?
13:54:56 23      A.  Yes.
13:54:57 24      Q.  And this is July 27th?
13:55:00 25      A.  27th, so it's five days later,
```

13:55:02  1  yes.
13:55:06  2          Q.  And it was no secret that Mr.
13:55:08  3  Herron was opposed to this proposed sale of
13:55:12  4  OHSL all along, correct?
13:55:16  5          MR. BURKE:  Objection.
13:55:16  6  Argumentative, mischaracterizes prior
13:55:18  7  testimony.  Asked and answered.
13:55:19  8          A.  Yes, I knew.
13:55:21  9          Q.  And even though you wanted Mr.
13:55:24 10  Herron to stay on the Board because he was a
13:55:26 11  good guy, you understood that it was a
13:55:30 12  principled decision that he was making in
13:55:32 13  resigning, correct?
13:55:34 14          MR. BURKE:  Objection.  I don't
13:55:35 15  know what you mean by "a principled decision."
13:55:39 16  You may answer.
13:55:40 17          A.  From what I remember, his
13:55:42 18  resigning was due to business, that he would
13:55:45 19  have to be going to Brazil more, that he
13:55:51 20  wouldn't be able to put the time in.  That's
13:55:53 21  the reason that sticks with me.
13:55:57 22          Q.  Actually his testimony is directly
13:55:59 23  contrary to that.
13:56:00 24          MR. BURKE:  Objection.  Wait a
13:56:00 25  minute.

13:56:03  1          A.  No.
13:56:03  2          MR. BURKE:  You don't have to
13:56:03  3  answer with respect to his characterization of
13:56:06  4  testimony.
13:56:13  5          Q.  Okay.  Page 61 of Mr. Herron's
13:56:18  6  deposition.  Let's mark this as the next
13:56:23  7  exhibit, please.  This will be marked as
13:56:23  8  Zoellner Deposition Exhibit 24.
13:56:47  9          Let me direct your attention to
13:56:48 10  page 61 up here.  This is Mr. Herron's
13:56:51 11  deposition testimony.  And we started Mr.
13:56:53 12  Herron on the day of the World Trade Center
13:56:57 13  event and then we stopped and continued ten
13:56:59 14  days later, so this is volume two.
13:57:01 15          Now, during that time Mr. Herron
13:57:04 16  reflected on his testimony and he made some
13:57:06 17  corrections and this is one of the corrections.
13:57:08 18          And I asked the question:  Okay,
13:57:12 19  please continue.
13:57:16 20          And Mr. Herron's answer is:
13:57:19 21  Fairness on the grounds of completeness and
13:57:23 22  accuracy.  Regarding page 30, line -- the
13:57:30 23  answer beginning with line eight, the question
13:57:30 24  was had I resigned in part in protest.  Being
13:57:32 25  from the 1960s, my immediate image of protest

13:57:34  1  is something a little more violent than what I
13:57:37  2  was involved with here.  Protest, of course, is
13:57:39  3  just an expression of disapproval.  And in that
13:57:43  4  sense, I certainly resign in protest.
13:57:46  5          Do you see that?
13:57:47  6          A.  Yeah, I see that.
13:57:48  7          Q.  And is this the first time that
13:57:50  8  you learned that Mr. Herron resigned in part in
13:57:54  9  protest of the decision to go forward with the
13:57:56 10  merger with Provident?
13:57:58 11          MR. BURKE:  Objection.  Counsel,
13:57:59 12  you've shown him a document that he's never
13:58:01 13  seen before.  It's a deposition that he cannot
13:58:03 14  place in context, and then you just at the end
13:58:06 15  mischaracterized the testimony.  It doesn't say
13:58:09 16  anything about in protest of anything.  I think
13:58:11 17  that's a misleading question and I object to
13:58:13 18  form.
13:58:14 19          MR. BRAUTIGAM:  Jim, I did the
13:58:15 20  best I could.
13:58:16 21          MR. BURKE:  It calls for
13:58:16 22  speculation.
13:58:16 23          MR. BRAUTIGAM:  We don't need
13:58:18 24  speaking objections.
13:58:19 25          MR. BURKE:  It doesn't say what

13:58:20  1  you just said it says.  That's my objection.
13:58:24  2          MR. BRAUTIGAM:  Okay.
13:58:24  3          MR. BURKE:  You can answer, Mr.
13:58:24  4  Zoellner, if you understand the question.
13:58:26  5          THE WITNESS:  What's the question?
13:58:26  6  BY MR. BRAUTIGAM:
13:58:27  7          Q.  Is this the first you learned that
13:58:28  8  Mr. Herron resigned at least in part in
13:58:31  9  protest?
13:58:33 10          MR. BURKE:  Objection.  Calls for
13:58:35 11  speculation.  You may answer.
13:58:40 12          A.  No, I knew he was against it, but
13:58:43 13  I didn't realize he was in protest of it.  What
13:58:49 14  stuck with me was that he was going to take on
13:58:52 15  more responsibility with his job, which is in
13:58:56 16  South America.  He wasn't completely in favor
13:59:00 17  of doing anything, but I don't know about
13:59:03 18  protest.
13:59:04 19          Q.  He wasn't -- you said he wasn't
13:59:07 20  completely in favor of doing anything.  In
13:59:08 21  fact, he was completely against a merger with
13:59:10 22  Provident, correct?
13:59:12 23          MR. BURKE:  Objection.
13:59:13 24  Mischaracterizes the prior testimony.  You may
13:59:15 25  answer.

### 185

13:59:15  1    A.  I can't say that he was completely
13:59:17  2  against it, no.
13:59:18  3    Q.  Okay.  Let's take the July 22nd,
13:59:21  4  1999 minutes.  Mr. Herron voted against
13:59:25  5  continued negotiations, correct?
13:59:27  6         MR. BURKE:  We've already
13:59:27  7  established that, counsel, on about a dozen
13:59:30  8  occasions.  What's the question?
13:59:33  9    Q.  Correct?
13:59:34 10         MR. BURKE:  The document speaks
13:59:34 11  for itself, counsel.  It says that.
13:59:37 12         MR. BRAUTIGAM:  Jim, I'm really
13:59:38 13  doing okay, I don't need your speaking
13:59:39 14  objections.  We're doing fine.  A little bit --
13:59:44 15         MR. BURKE:  Mike, my objection is
13:59:45 16  that --
13:59:46 17         MR. BRAUTIGAM:  Jim, I don't need
13:59:46 18  your help.
13:59:47 19         MR. BURKE:  We don't need to ask
13:59:48 20  the same question over and over again.  It's
13:59:51 21  prolonging the deposition unnecessarily.
13:59:54 22         MR. BRAUTIGAM:  Jim, I've got my
13:59:55 23  seven hours and I'm going to make use of it.
13:59:55 24  BY MR. BRAUTIGAM:
13:59:57 25    Q.  Mr. Zoellner, there's a question

### 186

14:00:00  1  pending.  The minutes for July 22nd, 1999
14:00:03  2  showed Mr. Herron was against the transaction.
14:00:06  3         MR. BURKE:  Objection.
14:00:06  4         MR. MOORE:  Objection.
14:00:07  5         MR. BURKE:  Mischaracterizes prior
14:00:09  6  testimony.  That's not what he said.  You may
14:00:12  7  answer.
14:00:13  8    A.  According to these minutes he did
14:00:14  9  vote against it.  That's all I know.
14:00:16 10    Q.  And the minutes of June 24th,
14:00:19 11  1999, although it doesn't reflect a formal
14:00:21 12  vote, also show that Mr. Herron was against the
14:00:24 13  transaction, correct?
14:00:26 14         MR. BURKE:  Objection.
14:00:28 15  Mischaracterizes the document.
14:00:29 16    Q.  Correct?
14:00:29 17    A.  If the minutes say so, yes.
14:00:31 18    Q.  Well, take a look at it.  It's
14:00:32 19  Zoellner 16 and it's on the second page, first
14:00:37 20  full paragraph.
14:00:41 21    A.  Which paragraph?
14:00:42 22    Q.  Second page, top paragraph.
14:00:44 23    A.  Oh, second page.
14:00:51 24         MR. BURKE:  And then the read the
14:00:54 25  question back after he reads it, please.

### 187

14:01:04  1    A.  Yes, we --
14:01:05  2         MR. BURKE:  No, no, listen to the
14:01:07  3  question.
14:01:27  4    Q.  Mr. Zoellner, the June 24th, 1999
14:01:30  5  minutes reflect that although no formal vote
14:01:32  6  was taken, when the directors were asked to
14:01:34  7  express their opinion, Mr. Herron was against
14:01:38  8  the sale of Oak Hills?
14:01:39  9         MR. BURKE:  Objection.
14:01:40 10  Mischaracterizes the document.  You may answer.
14:01:46 11    A.  Yes, the minutes say so here.
14:01:48 12    Q.  Okay.  Was there ever a time that
14:01:50 13  Mr. Herron was in favor of the sale of Oak
14:01:53 14  Hills?
14:01:54 15    A.  I do not know that.
14:02:01 16    Q.  Okay.  Let's take a look at the
14:02:02 17  next exhibit, Zoellner 18.  Okay.  These are
14:02:10 18  the July 23rd, 1999 minutes of the regular
14:02:13 19  meeting of OHSL Financial Corporation, correct?
14:03:19 20  Is that correct?
14:03:19 21    A.  Yes.
14:03:20 22    Q.  Okay.
14:03:20 23    A.  I was there at the meeting.
14:03:23 24    Q.  Okay.  Was there any discussion
14:03:24 25  about the previous day's vote at this meeting?

### 188

14:03:31  1    A.  I don't remember.
14:03:33  2    Q.  Do you see in the third paragraph
14:03:34  3  it says MUC?
14:03:37  4    A.  One, two, three -- motion
14:03:40  5  unanimously carried.  The minutes of the 24th
14:03:47  6  special meeting of the Board of Directors
14:03:48  7  were -- upon a motion -- let's see, one, two,
14:03:56  8  three, four, five, six, seven, eight -- yeah,
14:03:59  9  they were all there, so that --
14:04:02 10         MR. BURKE:  Howard, wait for a
14:04:03 11  question.
14:04:04 12    A.  Okay.
14:04:05 13    Q.  The question was, do you see where
14:04:06 14  it says MUC?
14:04:07 15    A.  Yes.
14:04:07 16    Q.  And you said that means motion
14:04:09 17  unanimously carried, correct?
14:04:15 18    A.  Yes.
14:04:15 19    Q.  And that means that there were
14:04:15 20  eight directors there and eight directors voted
14:04:15 21  in favor of that, correct?
14:04:15 22    A.  Um-hmm.
14:04:17 23         MR. BURKE:  Objection.  Calls for
14:04:17 24  speculation.  You may answer.
14:04:19 25    A.  That -- the minutes say that the

189

```
14:04:22  1  minutes of the 24th were approved unanimously.
14:04:26  2  That is true.
14:04:28  3       Q.  Okay.  And unanimously means
14:04:31  4  that --
14:04:32  5       A.  All eight of them approved the
14:04:34  6  minutes.
14:04:35  7       Q.  Right, okay.
14:04:36  8       A.  Yeah.
14:04:36  9       Q.  Because if all eight of them did
14:04:38 10  not approve the minutes, it wouldn't be
14:04:40 11  unanimous?
14:04:40 12       A.  That's true.
14:04:41 13            MR. BURKE:  Objection.
14:04:43 14       Q.  That's true?  What was your
14:04:44 15  answer, Mr. Zoellner?
14:04:45 16       A.  That's true.
14:04:47 17       Q.  Okay.  Do you remember anything
14:04:48 18  about the July 23rd, 1999 regular meeting,
14:04:53 19  independent of the document?
14:04:57 20       A.  Oh, this is refreshing my memory
14:05:03 21  about the discussion taking place on senior
14:05:05 22  management, which I was referring to before.
14:05:09 23       Q.  Okay.  And what was that
14:05:11 24  discussion?
14:05:13 25       A.  What I was referring to, the --
```

190

```
14:05:15  1  they were talking to Provident about the --
14:05:19  2  what senior management would get as far as the
14:05:21  3  salary or that if they stayed or left or that.
14:05:25  4       Q.  And this is July of 1999, correct?
14:05:28  5       A.  This is July 23rd, '99, yes.
14:05:31  6       Q.  So these change of control
14:05:33  7  contracts between OHSL and senior management
14:05:36  8  were not entered into in June of 1999, correct?
14:05:43  9            MR. BURKE:  Objection.  Calls for
14:05:43 10  speculation.  You may answer.
14:05:48 11       A.  Well, the minutes show that the
14:05:50 12  motion by Tenoever, seconded by Herron, the
14:05:52 13  chairman was authorized to execute the
14:05:55 14  contracts.  That's all I know.
14:05:56 15       Q.  So that means they're not
14:05:57 16  finalized, correct?
14:05:59 17            MR. BURKE:  Objection.  Calls for
14:06:00 18  speculation.  You may answer.
14:06:02 19       A.  Well, I don't know that --
14:06:03 20  executed means to do it, doesn't it?  Execute
14:06:08 21  the contract?
14:06:09 22       Q.  Well, when you execute a contract,
14:06:12 23  how many parties -- well, when you -- with
14:06:15 24  respect to executing a contract, OHSL had to
14:06:19 25  sign off on the contract, correct?
```

191

```
14:06:21  1            MR. BURKE:  Objection.  Calls for
14:06:22  2  speculation.
14:06:25  3       A.  I don't follow that at all.
14:06:28  4       Q.  Well, when you have a contract
14:06:30  5  between OHSL and Ken Hanauer, let's say, OHSL
14:06:33  6  would have to sign, correct?
14:06:35  7            MR. BURKE:  Objection to
14:06:35  8  relevance, foundation.
14:06:42  9       A.  To be unanimous, yes.
14:06:44 10            MR. BURKE:  Wait, wait, wait.
14:06:45 11            MR. BRAUTIGAM:  Jim, you're
14:06:47 12  interrupting the witness.  Please let him
14:06:48 13  finish.
14:06:49 14            MR. BURKE:  Do you understand the
14:06:50 15  question, Mr. Zoellner?
14:06:51 16       A.  No, maybe I don't.
14:06:54 17            MR. BURKE:  There's nothing about
14:06:54 18  unanimous.
14:06:56 19            MR. BRAUTIGAM:  Jim, please.
14:06:57 20            MR. BURKE:  I mean, counsel, did
14:06:58 21  your question -- I mean, I'm just trying to
14:07:00 22  keep this thing on track.  I apologize.
14:07:03 23            MR. BRAUTIGAM:  Jim, no apology is
14:07:04 24  necessary, but no coaching is necessary,
14:07:06 25  either.
```

192

```
14:07:06  1  BY MR. BRAUTIGAM:
14:07:06  2       Q.  Mr. Zoellner, if you have a
14:07:07  3  contract between OHSL and Ken Hanauer, is it
14:07:10  4  fair to say that a representative of OHSL would
14:07:13  5  have to sign the contract?
14:07:14  6            MR. BURKE:  Objection to
14:07:14  7  relevance.  Calls for speculation.  You may
14:07:17  8  answer.
14:07:17  9            MR. MOORE:  Objection.
14:07:30 10       A.  You're asking me who signed the
14:07:32 11  contract?  Executed this contract?
14:07:35 12       Q.  No, my question is a little
14:07:37 13  different.  If you had a contract between OHSL
14:07:40 14  and Ken Hanauer and that contract called for a
14:07:43 15  payment to Ken Hanauer in case there was a
14:07:46 16  change in control, is it fair to say that
14:07:49 17  someone from OHSL would have to sign that
14:07:51 18  contract?
14:07:53 19            MR. BURKE:  Same objection.
14:07:53 20            MR. MOORE:  Objection.
14:07:57 21       A.  I don't know.
14:07:58 22       Q.  Would it be fair to say that Ken
14:08:00 23  Hanauer would also have to sign that contract?
14:08:03 24       A.  I don't know.
14:08:04 25            MR. MOORE:  Objection.
```

193

```
14:08:05  1        Q.  Are you familiar with the term
14:08:07  2   purchase accounting?
14:08:09  3        A.  No.
14:08:10  4        Q.  Was purchase accounting relevant
14:08:12  5   at all to this proposed merger?
14:08:15  6            MR. BURKE:  Objection.
14:08:16  7   Foundation.
14:08:17  8        A.  Not that I am -- I don't know.
14:08:24  9        Q.  Okay.  Please take a look at
14:08:25 10   Zoellner Deposition Exhibit 19.  Mr. Zoellner,
14:08:55 11   have you seen this document before?
14:08:56 12        A.  Yes, I was there.
14:08:57 13        Q.  Okay.  Does this reflect a special
14:09:01 14   meeting of the OHSL Board on August 2nd, 1999?
14:09:05 15        A.  Yes.
14:09:05 16        Q.  Now, Mr. Zoellner, can I also
14:09:08 17   direct your attention to Defendant's Exhibit 1?
14:09:10 18        A.  What?
14:09:11 19        Q.  This document here, Defendant's
14:09:13 20   Exhibit 1.  Do you see this sentence, "Your
14:09:14 21   Board of Directors unanimously approved the
14:09:16 22   acquisition and believes that it is in the best
14:09:19 23   interest of OHSL stockholders."  Do you see
14:09:22 24   that?
14:09:23 25        A.  I see it.
```

194

```
14:09:24  1        Q.  I'd like to direct your attention
14:09:25  2   to the first part of this sentence, "Your Board
14:09:30  3   of Directors unanimously approved the
14:09:31  4   acquisition," stop.  Do you see that?
14:09:34  5        A.  I see that.
14:09:35  6        Q.  Do you have that concept in mind?
14:09:40  7        A.  Yes.
14:09:40  8        Q.  Did these minutes for the August
14:09:42  9   2nd, 1999 meeting refer to the first part of
14:09:47 10   that sentence?
14:09:48 11            MR. BURKE:  Objection.  Calls for
14:09:49 12   speculation.
14:09:50 13        A.  I do not know.
14:10:00 14        Q.  Okay.
14:10:00 15            MR. BURKE:  Have you had an
14:10:01 16   opportunity to read Exhibit 19, Mr. Zoellner?
14:10:05 17        A.  I'm reading some of it here.
14:10:08 18            MR. BURKE:  Take your time and
14:10:09 19   read it before you answer questions about it.
14:11:26 20        Q.  Now, Mr. Zoellner --
14:11:26 21            MR. BURKE:  Have you finished?
14:11:26 22        A.  Yes.
14:11:26 23        Q.  If I could direct your attention
14:11:26 24   to the back of the document, this is a
14:11:26 25   resolution approving the merger agreement with
```

195

```
14:11:26  1   Provident Financial, correct?
14:11:26  2        A.  That's what it says.
14:11:26  3        Q.  Okay.  And if I could flip it
14:11:26  4   over, it says that "The attached resolutions
14:11:26  5   were unanimously adopted."  Do you see that?
14:11:26  6   It's the penultimate paragraph on the first
14:11:26  7   page.
14:11:32  8        A.  By motion Joe Tenoever and
14:11:32  9   seconded by Hillebrand.
14:11:34 10        Q.  Okay.  Now, does that refresh your
14:11:35 11   recollection as to whether or not the first
14:11:37 12   part of the sentence "Your Board of Directors
14:11:38 13   unanimously approved the acquisition" --
14:11:41 14            MR. BURKE:  Objection.
14:11:41 15        Q.  -- refers to this meeting of
14:11:43 16   August 2nd, 1999?
14:11:45 17            MR. BURKE:  Objection.  Asked and
14:11:46 18   answered.
14:11:46 19            MR. BRAUTIGAM:  I asked if it
14:11:47 20   refreshes his recollection, Jim.  It's a
14:11:50 21   different question.
14:11:54 22            MR. BURKE:  Do you understand the
14:11:54 23   question?
14:11:56 24            THE WITNESS:  Let me read this
14:11:57 25   again.  What is the question, please?
```

196

```
14:12:12  1   BY MR. BRAUTIGAM:
14:12:13  2        Q.  The question is:  Does the first
14:12:14  3   part of the sentence here, "Your Board of
14:12:17  4   Directors unanimously approved the
14:12:18  5   acquisition," refer to this August 2nd, 1999
14:12:22  6   special meeting?
14:12:23  7            MR. BURKE:  Objection.  Asked and
14:12:24  8   answered.
14:12:37  9        A.  Is this the same, you're saying?
14:12:39 10        Q.  No, I --
14:12:40 11        A.  I'm not following you.
14:12:41 12        Q.  Okay.  My question is this:  This
14:12:44 13   document, Defendant's Exhibit 1, says "Your
14:12:46 14   Board of Directors unanimously approved the
14:12:47 15   acquisition."
14:12:49 16        A.  Um-hmm.
14:12:49 17        Q.  Is that correct?  That's what the
14:12:50 18   document says?
14:12:52 19        A.  That's what the document says.
14:12:53 20        Q.  Okay.  My question is:  When it
14:12:54 21   says that, is that approval referring to the
14:12:58 22   approval that was made on August 2nd, 1999 in
14:13:03 23   this meeting?
14:13:03 24            MR. BURKE:  Objection.  Asked and
14:13:04 25   answered.  Already answered.
```

### 197

1  A. The purpose of this meeting was to
2  review the final drafts of the definitive
3  agreement between Provident -- I, I'm not
4  following. I'm not following you on that.
5  Q. Okay. Let me do something a
6  little different. On August 2nd, 1999, OHSL
7  had seven directors, correct?
8  A. Let's see how many we've got here.
9  There was -- well, Ken was -- Tom wasn't there
10  anymore, Tom Herron.
11  Q. Right. So you had seven
12  directors?
13  A. We had seven, yes.
14  Q. Okay. Do you see in the
15  penultimate paragraph it says, "Upon a motion
16  made by Joseph J. Tenoever, seconded by William
17  R. Hillebrand, the attached resolutions were
18  unanimously adopted"? Did I read that
19  correctly?
20  A. Yes.
21  Q. And the attached resolutions are
22  on the back, correct?
23  A. Yes.
24         MR. BURKE: Objection. Asked and
25  answered.

### 198

1  Q. And that's the merger agreement,
2  correct?
3  A. Yes.
4  Q. Now, for the resolutions to have
5  been unanimously adopted, you needed the vote
6  of seven directors, correct?
7         MR. BURKE: Objection.
8  Argumentative. You may answer.
9  A. Unanimous. Unanimous would be
10  seven directors, there were seven.
11  Q. Okay. Because if you didn't have
12  the vote of seven directors, it wouldn't be
13  unanimous, correct?
14         MR. BURKE: Objection. You may
15  answer.
16  A. It's all according to whether
17  those present -- unanimous of the directors
18  present. There was one absent here, I think,
19  wasn't there?
20  Q. Okay. Why do you --
21  A. It's all according to the
22  definition, in my opinion. Was unanimous of
23  directors present, but it's a matter of
24  interpretation.
25  Q. Okay. In this document here,

### 199

1  Defendant's Exhibit 1, it doesn't say anything
2  about directors present, does it?
3  A. No.
4  Q. It says "Your Board of Directors,"
5  correct?
6  A. Yes.
7  Q. And that refers to the eight
8  directors --
9         MR. BURKE: Objection.
10  Q. -- that OHSL started with in 1999,
11  correct?
12         MR. BURKE: Objection. That has
13  been asked and answered as you know, Mr.
14  Brautigam. This witness has already testified
15  to this at some length.
16  Q. I have a question. She can read
17  it back if you'd like.
18  A. I don't know what the answer is.
19  I -- I'm sorry.
20  Q. Do you have the question?
21  A. I don't know what the question is.
22  Q. Okay. You talked about how
23  unanimous seemed to turn on an interpretation.
24  A. Yes.
25  Q. Do you remember that testimony?

### 200

1  A. Yes.
2  Q. And my question is, this doesn't
3  talk about any interpretation. This says quite
4  simply, "Your Board of Directors unanimously
5  approved the acquisition," correct?
6  A. That's what it says, yes.
7  Q. Okay. Now, Mr. McKiernan was out
8  of the country on August 2nd, 1999, correct?
9  A. Yes.
10  Q. And he did not vote in favor of
11  the transaction, correct?
12         MR. BURKE: Objection. On that
13  date?
14  Q. On that date.
15  A. On that date.
16         MR. BURKE: Objection.
17  A. Yeah.
18  Q. Was there another date that the
19  vote on this particular transaction was taking
20  place?
21  A. I do not know.
22  Q. Okay. Is that possible?
23         MR. BURKE: Anything is possible.
24  A. It's possible.
25         MR. BRAUTIGAM: Jim, please, we

**Page 201**

```
14:16:37  1  really don't need you coaching the witness,
14:16:39  2  okay?
14:16:40  3          MR. BURKE: I would argue,
14:16:40  4  Michael, that that's an improper question.
14:16:43  5          MR. BRAUTIGAM: This is like
14:16:44  6  stereo. We say "anything is possible" and then
14:16:52  7  the witness repeats that. This is amazing.
14:16:52  8          MR. BURKE: Objection, vague.
14:16:52  9  Objection to form. You may answer. What's the
14:17:01 10  question?
14:17:02 11  BY MR. BRAUTIGAM:
14:17:03 12      Q. The question is: Is there any
14:17:06 13  other possible meeting where the merger between
14:17:10 14  OHSL and Provident was approved?
14:17:14 15      A. Any other meeting where it was
14:17:15 16  approved? I, I don't remember.
14:17:21 17      Q. Okay. So we have Mr. Herron no
14:17:23 18  longer with us on August 2nd?
14:17:27 19      A. That is true.
14:17:27 20      Q. So he did not vote in favor of the
14:17:29 21  transaction, correct?
14:17:30 22          MR. BURKE: Objection.
14:17:30 23      A. He was no longer a director.
14:17:32 24      Q. And, in fact, he was against the
14:17:34 25  merger, correct?
```

**Page 202**

```
14:17:35  1          MR. BURKE: Objection.
14:17:35  2      A. That's what it says in his letter.
14:17:39  3      Q. Okay. And with respect to Mr.
14:17:41  4  McKiernan, he did not vote in favor of the
14:17:43  5  transaction because he was out of the country,
14:17:45  6  correct?
14:17:51  7      A. Unless he voted absentee, voted
14:17:56  8  before he left or after he came back. I do not
14:17:59  9  know. I can't answer that.
14:18:04 10      Q. Okay. So your understanding is
14:18:05 11  that the other directors who were there voted
14:18:08 12  in favor of the transaction, correct?
14:18:11 13      A. Yes.
14:18:15 14      Q. Okay. Do you understand Mr.
14:18:15 15  Hanauer to have voted in favor of the
14:18:17 16  transaction on August 2nd, 1999?
14:18:23 17      A. Who was that, Hanauer?
14:18:24 18      Q. Hanauer.
14:18:25 19      A. I -- the minutes would have to
14:18:27 20  show me, the records. I wouldn't know if --
14:18:29 21      Q. Well, they're right in front of
14:18:31 22  you.
14:18:32 23      A. August 2nd, does it say -- yeah,
14:18:37 24  it says directors were present. That's a
14:19:01 25  matter of interpretation of unanimous again.
```

**Page 203**

```
14:19:03  1  It says there that the motion was made by
14:19:08  2  Tenoever and seconded by Hillebrand and
14:19:11  3  resolutions were unanimously adopted.
14:19:14  4      Q. Okay. Why does that cause you to
14:19:17  5  say something about the interpretation of
14:19:19  6  unanimous?
14:19:20  7      A. Well, because all of the directors
14:19:21  8  weren't there.
14:19:23  9      Q. Okay.
14:19:23 10      A. There was one missing, Tom
14:19:25 11  McKiernan.
14:19:27 12      Q. Okay. Tom McKiernan --
14:19:28 13          MR. BURKE: Wait.
14:19:29 14      A. Am I right?
14:19:30 15          MR. BURKE: Go ahead.
14:19:30 16      A. Tom McKiernan wasn't there.
14:19:33 17      Q. Okay.
14:19:33 18      A. And we discussed that. Whether he
14:19:35 19  voted before he left or after he got back on
14:19:37 20  the matter, I don't know.
14:19:39 21      Q. Right. But Mr. Hanauer was there
14:19:40 22  and he voted in favor of the merger, correct?
14:19:42 23      A. Yes.
14:19:42 24      Q. Okay.
14:19:43 25      A. That's what it says, yes.
```

**Page 204**

```
14:19:47  1      Q. And during -- on July 22nd, he had
14:19:50  2  voted against the merger, correct?
14:19:52  3      A. The minutes say that.
14:19:59  4      Q. And --
14:20:07  5          MR. BURKE: July 22nd?
14:20:09  6          MR. MOORE: Exhibit 17.
14:20:12  7      Q. Talking about Hanauer?
14:20:13  8          MR. BURKE: You said Hanauer.
14:20:14  9      Q. No, no, no. Mr. Zoellner, I
14:20:16 10  misspoke. On July 22nd, 1999, Mr. Hanauer had
14:20:20 11  abstained from that vote; is that correct?
14:20:27 12      A. Let me get it again. July 22nd?
14:20:31 13      Q. Yes.
14:20:34 14          MR. BURKE: Document speaks for
14:20:34 15  itself, Mr. Brautigam. I don't know why this
14:20:37 16  witness has to keep reading lines from the
14:20:39 17  documents. I mean, this is just needlessly
14:20:42 18  prolonging it.
14:20:44 19          MR. MOORE: I would object as
14:20:45 20  well.
14:20:54 21      Q. Okay. Mr. Zoellner, Bill
14:20:58 22  Hillebrand voted in favor of the merger on
14:21:00 23  August 2nd, 1999, correct?
14:21:03 24      A. Yes.
14:21:04 25          MR. BURKE: We're on a different
```

**205**

```
14:21:06  1  document. August 2nd?
14:21:08  2      Q.  Yes.  And Mr. Hucke voted in favor
14:21:10  3  of the merger on August 2nd, 1999, correct?
14:21:13  4      A.  Yes.
14:21:15  5      Q.  And we talked about Mr. McKiernan.
14:21:18  6  Mr. Tenoever voted in favor of the transaction
14:21:21  7  on August 2nd, 1999, correct?
14:21:25  8      A.  Does it say that here?  I can't
14:21:26  9  find it in there.
14:21:27 10      Q.  Well, it says motion unanimously
14:21:32 11  adopted.
14:21:34 12      A.  The motion -- the attached
14:21:37 13  resolution was unanimously adopted.
14:21:39 14      Q.  Okay.  And that leaves Mr.
14:21:42 15  Brinker, correct?
14:21:43 16      A.  Yes.
14:21:43 17      Q.  Now --
14:21:45 18          MR. BURKE:  Objection to form.
14:21:46 19      Q.  -- for the OHSL Board to be able
14:21:48 20  to say that this was unanimous in Defendant's
14:21:50 21  Exhibit 1, Mr. Brinker would have had to vote
14:21:53 22  in favor of the transaction, correct?
14:21:57 23          MR. BURKE:  Objection,
14:21:57 24  foundation --
14:21:58 25          MR. MOORE:  Objection.
```

**206**

```
14:21:59  1          MR. BURKE:  -- as to Exhibit 1.
14:22:01  2  You may answer.
14:22:04  3      A.  Well, Norb Brinker being the
14:22:08  4  president or chairman, by -- I'm not a lawyer,
14:22:13  5  but by some law that he -- the president or
14:22:17  6  chairman doesn't vote unless there's a tie, so
14:22:20  7  that wouldn't have to -- he wouldn't have to be
14:22:25  8  included in that unanimous, to my thinking.
14:22:28  9      Q.  Was Mr. Brinker eligible to vote
14:22:30 10  at the August 2nd, 1999 meeting?
14:22:33 11          MR. BURKE:  Objection.  Calls for
14:22:33 12  a legal conclusion.
14:22:34 13      A.  I don't know.  That would be up to
14:22:35 14  the legal interpretation.
14:22:37 15      Q.  You don't know if the chairman of
14:22:38 16  the Board was eligible to vote on --
14:22:41 17          MR. BURKE:  That's exactly what he
14:22:43 18  just said, counsel.
14:22:44 19      Q.  -- on a resolution?
14:22:46 20          MR. BURKE:  That's exactly what he
14:22:47 21  just said.  Asked and answered.
14:22:48 22      A.  Well, like I said, the --
14:22:51 23      Q.  Mr. Brinker voted --
14:22:53 24          MR. BURKE:  Wait.  Did you get an
14:22:55 25  answer?
```

**207**

```
14:23:01  1      Q.  I think so.  Yeah.
14:23:02  2          MR. BURKE:  Okay.
14:23:03  3      Q.  Mr. Zoellner, Mr. Brinker did, in
14:23:05  4  fact, vote on July 22nd, 1999, correct?
14:23:09  5          MR. BURKE:  Objection.  Go ahead.
14:23:11  6      A.  If the minutes say so, that would
14:23:18  7  be correct.  I can't carry these over from one
14:23:18  8  to the other, okay?
14:23:20  9      Q.  And no tie needed to be broken on
14:23:22 10  July 22nd, 1999, correct?
14:23:24 11          MR. BURKE:  Objection.  Calls for
14:23:25 12  speculation.  Assumes facts not in evidence.  I
14:23:28 13  think he said if the minutes say so.  You may
14:23:30 14  answer.
14:23:32 15      A.  Whatever the minutes say on there
14:23:33 16  now.  I'm starting to get confused on this.
14:23:36 17  They -- I would go by whatever the minutes say
14:23:39 18  would be true, because we approved those each
14:23:43 19  time we met.
14:23:45 20      Q.  Well, Mr. Zoellner, the minutes
14:23:48 21  say that the motion to merge Oak Hills with
14:23:53 22  Provident was unanimously adopted.  Do you see
14:23:56 23  that?
14:23:57 24          MR. BURKE:  Objection.
14:23:58 25  Mischaracterizes the document.  The document
```

**208**

```
14:24:01  1  speaks for itself.
14:24:02  2      Q.  Do you see that, Mr. Zoellner?
14:24:05  3      A.  Upon a motion, yeah, by Joe
14:24:08  4  Tenoever.
14:24:10  5      Q.  And that's not correct, is it?
14:24:12  6          MR. BURKE:  Objection.
14:24:13  7      A.  I don't know.  I don't know.
14:24:28  8      Q.  Take a look at Defendant's Exhibit
14:24:29  9  1, please.  Do you see the phrase "Your Board
14:24:32 10  of Directors unanimously approved the
14:24:33 11  acquisition"?
14:24:35 12          MR. BURKE:  Objection.  Asked and
14:24:36 13  answered 15 times.  He's seen it before.
14:24:39 14  What's the question?
14:24:41 15      Q.  That's not an accurate statement,
14:24:43 16  is it, Mr. Zoellner?
14:24:45 17          MR. BURKE:  Objection.
14:24:54 18      A.  What's the question on that
14:24:55 19  statement?  On that paragraph?
14:24:57 20      Q.  That part of that sentence is not
14:24:59 21  accurate, meaning "Your Board of Directors
14:25:02 22  unanimously approved the acquisition."  It's
14:25:05 23  simply not accurate?
14:25:07 24          MR. BURKE:  Objection.
14:25:07 25          MR. MOORE:  Objection.
```

## Page 209

```
14:25:08  1              MR. BURKE:  Argumentative.  You
14:25:09  2     may answer.
14:25:27  3         A.   There again, where I have trouble
14:25:28  4     is that unanimous bit.  It's all according to
14:25:31  5     the interpretation of what's unanimous.
14:25:33  6     Unanimous of who's there or, or -- and as far
14:25:37  7     as the chairman goes, it's my thinking it's
14:25:42  8     a -- I'd have to ask legal whether that's the
14:25:45  9     way it --
14:25:52 10         Q.   Are you finished?
14:25:53 11         A.   I don't know.  I don't know.
14:25:55 12         Q.   Mr. Zoellner, did you do anything
14:25:59 13     personally to review the proxy materials before
14:26:01 14     they were sent out to the shareholders?
14:26:07 15         A.   Oh, I don't remember.  I don't
14:26:08 16     remember.
14:26:10 17         Q.   Were drafts of the proxy materials
14:26:15 18     presented in Board meetings?
14:26:17 19         A.   I don't know.
14:26:17 20         Q.   Do you feel that you had any
14:26:19 21     responsibility to the shareholders to make sure
14:26:22 22     that the proxy materials were accurate?
14:26:26 23              MR. BURKE:  Objection.  Calls for
14:26:27 24     a legal conclusion.  You may answer.
14:26:29 25              MR. MOORE:  Objection.
```

## Page 210

```
14:26:31  1              THE WITNESS:  Weren't we asked
14:26:31  2     that before?
14:26:32  3              MR. BURKE:  Yeah.
14:26:45  4              THE WITNESS:  Give me the question
14:26:46  5     again.
14:26:46  6     BY MR. BRAUTIGAM:
14:26:46  7         Q.   Mr. Zoellner, do you as an OHSL
14:26:49  8     director feel that you had any responsibility
14:26:51  9     to make sure that the proxy materials were
14:26:56 10     accurate?
14:26:57 11              MR. BURKE:  Objection.  Calls for
14:26:58 12     a legal conclusion.  Asked and answered.  You
14:27:00 13     may answer.
14:27:00 14              MR. MOORE:  Objection.
14:27:07 15         A.   That was, that was usually all
14:27:09 16     handled by management.  And we had -- we told
14:27:15 17     management what to do and it was done by them.
14:27:19 18     As far as that's -- doing it, no.
14:27:22 19         Q.   Mr. Zoellner, who did the proxy
14:27:24 20     materials come from?
14:27:31 21              MR. BURKE:  Objection.
14:27:31 22     Foundation.
14:27:32 23         A.   Who made up the proxies?
14:27:34 24         Q.   No.  Who did they come from?  You
14:27:36 25     said they were sent to the shareholders,
```

## Page 211

```
14:27:38  1     correct?
14:27:39  2         A.   Um-hmm.
14:27:39  3         Q.   And would it be fair to say --
14:27:42  4         A.   Who returned them?
14:27:43  5         Q.   No.  Would it be fair to say that
14:27:45  6     they came from the Oak Hills and Provident
14:27:49  7     Boards of Directors?
14:27:50  8              MR. BURKE:  Objection.  Calls for
14:27:51  9     a legal conclusion.  You may answer.
14:27:52 10         A.   No.  I -- I can't say that.
14:27:55 11         Q.   Do you believe that the Oak Hills
14:27:56 12     directors had any responsibility whatsoever for
14:27:59 13     the content of the proxy materials?
14:28:01 14              MR. BURKE:  Objection.  Asked and
14:28:03 15     answered.  You may answer it.
14:28:06 16         A.   No.
14:28:07 17         Q.   Why not?
14:28:08 18         A.   Because that's all the -- with our
14:28:12 19     management and with our legal.
14:28:19 20         Q.   So you feel that if the proxy
14:28:26 21     materials are in some way inaccurate, that the
14:28:30 22     responsibility lies with OHSL's management and
14:28:34 23     with OHSL's counsel, which at that time was
14:28:36 24     Dinsmore & Shohl, correct?
14:28:39 25              MR. BURKE:  Objection.
```

## Page 212

```
14:28:39  1              MR. MOORE:  Objection.
14:28:39  2              MR. BURKE:  Assumes facts not in
14:28:41  3     evidence.  You may answer.
14:28:43  4         A.   No, I -- I don't think so.
14:28:46  5         Q.   Okay.  Who do you think was
14:28:47  6     responsible for the proxy materials?
14:28:50  7         A.   Ken Hanauer was.
14:28:52  8         Q.   Only Ken Hanauer?
14:28:53  9         A.   Well, probably some of the other
14:28:56 10     management team also worked on it.
14:28:59 11         Q.   Okay.  Do you believe any OHSL
14:29:02 12     directors were responsible in any way for the
14:29:04 13     content of the proxy materials?
14:29:06 14              MR. BURKE:  Objection.  Asked and
14:29:07 15     answered.  You may answer.
14:29:12 16         A.   Well, they designated the
14:29:14 17     responsibility to management and --
14:29:18 18         Q.   Mr. Zoellner, you testified -- you
14:29:21 19     said at the break that you were a Navy pilot,
14:29:24 20     correct?
14:29:24 21         A.   Yeah.
14:29:25 22         Q.   And in the Navy, don't they say
14:29:27 23     that you can delegate authority, but never
14:29:29 24     responsibility?
14:29:30 25              MR. BURKE:  Objection to
```

## 213

```
14:29:30  1  relevance.
14:29:32  2         MR. MOORE: Objection.
14:29:35  3     A.  I don't know. I don't know.
14:29:36  4     Q.  Have you ever heard the expression
14:29:37  5  that you can designate authority but not
14:29:40  6  responsibility?
14:29:41  7     A.  Yes, I've heard of the expression.
14:29:43  8     Q.  Okay. And what do you understand
14:29:44  9  that expression to mean?
14:29:45 10         MR. BURKE: Objection to
14:29:46 11  relevance.
14:29:47 12     A.  They can't get rid of the
14:29:49 13  responsibility.
14:29:52 14     Q.  Okay. And do you believe that Oak
14:29:57 15  Hills' Board of Directors was over management
14:30:00 16  in some way?
14:30:01 17         MR. BURKE: Objection to form.
14:30:11 18     A.  Well, the Board of Directors was
14:30:11 19  over management, yes.
14:30:11 20     Q.  Right. In other words, management
14:30:11 21  serves at the pleasure of the Board of
14:30:13 22  Directors?
14:30:13 23     A.  Right.
14:30:13 24     Q.  If you wanted to kick Ken Hanauer
14:30:15 25  out, the Board of Directors could do that,
```

## 214

```
14:30:17  1  correct?
14:30:18  2     A.  Correct.
14:30:18  3     Q.  Same thing for the CFO, Pat
14:30:21  4  Condren, correct?
14:30:23  5     A.  Pat Condren, yeah. That's --
14:30:26  6     Q.  That was the name you were looking
14:30:27  7  for?
14:30:28  8     A.  Yeah. Yes.
14:30:30  9     Q.  And I just want to see if I
14:30:32 10  understand your testimony correctly, that
14:30:34 11  you're saying that the OHSL Board had no
14:30:37 12  responsibility for the proxy materials, except
14:30:39 13  Ken Hanauer?
14:30:40 14     A.  Well, I don't think they had no
14:30:42 15  responsibility. They're responsible for a lot
14:30:45 16  of things.
14:30:47 17     Q.  Okay.
14:30:47 18     A.  But they designated that
14:30:48 19  responsibility to Ken Hanauer as our manager.
14:30:54 20     Q.  Okay. Did you learn at some point
14:31:04 21  that Ken Hanauer voted his personal shares
14:31:07 22  against the transaction?
14:31:08 23     A.  No, I knew nothing about that.
14:31:10 24     Q.  Have you since learned that?
14:31:12 25     A.  Since I've heard that, yes.
```

## 215

```
14:31:14  1     Q.  Okay. When's the first time you
14:31:15  2  heard that?
14:31:20  3     A.  I don't know.
14:31:21  4     Q.  This was discussed at your
14:31:22  5  luncheon meetings at some point, correct?
14:31:25  6     A.  No.
14:31:28  7     Q.  Okay. Do you --
14:31:29  8     A.  I don't remember.
14:31:30  9     Q.  You testified previously that
14:31:32 10  you're a fair man. Do you think it was fair
14:31:34 11  for Mr. Hanauer to vote one way as a director
14:31:38 12  and yet vote his personal shares against the
14:31:40 13  transaction?
14:31:41 14         MR. BURKE: Objection. Asked and
14:31:41 15  answered.
14:31:42 16         MR. MOORE: Objection.
14:31:43 17         MR. BURKE: I know this was asked
14:31:44 18  and answered. You can answer again.
14:31:52 19     A.  It is. He can vote them the way
14:31:54 20  he wants to. He isn't obliged to do it one way
14:31:59 21  or another.
14:32:01 22     Q.  Well, that's true for any
14:32:05 23  shareholder, correct?
14:32:06 24     A.  That's correct.
14:32:07 25     Q.  But do you think that because of
```

## 216

```
14:32:08  1  Mr. Hanauer's special position as both a Board
14:32:12  2  member and as a member of management that the
14:32:15  3  shareholders might be interested in how he
14:32:18  4  voted his personal shares?
14:32:20  5         MR. BURKE: Objection. Calls for
14:32:21  6  speculation.
14:32:22  7         MR. MOORE: Objection.
14:32:22  8     A.  I do not know that.
14:32:26  9     Q.  Don't you think that Mr. Hanauer
14:32:28 10  was speaking out of both sides of his mouth, so
14:32:31 11  to speak, by voting one way as a shareholder
14:32:34 12  and voting another way as a director?
14:32:37 13         MR. BURKE: Objection.
14:32:38 14         MR. MOORE: Objection.
14:32:38 15     A.  I do not like to make judgment on
14:32:41 16  him on whether he did -- whether it was right
14:32:43 17  or wrong.
14:32:44 18     Q.  Mr. Zoellner, I am entitled to
14:32:46 19  your opinion. Do you believe what Mr. Hanauer
14:32:49 20  did by voting one way as a shareholder and one
14:32:52 21  way as a director was correct?
14:32:53 22         MR. BURKE: Objection.
14:32:54 23     A.  I don't know if it was correct,
14:32:55 24  but he was allowed to do it.
14:32:57 25     Q.  Do you think it was fair?
```

**217**

1  MR. BURKE: Objection.
2  A. Well, that was -- that was another
3  question. I haven't looked at it that way.
4  Q. You haven't looked at it what way?
5  A. Whether it was fair or not. I
6  haven't given it any thought.
7  Q. Can you take a moment and think
8  about it?
9  A. Okay.
10  Q. Okay. Do you believe that what
11  Mr. Hanauer did with respect to voting one way
12  as a director and the opposite way as a
13  shareholder was fair to the other OHSL
14  shareholders?
15  MR. BURKE: Let the record reflect
16  you gave him five seconds to review the --
17  MR. BRAUTIGAM: Mr. Zoellner, take
18  as much time as you need.
19  MR. BURKE: Objection. Asked and
20  answered. Calls for speculation. Asked and
21  answered. You may answer, Mr. Zoellner.
22  A. It's a matter of opinion. In my
23  opinion he can do what he wants to do, and he's
24  entitled to vote any way he wants.
25  Q. Okay.

**218**

1  A. And I am not a judge of whether
2  it's fair for him or isn't fair.
3  Q. Mr. Zoellner, I'm afraid that I am
4  entitled to your opinion with respect to this
5  matter.
6  A. I just gave it to you.
7  MR. BURKE: He just gave it to
8  you, counselor, and he doesn't have to give you
9  anything other than what his best recollection
10  is. He doesn't have to have an opinion.
11  MR. MOORE: That's correct.
12  MR. BRAUTIGAM: Can you read back
13  his answer, please?
14  (Record read by Reporter.)
15  MR. BRAUTIGAM: Okay. Move to
16  strike as unresponsive.
17  BY MR. BRAUTIGAM:
18  Q. Mr. Zoellner, I understand that
19  you believe that Mr. Hanauer can vote any way
20  he wants, and we're in agreement on that.
21  A. Um-hmm.
22  Q. My question is: Is it fair that
23  he do that without telling the shareholders how
24  he voted his personal shares?
25  MR. BURKE: Objection.

**219**

1  A. You've asked that question.
2  MR. MOORE: Objection.
3  Q. You haven't answered it.
4  A. I haven't answered it?
5  MR. BURKE: I would disagree with
6  you, counsel. I believe he has answered it
7  several times. He --
8  MR. BRAUTIGAM: Jim, the last part
9  of his answer was I can't say whether it's fair
10  or not.
11  MR. BURKE: Counsel, if he doesn't
12  have an opinion --
13  MR. BRAUTIGAM: If he has an
14  opinion, he has to give it to me.
15  MR. BURKE: He's told you he does
16  not have an opinion.
17  BY MR. BRAUTIGAM:
18  Q. Is that true, Mr. Zoellner?
19  A. That's true. I do not have an
20  opinion at this point.
21  Q. Okay. Mr. Hanauer ran the special
22  meeting of shareholders on October 25th, 1999,
23  correct?
24  A. Um-hmm.
25  MR. BURKE: Objection.

**220**

1  Foundation.
2  Q. And you did not know at the time
3  that he had voted his personal shares against
4  the transaction, correct?
5  A. That is correct.
6  Q. And now you've learned that he
7  voted his personal shares against the
8  transaction, correct?
9  A. Yes.
10  Q. Does that leave a bad taste in
11  your mouth that the purpose of the meeting was
12  to approve the transaction and the guy who ran
13  the meeting voted his personal shares against
14  the transaction?
15  A. No.
16  MR. BURKE: Objection to form.
17  MR. MOORE: Objection.
18  Q. No?
19  A. That doesn't bother me.
20  Q. Why not?
21  A. He's entitled to do what he wants
22  to do, vote it the way he wants.
23  Q. Mr. Zoellner, my question doesn't
24  go to Mr. Hanauer's entitlement to vote however
25  he wants. My question is to the shareholder

## Page 221

```
14:36:11  1   knowledge.  Do you think that Mr. Hanauer
14:36:14  2   should have disclosed at the special meeting or
14:36:18  3   otherwise, hey, I voted as a director to
14:36:20  4   approve this merger, but as a shareholder I
14:36:23  5   voted against it?
14:36:24  6            MR. BURKE:  Objection.
14:36:27  7        A.  I don't think it -- none of us
14:36:30  8   after we vote say, oh, hey, I voted for this or
14:36:34  9   voted for that or didn't vote.  I don't think
14:36:36 10   that's necessary.
14:36:40 11        Q.  Mr. Zoellner, you'd agree that the
14:36:43 12   proxy materials contain a recommendation for
14:36:47 13   how shareholders should vote, correct?
14:36:49 14            MR. BURKE:  Objection.
14:36:51 15        A.  Not that I remember.  It didn't
14:36:54 16   tell them how to vote.
14:36:55 17        Q.  It doesn't tell them how to vote?
14:36:57 18   Okay.  Let's take a look at the document.  Do
14:37:06 19   you have Defendant's 1, "The Board unanimously
14:37:09 20   recommends and advises that you approve the
14:37:10 21   acquisition at the special meeting so that the
14:37:13 22   transaction may be completed"?
14:37:16 23            MR. BURKE:  Referring to that
14:37:16 24   sentence on the first page of Defendant's
14:37:18 25   Exhibit 1.
```

## Page 222

```
14:37:18  1        A.  Oh, okay.
14:37:19  2        Q.  Does that sound like advice to
14:37:21  3   you?
14:37:21  4            MR. BURKE:  Objection.  Calls for
14:37:23  5   speculation.
14:37:28  6        A.  That's an opinion, yes.
14:37:30  7        Q.  It's a recommendation, correct?
14:37:32  8        A.  Yes, recommendation.
14:37:36  9        Q.  Now, does it bother you that Mr.
14:37:37 10   Hanauer as part of the Board made this
14:37:40 11   recommendation, but voted personally against
14:37:42 12   his own recommendation?
14:37:43 13        A.  No, it doesn't bother me.
14:37:49 14        Q.  Okay.  Mr. Zoellner, is there
14:37:51 15   anything you wish you would have done
14:37:52 16   differently with respect to this merger
14:37:54 17   transaction?
14:37:56 18            MR. BURKE:  Objection to
14:37:56 19   relevance.  You may answer.
14:38:01 20        A.  Nothing to do with the merger of
14:38:03 21   that, I don't think, no.  I don't have anything
14:38:07 22   against it.
14:38:09 23        Q.  Do you have anything against the
14:38:11 24   way the proxy materials were prepared?
14:38:15 25            MR. BURKE:  Objection.
```

## Page 223

```
14:38:15  1        A.  No.
14:38:15  2        Q.  Do you have anything against the
14:38:17  3   accuracy of the proxy materials?
14:38:21  4        A.  I thought it was accurate.
14:38:24  5        Q.  I thought you testified you didn't
14:38:25  6   review the proxy materials.
14:38:27  7        A.  Well, didn't we just do that here?
14:38:30  8            MR. BURKE:  Objection.  Misstates
14:38:30  9   prior testimony.  You may answer.  Go ahead.
14:38:35 10        A.  We talked about it today, didn't
14:38:37 11   we?  About the proxy material?
14:38:40 12        Q.  Well, we're not done talking about
14:38:41 13   the proxy materials yet, but let me move
14:38:44 14   forward.  Okay.  This is --
14:38:47 15            MR. MOORE:  I'll move to strike
14:38:48 16   that last question and answer exchange.  I just
14:38:51 17   think that's a complete mischaracterization of
14:38:53 18   the questions that have been asked.
14:38:55 19            MR. BURKE:  I'm going to take five
14:38:56 20   minutes to use the bathroom.
14:39:00 21            MR. BRAUTIGAM:  Fine, let's take a
14:39:00 22   short break.
14:39:02 23            MR. BURKE:  Fine.
14:39:02 24            (Brief recess.)
14:42:14 25            MR. BURKE:  Have you had a chance
```

## Page 224

```
14:42:15  1   to review that?
14:42:16  2            THE WITNESS:  No, I got
14:42:16  3   distracted.
14:42:18  4            MR. MOORE:  That's my fault.
14:42:18  5   BY MR. BRAUTIGAM:
14:42:20  6        Q.  Mr. Zoellner, if you --
14:42:22  7            MR. BURKE:  If the witness can
14:42:23  8   read the document you just handed to him, I'd
14:42:25  9   appreciate it.
14:42:26 10        Q.  He doesn't have to read it.  Mr.
14:42:28 11   Zoellner, I have handed you what has been
14:42:30 12   marked as --
14:42:33 13            MR. BURKE:  Mr. Brautigam, I would
14:42:33 14   like the witness to review the document.
14:42:35 15            MR. BRAUTIGAM:  Jim, you're
14:42:36 16   obviously trying to run out the clock.  He
14:42:40 17   doesn't need to.  Do you want him to read the
14:42:42 18   proxy materials?  He doesn't have to.
14:42:45 19            MR. BURKE:  You have a four page
14:42:46 20   document here.  What pages are you going to
14:42:48 21   examine him on so he can review it?
14:42:51 22            MR. BRAUTIGAM:  I'll get to it,
14:42:52 23   Jim.
14:42:52 24   BY MR. BRAUTIGAM:
14:42:53 25        Q.  Mr. Zoellner, have you seen this
```