

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Walter W. Thiemann, | : | **Case No. C-1-00-793** |
| on behalf of himself and of | | |
| all others similarly situated, | : | **Judge Sandra S. Beckwith** |
| | | |
| **Plaintiff,** | : | **Magistrate Judge Hogan** |
| | | |
| **vs.** | : | **Oral Argument** |
| | | **Requested** |
| OHSL Financial Corporation, et al. | : | |
| | | |
| **Defendants.** | : | |

---

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR**
**PARTIAL SUMMARY JUDGMENT (DOC. NO. 249) AND OPPOSITION TO**
**PROVIDENT'S CROSS MOTION FOR SUMMARY JUDGMENT**
**(DOC. NO. 269)**

Plaintiffs respectfully submit this reply brief in further support of their Motion for

Partial Summary Judgment on Liability Issues Under Section 11 of the 1933 Act

("Plaintiffs' Motion for Partial Summary Judgment"). (Doc. No. 249). In the interest of

judicial economy, because Defendant Provident has also cross-moved for summary

judgment on this issue, (Doc. No. 269), Plaintiffs will collectively submit their

arguments in further support of their Motion for Partial Summary Judgment and in

response to Defendant Provident's cross-motion for summary judgment. Additionally,

Plaintiffs incorporate by reference, as if fully set out herein, all applicable arguments

regarding the statute of limitations, statute of repose, and materiality set forth in

Plaintiffs' Memorandum in Opposition to Amended Motion to Dismiss of Defendants

OHSL Financial, Oak Hills Savings & Loan Company, F.A., Provident Financial Group,

Inc., Brinker, Hanauer, Hillebrand, Hucke, McKiernan, Tenoever, Zoellner, Hoverson, Cook, Grote, Myers, Pedoto, Steger, and Carey with Memorandum in Support (Doc. No. 264) (hereinafter "Plaintiffs' Memorandum in Opposition to Defendants OHSL and Provident's Amended Motion to Dismiss").

Respectfully Submitted,

GENE MESH & ASSOCIATES

Dated:  5 March 2004

By:  _Michael G. B_____

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
513 221 8800 telephone
513 221 1097 fax

## MEMORANDUM IN SUPPORT

### I.  INTRODUCTION

Plaintiffs respectfully submit this reply memorandum in further support of their Motion for Partial Summary Judgment (Doc. No. 249) and in opposition to Defendant Provident's cross-motion for summary judgment (Doc. No. 269).  In the interest of judicial economy, Plaintiffs incorporate by reference, as if fully set forth herein, their arguments in Plaintiffs' Memorandum in Opposition to Defendants OHSL and Provident's Amended Motion to Dismiss, (Doc. No. 264), which, *inter alia*, largely deals with these same issues.

### II.  FACTUAL BACKGROUND

Defendant Provident makes three arguments in opposition to Plaintiffs' Motion for Partial Summary Judgment:  First, that the motion is defeated by the statute of repose; Second, that the restatements are not material, and Third, that Defendant Provident needs more time to retain a restatement expert to testify on the issue of materiality and oppose the Motion.  As will be shown, each of these arguments is without merit.

#### A.  Plaintiffs' Motion for Summary Judgment is Not Barred by the Statute of Repose.

Plaintiffs' Motion for Partial Summary Judgment is not defeated by the statute of repose based upon legal and equitable arguments. Plaintiffs and Defendant Provident are in agreement that a one-year statute of limitations and three-year statute of repose applies to a Section 11 claim of the 1933 Securities Act.  However, Plaintiffs and Defendant Provident part company as to whether or not Fed.R.Civ.P. 15(c) permits a relation back of Plaintiffs' restatement claim to the original Section 11 claim which was timely filed by Plaintiffs in this action.

Fed R. Civ. P. 15(c) deems an amendment asserting a claim which "arose out of the conduct, transaction or occurrence attempted to be set forth in the original pleading" to relate back to the original pleading. *Pruiss v. Bosse*, 912 F. Supp. 104, 105-106 (S.D.N.Y. 1996). The main inquiry under Fed.R.Civ.P. 15(c) is whether adequate notice has been given to the opposing party "by the general fact situation alleged in the original pleading." Id. at 105 citing *Rosenberg v. Martin*, 478 F.2d 520, 526 (2d. Cir. 1973), cert. denied, 414 U.S. 872, 94 S.Ct. 102 (1973). *See Also, Schiavone v. Fortune*, 477 U.S. 21, 31, 106 S.Ct. 2379 (1986) (linchpin is notice within limitations period). Another formulation of the analysis under Rule 15(c) is whether "the adverse party, viewed as a reasonably prudent man, ought to have expected that the character of the original pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question." 6 Wright & Miller, *Federal Practice and Procedure,* 1989 Supp., § 1497, p. 270.

When a suit is filed in federal court, the defendant knows that the whole transaction described in it will be fully scrutinized, by amendment if necessary. *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir. 1944), *cert. denied*, 324 U.S. 878, 65 S.Ct. 1926 (1944); *See Also, Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 9, 12-13 (S.D.N.Y. 1985). It knows that discovery will follow, and that leave to amend will be freely granted. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99 (1957). However, despite the foregoing, an amendment will not relate back if it sets forth a new set of operational facts. Id.; See, *Holdridge v. Hever-Schulte Corp. of Santa Barbara*, 440 F.Supp. 1088, 1093 (N.D.N.Y. 1977). It can only make more specific what has already been alleged. Id.

In *Pruiss*, one of the cases relied upon by Defendant Provident, plaintiffs set forth in their proposed amended complaint new instances of defamation. Id. at 105. Although the content of the defamatory statement in the proposed amended complaint was the same as the content of the statements in the original complaint, the new claim named a new party as well as new dates. Id.  As a result, the court found that the new claim did not relate back to the original claim.

However, in contrast, in *Contemporary Mission, Inc. v. New York Times, Inc.*, 665 F.Supp. 248, (S.D.N.Y. 1987), the district court found that one publication of several similar libelous statements was found to be a single transaction for amendment purposes. Id. at 256.  The district court stated that the defendant should have anticipated that other aspects of the article would be challenged and permitted the relation back of the claim. Id.  Here, the gravamen of Plaintiffs' Complaint was that the merger was fraudulently induced.  This has never changed, and the CAC, based upon Defendant Provident's massive restatements, merely added specificity. The fraudulent inducement remains the same; the CAC merely adds specificity that was previously unknown and within the exclusive custody and control of the Provident Defendants (and Defendant E&Y) until Defendant Provident announced it to the world on March 5, 2003.

The present case is much more analogous to *Contemporary Mission, Inc.* than *Pruiss*.  The restatement claim flowed from the same Proxy Materials/Registration Statement, or the same transaction or occurrence from which Plaintiffs' earlier claim of material misstatement originated.  The restatement claim did not allege a completely new set of facts, but only made more specific what had already been pled.  Further, Plaintiffs

did not try to bring Defendant Provident in as a new party as was the case in *Pruisse*. Rather, Defendant Provident has been in the action from the very beginning.

Similarly, Defendant Provident was definitely on notice of Plaintiffs' claim. Although Plaintiffs were not on notice, and could not have been on notice, of the restatement claim until March 5, 2003 when the restatement was published, Defendant Provident knew or should have known of this impending restatement given the recklessness with which it incorporated its financial statements in the Proxy Materials/Registration Statement. Provident Defendants knew, but did not disclose, the extent to which it relied upon securitization of loans to generate corporate profits. In particular, Defendant Provident knew that it neither disclosed the proportion of Provident's Financial's reported earning that related to its huge loan portfolio nor that thousands of auto leases were incorrectly treated. Thus, unlike in *Pruiss*, Plaintiffs' restatement claim should relate back because Defendant Provident was on notice of the restatement claim since it knew that it would be pled as soon as the restatement was publicly announced.

Finally, relation back in this case will also not disrupt the public policy behind statutes of repose. Statutes of repose represent a pervasive legislative judgment that justice requires an adversary to be put on notice to defend for a specific period of time, after which the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Sorenson v. Law Offices of Theodore Poehlmann*, 327 Ill. App.3d 706, 764 N.E.2d 1227, 1230, (Ill. Ct. App. 2002)(internal quotations omitted). Similarly, the Fourth Circuit has stated that "[I]n contrast to statutes of limitation, statutes of repose serve primarily to relieve potential defendants from anxiety over liability for acts

committed long ago. . ." *Goad v. Celotex Corp.*, 831 F.2d 508, 511 (4th Cir. 1987) citing *Bolick v. American Barmag Corp.*, 306 N.C. 364, 293 S.E.2d 415, 418 (N.C. 1982), cert. denied, 487 U.S. 1218 (1988).

These concerns are not present in this action. This is not a case like *Morrin* where the fraud was not discovered, or originally pled, until after the three-year period had lapsed. Rather, Plaintiffs had already filed their Section 11 claim against Defendant Provident prior to the expiration of the one-year statute of limitations and three-year statute of repose. Plaintiffs merely expanded upon its previous claim in relation to the Proxy Materials/Registration Statement by adding the restatement claim. Further, despite the fact that Plaintiffs could not have learned of the restatement claim until March 5, 2003, as soon as Plaintiffs did learn of it, they moved expeditiously to file the restatement claim within two days of it being publicly announced. Thus, since the public policy considerations behind the statute of repose would not be hindered by the relation back of Plaintiffs' restatement claim, Plaintiffs' restatement claim should not be dismissed on the basis of public policy.

Furthermore, when the public policy reasons behind the statute of repose are adhered to, courts have been willing to extend the statute of repose. In *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 553-54, 94 S.Ct. 756 (1974), the United States Supreme Court permitted legal tolling as to the statute of limitations in a class action. Putative class members sought to intervene to pursue their individual actions after the trial court had denied class certification because the proposed class failed the numerosity requirement. Id. at 543-544. The Supreme Court ruled that the statute of

limitations had been tolled for the members of the putative class by the commencement of the class action, and thus that purported members later seeking to intervene to assert their individual claims were not time-barred. Id. at 552-53; *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353-354, 103 S.Ct. 2392 (1983) (*American Pipe Construction Co.* extended to cover putative class members who file separate actions, rather than seek intervention, after class certification is denied).

The Court in *American Pipe* held that such a rule fulfilled two policy roles. First, the rule promotes the efficiency and economy of class action litigation, as class actions are "designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." Id. at 550. If the claims of unnamed plaintiffs were not tolled, "potential class members would be induced to file protective motions to intervene or to join in the event that a class was later found unsuitable. " Id. at 553. Second, this rule is consistent with the rationale underpinning a statute of limitation, or providing defendants with timely notice and avoiding stale claims. Id. at 554-555.

The rule in *American Pipe Construction Co.* has been extended to statutes of repose. *Joseph v. Wiles*, 223 F.3d 1155, No. 99-1258, 2000 WL 1089514, at *14 (10th Cir. Aug. 4, 2000) (holding that *American Pipe Construction Co.* applied to statute of repose); *In re Discovery Zone Sec. Lit.*, 181 F.R.D. 582, 600, n.11 (N.D. 1998) (finding that securities fraud class action "legally tolled" statute of repose); *Salkind v. Wang, Civ. A.*, 1995 U.S. Dist. LEXIS 4327, No. 93-10912- WGY, 1995 WL 170122, at *3 (D. Mass. March 30, 1995 (finding that "*American Pipe* does toll the . . . bar of repose for as many of [plaintiff's] claims which are part of the class action against the same defendant(s) until the class is decertified or plaintiff opts out"); *Mott v. R.G. Dickinson &*

*Co.*, 1993 U.S. Dist. LEXIS 3047, No. 92-1450- PFK, 1993 WL 63455, at *5 (D. Kan. Feb. 24, 1993) (acknowledging that class action tolls statute of repose as to absent class members suing same defendant). In other words, the courts found that the statute of repose could be extended to the rule in *American Pipe Construction Company* because the public policy reasons behind the rule were consistent with the public policy reasons behind the statute of repose.

The result should be the same in the present case. In the same way that that the statute of repose was extended in *American Pipe Construction Co.* type cases because there was no concern that the defendants would not have notice of the claim, or that a stale claim was being filed, it should also be extended in this case because these concerns are also nonexistent. As stated above, Plaintiffs have already timely and thoroughly pled their claims related to Defendant Provident's fraudulently induced merger such that Defendant Provident had more than ample notice of this claim. The restatement claim did not change that claim, but merely provided additional specificity. Finally, the restatement claim was anything but stale since Plaintiffs filed it within two days of receiving notice of it. Therefore, in addition to being permitted to relate the restatement claim back to the Section 11 claim in the original complaint pursuant to Fed.R.Civ.P. 15(c), the statute of repose in relation to the restatement should be extended because the reasons for doing so are consistent with the public policy arguments behind the statute of repose.

Finally, since Plaintiffs did not know, and could not have known, of Defendant Provident's restatement claim until March 5, 2003, Plaintiffs also have an argument that the restatement claim should not be barred by the statute of repose based upon equitable tolling. In *Joseph v. Wiles*, the Tenth Circuit discussed equitable tolling and stated that it

was appropriate where the claimant has filed a defective pleading during the statutory period, or where the plaintiff has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. Id. at 1166; *See, Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 79 S.Ct. 760 (1959).

In the present case, Plaintiffs' equitable tolling argument is based upon the latter. It cannot be disputed that Defendant Provident fraudulently concealed its true financial statements until the restatement was publicly announced on March 5, 2003, or that Plaintiffs had no way of knowing of the financial misstatements until the restatement was announced. Although the Plaintiffs expeditiously filed their restatement claim within two days of the restatement being publicly announced, there was no way for the Plaintiffs to have filed their restatement claim within the three-year statute of repose because Defendant Provident (and Defendant E&Y) fraudulently concealed this claim until the statute of repose period had elapsed.

Therefore, for the foregoing reasons, Plaintiffs' restatement claim should not only not be barred by the statute of repose because the claim relates back to the filing of the Section 11 claim in the original complaint pursuant to Fed.R.Civ.P.15(c), but also because the public policy reasons for extending the statute of repose in this case are consistent with the general public policy reasons behind the statute of repose, and because equitable tolling should be applied based upon the facts of this case.

**B.  There is No Genuine Issue of Material Fact as to Whether or Not the Restatement is Material.**

Defendant Provident next makes the argument that the restatement is not material. This argument is not only factually and legally without merit, it is also incomprehensible. Restatements of financial statements are not only consistently found by Ohio courts to be

materially misstated, but there is usually no argument as to this issue. Defendants usually readily admit that restatements are material misstatements. This case may be unique in that Defendant Provident has declared to the word the materiality of its erroneous accounting through its restatements, since that is the very definition of a restatement, but is unwilling to make this same admission in a court of law. Wall Street certainly did not misunderstand the meaning of these restatements, and Plaintiffs are confident that this Court will not either. However, at any rate, this indefensible position is completely eviscerated by federal law and the affidavits of Plaintiffs' independent economic damages expert Ervin Schoenblum, (Attached as Exhibit 1) and their accounting expert Ross D. Fuerman,, Ph.D., J.D. (Attached as Exhibit 2).

In *In re Hayes Lemmerz International Inc. Equity Securities Litigation,* 271 F. Supp.2d 1007, 1014-1015 (E.D. Michigan 2003), the issuer restated two years of annual financial statements and one quarterly financial statement. Id. The defendant directors, officers, and auditors unanimously conceded that the previously issued financial statements were materially misstated and only argued over the extent to which the restatement evidenced their scienter. Id. The result was the same in *In re Corrpro Securities Litigation,* 2003 U.S. Dist. LEXIS 22869, (N.D. Ohio 2003). The issuer restated one year of annual financial statements and three quarterly financial statements. Id. at 1-3. The defendants conceded that the previously issued financial statements were materially misstated, and only made their arguments based upon scienter and a failure to plead the fraud with particularity. Id.; *See, In re SCB Computer Tech, Inc.*, 149 F.Supp.2d 334, 1014-1015(E.D. Michigan 2003) (Defendants conceded material misstatements when issuer restated two years of financial statements and three quarterly financial

statements, and only challenged the plaintiffs' allegation that their magnitude evidenced the defendants' scienter); *See, In re Telxon Corporation Securities Litigation,* 133 F. Supp.2d 1010, 1025 (N.D. Ohio 2000) (Texlon admitted its prior disclosures were materially misstated when it issued the restatements which gave rise to the litigation).

However, one aberration in this area of law is *In re SmarTalk Services, Inc.*, 124 F.Supp.2d 527, 543 (S.D. Ohio 2000). In *In re SmarTalk Services, Inc.*, the defendants did not concede that their restatement was materially misstated. Rather, the defendants argued, in part, that the statement was not false when made. Although this Court stated that it agreed with defendants that a restatement alone was not sufficient to establish securities fraud, this Court added that the defendants could not legitimately contend in a motion to dismiss that a restatement was not sufficient to establish that the original statements were false when made. Id.

In the present case, Defendant Provident not only does not concede that its previously issued financial statements were materially misstated, but attempts to make the same type of argument which the defendants made in *In re SmarTalk Services, Inc.* Defendant Provident argues that the previous financial statements were not per se material misstatements, but that the restatements pose the question of whether or not misstated financial in the Proxy Materials were material to the reasonable investor who was deciding whether to approve the Provident Merger. (Provident Memorandum, p. 7). In particular, the Provident Defendants argue that the restated numbers were not that important to the merger transaction because (1) the restated numbers would have an immaterial impact on the stock price at the time of the OHSL merger, and (2) the restated

numbers resulted in an immaterial reduction in net income for the period 1997, 1998 and the first half of 1999. This argument is faulty for two main reasons.

First, as stated above, the legal argument that the restatement Provident Defendant was insufficient to establish that the original statements were false when made was soundly rejected by this Court in *In re SmarTalk Services, Inc.* Id. at 543. Further, Plaintiffs have been unable to find any case in the Sixth Circuit which has held that financial statements that were subsequently discredited by a net income-decreasing restatement were not materially misstated. Thus, Defendant Provident's legal argument is without merit.[1]

Second, Defendant Provident's factual argument is also without merit. Defendant Provident largely relies on the affidavit of Defendant Provident Senior Vice President, Tayfun Tuzun as support for its factual argument that the restatement was not material. However, this decision is rather stunning since Mr. Tuzun is one of the wrong-doers who perpetrated the massive fraud perpetrated by Defendant Provident. Given that Defendant Provident is a multi-billion dollar entity, Plaintiffs would have thought that they could find someone else who could have presented an unbiased opinion on their behalf. The fact that they could not speaks volumes about their case. Further, as argued in greater detail in Plaintiffs' Motion to Strike the Affidavit of Tayfun Tuzun (Doc. No. 280), which is incorporated by reference in this document, Mr. Tuzun's affidavit is also procedurally improper on many levels and, consequently, should be stricken on this basis as well.

---

[1]  Plaintiffs assume that Defendant Provident reached the same result since it does not cite any case for this proposition of law either.

In contrast, the credentials of Schoenblum and Fuerman are beyond reproach, and their affidavits[2] eliminate all arguments which Defendant Provident puts forth in their memorandum and cross motion for summary judgment regarding that the massive fraud and the massive restatements resulting from the fraud are not material. Mr. Schoenblum, an independent and respected expert in the field, unequivocally dismisses the arguments presented by Defendant Provident. Mr. Schoenblum first counters Defendant Provident's argument that the restated numbers would have an immaterial impact on the stock price at the time of the OHSL merger by stating that the Provident would have been materially less attractive as a merger partner if Provident had not overhauled its financial statements in the years leading up to the merger including 1999, and had not improperly accounted for the hundreds of millions of dollars of auto lease transactions.(Schoenblum Affidavit, pars. 7, 17, 18, 25).

Also, Mr. Schoenblum disputes Provident's contention that the restated numbers did not result in a material reduction in net income for the years of 1997 to 1998, and the first half of 1999, because it was only a matter of timing, and not an overall reduction in income. (Schoenblum Affidavit, par. 20). In particular, Mr. Schoenblum stated that Mr. Tunzun astonishingly ignores the time value of money. (Schoenblum Affidavit, par. 21). Also, Mr. Schoenblum disagreed with Defendant Provident's contention that the Second

---

[2]     Schoenblum Affidavit II, filed in support of Plaintiffs' Reply Memorandum and in opposition Defendant Provident's Cross Motion for Summary Judgment, includes both the original Schoenblum Affidavit (Schoenblum I) attached to the Plaintiffs' Motion for Partial Summary Judgment, and his curriculum vitae.

Fuerman's Affidavit (Fuermann II) is also filed in support of Plaintiffs' Reply Memorandum and in opposition to Defendant Provident's Cross Motion for Summary Judgment, and includes both Fuerman's original Report (Fuerman I) and his curriculum vitae.

Restatement had either no impact, or a positive impact, on the PFGI price because there was no decrease in the PFGI share price after the Second Restatement. (Schoenblum Affidavit, par. 22). Mr. Schoenblum stated that the price did not drop because share prices of the regional banks in the entire industry had been increasing, and because the nine years of artificially inflated earnings were now behind Defendant Provident, and the $44.4 million in earnings which had been fraudulently inflated for the previous years would be positively reflected in the years to come. (Schoenblum Affidavit, pars. 23, 24). In sum, Mr. Schoenblum stated that the First and Second Restatements were extremely material because had the truth been known about Provident's artificially inflated earnings and stock price by McDonald Investments, Inc., the OHSL Board, and the OHSL shareholders when the merger was considered, the merger would not have occurred. (Schoenblum Affidavit, par. 25).

Similarly, the affidavit of Ross Fuerman is equally persuasive on the issue of the materiality of the restatements. Dr. Fuerman is an expert in accounting and auditing who is bound by the AICPA Code of Professional Conduct, "General Standards" (AICPA 2002), which requires objectivity. (Fuerman Affidavit, par. 3) Since his particular specialty is restatements, and there is no other comparable expert before this Court, Plaintiffs submit that his opinion should be given great weight. (Fuerman Affidavit, par. 7). This is especially the case if Mr. Tuzun's affidavit is stricken, as Plaintiffs believe that it will be based upon the arguments presented in support thereof.

Dr. Fuerman also clearly and concisely explains why he believes that the there is no other conclusion that can be reached other than that the restatements were material. (Fuerman Affidavit, pars. 6-10). In particular, he states that a restatement can be defined

in accounting terms as nothing less than an admission by the issuer that the previously issued financial statements were materially misstated. (Fuerman Affidavit, par. 9). Dr. Fuerman finds it logically inconsistent that unjustifiable under APB No. 20, or any other accounting standard, that Defendant Provident would restate its financial statements and then claim that they are not material. (Fuerman Affidavit, par. 10). In the words of Dr. Fuerman, Defendant Provident cannot have it both ways. Id.

Also, unlike Mr. Tuzun, Dr. Fuerman relies upon accounting principles, rules, and his accounting experience, when making his opinions. As a result, although Defendant Provident ostensibly offers the Tuzun affidavit in rebuttal, these opinions cannot be accepted by this Court because there is no reliable basis for his opinions for the reasons more particularly discussed in the Motion to Strike (See, Doc. No. 280). In reality, Mr. Tuzun is simply opining on his own work. Tuzun is a wrong-doer, and he admits in his affidavit that he was a part of the massive fraud perpetrated by Defendant Provident since he was involved in the creation of the same misstated financial statements that are at issue in this litigation. (Tuzun Affidavit, par. 1; Fuerman Affidavit, par. 5). His "conclusions" that the massive restatements were not material are not only unreliable and inadmissible, but insulting to the intelligence of this Court.

Thus, since Defendant Provident's only affidavit in support of its memorandum in opposition to Plaintiffs' Motion for Summary Judgment is that of a Provident wrong-doer who lacks the educational qualifications to testify as an expert on accounting restatement matters, Plaintiffs' Motion for Partial Summary Judgment should be granted because Defendant Provident cannot counter the overwhelming legal and factual evidence submitted by the Plaintiffs on this issue.

**C. Defendant Provident's Request for Additional Time Should be Denied.**

Although Plaintiffs' Motion for Partial Summary Judgment as to the Restatement Issue was filed within the guidelines provided by the Scheduling Order (Doc. No 221), Defendant Provident seems to have been taken by surprise by Plaintiffs' Motion as evidenced by Defendant Provident's request for additional time to respond. It is hard to interpret such a request as anything more than mere posturing by Defendant Provident. Although Defendant Provident definitely should have known that it would need to retain an independent expert on restatements when the Plaintiffs originally filed this action, at the very least, Defendant Provident should have known of this need no later than March 5, 2003. When a multi-billion dollar entity files a restatement which reveals that it has perpetrated a massive fraud, it cannot seriously believe or argue that it did not know that it would need to retain an independent expert on restatements to defend the numerous lawsuits which it knew would be filed, and have been filed, in relation to this fraudulent misconduct. Delay should not be rewarded.

Curiously, Defendant Provident also almost seems to challenge the timing of the filing of Plaintiffs' Motion for Partial Summary Judgment. Although Plaintiffs have filed their Motion for Partial Summary Judgment within the time guidelines established by the Court, Defendant Provident seems to be implicitly criticizing Plaintiffs for doing so. (*See*, Memorandum in Opposition at 1)[3]. However, as there is no basis for this criticism, there

---

[3] Disappointingly, this is not the first time that Provident (and other Defendants) have directly criticized, and/or insinuated, that Plaintiffs and their counsel have not complied with Orders of this Court when there was no basis to do so. Such arguments do not go to the substantive legal issues before this Court, but just unnecessarily distract from them.

is also no basis for granting Defendant Provident's request for an extension of time to retain a restatement expert. This is because no matter what extension of time is provided, it will be difficult, if not impossible, for Defendant Provident to find an independent restatement expert willing to testify that the restatements at issue were not material. This is probably why Defendant Provident is presently relying upon the testimony of Tayfun Tuzun and why Defendant Provident has yet to find a restatement expert. However, this is not a problem which time can cure. Thus, Defendant Provident's request for an extension of time should be denied, or limited to a reasonable amount of time, so that Defendant Provident is not given an unlimited amount of time to embark upon a hunting expedition to bag a restatement expert.

## III.  CONCLUSION

Thus, based upon the foregoing reasons, and all of the arguments set forth in the documents incorporated by reference, Plaintiffs' Motion for Partial Summary Judgment on Liability Issues Under Section 11 of the 1933 Act should be granted.


Dated: 5 March 2004

                              **GENE MESH & ASSOCIATES**

                              Respectfully Submitted,

                              _Michael Br_

                              Gene Mesh (0002076)
                              Michael G. Brautigam
                              2605 Burnet Avenue
                              Cincinnati, Ohio 45219-2502
                              (513) 221-8800
                              (513) 221-1097 (Facsimile)

                              Attorneys for Plaintiffs and the Class

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs' Reply Brief in Further Support of their Motion for Summary Judgment and Opposition to Provident's Cross-Motion was served this 5th day of March 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

J. Michael Debbeler, Esq.
John B. Pinney, Esq.
Graydon, Head & Ritchey
511 Walnut Street, Suite 1900
Fifth Third Center
P.O. Box 6464
Cincinnati, Ohio 45202-3157

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202

**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

James E. Gauch, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

_____
Stephanie A. Hite

19