# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, on behalf of himself and of all others similarly situated, | : : : | Case No. C-1-00-793 |
| | : | Judge Sandra S. Beckwith |
| Plaintiff, | : : | Magistrate Judge Hogan |
| vs. | : | |
| OHSL Financial Corporation, et al. | : : | **AFFIDAVIT OF ROSS D. FUERMAN,** |
| Defendants. | : | **Ph.D. (Accounting), J.D., CPA, CFE** |

| | |
|---|---|
| STATE OF MASSACHUSETTS | : |
| | : SS: |
| COUNTY OF SUFFOLK | : |

**ROSS D. FUERMAN, being duly sworn, deposes and states as follows:**

1. I have been retained by Plaintiffs as an expert in the field of accounting and auditing. My CV is attached to this affidavit as Exhibit A.

2. I make this affidavit in further support of Plaintiffs' Motion for Partial Summary Judgment Re Provident's Restatements, and in Opposition to Provident's Cross-Motion for Summary Judgment.

1

My initial report in support of Plaintiffs' Motion for Summary Judgment is attached as Exhibit B.

3. I am a member of the American Institute of Certified Public Accountants ("AICPA"). As such, I am bound by the AICPA Code of Professional Conduct, "General Standards" (AICPA 2002), which requires objectivity. I am also bound the Statement on Standards for Consulting Services (SSCS) No. 1, Definitions and Standards (AICPA 1992), which requires competence, care, planning, integrity, and opinions supported by relevant data.

4. I have reviewed Provident's submissions, including its Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment and the Attachments thereto, Provident's Cross-Motion, and other related data. I have also reviewed Plaintiffs' Motion to Strike or Otherwise Not Consider the Tuzun affidavit. (Doc. No. 280).

5. I note at the outset that I have not been provided the opportunity to respond to an opinion from a legitimate expert in materiality in the context of restated financial statements. A Senior Vice President of Provident who admits that he is implicated in the creation of the same misstated financial statements that are at issue in this

litigation cannot legitimately hold himself out as an expert in materiality in the context of restated financial statements. In other words, I believe that Tuzun is one of the wrongdoers who is responsible for, to some degree, Provident's materially misstated financial statements, so it is hardly surprising that he attempts to defend his own mistakes, be they intentional or otherwise. Additionally, in his affidavit, Tuzun evidences no knowledge of accounting or auditing standards, and appears ignorant of the fact that "potential users of financial information most directly concerned with a particular business enterprise are generally interested in its ability to generate favorable cash flows because their decisions relate to amounts, *timing*, and uncertainties of expected cash flows"[1] (emphasis added). Tuzun is not a member of the AICPA.[2] Neither is Tuzun a Certified Public Accountant in the State of Ohio.[3] He ignores the relevant facts and accounting standards, as if they did not exist, and as though these have not been the primary bases for prior judicial decisions. While I discuss the issue of materiality in the context of restated financial statements

---

[1] Statement of Financial Accounting Concepts No. 1, ¶ 25, "Objectives of Financial Reporting by Business Enterprises," Financial Accounting Standards Board, November, 1978.
[2] Per telephone call to the AICPA on March 3, 2004.
[3] Per search on March 3, 2004 at http://acc.ohio.gov/query.asp.

based on accounting standards, he discusses materiality based on his thoughts and feelings. To me, it is only fair that the Court entirely dismiss his purported testimony.

6. As I have previously opined in my expert report, Provident's restatements were material, and as such, their impact was something that certainly would have been considered by OHSL shareholders as they considered whether or not to merge with Provident.

7. While I leave the quantitative elements to Plaintiffs' expert on economic damages, Ervin Schoenblum, my conclusions as an expert in the fields of accounting and auditing, with a particular emphasis on restatements, as well as my personal experiences, indicate to me that it is without doubt that OHSL shareholders would have wanted to consider—and were entitled to consider—whether Provident's financial statements were materially false and misleading. I conclude that Provident's financial statements as presented to the OHSL shareholders for their consideration in the fall of 1999 **were** materially misstated, as there is simply no other conclusion that can be drawn. This is in part because Provident admitted the material falsity of their financial statements with the

massive restatements in March and April of 2003. As noted throughout, only material differences are corrected by a restatement. To the extent that Provident argues that the restatements were immaterial, this is oxymoronic, and in violation of GAAP.

8. Provident's restatements were material. Given the fact that this was a restatement of core earnings,[4] and the adverse market reaction,[5] there is no other conclusion that could be drawn by any legitimate expert.

9. With respect to the accounting and auditing issues, some accounting standards are complex and subject to debate. This is not one of them. This is clear and easy. Under the accounting standards, particularly Accounting Principles Board Opinion No. 20, the restatement of previously issued financial statements is a *per*

---

[4] Core earnings are the earnings generated by the primary operations of the business. Securitization transactions of Provident or any other bank certainly fall in this category. One can only conclude, based on accounting or auditing standards or academic research that a restatement of core earnings is a per se admission that the previously issued financial statements were materially misstated.

[5] In my research, I have found scenarios where a company made a single restatement announcement. Also, as in Provident, I have found scenarios where a company made multiple restatement announcements. Whether the company terms this one restatement with multiple announcements or multiple restatements makes no difference in the market reaction. The market reaction to the first announcement is almost always the most severe, because not only are users of the financial statements told that the numbers are different, they also lose their prior belief in the credibility of management's financial reporting of the company's results and financial condition.

*se* admission by Provident that its previously issued financial statements were materially misstated. In other words, had Provident found errors, unintentional or otherwise, and decided not to restate its financials, this would be evidence that Provident, in conjunction with whatever experts were advising them, had concluded that the errors were not material. This is not the case here. Provident, in conjunction with PricewaterhouseCoopers, and perhaps to a lesser extent Ernst & Young, concluded that their financials were materially misstated, thus necessitating a restatement.

10. Specifically, Tuzun implies on page 2 of his affidavit that it was correct to issue the restatements, but that they were not material. This is logically inconsistent, and cannot be justified under APB No. 20 or any other accounting standard. If Provident's numbers were not materially misstated, it would be a violation of GAAP for Provident to restate its financials. In other words, Provident cannot have it both ways: Provident cannot say that they restated their financials, but these Restatements are not material. The accounting and auditing standards are clear that a restatement is material *per se*.

**FURTHER AFFIANT SAYETH NAUGHT**

_____
**Ross D. Fuerman**

Sworn to before me and subscribed in my presence this 4 day of March 2004.

middlesex, ma

Christopher J Dutra

my commission expires 8-22-08