# Exhibit A

**ROSS D. FUERMAN**
Department of Accounting
Sawyer School of Management
Suffolk University
Boston, MA  02108-2770
Office: (617) 573-8615
Home:  (617) 969-6361
rfuerman@aol.com
Http://www.suffolkacct.org/rfuerman/

| | |
|---|---|
| **Academic Positions:** | Associate Professor, 2003 to present.  Assistant Professor, 1997 to 2003.  Suffolk University, Boston.<br>Instructor, 1995-1997.  University of Cincinnati, Cincinnati.<br>Graduate Research and Teaching Assistant, 1991-1995.  University of Cincinnati. |
| **Education:** | Ph.D. in Accounting, University of Cincinnati. 1996.<br>J.D., George Washington University, Washington, D.C. 1982.<br>M.A., Jewish Theological Seminary, New York.  1978.<br>B.A., University of Cincinnati, *cum laude* with High Honors. 1975. |
| **Licensure and Certification:** | Certified Fraud Examiner.  1999.<br>Certified Public Accountant, Ohio.  1987.<br>Bar, Ohio (1983) and the District of Columbia (1982). |
| **Research Interests:** | Cross-disciplinary research involving financial disclosure-related securities fraud, accounting, auditing, law and corporate governance.  Robert Barker described my research in *BusinessWeek*, October 28, 2002, page 129, in The Barker Portfolio, "Auditing the Auditors."  Posted at http://www.businessweek.com/magazine/content/02_43/b3805127.htm |
| **Article Publications:** | "Accountable Accountants," *Critical Perspectives on Accounting*, forthcoming.<br>"Fraudulent Audited Annual Financial Statements in Post-PSLRA Private Securities Class Actions: Determinants of Auditor Litigation,"(with S. Freund and L. Shaw) *Journal of Forensic Accounting*, 2002, Vol 3, No. 1.  Posted at http://www.suffolkacct.org/rfuerman/Freund-Fuerman-Shaw.pdf<br>"Balkanized Auditor Liability Research," *Critical Perspectives on Accounting*, 2001, Vol. 12.<br>"Auditors and the Post-Litigation Reform Act Environment," *Research in Accounting Regulation*, Vol. 14, ed. G.J. Previts, 2000.  Greenwich, CT: JAI Press.<br>"The Role of Auditor Culpability in Naming Auditor Defendants |

in United States Securities Class Actions," *Critical Perspectives on Accounting*, 1999, Vol 10.

"The Effect of the Reform Act and *Central Bank* on Naming Auditor Defendants in Securities Class Actions," *Research in Accounting Regulation*, Vol. 12, ed. G.J. Previts, 1998. Greenwich, CT: JAI Press.

"Naming Auditor Defendants in Securities Class Actions," *Journal of Legal Economics*, Vol. 7 (1), Spring/Summer 1997.

" The Impact of *Central Bank of Denver*: Some Empirical Evidence," *Research in Accounting Regulation*, Vol. 11, ed. G.J. Previts, 1997.  Greenwich, CT: JAI Press.

"The CPA's Responsibilities for Client Related Information," (with James D. Cashell), *The CPA Journal*, September, 1995.

"Accountants and the Client Fault Defense in Indiana,"  *The Indiana CPA*, July, 1993.

"The Accounting Profession's Litigation Crisis," *The Ohio CPA Journal*, October, 1992.

**Working Papers:**      "Audit Quality Examined One Large CPA Firm at a Time: Mid-1990's Empirical Evidence of a Precursor of Arthur Andersen's Collapse," posted at http://ssrn.com/author=85708. It has been downloaded 164 times, as of January 24, 2004.  The paper made the SSRN Top Ten download list in 16 electronic journals:

ARN Meetings All Time Hits

AAA 2004 Mid-Atlantic Region (MAR) Arlington Meeting All Time Hits

American Accounting Association Meetings (AAA) All Time Hits

Public Interest Issues All Time Hits

Dialogue Paper All Time Hits

Auditing All Time Hits

Auditing, Litigation & Tax Recent Hits

Corporate Governance U.S. (Topic) Recent Hits

Corporate Law: Corporate Governance Law Recent Hits

Litigation & Procedure Recent Hits

IO: Firm Structure, Purpose, Organization & Contracting Recent Hits

Experimental & Empirical Studies Recent Hits

Governance & Ownership (Topic) Recent Hits

Empirical Studies (Topic) Recent Hits

LSN Litigation, Procedure & Dispute Resolution Journals Recent Hits

ERN Industrial Organization & Regulation Journals Recent Hits

"Accountable Accountants," accepted at *Critical Perspectives on Accounting*, posted at http://ssrn.com/author=85708.

2

It has been downloaded 274 times, as of January 24, 2004.  The paper made the SSRN Top Ten download list in six electronic journals:

Securities Law: US (Topic) Recent Hits
Corporate Law: Securities Law Recent Hits
Auditing, Litigation & Tax Recent Hits
Corporate Governance U.S. (Topic) Recent Hits
Corporate Finance: Governance, Corporate Control & Organization Recent Hits
Corporate Law: Corporate Governance Law Recent Hits

**Refereed Conference Proceedings:**

"Audit Quality Examined One Large CPA Firm at a Time: Mid-1990's Empirical Evidence of a Precursor of Arthur Andersen's Collapse," American Accounting Association Auditing Section Midyear Conference, Clearwater, 2004.

"Accountable Accountants," American Accounting Association Northeast Regional Meeting, Stamford, 2003.

"Accountable Accountants," American Accounting Association MidAtlantic Regional Meeting, Philadelphia, 2003.

"Accountable Accountants," American Accounting Association Southeast Regional Meeting, Charleston, 2003.

"The Role of Auditors in Post-Reform Act Private Securities Class Actions," American Accounting Association National Meeting, Philadelphia, 2000.

"The Effect of the Reform Act and *Central Bank* on Naming Auditor Defendants in Securities Class Actions," American Accounting Association National Meeting, New Orleans, 1998.

"The Effect of the Reform Act and *Central Bank* on Naming Auditor Defendants in Securities Class Actions," American Accounting Association Northeast Regional Meeting, Manchester, 1998.

" Differentiating Between Lawsuits With Auditors and Lawsuits Without Auditors: The Roles of Lawsuit Merits and Deep Pockets," American Accounting Association Northeast Regional Meeting, Binghamton, 1997.

"Contemporary Auditor Litigation Risk: An Empirical Investigation Based on Recent Data," American Accounting Association Auditing Section Midyear Conference, Jacksonville 1997.

"A Qualitative Analysis Establishing the Seminality of the *National Surety* Doctrine: The 1987 Texas Tort Reform and the Auditor's Use of the Comparative Fault Defense, "American Accounting Association Ohio Regional Meeting, Columbus, 1994.

"Auditors and the Client Fault Defense in Comparative Negligence Jurisdictions," American Accounting Association Ohio Regional Meeting, Dayton, 1993.

**Editorial Boards**         *Journal of Forensic Accounting.*
*Research in Accounting Regulation.*

**Ad Hoc Referee**           *Advances in Accounting.*
*Critical Perspectives on Accounting.*

**Advisory Board:**          Member of the Advisory Board of AccountingMalpractice.com.

**Presentations**            Presentation to the Fraud! Detection and Prevention continuing
**to Professional**              professional education seminar, cosponsored by the Suffolk
**Practice:**                    University Master of Science in Taxation Program, the
                             Internal Revenue Service, and the Suffolk University
                             Corporate Education Department, November 16, 1999.
                             "Keeping Internal Auditors' Reports on Environmental Problems
                             Confidential: The Problem, Some Solutions, and a
                             Legislative Update," Cincinnati chapter of the Institute of
                             Internal Auditors, May 15, 1996.

**Grants, Honors**           Practising Law Institute Accountants' Liability After Enron
**and Awards:**                  Seminar Scholarship, 2002.
                             Sawyer School of Management Summer Research Grant, 2001
                             Practising Law Institute Financial Fraud in Public Companies
                                 Seminar Scholarship, 2000.
                             Kelly Siddall Grants, 1995 and 1996.
                             American Accounting Association Doctoral Consortium, 1993.
                             Indiana CPA Educational Foundation Doctoral Loan, 1992-1997.
                             University of Cincinnati Graduate Scholarship, 1991-1995.
                             University of Cincinnati Graduate Assistantship, 1991-1995.

**CPA Examination**          Instructor, Becker CPA Review Course, 1987-1991. Taught
**Review Course**                Auditing, Law, Practice (financial and managerial
                             accounting and federal income taxation) and Theory.

**Teaching Experience:**     I have a decade of teaching experience in Auditing, entry level
                             Financial Accounting, and entry level Managerial
                             Accounting. I founded the Forensic Accounting course
                             Spring 2000 at Suffolk University, and renamed it Fraud
                             Examination Spring 2003.

**Pre-Academe**              Corporate Staff Assistant, Schottenstein Stores Corporation,
**Professional**                 Columbus, Ohio, 1989-1990. Financial liaison for
**Work Experience:**             corporate operations including leasing, purchasing,

4

mortgaging, conveyancing, foreclosing, and factoring.

Syndication Specialist, Cardinal Industries, Inc., Columbus, Ohio, 1988-1989. Prepared text and projections for private placement memoranda and prospectuses for company's securities offerings.

Associate, Enz, Jones & LeGrand, Columbus, Ohio, 1985-1988. Wrote securities documents. Litigated securities fraud cases. Tax planning and tax return preparation.

Financial Institutions Examiner, Ohio Division of Securities, Columbus, Ohio, 1983-1985. Conducted financial statement analysis merit reviews of proposed public offerings.

**Organizational Memberships:**     American Accounting Association.
American Institute of Certified Public Accountants.
Association of Certified Fraud Examiners.

# Exhibit B

# Expert Opinion of Ross D. Fuerman on the Question of Materiality

## I. Introduction

I have been asked by plaintiffs in OHSD 1:00-cv-00793-SSB-TSH to give an opinion, as an expert in financial accounting and auditing. Specifically, I have been asked whether the Provident Financial Group, Inc. (Provident) accounting restatements are material to persons who used Provident financial statements to determine, during the class period (September 27, 1999 to December 3, 1999), whether to vote for a merger which would result in their exchanging their Oak Hill Savings & Loan (OHSL) stock for Provident stock.

As an expert on financial accounting and auditing, I base my opinion solely on the facts as I understand them, and the authorities of United States financial accounting and auditing.

## II. My Background

I am an Associate Professor in the Department of Accounting at Suffolk University's Sawyer School of Management in Boston, Massachusetts, where I teach financial accounting, auditing, and fraud examination. I am an authority on securities fraud litigation research related to accounting malpractice allegations. Restatements are my particular specialty. I was the first academic to document the empirical link between auditor legal responsibility and restated audited annual financial statements (Fuerman 1996). Most of my subsequent research has included the analysis of restated financial statements. I am cited for my work on restatements by Raghunandan, Read, and

Whisenant (2003) and by Palmrose and Scholz (2004). My resume, attached to this opinion, provides further details of my education, experience, research and affiliations. I have not previously been engaged as an expert in any litigation, administrative or regulatory proceeding. My opinion is independent and would be similar regardless who engaged me.

## III. The Question Presented and How it Should be Analyzed

Are the Provident restatements material? When answering questions concerning United States financial accounting and auditing, one must rely on the authoritative literature detailed in Statements on Auditing Standards (SAS) No. 69 (AU 411). One should place primary reliance on certain authorities, secondary reliance on other authorities, etc. This is known as the GAAP Hierarchy or the House of GAAP. Analysis of the financial accounting of a nongovernmental entity such as Provident therefore should primarily rely on the SAS No. 69 "authoritative body pronouncements," which are the following:

- FASB *Statements and Interpretations*
- APB *Opinions* and
- AICPA *Accounting Research Bulletins*.

Of these three authoritative body pronouncements, there is only one on point: Accounting Principles Board (APB) Opinion No. 20. With regard to the lesser authorities, there is on point, in the "other accounting literature" category, an additional genre of authority:

- Accounting textbooks, handbooks and articles. In this case these are research papers by accounting and other professors.

Therefore, this expert opinion, in conformity with SAS No. 69, primarily discusses materiality with regard to APB No. 20, and secondarily with regard to relevant research papers.


## IV. APB No. 20

The Accounting Principles Board was the immediate predecessor of today's Financial Accounting Standards Board (FASB). APB Opinion No. 20 is titled "Accounting Changes." Ideally, there should be no accounting changes from one year, or quarter, to the next, because they impair consistency. Consistency is the ability to meaningfully compare the financial statements of a company from one year, or quarter, to the next. Users of financial statements value consistency because consistency makes it easier to determine whether the company is improving or deteriorating, with regard to its performance. Consistency also makes it easier to determine whether the company is improving or deteriorating, with regard to its financial condition. Such trends, if any, suggest to financial statement users the nature of the future prospects for the company. Thus, consistency is desired as a fundamental objective, in US GAAP.

APB No. 20 addresses the need to sometimes make accounting changes, notwithstanding the preference for consistency in financial reporting. APB No. 20 describes three permissible methods to disclose material accounting changes. If an accounting change is not material, no disclosure should be made (APB No. 20, par. 38). These three methods are as follows:

- Current treatment of accounting changes requires reporting the cumulative effect of the accounting change in the current year's income statement as a special item. Prior period financial statements are not restated.

- Prospective treatment requires no restatement of prior period financial statements. Also, the cumulative effect of the accounting change is not shown in the current year's income statement. Only the current and future years' financial statements will reflect the effects of the accounting change.

- Retroactive treatment, requiring an adjustment to all current and prior period financial statements for the effect of the accounting correction. Prior period financial statements are restated and republished on a basis consistent with the correction. Retroactive treatment, or restatement, is what was done with the Provident financial statements. Neither current treatment nor prospective treatment would be permissible in a case such as Provident, where the company itself states that the accounting was materially incorrect in the previously issued financial statements. A restatement is appropriate if and only if the "correction has a material effect on income before extraordinary items or on net income… [or] a material effect on the trend of earnings.…" (APB No. 20, par. 38).

Provident's previously issued audited annual financial statements for the years ended 1997, 1998, 1999, 2000 and 2001 were restated.[1] Also, previously issued quarterly financial statements for the first three quarters of the year ended December 31, 2002,

---

[1] Provident announced "a restatement to its operating results for the years 1997 through 2002" (SEC Form 8-K filed March 5, 2003). However, this is accurate only in an informal sense. A restatement under APB No. 20 only can occur with regard to financial statements that were previously issued. The annual financial statements of a public company are not formally issued unless and until they are filed, with an audit report, with the SEC. Thus, the company's annual financial statements for 2002 were not formally restated. This kind of ambiguity in SEC filings and in the financial press is commonplace.

were restated. The restatement was preliminarily disclosed to the public in an exhibit (press release) attached to a Form 8K on March 5, 2003. Supplementary information about the restatement was disclosed in the company's Form 10-K, on April 15, 2003, as well as in a Form 8-K, also filed on April 15, 2003. The company disclosed, in its April 15, 2003, filings, that the amount of the restatement was much larger and that the accounting problems were of greater depth and breadth than the company initially disclosed on March 5, 2003.

The restatement was described by the company in the above referenced filings as due to incorrect mathematical modeling and/or incorrect application of GAAP with regard to certain pools of automobile leases. The company's filings stated that the lease assets and liabilities should have been placed on the balance sheet instead of off of the balance sheet. With regard to the income statements, the company stated that net income and earnings per share were overstated.

Regardless which characterization (incorrect mathematics or incorrect GAAP) is emphasized, APB No. 20 defines this financial statement restatement by the company as a clear assertion by the company that each and every one of the restated financial statements, when previously issued, was materially misstated:

> Errors in financial statements result from mathematical mistakes, mistakes in the application of accounting principles, or oversight or misuse of facts that existed at the time the financial statements were prepared…. A change from an accounting principle that is not generally accepted to one that is generally accepted is a correction or an error for purposes of applying this Opinion (APB No. 20, par. 13).

APB No. 20 defines the act of a restatement as an assertion of the company that each restated financial statement was, when originally issued, materially misstated. However, APB No. 20 does not distinguish between corrections of unintentional errors

versus intentional frauds.  The word "error" is used to refer to both genres of material misstatement

APB No. 20 requires before-and-after-restatement disclosure for each restated period, with regard to earnings per share, net income, and (if any extraordinary items) income before extraordinary items (APB No. 20, par. 37).  Provident provided the disclosure mandated by APB No. 20 for the years 2001 and 2000 in its 10-K filed April 15, 2003, in Note 3 in the Notes to Consolidated Financial Statements.  Provident also provided the disclosure mandated by APB No. 20 for the years 1999 and 1998 in that 10-K's Selected Financial Data.  However, Provident did not provide the required disclosure for the year ended December 31, 1997.  Provident did not disclose why it contravened APB No. 20, par. 37, which is part of GAAP.

In Table 1, the data relevant to persons deciding on whether to vote for the merger and thus opt for Provident stock instead of their current OHSL stock, is presented.  As indicated in the discussion above, as well as in Table 1, the full extent of the restatement to the previously issued audited annual financial statements for the year ended December 31, 1997, has not been disclosed.

The full extent of the restatement to the year ended December 31, 1998, both with regard to Net Income and EPS, was a 4% decrease.  The year ended December 31, 1998 was the last set of audited annual financial statements disclosed to OHSL stockholders who had to make a decision on the merger proposal, and thus were important in making that decision.

The full extent of the restatement to the year ended December 31, 1999, both with regard to Net Income and EPS, was a 16% decrease.  Although these audited annual

financial statements were not disclosed to persons who had to make a decision on the merger, they are nonetheless important to consider. The 1999 first and second quarter quarterly financial statements were disclosed to persons who had to make a decision on the merger, and a first order approximation of their overstatement of Net Income and EPS is, logically, 16%. Since only annual, and not quarterly, financial statements were restated for 1999, this heuristic is necessary for a meaningful analysis of materiality.

Another important aspect of the analysis concerns the restatement's impact on Prudential's earnings trend. Prudential originally reported EPS of $2.48 for 1998 and $3.08 for 1999. This was a 24% increase in EPS. Upon restatement, Prudential reported EPS of $2.38 for 1998 and $2.58 for 1999. This is an 8% increase in EPS. An analysis of stock valuation involves the application of a formula to expectations of future dividends, which are in turn based on the expectations of future growth in EPS, payout ratios, and other factors.

Figure 1 depicts the future EPS expectation of an OHSL stockholder in the late summer and early fall of 1999, based on the information available to an OHSL stockholder at that time. Figure 1 is constructed using the originally reported and later restated EPS for 1998 and 1999 and then estimating, assuming the same rate of increase. Figure 1 shows that the originally reported (24% annual increase trend) EPS expectation is much higher after a few years than the restated (8% annual increase trend) EPS expectation. As discussed above, trend analysis is mandated by APB No. 20, par 37, and had to have been the basis, in part, for the Provident decision to restate all the annual financial statements back to 1997. One must conclude that the correction of these accounting misstatements was material and that such restatements were required by APB

No. 20. One must similarly conclude that they were material to the holders of OHSL stock in the late summer and early fall of 1999, in deciding whether to accept Provident stock in a merger transaction.

## V. Research Papers on Restatements

Research papers on the topic of restatements are regarded as less authoritative than APB No. 20. However, one aspect of these papers is on point and should therefore be discussed. This relevant aspect of some of these research papers is that they report the results of research into the consequences of restatements. The consequences of restatements are that the company and persons associated with it may experience litigation if the company's securities decline in the markets in reaction to the restatement. These research papers document the aggregate experience of companies that restate their financial statements. The findings of these papers must be interpreted with caution. First, each case has unique aspects and cannot be reasonably expected to rigidly conform to a benchmark set by aggregate data. Second, regression, the mode of statistical analysis used, proves only association, not causation. Third, simple (one factor at a time) regression may be invalid because the results may be driven by other factors. Fourth, multiple (many factors at a time) regression may be invalid due to multicollinearity. Fifth, the results of these studies are important only to the extent that one believes the simple legal economics suit and settlement paradigm (e.g., Cooter and Rubinfeld 1989) to be valid. According to this paradigm, plaintiffs tend to file meritorious lawsuits because to do otherwise would be against their economic self interest.

Caveats aside, companies tend to experience securities litigation more frequently when they restate their financial statements (Jones and Weingram 1996). The same thing is found with regard to auditors, but only if audited annual financial statements are restated (Fuerman 1999). When the analysis is focused on companies that restate their audited annual financial statements (Palmrose and Scholz 2004), auditors tend to experience litigation more frequently if 1) core accounting issues motivate the restatement. Core accounting issues are issues that concern the normal, recurring earnings from primary operations of the company. The automobile lease financing transactions clearly are core accounting issues for a financial institution such as Provident. Auditors also tend to be sued if 2) a large number of years of financials are restated, 3) if the company's stock price substantially declines when the restatement is announced, or 4) if a large number of line items (within the financial statements for a period) are restated. These 4 factors are present with regard to the Provident restatement. Conversely, the factors 5) government (SEC or DOJ) prosecution and 6) recent initial public offering (IPO) are not present.

The Provident restatement of audited annual financial statements fits the profile on 4 of 6 factors associated with the tendency to name the auditor a defendant (Palmrose and Scholz 2004). Additionally, the last two factors are of problematic meaning. Government prosecutions have historically been infrequent, due to inadequate resources provided to the SEC until very recently (Pitt and Shapiro 1990). Provident, since it is a mature company, cannot fit the profile on the IPO factor.

**VI. Conclusion**

Provident stated in its SEC filings both on March 5, 2003 and April 15, 2003, that it had misstated its annual financial statements for 1997, 1998, 1999, 2000 and 2001, as well as its quarterly misstatements for the first 3 quarters of 2002. It restated each and every one of these financial statements. APB No. 20 requires restatement if and only if the company concludes that the misstatements are material with regard to "net income... [or] the trend of earnings..." (APB No. 20, par. 38). Provident's restatement of each and every one of these financial statements thus makes the misstatement in each and every one of these financial statement *per se* material. The above analysis, presented in a table and depicted in a figure, shows how the management of Provident reached its conclusion that the misstatement in each and every one of these financial statements is material. The misstatements in the 1997 and 1998 annual financial statements were material to OHSL stockholders in deciding whether to accept the Provident merger proposal. The financial statements for the first 2 quarters of 1999 were also material. The 1999 annual financial statements are a reasonable heuristic to use in the materiality trend analysis depicted in the figure, since the first 2 quarters of 1999 were not restated and Provident, in contravention of APB No. 20, par. 37, has not disclosed the full extent of the restatement to the 1997 annual financial statements. The figure suggests that the misstatements corrected by the restatement were more than material – they were highly material.

The review of relevant research papers indicates that Provident fits the profile of companies that experience securities litigation subsequent to restating audited annual financial statements. The suit and settlement literature of the legal economics discipline suggests that the Provident litigation is meritorious and that the misstatements corrected by the restatement were more than material – they were highly material.

# REFERENCES

American Institute of Certified Public Accountants, Statement of Auditing Standards No. 69, "The Meaning of Present Fairly in Conformity with Generally Accepted Accounting Principles," *Professional Standards*, Vol. 1, AU sec. 411).

American Institute of Certified Public Accountants, *Opinions of the Accounting Principles Board No. 20: Accounting Changes* (New York, AICPA, 1971).

Cooter, R.D., and D.L. Rubinfeld, "Economic Analysis of Legal Disputes and Their Resolution," *Journal of Economic Literature*, Vol. 27, No. 3 (September 1989), 1067-1097.

Fuerman, R. D., "The Role of Auditor Culpability in Naming Auditor Defendants in United States Securities Class Actions," *Critical Perspectives on Accounting*, Vol. 10, 1999, pp. 315-338.

Fuerman, R. D., "An Empirical Investigation of the Impact of *Central Bank of Denver* on Securities Disclosure-Related Auditor Litigation Risk," Ph.D. dissertation, University of Cincinnati, 1996.

Jones, C. L. and S. E. Weingram, "The Effects of Insider Trading, Seasoned Equity Offerings, Corporate Announcements, Accounting Restatements, and SEC Enforcement Actions on 10b-5 Litigation Risk," Stanford Law School working paper, December 1996.

Palmrose, Z-V. and S. Scholz, "The Circumstances and Legal Consequences of Non-GAAP Reporting: Evidence from Restatements," *Contemporary Accounting Research*, Vol. 21, No. 1, Spring 2004

Pitt, H. L. & Shapiro, K. L., "Securities Regulation by Enforcement: A Look Ahead at the Next Decade", *Yale Journal on Regulation*, Winter 1990, pp. 149-320.

Raghunandan, K., Read, W. J. and J. S. Whisenant, "Initial Evidence on the Association Between Nonaudit Fees and Restated Financial Statements," *Accounting Horizons*, Vol. 17, No. 3, September 2003, pp. 223-234.

Table 1: Analysis Based on Disclosures Mandated by APB No. 20

| Item | Year | Original Numbers | Preliminary Restatement | Final Restatement | Percent Decreased |
|---|---|---|---|---|---|
| Net Income | 1997 | 114.7 | 113.8 | Not Disclosed | Not Disclosed |
| EPS | 1997 | 2.38 | 2.36 | Not Disclosed | Not Disclosed |
| | | | | | |
| Net Income | 1998 | 122.4 | 120.4 | 118 | 4% |
| EPS | 1998 | 2.48 | 2.44 | 2.38 | 4% |
| | | | | | |
| Net Income | 1999 | 150.9 | 139.6 | 127 | 16% |
| EPS | 1999 | 3.08 | 2.85 | 2.58 | 16% |

| 1998 to 1999 Reported EPS Increase | 1998 to 1999 Restated EPS Increase |
|---|---|
| 24% | 8% |

Table 1: Analysis Based on Disclosures Mandated by APB No. 20

| Item | Year | Original Numbers | Preliminary Restatement | Final Restatement | Percent Decreased |
|------|------|------------------|-------------------------|-------------------|-------------------|
| Net Income | 1997 | 114.7 | 113.8 | Not Disclosed | Not Disclosed |
| EPS | 1997 | 2.38 | 2.36 | Not Disclosed | Not Disclosed |
| | | | | | |
| Net Income | 1998 | 122.4 | 120.4 | 118 | 4% |
| EPS | 1998 | 2.48 | 2.44 | 2.38 | 4% |
| | | | | | |
| Net Income | 1999 | 150.9 | 139.6 | 127 | 16% |
| EPS | 1999 | 3.08 | 2.85 | 2.58 | 16% |

| 1998 to 1999 Reported Net Income Increase | 1998 to 1999 Restated Net Income Increase |
|-------------------------------------------|-------------------------------------------|
| 23% | 8% |

Figure 1: Prudential EPS Trend: Reported vs. Restated 1998 to 2005  ( 2000 through 2005 estimated)

