UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WALTER W. THIEMANN, *et al.*, | ) Case No. C-1-00-793 |
| | ) |
| Plaintiffs, | ) (Judge Sandra S. Beckwith) |
| | ) (Magistrate Judge Timothy S. Hogan) |
| -v- | ) |
| | ) |
| OHSL FINANCIAL CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF AMENDED MOTION TO DISMISS OF DEFENDANTS OHSL FINANCIAL CORPORATION, OAK HILLS SAVINGS & LOAN COMPANY, F.A., PROVIDENT FINANCIAL GROUP, INC., BRINKER, HANAUER, HILLEBRAND, HUCKE, MCKIERNAN, TENOEVER, ZOELLNER, HOVERSON, COOK, GROTE, MYERS, PEDOTO, STEGER AND CAREY**

Dated: March 12, 2004

Respectfully submitted,

/s/ James H. Greer
David C. Greer
James H. Greer
BEISER, GREER AND LANDIS, LLP
400 National City Center
6 North Main Street
Dayton, Ohio 45402
Tel: (937) 223-3277
Fax: (937) 223-6333
Email: dcg@bgllaw.com; jhg@bgllaw.com
Attorneys for OHSL and Provident Defendants

OF COUNSEL:

James E. Burke
Rachael A. Rowe
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

I.  **INTRODUCTION**

Plaintiffs' 79-page Memorandum in Opposition to Defendants' Amended Motion to Dismiss ("Opp.") (doc. 281) completely ignores three of Defendants' arguments, thus conceding that the Section 14, common law fraud, and Ohio securities law claims must be dismissed. Moreover, Plaintiffs' repetitive and frequently off-point response to the other arguments raised in Defendants' Amended Motion to Dismiss, when stripped of the melodrama and irrelevant case citations, reveals that <u>each</u> of Plaintiffs' claims is fatally flawed. For four years, Plaintiffs have relied on incomplete excerpts from depositions and publicly-filed documents to piece together an erroneous, misleading patchwork quilt of every securities-related claim Plaintiffs' counsel could dream up. Defendants have spent much time and effort putting the allegations in Plaintiffs' Complaint in the proper context and attempting to focus the Court's attention on undisputed documents which are at the heart of this case and the legal deficiencies in each of Plaintiffs' claims. Each claim, when stripped to its essence, should be dismissed as a matter of law.[1]

In fact, a judge in this Court has already dismissed similar claims. On March 9, 2004, Judge S. Arthur Spiegel granted a motion to dismiss in several consolidated class actions which alleged that Provident breached certain contracts and violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and Rule 10b-5, and Section 12(2) of the Securities Act of 1933 (the "1933 Act") because of the restated financial results that resulted from Provident's March and April, 2003 Restatements.[2] Judge Spiegel ruled that plaintiffs'

---

[1]  Defendants' Amended Motion to Dismiss further noted the dramatic rise in Provident's stock price since the two restatements, which undercuts any claim of loss causation or class damages. It should be noted that there has been a further development on this topic, of which the Court may take judicial notice. On February 17, 2004, Provident announced that it will merge with the parent company of National City Bank of Cleveland, Ohio in a stock-for-stock transaction that is expected to close in the second quarter of 2004. As a result of this announcement, Provident stock presently is trading in excess of $40 per share.

[2]  Defendants request that the Court take judicial notice of the March 9, 2004 Order in *Merzin v. Provident Financial Group, et al.*, Case No. 1:03-CV-0165, which is attached as Exhibit A to this reply brief.

allegations demonstrated the "existence of complex accounting errors," but did not "support[] an inference of fraud." (Ex. A at p. 16) Plaintiffs' Section 10(b) and control person claims in this case which are based, in part, upon Provident's March and April, 2003 Restatements and their alleged impact on financial data in the 1999 Proxy Materials are similarly deficient. As in *Merzin*, Plaintiffs have not alleged any additional particularized facts which would support an inference that Defendants knew of or recklessly ignored these accounting errors as they occurred or knew that the financials in the Proxy Materials were inaccurate when issued. The plaintiffs in *Merzin* did not adequately allege Defendants acted with scienter, and these Plaintiffs have not either.[3]

## II. ARGUMENT

### A. Plaintiffs' Rule 10b-5 and Section 10(b), 11, 12(2) and 14(a) Claims Fail to Allege Facts Sufficient to Establish that the Proxy Materials Contain Material Misstatements and/or Omissions.

A plaintiff's claims under Sections 11, 12(2), 14(a) and 10(b), and Rule 10b-5 fail as a matter of law if the plaintiff does not sufficiently allege the existence of material misstatements or omissions. Here, Plaintiffs' claims under Sections 11, 12(2), 14(a) and 10(b) and Rule 10b-5 allege the following three misstatements or omissions:

(1) the Proxy Materials omitted Provident's securitization activity;

(2) the Proxy Materials omitted the resignation of OHSL Board member Thomas Herron; and

(3) the "unanimity statement" contained in OHSL's cover letter accompanying the Proxy Materials was materially misleading.

---

[3] Plaintiffs criticize Defendants for "borrow[ing] liberally from their motion to dismiss" in *Merzin* and for using the same legal arguments and the same "catch phrases, such as the CAC 'fails to pass legal muster.'" (Opp. (doc. 281) at 4 n.1) Defendants, however, were correct. The complaint in *Merzin* did fail to pass legal muster. This complaint does, too.

### 1. Provident's securitization activity was adequately disclosed.

This Court already has ruled that the Proxy Materials adequately disclosed that Provident engaged in loan securitizations and that such activity was accompanied by certain risks. (7/25/01 Order (doc. 46) at 21) The Court went on to note, however, that a reasonable investor might want to know what portion of Provident's revenue stream was based on this loan securitization activity. (*Id.*) It is undisputed, however, that this information *was* publicly disclosed as of the date of the Proxy Materials. Provident's Form 10-K for December 31, 1998 and its Forms 10-Q for March 31, 1999 and June 30, 1999 clearly stated the nature of Provident's securitization activity and its proportional impact on Provident's overall profits. (*See* Amended Motion to Dismiss (doc. 264) at 17)

In their opposition brief, Plaintiffs argue, without any legal support, that the Proxy Materials themselves should have disclosed what portion of Provident's revenue stream relied upon loan securitizations and that investors should not be required to conduct "independent research." (Opp. (doc. 281) at 39-40) Investors, however, are presumed to be aware of publicly available information related to the activities of companies issuing proxy materials. *Weiglos v. Commonwealth Edison*, 892 F.2d 509, 515 (7th Cir. 1989); *see also Picard Chemical, Inc. v. Perrigo Co.*, 940 F. Supp. 1101, 1123 (W.D. Mich. 1996) (where information is contained in a document filed with the SEC, investors are deemed to have knowledge of such matters). Thus, while investors may not be required to conduct "independent research" about the activities of a company issuing proxy materials, they are deemed to be aware of related information available in documents filed with the SEC by the issuing company, particularly where, as here, such documents were expressly incorporated by reference in the Proxy Materials. (*See* Amended Motion to Dismiss (doc. 264) at 17 (citing Proxy Statement at 64-65))

The Court should therefore dismiss the CAC allegations related to the Proxy Materials' disclosures about Provident's securitizations.

### 2. Herron's resignation was adequately disclosed.

Plaintiffs do not, and cannot, dispute that Mr. Herron submitted to the OHSL Board an unambiguous letter of resignation stating that he was resigning from the Board for a single reason: "[d]ue to increasing responsibilities and time commitments with Michelman, Inc." This document is not disputed. Plaintiffs, however, ignore Mr. Herron's letter and claim that Herron actually resigned "in protest" of the Provident-OHSL merger, and that the Proxy Materials should have disclosed this "protest resignation." (Opp. (doc. 281) at 34-38) Plaintiffs further argue that the absence in the Proxy Materials of a disclosure of Herron's alleged "protest resignation" "illustrates how much the OHSL and Provident Defendants have lost touch with the true purpose of the Proxy Materials/Registration Statement." (Opp. (doc. 281) at 37)

The Amended Complaint is silent about how this fact, unique to the actions of OHSL's Board, supposedly was known by any of the Provident Defendants. Clearly, however, Mr. Herron submitted a formal letter of resignation to the OHSL Board from which he apparently is attempting to backtrack now that he supposedly is "represented" by Thiemann's counsel.[4] Mr. Herron does not dispute that he wrote the resignation letter, that he did not *ever* submit any letter or other writing even suggesting that his resignation was in protest to the merger, nor that he never requested that his alleged disagreement with the Board about the merger be disclosed. In short, Plaintiffs suggest that all Defendants should be held liable for securities laws violations for not disclosing that Mr. Herron supposedly resigned in protest even though his formal resignation letter said no such thing.

---

[4] *See* Plaintiffs' Motion to Disqualify KMK (doc. 78).

The Proxy Materials did disclose that Mr. Herron had resigned from the OHSL Board and the disclosure was adequate as a matter of law. The table listing the OHSL Directors contained in the Proxy Materials did not list Mr. Herron as an OHSL Director as of July 31, 1999. The Director list published in OHSL's 1998 10-K Annual Report, published a few months earlier and incorporated by reference into the Proxy Materials did, however, list Mr. Herron as a Director. (*See* Proxy Statement at 63-65; OHSL 1998 10-K Annual Report at KMK 01036) Herron's resignation was thus publicly available and readily determinable information, making the Proxy Materials' failure to specifically discuss it immaterial as a matter of law. *Basic, Inc.*, 485 U.S. at 231-32 (omissions immaterial if investors have knowledge of the truth).

Moreover, even assuming that Mr. Herron informed some of the OHSL Directors that he was resigning "in part because he strongly disagreed with the decision to engage in negotiations of a definitive nature with PFGI" (CAC ¶ 50) -- which Defendants and those Directors deny -- Defendants were not obligated to disclose such information. Pursuant to the plain language of SEC Form 8-K, Item 6, subsection (a), such duty only arises when a director has resigned "*because of* a disagreement with the registrant," and "furnished the registrant with a letter describing such disagreement and requesting that the matter be disclosed." Herron did none of these things. As a matter of law, Herron's resignation did not have to be disclosed.

### 3.     The OHSL Board's unanimity statement was accurate.

Ken Hanauer and the rest of the OHSL Board unanimously determined that the proposed merger was in the best interest of OHSL's shareholders. Hanauer voted in favor of the merger as a Director because the deal was fair and in the best interest of the OHSL shareholders, even though for personal reasons (he did not want to retire at 50), he voted his own shares against the transaction at the October 25, 1999 OHSL shareholders' meeting. (Hanauer Dep. at 118)

Significantly, there is not a single allegation in the CAC that Hanauer had decided to vote his personal shares against the Provident merger at the time the Proxy Materials were transmitted, so there is no valid claim that this was a "fact" capable of disclosure. In addition, Plaintiffs cite no case or other law that required Hanauer to disclose in the Proxy Materials (issued a month before he voted) that, although he believed that the proposed merger was in the best interest of the shareholders, he allegedly planned to vote against it to keep his job as OHSL's CEO.

Plaintiffs also claim that the unanimity statement was inaccurate because McKiernan was out of the country when the first Director vote was taken on the proposed merger and because Brinker did not vote. McKiernan was out of the country at the time of the vote, and Brinker, as Chairman of the Board, did not vote unless there was a tie. (Hanauer Dep. at 743-59) It is undisputed, however, in the testimony upon which the CAC purportedly is based, that both McKiernan and Brinker were solidly in favor of the merger. (*Id.*)[5] Moreover, in the minutes from the subsequent August 26, 1999 meeting -- at which McKiernan *was* present -- clearly indicate the OHSL Board unanimously approved the minutes from the prior August 2nd meeting, which contained the OHSL Board's unanimous approval of the proposed merger. (*See* Amended Motion to Dismiss (doc. 264) at 23 n.21)

Plaintiffs' specious argument about unanimity elevates form over substance because it relies upon the actions of two directors who indisputably favored the merger. Clearly, the vote was unanimous and Plaintiffs' claims under Sections 11, 12(2), 14(a) and 10(b) and Rule 10-b(5) fail as a matter of law.

---

[5] Even Herron testified that he had "no doubt at all" that McKiernan would vote in favor of the transaction, and that Brinker, who would only vote "[i]f a tie needed to be broken" was in favor of "continu[ing] negotiations with Provident Financial in order to complete a definitive agreement." (Herron Dep., Vol. II at 261-63).

> B. **Plaintiffs Have Failed to Adequately Allege Scienter and Show Reliance on the Proxy Materials.**
>
> > 1. **Plaintiffs' Section 10(b)/Rule 10b-5 Claim Fails as a Matter of Law Because Plaintiffs Have Not Adequately Pled Scienter.**

Under the PSLRA, Plaintiffs' complaint must "state with particularity *facts* giving rise to a strong inference that the defendant acted with the required state of mind." *Miller v. Champion Enterprises, Inc.*, 346 F.3d 660, 671-72 (6th Cir. 2003) (emphasis added). Plaintiffs' complaint fails to allege any "red flags" which should have put Defendants on notice of the alleged misstatements and omissions in the Proxy Materials. *See In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 553 (6th Cir. 1999).

In their opposition brief, Plaintiffs do nothing but repeat their conclusory allegations of scienter. (*See* Opp. (doc. 281) at 44 (Defendants "acted intentionally or recklessly by disregarding their actual knowledge of these material misstatements and omissions when preparing the Proxy Materials"); Opp. (doc. 281) at 45 (stating, without citation, that Plaintiffs "have set forth allegations regarding defendants' knowledge of the actual circumstances at the time of the Proxy Materials")). There is nothing in the CAC that even hints at any specific facts or red flags that the Defendants knew of or recklessly ignored in 1999 concerning the alleged inaccuracies in the Proxy Materials nor of any accounting errors in the Provident financials. Plaintiffs' non-specific, conclusory allegations are not sufficient to survive a motion to dismiss. *See Helwig v. Vencor, Inc.*, 251 F.3d 540, 551-52 (6th Cir. 2001) (courts must ignore conclusory labels in a Plaintiffs' complaint and concentrate on the facts alleged to determine whether they "produce a strong inference of scienter"); *see also Bovee v. Coopers & Lybrand*, 272 F.3d 356, 361 (6th Cir. 2001) ("Plaintiffs may not simply rely on the proposition that Defendants must have known or should have known of [ . . . ] the fraud").

Without even addressing how the OHSL Defendants supposedly knew anything about Provident's internal accounting, Plaintiffs suggest that the magnitude and nature of the accounting errors announced in the 2003 Restatements demonstrates Defendants' scienter as to the fourth fact allegation (the financial results in the 1999 Proxy Materials).[6] (Opp. (doc. 281) at 43-44) However, this argument specifically was rejected by Judge Spiegel in his March 9, 2004 Order in *Merzin*. (*See* Ex. A at p. 16) In each of the cases Plaintiffs cite, there were allegations of specific red flags which allowed the respective courts to draw an inference of scienter. *See In re Microstrategy, Inc. Sec. Litig.*, 115 F.Supp.2d 620, 640, 643-47 (E.D. Va. 2000) (plaintiffs alleged specific statements made by Defendant's President and CEO that were "probative of a cavalier and manipulative attitude toward disclosure requirements," as well as suspiciously-timed stock sales); *Carley Capital Group v. Deloitte & Touche, L.L.P.*, 27 F.Supp.2d 1324, 1330 (N.D. Ga. 1998) (plaintiffs alleged that prior to issuing audit opinion incorporating understated expense figures and overstated revenue figures, defendant-auditor told company that expenses were understated and income was overstated); *In re the Baan Company Sec. Litig.*, 103 F.Supp.2d 1, 22 (D.D.C. 2000) (plaintiffs alleged specific statements made by defendants which suggested that they knew that company was recognizing revenue from consignment sales before they were final).

There are no such red flags alleged in this case, nor anything to indicate that even Provident personnel knew that the accounting treatment for these transactions – which was understood and sanctioned by Provident's auditors – was incorrect. *See, e.g., In re Credit Acceptance Corp. Sec. Litig.*, 50 F.Supp.2d 662, 666, 679 (E.D. Mich. 1999) (plaintiffs argued magnitude of $60 million increase in credit loss reserves established strong inference of scienter;

---

[6] Plaintiffs do not even claim that they have alleged scienter for the other three fact allegations other than to say that, because these allegedly material misstatements were made, there is an inference of scienter. (Opp. (doc. 281) at 44-45) Conclusory allegations are not enough. *Bovee*, 272 F.3d at 361.

- 8 -

court disagreed because, among other reasons, "Plaintiffs do not allege any specific facts that Defendants were aware of inadequate loan loss reserves," nor "any red flags suggesting deliberate ignorance on the part of Defendants").

Plaintiffs' final argument is that the inference of scienter "is further supported by the evidence of motive" -- *i.e.*, that Defendants were motivated by the desire to "acquire OHSL for artificially inflated currency in the form of Provident shares." (Opp. (doc. 281) at 45) This is insufficient under the PSLRA for several reasons. First, there are no allegations which temporally connect the errors announced in the Restatements -- *i.e.*, the accounting errors, which occurred over a period of nine years (from 1994 through 2002), and the errors in the mathematical model, which occurred over a period of six years (from 1997 through 2002) -- to the 1999 merger at issue in this case. *See, e.g., In re Credit Acceptance*, 50 F.Supp.2d at 677 ("temporal distance weakens any inference of intent that may be drawn from the sales"); *Ressler v. Liz Claiborne, Inc.*, 75 F.Supp.2d 43, 60 (E.D.NY. 1999) (no inference of scienter where "sales did not closely follow the alleged misstatements and were not temporally related to the bad news"). Second, in this Circuit, "the bare pleading of motive and opportunity does not, standing alone, constitute the pleading of a strong inference of scienter." *Comshare,*, 183 F.3d at 551; *Fidel v. AK Steel Holding Corp.*, No. C-1-00-320, 2002 U.S. Dist. LEXIS 188887, at *6, (S.D. Ohio Sept. 19, 2002) ("Plaintiffs may not plead scienter by alleging facts merely establishing that defendant had a motive and opportunity to commit securities fraud if those facts do not establish simultaneously that defendant acted with the requisite state of mind"). (Attached as Exhibit B).

As Judge Spiegel said, the "attempt to patch together differing elements . . . : the magnitude of the error, the alleged motive and opportunity, [and] violations of GAAP, . . . do not

support a strong inference of scienter." (Ex. A at p. 16) Because Plaintiffs are unable to allege anything other than generalized allegations of scienter, the Court must dismiss Plaintiffs' Section 10(b) and 10b-5 claims in their entirety. *See also Svezzese v. Duratek, Inc.*, No. 02-1587, 2003 U.S. App. LEXIS 11647, at *4-5 (4th Cir. June 12, 2003) ("Upon inspection, it is clear that Plaintiffs allege little more than accounting failures and breakdowns in the internal procedures necessary to maintain proper accounting practices. Without specific allegations pointing to corresponding fraudulent intent or recklessness, these allegations fail to state a claim upon which relief can be granted."). (Attached as Exhibit C).

> **2. Plaintiffs' Failure to Demonstrate Reliance on the Allegedly Misleading Proxy Materials is Fatal to Their Securities Fraud Claim.**

This Court has already found that this is not a "fraud on the market" case and that Thiemann, who "clearly was not misled by the [Proxy Materials]" and who concluded from them that "the merger was a bad investment," did not rely on those materials. (12/15/03 Order (doc. 227) at 7-8) In addition, the Meiers cannot prove that they relied on the Proxy Materials because they "voted against the merger." (Affidavit of Gary Meier (doc. 233, Ex. B) at ¶ 3) Because Plaintiffs cannot prove reliance on the Proxy Materials, they fail to state a claim under Section 10(b) and Rule 10b-5.

Plaintiffs' only response is the weak claim that they "have amply pled allegations which show that there were material misrepresentations and omissions in the Proxy Materials," and, "[a]s a result, the fact that Plaintiff Thiemann voted against the merger does not prevent a finding of reliance in this case." (Opp. (doc. 281) at 46) This makes no sense. "Material misrepresentation" and "reliance" are separate elements of a 10b-5 claim. Both must be separately pled and proved.

Plaintiffs also claim that "Defendants do not cite to any case law which provides that reliance cannot be found if a party does not vote in favor of a merger based upon material misrepresentations in Proxy Material." (Opp. (doc. 281) at 46). Plaintiffs ignore this Court's previous holding. (*See* 12/15/03 Order (doc. 227) at 7-8 (evidence indicates that Thiemann did not rely on proxy materials)). *Accord Smith v. Ayres*, 845 F.2d 1360, 1363-34 (5th Cir. 1988) (dismissing 10b-5 claim for lack of reliance where, notwithstanding alleged misrepresentation, plaintiff voted against issuance of shares). *Cf. Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453, 461-62 (D.D.C. 1985) (denying class certification where "plaintiffs voted against the merger" and thus "did not rely upon the proxy"); *Knauff v. Utah Constr. & Mining Co.*, 277 F.Supp. 564, 578 (D. Wyo. 1967) (same).

### C. Defendants are Not Liable Under Section 11 for the Expertised Portions of the Proxy Materials.

Plaintiffs concede that individual Defendants are absolved of the duty to investigate the accuracy of "any part of the registration statement purporting to be made on the authority of an expert" such as Ernst & Young, if the party "had no reasonable ground to believe and did not believe" that the information therein was misleading. (Opp. (doc. 281) at 55 (*citing John Nuveen & Co., Inc. v. Sanders*), 450 U.S. 1005, 1019 (1981))

Plaintiffs nevertheless contend that under Section 11, the individual Provident and OHSL Defendants had a duty to "investigate" the expertised portions of the Proxy Materials. (Opp. (doc. 281) at 55-56). Once again, however, the CAC offers not a single specific allegation which would indicate that these Defendants had "reasonable grounds to believe" or "did believe" that the expertised portions of the Proxy Materials were inaccurate when issued.

Instead, Plaintiffs: (1) make conclusory allegations that "statements contained within the Proxy Materials were materially false"; and (2) alleged that the Individual Provident and OHSL

Defendants were directors of their respective companies when the Proxy Materials were issued and signed the Proxy Materials. (Opp. (doc. 281) at 56 (*citing* CAC ¶ 128)) Such conclusory allegations offer nothing about "who, what, when, where, why, or how" the individual Defendants supposedly learned of errors in the Proxy Materials, nor how these Individual Defendants had "reasonable grounds to believe" or "did believe" that the expertised portions of the Proxy Materials were misleading. Under the standards set by the Supreme Court in *John Nuveen*, these Individual Defendants were justified in relying on Ernst & Young's expert certification of the Provident Financial data included in the allegedly misleading Proxy Materials. *John Nuveen*, 450 U.S. at 1010; *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994), *cert. denied*, 116 S. Ct. 185 (1995).

### D.  Plaintiffs Have Failed to Allege Any Facts Demonstrating that The Individual Defendants Were Statutory Sellers.

Plaintiffs' Section 12(2) claim against the Individual Provident and OHSL Defendants must be dismissed because the CAC fails to allege facts sufficient to establish that these Defendants were "statutory sellers." *See* 15 U.S.C. § 771(a)(2); *Pinter v. Dahl*, 486 U.S. 622, 641-48 (1988). A director cannot be deemed a statutory seller for purposes of Section 12(2) merely for serving in an executive position. *Mabon, Nugent & Co. v. Borey*, 127 B.R. 727, 735 (Bankr. S.D.N.Y. 1991). Conclusory allegations that directors "played a substantial part in the sale of the securities by assisting or participating in the preparation of the Registration Statement and Prospectus," similarly are insufficient to survive a motion to dismiss a Section 12(2) claim without further indication of any meaningful contact between plaintiffs and the defendant directors. *Endo v. Albertine*, 812 F.Supp. 1479, 1494 (N.D. Ill. 1993). Here, the CAC fails to allege a "meaningful contact between [P]laintiffs and the [Individual Defendant] directors."

Indeed, the CAC alleges *no contact* between Plaintiffs and any of the individual Defendants except Kenneth Hanauer. Plaintiffs thus concede their failure to state a Section 12(2) claim against Brinker, Hillebrand, Hucke, McKiernan, Tenoever, Zoellner, Hoverson, Cook, Grote, Myers, Pedoto, Steger or Carey.

Moreover, although Plaintiffs have pointed to certain allegations in the CAC referring to Hanauer, those allegations do not rise to the level of "meaningful contact" between Plaintiffs and Hanauer sufficient to label Hanauer a statutory seller for purposes of Section 12(2). The CAC merely alleges that, during the October 25, 1999 special shareholders meeting, Hanauer "read from a script prepared by Defendant Dinsmore" that allegedly "contained and re-affirmed" statements made in the Proxy Materials. (Opp. (doc. 281) at 59) Reading a script prepared by counsel at a shareholders meeting does not constitute an offer to sell or the solicitation of the purchase of a security, nor the "meaningful contact" required by Section 12(2). (*See* Opp. (doc. 281) at 59 (admitting that Defendant Roe was present to answer any shareholder questions about the script read by Hanauer)) The CAC simply fails to allege facts sufficient to hold any of the Individual Provident and OHSL Defendants liable as statutory sellers under Section 12(2).

E.     **Plaintiffs' Section 10(b), 11, 12(2) and 14 Claims Are All Time-Barred.**

The securities claims related to the alleged misrepresentations based on the 2003 Restatements (the "Restatement Claims") -- are time-barred by the three-year statute of repose. *See* 15 U.S.C. §§ 77m and 78i(e). Defendants allegedly made the financial misrepresentations in the Proxy Materials, but Plaintiffs did not bring their Restatement Claims until December 31, 2003 -- well over three years later.

Plaintiffs primarily argue that they did not have inquiry notice of the accounting errors until the First Restatement on March 5, 2003. (Opp. (doc. 281) at 48-50) This is irrelevant to

the three-year statute of repose, which runs from the time of the "misrepresentation that constitutes the securities violation," *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 604 (S.D. Ohio 2003), and applies regardless of "whether or not the investor could have discovered the violation." *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 704 (2d Cir. 1994). *See also Stolz Family Partnership v. Daum*, 355 F.3d 92, 102-03 (2d Cir. 2004) ("statute of repose begins to run without interruption once the necessary triggering event has occurred, [ . . . ] even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action").

Next, Plaintiffs claim that the Restatement Claims are not barred by the statute of repose because they relate back to the original complaint under Fed. R. Civ. Proc. 15(c). (Opp. (doc. 281) at 50-51, 61-62) However, Rule 15(c) does not allow relation back if the newly amended claim "sets forth a new set of operational facts." *Pruiss v. Bosse*, 912 F.Supp. 104, 106 (S.D.N.Y. 1996); *Carter v. Rental Uniform Service of Culpeper, Inc.*, 977 F. Supp. 753, 762 (W.D. Va. 1997) (noting that "the question is whether the factual basis for the claims is the same). Plaintiffs' Restatement Claims rely upon an entirely new and completely distinct set of facts based upon complex accounting principles that never were a part of this case and were never touched upon in discovery. The claim cannot relate back.[7]

Finally, Plaintiffs argue that for the purposes of their 10(b) claim only, the three-year statute of repose was expanded to a five-year statute by the Sarbanes-Oxley Act (28 U.S.C.

---

[7] Even if Plaintiffs' Restatement Claims fall within the scope of Rule 15(c), the Court should still not allow relation back because Rule 15(c) cannot be used to get around a statute of repose. When a statute of repose expires, a Federal Court is divested of its jurisdiction to hear a claim. *See, e.g., Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002) (holding that 15 U.S.C. § 1635(f) "is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period'"); *May v. Illinois National Ins. Co.*, 190 F.3d 1200, 1206 (11th Cir. 1999) (describing statute of repose as a "jurisdictional statute[]"). A Federal Rule of Civil Procedure, such as Rule 15(c), "may not be used to extend federal jurisdiction" where it no longer exists. *Miguel*, 309 F.3d at 1165; Fed.R.Civ.Proc. 82 (Federal Rules "shall not be construed to extend or limit the jurisdiction of the United States district courts").

§ 1658(b)). (Opp. (doc. 281) at 48)[8] Nothing in the Sarbanes-Oxley Act implies that Congress intended the Act to apply retroactively to expand the statute of repose for alleged misrepresentations made prior to the Act's passage. *See In re Enterprise Mortgage Acceptance Co., LLC, Sec. Litig.*, 295 F.Supp.2d 307, 312 (S.D.N.Y. 2003) (noting that "there is no clear language in the statute stating that it applies retroactively"). *See also Brown v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1998) (Congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result); *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994) (traditional presumption is that a statute does not operate retroactively absent a clear congressional intent that it should). To the contrary, the Act specifically states that "[t]he limitations period . . . shall apply to all proceedings . . . that are commenced on or after the date of enactment of this Act [July 30, 2002]." Pub.L. No. 107-204, § 804(b). This "proceeding" was commenced well before July 30, 2002.

Because the Section 10(b), 11, 12, and 14 Restatement Claims are time-barred, the Court should dismiss them.[9]

### F. The CAC Fails to Adequately Plead Control Person Liability as to Hanauer, Hoverson, and Cook.

Counts III and VI of the CAC assert Sections 15 and 20(a) control person claims against Defendants Hanauer, Hoverson, and Cook. (CAC Count III (p. 71) and Count VI (p. 76)) In their opposition to the Amended Motion to Dismiss, however, Plaintiffs inexplicably claim that the CAC asserts control person claims against Defendant Carey, and *not* Defendant Cook. (Opp.

---

[8]  Plaintiffs concede that their Section 11 and 12(2) claims are still subject to the three-year statute of repose in 15 U.S.C. § 77m. (Opp. (doc. 281) at 61) Those claims therefore, are barred.

[9]  Plaintiffs fail to address Defendants' argument that the Section 14 Restatement Claim is barred by the three-year statute. They therefore concede the point. *See, e.g., Daniels v. City of Columbus*, 2002 WL 484622, *11 (S.D. Ohio 2002) ("Plaintiff fails to address this argument in her memorandum in opposition and apparently concedes that the [defendant] is not liable on this claim."). (Attached as Exhibit D).