to the auto leases demonstrates the complexity of the standard and
the reasonableness of the error (Id.).  Defendants argue that
Plaintiffs' reliance upon In re MicroStrategy, Inc. Secs. Litig.,
115 F. Supp 2d 620, 635 (E.D. Va. 2000) is misplaced because in
contrast the GAAP provision at issue in that case was relatively
simple (Id.).  Moreover, argue Defendants, the facts of  In re
Microstrategy, show the existence of additional red flags not
present in this case, including specific suspect statements made by
defendant's president and CEO, as well as suspiciously timed
insider stock sales (Id. citing 115 F. Supp. 2d at 640, 643-47).
Defendants argue the only statement that could possibly be
construed as a red flag is the March 6, 2003 statement of Chris
Carey, Provident's Chief Financial Officer, who admitted that "[w]e
knew the business wasn't super-profitable, and it looked like it
was more profitable than it should be" (Id.).  However, Defendants
argue that Plaintiffs take such remark out of context, as it was
made after Defendants discovered the accounting model problem in
February 2003, and Defendants had already issued the first
restatement (Id.).  Defendants conclude that Plaintiffs' Complaint
contains no more than generalized allegations about accounting
errors, without any detailed factual allegations to support a
securities fraud claim (Id.).  Consequently, Defendants argue that

---

balance sheet operating leases needed to be re-classified as on-
balance sheet direct finance leases.  In contrast,
Pricewaterhouse Coopers later advised Provident's Audit Committee
that under FAS 13, all leases should be classified as operating
leases, not direct finance leases (doc. 23).

Plaintiffs' Section 10(b)/Rule 10b-5 claim should be dismissed in its entirety (Id.).

Having reviewed this matter, the Court finds Defendants' position well-taken. The Court does not find facts supporting an inference of fraud, but rather facts supporting the existence of complex accounting errors. Although the error is large, the Court finds the situation analogous to that in In re Credit Acceptance Corp. Sec. Litig., 50 F. Supp. 2d 662 (E.D. Mich. 1999) where the lack of "red flags" led the court to conclude that there was no inference of scienter.

Congress clearly instituted the PSLRA in order to reduce abusive litigation and coercive settlements, and thus set as a prerequisite that no plaintiff should recover money damages from a defendant absent proof that defendant acted with the requisite state of mind. 15 U.S.C. § 78u-4(b)(2) (2003). Although no provision of the PSLRA defines the "required state of mind" in cases involving Section 10(b) or Rule 10b-5, the Sixth Circuit has held that the PSLRA requires a plaintiff to plead facts giving rise to a "strong inference" of scienter, which is a "mental state embracing intent to deceive, manipulate or defraud." In re Comshare, Inc. Secs. Litig., 183 F.3d 542, 549-55 (6th Cir. 1999)(quoting Ernst & Ernst v. Hochfelder, 425 U.S. at 194 (1976)). Plaintiffs' attempt to patch together differing elements in this case: the magnitude of the error, the alleged motive and opportunity, violations of GAAP, and an out-of-context "admission" of the CFO, do not support a strong inference of scienter.

16

Defendants' cited authorities and arguments adequately address each of these issues. Plaintiffs simply have not pleaded any sort of red flags that in combination with the magnitude of the error, GAAP violations, or motive and opportunity could create a strong inference of scienter.

Plaintiffs' reliance on In re Telxon Corp. Secs. Litig., 133 F. Supp. 2d 1010 (N.D. Ohio 2000) is misplaced because unlike in this case, the Court found blatant violations of GAAP as well as the existence of factors that should have alerted defendants that the financial data they were releasing to the public was incorrect. In re Telxon, at 1026-27. The Court finds highly persuasive Defendants' explanation of the complexity of FAS 13. The conflict between two accounting firms as to its application suggests that the error was not blatant. In such a context, it seems that Congress' intent in the PSLRA would be violated if Defendant company were penalized for coming clean about a mistaken accounting model and classification. As stated by the Honorable Kathleen McDonald O'Malley, of the Northern District of Ohio, "[I]n passing the PSLRA, Congress intended to protect businesses and those who operate them from attacks premised on their innocent, and even negligent, mistakes in judgment." In re Telxon Corp. Secs. Litig., 133 F. Supp. 2d at 1033. Companies should be encouraged to rectify discovered errors and announce restatements publicly without fear that they will be subjected to litigation as a result. For these reasons, the Court rejects Plaintiffs' arguments and grants Defendants' Motion to Dismiss as to Plaintiffs' Section 10(b) and

17

Rule 10b-5 claim for failure to adequately allege a strong inference of scienter.

**B.  Plaintiffs' Second Claim: The Individual Defendants Are Liable Under Section 20(a) of the 1934 Act.**

In their Second Claim, for violation of Section 20(a) of the Securities and Exchange Act, Plaintiffs allege Defendants Hoverson and Carey are liable as control persons for the violations of Section 10(b) and Rule 10b-5 (doc. 18).  As the Court finds that Plaintiffs have failed to adequately allege the underlying claims, the Court dismisses the Section 20(a) claim as well.  Stavroff v. Meyo, No. 95-4118, 1997 U.S. App. LEXIS 32774 *21 (6th Cir. Nov. 12, 1997).

**C. Plaintiffs' Claim in Count IV.**

Plaintiffs' claim in Count IV is brought by Plaintiff Silverback pursuant to Section 12(a)(2) of the 1933 Act, 15 U.S.C. § 77L(a)(2), on behalf of the PRIDES Subclass (doc. 18). Plaintiff Silverback alleges that he and subclass members purchased or otherwise acquired Provident securities pursuant to the defective Registration statement and Prospectus(Id.).  Defendants argue that Plaintiffs have no damages because the only remedy available to them is rescission, the purchase price was $25.00 per share, and the stock is trading now in excess of $30.00 per share (doc. 23).  Consequently, argue Defendants, rescission would result in Plaintiffs sustaining rather than recovering damages, so the Court should dismiss the claim (Id.).

Although Plaintiffs argue that they are entitled to

damages as of the date of the filing of their Complaint, when the price of their stock had dipped below the purchase price, the Court finds that in accordance with <u>Wigand v. FloTek, Inc.</u>, 609 F.2d 1028, (2d Cir. 1979), "the value of the stock itself is irrelevant insofar as relief under 12(2) is concerned. If the consideration passing from plaintiff to defendant is money, the amount to be awarded is simple to calculate." <u>Id</u>. at 1036. The Court finds well-taken Defendants' position that Plaintiffs' remedy, rescission, requires them to tender back the stock they have received in exchange for the return of the value of the consideration paid, plus interest. Because in this case rescission would clearly result in a loss for Plaintiffs, such claim should be and is dismissed.

### D. Plaintiffs' Claims for Breach of Merger Contract

Two further subclasses, the Fidelity Plaintiffs and the OHSL Financial Corporation ("OHSL") Plaintiffs bring claims for breach of their respective identical merger contracts with Provident and Provident Bank (doc. 18). Plaintiffs argue that the merger agreements provided in pertinent part that the financial statements had been prepared in accordance with GAAP and fairly presented the financial condition of Provident and its subsidiaries (<u>Id</u>.). The agreements further made representations as to the veracity of the material facts in reports and statements, as to the lack of any material omissions, and as to the lack of any undisclosed liabilities (<u>Id</u>.). Plaintiffs claim Defendants knew or reasonably should have known that the financial statements

19

referenced in the merger agreements were not prepared in accordance with GAAP, and that such statements did not fairly represent the financial condition of Provident and its subsidiaries(Id.). Accordingly, Plaintiffs allege Provident and Provident Bank were in material breach of the merger contract ( Id.). Plaintiffs argue that as a result of such breach, they received shares of stock with an artificially inflated value, that they should have received more value in exchange, and that they have therefore suffered as third-party beneficiaries to the merger agreement (Id.).

Defendants' Motion to Dismiss the Fidelity and OHSL Plaintiffs' claims is premised upon three theories. First, Defendants argue that the merger agreement included a clause, Section 8.7, that provided that all representations and warranties expired as of February 4, 2000 (doc. 23). Citing Herring v. Terradyne, Inc., 256 F. Supp. 2d 1118, 11127 (S.D. Cal. 2002), Defendants argue that where representations and warranties do not survive the closing, they cannot be sued upon after the closing date (Id.). Plaintiffs respond, quoting Section 196 of the Restatement of Contracts (Second), that "[a] term unreasonably exempting a party from the legal consequences of a misrepresentation is unenforceable on grounds of public policy" (doc. 21). The Court has reviewed Herring, a decision itself which relied upon treatises rather than upon binding precedent, 256 F. Supp. 2d 1118, 1137, and finds no binding legal authority cited by either party on this issue. However, the Court finds Plaintiffs' position more persuasive, as it seems inequitable to

20

permit a party to eliminate liability for an alleged fraudulent misrepresentation by drafting such a term. Restatement (Second) of Contracts § 196 (1981). Accordingly, the Court does not find Defendants' first theory, that the representations and warranties have expired, bars Plaintiffs' claims.

Defendants' second theory is that the Plaintiffs are not intended third-party beneficiaries to the merger contract, and that it is settled under Ohio law that "only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio" (doc. 20, citing Grant Thornton v. Windsor House, Inc., 566 N.E. 2d 1220, 1223 (Ohio 1991)). Defendants point out that Section 8.12 of the merger contracts state that "no person or entity not a party to this Agreement (other than the shareholders of [Fidelity/OHSL], to the extent they are entitled to payment of the Merger Consideration) shall be deemed to be a third-party beneficiary of this Agreement" (Id.). Defendants interpret Section 8.12 to limit the third-party beneficiary status of Plaintiffs to issues pertaining to payment of merger consideration, and not to apply to issues concerning representations and warranties (Id.). Plaintiffs argue that Defendants' interpretation "twists the plain meaning of the language beyond logic," positing that Section 8.12 includes, rather than excludes them (Id.).

The Court finds Defendants' second theory viable. Plaintiffs have no standing as third-party beneficiaries to enforce aspects of the merger contract pertaining to issues beyond payment

of merger consideration.    The Court further finds equally persuasive Defendants' third theory, that the breach of contract claim is derivative in nature.    In Ohio, "[a] plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third-party directed towards the corporation."  Adair v. Wozniak, 492 N.E. 2d 426, 427 (Ohio 1986).    Any derivative claims are not extinguished by the merger, but can be pursued against the surviving or new entity.    Ohio Revised Code § 1701.82(a)(4).

The Court finds that any injuries suffered by Plaintiffs were as a consequence of their status as shareholders.  Because the Fidelity and OHSL Plaintiffs cannot demonstrate that they have been injured in any capacity other than that of shareholder, their claims must be dismissed.

### E.  Plaintiffs' Remaining Claims

Although Defendants did not move to dismiss Plaintiffs' claims in Counts III and IV, the parties dispute the scope of Silverback's damages under the Count III claim for violation of Section 11 of the 1933 Act, 15 U.S.C. § 77k.  Section 11 provides for damages representing the difference between the price at which the security was purchased (in this case $25.00) and the price of the security at the time the suit was brought.  15 U.S.C. § 77k(e) (2003).  The parties dispute what date should be used to determine the price of the security when the suit was brought.  Plaintiffs

22

argue that the date of the initial filing of the suit should be used, March 6, 2003, (when the price of the stock dipped to $22.75), while Defendants argue that the operative date is when the Silverback plaintiffs became a part of the suit, May 2, 2003, (when the price of the stock was $24.30). Plaintiffs cite to Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1542-44 (8th Cir. 1996) for the proposition that the filing of a subsequent claim should relate back to the filing date of the original complaint for purposes of determining Section 11 damages (doc. 21). However, Defendants argue that this case is distinguishable, because unlike in Alpern, the Silverback Plaintiffs did not file the original Complaint (doc. 23). Moreover, argue Defendants, none of the Plaintiffs who filed suit prior to the Silverback Plaintiffs had standing to file a Section 11 claim (Id.).

Having reviewed this matter, the Court finds Defendants' arguments well-taken. It would not comport with the interests of justice to allow the Silverback Plaintiffs to relate back to a Complaint which they did not file, and for which no other party had standing to bring a Section 11 claim. The Court finds that the operative filing date for purposes of determining Section 11 damages, if any, is May 2, 2003, when the price of the stock was at $24.30.

**V. Conclusion**

The Court finds Defendants' Motion to Dismiss well-taken. Plaintiffs have failed to allege facts giving rise to scienter, such that their allegations in Count I, for violations of Section

23

10(b) of the Exchange Act and Rule 10b-5, fail to state a claim. For the same reason, Plaintiffs' claim fails to state a violation of Section 20(a) of the Exchange Act in Count II. The Court finds no evidence that Defendants deliberately concealed the accounting error, or that such error benefitted anyone. Rather, the Court finds facts supporting the view that Defendants discovered their error and came clean about it. It would not comport with the spirit of the amendments of the PSLRA to sanction Defendants for such corrective behavior.

As for Plaintiffs' allegations in Count IV, that Defendants violated Section 12(a)(2) of the 1933 Act, 15 U.S.C. § 77L(2), the Court finds well-taken Defendants' argument that Plaintiffs' remedy in this instance is rescission, which would ultimately injure Plaintiffs because the stock price has not only recovered, but has appreciated. Count IV is therefore dismissed. Finally, the Court finds well-taken Defendants' arguments that Fidelity and OHSL Plaintiffs were not third-party beneficiaries to the merger agreements, such that their only recourse under Ohio law for breach of contract is a derivative claim. Finally, the Court finds that as to Count III of the Complaint, the operative date for the determination of any Section 11 liability, is May 2, 2003, when the Silverback Plaintiffs became a part of the lawsuit.

Accordingly, the Court GRANTS Defendants' Motion to Dismiss (doc. 20), and DISMISSES Counts I, II, IV, VI, and VII of Plaintiffs' Amended Complaint (doc. 18).

SO ORDERED.

Dated: March 9, 2004          /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge

25