**H**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

BANK BRUSSELS LAMBERT and Skopbank, Plaintiffs,
v.
THE CHASE MANHATTAN BANK, N.A., Defendant.

No. 93 Civ. 5298(LMM).

Aug. 27, 1999.

*MEMORANDUM AND ORDER*

MCKENNA, J.

1.

**\*1** Plaintiffs Bank Brussels Lambert ("Bank Brussels") and Skopbank move, pursuant to Fed.R.Civ.P. 15, for leave to amend the complaint. Defendant The Chase Manhattan Bank, N.A. ("Chase") opposes in part and consents in part. Chase has specifically identified those portions of the proposed amendments to which it consents and those which it opposes. (*See* Def. Mem.App. 1; *see also* Def. Mem. at 76; Chase has, in addition, submitted a copy of the proposed amended complaint marked to indicate those positions to which it objects.)

Specifically, Chase objects to the following parts of the proposed amendments: [FN1] ¶¶ 35-39, and ¶¶ 169-177 (plaintiffs' Ninth Claim and Tenth Claim) and ¶¶ 200-217 (plaintiffs' Fifteenth Claim), insofar as they incorporate ¶¶ 35-39; ¶¶ 46-47, and ¶¶ 169-177 (plaintiffs' Ninth Claim and Tenth Claim) insofar as they incorporate ¶¶ 46-47; ¶ 40 as incorporated in ¶¶ 168-173 and ¶¶ 174-177 (plaintiffs' Ninth Claim and Tenth Claim); [FN2] ¶¶ 67-68 as incorporated in ¶¶ 127-130 (plaintiffs' First Claim); ¶ 41; ¶ 102; ¶¶ 100-101; ¶ 103; ¶¶ 200-217 (plaintiffs' Fifteenth Claim); ¶¶ 218-222 (plaintiffs' Sixteenth Claim); ¶¶ 200-217 (plaintiffs' Fifteenth Claim); and ¶¶ 223-227 (plaintiffs' Seventeenth Claim) "to the extent Chase opposes the underlying factual allegations, but [Chase] does not oppose the amendment to assert the claim of breach of fiduciary duty with respect to factual allegations set forth in [the original complaint], as amplified by the portions of the [proposed amended] complaint to which Chase consents" (Def. Mem. App 1 at A-4 .) [FN3]

FN1. The seventeen claims alleged in the proposed amended complaint begin at ¶ 125. Each claim incorporates by reference ¶¶ 1-124. Certain of the claims also refer specifically to particular individual paragraphs within ¶¶ 1-124. Chase

categorizes the proposed amendments in four groups. (Def.Mem.App.1.) Some of the paragraphs of the proposed amended complaint to which Chase objects are listed more than once. (*Id.*)

FN2. ¶¶ 174-177, as incorporating ¶ 40, is not listed in this objection in Chase's opposing Memorandum (*see* Def. Mem.App. 1 at A-2), but is in the marked proposed amended complaint.

FN3. The marked proposed amended complaint, but not Chase's opposing Memorandum (*see* Def. Mem.App. 1 & 76), indicates that Chase objects to ¶¶ 178-185 (plaintiffs' Eleventh Claim and Twelfth Claim). The Court assumes that Chase objects to such proposed amendments insofar as they may incorporate previous paragraphs to which Chase objects.

Chase also objects to what plaintiffs call the "Kunreuther Amendment" (*see* Pl. Supp. Mem. at 1), not specifically referred to in the proposed amended complaint, which plaintiffs ask be recognized as included within the proposed amendments. (*Id.* at 10 n. 6.) Chase opposes. (Def. Further Mem. at 2-9.)

Chase also argues that one of plaintiffs' new claims included in the proposed amended complaint--plaintiffs' Sixteenth Claim (Prop.Am.Cplt.¶¶ 218-222)-- should, if allowed, be severed for trial with *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* (96 Civ. 7233(LMM)).

In considering the proposed amendments, the Court does not pass upon the evidentiary support for them.

2.

"It is settled that the grant of leave to amend the pleadings pursuant to Fed.R.Civ.P. 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[A] party "ought to be afforded an opportunity to test his claim on the merits," except in those instances where (1) the party's motion to amend is impelled by "bad faith or dilatory motive"; (2) the party's adversary can demonstrate that he will suffer actual prejudice if the motion to amend is granted; or (3) the proposed amendment would constitute no more than a futile exercise.

**\*2** *In re Boesky Secs. Litig.*, 882 F.Supp. 1371, 1379 (S.D.N.Y.1995) (Pollack, J.) (quoting *Foman*, 371 U.S. at 182; other citations omitted).

Chase urges various grounds in support of its particular

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

objections-- limitations, undue delay, prejudice, failure to comply with Fed.R.Civ.P. 9(b), "so factually unsupported as to lack a [Fed.R.Civ.P.] 11 basis" (Def. Mem.App. 1 at A-2), insufficiency as a matter of law and vagueness. Insofar as particular objections need to be reached, they will be considered below in connection with the relevant proposed amendments. Limitations, frequently raised, requires the initial consideration of the relation back rule embodied in Fed.R.Civ.P. 15(c)(2), on which plaintiffs, in many instances, rely.

While assertion of a claim barred by limitations would certainly be "a futile exercise," *Boesky,* 882 F.Supp. at 1379, Fed.R.Civ.P. 15(c), if its conditions are satisfied, "allows a litigant to sue upon a claim on which the statute of limitations has already run out and that would be barred were it to be brought in a separate action." *Boesky,* 882 F.Supp. at 1381. Under Rule 15(c), "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2).

> An amended complaint is deemed to arise out of the same conduct, transaction or occurrence as the original complaint when both are linked by "a common core of operative facts." An amended pleading does not relate back if it sets forth a separate set of operative facts. Rather, it relates back "if the [new] allegations amplify the facts alleged in the original pleading or set forth those facts with greater specificity." The essential inquiry in determining "whether the new allegations 'relate back is whether the defendant was given adequate notice that such claims might be made upon examining the facts alleged in the original pleading.' '

*Ainbinder v. Kelleher,* 1997 WL 420279,* 9 (S.D.N.Y. July 25, 1997) (Sotomayor, J.) (quoting *Oliner v. McBride's Indus., Inc .,* 106 F.R.D. 9, 12 (S.D.N.Y.1985), and *Marine Midland Bank v. Keplinger & Assocs., Inc.,* 94 F.R.D. 101, 104 (S.D.N.Y.1982) (quoting *Rosenberg v. Martin,* 478 F.2d 520, 526 (2d Cir.), *cert. denied,* 414 U.S. 102 (1973))).

Plaintiffs argue that, even if the original complaint does not give notice sufficient to render the relation back rule of Fed.R.Civ.P. 15(c) applicable (which they do not concede), that rule nevertheless applies where Chase has been put on notice of claims alleged in the proposed amended complaint through discovery or other pretrial proceedings, or from its own files. (Pl. Reply Mem. at 33-36.) The Court disagrees, and believes that *Ainbinder* states the correct rule, applicable except perhaps in most unusual circumstances: notice must be given by the facts alleged in the original pleading. *See also Oliner,* 106 F.R.D. at 12 ("the critical question is whether the original pleading gave the defendant

fair notice of the material subsequently raised in the amended pleading"); *Holdridge v. Heyer-Schulte Corp.,* 440 F.Supp. 1088, 1094 (N.D.N.Y.1977) ("in applying the relation back doctrine, [the court] must look to determine if adequate notice was supplied by the original complaint, rather than by papers which were subsequently filed in the action").

**\*3** The two Second Circuit cases cited by plaintiffs to support its view on this point cannot reasonably be read to do so. In *Kelcey v.. Tankers Co.,* 217 F.2d 541 (2d Cir.1954), a Jones Act case alleging a shipboard assault, "someone had made a mistake as to the name of the vessel [on which the assault had taken place] and the date of the assault" for which the seaman (who suffered from recurrent amnesia) had recovered damages at trial, after the district court had allowed, at the beginning of the trial, amendments of the complaint to name the correct vessel and date. 217 F.2d at 543 & n. 1 (quoting district court). The decision turns on a very unusual set of facts, and probably reflects the law's traditional solicitude for seamen. In *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co.,* the district court had allowed an amendment under Fed.R.Civ.P. 15(b) (amendments to conform to evidence)-- not under *id.* 15(c)--to assert a claim at the close of the evidence. 804 F.2d 787, 795 (2d Cir.1986). The question of the relation back of the new claim does not appear to have been raised. It has been suggested, in fact, by one district court, that plaintiffs' view is "not entirely compatible" with the Second Circuit's opinion (*per* Friendly, J.) in *Rosenberg. F.D.I.C. v. Chizner,* 110 F.R.D. 114, 118 (E.D.N.Y.1986) (quoting *Rosenberg,* 478 F.2d at 526)).

For limitations purposes, plaintiffs and Chase are agreed that the claims alleged in the proposed amended complaint are to be treated as having been interposed on August 5, 1997. (Pl. Mem. at 12 n. 5; Def. Mem. at 3 n. 1.)

3.

¶¶ 35-41, 46-47 and 67-68 of the proposed amended complaint relate to the period prior to the parties' entry into the Revolving Credit Agreement ("RCA") in January of 1990. [FN4]

> FN4. *See* the Court's Memorandum and Order of October 17, 1996 at 1-2.

As to that period, the original complaint alleges that, in addition to funds loaned to AroChem Corporation and AroChem International, Inc. (hereinafter collectively "AroChem"), Chase entered into a $20 million term loan agreement with AroChem (Orig.Cplt.¶ 23), that in connection with the RCA and such term loan, Chase obtained the right to receive fees (with other compensation apart from interest) in the amount of $4.95 million (*id.* ¶

30), that the amount of such fees and compensation were not known to plaintiffs (*id.* ¶¶ 33-34), that Chase realized, prior to the closing of the RCA, that the portion of its fees and compensation to be paid at closing by AroChem would cause AroChem to be unable to meet a financial covenant in the RCA (*id.* ¶¶ 35-36), and that:

Specifically, in December 1989 and January 1990, Suzanne Durney, Vice- President of Chase, solicited the covenant waiver on behalf of AroChem by representing to BBL, Swiss Bank, Indosuez, DBLTF and Skopbank (which at the time was participating in negotiations concerning the RCA) that the only reasons for the waiver were the effects of poor market conditions, reduced refining "crack" margins (*i.e.,* price margins on refined product), a recent fire in the AroChem refinery, and the impact of Hurricane Hugo on AroChem's business. Suzanne Durney never disclosed to the Other Banks and [Drexel Burnham Lambert Trade Finance, Inc.] the impact of Chase's fees.

**\*4** (*Id.* ¶ 37.) [FN5] The original complaint further alleges that, although Chase's fees "were of such a magnitude that they could and were projected to cause a covenant breach" (*id.* ¶ 38), Chase concealed "the material, adverse impact of its fees on the covenant." (*Id.*) The original complaint continues by alleging that: "Chase's failure to disclose the full magnitude and causes of the covenant deficiency prevented Plaintiffs from having the opportunity to assess AroChem's creditworthiness with accurate knowledge of its true financial condition." (*Id.* ¶ 40.) The original complaint then alleges that plaintiffs, based on the misleading information provided by Chase, consented to a waiver of the covenant at closing (*id.* ¶ 41), and that, had they known the amount of Chase's fees, they would not have loaned money to AroChem under the RCA. (*Id.* ¶ 42.)

> FN5. Drexel Burnham Trade Finance, Inc. ("DBLTF") was an original RCA lender which became insolvent and resigned; it was replaced as an RCA lender, on April 1, 1990, by plaintiff Skopbank. *See* Memorandum and Order, March 17, 1996, at 1.

Paragraph 35-41, 46-47 and 67-68 of the proposed amended complaint also relate to the period prior to the parties' entry into the RCA. These allegations can be divided into several groups.

After a preliminary allegation to the effect that Chase, in approximately 1989, determined that it could obtain "exorbitant" fees for providing "a syndicated working capital facility [in the event, presumably, the RCA] and related term financing [in the event, presumably, the $20 million term loan]" (Prop.Am.Cplt.¶ 35), paragraphs 36-39 allege that, in April 1989, Chase discovered that AroChem's

president and majority shareholder, Harris, "claimed to be engaging in manipulation of AroChem's accounting procedures, *inter alia,* artificially to reduce the value of AroChem stock in order to cheat his fellow shareholders in connection with [his] contemplated purchase of AroChem stock" (*id.* ¶ 36), that Chase agreed to finance Harris' efforts to purchase additional AroChem stock at an artificially depressed price in return for an equity interest in AroChem (*id.* ¶ 37), that Chase concealed from the other prospective RCA lenders (including plaintiffs) "information about Harris' activities that might jeopardize the financing and thus jeopardize Chase's ability to obtain the exorbitant fees it was seeking" (*id.* ¶ 38), so that, prior to the RCA closing, "Chase did not disclose to the [other prospective RCA lenders] material non-public information it had obtained, and that was not otherwise available to the [other prospective RCA lenders], respecting Harris' asserted manipulation of AroChem's financial records to reduce the stock price and respecting AroChem's financial condition." (*Id.* ¶ 39.)

¶ 40 of the proposed amended complaint alleges that, in November 1989,

to induce the [other RCA lenders] to participate in the [RCA], Suzanne Durney of Chase falsely represented to the [other RCA lenders] that the Term Loan which Chase had agreed to provide to AroChem would stay in the company and be used solely to build working capital and not to retire existing debt, when, in fact, unbeknownst to the [other RCA lenders], the Term Loan had to be used by AroChem to refinance short-term working capital debt provided by DBLTF.

**\*5** (Prop.Am.Cplt.¶ 40.)

¶ 41 of the proposed amended complaint alleges that, also in November 1989,

[t]o the same end, Ms. Durney or other representatives of Chase also represented at a meeting of the [RCA lenders] ... that Chase would perform two borrowing base (or collateral) audits of AroChem for the benefit of the [RCA lenders] under the Credit Agreement, while Chase now maintains it had no intention of so doing.

(*Id.* ¶ 41.)

¶¶ 46 and 47 of the proposed amended complaint allege that, in January 1990, the RCA lenders received threats of litigation on the part of an AroChem shareholder, Wells, alleging *"inter alia,* manipulation and falsification of AroChem's financial records, oppression of minority shareholders and breach of fiduciary duty by Will Harris" (Prop.Am.Cplt.¶ 46), and that representatives of Chase advised the RCA lenders other than Chase that

Chase did not believe Wells' allegations were substantial or meritorious and that they were of no concern to Chase

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

in respect of the Credit Agreement, all the while concealing material non-public information, unavailable to the [RCA lenders other than Chase], showing that Wells' allegations might well have merit, and concealing that Chase had theretofore abandoned its efforts to obtain an equity interest in AroChem as part of the fees for providing financing because of Chase's concerns about possible litigation with Wells.

(*Id.* ¶ 47.)

¶ 67 of the proposed amended complaint alleges that in January 1990, Chase learned that, due to its fees and AroChem's "otherwise precarious financial situation" AroChem would be unable at the closing to meet, not only its "tangible net worth covenant" (*i.e* ., the covenant referred to in the original complaint), but also its "working capital based covenants." (Prop.Am.Cplt.¶ 67.) ¶ 68 continues:

Accordingly, in early January 1990, without the prior knowledge or prior consent of the [RCA lenders other than Chase], Mr. Harrison agreed with AroChem's senior management to modify the definition of "Working Capital" in the Credit Agreement which, in prior versions and according to the AroChem term sheets, had been defined in accordance with GAAP. Chase did this in an effort to ensure that AroChem would not have to seek other waivers of additional covenants or to admit to other defaults at Closing and thereby jeopardize Chase's fees.

(*Id.* ¶ 68.)

All of plaintiffs' allegations described above relating to the period prior to entry into the RCA sound in fraud. "The [New York] statute of limitations for common law fraud claims is two years from the discovery of the alleged fraud or six years from the date of the alleged fraud, whichever is longer." *Ainbinder, 1997 WL 420279* at *4 (citing N.Y. Civ. Prac. L. & R. §§ 213(8) and 203(g)). Since the fraudulent conduct took place prior to the RCA closing in January 1990, claims based on that conduct would be barred by the six year limitation period prior to August 5, 1997, the date upon which plaintiffs' amended claims are deemed to have been interposed. Nor have plaintiffs shown that the amendments described above were interposed within two years of discovery of the alleged fraud.

**\*6** Plaintiffs argue, however, that the amendments relate back to the date of the filing of the original complaint in July 1993, when they would not have been barred by limitations. The Court disagrees as to ¶¶ 35-41 and 46-47, and agrees as to ¶¶ 67-68, of the proposed amended complaint.

The facts alleged in the original complaint do not give notice that the new pre-RCA fraud claims alleged in ¶¶ 35-41 and 46-47 of proposed amended complaint might be

made. *Ainbinder, 1997 WL 420279* at *9. The fact that fraudulent conduct other than that specifically alleged in the original complaint may, *arguendo*, be said to "involve exactly the same type of misrepresentations as those pled in the [original] Complaint: misrepresentations as to AroChem's true financial condition, made to induce Plaintiffs to enter into the RCA so that Chase could obtain its supranormal fees" (Pl. Rep. Mem. at 8), suggests an analysis at much too general a level. The fraud alleged in the original complaint was required to be (and was, in the Court's view) alleged with particularity. Fed.R.Civ.P. 9(b). It is too much of a leap to say that a fraud, thus alleged with particularity, gives notice of another fraud, not alleged with particularity or otherwise. The fraudulent conduct alleged in the proposed amended complaint represents "separate alleged act[s] of fraud." *In re Bausch & Lomb, Inc. Secs. Litig.* 941 F.Supp. 1352, 1366 (W.D.N.Y.1996). The principal operative fact in a fraud claim is the specific misrepresentation (or failure to disclose what the defendant had a duty to in the circumstances to disclose). Such operative facts as are added in the proposed amended complaint are not suggested in the original complaint, and do not relate back to the date of its filing.

Paragraphs 67 and 68 of the proposed amended complaint (with the exception of the phrase "and AroChem's otherwise precarious financial situation" in the former to the extent that that phrase incorporates ¶¶ 35-41 and 46-47) are not of the same nature as the allegations of ¶¶ 35-41 and 46-47, considered alone. They allege, essentially, the same concealment of the impact of Chase's fees alleged in the original complaint and only extend, to AroChem's RCA "working capital based covenants" (Prop.Am.Cplt.¶ 67), in addition to its RCA "tangible net worth covenants" (*id.*), what the fraud originally alleged prevented the RCA lenders other than Chase from discovering that AroChem could not meet. The amendments contained in paragraphs 67 and 68 of the proposed amended complaint, with the exception of the phrase "and AroChem's otherwise precarious financial situation" in the former, do relate back to the filing of the original complaint.

4.

¶¶ 100-103 of the proposed amended complaint relate to the period after the parties' entry into the RCA.

Those paragraphs allege that Chase, "as Agent under the [RCA] and related Basic Documents as defined therein, ... had obligations to preserve that portion of the [other RCA lenders'] extensions of credit as actually came into Chase's possession." (Prop.Am.Cplt.¶ 100.) The related documents include the Intercreditor Agreement executed contemporaneously with the RCA. (*See* Pl. Rep. Mem. at 55.) According to plaintiffs, "Chase acted with gross

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

negligence or reckless disregard for its contractual and fiduciary duties and took no steps to protect the collateral" (Prop.Am.Cplt.¶ 101)--"for example, by failing to detect that AroChem was transferring monies from its Chase accounts to Union Trust Company, Greenwich Branch, an account which Plaintiffs understood to be created for the purpose of funding AroChem's payroll and operating expenses, in amounts grossly disproportionate to that necessary for such purposes" (*id.*)--and, as a consequence, "such collateral was lost to Plaintiffs." (*Id.*) ¶ 102 alleges that Chase "in the course of the AroChem loan," falsely, or with reckless disregard for the truth, "represented and confirmed that [it] was satisfactorily reconciling AroChem's hedge position against AroChem's physical position on a weekly basis." ¶ 103 alleges that Chase, "[e]ven after [it] knew there was a massive fraud by AroChem," "continued its willful or reckless failure to safeguard [the other RCA lenders'] collateral by disbursing millions of dollars to an account at [Banque Paribas (Suisse) S.A. ("BPS") ] in January 1992," although "had Chase acted prudently and investigated appropriately, it would have learned that, unbeknownst to [the other RCA lenders], BPS had aided and abetted AroChem's fraud and had converted more than $100 million dollars of [the collateral] on other transactions," which Chase should have retained and set off for the benefit of the other RCA lenders. (*Id.* ¶ 103.)

*7 Chase opposes the amendment embodied in ¶ 102 on grounds of limitations and failure to comply with Fed.R.Civ.P. 9(b) as well as on grounds of undue delay and prejudice (Def. Mem.App. 1 at A-3), and the amendments embodied in ¶¶ 100-101 and 103 on grounds of undue delay, prejudice and vagueness. (*Id.* at A-4.) [FN6]

> FN6. As to ¶¶ 100-101, Chase, however, argues that "many, if not most, of the transfers to Union Trust were in the time period before August 1991 and therefore claims about them are barred by the statute of limitations." (Def. Mem. at 72 n. 45.)

¶ 102 sounds in fraud. It is barred by limitations for the reasons set forth in § 3 of this Memorandum and Order, above. The fraud alleged in ¶ 102 is not alleged in the original complaint with anything near the sort of specificity required by Fed.R.Civ.P. 9(b) (and the Court does not find plaintiffs' argument in this regard (*see* Pl. Reply Mem. at 55 n. 20) persuasive). The amendment embodied in ¶ 102 is therefore disallowed.

¶¶ 100-101 and 103 sound in grossly negligent or reckless conduct, and at least some of that conduct is not barred by limitations. The point in time at which certain of such conduct would be barred by limitations is dependent on facts (although the presumption is that conduct prior to August 5, 1991 is so barred). Since there are factual issues

present, the Court allows the amendments. *See Menke v. Glass*, 898 F.Supp. 227, 233 (S.D.N .Y.1995).

The Court does not find Chase's bases of opposition in addition to limitations--undue delay, prejudice and vagueness--persuasive, in light of the discovery had, or at least permitted by Magistrate Judge Ellis, in this and related cases and the pendency of *Bank Brussels v. Banque Paribas (Suisse) S.A.* (94 Civ. 1317) (now settled as to BPS), the discovery in which has been available to Chase.

The amendments embodied in ¶¶ 100-101 and 103 are therefore allowed, and the application of limitations to such amendments will be considered as a part of post-trial briefing.

5.

¶¶ 200-222 assert new claims (plaintiffs' Fifteenth Claim and Sixteenth Claim) which arise out of, or relate to, facts alleged in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* (96 Civ. 7233). [FN7]

> FN7. The claims set forth in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* are conveniently summarized in the Court of Appeals' opinion in that case, 171 F.3d 779 (2d Cir.1999), remanding the case to this Court to determine, first, whether Bank Brussels has sufficiently alleged an actionable tort, and, if so, whether the requirements for personal jurisdiction under N.Y. Civil Practice Law & Rules § 302(a)(3)(i) or (ii) and the due process clause have been met.

In the Fifteenth Claim, plaintiff Bank Brussels only (*see* Prop. Am. Cplt. ¶¶ 199, 217), alleges that, on January 17, 1990 (the date of the RCA closing), Chase made known to a member of the Fiddler Gonzalez & Rodriguez law firm ("Fiddler") that Chase had learned in April of 1989 that Harris "claimed to have been engaging in improper and manipulative accounting procedures for the purpose of defrauding the minority shareholders of AroChem by artificially lowering the value of certain items on AroChem's books and records" (*id.* ¶ 205), and that Harris' conduct "called into question the basic integrity of AroChem's financial reporting, as well as Harris' own integrity" (*id.*), and that, notwithstanding the attorney client relationship between Fiddler and Bank Brussels and the agency relationship between Chase and Bank Brussels (*id.* ¶ 208), "neither Chase nor Fiddler disclosed to [Bank Brussels] the information known to them about Harris, AroChem and Chase." (*Id.*) Further, according to Bank Brussels, Chase covered up its knowledge. (*Id.* ¶ 209.) By reason of Chase's failure to disclose material facts and affirmatively concealing them from Bank Brussels; it is alleged, Bank Brussels was induced to enter into the RCA

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

and to continue lending under it. (*Id.* ¶ 215.) Bank Brussels alleges that it first learned of the facts alleged in the Fifteenth Claim in November of 1995. (*Id.* ¶¶ 213-214.)

**\*8** Plaintiffs' Sixteenth Claim (also, apparently, asserted only by plaintiff Bank Brussels (*see, e.g., id.* ¶ 222)) alleges that Chase induced Fiddler's breach of its obligations to Bank Brussels (as counsel and notary [FN8] ), and/or aided and abetted Fiddler's breach of those obligations, and/or conspired with Fiddler in its breach of its obligations. (*Id.* ¶¶ 219- 222.)

> FN8. The Court is aware that the duties of a "notary" under the system of law obtaining in Puerto Rico may be more extensive than those of a notary in a state such as New York.

Chase argues, with regard to the Fifteenth Claim, that it is barred by limitations, and also because of undue delay and prejudice. The limitations issue as to this claim, however, is more complex than as to the fraud claims considered in § 3 of this Memorandum and Order, above. In the Fifteenth Claim, there are two frauds alleged: Chase's knowledge, gained in 1989, of adverse information regarding AroChem, not disclosed to the other RCA lenders, of which the April 28, 1989 Memorandum of Maria M. Casellas of Chase is, allegedly, evidence; and the alleged coverup. The first of these, alleged independently in ¶¶ 36-39, is time barred, for the reasons stated above. Bank Brussels does not dispute that it had copies of both the Casellas Memorandum and the October 10, 1989 responsive memorandum of Suzanne Durney of Chase prior to the commencement of this action in 1993. As to the cover up, however, Bank Brussels alleges that it did not become aware, prior to November 1995, of Chase's 1990 communications with Fiddler and its preparation on the first day of the RCA closing, in conjunction with Fiddler, of a memorandum which made it appear that the questions raised about AroChem's financial reporting and Harris' integrity had been resolved by October of 1989. (*Id.* ¶ 209.) Bank Brussels also alleges that, had it known of the coverup, it would not have participated in the RCA or advanced funds to AroChem. (*Id.* ¶ 210.)

The Court concludes that, if Bank Brussels proves that it first learned of the coverup in November 1995 "when, in connection with proceedings in this action, Fiddler made a voluntary production of AroChem-related documents to [Bank Brussels], several of which reflected Fiddler's secret counseling of Chase, Chase's disclosures to Fiddler and Chase's conspiracy with Fiddler on January 17, 1990" (*id.* ¶ 214), then the Fifteenth Claim, to the extent it alleges a coverup, would not be barred by limitations, assuming it could not have been discovered with reasonable diligence prior to August 7, 1995. *See* N.Y. Civil Practice Law & Rules §§ 203(g) & 213(8). That will be a matter for proof at

trial.

As regards Bank Brussels' Sixteenth Claim, it will, as suggested by Chase, be severed for trial with *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* (96 Civ. 7233). The nature of certain of Bank Brussels' allegations--that Chase "induced Fiddler to breach its duties to [Bank Brussels]" and "aided and abetted Fiddler's breach of fiduciary duty to [Bank Brussels]--require that the Court first determine, under the Court of Appeals' opinion in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* whether Fiddler did breach a duty, and to do so after making a preliminary choice of law determination, the result of which may be that the Court will have to determine what the relevant law of Puerto Rico is. *See* 171 F.3d at 785-86. Not only would it be unfair to resolve those issues in the absence of Fiddler and to risk a subsequent inconsistent decision on the remand, but Bank Brussels and Chase have not briefed the issues in the present case.

6.

**\*9** Chase opposes the amendment of the complaint to include plaintiffs' Seventeenth Claim (Prop.Am.Cplt.¶¶ 223-227) (breach of fiduciary duty by Chase as agent under RCA) only to the extent that it includes factual allegations, not included in the original complaint, to which Chase has not consented. (Def. Mem.App. 1 at A-4.) The motion to amend is granted insofar as the factual allegations to be included within the claim are alleged in the original complaint or have been allowed in this Memorandum and Order, and is otherwise denied.

7.

The Kunreuther Amendment, described by plaintiffs (Pl. Supp. Mem. at 1-8) although not specifically referred to in the proposed amended complaint, relates to a report--alleged to be "incomplete and materially misleading" (*id.* at 4) accepted by Chase at closing (specifically, according to plaintiffs, on January 22, 1990 (*id.* at 7).

Plaintiffs allege that they only became aware of the incomplete and misleading nature of the report at an October 31, 1997 deposition of Mr. Kunreuther, after their motion to amend was filed. It is not questioned that the amendment was sought in August of 1998, within two years of the deposition. While the Court concludes, for reasons set forth above, that the Kunreuther Amendment does not relate back to the date of filing of the original complaint, there is a question of fact as to whether, as Chase contends, plaintiffs could, by reasonable diligence, have discovered the facts on which the amendment was based earlier than August 5, 1997. That question cannot be resolved on the present motion, *see* Menke v. Glass, 898 F.Supp. at 233, and is a matter of proof at trial.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

8.

In sum, plaintiffs' motion to amend the complaint is granted, with the following exceptions, as to which it is denied:

¶¶ 35-41, 46-47 and 102 of the proposed amended complaint (and all incorporations thereof in subsequent paragraphs of the proposed amended complaint);

plaintiffs' Fifteenth Claim (¶¶ 200-217) insofar as it alleges fraud by Chase in concealing the information regarding AroChem and Harris learned in 1989, but not insofar as it alleges a coverup; and

plaintiffs' Sixteenth Claim (¶¶ 218-227), in that that claim is severed for trial with *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* (96 Civ. 7233), without any determination having been made as to whether the claim is barred by limitations or for any other reason.

As to ¶¶ 100, 101, 103, plaintiffs' Fifteenth Claim insofar as it alleges a coverup, and the "Kunreuther Amendment," the application of limitations is subject to proof at trial, as discussed above.

1999 WL 672302, 1999 WL 672302 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works