UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, on behalf of himself and of all others similarly situated, | : | Case No. C-1-00-793 |
| | : | Judge Sandra S. Beckwith |
| Plaintiff, | : | Magistrate Judge Hogan |
| vs. | : | **Oral Argument Requested** |
| OHSL Financial Corporation, et al. : | | |
| Defendants. | : | |

**OBJECTION TO MAGISTRATE JUDGE HOGAN'S ORDER DENYING PLAINTIFFS' ADDITIONAL TIME TO DEPOSE FORMER OHSL CHAIRMAN OF THE BOARD NORBERT BRINKER (DOC. NO. 295)**

**I.  INTRODUCTION**

The Plaintiff Class respectfully objects to the most recent ruling by Magistrate Judge Hogan's Order denying Plaintiffs the ability to further depose Norbert Brinker, OHSL's former Chairman of the Board and a key actor with respect to the allegations of the Consolidated Amended Complaint ("CAC").

On December 22, 2003, this Court filed an Order that set forth the scope and conditions under which Mr. Brinker's first deposition would be taken in this action. (Doc. No. 229). The Order noted that Mr. Brinker was recovering from a stroke and was under doctor's care, and that since Plaintiffs wanted to depose Mr.

1

Brinker immediately, they were willing to be governed by any accommodation set by defense counsel. Id. The Order provided that Mr. Brinker "could be deposed on any subject covered by the Plaintiff's Amended Complaint on which he has not been previously deposed." Id.

In the same Order, the Plaintiffs' request to depose other OHSL directors Was also addressed. The Court stated that since the Complaint in this case has been amended, the Court deems it appropriate to subject the deponents to questions about new subjects or old subjects covered incompletely, but not to questions about old subjects completely covered in previous deposition testimony. Id. Interestingly, the Order also does not explain Magistrate Judge Hogan's decision to personally attend Mr. Brinker's deposition. This is especially the case because, although Mr. Brinker's health seemed to be the initial reason for limiting the deposition of Mr. Brinker, Magistrate Judge Hogan's attendance at the deposition did nothing further to ensure his health.

The February 5, 2004 deposition of Mr. Brinker was limited to two hours by this Court. Although Magistrate Judge Hogan may have thought it his best guess as to how long an elderly and infirmed man could sit and answer questions, there is no evidence before this Court which necessitates this arbitrary limit. While this Court instructed Mr. Brinker's counsel to seek the physician's advice as to when and under what condition Mr. Brinker could be deposed, no medical need to limit Mr. Brinker's deposition to two hours was not documented in the December 22, 2003 Order of this Court. (Doc. No. 229).

2

Further, even if it was, there was no reason provided why this deposition could not have been held *seriatim*.

As the former Chairman of the Board of OHSL and as a director who changed his mind on the vote of the merger just days before it occurred, as well as shredded documents that were central to this case, Mr. Brinker plays a prominent role in this litigation. Consequently, Plaintiffs would obviously require more than two hours to thoroughly question him on all issues related to the CAC. Thus, the fact that no medical reason was given for limiting the deposition to two hours infers that Magistrate Judge Hogan was not attempting to protect Mr. Brinker from the affects of his stroke, but rather that he was attempting to protect him from legal scrutiny. This inference is supported by Magistrate Hogan's personal opinions on the subject.

After the deposition was completed, a telephonic status conference was held on March 5, 2004. Once again, Magistrate Judge Hogan showed his disdain for Mr. Brinker's deposition. During this telephonic conference, Magistrate Judge Hogan, in unusually vituperative language, called the deposition a waste of everyone's time, including his own. After Mr. Burke argued against continuing the deposition of Mr. Brinker, Plaintiffs' counsel and Magistrate Judge Hogan had the following exchange:

> **MR. BRAUTIGAM:** Your Honor, that's simply not true. Mr. Brinker gave answers that were only tangentially related to the questions in most cases. That took a lot of time. You have previously ruled that plaintiffs are entitled to depose him in this case with

respect to new issues. We need to continue that process. It's that simple."

**THE COURT:** "Well, here's what's simple: The deposition of Mr. Brinker was a complete waste of time, my time and every lawyer in the case's time. It produced nothing other than what he said in his original transcript, so there will be no further deposition of Norbert Brinker. All right?"

(Telephonic conference transcript, p. 5, Attached as Exhibit A). Later, at the end of the telephonic conference, when Plaintiffs' counsel asked if Magistrate Judge Hogan was going to reduce his decision regarding Mr. Brinker's deposition to writing, Magistrate Judge Hogan volunteered the following unsolicited opinion:

**THE COURT:** Absolutely, I'll put that in writing. I started taking notes in the Brinker deposition for about 15 or 20 minutes. Then I looked down at the crowd of defense lawyers, most of which were asleep, and I thought no wonder, you know, this is just a waste -- a complete waste of time. So yeah, I'll put it in writing, all right? And we'll get to the others as soon as we can."

(March 5, 2004 Telephonic Conference Transcript, p. 11). However, interestingly, although Magistrate Judge Hogan made it absolutely clear that he felt that the deposition was a waste of everyone's time, and referred to many of the defense lawyers who were sleeping during the deposition, Magistrate Judge Hogan never stated why the failure to make the deposition more entertaining, and less a sleep-inducing experience, necessitated that the deposition be terminated.

The explanation was not much better in Magistrate Judge Hogan's Order of March 5, 2004 which denied any further depositions of Mr. Brinker. (Doc. No. 295). Magistrate Judge Hogan's Order stated that he did so because Mr. Brinker's

4

deposition was previously taken by Plaintiffs' counsel and because it was "apparent to the Court that the latter deposition elicited nothing further that was not previously elicited during Mr. Brinker's first deposition." (Doc. No. 295.) However, this statement is inaccurate at best.

Mr. Brinker's deposition was not taken in this case, but in a state court action that took place several years ago. This federal case involves different parties, facts, and claims. Further, there are several issues which were elicited during the February 5, 2004 deposition which were not, and could not have been, elicited during the April, 2000 deposition because they had not occurred yet. Similarly, even if there was some overlap in the questioning of Mr. Brinker from the April, 2000 state court deposition, this overlap was necessary to lay the foundation for the new issues to be covered by Plaintiffs during this deposition. Further, given the task at hand, some repetition was clearly inevitable. Mr. Brinker's answers often were not responsive to the questions asked, and he felt the need to frequently parrot the objections of his counsel in his own responses.

Thus, although this Court had previously ordered that Plaintiffs could depose Mr. Brinker on all subjects covered in the Plaintiffs' CAC which was not previously covered in Mr. Brinker's state court action deposition, the inaccurate Order of this Court, combined with the unnecessarily critical comments of Magistrate Judge Hogan, indicate that this Court was predisposed against having Plaintiffs depose Mr. Brinker at all. Given the prominence of Mr. Brinker in this action, and Plaintiffs undeniable right to depose Mr. Brinker on all issues related

to the CAC, Magistrate Judge Hogan's Order must be overturned in its entirety. Otherwise, this Order will stand for the extraordinary and disturbing proposition that a key witness in a case cannot be fully and fairly deposed.

## II. ARGUMENT

### A. Magistrate Judge Hogan Had Made Up His Mind Regarding The Deposition Before it Was Taken.

The words of Magistrate Judge Hogan, who presided at the initial deposition of Mr. Brinker, make it very likely that he had made up his mind that it would be limited to two hours before a single question had been asked. At the beginning of the deposition, Magistrate Judge Hogan stated as follows:

> **THE COURT:** I don't care if it's on the record or not. It's fairly simple. The length of the deposition is two hours. And we'll decide at the end of two hours whether or not there will be more time, but it won't be today.
>
> And secondly, don't count on having more than two hours. In other words, I want this over with to the extent possible in two hours. Secondly, I'm not going to rule on objections. That would be up to Judge Beckwith—I think it's Judge Beckwith, isn't it?

(Brinker Deposition Transcript at 5, Complete Transcript Attached as Exhibit B). This message not only signaled to all participants in the deposition his disdain for the deposition, but also clearly set the tone for the deposition. Therefore, although Plaintiffs readily admit that the deposition was not as productive as it potentially could have been because of arguably argumentative episodes with the deponent throughout, Plaintiffs believe that this Court has to take some responsibility for

6

this by communicating to the deponent that the Court held this process in contempt.

This lack of impartiality was thereafter reflected in the March 5, 2004 Order. In that Order, Magistrate Judge Hogan confirmed the oral opinions that he had not been trying hard to conceal during the deposition and telephonic status conference. Magistrate Judge Hogan ordered that there was to be no further deposition of Mr. Brinker. However, perhaps what is even more telling than this decision was the absolute lack of specificity that he provides in his Order.

Magistrate Judge Hogan's March 5, 2004 Order is as interesting for what it does say as for what it does not say. Although the original reason for Plaintiffs to be limited in the amount of time that they could depose Mr. Brinker was his health, this issue is glaringly absent in the March 5, 2004 Order. Thus, it must be supposed that there is no health reason prohibiting the further deposing of Mr. Brinker. Rather, the stated reason for the termination of Mr. Brinker's deposition is the fact that Plaintiffs failed to cover any new ground in the deposition as required by the December 22, 2003 Order. (Doc. No. 229). Magistrate Judge Hogan states that after having observing the second deposition, and having reviewed the first deposition, that nothing further was elicited from the second deposition. (Doc. No. 295). However, although Magistrate Judge Hogan states in his Order that he has reviewed the previous 800 page transcript in the state court action, he fails to cite to a single example of repetitive or burdensome questioning in the Order. Similarly, Magistrate Judge Hogan simultaneously ignores several

7

examples of topics that were explored in the second deposition that could not have been covered in the first deposition based upon the time when they occurred. Thus, aside from Magistrate Judge Hogan's general observations, the Order says nothing that would factually or legally provide just cause for the deposition to not continue so as to provide a full and fair opportunity to the Plaintiffs to fairly and completely examine Mr. Brinker. In sum, Magistrate Judge Hogan's vocal opinions, inaccurate observations, and the lack of specificity in this Order, all but confirm that Magistrate Judge Hogan rendered his decision based not upon what he observed during the deposition, but upon his predisposed idea that the deposition was a "complete waste of time."

### B. Mr. Brinker's Deposition Covered Topics Which Could Not Have Been Covered During the April 2000 Deposition.

There were several topics that Plaintiffs covered during the February 2004 deposition that simply could not have been covered during the April 2000 deposition since these events had not yet occurred. These events include, but are not limited to, the 2003 Restatements, the 2003 Disqualification of Keating, Muething & Klekamp and the filing of Plaintiffs' September, 2000 Complaint, as well as monthly meeting between some of the former OHSL Board members where this litigation was discussed.

#### 1. The Restatements Could Not Have Been Covered During the April, 2000 Deposition of Mr. Brinker.

First, the Restatements could not have been covered in the first deposition because it occurred in April of 2000 and the First Restatement was not publicly

8

announced until March 5, 2003. Since Plaintiffs have alleged that the Restatements are evidence that there were material misstatements in the Proxy Materials/Registration Statement, the Plaintiffs were entitled to ask the Chairman of the Board of OHSL his opinion on whether or not Provident's financial statements contained material misstatements. One example of the undersigned's questioning of Mr. Brinker on this topic went as follows:

> Q. Mr. Brinker, when you were evaluating the proposed merger with Provident, did you believe that Provident's financial statements were free of material misstatement?
>
> A. Sure we believed it.
>
> Q. Okay.
>
> A. We took the word from McDonald.
>
> Q. Okay. Did you later learn that Provident's financial statements during the relevant time, 1999, were not free of material misstatement? That is, that they contained material misstatements?
>
> MR. BURKE: Objection. Misstates the record. Assumes facts not in evidence.
>
> A. I, I didn't—didn't know that or find it out until the, the first—the first statement that they made was that the—had the write-off for some bad loans on—I don't know if it was cars or airplanes or what, but there was no way that I would know that either before or after until they announced it.
>
> Q. Is that something you would have wanted to know at the time?
>
> A. That's something that would have been, by McDonald's, known whether it's valuable or invaluable, because they—they did the checking of the accounts when they make—give the recommendation on the company. We've got to take them at their word and figure that they checked everything out.

> Q. If McDonald had found out that Provident's financial statements were materially misstated, is that something that you would have expected them to share with you?
>
> MR. BURKE: Objection. Assumes facts not in evidence. Mischaracterizes the record.
>
> A. If it was materially, I would have expected that they would tell us, yeah.
>
> Q. Okay.
>
> A. But they wouldn't recommend the company. Why would they recommend the company if they know they've got misstatements?
>
> Q. Do you believe Provident's financial statements were materially misstated from 1994 to 2002?
>
> A. I have no reason to believe it.

(Brinker depo. at 117-118, Entire Transcript Attached as Exhibit B). The restatements not only led to questioning about whether or not Mr. Brinker would have still supported the merger if he had been aware of Provident's true financial information, but also about how the Provident stock traded after the Restatements were announced. Based upon these new developments, Mr. Brinker was also questioned about his prior role as a member of OHSL's audit committee and his understanding of accounting principles. These topics clearly shows that all of Mr. Brinker's testimony was not a repetition of what was previously elicited from Mr. Brinker's first deposition, and that it is improper for this Court to deny the Plaintiffs the ability to further question Mr. Brinker on this subject and other related topics.

## 2. The Disqualification of Keating, Muething & Klekamp Did Not Occur Until October, 2003.

Second, issues related to the October 20, 2003 disqualification of KMK could not have been covered during the April, 2000 deposition of Mr. Brinker. In particular, one of the issues of critical importance is whether or not Mr. Brinker, and the other clients of KMK, have made a knowing and informed choice to proceed with the KMK firm as his legal counsel for pre-trial purposes only. After questioning Mr. Brinker about this issue, it was obvious that he was confused about the most basic facts of the litigation: who the plaintiffs are, who the defendants are, and who his counsel is. The questioning of Mr. Brinker on this topic went as follows:

> Q. Do you understand that KMK attorneys will be witnesses in the case?
>
> A. Who?
>
> MR. BURKE: Objection, relevance.
>
> A. Who is that? Keating, Muething, you mean?
>
> Q. Yes.
>
> A. I heard that they were, were brought into the suit.
>
> Q. Do you understand—
>
> A. So that they would have to have different representation. We would have to have different representation at a trial.
>
> Q. Do you have different representation?
>
> A. We don't at this present.

Q. Okay. So at the present time, you believe that the Keating firm will represent you at trial; is that correct?

MR. PINNEY: I'm going to object to that as well.

MR. BRAUTIGAM: Your Honor—

A I would have—

MR. BURKE: Your Honor, the—Mr. Brautigam is knowingly misstating the record and **asking the witness questions that he obviously is, unsure of**, just in an effort to inject confusion and further the confusion of these proceedings. And I do have a continuing objection to this.

MR. BRAUTIGAM: Can we have the question read back, please?

(Record read by Reporter)

A. Well, from what I gather from the last information we had, that they couldn't do it and we would have an outside firm, but we as directors haven't done anything as of yet.

Q. Okay. What do you plan to do?

A. Well, I—

MR. BURKE: Objection. Calls for speculation. You may answer.

A. Yeah, it would be speculating. I guess we'd talk to the Board of Directors and see what they wanted to say. And we won't know if it ends up that Keating won't be able to stay with us. If they can't, we'll find another one.

Q. Okay. But you have no one as of today—

A. No.

Q. Is that right?

MR. BURKE: Objection.

A That's right.

12

(Brinker Depo. pp. 50-52). (emphasis added). This testimony unequivocally shows that the former Chairman of the OHSL Board is presently unaware of important developments in this litigation that affect him and his fellow directors. He is also obviously unaware of the conflict of interest which his present counsel has in being a defendant in this action while simultaneously representing Mr. Brinker and other OHSL directors, as well as its Defendant Provident. This is further evidenced by the fact that his counsel, Mr. Burke, felt the need to interject the clearly improper objection that the questioner was **asking the witness questions that he obviously is, is unsure of**. (Brinker Depo. p. 51). Perhaps Mr. Burke feels that it is inappropriate to ask questions that the witness may be unsure of, or may not know the answer to, but fortunately, this is not the legal standard.

Many of the depositions of the former OHSL directors were similar to Mr. Brinker's on this topic. Plaintiffs wish to fully develop this record, and at the appropriate time, bring a motion to hold KMK in contempt for deliberate non-compliance with an Order of this Court, as well as for deliberately disrupting the case to shield themselves and their premier client, Provident. Unfortunately, the Order of Magistrate Judge Hogan's Order only helps to shield KMK, and allow this wrongdoing to continue unabated[1].

---

[1] The Brinker deposition appears to have greatly disturbed the Graydon Head & Ritchey firm, since they withdrew from representation shortly after.

13

### 3. The Original Complaint Was Not Filed Until September of 2000.

Plaintiffs also questioned Mr. Brinker about the filing of the Thiemann Complaint, his knowledge of Plaintiff Walter Thiemann, and other events which occurred subsequent thereto. Mr. Brinker was asked about monthly meetings that the directors had after April of 2000 and, in particular, Mr. Hanauer's participation in those meetings. (Brinker dep. p. 84). Mr. Brinker was asked questions about the Thiemann suit and whether or not he had talked about the litigation after it was filed in September of 2000. (Brinker dep. pp. 85, 87-93). This included questions about Walter Thiemann, his prior employment relationship with OHSL, and the terms upon which he left OHSL. Plaintiff Thiemann had voted in favor of the merger based upon the materially false Proxy Materials/Registration Statement. In the opposition to the Motion for Class Certification, defense counsel attempted to portray Mr. Thiemann as a disgruntled fomer OHSL employee. (Doc. No. 244). Plaintiffs asked Mr. Brinker about this assessment, and he disputed that this was the case. Rather, he explained that Mr. Thiemann was an honest, loyal employee, that he was a director of Oak Hills before it was a public company, and that he would have been welcomed as a member of OHSL Board. (Brinker depo. pp. 87-88). The only reason that he was not on the OHSL Board was because he had moved to Florida and did not want to commit to makings the monthly meetings in Cincinnati, Ohio. Id. As a result, the testimony of Mr. Brinker was able to show that the personal attacks on Plaintiff Thiemann were knowingly false. All of the questions and topics listed above, as well as others which are not listed in this

Objection, confirm that Plaintiffs' counsel's questioning in this deposition was unquestionably proper and could not have been elicited from Mr. Brinker during the April, 2000 state court deposition.

### C. The Plaintiffs are Entitled to Take the Deposition of Mr. Brinker.

Finally, Fed.R.Civ.P. 26(b)(2) provides that by order, the court may alter the limits in the discovery rules on the number of depositions and interrogatories or the length of depositions under Rule 30. Fed.R.Civ.P. 30 sets the rules for taking depositions in federal cases. In particular, Fed.R.Civ.P. 30(d)(2) provides that:

> (2) Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination.

Id. However, Fed.R.Civ.P. 30(d)(4) provides as follows:

> (4) At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c). If the order made terminates the examination, it may be resumed thereafter only upon the order of the court in which the action is pending. Upon demand of the objecting party or deponent, the taking of the deposition must be suspended for the time necessary to make a motion for an order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

Id. Although there were some earlier verbal indications which indicated that Magistrate Judge Hogan's believed that Mr. Brinker's deposition was a "waste of time," Magistrate Judge Hogan has never orally stated that the deposition was

conducted in a manner which was unreasonably annoying, embarrassing or oppressive to Mr. Brinker. Similarly, Magistrate Judge Hogan's Order did not cite to such a reason when he denied any further depositions of Mr. Brinker. Rather, Magistrate Judge Hogan only cited to the fact that Plaintiffs had elicited no new information from the February 5, 2004 deposition that had not been elicited during the April, 2000 deposition. (Doc. No. 295). This is obviously untrue for the reasons set forth above. Thus, since this is the first time that Plaintiffs have taken Mr. Brinker's deposition in this case, and since Magistrate Judge Hogan's Order did not state that Plaintiffs' counsel unnecessarily annoyed, embarrassed or oppressed Mr. Brinker but only inaccurately argued that he was asking repetitive questions, Magistrate Judge Hogan's Order should be overturned in its entirety.

Finally, it must be noted how important the continued deposition of Mr. Brinker is to success of Plaintiffs' case. Norbert Brinker is unquestionably a significant witness to the Plaintiffs. Mr. Brinker is not only the former Chairman of the Board of OHSL, but he is also an OHSL director who changed his vote within days of the final vote on the merger, and who shredded several documents which pertained to this case. As the Chairman of the Board of a public company who had such a large role in the actions that make up the CAC, Plaintiffs have an obligation to depose Mr. Brinker to not only determine his knowledge as to events discussed in the CAC, but also to evaluate how he will appear at trial. Although Plaintiffs had an opportunity to begin this process during the February 5, 2004

deposition, they by no means were able to complete it. This was in part due to the actions of the deponent himself.

Mr. Brinker is a substantially different witness today from what he was in April of 2000. In particular, Mr. Brinker's answers reflected a shocking lack of connection to the question. A fair reading of the entire transcript will reveal that his answers were confusing and demonstrably wrong in several areas. The most glaring example of this was that when he was repeatedly asked a question about something that occurred in 1999, he would reply, "That was over 17 years ago . . . and I don't remember it at all." (Brinker Depo. p. 12). This was not a momentary slip. Rather, it was a common theme of his testimony to believe that events which took place in 1999 took place 17 years ago. (Brinker depo. pp. 17; 26-27; 30; 33-34). Certainly, Mr. Brinker's testimony is not a model of clarity, but this is a reason for more not less testimony. If Mr. Brinker is going to offer testimony that is completely adverse to facts that were heretofore not disputed, it is only fair to Plaintiffs that they be given an additional opportunity to depose Mr. Brinker.

Further, although Mr. Brinker did not usually respond to the question posed of him, Mr. Brinker was able to parrot the objections of his attorney is his responses. One example is as follows:

> Q. So you were trying to influence the shareholder vote through this letter and the proxy materials and the registration statement attached to this letter, correct?
>
> MR. BURKE: Objection. Argumentative. Asked and answered.

> A. It is argumentative. I don't think that you are telling them how they should vote...

(Brinker depo. p. 28). Another example is as follows:

> Q. Would you invite Ken Hanauer to that meeting?
>
> MR. BURKE: Objection. Calls for speculation.
>
> A. That would be speculation. I don't know if he would come.

(Brinker depo. p. 54). Although this did not occur after every objection raised by Mr. Burke, it did occur enough times that it was more than a coincidence, and more than a mere distraction. Although it took 800 pages of transcript to deal with the state court action claims in April of 2000, Plaintiffs' counsel had two hours to deal with the federal claims raised in Plaintiffs' CAC. While there is obviously some overlap of issues, two hours is definitely not enough time to thoroughly cover all the claims at issue in the CAC. This is especially the case when Plaintiffs have to take part of that time to deal with disjointed answers and rehearsed objections.

Therefore, if Plaintiffs are to conduct the type of complete and fair examination of Mr. Brinker provided for under Fed.R.Civ.P.26(b)(2), Magistrate Judge Hogan's extraordinary Order must be overturned in its entirety and Plaintiffs given another opportunity to depose Mr. Brinker.

## III. CONCLUSION

Thus, for the foregoing reasons, Plaintiffs respectfully request that the Order objected to be overturned in its entirety.

Respectfully Submitted,

**GENE MESH & ASSOCIATES**

Dated: 13 March 2004

By: _____
Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800 (Telephone)
(513) 221-1097 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certified that a copy of the foregoing Objection to Magistrate Judge Hogan's Order was served on this, the 15$^d$ day of February, 2004.

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, OH 45202-3752

Michael R. Barrett
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, OH 45202

**BY U.S. MAIL**

John W. Hust
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, OH 45249

James E. Gauch
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

David C. Greer
James H. Greer
BIESER, GREER & LANDIS
400 National City Center
6 North Main Street
Dayton, OH 45402-1908

_____
Stephanie A. Hite