# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WALTER W. THIEMANN, *et al.*, | ) Case No. C-1-00-793 |
| Plaintiffs, | ) |
|  | ) (Judge Sandra S. Beckwith) |
| -v- | ) (Magistrate Judge Timothy S. Hogan) |
|  | ) |
| OHSL FINANCIAL CORPORATION, *et al.*, | ) |
| Defendants. | ) |

### AFFIDAVIT OF TAYFUN TUZUN IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PROVIDENT FINANCIAL GROUP, INC.

STATE OF OHIO         )
                      ) SS:
COUNTY OF HAMILTON    )

TAYFUN TUZUN, being first duly cautioned and sworn, deposes and states as follows:

(1) I am the Senior Vice President, Treasury for Provident Financial Group, Inc. ("Provident"). I have held this position since 1998. I have worked for Provident Bank for the past 10½ years and, prior to my current position, I was employed as the Assistant Vice President, Treasury. I also obtained a Ph.D in economics in 1992 from The Ohio State University. In the course of my duties and responsibilities to Provident, I have been involved in negotiating the auto loan securitization transactions that Provident entered into during the 1990's. I also have responsibility for interest rate and risk management, capital management, the internal business finance group, and investor relations. In the course of my duties and responsibilities, I observe and monitor the Provident stock price and how it is impacted by news releases and business developments. I am familiar with the facts and underlying circumstances of Provident's restatement on March 5, 2003 (the "First Restatement") and the subsequent restatement on April

18, 2003 (the "Second Restatement"). As a result of my duties and responsibilities to Provident, and based upon my review of documents maintained in the ordinary course of business, I have first-hand knowledge of the facts contained herein and would be competent to testify to them if called as a witness at trial.

(2)  I have reviewed the analysis in Plaintiffs' Motion for Partial Summary Judgment, particularly the analysis of Ralph E. Fuerman regarding whether the financial impact of the First Restatement and Second Restatement would have been material to Provident's stock price or to the 1999 merger between Provident and OHSL Financial Corporation ("OHSL"). Mr. Fuerman is incorrect. My analysis is that, had the financial impact of the First Restatement and Second Restatement been disclosed in Provident's financial statements during 1999, and in the combined proxy statement and registration statement for the Provident-OHSL merger (the "Proxy Materials"), this would have had no material impact either on the Provident stock price or on the OHSL merger. My reasons for this are set forth in the following paragraphs.

(3)  On March 5, 2003, Provident announced the First Restatement which pertained to its operating results for the years 1997 through 2002. The First Restatement resulted from Provident's discovery of inadvertent accounting errors in a financial model created to predict income and expense on nine auto lease securitization transactions that were entered into between 1997 and 1999. While testing a new model, we discovered that the income that had been reported on the auto lease securitizations was more than it should have been. As a result, Provident reduced its reported net income ($122.4 million) for 1998 by $2 million and its reported net income ($115.9 million) for 1999 by $11.3 million. The Proxy Materials for the Provident-OHSL merger were dated September 24, 1999 and related to an OHSL stockholders' meeting to be held on October 25, 1999. The Provident financial statements that were incorporated by reference in the Proxy Materials included all of 1998 and the first six months of

1999. In connection with the First Restatement, Provident's outside accounting firm, Ernst & Young, LLP ("E&Y") also concluded that these auto lease securitization transactions should not have been reported off Provident's balance sheet as operating leases as had been done since 1999. As a result, the assets and liabilities associated with the securitization transactions were added back to Provident's balance sheet as direct finance leases (i.e., as loans). Among other things, this aspect of the First Restatement meant that the assets reported on Provident's balance sheet would have been increased by $631 million for 1998 and $1.28 billion for 1999.

(4) On April 15, 2003, Provident announced the Second Restatement. Following the First Restatement, Provident's audit committee engaged the accounting firm of PricewaterhouseCoopers, LLP ("PwC") to conduct an independent review of the circumstances underlying the First Restatement. Based upon PwC's independent review, Provident's management confirmed that the First Restatement resulted from unintentional accounting errors. As a result of PwC's work, however, it was determined that Provident's auto leases from 1994-2002, which previously had been classified as direct finance leases on Provident's financial statements since 1994, with the agreement of Provident's independent auditor, E&Y, did not satisfy certain technical accounting requirements for direct finance leases. This reclassification included the auto leases and the nine securitization transactions which, with the input of E&Y, had just been reclassified as direct finance leases one month earlier in the First Restatement. As a result, Provident reclassified the auto leases on its balance sheet as operating leases and reported them in the asset category of leased equipment. As a result of the difference in how income and expenses are generated and reported for operating leases versus leased equipment, this reduced Provident's reported net income for the 8 year period from 1994 through 2002 by an additional $44.4 million on a cumulative basis. This reduction in income, however, was only a matter of timing, not an overall net reduction of income. As a result of this change, it meant that,

although previously reported income would be reduced by $44 million, Provident's future net income would be <u>increased</u> by approximately the same amount. The issue underlying the Second Restatement was just the timing of certain income. Provident's overall net income as an enterprise did not change to any significant extent.

(5) I disagree with Mr. Fuerman's analysis and I believe that the financial impact of the First Restatement and the Second Restatement, as it would have been reflected in the Provident financial information included in the Proxy Materials, would not have materially impacted either Provident's stock price or a reasonable investor's analysis of the transaction. In the first place, one cannot merely look at percentage changes in reported net income as a sole test of materiality, as Mr. Fuerman has done. The analysis is much more complicated. The financial impact of the Second Restatement, for example, would not have been material to the Proxy Materials or to the OHSL merger at all. The Second Restatement did not reflect a net reduction in Provident's net income. The accounting changes it included were irrelevant to an investor's valuation of Provident and to Provident's stock price because the financial impact of the Second Restatement merely changed the period during which certain income would be reported. Investors, in my experience, usually place more significance on future earning streams than on previously reported income. The Second Restatement would not have had any impact on Provident's stock price in 1999 because Provident, as an enterprise, would have realized the same overall income as previously reported, just in different time periods. The lack of materiality of the Second Restatement is corroborated by what actually happened to the Provident stock price following the announcement of the Second Restatement on April 15, 2003. Attached hereto as Exhibit 1 is a chart reflecting the Provident's stock price during 2003. As the chart reflects, following the announcement of the Second Restatement on April 15, 2003, not only did Provident's stock price not drop, it increased and steadily increased thereafter. This

- 4 -

corroborates my conclusion that a mere change in the timing of the recognition of $44 million of income, as was announced in the Second Restatement, is not material to investors in Provident stock. To the contrary, the market apparently viewed the Second Restatement as good news. There is no reason to believe, therefore, that Provident's stock would have been adversely affected by the financial results of the Second Restatement in 1999. Indeed, the behavior of the market in 2003 indicates that Provident's stock price would have been unaffected if the portion of the Second Restatement attributable to the period prior to September 24, 1999 had been included in the Proxy Materials.

(6) Similarly, I disagree with Mr. Fuerman's opinion that the financial impact of the First Restatement would have been material to the Provident stock price during 1999 or to the OHSL merger. Again, Mr. Fuerman's reliance solely on percentages is overly simplistic and unreliable. The Provident financials included in the Proxy Materials included Provident's earnings and financial performance for the first six months of 1999. Two of the Provident securitization transactions which were included in the First Restatement did not close until after the Provident-OHSL merger closed on December 3, 1999. Even using full year 1999 numbers, however, I conclude that disclosure of the financial impact of the First Restatement would not have been material to the Provident stock price or to the OHSL merger. Provident's reported earnings for the full year 1999 were $3.08 per share. The impact of the First Restatement would have reduced Provident's income for the full year 1999 by $11.3 million. This would have reduced Provident's full year 1999 earnings per share to $2.85. This results in a net reduction in earnings per share for the full year 1999 of $.23 per share. Provident's average price earnings ratio for the second half of 1999 was 13.1. It is far from clear that reductions in earnings per share necessarily correlate directly to a dollar-for-dollar reduction in any company's share price, including Provident's. Nevertheless, assuming hypothetically that this would have occurred, a

$.23 reduction in Provident's earnings per share for the full year 1999 would have translated into an expected potential negative impact on Provident's share price of $3.01 per share ($.23 per share x 13.1 P/E ratio). Attached hereto as Exhibit 2 is a chart tracking the performance of Provident's stock price during 1999. As is apparent from the chart, there was significant price movement in Provident stock during 1999. The stock traded as high as $46 per share and as low as $34 per share (a $12 spread). The standard deviation measures the average volatility and fluctuation in Provident's stock price. Thus, at any point during 1999, Provident's stock price would have been <u>expected</u> to fluctuate by approximately $3.00 per share, all other things being equal. A $3.01 change in Provident's stock price during 1999, therefore, would not have been a material move and merely would have mirrored what the market otherwise would have expected to occur. Accordingly, even assuming that inclusion of the financial impact of the First Restatement in Provident's full year 1999 financials would have had a $3.01 negative impact on Provident's stock price (which is far from clear), this would not have been material and would not have been any different from what reasonable investors would have expected with respect to Provident's stock price during 1999, based upon market conditions.

FURTHER AFFIANT SAYETH NAUGHT.

*[signature]*
Tayfun Tuzun

Sworn to before me and subscribed in my presence this 12th day of February, 2004.

*[signature]*
Notary Public

1217037.1

KIMBERLEY WILLIAMSON
Notary Public, State of Ohio
My Commission Expires Nov. 21 2004





EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WALTER W. THIEMANN, *et al.*, | ) Case No. C-1-00-793 |
| Plaintiffs, | ) |
| | ) (Judge Sandra S. Beckwith) |
| -v- | ) (Magistrate Judge Timothy S. Hogan) |
| | ) |
| OHSL FINANCIAL CORPORATION, *et al.*, | ) |
| Defendants. | ) |

**SUPPLEMENTAL AFFIDAVIT OF TAYFUN TUZUN IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST PROVIDENT FINANCIAL GROUP, INC.**

STATE OF OHIO        )
                     ) SS:
COUNTY OF HAMILTON   )

TAYFUN TUZUN, being first duly cautioned and sworn, deposes and states as follows:

(1) I am the Senior Vice President, Treasury for Provident Financial Group, Inc. ("Provident"). I have held this position since 1998. I am providing this Supplemental Affidavit and set forth a fuller description of my education, training, experience and knowledge with respect to the topics covered in my original Affidavit. I have first-hand knowledge of the facts contained herein and would be competent to testify to them if called as a witness at trial.

(2) I received a B.S. in Economics in 1986 from Bosphorus University in Istanbul, Turkey. After the completion of my undergraduate studies in Economics in 1986, I was accepted to join the Ph.D. program in Economics at The Ohio State University. As part of the program I received a Masters degree in Economics in 1987 and continued specialized course work in International Finance and Economic Development. The next five years of my graduate studies were spent in Ph.D. coursework and in conducting research for and writing my Ph.D.

dissertation. The subject matter was a mixture of topics in Finance and Economics and focused on market valuation of commercial banks. The title of my Ph.D. dissertation was *Applying the Statistical Market Value Accounting Model to Time-Series Data for Individual Firms*. I received my Ph.D. from The Ohio State University in 1992.

(3)     After receiving my Ph.D., I taught for one year as a member of the faculty at the School of Banking and Finance, University of New South Wales in Sydney, Australia, one of the top three tertiary institutions in Australia. During my tenure there I worked both on teaching and research. While obtaining my Ph.D. at Ohio State and during my tenure at the University of New South Wales, I have taught courses in Introductory Microeconomic theory, Intermediary Microeconomic Theory, Statistics, Banking and Finance, Australian Capital Markets and Regulation in Financial Markets. Also while on the faculty at the University of New South Wales, I was awarded a government research grant together to conduct valuation analyses on Australian banks and subsequently published two research papers in refereed academic journals. The titles of my articles were: (a) *The Underinvestment Hypothesis and Off-Balance Sheet Direct Credit Substitutes*; and (b) *Standby Letter of Credit and Bank Default Risk*.

(4)     I joined Provident Bank in 1993 in the Treasury area focusing on Interest Rate Risk Management. Interest income constitutes a large majority of banks' income and therefore constitutes the biggest risk. Jobs in this area require an intimate knowledge of not only the bank's balance sheet but also expertise in financial markets in general. Utilizing my quantitative background I developed a detailed understanding of bond and equity markets as well as different valuation techniques and tools used in the industry. Throughout my tenure at Provident I assumed additional responsibilities in Securitizations, Capital Management, Investor Relations, Financial Budgeting and Forecasting. I participated in mergers and acquisition analyses on multiple occasions when Provident was involved in prospective transactions as an acquiror or

seller. Throughout this period the CFO and I have been the primary contacts with investment bankers, equity analysts who follow financial stocks, and rating agencies. As a result I have developed a deep understanding of financial valuation for commercial banks. In addition I have been in charge of Strategic Planning for the bank. In that role I spent a significant amount of time analyzing strategic options to maximize shareholder value and developed extensive knowledge of projecting market reaction to strategic executions of financial decisions. I believe that the combination of my educational background and work experience qualify me to comment on market events, including performance of PFGI stock performance, that are detailed in my original Affidavit.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Tayfun Tuzun

Sworn to before me and subscribed in my presence this 8th day of March, 2004.

_____
Notary Public

JAMES E. BURKE, Attorney at Law
Notary Public, State of Ohio
My commission has no expiration date
Section 147.03 O. R. C.

1228319.1