# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JACK MERZIN, et al.,            :        NO. 1:03-CV-00165
                                :
        Plaintiffs,             :
                                :
    v.                          :        **ORDER**
                                :
PROVIDENT FINANCIAL GROUP       :
INC., et al.,                   :
                                :
        Defendants.             :


        This matter is before the Court on Defendants' Motion to Dismiss (doc. 20), Plaintiffs' Response (doc. 21), and Defendants' Reply (doc. 23).

**I. Background**

        On March 5, 2003, Provident Financial Group, Inc., ("Provident") issued a press release announcing that it was restating its operating results for the years 1997 through 2002 (doc. 20). Provident avers that such restatement resulted from its discovery of accounting errors in a financial model created to predict income and expense on nine auto lease securitization transactions (Id.). Provident subsequently announced a second restatement, on April 15, 2003, indicating the discovery of an incorrect classification of the auto leases, the rectification of which decreased its reported income by $44.4 million for the eight-year period from 1994 through 2002 (Id.).[1] Provident avers,

_____

[1] Although Plaintiffs argue that Defendants' citation to select portions of a news release is improper as "outside the scope of the pleadings," the Court does not find such argument well-taken. It would be inequitable to allow Plaintiffs to pick

however, that such reclassification only meant a shift in the timing of income, and not a reduction of income (Id.).

Plaintiffs bring seven claims against Defendants based upon alleged securities fraud (doc. 18). Plaintiffs allege that Defendants deliberately misstated their financial condition and results between March 30, 1998, and March 5, 2003 ( Id.). Such misstatement allegedly resulted in an overstatement of earnings that caused Defendants' common stock to be artificially inflated, thus injuring Plaintiffs (Id.). Plaintiffs' Complaint alleges Counts I through VII, as follows for 1) violations of Section 10(b)

---

and choose from the news release those portions favorable to their position to the exclusion of all others. Plaintiffs' First Amended Class Action Complaint clearly bases its allegations on "a review of. . .press releases, and media reports," and specifically refers to specific financial data included in the April 15, 2003 press release. Plaintiffs object to citation to that same press release, which states that an outside accounting firm found that the restatement resulted from unintentional accounting errors, and that the auto leases had been incorrectly classified. The Court considers the April 15, 2003 press release as incorporated by reference into the Complaint, and therefore reference to it does not fall outside the scope of the pleadings. See, e.g., In re Royal Appliances Secs. Litig., 1995 U.S. App. LEXIS 24626 at *2 (6th Cir. Aug. 15, 1995)(in the context of a motion to dismiss a securities fraud claim, a court "may consider. . .statements 'integral to the Complaint,' even if not attached, without converting the motion into one for summary judgment"), Plassman v. City of Waseon, No. 95-3736, 1996 U.S. App. LEXIS 14496, *10-*11, (6th Cir. May 14, 1996) citing Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994)(holding that documents whose contents are alleged in a complaint and whose authenticity is uncontested, but that are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss), cert. denied, 114 S. Ct. 2704 (1994); Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)(holding that documents attached to defendant's motion to dismiss are considered part of the pleadings if they are referred to in plaintiff's complaint and are central to her claim).

of the Exchange Act and Rule 10b-5; 2) violation of Section 20(a) of the Exchange Act; 3) violation of Section 11 of the 1933 Act, 15 U.S.C. § 77k; 4) violation of Section 12(a)(2) of the 1933 Act, 15 U.S.C. § 77L(2) against Plaintiff Silverback and the PRIDES subclass; 5) violation of Section 15 of the 1933 Act by the individual Defendants as controlling persons; 6) breach of contract by Provident and Provident Bank against the subclass Fidelity Plaintiffs; and 7) breach of contract by Provident and Provident Bank against the subclass OHSL Financial Corporation ("OHSL") Plaintiffs (Id.).

   Defendants filed their Motion to Dismiss on November 5, 2003, attacking Counts I, II, IV, VI, and VII of Plaintiffs' Amended Complaint (doc. 20). Defendants argue that Plaintiffs' first claim should be dismissed because Plaintiffs have failed to adequately allege scienter (Id.). Defendants further argue that the individual Defendants are not liable under Section 20(a) of the 1934 Act, so that Plaintiffs' second claim should be dismissed (Id.). Defendants argue that Plaintiffs' fourth claim fails because the only remedy available is rescission, which in this case would yield no benefit for Plaintiffs because the securities are trading at a price well above the amount Plaintiffs paid (Id.). Plaintiffs' breach of contract claim fails, argue Defendants, because the representations and warranties sued upon expired at closing, because the Fidelity Plaintiffs are not parties to the agreement, and because the breach of contract claim is derivative in nature (Id.). For the same reasons, Defendants argue that the

3

OHSL Plaintiffs' breach of contract claim should be dismissed (<u>Id</u>.).

## II. The Fed. R. Civ. P. 12(b)(6) Standard

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint.  The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which states that, a pleading "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Westlake v. Lucas</u>, 537 F.2d 857, 858 (6th Cir. 1976).  In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 1687 (1974).  Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99 (1957).  A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in <u>Jones v. Sherrill</u>, 827 F.2d 1102, 1103 (6th Cir. 1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. <u>Windsor v. The Tennessean</u>, 719 F.2d 155, 158 (6th Cir. 1983), <u>cert. denied</u>, 469 U.S. 826 (1984).  The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. <u>Id</u>. at 158; <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).

<u>Jones</u>, 824 F.2d at 1103.

The admonishment to liberally construe the plaintiff's

4

claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint . . . must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1985) (quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981), cert. dismissed, 462 U.S. 1125 (1983)); see also Sutliffe, Inc. v. Donovan Companies, Inc., 727 F.2d 648, 654 (7th Cir. 1984); Wright, Miller & Cooper, Federal Practice and Procedure: § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

III. **Law Applicable to Plaintiffs' Securities Fraud Claims**

The Securities Act of 1933 ["the 1933 Act"] recognizes a

private right of action based upon untrue statements or omissions of material fact in security registration statements.  15 U.S.C. § 77k (2003).   The 1933 Act also extends liability for such statements or omissions to "controlling persons," defined as including "every person who, by or through stock ownership, agency, or otherwise. . .," controls any person liable under 15 U.S.C. § 77K.  15 U.S.C. § 77o (2003).

The Securities and Exchange Act of 1934 ["the Exchange Act"] further precludes the use of "any manipulative or deceptive device or contrivance" in connection with the purchase or sale of securities, as well as the solicitation of proxies in contravention of applicable securities rules and regulations.  15 U.S.C. §§ 78j(b), 78n(a) (2003).  Similarly to the 1933 Act, the Exchange Act imposes liability for such violations on "controlling persons."  15 U.S.C. § 78t(a) (2003).  A plaintiff can hold individual defendants liable under a "controlling persons" theory of liability only if the defendants were "controlling persons" of an entity that has violated the Securities Act.   In re Comshare, Inc. Securities Litigation, 183 F.3d 542, 548 (6th Cir. 1999).  If the Court concludes that plaintiffs have not stated a claim that the defendant company violated the Securities Act, the Court need not reach the plaintiffs' claim to "controlling person" recovery.

Rule 10b-5 of the Rules and Regulations promulgated under the 1934 Act further provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national

securities exchange,

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2003).  Taken together, Section 10(b) of the Exchange Act and the corollary rule "have the effect of prohibiting the commission of fraud in connection with the sale or purchase of securities."  In re Sofamor Danek Gp., Inc., 123 F.3d 394, 400 (6th Cir. 1997), cert. denied 523 U.S. 1106 (1998).

In order to state a claim for relief under these sections, a plaintiff must allege, in connection with the purchase or sale of securities, (1) the misstatement or omission of a material fact, (2) made with scienter, (3) upon which the plaintiff justifiably relied, and (4) which proximately caused the plaintiffs' injury.  Comshare, 183 F. 3d at 548.  In a case where fraud on the market is alleged, plaintiffs are presumed to have relied on the stock price established by the market.  Basic Inc. v. Levinson, 485 U.S. 224, 247 (1988).

In 1995, Congress enacted the Private Securities Litigation Reform Act ["the PSLRA"] to address its perception that Fed. R. Civ. P. 9(b), which requires that fraud be pleaded with particularity, had "not prevented abuse of the securities laws by

private litigants." <u>Comshare</u>, 183 F.3d at 548, <u>citing</u> H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 818. By enacting the PSLRA, Congress sought to establish exacting requirements for stating a cause of action for securities fraud. In actions premised upon an alleged untrue statement or omission of material fact, plaintiffs are required to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation. . .is made on information and belief, . . .[to] state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (2003). If plaintiffs establish that the defendants made a misstatement or omission of material fact in connection with the purchase or sale of securities, plaintiffs also must establish that the defendant acted with the requisite scienter, that is, they must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. § 78u-4(b)(2) (2003). If plaintiffs fail to plead facts giving rise to a strong inference of scienter, the Court may dismiss the Complaint. 15 U.S.C. § 78u-4(b)(3) (2003). The Sixth Circuit has provided a list of  the type of facts that might establish scienter: (1) insider trading, (2) divergence between internal reports and external statements on the same subject, (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information, (4) evidence of bribery by a top company official, (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick

8

settlement of that suit, (6) disregard of the most current factual information before making statements, (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication, (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock, and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs. Helwig v. Vencor, Inc., 251 F.3d 540, 552 (6th Cir. 2001).

## IV.  Discussion

### A.  Plaintiffs' First Claim: Defendants Allegedly Violated Section 10(b)of the Exchange Act and Rule 10b-5.

Defendants argue that Plaintiffs' first claim fails for lack of the pleading of actual facts giving rise to a strong inference that Defendants acted with the requisite knowledge or recklessness in reporting erroneous income figures (doc. 20). Defendants argue that none of the types of facts presented as examples of scienter by the Sixth Circuit in Helwig, 215 F.3d at 552, are present in this case (Id.). Defendants argue under San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos., 75 F.3d 801, 814 (2d Cir. 1996), Kalnit v. Eickler, 264 F.3d 131, 139-40 (2d Cir. 2001), Chill v. General Electric Co., 101 F.3d 263, 268, n.5 (2d Cir. 1996), and Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir. 1994), that allegations that they were motivated to make their stock look better do not raise a strong inference of

scienter (Id.).  Similarly, under   In re Fritz Companies Sec.
Litig., 282 F.2d 1105, 1113 (N.D. Cal. 2003), Defendants argue that
a published accounting error does not necessarily evidence
intentional deception.

Plaintiffs respond that the list cited by the Sixth
Circuit in Helwig, is not exhaustive (doc. 21 citing 251 F.3d at
552).  Plaintiffs argue that allegations of scienter must be judged
in their entirety, in accord with In re Telxon Corp. Secs. Litig.,
133 F. Supp. 2d 1010, 1026 (N.D. Ohio 2000), such that scienter may
properly be established by violations of generally accepted
accounting principles ("GAAP") followed by massive restatements,
when coupled with allegations of motive and opportunity (Id.).
Plaintiffs argue that Defendants were motivated to inflate the
price of Provident stock because during the relevant time period
Provident was engaged in an aggressive acquisition campaign, using
its own stock as currency (Id.).  Plaintiffs further argue that the
magnitude of the restatements supports a strong inference of
scienter, citing In re Smartalk Teleservices, Inc. Sec. Litig., 124
F. Supp. 2d 527, 539-40 (S.D. Ohio 2000)("the more serious the
error, the less believable are [corporate] defendants protests that
they were completely unaware of [the corporation's] true financial
status and the stronger is the inference that defendants must have
known about the discrepancy")(quoting Rehm v. Eagle Finance Corp.,
954 F. Supp. 1246, 1255-56 (N.D. Ill. 1997)).  Plaintiffs aver that
Provident's reported earnings for the years 1997-2002 were
overstated by more than $70 million, and the Company's balance

sheet did not include annual liabilities amounting to as much as $1 billion in each of the years 1999 through 2001 (Id.). Plaintiffs next argue that violations of GAAP are relevant to scienter where the provisions are well-defined and established, citing In re MicroStrategy Inc. Secs. Litig., 115 F. Supp. 2d 620, 635 (E.D. Va. 2000)(Id.). Plaintiffs posit that the GAAP violations were clear in this case, and the fact that Defendants engaged in improper accounting practices for over six years shows the violations to be repeated and pervasive (Id.). Finally, Plaintiffs argue Defendant Carey, Provident's Chief Financial Officer, admitted to the press that the income from the auto leasing business seemed too high during the relevant time period, but that the financial model used to account for the leases was not reviewed (Id.). Plaintiffs argue therefore that Defendants recklessly disregarded a lack of internal controls, proving scienter (Id.).

Defendants reply that Plaintiffs' 10(b)/10b-5 claim should be dismissed because Plaintiffs have failed to adequately allege scienter (doc. 23). Defendants first argue that under In re Comshare, 183 F.3d 542, 551, n.8 (6th Cir. 1999), Plaintiffs' "motive and opportunity" allegations alone are insufficient as a matter of law to support an inference of scienter (Id.). Defendants posit that even if Plaintiffs are correct that stock-for-stock acquisitions may support an inference of scienter, there must be at least a temporal connection between the alleged fraud and the acquisitions (Id.). In this case, Defendants argue, the error in improperly classifying the auto leases commenced in 1994,

some two years prior to the acquisitions, and the error continued in late 2000, 2001, and 2002, well after the acquisitions were complete (Id.). As such, Defendants argue, there is no temporal link between the error and the acquisitions (Id.). Similarly, argue Defendants, there is no temporal connection between their use of the flawed mathematical model and the stock-for-stock acquisitions, because the acquisitions only took place for a fraction of the period during which the model was used, and Defendants continued to use the model for nearly two years after the acquisitions were complete (Id.). Defendants further argue Plaintiffs' allegations that the three public offerings in June and July 2002, the alleged need for liquidity, and the "increase in expenses and consumer lease financing charge-offs" together provide enough motive to establish scienter is wrong as a matter of law (Id.). Defendants point out that Plaintiffs' own authority, Marra v. Tel-Save Holdings, Inc., 1999 WL 317103, *9 (E.D. Pa. 1999), indicates that concealment of overstatements of stock price in order to complete two public offerings does not permit an inference of fraud and therefore is insufficient to establish scienter (Id.). Defendants further argue that Plaintiffs failed to address or attempt to distinguish San Leandro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Cos., 75 F.3d 801, 814 (2d Cir. 1996), Kalnit v. Eickler, 264 F.3d 131, 139-40 (2d Cir. 2001), Chill v. General Electric Co., 101 F.3d 263, 268, n.5 (2d Cir. 1996), and Melder v. Morris, 27 F.3d 1097, 1102 (5th Cir. 1994), which Defendants state show that federal courts have rejected the

12

same sort of general allegations of motive made by Plaintiffs here (<u>Id</u>.).

Defendants next address the argument made by Plaintiffs that the magnitude of the error supports a strong inference of scienter (<u>Id</u>.). Defendants argue that in every case cited by Plaintiffs there are warning signs in addition to the magnitude of the restatement, which permitted the courts to draw an inference of scienter (<u>Id</u>. <u>citing</u> <u>e.g.</u>, In <u>re Smartalk Teleservices, Inc. Sec. Litig.</u>, 124 F. Supp. 2d 527, 540 (S.D. Ohio 2000)(specific allegations of insider trading in addition to magnitude of error allowed the court to draw an inference of scienter). Defendants argue that <u>In re Credit Acceptance Corp. Sec. Litig.</u>, 50 F. Supp. 2d 662 (E.D. Mich. 1999) is directly on point(<u>Id</u>.). The defendants in <u>In re Credit Acceptance</u> installed a new software program that resulted in the discovery of a $60 million accounting reclassification that defendants announced in a press release (<u>Id</u>.). A securities class action followed in which plaintiffs alleged the magnitude of the error supported an inference of scienter (<u>Id</u>.). The court disagreed, stating, "Plaintiffs do not allege any specific facts that Defendants were aware of [the accounting error]" nor "any red flags suggesting deliberate ignorance on part of Defendants"(<u>Id</u>. <u>citing</u> <u>In re Credit Acceptance</u>, 50 F. Supp. 2d at 679). Defendants here argue that without any allegations of "red flags," Plaintiffs Complaint fails under the PSLRA, citing <u>In re U.S. Aggregates, Inc. Sec. Litig.</u>, 235 F. Supp. 2d 1063, 1073 (N.D. Cal. 2002)(plaintiffs alleged that

the magnitude of the restatement suggested a strong inference of scienter, the court disagreed, contrasting plaintiffs' cases that "found an inference of scienter not only from the magnitude of the restatement but also from additional, specific allegations that the defendants had actual knowledge of relevant facts from which scienter could be inferred")(Id.).

Defendants subsequently address Plaintiffs' argument that violations of generally accepted accounting principles, or "GAAP", can give rise to an inference of scienter (Id.). Defendants posit that GAAP are not a single-source accounting rule-book, but rather GAAP tolerate a range of reasonable treatments, leaving the choice among alternatives to management (Id. citing Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 101 (1995), and In re K-Tel Int'l, Inc. Sec. Litig., 300 F.3d 881, 890 (8th Cir. 2002)(quoting Thor Power Tool Co. v. C.I.R., 439 U.S. 522, 544 (1979))). In any case, argue Defendants, the GAAP provision in question in this case, Financial Accounting Standard ("FAS") No. 13 (later amended by FAS No. 28) is no simple, objective standard, but rather is seventy-seven pages long (Id.). Consequently, argue Defendants, the fact that two big-five accounting firms[2] disagreed in the application of FAS No. 13

---

[2] Defendants aver that from 1994 through 2000, with the blessing of their independent auditor, Ernst & Young, they reported their auto-lease securitizations off-balance sheet as a sale and leaseback of operating leases. On or about 2000, Provident decided to restructure subsequent auto lease transactions as an on-balance sheet financing of leases, and all subsequent deals were so recorded. In 2003, Ernst & Young changed its mind, and advised Provident that under FAS 13, the pre-2000 auto-lease transactions that had been classified as off-

to the auto leases demonstrates the complexity of the standard and the reasonableness of the error (Id.). Defendants argue that Plaintiffs' reliance upon In re MicroStrategy, Inc. Secs. Litig., 115 F. Supp 2d 620, 635 (E.D. Va. 2000) is misplaced because in contrast the GAAP provision at issue in that case was relatively simple (Id.). Moreover, argue Defendants, the facts of In re Microstrategy, show the existence of additional red flags not present in this case, including specific suspect statements made by defendant's president and CEO, as well as suspiciously timed insider stock sales (Id. citing 115 F. Supp. 2d at 640, 643-47). Defendants argue the only statement that could possibly be construed as a red flag is the March 6, 2003 statement of Chris Carey, Provident's Chief Financial Officer, who admitted that "[w]e knew the business wasn't super-profitable, and it looked like it was more profitable than it should be" (Id.). However, Defendants argue that Plaintiffs take such remark out of context, as it was made after Defendants discovered the accounting model problem in February 2003, and Defendants had already issued the first restatement (Id.). Defendants conclude that Plaintiffs' Complaint contains no more than generalized allegations about accounting errors, without any detailed factual allegations to support a securities fraud claim (Id.). Consequently, Defendants argue that

---

balance sheet operating leases needed to be re-classified as on-balance sheet direct finance leases. In contrast, Pricewaterhouse Coopers later advised Provident's Audit Committee that under FAS 13, all leases should be classified as operating leases, not direct finance leases (doc. 23).

Plaintiffs' Section 10(b)/Rule 10b-5 claim should be dismissed in its entirety (Id.).

Having reviewed this matter, the Court finds Defendants' position well-taken. The Court does not find facts supporting an inference of fraud, but rather facts supporting the existence of complex accounting errors. Although the error is large, the Court finds the situation analogous to that in In re Credit Acceptance Corp. Sec. Litiq., 50 F. Supp. 2d 662 (E.D. Mich. 1999) where the lack of "red flags" led the court to conclude that there was no inference of scienter.

Congress clearly instituted the PSLRA in order to reduce abusive litigation and coercive settlements, and thus set as a prerequisite that no plaintiff should recover money damages from a defendant absent proof that defendant acted with the requisite state of mind. 15 U.S.C. § 78u-4(b)(2) (2003). Although no provision of the PSLRA defines the "required state of mind" in cases involving Section 10(b) or Rule 10b-5, the Sixth Circuit has held that the PSLRA requires a plaintiff to plead facts giving rise to a "strong inference" of scienter, which is a "mental state embracing intent to deceive, manipulate or defraud." In re Comshare, Inc. Secs. Litiq.  , 183 F.3d 542, 549-55 (6th Cir. 1999)(quoting Ernst & Ernst v. Hochfelder, 425 U.S. at 194 (1976)). Plaintiffs' attempt to patch together differing elements in this case: the magnitude of the error, the alleged motive and opportunity, violations of GAAP, and an out-of-context "admission" of the CFO, do not support a strong inference of scienter.

16

Defendants' cited authorities and arguments adequately address each of these issues. Plaintiffs simply have not pleaded any sort of red flags that in combination with the magnitude of the error, GAAP violations, or motive and opportunity could create a strong inference of scienter.

Plaintiffs' reliance on In re Telxon Corp. Secs. Litig., 133 F. Supp. 2d 1010 (N.D. Ohio 2000) is misplaced because unlike in this case, the Court found blatant violations of GAAP as well as the existence of factors that should have alerted defendants that the financial data they were releasing to the public was incorrect. In re Telxon, at 1026-27. The Court finds highly persuasive Defendants' explanation of the complexity of FAS 13. The conflict between two accounting firms as to its application suggests that the error was not blatant. In such a context, it seems that Congress' intent in the PSLRA would be violated if Defendant company were penalized for coming clean about a mistaken accounting model and classification. As stated by the Honorable Kathleen McDonald O'Malley, of the Northern District of Ohio, "[I]n passing the PSLRA, Congress intended to protect businesses and those who operate them from attacks premised on their innocent, and even negligent, mistakes in judgment." In re Telxon Corp. Secs. Litig., 133 F. Supp. 2d at 1033. Companies should be encouraged to rectify discovered errors and announce restatements publicly without fear that they will be subjected to litigation as a result. For these reasons, the Court rejects Plaintiffs' arguments and grants Defendants' Motion to Dismiss as to Plaintiffs' Section 10(b) and

Rule 10b-5 claim for failure to adequately allege a strong inference of scienter.

**B. Plaintiffs' Second Claim: The Individual Defendants Are Liable Under Section 20(a) of the 1934 Act.**

In their Second Claim, for violation of Section 20(a) of the Securities and Exchange Act, Plaintiffs allege Defendants Hoverson and Carey are liable as control persons for the violations of Section 10(b) and Rule 10b-5 (doc. 18). As the Court finds that Plaintiffs have failed to adequately allege the underlying claims, the Court dismisses the Section 20(a) claim as well. <u>Stavroff v. Meyo</u>, No. 95-4118, 1997 U.S. App. LEXIS 32774 *21 (6th Cir. Nov. 12, 1997).

**C. Plaintiffs' Claim in Count IV.**

Plaintiffs' claim in Count IV is brought by Plaintiff Silverback pursuant to Section 12(a)(2) of the 1933 Act, 15 U.S.C. § 77L(a)(2), on behalf of the PRIDES Subclass (doc. 18). Plaintiff Silverback alleges that he and subclass members purchased or otherwise acquired Provident securities pursuant to the defective Registration statement and Prospectus(<u>Id</u>.). Defendants argue that Plaintiffs have no damages because the only remedy available to them is rescission, the purchase price was $25.00 per share, and the stock is trading now in excess of $30.00 per share (doc. 23). Consequently, argue Defendants, rescission would result in Plaintiffs sustaining rather than recovering damages, so the Court should dismiss the claim (<u>Id</u>.).

Although Plaintiffs argue that they are entitled to

damages as of the date of the filing of their Complaint, when the price of their stock had dipped below the purchase price, the Court finds that in accordance with Wigand v. FloTek, Inc., 609 F.2d 1028, (2d Cir. 1979), "the value of the stock itself is irrelevant insofar as relief under 12(2) is concerned.  If the consideration passing from plaintiff to defendant is money, the amount to be awarded is simple to calculate." Id. at 1036.  The Court finds well-taken Defendants' position that Plaintiffs' remedy, rescission, requires them to tender back the stock they have received in exchange for the return of the value of the consideration paid, plus interest.  Because in this case rescission would clearly result in a loss for Plaintiffs, such claim should be and is dismissed.

### D.  Plaintiffs' Claims for Breach of Merger Contract

Two further subclasses, the Fidelity Plaintiffs and the OHSL Financial Corporation ("OHSL") Plaintiffs bring claims for breach of their respective identical merger contracts with Provident and Provident Bank (doc. 18).  Plaintiffs argue that the merger agreements provided in pertinent part that the financial statements had been prepared in accordance with GAAP and fairly presented the financial condition of Provident and its subsidiaries (Id.).  The agreements further made representations as to the veracity of the material facts in reports and statements, as to the lack of any material omissions, and as to the lack of any undisclosed liabilities (Id.).  Plaintiffs claim Defendants knew or reasonably should have known that the financial statements

19

referenced in the merger agreements were not prepared in accordance with GAAP, and that such statements did not fairly represent the financial condition of Provident and its subsidiaries(Id.). Accordingly, Plaintiffs allege Provident and Provident Bank were in material breach of the merger contract ( Id.). Plaintiffs argue that as a result of such breach, they received shares of stock with an artificially inflated value, that they should have received more value in exchange, and that they have therefore suffered as third-party beneficiaries to the merger agreement (Id.).

Defendants' Motion to Dismiss the Fidelity and OHSL Plaintiffs' claims is premised upon three theories. First, Defendants argue that the merger agreement included a clause, Section 8.7, that provided that all representations and warranties expired as of February 4, 2000 (doc. 23). Citing  Herring v. Terradyne, Inc., 256 F. Supp. 2d 1118, 11127 (S.D. Cal. 2002), Defendants argue that where representations and warranties do not survive the closing, they cannot be sued upon after the closing date (Id.). Plaintiffs respond, quoting Section 196 of the Restatement of Contracts (Second), that "[a] term unreasonably exempting a party from the legal consequences of a misrepresentation is unenforceable on grounds of public policy" (doc. 21). The Court has reviewed  Herring, a decision itself which relied upon treatises rather than upon binding precedent, 256 F. Supp. 2d 1118, 1137, and finds no binding legal authority cited by either party on this issue. However, the Court finds Plaintiffs' position more persuasive, as it seems inequitable to

20

permit a party to eliminate liability for an alleged fraudulent misrepresentation by drafting such a term. Restatement (Second) of Contracts § 196 (1981). Accordingly, the Court does not find Defendants' first theory, that the representations and warranties have expired, bars Plaintiffs' claims.

Defendants' second theory is that the Plaintiffs are not intended third-party beneficiaries to the merger contract, and that it is settled under Ohio law that "only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio" (doc. 20, citing Grant Thornton v. Windsor House, Inc., 566 N.E. 2d 1220, 1223 (Ohio 1991)). Defendants point out that Section 8.12 of the merger contracts state that "no person or entity not a party to this Agreement (other than the shareholders of [Fidelity/OHSL], to the extent they are entitled to payment of the Merger Consideration) shall be deemed to be a third-party beneficiary of this Agreement" (Id.). Defendants interpret Section 8.12 to limit the third-party beneficiary status of Plaintiffs to issues pertaining to payment of merger consideration, and not to apply to issues concerning representations and warranties (Id.). Plaintiffs argue that Defendants' interpretation "twists the plain meaning of the language beyond logic," positing that Section 8.12 includes, rather than excludes them (Id.).

The Court finds Defendants' second theory viable. Plaintiffs have no standing as third-party beneficiaries to enforce aspects of the merger contract pertaining to issues beyond payment

of merger consideration.  The Court further finds equally persuasive Defendants' third theory, that the breach of contract claim is derivative in nature.  In Ohio, "[a] plaintiff-shareholder does not have an independent cause of action where there is no showing that he has been injured in any capacity other than in common with all other shareholders as a consequence of the wrongful actions of a third-party directed towards the corporation." <u>Adair v. Wozniak</u>, 492 N.E. 2d 426, 427 (Ohio 1986).  Any derivative claims are not extinguished by the merger, but can be pursued against the surviving or new entity.  Ohio Revised Code § 1701.82(a)(4).

The Court finds that any injuries suffered by Plaintiffs were as a consequence of their status as shareholders.  Because the Fidelity and OHSL Plaintiffs cannot demonstrate that they have been injured in any capacity other than that of shareholder, their claims must be dismissed.

### E. Plaintiffs' Remaining Claims

Although Defendants did not move to dismiss Plaintiffs' claims in Counts III and IV, the parties dispute the scope of Silverback's damages under the Count III claim for violation of Section 11 of the 1933 Act, 15 U.S.C. § 77k.  Section 11 provides for damages representing the difference between the price at which the security was purchased (in this case $25.00) and the price of the security at the time the suit was brought.  15 U.S.C. § 77k(e) (2003).  The parties dispute what date should be used to determine the price of the security when the suit was brought.  Plaintiffs

22

argue that the date of the initial filing of the suit should be used, March 6, 2003, (when the price of the stock dipped to $22.75), while Defendants argue that the operative date is when the Silverback plaintiffs became a part of the suit, May 2, 2003,(when the price of the stock was $24.30). Plaintiffs cite to <u>Alpern v. Utilicorp United, Inc.</u>, 84 F.3d 1525, 1542-44 (8th Cir. 1996) for the proposition that the filing of a subsequent claim should relate back to the filing date of the original complaint for purposes of determining Section 11 damages (doc. 21). However, Defendants argue that this case is distinguishable, because unlike in <u>Alpern</u>, the Silverback Plaintiffs did not file the original Complaint (doc. 23). Moreover, argue Defendants, none of the Plaintiffs who filed suit prior to the Silverback Plaintiffs had standing to file a Section 11 claim (<u>Id</u>.).

Having reviewed this matter, the Court finds Defendants' arguments well-taken. It would not comport with the interests of justice to allow the Silverback Plaintiffs to relate back to a Complaint which they did not file, and for which no other party had standing to bring a Section 11 claim. The Court finds that the operative filing date for purposes of determining Section 11 damages, if any, is May 2, 2003, when the price of the stock was at $24.30.

**V. Conclusion**

The Court finds Defendants' Motion to Dismiss well-taken. Plaintiffs have failed to allege facts giving rise to scienter, such that their allegations in Count I, for violations of Section

23

10(b) of the Exchange Act and Rule 10b-5, fail to state a claim.
For the same reason, Plaintiffs' claim fails to state a violation
of Section 20(a) of the Exchange Act in Count II.  The Court finds
no evidence that Defendants deliberately concealed the accounting
error, or that such error benefitted anyone.  Rather, the Court
finds facts supporting the view that Defendants discovered their
error and came clean about it.  It would not comport with the
spirit of the amendments of the PSLRA to sanction Defendants for
such corrective behavior.

As for Plaintiffs' allegations in Count IV, that
Defendants violated Section 12(a)(2) of the 1933 Act, 15 U.S.C. §
77L(2), the Court finds well-taken Defendants' argument that
Plaintiffs' remedy in this instance is rescission, which would
ultimately injure Plaintiffs because the stock price has not only
recovered, but has appreciated.  Count IV is therefore dismissed.
Finally, the Court finds well-taken Defendants' arguments that
Fidelity and OHSL Plaintiffs were not third-party beneficiaries to
the merger agreements, such that their only recourse under Ohio law
for breach of contract is a derivative claim.  Finally, the Court
finds that as to Count III of the Complaint, the operative date for
the determination of any Section 11 liability, is May 2, 2003, when
the Silverback Plaintiffs became a part of the lawsuit.

Accordingly, the Court GRANTS Defendants' Motion to
Dismiss (doc. 20), and DISMISSES Counts I, II, IV, VI, and VII of
Plaintiffs' Amended Complaint (doc. 18).

SO ORDERED.

Dated: March 9, 2004        /s/ S. Arthur Spiegel
                            S. Arthur Spiegel
                            United States Senior District Judge