

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN, et al. | : | Civil Action No. C-1-00-793 |
| **Plaintiffs,** | : | **Judge Sandra S. Beckwith** |
| vs. | : | **Magistrate Judge Timothy Hogan** |
| OHSL FINANCIAL CORP., et al. | : | |
| **Defendants.** | : | |

## PLAINTIFFS' MOTION TO STRIKE OR OTHERWISE NOT CONSIDER THE EXTENSIVE ERRATA SHEET SUBMITED BY FORMER OHSL CHAIRMAN OF THE BOARD NORBERT BRINKER

Plaintiffs respectfully submit this Motion to Strike or Otherwise Not Consider the Errata Sheet to the Deposition of Norbert Brinker (hereinafter "Motion to Strike"). As grounds for this Motion to Strike, Plaintiffs respectfully submit that the errata sheet should be stricken or otherwise not considered for the following reasons:

1. Mr. Brinker is physically and/or mentally incapable of individually and/or independently making such detailed substantive changes;

2. The overwhelming inference from this errata sheet is that it is the work of KMK and not Mr. Brinker.

3. The fact that this Court had already filed its Order preventing Plaintiffs from further questioning Mr. Brinker provided KMK with the opportunity to re-write history. (*See*, Doc. No. 295);

4. This errata sheet is another example of KMK's continuing misconduct and contempt for the disqualification order (Doc. No. 215) of this Court. The only reason for KMK to file this errata sheet is to make sure that it can continue to use Mr. Brinker and the other OHSL directors as shields in their continuing

1

improper efforts to play multiple roles in the case to the benefit of Defendants KMK and Provident.

5. The corrections provided on Mr. Brinker's errata sheet necessitates that Plaintiffs be able to re-open their questioning of Mr. Brinker at least in relation to the issues raised and left unanswered by Mr. Brinker's alleged corrections.

This motion is supported by the attached Memorandum in Support.

Dated: 24 March 2004

<strong>GENE MESH & ASSOCIATES</strong>

Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the Class

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE OR OTHERWISE
NOT CONSIDER THE EXTENSIVE ERRATA SHEET SUBMITTED BY
FORMER OHSL CHAIRMAN OF THE BOARD NORBERT BRINKER**

**I.    PRELIMINARY STATEMENT**

The errata sheet submitted for Mr. Brinker's deposition is another example of KMK's manipulation of its irreconcilable positions as Defendant and defense counsel, as well as it using its "client" as a vehicle by which to defend its improper and conflicting roles in the litigation.  In keeping with KMK's dominance of its witnesses in order to protect itself and Defendant Provident, the only plausible explanation is that KMK made these extremely self-serving changes without the input of Mr. Brinker, and then guided Mr. Brinker's hand as he signed the changes.  (*See*, Brinker Deposition Attached as Exhibit A, Errata Sheet Attached as Exhibit B).  Mr. Brinker is physically and/or mentally incapable of independently making these changes, and was apparently unable to even read the transcript, since the document reveals that Mr. Brinker either read the transcript or **"the same has been read to [him]."**  If this is the case, how would Mr. Brinker have voluntarily and independently thought of these changes, or made them himself. If he did not know who his counsel was when he was sitting with him during the deposition, how would he have had the wherewithal to know that he made mistakes in his testimony regarding his counsel? How could the overwhelming confusion in his deposition be resolved without the intervention of KMK[1]? Unlike most errata sheets, this one creates more questions than it answers. However, this result would be troubling enough if changes in the errata sheet where just clerical errors, but this is not the case.

---

[1] If any additional evidence is needed of Mr. Brinker's overwhelming confusion, the videotaped record of the deposition, which was filed with the Court, is available.

The changes to Mr. Brinker's deposition were substantive. There is not one example of Mr. Brinker alleging that he said something that was not properly transcribed by the reporter. The corrections listed in Mr. Brinker's errata sheet can be broken down into two main types of corrections: (1) corrections regarding Mr. Brinker's alleged miscalculation of time; and (2) corrections regarding Mr. Brinker's confusion regarding OHSL and the OHSL's directors' representation at the time of the merger and during this litigation.

Finally, the timing of the filing of this errata sheet is also very troubling. Although Brinker may not have had the ability to prepare his errata sheet prior to the filing of this Court's Order, (Doc. No.295), which denied the Plaintiffs' ability to further question Mr. Brinker, KMK was certainly aware of this fact at the time the errata sheet was created. In particular, KMK was keenly aware that it had obtained an extraordinary ruling from this Court that the deposition of a key witness, the former Chairman of the OHSL Board who changed his vote just days before the final vote on the OHSL-Provident merger, would be limited to its previous two hour session. Plaintiffs would not get another opportunity to depose Mr. Brinker. As a result, KMK also believed that Plaintiffs were not going to be able to get another opportunity to depose Mr. Brinker or delve into the process by which these changes to his deposition were made. By knowing that Plaintiffs would not be given the opportunity to further depose Mr. Brinker, this gave KMK the opportunity to re-write history without being challenged. As a result, KMK made its best effort yet to manipulate the procedural process and to ensure that Plaintiffs

would not have an opportunity to resolve the numerous questions raised by Mr. Brinker's

deposition testimony and errata sheet. [2]

## II.    LEGAL ARGUMENT

### A.    The Errata Sheet Should be Stricken Pursuant to Fed.R.Civ.P. 30(e) Because Mr. Brinker Was Physically and/or Mentally Incapable of Making the Changes Which He Allegedly Made.

Mr. Brinker's errata sheet does not comply with Fed. R. Civ. P. 30(e) because it is

clear that it was KMK, and not Mr. Brinker, that made the changes to his deposition.  The

document undoubtedly came off KMK's computer system, just as the materially false and

misleading Proxy Materials/Registration Statement came off KMK's computer system.

Fed.R.Civ. P. 30(e) states as follows:

> "If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in form or substance, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

Id. A deponent invoking this privilege must "sign a statement reciting such changes and

the reasons given . . . for making them," but "the language of the Rule places no

limitations on the type of changes that may be made[,] . . . nor does the Rule require a

judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the

---

[2] Plaintiffs have previously objected to this Order, (Doc. No. 300).  Although these substantive changes stand as an additional powerful argument for why Mr. Brinker should face continued questioning, this separate motion stands specifically for the proposition that the errata sheet should be stricken or otherwise not considered.

changes"--even if those reasons "are unconvincing." *Lugtig v. Thomas,* 89 F.R.D. 639, 641 (N.D. Ill 1981). (citations omitted).

At the same time, when a party amends his testimony under Rule 30(e), "the original answer to the deposition questions will remain part of the record and can be read at the trial." Id. (citing, inter alia, *Usiak v. New York Tank Barge Co.*, 299 F.2d 808 (2d Cir. 1962). "Nothing in the language of Rule 30(e) requires or implies that the original answers are to be stricken when changes are made." *Lugtig v. Thomas,* 89 F.R.D. 639 at 641-642. This Court has recognized that because "any out-of-court statement by a party is an admission," a deponent's "original answer should [be] admitted [into evidence]" even when he amends his deposition testimony--with the deponent "of course . . . free to introduce the amended answer and explain the reasons for the change." *Usiak,* 299 F.2d at 810. Policy also supports that conclusion. The witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial may be impeached by his former answers, and the cross-examiner and the jury are likely to be keenly interested in the reasons he changed his testimony. There is no apparent reason why the witness who changes his mind between the giving of the deposition and its transcription should stand in any better case. In Wright & Miller, Federal Practice & Procedure, § 2118.

Plaintiffs are not challenging the substantive nature of Mr. Brinker's responses *per se*, but his ability to make them. Although Fed. R..Civ.P. 30(e) does not put any limitations on the type of changes which can be made on the errata sheet, the rule does make it clear that it is the "party or deponent," and not the attorney, which is to make the changes to the deposition. In this case it is nearly impossible that Mr. Brinker

independently made the changes on the errata sheet. First, as stated above the errata sheet states that "I have read the entire transcript of my deposition taken on the 2nd day of February, 2004, or the same has been read to me[3]." (*See*, Brinker Errata Sheet, Exhibit B). Plaintiffs have good reason to believe that it is the latter, or that portion would not have been inserted into the errata sheet. Second, given Mr. Brinker's physical state, and the admitted "confused" state of Mr. Brinker during his deposition, Plaintiffs submit that it would be next to impossible for Mr. Brinker to have independently realized that the changes found in the errata sheet needed to be made.

This is further evidenced by the deposition testimony which is the subject of the errata sheet. First, there were corrections regarding an alleged miscalculation of time. Mr. Brinker's states that he was "confused" regarding time frames in the litigation. Mr. Brinker's errata sheet repeatedly states that "'Seventeen years ago' should have been 'four years ago.' I confused the date of the merger with the date I retired as a full time employee of Oak Hills." (*See*, Brinker Errata Sheet, Exhibit B). However, Mr. Brinker's answers regarding the "17 years" were never responsive to the question posed by Plaintiffs' counsel. One of the best examples of this is as follows:

Q.    Okay. Let me direct your attention to the July 22nd, 1999 OHSL Board meeting. Do you remember anything about that meeting, sir?

A.    That was over 17 years ago, sir, and I don't remember it at all.

Q.    How many years ago was it, sir?

MR BURKE: Objection.

A.    I guess close to seventeen.

---

[3] Brinker was actually deposed on 5 February 2004, not 2 February 2004.

7

(Brinker dep. P. 12). This exchange is illustrative for a few reasons. First, it shows that Plaintiffs' counsel was not asking any question which requested a date of any sort. Second, Plaintiffs' counsel provided Mr. Brinker with a date in the question posed, such that an individual with all of his faculties would never have made such a glaring math or time error when responding to the question.[4] As a result, given the disconnect between the questions given and the answers provided, it is very unlikely that Mr. Brinker independently made the corrections to the errata sheet regarding the "17 years" errors sprinkled throughout his deposition.

Second, the result is the same in relation to the changes regarding OHSL and the individual OHSL directors' legal representation from the OHSL-Provident merger to the present litigation. Mr. Brinker did not know who represented OHSL, or the individual OHSL directors, during the merger transaction. (Brinker dep. pp. 30, 31-33, 43). He believed that it was Keating, Muething & Klekamp rather than Dinsmore & Shohl, LLP. (Brinker dep. pp. 30, 31-33, 43). Mr. Brinker also incorrectly believed that McDonald Company suggested that Keating, Muething & Klekamp represent OHSL and the OHSL directors, and that McDonald Company recommended that they switch firms. (Brinker dep. pp. 44, 46, 48, 49-50). These answers do not represent minor mistakes, but complete confusion as to a substantive and critical issue in this case. It is clear from these answers that Mr. Brinker had no idea who was representing him, the other OHSL Directors, and OHSL from the merger transaction forward. Therefore, it defies logic that Mr. Brinker

---

[4] Technically, the "corrected" answer on the errata sheet is also wrong since it would have been five years ago and not four.

would be able to independently (1) know that he had made a mistake, or (2) be able to correct it.

Therefore, although Mr. Brinker had the right to make any changes which he wanted on the errata sheet, he did not have the right to entirely re-write the substance of his testimony. A deposition is not a take home exam. Here, the overwhelming inference from the questions asked in the deposition, and the answers provided in the errata sheet, is that Mr. Brinker was not the one who made these corrections. In particular, it is much more likely that since Mr. Brinker obviously did not understand who was representing him, his fellow OHSL Directors, or OHSL itself, it was KMK who felt the need to re-write history, and/or change the form and content of Mr. Brinker's deposition, in order to protect itself from the answers of its client.

**B.    The Changes in the Deposition Warrants that Mr. Brinker's Deposition be Re-Opened.**

A continuation of Mr. Brinker's deposition is necessary to obtain full understanding of the changes made on Mr. Brinker's errata sheet. If changes made in the deposition pursuant to Rule 30(e) make the deposition incomplete or useless without further testimony, the party who took the deposition can re-open the examination. *Lugtig v. Thomas*, 89 F.R.D. 639 (E.D. IL 1981); *Allen & Co., supra. Colin v. Thompson*, 16 F.R.D. 194 (W.D. Mo. 1954). Deposing counsel can also ask questions which were made necessary by the changed answers, questions about the reasons the changes were made, and questions about where the changes originated, whether with the deponent or with his attorney. *Erstad v. Curtis Bay Towing Co.*, 28 F.R.D. 583 (D. Md. 1961). The number and type of changes made by the defendant-deponent in this case necessitate that Plaintiffs be allowed to re-open the questioning of Mr. Brinker. At the very least,

Plaintiffs should be permitted to re-open questioning as to the issues raised the corrections to the errata sheet.

In this present case, additional questioning is needed for several reasons. First, as stated above, given the physical and/or mental infirmities of Mr. Brinker, additional questioning of Mr. Brinker is necessary to determine whether or not he was capable of independently making these corrections to the errata sheet and whether or not he truly understands the corrections which were made. In conjunction thereof, Plaintiffs should also be given the opportunity to further depose Mr. Brinker to see if Mr. Brinker's alleged changes to the errata sheet were the result of KMK's manipulation of Mr. Brinker's testimony. It was clear from the testimony cited above that Mr. Brinker did not know who was representing OHSL and its directors, who was representing them when, what the conflicts of interest were in this litigation, and the extent of KMK's role in this litigation. In particular, the following exchanges exemplify this concern:

> Q        Okay.  So at the present time, you believe that the Keating firm will
>          represent you at trial; is that correct?
>
> MR. PINNEY:  I'm going to object to that as well.
>
> MR. BRAUTIGAM:  Your Honor—
>
> A  I would have—
>
> MR. BURKE:  Your Honor, the—Mr. Brautigam is knowingly misstating the record
> and **asking the witness questions that he obviously is, is unsure of,** just in an effort
> to inject confusion and further the confusion of these proceedings.  And I do have a
> continuing objection to this.

(Brinker dep. p. 40).  Shortly thereafter, the following exchange regarding KMK's participation in the lawsuit ensued:

> Q.       Do you understand that KMK will be witnesses in this case?

A.     Who?

Q.     KMK attorneys.

       MR. BURKE: Objection, relevance.

A.     Who is that? Keating, Muething, you mean?

Q.     Yes.

A.     I heard that they were, were brought into the suit.

Q.     Do you understand –

A.     So that they would have to have different representation. We would have
       to have different representation at trial.

Q.     Do you have different representation?

A.     We don't at this present.

Q.     You do not?

A.     No.

(Brinker dep. pp. 50-51)[5].

       Plaintiffs' counsel asked simple questions based on Mr. Brinker's previous

testimony. Mr. Brinker's answers, as well as the changes on the errata sheet, indicate that

the KMK firm is pulling all the strings in this litigation, and that they have devoted

extraordinary efforts to maintaining control of these elderly defendants so as to protect

itself, and its premier client, Defendant Provident, in this litigation. As a result, based

---

[5] This testimony is particularly ironic, because John Pinney of the Graydon, Head &
Ritchey firm was sitting approximately ten feet from his ostensible client at the time, and
even, in conjunction with Mr. Burke, making objections. It is overwhelmingly likely that
Mr. Pinney and the Graydon firm were so troubled by KMK's dominant role in the
litigation, and the inability of the ostensible clients to understand basic matters, that the
Graydon, Head & Ritchey withdrew shortly thereafter. Their departure, however
understandable, raises more questions than it answers.

upon the changes made to Mr. Brinker's errata sheet regarding KMK's role in the litigation, Plaintiffs should be permitted to re-open questioning of Mr. Brinker to determine whether or not he was physically or mentally able to make such changes, who initiated the changes to Mr. Brinker's deposition answers, under what circumstances they occurred, and to what extent Mr. Brinker presently understands the state of OHSL and the OHSL directors' representation in this case.

Second, additional questioning is needed because Mr. Brinker's alleged proposed changes are no more responsive to the deposition questions posed than his original answers. Mr. Brinker alleges that he is making changes to the errata sheet because he was confused between the date of the merger and the date of his retirement from OHSL. (Errata sheet, Exhibit B). This argument might have a superficial appeal if it was in any way related to the question, but the proposed new answer is no more responsive to the question than the original answer. Plaintiffs' counsel asked Mr. Brinker questions about what he remembered in relation to events or issues such as the following: (1) the July 22nd, 1999 OHSL Board meeting; (2) a conversation where Mr. Hanauer informed him that he voted his personal shares against the merger; (3) what he heard after the shareholder meeting; (4) what Keating, Muething, and Klekamp's role was with respect to the merger and this litigation. (Brinker depo. pp. 12, 17, 21, 27, 30). Mr. Brinker always stated that he never remembered, and provided the unsolicited additional comments in which he stated that he did not remember because these events occurred "17 years ago." (Brinker depo. pp. 12, 17, 21, 27, 30). However, there is still no response as to the actual questions posed. If it is true, as stated in the errata sheet, that Mr. Brinker's

memory has remarkably returned, Plaintiffs should be given the opportunity to ask these questions again.

Finally, Plaintiffs should be permitted an opportunity to re-open questioning based upon the unnecessary editorials of Mr. Brinker which limited Plaintiffs' counsel's ability to depose Mr. Brinker on the issues which truly mattered during the deposition. This Court had already significantly limited Plaintiff's ability to thoroughly question Mr. Brinker regarding all of the newly raised issues in the CAC by limiting the deposition to two hours. As discussed in greater detail in other documents filed in this Court, this was an extraordinary result which was contrary to the Federal Rules. This is especially the situation given Mr. Brinker's importance in this case. However, despite the overwhelming reasons to object to the arbitrary, premature, termination of Mr. Brinker's deposition, the non-responsive and argumentative answers of Mr. Brinker further worsened Plaintiffs' position. In particular, Mr. Brinker obstructed Plaintiffs' counsel's ability to question and obtain the information which he needed during the limited two hour deposition. The following are a few examples:

> Q. Okay. Please tell me everything you can recall about this conversation where Ken Hanauer told you he voted his personal shares against the transaction.
>
> A. I would not remember the whole-
>
> MR. BURKE. Objection. Continuing objection to –
>
> A. I would not remember the whole conversation from way back then.
>
> Q. Well, please—
>
> A. That was 17 years ago.

(Brinker dep. P. 17).

Similarly, later in the deposition, Mr. Brinker answered the following question as follows:

Q.    Mr. Brinker, have you had an adequate amount of time to review the first page of Defendant's Exhibit 1 to yourself?

A.    I would think so. If you said that I – I keep telling you it's 17 years ago and I don't think I should be expected to remember everything that happened, but let's have the question.

(Brinker dep. pp. 26-27).

In this context, these corrections are not notable just because Plaintiffs' counsel never asked for a date or time frame in any of the questions posed to Mr. Brinker in which he gave his "seventeen years" response, but rather because Mr. Brinker attempted to use the "17 year" gap as a sword, and not as a shield, to Plaintiffs' counsel's questioning. Mr. Brinker complained loudly and repeatedly that he could not remember and should not be expected to remember events that occurred more than "17 years" ago. (Brinker dep. pp. 12, 17, 21, 27, 30).  Now, that Mr. Brinker has allegedly regained his memory and corrected this repeated response and/or objection, Plaintiffs are entitled to know more about why this "17 year" objection originally occurred, why it was used so often, and how it was miraculously cleared up. Was it the result of a failing memory or a tool to obstruct Plaintiffs' work? But regardless of which one it was, the end result was that these unresponsive answers took precious time away from Plaintiffs' counsel's limited time to obtain substantive answers to his questions related to the CAC.  As a result, at the very least, Plaintiffs should be permitted to re-open their questioning of Mr. Brinker since these pointless objections unfairly cut into Plaintiffs' already very limited time for his deposition.

## II.    **CONCLUSION**

The errata sheet submitted on behalf of Mr. Brinker is literally an attempt to re-write his deposition. After this Court ruled that there would be no further examination of Mr. Brinker, KMK jumped on this opportunity and submitted an errata sheet that completely changed the substance of Mr. Brinker's deposition. Such obvious misconduct should not be permitted, and the errata sheet submitted by KMK, allegedly on behalf of Norbert Brinker, should be stricken or otherwise not considered.

Further, since errata sheet corrections can necessitate the re-opening of questioning of the deponent, Plaintiffs should be given a further opportunity to depose Mr. Brinker. Although there are numerous reasons and grounds for doing so, Plaintiffs should at least be given an opportunity to question Mr. Brinker as to the issues raised by the corrections in his errata sheet. Otherwise, this Court will never get to the bottom of why the changes to Mr. Brinker's changes were made or whether the changes originated with Mr. Brinker or KMK.

DATED: 24 March 2004                Respectfully Submitted,

Gene Mesh (OH Bar # 0002076)
Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (fax)

*Attorneys for Plaintiffs and the Putative
Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs' Motion to Strike or Otherwise Not Consider the Extensive Errata Sheet Submitted by Former OHSL Chairman Norbert Brinker was served this 24th day of March 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202

**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

James E. Gauch, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

David Greer, Esq.
BIESER, GREER & LANDIS, LLP
400 National City Center; 6 North Main Street
Dayton, OH 45202-1908

_____
Stephanie A. Hite