FILED
A+I JAMES BONINI
CLERK

04 APR -1 PM 2:19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN, et al. | : | Civil Action No. C-1-00-793 |
| Plaintiffs, | : | Judge Sandra S. Beckwith |
| vs. | : | Magistrate Judge Timothy Hogan |
| OHSL FINANCIAL CORP., et al. | : | |
| Defendants. | : | |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF OBJECTION TO MAGISTRATE JUDGE HOGAN'S ORDER PREVENTING FURTHER TIME TO DEPOSE FORMER OHSL CHAIRMAN OF THE BOARD NORBERT BRINKER (DOC. NO 295)**

Plaintiffs respectfully submit this reply brief in further support of their objection to Magistrate Judge Hogan's Order concluding the deposition of Norbert Brinker. (Doc. No. 300) This reply brief is supported by the attached Memorandum in Support.

Dated: 1 April 2004

GENE MESH & ASSOCIATES

Respectfully Submitted,

_[signature]_

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*

1

## MEMORANDUM IN FURTHER SUPPORT OF OBJECTION

### I. PRELIMINARY STATEMENT

Plaintiff's opening objection (Doc. No. 300) to this Order presented a logical and compelling showing that this Order had no legal or factual basis. As a result, this Order should be overturned in its entirety on that basis alone. However, since Plaintiffs' opening objection, there has been a disturbing development that suggests improper procedural chicanery and which further necessitates that this Order be overturned.

On 17 March 2004, Mr. Brinker's ostensible counsel submitted an errata sheet of extremely substantive changes to his only testimony in this case. (*See*, Errata Sheet, Attached as Exhibit A). It is extremely unlikely that Mr. Brinker made these changes. Indeed, Mr. Brinker was apparently incapable of even reading the transcript. In keeping with the dominance by KMK of witnesses to protect KMK itself and KMK's premier client Provident, KMK likely made these extremely self-serving changes, and likely guided Mr. Brinker's hand as he signed the changes. Quite simply, Mr. Brinker is simply incapable of making these changes. Mr. Brinker was apparently unable to even read the transcript, since the document reveals that Mr. Brinker either read the transcript or **had it read to him**. There is no factual or legal basis for permitting these massive changes in content go unchallenged. Having previously obtained an Order concluding the deposition of Mr. Brinker, KMK felt that it was safe to submit an errata sheet changing the substance of a large portion of Mr. Brinker's testimony, knowing that, as things stand now, Mr. Brinker's changes would never be tested. Such a cynical ploy should not be countenanced by this Court.

2

## II.  ARGUMENT

### 1. Mr. Brinker's Changes to the Deposition Show That it is Necessary to Continue the Deposition

Brinker's counsel, KMK, has used procedural chicanery to change the entire form and content of Mr. Brinker's deposition. If Mr. Brinker is unable to testify at trial, the changes, if accepted, will render an entirely different impression on the jury who will assess his credibility. And it is important to remember that it is Mr. Brinker's credibility that the jury needs to be assessed in this instance, not KMK's[1].

The changes go to the very heart of Mr. Brinker's testimony, and show why an additional deposition is necessary on this topic alone. Mr. Brinker attempted to use the 17 year gap as a sword, not a shield, complaining loudly and repeatedly that he could not remember and should not be expected to remember events that occurred more than 17 years ago. These affirmative assaults on the questioner, which have now been recanted, account for much of the disorder in the record.

Mr. Brinker's deposition was videotaped. In the likely event that Mr. Brinker is unavailable for trial, the addition of his changes, without the ability to cross-examine him on these changes, will be a quagmire. The video will be shown to the jury, but corrections will be read by trial counsel. KMK, of course, will be present at trial, not as defense counsel, but in their rightful place as defendant, where they will be unable to continue to manipulate the proceedings.

---

[1] KMK's credibility will need to be assessed separately as a defendant, but in this instance, KMK should not be permitted to literally re-write the record with impunity, as KMK undoubtedly did. Simply stated, the overwhelming evidence is that Mr. Brinker was simply incapable of making these changes, that these changes undoubtedly came off a KMK computer, and that Mr. Brinker was, at best, barely aware of what he was doing.

3

Perhaps because they were "incredulous" that Plaintiffs sought to continue the deposition of the former Chairman of OHSL's board, Defendants "forgot" to mention that Mr. Brinker had submitted an extensive errata sheet that changed the entire substance of his testimony in many key areas[2]. While KMK is certainly striving mightily to protect Mr. Brinker from any examination on this topic and only submitted the extensive errata sheet once the Order objected to had been obtained, the only conclusion that can be drawn from the complete lack of mentioning the errata sheet is a desire to mislead the Court.

### 2. Mr. Brinker's Proposed Changes Are Entirely Self-Serving for KMK

It is simply impossible to believe that Mr. Brinker made these extensive changes. Mr. Brinker is apparently not even capable of reading the transcript, let alone making such substantive changes to the transcript. All of Mr. Brinker's changes favor KMK. It is overwhelmingly likely that these typed changes came off KMK computers, as did the final version of the Proxy Materials/Registration Statement. The law is clear that a deposition is not a take home exam, and the many changes in content cannot be accepted without continuing the deposition.

### 3. The Opposition Brief Fails to Cite a Single Example of Repetitive or Duplicative Testimony

The opposition brief (Doc. No. 308) is shocking for what it does not say. Although it continues the disturbing pattern of *ad hominem* attacks on Plaintiffs' Counsel, the opposition, like the Order objected to, does not cite a single example of any questioning that is duplicative, harassing, or unduly burdensome. Given the repeated references to the 800 page transcript generated in the state court litigation, as well as the 137 page

---

[2] This errata sheet is the subject of a separate motion to strike. (*See,* Doc. No. 305).

4

transcript developed in this case, it would seem that KMK's arguments that the questioning was not related to new material, unduly burdensome, and calculated only to harass the witness, if true, would be amply supported by specific examples of such conduct. Yet not a single example is cited, and the silence is deafening.

The opposition is littered with conclusory comments that are demonstrably untrue. For example, the opposition brief states:

> Plaintiffs' counsel, Michael Brautigam, spent virtually the entire time arguing with the witness, pursuing completely irrelevant inquiries and repeating questions to which Mr. Brinker already has answered on numerous occasions in his prior depositions.

(Opposition at 1-2).

Not only are these statements not supported by a shred of evidence, they are knowingly false. The above conduct did not happen, and the Court is invited to watch the videotape, which has been filed with the Court, and/or read the transcript, attached as Exhibit B to the Objection. On the contrary, the deposition was conducted under extremely difficult circumstances in a respectful manner, covered almost exclusively new issues as outlined in the Objection, and produced a valuable record. For example, one of the defenses that defendants have raised in opposition to class certification was that lead plaintiff Walter W. Thiemann was a disgruntled former employee[3]. The testimony of Mr. Brinker, and other former OHSL directors, indicates that not only is this statement knowingly false, but that Mr. Thiemann was a loyal and valued employee who Chairman Brinker was willing to invite onto the OHSL board once he retired as an employee if Mr.

---

[3] Former OHSL CEO and Board member Ken Hanauer had previously submitted an affidavit on this same topic (Attached as Exhibit B), calling Mr. Thiemann a disgruntled former employee who is unsuitable to serve as a class representative in this case. At Mr. Hanauer's recent deposition (transcript not yet available), he conceded that many statements made in that affidavit were untrue.

5

Thiemann would consent to returning to Cincinnati from Florida approximately once a month to attend board meetings. This was entirely new testimony that was not covered and could not have been covered at depositions in the state court litigation, since Mr. Thiemann was not involved in that litigation. KMK wants to be able to make false statements and yet not have these false statements probed at depositions. For example, in testimony about Mr. Thiemann—an obviously new topic—Plaintiffs' counsel sought to and did properly rebut false statements submitted by KMK in previous pleadings that Mr. Thiemann was a disgruntled former employee.

Q And you wanted him [Thiemann] to remain on the Board if he was willing to come to meetings once a month. Is that correct?

A Yes.

Q And—

A We didn't want him to, I say. He called and wanted to. And I said, you—well, you moved to Florida. Are you willing to come back one Friday a month every month? And he didn't want to do that. Well, that's not being a director if he didn't do that.

Q Okay. But if he had been willing to do that, you would have been happy to have him on the Board, correct?

A Oh, yeah.

MR. BURKE: Objection.

A Yeah.

Q And Mr. Thiemann was not a disgruntled former employee, correct?

MR. BURKE: Objection.

A Didn't—I didn't understand him to be. I don't know.

Q He left on good terms, correct?

A Yes.

Q You respected Mr. Thiemann and you respect him to this day, correct?

A I do.

Q. So if people filed papers on your behalf that said Mr. Thiemann was a disgruntled former employee who had an axe to grind with the OHSL Board, that would be untrue, correct?

MR. BURKE: Objection.

A I wouldn't answer for somebody else.

Q For you, sir.

A Well, I told you I had, I had respect for him. I didn't have no axe to grind at that point.

(Brinker deposition, 89-91).

### III. CONCLUSION

Thus, for the foregoing reasons, as well as those submitted in the opening brief, Plaintiffs respectfully request that the procedural chicanery on the part of defense counsel not be rewarded, that the Order objected to be overturned in its entirety, and that former OHSL Chairman of the Board Norbert Brinker be Ordered to submit to a full and fair deposition on all relevant issues, including issues surrounding the numerous substantive changes to his deposition testimony ostensibly submitted by Mr. Brinker.

DATED: 1 April 2004                    Respectfully Submitted,

*[signature]*

Gene Mesh (OH Bar # 0002076)
Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097  (fax)

*Attorneys for Plaintiffs and the
Putative Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs' Reply Brief in Further Support of Objection to Magistrate Judge Hogan's Order (Doc. No. 295) was served this 1st day of April 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202

**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

James E. Gauch, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

David Greer, Esq.
Bieser, Greer & Landis
400 National City Center
6 North Main Street
Dayton, OH 45402

_____
Stephanie A. Hite