

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN, et al. | : | Civil Action No. C-1-00-793 |
| Plaintiffs, | : | Judge Sandra S. Beckwith |
| vs. | : | Magistrate Judge Timothy Hogan |
| OHSL FINANCIAL CORP., et al. | : | |
| Defendants. | : | |

### PLAINTIFFS' REPLY BRIEF TO MEMORANDUM OF PROVIDENT AND OHSL DEFENDANTS IN OPPOSITION TO MOTION TO STRIKE BRINKER ERRATA SHEET

Plaintiffs respectfully submit this Reply Brief in Further Support of Motion to Strike or Otherwise Not Consider the Errata Sheet to the Deposition of Norbert Brinker (hereinafter "Motion to Strike," Doc. No. 305). As grounds for this Motion to Strike, Plaintiffs respectfully submit that the errata sheet should be stricken or otherwise not considered for the following reasons:

1. Mr. Brinker is physically and/or mentally incapable of individually and/or independently making such detailed substantive changes;

2. The overwhelming inference from this errata sheet is that it is the work of KMK and not Mr. Brinker.

3. The fact that this Court had already filed its Order preventing Plaintiffs from further questioning Mr. Brinker provided KMK with the opportunity to re-write history. (*See*, Doc. No. 295);

4. This errata sheet is another example of KMK's continuing misconduct and contempt for the disqualification order (Doc. No. 215) of this Court. The only reason for KMK to file this errata sheet is to make sure that it can continue to use Mr. Brinker and the other OHSL directors as shields in their continuing

1

improper efforts to play multiple roles in the case to the benefit of Defendants KMK and Provident.

5. The OHSL and Provident Defendants' Memorandum in Opposition does nothing to rebut any of the above allegations. There is not one excerpt from Mr. Brinker's deposition nor one legal authority cited in support of their arguments. In particular, Defendants fail to cite to a single case which supports the unique position that a witness should be free to re-write the content of his deposition with impunity once he has secured a Court Order that no further deposition will be permitted.

6. The corrections provided on Mr. Brinker's errata sheet require that Plaintiffs be able to re-open their questioning of Mr. Brinker at least in relation to the issues raised and left unanswered by Mr. Brinker's alleged corrections.

This Reply Brief is supported by the attached Memorandum in Support.

Dated: 8 April 2004

**GENE MESH & ASSOCIATES**

Respectfully Submitted,

*(signature)*

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*

**MEMORANDUM IN FURTHER SUPPORT OF MOTION TO STRIKE OR OTHERWISE NOT CONSIDER THE EXTENSIVE ERRATA SHEET SUBMITTED BY FORMER OHSL CHAIRMAN OF THE BOARD NORBERT BRINKER**

I. **PRELIMINARY STATEMENT**

Plaintiffs again respectfully submit that the Plaintiffs' Motion to Strike or Otherwise Not Consider the Extensive Errata Sheet submitted by Former OHSL Chairman Norbert Brinker should be granted in its entirety and there is nothing in the Memorandum in Opposition of Defendants Provident and OHSL Defendants which warrants a different result.

Defendants OHSL and Provident submit a memorandum in opposition which is long on accusations, but short on legal or factual support. The OHSL and Provident Defendants argue that: (1) they are unfamiliar with the concept of a motion to strike an errata sheet; (2) Plaintiffs' counsel confused and harassed Mr. Brinker during his deposition; and (3) that KMK did not manipulate the production of the errata sheet. However, the OHSL and Provident Defendants do not cite to a single excerpt from Mr. Brinker's deposition nor a single case or legal authority to support these claims. Plaintiffs will discuss each argument in turn.

II. **Mr. Brinker's Errata Sheet Should Be Stricken or Otherwise Not Considered**

    A. **A Motion to Strike an Errata Sheet Is Not an Unprecedented or Irregular Motion.**

First, the OHSL and Provident Defendants feign ignorance as to the concept of striking an errata sheet. Even though Plaintiffs cite to cases which discuss the concept of striking an errata sheet, counsel for the OHSL and Provident Defendants incredibly still state that they "have never heard of a motion to strike an errata sheet." (Doc. No. 309).

However, a motion to strike an errata sheet is neither unprecedented nor irregular. In fact, it is, unfortunately, necessary, since the defendants have submitted an errata sheet that is obviously irregular, and perhaps unprecedented in its scope, since it simply attempts to re-write much of the substance of the original testimony. It is true that there is not an overwhelming body of case law on this subject, but this is because very few parties attempt to make a deposition into a take home exam. Further, even fewer parties or attorneys are willing to attempt to abuse the system as glaringly as Mr. Burke and KMK have in this case. That this errata sheet was submitted only after procedural machinations that resulted in obtaining an Order from the Magistrate Judge that Mr. Brinker's deposition was closed only adds to the irregularity.

Thus, since the OHSL and Provident Defendants neither attempt to distinguish Plaintiffs' cases nor cite to any legal authority in support of their argument that an errata sheet cannot be stricken, Plaintiffs' Motion to Strike or Otherwise Not Consider the Extensive Errata Sheet of Mr. Brinker should be granted at a minimum based upon the very real and substantive changes to his testimony.

**B.    The OHSL and Provident Defendants Falsely State that the Deposition was Conducted Inappropriately.**

The OHSL and Provident Defendants falsely represented to this Court that Mr. Brinker's deposition was conducted unfairly. In particular, the OHSL and Provident Defendants argue that the conduct of Plaintiffs' counsel was cumulative and antagonistic and that his questions were "designed more to confuse and harass Mr. Brinker than to elicit anything remotely relevant to the prosecution of this case." (Doc. No. 309, Opposition at 2). In particular, the OHSL and Provident Defendants state that "It was as

4

if Plaintiffs and their counsel viewed the proceedings as a perverse sport." (Opposition at 2).

The OHSL and Provident defense counsel seem to enjoy making personal attacks against Plaintiffs' counsel. This time is no exception. In fact, the four page document filed in opposition, upon close examination, is remarkable for its hubris. The OHSL and Provident Defendants show no hesitation in calling Plaintiffs' counsel names, or in referring to Plaintiff's counsel's conduct as a "perverse sport." Although counsel from the Bieser, Greer firm did not attend the deposition,[1] they should not be excused for making these false statements since their falsity could very easily have been verified by reviewing the transcript or videotaped record. Further, even if they did not review the transcript or video of the deposition, they had to know that this statement was false given their inability to back up these statements with any evidence.

1. **The OHSL and Provident Defendants Falsely State that the Conduct of the Deposition by Plaintiffs' Counsel's Questioning was Cumulative (Opposition at 2)**

Plaintiffs' counsel's questioning of Mr. Brinker was not cumulative. The Brinker deposition from April of 2000 was 739 pages, and the Brinker deposition of February of 2004 deposition was 137 pages. However, the OHSL and Provident Defendants do not cite to one single question as being cumulative. Given the 896 pages that the Defendants have to work with, one would expect the memorandum in opposition would be full of quotes and page references comparing questions and answers between these two

---

[1] As pointed out in the opening brief, Mr. Brinker was allegedly represented by John Pinney of the Graydon Head & Ritchie firm during the 5 February 2004 deposition. Interestingly, in OHSL and the Provident Defendants' memorandum in opposition, there is no representation that anyone from Bieser, Greer, Landis, LLP in has reviewed the transcript or viewed the videotape deposition.

depositions. The significance of the fact that there is not one question or excerpt cited to in Defendants' memorandum in opposition cannot be overstated. The same is true for the OHSL and Provident Defendants' allegation that Plaintiffs' counsel was antagonistic during the deposition.

   2.   **The OHSL and Provident Defendants Falsely State that the Conduct of the Deposition by Plaintiffs' Counsel was Antagonistic (Opposition at 2).**

Once again, the OHSL and Provident Defendant make another allegation which they cannot support. Despite having 896 pages to work with, the OHSL and Provident Defendants still fail to cite to one example of how Plaintiffs' counsel antagonized Mr. Brinker, or exhibit otherwise antagonistic behavior. This is a particularly bold allegation to make since Magistrate Judge Hogan was present for the entire deposition and never saw a need to reprimand Plaintiffs' counsel, let alone stop the deposition, based upon the manner in which Plaintiffs' counsel was conducting his questioning of Mr. Brinker.

   3.   **The OHSL and Provident Defendants Falsely State that Plaintiffs' Counsel's Questioning was Designed More to Confuse and Harrass Mr. Brinker than to Elicit Anything Relevant to the Prosecution of this Case (Opposition at 2)**

Plaintiffs' counsel also did not create any confusion in the mind of Mr. Brinker which did not already exist. As stated above, even though the initial Brinker deposition was 739 pages, and the February 5, 2004 deposition was 137 pages, the OHSL and Provident Defendants do not cite to a single question which is unrelated to the prosecution of this case or which evidences an intent on the part of Plaintiffs' counsel to confuse or harass Mr. Brinker. To the contrary, even Mr. Brinker's attorney admitted during the deposition that his client was confused as to issues of central importance to

6

this case. Perhaps the best example of this is the following exchange regarding Mr. Brinker's representation at trial:

> Q        Okay. So at the present time, you believe that the Keating firm will represent you at trial; is that correct?
>
> MR. PINNEY: I'm going to object to that as well.
>
> MR. BRAUTIGAM: Your Honor—
>
> A I would have—
>
> MR. BURKE: Your Honor, the—Mr. Brautigam is knowingly misstating the record and **asking the witness questions that he obviously is, is unsure of,** just in an effort to inject confusion and further the confusion of these proceedings. And I do have a continuing objection to this.

(Brinker dep. p. 40).[2] Although Mr. Burke and the OHSL and Provident Defendants all attempt to argue that Plaintiffs' counsel is attempting to inject confusion into the proceeding, an objective review of this situation would find that was not a question which was meant to confuse Mr. Brinker, but was a question which is basic to any litigation. Furthermore, as far as Plaintiffs were aware, this litigation was not proceeding under the rules of KMK, but rather the Federal Rules of Civil Procedure. As a result, Plaintiffs are permitted to ask deponents not only questions of which they are sure, but also those of which they might be potentially unsure.

---

[2] As stated above, Mr. Greer was not present at Mr. Brinker's deposition because Mr. Pinney and Graydon, Head & Ritchey, LLP were still representing Mr. Brinker at that time. However, although Mr. Pinney was sitting approximately ten feet from Mr. Brinker during his deposition, and ostensibly making objections on his behalf, Mr. Brinker was entirely oblivious to this representation. This glaring manipulation of Mr. Brinker by Burke and KMK is likely a major reason that Mr. Pinney and Graydon, Head & Ritchey, LLP withdrew from representation shortly thereafter.

4. **The OHSL and Provident Defendants' Allegations that Plaintiffs' Counsel's Questioning was Cumulative, Antagonistic and Designed More to Confuse and Harrass Mr. Brinker than to Elicit Information in Support of the Prosecution of This Case is Insulting to Magistrate Judge Hogan**

The OHSL and Provident Defendants are aware that Magistrate Judge Hogan presided over the February 5, 2004 deposition of Mr. Brinker. At the outset, Magistrate Judge Hogan made it clear that he had reach each of the 759 pages from the April 2000 deposition transcript and that he did not wish to see any duplication in the questioning. Additionally, Magistrate Judge Hogan had a copy of the entire Brinker deposition transcript from the earlier case in front of him during the entire deposition.

The OHSL and Provident Defendants' memorandum in opposition suggests that Magistrate Judge Hogan presided over a deposition in which repeated improper conduct took place, and that he idly sat by and did nothing to prevent it. It is simply astounding that the Defendants would strongly imply that a Federal Judicial Officer would allow a witness to be treated so abusively without any intervention from the Court. Such an accusation implies that Magistrate Judge Hogan was, in essence, a party to the abuse, or that he was a referee at this "perverse sport."

5. **Courts Do Not Favor Reviewing Entire Transcripts Because It Shifts the Burden of Proof Away from the Litigating Party.**

Courts do not favor reviewing entire transcripts because it shifts the burden of proof away from the litigating party. In *Allstate Transportation Company, Inc. v. Southern Pennsylvania Transportation Authority*, 2000 U.S. Dist. LEXIS 3831, Case No. 97-1482 at 10, n. 5 (E.D. Pa. March 27, 2000), the plaintiff submitted its opposition to the defendant's motion for summary judgment, and provided five volumes of exhibits totaling hundreds of pages. Id. In its accompanying brief, the plaintiff essentially

8

directed the court to read all of the exhibits and select those facts that supported the plaintiff's claim. Id. In particular, the plaintiff stated as follows: "Unfortunately, for the Court's review process the entire deposition transcripts of all four principal SEPTA witnesses should be read. ... In those are laid out the crux of plaintiff's complaints about this process." Id. The court, however, declined the plaintiff's invitation for such an open-ended review, and only considered those submissions to which the plaintiff specifically pointed in the relevant sections of its briefs. Id. The court stated that it did so because it is the litigating party, and not the court, who bears the burden of setting forth specific facts in support of its case. Id.

The result should be the same in the present case. Instead of providing even one example of how Plaintiffs' counsel's questions were cumulative, antagonizing, or meant to confuse or upset Mr. Brinker, the OHSL and Provident Defendants ask this Court to review the transcript and videotape of Mr. Brinker's most recent deposition "to gain an full appreciation of what occurred that day[3]." (Opposition at 2). If the OHSL and Provident Defendants cannot take the time to provide even one example in support of their arguments, then this Court should not be required to take its precious time to do this for them. This is especially the case since the OHSL and Provident Defendants are not truly making this suggestion in good faith, but in an attempt to shift their burden onto this Court, and to deflect attention away from the fact that this burden cannot be met since Plaintiffs' counsel never acted inappropriately during Mr. Brinker's deposition.

---

[3] Of course Magistrate Judge Hogan knew what occurred that day because he was present. And not only was he present, but Magistrate Judge Hogan had read the entire 739 page state court transcript and had it in front of him during the entire Brinker deposition.

C. **All Facts Indicate that KMK Created Mr. Brinker's Errata Sheet and Manipulated His Testimony to Suit the Needs of KMK**

The OHSL and Provident Defendants deny that KMK and Mr. Burke manipulated the production of the errata sheet. However, once again what is not stated is much more telling than what is actually stated in this Memorandum in Opposition. Several questions are left unanswered by this errata sheet. As a result, the easiest way to dispel Plaintiffs' allegations in their Motion to Strike Mr. Brinker's Errata Sheet would have been for Mr. Brinker to submit an affidavit denying them. It certainly would have been more effective than having an attorney who was not even present at the deposition make arguments on his behalf. However, this option might not have been an available option since it would require making the statement under oath. As a result, there are several questions and issues that are left unresolved by Mr. Brinker's errata sheet.

1. **Mr. Brinker Did Not Independently Determine the "Mistakes" in His Deposition Transcript.**

The argument propounded by the OHSL and Provident Defendants still does not evidence that Mr. Brinker read the errata sheet and independently determined that he had made any mistakes in his deposition testimony. Although the OHSL and Provident Defendants state that Mr. Brinker personally read his entire deposition, this is highly suspicious given the fact that the errata sheet stated that he had "read the entire transcript of my deposition taken on the 2nd day of February, 2004, or the same has been read to me." (*See*, Brinker Errata Sheet, Attached as Exhibit A to the Motion to Strike [Doc. No. 305]). There is no reason for this document to state **"or the same has been read to me"**

if that did not occur. This was not a standard form where that language is always included, but an errata sheet created specifically for Mr. Brinker.

Further, the OHSL and Provident Defendants do not even paint a picture where Mr. Brinker took an active role in the process of reviewing his deposition transcript. Rather, the Memorandum in Opposition states that it was Mr. Burke who reviewed the erroneous statements and that it was Mr. Burke who "went over the changes reflected on the errata sheet." (Opposition at 3). It was only after Mr. Burke's actions, corrections, and input that Mr. Brinker allegedly "realized" his errors and "understood and agreed with the corrections and knowingly signed the errata sheet." (Opposition at 3). In other words, Mr. Brinker's memory seems to only spontaneously return when under the tutelage of Mr. Burke. The OHSL and Provident Defendants claim that Mr. Brinker just misspoke during his deposition, but they provide nothing to support that argument. If Mr. Brinker had just misspoke, and he had the ability to read and comprehend his deposition transcript, he would have independently caught these mistakes and prepared his own errata sheet without any input from Mr. Burke. This did not happen.

2. **The OHSL and Provident Defendants Have a Tendency to Interpret Mr. Brinker's Mental Acquity Differently Based Upon Their Particular Need at the Time.**

The OHSL and Provident Defendants have a habit of changing the status of Mr. Brinker's health in order to suit their particular needs in this litigation. First, his confused state at the deposition, and then again with respect to the errata sheet where, according to Mr. Burke and KMK, Mr. Brinker's memory spontaneously returned and he was independently able to realize all of the mistakes he had earlier made in his deposition. Such a significant turn of events is highly unlikely given the extreme confusion exhibited

by Mr. Brinker during his deposition. However, this is not the first time that KMK and Mr. Burke have tried to manipulate Mr. Brinker's physical and/or mental state to their advantage.

The OHSL and Provident Defendants have a tendency to portray Mr. Brinker's mental and/or physical health differently depending on how it will benefit them. When Plaintiffs originally wanted to take the deposition of Mr. Brinker, the OHSL and Provident Defendants were insistent that it should not be done, or that its scope should be severely limited, based upon the Mr. Brinker's physical and/or mental health. Thereafter, the OHSL and Provident Defendants argued that Plaintiffs' counsel confused Mr. Brinker during his deposition and implied that Plaintiffs' counsel was trying to take advantage of Mr. Brinker's mentally impaired state. (Opposition at 2). However, now that Mr. Brinker's ability to prepare the errata sheet is being questioned by Plaintiffs, the OHSL and Provident Defendants "categorically deny that Mr. Brinker 'is physically and/or mentally incapable" of recognizing inadvertent errors in his testimony and making changes to his deposition transcript. (Opposition at 2). The OHSL and Provident Defendants cannot have it both ways. If Mr. Brinker is now not suffering from any physical or mental infirmity which would preclude the taking of this deposition, then this is yet another reason that this Court's Order denying the further deposing of Mr. Brinker should be overturned.

Similarly, the OHSL and Provident Defendants attempt to downplay the significance of the errors which were made by Mr. Brinker. They state that Mr. Brinker "made a couple of mistakes on facts about which no one disagrees." (Opposition at 3). This is true, but that is not the point. Although it is a stretch to argue that it was just a

mistake to state that Mr. Brinker misspoke about the merger being "seventeen" years ago rather than four to five years ago, Plaintiffs might be willing to accept this mistake if it was in isolation. However, it was not. Mr. Brinker was also confused on other points, the most significant of which was his understanding as to who was representing him in this action. A party's understanding of who is representing him in an action is fundamental to that action and is not the type of fact of which one misspeaks. This is a particularly important fact in this case since KMK was required by Order of this Court to obtain the full consent of its client in order for KMK to continue to represent its clients during the pretrial phase of this litigation. (Doc. No. 215). If Mr. Brinker did not know who was representing him, then he could not have provided informed consent to KMK's continued representation of him in this action.

### 3.     The OHSL and Provident Defendant Try to Rely Upon Sympathy for Mr. Brinker.

Finally, reduced to its lowest terms, the opposition papers rely on sympathy. The OHSL and Provident Defendants, in essence, argue that since Mr. Brinker, is an 86 year old man who is recovering from what may be a stroke, he should not be held to the normal standards for the chairman of the board of a public company. Mr. Brinker is old and infirm, and the fact that Plaintiffs want to depose him on key issues relating to the merger, including new developments due to the massive restatement, is really just an indication of their perverseness.

For reasons that have been cited in detail in Plaintiff' Objection to Magistrate Judge Hogan's Order Closing the Deposition of Mr. Brinker (Doc. No. 300), this is simply not true. Each and every question was legitimate, respectful, and entirely proper

befitting any deposition for a case in Federal Court but most certainly one where Magistrate Judge Hogan actually presided.

All of the foregoing can only lead to one conclusion, and that is that KMK has systematically attempted to manipulate the deposition testimony of Mr. Brinker through the errata sheet in order to protect itself, and its premier client Provident, in this litigation. KMK knew that if Brinker's deposition testimony was permitted to stand in its previous form, it would place its representation of the OHSL and Provident Defendants in jeopardy. As a result, when this Court denied Plaintiffs' request to continue the deposition of Mr. Brinker, Mr. Burke and KMK were given a golden opportunity to submit an errata sheet which completely changed Mr. Brinker's damaging testimony to KMK without fear of its content being challenged. Such obvious misconduct should not be permitted, but should be remedied if at all possible. The errata sheet should be stricken.

### III.   Mr. Brinker's Deposition Should be Re-Opened

#### A.   Mr. Brinker's Deposition Should Also be Re-Opened so that Plaintiffs Can Thoroughly Question Mr. Brinker Regarding Events Which Occurred After the Filing of the CAC.

Mr. Brinker's deposition should be re-opened because Plaintiffs were not permitted enough time to sufficiently pursue their questioning related to the events which transpired after the filing of the Consolidated Amended Complaint ("CAC"). The OHSL and Provident Defendants argue that Plaintiffs counsel spent his time dwelling on "arcane details of a 1999 transaction which no 86 year old person could be expected to recall." (Opposition at 2). However, this was not the case, and once again the OHSL and Provident Defendants do not provide one excerpt from the deposition which supports this

proposition. The restatement is obviously a new issue, as is KMK's disqualification. Similarly, Plaintiffs' counsel's questioning of the OHSL Directors' monthly meetings since the merger is also obviously a new issue. In particular, probing into the discussions at these meetings is entirely proper since they have admittedly discussed this litigation at these meetings.[4]

### B. Mr. Brinker's Deposition Should be Re-Opened Because Mr. Brinker Interfered with Plaintiffs' Counsel's Ability to Conduct his Deposition.

As discussed in the original Motion, Plaintiffs' counsel had to ask his questions of Mr. Brinker under circumstances which were difficult at best. Faced with bizarre, demonstrably wrong, and antagonistic answers that often bore little or no relationship to the questions, Plaintiffs' counsel proceeded as best he could. It was Mr. Brinker, not Plaintiffs' counsel, who was antagonistic, and who refused to answer the questions in a direct and forthright manner. In particular, Mr. Brinker seemed well trained in his ability to parrot Mr. Burke's legal objections as illustrated by the following exchange:

> Q.    So you were trying to influence the shareholder vote through this letter and the proxy materials and the registration statement attached to this letter, correct?
>
> MR. BURKE: i.e. objection. Argumentative. Calls for speculation.
>
> A.    Yeah, that is argumentative. And it does call for speculation.

(Brinker depo. p. 28). Another example is as follows:

> Q.    Would you invite Ken Hanauer to that meeting?
>
> MR. BURKE: Objection. Calls for speculation.

---

[4] Interestingly, no one, including Mr. Brinker, has been able to provide any kind of coherent narrative as to what was discussed during these meetings over the past four years. This was the case despite the fact that Plaintiffs' counsel phrased the question in the most general terms when the defendants were unable to recall specifics.

      A.    That would be speculation. I don't know if he would come.

(Brinker depo. p. 54). Mr. Brinker, and his tutor Mr. Burke, should not be rewarded for such conduct, and Plaintiffs should be given additional time to compensate them for the valuable time which was lost during Mr. Brinker's deposition as a result of these tactics.

    C.    **Mr. Brinker's Deposition Should be Re-Opened So That the Mystery Behind the Changes to Mr. Brinker's Deposition Testimony Can be Resolved.**

Mr. Brinker's deposition should also be re-opened so that Mr. Brinker can explain how these revelations regarding his deposition testimony came to him. In particular, it must be determined what Mr. Brinker's actual role was in relation to the preparation of this errata sheet, and why the story regarding the production of the errata sheet continues to change. As stated above, if Mr. Brinker read his deposition, why did the errata sheet state that he read it <u>or</u> someone read it to him? (*See,* Brinker Errata Sheet, Attached as Exhibit A to Doc. No. 305) A re-opening of Mr. Brinker's deposition is the only way that it will be determined if the errata sheet is truly the work product of Mr. Brinker, or of Mr. Burke.

    D.    **Mr. Brinker's Deposition Should be Re-Opened so That Plaintiffs Can Determine What Mr. Brinker's Appearance Will be at Trial.**

Finally, Mr. Brinker's deposition should be continued in order for Plaintiffs to determine how Mr. Brinker will appear at trial. One of the purposes of a deposition is to evaluate the witness and determine how he will appear at trial. Clearly on this basis alone, the 5 February 2004 deposition of Mr. Brinker was a necessary exercise, since Mr. Brinker is a demonstrably different witness from the witness he was in April 2000. While Mr. Brinker's deposition in the state court action was hardly a model of clarity,

Mr. Brinker's ability to answer questions on any topic related to the merger has significantly deteriorated. Consequently, since matters are not likely to improve between now and trial, Plaintiffs should be permitted to continue with Mr. Brinker's deposition in order to evaluate the changing appearance of Mr. Brinker so as to be fully prepared for trial.

## IV.   CONCLUSION

Plaintiffs' Motion to Strike or Otherwise Not Consider Mr. Brinker's Errata Sheet should be granted because the OHSL and Provident Defendants have failed to present any evidence in their Memorandum in Opposition that Mr. Brinker was incapable of independently making these changes. Although the OHSL and Provident Defendant make conclusory and demonstrably false arguments contra Plaintiffs' Motion, as well as more baseless personal attacks against Plaintiffs' counsel himself, they have neither cited to a single excerpt in Mr. Brinker's deposition nor cited to a single legal authority to support their positions. Instead, some of their arguments are contrary to the errata sheet itself.

Consequently, these inexplicable errata sheet corrections necessitate not only the striking of the errata sheet, but also the re-opening of the questioning of Mr. Brinker. Although it should be re-opened solely on the basis that the limitation of Mr. Brinker's deposition to two hours was extraordinary departure from the Federal Rules of Civil Procedure, at the very least Plaintiffs should be given an opportunity to question Mr. Brinker as to the facts surrounding the creation of the errata sheet. Otherwise, Plaintiffs and the Court will never get to the bottom of why the changes to Mr. Brinker's deposition were made and whether the changes originated with Mr. Brinker or KMK.

DATED:   8 April 2004    Respectfully Submitted,

             */s/ Michael L.B.*
             Gene Mesh (OH Bar # 0002076)
             Michael G. Brautigam
             GENE MESH & ASSOCIATES
             2605 Burnet Avenue
             Cincinnati, Ohio 45219-2502
             (513) 221-8800
             (513) 221-1097  (fax)

             *Attorneys for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

      This is to certify that a true and accurate copy of the foregoing Plaintiffs' Reply Brief in Support of the Motion to Strike Brinker Errata Sheet (Doc. No. 305) was served this 8th day of April, 20004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202

**BY U.S. MAIL**
Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

James E. Gauch, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001-2113

David Greer, Esq.
James Greer, Esq.
BIESER, GREER & LANDIS, LLP
400 National City Center; 6 North Main Street
Dayton, OH 45402-1908

                                                     _/s/ Stephanie A. Hite_
                                                     Stephanie A. Hite