IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN TRIBBLE, | * | Case C-1-03-403 |
| Plaintiff, | * | Judge Spiegel |
| | | Magistrate Judge Hogan |
| v. | * | |
| JOHNNY LEE GRAHAM, et al., | * | DEFENDANTS' MOTION TO REVOKE THE *PRO HAC* |
| Defendants. | * | *VICE* STATUS OF MICHAEL G. BRAUTIGAM |
| | * | |

Now come Defendants Rodenberg, Combs, Priede, Lang, Willis, the Clermont County Jail and Clermont County, by and through the undersigned counsel, to move this Court for an order revoking attorney Michael Brautigam's privilege to practice *pro hac vice* with respect to the litigation at bar. Defendants represent that Mr. Brautigam's conduct has become irrational and personally threatening to defendants' counsel and that defendants have no other remedy.

A memorandum in support of this motion is attached hereto.

Respectfully submitted,

s/ Elizabeth Mason

Elizabeth Mason Bar Number, 0051967
Assistant Prosecuting Attorney, Civil Division
Attorney for Defendant Donald White
Office of the Clermont County Prosecutor
101 E. Main Street, Third Floor
Batavia, Ohio 45103
Telephone: (513) 732-7585
E-mail: emason@co.clermont.oh.us

1

## MEMORANDUM

Having been subjected to abusive and threatening conduct by attorney Michael Brautigam, defendants must now request the Court to revoke Mr. Brautigam's *pro hac vice* status. Defendants' counsel understand the magnitude of the requested sanction and emphasize that this is not a complaint regarding lack of professionalism nor is this a discovery dispute, but a problem which has escalated to a question of personal safety.

**FACTS**

In July 2003 defendants' counsel had their first contact with Mr. Brautigam. This contact was a telephone call which culminated in Mr. Brautigam shouting belligerantly at Elizabeth Mason about what he believed Civ.R. 83.5(c) required of her regarding service of pleadings and motions upon him as *pro hac vice* counsel.

By March 2004, in order to receive overdue responses to interrogatories, to have counsel execute releases for medical records which had been requested months previous, and to set deposition dates, defense counsel (after a series of letters and with the discovery deadline six weeks away) rather than file a motion to compel and in accord with the Civ.R. 37.1, set a conference with Magistrate Hogan which was held on March 22.

Mr. Brautigam called Ms. Mason several days thereafter and told Ms. Mason that he was angry that, during the conference, Ms. Birck had characterized the seven-hour deposition he had taken of defendant Combs to be a complete waste of time. Mr. Brautigam warned Ms. Mason that he expected Ms. Birck to apologize to him for saying this to Judge Hogan, and that if Ms. Birck persisted in conduct he disrespectful, "I am going to retaliate, and she isn't going to like

2

it." At this point, defense counsel did not interpret this as a threat of physical harm, but thought he meant he would file a motion or write a letter.

On Friday, April 2, 2004, a deposition of Plaintiff Kathleen Tribble was convened in a small conference room in the Franklin Pre-Release Center where she was serving the remainder of her sentence. The deposition began around noon and was transcribed by Julie Patrick of Tri-County Reporting. Ms. Birck conducted the deposition; her co-counsel, Elizabeth Mason, was also present. Ms. Tribble was present with her counsel Paul Hackett and Michael Brautigam.

Initially, when asked who would be defending the deposition, Mr. Brautigam insisted that there was no rule that prohibited both attorneys from defending the deposition. Defendants' counsel chose not to dispute the point. Therefore, as the deposition began, Mr. Brautigam made objections and Mr. Hackett instructed Ms. Tribble to answer.

The transcript indicates that Mr. Brautigam was hostile from the onset – he objected when Ms. Birck laid the customary ground rules for the deposition, he threatened to adjourn the deposition when defense counsel had inadvertently made only one copy of Plaintiff's Interrogatory Responses, he characterized Ms. Birck's prefatory remarks to questions as objectionable "lectures."

Mr. Brautigam made his first lunge across the conference room table when Ms. Birck questioned Ms. Tribble about her bulimia. Upon receiving Ms. Tribble's answer, Ms. Birck responded, "Good," and looked down at her notes. Mr. Brautigam, agitated, jumped out of his chair and thrust himself across the table to ask the court reporter about what Ms. Birck had just said.

Shortly thereafter, Mr. Hackett requested a break, and upon return, announced that he

3

would now be defending the deposition. The transcript indicates that Mr. Hackett made relatively few objections, and that Ms. Birck permitted Mr. Hackett to restate or otherwise clarify her questions for Ms. Tribble's benefit. The deposition proceeded in this cooperative spirit until a break was taken at approximately 3:45 pm.

At the break, an administrator of the Franklin Pre-Release Center indicated to Ms. Birck and Ms. Mason that, due to staffing, the deposition could not continue beyond 5 pm. Upon re-entering the conference room, defense counsel conveyed this to Plaintiff's counsel, and asked them if they could agree upon a date to continue the deposition. Mr. Brautigam rose excitedly from his chair and began exclaiming angrily that this was a federal case, that he would call the warden and demand that the staff work overtime until the deposition was completed. When Mr. Brautigam's comments were ignored by Mr. Hackett and defendants' counsel, Mr. Brautigam sat back down.

A discussion then ensued among the Mr. Hackett and defendants' counsel concerning deposition dates and Mr. Hackett's dissatisfaction with Ms. Birck's way of scheduling depositions (written correspondence rather than phone calls). There was definite disagreement among counsel about the federal rules regarding the setting and taking of depositions, but counsel did not raise their voices. Indeed, before Mr. Brautigam's final outburst, it became apparent that Mr. Hackett and defendants' counsel had reached an agreement.

Suddenly, though, Mr. Brautigam interjected himself into the conversation, loudly demanding that the federal rules required defendants to purchase transcripts of any sworn witness statements obtained by defendants' counsel. Ms. Birck indicated to Mr. Brautigam that the transcripts would be available for his purchase through Tri-County Reporting and disputed that

4

the federal rules required defendants to purchase transcribed statements for plaintiff's counsel.

To the best of her recollection, Ms. Birck then pointed out to Mr. Brautigam, "You don't know the federal rules. You aren't even licensed to practice in federal court." At this, Mr. Brautigam jumped from his chair screaming hysterically, "I am, too, licensed to practice in federal court!" He then lunged across the conference table at Ms. Birck, and screamed, "And you shut your fucking mouth!" Mr. Hackett put his arm across Mr. Brautigam's chest to restrain him.

Astounded and frightened by Mr. Brautigam's hostility, Ms. Birck and Ms. Mason gathered their materials and indicated as they left the room that they expected the deposition to be reconvened. Ms. Patrick, the court reporter, indicates that Ms. Birck was calm when she reminded Mr. Brautigam of his *pro hac vice* status and the associated problems with his lack of familiarity with the federal and local rules. See affidavit of Julie Patrick, attached hereto.

It is difficult to describe how extreme Mr. Brautigam's behavior was. Certainly even if his abusive shouting had been on the record, words on a page cannot communicate the hostility in his voice. As Ms. Patrick indicates in her affidavit, she could see no apparent reason for Mr. Brautigam's angry outburst, especially in light of the fact that the other attorneys were conversing civilly.

Defendants' counsel's next contact with Mr. Brautigam was the following Monday when he faxed two letters. In one, he asked Ms. Birck and Ms. Mason to agree to new scheduling order to extend the discovery period and in the other, he objected to the way depositions have been scheduled, offering a plan for smoother communication. In neither letter did Mr. Brautigam explain, apologize, or otherwise mention his conduct the previous Friday.

At the close of business on Monday, April 5, Ms. Birck phoned Mr. Hackett and the two

5

acknowledged that due to defendants' counsel's concern for their safety in Mr. Brautigam's presence, depositions for that week could not go forward. Ms. Birck then informed Mr. Hackett that she planned to file a motion asking the court to revoke Mr. Brautigam's *pro hac vice* status.

On Tuesday, April 6th, Mr. Hackett spoke to both Ms. Birck and Ms. Mason by phone. Mr. Hackett indicated that he had spoken to Mr. Brautigam and told him about the motion to revoke his *pro hac vice* status. It was Mr. Hackett's position that the question of Mr. Brautigam's conduct could be resolved extra-judicially. Mr. Hackett suggested a meeting where Mr. Brautigam would apologize in person. Mr. Hackett indicated that he himself would "guarantee" that Mr. Brautigam would not behave abusively again. Ms. Birck indicated that she was glad that Mr. Brautigam apologized, but that she believed that Mr. Brautigam was *unable* to control himself and therefore promises and guarantees were of no value. She similarly questioned how Mr. Hackett could make this guarantee as his presence at Friday's deposition did not stop Mr. Brautigam from threatening her. The conversation concluded amicably with Mr. Hackett acknowledging that defendants' counsel were unwilling to go forward with depositions at which Mr. Brautigam would be present until the Court decided the motion.

On April 8, Mr. Brautigam faxed his note of apology to defense counsel in which he repeatedly excuses his behavior as a response to Ms. Birck's "provoking" him (with Ms. Mason encouraging Ms. Birck's attacks). See Brautigam Letter of April 8, 2004, attached hereto. The irony inherent in Mr. Brautigam's apology is inescapable: an attorney representing a woman who complains of physical abuse, excuses his own abusive behavior by claiming, "She asked for it."

Particularly worrisome to defendants' counsel is that Mr. Brautigam's outburst on April 2 is not out of character, though it is by far the worst incident defense counsel has personally

witnessed and worse than what other attorneys report. (Male attorneys contacted by counsel have been less than complimentary about Mr. Brautigam's conduct, but none have reported physical threats. Defendants' counsel have not located any female attorney with whom Mr. Brautigam has interacted.) Of further concern, is that Mr. Brautigam, in his April 8 letter, actually attempts to justify his conduct by reminding defendants' counsel of his warning that they failed to heed.

The Court should note that Magistrate Judge Hogan has recently labeled Mr. Brautigam's conduct in discovery as "uncivil, unreasonable, and sophomoric." Order (Doc. 214), *Thieman v. OHSL Financial Corp. et al.*, Case No. C-1-00-793, Oct. 7, 2003 at p.9.

Use of foul language is objectionable and unprofessional, and an apology and promise not to offend again would be appropriate. A male counsel's shrieking profanities while lunging at female counsel is more disconcerting. A complete lack of perception of the seriousness of his conduct and a wish to place the blame for it on counsel herself, as evidenced by Brautigam's letter of April 8, is perhaps the most frightening and clearly justifies defendants' counsel's argument in support of revocation of his *pro hac vice* status.

**LAW**

In this District's local rules, Civ.R. 83.5(d) states:

> Any member in good standing of the bar of the highest court of any state, who is **not otherwise eligible to become a member of the bar of this Court**, may be permitted to appear and participate as counsel or co-counsel upon motion of the trial attorney for any party. [Emphasis added.]

Mr. Brautigam is not eligible to become a member of the bar of this Court because, though a resident of Ohio for over ten years, he has yet to become admitted to practice in Ohio.

Nevertheless, over the years, the judges of the Southern District of Ohio have been

7

generous in granting Mr. Brautigam the privilege to practice *pro hac vice*. In this regard, concerned with Mr. Brautigam's continued, and increasingly frequent requests for *pro hac vice* admission, Judge Beckwith granted Mr. Brautigam's admission *pro hac vice* in *Thieman v. OHSL Financial Corp, et al.* on January 24, 2001 (Doc. 28), but cautioned that

> the Court disapproves of Mr. Brautigam's continued use of the pro hac vice privilege to practice law in the courts of Ohio.... While perhaps six admissions pro hac vice in eight years is not an extreme amount, Mr. Brautigam's use of the privilege in Ohio is becoming more frequent instead of less frequent.... In the Court's opinion, Mr. Brautigam stands perilously close to the limits of this courtesy. This particular Court may not extend the pro hac vice privilege to Mr. Brautigam in future cases assigned to its docket. Mr. Brautigam may have to be admitted to practice before the Southern District of Ohio, which, in turn, would mean that he will have to gain admission to the bar of the state of Ohio.

Order, *Thieman v. OHSL Financial Corp. et al.*, Case No. C-1-00-793, Jan.24, 2001, Doc. 28, at 4-5. Judge Beckwith pointed out further that "as long as he [Mr. Brautigam] and the Mesh firm continue to operate as they have in the state of Ohio, they leave themselves open to further charges of unethical conduct." Doc. 28, pp. 6-7.

The Sixth Circuit, citing Rule 2.08 of the local civil rules of the northern district of Ohio, has held that the decision to permit an out-of-state attorney to practice in the bankruptcy or district court for the northern district of Ohio is committed to the sound discretion of the trial judge. *Overmyer v. Robson*, 750 F.3d 31, 33 (6th Cir.1984). Rule 2.08 and Civ.R. 83.5(d) of the local rules of the southern district use similar language. Of relevance to this matter, both rules state that: "Any member in good standing of the bar of the highest court of any state ... *may be permitted* to appear and participate" in a particular case. (Emphasis supplied.)

In its rationale affirming the lower court's revocation of an attorney's pro hac vice

8

statues, the Sixth Circuit indicated that "Rule 2.08 represents the codification of the inherent authority of the court to regulate the practice of law before it, as recognized by the United States Supreme Court over 150 years ago. In affirming the one-year suspension of an attorney by the district and circuit courts of the District of Columbia, the Court observed:

> On the one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the court.

*Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 6 L. Ed. 152 (1824)." *Id.* This holding is equally applicable to the matter now before this Court.

Two years after reluctantly granting Mr. Brautigam *pro hac vice* status, and after considering his reported conduct, Judge Beckwith, in the October 10, 2003, order in *Thieman v. OHSL Financial Corp.* (Doc. 214), pointed out:

> ... Mr. Brautigam is not a member of the Ohio bar and has only been admitted to practice before this court pro hac vice. He is, therefore, by definition, a stranger to our Court and its expectations regarding professionalism. **Consequently, when a judge with Magistrate Judge Hogan's experience and ability comments unfavorably on counsel's conduct, it behooves counsel to look inwardly** .... [Emphasis added.]

Having been given this warning regarding his conduct, it would seem that Mr. Brautigam, should have made some effort by now to become familiar with the court's expectations regarding professionalism.

With respect to professionalism, the judges of Southern District of Ohio, Western

9

Division, have published a Statement on Civility as a preface to the local rules. This Statement is specific in stating the court's position that opposing counsel, by the mere fact of acting in "opposition" to you, "has not forfeited the right to be treated with common courtesy." Statement, ¶1. The Statement points out, further, that representing one's client zealously "is not a blanket excuse for disrespectful or obstructionist behavior." Statement, ¶2.

Further, Mr. Brautigam is obliged to follow the standards of conduct set forth by the Supreme Court of Ohio. *See* Model Federal Rules of Disciplinary Enforcement IV. (B)("The Code of Professional Responsibility by this court is the Code of Professional Responsibility adopted by the highest court of the state in which this Court sits . . . except as otherwise provided by specific Rule of this Court . . ..")

It is clear that the Ohio bar does not condone the behavior manifested by Mr. Brautigam at his client's deposition. In *Columbus Bar Assn. v. Reibel*, where an attorney licensed in Ohio used offensive and abusive language to opposing counsel and his client, the Supreme Court of Ohio stated that

> It is within the real meaning and intent of our Code of Professional Responsibility that lawyers should always be cognizant of the necessity for good manners, courtesy and discourse, both to client and other practitioners, as being part of our professional ethics.
>
> The zeal employed by an attorney in guarding the interests of his clients must always be tempered so as not to inject his personal feelings or display a demeanor that subjects parties to a proceeding or opposing counsel to certain dignities.

99 Ohio St.3d 491, 492 (1982)(emphasis supplied). Likewise, the Supreme Court of Ohio, in *Disciplinary Counsel v. Jackson*, 84 Ohio St.3d 386, 388 (1999) instructed that "Part of the role of an attorney is to remove himself from the emotions of the moment and provide objective

10

counsel and representation to clients. To perform that role, attorneys must hold themselves to the highest standards of professionalism." (Emphasis supplied.) In *Butler Co. Bar Ass'n v. Foster*, the Supreme Court of Ohio held that a six-month suspension of an attorney admitted to practice was appropriate where the attorney displayed a pattern of behavior which escalated to abusive language. 99 Ohio St.3d 491, 493 (2003).

Unfortunately, because Mr. Brautigam is not admitted to practice in Ohio, defendants' counsel has no recourse by way of a grievance filed with the Ohio Disciplinary Counsel. Where the southern district has adopted Ohio's Code of Professional Responsibility, this Court may, however, look to the proceedings of the State of Ohio Disciplinary Counsel in determining the standards applicable to a practitioner before this Court.

**CONCLUSION**

As stated from the outset of this Memorandum, this is not a discovery dispute, and Defendants' counsel represents that any remaining discovery issues can be resolved extra-judicially with Mr. Hackett. Indeed, defendants' counsel is mindful that it is requesting this Court to impose a weighty sanction. Nevertheless, Mr. Brautigam's letter of April 8 demonstrates that he is unwilling (or unable) to take responsibility for his conduct, choosing to characterize himself as the victim of a "strategy" to "provoke" him into the abusive conduct of which defendants' counsel complains.

Defendants' counsel have no other remedy but to ask for the court's protection. It is clear from his hostile conduct throughout the deposition as well as from his April 8 letter, that Mr. Brautigam was lying in wait, looking for an opportunity to avenge his perception of Ms. Birck's supposedly disrespectful treatment of him in front of Judge Hogan. (It may be noted that Judge

11

Hogan expressed no concern over Ms. Birck's remarks.)

Counsel asks that the court look to the chilling effect of Mr. Brautigam's misconduct on future depositions: how can counsel freely question deposition witnesses without worrying whether a particular question is too "provocative?" How can counsel defend a deposition without evaluating which objection may set off another outburst?

Based on the foregoing, defendants' counsel respectfully request this Court to revoke Michael G. Brautigam's *pro hac vice* status in this action.

        Respectfully submitted,

        s/ Elizabeth Mason

        Elizabeth Mason Bar Number, 0051967
        Assistant Prosecuting Attorney, Civil Division
        Attorney for Defendant Donald White
        Office of the Clermont County Prosecutor
        101 E. Main Street, Third Floor
        Batavia, Ohio 45103
        Telephone: (513) 732-7585
        E-mail: emason@co.clermont.oh.us

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2004, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: Paul L Hackett The Kroger Bldg. 1014 Vine Street Cincinnati, OH 45202, Paul Rankin Yelton 424 West Plan Street PO Box 67 Bethel, OH 45106.

s/ Elizabeth Mason

Elizabeth Mason Bar Number, 0051967
Assistant Prosecuting Attorney, Civil Division
Office of the Clermont County Prosecutor
101 E. Main Street, Third Floor
Batavia, Ohio 45103
Telephone: (513) 732-7585
E-mail: emason@co.clermont.oh.us

13

# LAW OFFICES OF GENE MESH AND ASSOCIATES

8 April 2004

By Fax 732 8171

Elizabeth Mason, Esq.
Mary Lynn Birck, Esq.
Assistant Prosecuting Attorneys
CLERMONT COUNTY PROSECUTOR'S OFFICE
101 East Main Street
Administration Building, 3rd Floor
Batavia, OH 45103

Re: Tribble v. Johnny Lee Graham, et al., Case No. C-1-03-403

Dear Counsel:

I am writing to apologize for raising my voice and for my choice of words at the deposition of Katie Tribble last week. Although I was clearly provoked as part of your strategy—and had even mentioned this exact topic to Ms. Mason—I was wrong to raise my voice in response to your provocation.

I think that we can both agree that tensions were running a little high at the end of a long day when I made my comment and that Ms. Birck contributed to this result by provoking me. I had previously discussed this exact concern with Ms. Mason just days before, and I regret that I did not take her suggestion and raise the issue directly with Ms. Birck, but I chose not to because I believed that Ms. Mason had set the tone and was encouraging these personal attacks. In retrospect, I made the wrong choice.

I hope that this apology—which I make without reservation—will permit us to perhaps start anew, and to put aside strategies that do not go directly to the facts of the case.

Please accept my apology.

Sincerely,


Michael G. Brautigam

cc: Paul L. Hackett, Esq. 333 0599
    Paul R. Yelton 734 2284



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN TRIBBLE, | * | Case C-1-03-403 |
| Plaintiff, | * | Judge Spiegel<br>Magistrate Judge Hogan |
| v. | * | |
| JOHNNY LEE GRAHAM, et al., | * | **AFFIDAVIT OF<br>JULIE PATRICK** |
| Defendants. | * | |
| | * | |

State of Ohio
              ss:
County of Clermont

      Julie Patrick, being duly cautioned and sworn, deposes and states as follows:

      1. That I am a court reporter affiliated with Tri-County Reporting Service, 95 S. Fourth Street, Batavia, Ohio;

      2. That I have practiced as a court reporter for twenty years

      3. That I have transcribed at least hundreds of depositions every year for the past twenty years and have worked in federal courts in Ohio and Kentucky as well as in state courts in Hamilton, Clermont, Warren, Butler, and Brown counties in Ohio and Kenton, Boone and Campbell counties in Kentucky.

      4. That I was assigned by Tri-County Reporting to transcribe a deposition to be taken by the Office of the Clermont County Prosecutor in the above-captioned case on April 2, 2004.

      5. That the deposition took place at the Franklin Pre Release Center in Columbus, Ohio.

1

6. That the deponent was plaintiff Kathleen Tribble who was represented by attorneys Michael G. Brautigam and Paul L. Hackett.

7. That defendants were represented by Clermont County Assistant Prosecuting Attorneys Mary Lynne Birck and Elizabeth Mason.

8. That the deposition began at 12:15 p.m. and was continued in progress at 3:45 p.m.

9. That after a break that began at 3:30, counsel returned to the conference room where defendants' counsel informed plaintiff's counsel that the prison administration had indicated that the deposition could not continue after 5 p.m.

10. That defendants' counsel and Mr. Hackett, plaintiff's other attorney, began discussing plans for resuming plaintiff's deposition as well as scheduling problems regarding other depositions.

11. That while it was clear that defendants' counsel and Mr. Hackett were in disagreement, at no time did either defendants' counsel or Mr. Hackett raise their voices or exhibit any other hostile behavior by means or words, tone of voice or gestures.

12. That during this disagreement, I observed these attorneys make an obvious effort to remain civil.

13. That when the attorneys began discussing whether plaintiff was responsible for the cost of obtaining sworn statements from the court reporter, Mr. Brautigam loudly insisted that "That's not how it's done in federal court."

14. Ms. Birck then calmly pointed out something to the effect that if Mr. Brautigam were licensed in federal court he would know the rules. At that point, Mr. Brautigam came to his feet and leaned across the table shouting "I am licensed in federal court, and you shut your fucking

2

mouth."

15. That I could see no apparent reason for the level of Mr. Brautigam's hostility or conduct.

16. That after Mr. Brautigam's outburst, it seemed reasonable to me to stop the deposition.

17. That I have transcribed several other depositions in this case where only defendants' counsel and Mr. Hackett were present and these depositions have gone smoothly and the attorneys have been cordial.

18. That I have worked with Ms. Birck and Ms. Mason on many occasions and have always found them easy and pleasant to work with.

Further, affiant sayeth naught.

_____
Julie Patrick

Sworn to before me and subscribed in my presence this 12th day of April, 2004.

_____
Notary Public

3