UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **WALTER W. THIEMANN**, *et al*., | ) Case No. C-1-00-793 |
| Plaintiffs, | ) **(Judge Sandra S. Beckwith)** |
| | ) **(Magistrate Judge Timothy S. Hogan)** |
| -v- | ) |
| **OHSL FINANCIAL CORPORATION,** *et al*., | ) |
| Defendants. | ) |

**THE PROVIDENT AND OHSL DEFENDANTS' MEMORANDUM IN OPPOSITION TO "PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING A FINDING THAT THE STATEMENT THAT THE OHSL BOARD OF DIRECTORS UNANIMOUSLY APPROVED THE ACQUISITION BY PROVIDENT IS A MATERIAL MISSTATEMENT"**

Defendants OHSL Financial Corporation ("OHSL"), Oak Hills Savings & Loan Company, F.A. ("Oak Hills"), Norbert G. Brinker ("Brinker"), Kenneth L. Hanauer ("Hanauer"), William R. Hillebrand ("Hillebrand"), Alvin E. Hucke ("Hucke"), Thomas E. McKiernan ("McKiernan"), Joseph J. Tenoever ("Tenoever"), Howard J. Zoellner ("Zoellner") (collectively the "OHSL Defendants"), and Provident Financial Group, Inc. ("Provident"), Robert L. Hoverson ("Hoverson"), Thomas D. Grote, Jr. ("Grote"), Jack M. Cook ("Cook"), Phillip R. Myers ("Myers"), Joseph A. Pedoto ("Pedoto"), Joseph A. Steger ("Steger"), and Christopher J. Carey ("Carey") (collectively the "Provident Defendants") (the OHSL Defendants and the Provident Defendants are collectively referred to as "Defendants") submit this memorandum in opposition to "Plaintiffs' Motion for Summary Judgment Regarding a Finding that the Statement that the OHSL Board of Directors Unanimously Approved the Acquisition by Provident is a Material Misstatement." (Doc. 315)

**MEMORANDUM IN OPPOSITION**

The OHSL Board of Directors voted to approve the merger with PFGI at a Special Meeting held on August 2, 1999. Directors Hillebrand, Zoellner, Tenoever, Hucke, and Hanauer voted "yes." Director McKiernan was out of the country and did not vote, but he was one of the principal proponents of the merger, he unquestionably supported it, and he even attempted to vote in favor of it from abroad. Director Brinker, who also was completely in favor of the merger and presided over the meeting as Chairman of the Board, did not vote, as was his custom when no tie needed to be broken. The total vote, therefore, was 5-0 in favor of the merger (with the two non-voting directors also clearly in favor). The September 24, 1999 cover letter to OHSL shareholders which accompanied the Proxy Materials stated: "Your Board of Directors unanimously approved the acquisition and believes that it is in the best interest of OHSL stockholders." Plaintiffs claim that sentence was materially misstated for several reasons:

> 1) Because Director Brinker allegedly abstained from voting;
>
> 2) Because Director McKiernan was out of the country and did not vote;
>
> 3) Because Director Hanauer voted his personal shares against the merger one month after the Proxy Materials were sent;
>
> 4) Because Herron resigned from the OHSL Board on July 27, 1999, effective July 30, 1999, allegedly in partial protest of the merger;

Plaintiffs are wrong on each count.

**A.   The 5-0 Vote Was Unanimous Even If Two Directors Did Not Vote.**

On August 2, 1999, the OHSL Board of Directors consisted of seven directors. On that date, the Board voted 5-0 in favor of the merger, with Directors Hanauer, Hillebrand, Hucke, Tenoever, and Zoellner voting "yes."

Director McKiernan did not vote because he was out of the country on August 2, 1999. Had he been in town, it is undisputed that he would have voted in favor of the merger. (08/08/00 Hanauer Dep. Vol. IV, at 743-59; 09/21/01 Herron Dep. Vol. II, at 261-65; 03/22/04 McKiernan Dep. at 81; 04/13/00 McKiernan Dep. Vol. I, at 144) Indeed, when he returned to town, he (along with every other Director present at the August 26, 1999 meeting) voted to approve the minutes from the August 2, 1999 meeting. (The August 2, 1999 and August 26, 1999 minutes were attached as Exhibits C and D to the OHSL and Provident Defendants' Memorandum in Support of Their Motion to Dismiss (Docs. 253 & 254)) Those minutes stated that "the Board concluded that the Definitive Agreement" between Provident and OHSL "was satisfactory," and that "the attached resolutions were unanimously adopted." (*Id.*)

Director Brinker did not vote because, as Chairman of the Board, it was his practice to vote "only when it was necessary to break a tie." (02/05/04 Brinker Dep., at 112; *see also* 08/08/00 Hanauer Dep. Vol. IV, at 743-59; 09/21/01 Herron Dep. Vol. II, at 262-63) This practice is consistent with the foremost treatise on parliamentary procedure, Robert's Rules of Order, which states that the presiding officer of an assembly "can (but is not obliged to) vote whenever his vote will affect the result – that is, he can vote either to break or cause a tie." General Henry M. Robert, *Robert's Rules of Order (Newly Revised)* at p. 392 (10th ed. 2000). Notwithstanding that Brinker did not vote, it is undisputed that he, like McKiernan, was in favor of the merger. (08/08/00 Hanauer Dep. Vol. IV, at 743-59; 04/12/00 Brinker Dep. Vol. II, at 424-25)

It was not a misstatement of fact to characterize the 5-0 vote as unanimous even though two directors, who clearly supported the merger, did not vote. The characterization of the vote is determined by the number of votes cast. So, for example, a "majority vote [. . .] means more

than half of the votes cast by persons legally entitled to vote, excluding blanks or abstentions, at a regular or properly called meeting at which a quorum is present." *Robert's Rules of Order* at p. 387.  It follows that a "unanimous vote" means *all of the votes cast* at a regular or properly called meeting at which a quorum is present.  *All* of the votes cast at the August 2, 1999 meeting were cast in favor of the merger.

This is how the term "unanimously" is used commonly.  A Lexis-Nexis search for articles discussing "unanimous" Senate votes demonstrates this common usage.  For example, in a March 7, 2003 article in the *Washington Post*, the newspaper stated:

> The Senate yesterday **unanimously approved** a treaty to slash U.S. and Russian nuclear weapons deployments by two-thirds over the next decade, another milestone in the disarming of two powers that once threatened each other with horrific attacks.  **The vote was 95-0**.

Helen Dewar, *Senate Backs U.S.-Russian Nuclear Pact*, Washington Post, March 7, 2003, at A1. (Exhibit A)  *See also* Editorial, *Thursday Senate Says No to Spam*, San Jose Mercury News, October 25, 2003, at OP1 (saying the Senate "unanimously approved" the creation of a do-not-spam list; the vote was 97-0) (Exhibit B); *Washington in Brief*, Washington Post, April 16, 2002, at A4 ("The Senate has unanimously approved the nomination of Terrance O'Brien to fill a seat on the 10th U.S. Circuit Court of Appeals.  The Senate voted 98-0 yesterday to confirm the nomination.") (Exhibit C); *Senate Passes $40 Billion Emergency Spending Bill*, Cnn.com, September 14, 2001, at http://cnnstudentnews.cnn.com/2001/US/09/14/congress.terror/ (Senate "unanimously approved a $40 billion emergency spending bill."  The "unanimous" vote was 96-0) (Exhibit D).  It was not a misstatement to say that the 5-0 vote was unanimous, particularly where, as here, the other two directors unquestionably were in favor of the merger.  *See In re Numerex Corp. Sec. Litig.*, 913 F. Supp. 391, 398 (E.D. Pa. 1996) (allegation "is not a material

misstatement since it is not a misstatement in the first place and thus cannot predicate any liability"). *Cf. Management Assistance, Inc. v. Edelman*, 584 F.Supp. 1021, 1027 (S.D.N.Y. 1984) ("'[F]air accuracy, not perfection' conveying a 'sufficiently accurate picture so as not to mislead' is the standard by which statements in securities filings are judged.").

### B. The Board *Did* Believe The Merger Was In The Best Interest Of OHSL's Stockholders.

Plaintiffs have not presented this Court with any evidence that any of the seven members of the OHSL Board of Directors thought the merger was not in the best interest of the OHSL stockholders. Plaintiffs point to the fact that Director Hanauer voted his personal shares against the merger in October – two months after he voted as a Director in favor of the merger, and one month after the Proxy Materials were sent to the shareholders. As Hanauer himself has made clear, however, the vote of his personal shares against the merger "had nothing to do with the transaction" and should be separated from his vote as a Director. (03/29/04 Hanauer Dep., at 284, 313; 01/16/02 Steger Dep., at 98-100)

Hanauer voted his personal shares against the merger because he did not believe the merger was in *his* best interest – specifically, he did not want to retire at age 50. (02/22/00 Hanauer Dep. Vol. I, at 118) He voted as a Director in favor of the merger, because he thought the deal was fair – i.e., was in the best interest of OHSL and its shareholders. (02/22/00 Hanauer Dep. Vol. I, at 118, 128).[1] In fact, Hanauer even acknowledged that, analyzing the merger in his capacity as a Director, he was "enthusiastic" about the deal. (03/29/04 Hanauer Dep., at 313) By separating his personal interests from his duties as a director, Hanauer acted as a proper director should. *See, e.g.*, *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 589, 641 N.E.2d 265, 272 (1994) ("Directors must perform their duties in good faith and in a manner they

---

[1] Hanauer also testified that he "never opposed" the merger. (03/29/04 Hanauer Dep., at 92)

reasonably believe to be in the best interests of the corporation.") Had Hanauer voted against a merger that he thought was fair from the standpoint of OHSL and its shareholders merely because he, personally, did not want to lose his job, he would have been in breach of his fiduciary duty.

Plaintiffs do not cite any case or other authority to support their argument that Hanauer had a duty to disclose to the OHSL shareholders that, although he believed the proposed merger was in the best interest of the shareholders, he intended to vote his personal shares against the merger to keep his job as CEO. Nor do Plaintiffs make any allegation or introduce any evidence that Hanauer had decided to vote his personal shares against the merger before the Proxy Materials were sent to shareholders on September 24, 1999, or at any time prior to the October 24, 1999 shareholders' meetings. Nor do Plaintiffs make any allegation or introduce any evidence that Hanauer ever communicated his voting plans to anyone else at OHSL. (09/21/01 Herron Dep. Vol. II, at 267-68) *See, e.g.*, *Johnson v. E.C. Ernst, Inc.*, 618 F. Supp. 156, 164 (D.D.C. 1985) (denying summary judgment on issue of whether statement in Proxy Materials that agreement was the "result of arm's length negotiations," was misstatement because negotiating parties were friends; plaintiffs "failed to demonstrate either that the "friendship between those individuals caused the negotiations between Bourse and Ernst to be at anything but arm's length or that there was an obligation to disclose the friendship in the Proxy Statement.").

Because Hanauer, as well as the six other members of the Board of Directors, believed the merger was best for OHSL, there was no misstatement of fact.

### C. Herron Was No Longer A Director.

Plaintiffs' final argument is that the September 24, 1999 letter stating that "Your Board of Directors unanimously approved . . ." was a misstatement because Herron was against the merger. It is undisputed, however, that Herron was not a member of the Board of Directors on August 2, 1999, when the Board voted on the merger, because he resigned several days earlier. Because he was not a member of the Board at the time of the critical vote on August 2, 1999, Herron neither voted for or against the merger. His resignation, therefore, does not render the statement, "Your Board of Directors unanimously approved the acquisition," false. All Board members who voted on the merger voted in favor of recommending it to the shareholders.

Plaintiffs suggest that they are entitled to summary judgment because Defendants did not disclose that Herron resigned in protest of the merger. Plaintiffs are wrong for several reasons.

First, the record is clear as to why Herron resigned, and it refutes Plaintiffs' claim. Although Herron suggested at one point that he resigned, in part, in protest,[2] his definitive July 27, 1999 letter of resignation unequivocally states otherwise. Herron admitted he never told his counsel of any objection to or protest of the merger, and never put it in the corporate minutes. (09/21/01 Herron Dep. Vol. II, at 295-304) In his resignation letter, Herron unambiguously stated that he was resigning "[d]ue to increasing responsibilities and time commitments with

---

[2] The Court is familiar with the odd sequence of Mr. Herron's testimony from prior pleadings. When Plaintiffs' counsel, Michael Brautigam, first asked Herron if he was "resigning in part in protest," Herron responded: "I don't know that 'protest' characterizes it. It was a very low profile type of thing." (09/11/01 Herron Dep. Vol. I, at 30). Ten days later, however, Herron's testimony totally flip-flopped without explanation. During the continuation of his deposition, Brautigam handed Herron a copy of the transcript from his first deposition session, asking if there was anything Herron "would like to change" or "amplify with respect to the first day of [his] deposition." (*Id*., Vol. II at 59, 199-202). In response, Herron referred to page 30 and recharacterized his testimony as follows: "[T]he question was had I resigned in part in protest. Being from the 1960s, my immediate image of protest is something a little more violent than what I was involved with here. Protest, of course, is just an expression of disapproval. And in that sense, I certainly resigned in protest." (*Id*. at 61, 199-202). Clearly, this ambiguous and subjective testimony indicates that Herron's changed deposition testimony claiming that his resignation was "in protest" – 26 months after his resignation letter unequivocally admitted that he was resigning due to increased job responsibilities – does not rise to the level of a material "fact" requiring disclosure.

Moreover, contrary to Plaintiffs' suggestion, Herron testified that he did not oppose anything specific to the Provident deal, *per se*; rather, he opposed *any* deal. (09/21/01 Herron Dep. Vol. II, at 289-92)

Michelman, Inc." (Herron's resignation letter was attached as Exhibit B to the OHSL and Provident Defendants' Memorandum in Support of Their Motion to Dismiss (Docs. 253 and 254)) Herron understood that his letter of resignation was the formal corporate record of his resignation and that OHSL was relying upon its contents to provide the reasons why he was resigning. (09/21/01 Herron Dep. Vol. II, at 299-300) The OHSL Defendants would only have had a legal obligation to disclose to OHSL Shareholders that Herron had resigned in protest if Herron had, in writing, stated that he was resigning "because of a disagreement" and requested that the matter be disclosed. *See* SEC Form 8-K, Item 6, subsection (a). Herron did neither. *See, e.g.*, *Phillips v. Kidder, Peabody & Co.*, 933 F.Supp. 303, 321 (S.D.N.Y. 1996) ("[e]ven if the Prospectus had not explicitly revealed the conditions in the industry [. . .] the defendant could not have been held liable for such an omission, because [. . .] it had no duty to report readily available industry trends.").

Second, there is no dispute that Herron's departure from the OHSL Board *was* disclosed. Any OHSL shareholder could have determined that Herron was no longer on the Board by comparing the table published in the Proxy Materials – which does not list Herron as an OHSL Director as of July 31, 1999 – with the Director list published in OHSL's 1998 10-K Annual Report, published a few months earlier and incorporated by reference into the Proxy Materials. (*See* Proxy Statement at 63-65; OHSL 1998 10-K Annual Report at KMK 01036)[3] Herron's resignation and departure from the OHSL Board was thus publicly available and readily determinable information. (09/21/01 Herron Dep. Vol. II, at 283-85)

---

[3] After the Proxy Materials were sent, Herron never claimed it was misleading and never contacted anyone at Dinsmore or OHSL about correcting or changing it. (09/21/01 Herron Dep. Vol. II, at 307-11)

D.     **The Information Is Not Material.**

Even if Plaintiffs are correct that there were misstatements in the September 24, 1999 cover letter, they still must prove that the misstatements are material. "The issue of materiality may be characterized as a mixed question of law and fact . . . ." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *Helwig v. Vencor, Inc.*, 251 F.3d 540, 563 (6th Cir. 2001). An omitted or misstated fact is material if there is "a substantial likelihood that the disclosure of the [omission or misstatement] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC*, 426 U.S. at 449. Summary judgment for the plaintiff is appropriate "[o]nly if the established [omissions or misstatements] are so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *Id*. at 450 (quoting *Johns Hopkins University v. Hutton*, 422 F.2d 1124, 1129 (4th Cir. 1970)); *see also Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (noting that materiality "presents a factual question for a jury to decided"); *In re Control Data Corp. Sec. Litig.*, 9333 F.2d 616, 621 (8th Cir. 1991) ("The trier of fact is uniquely competent to determine materiality, as that inquiry requires delicate assessments of inferences a reasonable investor would draw from a given set of facts.").

None of the allegedly misstated or omitted facts is "so obviously important to an investor, that reasonable minds cannot differ on the question of materiality." *TSC*, 426 U.S. at 450. No reasonable investor would care whether a vote in favor of the merger was 5-0 or 7-0, especially when the two directors who did not vote were undisputedly in favor of the merger. Moreover, a reasonable investor would not care that a director who thought the merger was fair and a good deal for OHSL and its shareholders later decided to vote his personal shares against the deal because he did not want to lose his job as CEO. Finally, a reasonable investor voting on a

merger in October, 1999 would not care that a director resigned three months earlier, before the merger proposal was finalized when that director voiced no formal opposition in his resignation letter and did not even oppose the OHSL Provident merger specifically.

The statement "Your Board of Directors unanimously approved the acquisition and believes that it is in the best interest of OHSL stockholders" contained no misstatements, and certainly no material ones. The Court should deny summary judgment.

Respectfully submitted,

/s/  James H. Greer
David C. Greer
James H. Greer
BEISER, GREER AND LANDIS, LLP
400 National City Center
6 North Main Street
Dayton, Ohio 45402
Tel:  (937) 223-3277
Fax:  (937) 223-6333
Email: dcg@bgllaw.com; jhg@bgllaw.com
Attorneys for OHSL and Provident
Defendants

OF COUNSEL:

James E. Burke
Rachael A. Rowe
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing THE PROVIDENT AND OHSL DEFENDANTS' MEMORANDUM IN OPPOSITION TO "PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING A FINDING THAT THE STATEMENT THAT THE OHSL BOARD OF DIRECTORS UNANIMOUSLY APPROVED THE ACQUISITION BY PROVIDENT IS A MATERIAL MISSTATEMENT" was served upon the following, by ordinary U.S. mail, this 13th day of May, 2004.

| | |
|---|---|
| Michael G. Brautigam<br>Gene I. Mesh<br>Gene Mesh & Associates<br>2605 Burnet Avenue<br>Cincinnati, Ohio 45219-2502<br><br>*Attorneys for Plaintiffs* | John W. Hust<br>Michael E. Maundrell<br>Schroeder, Maundrell, Barbiere & Powers<br>11935 Mason Road, Suite 110<br>Cincinnati, Ohio 45249<br><br>*Attorneys for Dinsmore Defendants*<br><br>James E. Gauch<br>Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001-2113<br><br>*Attorney for Defendant Ernst & Young*<br><br>Michael R. Barrett<br>Thomas W. Breidenstein<br>Barrett & Weber<br>500 Fourth & Walnut Centre<br>105 East Fourth Street<br>Cincinnati, Ohio 45202-4015<br><br>*Attorneys for KMK Defendants* |

                                                /s/ James H. Greer
                                                James H. Greer

1264822.2