FILED
JAMES BOHMAN
CLERK

04 MAY 18 PM 12: 22

WEST DIST CINCINNATI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Walter W. Thiemann, et al. | : | Case No. C-1-00-793 |
| on behalf of himself and of | | |
| all others similarly situated, | : | Judge Sandra S. Beckwith |
| | | |
| Plaintiff, | : | Magistrate Judge Hogan |
| | | |
| vs. | : | **Oral Argument** |
| | | **Requested** |
| OHSL Financial Corporation, et al. | : | |
| | | |
| Defendants. | : | |

---

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO
COMPLETELY DISQUALIFY KMK, TO HOLD KMK IN CONTEMPT, AND
FOR SANCTIONS (DOC. NO. 314)**

I.      **INTRODUCTION**

By Order of October 20, 2003, this Court disqualified Keating, Muething &
Klekamp, LLC (hereinafter "KMK") as trial counsel and indicated that it could only
proceed with the consent of its clients. (Doc. No. 215).    Since then, the conduct of
KMK's clients, and now overwhelming evidence before this Court, supports the
conclusion that this did not occur.

First, the OHSL and Provident Defendants neither rebut Plaintiffs' deposition
testimony nor the case law cited in support of their proposition. The deposition testimony
clearly illustrates that the OHSL Defendants are confused not only about their
representation in this case, but are ignorant as to all aspects of the case. Not one of these
citations has been rebutted and the OHSL and Provident Defendants have conceded their
ignorance in this case.  Additional evidence is now building that the OHSL Defendants

1

may not be the only ones who are confused and unable to provide informed consent in this case.

The Provident Directors are also proving to be equally uninformed as to the basic facts of this litigation. Recently deposed Provident Director Joseph Steger is equally ignorant of even the most basic facts of the litigation including, but not limited to, the facts of the case, who the defendants are, who the plaintiffs are, and who counsel is for said parties. Consequently, Defendant Steger, like the OHSL Defendants, is also simply unable to give his informed consent. (*See*, Deposition excerpts of Defendant Joseph Steger, Attached as Exhibit A). Similarly, Provident Director Joseph Pedoto, deposed for the first time on May 10, 2004 showed similar confusion as to the parties and, thus, is also utterly unable to provide his informed consent to KMK's continued representation.[1]

Similarly, the Opposition Brief only cites to two cases that are easily distinguishable, and ignores the scores of other cases cited by the Plaintiffs. The Plaintiffs could perhaps understand why the OHSL and Provident Defendants would choose to focus on two cases if they were directly applicable and factually on point, but this is definitely not the case. These cases are tangential at best to the facts of this case, and certainly do not refute the main arguments made against Defendant KMK. Is this really the best that the OHSL and Provident Defendants could do to refute these serious claims against Defendant KMK?

Second, the unexpected withdrawal of the respected law firm of Graydon, Head & Ritchie ("GH&R") adds further support to Plaintiffs' Motion to Completely Disqualify KMK. As discussed in greater detail in Plaintiffs' opening Motion to Completely

---

[1]  Director Joseph Pedoto's transcript will be filed as soon as it becomes available.

Disqualify KMK, GH&R withdrew within days after Mr. Pinney attended the deposition of Defendant Norbert Brinker and witnessed firsthand his near complete lack of comprehension of not only the facts of the case, but also of his representation in this case. Despite the fact that Mr. Pinney of GH&R was present at the deposition, sitting approximiately ten feet from Mr. Brinker, and made objections on his behalf during the deposition, Defendant Brinker still answered that GH&R had neither been retained, nor was presently representing him, in this action. Undoubtedly this was very disturbing to Mr. Pinney and, undoubtedly, led to the withdrawal of GH&R which occurred a few days later.  Similarly, when the law firm of Bieser, Greer and Landis ("BG&L") substituted as counsel for GH&R, Plaintiffs presented additional evidence that the OHSL and Provident Defendants were in no better position to provide their informed consent to this substitution since they also had no understanding of BG&L's role in this case.

The OHSL and Provident Defendant attempted to minimize the role of GH&R by stating that GH&R was only involved in the parallel *Meier* action.  This is false. However, in actuality, the OHSL and Provident Defendants are trying to offer an alternative explanation for why GH&R's role was so minimal.  In reality, the reason for GH&R's minimal role in the litigation was that it was actually being controlled by Defendants Provident and KMK, as is now admitted in the record.

The OHSL and Provident Defendants have admitted in their opposition brief that Defendant Provident, through Defendant KMK, was directing the course of the litigation in this case. (Doc. No. 325). This is particularly significant since Defendant KMK has used "choice of counsel" as one of its main reasons for why it is important that the OHSL Defendants be able to retain Defendant KMK as their counsel in this action. (Doc. No.

3

121).  Now, that it is becoming increasingly clear that the OHSL Defendants have never

had any voice in the choice of their counsel, this argument is without merit and provides

further support for the granting of Plaintiffs' Motion to Disqualify KMK.

Third, Plaintiffs' Motion to Disqualify because the OHSL and Provident

Defendants have not only conceded compelling arguments of the Plaintiffs by ignoring

them in their brief in opposition, but they have made further misrepresentations to this

Court.  The OHSL and Provident Defendants did not answer the Plaintiffs' arguments

that the OHSL Defendants could not have provided their informed consent because they

were obviously confused, that the OHSL Defendants did not participate in the choice of

their witnesses, and that the OHSL Defendants did not have an unfavorable opinion of

Walter Thiemann.  This silence adds further support for Plaintiffs' Motion to Disqualify

KMK.

Similarly, the OHSL and Provident Defendants made several misstatements of

fact in its Brief in Opposition.  These include the following:

1.  The new *Meier* lawsuit was an "exact duplicate of the proposed amended complaint that had been rejected by Judge Hogan." (Doc. No. 325 at p.2).

1.  ". . .the OHSL and Provident defendants knowingly consented to KMK's ongoing role in this matter and to the ultimate substitution of Graydon, Head & Ritchie ("GH&R"), then to Bieser, Greer & Landis as trial counsel in this action." (Doc. No. 325 at p. 2)

3.  "Defense counsel produced to Plaintiffs' counsel redacted copies of the consent letters, but has not and will not produce to Plaintiffs unredacted copies revealing the substance of attorney client communications." (Doc. No. 325 at p. 5).

3.  "The confusion is compounded by the fact that Plaintiffs' counsel spent a majority of his time in the recent depositions of OHSL directors Brinker, Hucke, Tenoever, Zoellner, McKiernan and Hanauer asking questions about the substition of counsel—and not about any of Plaintiffs' substantive claims."  (Doc. No. 325 at pp. 4-5).

(Doc No. 325).

In sum, this litigation which began again in earnest after years of fits and starts, and which Magistrate Judge Hogan has aptly described as "chaos," is not going to be brought under control until KMK's representation and/or control of multiple camps of mutually antagonistic defendants is ceased. GH&R's withdrawal is strong evidence that it has already realized this, but it is not the only evidence. The failure of the OHSL and Provident Defendants to rebut Plaintiffs' arguments and cited deposition testimony, and the confirmed prior misrepresentations by Defendant KMK to this Court, both necessitate that this Court completely disqualify KMK, hold KMK in contempt, and sanction them. Consequently, the Plaintiff Class respectfully submits this reply brief in further support of the Motion to Completely Disqualify KMK, to Hold KMK in Contempt, and for Sanctions. (Doc. No. 314).   Plaintiffs further requests that a hearing be held on this matter.

I.   **ARGUMENT**

    A.   **The OHSL and Provident Defendants Did Not Refute One Citation Cited by the Plaintiffs in Their Motion to Disqualify.**

Plaintiffs' forty-six (46) page Motion is unrebutted in the record. The minimalist opposition papers (Doc. No. 325) do not even attempt to distinguish the law or deposition testimony cited by Plaintiffs which confirms the inability of the OHSL Defendants to provide informed consent in this case, but merely states that any "confusion about the substitution exhibited in depositions of the OHSL Directors was caused by the age of the OHSL Directors and the manner in which Plaintiffs' counsel conduct these depositions." (Doc. No. 325), yet not one example of a problematic or confusing question is provided.

This response is not only unquestionably weak, but it is also fundamentally contrary to the OHSL and Provident Defendants' position in this Brief in Opposition.

### 1.    The OHSL Defendants are Unquestionably Ignorant as to Their Representation in this Case.

The OHSL and Provident Defendants essentially concede confusion on the part of the OHSL Defendants. (Doc. No. 325 at p.2). At this point, the OHSL and Provident Defendants are merely trying to deflect responsibility for this confusion away from Defendant KMK.[2] The OHSL and Provident Defendants first attempt to do so on the basis of their age. However, the end result is still the same. Whether age or a lack of being informed of the facts by Defendant KMK is the cause of the OHSL Defendants' confusion, the fact remains that the OHSL Defendants are confused. Consequently, the OHSL Defendants are incapable of consenting to KMK's continued representation in this case, GH&R's withdrawal from this case and/or BG&L's appearance as counsel in this case.

Further, even more disturbing is that the OHSL Defendants are largely unaware of their representation and the facts of this case despite the claim by the OHSL and Provident Defendants have stated that Defendant KMK had had "several face-to-face" meetings with the OHSL Defendants on this topic. (Doc. No. 325). Consequently, if after such tutelage the OHSL Defendants still do not understand the most basic facts of this

---

[2] Although this Brief in Opposition is captioned as being submitted by the OHSL and Provident Defendants, it is clear from the arguments submitted that the only one benefiting from these arguments is Defendant KMK. It is difficult to think of any other scenario in which clients would provide excuses for why their counsel failed to inform them of not only the facts of this case, but the problems which are inherent in that counsel's continued representation of said clients.

case or their representation in it, Plaintiffs submit that the most appropriate thing to do would be to appoint *guardians ad litem* for the OHSL Director Defendants at issue.

Finally, it should be noted that the OHSL and Provident Defendants continually use the term "knowing consent" as to "informed consent." Plaintiffs submit that the reason is obvious. Although some of the OHSL Defendants acknowledged that they "knew" that they signed some sort of consent form which enabled Defendant KMK to remain as counsel for the OHSL and Provident Defendants in this case, it is also equally clear from the deposition testimony that none of them provided "informed" consent since they lacked a basic understanding of all facts and aspects of the case. Consequently, since "informed" consent is the only type of consent which has any meaning at all, this Court should not be fooled by the OHSL and Provident Defendants' attempt to interchange these words.

### 2.    Plaintiffs' Counsel Did Not Confuse the OHSL Defendants in this Case.

The second excuse given by the OHSL and Provident Defendants is that the confusion was the result of the method of questioning by Plaintiffs' counsel. However, this explanation does not hold water. With counsel from either GH&R or BG&L in the room with the OHSL Director Defendants during their depositions, there is no excuse for the OHSL Defendants to not be able to answer the most basic questions about who the parties are, and who is representing them. Further, the OHSL and Provident Defendants offer no evidentiary support for the proposition that the OHSL Defendants' confusion was the result of Plaintiffs' counsel's questioning. If it was so problematic, it seems that it would be easy for the OHSL and Provident Defendants to provide just one example of this. However, there is none. Rather, Plaintiffs can only assume that the OHSL and

Provident Defendants merely throw the deposition transcripts at the Court and expect this Court to review all of the deposition transcripts in an effort to find evidentiary support for their claim. This is not only improper and disrespectful, but it also a fruitless endeavor in this case since no such examples exist.

Thus, Plaintiffs' Motion should be granted because the OHSL and Provident Defendants have not provided any evidence of informed consent, but rather admitted the OHSL Defendants' confusion as to the basic facts of this case and their representation.

**B.     The OHSL and Provident Defendants' Explanation of the Roles of GH&R and BG&L are Merely Attempts to Distract the Court from the True Issues Before This Court.**

The unexpected withdrawal of GH&R is further evidence that things are not as they were represented by the OHSL and Provident Defendants. As stated above, GH&R unexpectedly withdrew shortly after Mr. Pinney attended the deposition of Defendant Norbert Brinker and witnessed firsthand his near complete lack of comprehension of not only the facts of the case, but also of his representation in this case.  The OHSL and Provident Defendants do not dispute this allegation, but rather argue that GH&R had a minimal role in the litigation based upon the fact that there was not much activity in the *Meier* case because it was an exact duplicate of the *Thiemann* case. (Doc. No. 325 at p. 3).  As a result, the OHSL and Provident Defendants go into another tortured recitation of the filing of the Plaintiffs' First Amended Complaint in *Thiemann* and the Complaint in *Meier*.  However, the recitation is nothing short of a fairly tale.

The OHSL and Provident Defendants' argument regarding these filings is littered with the false statements described in the Introduction above, and constitutes a false interpretation of Magistrate Judge Hogan's Order (Doc. No. 110).  It is clear that Defense

counsel has not read the *Meier* complaint since they falsely state that it was "an exact duplicate" of the First Amended Complaint in *Thiemann.* (Doc. No. 325). The result is the same in relation to Magistrate Hogan's Order. If they had read this Order, they would have learned that the Order that they referred to, which reverses the position Magistrate Judge Hogan took seven months before, was made exclusively based on the then-existing timing of the case. The reason for Magistrate Judge Hogan's denial of leave to amend in Doc. No. 110 was entirely because of the then-existing trial schedule. This trial schedule was vacated by the District Court days later in Doc. No. 115, thus completely eliminating the reasoning for denying leave to amend. Additionally, the Order, which has since been expressly overruled by the District Court (*See*, Doc. No. 215), inexplicably fails to mention the seven month gap between the time when Magistrate Judge Hogan permitted the filing of an amended complaint (January 2002) and his later rejection of the deemed motion for leave to amend (August 2002). Consequently, the argument that GH&R's role was always intended to be minimal since the *Meier* Complaint was identical to the *Thiemann* Complaint is without merit, and should be dismissed outright.

Thus, given the blatant falsity behind this argument, it must be asked why the OHSL, Provident, and KMK Defendants always feel the need to go through this procedural history no matter how unrelated it is to the facts of the particular motion at issue. The only reason for this can be that the OHSL, Provident and KMK Defendants perceive this issue as a weakness for Plaintiffs and a distraction from the substantive arguments which Plaintiffs are trying to present to this Court.[3] No matter how unfounded

---

[3] Plaintiffs' counsel makes absolutely no apologies for bringing a similar action in the form of the *Meier* litigation. The reasons that this was necessary should be obvious: the lead defense of all defendants to the new allegations related to the restatement and other

this belief may be, Plaintiffs are convinced that such is the situation in the present case. In particular, this argument of the *Meier* and *Thiemann* Complaints being identical, and that GH&R's anticipated role in this litigation was consequently minimal, was just an attempt by the Defendants Provident and KMK to sidestep the fact that the true reason that GH&R's role in this litigation was minimal was that Defendants Provident and KMK were controlling the defense of this litigation. GH&R refused to be KMK's shill.

**C.    The OHSL and Provident Defendants' Brief in Opposition Confirms that Defendants Provident and KMK are Controlling the Defense of This Litigation.**

Plaintiffs have long believed that Defendants Provident and KMK were controlling the defense of this litigation and it was confirmed in this Brief in Opposition. In particular, the OHSL and Provident Defendants admitted that it was only **"Provident and its counsel"** that has been making the decisions for the OHSL and Provident Defendants in relation to this litigation. (Doc. No. 325).[4] While it may or may not be true that Provident, as the successor entity, "is responsible to provide a defense for the OHSL and Provident Defendants (including the OHSL Directors)" (Doc. No. 325, at p. 3), it does not follow that Provident should independently call the shots and control counsel so as to ultimately protect itself. This is exactly analogous to an entire Mafia family being indicted. While it may be in the Godfather's interest to select and pay for all defense counsel, this is never permitted because Courts have recognized that control of the

---

allegations relate first and foremost to the statute of limitations. With the applicable statute of limitations approaching, Plaintiffs' counsel took a logical path in an attempt to preserve those claims. There was really no choice.

[4] James Whittaker, Esq., General Counsel for Provident, was until recently a KMK attorney, and his fingerprints appear on numerous documents related to issues in this case. As has been the case from inception, it is difficult to ascertain where KMK ends and Provident begins. This is yet another example.

defense counsel easily leads to improper control of the litigation. Although Plaintiffs are not likening Defendants Provident and KMK to the Mafia, the analogy is an apt one given the following statement made by the OHSL and Provident Defendants in their Brief in Opposition:

> "As a result, it [Provident] has consistently taken the lead in choosing and retaining counsel for the other Defendants and in providing direction to Defense counsel."

(Doc. No. 325 at p. 3). This activity continued after the unexpected withdrawal of GH&R. At that point, it was once again Defendants Provident and KMK who decided to hire BG&L, as illustrated by the following passage:

> "Subsequently, **Provident and its counsel** met to consider whether another firm might be better suited to assume the Role of trial counsel for the Provident and OHSL Defendants, given the rather unusual circumstances which now exist. After several meetings and much discussion, it was decided to recommend the firm of Bieser, Greer & Landis to work with KMK during pretrial phases of the case and then assume the sole responsibility of trial counsel at trial."

(Doc. No. 325 at p. 4, emphasis added). Although the OHSL and Provident Defendants may say "it was decided" in an attempt to deflect attention away from the fact that Defendants Provident and KMK are making all defense decisions in this case, the preceding sentence gives this fact away. These two statements, taken in conjunction, remove all doubt as to what is transpiring in this case. Defendants Provident and KMK are controlling all aspects of the defense of this litigation.

This is also confirmed by the fact that Defendant KMK seemingly has no representation in this case. Attorneys for Defendant KMK have been noticeably absent from depositions. Consequently, there is no one present in this case with the ability to reign in Defendant KMK's control of the defense of this litigation other than this Court.

KMK may recognize that it would be unnecessarily wasteful and duplicative for KMK's counsel to be present at the depositions since KMK as defense counsel is clearly representing the interests of KMK as defendant, it would be economically irrational for KMK's attorneys to appear. But this penchant for frugality is inconsistent with its unfettered depletion of the OHSL Defendants' multi-million dollar insurance policy.

However, as stated above, although this scenario creates at the very least a conflict of interest, it also exposes a misrepresentation made by Defendant KMK to this Court. In their opposition to Plaintiffs' Motion to Disqualify KMK (Doc. No. 121), Defendant KMK falsely stated that the OHSL and Provident Defendants should not be denied counsel of **their** choice, and that both the OHSL and Provident Defendants had retained the KMK firm. This statement was knowingly false, and is indicative of the actions that KMK will take to remain in their position of control, and to benefit Defendants KMK and Provident to the detriment of the OHSL Defendants. Now the OHSL and Provident Defendants admit that the OHSL Defendants have not been involved in decisions regarding counsel, but rather that it has been imposed on them by Defendant Provident, who has also **"taken the lead...in providing direction to counsel."** (Doc. No. 325, at p. 3, emphasis added). This position clearly cannot be reconciled with Defendant KMK's earlier position that the OHSL and Provident Defendants had sought out KMK and would be severely harmed by being denied "counsel of their choice" if KMK were disqualified. (Doc. No. 121). While Plaintiffs understand why this Court was sensitive to any prejudice that complete disqualification might have on the Defendants in its disqualification Order, this new evidence, which confirms Plaintiffs' previous suspicions, necessitates that this Court take a fresh look at

this issue, completely disqualify KMK, hold them in contempt, and sanction them. Thus, based upon the foregoing, it can only be concluded that Defendants Provident and KMK are controlling not only their own defense in this case, but that of the OHSL Defendants as well. As a result, since the OHSL Defendants are not in control of their own destiny, and this is in direct contravention of Defendant KMK's representations to the Court regarding OHSL's choice of counsel, Plaintiffs' Motion to Completely Disqualify KMK, Hold KMK in Contempt, and Sanction KMK, should be granted.

D.    **There is Additional Support for the Disqualification of KMK in the OHSL and Provident Defendants' Brief in Opposition (Doc. No. 325).**

1.    **BG&L Refuses to Correct Statements in Its Brief Which It Knows to be False.**

The OHSL and Provident Defendants have not even made an effort to get the facts in their Brief in Opposition correct. Prior to the filing of this Reply Brief, Plaintiffs' counsel pointed out several false statements in Plaintiffs' Brief in Opposition to BG&L, and gave it an opportunity to correct them. (*See*, Brautigam-Greer correspondence, attached as Exhibit B). However, BG&L turned down Plaintiffs' invitation to correct the record. Consequently, the only available inference is that it was the intent of the OHSL and Provident defendants to mislead the Court. In particular, the OHSL and Provident Defendants have attempted to deceive the Court on the following issues:

a.    **The *Thiemann* and *Meier* Complaints are Not the Same.**

First, the OHSL and Provident Defendants falsely stated that the First Amended Complaint in *Thiemann* and the *Meier* complaint was an "exact duplicate." (Doc. No. 325, at p.2). As this Court knows, these complaints are far from identical, in that the

*Meier* complaint contains far greater specificity with respect to the accounting allegations[5].

      **b.**     **The OHSL and Provident Defendants Never Provided Their Informed Consent to Defendant KMK.**

      Second, there is no evidence to support the proposition that the OHSL and Provident Defendants "knowingly gave their written consent to the representation of GH&R as trial counsel, and to the continuation of KMK as counsel for pretrial matters." (Doc. No. 325, at p.5). In fact, as fully briefed and supported in excruciating detail in Plaintiffs' Motion to Disqualify, quite the opposite is true. The OHSL and Provident Defendants only respond by stating that the "knowingly gave their written consent to the representation of GH&R, the later substitution of counsel of Bieser, Greer & Landis as trial counsel, and to the continuation of KMK as counsel for pretrial matters." (Doc. No. 325 at p5). However, BG&L's act of stating this, without more to support it, is not enough to make it so. Further, as argued above, "knowing consent" is different from "informed consent," and the OHSL and Provident Defendants never state that they provided their informed consent to Defendant KMK.

      Additionally, the letters raised by the OHSL and Provident Defendants to not provide this additional evidentiary support, but rather raise more questions than they answer. First, Defense counsel provided Plaintiffs with one of the letters provided to their clients, and Plaintiffs attached that letter and related correspondence to the opening Motion to Disqualify. Second, the letters illustrate how differently situated the majority

---

[5] That BG&L is new to the case cannot excuse these misrepresentations. As officers of the Court, they have at least some minimal duty to confirm the facts that they put in pleadings. Clearly they have not done so. Worse, they attempt to use these false facts as a blunt instrument to attack Plaintiffs and their counsel, even though Plaintiffs' counsel pointed out these false statements and offered BG&L an opportunity to correct them.

of the individual OHSL Defendants are from Defendant Hanauer. Indeed the signature pages—the first which has the signatures of all but Mr. Hanauer—suggests that a meeting took place where all the Defendants except Defendant Hanauer signed the document. This separate signature lends significant credence to Plaintiffs' repeated allegation that Defendant Hanauer is understandably adverse to the other Defendants and/or harbors bad feelings towards them.[6]    In any event, in a situation such as this, it is the norm for an inside director such as Defendant Hanauer to obtain his own independent counsel because it is usually recognize that these roles are potentially adverse. This is especially true when the testimony adduced to date clearly indicates that at least some of the OHSL defendants, as well as Provident and KMK Defendants, have testified against Defendant Hanauer.

However, despite this fact, Defendant Hanauer has not done so. Rather, at his deposition, Defendant Hanauer attempted to articulate an utterly bizarre new standard for when a conflict of interest might arise between himself and Defendant KMK and necessitate new counsel. In essence, Defendant Hanauer stated that he might consider new counsel if KMK mounted an assault against him. In particular, he discussed the issue as follows:

> Q.    If the firm of KMK were providing testimony that's adverse to you, would you have a problem with that?
>
> (Objection omitted)
>
> A.    I believe if that—if there firm at some point goes on an offensive against me, then I believe Mr. Greer and I will have to address that.
>
> Q.    Why do you believe that?

---

[6] These bad feelings are confirmed at pages 90 to 95 of the deposition of former OHSL director Al Hucke.

A.    Well, I would think that anytime that you are – that an individual or an institution is coming at with you some type of litigation or whatever and this litigation or allegations are not true, then you're entitled to defend yourself.

. . .

Q.    Now, how would you know if KMK attorneys or the firm has gone on the offensive against you, to use your words, if you haven't read the deposition testimony?

(Objection omitted).

A.    Counselor, I said if I became aware of it. I didn't say that they hadn't. Maybe they have. I said, if I become aware that all of a sudden we're adversaries, then I'm probably going to have to call Mr. Greer and say --

MS. ROWE:   I'm going to instruct you not to answer.

(Hanauer dep. pp. 252-253).

c.    **Plaintiffs' Counsel Did Not Solely Question the OHSL Defendants Regarding Substitution of Counsel Issues.**

Third, the OHSL and Provident Defendants argue that Plaintiffs' counsel only questioned the OHSL Defendants about the substitutions of counsel and not about any of Plaintiffs' substantive claims. (Doc. No. 325 at pp.4-5). There is a vague reference to deposition transcripts, but once again no actual citations provided to support this allegation. Since Plaintiffs have cited to several of the relevant portions of the deposition testimony in support of their arguments, as well as already attached all relevant transcripts in their entirety so the testimony cited would not be subject to false claims that it has been taken out of context, the OHSL and Provident Defendants' response is not enough to overcome Plaintiffs' argument.

d.    **The Plaintiffs are Not Obsessed with Defendant KMK.**

Fourth, in the same vein, the OHSL and Provident Defendants' argue that the Plaintiffs are obsessed with Defendant KMK, and that they are focusing on Defendant KMK to the exclusion of all relevant issues in this case. Once again the OHSL and Provident Defendants cannot back this up. This is mainly because the Plaintiffs filed Plaintiffs' Motion for Summary Judgment Regarding a Finding that the Statement that the OHSL Board of Directors Unanimously Approved the Acquisition by Provident is a Material Misstatement (Doc. No. 315) shortly after filing its Motion for Partial Summary Judgment on Restatement Issues (Doc. No. 249). Plaintiffs have also continued to take the depositions of the OHSL and Provident Defendants as well as the depositions of other relevant witnesses.  In short, Plaintiffs have fought long and hard to keep this case on the rails and moving forward. The only thing that has consistently slowed this case down is the confusion that has been created by KMK's status as a Defendant and as counsel of parties with inconsistent and conflicting interests, as well as shadow representation of KMK itself. Plaintiffs had no choice but to attempt to remove this obstacle from this case.

Thus, although the OHSL and Provident Defendants submit many arguments in response to Plaintiffs' Motion to Completely Disqualify, a quick review of these arguments reveals that none of them possess any substance, but are merely attempts to distract this Court from the true issues before it.

**3.      The Brief in Opposition Glaringly Ignores Compelling Arguments Presented by Plaintiffs.**

For all of the false arguments made by the OHSL and Provident Defendants, it is striking that they have completely ignored some of the most compelling arguments made against them. Although the OHSL and Provident Defendants obviously hope that this Court will accept its unsubstantiated premise that this is "just the latest odd filing" by

Plaintiffs, and ignore the forty-six page motion supported by hundreds of pages of attachments, testimony and relevant case law, this is an arrogant and risky approach given the merit and strength of the Plaintiffs' arguments. But perhaps they just have nothing to say.

**a.    The OHSL and Provident Defendants Never Admit to
Providing Informed Consent to Defendant KMK.**

First and most importantly, as discussed above, the OHSL and Provident Defendants never state that they provided their informed consent in this case. The phrase "informed consent" appears only once in the opposition brief, at page 2, where Defendants quote Plaintiffs' Motion to Disqualify. (Doc. No. 325 at p.2). Instead of proving that they provided their informed consent, the OHSL and Provident Defendants attempt to interchange "informed consent" for "knowing consent." They also present to the Court two heavily redacted letters, and invite the Court to conduct an in camera inspection. However, given the deposition testimony of the OHSL Defendants which has been meticulously documented by the Plaintiffs, the OHSL and Provident Defendants are obviously incapable of giving informed consent, and no letters can change this. Further, it is never explained why Defendant KMK should be excused from compliance with Local Rule 83.5, or how anything less than "informed consent" is consistent with this Court's disqualification Order.

Further, additional testimony is still coming in to support this argument. Plaintiffs' opening Motion to Disqualify is now supplemented by the testimony of PFGI director Joseph Steger, Ph.D. Defendant Steger, a Provident director and Chairman of Provident's Audit Committee, is also shockingly unaware of basic facts of the *Thiemann* litigation. Despite two opportunities to be deposed and communicate his knowledge of

18

the facts of this case, Defendant Steger did not know that he was a Defendant in this case in both January of 2002 and in May of 2004. Indeed, Defendant Steger had a surprisingly low level of knowledge of this litigation.  Since Defendant Steger is ignorant of even the most basic facts of the litigation, including who the defendants are, the plaintiffs are, and who counsel is, it is also simply not possible for Defendant Steger to give his informed consent.[7].

     **b.**     **The OHSL and Provident Defendants Do Not Deny that They Did Not Know Who the Witnesses Would be in this Case.**

Second, the OHSL Defendants do not deny Plaintiffs' argument that the OHSL Defendants did not know who the witnesses will be in this case and that they did not select who their witnesses would be.  In a footnote, Mr. Burke and KMK have previously represented to this Court that the OHSL Defendants had no problem with KMK serving as witnesses in this case, and that they—the Individual Defendants--selected who the witnesses would be.  (Doc. No. 121, fn. 6).  Once again, the OHSL and Provident Defendants must assume that they cannot overcome the clear deposition testimony of the OHSL Defendants because the OHSL and Provident Defendants did not even attempt to try and rebut this argument. Consequently, it must be accepted by this Court as true, which means that KMK has knowingly made false statements to the Court.

     **c.**     **The OHSL and Provident Defendants Do Not Deny that Defendant KMK Misled the Court as to the OHSL Defendants' Opinion of Plaintiff Walter Thiemann.**

---

[7] As Plaintiffs indicated in their opening brief, if the situation were reversed, Defendants and their counsel would not have any chance of being found adequate class representatives or class counsel, but would instead by laughed out of Court.  Plaintiffs respectfully submit that it may be helpful for the Court to consider this as one factor among many in evaluating KMK's position with respect to these Defendants.

Finally, the OHSL Defendants also do not deny that they misled the Court as to the OHSL Defendants' opinions of Walter Thiemann. Defendant KMK thought it would be helpful to its cause if it could discredit Plaintiff Thiemann. However, Defendant KMK forgot to let its clients into this plan and they contradicted Defendant KMK's position with their deposition testimony.

Similarly, it must be noted that if there was even the vaguest whiff of misconduct on the part of Plaintiffs' counsel, the OHSL and Provident Defendants would loudly parade it before the Court. The fact that the OHSL Defendants have failed to do so can only confirm that there is no misconduct to highlight, and no misconduct at all.

### E.    The Court Can Remove Any Ambiguity by Holding a Hearing

Plaintiffs respectfully request that the Court hold a hearing on the issue of Plaintiffs' Motion to Disqualify. Plaintiffs respectfully renew this request at this time. Holding a hearing is the most efficient use of judicial resources, and will allow the Court to make an informed decision on the state of, *inter alia*, the condition and degree of understanding of the OHSL defendants. If the Court does choose to hold a hearing, the possibility of *guardians ad litem* would immediately be raised. Further, should the Court appoint *guardians ad litem* for some of the OHSL individual defendants, the first thing that such a guardian would do would be to retain truly independent counsel, and remove these OHSL Defendants from their representation by Defendant KMK.

## II.    CONCLUSION

Thus, for the foregoing reasons, the Plaintiff Class respectfully requests that the motion to completely disqualify KMK, to hold KMK in contempt, and for sanctions be granted in its entirety.

Respectfully Submitted,

**GENE MESH & ASSOCIATES**

Dated: /8 May 2004

By:

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800 (Telephone)
(513) 221-1097 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply Brief in Further Support of Motion to Completely Disqaulify KMK was served this 18th day of May 2004 as follows:

**BY HAND DELIVERY**
James E. Burke, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

Thomas W. Breidenstein, Esq.
BARRETT & WEBER
500 Fourth & Walnut Centre
105 East Fourth Street
Cincinnati, OH 45202-4015

**BY FIRST CLASS MAIL**
John Hust, Esq.
SCHROEDER, MAUNDRELL,
        BARBIERE & POWERS
Suite 110, Governor's Knoll
11935 Mason Road
Cincinnati, OH 45249

James E. Gauch, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Jamie Greer, Esq.
BIESER, GREER & LANDIS
400 National City Center
6 North Main Street
Dayton, OH 45402

_____
Stephanie A. Hite