

FILED
JAMES BONINI
CLERK

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**  04 MAY 26 AM 11:20
**WESTERN DIVISION**

| | | |
|---|---|---|
| Walter W. Thiemann, | : | Case No. C-1-00-793 |
| on behalf of himself and of | | |
| all others similarly situated, | : | Judge Sandra S. Beckwith |
| | | |
| Plaintiff, | : | Magistrate Judge Hogan |
| | | |
| vs. | : | **Oral Argument** |
| | | **Requested** |
| OHSL Financial Corporation, et al. | : | |
| | | |
| Defendants. | : | |

---

## REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON UNANIMITY ISSUES (DOC. NO. 315)

Q.   If I understood your testimony correctly a minute ago, you said that you did not believe that this transaction was in the best interest of Oak Hills stockholders, correct?

A.   In --- yeah, that was your question. Yes, that's what I said.

Q.   Then did it both you that this document was going out, saying the opposite of what you felt, what you believed?

A.   I did not dwell on the second piece of that, of that sentence. Couched the way you've just worked through it, I don't care for that piece of the document, but I did not dwell on, on beliefs that it - - at that point, you know, it doesn't say unanimous there. If we're getting down to, you know, we unanimously approved, but it is a true statement that the Board believed.  It was not the whole Board that believed that.

Q.   Well, you were a part of the Board at that time, correct?

A.   That's--absolutely.

Q.   And you did not believe the second part of that sentence, specifically you did not believe that [the merger] is in the best interest of Oak Hills' stockholders, correct?

A.   That was my opinion, yes, sir.

(Hanauer dep. *Nolte*, Vol. I, p. 26, Attached as Exhibit A).

## I.    **INTRODUCTION**

The Opposition Brief filed by the OHSL and Provident Defendants can be considered nothing less than a minimalist document and effort. Although the Plaintiffs are appreciative of the fact that this is the first document in recent memory which focuses on the actual issues rather than Plaintiffs' counsel's alleged shortcomings, this document shows how little the OHSL and Provident Defendants actually have to argue when they abandon this strategy.

First, the OHSL and Provident Defendants did not think it necessary to retain an expert to support their own arguments or to rebut the testimony of Plaintiffs' experts. Rather, Plaintiffs have chosen merely to attach four different internet Articles in support of their Brief in Opposition which are in violation of Fed.R.Civ.P. 56(e) and should be accordingly stricken and disregarded by this Court.[1]  Although this approach may have saved the OHSL and Provident Defendants a great deal of time and money in the short run, Plaintiffs submit that it will not in the long run since the net result is that the OHSL and Provident Defendants have no evidence in the record which rebuts the testimony of Plaintiffs' multiple experts.[2]  Although the OHSL and Provident Defendants try to

---

[1] *See*, Plaintiffs' Motion to Strike Exhibits Submitted in Support of The Provident and OHSL Defendants' Memorandum in Opposition to "Plaintiffs' Motion for Summary Judgment Regarding a Finding that the Statement that the OHSL Board of Directors Unanimously Approved the Acquisition by Provident is a Material Misstatement" (Doc. No. 315.)

[2] In their opposition to Plaintiffs' Motion for Summary Judgment on Issues Related to the Restatements (Doc. No. 249), Defendant Provident similarly did not hire an independent expert to opine on relevant issues, but instead claimed that it did not have enough time and would do so in the future.  As in this case, it was Provident Defendants' choice to not take time or effort to secure an expert to respond to these motions for summary judgment.

manipulate and torture the language of the Proxy Materials without any expert testimony to support their contentions, the OHSL and Provident Defendants cannot overcome the Plaintiffs' linguistic expert's testimony regarding the plain language of the Proxy Materials, or the common sense interpretation of these Proxy Materials which this Court can reach without the assistance of any expert testimony.

However, despite the OHSL and Provident Defendant's failure or inability to obtain expert testimony in support of their position, they have no trouble taking substantial liberties with the truth. The Opposition Brief is littered with unsubstantiated false statements and/or conclusions.  These false statements include the following: (1) "The 5-0 Vote was Unanimous Even If Two Directors Did Not Vote;" (2) "The Board Did Believe that the Merger was in the Best Interest of the OHSL's Stockholders;" (3) Director Herron did not resign in protest and his resignation was disclosed to the OHSL shareholders; and (4) the misstatements in the Proxy Materials/Registration Statement are not material. As will be shown below, these statements are at best wishful thinking on the part of the OHSL and Provident Defendants and, at worst, intentional distortions of the truth.  In any event, they are rebutted by the specific evidence supplied by the Herron Affidavit, attached as Exhibit "B."[3]

---

Consequently, the OHSL and Provident Defendants should have to live with the consequences of these acts and the Plaintiffs should not be punished for complying with this Court's Scheduling Order and bringing a carefully documented and supported motions.  In other words, since the OHSL and Provident Defendants have not even attempted to be rebut the evidence record, the Court should accept Plaintiffs' evidence as true.

[3] Plaintiffs' expert on plain language, William Lutz, Ph.D., is presently traveling out of the country and Plaintiffs are unable to submit his affidavit at this time, but will file a motion for leave to supplement this pleading with Dr. Lutz's affidavit when he returns to the United States.

II.    **LEGAL ARGUMENT**

    A.    **The OHSL and Provident Defendants' Present No Evidence to Substantiate Their Claim that the Vote Was Unanimous**

        1.    **The OHSL and Provident Directors Misuse the Word Unanimous**

The OHSL and Provident Defendants' arguments regarding the alleged "common usage" of the word unanimous are unfounded and inadmissible. First, the OHSL and Provident Defendants provide a definition for unanimous which has absolutely no authority cited in support of it. The OHSL and Provident Defendants only state that "[i]t follows that a 'unanimous vote' means *all of the votes* case at a regular or properly called meeting at which a quorum is present." (Opposition at p. 4). Rather than taking the time to retain an expert on this issue, or even consult a dictionary, the OHSL and Provident Defendants have attached unauthenticated internet articles in support of the proposition that this is the meaning of the word "unanimous." However, even if they were admissible, which they are not, common sense dictates that this Court still disregard these exhibits since they are not persuasive.

Reporting that the Senate took some action "unanimously" after the fact is fundamentally different from stating that the OHSL Board "unanimously approved the acquisition **and** believes that it is in the best interest of OHSL stockholders." First, unlike the preparation of Proxy Materials/Registration Statement, a newspaper reporter or writer reporting on Senate votes is not subject to potential liability under the Federal Securities laws. Second, the purposes for the documents are completely different. Reporting to the public through a news medium what the result of a vote was for a particular bill in the U.S. Senate is very different from filing public documents that are

intended to influence the shareholders as to how to vote on a proposed merger.  The overall concept is that the Proxy Materials/Registration Statement describes the transaction fairly in all material respects, which includes the context of the events at the time. Thus, unlike newspaper articles which report upon votes in the U.S. Senate, the Proxy Materials/Registration Statement are documents upon which the Plaintiffs are specifically and statutorily entitled to rely.  Newspaper articles are not subject to the Federal Securities law. Proxy Materials/Registration Statements are.  Third, this Court can take judicial notice that the U.S. Senate consists of one hundred members. Unfortunately, the Court cannot take judicial notice that the OHSL Board consisted of a certain number of members at a certain point in time.  As a result, the fact that the OHSL and Provident Defendants have submitted Internet articles in support of their interpretation of the use of the word "unanimous," does not change the fact that their use of the word in the Proxy Materials/Registration constituted a material misstatement.

Similarly, the case law submitted by the OHSL and Provident Defendants does not provide any support for the proposition that that their use of the word was not a misstatement. The OHSL and Provident Defendants cite to *In re Numerex Corp. Sec. Litig.*, 913 F. Supp. 391, 398 (E.D. Pa. 1996) and *Management Assistance, Inc. v. Edelman*, 584 F.Supp. 1021, 1027 (S.D.N.Y. 1984) for this proposition, but both of these cases are factually inapplicable.  First, in *In re Numerex Corp. Sec. Litig*, the issue of whether a misstatement occurred involved the following sentence: "Since 1992, the Company has experienced a substantial increase in revenues and profits due both to internal growth and to recent acquisitions." Id. at 398.  It is true that the court stated that this was not a material misstatement, and that there can be no liability without a

misstatement. Id. The court agreed that the use of the word "substantial" was subjective, but found that it was not a misstatement because there had been a quantitative increase in the revenues and profits. Id.  This is very different from the present case.  The term "unanimous" is not open to such subjective speculation. It can mean nothing less than that the OHSL Directors all voted in favor of the merger <u>and</u> all believed that it was in the best interest of the OHSL shareholders. From a mere quantitative perspective, the OHSL Directors knew that this was incorrect. The OHSL Directors knew that at the time that they made this statement public that only 5 of the 7 current OHSL Directors voted in favor of the merger, that only 5 of the 6 OHSL directors present at the meeting voted in favor of the merger, and that one director had resigned in protest, and Ken Hanauer, OHSL's CEO, largest shareholder, and only member of management on the OHSL Board did not believe the merger to be in the best interests of OHSL shareholders.[4] Thus, the present case is very different from *In re Numerex Corp. Sec. Litig.* for the statement that "Your Board of Directors unanimously approved the acquisition and believes that it is in the best interest of OHSL stockholders" was a material misstatement of fact.

The result is the same with *Management Assistance, Inc. v. Edelman*, 584 F.Supp. 1021, 1027 (S.D.N.Y. 1984). In this case, the following sentence was subject to scrutiny:

---

[4] Despite the actual language used in Mr. Herron's resignation letter, it was absolutely clear to all the other OHSL Directors that Mr. Herron resigned at least in part in protest. Mr. Herron called each director and told them that he was resigning in part in protest because he opposed the merger.  He also left tens of thousands of dollars on the table because he did not want to profit from a transaction that he fundamentally opposed. Additionally, although Mr. Herron was diplomatic in his language, his responsibilities with his day job could hardly have interfered with his duties as an OHSL Director since OHSL would no longer exist if the merger consummated.  Thus, there was no other reason for Mr. Herron to resign at that particular point other than to protest the merger. (*See*, Herron Affidavit, Attached as Exhibit B).

"We have recently referred the management to two potential purchasers which were identified by Salomon Brothers Inc., and which have expressed an interest in the Company's service business and a willingness to meet with management of the Company to explore the possibility of an acquisition of part or all the Company or its businesses."

Id. at 1027. The plaintiff alleged that both of these statements are false, as defendants were aware of no company interested in the possibility of acquiring all of it, and that the statements were misleading because facts necessary to make the statements not misleading were omitted. Id.[5] However, the court disagreed and found that the language, "exploring the possibility," to be tentative in nature, and did not suggest that a definite offer had been made. Id. Similarly, the court stated that while inclusion of the allegedly omitted facts may have given shareholders a better perspective from which to evaluate the statements, their omission did not make the statements misleading. Id.

This is also very different from the present case because of the omission of certain facts from the "Your Board of Directors unanimously approved the acquisition and believes that it is in the best interest of OHSL stockholders" did make the statement misleading. There is nothing tentative about this statement. The whole Board did not believe that the merger was in the best interest of the OHSL shareholders (Hanauer dep. p. 26). In order to place this statement in its proper perspective and context, it was necessary for the OHSL shareholders to know: (1) that Defendant McKiernan did not vote at all in relation to the merger; (2) Defendant Brinker abstained at the final vote after having previously voted in favor of the merger a few days earlier; (3) Director Herron

---

[5] Ironically, this fact pattern is very similar to the false statements made by lead defense counsel James E. Burke, who falsely stated to the state court judge that OHSL had received six bids for the company, and that Provident's was the highest. In reality, Provident's was the only bid, and the state court relied on this misrepresentation and other misrepresentations by Mr. Burke on the so-called unanimity of OHSL's Board in denying the motion for preliminary injunction.

resigned a few days before the final vote in protest of the merger; and (4) the Chief Executive Officer of OHSL, its largest shareholder, and the only member of management on OHSL's Board, Defendant Hanauer voted his personal shares against the merger and did not believe that the merger was in the best interests of OHSL shareholders. (*See*, Hanauer, dep. p. 26; *See also*, Herron Affidavit, ¶18).

Thus, since the OHSL and Provident Defendant have exhibited shocking disrespect for the Court, and have merely thrown various and sundry articles from the internet at the Court, without presenting any authenticated, relevant, or persuasive evidence, Plaintiffs' Motion for Summary Judgment should be granted.

### 2.  <u>Not all of the Directors Voted in Favor of the Merger</u>

The facts of this case also illustrate that it was misleading for the OHSL and Provident Defendants to state that the OHSL Directors' final vote as to the merger was "unanimous." A statement does not become fact because the OHSL and Provident Defendants deem it to be, even if they repeat it over and over. The OHSL and Provident Defendants make several conclusory statements that have little to no evidence to back them up. In particular, the OHSL and Provident Defendants state "It is not a misstatement of fact to characterize the 5-0 vote as unanimous even though two directors, who clearly supported the merger, did not vote." (Opposition at p. 3[6]). This statement completely ignores the expectation of the shareholders. No reasonable shareholder would read the Proxy Materials/Registration Statement and conclude that the "unanimous" vote of the OHSL Board was really 5-0 with both the Chairman of the Board and the C.E.O. changing their votes within days of the final vote. No reasonable shareholder would read

---

[6] If the OHSL and Provident Defendants are so convinced that this 5-0 vote was not a misstatement, they should have included it in the Proxy Materials/Registration Statement.

the Proxy Materials/Registration Statement and conclude that a director had resigned in part in protest. No reasonable shareholder would conclude that some members of the Board did not believe that the merger was in the best interest of the OHSL shareholders. (Hanauer dep. p. 26). A reasonable shareholder could only conclude that all eight OHSL directors had voted in favor of the merger AND believed that the merger was in the best interest of OHSL shareholders. Neither statement was true, and the OHSL Defendants knew it.

As discussed above, there is no expert or other testimony to support Defendants' position. There is also no testimony to show that the OHSL shareholders would have a different expectation of this statement than that presented by the Plaintiffs. Rather, there is only unrebutted expert and fact testimony to the contrary. Further, even if there was expert or other testimony contradicting this statement—which Defendants are apparently unable to obtain-- common sense would clearly require that the Court reject it. Statements of obvious fact do not require such qualification. The OHSL and Provident Defendants have to qualify their statement with the phrase "even though," and then subsequently explain why the 5-0 is a unanimous vote when there were seven directors who potentially could have voted for the merger, since it cannot seriously be disputed that all OHSL shareholders reasonably believed that OHSL had eight directors since they had received no information to the contrary. It is interesting to note that this constitutes a departure from the OHSL and Provident Defendants' argument in their Amended Motion to Dismiss the CAC. In the Amended Motion to Dismiss, the OHSL and Provident Defendants discuss the different actions of the various Directors, but state that "The unanimity of the Board accurately was portrayed." (Doc. No. 264).

First, the vote was not unanimous because Defendant McKiernan was not even present for the vote, but out of the country at the time. The OHSL and Provident Defendants state that "former OHSL director Thomas McKiernan attempted to vote in favor of the OHSL-Provident merger from abroad," but there is absolutely no evidence in the record to support this proposition. (Opposition Brief at p. 2) However, even if the OHSL and Provident Defendants' were able to take Defendant McKiernan out of the equation, the fact remains that there were six directors present at the final vote, but that only five of those directors actually voted in favor of the merger, and that OHSL Chairman Brinker changed his vote from days before. This discrepancy also cannot be reconciled by Robert's Rules of Order, common sense, and the reasonable reliance of the OHSL shareholders.

One of the most difficult issues for the OHSL and Provident Defendants to overcome is the fact that Defendant Brinker did not vote "in favor of" the merger on August 2, 1999 after having done so a few days earlier on July 22, 1999. The OHSL and Provident Defendants unsuccessfully attempt to do so by stating that Defendant Brinker was merely adhering to procedure as governed by Robert's Rules of Order. However, this explanation is unsatisfactory and raises more questions than it answers. First, and most obviously, it fails to explain how 1999 meetings could be covered by the 10th edition of this book, which was published in 2000. (Opposition at p. 3). Second, the OHSL and Provident Defendants do not even attempt to illustrate how the OHSL corporate board meetings were bound by Robert's Rules of Order either by practice or by the OHSL corporate by-laws. In fact, the evidence is to the contrary.

As stated above, the record is undisputed that former OHSL Chairman Norbert Brinker voted in favor of continued negotiations with Provident at the July 22, 1999 Special Meeting of the Board despite the fact that there was no tie to be broken. Thereafter, the record is uncontradicted that Defendant Brinker "abstained" on August 2, 1999 when the final vote for the merger was taken. Thus, since Defendant Brinker voted in favor of continued negotiations on July 22, 1999 when he had no reason to do so, there was also nothing precluding him from doing so on August 2, 1999. Thus, Defendant Brinker changed his vote from in favor or to abstain, and the shareholders had the right to know of his change of vote, and his apparent change of heart.[7] So much for OHSL being governed by Robert's Rules of Order.

Thus, the fact that Defendant McKiernan did not vote at all in relation to the merger, Defendant Brinker changed his vote from in favor of to abstain, and Herron resigned necessitates that this Court grant Plaintiffs' Motion for Summary Judgment.

**B.    The OHSL Directors Did Not Believe that the Merger was in the Best Interest of the OHSL Shareholders.**

There is a significant difference between believing that "the merger is fair" and stating that "Your Board of Directors unanimously approved the acquisition and believes that it is in the best interest of OHSL stockholders." The difference lies in the fact that the second sentence embodies two different concepts: that the vote for the merger was unanimously approved and that the entire OHSL Board believed that the merger was in the best interests of the OHSL Shareholders. As Mr. Hanauer stated "*It was not the whole Board that believed that*." (Hanauer at 26, Attached as Exhibit A, emphasis added.)

---

[7]    Similarly, OHSL CEO Ken Hanauer changed his vote from abstain to in favor of because he just gave up. (*See*, CAC, Doc. No. 48, ¶55)

The OHSL and Provident Defendants adeptly attempt to shift the focus from whether the OHSL Directors believed that the merger was in the best interest of the OHSL shareholders to whether or not the merger was "fair." First, the OHSL and Provident Defendants attempt to do by stating that Defendant Hanauer's act of voting his personal shares against the merger "had nothing to do with the transaction" because he did not think that the merger was in *his* best interest, but did think that it was fair and in the best interest of the OHSL and its shareholders. (Opposition at p. 5). This would be fine except for the fact that Defendant Hanauer has clearly testified that he did not believe that the merger was in the best interests of the OHSL shareholders as illustrated by these exchanges:

> Q.    In your heart, did you believe that this transaction was in the best interests of the shareholders?
>
> A.    No, sir.

(Hanauer dep. p. 21).

> Q.    If I understood your testimony correctly a minute ago, you said that you did not believe that this transaction was in the best interests of Oak Hills stockholders, correct?
>
> A.    In—yeah, that was your question.  Yes, that's what I said.

(Hanauer dep. p. 25)

Incredibly, the OHSL and Provident Defendants attempt to take this argument one step further by arguing that Defendant Hanauer would have been in breach of his fiduciary duty if he had voted against the merger when he thought that it was "fair." To make this argument the OHSL and Provident Defendants cite to *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 589, 641 N.E.2d 265, 272. This case is inapplicable and irrelevant for many reasons.  First, OHSL was a Delaware corporation,

and not an Ohio corporation. Second, OHSL was not a closely held corporation. Finally, this case has nothing to do with a majority/minority shareholder dispute. It causes Plaintiffs to question whether the OHSL and Provident Defendants truly even comprehend what the appropriate standards are in this case.

However, even if *Koos* was even remotely factually applicable, this logic still does not follow because the overwhelming evidence before the Court indicates that the merger was not even "fair." This is not true. Just because a proposed merger is "fair" does not mean that it is in the best interests of the OHSL shareholders. This concept is fully embraced in the fairness opinion, which clearly states that the fairness opinion expresses no opinion about the business strategy behind the decision to merge. It only deals with fairness from a financial point of view, and expresses no opinion on the relative merits of this or any other business strategy.

The OHSL and Provident Defendants attempt to equate these the two terms of "best interest of the OHSL shareholders" and "fair" together. However, they are not the same at all. The fairness opinion shows that these are separate and distinct concepts. The fairness opinion does not address whether or not the proposed merger is in the best interest of the OHSL shareholders. In this case, the evidence before the Court illustrates that it was neither fair, nor good business strategy, nor in the best interest of the OHSL shareholders.

First, as stated above, and in greater detail in Plaintiffs' Motion, there is evidence before this Court that both Directors Hanauer, Herron and Zoellner did not believe that the merger was in the best interest of the OHSL shareholders. Furthermore, it must be noted that one of the mysteries of this litigation is why Defedant Zoellner, who had been

a consistent proponent of independence, changed his vote from "against" to "in favor of" the proposed merger. After years of vocal opposition to any merger, Defendant Zoellner inexplicably voted in favor of continued negotiations with Provident at the July 22, 1999 Special Meeting. Although one explanation might be that he simply changed his mind, this explanation lacks persuasiveness since Defendant Zoellner could not come up with even one example as to how this deal improved between his two votes during his deposition. As a result, a more likely explanation is that Defendant Zoellner, like Defendant Hanauer, simply gave up and voted in favor of a transaction that he did not believe in because he felt he had no other true option.

Second, there was no analysis as to whether or not the merger was good business strategy. McDonald reported on fairness only, not on business strategy, and stated as follows:

> In addition, our opinion is, in any event, limited to the fairness, as of the date hereof, from a financial point of view, of the Exchange Ratio, to the holders of OHSL Common Shares, and does not address the underlying business decision by OHSL's Board of Directors to effect the Merger, does not compare or discuss the relative merits of any competing proposal or any other terms of the merger, and does not constitute a recommendation to any OHSL shareholder as to how such shareholder should vote with respect to the Merger. This opinion does not represent an opinion as to what the value of OHSL Common Shares of OHSL Common Shares or PFGI Common Shares may be at the effective time of the Merger or as to the prospects of OHSL's business or PFGI's business.

(*See*, Fairness Opinion, pages 3-4, Attached to the Proxy Materials as Annex C; Attached here as Exhibit C).

Finally, the deal cannot even be considered fair since it was predicated upon Provident's financial statements being free of material misstatements. With the 2003 Restatements, Provident has admitted that its financial statements were materially

misstated.  Further, the Schoenblum Affidavit indicates that the merger could not be considered "fair" had the true facts been known at that time.  Finally, the merger was unfair since Defendant Provident bought OHSL with artificially inflated Provident stock. Had the true facts been known, OHSL would not have been able to obtain a fairness opinion on these terms, since if the true value of the Provident stock had been known, as opposed to the artificially inflated value, Provident's stock would have been trading at about 30% less. (*See*, Schoenblum Affidavit, Attached as Exhibit D).

Thus, regardless of how the OHSL and Provident Defendants attempt to frame their arguments, the result is the same: the merger was neither fair nor in the best interests of the OHSL shareholders and any statement to the contrary in the Proxy Materials/Registration Statement is materially false and misleading.

**C.    The OHSL and Provident Defendants Failed to Disclose Herron's Resignation to the OHSL Shareholders**

The OHSL and Provident Defendants misrepresent the record when they state that Director Herron did not resign in opposition to the merger and that his resignation was disclosed to OHSL shareholders.  First, the OHSL and Provident Defendants argue that Director's resignation was not in protest of the merger because he did not contain specific language regarding protest in his resignation letter.  However, in doing so, the OHSL and Provident Defendants have no trouble disregarding the fact that he specifically stated under oath that he "certainly resigned in protest," or that his last act as a Director was to vote against the proposed merger.  (Herron dep. pp. 199-202). The OHSL and Provident Defendants attempt to discount his deposition testimony by placing it in footnote and stating that this statement constitutes a "flip-flop" from his early statement on protest. (Opposition, p. 7). However, this is not the case. Director Herron never changed his mind

as to whether or not he resigned because he disagreed with the merger, but only changed his answer because he had a different interpretation of the word "protest." (Herron dep. pp. 199-202). Being from the 1960's, Director Herron stated that when he had initially been asked the question he had a more violent interpretation of the word protest and did not originally think it applicable in this context. Id. However, when the term protest was couched in the meaning that it was "an expression of disapproval," Director Herron did not hesitate to state that he resigned in protest. Id. The OHSL Directors unquestionably knew of Mr. Herron's opposition to the merger prior to the issuance of the Proxy Materials/Registration Statement because he personally informed each and every one, but failed to inform the OHSL shareholders of this opposition, and Mr. Herron's resignation in part in protest. (*See,* Herron Affidavit, Attached as Exhibit B).

Second, the OHSL and Provident Defendants argue that Director Herron's resignation was disclosed because any OHSL shareholder could have discovered this fact by comparing the table published in the Proxy Materials, which does not list Mr. Herron as an OHSL director, with the Director's list published in OHSL's 1998 10-K Annual Report. (Opposition at p. 8). However, the OHSL and Provident Defendants encounter several forms of resistance on this point. First, there is clear and unequivocal deposition testimony that Mr. Herron's resignation was not revealed. (*See,* Herron Affidavit; Herron dep. p. 107; Hanauer dep. *Nolte,* pp. 800-801; Roe dep. pp. 87-88). When Defendant Hanauer was specifically asked if the OHSL shareholders were informed of Mr. Herron's resignation, he stated that "I will answer no to that." (Hanauer dep. *Nolte,* pp. 800-801). When Mr. Roe was asked this same question, he stated "No. I'm not aware that it was." (Roe dep. p. 87). When asked why it was not disclosed, Mr. Roe stated that "My answer

16

to that is, you should ask the people that prepared this document in question." (Roe dep. p. 88). The OHSL and Provident Defendants make no attempt to rebut this testimony.

Further, even if this constitutes disclosure, which Plaintiffs vehemently dispute, the OHSL and Provident Defendants never explain why an OHSL shareholders should be required to go through such a complicated exercise in order to obtain such information. The only reason for cross-referencing documents and/or tables and/or charts in the Proxy Materials/Registration Statement to determine to who the OHSL Directors were at the time of the vote would be if a shareholder had reason to believe that there had been a change in the membership of the Board. Thus, this would not occur unless the OHSL and Provident Defendants had notified the OHSL shareholders of this fact. Thus, since the OHSL and Provident Defendants obviously did not do so in this case, it must be concluded that there was no disclosure of Director Herron's resignation to the OHSL shareholders in this case.

Finally, the statement that "There is no dispute that Director Herron's departure from the OHSL Board *was* disclosed" is deliberately false and misleading and flies in the face of this Court's previous Order. (Doc. No. 48). As stated above, Director Herron's affidavit and testimony has made it perfectly clear to all involved, including this Court, that Director Herron's resignation was never disclosed. Much has been written on this topic over the years in the litigation, and the OHSL and Provident Defendants have never been able to overcome this fact. (*See*, Herron Affidavit, ¶16).

As a result, since Plaintiffs rely on the Court's previous Order (Doc. No. 48), the expert reports of Candace Preston and William Lutz, the deposition testimony of multiple individuals, and several Herron affidavits to support their arguments, and the OHSL and

Provident Defendants rely only on their unsupported self-serving conclusions directly contrary to the evidence that Director Herron did not resign in protest and that his resignation was disclosed, this is not enough to overcome the evidence submitted by Plaintiffs. Consequently, Plaintiffs' Motion for Summary Judgment should be granted.

**D.    The OHSL and Provident Defendants Show Disrespect for the Previous Rulings of This Court When They State that The Information Omitted from the Proxy Materials/Registration Statement Was Not Material.**

Although this is a motion for summary judgment, the OHSL and Provident Defendants come perilously close to being in contempt of this Court by repeating arguments that have been made and rejected by this Court. As in their Motion to Dismiss the Consolidated Amended Complaint, the OHSL and Provident Defendants are again directly contemptuous of this Court's Order and prior ruling regarding materiality. In particular, in the initial Order on the OHSL and Provident Defendants' Motion to Dismiss, the Court found that the statements alleged in the CAC *may be* material. (Doc. No. 48). Now, the OHSL and Provident Defendants completely ignore this fact and state that the information is not material. This was bad enough in relation to the Motion to Dismiss the Consolidated Amended Complaint, where these Defendants repeated, often verbatim, arguments previously rejected by this Court, but now that considerably more discovery has been conducted, and several OHSL and some Provident Directors' depositions have been taken, this is inexcusable. This is especially the case given that the OHSL and Provident Defendants do not submit any sort of expert testimony in support of this conclusion but simply recycle the same unpersuasive arguments.

18

The Provident and OHSL Defendants arrogantly state what would not have been of interest to the OHSL shareholders in relation to the merger, but fail to provide any expert testimony or evidence in support thereof. Although Plaintiffs clearly disagree with the OHSL and Provident Defendants as to what would have been of interest to the OHSL shareholders, there is no disagreement between the parties that the OHSL and Provident Defendants intentionally omitted all facts or information from the Proxy Materials/Registration Statement which would have shown dissent on the part of the OHSL Directors. Although the OHSL and Provident Defendants argue that there was no dissent included in the Proxy Materials/Registration Statement because it did not exist, the evidence before this Court shows otherwise. Rather, it was not included because unanimity was necessary to sanitize the merger and ensure its passage.

The OHSL and Provident Defendants filtered and sanitized the information received by the OHSL shareholders in order to ensure that they would vote the way that they wanted them to vote in relation to the merger. The OHSL and Provident Defendants showed great foresight in this regard for, despite the lengths taken by the OHSL and Provident Defendants, the merger only barely passed[8]. If the OHSL shareholders had known just one of the misstatements alleged by the Plaintiffs in this case, it is more than likely that this merger would not have been approved. This is why this Court has

---

[8]There is no indication anywhere in the Proxy Materials/Registration Statement that there was any hint of dissent among the OHSL Directors. Yet even with these deliberate misrepresentations and omissions, OHSL was only able to muster 52.4% of the vote in favor of, and the merger would not have been approved if a mere 23,000 shares (out of more than 2.5 million shares) would have changed from in favor of to against. In contrast, the proposed Provident-National City merger requires a two-thirds vote for passage.

previously held that dissention among the Board may be of interest to a reasonable investor (*See*, Doc. No. 46).

Thus, since this Court has already found that the alleged misstatements in the Proxy Materials/Registration Statement may be material, and since they have not presented any expert testimony to rebut the Plaintiffs' expert testimony that the OHSL and Provident Defendants removed all facts from the Proxy Materials/Registration Statement which showed that there was dissension among the OHSL Directors, and probably would have changed the outcome of the merger, the Plaintiffs' Motion for Summary Judgment should be granted since it was a material misstatement to state that "Your Board of Directors unanimously approved the acquisition and believes that it is in the best interest of OHSL stockholders."

## III.    CONCLUSION

Therefore, for the foregoing reasons, the Plaintiff Class respectfully requests that the Court rule that the misstatements and omissions on unanimity as alleged in the CAC are material as a matter of law and grant the Plaintiffs summary judgment on this issue.

Respectfully Submitted,

**GENE MESH & ASSOCIATES**

Dated:  26 May 2004

By:

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800 (Telephone)
(513) 221-1097 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Reply Brief in Further Support of Motion for Summary Judgment on Unanimity Issues (Doc. No. 315) was served this 26th day of May 2004 as follows:

**BY HAND DELIVERY**
James E. Burke, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

Thomas W. Breidenstein
BARRET & WEBER, LPA
500 Fourth & Walnut Centre
105 East Fourth Street
Cincinnati, OH 45202

**BY FIRST CLASS MAIL**
John Hust, Esq.
SCHROEDER, MAUNDRELL,
BARBIERE & POWERS
Suite 110, Governor's Knoll
11935 Mason Road
Cincinnati, OH 45249

David Greer, Esq.
Jamie Greer, Esq.
BIESER, GREER & LANDIS
400 National City Center
6 North Main Street
Daytonk OH 45402-1908

James E. Gauch, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

_____
Stephanie A. Hite

21