**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Walter W. Thiemann, <u>et al.</u>, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:00-CV-793 |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| OHSL Financial Corporation, | ) | |
| <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |

<u>O R D E R</u>

This matter is before the Court on Defendant Ernst & Young's motion to dismiss (Doc. No. 252).  For the reasons set forth below, Defendant's motion to dismiss is well-taken and is **GRANTED**.

I. <u>Background</u>

As has been recounted by the Court in other orders, this case arises out of the 1999 merger between OHSL Financial Corporation ("OHSL") and Provident Financial Group, Inc. ("Provident").  Plaintiffs contend that the proxy materials issued in connection with the merger contained a number of materially false and misleading statements and omissions upon which they relied in deciding to vote in favor of the merger. Plaintiffs have asserted a variety of federal and state law

securities violations claims against OHSL and Provident, individual members of each bank's board of directors, individual corporate officers, two law firms and individual lawyers of those law firms, and Ernst & Young ("E&Y"), Provident's independent auditor.

E & Y is a late-comer to this litigation, having been added as party via Plaintiff's consolidated class action complaint in December 2003. As is relevant here, E & Y audited Provident's financial statements for 1997, 1998, and 1999 and certified to the Securities and Exchange Commission in Provident's annual 10K reports filed in 1998, 1999, and 2000, that the statements fairly presented, in conformity with generally accepted accounting principles ("GAAP"), Provident's financial position. E & Y further certified that it conducted its audit of Provident's financial statements in conformity with generally accepted auditing standards ("GAAS"). See Consolidated Amended Class Action Complaint, Exs. C, D, E. Provident's annual financial statements and 10K reports were incorporated by reference into the proxy materials regarding the merger which were distributed to the OHSL shareholders. OHSL's shareholders ultimately approved the merger in a transaction valued at approximately $57,000,000.

On March 5, 2003, however, Provident announced that it would be restating its operating results and balance sheets for the years 1997 through 2002 because of errors in accounting for auto lease pools. According to the press release, Provident had

been accounting for nine lease pools off balance sheet as sale and lease back operating leases.  Instead, the release stated, Provident should have been accounting for these pools on balance sheet as financing leases.  The restatement resulted in an $11.3 million decrease in net income for 1999, a $2 million decrease in net income for 1998, and a $900,000 decrease in 1997.  The total reduction in net income for this period was approximately $70 million.  Earnings per share decreased for these years by $.23, to $2.85, in 1999, by $.04, to $2.44, in 1998, and by $.02, to $2.36, 1997.  http://www.providentbank.com/pfgi/ newsreleases.aspx (visited May 21, 2004).[1]  The day after this announcement, Provident stock dropped from $28.07 per share to $21.72 per share, a decrease of about 23%.  CAC ¶ 92.

On April 15, 2003, Provident announced a second restatement of its operating results for the years 1997 through 2002.  This second restatement was again necessitated by errors in accounting for auto leases.  According to the release, Provident had historically accounted for auto leases as direct financing leases and matched interest income with interest expense, similar to the way in which it recorded loans.  Instead, the release stated, because Provident had obtained residual value insurance on the pools, they did not qualify as direct financing

---

[1]    The Court may take judicial notice of Provident's press releases.  See In re NAHC, Inc. Sec. Lit., 306 F.3d 1314, 1331 (3rd Cir. 2002).

leases under Financial Accounting Standard ("FAS") No. 13.[2]
Because of the insurance, Provident should have accounted for its
auto leases as operating leases.  The second restatement resulted
in an aggregate reduction in net income of $44.4 million for
these years, in addition to the effect of the restatements
announced in the March press release.  CAC Ex. A.  According to
the April press release, PricewaterhouseCoopers, whom Provident
retained to conduct an independent review of the restatements,
determined that the accounting errors that led to the
restatements were unintentional.  Id.

The complaint alleges that the restatements caused

---

[2]    The Financial Accounting Standards Board summarizes FAS
13 as follows:

> This Statement establishes standards of financial
> accounting and reporting for leases by lessees and
> lessors.  For lessees, a lease is a financing
> transaction called a capital lease if it meets any one
> of four specified criteria; if not, it is an operating
> lease. Capital leases are treated as the acquisition of
> assets and the incurrence of obligations by the lessee.
> Operating leases are treated as current operating
> expenses.  For lessors, a financing transaction lease
> is classified as a sales-type, direct financing, or
> leveraged lease.  To be a sales-type, direct financing,
> or leveraged lease, the lease must meet one of the same
> criteria used for lessees to classify a lease as a
> capital lease, in addition to two criteria dealing with
> future uncertainties.  Leveraged leases also have to
> meet further criteria.  These types of leases are
> recorded as investments under different specifications
> for each type of lease.  Leases not meeting the
> criteria are considered operating leases and are
> accounted for like rental property.

See http://www.fasb.org/st/summary/stsum13.shtml (visited May 21,
2004).  The full text of FAS 13 and its provisions is 77 pages
long.

Provident to lose 20% of its market value.  The complaint further alleges that the restatements constitute an admission by Provident that the financial statements included in the merger proxy materials were materially false and misleading.  Moreover, the complaint alleges, the issuance of the April 2003 restatement means that the March 2003 restatement was materially false and misleading as well.

The complaint alleges that in the proxy materials E & Y held itself out as an expert in accounting and auditing.  The complaint further alleges that "E & Y was intimately familiar with Provident's improper accounting methods and procedures." CAC ¶ 32.  The complaint notes that it was E & Y's responsibility to express an opinion on Provident's financial statements and that E & Y did opine that Provident's financial statements were accurate and prepared in accordance with GAAP and GAAS. According to the complaint, however, the restatements to the financial statements indicate that E & Y did not conduct its audits of Provident in accordance with GAAS.  Thus, "Plaintiffs allege that E & Y recklessly or intentionally failed to perform GAAS audits applying GAAP" as described later in the complaint. Id.  More specifically, the complaint alleges that "E & Y's audit failures include but are not limited to allowing Provident to improperly account for nine auto leasing pools, comprising tens of thousands of auto loans, which were improperly kept off PFGI's balance sheet, in a manner similar to the infamous Enron scandals of 2002-2003."  Id.  The complaint further states that "[t]he

accounting fraud alleged – how to account for auto lease transactions and whether to include auto lease transactions on or off balance sheet (similar to Enron) is fundamental to the banking business, and how to properly account for these auto lease transactions – on or off balance sheet – is fundamental to the audits." <u>Id.</u>  Thus, the complaint theorizes, "E & Y allowed Provident to engage in 'desired results' accounting, abandoning its professional obligations to PFGI and the class to conduct GAAS audits applying GAAP, in exchange for large auditing and consulting fees." <u>Id.</u>

Later, the complaint alleges that "E & Y had actual knowledge that PFGI's financial statements, and E & Y's opinion on those financial statements, was [sic] materially false and misleading, since both PFGI and E & Y had actual knowledge that PFGI's accounting did not meet the technical requirements of FAS 13." <u>Id.</u> ¶ 107.  The complaint further claims that "E & Y knew, or absent a reckless disregard for the truth should have known, that Provident was maintaining 'off the books' accounts which did not properly reflect the investor's risk to Provident revenues and earnings . . . and that such treatment and disclosures of the massive auto lease financial results of Provident was incorrect and misleading." <u>Id.</u> ¶ 109.  Moreover, says the complaint, "[a]s the auditors, E & Y knew, or absent a reckless disregard for the truth should have known, that Provident's earnings were of a magnitude as to have materially misstated earnings and cash flow for each year in which E & Y performed an audit and required two

Restatements, both of which were demanded by another nationally known accounting firm, PwC, who were called finally by Provident to fix what E & Y did not." Id. ¶ 110.

The complaint then alleges that E & Y violated most if not all of the GAAS standards for the period 1994 to 2002. Id. ¶ 111. The complaint alleges that E & Y violated SAS 57 (AU 342) by recklessly failing to examine the risks of material misstatements in Provident's accounting practices. Id. ¶ 112. The risks, as identified by the complaint, were: 1) "Provident's internal procedures and interest computations were material to the financial statements and any material fault such as represented by the 'off the books' accounting methods would be devastating to share values"; 2) lack of controls over the preparation of estimates and data upon which E & Y approved the estimates and failure by E & Y to provide better methods; 3) Provident's had a poor history of accounting for loan interest on auto leases and had been under internal scrutiny as early as 1997; and 4) the data on which earnings were based was unreliable because it was not integrated with Provident's books and records. Id. ¶ 113. Thus, the complaint alleges, E & Y violated GAAS by not testing the reliability or the reasonableness of Provident's data and assumptions upon which its earnings were based. Id.

Finally, the complaint alleges that E & Y violated SAS 11. The complaint alleges that during its audits E & Y encountered matters which were potentially material to Provident's financial statements that required special knowledge

7

or further inquiry.  Specifically, the complaint alleges that because there was a high risk of a material misrepresentation associated with "off the books" accounts, E & Y should have used a specialist in its audits of Provident's financial statements. Furthermore, the complaint alleges, E & Y's audit procedures violated SAS 11 because it "did not give any consideration or reacted [sic] at all to the disclosure and findings of E & Y or Provident employees by performing additional procedures with respect to some or all of those findings." Id. ¶ 115.  What findings E & Y should have reacted to and what additional procedures E & Y should have performed the complaint does not say.  In addition, the complaint alleges that "E & Y does not appear to have made any tests of accounting or other data provided by Provident to them as this data relates to the auto leasing business of Provident." Id.  Thus, the complaint alleges, E & Y violated GAAS by failing to obtain the understanding of Provident's methods and assumptions necessary to determine whether it could corroborate Provident's financial statements for the years 1994 through 2002. Id. ¶ 116.

        As stated earlier, Plaintiffs named E & Y as a defendant in this securities fraud litigation in the consolidated amended complaint.  The amended complaint asserts claims against E & Y for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k (Count I), Section 12(2) of the Securities Act, 15 U.S.C. § 77l(2) (Count II), Section 14 of the Securities Act, 15 U.S.C. § 78n(a) and SEC Rule 14a-9, 17 C.F.R. § 240.14a9 (Count

IV), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b),
SEC Rule 10(b)(5), 17 C.F.R. § 240.10b-5 (Count V).  The amended
complaint also asserts state law securities violations against
E & Y pursuant to Ohio Rev. Code § 1707.41 (Count VII) and Ohio
Rev. Code § 1707.43 (Count VIII).  Finally, the complaint asserts
a claim of common law fraud against E & Y (Count XII).

  E & Y now moves to dismiss each of Plaintiffs claims.
E & Y argues that each of Plaintiffs' federal securities claims
is barred by either the applicable statute of limitations or
statute of repose.  In any event, E & Y argues, Plaintiffs'
Section 10(b) and Section 14(a) claims should be dismissed for
failure to plead scienter with sufficient particularity.  E & Y
also argues that Plaintiffs Section 12(a)(2) claim should be
dismissed because it was not a "seller of securities" within the
meaning of the Act.  Finally, E & Y argues that Plaintiffs' state
law claims are preempted by the Securities Litigation Uniform
Standards Act of 1998 ("SLUSA") and should be dismissed as well.
In reply, E & Y points out that Plaintiffs failed to dispute that
their Section 11 and Section 12 claims should be dismissed and
that Plaintiffs failed to contest that their state law claims are
preempted by SLUSA.

## II. <u>Standard of Review</u>

  A motion to dismiss pursuant to Rule 12(b)(6) operates
to test the sufficiency of the complaint.  In its consideration
of a motion to dismiss under Rule 12(b)(6), the court is required
to construe the complaint in the light most favorable to the

Plaintiff and accept all well-pleaded factual allegations in the complaint as true.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) and Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983).  A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations.  Blackburn v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1974).  A court will, though, accept all reasonable inferences that might be drawn from the complaint.  Fitzke v. Shappell, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

When considering the sufficiency of a complaint pursuant to a Rule 12(b)(6) motion, this Court recognizes that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-6 (1957).

The Private Securities Litigation Reform Act ("PSLRA"), however, has modified the pleading standard in securities fraud cases.  The PSLRA requires the plaintiff to plead facts which give rise to a strong inference that the defendant acted with scienter, or intent to defraud.  Helwig v. Vencor, Inc., 251 F.3d 540, 548 (6th Cir. 2001).  Thus, while the Court still accepts the pleaded facts as being true, the facts still must create a strong inference of scienter in order for the complaint to withstand dismissal.

### III. Analysis

A. <u>Federal Claims</u>

Plaintiffs present claims against E & Y pursuant to four federal securities statutes - Section 11 of the Securities Act, 15 U.S.C. § 77k (Count I), Section 12(2) of the Securities Act, 15 U.S.C. § 77l(2) (Count II), Section 14 of the Securities Act, 15 U.S.C. § 78n(a) and SEC Rule 14a-9, 17 C.F.R. § 240.14a9 (Count IV), and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), SEC Rule 10(b)(5), 17 C.F.R. § 240.10b-5 (Count V).

1. <u>Section 11 and Section 12(2) Claims</u>

Section 11 of the Securities Act provides that any signer of the registration statement, any partner or director of the issuer, any professional involved in preparing or certifying the statement, and any underwriter of a registration statement may be liable "[i]n case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading. . . ." <u>Kaplan v. Rose</u>, 49 F.3d 1363, 1371 (9th Cir. 1994)(quoting 15 U.S.C. § 77k). A plaintiff asserting a § 11 claim must demonstrate: 1) that the registration statement contained an omission or misrepresentation, and 2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment. <u>Id.</u> Section 11 has no scienter requirement. <u>Id.</u>

Section 12(2) provides that any person who "offers or

11

sells a security . . . by means of a prospectus or oral
communication, which includes an untrue statement of a material
fact or omits to state a material fact" may be liable to an
unknowing purchaser.  Wright v. National Warranty Co., 953 F.2d
256, 262 (6th Cir. 1992).  The elements of a § 12(2) claim are
(1) the defendant offered or sold a security, (2) by the use of
any means of communication in interstate commerce; (3) through a
prospectus or oral communication; (4) by making a false or
misleading statement of a material fact or by omitting to state a
material fact; (5) plaintiff did not know of the untruth or
omission; and (6) defendants knew, or in the exercise of
reasonable care could have known of the untruth or omission.  Id.
at 262 n.3.  Scienter is not an element of a Section 12(2) claim.
In re Nationsmart Corp. Sec. Lit., 130 F.3d 309, 318 (8th Cir.
1997).

     Section 13 of the Securities Act, 15 U.S.C. § 77m,
imposes a one year statute of limitations and a three year
statute of repose on claims arising under Sections 11 and 12(2).
The three year period begins to run when the security is first
bona fide offered to the public.  P. Stoltz Family Partnership
L.P. v. Daum, 355 F.3d 92, 100, 106 (2nd Cir. 2004).  A security
has been bona fide offered to the public on the effective date of
the registration statement.  Finkel v. Stratton Corp., 962 F.2d
169, 173 (2nd Cir. 1992).  The three year statute of repose in

Section 13 imposes an absolute time limitation, not subject to any of the principles of equitable tolling, after which claims are barred.  <u>Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson</u>, 501 U.S. 350, 363 (1991); <u>In re Data Access Sys. Sec. Lit.</u>, 843 F.2d 1537, 1546 (3rd Cir. 1988).[3]

In this case, Plaintiffs' Section 11 and 12(2) claims are clearly barred by the three year statute of repose in Section 13.[4]

As E & Y correctly observes in its brief, a registration statement becomes effective on the twentieth day after it is filed with the SEC.  15 U.S.C. § 77h(a).  In this case, the registration statement was filed with the SEC on August 26, 1999.  <u>See</u> CAC, Ex. F.  Therefore, the registration statement became effective on September 15, 1999.  Consequently, the statute of repose on Plaintiffs' Section 11 and Section 12(2) claims versus E & Y expired on September 15, 2002.  Plaintiffs, however, did not assert any claims arising out of this merger

_____

[3]    Because claims arising under Sections 11 and 12(2) do not involve scienter, the Sarbanes-Oxley Act, 28 U.S.C. § 1658, which extended the statute of limitations and statute of repose on securities claims involving fraud, deceit, manipulation, or deceit, to two and five years, respectively, is not applicable.  <u>See</u> <u>In re Worldcom, Inc. Sec. Lit.</u>, 294 F. Supp.2d 431, 444 (S.D.N.Y. 2003); <u>In re Enron Corp. Sec. Lit.</u>, No. MDL-1446, Civ. A-H-01-3624, 2004 WL 405886, at *12 (S.D.Tex. Feb. 25, 2004).

[4]    Because it is clear from the face of the complaint that these claims are time-barred, the Court may address the statutes of limitation and repose on a Rule 12(b)(6) motion.  <u>Hoover v. Langston Equip. Assoc., Inc.</u>, 958 F.2d 742, 744 (6th Cir. 1992).

against E & Y until they moved to file a second amended complaint on March 7, 2003. <u>See</u> Doc. No. 146. Thus, Plaintiffs missed their filing deadline on these claims by about four months. Because a statute of repose establishes an absolute bar to a claim and extinguishes a defendant's liability, it is immaterial in this case that the statute of repose expired before Plaintiffs were even aware that they possibly had claims against E & Y. <u>Stoltz</u>, 355 F.3d at 102; <u>Bradway v. American Nat'l Red Cross</u>, 992 F.2d 298, 301 (11th Cir. 1993)("A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered."); <u>Short v. Belleville Shoe Mfg. Co.</u>, 908 F.2d 1385, 1391 (7th Cir. 1990)("Conduct by the defendant that postpones the date of discovery therefore does not extend the period of suit by more than two years.").

Accordingly, E & Y's motion to dismiss Plaintiffs' Section 11 and Section 12(2) claims is well-taken and is **GRANTED**.

2. <u>Section 14 and Section 10(b) Claims</u>

E & Y also argues that Plaintiffs' Section 14 and Section 10(b) claims are barred by the applicable statute of limitations. Alternatively, E & Y argues that Plaintiffs have failed to plead with particularity facts which give rise to a strong inference of scienter. Therefore, E & Y contends, these

14

claims should be dismissed for failure to comply with the new pleading standards of the PSLRA. The Court agrees with E & Y that the complaint fails to give rise to a strong inference of scienter with respect to E & Y's role in the preparation and issuance of the proxy materials at issue here.

Section 14(a) of the Securities Act provides:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

15 U.S.C. § 78n(a). This section, when used to impose liability on an outside accountant, requires proof of scienter. Adams v. Standard Knitting Mills, Inc., 623 F.2d 422, 431 (6th Cir. 1980).

Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder prohibit "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security." Morse v. McWhorter, 290 F.3d 795, 798 (6th Cir. 2002). In order to state a claim pursuant to Section 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the

plaintiff's injury." <u>PR Diamonds, Inc. v. Chandler</u>, 364 F.3d 671, 681 (6th Cir. 2004).

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 193 n.12 (1976). In securities fraud claims based on statements of present or historical fact scienter consists of knowledge or recklessness. <u>Helwig v. Vencor, Inc.</u>, 251 F.3d 540, 552 (6th Cir. 2001). Recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." <u>Mansbach v. Prescott, Ball & Turben</u>, 598 F.2d 1017, 1025 (6th Cir. 1979). Recklessness is "a mental state apart from negligence and akin to conscious disregard." <u>In re Comshare, Inc. Sec. Lit.</u>, 183 F.3d 542, 550 (6th Cir. 1999).

In <u>Helwig</u>, the Court set out a number of non-exclusive, non-exhaustive factors to consider when determining whether the plaintiff pled scienter sufficiently:

1) insider trading at a suspicious time or in an unusual amount;

2) divergence between internal reports and external statements on the same subject;

3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information;

4) evidence of bribery of a top company official;

5) the existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit;

6) disregard of the most current factual information before
   making the statements;

7) disclosure of accounting information in such a way that its
   negative implications could only be understood by someone with
   a high degree of sophistication;

8) the personal interest of certain directors in not informing
   disinterested directors of an impending sale of stock; and,

9) the self-interested motivation of defendants in the form of
   saving their salaries or jobs;

Helwig, 251 F.3d at 552.  In addition, the defendant's motive and

opportunity for making the misstatement or omission is a relevant

consideration.  Id. at 550.  Other courts have suggested that the

magnitude of the error in the financial statement is a gauge of

the defendant's scienter.  See, e.g., In re Rent-Way Securities

Litigation, 209 F. Supp.2d 493, 506 (W.D.Pa. 2002).

        In consideration of all of these factors, the Court

finds that, as regards E & Y's participation in the alleged

fraud, the consolidated amended complaint lacks allegations of

fact which give rise to a strong inference of scienter.

Accordingly, dismissal of Plaintiffs' Section 14(a) and Section

10(b) claims is appropriate.

        The Court notes initially that the complaint does not

allege that any of the factors listed in Helwig are applicable to

E & Y in this case.  Although the complaint alleges that E & Y

was motivated to commit fraud in order to reap large auditing and

consulting fees, CAC ¶ 32, the desire to collect fees for

services is insufficient to create a strong inference of

17

scienter.  See GSC Partners CDO Funding v. Washington, __F.3d__,
No. 03-2347, 2004 WL 1087376, at *7-*8 (3rd Cir. May 17,
2004)(collecting cases).  In contrast, in the Enron matter, the
facts alleged in the complaint showed that senior Arthur Andersen
officials had actual awareness of Enron's numerous improper
accounting methods and considered dropping Enron as a client, but
acquiesced in the accounting improprieties because of the fees it
received from Enron.  See In re Enron Sec. Lit., 235 F. Supp.2d
549, 679 (S.D.Tex. 2002).  The complaint in Enron also
demonstrated that Arthur Andersen had a track record of
involvement in egregious accounting scandals in which it took
huge fees from its clients but kept quiet about its clients'
fraudulent accounting practices.  Id. at 675, 675 n.109.  The
complaint in Enron also noted that Arthur Andersen was driven to
expand its consulting business and that its consulting fees were
double its auditing fees.  Id. at 673, 675 n.109.  Finally, the
complaint in Enron showed that Arthur Andersen appeared to
receive excessive consulting fees from Enron.  For instance, on
one occasion, Arthur Andersen billed Enron $5.7 million, the
equivalent of 28,000 hours of work at $200 per hour, for
consulting and accounting services on one project.  See id. at
681.  In other words, the complaint alleged facts which suggested
that Enron was paying bribes to Arthur Andersen to disregard its
accounting practices.  In short, although the Court recognizes

that <u>Enron</u> is a particularly egregious example of corporate fraud, nonetheless the facts alleged in that case showed that Arthur Andersen possessed a degree of avarice above and beyond a simple motive to collect fees. In contrast, although the complaint alleges that E & Y's fees were "large," nothing in the complaint suggests that its fees were unusual in the manner of Enron.

Mere allegations that E & Y committed GAAP and GAAS violations by failing to determine that Provident was improperly accounting for auto-leases, without more, are insufficient to create a strong inference of scienter. <u>PR Diamonds</u>, 364 F.3d at 671; <u>In re K-Tel Int'l, Inc. Sec. Lit.</u>, 300 F.3d 881, 890 (8th Cir. 2002). Although the complaint alleges in conclusory fashion that E & Y recklessly disregarded Provident's accounting errors, and recklessly failed to comply with GAAP and GAAS requirements, the complaint does not allege <u>facts</u> which demonstrate this recklessness. In comparison, again examining the <u>Enron</u> case, the complaint showed that there were minutes of meetings between Arthur Andersen executives in which they discussed problems with Enron's accounting practices. <u>Enron</u> 235 F. Supp.2d at 679. The complaint also showed that Arthur Andersen failed to take any action even though it knew that Enron failed to make audit adjustments totaling $51 million that it had recommended. <u>Id.</u> at 678. On another occasion, Arthur Andersen removed from an audit

oversight position a senior partner who had objected to and opposed Enron's accounting practices.  Id. at 676.  Other internal memoranda between Arthur Andersen executives reflected an actual awareness and disregard of audit "red flags" regarding Enron's improper accounting practices.  Id. at 678-79.  In addition, Arthur Andersen actually participated in structuring, and provided advice to Enron on how to structure, transactions to avoid GAAP reporting requirements.  Id. at 680-81.  In contrast, in this case, while the complaint clearly alleges that E & Y violated certain auditing standards, there are no accompanying factual allegations which indicate that such violations were committed recklessly.  Thus, the complaint lacks the factual specificity needed to infer that E & Y's GAAP and GAAS violations were committed with scienter.

The only fact remaining which could give rise to any inference of scienter is the magnitude and duration of the errors, which, as the complaint and press releases show, were substantial.  However, under the circumstances of this case, the magnitude and duration of the GAAP error does not create a strong inference of scienter.  As Judge Spiegel noted in a parallel case involving these very same financial restatements, the principle GAAP provision involved, FAS 13, is a complex provision which allows a range of professional discretion in application.  See Merzin v. Provident Financial Group, Inc., __F. Supp.2d__, No.

1:03-CV-165, 2004 WL 717256, at *6-*7 (S.D.Ohio Mar. 9, 2004).
The complexity of FAS 13, Judge Spiegel concluded, suggests that
the error in its application was not a blatant mistake.  <u>Id.</u> at
*7.  The Court concurs with Judge Spiegel's reasoning.
Moreover, an error in accounting for presumably generic or
fungible assets, like the auto leases at issue here, will
naturally have a large ripple effect.  Therefore, the magnitude
of the restatements under the circumstances here does not create
an inference of scienter.

        In summary, the factual allegations in the complaint
with regard to E & Y's role in auditing and certifying
Provident's financial statements are insufficient to create any
inference of scienter, much less a strong one.  At most, the
complaint alleges negligent violations of GAAP and GAAS
standards.  Therefore, Plaintiffs' complaint fails to meet the
pleading requirements of PSLRA as to Defendant E & Y.
Accordingly, E & Y's motion to dismiss Plaintiff's Section 14(a)
claims (Count IV) and Section 10(b) claims (Count V) is well-
taken and is **GRANTED.**

B. <u>State Claims</u>

3. <u>State law securities violations</u>

        Plaintiffs also allege that E & Y violated Ohio Rev.

21

Code §§ 1707.41[5] (Count VII) and 1707.43[6] (Count VII).

---

[5]        Ohio Rev. Code § 1704.41 provides:

(A) In addition to the other liabilities imposed by law, any person that, by a written or printed circular, prospectus, or advertisement, offers any security for sale, or receives the profits accruing from such sale, is liable, to any person that purchased the security relying on the circular, prospectus, or advertisement, for the loss or damage sustained by the relying person by reason of the falsity of any material statement contained therein or for the omission of material facts, unless the offeror or person that receives the profits establishes that the offeror or person had no knowledge of the publication prior to the transaction complained of, or had just and reasonable grounds to believe the statement to be true or the omitted facts to be not material.

(B)(1) Whenever a corporation is liable as described in division (A) of this section, each director of the corporation is likewise liable unless the director shows that the director had no knowledge of the publication complained of, or had just and reasonable grounds to believe the statement therein to be true or the omission of facts to be not material.

(2) Any director, upon the payment by the director of a judgment so obtained against the director, shall be subrogated [sic.] to the rights of the plaintiff against the corporation, and shall have the right of contribution for the payment of the judgment against the director's fellow directors as would be individually liable under this section.

(C) For purposes of this section, lack of reasonable diligence in ascertaining the fact of a publication or the falsity of any statement contained in it or of the omission of a material fact shall be deemed knowledge of the publication and of the falsity of any untrue statement in it or of the omission of material facts.

(D) No action brought against any director, based upon the liability imposed by this section, shall be brought unless it is brought within two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or the director were unlawful, or within five years after the purchase of the securities, whichever is the shorter period, or, in the case of an action to enforce a right of contribution under this section, the action is brought within two

22

Plaintiffs also assert a common law fraud claim against E & Y

(Count X). E & Y argues that these state law claims are

years after the payment of the judgment for which
contribution is sought.

[6]    Ohio Rev. Code § 1707.43 provides:

A) Subject to divisions (B) and (C) of this section,
every sale or contract for sale made in violation of
Chapter 1707. of the Revised Code, is voidable at the
election of the purchaser. The person making such sale or
contract for sale, and every person that has participated
in or aided the seller in any way in making such sale or
contract for sale, are jointly and severally liable to
the purchaser, in an action at law in any court of
competent jurisdiction, upon tender to the seller in
person or in open court of the securities sold or of the
contract made, for the full amount paid by the purchaser
and for all taxable court costs, unless the court
determines that the violation did not materially affect
the protection contemplated by the violated provision.

(B) No action for the recovery of the purchase price as
provided for in this section, and no other action for any
recovery based upon or arising out of a sale or contract
for sale made in violation of Chapter 1707. of the
Revised Code, shall be brought more than two years after
the plaintiff knew, or had reason to know, of the facts
by reason of which the actions of the person or director
were unlawful, or more than five years from the date of
such sale or contract for sale, whichever is the shorter
period.

(C) No purchaser is entitled to the benefit of this
section who has failed to accept, within thirty days from
the date of such offer, an offer in writing made after
two weeks from the date of the sale or contract of sale,
by the seller or by any person that has participated in
or aided the seller in any way in making the sale or
contract of sale, to take back the security in question
and to refund the full amount paid by the purchaser.

23

preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p.  In their brief, Plaintiffs do not contest the preemptive effect of SLUSA on their state law claims.

> SLUSA provides:
>
> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).  The plain language of SLUSA shows that Plaintiffs' state law securities class action claims are completely preempted by federal law.  See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 123 n.5 (2nd Cir. 2003).

Accordingly, E & Y's motion to dismiss Counts VII, VII, and X of the consolidated amended complaint is well-taken and is **GRANTED.**


## Conclusion

In conclusion, Defendant Ernst & Young's motion to dismiss is well-taken and is **GRANTED**.  Ernst & Young is dismissed

as a party to this action.  The Court will not entertain motions for reconsideration of this order.

**IT IS SO ORDERED**

Date May 28, 2004                         s/Sandra S. Beckwith
                                          Sandra S. Beckwith
                                   United States District Judge

25