IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Walter W. Thiemann, <u>et al.</u>,  )
                                 )
                                 )
            Plaintiffs,          )  Case No. 1:00-CV-793
                                 )
    vs.                          )
                                 )
                                 )
OHSL Financial Corporation,      )
<u>et al.</u>,                        )
                                 )
            Defendants.          )

O R D E R

       This matter is before the Court on a motion to dismiss filed by Defendants Keating, Meuthing & Klekamp and Mark A. Weiss. (Doc. No. 256). For the reasons set forth below, Defendants' motion to dismiss is well-taken and is **GRANTED**.

I. Background

       As has been recounted by the Court in other orders, this case arises out of the 1999 merger between OHSL Financial Corporation ("OHSL") and Provident Financial Group, Inc. ("Provident"). Plaintiffs contend that the proxy materials issued in connection with the merger contained a number of materially false and misleading statements and omissions upon which they relied in deciding to vote in favor of the merger. Plaintiffs have asserted a variety of federal and state law securities violations claims against OHSL and Provident, individual members of each bank's board of directors, individual

corporate officers, the law firms Dinsmore & Shohl and Keating Meuthing & Klekamp ("KMK"), and individual lawyers of those law firms, and Ernst & Young, Provident's independent auditor.

The consolidated and amended class action complaint alleges that KMK served as counsel to Provident and the individual Provident defendants during the merger. The complaint further alleges that KMK actually prepared and co-wrote the allegedly false and misleading proxy materials that are the subject of this litigation. CAC ¶ 29. The complaint states that "[t]he KMK firm was added as a defendant in this lawsuit based largely on the testimony of defendants Roe and Hertlein of defendant Dinsmore, who each indicated that the KMK firm had a much larger role in the preparation of the Proxy Materials/ Registration Statement than was originally and previously known." Id. ¶ 30. The complaint alleges that KMK knew or in the exercise of due care should have known that the proxy materials contained materially false and misleading statements and omitted to state material facts. Id. Defendant Mark A. Weiss is a partner of KMK and was the attorney who actually drafted the final version of the proxy materials. Id. ¶ 31. The complaint also alleges that Weiss knew or should have known that the proxy materials contained materially false and misleading statements and omissions. Id.

The complaint alleges that KMK committed the following acts and omissions which led to the publication and dissemination of the alleged misleading proxy statements:

1. KMK failed to read the minutes of OHSL's board of directors meetings for the five years prior to the merger.  Had it done so, the complaint alleges, KMK would have learned that there was considerable opposition to the merger and would not have stated in the proxy materials that the vote to approve the merge was unanimous.  Complaint ¶ 66.

2. KMK failed to assess the financial sophistication of OHSL's board of directors.  Had it done so, the complaint alleges, KMK would have learned that many of the directors were elderly and infirm and lacked financial sophistication.  Thus, the complaint concludes, KMK was aware that there was a risk that the proxy materials were false and misleading but failed to alter its due diligence inquiry to take this risk into account.  Id. ¶ 67.

3. KMK failed to ensure that Provident complied with all of the requirements of the Securities Act of 1933 and the Securities Act of 1934.  Had it done so, the complaint alleges, KMK would have learned that the proxy materials were materially false and misleading regarding Provident's compliance with those acts.  Id. ¶ 69.

4. KMK knew but failed to disclose that OHSL Director Thomas Herron resigned in part because of his opposition to the merger.  Id. ¶ 70.

5. KMK failed to inquire into the validity of Ernst & Young and Provident's practice of accounting for auto leases off balance sheet.  As noted elsewhere in the complaint, errors in accounting for auto leases caused Provident to issue restatements of its earnings in March and April 2003.  Id. ¶ 73.  The complaint further alleges that KMK knew or should have known of the problems with Provident's accounting methodology and should have known that the statements of Provident's financial condition were incorrect.  Id. ¶ 76.

6. KMK failed to interview OHSL and Provident employees in order to ascertain the truthfulness of the proxy materials.  Id. ¶ 74.

7. KMK used, and provided to Dinsmore & Shohl, boilerplate language from prior merger transactions which was inappropriate for use in the OHSL/Provident merger.  Id. ¶¶ 75, 78.

8. KMK had a conflict of interest because it

3

      represented parties on both sides of the merger transaction. KMK failed to disclose the alleged conflict of interest and created the impression that the merger was an arms-length transaction. Furthermore, the complaint alleges, KMK created the false impression that Dinsmore & Shohl was the sole author of the allegedly misleading materials. <u>Id.</u> ¶ 79.

9. KMK vouched for the accuracy and truthfulness and compliance with the applicable securities laws of all of Provident's public filings. These public filings were later shown to be false, as evidenced by the March and April 2003 restatements. <u>Id.</u> ¶ 81.

10. Finally, the complaint alleges that KMK attorneys made materially false and misleading statements in earlier state court litigation over the merger. Specifically, the complaint alleges that KMK represented to the presiding state court judge that the board of directors vote was unanimous and that Provident was the highest bidder for OHSL. <u>Id.</u> ¶¶ 85-86.

Plaintiffs added Defendants KMK and Weiss as parties to this action in the consolidated and amended class action complaint filed December 31, 2003. The amended complaint asserts claims against KMK and Weiss for violations of Section 11 of the Securities Act, 15 U.S.C. § 77k (Count I) and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), SEC Rule 10(b)(5), 17 C.F.R. § 240.10b-5 (Count V). The amended complaint also asserts state law securities violations against KMK and Weiss pursuant to Ohio Rev. Code § 1707.41 (Count VII) and Ohio Rev. Code § 1707.43 (Count VIII). Finally, the complaint asserts a claim of common law fraud against KMK (Count X).

Defendants KMK and Weiss[1] now move to dismiss each of Plaintiffs' claims. KMK argues that each of Plaintiffs' federal securities claims is barred by either the applicable statute of limitations or statute of repose. KMK also argues it was not an expert who certified any statement with respect to Plaintiffs' Section 11 claim. KMK also argues that Plaintiffs failed to plead adequately the materiality and reliance elements of a Section 11 claim. KMK also argues that Plaintiffs' Section 10(b) claim should be dismissed for failure to plead scienter with sufficient particularity. Finally, KMK argues that Plaintiffs' state law claims are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and should be dismissed as well.

The Court agrees with KMK that Plaintiffs' federal securities law claims are barred by the applicable statute of limitations or statute of repose. In addition, the Court agrees with KMK that SLUSA preempts Plaintiffs' state law securities claims. Accordingly, KMK's motion to dismiss will be granted.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. In its consideration of a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the Plaintiff and accept all well-pleaded factual allegations in the

---

[1] From this point on, for ease of reference the Court will refer to KMK and Weiss collectively as "KMK."

complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) and Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. Blackburn v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1974). A court will, though, accept all reasonable inferences that might be drawn from the complaint. Fitzke v. Shappell, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

When considering the sufficiency of a complaint pursuant to a Rule 12(b)(6) motion, this Court recognizes that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-6 (1957).

### III. Analysis

#### A. Federal Claims

Plaintiffs' federal securities law claims are barred by the applicable statute of limitations and/or statute of repose.[2] As the Court stated in its order addressing Defendant Ernst & Young's motion to dismiss (Doc. No. 336), Section 13 of the Securities Act, 15 U.S.C. § 77m, imposes a one year statute of limitations and a three year statute of repose on claims arising under Section 11. The one year statute of limitations begins to

---

[2] Because it is clear from the face of the complaint that these claims are time-barred, the Court may address the statutes of limitation and repose on a Rule 12(b)(6) motion. Hoover v. Langston Equip. Assoc., Inc., 958 F.2d 742, 744 (6th Cir. 1992).

run when the plaintiff is on actual or inquiry notice of his claim or claims. New England Health Care Emp. Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 497, 500 (6th Cir. 2003); In re First Energy Sec. Lit., __F. Supp.2d__, No. 5:03-CV-1684, 2004 WL 938440, at *12 (N.D.Ohio May 3, 2004). The limitations period begins to run when a reasonably diligent investigation would have revealed the fraud. New England Health Care, 336 F.3d at 501. The three year statute of repose period begins to run when the security is first bona fide offered to the public. P. Stoltz Family Partnership L.P. v. Daum, 355 F.3d 92, 100, 106 (2nd Cir. 2004). A security has been bona fide offered to the public on the effective date of the registration statement. Finkel v. Stratton Corp., 962 F.2d 169, 173 (2nd Cir. 1992). The three year statute of repose in Section 13 imposes an absolute time limitation, not subject to any of the principles of equitable tolling, after which claims are barred. Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991); In re Data Access Sys. Sec. Lit., 843 F.2d 1537, 1546 (3rd Cir. 1988).[3]

      The Supreme Court originally adopted a one year statute of limitations and a three year statue of repose for claims arising under Section 10(b). Lampf, 501 U.S. at 364. On July

---

[3] Because a claim arising under Section 11 does not involve scienter, Sarbanes-Oxley is not applicable. See In re Worldcom, Inc. Sec. Lit., 294 F. Supp.2d 431, 444 (S.D.N.Y. 2003); In re Enron Corp. Sec. Lit., No. MDL-1446, Civ. A-H-01-3624, 2004 WL 405886, at *12 (S.D.Tex. Feb. 25, 2004).

30, 2002, however, Congress passed the Sarbanes-Oxley Act which, <u>inter alia</u>, enlarged the limitations and repose periods on claims involving fraud, deceit, manipulation, or contrivance, to two and five years, respectively.  <u>See</u> 28 U.S.C. § 1658.  By its terms, Sarbanes-Oxley "appl[ies] to all proceedings . . . that are commenced on or after the date of enactment of this Act."  <u>Id.</u>  Sarbanes-Oxley is potentially applicable to a Section 10(b) claim because it requires proof of scienter.  <u>PR Diamonds, Inc. v. Chandler</u>, 364 F.3d 671, 681 (6th Cir. 2004).  The weight of opinion thus far, however, seems to be that Sarbanes-Oxley cannot be applied retroactively to revive claims that were already time-barred at the time of enactment.  <u>See</u> <u>Glaser v. Enzo Biochem, Inc.</u>, 303 F. Supp.2d 724, 723 (E.D.Va. 2003); <u>In re Heritage Bond Lit.</u>, 289 F. Supp.2d 1132, 1147 (C.D.Cal. 2003); <u>In re Enterprise Mtg. Accept. Co. LLC Sec. Lit.</u>, 295 F. Supp.2d 307, 312 (S.D.N.Y. 2003); <u>but see</u> <u>Roberts v. Dean Witter Reynolds, Inc.</u>, No. 8:02-CV-2115-T-26EAJ, 2003 WL 1936116, at *3 (M.D.Fla. Mar. 31, 2003)(holding that, because of Enron scandal, legislative history shows that Congress intended Sarbanes-Oxley to apply retroactively).

In this case, except for claims arising out of Provident's restatements of earnings in March and April 2003, the complaint shows that Plaintiffs had inquiry notice of their Section 11 and Section 10(b) claims federal securities claims

against KMK at least as early as the date of the filing of the original complaint in this action, which was September 20, 2000. Therefore, the statute of limitations on Plaintiffs' claims expired as of September 20, 2001. As Plaintiffs tacitly concede in their brief, they did not attempt to name KMK as a party until they filed their first amended complaint on February 4, 2002. See Doc. No. 67; Doc. No. 275, at 14. Therefore, Plaintiffs filed their amended complaint approximately four months too late.

In their complaint and papers, Plaintiffs state that they "were not on inquiry notice until December 2001, after testimony had been obtained from Defendants Roe and Hertlein which indicated that KMK had a much larger role in the preparation of the proxy materials that was originally and previously known." Doc. No. 275, at 14; see also CAC ¶ 30. As KMK correctly argues, this statement is actually an admission that Plaintiffs had some actual knowledge of KMK's participation in drafting the proxy materials at some time prior to December 2001.

Plaintiff's brief, however unintentionally, suggests that this actual awareness arose as early as about July 2001. Plaintiffs cite an article which was published in the Cincinnati Business Courier soon after the Court ruled on the initial motions to dismiss filed in the case (Doc. No. 46, Order of July 25, 2001). This article indicates that James Burke, an attorney

9

for KMK, was aware that OHSL CEO Kenneth Hanauer actually opposed the merger with Provident.  See Doc. No. 275, Ex. H.  Of course, the failure to disclose that Mr. Hanauer was opposed to the merger is one of the proxy statement's alleged material omissions.  Plaintiffs then state, "Somehow, Mr. Burke's knowledge never made it into the Proxy Materials/Registration, which was carefully purged by KMK to remove any hint of opposition to the merger."  Id. at 6.  Thus, Plaintiffs' own brief demonstrates that they drew an actual inference that KMK was involved in the alleged fraud based on the article in the Business Courier.

     Mr. Thiemann's deposition testimony indicates that he personally was actually aware and/or believed that fraud was involved in the merger "more than a year" before his September 19, 2001 deposition.  See Thiemann Dep. at 13-14.  Mr. Thiemann's testimony thus places his actual knowledge of fraud sometime in July or August 2000.  Having developed an actual belief or acquiring actual knowledge that fraud was involved in the merger in July or August 2000, Plaintiffs were at that point on notice to inquire further into to KMK's participation in the alleged fraud.  The Registration Statement itself is replete with references to KMK.  KMK provided an opinion regarding the tax consequences of the merger and provided an opinion on the legality of the Provident common stock being offered in exchange

10

for OHSL stock. See generally CAC Ex. B. KMK and Mark Weiss are listed as persons to receive copies of service. In fact, KMK appears in the proxy materials far more often, and in more significant roles, than Dinsmore & Shohl, and yet Plaintiffs named Dinsmore & Shohl and attorney Clifford Roe as Defendants from the outset of this case. It actually appears that there was far less in the proxy materials to suggest that Dinsmore & Shohl was likely a participant in the alleged fraud than KMK.

Where it is obvious from the registration statement and proxy materials that a law firm played a significant role in a transaction, and the investor has formed the belief the transaction is tainted by fraud, a reasonable investor would have continued to investigate whether the law firm also participated in the fraud. At that point, the plaintiff is on inquiry notice to investigate further into the law firm's role in the alleged fraud, even if he is not aware of all of the details of the law firm's participation. See Rothman v. Gregor, 220 F.3d 81, 96 (2nd Cir. 2000)(holding inquiry notice against accountants occurred even though plaintiffs had no specific information suggesting fraud by accountants; suspicion of accounting improprieties obliged plaintiffs to inquire into accountant's role in improprieties). Therefore, under the circumstances of this case, the Court finds that Plaintiffs were on inquiry notice regarding KMK's possible participation in the alleged fraud no

11

later than the time of the filing of the original complaint, which was September 20, 2000. By that time, Mr. Thiemann had already formed the belief that the shareholders' approval of the merger was procured by fraud and misrepresentation.[4] Mr. Thiemann had also decided to sue Dinsmore & Shohl, whose role in the transaction, as the registration statement indicates, was minor in comparison to KMK. Having decided to sue a law firm with an apparently minor role in the transaction, Plaintiffs were on sufficient inquiry notice to raise claims against a law firm with an obviously more important role in the transaction. Consequently, the one year statute of limitations on Plaintiffs' Section 11 and Section 10(b) claims ran on September 20, 2001. As noted, Plaintiffs did not attempt to name KMK as a party to this lawsuit until February 4, 2002, thus missing their filing deadline as to KMK by about four months.

Moreover, this Court joins those courts who have decided that Sarbanes-Oxley does not apply retroactively to revive expired claims. There is a general presumption against the retroactive application of newly enacted statutes, particularly in the absence of clear evidence of Congressional intent that the statute should be applied to cases arising before its enactment. Landgraf v. USI Film Products, Inc., 511 U.S.

---

[4] In addition, the actual filing of the complaint obviously signals that Plaintiffs believed that fraud was involved in the merger.

244, 294 (1994). In this case, the plain text of Sarbanes-Oxley shows that it applies only "to all proceedings . . . that are commenced on or after the date of enactment of this Act." The statute clearly evidences Congressional intent that it not be applied retroactively. This proceeding was commenced well before Congress enacted Sarbanes-Oxley. Therefore, by its plain language, Sarbanes-Oxley is clearly not applicable in this case. Moreover, application of Sarbanes-Oxley in this case would have an obvious retroactive effect because, by reviving an expired claim, it would essentially create a new cause of action, in contravention of both the language of the statute and the Supreme Court's admonition that retroactive application of a statute should not increase a party's liability for past conduct. See Pub.L. 107-204, Title VIII, § 804(c), July 30, 2002, 116 Stat. 801 ("Nothing in this section [Pub.L. 107-204, Title VIII, § 804, July 30, 2002, 116 Stat. 801, which amended this section and enacted provisions set out as a note under this section] shall create a new, private right of action."); Landgraf, 511 U.S. at 280. Therefore, Plaintiff's Section 11 and 10(b) claims are still barred by their respective one year statutes of limitations.

As indicated supra, at 7, the statute of repose begins to run on the effective date of the registration statement, which in this case was September 15, 1999. See Doc. No. 336, at 13.

13

Thus, the three year statute of repose in Section 13 bars Plaintiffs' Section 11 claims arising out of the March and April 2003 financial restatements.

In addition, the Court finds that the three year statute of repose established in Lampf is still applicable to Plaintiffs' Section 10(b) claims arising out of the restatements despite the enactment of Sarbanes-Oxley. A statute of repose is a substantive right of a potential defendant to be free from liability after an established period of years. See First United Methodist Church v. U.S. Gypsum Co., 882 F.2d 862, 865 (4th Cir. 1989). In this case, under the law in effect at the time of the effective date of the registration statement, KMK had a substantive right to have extinguished after three years any liability arising out of its role in issuing the proxy materials. Sarbanes-Oxley, if applied to extend the statute of repose to five years, would impair a right that KMK possessed at the time it acted. Therefore, Sarbanes-Oxley should not be applied retroactively to extend the statute of repose to encompass the March and April 2003 restatements of Provident's financial condition. See Landgraf, 511 U.S. at 280. Thus, the statute of repose in Lampf bars Plaintiffs' Section 10(b) claims based on the financial restatements.

In summary, for the reasons stated, Plaintiffs' federal securities law claims versus KMK are barred by either a one year

14

statute of limitations or a three year statute of repose. Accordingly, KMK's motion to dismiss these claims is well-taken and is **GRANTED**.

### B. State Claims

Plaintiffs also allege that KMK violated Ohio Rev. Code §§ 1707.41 (Count VII) and 1707.43 (Count VII). Plaintiffs also assert a common law fraud claim against KMK (Count X). As the Court stated in ruling on Defendant Ernst & Young's motion to dismiss, these state law claims are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p. See Doc. No. 336, at 21-24. Accordingly, KMK's motion to dismiss Plaintiffs' state law claims is well-taken and is **GRANTED**.

### Conclusion

In conclusion, Defendant Keating, Meuthing & Klekamp and Defendant Mark W. Weiss' motion to dismiss is well-taken and is **GRANTED**. Keating, Meuthing & Klekamp and Weiss are dismissed as a parties to this action. The Court will not entertain motions for reconsideration of this order.

**IT IS SO ORDERED**

Date June 4, 2004                     s/Sandra S. Beckwith
                                      Sandra S. Beckwith
                                      United States District Judge