# Exhibit B

## SUPPLEMENTAL FILINGS BY THE OHSL AND PROVIDENT DEFENDANTS

| | | | |
|---|---|---|---|
| • | Document 173 | Notice of Filing Supplemental Material in Support of Motion to Reconsider Class Certification and Motion to Decertify | Filed June 19, 2003 |
| • | Document 197 | Notice of Filing Additional Supplemental Material In Support of Motion to Reconsider Class Certification and Motion to Decertify | Filed July 21, 2003 |
| • | Document 199 | Notice of Filing Corrected Citation | Filed July 23, 2003 |
| • | Document 201 | Motion for Leave to File Supplemental Authority *NUNC PRO TUNC* | Filed July 28, 2003 |
| • | Document 209 | Defendants' Reply Memorandum in Support of Second Filing of Supplemental Materials in Support of Motion to Reconsider Class Certification and Motion to Decertify | Filed Aug 29, 2003 |
| • | Document 242 | Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to Submit Motion to Reconsider | Filed Jan 20, 2004 |
| • | Document 316 | Motion for Leave to File Supplemental Memorandum in Opposition to Plaintiffs' Motion to Certify the Consolidated Amended Complaint with Memorandum in Support and Attached Proposed Supplemental Memorandum | Filed Apr 23, 2004 |

# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, on behalf of himself and of all others similarly situated, | : : : | Case No. C-1-00-793 |
| | : | Judge Sandra S. Beckwith |
| Plaintiff, | : | |
| | : | Magistrate Judge Hogan |
| vs. | : | |
| OHSL Financial Corporation, et al. | : | |
| | : | **AFFIDAVIT OF PAUL** |
| Defendants. | : | **HACKETT** |

STATE OF OHIO        :
                     : SS:
COUNTY OF HAMILTION  :

### AFFIDAVIT OF PAUL HACKETT

**PAUL HACKETT**, being duly sworn, deposes and states as follows:

1. I am one of the plaintiff's counsel in the Tribble litigation, Case No. 1-03-403.

2. I make this affidavit in opposition to the motion for leave to file a supplemental memorandum in opposition to class certification in the above-referenced case (Doc. No. 316), which I have reviewed in its entirety. My reasons for submitting this affidavit have nothing to do with the procedural posture of the case, but relate only to the inaccurate statements made in the motion itself and in the attachments to the motion for leave, which are discussed in detail below.

3. From the outset of the Tribble litigation it was apparent that defense counsel Elizabeth Mason and Mary Lynn Birck were treating my then co-counsel, Michael G. Brautigam, and the charges contained within the complaint not to mention the judicial process with inexplicable disrespect. One example, though far from the only example, is their refusal to copy Mr. Brautigam on correspondence and pleadings, a posture I find unusual, unprofessional, and deliberately designed to sow confusion into the process. Another example of the disrespect for the process was Ms. Mason's compulsive need to work on

1

needlepoint and Ms. Birck's need to read paperback novels during depositions. I believe that this was intended to show contempt for the deposition process in general and Mr. Brautigam specifically. Additionally, many of my conversations with defense counsel from the inception of the litigation consisted of diatribes by defense counsel against Mr. Brautigam, and threats to "get" Mr. Brautigam, attacks that noticeably intensified after plaintiff filed a motion to disqualify defense counsel due to the fact that they are employed by one of the defendants.

4. On March 22, 2004 I attended an informal discovery conference that was attended by all counsel. Ms Birck was the primary spokesperson for most of the defendants, and spent much of the time personally criticizing Mr. Brautigam and myself. I believe that her comments, including her comment that the deposition of Chief Deputy Combs was "a waste of time", were inappropriate, and offensive. Ms. Birck also threatened to sanction the plaintiff and their counsel if certain defendants were not dropped from the forthcoming amended complaint.

5. Many of the statements in the motion are false. The false statements below are listed in the order included in the motion.

6. On page 1, defendants state that Mr. Brautigam's conduct at the deposition—which took place in a prison--became "irrational and personally threatening to defendants' counsel." Perhaps I was attending a different deposition or Ms. Birck was living in a parallel universe that day. As discussed herein, Mr. Brautigam, in response to an inappropriate and deliberate provocation by Ms. Birck, raised his voice and used some rather salty language intended to instruct her to cease her comments. This exchange between Ms. Birck and Mr. Brautigam took place in a split second while off the record. At no point did he lunge, rise from his chair, or become personally threatening to anyone. I was there sitting next to Mr. Brautigam at the opposite end of a 15 foot table from defense counsel. Their characterization of the event is simply melodramatic and preposterous.

7. At page 3 of the motion, in their zeal to trash Mr. Brautigam, defense counsel deliberately misstate what happened. Initially, Mr. Brautigam was to defend the deposition. Because I believed that it was appropriate for me to make objections as needed, I also objected. To be clear I in fact thought that Mr. Brautigam was not objecting in instances where he should and therefore interjected an objection. Ms. Birck objected to my objection then Mr. Brautigam spoke privately to me and told me that he felt that defense counsel was correct, and that only one attorney should object or indeed make comments on the record. At a break, it was determined that I would defend the deposition. Defense counsel have deliberately misstated the record in an attempt to cast Mr. Brautigam in the worst possible light, even though this is

simply not true. It was Mr. Brautigam who wanted to scrupulously maintain that only one attorney speak on the record, a position that he maintained in the depositions he took.

8. Mr. Brautigam was in no way hostile on or off the record, although he did disagree with Ms. Birck's plodding prefatory comments and informal attitude toward my client.

9. The deposition proceeded uneventfully with breaks taken as needed. When informed that the deposition would have to end at 5pm due to the needs of the prison, Mr. Brautigam did express a preference to see if somehow we would be able to continue past 5pm, but at no time did he rise excitedly from his chair nor make any demands on anyone. Again, it was I that was openly troubled by this development and attempted to persuade the jail officials to make acomidations in order to allow the deposition to continue to completion. This made perfect sense to me, although defense counsel did not concur and appeared unenthusiastic about continuing. I don't believe Mr. Brautigam made any substantive comment regarding the issue.

10. At this point, I initiated a discussion with defense counsel regarding scheduling matters. Ms. Birck habitually scheduled depositions without contacting my office to see if said depositions conflicted with my schedule. Typically she would notify my office and give oral notice of the deposition with only 1 or maybe 2 weeks notice. I repeatedly asked her to accord me and Mr. Brautigam the most basic of professional courtesy by contacting my office in advance to schedule depositions then follow up the agreement with a written notice of deposition. She clearly did not appreciate the professional need for such matters.

11. At some point in the discussion, Mr. Brautigam interjected his support for my position to which Ms. Birck replied **"Oh Michael just shut up you don't know the Federal Rules your not even licensed to practice in Federal Court"** to which Mr. Brautigam shot back to her to shut her mouth only interjecting a salty but oft used expletive in the form of an adjective used to modify Ms. Birck's mouth. Her comment, in substance, implied that Mr. Brautigam was ignorant and was not even admitted to Federal Court. Additionally her comment was completely non responsive and inappropriate to the then pending discussion.

12. Ms. Birck's response to Mr. Brautigam's choice of words was a combination of satisfaction and feigned shock. With that said Mr. Brautigam did not lunge across the conference table, did not scream and I did not put my arm across Mr. Brautigam's chest or attempt to restrain him in any way; there was no need to. Mr. Brautigam was not in need of restraint. He raised his voice and used a single salty word in response to Ms. Birck's unprofessional, unecesary

3

and provocative comment. He did not make any threats, nor make any threatening gestures. Assertions to the effect that he did are false, ludicrous, and lack intregrity.

13. After this exchange the discussion quickly concluded and defense counsel left the room approximately five to ten minutes later with these issues unresolved.

14. The worst that can be said of Mr. Brautigam's behavior is he responded emotionally in response to being baited and being treated disrespectfully.

15. After the deposition, Mr. Brautigam expressed to me his regret for his choice of words. We discussed how to resolve this matter and proceed with the discovery schedule. Mr. Brautigam indicated that he would apologize and it is my understanding that he in fact did within a business day or two.

16. In my discussions with defense counsel the week of 5 April 2004, at no point did I ever state or imply that I agreed with their assessment that their personal safety was at risk. Any assertion that I did, again, lacks integrity. Indeed, I find such a suggestion ridiculous. In my personal experience, counsel are often intemperate, especially at the end of a long day, and Mr. Brautigam's conduct fell within the ambit of having a bad day. Although Mr. Brautigam raised his voice he did not say or do anything remotely threatening.

17. However during these discussions, Ms. Birck stated to me that provoking Mr. Brautigam was a "strategy," and they had been monitoring the Thieman litigation and working with defense counsel on that case in an effort to personally attack Mr. Brautigam, and dig up dirt on him. She conceded to me that she was pleased that she was able to provoke Mr. Brautigam so early in the discovery process.

18. At no point did I "guarantee" that I would "control" Mr. Brautigam's behavior. What I did say is that I could guarantee that such an exchange would not take place again. I simply based that assertion on my observation of Mr. Brautigam's disapointment in his response to Ms. Birck's provocation. Additionally, Mr. Brautigam is an adult, and I am do not guarantee the behavior of other adults in any circumstances. Second, there was nothing to guarantee. Mr. Brautigam was provoked, and unfortunately rose to the baiting. Again what he said, although inappropriate, was not abusive and not threatening.

19. I take particular issue with the last full paragraph of page 6, where defense counsel states that Mr. Brautigam did not apologize but justified his conduct because "She asked for it." It was clear from the facts and circumstances, and from Ms. Birck's comments and tone, that she was intending to provoke Mr. Brautigam, and regrettably Mr. Brautigam responded. As indicated above, this is consistent with the deliberate strategy of provoking Mr. Brautigam.

4

20. What is described as "particularly worrisome" is what the defense counsel attempt to paint as a pattern of behavior. Consistent with paragraph 17 above, it was clear to me that defense counsel was out to personally attack Mr. Brautigam, and the inclusion of unfounded, unsworn rumors, is particularly repulsive. Despite their best efforts, defense counsel was apparently unable to get attorneys to come forward with specific sworn allegations of misconduct, because there is no misconduct, and the smear tactic should not be permitted.

21. The characterization that Mr. Brautigam shrieked profanities while lunging at female defense counsel is preposterous. Such conduct did not happen in the universe in which Mr. Brautigam and I inhabited that day. There were no threats exchanged directly or implicitly.

22. Consistent with the Federal Rules, the Local Rules, and the Introductory Statement on Civility, lawyers must accord one another with respect. However this respect goes both ways, and my impression from inception, is that defense counsel was deliberately disrespectful to Mr. Brautigam in her strategic attempt to provoke Mr. Brautigam. Indeed, Ms. Birck's comments immediately preceding Mr. Brautigam's comments—**"Oh Michael just shut up you don't know the federal rules you're not even licensed to practice in federal court"** which was delivered in an extremely condescending tone, is disrespectful to Mr. Brautigam is hardly consistent with the Federal Rules.

**FURTHER AFFIANT SAYETH NAUGHT**

Paul L. Hackett

Sworn to before me and subscribed in my presence this ___ day of June 2004.

GREGORY ALAN MOORE, Attorney at Law
Notary Public, State of Ohio
Commission has no expiration date.
Section 147.03

5

# Exhibit D

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, on behalf of himself and of all others similarly situated, | : : | Case No. C-1-00-793 |
| | : | Judge Sandra S. Beckwith |
| Plaintiff, | : | |
| | | Magistrate Judge Hogan |
| vs. | : | |
| OHSL Financial Corporation, et al. | : | **AFFIDAVIT OF MICHAEL G.** |
| Defendants. | : | **BRAUTIGAM** |

STATE OF OHIO          :
                       : SS:
COUNTY OF HAMILTION :

**MICHAEL G. BRAUTIGAM, being duly sworn, deposes and states as follows:**

1. I am one of the counsel for the Plaintiffs in this action.

2. I make this affidavit in opposition to the motion for leave to file supplemental memorandum in opposition to the Plaintiffs' Motion to Certify the Consolidated Amended Complaint (Doc. No. 316), which I have reviewed in its entirety.

3. I concur with the description of events as set forth in the affidavit of Paul Hackett, my former co-counsel in the case of *Tribble v. Graham,* Case No. C-1-03 403. (*See*, Affidavit of Paul Hackett).

4. In sum, I believe the extent of the incident in *Tribble* was that I raised my voice and used salty language during an off the record exchange with defense counsel at a deposition. At no time did I ever threaten defense counsel or anyone else, or make any threatening gestures. I apologized to defense counsel for this improper lapse in judgment, and poor choice of language.

5. I have never had such a lapse in judgment during a case before, and do not intend on letting such an incident occur again.

**FURTHER AFFIANT SAYETH NAUGHT**

_____
Michael G. Brautigam

Sworn to before me and subscribed in my presence this 8th day of June 2004.

*Stephanie A. Hite*

STEPHANIE A. HITE
Notary Public, State of Ohio
My Commission Expires
February 16, 2009

2