

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRUCT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER THIEMANN, et al. | : | Case No. C-1-00-793 |
| Plaintiffs, | : | Judge Sandra S. Beckwith |
| vs. | : | Magistrate Judge Timothy Hogan |
| OHSL FINANCIAL CORP., et al. | : | |
| Defendants. | : | |
| | : | |

### PLAINTIFFS' MOTION TO CERTIFY THIS COURT'S ORDER DISMISSING THE CASE AGAINST DEFENDANTS KEATING, MEUTHING & KLEKAMP LLP AND MARK A. WEISS FOR IMMEDIATE APPEAL PURSUANT TO 28 U.S.C. §1292(b) (DOC. NO. 338).

Dated: June 17, 2004

GENE MESH & ASSOCIATES

_____
Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the
Putative Class

1

Plaintiffs, by and through counsel, respectfully request that this Court certify its June 4, 2004 Order (Doc. No. 338) which dismisses Defendants Keating, Meuthing & Klekamp and Mark A. Weiss (hereinafter "the KMK Defendants") from this action. Plaintiffs submit that this Order involves controlling questions of law pursuant to 28 U.S.C. §1292(b) to which there is substantial ground for difference of opinion and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation. Plaintiffs submit the following Memorandum in support thereof.

Plaintiffs respectfully file this motion, not as a motion for reconsideration, but to show the District Court how many significant issues the case presents which are suitable for resolution by the Sixth Circuit. Plaintiffs submit that there is a recognized split in the courts as to the application of the Sarbanes-Oxley Act, as well as in the determination of inquiry versus actual notice. In particular, the application of the Sarbanes-Oxley Act is the type of issue which may ultimately be resolved by the United States Supreme Court. As a result, fore the foregoing reasons, it is fitting to certify this Order now for immediate appellate review.[1]

---

[1] This is also the case given the ascending age and declining health of the OHSL Director Defendants in this litigation. As previously noted, the Plaintiffs will unquestionably be prejudiced if the appeal should go in their favor, but the OHSL Director Defendants are then unavailable for trial.

Respectfully Submitted,

*[signature]*

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the
Putative Class

## MEMORANDUM

### I. INTRODUCTION

This case arose out of the 1999 merger between OHSL Financial Corporation (hereinafter "OHSL") and the Provident Financial Group, Inc. (hereinafter "Provident"). The KMK Defendants served as counsel to Defendant Provident and the Individual Provident Defendants during the merger. The Plaintiffs filed their original complaint which named the OHSL and Provident Defendants, as well as Defendants Dinsmore & Shohl, LLP, Defendant Roe and Defendant Hertlein on September 20, 2000. (Doc. No. 1). Although Plaintiffs knew that the KMK Defendants played a role in the preparation of the Proxy Materials/Registration Statement, Plaintiffs did not name the KMK Defendants in this Complaint because they had no reason to believe that it was a significant role, or that they actually prepared or co-wrote the Proxy Materials/Registration Statement. It was not until December of 2001, when the Plaintiffs deposed Defendants Clifford Roe and Mark Hertlein, that Plaintiffs first learned that KMK Defendants actually prepared and co-wrote the Proxy Materials/Registration Statement. (Doc. No. 275).

As a result, on February 4, 2002, the Plaintiffs filed their First Amended Complaint and named the KMK Defendants as parties in this action. (Doc. No. 67). The KMK Defendants filed their Motion to Dismiss (Doc. No. 256) on January 30, 2004, and Plaintiffs filed their Memorandum in Opposition thereto on February 17, 2004 (Doc. No. 275).[2] On June 4, 2004, this Court found the KMK Defendants' Motion to Dismiss to be well taken and granted the same. (Doc. No. 338).

## II. LEGAL ARGUMENT

### A. Certification of the Order Pursuant to 28 U.S.C. §1292(b)

Under 28 U.S.C. §1291, appellate jurisdiction is limited to appeals from "final decisions of the district courts." *Swope v. Columbian Chems. Co.*, 281 F. 3d 185, 191 (5th Cir. 2002). In a case involving multiple parties, dismissal of one party is not appealable absent a certification by the district court that complies with Federal Rule of Civil

---

[2] Although the Court implicitly fault Plaintiffs for not naming the KMK Defendants earlier, all of the evidence that Plaintiffs had assembled in their extremely diligent and thorough pre-filing investigation indicated that the Dinsmore Defendants, and not the KMK Defendants, had had the major role in the preparation and dissemination of the materially false and misleading Proxy Materials/Registration Statement. The Plaintiffs only initially had access to the deposition testimony of certain OHSL officers and directors. In retrospect, these individuals showed that they misunderstood the role of the Dinsmore Defendants with respect to the Proxy Materials/Registration Statement as much as they later misunderstood who their counsel was in this case. Once Plaintiffs had the ability to conduct discovery and obtain the evidence which showed that the KMK Defendants were actively involved in the fraud, as opposed to merely having participated in the Proxy Materials/Registration Statement, the Plaintiffs moved expeditiously to amend their complaint and add the KMK Defendants with the explicit permission of the Court. (*See*, Doc. Nos. 62 and 63). Consequently, the Plaintiffs cannot be faulted for failing to obtain the evidence of KMK's massive participation in the fraud until fifteen months after the case was filed. Further, it must be acknowledged that it was not the intent of the PSLRA that the mandatory stay provisions would result in a party's valid and meritorious claim being dismissed due to a party's inability to timely conduct the discovery necessary to obtain the evidence to bring said claim, which is exactly what happened here.

Procedure 54(b). *See, Carson v. Owen*, 578 F.2d 572, 574 (5th Cir. 1978). Fed.R.Civ.P. 54(b) provides as follows:

> (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

*Id.* In other words, Rule 54(b) allows a court to "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties," but does not authorize the appeal of decisions that, if made in stand-alone litigation, would not be "final." *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202 (1976). As a result, unless the court enters final judgment on an entire "claim," or wraps up the case with respect to all claims involving a particular party, Rule 54(b) does not permit an immediate appeal. *Steve's Homemade Ice Cream, Inc. v. Stewart*, 907 F.2d 364 (2[d] Cir. 1990); *FDIC v. Elefant*, 790 F.2d 661, 664 (7th Cir. 1986).

However, orders and/or questions can be certified for appeal pursuant 28 U.S.C. § 1292. 28 U.S.C. § 1292 discusses with interlocutory decisions and provides, in pertinent part, as follows:

> (a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
>
> (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands,

5

> or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;
>
> . . .
>
> (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

*Id.*

As stated above, to certify a question for appeal under § 1292(b) this Court must find that the order at issue involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). As explained in 2 Fed. Proc., L. Ed. § 3:360 at 456:

> An appeal under 28 U.S.C. § 1292(b) should not be granted where the record does not present a case which is ripe for appellate determination. If the answer to a question of law is dependent on the development of a record at trial, such as where complicated questions of law and fact have been presented to the appellate court before they have been explored by the trial court, or if the record presented to the appellate court is unsatisfactory and confused, an interlocutory appeal should not be allowed, since an appellate court should not give an advisory opinion on unknown facts.

*Id.* Exceptional circumstances are usually required for a district court certify a question under 28 U.S.C. § 1292(b). *Kraus v. Bd. Of County Road Commissioners,* 364 F.2d 919 (6th Cir. 1966); *Cardwell v. Chesapeake & Ohio R.R. Co.,* 504 F.2d 444 (6th Cir. 1974). A

6

party's "question as to the correctness of a ruling alone is not grounds for certification." *Gronovich v. Dunn*, 573 F. Supp. 1340, 1342 (E.D. Mich. 1983).

Upon certification, the Court of Appeals may in its discretion permit an appeal to be taken. As discussed in *Dibidale of Louisiana v. American Bank & Trust Co.*, 916 F.3d 300, (5th Cir. 1990), a Rule 54(b) certification does not apply retroactively to the date of the original judgment. Id. at 304. Instead, the judgment becomes final and appealable when certified under Rule 54(b). Id. Thus, for purposes of Federal Rule of Appellate Procedure 4, a judgment becomes final on the date of entry of the Rule 54(b) certification, not the date on which the partial judgment is entered.

A Court of Appeals reviews a district court's decision to certify under Rule 54(b) for an abuse of discretion. *Federal Sav. & Loan Ins. Corp. v. Cribbs*, 918 F.2d 557, 559 (5th Cir. 1990). Although Rule 54(b) requests should not be granted routinely, "it is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460 (1980). In making this decision, the district court must consider "judicial administrative interests as well as the equities involved." Id. So long as the district court's certification is not "clearly unreasonable," it will not be disturbed. Id. at 10.

However, it is rather doubtful that appellate review may be had of a district judge's refusal to certify pursuant to 28 U.S.C. §1292(b). *In re Master Key Antitrust Litigation*, 528 F.2d 5, 8 (2d. Cir. 1975) (trial judge's refusal to certify issues pursuant to 28 U.S.C. §1292(b) is not appealable); *Pfizer, Inc. v. Lord*, 522 F.2d 612, 614, n.4 (8th Cir. 1975) ("This court is without jurisdiction to review an exercise of the district court's

7

discretion in refusing such [§ 1292(b)] certification."), *cert. denied*, 424 U.S. 950, 96 S.Ct. 1421, 1422 (1976); *United States v. 687.30 Acres of Land,* 451 F.2d 667, 670 (2d. Cir. 1971) ("We have no jurisdiction to review the trial court's denial of the § 1292(b) certificate."), *cert. denied,* 405 U.S. 1026 (1972). Appellate review of a § 1292(b) denial to certify would undercut the policy embodied in the statute which requires both the district court and the court of appeals to exercise their discretion in favor of interlocutory review. *See* S.Rep. No. 2434, 85th Cong., 2d Sess. *reprinted in* 1958 U.S. Code Cong. & Admin. News 5255, 5259 (letter from Judicial Conference of the United States). Consent of the trial judge is mandatory. *Coopers v. Lybrand v. Livesay*, 437 U.S. 463, 474, 98 S.Ct. 2454 (1977).

In *Brown v. Mississippi Valley State University,* 311 F.3d 328, 332 (5th Cir. 2002), the Fifth Circuit stated that the district court did not abuse its discretion in certifying Brown's appeal because it was reasonable since the issues in the case were intertwined. Id. It had to be determined if Abraham was properly dismissed from this case before proceeding with the claims against Newman, because the conspiracy claims against them were intertwined. Id. Further, Abraham has not adequately explained how the court's consideration of this appeal would harm the remaining defendants, nor is any harm apparent. Id.

The same type of concern is present in this case. The claims and parties in this case are all intertwined because they all center around the creation of the Proxy Materials/Registration Statement, and whether or not the Proxy Materials/Registration Statement contains material misstatements. Although there are several other issues in this case, and several other problems in relation to the Proxy Materials/Registration

Statement, these issues alone illustrate how all the parties and claims are intertwined. Plaintiffs will discuss each question for certification in turn.

### 1. Defenses Based upon the Statute of Limitations Are Not Ordinarily Appropriate for a Motion to Dismiss

The KMK Defendants did not meet its burden of proof in relation to its affirmative defense of the statute of limitations. *Picard Chem., Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1118 (W.D. Mich. 1996). Plaintiffs are not required to negate this affirmative defense. Rather, it is defendants' burden at all stages of the litigation. Id. (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). For this reason, Plaintiffs argued that it was inappropriate to address the statute of limitations on a motion on the papers, especially when the defense is that Plaintiffs should have discovered the facts underlying their claim. (Doc. No. 275); *Fischer v. AmSouth BanCorporation*, 971 F. Supp. 533, 537 (M.D. Fla. 1997) citing (*Smith v. Duff & Phelps, Inc.*, 891 F.2d 1567, 1572 (11th Cir. 1990)). Plaintiffs further argued that the facts underlying their claim negated this affirmative defense since they showed that the Plaintiffs did not have any inquiry notice of their claim against the KMK Defendants until Plaintiffs deposed Defendants Roe and Hertlein. (Doc. No. 275). The Court argues that Plaintiffs had inquiry notice much earlier based upon the Cincinnati Business Courier article[3], Plaintiff

---

[3] With all due respect to the Court, the Cincinnati Business Courier article does not indicate how the Plaintiffs would have had inquiry notice of the KMK Defendants' participation in the preparation of the Proxy Materials/Registration Statement. Rather, it is only additional evidence that the Proxy Materials/Registration Statement presented a false image of unanimity. Plaintiffs' statement in the CAC that "Somehow, Mr. Burke's knowledge never made it into the Proxy Materials/Registration, which was carefully purged by KMK to remove any hint of opposition to the merger," was written after the Plaintiffs had taken the depositions of Defendants Hertlein and Roe and had learned of the KMK Defendants' significant participation in the preparation of the Proxy Materials/Registration Statement. Plaintiffs could not have had this insight or perspective

9

Walter Thiemann's deposition[4], and the information contained in the Registration Statement itself[5], but these observations are simply inaccurate. Furthermore, more importantly, dismissal based upon these factors would not reflect the appropriate balance sought by federal courts regarding inquiry notice.

In *Bovee, et al. v. Coopers & Lybrand, et al.*, Case No. 2:97-CV449 (S.D. OH 2004), the district court discussed the majority view regarding inquiry notice. (*See, Bovee* Opinion, Attached as Exhibit A at p. 15). In particular, the district court stated that "the

---

at the time the article was published. The article gives no indication that Mr. Burke's knowledge of Mr. Hanauer's actions was the result of his participation in the preparation of the Proxy Materials/Registration Statement. Indeed, Mr. Burke was not part of the KMK transactional team that compiled the materially false and misleading Proxy Materials/Registration Statement.

[4] Mr. Thiemann's deposition transcript does not state that he became aware of Defendant KMK's participation in the fraud a year before his deposition, but only that Mr. Sulau told him that fraud was being perpetrated in relation to the projected unanimity of the merger. In particular Mr. Thiemann stated:

> "He mentioned that the, that the --- one of the directors had resigned, and I knew that after - - I wasn't aware of that. He also mentioned that, that the unanimous votes were not unanimous, and that the CEO had changed - - had voted on the Board level for the merger and he understood that his own personal shares were voted against the merger."

(Thiemann dep. p. 14). Mr. Thiemann stated that was this was all that he learned from Mr. Sulau. (Thiemann dep. p. 15). Consequently, there is a huge distinction between Mr. Thiemann knowing that the OHSL had been defrauded, and knowing that it was the KMK Defendants that had done the defrauding. Nowhere in his transcript does Plaintiff Walter Thiemann stated that he was aware that Defendant KMK had defrauded him.

[5] Plaintiffs do not dispute that there are several references to the KMK Defendants in the Proxy Materials/Registration Statement. However, since the Dinsmore Defendants was counsel for the OHSL Defendants, and since the testimony of the former OHSL Director Defendants was that it was the Dinsmore Defendants who prepared the Proxy Materials/Registration Statement, and that the KMK Defendants just reviewed it, Plaintiffs did not want to be overzealous in naming the KMK Defendants as parties until they had specific evidence which showed the KMK Defendants' participated in the fraud and/or prepared the Proxy Materials/Registration Statement.

limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud," and that this was an equitable standard because it "reflects an appropriate balance between 'the staunch federal interest in requiring plaintiffs to bring suit promptly. . . and the equally strong interest in not driving plaintiffs to bring suit. . . before they are able, in the exercise of reasonable diligence, to discover the facts necessary to support their claims." (*See,* Exhibit A at p. 15). In the present case, the Plaintiffs brought their suit against the KMK Defendants as quickly as they could once there was evidentiary support to support the KMK Defendants' participation in the preparation of the Proxy Materials/Registration Statement. Unfortunately, this Court is now ostensibly punishing the Plaintiffs for their rational, respectful, and calculated decision to not needlessly subject every potential party to the litigation until there was evidence to necessitate such a placement in this action. Once obtained, the Plaintiffs acted expeditiously.[6]

Similarly, the *Bovee* case also importantly notes the disfavor that is associated with deciding cases on the basis of factual statute of limitations issues. In *Bovee,* the district court stated as follows:

---

[6] It can hardly be public policy to encourage plaintiffs to file suit accusing individuals and entities of securities fraud without a sufficient evidentiary basis in order to preserve any rights they may have under the statute of limitations. In this case, the Plaintiffs followed all of the rules, and did everything right. Plaintiffs chose not to name KMK as defendants in the initial litigation based upon to KMK's mere involvement in the Proxy Materials/Registration Statement, but instead waited to secure evidence of fraud. Such restraint should be encouraged, not punished. Once the Plaintiffs were finally given the opportunity to conduct discovery, and adduce the evidence that the KMK Defendants had actively participated in the fraud, the Plaintiffs moved with deliberate speed, and this Court's approval, to file a document that added specific factual allegations against the KMK Defendants. The Plaintiffs should not be punished, and the KMK Defendants rewarded, for the diligence and patience of Plaintiffs and their counsel. This is especially the case when the KMK Defendants were certainly on constructive notice that they would be named as defendants in this action once this additional evidence was discovered.

11

> "The multifaceted question of whether storm warnings were apparent involves issues of fact. . . In the archetypical case, therefore, it is for the factfinder to determine whether a particular collection of data was sufficiently aposematic to place an investor on inquiry notice. *Marks v. CDW Computer Ctrs., Inc.* 122 F.3d 363 368-269 (7th Cir. 1997); *See Also, Gen. Builders*, 796 F.2d at 12 (emphasizing that this sort of factual question may be determined as a matter of law only when the underlying facts are either admitted or undisputed). So too the related question of whether a particular plaintiff exercised reasonable diligence in the face of such warnings. *Maggio*, 824 F. 2d at 128. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 803 (1st Cir. 1987).

(*See*, Exhibit A at p. 18). Thus, it is clear that this district believes that complicated statute of limitations issues are inappropriate for motions to dismiss and/or motions for summary judgment.

As a result, since the issue of whether or not a motion to dismiss should be resolved on the basis of the affirmative defense of statute of limitations is a controlling question of law, for which there is substantial ground for difference of opinion, and from which an immediate appeal from the order may materially advance the ultimate termination of the litigation, this Order should be certified. 28 U.S.C. §1292(b).

2. **The Plaintiffs' Claims Are Not Time Barred as to the KMK Defendants Because They Relate Back to the Filing of the Original Complaint.**

This Court did not consider the Plaintiffs' argument of the relation back of the Plaintiffs' claims against the KMK Defendants. Fed.R.Civ.P. 15(c)(2) provides for the relation back of amendments to the date of the original complaint "if the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading." (Doc. No. 275). This was the situation in the present case. The Plaintiffs pled the same claims against the KMK Defendants in its First Amended Complaint on February 4, 2002 that they had pled

against the Dinsmore Defendants in the original complaint. (Doc. No. 1). But for the testimony of the former OHSL Director Defendants that it was their counsel who had prepared the Proxy Materials/Registration Statement, the Plaintiffs would have also named the KMK Defendants in this original complaint. However, without any evidence to the contrary, the Plaintiffs could not name the KMK Defendants without concern for being made subject to Rule 11 Sanctions.

Furthermore, despite the Plaintiffs' decision not to name the KMK Defendants in the original Compliant, the KMK Defendants knew or should have known that they should have been named as parties based upon their significant role in the preparation of the Proxy Materials/Registration Statement. As a result, the KMK Defendants knew or should have known that once it was discovered and/or disclosed through discovery that the KMK Defendants, or Provident's counsel, played a large role in the participation of the preparation of the Proxy Materials/Registration Statement, they also would be named as defendants in this action. As a result, the KMK Defendants had adequate notice of the action such that they would not be prejudiced in maintaining their defenses.

Therefore, since the issue regarding whether or not the claims against the KMK Defendants should relate back to the filing of the original complaint is a controlling question of law, for which there is substantial ground for difference of opinion, and from which an immediate appeal from the order may materially advance the ultimate termination of the litigation, this Order should be certified. 28 U.S.C. §1292(b).

3.  **Retroactivity of Sarbanes-Oxley Act Continuing Fraud Doctrine.**

A dispute exists in the present case as to whether or not the Sarbanes-Oxley Act should be applied retroactively to the facts of this case. This is a powerful argument that the Order should be immediately certified for appeal.

The first indication that the Plaintiffs that the KMK Defendants had participated in the fraud and/or in the participation of the Proxy Materials/Registration Statement was in December of 2001 when Plaintiffs deposed Defendants Hertlein and Roe. (Doc. No. 275). On February 4, 2002, the Plaintiffs filed their First Amended Complaint and named the KMK Defendants as parties in this action. (Doc. No. 67). On July 30, 2002, the Sarbanes-Oxley Act expanded the applicable periods of limitation and repose to two years and five years. Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 804(b), 116 Stat. 745, 801; 28 USCS § 1658.

This Court states that it joins those courts who have not retroactively applied the Sarbanes-Oxley Act to revive expired claims. (Doc. No. 338). Specifically, this Court argues that it will not apply the Sarbanes-Oxley Act since "this proceeding was commenced well before Congress enacted Sarbanes-Oxley" and because it would be "essentially creating a new cause of action" by reviving an expired claim. (Doc. No. 338). However, as this Court acknowledges, this is not an issue which has been conclusively decided by the Courts. There is substantial law to support the retroactive application of the Sarbanes-Oxley Act.

Commentators demonstrate uncertainty about the propriety and/or extent of retroactivity. In particular, Harold S. Bloomenthal, *Sarbanes-Oxley in Perspective,* Part X, § 74 (2002), has stated that Sarbanes-Oxley has retroactive applications, at least for a

period of time, in that for actions filed after the date of the Act it permits an action to be brought within a period of time that at the date of the Act would have been barred under the statute of limitations as it existed prior to the adoption of the Act. *Newby v. Enron* February 4, 2004), 2004 U.S. Dist. LEXIS 8158 (S.D. TX 2004) at 69.

Similarly, courts have also recognized the congressional intent of retroactivity and applied it to their cases. In *Roberts v. Dean Witter Reynolds, Inc.,* 2003 U.S. Dist. LEXIS 5676, the court noted that although Congress did not use the phrase "retroactive application" in the statute itself, this intent is present in the legislative history which shows that various members of Congress discussed and debated the extension of the statute of limitations. Id. at 9; *See USA v. Olin Corp.,* 107 F.3d 1506, 1512-1514 (11th Cir. 1997) (courts must effectuate congressional intent regarding retroactivity absent explicit statutory language mandating retroactivity). As a whole, the *Roberts* Court found that the history revealed that Congress intended to lengthen the statute of limitations to enable people who lost their life-savings to companies like Enron to recover some of their investments, and that to do so, the amendment must be given retroactive application. Id. The court stated that the most telling section is Title VIII, which was made a part of the record, "in order to provide guidance in the legal interpretation of these provisions of Title VIII of H.R. 2673 before that volume is issued." Id. at 11; 148 Cong. Rec. S7418-01 S7418. The section-by-section analysis provides in pertinent part:

> This provision [section 804.-Statute of limitations] states that it is not meant to create any new private cause of action, but only to govern all the already existing private causes of action under the various federal securities laws that have been held to support private causes of action. This provision is intended to lengthen any statute of limitations under federal securities law, and to shorten none. The section, by its plain terms, applies to any and all cases filed after the effective date of the Act, regardless of when the underlying conduct occurred.

Id. at 11-12; 48 Cong. Rec. S7418-01, 7418 (emphasis added). The court found that the phrase **"regardless of when the underlying conduct occurred"** clearly demonstrated that Congress intended for the extended statute of limitations to apply retroactively. Id. at 12.

The same type of result was reached in *Friedman v. Rayovac Corp.*, 295 F. Supp.2d 957, (W.D. 2003). The district court held that the Sarbanes-Oxley limitations period applies to all proceedings commenced after July 31, 2002, and that an amended complaint that adds new parties commences a "new proceeding" even if the claim was part of the previously filed lawsuit. Id. Further, the court stated that the date of the amended complaint, not the date that the initial complaint was filed, determines whether the Sarbanes-Oxley longer limitations period applies. Id. Finally, the court stated that since the plaintiffs could have simply filed a separate new suit to be governed by the new statute of limitations, it made no sense and would create judicial inefficiency to create a rule requiring plaintiffs to file separate actions for claims against different defendants arising out of the same conduct. Id.

Finally, as recently as March 30, 2004, the court in *In re Ashanti Goldfields Security Litigation* (March 30, 2004), 2004 U.S. Dist. LEXIS 5165 (E.D. NY), considered the same argument which was being made by the Defendants in that case. The district court stated as follows: "While the retroactive effect of Sarbanes-Oxley on pending claims remains unclear, the issue need not be reached in this case since plaintiffs' claims fall within the one-year statute of limitations period under 15 U.S.C. §78i(e). Thus, although this issue was not resolved in *In re Ashanti Goldfields Security Litigation*,

as of May 12, 2004, this is another court which acknowledged that the retroactive effect of the Sarbanes-Oxley Act had not yet been resolved.

As a result, since the issue regarding the retroactive application of the Sarbanes-Oxley Act is a controlling question of law, for which there is substantial ground for difference of opinion, and from which an immediate appeal from the order may materially advance the ultimate termination of the litigation, this Order should be certified. 28 U.S.C. §1292(b).

Finally, in support of this Motion to Certify, it should be noted that the granting of this Motion to Certify will not create piecemeal litigation, unnecessarily protract the case, or increase its cost. Rather, it will help this Court to avoid a greater expenditure or time and money in the future. These are issues for which there is a substantial difference of opinion, and issues which are not going to go away. As a result, it is better to deal with them now so that the rest of this case can be properly adjudicated. Additional delay can only continue to prejudice the Plaintiffs.

## II. **CONCLUSION**

Thus, for the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Certify This Court's Order Dismissing the Case Against Defendants Keating, Muething & Klekamp, LLP and Mark A. Weiss for Immediate Appeal Pursuant to 28 U.S.C. §1292.

Dated: June 17, 2004

GENE MESH & ASSOCIATES

*/s/ Michael G. Brautigam*

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

Attorneys for Plaintiffs and the Putative Class

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Plaintiffs' Motion to Certify This Court's Order Dismissing the Case Against Defendants Keating, Muething & Klekamp, LLP and Mark A. Weiss for Immediate Appeal Pursuant to 28 U.S.C. §1292 (Doc. No. 338 ) was served this __17th__ day of June 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Michael Barrett, Esq.
Barrett & Webber
105 East Fourth Street, Suite 500
Cincinnati, OH 45202-4015

**BY FIRST CLASS MAIL**

John Hust, Esq.
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
Suite 110, Governor's Knoll
11935 Mason Road
Cincinnati, OH 45249

James H. Greer, Esq.
BIESER, GREER AND LANDIS, LLP
400 National City Center, 6 North Main Street
Dayton, OH 45402-1908

James E. Gauch. Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

                                                _____
                                                Stephanie A. Hite