**UNITED STATES DISTRICT COURT**   04 JUL -1 PM 3:34
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| WALTER W. THIEMANN, et al. | : | Civil Action No. C-1-00-793 |
| Plaintiffs, | : | Judge Sandra S. Beckwith |
| vs. | : | Magistrate Judge Timothy Hogan |
| OHSL FINANCIAL CORP., et al. | : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION TO HOLD KEATING, MUETHING & KLEKAMP, LLP IN CONTEMPT FOR DISCOVERY VIOLATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE AND REQUEST FOR SANCTIONS.**

Dated: 1 July 2004                    **GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and
the Putative Class*

i

Plaintiffs reluctantly bring this Motion to Hold Keating, Muething & Klekamp, LLP in Contempt for Discovery Violations under the Federal Rules of Civil Procedure and Request for Sanctions (hereinafter "Motion") because they believe that this is the only way that they can stop the obstructionist conduct of Keating, Muething & Klekamp, LLP (hereinafter "KMK") during depositions in this case. Plaintiffs did not file this Motion after they first observed improper conduct and objections during the OSHL Defendants' depositions, but rather endured a myriad of improper objections and interruptions in the Provident Director Defendant depositions before they determined that the evidence of such obstruction was undeniable.[1]  This conduct is consistent with KMK's other conduct in this case. Since the inception of the litigation almost four years ago, KMK and its clients have exhibited no intent to defend the case on its merits. All of the Defendants combined have only taken two depositions in this case. Rather, their strategy has consisted of attacking Plaintiffs and their counsel, and attempting to obstruct

---

[1]  The Plaintiffs incorporate by reference the deposition transcripts of the OHSL Director Defendants previously filed with this Court as Exhibits to Plaintiffs' Motion to Completely Disqualify, or in the Alternative, Hold KMK in Contempt for Violation of this Court's October 20, 2003 Order (Doc. No. 215). The Deposition transcript of Norbert Brinker was attached as Exhibit "A," the deposition transcript of Kenneth Hanauer was attached as Exhibit "B," the deposition transcript of William Hillebrand was attached as Exhibit "C," the deposition transcript of Al Hucke was attached as Exhibit "D," the deposition transcript of Thomas McKiernan was attached as Exhibit "E," the deposition transcript of Joseph Tenoever was attached as Exhibit "F," and the deposition transcript of Howard Zoellner was attached as Exhibit "I."

Plaintiffs have also filed the deposition transcripts of Jack Cook, Robert Hoverson, Joseph Pedoto and Joseph Steger in Plaintiffs' Motion for Leave to Supplement the Record in Further Support of Plaintiffs' Motion for Summary Judgment Regarding a Finding that the Statement that the OHSL Board of Directors Unanimously Approved the Acquisition by Provident is a Material Misstatement (Doc. No. 315). The deposition transcripts of Defendants Jack Cook,  Robert Hoverson, Joseph Pedoto, and Joseph Steger were attached as Exhibits A,B,C, and D.  The deposition of Chris Carey has also been taken, but Plaintiffs have not yet received a copy of said transcript.

the search for the truth.  Nowhere has this conduct been more evident than during KMK's

defense of the OHSL and Provident Defendants' depositions.

Plaintiffs acknowledge that objections during depositions are a legitimate and

necessary part of any deposition.  Further, although speaking objections are always

inappropriate, Plaintiffs acknowledge that the occasional speaking objection can occur,

and that neither the intent behind the objection, nor its impact, warrants the filing of a

motion for sanctions with the court.  Plaintiffs are not now bringing this Motion against

KMK because of any particular objections or speaking objection, but rather because of

KMK's strategy to repeatedly object during depositions in order to disrupt and obstruct

the deposition process. In particular, the KMK attorneys have attempted to obstruct the

search for truth by a calculated pattern and practice of coaching the witness, interrupting

the depositions, littering the record with speaking objections, and attempting to "run out

the clock" on these depositions.  In sum, the KMK attorneys have abused the process by

doing everything possible to prevent the Plaintiffs from getting straight answers to

straight questions on the major issues of the case, such that the depositions which the

KMK attorneys have defended have largely become a farce.[2]

Therefore, although Plaintiffs have shown admirable restraint up to this point,

they no longer feel that they can continue to allow this conduct without bringing it to this

---

[2]  It is interesting to note that there are many examples in the record where KMK counsel
has made a lengthy objection that Plaintiffs' counsel has mischaracterized something,
such as the witness' answer, only to have it quickly be clarified that it was the objection,
and not the question, that mischaracterized the record. One such example occurred in
Defendant Hoverson's deposition when Mr. Burke objected that an entire phrase, rather
than just the word "material," appeared in quotes in the Proxy Materials/Registration
Statement.  Mr. Burke withdrew his objection when Defendant Hoverson informed him
that this was incorrect. (Hoverson dep. p. 24).

Court's attention, and file this motion at the invitation of the Court. While any individual objection, even a speaking objection, may not be viewed as overzealous, too exuberant, or as having been made in bad faith when read in isolation in the cold record, Plaintiffs respectfully submit that no other result can be reached when these objections and interruptions are evaluated in their totality. It is also important to note that the problem exists only with respect to KMK attorneys. While attorneys from several other firms have defended depositions and made objections, as a general rule there have been few, if any, problems with their conduct. The problem is limited to KMK attorneys, is part of their deliberate strategy, and will not cease without Court intervention.

Thus, Plaintiffs hereby move this Court to hold KMK in contempt, for deliberate non-compliance with the rules for discovery and depositions set forth in the Federal Rules of Civil Procedure. In addition, Plaintiffs respectfully request that KMK be sanctioned for this conduct and that this Court enter a written Order prohibiting Defendant KMK from engaging in such alleged conduct in future depositions in this action. A Memorandum in support of this Motion is attached hereto.

Dated: 1 July 2004

**GENE MESH & ASSOCIATES**

Respectfully Submitted,

_Michael L. Bra____

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

iv

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT……………………………………...1-3

II.   SUMMARY OF ARGUMENTS RAISED AND PRIMARY
      AUTHORITIES RELIED UPON………………………………………4-7

      A.    The Importance of Depositions…………………………………...4

      B.    Improper Objections are Not Permitted During Depositions………...4-5

            1.    KMK Made Improper "Speaking Objections"…………………5

            2.    KMK Improperly Instructed Its Clients Not to Answer
                  Non-Privileged Questions………………………………………...5

            3.    KMK Made Improper Objections in Relation to the
                  Review of Documents…………………………………………..5

            4.    KMK Improperly Coached Its Clients to Not Answer
                  Any Questions Regarding the Materiality of the
                  Restatements Filed by Provident………………………………6

            5.    KMK Made an Inordinate Number of Strategic Interruptions
                  in Order to Defeat the Overriding Goals Behind the
                  Taking of Depositions….……………………………………..6

      C.    KMK Should be Held in Contempt and Sanctioned for Its Failure
            to Adhere to the Federal Rules of Procedure Regarding
            Discovery………………………………………………………...7

III.  LEGAL ARGUMENT…………………………………………..7-30

      A.    The Importance of Depositions…………………………………7-8

      B.    Improper Objections are Not Permitted During Depositions…………...8-9

            1.    KMK Made Improper "Speaking Objections"………………..9-16

            2.    KMK Improperly Instructed Its Clients Not to Answer
                  Non-Privileged Questions……………………………………16-20

            3.    KMK Made Improper Objections in Relation to the
                  Review of Documents………………………………………20-21

            4.    KMK Improperly Coached Its Clients to Not

Answer Any Questions Regarding the Materiality
 of the Restatements Filed by Provident.............................21-24

5.    KMK Made an Inordinate Number of Strategic Interruptions
in Order to Defeat the Overriding Goals Behind the
Taking of Depositions....................................................24-28

C.    KMK Should be Held in Contempt and Sanctioned for Its Failure
to Adhere to this Court's Order Not to Make Any More
Improper Objections During Depositions in this Case...................28-30

IV.    CONCLUSION.......................................................................31-32

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240,
    95 S.Ct. 1612 (1975)..............................................................29

*Brignoli v. Bach, Hardy & Scheinman, Inc.,*  126 F.R.D. 462 (S.D.N.Y. 1989)..........29

*Chambers v. NASCO, Inc.,*  501 U.S. 32, 43, 111 S.Ct. 2123 (1991).......................29

*Collins v. International Dairy Queen* (June 4, 1998), 1998 U.S. Dist. LEXIS 8254,
    Case No. 94-95-4-MAC  (M.D. GA 1998)...........................................4,7

*Damaj v. Farmers Insurance Co., Inc.,* 164 F.R.D. 559 (N.D. Okl. 1995)...................8

*Detoy v. City & County of San Francisco,* 196 F.R.D. 362 (N.D. Cal. 2000)............5,16

*F.D. Rich Co. v. United States ex rel Lumber Co.,* 417 U.S. 116, 129,
    94 S.Ct. 2157 (1974)............................................................29

*Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D. Penn. 1993)...............................24

*Link v. Wabash R.R.,*  370 U.S. 626, 82 S.Ct. 1386 (1962)...................................29

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.* (Feb. 10, 1997),
    1997 U.S. Dist. LEXIS 1272, No. 96 Civ. 2064.......................................16

*National Microsales Corp. v. Chase Manhattan Bank,* 761 F. Supp. 304
    (S.D.N.Y. 1991)................................................................16

*Odone v. Croda International PLC,* 170 F.R.D. 66 (D.D.C. 1997)...........................8

*Oliveri v. Thompson,*  803 F.2d 1265 (2d. Cir. 1986).....................................28

*Pilates , Inc. v. Georgetown Bodyworks Deep Muscle Massage Ctrs.,* Inc., 201 F.R.D.
    216 (D.C. Col. 2000)...........................................................4,9

*Quantachrome Corp. v. Micromeritics Instrument Copr.,*
    189 F.R.D. 697 (S.D. Fla. 1999)..................................................20

*Rich Co. v. United States ex rel Lumber Co.,*
    417 U.S. 116, 129, 94 S. Ct. 2157 (1974)

*Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555 (S.D.N.Y. 1994)..........................4-9

*Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716 (6th Cir. 1996)..........................28

*Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987)..........................29

*United States v. Di Mauro*, 441 F.2d 428 (8th Cir. 1971)....................................28

*United States v. International Brotherhood of Teamsters*, 948 F.2d 1338
    (2d Cir. 1991)...............................................................................30

*Wilson v. Sunstrand Corp.*, 2003 U.S. Dist. LEXIS 14922, Case Nos. 99 C 6944
    and 99 C 6946 (N.D. IL 2003)...................................................9

## MISCELLANEOUS

28 U.S.C. §1927.........................................................................25-26

Federal Civil Procedure 26.............................................................4,8

Federal Civil Procedure 30(b)(4)..........................................................

Federal Civil Procedure 30(c).............................................................8

Federal Civil Procedure 30(d)(1).......................................................4,8-9

Federal Civil Procedure 30(d)(2)..........................................................26

Federal Civil Procedure 30(d)(3)........................................................4,9

Federal Civil Procedure 30(d)(4)........................................................4,10

<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO HOLD KEATING, MUETHING & KLEKAMP, LLP IN CONTEMPT FOR DISCOVERY VIOLATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE AND REQUEST FOR SANCTIONS.**</u>

I.     <u>**PRELIMINARY STATEMENT**</u>

In January through March of this year, the Plaintiffs took the depositions of the OHSL Director Defendants in this case. Beginning on May 7, 2004, Plaintiffs have been taking the depositions of the Provident Director Defendants in this action. The first deponent was Dr. Joseph Steger, Chairman of Provident's Audit Committee. Rachael Rowe of KMK defended this deposition, and it was riddled with hundreds of objections and arguably at least two speaking objections. (Steger dep. pp. 122, 187).

On May 10, 2004, Plaintiffs took the deposition of Provident Director Defendant Jack Pedoto. During this deposition, Rachael Rowe of KMK again interfered with Defendant Pedoto's deposition by making numerous objections, instructing her client not to answer non-privileged questions, and making speaking objections during the deposition. Once this interference reached the point that it was significantly impairing Plaintiffs' counsel's ability to proceed with the deposition, Plaintiffs' counsel called this Court and left a message asking this Court to intercede on the issue of whether KMK was improperly instructing its client not to not answer questions and/or coaching the witness through improper speaking objections. This Court returned Plaintiffs' counsel's call later in the day, the Court stated as follows:

> "Well, if Ms. Rowe is correct and a single line of questioning has been asked and answered and asked and answered again and has eventually devolved into a - - harassing manner of taking the deposition, then that would be a proper objection under Rule 30(b)(4).

1

> On the other hand, if she is incorrect and she has improperly instructed the witness not to answer, then certainly that might be cause for sanctions. By the same token, speaking objections, coaching the witness in the course of the objection would be improper. And I would caution Ms. Rowe not to do that.
>
> And if she does that and Mr. Brautigam submits the transcript of the deposition supporting a contention that, after being cautioned, Ms. Rowe continued to make speaking objections, then the Court would entertain a motion for sanctions, which could involve allowing the plaintiff to take another deposition at opposing counsel's cost."

(Pedoto dep. pp. 228-229). As a result, the Court invited the Plaintiffs to file a motion for appropriate sanctions if the circumstances warranted it. In particular, this Court stated that "if this court finds that the instruction not to answer was improvident, or there were speaking objections after 3:15 PM today, appropriate sanctions may be in order. **All counsel** are cautioned on that." (Pedoto dep. pp 229-230).

Despite this helpful guidance provided the Court, the level of harassment after the Pedoto deposition did not decline, but indeed intensified. On May 24, 2004, Ms. Rowe continued her use of improper use of objections, speaking objections, and general attempt to derail the gathering of evidence during Jack Cook's deposition. In particular, the issue of whether or not Provident's financial statements were free of material misstatement created unnecessary objections and general obstruction of the question-answer process. Although Defendant Cook is a Provident Board member and serves on its audit committee, and stated that he believed that he was "financially literate," numerous objections resulted from Defendant Cook's feigned ignorance or inability to answer questions on the materiality of the restatements filed by Defendant Provident.

2

Finally, on May 27, 2004, Plaintiffs' counsel took the deposition of Defendant Robert Hoverson[3]. Regrettably, Plaintiffs' counsel had to again call this Court based upon his belief that James Burke of KMK was improperly instructing his client not to answer properly asked questions, and coaching its client through improper speaking objections. The problems again largely revolved around the issue of whether or not Provident's financial statements were free of material misstatement. Although Defendant Hoverson is the CEO of Provident Bank, and should have been intimately familiar with the restatements filed by Provident Bank, Defendant Hoverson and KMK repeatedly argued and/or objected that any answers regarding whether or not Provident' financial statements were materially misstated necessitated some type of "speculation" on his part. A response from this Court did not occur during that deposition.

Plaintiffs cannot contact this Court every time a problem arises, and cannot file a motion every time said conduct occurs. Depositions must rely to a great extent on the good faith of the participants as officers of the Court. Here, KMK attorneys are operating in bad faith, and have developed a deliberate strategy of obstructing the depositions to prevent Plaintiffs from obtaining answers to their questions. Not surprisingly and consistent with the KMK strategy, their conduct is particularly egregious in direct proportion to the importance of the witness, with extreme interference with the depositions of Provident's CEO Robert Hoverson and CFO Chris Carey. Plaintiffs believe that the filing of this Motion is the only way to prevent this type of egregious conduct in the future.

---

[3] The 21 June 2004 transcript of Provident's CFO Chris Carey is not yet available, but will be filed with the Court once it is transcribed.

II.    **SUMMARY OF ARGUMENTS AND PRIMARY AUTHORITIES RELIED UPON**

A.    **The Importance of Depositions**

Depositions are meant to be question-and-answer sessions between a lawyer and a witness which are aimed at uncovering the facts in a lawsuit. *Collins v. International Dairy Queen* (June 4, 1998), 1998 U.S. Dist. LEXIS 8254, Case No. 94-95-4-MAC (M.D. GA 1998) at 4.  When a deposition becomes something other than that, due to strategic interruptions, suggestions or cautions to the witness through speaking objections, arguments of counsel, instructions to a witness not to answer a question when there is no valid basis for a refusal to answer, and the like, the deposition ceases to seek the truth or serve the overriding goals of the Federal Rules of Civil Procedure. Id. This is what happened in the present case based upon KMK's intentional strategy of making improper and unnecessary objections during the depositions so that Plaintiffs could not obtain answers to the questions Plaintiffs' counsel was asking.

B.    **Improper Objections are Not Permitted During Depositions**

Where there is no claim of privilege in relation to questions asked on deposition, Federal Rules of Civil Procedure 26 and 30(d)(1) are to be strictly applied. *Pilates , Inc. v. Georgetown Bodyworks Deep Muscle Massage Ctrs.,* Inc., 201 F.R.D. 216 (D.C. Col. 2000).  Pursuant to Federal Rule Civil Procedure 30(d)(1), a deponent may be instructed not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to protect a witness from an examination "being conducted in bad faith or in such a manner as to annoy, embarrass, or oppress the deponent or party."  Fed.R.Civ.P. 30(d)(1) & (3); See also *Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 557 (S.D.N.Y. 1994).  KMK did not adhere to these rules, but rather

4

used objections as a tool to interrupt the flow of information during its clients' depositions.

### 1.    KMK Made Improper "Speaking Objections"

Fed.R.Civ.P. 30(d)(1) provides that any objection during a deposition must be stated concisely, in a non-argumentative and non-suggestive manner, and that a person cannot a deponent not to answer unless it is necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4). Id. KMK did not adhere to this Federal Rules, but rather used "speaking objections" as an opportunity to coach the deponents in their answers.

### 2.    KMK Improperly Instructed Its Clients Not to Answer Non-Privileged Questions

Generally, instructions not to answer questions at deposition are improper. *Detoy v. City & County of San Francisco,* 196 F.R.D. 362 (N.D. Cal. 2000). The exceptions are when the answer would reveal a privileged communication or serious harm would be caused by the answer. *Detoy, supra.* KMK did not adhere to this rule, but instructed its clients not to answer questions when so such concerns were at issue.

### 3.    KMK Made Improper Objections in Relation to the Review of Documents

With respect to relevant documents, it is not a valid objection in the deposition of a witness, who has or may have some relevant knowledge concerning the document or its subject matter, that the document "speaks for itself". *Collins supra* at 7.  It is also not proper to object on the basis that the question seeks a "legal conclusion."  Id. However, KMK made this objection numerous times in relation to the documents which are at the heart of this case: the Proxy Materials/Registration Statement and Restatements of Provident's financial statements.

**4.    KMK Improperly Coached Its Clients to Not Answer Any Questions Regarding the Materiality of the Restatements Filed by Provident**

The Provident Director Defendants repeatedly refused to answer or claimed an inability to answer questions related to the materiality of the Restatements regarding Provident's financial statements. This is the case despite the fact that the deponents were the CEO of Provident, members of the Provident Board, and even members of the audit committee, who should have had a knowledge an understanding of these documents. Furthermore, these statements from the Provident Director deponents usually came right after an objection from KMK that the questions related to the materiality of the Restatements improperly called for speculation or a legal conclusion. Thus, the fact that this did not occur once or twice, but repeatedly by nearly all of the Provident and OHSL Director Defendants, confirms that KMK must have coached its clients not to answer any questions regarding the materiality of the Restatements filed by Provident and other issues.

**5.    KMK Made an Inordinate Number of Strategic Interruptions in Order to Defeat the Overriding Goals Behind the Taking of Depositions.**

Although KMK made some objections which were appropriate to make during a deposition as opposed to trial, these objections were not always in good faith.  Rather, KMK made such an inordinate number of objections during its clients depositions that it can only be concluded that the objections were made to interrupt the flow of information at the depositions and defeat the intended purpose of the deposition.

**C.    KMK Should be Held in Contempt and Sanctioned for Its Failure to Adhere to the Federal Rules of Procedure Regarding Discovery.**

Although any individual objection and/or interruption by KMK may not seem to warrant this Court holding it in contempt and/or sanctions, the cumulative effect of these objections and the overall general conduct of KMK during depositions definitely do.  The speaking objections, inappropriate instructions not to answer questions, the inordinate number of objections, and the coaching of its clients not to answer questions which go to the heart of this case, show that this was not inadvertent conduct on the part of KMK, but rather a systematic plan to prevent Plaintiffs from obtaining information of important issues in this case. It is important to hold KMK in contempt, and to sanction it, not only to punish KMK for its previous conduct, but in order to help prevent this type of conduct from occurring at future depositions.

## III.    LEGAL ARGUMENT

### A.    The Importance of Depositions

Depositions are the factual background where the vast majority of litigation actually takes place.   As a result, depositions should be limited to what they are intended to be under the Federal Rules of Civil Procedure: question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit. *Collins v. International Dairy Queen* (June 4, 1998), 1998 U.S. Dist. LEXIS 8254, Case No. 94-95-4-MAC (M.D. GA 1998) at 4.   When a deposition becomes something other than that, due to strategic interruptions, suggestions or cautions to the witness through speaking objections, arguments of counsel, instructions to a witness not to answer a question when there is no valid basis for a refusal to answer, and the like, the deposition ceases to seek the truth or serve the overriding goals of the Federal Rules of Civil Procedure. Id. See,

*Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D. Penn. 1993); *Odone v. Croda International PLC,* 170 F.R.D. 66 (D.D.C. 1997); *Damaj v. Farmers Insurance Co., Inc.,* 164 F.R.D. 559 (N.D. Okl. 1995). The rules are designed to insure that the testimony taken during the deposition is completely that of the deponent, rather than a version of the testimony which has been edited or glossed by the deponent's lawyer. Id. at 4-5; *Hall, supra.* It is this goal that is being deliberately thwarted in this case. It is the deliberate strategy of KMK and KMK only to obstruct the process to the point where Plaintiffs' ability to get clear answers to important questions is thwarted.[4]

**B.    Improper Objections are Not Permitted During Depositions**

Rule 30(c) of the Federal Rules of Civil Procedure provides that all objections made at the time of deposition shall be noted, but "the examination shall proceed, with the testimony being taken subject to the objections." Id.  Consequently, Rule 30(c) of the Federal Rules of Civil Procedure cautions that the examination and cross-examination of witnesses during depositions should generally proceed as it does at trial. *Collins, supra* at 5.  It is incumbent upon counsel for both sides to "refrain from conduct which their lawyering skills tell them crosses over or may cross over the line between good lawyering and proper representation of their client's interests, and deliberate or merely overzealous interference in depositions which abuses the rules governing the deposition process and

---

[4] This Court has already seen an exceedingly good example of KMK attempting to literally rewrite the deposition of a key witness in the case, former OHSL Chairman Norbert Brinker.  Because of his poor health, Mr. Brinker's deposition was initially limited to two hours. Thereafter, Magistrate Judge Hogan later ruled that the deposition could not be resumed. Although the Plaintiffs have objected to this Order, once the Court had ruled that Mr. Brinker was not subject to further questioning, KMK decided to turn Mr. Brinker's deposition into a take home exam. In particular, KMK submitted an extensive errata sheet that sought to change the entire character of Mr. Brinker's deposition.  It is highly likely that KMK was behind the changes on the errata sheet, and figuratively, if not literally, guided Mr. Brinker's hand as he signed it.

8

the goal of that process to allow opposing counsel in a reasonable manner to determine the facts of the case from the witnesses having knowledge of those facts." Id. at 5-6.

Where there is no claim of privilege in relation to questions asked on deposition, Federal Rules of Civil Procedure 26 and 30(d)(1) should be strictly applied. *Pilates , Inc. v. Georgetown Bodyworks Deep Muscle Massage Ctrs.,* Inc., 201 F.R.D. 216 (D.C. Col. 2000). Pursuant to Federal Rule Civil Procedure 30(d)(1), a deponent may be instructed not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to protect a witness from an examination "being conducted in bad faith or in such a manner as to annoy, embarrass, or oppress the deponent or party." Fed.R.Civ.P. 30(d)(1) & (3); *See also, Riddell Sports Inc. v. Brooks,* 158 F.R.D. 555, 557 (S.D.N.Y. 1994).

In the Provident Director Defendants' depositions, KMK has not only improperly instructed its clients not to answer questions, but its conduct has crossed over the line between good lawyering and overzealous interference with the deposition in the following four ways.

### 1.    KMK Made Improper "Speaking Objections"

In particular, the Federal Rules of Civil Procedure plainly prohibits "speaking objections." *Wilson v. Sunstrand Corp.,* 2003 U.S. Dist. LEXIS 14922, Case Nos. 99 C 6944 and 99 C 6946 (N.D. IL 2003) at 12. Fed.R.Civ.P. 30(d)(1) provides as follows:

> "Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).

Id.

In *Wilson,* the district court found that the following exchange contained an improper "speaking objection:"

> Dfdt. Atty.: Now, let me ask you, in the few minutes we have remaining before we break for this part one of your deposition, the reason the GPWS system didn't give an alert at any of the places that you said it should have, is there any part in your report where it says that the reason is?
>
> Haskins: Yes.
>
> Dfdt. Atty.: Where?
>
> Haskins: I think that is the second item in there. The second item discusses that.
>
> Dfdt. Atty.: Any other places besides item 2, or is that it?
>
> Haskins: Item 2.
>
> Dfdt. Atty.: I am not trying to encourage you to have more, I certainly don't want you to. I just want to be certain I extract it.
>
> Pltf. Atty. 1: I want to make sure, too. I mean, Glenn, if your whole report goes to that.
>
> Dfdt. Atty.: Objection. I think this is improper coaching of the witness.
>
> Pltf. Atty. 1: I'm sorry. I don't want to coach him either.
>
> Dfdt. Atty.: Let's just not even do this.
>
> Pltf. Atty. 1: I want to make sure the witness understands the question.
>
> Dfdt. Atty.: I don't want you to make sure anything about the witness. He can answer this question that is pending.
>
> Pltf. Atty. 1: Let me note an objection, and I will let it go. Object to the form of the question.
>
> Haskins: Item 2, item 3, item 4, I think discuss that, and, in general, you know, item 5 goes toward the systematic disregard of standard practices.

Id. at 15017.  The court found that plaintiff's attorney acted improperly because the plaintiff had identified one, and only one aspect of his report as explaining the reason

why he believes the GPWS system did not give an alert. Id. at 17. At that point, plaintiffs' attorney prompted his client to consider other aspects of his report. Id. The plaintiff got the message and expanded on his answer. Id. Consequently, the court found that the action of plaintiffs' counsel was improper, and exactly what Rule 30(d)(1) was designed to prevent. Id.

Much worse conduct occurred in the Provident Director Defendants' depositions. This exchange occurred as follows in Defendant Hoverson's deposition:

Q.    Mr. Hoverson, are all restatements by definition material?

MR. BURKE: Calls for speculation. You may answer.

A.    Yeah, I don't know how to answer that.

Q.    Were these restatements material?

MR. BURKE: Which restatements?

MR. BRAUTIGAM:  All of the Provident restatements from 2003.

MR. BURKE:  From 1997 to 2003? Is that what you are saying?

MR. BRAUTIGAM:  Going back to 1994. Jim, we're doing fine.

MR. BURKE: No, no, we're not doing fine.

MR. BRAUTIGAM:  No more speaking objections. We're doing fine.

MR. BURKE:  We're not doing fine. I'm trying to understand what you're saying.

MR. BRAUTIGAM:  Jim, it is not important for you to understand.

MR. BURKE:  Mr. Brautigam, my witness is not going to answer unless I understand your questions. Okay?

And your questions are intentionally vague, intentionally opaque, because you like to create a muddy record.

Are you saying as of 1996, 1997, 1998, 1999, any particular period, the entire period, cumulative basis, individually?

11

And until you make some clarification, this witness can't answer that question because that question is vague and misleading.

Reask your questions, and we'll try to figure out what you're saying.

(Hoverson dep. pp. 27-28). This is a clear example of an improper speaking objection. Mr. Burke's diatribe was not necessary because Plaintiff's counsel made it clear in more than one instance that he was asking if all the restatements from 1994 forward were material. The speech was not necessary, and the only reason he made it was to attempt to coach his witness or to create such confusion that his client would be unable to answer it. As stated above, Defendant Hoverson is the CEO of Defendant Provident. Consequently, the concept of a restatement being material, and the number of restatements filed by Provident should not be foreign concepts to him, and certainly not concepts worthy of such objection. Other similar speaking objections also occurred in the context of the reading and interpretation of the Proxy Materials/Registration Statement. (Hoverson dep. pp. 81-83).

But perhaps Mr. Burke has a unique view of what is and is not a proper objection. For example, during the deposition of former OHSL Chairman Norbert Brinker, the following exchange took place:

> Q      Okay.  So at the present time, you believe that the Keating firm will represent you at trial; is that correct?
>
> MR. PINNEY:  I'm going to object to that as well.
>
> MR. BRAUTIGAM:  Your Honor—
>
> A  I would have—
>
> MR. BURKE:  Your Honor, the—Mr. Brautigam is knowingly misstating the record and **asking the witness questions he is obviously unsure of**, just in an effort to inject confusion and further the confusion of these proceedings.

12

And I do have an objection to this.

Mr. Burke's conduct warrants further analysis. First, he interrupts the witness in the middle of his answer in a blatant attempt to prevent him from completing his answer and to disrupt the proceedings. Second, Mr. Burke was objecting in conjunction with Mr. Pinney, who unbeknownst to Defendant Brinker, was also representing Mr. Brinker and many other camps of mutually antagonistic camps of defendants at that time, even though Mr. Pinney was sitting approximately ten feet from Mr. Brinker. Mr. Pinney, of course, has since withdrawn from the case. Third, although Mr. Burke tacks on the word "objection" at the end as an afterthought, his outburst could more accurately described as a speech that is intended to and did disrupt the proceedings, to which he added the word "objection." Fourth, Mr. Burke's "objection," if one can call it that, has absolutely no legal basis, and thus cannot have been made in good faith. There is, of course, no legal or logical limitation on deposition questions that limits the questioning to questions that the questioner believes the witness is sure of.

Mr. Burke's conduct had the desired effect of disrupting the proceedings, as the continuation of the transcript reveals:

MR. BRAUTIGAM: Can we have the record read back, please?

(Record read by Reporter)

A       Well, I gather from the last information we had, that they
        couldn't do it and we would have to have an outside firm,
        but we as directors haven't done anything as or yet.

Q       Okay. What do you plan to do?

MR. BURKE: Objection. Calls for speculation. You may answer.

A       Yeah, it would be speculating. I guess we'd talk to the Board of
        Directors and see what they wanted to say. And we won't know

13

> if it ends up that Keating won't be able to stay with us.  If they
> can't, we'll find another one.
>
> Q     Okay.  But you have no one as of today—
>
> A     No.
>
> Q     Is that right?
>
> MR. BURKE:  Objection.
>
> A     That's right.

Brinker deposition at pp. 50-52. (emphasis added) (Attached as Exhibit B to Doc. No.
300).

Having thus disrupted the proceedings to the point where a readback was
required, running out the clock on the two hours Magistrate Judge Hogan allotted for the
deposition of OHSL's former Chairman of the Board, Mr. Burke makes an objection that
a question "calls for speculation" that is clearly a familiar code between KMK attorneys
and the witnesses.   Once a KMK attorney makes an objection using the word
"speculation," the witnesses almost always, as here, parrot that word in an attempt to
evade the question.   The relationship between the objection and the response by the
witness is telling, as is the frequency of this blatantly abusive coaching tactic.

Similarly, during Defendant Cook's deposition, Ms. Rowe made a speaking
objection under the guise of attempting to clarify the record. In response to one of his
questions, Defendant Cook asked Plaintiffs' counsel if Defendant had Hanauer disclosed
to the OHSL shareholders that he did not believe that the OHSL-Provident merger was in
the best interests of the OHSL shareholders. The exchange went as follows:

> Q.     The answer to your question is Mr. Hanauer did not disclose his feelings
>        to the shareholders.

A.    Okay. I'm glad he was not my executive.

Q.    Why do you say that?

A.    Again, I'm going further - -  I don't like the behavior from a personal standpoint.

MS. ROWE:  I'm going to object first. Let me insert an objection. I mean, the record is being mischaracterized, but also the question has something to do with was it disclosed to the directors, and your answer said it wasn't disclosed to shareholders; and I just want to make sure that we're all on the same page.

(Cook dep. p. 106). This speaking objection was not necessary because everyone was clearly already on the same page. Defendant Cook had asked a question of Plaintiffs' counsel so that he could properly answer the question posed to him, and he received an unambiguous response to his question. The only reason for this speaking objection was for Ms. Rowe to coach the witness by reminding him of this fact when he was responding to Plaintiffs' counsel's questions.

Finally, when Defendant Cook opined that he thought that Defendant Hanauer was "an unhappy executive who's now Monday Morning Quarterbacking," and Plaintiffs' counsel asked Defendant Cook if he had any facts to back that up, the following exchange took place:

A.    I have no facts whatsoever, but most of what we've done this morning is not tied on a lot of facts. You're asking me my opinions about what if and what if and so on and so forth.

Q.    Actually, Mr. Cook , I disagree. When I handed you Mr. - -

A.    Okay. I'll give you that.  I'll give you that.

MS. ROWE:  Well, and I will add, as long as we're talking about the 12 to 15 lines of Hanauer's deposition that he asked Mr. Cook to read today and upon which to base his answers and questions, I would like the record to reflect that Mr. Hanauer has been deposed, now over four or five days and provided, I think, in excess of a thousand pages of deposition testimony.

15

So I would reiterate that small excerpts of a deposition are being taken out of context and used during this and other depositions.

(Cook dep. pp. 175-176). Once again, this speaking objection was completely improper. Ms. Rowe merely made this speech to coach the witness so that he would not be so quick to concede that Defendant Hanauer had admitted that he did not believe that the OHSL-Provident merger was in the best interest of the OHSL shareholders.

Thus, since KMK was making speaking objections in an argumentative and suggestive manner as is prohibited by the Federal Rules of Civil Procedure, Plaintiffs submit that KMK should be held in contempt and sanctioned because it continued to use speaking objections after being specifically instructed not to do so by this Court during Defendant Pedoto's deposition. Although any individual speaking objection may not seem particularly egregious when considered in isolation in the cold record, collectively they have played an important role in KMK's overall goal of obstructing the Plaintiffs' ability to gather evidence in this case. This is KMK's deliberate and considered strategy. KMK, although not the other law firms that have participated in depositions, have sought to completely obstruct the discovery process and reduce depositions to the level of farce.

2. **KMK Improperly Instructed Its Clients Not to Answer Non-Privileged Questions.**

KMK also improperly instructed the Provident Director Defendants not to answer questions which were not based upon privilege or some other acceptable basis for objection. Generally, instructions not to answer questions at deposition are improper. *Detoy v. City & County of San Francisco,* 196 F.R.D. 362 (N.D. Cal. 2000); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.* (Feb. 10, 1997), 1997 U.S. Dist. LEXIS 1272, No. 96 Civ. 2064, (S.D.N.Y. 1997) (citing *National Microsales Corp. v. Chase*

16

*Manhattan Bank*, 761 F. Supp. 304, 307 (S.D.N.Y. 1991). The exception to this is where serious harm would be caused by the answer. *Detoy, supra.*

In *Collins,* the court stated that counsel should not direct or request that a witness not answer a question by the examining attorney, unless counsel has a reasonable, good faith objection to the question, on grounds that the answer is protected by some privilege, or if counsel has a reasonable basis for seeking a protective order or for enforcing a limitation imposed by the Court with respect to the subject matter of the question.  Id. at 6.

During Defendant Hoverson's deposition, Mr. Burke indirectly instructed Defendant Hoverson not to answer a question based upon the following exchange:

Q.     Mr. Hoverson, please take page 3, and keep it in front of you.

A.     Um hum.

Q.     Do you see that it says that McDonald, as OHSL's investment banker, relied upon the accuracy of all the financial information that Provident provided?

MR. BURKE: Objection.

Q.     Do you see that?

MR. BURKE:   Document speaks for itself. Go ahead. Next question.

(Hoverson dep. p. 44). As discussed in greater detail below, the "document speaks for itself" is an improper objection. *Collins supra* at 7.  Further, he did not permit his client to answer the question.

The same type of situation occurred when Defendant Hoverson was asked the following question:

Q.      Mr. Hoverson, if you were an Oak Hills shareholder in 1999 considering how to vote, whether or not to merge with Provident, would you have wanted to have these numbers, meaning the point 9 number, the 2.0 number and whatever 11.3 million prorates out to December 3rd, 1999?

MR. BURKE: Objection. Calls for speculation?

A.      Yeah, I'm not going to speculate on that.

Q.      Mr. Hoverson, respectfully, I don't believe that it calls for speculation. I'm asking you a hypothetical question.

A.      A hypothetical question calls for speculation. Okay?

Q.      No, it's not okay, Mr. Hoverson.

A.      Well, that's—that's—I'm not going to speculate.

Q.      Mr. Hoverson, I'm asking you to stand in the shoes of an OHSL shareholder in 1999. Would it be important to you in considering the merger to have these correct numbers?

MR. BURKE: Objection. Calls for speculation.

A.      Yeah, and I'm not going to speculate. Okay.

Q.      No, it's not okay. We're going to petition the court—

(Hoverson dep. p. 219-220). Defendant Hoverson stated that he did not want to speculate.

(Hoverson dep. pp. 219-220). When Plaintiffs' counsel stated that this was not acceptable

and that Plaintiffs were going to petition the Court if this continued, Mr. Burke responded

as follows:

MR. BURKE: Go ahead. Make your motion, Mr. Brautigam.

Q.      - - and make you answer these questions.

MR. BURKE: Don't speak. Just make your motion. Move on.

18

(Hoverson dep. p. 220). The relationship between Mr. Burke's objections and Mr. Hoverson's evasive responses is clear beyond peradventure, and is almost Pavlovian. Once Mr. Burke objects on the basis of "speculation," Mr. Hoverson parrots that word, states that he is refusing to "speculate" and will continue to refuse to "speculate," although no such speculation is required. Thus, Mr. Burke was once again indirectly, if not directly, instructed his client not to answer a question when there was no privilege at issue or any potential harm which could be caused from answering the question. Court intervention is required, as this is the only way to stop this abuse.

However, this was not the last time this occurred. When Plaintiffs' counsel asked if the general counsel at Provident who had decided to hire KMK had been offered a job with National City, Mr. Burke objected and instructed the witness not to answer on the following grounds:

> MR. BURKE: That's none of your business. I'm instructing the witness not answer. There's no basis for that being an issue in this case. What's that got to do with anything?
>
> A.    Jim's private business. I'm not sure. . .
>
> MR. BRAUTIGAM:  And what is the basis for your instruction?
>
> MR. BURKE:  My basis for my instruction not to answer is you're invading the privacy of someone who is not even a party to this case.
>
> So I mean if you can give me some reason why you think that's remotely relevant, that's fine. But I man, that's a potential invasion of someone else's personal private business interest.
>
> MR. BRAUTIGAM: That's not a legitimate instruction under the Federal Rules.

(Hoverson dep. pp. 151-152). There was no privilege involved with this question, and the answer would not provide any harm. Thus, this was an improper instruction not to answer a question.

None of these questions were unreasonably annoying, embarrassing, oppressing, or resulted in the deposition being conducted in bad faith. These were largely questions which went to the heart of the case, and which were unpleasant for the Provident Director Defendants to answer since they knew that truthful responses would not be favorable to their case. Further, if KMK truly felt that the Provident Director Defendants' depositions were being conducted in bad faith or in such manner as to unreasonably annoy, embarrass or oppress deponent, KMK should have not only instructed its witnesses not to answer and/or halt the deposition, but also should have moved for a protective order. *Quantachrome Corp. v. Micromeritics Instrument Copr.,* 189 F.R.D. 697 (S.D. Fla 1999). KMK never filed such a motion[5]. Thus, these objections were not made in good faith, but in an attempt to disrupt the flow of the questions and exchange of information in the depositions.

Therefore, for the foregoing reasons, Plaintiffs respectfully submit that KMK should be held in contempt and sanctioned because it instructed its clients not to answer questions when there was no legitimate reason under the Federal Rules of Civil Procedure for such an instruction, and because KMK gave this improper instruction with the intent of disrupting the deposition process.

### 3.    Improper Objections Related to the Review of Documents

KMK made several improper objections when the Provident Director Defendants were reviewing documents. With respect to relevant documents, it is not a valid

---

[5] In other filings and in Court appearances, KMK has repeatedly attacked the questioning by Plaintiffs' counsel in general terms as being repetitive, harassing, annoying, but has failed to cite to a single example. Plaintiffs anticipate that KMK will continue to make these same general but false attacks, but will, once again, be unable to provide any specific examples of abusive questioning because no abusive questioning has taken place.

objection in the deposition of a witness, who has or may have some relevant knowledge concerning the document or its subject matter, that the document "speaks for itself". *Collins supra* at 7. The questioning attorney ordinarily is entitled to inquire of a witness concerning his or her relevant knowledge concerning the contents and subject matter of a document. Id. Similarly, it is improper to assert that the question seeks a "legal conclusion." Id.   However these rules were not adhered to by KMK. Ms. Rowe made the objection that Plaintiffs' counsel questions called for "legal conclusions," on several occasions from 3:15 PM on during Defendants Pedoto's deposition and during Defendant Cook's entire deposition. (Pedoto dep. pp. 248, 262, 273, 301, 305; Cook dep. pp. 121, 124, 126, 149, 152, 159, 169, 170, 174, 190, 190, 196, 201, 216, 248-249, 276, 280, 283, 286-287, 290, 303, 312, 329, 336-337)[6].   Ms. Rowe also argued that the document "speaks for itself" during the Cook deposition. (Cook dep. pp. 163, 195, 207, 249, 292, 305, 337).  Mr. Burke made the same sort of objections during Defendant Hoverson's deposition. (Hoverson dep. pp. 21, 33, 44, 53, 70, 71-72, 88, 104-105, 107, 110, 112-114, 136-137, 143, 147, 183, 208, 219, 265).

Thus, for the foregoing reasons, KMK made improper objections regarding the review of documents which necessitate that KMK be held in contempt and/or sanctioned because these objections interfered with the Plaintiffs' ability to discern evidence from the Provident Director Defendants regarding the documents in question.

4.   **KMK Improperly Coached Its Clients to Not Answer Any Questions Regarding the Materiality of the Restatements Filed by Provident**

---

[6]  Some of the objections made on the basis that the question "calls for a legal conclusion" may not have been made in reference to the review of documents, but in questions in general.

The Provident Director Defendants consistently have argued an inability to answer the question of where or not the restatements filed by Provident were material. This is the case despite the fact that these Defendants are either officers, directors, or on the audit committee for Defendant Provident, and should be intimately familiar with the concept of a restatement and the restatements filed by Defendant Provident in this case. Further, even if they were not familiar with these terms, they should be familiar with Provident's Board minutes regarding the Restatements, which specifically stated that the financial statements were "materially misstated." (*See*, Plaintiffs' Exhibit 92, Attached as Exhibit A at Bates Number PFGI 12066). However, the fact that the Provident Director Defendants did not readily answer these questions confirms that they were coached to "refuse to speculate," and/or not answer any question regarding materiality both before and during this deposition.

One of the best examples of this occurred during Defendant Hoverson's deposition. After being prompted or coached by Mr. Burke, Defendant Hoverson would not admit that the numbers in Provident's financial statements were materially misstated, and would not comment on the "materiality" of anything. This is illustrated by the following exchange:

> Q.    And we now know that those numbers are materially misstated, correct?
>
> MR. BURKE:  Objection. Misstates the facts; assumes facts not in evidence; calls for speculation. You may answer.
>
> A.    Yeah, I don't know that that's true at all.
>
> Q.    Are those numbers correct?
>
> A.    As far as I know, they're correct.
>
> .    .    .

22

Q.    Are those numbers that appear on page 6 of this document materially misstated?

MR. BURKE:  Objection.  Calls for speculation.

A.    Yeah, I don't know what that means, frankly.

Q.    You don't know what that means?

A.    Materially misstated. I don't know what that means, number one. Number two . . . I'm just trying - -- as to when the restatement - - I guess it went back to - - did it go back to '96? I guess it went back to '96.

      Look, I will stipulate that we restated our numbers in March of 2003 - - okay? - - and all the way back I believe either to '96 or '97. That was done.
.   .   .

Q.    Okay. Well, I'll show you some documents later.  What does it mean to have a restatement?

MR. BURKE: Objection. Calls for speculation.

A.    Yeah, what's it mean to have a restatement?  It means what it says. We restated the numbers.


.   .   .

Q.    You're familiar with the word "material," correct?

MR. BURKE:  Objection.

A.    I am.

MR. BURKE:  Calls for a legal conclusion. You may answer.

Q.    What does the word "material" mean?

A.    It means different things in different contexts.

Q.    What does it mean in the context of an accounting error?

MR. BURKE: Objection. Calls for speculation.

A.    I'm not going to speculate.

Q.    What does it mean in the context of a restatement?

A.    Again I am not going to speculate. The numbers are what they are.

(Hoverson dep. pp. 10-13).   Thus, although Defendant Hoverson is the C.E.O. of

Provident, and admitted to knowing what a restatement was, and what the word

"material" means, he still stated that he was unwilling to answer whether or not a

restatement, or anything else, was material.  No speculation was required.  The phrase

"material misstatement" appears in Provident's public documents such as the Annual

Report as well as Provident Board minutes, and it is reasonable to expect Provident's

CEO and Board members to understand the term.  Thus, either Defendant Hoverson is

intellectually unfit to be the C.E.O. of Provident, or he and KMK are purposely feigning

ignorance in order to obstruct the deposition process. However, regardless of which is

true, unfortunately for Defendant Hoverson and KMK, just because they will not admit

that the restatements were materially misstated does not mean that this is not the case.

Thus, for the foregoing reasons, this is yet another reason why Plaintiffs' Motion

to Hold KMK in Contempt should be granted and KMK should be sanctioned for its

conduct.

**5.    KMK Made an Inordinate Number of Strategic Interruptions
in Order to Defeat the Overriding Goals Behind the Taking of
Depositions.**

Depositions are intended to be question-and-answer sessions between a lawyer

and a witness aimed at uncovering the facts in a lawsuit. *Collins supra* at 4.  As a result,

when a deposition becomes something other than that, due to strategic interruptions, or

other improper objections, the deposition ceases to seek the truth or serve the overriding

goals of the Federal Rules of Civil Procedure. Id. See, *Hall v. Clifton Precision,* 150

24

F.R.D. 525 (E.D. Penn. 1993). KMK made an unusually large number of objections during the OHSL and Provident Director Defendants' depositions. Although some of these were legitimate objections under the Federal Rules of Procedure, the vast majority were not. However, even those which were technically legitimate objections were often used in an illegitimate manner during the Provident Director Defendants' depositions.

First, although objections grounded on relevance are preserved for trial, and need not be made during a deposition, KMK chose to make this objection numerous times to break the flow of the deposition. *Liz Claiborne, Inc. supra* at 5. Ms. Rowe made this objection several times during the depositions of Defendants Pedoto and Cook. (Pedoto pp. 250, 314, 318; Cook dep. pp. 18, 72, 74, 150, 151, 167, 196, 254, 277-278, 289). Similarly, Mr. Burke followed suit in the Hoverson deposition. (Hoverson dep. p. 42, 49, 50, 51, 92-93, 121, 138-139).

Another recurring problem through the depositions were improper objections that the deponent could not understand the questions. In *Collins*, the court stated that a lawyer should not object to a question on the assumption that the witness cannot or does not understand the question, unless the lawyer reasonably believes that the witness may be misled or the witness indicates confusion by the question. Id. at 6. In such instances, the lawyer should not proceed to state his own interpretation of the question, which is usually irrelevant and often suggestive of a particularly desired answer, but instead should simply ask examining counsel to rephrase and clarify the question, if the witness indicates some confusion. Id. KMK, on more than one occasion, not only improperly objected on the basis that his or her client could not understand the question, but then proceeded to

25

rephrase or interpret the questions himself or herself rather than asking Plaintiff's counsel to do so.

Similarly, even if this Court considers some of these objections to be valid, Plaintiffs respectfully submit that this impression should change when it is revealed how many of these objections were actually made. The sheer number of objections illustrates that they were strategically made to interrupt the flow of the deposition. In particular, KMK made objections based upon the fact that the question called for speculation: (Pedoto dep. pp. 236, 238, 249, 255, 313; Hoverson dep. pp. 6, 10-12, 15, 19, 22-23, 26-27, 30, 32-35, 38, 55-57, 59, 61-62, 66-68, 71, 79, 81, 84-85, 87-90, 93. 98, 103, 105, 107-108, 114-120, 122-129, 132, 134-139, 144, 162, 166-167, 181, 188-190, 195-198, 201, 205-206, 214-215, 217-218, 220, 233-234, 242, 263-265, 275, 277, 280, 284, 285, 289-291, 304, 309, 317-318, 320-324, 327, 335, 339, 32, 345-345, 367; Cook dep. pp. 34, 39, 50, 53, 78, 81, 84, 89, -90, 92, 115, 130, 131, 141, 144, 153, 156-159, 164-165, 171, 189, 193-194, 203, 210, 280); on the basis of foundation (Pedoto dep. 234, 236, 239, 240, 242, 253, 255-256, 271, 273, 276, 283-284, 286-287, 293-294, 299, 300-304, 317, 319; Hoverson dep. pp. 106-107, 119, 124-125, 139, 149, 166, 192, 197, 205, 233, 245, 278-279, 286, 289, 304, 326, 327, 342; Cook dep. pp. 5,8, 13, 15, 19, 21, 32, 36, 39, 47, 55, 56, 61, 74, 76-78, 82, 85, 92, 120, 146, 149, 161, 168, 190, 198, 201, 207, 209-214, 218, 246, 248-249, 255, 257-258, 262-263, 271, 278-280, 283-284, 288-289, 290-292, 295, 297, 300, 304, 308-309, 321, 324, 332, 334); on the basis of form (Pedoto dep. pp. 266, 269, 315, 316; Hoverson dep. pp. 132, 141, 146, 182, 199, 203, 207, 216, 222, 223, 250, 252, 288, 298, 313, 315, 318, 341; Cook dep. pp. 6, 20, 27, 33-34, 39, 45, 47, 74, 82, 84-85, 95, 101-102, 110-111, 114, 124, 137, 153, 164, 178, 197, 201, 209-214, 246, 259,

263-264, 273, 282, 284, 292, 297, 300-301, 304-305, 308, 319, 321, 324); and on the basis that the question mischaracterizes prior testimony and/or assumes facts not in evidence (Pedoto dep. pp. 232-233, 243-245, 248-249, 260-261; Hoverson dep. pp. 69, 73, 85, 93, 96, 109, 111, 117, 124, 128, 137, 147, 172, 187, 212, 217, 238, 250, 253, 264, 306, 309, 311, 330, 348; Cook, dep. pp. 28-29, 33, 87, 99-100, 102, 104, 106-108, 113, 111, 122, 124- 125, 126, 129, 132, 133, 138, 140, 145, 146, 152, 154, 158, 159, 167, 170-171, 173-174, 188, 193, 198, 201-202, 204-205, 210-214, 217-218, 248, 273-274, 279, 286-287, 297, 302, 314, 321).[7] These pages do not even list every objection which was made during these objections.

As a result, it is not much of an overstatement to state that nearly every page of this deposition containes multiple improper objections. With these frequent objections chopping up Plaintiffs' counsel's questions and record, the flow of the deposition and exchange of information between Plaintiffs' counsel and the deponent was definitely interrupted. Similarly, these numerous baseless objections also unfairly cut into the minimum seven hours which Plaintiffs' counsel is presumptively granted under the Federal Rules of Civil Procedure to depose each of the Provident Director Defendants. Therefore, even though some of KMK's objections may have been valid under the Federal Rules of Civil Procedure, KMK should still be sanctioned based upon its obstructive use these objections to defeat the inherent objectives behind the taking of a

---

[7] All references in this Motion to the Pedoto deposition originate from 3:15 PM on for the May 10, 2004 deposition, and/or p. 230 in the deposition forward. Although there were improper objections and instructions prior to that time, as well as during Defendant Joseph Steger's deposition, Plaintiffs have only cited to references from this point forward in the interest of fairness. After the Court's telephone call, there should have been no misunderstanding amount counsel as to the way that this Court wanted counsel to conduct themselves during these depositions.

27

deposition.   KMK should not be rewarded by attempting to run out the clock with abusive speaking objections and other interruptions that disrupt the flow of the depositions and interfere with the search for the truth.

      **C.**    **<u>KMK Should be Held in Contempt and Sanctioned for Its Failure to Adhere to this Court's Order Not to Make Any More Improper Objections During Depositions in this Case.</u>**

      A court cannot issue a contempt order unless a party has violated a specific order of which he or she is aware. *See, United States v. Di Mauro*, 441 F.2d 428, 439 (8th Cir. 1971) ("In order to cite a person for contempt, it must be shown that the alleged contemnor had knowledge of the order which he is said to have violated and that order must be specific and definite."). However, although a specific order must be violated, there is no requirement that the alleged contemnor do so willfully. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). Therefore, a party's intent in violating a disqualification order is irrelevant.[8]

      28 U.S.C. §1927 states that sanctions may be imposed against any attorney "who so multiplies the proceedings in any case to increase costs unreasonably and vexatiously . . . ." Id.  An attorney who engages in such conduct may be personally liable for excess costs, expenses, and attorneys' fees. Id. Imposition of sanctions under § 1927 requires a clear showing of bad faith: "an award . . . is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay." *Oliveri v. Thompson*,  803 F.2d 1265, 1273 (2d. Cir. 1986). An attorney conducts discovery in bad faith for purposes of § 1927 where he

---

[8] Plaintiffs have previously set forth the burdens of proof in a proceeding for civil contempt in Plaintiff's Motion to Completely Disqualify KMK or, in the Alternative, Hold KMK in Contempt for Violation of this Court's October 20, 2003 Order (Doc. No. 314), and hereby incorporates said section by reference.

or she essentially destroys a deposition through excessive groundless objections or lengthy personal attacks on his or her adversary. In *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987).  In *Unique Concepts, Inc.,* the court awarded sanctions where plaintiff's counsel interposed statements other than objections as to form on 91 percent of the pages of a deposition. Id. at 293-294.  (pursuant to both § 1927 and the court's inherent power); *See Also, Brignoli v. Bach, Hardy & Scheinman, Inc.,*  126 F.R.D. 462, 466 (S.D.N.Y. 1989) (imposing sanctions under § 1927 where plaintiff's counsel protracted depositions with improper objections, directions to client not to answer proper questions, substituted testimony in client's stead, and speaking objections even after court had prohibited them), modified, No. 86 Civ. 4103, 1989 WL 146767 (S.D.N.Y. Dec. 1, 1989).

Similarly, sanctions, including costs and attorneys' fees, may be awarded under Rule 30 for conduct that a court finds has "frustrated the fair examination of the deponent." Fed.R. Civ. P. 30(d)(2). Courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,*  501 U.S. 32, 43, 111 S.Ct. 2123 (1991) (quoting *Link v. Wabash R.R.,*  370 U.S. 626, 630-631, 82 S.Ct. 1386 (1962). This power embraces the authority to impose costs and attorneys' fees against a party or his or her attorney where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258-259, 95 S.Ct. 1612 (1975) (quoting *F.D. Rich Co. v. United States ex rel Lumber Co.,*  417 U.S. 116, 129, 94 S.Ct. 2157 (1974). As with sanctions under §1927, the court's inherent power must be wielded with restraint, and thus the party seeking sanctions must make a particularized showing of bad faith.

*United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991). *See also, Olivieri,* 8903 F.2d at 1273 (only meaningful difference between § 1927 and inherent power is that awards under § 1927 may be imposed only against attorneys, while awards pursuant to inherent power may be made against a party, its attorney, or both).

In the present case, Ms. Rowe of KMK was instructed by this Court during the May 10, 2004 deposition of Joseph Pedoto that Plaintiffs' counsel was not to take part in unnecessarily repetitive questioning and that KMK was not to make any speaking objections or improperly instruct its clients not to answer questions. The Court implied that these words applied to all counsel in this case, and not just to the counsel present at Defendant Pedoto's deposition. Thus, although KMK should have conducted itself in accord with the Federal Rules of Civil Procedure before this Court's instruction during Defendant Pedoto's deposition, there is no excuse for its failure to do so thereafter. Therefore, since KMK was on notice of this Court's specific order, and did not heed this Court's instructions as set forth above, Plaintiffs respectfully submit that KMK should be sanctioned, as the Court contemplated in its oral instructions to the parties. Although any individual KMK objection may not appear to be particularly egregious when read in the cold record, the aggregate conduct of KMK evidences nothing less than a pattern of bad faith and an intent to interfere with the Plaintiff's right to obtain information from the deponents.[9]

---

[9]  It is no secret that Plaintiffs and KMK do not enjoy good relations in this case, although Plaintiffs relationship with other counsel has generally been excellent.  As discussed above, KMK's defense of the Provident Director Defendants' depositions is a typical example of KMK's vexatious behavior toward Plaintiffs and their counsel. KMK not only repeatedly made speaking objections and other improper instruction for its

## III.    **CONCLUSION**

The cumulative effect of all of KMK's improper objections has severely hampered Plaintiffs' ability to obtain meaningful discovery, which is KMK's intent. Plaintiffs concede that any one of the objections referenced in this Motion, or any single speaking objection or other improper interruption, taken out of context, can appear trivial in the cold record. During the depositions, however, it is exceedingly difficult to maintain concentration, and the keep the deposition on track, when these deliberate and repeated distractions are made.

Similarly, disingenuous nonresponsive answers also have impeded the depositions. It is difficult to believe that Defendant Provident's acting Chairman and C.E.O. Robert Hoverson, does not know, or would have to speculate, that the numbers in Provident's financial statements were materially misstated, a phrase that appears repeatedly in Provident's board minutes and public documents. Such testimony requires an acceptance of the premise that that the CEO of the Company does not know how to read and interpret Provident's public documents and board minutes. (*See*, Exhibit A at Bates Number PFGI 12066). As a result, given these intentional interruptions, objections, and evasive responses to straightforward questions, it cannot be denied that the record that has been amassed to date is not an accident. On the contrary, it is a deliberate strategy to thwart meaningful discovery, and make a mockery of the depositions.

---

clients not to answer legitimate questions, but also attempted to derail the Plaintiffs' ability to obtain evidence from the Provident Director Defendants about critical issues in this case. Given the frequency of these objections in all of the depositions at issue, even after this Court' instruction and admonition against improper objections, KMK's conduct must be considered to have been conducted in nothing less than bad faith.

Thus, for the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Hold KMK in Contempt for Discovery Violations under the Federal Rules of Civil Procedure and Request for Sanctions. Plaintiffs further request from this Court a written order prohibiting KMK from engaging in such alleged conduct in future depositions in this action.

Dated: 1 July 2004

Respectfully Submitted,

Gene Mesh (OH Bar # 0002076)
Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (fax)

*Attorneys for Plaintiffs and the*
*Putative Class*

32

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs' Motion to Hold KMK in Contempt for Discovery Violations under the Federal Rules of Civil Procedure and Request for Sanctions was served this 1st day of July, 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752


**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249

James H. Greer, Esq.
BIESER, GREER AND LANDIS, LLP
400 National City Center, 6 North Main Street
Dayton, OH 45402-1908


_____
Stephanie A. Hite

33