IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **WALTER W. THIEMANN, et al.** ) | Case No. C-1-00-793 |
| ) | |
| **Plaintiffs,** ) | **(Judge Sandra S. Beckwith)** |
| ) | |
| v. ) | |
| ) | **MOTION FOR LEAVE TO FILE** |
| **OHSL FINANCIAL CORPORATION,** ) | **SUPPLEMENTAL MEMORANDUM** |
| **ET AL.,** ) | **IN OPPOSITION TO PLAINTIFFS'** |
| ) | **MOTION FOR CLASS** |
| **Defendants.** ) | **CERTIFICATION** |
| ) | |

---

Defendants OHSL Financial Corporation ("OHSL"), Oak Hills Savings & Loan Company, F.A. ("Oak Hills"), Norbert G. Brinker ("Brinker"), Kenneth L. Hanauer ("Hanauer"), William R. Hillebrand ("Hillebrand"), Alvin E. Hucke ("Hucke"), Thomas E. McKiernan ("McKiernan"), Joseph J. Tenoever ("Tenoever"), Howard J. Zoellner ("Zoellner") (collectively the "OHSL Defendants"), Provident Financial Group, Inc. ("Provident"), Robert L. Hoverson ("Hoverson"), Jack M. Cook ("Cook"), Thomas D. Grote, Jr. ("Grote"), Phillip R. Myers ("Myers"), Joseph A. Pedoto ("Pedoto"), Joseph A. Steger ("Steger"), and Christopher J. Carey ("Carey") (collectively the "Provident Defendants") (the OHSL and Provident Defendants are collectively referred to as "Defendants"), move for leave to submit the attached Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification.

On December 31, 2003, two weeks after the Court decertified the class in this case, Plaintiffs filed a second motion for class certification. (Doc. 233) Defendants filed a memorandum in opposition to that motion on January 21, 2004, in which they discussed why, based on the discovery done to that point, the Court should not certify the class. (Doc. 244) In that memorandum, Defendants also respectfully requested an opportunity to supplement the

record once they had a chance to conduct discovery from the newly joined named plaintiff, Gary Meier.  (Doc. 244 at 1, 9 n.5)

On June 24, 2004, Defendants deposed Mr. Meier.  That deposition testimony provides further evidence of why this class should not be certified.  Defendants therefore request leave of Court to discuss that deposition testimony in the attached Supplemental Memorandum.

                                  Respectfully submitted,

                                  /s/  James H. Greer
                                  David C. Greer
                                  James H. Greer
                                  BEISER, GREER AND LANDIS, LLP
                                  400 National City Center
                                  6 North Main Street
                                  Dayton, Ohio 45402
                                  Tel:  (937) 223-3277
                                  Fax:  (937) 223-6333
                                  Email: dcg@bgllaw.com; jhg@bgllaw.com
                                  Attorneys for OHSL and Provident Defendants

OF COUNSEL:

James E. Burke
Rachael A. Rowe
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

## SUPPLEMENTAL MEMORANDUM IN OPPOSITION

I. **BRIEF PROCEDURAL RECAP.**

When this case was originally brought, it was brought solely by Plaintiff Walter W. Thiemann. On September 14, 2001, this Court certified a class with Mr. Thiemann as class representative. (Doc. 50) Defendants then filed a motion to reconsider the class certification order (Doc. 52) and a motion to decertify the class. (Doc. 65). On December 15, 2003, this Court granted Defendants' motion to reconsider and vacated the previous order granting class certification. (Doc. 227) The Court gave two main reasons for doing so:

> 1. Defendants introduced uncontradicted evidence "that not only did the lead Plaintiff, Mr. Thiemann, not rely on the alleged misleading proxy statement, he concluded based on the proxy statement that the merger was a bad investment." (Doc. 227 at 7)
>
> 2. The Court was concerned about the adequacy of class counsel. Specifically, the Court felt that counsel lacked "professionalism" and had enagaged in litigation tactics that were a "considerable waste of everyone's time and resources." (Doc. 227 at 9-10)

On December 31, 2003, two weeks after the Court decertified the class, counsel filed an amended complaint (the "CAC"), in which new plaintiffs (Gary and Lisa Meier and Gary Meier as custodian for Lindsey Meier) as well as new defendants were added to the case. (Doc. 234) In the CAC, Plaintiffs allege eleven claims – six based on the federal securities laws (sections 11, 12(2), and 15 of the Securities Act and Sections 14, 10(b), and 20(a) of the Exchange Act) and five based on state statutory and common law (Ohio Revised Code §§ 1707.41 and 1707.43, spoliation, fraud, and breach of fiduciary duty). The gist of each of Plaintiffs' claims in the CAC is that in an effort to convince OHSL shareholders to approve the OHSL-Provident merger, Defendants intentionally misled them by sending a Proxy Statement with allegedly false, misleading, or inadequate statements about: (1) the unanimity of OHSL's Board regarding the

2

merger with Provident; (2) Provident's level of securitization activity; (3) OHSL Director Herron's resignation from the Board before it voted to recommend the merger to OHSL's shareholders; and (4) Provident's financial condition. (Doc. 234, CAC at ¶¶ 117-21) Plaintiffs allege that these statements "fraudulently induced" OSHL shareholders "to approve the merger." *Id*. at ¶ 82; *see also id*. at ¶¶ 62, 125. Plaintiffs also claim that "[s]ince the merger was fraudulently induced, and the plaintiff class was harmed through these misrepresentations, the merger should be undone." (*Id*. at ¶ 101)

On the same day that they filed their CAC, Plaintiffs also filed a new motion for class certification. (Doc. 233) This new motion, which was virtually identical to the first motion (*compare* Doc. 27), did nothing to correct the deficiencies that led the Court to vacate class certification two weeks earlier. On January 12, 2004, Defendants filed a "Position Paper," in which they asked the Magistrate Judge to "enter an order providing that memoranda in opposition to Plaintiffs' [second] motion for class certification be due July 15, 2004 – two weeks after the close of class discovery." (Doc. 239) The Magistrate Judge denied Defendants' request. (Doc. 241) Accordingly, Defendants filed an opposition to the second motion for class certification on January 21, 2004, which was based solely on Mr. Thiemann's deposition testimony, but which also respectfully requested that the Court withhold its decision until after class discovery closed on June 30, 2004, so that Defendants had a chance to supplement the record once they took Mr. Meier's deposition. (Doc. 244 at 1, 9 n.5)

Defendants took Mr. Meier's deposition on June 24, 2004 and now submit this supplemental memorandum in opposition to discuss his testimony.[1] That testimony makes it

---

[1]  The final transcript of Mr. Meier's deposition is not yet available. Defendants' citations to the deposition are to an expedited version obtained from the court reporter. Defendants have attached the cited pages as Exhibit A to this brief. When the final transcript is made available to the parties, Defendants will file that transcript and supplement this brief, if necessary.

3

clear that Mr. Meier, like Mr. Thiemann, is neither a typical nor adequate class representative and that this class should not be certified.[2]

## II. MR. MEIER'S TESTIMONY.

When Mr. Meier received the proxy statement at issue in this case, he "checked it out, looked through it as best [he] could, and thought [he] wasn't interested in . . . the merger." (Meier Dep. at 101) He says he specifically remembers looking at "page six" of the proxy statement, which contained "Provident's financial statements," but "couldn't really make heads or tails of none of it." (Meier Dep. at 103-04) The only number he looked at on page six was the "big number," which he identified as the number for "[t]otal interest income." (Meier Dep. at 104) He also remembers reading the Board's recommendation that shareholders "vote for the merger [because] it would be the best thing for us." (Meier Dep. at 105)

Notwithstanding what he read, Mr. Meier was "opposed" to the merger because he "liked banking" at OHSL and "[d]idn't want to lose [his] company." (Meier Dep. at 107-08) Specifically, Mr. Meier testified:

> Q. But you were opposed to the merger?
> A. I was opposed to it.
> Q. And notwithstanding the fact that the Board recommended you vote in favor of it, you didn't want to?
> A. Right, correct.
> Q. So the fact that they recommended that you vote in favor didn't persuade you, did it?
> A. No.
> …
> Q. Okay. I take it you did not submit a card – a vote on the merger itself?
> A. No.

---

[2] Although Lisa Meier is also a named plaintiff in the CAC, only Gary Meier seeks to represent the proposed class. (Meier Dep. at 137-41) At Mr. Meier's deposition, Lisa Meier expressly stated that she did not want the Court to analyze her as a potential class representative. (Meier Dep. at 138)

4

> Q. Okay. Why not?
>
> A. A no vote is – not turning one in is the same as a no vote, so I –
>
> Q. Okay. So you understood that by not turning a card in, you were voting no?
>
> A. Correct.
>
> Q. And you intended to vote no on the merger?
>
> A. Correct.

(Meier 108-09)

Mr. Meier later admitted that the proxy materials did not mislead him:

> Q. Okay. What – although you voted against – how could you be misled by the proxy materials if you, in fact, voted against the merger? What were you misled about?
>
> [Plaintiffs' counsel objects]
>
> A. When I filed this, this was after I found out about the restate and all the – at the time of the vote, I wasn't – didn't think I was being misled, I just didn't want to – didn't want to sell my company –
>
> Q. Okay.
>
> A. -- and my shares.
>
> Q. And if you had known the financial information we talked about earlier today relating to the restatements, how would you have voted?
>
> [Plaintiffs' counsel objects]
>
> A. No one would ever really know what would happen.
>
> Q. I mean, would you vote against it or for it?
>
> [Plaintiffs' counsel objects]
>
> A. I think I still would have voted against it.
>
> Q. Okay. So your vote wouldn't have changed, correct.
>
> [Plaintiffs' counsel objects]
>
> A. Right.

(Meier Dep. at 166-67)

Mr. Meier's true motivation for filing the lawsuit was not that he was misled by the proxy materials, but that he thinks the Defendants "sold [him] out" and "ripped him off" because when

5

he turned in his 200 shares of OHSL stock, he only got 109 shares of Provident in return. (Meier Dep. at 38-39, 110-11)  Mr. Meier did not have any understanding that the Provident stock was worth more than the OHSL stock. Instead, for no apparent reason, he "thought" the shares should have been exchanged in a one-to-one ratio:

> Q.     But you had no idea how the value of Provident stock compared to the value of OHSL in terms of the --
>
> A.     If there was a buyout and we're supposed to listen to those people and vote for it, it should have been 50-50 exact.
>
> Q.     And what do you base that on?
>
> A.     Just what I thought.
>
> Q.     My question is, but you didn't –
>
> A.     I had no basis for it.
>
> Q.     And you didn't know how the value of the two stocks compared, did you?
>
> A.     No. They said they were equivalent, I thought.
>
> Q.     Well, can you point me to anything in the proxy statement where they said the value of these two shares were equivalent?
>
> A.     No sir.

(Meier Dep. at 111-12)

Throughout his deposition, Mr. Meier showed a glaring unfamiliarity with the facts and legal issues involved in this case. For example:

- o  Although he has sued Defendants for misrepresenting the financial statements in the proxy materials (*e.g.*, CAC at ¶¶ 100, 120), he admits he is not a person who can read and understand financial statements. (Meier Dep. at 22)

- o  Although his suit claims he was damaged because Provident's stock was artificially inflated at the time of the merger (*e.g.*, Complaint at ¶ 100), Mr. Meier's true motivation for suing is that he did not receive one share of Provident stock for every one share of OHSL stock he owned. (Meier Dep. at 38-39, 110-11) Mr. Meier was not aware, until

pointed out to him by Defendants' counsel at the deposition, that the merger agreement called for an exchange of .5625 Provident shares for every OHSL share. (Meier Dep. at 112-13) To the contrary, he thought the two companies' stock prices were "even," and thus only looked "at the amount of shares." (Meier Dep. at 42, 52)

- Mr. Meier has "no idea" about the issues that led to the restatement. (Meier Dep. at 65) His "opinion" is that the accounting errors that led to the restatement were intentional, but he has no facts on which to base that opinion. (Meier Dep. at 66-68) When asked whether he had any knowledge as to each individual defendant's role at Provident, his answer bordered on nonsense:

    > Q. Do you have any knowledge about what role any of those people had at Provident?
    >
    > A. I guess all falsifying the numbers so they could make their stock look good.
    >
    > Q. So your understanding is that all of those individuals were involved in falsifying the numbers so they could make their stock look good?
    >
    > A. I guess. Why else would you pay all of them people that kind of money and and have all – it seems like one person could do the whole thing, couldn't they?
    >
    > Q. What are you talking about?
    >
    > A. You only need a president.
    >
    > Q. You only need a president of a bank?
    >
    > A. Yeah.

    (Meier Dep. at 146)[3]

- Mr. Meier is confused as to the impact of the restatement and its relationship to the 1999 Proxy Materials. When asked whether the restated financial data for the years 2000,

---

[3] Mr. Meier displayed this kind of hostility toward the OHSL directors throughout the deposition. For example, he gave his opinion that OHSL officials "made an awful lot of money for doing nothing," and that paying them "over a hundred thousand dollars a year . . . [was] way too much money." (Meier Dep. at 48-49) He also testified to his opinion that the OHSL officials were "[o]ld and senile" in 1999 based on the way they carried themselves at their depositions in 2004. (Meier Dep. at 49-51)

7

2001, and 2002 would have had an impact on a financial statement prepared in 1999, Mr. Meier, again, gave a nonsensical answer:

> Q. My question is, though, the numbers for 2000, 2001 and 2002 would have no bearing on a document that was prepared in 1999, correct?
>
> [Plaintiffs' counsel objects]
>
> A. Yes, it should.
>
> Q. It should?
>
> A. Yeah. They were taking numbers off of a merger that – yeah, everything's wrong.
>
> Q. Okay. Everything is wrong?
>
> A. It was all done by lies and cheat and –
>
> Q. Okay. So you believe that the financial results for 2000, 2001, and 2002 should have been included in the proxy statement, Defendant's Exhibit 1?
>
> [Plaintiffs' counsel objects]
>
> Q. Is that right?
>
> A. I'm not sure how they're going to make good on it.
>
> Q. Do you know how these numbers for the columns 2000, 2001 and 2002 fit into the proxy statement numbers that were prepared in September of 1999 –
>
> [Plaintiffs' counsel objects]
>
> Q. -- if at all?
>
> A. No, I don't.

(Meier Dep. at 237-38)

- o Mr. Meier is also confused as to when the 2003 restatements occurred. For example, he testified that he knew the numbers in Provident's financial statements were "false" when he read an August, 2001 article in the Cincinnati Business Courier. (Meier Dep. at 119) He also testified that when he exchanged his shares in 1999, he knew, because of the restatements, that he had been "ripped off":

> A. That's when I knew I got ripped off.
>
> Q. And how did you know that?

8

> A. Just because I had 200 shares of a good stock and I get 109 shares of garbage.
>
> Q. Of garbage?
>
> A. Yeah.
>
> Q. And what do you base that on?
>
> A. That restatement going – that I read since '94. Big business, big banks – they can't keep records straight? Who is supposed to oversee that? Isn't there – no one said that – they apologized and that's it, everybody – they live high on the hog and what do we do? We just keep working for a living?

(Meier Dep. at 110-11)

- o Although he claimed that he was "pretty much" responsible for all of the factual analyses and statements in the CAC (Meier Dep. at 135-36), Mr. Meier did not understand that he asserted claims (actually five claims) under Ohio law. (Meier Dep. at 124) Moreover, he testified that he got the information for the CAC from depositions that were taken after the CAC was filed. (Meier Dep. at 136-37)

- o Mr. Meier was not aware that OSHL Defendants McKiernan and Brinker were in favor of the merger and approved it at a subsequent Board meeting. (Meier Dep. at 227) In fact, Mr. Meier did not even know the names of any of the OHSL directors, whom he sued. (Meier Dep. at 34)

Mr. Meier's testimony also showed that he has placed total reliance on his counsel, Mr. Brautigam, and has even signed affidavits that he does not understand. For example, on January 31, 2004, Mr. Meier signed an affidavit in support of the motion for class certification (Exhibit C to Doc. 260). In that affidavit, Mr. Meier swore:

> I estimate the amount of my losses to be approximately $872 . . . . This estimate is made by taking the number of shares I received due to the forcible conversion, 109, multiplying by $40, and then deducting 20%.

9

(Doc. 260, Ex. C at ¶ 12)  However, when asked at his deposition whether he could explain how he calculated the $872 in damages, he responded "[n]ot offhand."  (Meier Dep. at 118, 176-77)  He also testified that he "is not too sure" about what he has lost.  (Meier Dep. at 117)

Mr. Meier also swore in his affidavit that he "selected the firm of GENE MESH AND ASSOICTAES based don [sic] their experience and expertise in the area of securities class actions generally, and their unparalled [sic] knowledge of this case in particular."  (Doc. 260, Ex. C at ¶ 9)  However, at his deposition, Mr. Meier testified that he "[did]n't know how [he] decided to pick Gene Mesh & Associates," and that he had never read anything about either Mr. Mesh or Mr. Brautigam or the firm's experience and expertise in securities class action.  (Meier Dep. at 175-76)[4]

Finally, Mr. Meier testified bluntly that he knows nothing about why his wife and he were both named as class representatives:

> Q.  Mr. Meier, I want to ask you one thing.  What is the situation between you and your wife as it relates to being the class rep in this case?  Is it you, is it her, is it primarily you, is it both?  Can you –
>
> A.  It's all me.
>
> [Objection from Plaintiffs' counsel]
>
> A.  She knows nothing about it.
>
> Q.  Okay.
>
> A.  Neither one of us do, to tell you the truth.

(Meier Dep. at 137-38)

---

[4] There were other inaccurate statements in Mr. Meier's sworn affidavits.  In his December 23, 2003 affidavit (Exhibit B to Doc. 233), Mr. Meier swore that he has "produced documents in the case."  (Doc. 233, Ex. B at ¶ 5)  When asked what documents he has produced, Mr. Meier said that the affidavit testimony was a mistake.  (Meier Dep. at 169)  In his January 31, 2004 affidavit, Mr. Meier swore that after reading the August, 2001 Cincinnati Business Courier article, he called James Burke and Mr. Burke "declined to speak to me substantively about the case."  (Doc. 260, Ex. C at ¶ 3)  In his deposition, Mr. Meier admitted that this statement in his affidavit was incorrect.  (Meier Dep. at 173-74)

### III. ARGUMENT.

#### A. Mr. Meier Is An Atypical Class Representative.

Although he alleges in the CAC that Defendants misled the OHSL shareholders and fraudulently induced them to approve the merger, Mr. Meier admits *he* was not misled by anything in the Proxy Materials and voted *against* the merger for reasons wholly unrelated to any alleged misrepresentation. These facts, by themselves, preclude class certification.

*Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453 (D.D.C. 1985), is directly on-point. In *Kas*, plaintiff shareholders alleged that a proxy statement was materially false and misleading. *Id*. at 459. The District Court, however, refused to certify the class because the "plaintiffs voted against the merger for reasons unrelated to any alleged misrepresentations or omissions." *Id*. at 461. The Court held:

> Because these plaintiffs did not rely upon the proxy/information statement, they are, therefore, perhaps subject to unique defense which would not be applicable to other members of the proposed class who were allegedly deceived by the proxy statement and, relying upon it were thus misled into voting in favor of the merger. This defense, which would be peculiar only to the small subclass which voted against the merger, could likely become a major focus of the litigation.

*Id*. at 461-62. Likewise, Mr. Meier voted against the merger because he "didn't want to sell [his] company." (Meier Dep. at 107-08, 166-67) He did not rely on the alleged misrepresentations and would not have changed his vote regardless of what the proxy statement said. (Meier Dep. at 166-67) His claim is, therefore, subject to a unique defense which has been, and undoubtedly will continue to be, a major focus of the litigation. *See also Knauff v. Utah Construction & Mining Co.*, 277 F. Supp. 564, 578 (D. Wyo. 1967) (holding that because plaintiffs "did not rely on any statements contained in the merger proxy statement, [but instead] . . . each voted against the merger," "they cannot represent a class of persons who allegedly relied upon said statements

11

in voting for the merger"); *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197-98 (S.D.N.Y. 1986) (plaintiff's "admission that he learned of the alleged omissions and misstatements of fact before the merger vote and therefore did not rely on the representations in [the] proxy statement subjects plaintiff to unique defenses, and plaintiff cannot, therefore, satisfy the typicality requirement"); *In re AM International, Inc. Securities Litigation*, 108 F.R.D. 190, 195 (S.D.N.Y. 1985) ("a proposed class representative who clearly did not rely upon either the allegedly misleading financials or on the integrity of market price or information is subject to unique defenses, and therefore may not represent the class"); *Markewich v. Ersek*, 98 F.R.D. 9, 11 (S.D.N.Y. 1982) (denying class certification in securities fraud case where plaintiff's decision "may have been based on considerations other than the financial statements and the likelihood of these issues being raised and extensively litigated unnecessarily burdens the class").[5]

On the basis of Mr. Meier's testimony, alone, the Court should find that Mr. Meier does not meet the typicality requirement of Federal Rule of Civil Procedure 23(a)(3).

### B.  Mr. Meier Is An Inadequate Class Representative.

Under Federal Rule of Civil Procedure 23(a)(4), courts are required to conduct "an inquiry into the knowledge of the [proposed class] representative . . . to ensure that the party is not simply lending [her] name to a suit controlled entirely by the class attorney." *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 322 (M.D. Fla. 1997) (citation omitted). Judge Spiegel of this Court has denied class certification in a securities case where, like here, the class

---

[5] This Court has already rejected Plaintiffs' argument that their lack of reliance is excused by the fraud-on-the-market presumption. *See* Doc. 227 at 8 (noting that the presumption "likely would not be applicable in this case"). Furthermore, even if the presumption applied, that presumption is rebuttable and has been rebutted by Mr. Meier's unequivocal testimony that he was not misled by the proxy statement and voted against the merger because he didn't want to lose his company. *See, e.g.*, *Basic Inc. v. Levinson*, 485 U.S. 224, 248-49 (1988) (listing ways in which defendant can rebut fraud-on-the-market presumption, including by showing that plaintiff did not rely "on the integrity of the market" in making his decision); *Schwartz v. Celestial Seasonings, Inc.*, 185 F.R.D. 313, 318 (D. Colo. 1999) (fraud-on-the-market presumption "is rebuttable if Defendants can prove that individual class members did not rely on any fraudulent misrepresentations or omissions").

representative demonstrated a "glaring lack of familiarity with the facts of this litigation." *Efros v. Nationwide Corp.*, 98 F.R.D. 703, 708 (S.D. Ohio 1983). *See also Butterworth*, 171 F.R.D. at 323 (denying class certification where "plaintiff fails to demonstrate that she is familiar with the facts of the current case sufficiently enough to represent the proposed class . . . [and] does not show knowledge of the essential issues of the case"); *Dalton v. FMA Enterprises, Inc.*, 1996 WL 379105, *6 (M.D. Fla. 1996) ("Plaintiff fails to demonstrate that she is familiar with the facts of her case sufficiently enough to represent the proposed class"); *Wein v. Master Collectors, Inc.*, 1995 WL 550475, *3-*4 (N.D. Ga. 1995) (reviewing plaintiff's deposition transcript and concluding "that she has not fulfilled the role of class representative, in that she does not understand even her own claim, much less that of the putative class as a whole, and she has abandoned the prosecution of this claim entirely to her attorneys").

Courts are especially concerned with a plaintiff's lack of knowledge where it appears that the plaintiff's attorney, rather than the plaintiff, is the "driving force" behind the litigation. *Efros*, 98 F.R.D. at 707. For example, in *Byes v. Telecheck Recovery Services, Inc.*, 173 F.R.D. 421 (E.D. La. 1997), the District Court was "disturb[ed]" that the plaintiff signed an affidavit, falsely swearing that she understood "each specific claim in her lawsuit." *Id*. at 427. In denying class certification, the court held:

> Given [plaintiff's] limited understanding about these proceedings, the court finds it unlikely that she intentionally submitted a false affidavit and more likely that she signed the affidavit at the behest of her attorneys without understanding the significance of doing so. The affidavit indicates to the court that [plaintiff] places blind reliance on her attorneys, but even more so, it reflects poorly on the adequacy of counsel.

*Id*.

*Byes* is on all-fours with the case at bar. Mr. Meier's deposition testimony makes it clear that he has placed blind reliance on his counsel, Mr. Brautigam, and has even signed affidavits

13

that he does not understand.  Defendants do not suggest that Mr. Meier is intentionally signing false or misleading pleadings.  Defendants give these examples merely to show that Mr. Meier is obviously signing documents without understanding the significance of them and is placing blind reliance on his counsel, whom this Court has noted is "wast[ing] everyone's time and resources." (Doc. 227 at p. 10)[6]  *See Efros*, 98 F.R.D. at 707 (Judge Spiegel "seriously troubled" by the 'unfettered discretion' which [plaintiff] has given to her attorneys").

Mr. Meier's "glaring lack of familiarity" with the facts and legal issues involved in this case and his blind reliance on Mr. Brautigam is reason alone to deny class certification on grounds of inadequacy.  The Court, however, also should be concerned about the lack of support Plaintiffs have received from the shareholders they seek to represent.  *See id.* at 708 (lack of support for plaintiff weighs in favor of denial of class certification).  This case has now been pending for four years.  Despite the obvious problems with having two class representatives who neither relied on or were misled by the proxy materials, not one shareholder who relied on the proxy materials and voted for the merger has instituted a similar action or sought to intervene in this lawsuit.

That, of course, is not surprising.  Proposed class members have significantly benefited from the OHSL-Provident merger.  Plaintiffs, however, seek to, among other things, "undo[]" or "rescind the merger."  (CAC at ¶ 101 and Prayer, ¶ B)  Because former OHSL shareholders have benefited from the merger that Plaintiffs seek to rescind, "[t]he relief which plaintiffs seek for themselves may well not . . . be desirable for the majority of shareholders who made the decision to vote for the merger." *Kas*, 105 F.R.D. at 462.  *See also Guttman v. Braemer*, 51 F.R.D. 537, 539-40 (S.D.N.Y. 1970) (denying class certification primarily on the basis that the relief sought

---

[6] Mr. Meier essentially admitted such reliance, testifying that he relied on counsel to make sure the facts alleged in the complaint were accurate and supported by evidence and to advise him as to which defendants to sue. (Meier Dep. at 239-40)

14

by the plaintiff – recission – might well be at odds with the relief which many of the other shareholders would want).

Mr. Meier, therefore, cannot meet the adequacy requirement of Rule 23(a)(4).

## IV. CONCLUSION.

For all the reasons discussed above and in the prior briefs submitted on this issue, which Defendants incorporate herein by reference (Docs. 35, 52, 56, 65, 79, 173, 197, 199, and 244), Defendants respectfully request that the Court deny Plaintiffs' motion for class certification.

                    Respectfully submitted,

/s/  James H. Greer
David C. Greer
James H. Greer
BEISER, GREER AND LANDIS, LLP
400 National City Center
6 North Main Street
Dayton, Ohio 45402
Tel:  (937) 223-3277
Fax:  (937) 223-6333
Email: dcg@bgllaw.com; jhg@bgllaw.com
Attorneys for OHSL and Provident Defendants

OF COUNSEL:

James E. Burke
Rachael A. Rowe
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing **SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** was served upon the following, by ordinary U.S. mail, this 8th day of July, 2004.

| | |
|---|---|
| Michael G. Brautigam<br>Gene I. Mesh<br>Gene Mesh & Associates<br>2605 Burnet Avenue<br>Cincinnati, Ohio 45219-2502<br><br>*Attorneys for Plaintiffs* | John W. Hust<br>Michael E. Maundrell<br>Schroeder, Maundrell, Barbiere & Powers<br>11935 Mason Road, Suite 110<br>Cincinnati, Ohio 45249<br><br>*Attorneys for Dinsmore Defendants*<br><br>James E. Gauch<br>Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001-2113<br><br>*Attorney for Defendant Ernst & Young*<br><br>Michael R. Barrett<br>Thomas W. Breidenstein<br>Barrett & Weber<br>500 Fourth & Walnut Centre<br>105 East Fourth Street<br>Cincinnati, Ohio 45202-4015<br><br>*Attorneys for KMK Defendants*<br><br>/s/ James H. Greer<br>James H. Greer |