IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRUCT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER THIEMANN, et al. | : | Case No. C-1-00-793 |
| Plaintiffs, | : | Judge Sandra S. Beckwith |
| vs. | : | Magistrate Judge Timothy Hogan |
| OHSL FINANCIAL CORP., et al. | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFFS' REPLY TO DEFENDANTS KEATING, MUETHING & KLEKAMP, LLP, AND MARK A. WEISS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY FOR IMMEDATE APPEAL IN THE COURT'S JUNE 4, 2004 ORDER DISMISSING THE KMK DEFENDANTS (DOC. NO. 348).**

Dated: July 20, 2004

**GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*

1

Plaintiffs, by and through counsel, reply to Defendants Keating, Muething & Klekamp, LLP, and Mark A. Weiss' Memorandum in Opposition to Plaintiffs' Motion to Certify for Immediate Appeal the Court's June 4, 2004 Order Dismissing the KMK Defendants (Doc. No. 348) and submit the following Memorandum in support thereof.

## MEMORANDUM

### A.    Plaintiffs' Motion Has Merit and is Valid Under 28 U.S.C. §1292(b)

Contrary to the misrepresentations of the KMK Defendants, Plaintiffs' Motion to Certify for Immediate Appeal the Court's June 4, 2004 Order Dismissing the KMK Defendants (Doc. No. 341) (hereinafter "Motion") is not a motion for reconsideration under the guise of a motion for interlocutory appeal. (Memorandum, p. 1). Rather, this is a motion which has met the requirements of 28 U.S.C. §1292(b). The parties in this case are in agreement as to the standard for granting an interlocutory appeal in this case, but disagree as to whether or not this motion is appropriate based upon the facts of this case. The KMK Defendants attempt to argue that the Plaintiffs have merely questioned the correctness of this Court's rulings. However, this is not the case. As discussed in Plaintiffs' Motion, and below, Plaintiffs have raised issues in their Motion that involve controlling questions of law, for which a substantial difference of opinion exists. The issue is not if the Sixth Circuit is going to hear these issues, but when. As a result, the Plaintiffs decision to file this Motion now should materially advance the ultimate termination of the litigation. 28 U.S.C. §1292(b).

The KMK Defendants' general arguments against Plaintiffs' Motion are also all without merit. The KMK Defendants provide no legal authority or any type of substantive argument to support their claim that Plaintiffs' arguments are invalid under

28 U.S.C. §1292(b). Rather, they just make conclusory statements. Further, the Plaintiffs are not repeating the arguments in their Memorandum in Opposition to the KMK Defendants' Motion to Dismiss (Doc. No. 275), but rather are now arguing that there are controlling legal arguments under the law which were improperly overlooked in the Court's decision, that there is a disagreement among the federal courts on the decisions that were reached by this Court, and that these controlling issues of law need to be resolved now in order to ensure that advance of the ultimate termination of this litigation pursuant to 28 U.S.C. §1292(b).

Further, as argued in their Motion, Plaintiffs also stated that these issues needed to be addressed at this time because they are all essentially intertwined and impact one another. *Brown v. Mississippi Valley State University,* 311 F.3d 328, 332 (5th Cir. 2002). All of the claims center around the creation of the Proxy Materials/Registration Statement, the 2003 Restatements of the Provident financial statements, and whether or not the Restatements confirm that the Proxy Materials/Registration contain material misstatements. These issues are important questions that determine the fairness of capital markets. As a result, as stated above, the issue is not if the Sixth Circuit is going to review these issues, but when. A failure to resolve these issues now could easily delay the ultimate termination of the litigation. Thus, based upon the foregoing, the Plaintiffs are not recycling old arguments, but are raising new arguments regarding controlling legal arguments which need to be resolved in order to continue to materially advance the ultimate termination of the litigation.

The KMK Defendants' specific arguments are not any more persuasive. First, the KMK Defendants argue that defenses based upon statutes of limitations are not

appropriate for a motion to dismiss. However, the KMK Defendants misrepresent the

Plaintiffs' argument and the law on this issue. Although it is true that a complaint may be

dismissed as time-barred where the application of the statute can readily be discerned

from the face of the complaint, this is not what *Hoover v. Langston Equip. Assoc.*, 958

F.2d 742, 744 (6th Cir. 1992) stated. Rather, it stated as follows:

> "The Sixth Circuit has adopted the view, at least in cases where the face of
> the complaint discloses a failure to file within the time allowed, that the
> plaintiff may come forward with allegations explaining why the statute of
> limitations should be tolled."

Id. This is exactly what the Plaintiffs did in this case. Plaintiffs explained in detail that

they were not on inquiry notice until December 2001 when testimony had been obtained

from Defendants Roe and Hertlein which indicated that KMK had a much larger role in

the preparation of the proxy materials than was previously known. (Doc. No. 275).

However, rather than accepting this as an explanation as to why the statute of limitations

should be tolled in this case, the Court improperly interpreted this as a basis to deny the

Plaintiffs' claim on statute of limitations grounds. The Court improperly considered this

to be an admission that Plaintiffs had some knowledge of KMK's participation in drafting

the proxy materials prior to December of 2001. However, there was no evidence of this

fact.[1] As a result, Plaintiffs properly argued that this was not just the Court arriving at a

different factual conclusion, but the Court improperly applying the law.

Further, the KMK Defendants have not presented any law which shows that this

issue is inappropriate for interlocutory appeal. The KMK Defendants imply that *Kraus v.*

*Board of County Road of Commissioners,* 364 F.2d 919 (6th Cir. 1996) finds that if

---

[1] The Court makes other arguments as to why it thinks that Plaintiffs were on notice prior
to December of 2001, but Plaintiffs countered these arguments in their Motion to Certify
this Order for Immediate Appeal. (Doc. No. 341).

parties were able to seek interlocutory review of issues regarding dismissal on the basis

of statutes of limitations then the "floodgates of litigation" would be improperly opened.

(Memorandum, p. 4). However, *Kraus* did not involve a case that was dismissed on the

basis of statutes of limitations.  Rather, the Sixth Circuit just decided that a wrongful

death case was not the type of exceptional case within the class of interlocutory appeals

contemplated by 28 U.S.C. §1292(b). In particular, the Sixth Circuit stated as follows:

> "This statute was not intended to authorize interlocutory appeals in ordinary suits
> for personal injuries or wrongful death that can be tried and disposed of on their
> merits in a few days. *Haraburda v. United States Steel Corp.,* 187 F. Supp. 86, 94
> (W.D.Mich.).

Id. at 922.   Thus, since this case involves complex litigation, this is the very type of case

with the *Kraus* Court would find that was intended for interlocutory appeals.   Further,

unlike in *Kraus,* the granting of an interlocutory appeal in the present case would

"materially advance the ultimate termination of the litigation."  Thus, there is nothing in

*Kraus* which would preclude the granting of Plaintiffs' Motion in this case.

The KMK Defendants also miss the point regarding Plaintiffs' relation back

claim.  The KMK Defendants have correctly set forth the Court's opinion on this issue,

but both the Court and the KMK Defendants ignored the relation back argument.

Neither the Court nor the KMK Defendants discuss the fact that the Plaintiffs made the

same claims against the Dinsmore Defendants in the original Complaint that they did in

the First Amended Complaint in relation to the KMK Defendants. They also do not

mention the Plaintiffs would have originally filed these claims against the KMK

Defendants but for the fact that they believed that they lacked the amount of evidence

necessary to overcome the likely Rule 11 Motion which would have followed if Plaintiffs

had originally named KMK as defendants at that time.[2]  Finally, there is no discussion by

the Court, nor denial by the KMK Defendants, that KMK was on notice of these claims

and that there should have been relation back on this basis as well.  Thus since the KMK

Defendants cite to no legal authority which finds that the issue of relation back is not a

controlling issue of the law, for which there is a split of authority in the federal courts,

this motion should be certified for immediate appeal by this Court since a timely

resolution of this issue will obviously materially advance the ultimate termination of the

litigation.

Finally, the KMK Defendants make the argument for Plaintiffs on the issue of the

applicability of the Sarbanes-Oxley Act.  The KMK Defendants state that this Court

"join[] those courts who have decided that Sarbanes-Oxley does not apply retroactively to

revive expired claims." (Memorandum, p. 4); Order (Doc. No. 338).  However, in doing

so the KMK Defendants concede that this Court believes that there is a split of authority

---

[2]  The Plaintiffs clearly had a "no win" situation.  Given the zealousness which KMK has
defended this case, there is no doubt that KMK would have attempted to obtain Rule 11
sanctions against the Plaintiffs if Plaintiffs had included KMK in its original complaint.
This has since been confirmed through KMK's conduct.  KM has repeatedly and
continually threatened Plaintiffs' counsel with Rule 11 sanctions, including immediately
after the Court ruled that the case could proceed in July of 2001.  If KMK did this at a
time in which this Court reinforced the Plaintiffs' position, it certainly would have done
so if Plaintiffs had initially named KMK in their original Complaint.

Also, although Plaintiffs knew KMK was involved in the preparation of the Proxy
Materials/Registration Statement at the time the original complaint was filed, there were
definitely not any of the "storm warnings" present at that time which would have enabled
Plaintiffs to have named KMK in the original complaint. By the time that Plaintiffs did
have the time to depose the proper individuals, and learn of KMK's involvement, the
statute of limitations had run. Thus, when KMK speaks of the "floodgates being opened"
based upon Plaintiffs' filing of this Motion, it must be remembered that Plaintiffs
originally erred on the side of caution in relation to KMK because they did not want to
unnecessarily "open the floodgates" in relation to KMK, and they have continually paid
the price for this decision ever since.

on this controlling issue of law.   The KMK Defendants also make no attempt to dispute

the fact that this a controlling issue of law.   KMK realizes that the Sarbanes-Oxley Act is

clearly open to interpretation and has been interpreted differently by different courts. As a

result, it is only a matter of time before the United States Supreme Court will likely

resolve this split between the district courts and the circuits. Thus, since this issue will

also materially advance the ultimate termination of the litigation, this issue is appropriate

for interlocutory review under 28 U.S.C. §1292(b).

Therefore, in sum, when all of the KMK Defendants' arguments are broken down,

it is obvious that the Plaintiffs have presented meritorious arguments regarding

controlling questions of law, for which there exists a substantial ground for a difference

of opinion regarding the correction of the decision. Since it is only a matter of timing as

to when these issues are going to be heard, the Plaintiffs' decision to file this Motion is

proper because it should materially advance the ultimate termination of this case.

**B.**     **The KMK Defendants are Not Entitled to Its Fees and Costs in Relation to its Memorandum in Opposition to Plaintiffs' Motion to Certify the KMK Defendants' Dismissal for Immediate Appeal.**

The KMK Defendants seek fees and costs based upon 28 U.S.C. §1927. This

Section provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the
> United States or any Territory thereof who so multiplies the proceedings
> in any case unreasonably and vexatiously may be required by the court to
> satisfy personally the excess costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct.

Id. Moreover, 28 U.S.C. §1927 sanctions are "warranted when an attorney has engaged

in some sort of conduct that, from an objective standpoint, 'falls short of the obligations

owed by a member of the bar to the court and which, as a result, causes additional

expense to the opposing party.'" *Holmes v. City of Massillon,* 78 F.3d 1041, 1049 quoting *Ruben v. Warren City Sch.,* 825 F.2d 977 (6th Cir. 1987).

In *U.S. v. Ross,* 535 F. 2d 346 (6th Cir. 1976), the court of appeals had held that Section 1927 should be strictly construed because it is penal in nature. Id. at 350. Accordingly, the Ross court had interpreted the "unreasonably and vexatiously" language of the statute to require that attorney's fee liability should "flow only from an intentional departure from proper conduct or, at a minimum, from reckless disregard of the duty owed by counsel to the court." Id. at 349. Thereafter, the Sixth Circuit held that the imposition of section 1927 sanctions against counsel "does not require a finding of recklessness, subjective bad faith, or conscious impropriety; an attorney does not have *carte blanche* to burden the federal courts by pursuing claims that he should know are frivolous." *Haynie v. Ross Gear Division of TRW, Inc.,* 799 F.2d 237, 243 (6th Cir. 1986) (per curiam), *vacated as moot* 482 U.S. 901, 107 S.Ct. 2475 (1987). In *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir. 1986), the Sixth Circuit stated that "[a]n attorney's ethical obligation of zealous advocacy on behalf of his or her client does not amount to *carte blanche* to burden the federal courts by pursuing claims that are frivolous on the merits, or by pursuing nonfrivolous claims through the use of multiplicative litigation tactics that are harassing, dilatory, or otherwise "unreasonable and vexatious." Id. at 1230. Accordingly, when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims, a trial court does not err by assessing fees attributable to such actions against the attorney. Id. This position was again followed in *Smith v. Detroit Federation of Teachers, Local 231,* 829 F.2d 1370 (6th Cir. 1987).

In *Cook v. American S.S. Co.*, 134 F.3d 771 (6th Cir. 1998), remanded without opinion (6th Cir. 2000), 205 F.3d 1339, reported in full (6th Cir. 2000), 2000 U.S. App. LEXIS 1286, the Sixth Circuit found that an attorney was properly assessed sanctions for vexatiously multiplying proceedings where he engaged in an altercation with opposing counsel at end of first day of trial, resulting in mistrial. Id. at 772-773. The Sixth Circuit found the attorney's conduct was deplorable and fell short of behavior and demeanor expected of member of bar, and his unreasonable actions caused additional expense to opposing party. Id. at 777.

Similarly, in *Fox Valley Constr. Workers v. Pride of the Fox Masonry & Expert Restorations,* 140 F.3d 661 (7th Cir. 1998), the Seventh Circuit ordered sanctions against counsel for vexatiously and unreasonably delaying proceedings to collect retirement contributions. Id. at 666. The court held that they were warranted as a result of counsel's evading service of process, giving untrue sworn testimony in his affidavit regarding service of process, failing to file appearance, filing baseless appeals, incorporating another corporation in attempt to keep client from having to pay its debts, and seeking bankruptcy shelter for client to avoid contempt proceeding. Id.

Finally, in *Trulis v. Barton,* 107 F.3d 685 (9th Cir. 1995), the Ninth Circuit found that sanctions were warranted when counsel intentionally disregarded his clients' express instructions and continued insistence that he represented persons whom he was not authorized to represent. Id. at 694. The court found that such conduct not only demonstrated bad faith and was reckless as matter of law, but vexatiously increased the scope of litigation. Id.

9

The facts of the present case are not even close to those presented above. Rather, in the instant case, requiring Plaintiffs' counsel to personally bear the responsibility for the KMK Defendants' attorneys' fees and costs is unwarranted under either the *Ross* or the *Haynie* standards set forth above. Even if Plaintiffs' Motion to Certify the KMK Defendants' Dismissal for Immediate Appeal is found to lack merit, Plaintiffs' arguments for bringing the Motion are not so obviously precluded by existing precedent that Plaintiffs' counsel should have known that the arguments and/or Motion was frivolous. As a result, this case is more analogous to *Kloes v. United States*, 578 F. Supp. 270 (S.D. Wis 1984), where the district court did not penalize plaintiffs' counsel for using statutory procedure to litigate issues which have not been subject to appellate review. Id. at 275. The district court appropriately denied attorneys' fees to defendant pursuant to 28 U.S.C. §1927, notwithstanding that it was unconvinced of the arguments offered by Plaintiff, since the court found that it should not penalize the plaintiff for testing the waters surrounding a fairly controversial new statute. Id. At a minimum, the same is true for Plaintiffs' argument regarding the application of the Sarbanes-Oxley Act. This Court has admitted that the federal courts have not reached a consensus in its application to federal securities law.

Further, there is no evidence that Plaintiffs' counsel brought this Motion in a way which was harassing, dilatory, or otherwise "unreasonable and vexatious." A conclusory statement that this is the case is not sufficient to meet the evidentiary requirement of 28 U.S.C. §1927.[3] Finally, as discussed above, Plaintiffs did not use multiplicative litigation

_____

[3] It is definitely true that Plaintiffs and the KMK Defendants have not always maintained a cordial relationship during this litigation. Ever since Plaintiffs filed their motion to disqualify the KMK Defendants based upon the obvious conflicts of interest in their

tactics in order to bring this Motion. Rather, Plaintiffs merely recognized that they were dealing with complex issues, for which there is a split of authority among the district courts and circuit courts. In particular, the Sarbanes-Oxley Act is clearly open to interpretation until its application is decided once and for all by the United States Supreme Court. As a result, Plaintiffs cannot be considered "unreasonable and vexatious" for attempting to have these complex issues regarding controlling legal authority be resolved in the present, rather than in the future. As discussed above, it is not a matter of if, but when, these issues will be heard by the United States Sixth Circuit. Therefore, Plaintiffs cannot be punished for attempting to materially advance the ultimate termination of the litigation.

Thus, based upon the foregoing, there are no grounds for this Court to grant the KMK Defendants' request for fees and costs in relation to their defense of Plaintiffs' Motion to Certify the KMK Defendants' Dismissal for Immediate Appeal.

## I.    CONCLUSION

Therefore, for the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Certify for Immediate Appeal the Courts June 4, 2004 Order Dismissing the KMK Defendants and deny the KMK Defendants' request for fees and costs pursuant to 28 U.S.C. §1927.

---

representation of multiple parties with conflicting interests, KMK has been, at the very least, uncooperative in this litigation. While Plaintiffs are merely attempting to resolve controlling legal issues now so that this case could continue to be advanced, the KMK Defendants are continuing to show their harassing and vexatious nature by seeking attorneys' fees and costs against the Plaintiffs for bringing their Motion to Certify for Immediate Appeal. (Doc. No. 341).

Dated: July 20, 2004

**GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the
Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Reply to Defendants Keating, Muething & Klekamp, LLP and Mark A. Weiss' Memorandum in Opposition to Plaintiffs' Motion to Certify for Immediate Appeal the Court's June 4, 2004 Order Dismissing the KMK Defendants was served this 20th day of July 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Michael Barrett, Esq.
BARRETT & WEBER
105 East Fourth Street, Suite 500
Cincinnati, OH 45202-4015

**BY FIRST CLASS MAIL**

John Hust, Esq.
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
Suite 110, Governor's Knoll
11935 Mason Road
Cincinnati, OH 45249

James H. Greer, Esq.
BIESER, GREER AND LANDIS, LLP
400 National City Center, 6 North Main Street
Dayton, OH 45402-1908

James E. Gauch, Esq.
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113


_____
**Stephanie A. Hite**