UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WALTER W. THIEMANN, et al., | ) Case No. C-1-00-793 |
| | ) |
| Plaintiffs, | ) (Judge Sandra S. Beckwith) |
| | ) |
| -v- | ) OHSL AND PROVIDENT |
| | ) DEFENDANTS' MEMORANDUM IN |
| OHSL FINANCIAL CORPORATION, et al., | ) OPPOSITION TO PLAINTIFFS' |
| | ) MOTION TO HOLD KMK IN |
| Defendants. | ) CONTEMPT FOR DISCOVERY |
| | ) VIOLATIONS UNDER THE |
| | ) FEDERAL RULES OF CIVIL |
| | ) PROCEDURES AND |
| | ) <u>REQUEST FOR SANCTIONS</u> |

Defendants OHSL Financial Corporation ("OHSL"), Oak Hills Savings & Loan Company, F.A. ("Oak Hills"), Norbert G. Brinker ("Brinker"), Kenneth L. Hanauer ("Hanauer"), William R. Hillebrand ("Hillebrand"), Alvin E. Hucke ("Hucke"), Thomas E. McKiernan ("McKiernan"), Joseph J. Tenoever ("Tenoever"), Howard J. Zoellner ("Zoellner") (collectively the "OHSL Defendants"), Provident Financial Group, Inc. ("Provident"), Robert L. Hoverson ("Hoverson"), Jack M. Cook ("Cook"), Thomas D. Grote, Jr. ("Grote"), Phillip R. Myers ("Myers"), Joseph A. Pedoto ("Pedoto"), Joseph A. Steger ("Steger"), and Christopher J. Carey ("Carey") (collectively the "Provident Defendants") (the OHSL and Provident Defendants are collectively referred to as "Defendants"), submit this Memorandum in Opposition to Plaintiffs' Motion to Hold Keating, Muething & Klekamp In Contempt for Discovery Violations Under the Federal Rules of Civil Procedure and Request for Sanctions.

I.   **INTRODUCTION**

Plaintiffs' claim that Defendants "have exhibited no intent to defend th[is] case on its merits" is unfounded. Indeed, `since April of this year, Plaintiffs have filed at least three

motions attacking other lawyers in this case and asking that they be held in contempt or sanctioned. Unfortunately, these motions, totally unrelated to the merits of this case, are groundless and continue to waste the time and resources of the parties and this Court.

II.     **RELEVANT FACTS AND ARGUMENT**

   A.     **The Deposition Conduct of Defendants' Counsel Has Been Proper in All Respects.**

Defendants urge the Court to review the full transcripts of the depositions of the Provident and OHSL individual Defendants when considering the merits of Plaintiffs' instant Motion. To borrow a phrase from Plaintiffs' Motion -- the depositions speak for themselves. Plaintiffs' counsel has spent hours upon hours asking questions that: (1) bear no reasonable relationship to the issues remaining in the case; (2) are entirely premised upon mischaracterizations of the record; and (3) are repetitive and confusing to the point of harassment. Federal Rule of Civil Procedure 32(d)(3) -- the "Obviation Rule" -- requires Defendants to object to all defective questions during deposition or waive those objections. The unfortunate fact is that the great majority of Plaintiffs' questions are defective and Defendants' counsel has an obligation under the Civil Rules to object and give Plaintiffs' counsel an opportunity to obviate the defect. Otherwise, Defendants would be held to have waived the objections. Fed.R.Civ.P. 32(d)(3)(B); Bahamas Agricultural Indus., Ltd. v. Riley Stoker Corp., 526 F.2d 1174, 1180-81 (6th Cir. 1975).

Plaintiffs assert one general and four specific complaints about the conduct of Defendants' counsel during depositions. Specifically, Plaintiffs claim that Defendants' counsel have: (1) made improper speaking objections; (2) improperly instructed Defendants not to answer questions; (3) made improper objections regarding the review of documents; and (4) improperly "coached" Defendants not to answer questions relating to the legal concept of materiality.

Generally, Plaintiffs claim that Defendants' counsel have made an "inordinate" number of objections, with the intent to obstruct the flow of the depositions.

1. **Alleged Improper Speaking Objections**

Plaintiffs point to three instances of allegedly improper speaking objections:

> (1) During the deposition of Defendant Hoverson, Defendants' counsel Jim Burke stated an objection on the grounds that the question called for speculation and objected to the confusing and misleading nature of a question from Plaintiffs' counsel (Pltfs' Mot at 11-12 (citing Hoverson Dep. 27-28));
>
> (2) During the deposition of Defendant Brinker, Mr. Burke objected to the confusing and speculative nature of a question from Plaintiffs' counsel (Pltfs' Mot. at 12-13 (citing Brinker Dep. 50-52));
>
> (3) During the deposition of Defendant Cook, Defendants' counsel, Rachael Rowe, twice objected to the defective form of Plaintiffs' questions in that they were premised on: (a) a mischaracterization of Cook's deposition testimony and (b) a mischaracterization of the earlier record (Pltfs' Mot at 14-16 (citing Cook Dep. at 106, 175-176)).

The series of objections complained about by Plaintiffs were proper in all respects. Civil Rule 32(d)(3) provides that errors in the form of the questions or the answers are waived unless seasonable objection is made at the time of the deposition. Fed.R.Civ.P. 32(d)(3)(A)-(B); *Bahamas Agricultural Indus.*, 526 F.2d at 1180-81; *Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 692 n. 11 (1st Cir. 1994) (citing 8 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedures* §2153, at 475 (1970); *Kirschner v. Broadbend*, 671 F. 2d 1034, 1037 (7th Cir. 1982) (internal citations omitted). Here, the defects in the questions and the testimony solicited by the defective questions could have been obviated by correcting the defective questions. Therefore, if Defendants' counsel had failed to articulate the objections and the reasons that the questions were defective, all objections would have been waived. *Id.*

For instance, although Plaintiffs claim that Ms. Rowe's objection to the mischaracterization of testimony was "not necessary because everyone was clearly on the same

- 4 -

page," the reality is that the questioning was defective and the defect could have been obviated had Plaintiffs' counsel been willing to correct his error. (See Pltfs' Mot. at 14-15 (citing Cook Dep. at 106)). The complete excerpt of the testimony leading to Ms. Rowe's objection,1 undeniably demonstrates, the defect to which Ms. Rowe objected:

> Q (Mr. Brautigam):   But assume for the sake of this question that Mr. Hanauer testified that he did not believe that the merger was in the best interest of OHSL shareholders. Would you have a problem with this document, Defendants' Exhibit 1?
>
> Ms. Rowe:    Objection.
>
> A (Mr. Cook): I guess I have a question before I answer that. When did he disclose all of this? Did he let his other ***directors*** know before the vote and before the proxy was sent out, or is this recreating history on his part? I'm not saying he didn't feel that way.
>
> Q (Mr. Brautigam):   The answer to your question is Mr. Hanover did not disclose his feeling to the ***shareholders.***
> [ . . . ]
>
> Ms. Rowe:    I'm going to object first. Just let me insert an objection. I mean, the record is being mischaracterized, but also his [Mr. Cook's] question had something to do with was it disclosed to directors and your [Mr. Brautigam's] answer said it wasn't disclosed to shareholders; and I just want to make sure that we're all on the same page.

(Cook Dep. 105-06 (emphasis added))

So, contrary to Plaintiffs' claim, everyone was not on the same page; the form of the question and answer was defective because Plaintiffs' counsel either misheard Mr. Cook's question or intentionally altered his question to Mr. Cook to confuse matters. This defect could have been obviated by Plaintiffs' counsel, and the objection, if not articulated, would have been waived. Fed.R.Civ.P. 32(d)(3)(B) ("errors and irregularities" occurring during deposition "in the

---

1 Again, Plaintiffs have used incomplete excerpts from the depositions to mislead the Court about the actual course of events.

manner of taking the deposition" or in the "form of the questions or answer" which might be obviated or cured if promptly presented are "waived unless seasonable objection thereto is made during the taking of the deposition"). In other words, Ms. Rowe had an obligation to point out the error in the "form of the questions [and] answers" so that the error could be cured. The objection was not improper in any respect and could not even arguably be said to suggest to Mr. Cook an answer to a pending question.

Similarly, later in Mr. Cook's deposition, Plaintiffs' counsel sought to re-question Mr. Cook about deposition testimony offered by Mr. Hanauer.[2] During that exchange, Ms. Rowe voiced objection to Plaintiffs' counsel's repeated questioning of Mr. Cook about a selected portion of the deposition testimony of Defendant Hanauer. (*See* Pltfs.' Mot. at 15-16 (citing Cook Dep. at 175-176)) Again, Ms. Rowe had the right and obligation under Rule 32 (d)(3)(B) to articulate an objection to the "manner of the taking of the deposition". It is wrong for Plaintiffs to suggest that it is proper to question a witness about several lines from the deposition of another witness taken years earlier (about which the deponent admittedly has zero firsthand knowledge) and removed from all reasonable context, but improper for Defendants' counsel to object to this technique. *See Bahamas Agricultural Indus.*, 526 F.2d at 1180-81. Plaintiffs claim that, "Ms. Rowe merely made this speech to coach the witness so that he would not be so quick to concede that Defendant Hanauer had admitted that the OHSL-Provident merger was not in the best interest of OHSL Shareholders" lacks merit. (Pltfs' Mot. at 16) This argument by Plaintiffs clearly illustrates the problem here. Mr. Cook had no personal knowledge of anything about Mr. Hanauer. (Cook Dep. 93-100) He did not meet Mr. Hanauer during the time of the merger and has not met him since. (Cook Dep. 112) He cannot "concede" that Mr. Hanauer knew

---

[2] Mr. Cook never met Mr. Hanauer, was not present at Mr. Hanauer's earlier testimony, and had no first-hand knowledge of Mr. Hanauer's state of mind at the time of the merger (which was the subject of the deposition testimony about which Plaintiffs' counsel was quizzing Mr. Cook). (*See* Cook Dep. 112)

anything, said anything, or did anything. It is improper and specious for Plaintiffs' counsel to place a partial excerpt of a deposition of Witness A in front of Deponent B and then ask Deponent B to "concede" that witness A "admitted" something.

The objections articulated by Defendants' counsel in the Hoverson and Brinker depositions also were proper in all respects. First, Plaintiffs complain about an exchange that occurred during Mr. Hoverson's deposition. Under Evidence Rule 602, a witness may not testify at trial on a subject about which that witness has no personal knowledge. Fed. R. Evid. 602. Therefore, it is entirely appropriate to object to a question on the grounds that it calls for "speculation" -- testimony on a subject about which the deponent had no first-hand knowledge. *In re Stratosphere Corp. Secs. Litig.*, 182 F.R.D. 614, 618 (D. Nev. 1998) ("Questions to which timely objections should be made during the deposition include those which are leading or suggestive; ambiguous or uncertain; compound; assume facts not in evidence; call for narration; call for speculation or conjecture; or argumentative.") (citing A. Wallace Tashmina & James M. Wagstaffe, *Federal Civil Procedure Before Trial*, § 11:493 at 11-99).

Civil Rule 30(d)(1) requires objections to be stated concisely in a non-suggestive manner. In other words, counsel should state the grounds for the deposition as concisely as possible; Rule 30(d)(1) does not say that counsel should refrain altogether from stating grounds for the objection. Fed.R.Civ.P. 30(d)(1). During Mr. Hoverson's deposition Plaintiffs' counsel asked Mr. Hoverson, "are all restatements by definition material?" Mr. Hoverson obviously cannot have first-hand knowledge about every restatement ever made by any company. The question therefore required a speculative answer. The objection about which Plaintiffs now complain was concise and non-suggestive. -- Mr. Burke: "Calls for speculation. You may answer". There is no way to state an objection in a more concise manner.

As this exchange continued, Plaintiffs' counsel asked Mr. Hoverson a confusing and ambiguous question, about which Mr. Burke sought clarification to ensure that the record was free of errors in the "form of the questions or answer". (*See* Pltfs' Mot. at 11-12 (citing Hoverson Dep. 27-28))  Again, the objection by Mr. Burke was not suggestive of any answer or argumentative in any way.  Instead, it was made in order to give Plaintiffs' counsel the opportunity to cure the confusion caused by the question.  If Mr. Burke had not stated the objection and provided the reasons that the question was defective and Mr. Hoverson had answered the question premised on misunderstanding and confusion intentionally caused by Plaintiffs' counsel, Plaintiffs' counsel later could claim Defendants waived any objection.  Fed.R.Civ.P. 32(d)(3)(B).  The exchange cited by Plaintiffs from the Hoverson deposition was in complete compliance with Rules 30(d)(1) and 32 (d)(3)(B).

The conduct of Mr. Burke also was entirely proper during the deposition of Defendant Brinker.  Plaintiffs' counsel was intentionally attempting to confuse and frustrate Mr. Brinker, an elderly man recovering from a stroke.  Due to Mr. Brinker's health issues and problems in prior depositions, the Court already had ordered that Mr. Brinker be deposed at the federal courthouse with Magistrate Judge Hogan in attendance. (See 12/24/03 Order (doc. 229))  If there had been any inappropriate activity on the part of Defendants' counsel, in general, or with respect to this particular objection, it immediately could have been raised with Magistrate Judge Hogan.  It was not, and Magistrate Judge Hogan raised no concern about this specific objection.  The facts clearly demonstrate that the conduct about which Plaintiffs now complain was perfectly acceptable and within the bounds of the civil rules.  Indeed, Magistrate Judge Hogan's only comment on the conduct of Mr. Brinker's deposition was not to criticize Defendants' counsel, but rather to deny Plaintiffs' counsel more time with Mr. Brinker because the manner in which

the deposition was used as a strategic device by Plaintiffs was contrary to the Court's earlier directive:

> The purpose of the deposition was to explore topics made relevant by Plaintiffs' Amended Complaint and not to use the second deposition as a technique for impeaching testimony elicited during the first deposition. However, having observed the second deposition of Mr. Brinker and having reviewed Mr. Brinker's previous 800 page deposition, it is apparent to the Court that the latter deposition elicited nothing further than what was previously elicited in Mr. Brinker's first deposition.

(3/5/04 Order (doc.295))

Instead of presenting the Court with a full picture of the exchange during the Brinker deposition about which he now complains, Plaintiffs again present "selected" portions of the transcript to mislead the Court about the actual events. (See Pltfs' Mot. at 12-13 (citing Brinker Dep. 50-52))  The excerpt of the full exchange between Mr. Brautigam, Mr. Brinker and Mr. Burke indisputably demonstrates that Plaintiffs' counsel did, in fact, mischaracterize Mr. Brinker's testimony in an effort to dupe an 86 year-old witness (who was recovering from a stroke) into agreeing with something that was not true. Mr. Brinker first stated, unequivocally, that he understood that KMK would not be representing Defendants at trial. Seconds later, Mr. Brautigam tried to trick Mr. Brinker into saying that he believed that KMK would be representing Defendants at trial:

> Q (Mr. Brautigam):   Do you understand that KMK attorneys will be witnesses in the case?
>
> A (Mr. Brinker):   Who?
>
> Q (Mr. Brautigam):   KMK attorneys.
>
> Mr. Burke:   Objection; relevance.
>
> A (Mr. Brinker):   Who is that?  Keating, Muething you mean?
>
> Q (Mr. Brautigam):   Yes.

> A (Mr. Brinker):   I heard that they were, were brought into the suit.
>
> Q (Mr. Brautigam):   Do you understand –
>
> A (Mr. Brinker):   So that they would have to have different representation. ***We would have to have different representation at trial.***
>
> Q (Mr. Brautigam):   Do you have different representation?
>
> A (Mr. Brinker):   We don't at this present.
>
> Q (Mr. Brautigam):   You do not?
>
> A (Mr. Brinker):   No.
>
> Q (Mr. Brautigam):   So, at the present time, you believe that the Keating firm will represent you at trial; is that correct?
>
> Mr. Pinney:   I'm going to object to that as well.
>
> Mr. Brautigam:   Your Honor –
>
> A (Mr. Brinker):   I would have –
>
> Mr. Burke:   Your Honor, the -- Mr. Brautigam is knowingly misstating the record and asking the witness questions that he obviously is unsure of, just in an effort to inject confusion and further the confusion of these proceedings. And I do have a continuing objection to this.

(Brinker Dep. 50-52)

The Court should not countenance such deposition conduct or the tactic of omitting from his briefs the portions of the depositions that demonstrate that his questions were defective and required objection under Rule 32(d)(3)(B). Contrary to Plaintiffs' claim, Mr. Burke was not attempting to disrupt the deposition; instead, he was providing Plaintiffs' counsel with an opportunity to cure the defect in the question so that the record would be clear.

- 10 -

Ultimately, Plaintiffs are asking this Court on the one hand to permit Plaintiffs' counsel to repeatedly and continuously ask defective questions that mischaracterize the record and are intended to confuse and obfuscate the facts, and on the other hand, bar Defendants' counsel from asserting objections required by Rule 32(d)(3)(B). The objections about which Plaintiffs now complain all were proper under the Federal Rules; they were neither argumentative nor suggestive of answers and, under the Obviation Rule, they would have been waived if not made.

### 2. Allegedly Improper Instructions Not to Answer

Plaintiffs also allege that Mr. Burke improperly instructed Mr. Hoverson not to answer certain questions. In support of this argument, Plaintiffs point to three separate exchanges during the Hoverson deposition. (Pltfs' Mot. at 16-19 (citing Hoverson Dep. 44, 151-52, 219-20)) Mr. Burke, however, instructed Mr. Hoverson not to answer on only one occasion, in order to protect the privacy of a non-party. (Hoverson Dep. 151-52) Moreover, Mr. Burke clearly stated that he would reconsider the instruction if Plaintiffs' counsel could offer any reason that the information was even remotely relevant to the case. Plaintiffs' counsel offered no reason. (Id.).

Even according to the unpublished case relied upon by Plaintiffs, counsel may instruct a witness not to answer if he or she has a reasonable basis for seeking a protective order. (See Pltfs' Mot. at 17 (citing Collins v. Intl. Dairy Queen, (June 4, 1998), 1998 U.S. Dist. LEXIS 8254, *6 (M.D. Ga. 1998))). The information sought by the question that was subject to Mr. Burke's qualified instruction -- which related to the future career plans of Provident's former General Counsel, Jim Whitaker -- would have been entitled to protection under Rule 26. Fed.R.Civ.P. 26(c). Therefore, under Collins, Mr. Burke's instruction was entirely proper.[3]

---

[3] *But see Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995) (suggesting that counsel should actually stop the deposition and seek a protective order immediately rather than issuing a unilateral instruction not to answer). Here, Defendants' counsel has undertaken every effort to avoid unnecessarily involving the Court in discovery disputes given the history of "over-briefing" in this case. For this reason, Mr. Burke gave the

- 11 -

According to Plaintiffs, the remaining two incidents involved Mr. Burke giving Mr. Hoverson "indirect" instructions not to answer. The first exchange that Plaintiffs complain about occurred when Mr. Hoverson was asked about the McDonald fairness opinion. (Pltfs' Mot. at 17 citing Hoverson Dep. 44)) Plaintiffs' counsel asked Mr. Hoverson if he could see what the writing said on the face of the fairness opinion:

> Q Mr. Brautigam:   Do you see that it says that McDonald, as OHSL's investment banker relied upon the accuracy of all the financial information that Provident provided?
>
> Mr. Burke:   Objection.
>
> Q Mr. Brautigam:   Do you see that?
>
> Mr. Burke:   Document speaks for itself. Next question. Go ahead.

(Hoverson Dep. 44) Mr. Burke did not instruct Mr. Hoverson not to answer the question. More importantly, however, the question was inane and the objection was appropriate. Plaintiffs' counsel did not ask Mr. Hoverson to interpret or explain the document, to describe his reaction to the document, or even to answer whether he had seen the document before his deposition. Instead, Plaintiffs' counsel demanded in an argumentative manner that Mr. Hoverson confirm the words on the face of the document.[4] The bottom line is that there was no instruction not to answer and the words on the document said what they said.

In another instance of an alleged "indirect" instruction not to answer, Plaintiffs' counsel asked Mr. Hoverson to imagine that he had been an OHSL shareholder in 1999 and then answer questions about what kind of information he would have wanted to know. (Pltfs' Mot. at 18

---

instruction, but offered to reconsider it if Plaintiffs' counsel would articulate how the information might be even remotely relevant to the case. Plaintiffs' counsel declined.

[4] This is an example of how Plaintiffs have wasted hours of deposition time demanding that deponents read documents that the deponents had nothing to do with and confirm on the record the words that are contained in the documents.

(citing Hoverson Dep. 219-20)) Mr. Burke objected to the question, and Mr. Hoverson responded that he did not want to speculate. (Id.) Plaintiffs' counsel then became argumentative, insisting that Mr. Hoverson speculate as to what he might have wanted four years earlier had he been a OHSL shareholder at the time -- which he was not. After an exchange between Plaintiffs' counsel and Mr. Hoverson, and another concise objection by Mr. Burke, Plaintiffs' counsel said that he would petition the Court for a response. Again, there was no instruction not to answer. And, Mr. Hoverson's own reluctance to speculate about what he might have wanted four years ago, if, at that time, he had been an OHSL shareholder, was entirely reasonable. It is simply impossible after the fact to state what information the CEO of Provident might have wanted four years ago if he had been an OHSL shareholder instead of the CEO of Provident. More importantly, it has absolutely nothing to do with Plaintiffs' claims.

Defendants' counsel have not issued improper instructions not to answer. On the one occasion pointed to by Plaintiffs where Mr. Burke did instruct Mr. Hoverson not to answer, it is clear that Mr. Burke had a reasonable basis to do so, and also that he offered to reconsider the instruction if Mr. Brautigam could offer any reason why the information might be even remotely relevant to the case.

### 3. Allegedly Improper Objections Related to the Review of Documents

Plaintiffs cite Collins for the principle that objections that a question calls for a legal conclusion or that a document "speaks for itself" are per se invalid. (Pltfs' Mot. at 21) Collins, however, is an unpublished decision from a different jurisdiction and never has been cited in any published opinion. There is no authority from this jurisdiction or any court in Ohio that prohibits the assertion of the objections that the question seeks a legal conclusion or that a document speaks for itself. Other jurisdictions, including this one, have specifically held that questions seeking a legal conclusion from a fact witness are objectionable. See Lantz v. New York Central

Railroad Co., 37 F.R.D. 69 (N.D. Ohio 1963) ("a request for a party's admission of a legal conclusion hardly seems to be an appropriate procedure"); Anderson v. United Airlines, Inc., 49 F.R.D. 144, 149 (S.D. N.Y. 1969) (objection sustained where interrogatories called for "legal conclusion or interpretations, rather than admission of fact"). And, while some courts have overruled objections that a document speaks for itself, at least one court in Ohio has affirmed a trial court's decision to sustain an objection that a document speaks for itself. State v. Spangler, 75 Ohio App.3d 530, 532 (Ohio App. 3 Dist. 1992).

Here, as noted above, Plaintiff has spent countless hours trying to get Defendants to admit a legal conclusion -- that the Proxy materials were materially misleading -- and placing documents before deponents and asking questions like "Do you see that it says [_____]." (See Hoverson Dep. 10-13, 27-28, 44) Although Defendants' counsel objected to these questions, they nevertheless have permitted deponents to answer subject to the objections. For instance, during the deposition of Defendant Pedoto, the following exchange occurred:

> Q (Mr. Brautigam): Do you believe that Provident represented throughout its financial statement were free of material misstatement in 1999?
>
> Ms. Rowe: Objection, foundation.
>
> A (Mr. Pedoto): That is correct. I do believe that it was not materially misstated.
>
> [. . .]
>
> Q (Mr. Brautigam): And do you believe that the financial information provided by Provident to OTTSL shareholders was inaccurate?
>
> Ms. Rowe: Objection to foundation.
>
> A (Mr. Pedoto): I believe it was not materially inaccurate. It was not as accurate as it could have been, given the restatements.

(Pedoto Dep. 9, 34) A similar exchange happened during Defendant Hoverson's deposition:

> Q (Mr. Brautigam): You're familiar with the word "material," correct?
>
> Mr. Burke: Objection.
>
> A (Mr. Hoverson): I am.
>
> Mr. Burke: Calls for a legal conclusion. You may answer.
>
> Q (Mr. Brautigam): What does the word "material" mean?
>
> A (Mr. Hoverson): It means different things in different contexts.

(Hoverson Dep. 12) Defendant Steger also answered the questions of Plaintiffs' counsel, subject to objections, as best he could:

> Q (Mr. Brautigam): Dr. Steger, do you believe that Provident's financial statements were materially misstated between 1997 and 2002?
>
> Ms. Rowe: Objection.
>
> Ms. Perry: Join in the objection.
>
> Ms. Rowe: Calls for a legal conclusion.
>
> A (Dr. Steger): Yeah. As I said, I'm not a lawyer and not an accountant.

(Steger Dep. 32)

If a trial is necessary and the Court determines that it wants a lay witness to confirm that a document contains certain words or to testify about the ultimate legal issue -- whether the Proxy Statement was materially misleading -- it can overrule Defendants' objections and permit the jury to hear the questions and answers. In pretrial depositions, however, Defendants counsel should not be prohibited from concisely stating the objection and then permitting the deponents to answer.

### 4. **Allegedly Improper Coaching**

Plaintiffs claim that in one instance, Mr. Burke improperly "coached" Mr. Hoverson not to answer a question. This claim has absolutely no merit. The exchange cited by Plaintiffs is unremarkable in any way. Plaintiffs counsel asked a number of questions, Mr. Burke objected to some and not others, and Mr. Hoverson answered each. (Hoverson Dep. 10-13) Plaintiffs apparently are unsatisfied that Mr. Hoverson is not an accountant or a lawyer and so is unable to testify as the legal definition of a material misstatement in the context of an accounting error or a restatement. What Plaintiffs fail to recognize is that Mr. Hoverson and the other Defendant-deponents are fact witnesses. They are not legal experts hired to opine on the ultimate legal issue in this case, nor are they the triers of fact. They are Defendants in the case and witnesses who can answer questions about facts. Whether or not something was materially misstated is not a question of fact; it was entirely appropriate for Mr. Burke to object to the questions posed by Plaintiffs' counsel, and entirely reasonable for Mr. Hoverson to be unable to offer a legal answer given that he is neither an accountant nor an attorney.

### 5. **Defendants' Counsel Have Not Intentionally Disrupted Depositions**

The only strategy motivating counsel's defense of depositions in this case is to attempt to keep the depositions limited to a series of questions and answers relating to facts about which the deponents have first hand knowledge. Plaintiffs' have done all they can to create a confusing, ambiguous record based on questions that are premised on extraneous hypotheticals, mischaracterizations, false statements and assumptions that are unfounded in the record. (*See* Cook Dep. 99-100 (counsel articulating objections to preserve the record but permitting deponent to answer subject to objection).) Defendants' counsel categorically deny, however, that they have sought to disrupt the process. Counsel has an obligation to clients to vigorously defend the case. That defense obviously extends to objecting to objectionable deposition questions.

Moreover, the majority of the objections have been necessary under Rule 32(d)(3)(B). As Plaintiffs admit, where counsel believes the deponent is being misled, objections are entirely proper (Pltfs. Mot. at 25) Defendants submit that a review of the depositions in question demonstrates that counsels objections were justified in all instances.

> B. **This Court Should Reject Plaintiffs' Request to Hold KMK In Contempt And to Award Sanctions.**

Defendants' counsel readily admits that violation of any order of this Court is grounds for contempt and further accepts that Judge Beckwith's telephonic instructions to Ms. Rowe and Mr. Brautigan during the May 10, 2004 deposition of Joe Pedoto constitutes a valid and enforceable Order. Defendants submit, however, that KMK has not violated that Order and that Defendants' counsel have acted appropriately at all depositions in this case, both before and after Judge Beckwith's May 10 admonition. Defendants' counsel have not made improper objections, nor have they issued improper instructions not to answer. *See Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (persons may only be held in contempt where they have "violated a definite and specific order of the court requiring [them] to perform or refrain from performing a particular act or acts with knowledge of the court's order")). Here, KMK has not violated any order, so any finding of contempt would be inappropriate. *Id.*

Given the questions asked by Plaintiffs' counsel, the depositions have proceeded remarkably free of serious conflict. The instant motion by Plaintiffs is just the latest stop on the campaign trail to shift the focus away from the merits of Plaintiffs case and toward counsel which is no longer even principal trial counsel. At some point, one would hope, Plaintiffs will recognize that these tactics are not advancing this case in the slightest. The Court should reject Plaintiffs' motion and, under Rule 37(a)(4)(B) (since this really is a discovery motion disguised

as something else), grant Defendants reasonable costs and fees incurred in responding to Plaintiffs' motion.

## III. CONCLUSION

Based on the foregoing, Defendants request that the Court deny Plaintiffs' Motion and award Defendants reasonable costs and attorneys' fees incurred as a result of having to respond to Plaintiffs' Motion.

                                              Respectfully submitted,

/s/ James H. Greer
David C. Greer
James H. Greer
BEISER, GREER AND LANDIS, LLP
400 National City Center
6 North Main Street
Dayton, Ohio 45402
Tel: (937) 223-3277
Fax: (937) 223-6333
Email: dcg@bgllaw.com;jhg@bgllaw.com
Attorneys for OHSL and Provident Defendants

OF COUNSEL:

James E. Burke
Rachael A. Rowe
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing OHSL AND PROVIDENT DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO HOLD KMK IN CONTEMPT FOR DISCOVERY VIOLATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURES AND REQUEST FOR SANCTIONS was served by regular U.S. Mail to Mr. Brautigam and electronically to Mr. Hust this 21st day of July, 2004 at the following addresses:

Michael G. Brautigam
Gene Mesh & Associates
2605 Burnet Avenue
Cincinnati, Ohio 45219-2505
*Attorney for Plaintiff*

**and**

John W. Hust
Schroeder Maundrell Barbiere & Powers
Governor's Knoll, Suite 110
11935 Mason Road
Cincinnati, Ohio 45249
*Attorney for Dinsmore and Shohl, LP and Clifford Roe*


/s/ James H. Greer
_____


1312892.3