## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **WALTER W. THIEMANN,** | ) | **Case No. C-1-00-793** |
| | ) | |
| **Plaintiff,** | ) | **(Judge Sandra S. Beckwith)** |
| | ) | **(Magistrate Judge Timothy S. Hogan)** |
| -v- | ) | |
| | ) | **AFFIDAVIT OF** |
| **OHSL FINANCIAL CORP., et al.,** | ) | **PATRICK F. FISCHER** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

1.     I am a partner in the law firm of Keating, Muething & Klekamp, P.L.L. ("KMK") and I am designated as one of the in house counsel for KMK. I have firsthand knowledge of the facts upon which this affidavit is based.

2.     I am familiar with this matter and have been responsible for monitoring the defense of KMK and attorney Mark Weiss when KMK and Mr. Weiss were named as defendants. I am also responsible for handling KMK's response to subpoenas for documents and depositions of KMK attorneys in this matter.

3.     I personally defended two of the prior depositions of KMK attorneys and read all four depositions of KMK attorneys. The depositions had numerous objections to improper and repetitive questions by Plaintiffs' counsel. The depositions lasted far longer than they should have because of inappropriate and duplicative questioning of the witnesses.

4.     After KMK and Mr. Weiss were dismissed as parties from the litigation, I received a subpoena from Plaintiffs' counsel for documents. The subpoena is attached as Exhibit A. I caused objections to be filed to the subpoena pursuant to Rule 45, a copy of which is

attached as Exhibit B.  I wrote several correspondence to Plaintiffs' counsel attempting to resolve the document issue, including correspondence I forwarded on June 29, 2004; July 14, 2004; and July 19, 2004 (collectively attached as Exhibit C).  Plaintiffs' counsel responded, among other responses, on July 20, 2004, and repeated his position that he believed 24 of the 25 requests were appropriate (correspondence attached as Exhibit D).  At no time has Plaintiffs' counsel explained why KMK's prior production of over 4,300 documents is not responsive to many if not all of the non-objectionable requests in the subpoena, nor has he responded to KMK's objections.  In my opinion, Plaintiffs' counsel has not attempted to avoid imposing undue burden or expense on KMK to provide detailed responses to these non-objectionable requests.

5.    After KMK and Mr. Weiss were dismissed as parties from the litigation, I became aware of subpoenas for two KMK partners, Gary Kreider and David Rosenberg.  I asked Plaintiffs' counsel to delay these depositions until after the Court ruled on the pending motions to dismiss, in correspondence dated June 29, 2004 (part of Exhibit C).  Plaintiffs' counsel refused.  I also requested that Plaintiffs' counsel agree to conduct the depositions before a special master or the Court and to delay the depositions until after perceived document issues were resolved, in correspondence dated June 29, 2004, July 14, 2004, and July 19, 2004 (Exhibit C). Plaintiffs' counsel refused either condition.  I indicated to Plaintiffs' counsel that KMK would file an appropriate motion, in correspondence dated July 20, 2004 and July 23, 2004 (collectively attached as Exhibit E).

6.      I do not believe any further correspondence or discussions among counsel will resolve these issues with respect to the subpoenas for depositions.

Further affiant sayeth naught.

_____
Patrick F. Fischer

Sworn to before me and subscribed in my presence this 26th day of July, 2004.

_____
Notary Public

**LOIS M. SINGLETON**
Notary Public, State of Ohio
My Commission Expires Jan. 10, 2006

1318978.1

**FILED**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JUN 1 0 2004

**JAMES BONINI, Clerk**
CINCINNATI, OHIO

| | | |
|---|---|---|
| Walter W. Thiemann, | ) | |
| on behalf of himself and of | ) | Case No. C-1-00-793 |
| all others similarly situated, | ) | |
| | ) | Judge Sandra S. Beckwith |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **SUBPOENA** |
| OHSL Financial Corporation, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**TO**:  KEATING, MUETHING & KLEKAMP P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio  45202

**YOU ARE COMMANDED**, pursuant to Rule 45 of the Federal Rules of Civil

Procedure to produce documents within thirty days after receipt of this subpoena, at Gene

Mesh & Associates, 2605 Burnet Avenue, Cincinnati, Ohio  45219-2502.  These

documents are described in Exhibits A and B hereto.

These documents have been requested by Plaintiff whose attorneys' name,

address and telephone number is:

> Michael G. Brautigam, Esquire
> GENE MESH & ASSOCIATES
> 2605 Burnet Avenue
> Cincinnati, Ohio  45219-2502
> 513-221-8800 phone
> 513-221-1097 fax



EXHIBIT
A

Rule 45 of Federal Rules of Civil Procedure states:

## PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce more at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception of waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

## DUTIES IN RESPONDING TO SUBPOENA

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)    When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to cause the demanding party to contest the claim.

Dated this 10th day of June, 2004.

Michael G. Brautigam Esquire
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio  45219-2502
513-221-8800 phone
513-221-1097 fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2004, a true and correct copy

of the Document Subpoena was served by hand delivery and facsilile upon:

James E. Burke, Esq.
Keating, Muething & Klekamp PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

and by facsimile:

John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
Governor's Knoll
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249


David C. Greer
James H. Greer
BIESER, GREER & LANDIS
400 National City Center
6 North Main Street
Dayton, OH 45402-1908

Stephanie A. Hite

## EXIBIT A

Pursuant to Federal Rule of Civil Procedure 45, plaintiff requests that Keating

Muething & Klekamp ("KMK") produce the following documents at the offices of Gene

Mesh & Associates, 2605 Burnet Avenue, Cincinnati, Ohio 45219-2502 within thirty

days after receipt of this request:

## DEFINITIONS AND REQUIREMENTS

a. The definitions and requirements contained in the Federal Rules of Civil Procedure and the United States District Court for the Southern District of Ohio are incorporated by reference.

b. The instant request for documents shall be deemed to be continuing so as to require supplemental production should KMK obtain supplemental or additional documents between the time the documents are initially produced and the time of trial.

c. In responding to these Requests, you are required to furnish all documents within your possession, custody or control.

d. If any of the Requests is deemed to call for the production of any privileged material and such privilege is asserted, you are required to furnish at list identifying each document so withheld together with the following information:

    1. The reason for withholding;

    2. A statement of facts constituting the basis for any claim of privilege, work product or other ground of non-disclosure;

    3. A brief description of the document, including:

        i. the date of the document

        ii. the name(s) of its author(s), or preparer(s) and an identification by employment and title of each such person;

        iii. the names of each person who was sent or has had access to, or custody of, the documents, together with an identification of each such person;

        iv. the paragraph of this Request to which the document relates; and

        v. in the case of any documents relating in any way to an oral communication, identification of such oral communication.

e.    If any documents requested herein have been lost or destroyed, you are required to identify the documents so lost or destroyed by author, date and subject matter.

f.    Unless otherwise specified this Request calls for documents created, edited or modified during the time period January 1, 1999 to the present.

g.    As used herein, unless otherwise specified, the following terms shall have the meaning set forth after each such term:

   1.    The term "merger transaction" or "merger" shall refer to the combination of OHSL and Provident Financial Group Inc. in a stock transaction, which took place in the fall of 1999.

   2.    The term "OHSL" refers to OHSL Financial Corp., to its predecessors, to it parents, to its subsidiaries, to its present and former divisions, branches, authorized agents, attorneys, servants, employees, officers, directors, representatives, and to any other person that is or has ever acted for or on behalf of it.

   3.    The term "PFGI" refers to Provident Financial Group Inc., Provident Bank, any other relevant Provident entity, to their predecessors, parents subsidiaries, present and former divisions, branches authorized agents, attorneys, servants, employees, officers, directors, representatives, and to any other person that is or has ever acted for or on behalf of them.

h.    The term "person" means any natural person and any corporation, partnership, association, joint venture, firm, or other business enterprise or legal entity, and means both the singular and plural.

i.    The work "document" and "writing" are used interchangeably and mean any written or graphic matter of any kind whatsoever, however produced or reproduced, and electronically or magnetically recorded matter of any kind or character, however produced or reproduced, and any other matter constituting the recording of data or information upon any tangible thing by any means, including but not limited to the original and any nonidentical copy of any of the following (regardless of however or by whomever prepared, produced or reproduced): books, records, reports, memoranda, notes letters, speeches, telegrams, diaries, calendar or diary entries, schedules, maps, graphs, charts, contracts, releases, appraisals, valuations, estimates, opinions, studies, analyses, summaries, magazines, booklets, pamphlets, circulars, brochures, bulletins, instructions, minutes, photographs, purchase orders, bills, checks, drafts, certificates, tabulations, questionnaires, films or tapes, surveys, messages, correspondence, letters, records, (of meetings, conferences, and telephone or other conversations or communications), tables, drawings, sketches, tax reports, working papers, financial statements, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), as well as any other tangible thing on which information is recorded in writing, sound, electronic or magnetic impulse, or in any other manner, and including preliminary versions, drafts, revisions, or amendments of any of the foregoing and any supporting, underlying, or preparatory material. Any document with any marks such as

initials, comments or notations of any kind is not deemed to be identical to one without such marks and is to be produced as a separate document. The term document specifically includes email, and any other form of electronic communication.

j.      The term "oral communication" means any spoken communication made in person (at a meeting, conference, or otherwise) or made in a telephone conversation.

k.      "Refer to," "relate to" and "concerning" mean, directly to indirectly, referring to, relating to, connected with, commenting on, impinging or impacting upon, affecting, responding to, showing, describing, analyzing, reflecting or constituting.

l.      "Financial statements" include, but are not limited to the following, whether audited or unaudited, and whether final, interim, <u>pro forma</u>, complete or partial; consolidated and non-consolidated balance sheets, statements of earnings, additional paid-in capital, retained earnings or source and application or use of funds; cash flow projections; notes to each such statement; and any other statements and notes that pertain to the applicable defendant's past or present financial condition, including accountants' work papers.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

1.      All drafts of the poxy statement mailed to OHSL shareholders on or about September 27, 1999.

2.      All letters, memoranda, notes, emails and other correspondence(both internal and external) and relating to the proxy statement mailed to OHSL shareholders on or about September 27, 1999 or drafts thereto.

3.      All documents relating to any change in accounting policy adopted by PFGI for the period January 1, 1998 to the present.

4.      All letters, memoranda, notes, emails and other correspondence (both internal and external) and relating to any change in accounting policy adopted by PFGI for the period January 1, 1998 to the present.

5.      All Financial Statements and other documents reflecting PFGI's Gains on Sale of Loans and Leases for the period January 1, 1997 through the present.

6.      All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with external auditors, and including any attachments thereto, and relating to PFGI's gains on sale of loans and leases for the period January 1, 1997 through the present.

7.      All documents reflecting the composition and treatment of the cash and non-cash components of PFGI's gains on sale of loans and leases for the period January 1, 1997 through the present.

8.      All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with any external auditors, and

including any attachments thereto, and relating to the composition and treatment of the cash and non-cash components of PFGI's gains on sale of loans and leases for the period January 1, 1997 through the present.

9. All documents reflecting the change of accounting announced by PFGI on or about August 27, 2000.

10. All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with external auditors, and including any attachments thereto, and concerning the change of accounting announced by PFGI on or about August 27, 2000.

11. All documents reflecting PFGI's reduction of its estimate of operating earnings for 2000 from approximately $3.60 per share to $2.65 per share.

12. All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with external auditors, and including any attachments thereto, and concerning PFGI's reduction of its estimate of operating earnings for 2000 from approximately $3.60 per share to $2.65 per share.

13. All board minutes of PFGI (including minutes of the meetings of any committee thereof) where the merger of OHSL and PFGI was discussed.

14. All materials presented tot he board of PFGI (including any committee thereof) at any meeting at which the merger of OHSL and PFGI was discussed.

15. Any and all of your policies concerning the retention or destruction of documents of the types requested herein.

16. Documents sufficient to identify all KMK personnel who performed any work relating to the merger of OHSL and PFGI.

17. All KMK billing records that reflect work done by KMK personnel in regard to the merger of OHSL and PFGI.

18. All KMK billing records that reflect work done by KMK personnel with respect to this litigation and the related state court litigation. (Nolte, et al v OHSL, et al)

19. All documents reflecting KMK's representation of its clients, including any documents that discuss conflict of interest.

20. All documents referred to in the press release, attached as Ex. B.

21. All drafts of PFGI's 2002 Annual Report.

22. All documents provided by the KMK firm to any member of the Lindner family.

23. All documents and correspondence provided to the SEC and/or any other state or Federal regulatory agency, such as the FDIC.

24.    All insurance policies held by KMK that would protentially cover securities fraud and/or legal malpractice claims against KMK.

25.    Minutes of any KMK meeting where this litigation was discussed (including KMK's status as a defendant in litigation arising out of the OHSL-PFGI merger).

Dated: June 10, 2004

Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800

Lead Counsel for Plaintiff
        and the Class

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN, | ) | Case No. C-1-00-793 |
| | ) | |
| Plaintiff, | ) | (Judge Sandra S. Beckwith) |
| | ) | (Magistrate Judge Timothy S. Hogan) |
| -v- | ) | |
| | ) | RESPONSES AND OBJECTIONS OF |
| OHSL FINANCIAL CORP., et al., | ) | KEATING, MUETHING & KLEKAMP |
| | ) | TO SUBPOENA |
| Defendants. | ) | |
| | ) | |
| | ) | |

Pursuant to Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure, non-party Keating,

Muething and Klekamp ("KMK") hereby objects and responds to the subpoena issued by

Plaintiffs on June 10, 2004, a copy of which is attached hereto as Exhibit 1.

## OBJECTIONS TO SUBPOENA

KMK's objections to the subpoena are as follows:

1.       KMK objects to the subpoena in its entirety on grounds that it is moot as KMK is

no longer a party to this action.  In its June 4, 2004, Order, the Court dismissed KMK as a

defendant in this matter.  Despite the Court's holding that Plaintiffs' claims are barred and

preempted against KMK, Plaintiffs continue their attempt to harass KMK with improper,

overbroad, and overreaching discovery requests.  For example, in Document Request Number 24

Plaintiffs request, "All insurance policies held by KMK that would potentially cover securities

fraud and/or legal malpractice claims against KMK."  This request is inappropriate for various

reasons, the most glaring of which is the fact that KMK is no longer a defendant in this matter.

Another such example of outright harassment can be found in Document Request Number 22 in



EXHIBIT
B

which Plaintiffs request, "All documents provided by the KMK firm to any member of the Lindner family." Presumably this request applies to any matter whatsoever and is included, not to obtain useful information pertinent to the present case, but to harass KMK and its clients.

2.      KMK objects to the subpoena in its entirety on the grounds that, even if KMK is viewed as a third party now that it has been dismissed as a defendant, the subpoena is inappropriate in that all discovery has been stayed in this matter pursuant to the PSLRA which mandates that "*all discovery… shall* be stayed during the pendency of *any* motion to dismiss,…" 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added). Thus, because it is entirely clear that discovery is stayed in this matter, as per the Court's several rulings and the clear language of the PSLRA, KMK does not deem it necessary to provide specific objections to Plaintiffs' requests. Rather the following general objections cover the entirety of Plaintiffs' requests and, if, at some time, the Court deems it appropriate to lift the present stay, then, at that time, KMK would entertain a renewed subpoena.

3.      KMK objects to the subpoena in its entirety on the grounds that it is over broad, unduly burdensome, duplicative and expensive. Such requests violate Rule 26(b)(2)(i) and Rule 45(c)(1) and (3)(A)(iv) of the Federal Rules of Civil Procedure. For example, in Document Request Number 23, Plaintiffs request, "All documents and correspondence to the SEC and/or any other state or Federal regulatory agency such as the FDIC."

4.      KMK objects to the subpoena in its entirety in that it is vague and ambiguous. For example, in Document Request Number 20, Plaintiffs request, "All documents referred to in the press release, attached as Ex. B." KMK asserts that there is no such Exhibit B and that it is impossible to comprehend what documents Plaintiffs are requesting.

2

5.     KMK objects to the subpoena on the ground that it is unreasonably cumulative and duplicative and the information sought is obtainable from other sources which are more convenient, less burdensome and less expensive. The requests, therefore, violate Rule 26(b)(2) and Rule 45(c)(1) of the Federal Rules of Civil Procedure, which require that discovery not be unreasonably cumulative or duplicative and require parties to take reasonable steps to avoid imposing undue burden or expense on persons subject to subpoena, especially where the information is available from other sources that are more convenient, less burdensome and less expensive.

6.     KMK objects to the subpoena on the ground that it seeks information irrelevant to the subject matter involved in the litigation and is not reasonably calculated to lead to the discovery of admissible evidence.

7.     KMK objects to the production of documents which are subject to the attorney-client privilege and/or the work product privilege. For example, Document Requests 17-19 pertain to clearly protected documents that represent the work product of KMK personnel. Specifically, Document Request Number 19 requests, "All documents reflecting KMK's representation of its clients, including any documents that discuss conflict of interest." This request is just one example of the many overbroad and overreaching requests made by Plaintiffs as to clearly privileged documents.

8.     KMK objects to the subpoena as unreasonable because it will cause KMK to incur substantial costs, including reasonable charges for clerical and professional time. The substantial costs associated with the present subpoena are even more unreasonable given the fact that KMK has been dismissed from this case.

3

9.     KMK objects to the subpoena to the extent that it has already provided non-privileged, relevant documents and a privilege log and these requests are duplicative of requests already made.



**FILED**

JUN 1 0 2004

JAMES BONINI, Clerk
CINCINNATI, OHIO

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann,<br>on behalf of himself and of<br>all others similarly situated, | ) <br> ) <br> ) <br> ) | Case No. C-1-00-793 |
| | ) | Judge Sandra S. Beckwith |
| Plaintiff, | ) <br> ) <br> ) | |
| vs. | ) <br> ) | |
| OHSL Financial Corporation, et al. | ) <br> ) | SUBPOENA |
| Defendants. | ) <br> ) <br> ) | |

**TO:** KEATING, MUETHING & KLEKAMP P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

**YOU ARE COMMANDED,** pursuant to Rule 45 of the Federal Rules of Civil

Procedure to produce documents within thirty days after receipt of this subpoena, at Gene

Mesh & Associates, 2605 Burnet Avenue, Cincinnati, Ohio 45219-2502. These

documents are described in Exhibits A and B hereto.

These documents have been requested by Plaintiff whose attorneys' name,

address and telephone number is:

> Michael G. Brautigam, Esquire
> GENE MESH & ASSOCIATES
> 2605 Burnet Avenue
> Cincinnati, Ohio 45219-2502
> 513-221-8800 phone
> 513-221-1097 fax

EXHIBIT
*1*

Rule 45 of Federal Rules of Civil Procedure states:

## PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)    A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A)    A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)    Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A)    On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)    fails to allow reasonable time for compliance;

(ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)    requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)    subjects a person to undue burden.

(B)    If a subpoena

(i)    requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)    requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)    requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

## DUTIES IN RESPONDING TO SUBPOENA

(1)    A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)     When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to cause the demanding party to contest the claim.

Dated this 10th day of June, 2004.

Michael G. Brautigam Esquire
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
513-221-8800 phone
513-221-1097 fax

## EXHIBIT A

Pursuant to Federal Rule of Civil Procedure 45, plaintiff requests that Keating

Muething & Klekamp ("KMK") produce the following documents at the offices of Gene

Mesh & Associates, 2605 Burnet Avenue, Cincinnati, Ohio 45219-2502 within thirty

days after receipt of this request:

## DEFINITIONS AND REQUIREMENTS

a.   The definitions and requirements contained in the Federal Rules of Civil
     Procedure and the United States District Court for the Southern District of Ohio
     are incorporated by reference.

b.   The instant request for documents shall be deemed to be continuing so as to
     require supplemental production should KMK obtain supplemental or additional
     documents between the time the documents are initially produced and the time of
     trial.

c.   In responding to these Requests, you are required to furnish all documents within
     your possession, custody or control.

d.   If any of the Requests is deemed to call for the production of any privileged
     material and such privilege is asserted, you are required to furnish at list
     identifying each document so withheld together with the following information:

     1.   The reason for withholding;

     2.   A statement of facts constituting the basis for any claim of privilege,
          work product or other ground of non-disclosure;

     3.   A brief description of the document, including:

          i.    the date of the document

          ii.   the name(s) of its author(s), or preparer(s) and an identification
                by employment and title of each such person;

          iii.  the names of each person who was sent or has had access to, or
                custody of, the documents, together with an identification of
                each such person;

          iv.   the paragraph of this Request to which the document relates;
                and

          v.    in the case of any documents relating in any way to an oral
                communication, identification of such oral communication.

e.    If any documents requested herein have been lost or destroyed, you are required to identify the documents so lost or destroyed by author, date and subject matter.

f.    Unless otherwise specified this Request calls for documents created, edited or modified during the time period January 1, 1999 to the present.

g.    As used herein, unless otherwise specified, the following terms shall have the meaning set forth after each such term:

    1.    The term "merger transaction" or "merger" shall refer to the combination of OHSL and Provident Financial Group Inc. in a stock transaction, which took place in the fall of 1999.

    2.    The term "OHSL" refers to OHSL Financial Corp., to its predecessors, to it parents, to its subsidiaries, to its present and former divisions, branches, authorized agents, attorneys, servants, employees, officers, directors, representatives, and to any other person that is or has ever acted for or on behalf of it.

    3.    The term "PFGI" refers to Provident Financial Group Inc., Provident Bank, any other relevant Provident entity, to their predecessors, parents subsidiaries, present and former divisions, branches authorized agents, attorneys, servants, employees, officers, directors, representatives, and to any other person that is or has ever acted for or on behalf of them.

h.    The term "person" means any natural person and any corporation, partnership, association, joint venture, firm, or other business enterprise or legal entity, and means both the singular and plural.

i.    The work "document" and "writing" are used interchangeably and mean any written or graphic matter of any kind whatsoever, however produced or reproduced, and electronically or magnetically recorded matter of any kind or character, however produced or reproduced, and any other matter constituting the recording of data or information upon any tangible thing by any means, including but not limited to the original and any nonidentical copy of any of the following (regardless of however or by whomever prepared, produced or reproduced): books, records, reports, memoranda, notes letters, speeches, telegrams, diaries, calendar or diary entries, schedules, maps, graphs, charts, contracts, releases, appraisals, valuations, estimates, opinions, studies, analyses, summaries, magazines, booklets, pamphlets, circulars, brochures, bulletins, instructions, minutes, photographs, purchase orders, bills, checks, drafts, certificates, tabulations, questionnaires, films or tapes, surveys, messages, correspondence, letters, records, (of meetings, conferences, and telephone or other conversations or communications), tables, drawings, sketches, tax reports, working papers, financial statements, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), as well as any other tangible thing on which information is recorded in writing, sound, electronic or magnetic impulse, or in any other manner, and including preliminary versions, drafts, revisions, or amendments of any of the foregoing and any supporting, underlying, or preparatory material. Any document with any marks such as

initials, comments or notations of any kind is not deemed to be identical to one without such marks and is to be produced as a separate document. The term document specifically includes email, and any other form of electronic communication.

j.   The term "oral communication" means any spoken communication made in person (at a meeting, conference, or otherwise) or made in a telephone conversation.

k.   "Refer to," "relate to" and "concerning" mean, directly to indirectly, referring to, relating to, connected with, commenting on, impinging or impacting upon, affecting, responding to, showing, describing, analyzing, reflecting or constituting.

l.   "Financial statements" include, but are not limited to the following, whether audited or unaudited, and whether final, interim, pro forma, complete or partial; consolidated and non-consolidated balance sheets, statements of earnings, additional paid-in capital, retained earnings or source and application or use of funds; cash flow projections; notes to each such statement; and any other statements and notes that pertain to the applicable defendant's past or present financial condition, including accountants' work papers.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

1.   All drafts of the poxy statement mailed to OHSL shareholders on or about September 27, 1999.

2.   All letters, memoranda, notes, emails and other correspondence(both internal and external) and relating to the proxy statement mailed to OHSL shareholders on or about September 27, 1999 or drafts thereto.

3.   All documents relating to any change in accounting policy adopted by PFGI for the period January 1, 1998 to the present.

4.   All letters, memoranda, notes, emails and other correspondence (both internal and external) and relating to any change in accounting policy adopted by PFGI for the period January 1, 1998 to the present.

5.   All Financial Statements and other documents reflecting PFGI's Gains on Sale of Loans and Leases for the period January 1, 1997 through the present.

6.   All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with external auditors, and including any attachments thereto, and relating to PFGI's gains on sale of loans and leases for the period January 1, 1997 through the present.

7.   All documents reflecting the composition and treatment of the cash and non-cash components of PFGI's gains on sale of loans and leases for the period January 1, 1997 through the present.

8.   All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with any external auditors, and

including any attachments thereto, and relating to the composition and treatment of the cash and non-cash components of PFGI's gains on sale of loans and leases for the period January 1, 1997 through the present.

9. All documents reflecting the change of accounting announced by PFGI on or about August 27, 2000.

10. All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with external auditors, and including any attachments thereto, and concerning the change of accounting announced by PFGI on or about August 27, 2000.

11. All documents reflecting PFGI's reduction of its estimate of operating earnings for 2000 from approximately $3.60 per share to $2.65 per share.

12. All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with external auditors, and including any attachments thereto, and concerning PFGI's reduction of its estimate of operating earnings for 2000 from approximately $3.60 per share to $2.65 per share.

13. All board minutes of PFGI (including minutes of the meetings of any committee thereof) where the merger of OHSL and PFGI was discussed.

14. All materials presented to the board of PFGI (including any committee thereof) at any meeting at which the merger of OHSL and PFGI was discussed.

15. Any and all of your policies concerning the retention or destruction of documents of the types requested herein.

16. Documents sufficient to identify all KMK personnel who performed any work relating to the merger of OHSL and PFGI.

17. All KMK billing records that reflect work done by KMK personnel in regard to the merger of OHSL and PFGI.

18. All KMK billing records that reflect work done by KMK personnel with respect to this litigation and the related state court litigation. (Nolte, et al v OHSL, et al)

19. All documents reflecting KMK's representation of its clients, including any documents that discuss conflict of interest.

20. All documents referred to in the press release, attached as Ex. B.

21. All drafts of PFGI's 2002 Annual Report.

22. All documents provided by the KMK firm to any member of the Lindner family.

23. All documents and correspondence provided to the SEC and/or any other state or Federal regulatory agency, such as the FDIC.

24.  All insurance policies held by KMK that would protentially cover securities fraud and/or legal malpractice claims against KMK.

25.  Minutes of any KMK meeting where this litigation was discussed (including KMK's status as a defendant in litigation arising out of the OHSI.-PFGI merger).

Dated: June 10, 2004

Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800

Lead Counsel for Plaintiff
    and the Class

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2004, a true and correct copy

of the Document Subpoena was served by hand delivery and facsimile upon:

James E. Burke, Esq.
Keating, Muething & Klekamp PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio  45202

and by facsimile:

John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
Governor's Knoll
11935 Mason Road, Suite 110
Cincinnati, Ohio  45249


David C. Greer
James H. Greer
BIESER, GREER & LANDIS
400 National City Center
6 North Main Street
Dayton, OH  45402-1908


Stephanie A. Hird

# KMK | Keating, Muething & Klekamp PLL

ATTORNEYS AT LAW

**PATRICK F. FISCHER**
DIRECT DIAL: (513) 579-6459
FACSIMILE: (513) 579-6457
E-MAIL: PFISCHER@KMKLAW.COM

June 29, 2004

**VIA FACSIMILE**
Michael G. Brautigam, Esq.
Gene Mesh & Associates
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502

Re:    **Thiemann v. OHSL Financial Corp., et al.**

Dear Michael:

I am writing to your directly with respect to your June 22, 2004 and June 25, 2004 correspondence regarding the June 30, 2004 status conference with Magistrate Judge Hogan. I am writing to you as in-house counsel for Keating, Muething & Klekamp, P.L.L. ("KMK") who is responsible for responding to third party discovery and in conjunction with our outside counsel, Barrett & Weber, who are representing us in this litigation matter. I am also writing to you personally and directly so that there is no misunderstanding with respect to KMK's position on the subpoena for documents and deposition requests since the Court dismissed all claims asserted against KMK in the above-referenced litigation on June 7, 2004.

Please be advised: KMK is not participating in the June 30, 2004 status conference because it is not a party to the litigation. KMK will oppose your motion for interlocutory appeal and will be seeking sanctions under 28 U.S.C. §1927. We are also awaiting the Court's mandatory PSLRA findings with respect to Rule 11 and will pursue Rule 11 sanctions against you and your clients with respect to your assertion of claims against KMK.

Specifically with request to your June 10, 2004 subpoena for documents from KMK, we submitted objections on June 24, 2004 in compliance with Rule 45. Your subpoena does not even attempt to conform to relevant issues in this litigation, nor does it take any reasonable steps to avoid imposing undue burden or expense on KMK, all in violation of Rule 45 and applicable case law. The subpoena also requests documents and information that are clearly privileged. Obviously, the subpoena was designed solely to harass KMK after we were dismissed from the litigation and was not carefully crafted.

In your June 25, 2004 correspondence regarding our objections, you indicate that you are unaware of any prior production by KMK except "a single piece of paper." It is my understanding that as an accommodation to you in prior discovery, KMK has already produced documents bearing bates numbers "KMK 1-4039" and described certain documents withheld on bases more fully described in conjunction with the Provident/OHSL privilege log. It is therefore clear that you have not even reviewed the 4,000+ pages of documents already produced by KMK

1400 Provident Tower ♦ One East Fourth Street ♦ Cincinnati, Ohio 45202
TEL 513.579.6400 ♦ FAX 513.579.6457 ♦ www.kmklaw.com



EXHIBIT
C

Michael G. Brautigam, Esq.
June 29, 2004
Page 2

before serving the June 10, 2004 subpoena – further evidencing the harassing nature of the subpoena and your failure to take reasonable steps to avoid imposing under burden and expense on KMK.

You have an obligation under the federal rules to review the documents previously provided before issuing a new subpoena or discussing accommodations with respect to the June 10, 2004 subpoena. Given the extent of our prior production and your failure to review these documents, we believe further correspondence on the scope of the subpoena will be unproductive at this time. If you believe that there are additional documents relevant to this litigation that are not contained in the 4,000+ documents previously produced, then please explain your position in writing and we will consider it. We recognize that you may move for an order to compel the production; we will object on all of the above-referenced and other bases. In any event, we believe the issue is not appropriate for discussion with Magistrate Hogan on June 30, given the current procedural and factual posture of the case, and would only be appropriately raised after a full briefing of all relevant legal and factual issues, and after you explain to us in writing any perceived deficiencies in our prior production.

You have also sought to depose two additional KMK attorneys, David Rosenberg and Gary Kreider. We have previously provided you four different KMK attorneys for deposition. We do not believe these depositions of Messers. Kreider and Rosenberg will yield any additional relevant information. We further believe that the depositions are solely to harass and are being subpoenaed for an improper purpose. Furthermore, all discovery against KMK is stayed pursuant to the PLSRA and the Court's November 19, 2003 Scheduling Order until all motions to dismiss are decided by the Court, which may resolve this case entirely or significantly limit the scope of the case and therefore the scope of future discovery and these depositions.

In addition, if you continue to pursue an interlocutory appeal of the dismissal of KMK, we will seek a stay of discovery under the additional grounds of 28 U.S.C. §1292(b), which provides for a discretionary stay of discovery pending consideration of an interlocutory appeal. If you do not withdraw the subpoenas, we will file a motion to quash raising these and other issues. Even if the depositions go forward at some date in the future, we would ask the Court to impose certain restrictions with respect to the questioning and may ask that the depositions take place before Magistrate Hogan given your prior improper conduct during the depositions of KMK attorneys and others, and the current posture of the litigation.

In any event, we believe that the deposition issue is not currently ripe for the June 30, 2004 status conference. Consistent with my June 23, 2004 correspondence, we do not believe you have the right to take these depositions at this time and we ask that you withdraw the subpoenas; if you do not, we will file a motion to quash and the issue will be ripe for Magistrate Hogan's consideration after full briefing is concluded.

Michael G. Brautigam, Esq.
June 29, 2004
Page 3


We intend to submit this correspondence to Magistrate Hogan as part of a formal filing outlining our position. We can not prevent you from improperly and prematurely raising these issues during the June 30, 2004 status conference; as a non-party, however, the Court should not address these issues involving KMK absent motion practice, and no appropriate motions have been filed or fully briefed at this time.

Furthermore, you sent me correspondence requesting these depositions on June 17 – when I was out of the country. You sent me correspondence on June 18 – when I was still out of the country – asking why I have not responded to your June 17 correspondence; and then you sent me a third correspondence on a Sunday, June 20 – when I was still out of the country – asking why I had not responded to your June 17 and June 18 correspondence and accusing me of inappropriate conduct. Such harassment is inappropriate and baseless. As you know, I responded to your correspondence when it was reasonably appropriate for me to do so. (See attached.) I will respond to your future correspondence when it is reasonably appropriate for me to do so as well.

Finally, after producing over 4,000 pages of documents and 4 deponents who testified for hundreds of pages, it is obvious and clear that KMK, a non-party, has cooperated, and cooperated reasonably and fully, in discovery in the litigation.

Sincerely yours,

KEATING, MUETHING & KLEKAMP, P.L.L.

By: _____
            Patrick F. Fischer


PFF/lms
Enclosure

c: Counsel of Record (via fax)


1307061.1

# KMK | Keating, Muething & Klekamp PLL

ATTORNEYS AT LAW

**PATRICK F. FISCHER**
DIRECT DIAL: (513) 579-6459
FACSIMILE: (513) 579-6457
E-MAIL: PFISCHER@KMKLAW.COM

June 23, 2004

**Via Facsimile**

Michael G. Brautigam
Gene Mesh & Associates
2605 Burnet Avenue
Cincinnati, OH 45219-2502

    Re:    **Thiemann v. OHSL Financial Corp., et al.**

Dear Mr. Brautigam:

    I am in receipt of your faxes. I have been traveling and have not had an opportunity to reply. I respond to letters, and I respond in a proper manner.

    As for the supposed depositions of Messrs. Kreider and Rosenberg, please be advised that we do not believe that you have the right under Magistrate Judge Hogan's orders to take those depositions at this time. Pending motions to dismiss remain.

    If you would like to discuss this matter further, please advise in writing.

        Very truly yours,

        KEATING, MUETHING & KLEKAMP, P.L.L.

        By: _____

            Patrick F. Fischer



# KMK | Keating, Muething & Klekamp PLL

ATTORNEYS AT LAW

**FILE COPY**

**PATRICK F. FISCHER**
DIRECT DIAL: (513) 579-6459
FACSIMILE: (513) 579-6457
E-MAIL: PFISCHER@KMKLAW.COM

July 14, 2004

**Via Facsimile**

Michael G. Brautigam
Gene Mesh & Associates
2605 Burnet Avenue
Cincinnati, OH 45219-2502

Re:    **Thiemann v. OHSL Financial Corp., et al.**

Dear Mr. Brautigam:

We have reviewed your July 1, 2004 motion to strike or otherwise not consider our notice of filing. We also have reviewed the Court's July 9, 2004 Order striking your prior motion to strike (T.d. 204). We ask that you withdraw your July 1, 2004 motion given the Court's July 9, 2004 Order and the mootness of the issue.

We also have reviewed your June 30, 2004 correspondence responding to my June 29, 2004 correspondence with respect to the subpoenas for the depositions of Rosenberg and Kreider.

The prior production of KMK documents was obviously not specifically in response to your recent subpoena, but there is clear overlap between parts of the subpoena and prior discovery requests. I do not know whether you have reviewed the documents, and I am not clear what additional documents would be produced in response to non-objectionable requests, if any, contained in your subpoena. Furthermore, your subpoena contains patently objectionable requests -- such as, requests for documents discussed with the Lindner family. This request is not seeking relevant information but is clearly designed solely to harass.

KMK has produced over 4,000 pages of documents and produced four attorneys for deposition. We will not be producing more attorneys for deposition, only to later resolve document issues and then receive a request from you for re-deposition of attorneys based on additional documents produced. We believe that the document issues need to be resolved before any further depositions proceed. Hence, we ask that you identify which requests in your subpoena you believe are not addressed by our prior production, and we will respond

1400 Provident Tower ♦ One East Fourth Street ♦ Cincinnati, Ohio 45202
TEL 513.579.6400 ♦ FAX 513.579.6457 ♦ www.kmklaw.com

1305072.1



Michael G. Brautigam
July 14, 2004
Page 2

accordingly.  We also believe that the depositions should take place under the supervision of a court-appointed special master or Magistrate Judge Hogan, and be limited in time under the circumstances, if and when the subpoenaed depositions proceed.

Even if all of these conditions were worked out shortly, Mr. Rosenberg has a long scheduled (before the issue of the subpoena) matter out of the area on July 27 and cannot be available on that date.  We would need to re-schedule his deposition, in any event.

We are willing to work with you to resolve the document issue and to proceed with the subpoenaed depositions under the above-referenced terms.  If this compromise is not acceptable, we will need to file a motion to quash the subpoenas.  If you could please advise us as to your position, we would be appreciative.

Very truly yours,

KEATING, MUETHING & KLEKAMP, P.L.L.

By: _____
            Patrick F. Fischer

cc:    Tom Breidenstein, Esq.

# KMK | Keating, Muething & Klekamp PLL
### ATTORNEYS AT LAW

**FILE COPY**

**PATRICK F. FISCHER**
DIRECT DIAL: (513) 579-6459
FACSIMILE: (513) 579-6457
E-MAIL: PFISCHER@KMKLAW.COM

July 19, 2004

**Via Facsimile**

Michael G. Brautigam
Gene Mesh & Associates
2605 Burnet Avenue
Cincinnati, OH 45219-2502

      **Re:**    **Thiemann v. OHSL Financial Corp., et al.**

Dear Mr. Brautigam:

     Responding to your July 16, 2004 email:

     1.    Barrett & Weber will continue to represent us formally in the litigation and with motion practice. On the other hand, we are negotiating the details regarding the subpoena for documents and the subpoena for KMK depositions, as we have forwarded to you the various correspondence with respect to the subpoena for documents and subpoena for depositions.

     2.    Our notice is not improper and was a permissible manner to inform the court of our position, given your intent to argue perceived discovery disputes against KMK without our attendance, and in effect, *ex parte*. The July 9 Order does not indicate that our notice was improper in any way; the July 9 Order does indicate that your prior motion to strike was "denied and stricken from the record as an unnecessary distraction from the merits of the case." We believe your latest motion to strike should be withdrawn and that the Court obviously does not believe such motions to strike are appropriate. If you do not, then we will file our opposition. Please advise. We have no intention of filing further notices with the Court provided that you are not going to unilaterally argue discovery issues before the Court absent appropriate motion practice with respect to third party discovery, such as against this firm.

     3.    Your response does not accurately reflect my correspondence or the terms I proposed. Clearly, neither I nor Mr. Gilligan have acted improperly in any way. We have responded in a timely fashion to all reasonable requests. We believe the requirements of the supervision of a special master or Magistrate Judge Hogan is necessary to prevent repeated lines of improper and repeated questioning that have plagued numerous depositions in this case, and is

1400 Provident Tower ♦ One East Fourth Street ♦ Cincinnati, Ohio 45202
TEL 513.579.6400 ♦ FAX 513.579.6457 ♦ www.kmklaw.com

1315847.1



Michael G. Brautigam
July 19, 2004
Page 2

well documented in prior pleadings and with an order from the Court. Hence, we are not willing to proceed in this "normal fashion" like prior depositions. If you will agree to proceed with the depositions under the supervision of a special master or Magistrate Judge Hogan, please confirm. If not, we will file the appropriate motion to quash and for protective order on this issue. Once it is determined whether a special master or Magistrate Judge Hogan will supervise, then the temporal length of the depositions can be discussed.

4.    Most importantly, you fail to address any issues with respect to resolving document production issues before conducting these depositions. Please immediately indicate whether you are willing to reschedule these depositions at a date after the document issues are resolved. We are willing to discuss and set a date for the deposition, but as the document issues are not yet resolved, that date should be in the future.

Very truly yours,

KEATING, MUETHING & KLEKAMP, P.L.L.

By: _____
            Patrick F. Fischer

cc:    Tom Breidenstein, Esq.

1315847.1

# LAW OFFICES OF GENE MESH AND ASSOCIATES

20 July 2004

By Hand Delivery

Patrick F. Fischer, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

### <u>Re: OHSL</u>

Dear Mr. Fischer:

I am writing in response to my correspondence with both you and Barrett & Weber with
respect to the subpoena served on 10 June 2004.  Barrett & Weber objected to the
subpoena on 24 June 2004, and I wrote back the next day withdrawing certain requests
and attempting, in good faith, to narrow the issues.   After this letter, you began
corresponding with me on issues related to the subpoena.

As an initial matter, please note that this subpoena is directed to KMK, not to the OHSL
and Provident Defendants, though it is often hard to tell where the former ends and the
latter begins.  To the extent that you believe that the exact same document or documents
have previously been produced by either the OHSL or the Provident Defendants, would
you kindly indicate the Bates range on the production in some type of log, similar to a
privilege log?  For example, you might state, all drafts of the Proxy
Materials/Registration Statement were previously produced by the OHSL and Provident
Defendants at Bates range OHSL  001 to 100.

2605 Burnet Avenue
at Taft Road
Cincinnati, Ohio 45219-2502

TELEPHONE
(513) 221-8800

FAX
(513) 221-1097

Subject to the above limitation, the following corresponds with the numbered requests in
the subpoena:

1. This request is appropriate without modification;
2. This request is appropriate without modification;
3. KMK may not have any documents related to this request, but if they do, the
   request is appropriate;
4. This request is appropriate without modification;
5. KMK may not have any documents related to this request, but if they do, the
   request is appropriate;
6. KMK may not have any documents related to this request, but if they do, the
   request is appropriate;
7. KMK may not have any documents related to this request, but if they do, the
   request is appropriate;
   This request is appropriate without modification;





EXHIBIT

D

## LAW OFFICES OF GENE MESH AND ASSOCIATES

9.  KMK may not have any documents related to this request, but if they do, the request is appropriate;

10. This request is appropriate without modification;

11. KMK may not have any documents related to this request, but if they do, the request is appropriate;

12. KMK may not have any documents related to this request, but if they do, the request is appropriate;

13. To the extent that KMK retains PFGI Board minutes, this request is appropriate;

14. This request is appropriate without modification;

15. I believe a single page was previously provided with respect to this request, and if there are no additional documents response to the request, the request has been complied with;

16. This request is appropriate without modification;

17. This request is appropriate without modification;

18. This request is appropriate without modification;

19. This request is appropriate without modification;

20. This request is appropriate without modification;

21. This request is appropriate without modification;

22. Would you kindly describe in detail, without conclusory allegations, why you feel that documents that may have been provided to the Lindner family are patently objectionable? This general topic was covered at depositions with PFGI Board members, i.e. what, if anything, PFGI Board members said to members of the Lindner family, and if a specific packet on the Restatements was presented to them, I believe that it is appropriately called for in the subpoena. On the other hand, if you tell me in detail why you are troubled by this request, I will consider withdrawing it. At minimum, kindly indicate if any documents exist that are responsive to the request, since if no documents exist, the request is moot.

23. This request is appropriate without modification;

24. This request has previously been withdrawn;

25. This request is appropriate without modification;

I respectfully request your consideration of the above. Should you wish to discuss this or any other issue relating to KMK in good faith, do not hesitate to call.

Sincerely,

Michael G. Brautigam

Cc:    All Counsel by Fax



# KMK | Keating, Muething & Klekamp PLL

ATTORNEYS AT LAW

**FILE COPY**

PATRICK F. FISCHER
DIRECT DIAL: (513) 579-6459
FACSIMILE: (513) 579-6457
E-MAIL: PFISCHER@KMKLAW.COM

July 20, 2004

*Via Facsimile*

Michael G. Brautigam, Esq.
Gene Mesh & Associates
2605 Burnet Avenue
Cincinnati, Ohio  45219-2502

> **Re:    Thiemann v. OHSL Financial Corp., et al.**

Dear Mr. Brautigam:

I have received and reviewed your two July 20, 2004 correspondence which were hand-delivered this afternoon.  Your allegations and accusations are false.

With respect to the subpoenas for depositions of Mr. Kreider and Mr. Rosenberg, we agree that you should not plan to depose Mr. Kreider or Mr. Rosenberg next week.  We will either file a motion to quash the subpoenas or we will appear at the August 3, 2004 status conference and raise issues with respect to a special master and timing of the depositions at that time.

With respect to your July 20, 2004 correspondence regarding your document subpoena, we will respond to you on or before July 27, 2004.

In addition, we will file our opposition to your motion to strike by July 22, 2004.

If you have any questions, please do not hesitate to call me.

Sincerely yours,

KEATING, MUETHING & KLEKAMP, P.L.L.

By: _____
Patrick F. Fischer

PFF:aef

EXHIBIT
E

50th
ANNIVERSARY
1954-2004

**KMK** | Keating, Muething & Klekamp PLL

ATTORNEYS AT LAW

**PATRICK F. FISCHER**
DIRECT DIAL: (513) 579-6459
FACSIMILE: (513) 579-6457
E-MAIL: PFISCHER@KMKLAW.COM

July 23, 2004

*Via Facsimile*

Michael G. Brautigam, Esq.
Gene Mesh & Associates
2605 Burnet Avenue
Cincinnati, Ohio  45219-2502

      Re:    **Thiemann v. OHSL Financial Corp., et al.**

Dear Mr. Brautigam:

      I have received and reviewed your July 22, 2004 facsimile.  I reiterate what I previously informed you in my July 20, 2004 correspondence.  You should not plan to depose Mr. Kreider and Mr. Rosenberg next week.  We will file a motion to quash.  Whether we appear at the August 3, 2004 status conference and raise issues with respect to a special master and timing of the depositions at that time will depend on briefing and subsequent events.

      Sincerely yours,

      KEATING, MUETHING & KLEKAMP, P.L.L.

      By:_____
                Patrick F. Fischer

PFF:aef

