**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **WALTER W. THIEMANN, et al.** | : | **Civil Action No. C-1-00-793** |
| **Plaintiffs,** | : | **Judge Sandra S. Beckwith** |
| **vs.** | : | **Magistrate Judge Timothy Hogan** |
| **OHSL FINANCIAL CORP., et al.** | : | |
| **Defendants.** | : | |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO HOLD KMK IN CONTEMPT FOR VIOLATING THIS COURT'S MAY 10, 2004 ORDER REGARDING IMPROPER OBJECTIONS DURING DEPOSITIONS AND REQUEST FOR SANCTIONS (DOC. NO. 344).**

MR. BURKE:  Your Honor, the—Mr. Brautigam is knowingly misstating the record and *asking the witness questions that he is obviously unsure of,* just in an effort to inject confusion and further the confusion of these proceedings.  And I do have a continuing objection to this.

(Brinker Dep. at 52, emphasis added).

Dated: 27 July 2004               **GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and
the Putative Class*

i

Plaintiffs respectfully submit this reply brief in further support of Plaintiffs' Motion to Hold Keating, Muething & Klekamp (hereinafter "KMK") in Contempt for Discovery Violations Under the Federal Rules of Civil Procedure and Request for Sanctions. This Motion was brought at the specific invitation of this Court after KMK deliberately failed to comply with this Court's instructions at the deposition of Joseph Pedoto on May 20, 2004 in which this Court stated that there not to be any more improper objections during the depositions. As will be shown, the OHSL and Provident Defendants' Opposition is entirely without merit and reflects a bizarre view of what is and is not an appropriate question and objection. The OHSL and Provident Defendants have decided to stand behind the type of bizarre objections that KMK made during these depositions including, but not limited to, Mr. Burke's obviously strange objection that it is improper for Plaintiffs' to ask a question of a witness that he is "obviously unsure of." (Brinker dep. p. 52). This type of objection was not an aberration, but the general rule. As a result, it is not a stretch for this Court to see that KMK and Bieser, Greer and Landis, LLP's (hereinafter "BGL") interpretation of the Federal Rules is unique and not supported by the Federal Rules of Civil Procedure, or federal case law interpreting these rules. It is also not difficult to see how these frequent improper objections, when viewed collectively, evidence a blatant attempt to coach the witnesses and obstruct the proceedings. A Memorandum is attached hereto.

Dated: 27 July 2004

**GENE MESH & ASSOCIATES**

Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*

**MEMORANDUM**

## I.    INTRODUCTION

The opposition brief submitted by the OHSL and Provident Defendants does not, in large measure, address the many detailed and specific allegations of misconduct at the Provident depositions which Plaintiffs found when they combed through the record for specific examples of improper objections. (*See*, Motion, Doc. No. 344, at 9 to 24). Rather, the OHSL and Provident Defendants took the easier, but incomplete and improper, approach of yet again figuratively throwing the transcripts at the Court, and asking the Court to again do the impossible task of finding testimony which supports their position.  This is exactly what the OHSL and Provident Defendants did when they stated that: "Defendants urge the Court to review the full transcripts of the depositions of the Provident and OHSL individual Defendants when considering the merits of Plaintiffs' instant Motion." (Opposition, Doc. No. 354, at 2)[1].  Further, the substantive arguments which the Provident and OHSL Defendants' substantive arguments do provide in response to Plaintiffs' Motion are either non-responsive or misapply the law which Defendants cite in support of their arguments. The most obvious example of this is the Provident and OHSL's overuse and misapplication of the "obviation rule."

---

[1] Not only does this continue a disturbing practice of the part of Provident and OHSL which is highly insulting to the Court, but it is additionally an obvious ploy.  Given this Court's knowledge of KMK and BGL's open feelings of animosity toward Plaintiffs, the Provident and OHSL Defendants' failure to cite to examples of misconduct on the part of Plaintiffs' counsel, or appropriate conduct on their end, confirms that they were unable to locate such excerpts from the deposition. Their silence is deafening.

## II.     LEGAL ARGUMENT

### A.     KMK Should be Sanctioned for Its Behavior During the Depositions.

#### 1.  The Obviation Rule Does Not Explain or Excuse the Misconduct of Defense Counsel.

Plaintiffs acknowledge at the outset that even the most extreme example of misconduct at a deposition can appear excusable, or even trivial in the cold record[2].   Yet

---

[2] Fortunately, some of the depositions at issue, such as those of Defendants Hucke, Hillebrand, and Brinker have been videotaped and filed with the Court.  The Brinker deposition is particularly instructive, since as Magistrate Judge Hogan indicated, he had observed such conduct, but explained it away due to Mr. Brinker's physical and mental infirmities:

> I, I actually observed that during the Brinker deposition, but I didn't attribute any kind of misbehavior to the lawyer.  I thought some of the cases where Mr. Brinker was asked a question and he was trying to analyze and Jim Burke made an objection that said, based on speculation.
>
> And then Brinker responded with, well, that's speculation.  I— I think he was having trouble making he connection between the question and the answer.  And that's the last thing that was said to him, frankly.
>
> I don't think that was any—at least it didn't appear to me to be any plan between Burke and Brinker.  But the obvious preferable practice is to make your objection, state the reason and then instruct the witness to answer the question and let the Court resolve it.

(Transcript of 30 June 2004 Status Conference at 31-32, Attached as Exhibit A).

The Brinker deposition is arguably unique, and if it is representative of anything, it is only representative of the OHSL Defendants.  Magistrate Judge Hogan appears to be basing all of his deposition discovery decisions based not on the record before him but on his recollection of the Brinker deposition.  Even though it focused almost exclusively on the three areas of the decision disqualifying KMK, Mr. Thiemann's suitability as a class representative, and the 2003 Restatements, for some inexplicable reason, Magistrate Judge Hogan concluded that the two hour Brinker deposition covered no new ground.  None of these topics could possibly have been covered at Mr. Brinker's deposition almost four years before, and Magistrate Judge Hogan's conclusion to the contrary is simply incorrect.  Plaintiffs respectfully invite the Court to review these tapes.

the conduct of KMK attorneys at the depositions themselves is designed to and does obstruct the process and blunt the search for the truth. The Provident and OHSL Defendants claim that they had no choice but to repeatedly interfere with the deposition process because Plaintifs' counsel's questioning was replete with defective questions for which objections had to be made or be forever waived. (Opposition, Doc. No. 354, at p. 2). However, this is not true for two reasons. Although there may have been some defective questions, as there are in all depositions, the Provident and OHSL not only objected to defects in the form of the questions, but objected to several more questions which were not defective in order to interfere with the flow of information at the deposition and to provide improper instruction to the deponents as to how to respond to the questions posed.

In one example, the Provident and OHSL Defendants argue that Ms. Rowe properly objected as to a defective question regarding whether or not Defendant Cook would have a problem with the Proxy Material/Registration Statement if he knew that Defendant Hanauer had testified that he did not believe that the merger was in the best interest of the OHSL shareholders. (Cook dep. pp. 105-106). The Provident and OHSL Defendants argued that this objection was necessary because "everyone was not on the same page." (Opposition, Doc. No. 354, pp. 3-4). However, this is not a proper objection. Although the Provident and OHSL Defendants argue in their Memorandum that the question was improper as to form, surprisingly this particular objection was never raised. Rather, Ms. Rowe merely made this speaking objection in order to direct the response of Defendant Cook. Further, even if "we're not all on the same page" was a proper objection, Ms. Rowe did not even give Defendant Cook the opportunity to

respond after Plaintiff's counsel's answer to his question. Thus, there is no way to know if the parties were "all on the same page," or what Defendant Cook's answer would have been if his response had not been improperly interrupted and shaped by Ms. Rowe's speaking objection.

Similarly, the result was the same in relation to Ms. Rowe's alleged objection regarding the "manner of the taking of the deposition." (Opposition, Doc. No.354 at 5). The Provident and OHSL Defendants cite to *Bahamas Agricultural Indus.*, 526 F.2d 1174, 1180-1181 (6th Cir. 1975) for the proposition that it was not improper for KMK to object to Plaintiff's counsel asking Mr. Cook about a portion of Defendant Hanauer's previous deposition testimony. (Opposition, Doc. No. 354, p. 5). However, this case says no such thing. It only states that objections based upon form will be waived if not raised at the time the question is asked. Id. Once again, Ms. Rowe never made an objection based upon form, but only made another speaking objection which was primarily made to inform Defendant Cook that he should not be too quick to concede that Defendant Hanauer had admitted that the OHSL-Provident merger was not in the best interest of the OHSL shareholders. Further, despite the arguments of the Provident and OHSL Defendants, Defendant Cook did not have to personally know Defendant Hanauer to answer this question, and it was entirely proper for Plaintiff's counsel to ask Defendant Cook about Defendant Hanauer's statement. Just because it is a tough question for Defendant Cook to answer does not mean that it is an improper question.

The Provident and OHSL Defendants next argue that KMK's objections during the Hoverson and Brinker depositions were proper in all respects. The Defendants do not even attempt to specifically defend their objection, but only state that Evidence Rule 602

4

provides that a witness may not testify at trial on a subject about which that witness has no personal knowledge. (Opposition, Doc. No. 354, p. 6). However, this completely misses the point. No one is asking the Provident Defendants to testify at trial on subjects of which they do not have knowledge. Rather the Plaintiffs were only seeking to ask the Provident Director Defendants questions in order to see what their particular knowledge was. Counsel obviously cannot learn what a deponent's knowledge is if he does not ask the question. As a result, it was improper for KMK to object on the basis that Plaintiffs' counsel is "*asking the witness questions that he is obviously unsure of.*" (Brinker dep. p. 52).

## 2. Defense Counsel Used Baseless Objections to Signal to the Provident Director Defendants Not to Answer Questions.

Similarly, along the same lines, KMK has definitely overused the "speculation" objection, and other similar objections, in an attempt to try and signal to the Provident Director Defendants how they should answer particular questions. KMK clearly enjoys a closer relationship with the Provident Defendants than the OHSL Defendants, and has conducted its defense of the Provident Defendants more vigorously than that of the OHSL Defendants.[3] This is not surprising, given the fact that KMK has represented Provident for years, and resides in the Provident building.

It has become apparent that the degree of interference is proportionate to the importance of the witness and the expected testimony that the witness will give. By far the best examples of this conduct are the opening pages of Defendants Hoverson and Carey's depositions, the respective CEO and CFO of Provident. Before Mr. Brautigam

---

[3] One reason for this is that, generally speaking, the testimony of the OHSL defendants was so wholly lacking in substance, and often bordered on nonsense, that more vigorous representation was not necessary.

sought the relief of the Court, the conduct of KMK's counsel was the worst that Plaintiffs' counsel has experienced in his career. Early on it became clear that these witnesses were carefully coached to be argumentative, evasive, to refuse on their own initiative to answer questions, and to avoid the obvious impropriety of having to be instructed by counsel not to answer questions. But the Court should not be fooled by this hypertechnical distinction: the net effect was that these witnesses were effectively instructed not to answer questions. Some of the responses were amazing: both witnesses repeatedly confused the deposition with a press conference, because they repeatedly stated that they "would not comment" on a question. (Carey, dep. p. 321). Incredibly, Mr. Hoverson even stated that he was not here to interpret documents:

> Q  Mr. Hoverson, and you changed—

> A  I'm not going to interpret it. Okay.

(Hoverson dep. p. 48)[4]. Such conduct was clearly disfavored by this Court during the June 30, 2004 Status Conference in which Magistrate Judge Hogan framed the issue as follows:

> Refusal to answer questions? I mean, the witness is supposed to be directed to answer questions unless its privileged. And then there better be a good reason why he's told not to answer the question. I don't know about refusing to answer—comment on a question, refusing to answer based on its not for me to interpret.

> Well, I don't know if it is or it isn't. It depends on what the document is and what is asked. If you presented me with a document from the Air Force Base and said interpret it, I'd say what is this? If it's an appropriate

---

[4] Mr. Hoverson's answers to this line of questioning, directly from the Proxy Materials/Registration Statement, are entirely implausible. Does he really expect anyone to believe that he is unable to answer the question as to what "accurate" means in the context of the OHSL-PFGI merger, as the word is used in the fairness opinion included in the materially false and misleading Proxy Materials/Registration Statement? (*See*, Hoverson at 49).

witness who was asked a question he should know, it's different. I can't decide that in a vacuum.

What else have we got? Instructions not to answer questions, speaking objections. I mean, what do you want me to say? You're not supposed to trigger the deponent's answer by telling what to say by virtue of objection. That's not—if that happens, I suppose counsel should be sanctioned and Mr. Brautigam should be given another hour to question the witness who's screwing around, trying to run out the time.

(Transcript of 30 June 2004 Status Conference at 32-33).

These comments are well taken, since that is exactly what has been happening here. Plaintiffs have placed appropriate documents before appropriate witnesses, and these witnesses have, in Magistrate Judge Hogan's words, "screwed around, trying to run out the time." For example, Chris Carey, Provident's former Chief Financial Officer for Provident, and one of perhaps two people at Provident who was most knowledgeable about accounting, repeatedly refused to answer direct questions on this topic as a result of clear hints from KMK counsel. This is illustrated in the following exchange:

Q Are you familiar with the term "in all material respects" as it's included in the first line of paragraph 3 on page 46 o Plaintiffs' Exhibit 90? [2002 PFGI Annual Report]

MR. BURKE: Objection. Asked and answered—well, not asked and answered, but calls for speculation.

A Well, I've just read the term, so I'm familiar as from reading it; but as I've said earlier, I read this each year that they put it in the report, and I think it's pretty similar, but not identical.

Q What do you understand the term to mean?

MR. BURKE: Objection. Calls for speculation.

A I think the term is self-explanatory.

Q Well, Mr. Carey, next May, I'm going to have to explain this to a jury, and I doubt that they will find it self-explanatory, and they are entitled to your opinion as Provident CFO.

MR. BURKE:  Objection.  That's not a question.

Q  So please tell me what your opinion is.

MR. BURKE:  No.  Fist of all, it's your job to explain your case, whatever it is.  It's not Mr. Carey's job to furnish you testimony that he doesn't have.  You may answer.

A  The answer to your question is that you need to talk to Ernst & Young who wrote this and see what they mean about it.

As I said, there's not a bright line on materiality, but—and I think that it's explanatory as it is; but if you want more information, I would go to Ernst & Young.

Q  Well, actually, I want the opinion of Provident's CFO.

MR. BURKE:  Objection.

A  I gave you my answer, Mike.

Q  Mr. Carey, is it part of your job to be able to read and understand the report of the independent auditors?

MR. BURKE:  Objection.  You may answer.

A  I don't know whether I'd say that's part of my job.  I mean, it's—I think you'd expect a CFO to be capable of doing it.

Q  You'd expect what?

A  A CEO to be capable of doing that.  It's not listed in my job requirements to read the opinion they give on us.

Q  Did you say CEO or CFO?

A  CFO.

Q  And are you able to read and interpret page 46 of Plaintiffs' Exhibit 90?

MR. BURKE:  Objection.  Asked and answered.  You may answer.

A  Well, yes, I can certainly read and interpret it.

Q  Please tell me in words other than material what in all material respects means.

8

MR. BURKE: Objection. Asked and answered a dozen times.

A  I already answered that question.

(Carey dep. pp. 30-33, Attached as Exhibit B).

The above exchange warrants a careful examination, for it is a delicate dance where Mr. Burke is intentionally unduly inserting himself into the process in an attempt to impede the flow of the question and the answer, and it achieves the desired goal of impeding the process. First, Mr. Burke repeatedly makes speaking objections. Second, Mr. Burke is continually signaling to the witness that the line of questioning is important, and that the witness should be as evasive as possible in his response. Mr. Carey, an intelligent individual, is easily able to interpret the code and falls in line. As a result, Mr. Burke has effectively given the witnesses repeated instructions not to answer.

The first question, in keeping with Magistrate Judge Hogan's comments above is completely unobjectionable as it involves placing the 2002 Provident Annual Report in front of Provident's CFO. This is not a case where a Provident Director is being asked to improperly speculate on an Air Force Base document, how a hydrogen bomb is built, or some other topic of which Defendant Carey would have no knowledge. Because the question is so entirely unobjectionable, Mr. Burke, an attorney who believes that it is improper to ask a witness questions where he is unsure of the answer, is temporarily confused, and initially objects based on "asked and answered." But even Mr. Burke realizes the futility of that objection, because in no sense has that question been asked and answered and he backtracks. But his partial goal is achieved, because he has unduly and improperly inserted himself into the process. And he recovers. Mr. Burke shifts to a favorite objection, "speculation," which is effectively an instruction not to answer. And

Mr. Carey is immediately clued in, and gives a non-answer. Mr. Burke's effective instruction has its intended effect.

This process repeats itself. After Plaintiffs' counsel asks Defendant Carey the straightforward question of "What do you understand that term to mean?" in relation to a Provident financial document, Mr. Burke returns to the code objection, "speculation," and Defendant Carey dutifully follows Mr. Burke's instructions and gives another non-answer. Further, when Mr. Brautigam attempts to explain, Mr. Burke spots an opening to make a speaking objection and, most importantly, reminds the witness that he is on dangerous ground, and that he doesn't have to answer the question. Mr. Burke's comment that "It's not Mr. Carey's job to furnish you with testimony that he doesn't have" is, in a very real sense, an instruction not to answer. And once again Mr. Carey does not answer the question, but helpfully suggests that Plaintiffs ask Ernst & Young. After Plaintiffs' counsel asks one more time in an attempt to break the code, Mr. Burke objects again, and indirectly gives Defendant Carey the instruction not to answer at all. This code again works for Defendant Carey conclusively states "I gave you my answer, Mike."

Regardless of what objection is raised, Defendant Carey was quick to pick up and follow Mr. Burke's lead. Obviously there is a pattern here. There was a pre-arranged code, and Mr. Burke gave subtle instructions over and over again to Defendant Carey as to what questions not to answer. Mr. Carey certainly held up his part of the bargain.[5]

---

[5] Plaintiffs respectfully request that any Order that this Court issue clearly instruct Messrs. Carey and Hoverson, and other directors, to clearly answer questions instead of suggesting that Plaintiffs ask E&Y, or that the witness can't comment on the question, or that the witness has already answered the question when clearly he had not. Plaintiffs respectfully request that the witnesses to directed, in a paraphrase of Magistrate Hogan's

The result was the same in relation to Defendant Steger's deposition. Ms. Rowe applied a variation on the theme of the KMK code, with equally effective results. The question posed that is cited by the Defendants is entirely unremarkable. The exchange that follows, and the non-answer is not.

> Q    Dr. Steger, do you believe that Provident's financial statements were materially misstated  between 1997 and 2002?
>
> MS. ROWE:  Objection.
>
> MS. PERRY:  Join in the objection.
>
> MS. ROWE:  Calls for a legal conclusion.
>
> A    Yeah.  As I said, I'm not a lawyer and I'm not an accountant.

(Steger Deposition, p. 32).

This exchange is also worthy of a close analysis.  Dr. Steger is the Chairman of Provident's audit committee.  A requirement to serve on the audit committee is that one be "financially literate."  Presumably financial literacy involves some basic familiarity with the concept of materiality, which was the thrust of this entirely appropriate question. Even though the question is not objectionable in any way, Ms. Rowe makes a non-speaking objection, which is joined by counsel for Ernst & Young.  But Ms. Rowe apparently re-thought her objection, since it did not provide a hint as to what she was really attempting to do, which was to prevent the witness from answering the question. Thus, she objected again, and showed her hand by improperly stating that the question called for a legal conclusion.  The result was that Dr. Steger was now clued in and parroted Ms. Rowe's objection. In particular, he repeated his earlier testimony that he

---

words, to stop screwing around and trying to run out the clock, and just answer the questions.

was not an attorney or an accountant, and effectively refused to answer the question. Thus, without using the exact words, "I instruct you not to answer," the code has worked again and yet another KMK attorney has effectively instructed the witness not to answer without actually saying those words.

### 3.    Defense Counsel Did Not Make Concise Objections.

The next argument that the Provident and OHSL Defendants makes is that KMK made its objections in as concise a manner as is possible. To make this argument, the Provident and OHSL Defendants refer to Defendant Hoverson's deposition and one section of that deposition that dealt with the restatements. The Provident and OHSL Defendants want to pat themselves on the back because Mr. Burke made an objection which was correct in terms of form when he stated: "Calls for speculation. You may answer." (Opposition, Doc. No. 354, p.6). However, the Defendants miss the point. No speculation was needed to answer to answer this question. It is inherent in the definition of restatement that there has been a material mistake in relation to the financial numbers at issue. Regardless of what restatement is being discussed, by its very definition, such a document would have to mean that its financial statements were materially misstated. This is verified by not only Plaintiffs' experts, but Provident's restatements themselves. Thus, this was an improper objection despite the fact that it was, in this case, actually concise.

However, this does not mean that all of KMK's objections were concise. As stated above, KMK's objections frequently went beyond what was necessary to communicate the objection at hand. As a result, it must be concluded that their purpose was not just to preserve the record, but to provide instruction to the deponent during his

deposition. In particular, the Defendants attempt to manipulate the facts surrounding the deposition of Defendant Brinker.  First, the Defendants knowingly misuse a portion of this Court's Order (Doc. 295) that discussed Defendant Brinker's deposition. Magistrate Hogan's recollection of the events of the Brinker deposition may have failed him, because he clearly got it wrong when he stated that the Brinker deposition covered no new ground, the same cannot be said of defense counsel.  The Defendants know that Defendant Brinker's deposition focused almost exclusively on the three areas of: (1) the decision disqualifying KMK[6], (2) Mr. Thiemann's suitability as a class representative, and (3) the 2003 Restatements.  This is easily verified by reviewing the deposition transcript.  The Defendants did not do so, but rather unethically attempted to use a portion of an Order which they knew to be untrue to bolster their own weak arguments.

**4.      Plaintiffs Did Not Mislead the Court with Selected Portions of the Provident Director Defendants' Transcripts.**

Similarly, Plaintiffs did not use "selected portions" of the Brinker transcript to mislead the Court about the deposition. On the contrary, if not for the interest of brevity, Plaintiffs would have incorporated not only more of each passage cited, but more examples from this deposition.  The Defendants can argue all they want that Plaintiffs' counsel was trying to trick Defendant Brinker into providing answers that were not true.[7]

---

[6]    The deposition excerpts cited by the OHSL and Provident Defendants in pages 8-9 of their Memorandum in Opposition involves KMK's disqualification, which is without question a new topic since Defendant Brinker's former deposition.

[7]    Plaintiffs' counsel is improperly accused, without any evidence, of attempting to dupe an infirm 86 year old man.  Indeed, even a cursory review of the tape or the transcript of Mr. Brinker's deposition will immediately show, the deposition of Mr. Brinker was exceedingly difficult to take because there was often no relationship, or at best a tenuous relationship, between the question and the answer.  In fact, Mr. Brinker's responses were so often bizarre, obviously incorrect, with little or no relationship to the

However, this is a slippery slope for the Defendants. First, this argument is not valid because Plaintiffs' counsel was asking Defendant Brinker very basic and direct questions about his representation and understanding of the proceedings in this action. Also, again this is not a situation where the "obviation rule" was appropriate, and it was not used. Mr. Burke did not object on the basis of form or some other defect in the question, but on the fact that Defendant Brinker had been asked a question "that he obviously is unsure of." (Brinker dep. p. 52). Such an objection shows what desperate measures KMK had to go to try and continue to hide the fact that Defendant Brinker had not been properly informed of his representation in this case and, more importantly, that he could not have provided his informed consent necessary for KMK to continue to represent him in a limited capacity in this case. However, even if Defendants are correct and Plaintiffs' counsel can so easily manipulate Defendant Brinker, this presents perhaps an even bigger problem for KMK. If Plaintiffs' counsel was so easily able to manipulate Defendant Brinker, what is to convince this Court that KMK and/or BGL also do not regularly manipulate Defendant Brinker. This is especially the case in relation to obtaining his consent on issues of representation or on the matter of the many changes to his errata sheet which, without a plausible explanation, changed the substance of his testimony.

In sum, KMK did everything in its power throughout the Provident Director Depositions, as well as other depositions, to ensure that it interrupted the flow of information in the deposition and that it directed the responses of the Provident Directors when it thought it necessary to defend the case. Although KMK tries to use the

---

question that Magistrate Judge Hogan recently made the observation that "I think he was having trouble making the connection between the question and the answer." (Transcript of 30 June 2004 Proceedings at 34). This may be the understatement of the case.

"obviation rule" to cover up all of its improper conduct, not even the eloquent double talk of KMK can change the record. As a result, a review of the transcripts reveals that KMK was not trying to make objections which would have been waived if not made, but rather improperly interrupt the flow of information in the Director Defendant depositions, and provide signals to these directors as to how to answer through their speaking objections and other instructive objections.

### B. KMK Improperly Instructed the Director Defendants Not to Answer Questions.

Contrary to Defendants' arguments, Mr. Burke improperly instructed Defendant Hoverson not to answer on three different occasions. First, Mr. Burke raised protection of the privacy of a non-party as the reason to instruct the deponent not to answer a question. This is an improper basis for instructing a deponent not to answer a question, and this is not changed by the fact that Plaintiffs' counsel failed to offer a reason as to the relevancy of such question. Plaintiff's counsel is not required to answer such a question during a deposition, and KMK knows this.

Second, "the document speaks for itself" is not a proper reason not to answer the question. Even if the instruction that the "document speaks for itself" is not inherently improper, as Plaintiffs claim that it is, it is in this situation for it was used as the basis for instructing Defendant Hoverson not to answer the question. Mr. Burke may not have spoken the words "do not answer the question," but his directives to his client implied that he was doing so. There was no reason to state "next question" if he wanted Defendant Hoverson to answer this particular question. Rather, he just would have stated something to the affect of "objection, document speaks for itself, you may answer" or "objection, document speaks for itself, go ahead," as he had done on other occasions.

Additionally, in the Defendants' attempt to defend this instruction, they again take the deposition excerpt out of context. Defendants argue that Plaintiffs' counsel wasted several hours by asking the deponents to just confirm what the documents stated. However, given the less than stellar memories of the Provident Director Defendants, Plaintiff's counsel had no choice but to refresh their memories as to the documents which they often either created and/or signed. Plaintiffs' counsel was not just asking the Provident Director Defendants to recite the contents of the documents, but had to go through this exercise so that he could later ask substantive questions about these documents.

Finally, it was an improper objection to instruct Defendant Hoverson not to answer a question which asked him to state what he would have wanted to know if he had been an OHSL shareholder at the time of the merger. In usual fashion, Mr. Burke objected on the basis of "speculation" and then Mr. Hoverson followed suit and stated that he could not answer on the basis of speculation. However, despite the Provident and OHSL Defendants' arguments, this is not a question which Defendant was unable to answer, but rather one he did not want to answer. As CEO of Provident, and a shareholder in a company which recently merged with National City, Defendant Hoverson was certainly able to verbalize what types of things he would want to know if he was a shareholder of any company during a potential merger. This question does not require firsthand knowledge, and the answer would not have much variation regardless of what two companies were involved in the proposed merger. Other Provident Directors answered the question. Defendant Hoverson's refusal to answer was completely

unreasonable and just another example of how KMK attempt to and did obstruct the deposition process.

### C. **Defense Counsel made Improper Objections Related to the Review of Documents.**

Defendants fail to counter Plaintiffs' argument that objections related to the review of documents are improper. Defendants argue that the *Collins* case is not from this jurisdiction, but they fail to cite to a case which affirmatively states that such objections are proper in this jurisdiction. Instead, Defendants cleverly attempt to intermingle legal terms in an effort to defend their improper objections related to document review. Objections on the basis that a question seeks a "legal conclusion" are not the same as objections which involve the review of documents. Further, although Defendants state that at least one Ohio court has affirmed the objection that the "document speaks for itself," this is not what it seems either. The court of appeals in *State v. Spangler*, (1992), 75 Ohio App.3d 530, 532 did not discuss this issue, but merely included a portion of a transcript from the trial court in which this objection was made and affirmed by the trial court. This objection was not specifically discussed in the decision of the court of appeals. Thus, it is yet another manipulation of the facts to state that this court of appeals affirmed the trial court's decision to affirm this objection.

### D. **Defense Counsel Improperly Coached the Provident Director Defendants.**

Defendants make a half-hearted attempt to object to this argument. In the interest of brevity, Plaintiffs will again direct this Court to not only the numerous examples cited in Plaintiffs' Motion and cited above. An entire review of the deposition transcripts at issue in this case is not necessary. If this Court were to randomly open any transcript, and turn to any page, it is likely that this Court will find a similar example of this coaching

itself. However, it is really not the individual examples that best illustrate this point, but rather the repetitive nature of these objections and parroted responses on the part of the deponents. In fact, Defendants are at such a loss to explain this pattern of behavior that they tried to minimize the knowledge and education of Defendant Hoverson in an effort to excuse his refusal to answer questions on the issue of material misstatements. Defendants incredibly argue that the CEO of Provident bank should not be expected to know whether or not its very own financial statements were materially misstated. This is the case despite the fact that Provident itself has already confirmed that its restatements were materially misstated through its filings. As stated above, a restatement by definition means that the financial statements were materially misstated. As a result, if Defendant Hoverson truly did not know that Provident's financial statements were materially misstated, then he had no business being the CEO of any company, let alone a billion dollar company like Provident.

### E. Defense Counsel Intentionally Wasted the Plaintiffs' Limited Time During the Provident Director Defendants' Depositions.

Defendants also offer a rather pathetic explanation as to their improper and disruptive behavior during these depositions. Defendants do not even acknowledge the hundreds of deposition cites which Plaintiffs have provided which illustrate the obstructive behavior of defense counsel. Rather, true to form, Defendants try to deflect attention away from themselves and onto Plaintiff's counsel. However, the facts of this case do not support such an argument.

The defense of the Director Defendants' depositions stand in stark contrast to the defense of the depositions taken by the Provident and OHSL Defendants in this case. Because the OHSL and Provident Defendants have no defenses to the allegations of the

Consolidated Amended Complaint, they have only taken two depositions in the almost four years that the case has been pending. Plaintiffs mention this fact not to highlight the complete lack of a defense on the merits, but to compare and contrast the deposition defenses between KMK and the Mesh firm. At no time did Plaintiffs' counsel gratuitously or improperly insert himself into the process, attempt to obstruct the proceedings, or use an elaborate code in an attempt to effectively instruct the witness not to answer questions without using those words as KMK has repeatedly done in this case. Although it was difficult for Plaintiffs' counsel to not interject given at times the poor level or organization and level of questioning, Plaintiffs' counsel properly chose to comply with the letter and the spirit of all applicable rules. (*See*, Meier deposition, attached as Exhibit C).

Thus, since the Provident and OHSL Defendants have been unable to cite to any improper behavior on the part of Plaintiffs' counsel or the Plaintiffs in this case, and since the transcripts of record show that it is in reality defense counsel which has obstructed the deposition process, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion and reject the OHSL and Provident Defendants' baseless request for sanctions in this case.

## III.    CONCLUSION

As indicated above and in the opening motion, the conduct complained of is extreme, even when read in the cold record. The degree of coordination between the KMK objection, interruption or speech by defense counsel, and the non-answer of the witness is stunning. Plaintiffs have painstakingly taken the time to direct the Court's attention to hundreds of specific exchanges, all of which are objectionable and any one of

which is representative of the KMK attorneys' attempts to thwart all meaningful discovery. As a result, Plaintiffs are left with no recourse but to respectfully request the Court's intervention to level the playing field.

On the other hand, Defendants request for sanctions in this case is an empty attempt to try and deflect attention away from their own improper conduct. Defendants attempt to use some type of reverse psychology and argue that it is the Plaintiffs who do not want to seriously litigate this case rather than the Defendants. However, denial has never been helpful to any affliction or disorder. KMK would be well served in this case, and for future cases, to take the time to re-examine and change their own conduct, rather than needlessly attack the Plaintiffs, so that they will not have to respond to this type of motion again.

Thus, for the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Hold Keating, Muething & Klekamp, LLP in Contempt for Discovery Violations Under the Federal Rules of Civil Procedure and Request for Sanctions. Plaintiffs further request from this Court a written order prohibiting KMK from engaging in such alleged conduct in future depositions in this action.

Dated: 27 July 2004                          Respectfully Submitted,


Gene Mesh (OH Bar # 0002076)
Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (fax)

*Attorneys for Plaintiffs and the*
*Putative Class*

20

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Reply Brief in Further Support of Motion to Hold in Contempt for Violating This Court's May 10, 2004 Order Regarding Improper Objections and Request for Sanctions was served this 27th day of July, 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249

James H. Greer, Esq.
BIESER, GREER AND LANDIS, LLP
400 National City Center, 6 North Main Street
Dayton, OH 45402-1908

_____
Stephanie A. Hite