

912 F.2d 466 (Table)
912 F.2d 466 (Table), 1990 WL 124208 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 912 F.2d 466, 1990 WL 124208 (6th Cir.(Ohio)))**

Page 1

**H**
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA6 Rule 28 and FI CTA6 IOP 206 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

OWENS-CORNING FIBERGLAS CORP.,
Plaintiff-Appellee,
v.
KNAUF FIBER GLASS GmbH,
Defendant-Appellant,
Max G. HERSCHLER, Defendant.

**No. 89-3280.**

Aug. 27, 1990.

On Appeal from the United States District Court for the Southern District of Ohio; No. 86-01235. Holschuh, C.J.

S.D.Ohio

AFFIRMED.

Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and ENSLEN, District Judge. [FN*]

GUY, Circuit Judge.

**1 Knauf Fiber Glass GmbH ("Knauf") appeals from an order granting Owens-Corning Fiberglas

Corporation ("OCF") limited relief from a protective order. We review such orders under an abuse of discretion standard. *Krause v. Rhodes,* 671 F.2d 212, 218-19 (6th Cir.), *cert. denied,* 459 U.S. 823 (1982). Finding that the district judge properly exercised his discretion, we affirm.

I.

Defendant, Max G. Herschler, after working in a sensitive position with OCF for a number of years, left to become an employee of Knauf. Knauf is a competitor of OCF in the glass fiber wool insulation products market. Fearful that Herschler would divulge trade secrets, OCF instituted this action. Shortly after suit was started and to facilitate discovery, the parties stipulated to a protective order to guard against the disclosure of trade secrets or other confidential information. Among other things, the protective order provided that:

1. It is anticipated that some information supplied in the course of discovery in this action may be confidential information of the type recognized by Federal Rules of Civil Procedure. Either party or any nonparty that produces information which is reasonably believed by it to be the type so recognized may, at the time of production, designate such information in writing as "Confidential" or "Attorneys Eyes Only" and the information so designated shall thereafter be subject to the provisions of this Stipulation and Order....

* * *

4. Parties or persons supplying information during discovery reserve the right to designate as "Attorneys Eyes Only" any materials, documents, or other information which, because of their particular significance to the party or person producing them will be subject to particularly strict constraints to insure their confidentiality. Any such documents, materials, or other information designated "Attorneys Eyes Only" shall be maintained under strict confidence by counsel for the parties herein

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

912 F.2d 466 (Table)
912 F.2d 466 (Table), 1990 WL 124208 (6th Cir.(Ohio))
**Unpublished Disposition**
(Cite as: 912 F.2d 466, 1990 WL 124208 (6th Cir.(Ohio)))

and shall be disclosed only to the following named attorneys and their support staff as described below, except upon the prior written consent of the party or persons producing the information or subsequent order of Court. Each aforesaid party or person reserves the right to seek further protective orders or relief from any protective order by application to this Court in connection with any documents and the information contained therein....

During the course of discovery, counsel for OCF took the deposition of Peter Dunkailo, a Knauf employee. At the request of Knauf, information received from Dunkailo was designated "Attorneys Eyes Only." In the course of questioning Dunkailo, OCF counsel developed the fact that among the Knauf production lines was line 605, which used spinners oriented at an angle to the horizontal for projecting veils of attenuated fibers onto a moving collecting conveyor with air jets below the spinners to distribute the fibers lengthwise and transversely of the moving conveyor. This disclosure caught the attention of OCF counsel, since OCF is the owner of patent 3,865,566 ("566 patent"), which claims proprietary ownership of a method using a spinner positioned at an angle to the horizontal for producing and collecting fiberglass fiber. In the opinion of counsel for OCF, the Knauf process infringed the 566 patent. Due to the protective order, counsel could not make these facts known to OCF management.

**2 Two months after this litigation was instituted and after some discovery was taken, the parties reached a settlement, and a stipulated judgment was entered by the court. Although no trade secrets were found to have been disclosed by Herschler, the judgment did specifically state that Herschler possessed considerable knowledge of valuable OCF trade secrets which could be of value to Knauf, and that Herschler was forbidden to disclose such information. To ensure that there were no future disclosures, the judgment also provided that:

It is the declaration of this Court, binding upon the parties OCF and Herschler only, that Herschler shall be available on a mutually agreeable date and location in Indianapolis, Indiana, on an annual basis for a period of three years commencing with the anniversary date of this Judgment Entry in 1987,

1988, and 1989 to be deposed by OCF for the limited purpose of determining what, if any, disclosure and/or use, as the case may be, of matters contained in Exhibit A Herschler may have made in contravention of Exhibit A.

Some six to seven months subsequent to the case being settled, OCF amicably settled an infringement matter with Knauf involving OCF patent 3,582,421. In the course of resolving this matter, OCF requested that Knauf also investigate the infringement of the 566 patent and give OCF counsel permission to divulge to OCF management the facts which had been developed in the Dunkailo deposition. When Knauf refused, OCF filed a motion for limited relief from the earlier protective order.

The district court referred the matter to a magistrate who recommended that the relief be granted. Knauf filed objections to the magistrate's report and recommendation. Although the district judge found some of the objections to be well taken, he nonetheless concluded, as did the magistrate, that relief was appropriate. Knauf applied for a stay in the district court and in this court, both of which applications were denied. After the initial order had been entered granting limited relief from the protective order, but prior to any request for a stay, counsel for OCF divulged the 566 patent information to OCF management and an infringement suit against Knauf quickly followed.

II.

Although this case presents a fascinating, behind-the-scenes glimpse into the world of complex, high tech, corporate technology, the legal issue presented is a simple one. Each of the parties makes a number of arguments on appeal, but the only one we need address is whether the district judge abused his discretion when he granted limited relief from the protective order. In order to answer that question, we must examine the rationale underlying the district court's conclusion. Under the terms of the stipulated protective order, the district court was to resolve any disputes that might arise as to what was properly covered by the order. Information developed--even though damaging, embarrassing, or prejudicial to one of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

912 F.2d 466 (Table)
912 F.2d 466 (Table), 1990 WL 124208 (6th Cir.(Ohio))
**Unpublished Disposition**
**(Cite as: 912 F.2d 466, 1990 WL 124208 (6th Cir.(Ohio)))**

Page 3

parties--was not protected unless it was a trade secret or something akin thereto. The court concluded that the information relative to Knauf using spinners oriented at an angle to the horizontal could not be a trade secret of Knauf since this process was described and arguably covered by the OCF 566 patent. The court reasoned that patent information is, by its nature, public information. Although it was the revelation of information not previously known to OCF that this process was being used on Knauf production line 605, this "secret" was not a trade secret. Furthermore, to the degree that the 566 patent infringement claim is but an allegation denied by Knauf at this juncture, any further probing on the part of OCF can be regulated by appropriate protective orders in the 566 patent infringement suit.

**3 It is certainly possible that parties could enter into a stipulated protective order that would, at least initially, embargo all information developed, regardless of its nature. That was not done here. Even were the parties to so stipulate, the court would retain the ultimate control over the construction and outer limits of the order.

### III.

Knauf also argues that it was denied due process when it was not given an evidentiary hearing on the motion for relief from the protective order. We find no merit to this argument for two reasons. First, Knauf does not indicate what further relevant information an evidentiary hearing would have developed. Second, both the magistrate and the district judge, in his *de novo* review, gave this matter very careful consideration. They had all that they needed before them to make a proper determination.

The final argument pressed by Knauf is that OCF should be barred by laches from seeking relief from a protective order one year after the underlying litigation was settled by the entry of a stipulated judgment. There are several problems with this argument. To begin with, one year is much shorter than the time span usually discussed when laches are implicated. Additionally, counsel for OCF have offered a reasonable explanation for the delay. Furthermore, although a stipulated judgment was

entered, the original case is still ongoing due to the judgment providing for the taking of depositions of Dunkailo annually for a period of three years.

What appears to be the real burr under Knauf's saddle is its suggestion that if it knew OCF was going to start an infringement suit against it, it might not have entered into a stipulated judgment in this matter. Whether this is true or not has little bearing on the protective order issue. It also appears that, apart from any subsequent infringement suit, Knauf had as much to gain by an amicable resolution of this litigation as did OCF.

AFFIRMED.

> FN* The Honorable Richard A. Enslen, United States District Court for the Western District of Michigan, sitting by designation.

912 F.2d 466 (Table), 1990 WL 124208 (6th Cir.(Ohio)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw

**1994 WL 876373**
1994 WL 876373 (S.D.Ohio), 1995-2 Trade Cases P 71,248
**(Cite as: 1994 WL 876373 (S.D.Ohio))**

Page 1

**H**

United States District Court, S.D. Ohio, Western Division.

UNITED STATES
v.
LOUIS TRAUTH DAIRY, INC., and David E. Trauth.

**No. CR-1-94-52.**

Dec. 7, 1994.

ORDER ON PENDING MOTIONS

SPIEGEL, District Judge.

**\*1** This matter is before the Court on several matters:
I. the Defendant's Motion in Limine for a Pretrial Determination on the Admissibility of Co-conspirator Statements (39), to which the Government has responded (doc. 47);
II. the Motion of H. Meyer Dairy Company to Intervene, For a Protective Order, and to Amend the Courts' Discovery Order (doc. 42), the Defendants' Response (doc. 45), the Response of the United States to H. Meyer Dairy Company's Motion (doc. 48), the Defendants' Reply to the United States' Response (doc. 49), and H. Meyer Dairy Company's Reply (doc. 50); and
III. the Defendants' Notice of Filing of Proposed Order (doc. 46) to which the United States has responded (doc. 51).

**I. MOTION IN LIMINE FOR PRETRIAL DETERMINATION OF ADMISSIBILITY OF CO-CONSPIRATOR STATEMENTS**

The Defendants have moved that the Court require the Government to submit a written pretrial proffer of evidence establishing a conspiracy. A finding that a conspiracy existed is a necessary foundation for the admission of evidence under Federal Evidentiary Rule 801(d)(2)(E), which exempts the statements of co-conspirators from exclusion as hearsay. As the Defendants assert, the Sixth Circuit sanctions a wide range of procedural options as to the order of proof which trial courts may employ in making the requisite foundational findings concerning admissibility. *United States v. Vinson,* 606 F.2d 149, 152 (6th Cir.1979) (asserting the "considerable discretion" of the district court and refusing to "set forth hard and fast procedures").

The Defendants urge us to resolve this matter on written briefs prior to trial. This Court has the custom of requiring the Government to set forth its allegations of conspiracy in opening statements, and then to allow the admissibility of the hearsay statements subject to the later proof of the existence of the conspiracy. This procedure, which has proved satisfactory to this Court, is specifically approved by the Sixth Circuit:
The judge may also, ... admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence.
If this practice is followed, the court should stress to counsel that the statements are admitted subject to defendant's continuing objection and that the prosecution will be required to show by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the statements are hearsay was a participant and that the statement was made in the course and in furtherance thereof. At the conclusion of the government's case-in-chief, the court should rule on the defendant's hearsay objection. If the court finds that the government has met the burden of proof ... it should overrule the objection and let all the evidence, hearsay included, go to the jury.... If, on the other hand, the government has failed to carry its burden, it should, on defendant's motion, declare a mistrial unless convinced that a cautionary jury instruction would shield the defendant from prejudice.

**\*2** *United States v. Vinson,* 606 F.2d 149 (1979). Having found this procedure to be satisfactory in the past, we will employ it in this case.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1994 WL 876373
1994 WL 876373 (S.D.Ohio), 1995-2 Trade Cases P 71,248
**(Cite as: 1994 WL 876373 (S.D.Ohio))**

## II. DISCOVERY UNDER RULE 16(a)(1)(C)

In this criminal action the Defendants, Louis Trauth Dairy, Inc. and David E. Trauth, (collectively "Trauth Dairy") have been accused of conspiracy to commit federal antitrust violations. The movant, H. Meyer Dairy Company ("Meyer Dairy") has previously entered into a consent decree and paid four million dollars in damages in a civil action stemming from the same alleged conspiracy. Meyer Dairy is also an unindicted alleged co-conspirator in this criminal action. In response to grand jury subpoenas, Meyer turned over the financial records of the company. After Trauth's indictment, Trauth moved this Court for access to these records under Federal Rule of Criminal Procedure 16. The United States opposed the disclosure of certain records belonging to Meyer Dairy on the basis that they contained sensitive confidential business records, the disclosure of which to a competitor would be harmful to Meyer's business. This Court granted the Defendants' motion and ordered the Government to produce the documents. At the time we reasoned:

In addition, the government has resisted the discovery of certain information in its possession consisting of records of the H. Meyer Dairy Company and The Coors Brothers Company.
The government states that these records are "considered confidential, such as personnel records and corporate income tax records." Response of the United States, at 3, n. 2, Document 21. The Defendants argue that this information is crucial to their argument that their conduct resulted from economic factors rather than illicit price fixing. *See Continental Baking Co. v. United States* [1960 TRADE CASES ¶ 69,772], 281 F.2d 137, 143-44 (6th Cir.1960). Also the Defendants argue that such information is important in establishing motive and bias on the part of the officers of Meyer's and Coors Brothers' Dairies, who are alleged coconspirators as well as government witnesses. The Defendants have proposed a protective order which would allow them access to these documents, while protecting the confidentiality of Meyer's and Coors Brothers' Dairies. In light of the practice in other jurisdictions in such matters, we conclude that the parties should execute the protective order attached to the Defendants' Reply (doc. 30). *See United States v. RMI Co.*

[1979-1 TRADE CASES ¶ 62,618], 599 F.2d 1183, 1190 (3d Cir.1979). Upon agreement by the government and the Defendants to the protective order, the Court will enter it and the government is ORDERED to provide the information requested in the Defendants' Reply.

Order of September 12, 1994 at 2-3, Document 37. Having considered the renewed arguments in this matter, in particular those of the H. Meyer Dairy Company, we are satisfied that our original ruling was correct, and therefore, we deny Meyer Dairy's Motion For a Protective Order.

**\*3** Initially, we must consider Meyer's motion to intervene. In the *RMI* case upon which Meyer Dairy, Trauth Dairy and the Government rely, the Third Circuit Court of Appeals held that:

[I]t is settled law that persons affected by the disclosure of allegedly privileged materials may intervene in pending criminal proceedings and seek protective orders....

*United States v. RMI Co.,* 599 F.2d 1183, 1186 (3rd Cir.1979) (citing *United States v. Nixon,* 418 U.S. 683, 688, 690-92 (1973) (in which the then-President intervened in the prosecution of Attorney General Mitchell to oppose the release of the Watergate tapes). The *RMI* case is in most respects identical to the case now before us. Therefore, we grant Meyer's motion to intervene for the limited purpose of opposing the disclosure of its confidential documents.

The motion now before us highlights the tension between two rules of criminal procedure. Rule 6 sets forth the general duty of secrecy in regard to grand jury proceedings. Fed.R.Crim.P. 6(e)(2). Rule 16 provides for the disclosure of all documents in the Government's possession which "are material to the preparation of the defendant's defense or are intended for use by the Government as evidence in chief at the trial...." Fed.R.Crim.P. 16(a)(1)(C). In the context of this case the tension arises from the weighing of Meyer's rights to the confidentiality of sensitive business documents and the Defendants' right to prepare to defend against criminal charges. Meyer Dairy argues that to allow its competitor, Trauth Dairy, to see the sensitive information contained in the discovery requests at issue here would severely compromise Meyer Dairy's

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1994 WL 876373
1994 WL 876373 (S.D.Ohio), 1995-2 Trade Cases P 71,248
**(Cite as: 1994 WL 876373 (S.D.Ohio))**

competitive ability.

All the parties agree that in the *RMI* case the Third Circuit Court of Appeals sets out the standard by which this question should be weighed. *RMI*, which is also a price fixing case, reiterates the language of Rule 16(a)(1)(C), in requiring that the fundamental question is a showing of the "materiality" of the documents.

> Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case.... There must be indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor.

*RMI*, 599 F.2d at 1188 (quoting *United States v. Ross*, 511 F.2d 757, 762- 63 (5th Cir.) *cert. denied*, 423 U.S. 836 (1975)).

We continue to believe that the Defendants have met this burden. The accusations against the Defendants are as broad as they are serious. The indictment alleges, in part, that the Defendants conspired from early 1977 until June 1989 to allocate contracts for the supply of dairy products to public school districts in Northern Kentucky and Southwestern Ohio, to submit rigged bids on these contracts and to allocate among themselves wholesale, institutional and other customers in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. One alleged co-conspirator was Meyer Dairy. According to the Defendants' understanding of the Prosecution's bill of particulars, the alleged conspiracy extends to "every piece of business involving the companies from early 1977 into June 1989." Defendants' Reply at 4, Document 49. This understanding is not disputed by the Prosecution or Meyer Dairy.

**\*4** Apparently, the Prosecution intends to rely upon the testimony of officials from Meyer Dairy to prove its case of price fixing. The Defendants point out that these officials previously testified repeatedly under oath that they never conspired to rig bids or to allocate jobs with the Defendants at any time alleged in the indictment. Defendants' Reply at 6, Document 49. The Defendants have from the beginning asserted that for their defense they would rely on the argument that their conduct

in fact was not based on illegal price fixing, but rather, resulted from economic factors. *See Continental Baking Co. v. United States* [1960 TRADE CASES ¶ 69,772], 281 F.2d 137, 143-44 (6th Cir.1960). Therefore, they must undertake a detailed analysis of the dairy business, in particular of the businesses of the alleged co-conspirators: Meyer, Coors and Trauth. Returning to this argument the Defendants specifically contend:

> Assuming the truth of [the Prosecution's] allegations, the business and financial records of dairies participating in the conspiratorial activity should reflect no customer turnover, constant purchases and sales by volume and dollar, a small inactive sales staff servicing an unchanging customer base and no solicitation of allocated customers. Conversely, a fluid customer base, fluctuating purchase and sales volumes, a sales staff actively servicing a wide variety of customers necessarily undercut the indictment's allegations. Similarly, a showing that the volume margin between Meyer Dairy and defendants declined during and after the alleged conspiracy period--thus showing competition between them--undercuts the indictment's allegations and also creates a substantial motive to fabricate against Trauth. In this manner and other ways, Meyer Dairy business and financial information during and after the alleged conspiracy again is material to defendants' defense. Succinctly, the information requested by defendants--financial statements, tax returns, personnel records, company rolodexes and other business and financial information--constitutes material matters within the purview of Fed.R.Crim.P. 16.

Defendants' Reply at 5-6, Document 49. We agree that the documents in question in this motion are material, if the Defendants are to be able to present the economic defense which they have consistently been describing to the Court.

In addition, the Defendants argue that we can assume the materiality of the documents contested here because of the relative importance which has been placed upon them both in this and related litigation. Certainly, the Prosecution felt that these documents were material enough to subpoena them before the grand jury, and in turn the grand jury returned an indictment based on these documents. The documents remain in the Government's

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1994 WL 876373                                                                                    Page 4
1994 WL 876373 (S.D.Ohio), 1995-2 Trade Cases P 71,248
(Cite as: 1994 WL 876373 (S.D.Ohio))

possession, and available for their case. Furthermore, the plaintiffs in both the Ohio and Kentucky civil cases have obtained production of these documents in furtherance of their allegations. This attention by litigants, together with the importance of these documents in light of the Defendants' intention to present a defense based on a broad economic argument are sufficient to establish materiality as required under Rule 16(a)(1)(C) and the *RMI* case.

*5 The Government and Meyer Dairy suggest that we should impose a protective order along the lines of the one currently in place in the related civil case. Essentially, that protective order allows for the inspection of the disputed documents by counsel for the Defendants, since the information has little business value to them, but not to the corporate or individual Defendants, who arguably could benefit from these private business records. However, we agree with the Defendants that there are overriding constitutional concerns to be considered. The Sixth Amendment states:

> In all criminal prosecutions, *the accused* shall enjoy the right to ... be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel in his defense.

U.S. Const. amend. VI (emphasis added). The Defendants' assertion of their personal need to examine the evidence against them is particularly true in a case which involves complicated economic information, germane to a particular industry. What the defense in this case needs are experts on the dairy industry in Southeastern Ohio from 1977 through 1989. We imagine that Mr. Trauth and the executives at Trauth Dairy are eminently qualified in that area, much more so than their attorneys could ever be. Having established that the records in question are material to the defense and must be supplied, it also follows that the Defendants have the right to review those documents in cooperation with their attorneys, in order to prepare their best defense. In addition, we note that in our original order granting discovery of these documents, we ordered the Defendants to sign a protective order concerning the use of the information contained. That order forbids the Defendants to use any of the information gained through this discovery for economic benefit (¶ f.), forbids the copying of the

documents (¶ e.), and provides other safeguards. We recognize the limitations of that order and we sympathize with the concerns of the movant, Meyer Dairy, in having its private records scrutinized by its competitor. However, weighing the risk this presents to Meyer Dairy against the risk of criminal penalties including incarceration faced by the Defendants, the constitution requires us to favor disclosure.

### III. RULE 17(c) SUBPOENAS

The Defendants have proposed that the Court adopt an order affirming their ability to issue subpoenas *duces tecum* under Rule 17(c) for pre-trial production of documents, without notice to the Government of the objects of the subpoenas. The Government opposes such an order, insisting that they should be provided with notice of any Rule 17(c) subpoenas.

The Defendants argue that the rule on its face provides for the issuance of subpoenas in blank without notice to anyone but the person to whom the subpoena is directed.

> A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. *The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served.*

*6 Fed.R.Crim.Pro. 17(a) (emphasis added). The ability to have subpoenas issued in blank provides a defendant the ability to conceal the identity of his or her witnesses from the prosecution. The Defendants argue that in issuing a subpoena *duces tecum*, they must have the same protection to protect their witness list. In fact, the Defendants have indicated to the Government that they do not oppose giving notice to the Government concerning Rule 17(c) subpoenas which are issued to persons they do not plan to call at trial. Letter of Jack Donson to Anne Porter at 2, attached to Defendants' Notice, Document 46.

The Government does not dispute the Defendants' right to issue these document subpoenas, but they

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1994 WL 876373                                                                                         Page 5
1994 WL 876373 (S.D.Ohio), 1995-2 Trade Cases P 71,248
**(Cite as: 1994 WL 876373 (S.D.Ohio))**

contend that unless the Government has notice of these subpoenas, the Defendants will be permitted to conduct unwarranted "fishing expeditions." The Government asserts that the party seeking production of documents has a duty to show good cause for the production. We would agree with the Government that when a subpoena under Rule 17(c) is contested by a proper motion to quash, the standard is a showing of good cause. *See United States v. Iozia*, 13 F.R.D. 336, 338 (S.D.N.Y.1952). However, implicit in the Government's argument is the assumption that the Government has the right to challenge all the Defendants' *third party* subpoenas. In reviewing the authority presented by the Government, we cannot agree that those cases stand for the Government's right to challenge the Defendants' subpoenas or of the Government to be informed of the subjects of the Defendants' subpoenas.

Many of the cases relied upon by the Government stand for the proposition that when a defendant seeks to subpoena material from the Government itself, and the Government opposes that subpoena, the defendant must make a good cause showing of the need for the material sought. *See Bowman Dairy Co. v. United States* [1950-1951 TRADE CASES ¶ 62,818], 341 U.S. 214, 218-19 (1950) (defendant seeks documents in possession of the prosecution); *United States v. Iozia*, 13 F.R.D. 336, 338 (S.D.N.Y.1952) (same); *see also Jenks v. United States Secret Service*, 517 F.Supp. 307, 310 (S.D.Ohio 1981) (where Judge Rice prevents a "fishing expedition" in five Government agencies).

Another case cited by the Government in support of their right to notification of pre-trial Rule 17(c) subpoenas is *United States v. Cuthbertson*, 630 F.3d 139, 145 (2rd Cir.1980). In *Cuthbertson*, CBS and the television program 60 Minutes, possessed documents sought by criminal defendants. CBS, which was not a party to the criminal case, appealed, on first amendment grounds, when cited for contempt for not producing the documents subpoenaed by the defendants under Rule 17(c). *Id.* at 142. The court applied the good cause test in weighing this third party's right to resist a subpoena. *Id.* at 145. This is the procedure which the Defendants are requesting this Court to follow. They argue that each third party can protect itself from subpoenas which are "unreasonable,"

"oppressive" or otherwise defective, by bringing a motion to quash or modify the subpoena, as permitted by Rule 17(c). The Government has not persuaded us why it too must be allowed to object to the Defendants' subpoenas. The Government bases its argument on the assertion that if unrestricted the Defendants will proceed to go on "fishing expeditions." We cannot see what prejudice such "fishing expeditions" would cause the Government. The potential harm is to the third parties being forced to produce the documents, and those third parties are best in a position to resist prejudice through a motion to quash or modify the subpoena. However, out of an abundance of caution, if a third party should resist the Defendants' Rule 17(c) subpoena, we will permit the Government to join the third party in briefing the motion to quash. This should not prejudice the Defendants, since the anonymity of their subpoenas will already be compromised at that point.

*7 Accordingly, we adopt the Defendants' proposed order concerning Rule 17(c) with the additions previously announced, as follows:
  (a) the Defendants may issue subpoenas pursuant to Rule 17(c) having return dates prior to trial;
  (b) in accordance with Rule 17(c) the person to whom the subpoena is directed may timely move to modify or quash the subpoena and the Government may offer a briefing in support;
  (c) in accordance with Rule 17(a), the clerk shall issue such subpoenas in blank so that the Defendants need not disclose to the Government the identity of the persons subpoenaed;
  (d) the Defendants will notify the Government of subpoenas issued to persons the Defendants do not intend to call at trial.

CONCLUSION

Accordingly, the Defendants' Motion in Limine for a Pretrial Determination on the Admissibility of Co-conspirator Statements (39) is DENIED. The Motion of H. Meyer Dairy Company to Intervene (42-1) for the purpose of opposing the Defendants subpoena is GRANTED and H. Meyer Dairy Company's Motion For a Protective Order and to Amend the Courts' Discovery Order (doc. 42-2,3) is DENIED. Finally, the Defendants' Proposed Order (doc. 46) is ADOPTED, as modified herein.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1994 WL 876373
1994 WL 876373 (S.D.Ohio), 1995-2 Trade Cases P 71,248
**(Cite as: 1994 WL 876373 (S.D.Ohio))**

SO ORDERED.

1994 WL 876373 (S.D.Ohio), 1995-2 Trade Cases
P 71,248

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works