**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

04 JUL 29 AM 11: 13

| | | |
|---|---|---|
| Walter W. Thiemann, | : | Case No. C-1-00-793 |
| on behalf of himself and of | | |
| all others similarly situated, | : | Judge Sandra S. Beckwith |
| | | |
| Plaintiff, | : | Magistrate Judge Hogan |
| | | |
| vs. | : | **PLAINTIFFS' MEMORANDUM** |
| | | **IN OPPOSITION TO OHSL AND** |
| | : | **PROVIDENT DEFENDANTS'** |
| | | **MOTION FOR LEAVE TO FILE** |
| OHSL Financial Corporation, et al. | : | **SUPPLEMENTAL** |
| | | **MEMORANDUM IN** |
| | : | **OPPOSITION TO PLAINTIFFS'** |
| | | **MOTION FOR CLASS** |
| | : | **CERTIFICATION (Doc. No. 347)** |
| Defendants. | | |
| | : | |

---

Plaintiffs respectfully submit this opposition brief in opposition to the OHSL and Provident Defendants' Motion for Leave to Submit Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification (hereinafter "Motion for Leave") (Doc. No. 347). Although the Provident and OHSL Defendants might be justified in filing this Motion for Leave by the OHSL and Provident Defendants to File Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification based upon the recent taking of Plaintiff Meier's deposition if this had been the only such filing, this is not the case. Rather, this is just another in a growing string of motions for leave to supplement the memorandum in opposition to Plaintiffs' motion for class certification. There was no valid or compelling basis for the OHSL and Provident Defendants to have filed these previous motions. As a result, it is clear that this is not just a filing to incorporate the new deposition testimony of Plaintiff Meier, but rather part of a strategic

i

plan on the part of the OHSL and Provident Defendants to repeatedly oppose Plaintiffs' Motion for Class Certification in this case and/or continue to retaliate and/or harass Plaintiffs for their filing of Plaintiffs' Motion to Disqualify KMK (Doc. Nos. 78, 314).

However, perhaps even more disturbing, is the fact that this Motion for Leave allows for the possibility of yet another supplemental pleading in opposition to class certification, and that the OHSL and Provident Defendants' reasoning for said supplemental pleading is known by said Defendants to be false. The only possible interpretation is that the OHSL and Provident Defendants are intentionally and knowingly attempting to mislead the Court[1].

Thus, the Motion for Leave by the OHSL and Provident Defendants to File Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification should be stricken not just because it is duplicative and scurrilous, but because it contains

---

[1] This is not the first time that counsel for the OHSL and Provident Defendants, albeit by different counsel, have made knowingly false statements to the Court. In their motion to dismiss, the OHSL and Provident Defendants recycled some arguments which had previously been made nearly verbatim, and rejected by this Court. When Plaintiffs quite understandably raised this issue with the Court in the form of a specifically authorized letter requesting emergency relief, counsel for the OHSL and Provident defendants responded with an unauthorized letter of February 11, 2004 which stated, in pertinent part, as follows:

> "Sixth Circuit caselaw interpreting the federal securities laws and the legal sufficiency of complaints alleging securities laws violations is much different now than it was in July, 2001. The applicable law clearly mandates dismissal of all of Plaintiffs' claims. Defendants have the right to argue for dismissal of all the allegations of the CAC based upon the current state of the law."

(2/11/04 Pinney Letter). This statement did not appear to be consistent with Plaintiffs' research and was not reflected in cases cited by the Defendants. When asked by Plaintiffs' counsel to clarify this seemingly false statement, Mr. Pinney offered no response, but did withdraw from the case shortly thereafter.

deliberately false statements that are part of a strategy to add yet another supplemental filing to this perhaps unprecedented string of filings opposing class certification.

Plaintiffs respectfully submit the following memorandum of law in opposition to the Motion for Leave by the OHSL and Provident Defendants to File Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. No. 347) and in support of their cross motion to strike.

Respectfully Submitted,

**GENE MESH & ASSOCIATES**

Dated:  29 July 2004

Gene Mesh (0002076)
Michael G. Brautigam
GENE MESH AND ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502

*Attorneys for Plaintiffs and*
*The Putative Class*

**MEMORANDUM IN OPPOSITION TO THE MOTION FOR LEAVE BY THE OHSL AND PROVIDENT DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

This Memorandum is respectfully submitted to the District Court in opposition to the Motion for Leave by the OHSL and Provident Defendants to File Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification (hereinafter "Motion for Leave"). This represents the second time since January of 2004 that the OHSL and Provident Defendants have attempted to file a supplemental memorandum in opposition to Plaintiff's second motion for class certification, and the eleventh time overall that the Defendants have filed memoranda in opposition to Plaintiffs' motions for certification in this case. (Doc. Nos. 35, 42, 65, 79, 173, 197, 199, 201, 244, 316, 347). While the OHSL and Provident Defendants are certainly entitled to an opportunity to oppose class certification, they are not entitled to repeated, multiple strikes at the same target, especially when these multiple filings are not based upon new law or compelling circumstances, but merely a strategic plan on the part of the OHSL and Provident Defendants. At the very least, the OHSL and Provident Defendants are not entitled to litter the record with a seemingly endless stream of amended filings as a result of OHSL and the Provident Defendants' errors which have ranged from incorrect citations to false statements. The OHSL and Provident Defendants have no right to make these filings or to abuse the judicial system, especially when they do not meet the requirements for filing a motion for leave. However, this is just one of three main reasons as to why this Motion for Leave should be denied. Plaintiffs will discuss each in turn.

## I.    Class Certification is Appropriate in This Case.

No case is more appropriate for class certification than this one. This issue has been fully briefed for this Court not once, but two times. As a result, Plaintiffs will attempt to keep their substantive arguments on this issue to a minimum. However, it should be noted that the issue of class certification is especially straightforward in this case because this case had more of a "class moment" than a "class period." All 900 of the OHSL shareholders received exactly the same information in the form of the materially false and misleading Proxy Materials/Registration Statement at the same time. Several of the Provident Director Defendants have now had no choice but to admit that Provident's financial statements were misstated from 1994 to 1999, and that the numbers in the Proxy Materials/Registration Statement would have been different if Provident had had that correct information at the time.[2]  There also can be no doubt that the correct information would have added to the total mix of information that would have been of interest to the OHSL shareholders in 1999 as they considered whether or not to vote to merge with Provident.  This is particularly true given that the Restatements tend to make Provident look more financially sound from 1994 to 1999, and have the opposite effect in later years.  Thus, this information could have very easily changed the result of the merger

---

[2]    Interestingly, the Provident Director Defendants have often failed to admit that Provident's financial statements were materially misstated from 1994 to 2002. Rather, they only go so far as to say that the financial statements were misstated, that there was a mistake, that they were wrong, or something to that effect. (Steger dep. pp. 34, 42; Carey dep. p. 67; Hoverson dep. p.15). This is at odds with, and directly contrary to Provident's own Board Minutes, which clearly state that Provident's financial statements were materially misstated. (*See,* Plaintiff's Deposition Exhibit Number 92, at Bates Number PFGI 12066, Attached as Exhibit A). Thus, although the Provident Director Defendants may have trouble admitting this fact, they are forced to do so by the Provident Board's own minutes, the inherent definition of a misstatement itself, and the Plaintiffs' expert reports.

since the correct information portrays Provident in a very false light, and since there was such a small number of votes separating those in favor and opposed to the merger with the incorrect information.[3]   As indicated throughout the pleadings but most specifically in the CAC (Doc. No. 234) and in the Motion for Class Certification and Reply Brief (Doc. Nos. 233 and 260), these materially false and misleading Proxy Materials/Registration Statement were designed to mislead the OHSL shareholders into approving the fraudulently induced OHSL-Provident merger.  Further, as discussed in greater detail below, Plaintiffs have more than ample counsel to represent them in this matter. Thus, since the class received exactly the same operative document, at the same time, the class is, of course, similarly situated, and should be certified.

**II.    The OHSL and Provident Defendants have Made a Conscious Decision to File Multiple Motions for Leave to File a Supplemental Memorandum in Opposition of Plaintiffs' Motion for Certification in Order to Gain an Advantage with this Court and/or to Harass the Plaintiffs.**

**A.    No New Law or Compelling Circumstance Has Precipitated the Multiple Filings by The OHSL and Provident Defendants**

The OHSL and Provident Defendants have filed two supplemental memoranda since they filed opposed Plaintiffs' Motion for Class Certification in January of 2004, and eleven motions, memoranda, or notices of filing, in all against Plaintiffs' two motions for class certification.  (Doc. Nos. 35, 42, 65, 79, 173, 197, 199, 201, 244, 316, and 347) Such filings are to be precipitated by a change in the law or compelling circumstance.

---

[3] However, even with these repeated and blatant misrepresentations, the merger was only approved by a slim majority (52.4%), and a change in vote from in favor of to against by a mere 23,000 shares out of the more than 2,500,000 shares outstanding would have caused the merger to be voted down.  The merger was induced through fraud and obviously would have failed had the true facts been known.  Further, it also would have obviously failed if held to the two-thirds vote now required for the recently completed Provident-National City Merger.

"The law of the case" counsels against reconsideration absent 'compelling circumstances,' including an intervening change of law, the availability of new evidence, or to correct a clear error or prevent manifest injustice." *Scottish Air. Int'; v. British Caledonian Group, PLC*, 152 F.R.D. 18, 25 (S.D.N.Y. 1993) (citing *Diduck v. Kaszycki & Son Contractors, Inc.,* 737 F. Supp. 792, 796 (S.D.N.Y. 1990); *United States v. Uccio,* 940 F.2d 753, 757 (2d. Cir. 1991). According to the doctrine of "law of the case," a decision regarding an issue of law made at one stage of a litigation becomes binding precedent, to be followed in subsequent stages of the same litigation absent cogent or compelling reasons. *DiLaura v. Power Auth. of N.Y.,* 892 F.2d 73, 76 (2d. Cir. 1992); *See Also, Uccio,* 940 F.2d at 758 quoting *Doe v. New York City Dep't of Social Servs.,* 709 F.2d 782, 789 (2d Cir.), cert. denied, 464 U.S. 864 (1983). The doctrine has its roots in the jurisprudential desire to maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit. *In re PCH Assocs.,* 949 F.2d 585, 592 (2d. Cir. 1991); *Childress v. Taylor,* 798 F.Supp. 981, 993-94 (S.D.N.Y. 1992). (noting the "desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs") (quoting *Dictograph Prods. Co. v. Sonotone Corp.*, 230 F.2d 131, 135 (2d. Cir. 1956). In the present case, only one of these eleven filings is arguably in response to new evidence.

The OHSL and Provident Defendants state that they have filed this Motion for Leave based upon the new evidence obtained in Plaintiff Meier's deposition. However, although a filing in response to the taking of Mr. Meier's deposition appears to be appropriate at first glance, it ceases to be when considered as part of the OHSL and Provident Defendants' overall scheme. In the OHSL and Provident Defendants' Motion for Leave, they state that they filed an opposition to Plaintiffs' Motion for Class

Certification in January of 2004 which was based solely on Mr. Thiemann's testimony, but which also respectfully requested that the Court withhold its decision until after class discovery closed on June 30, 2004 so that they could supplement the record once they took Mr. Meier's deposition. (Doc. No. 347, p. 3). If the OHSL and Provident Defendants knew that they were going to file another memorandum in opposition to Plaintiffs' Motion for Class Certification after Mr. Meier's deposition, there was no reason for Defendants to have filed the original memorandum in January, or the two subsequent motions for leave to file a memorandum in opposition in April and July of 2004 (Doc. Nos. 316, 347). The only reason for doing so must be that the OHSL and Provident Defendants were either attempting to obtain some type of unfair advantage with the Court or improperly harass the Plaintiffs or both. The same conclusion can only be reached as to the eight other memoranda, motions for leave to file supplemental memoranda, and/or notices of filing, which were filed by the Provident and OHSL Defendants in relation to Plaintiff's first motion for class certification. (Doc. Nos. 35, 42, 65, 79, 173, 197, 199, and 201).

Now, the OHSL and Provident Defendants have the gall to suggest that this may not be the last filing of a motion for leave on their part in relation to Plaintiffs' Motion for Class Certification. This is made all the more shocking because of their reason for citing this possibility. When the OHSL and Provident Defendants stated that they were submitting this supplemental brief in response to Mr. Meier's deposition, they also stated as follows:

> "The final transcript of Mr. Meier's deposition is not yet available. Defendants' citations to the depositions are an expedited version from the court reporter. Defendants have attached the cited pages as Exhibit A to this brief. When the final transcript is made available to the parties,

Defendants will file that transcript and supplement this brief, if
necessary."

(Motion, Doc. No. 347, p.3, n.1).    However, as the following argument and

correspondence will reveal, this is nothing more than a deliberate attempt on the part of

counsel for the OHSL and Provident Defendants to attempt to mislead the Court.  It is

simply false that the Meier transcript was not yet available at the time the OHSL and

Provident Defendants filed their Motion for Leave. (*See*, Correspondence, Collectively

Attached as Exhibit B).  When Mr. Brautigam pointed this error out to defense counsel

through an initial email to James Greer, Esq., Rachael Rowe, Esq. of KMK responded to

this e-mail and confirmed that this statement was not a mistake, but an intentional false

statement to the Court.  In particular, Rachael Rowe initially replied to Mr. Brautigam's

inquiry regarding their availability of Mr. Meier's transcript as follows:

> "Mike: Jamie Greer is out of town. In his absence, Jamie's office
> forwarded to our office your email about the Meier transcript. To the best
> of our knowledge, the copy of the transcript we received from the court
> reporter was a preliminary version. The transcript was not signed by Mr.
> Meier. Under Federal Rule 30(e), Mr. Meier has 30 days to review and
> sign the transcript. My understanding is that the transcript does not
> become official until he signs it, or the time for doing so expires. If Mr.
> Meier already has signed the transcript, please let me know and we will
> file it immediately."

(*See*, Exhibit B).  Then, after Mr. Brautigam had actually communicated with Mr. Greer,

Ms. Rowe sent a letter to Mr. Brautigam which further discusses this issue and further

shows a continual evolution of KMK's position on this matter. In particular, she stated as

follows:

> ". . . we believed that the transcript was preliminary in the sense that your
> client, Mr. Meier might actually want to read it and complete the errata
> sheet. We had and have no intention of filing additional supplemental
> material related to Mr. Meier's testimony, unless, of course, he were to

6

> change (through the errata sheet procedure or through an inconsistent
> affidavit) testimony on which we relied in the brief."

(*See*, July 21, 2004 Rowe Letter, Exhibit B). Interestingly, KMK never attempts to argue

in its correspondence with Mr. Brautigam that Mr. Meier's deposition was unavailable.

Rather, Ms. Rowe only tries to give these words, which are ordinarily not open to

interpretation, a different meaning.[4] Further, even if KMK's explanation was consistent

with its footnote in this Motion for Leave, it still is not acceptable. Deponents do not

regularly change their testimony after the deposition has been concluded. The only

incident the Plaintiffs can recall where this happened was Defendant Brinker. Although

his errata sheet clearly changed the substance of his testimony on some key issues in this

case, Plaintiffs do not consider his deposition to be the general rule, but rather the

exception. Further, Plaintiffs submit that this only occurred because KMK felt

empowered and protected by Magistrate Hogan's Order which precluded the Plaintiffs

from further taking Defendant Brinker's deposition in this case just before the errata

sheet was filed.

Further, by submitting only excerpts of the Meier transcript when the full version

was available, the OHSL and Provident Defendants are deliberately trying to give the

---

[4]  As the attached correspondence indicates, Plaintiffs' counsel immediately thought that
the statement regarding the unavailability of the Meier transcript was an error, and
notified defense counsel for the OHSL and Provident Defendants of this fact so that they
would have an opportunity to correct the false statement. In a response which was eerily
reminiscent of the defenses which the OHSL and Provident Defendants have raised in
relation to the materially false and misleading Proxy Materials/Registration Statement,
defense counsel responded by attempting to make hypertechnical distinctions as to what
"final" means. Although Plaintiffs believes that all persons of objectivity would reject
such an argument, and conclude that Defendants intentionally intended to make, and did
make, a false statement to the Court, Plaintiffs will obviously leave to this Court the
ultimate determination of the meaning of the word "final" in relation to a deposition
transcript.

Court a misleading impression of Mr. Meier's deposition, focusing exclusively on their out of context excerpts, while preventing the Court from viewing the transcript in its entirety. This is shameful conduct, especially since the OHSL and Provident Defendants blatantly and falsely stated to this Court that the transcript was not available at the time this Motion for Leave was filed.

Although these distinctions regarding Mr. Meier's deposition transcript may seem trivial, they certainly are not when considered in the context of the other alleged improper behavior committed by KMK in this case.[5] It also seems less trivial when it is considered that KMK refused to amend its Motion for Leave after it all but admitted that it was untrue that Plaintiff Meier's deposition was not yet available. This confirms that the OHSL and Provident Defendants are yet again attempting to turn one supplemental filing into two. The OHSL and Provident Defendants should not be rewarded for such unethical and improper tactics by being given multiple attempts to counter the Plaintiffs' Motion for Class Certification. Rather, these seriatim filings must cease, and the OHSL and Provident Defendants must be held accountable and forced to comply with federal law.

**B.    The OHSL and Provident Defendants are Partially to Blame for the Fact that They Did Not Complete the Deposition of Mr. Meier Earlier.**

The OHSL and Provident Defendants must take some of the responsibility for their present need to file this Motion for Leave. The OHSL and Provident Defendants allowed the clock to tick on the schedule set by Magistrate Judge Hogan with respect to class certification, and made no attempt to take the deposition of newly added Named Plaintiffs Gary and Lisa Meier. When the OHSL and Provident Defendants expressed no interest in taking these depositions so as the transcripts would be meaningful to the

---

[5]    This is set forth in Doc. Nos. 78, 314.

briefing on class issues, Plaintiffs themselves noticed the depositions so that they could bring forth relevant evidence related to the receipt of the materially false and misleading Proxy Materials/Registration Statement.   Incredibly, as this Court knows, all the Defendants, at the instigation of KMK, moved the Court to prevent the Plaintiffs from taking relevant evidence by obtaining a protective order from Magistrate Judge Hogan preventing these depositions from going forward until a later time. (Doc. No. 241).  As a result, Plaintiffs were inexplicably limited to affidavit evidence.

Based upon the foregoing, it must be concluded that this Motion for Leave was not filed just in response to the information gained from Mr. Meier's deposition.  If that was the case, the OHSL and Provident's Defendants would have taken Mr. Meier's deposition when it was first noticed and included said information within their original Memorandum in Opposition to Plaintiffs' Motion for Class Certification.   As a result, it can only be concluded that the OHSL and Provident Defendants passed on this opportunity since it would have either prevented their scheme for multiple filings in opposition to Plaintiffs' Motion for Class Certification or denied them another opportunity to harass and/or retaliate against the Plaintiffs and their counsel in this case for the filing of Plaintiffs' Motion to Completely Disqualify KMK or, in the Alternative, Hold KMK in Contempt for Violation of This Court's October 20, 2003 Order (Doc. No. 215) Requiring the Consent of KMK's Clients for KMK's Continued Representation and Motion for Sanctions.  Thus, even if this Court does not fault the OHSL and Provident Defendants for having failed to take Mr. Meier's deposition when it clearly would have been more expedient to do so, the OHSL and Provident Defendants must be penalized for

deciding to use the filings of these motions for leave to supplement the Memorandum in Opposition to Plaintiffs' Motion for Class Certification as a tool of harassment.

**C.   The Dominant Strategy of the OHSL and Provident Defendants in this Case is to Attack Plaintiffs**

As indicated in previous filings, the OHSL and Provident Defendants have no strategy in this case, either in opposing class certification or defending the case on the merits, other than attacking Plaintiffs and their counsel.  This latest Motion for Leave continues this string of urelenting seriatim attacks. This unprecedented multiple filings in opposition to Plaintiffs' Motion for Class Certification confirms that this can be nothing less than a strategic choices on the part of the OHSL and Provident Defendants and their counsel.

As a result, this Motion for Leave, like others before it, has eliminated any confidence that the Plaintiffs have in conducting their affairs.  Although parties are usually under the belief that they will only have to file one memorandum in opposition to any given motion absent exceptional or extenuating circumstances which would warrant a supplemental memorandum, this concept has been thrown out the window in relation to Plaintiffs' motions for class certification.  Since the OHSL and Provident Defendants have been permitted to continue this process, despite the fact that they lack any new law or evidence to do so, the Plaintiffs consider each one of these additional motions for leave to be tools of harassment. This is especially the case since the OHSL and Provident Defendants have clearly and consciously decided that one of the best ways to defend this litigation is to attack Plaintiffs, and this filing continues this unfortunate trend.

It is truly ironic that Plaintiffs and their counsel have been severely criticized for "vexatiously multiplying the proceedings" (*See*, Doc. No. 227), while the OHSL and

Provident Defendants continue to file a seemingly endless number of supplemental memoranda as a means of continuing their baseless attacks on Plaintiffs and their counsel seriatim. Plaintiffs should no long be forced to be subjected to such an unnecessary expense and use of time. Enough is enough.

Thus, for the foregoing reasons, this latest Motion for Leave should be denied because it is merely being used as part of a continuing tool of harassment against Plaintiffs and their counsel. Although it may seem unfair to attempt to deny the OHSL and Provident Defendants the ability to discuss the new evidence gathered from Mr. Meier's deposition, it would be even more unfair to let such harassment continue when there were alternative ways for the OHSL and Provident Defendants to have legitimately gotten this evidence before this Court.[6] Further, a denial of this Motion for Leave would not prejudice the OHSL and Provident Defendants since no compelling evidence was extracted from Mr. Meier's deposition which would support a denial of Plaintiffs' Motion for Class Certification.

**III.    Gary Meier is an Adequate Class Representative.**

      **A.    The Meier Transcript Shows that Gary Meier is an Adequate Class Representative.**

            **1.    Mr. Meier Meets the Requirements for Being a Class Representative.**

Gary Meier is a perfectly adequate class representative. Mr. Meier is not simply lending his name to a suit controlled entirely by a class attorney, but is actively involved in this case. *Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 322 (M.D. Fla. 1997).

---

[6] The OHSL and Provident Defendants have admitted that they knew all along that they would be filing this Motion for Leave after Mr. Meier's deposition was completed, but still filed two memoranda in opposition to Plaintiffs' second motion for class certification before that even though there was no new law or compelling circumstance to do so.

Although Mr. Meier may not possess an extensive education, Federal Rule 23 does not exclude roofers, or others who work with their hands, from serving as class representatives. Also, Plaintiffs have never claimed that Gary Meier is a sophisticated or active investor. But, unlike many of the Defendants, he knows who is representing him, and not only has an understanding of the facts of this case, but is able to coherently explain his theory of the case.

In truth, Mr. Meier's understanding of the OHSL-Provident merger was more extensive than that of many of the OHSL and Provident Directors themselves. The OHSL and Provident Defendants argue that Mr. Meier "showed a glaring unfamiliarity with the facts and legal issues involved in this case," and that this unfamiliarity disqualifies him from serving as a class representative. (Motion, Doc. No. 347, p. 13). However, before the OHSL and Provident Defendants are too critical of Mr. Meier, they should take a good look at their own testimony in this case. Defendant Grote was only able to answer a very small percentage of the questions posed of him in relation to the OHSL-Provident merger, the restatements, and the financial workings of Provident in general, and he was a Provident Director and member of the audit committee. He also admitted that he did not have an independent understanding of many of the financial matters involving Provident, but that rather he relied upon experts to explain things to him. (Grote dep. p. 87). Even the CEO and CFO of Provident stated that they "did not know" or could not answer many questions regarding the merger and Provident's Restatements. Further, even though Provident's own board minutes stated that Provident's restatements were filed because their financial statements were materially misstated (*See*, Exhbit A), both the CEO and CFO of Provident either refused, or had difficulty, answering questions

regarding the definition of a restatement. Many of the OHSL and Provident Defendants did not know who the parties in this case were, and far less about what the claims were. They also did not know who their counsel was and how they came to be represented by such counsel.[7] Therefore, for the foregoing reasons, although the Provident Director Defendants are not held to the same standard as a class representative in a class action lawsuit, it would be unfair to exclude Mr. Meier on the basis of a lack of familiarity with the facts of the case when the CEO, CFO and other Provident Directors' deposition transcripts reveal that they do not have much, if any, better understanding of the facts involving their own company's merger and restatements. Unlike the CEO, CFO, and other Provident Directors, Mr. Meier does not work for Provident, but rather has to devote a substantial amount of time to his own work and life responsibilities. Given the complexity of these issues, the amount of time that both Mr. Meier and the Provident Defendants are able to allot to these issues, and their corresponding understanding of them, Mr. Meier is more than qualified to be a class representative in this case based upon his understanding of the facts.

There is no evidence before this Court that Plaintiffs' counsel is the "driving force" behind this litigation. This is perhaps the weakest of all of the OHSL and Provident Defendants' arguments. The OHSL and Provident Defendants unfairly imply that Mr. Meier signed an affidavit which Plaintiffs' counsel prepared and that he did not understand when he signed it. Although OHSL and Provident Defendants' counsel attempted to confuse Mr. Meier during the deposition, and then took his testimony out of

---

[7]  A number of the OHSL and Provident Director Defendants' answers revealed not only how shockingly uninformed they were, but also clearly confirmed that KMK proceeded as counsel for these Defendants without their consent despite the fact that this Court has ordered KMK not to proceed without said consent.

context in the Motion for Leave, it is not uncommon that a man who is not used to legal proceedings such as this would periodically become flustered or confused after several hours of questions have been posed of him. What is important is that a full reading of his transcript confirms that he not only knew the contents of his affidavit, but that, unlike the affidavit submitted by former OHSL CEO Hanauer, the Meier affidavit was accurate.

Finally, it is the height of hypocrisy for the OHSL and Provident Defendants to claim that Mr. Meier has placed blind reliance on Plaintiffs' counsel. The depositions of the OHSL and Provident Director Defendants collectively confirm that a significant number of them did not even know that they were defendants, that their assets were at risk, who their current attorneys were in this case, or what attorneys had represented them over the course of this litigation. As discussed above, this is particularly significant given that KMK was required to obtain the informed consent of each of these Defendants in order to continue to represent them.

Thus, given Mr. Meier's understanding of the facts of this case, and comparative knowledge and understanding of the facts in this case in relation to the Provident Director Defendants' themselves, and his extremely active participation in the case, Mr. Meier should be considered a more than adequate class representative.

### 2. Gary Meier was Defrauded, Despite his Vote Against the Merger.

The OHSL and Provident Defendants take the novel position that Mr. Meier cannot be a class representative because he voted against the merger. In fact, the OHSL and Provident Defendants seem to argue that they are in essence *de facto* immune from suit from people who voted against the merger, no matter how fraudulent the Proxy Materials/Registration Statement. Fortunately for the Plaintiffs, and all other

shareholders in this country, this is not the law. The OSHL and Provident Defendants cite to no legal authority which provides that a class representative had to have voted against the merger in order to qualify as a class representative. The reason that they do not do so is that such would be a ridiculous and untenable position—there are no such cases. The securities markets are supposed to provide full, fair, and complete disclosure to all shareholders, and not just those who are on the fence as to which way to vote. Since the Proxy Materials go to all shareholders, they must be fair to all. This certainly was not the situation in this case in relation to Mr. Meier or any other OHSL shareholder.

Also, Gary Meier was defrauded in the sense that he had his company stolen from him. Even though he personally voted against the merger by not voting at all, a slight majority of the shares voted for the merger, and these votes were the result of false information. The merger was fraudulently induced. Thus, in this manner, Mr. Meier was defrauded in the same way that all the other OHSL shareholders were defrauded.

The OHSL and Provident Defendants cite to *Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453 (D.D.C. 1985) for the proposition that Mr. Meier cannot qualify as a class representative because he did not rely upon the representations in the Proxy Materials/Registration Statement and because he voted against the merger for reasons unrelated to any of the alleged representations or omissions referenced in the Complaint. This is not true. Mr. Meier voted against the merger for several reasons. One of the most significant was that he did not want OHSL to be sold. (Meier dep. pp. 107-108, 166-167, Attached as Exhibit C). As stated above, because of the false information provided to the OHSL shareholders, this is exactly what happened. Although Mr. Meier may not have articulated his reasons for voting against the merger in exactly the same

way that the Complaint makes its allegations against the Defendants in this case, this is not a problem or a requirement for being a class representative.

Unlike many of the Defendants in this case, Mr. Meier has not been coached, and spoke his beliefs in plain English. Mr. Meier is not an attorney, but a roofer. It cannot be disputed that Mr. Meier communicated that he believed that he had been lied to and defrauded by the OHSL and Provident Defendants based upon the fraudulent Proxy Materials/Registration Statement. Although this is not verbatim what was stated in the allegations of the Consolidated Amended Complaint ("CAC") says, it is certainly the general principle behind the allegations of the CAC. Therefore, based upon the foregoing, Mr. Meier not only relied upon the misrepresentations in the Proxy Materials/Registration Statement, but his reasons for bringing this claim were essentially the same as all other OHSL shareholders.

Further, all of the OHSL Shareholders and Plaintiffs, including Mr. Meier, relied upon the words contained in the Proxy Materials, and accepted them to be true. Just because not all of these individuals agreed with the representations made, and some decided that they did not want OHSL to be sold, does not mean that all of them did not rely upon the representations. This is very similar to the distinction that that OHSL and Provident Defendants often attempt to make in relation to Defendant Hanauer. They claim that he voted his personal shares against the merger solely based upon his own personal interests and not because he thought that the merger was not in the best interest of the OHSL shareholders.[8]

_____

[8] This is obviously more difficult for the OHSL and Provident Defendants to reconcile since Defendant Hanauer testified that he did not think that the merger was in the best interest of the OHSL Shareholders. However, it illustrates that there are can be several

Thus, for the foregoing reasons, the fact that Mr. Meier voted against the merger does not preclude him from being able to serve as a class representative in this case.

**B.    There is Adequate Support for this Action from the Class**

The OSHL and Provident Defendants attempt to argue that there has been insufficient "support" from the OHSL shareholders in this case, or that all but the two shareholders who are seeking to be class representatives in this case do not support this litigation. In other words, since the Plaintiffs have not presented hundreds of potential class representatives, there is obviously not sufficient support for this litigation. The OHSL and Provident Defendants obviously have a shocking lack of understanding of the nature and purposes of class actions. The purpose of a class action is to prevent, not increase, multiple litigation on the same topic. Here, Plaintiff Thiemann moved to be lead plaintiff, which was granted. He then moved for class certification, and that was granted. In a decision that Plaintiffs have asked be reconsidered because it is based in large part on a mistake of fact, the Court decertified the class, deeming that it has been "improvidently" certified, and directed Plaintiffs to file a renewed motion for class certification that would be considered without prejudice to any prior decision. Plaintiffs have done that. Because the obvious purpose of a class action is to combine and bind all of the parties into a central case, there is no need for any more "support" than that which Plaintiffs already have in this case. This is especially true since Plaintiffs, through an agreement with defense counsel which was made while the motion for reconsideration was pending, have not yet sent out notice to the class.

---

different reasons as to why a shareholder votes the way that he does, and that just because a person voted against the merger, it does not mean that the shareholder did not rely upon the content of the Proxy Materials/Registration Statement.

In addition, it must be noted that KMK has done its part to discourage class members from participating in this case.  Although the Plaintiffs want to be clear that all the facts have not yet been ascertained on this issue, the testimony of Thomas M. Herron, the resigning OHSL director and perhaps most important witness for the Plaintiffs, clearly shows that Mr. Burke, in the presence of another unidentified lawyer from KMK, called Mr. Herron and deliberately misinformed him as to the status of the case in an obvious attempt to obtain sympathy, and discourage Mr. Herron's participation in the case.  Mr. Herron indicated that the KMK attorney stated, in substance, that the case had been dismissed except against Mr. Hanauer.  These statements were false when made, and they were obviously known to be false by the KMK attorney when made.

In an unfortunate reprise, a similar event occurred with respect to Mr. Meier.  Mr. Meier learned about the pendency of the litigation from an August 10, 2004 article in the Cincinnati Business Courier, that Lisa Meier, Gary's wife, obtained from work.  The article mentioned two attorneys, Messrs. Burke and Brautigam.  Mr. Meier initially called Mr. Burke from his cell phone, using 411 connect to obtain the number.  Although Mr. Meier is unclear as to who he actually spoke to at KMK, or even whether or not that person was an attorney, he is, however, certain that he did reach KMK and that he was told, in substance, that the case was not going to go anywhere.  (Meier dep. p. 173).  Mr. Meier then called the Mesh firm, and became a named plaintiff shortly thereafter.  It warrants consideration that Mr. Meier may not have been the only OHSL shareholder to have contacted KMK and to have been falsely and unethically told that this case was not going anywhere.

18

Given these incidents, it is especially troubling and ironic that the OHSL and Provident Defendants have the audacity to claim that the lawsuit lacks "support" from class members while KMK has actively discouraged class members from participating in the litigation. As stated above, it is unethical for KMK to have any contact with class members. Also, in the case of the unsolicited phone call from a class member, KMK had a clear duty to decline to discuss the case substantively without comment on KMK's views as to the merits of the case. Once again, regrettably, improper and unethical behavior that would be shocking in another case has become routine here. Although Plaintiffs have not obtained all the relevant information on these matters because they have been prevented thus far from deposing Mr. Burke, once this occurs, Plaintiffs strongly believe that they will uncover additional facts that show that KMK's misconduct is far worse than even the egregious misconduct and witness tampering which has been evidenced to date.

Thus, for the foregoing reasons, the argument that the number of class representatives in this case illustrates the lack of support by the OHSL shareholders in this case is not only misplaced, but clearly without merit.

## III.    CONCLUSION

The OHSL and Provident Defendants are entitled to a full and fair opportunity to oppose class certification, even in a case such as this where the utility of the class action device is obvious, the named plaintiffs and counsel are obviously adequate, and the 900 OHSL shareholders received the same materially false and misleading Proxy Materials/Registration Statement at the same time. They are not, however, entitled to make strategic decisions to deliberately file opposition papers seriatim, and to

19

correspondingly litter the record with amended pleading after amended pleading.  Since the OHSL and Provident Defendants have conceded that they knew at the time that they filed their original memorandum in opposition to Plaintiffs' second motion for class certification that they would be filing a supplemental memorandum after Mr. Meier's deposition was taken, there is absolutely no reason for them to have filed the two additional memoranda since January, 2004 or to have filed eleven motions, memoranda, or notices of filing, overall in opposition to Plaintiffs' two motions for class certification. The only reason for doing so is to improperly get multiple chances to oppose Plaintiffs' Motion for Class Certification and/or to harass the Plaintiffs.   The time for this churlish behavior has long passed.

Thus, for the foregoing reasons, the Plaintiff Class respectfully requests that the motion for leave be denied, and that the Cross-Motion requesting that the Motion for leave be stricken be granted.

Respectfully Submitted,

**GENE MESH & ASSOCIATES**

Dated:  29 July 2004

By: _____
Gene Mesh (0002076)
Michael G. Brautigam
GENE MESH AND ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800 (Telephone)
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and*
*the Putative Class*

20

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiffs' Memorandum in Opposition to OHSL and Provident Defendants' Motion for Leave to Submit Supplemental Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. No.347) was served this 29th day of July 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
KEATING, MUETHING & KLEKAMP, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

**BY FIRST CLASS MAIL**

John Hust, Esq.
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
Suite 110, Governor's Knoll
11935 Mason Road
Cincinnati, OH 45249

James H. Greer, Esq.
BIESER, GREER AND LANDIS, LLP
400 National City Center, 6 North Main Street
Dayton, OH 45402-1908

_____
Stephanie A. Hite