**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **WALTER THIEMANN, et al.** | : | **Case No. C-1-00-793** |
| **Plaintiffs,** | : | **Judge Sandra S. Beckwith** |
| **vs.** | : | **Magistrate Judge Timothy Hogan** |
| **OHSL FINANCIAL CORP., et al.** | : | |
| **Defendants.** | : | |
| | : | |

* * * * * * *

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT THE RECORD IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT REGARDING A FINDING THAT THE STATEMENT THAT THE OHSL BOARD OF DIRECTORS UNANIMOUSLY APPROVED THE ACQUISITION BY PROVIDENT IS A MATERIAL MISSTATEMENT (Doc. No. 315).**

Dated: 4 August 2004 **GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*

Plaintiffs, by and through counsel, reply to OHSL and Provident Defendants' Response to Plaintiffs' Motion for Leave to File Supplemental Memorandum in Support of Partial Summary Judgment Memorandum (Doc. No. 357) and submit the following Memorandum in support thereof.

## MEMORANDUM

## I. INTRODUCTION AND STATEMENT OF FACTS

The OHSL and Provident Defendants have filed a half-hearted opposition to Plaintiffs' Motion for Leave to File Supplemental Memorandum in Support of Partial Motion for Summary Judgment (hereinafter "Motion for Leave") (Doc. No. 315). First, they have declined to oppose the Plaintiffs' Motion for Leave in its entirety, but rather only the first of five sections. Although this obviously shows a half-hearted effort on the part of the OHSL and Provident Defendants to respond to Plaintiffs' Motion for Leave, it is also a clever strategy because it enables the Defendants to ignore a significant amount of evidence in this Motion which should be considered collectively with that of the first section. It is also a good strategy for them since they are seemingly unwilling and/or unable to undertake the painstaking evidentiary review and analysis that Plaintiffs have done to support their position. However, regardless of their motivations, unfortunately for the OHSL and Provident Defendants, even in isolation, a review of the first section of Plaintiffs' Motion for Leave confirms that the Plaintiffs have presented evidence that supports the argument that the OHSL Unanimity Statement was materially misleading as a matter of law.

Second, the OHSL and Provident Defendants have made a conscious decision to misrepresent some facts, and to ignore others, in their response to Plaintiffs' Motion for

Leave. As stated above, the OHSL and Provident Defendants have focused on one section of the Plaintiffs' Motion for Leave to the exclusion of the others. As a result, by far the most significant deliberately false statement in relation to this first section, which is repeated throughout the document, and appears in substance throughout other OHSL and Provident filings, is the following:

> "Defendant Brinker—who was present but did not vote because, as Chairman, he voted only when there was a tie—was absolutely in favor of the merger"

(Doc. No. 357 at 2). This false statement is particularly bad because it is not at all open to interpretation, but is easily countered by the undisputed facts of this case. In fact, as the OHSL and Provident Defendants know, Defendant Brinker voted in favor of the merger on July 22, 1999, just days prior to the August 2, 1999 vote, despite the fact that there was no tie that necessitated it. (*See,* OHSL Board Minutes of 22 July 1999 and 2 August 1999, Attached as Exhibit A.)

Equally false is the statement "(4) Thomas Herron had already resigned as a director when the vote was taken and, at the time, admitted that he was resigning for one reason only—an increase in the demands of his regular job." (Doc. 357 at 2). This statement is astonishing in its falsity, and is easily rebutted by Mr. Herron's testimony and previously submitted affidavit. (Attached as Exhibit B, Also attached as Exhibit B to Doc. No. 335).

An equally surprising argument posed by the OHSL and Provident Defendants is as follows:

> "The *facts* related to the Unanimity Statement remain absolutely undisputed."

(Doc. No. 357 at p. 2, emphasis in original). Plaintiffs' argument above regarding Defendant Brinker decision to abstain from voting is alone enough to defeat this argument. No matter how many times the OHSL and Provident Defendants attempt to make this argument, it does not make it true. Also, as discussed above, the OHSL and Provident Defendants also repeatedly focus on one or a few isolated deposition excerpts in the first section of Plaintiffs' Motion for Leave to the exclusion of not only those in the rest of the Motion for Leave, but also in that section.

Finally, given the arguments of the OHSL and Provident Defendants that all of the testimony provided does not assist the Plaintiffs, one has to wonder why they bothered to oppose the motion. If, as the OHSL and Provident Defendants argue Plaintiffs' arguments are not relevant because they are based upon testimony by the Provident Defendants which has "absolutely no relevance to the question of whether summary judgment is appropriate on the issue," (Doc. No. 357 at p. 2) they shouldn't object to its inclusion. However, the OHSL and Provident Defendants do dispute it because, despite their protests, they know that the opposite is true. The deposition testimony is entirely relevant and is based upon questions related to the Provident mergers with either OHSL or National City Bank. As a result, if it does not have relevance in this case nothing will.

## II. LEGAL ARGUMENT

### A. A Supplemental Memorandum is Appropriate in this Case Given the New Evidence Available to Plaintiffs Regarding the Issue of Unanimity

Plaintiffs are entitled to file this Motion for Leave because they were just recently given the opportunity to depose the Provident Director Defendants. "The law of the

case" counsels against reconsideration absent 'compelling circumstances,' including an intervening change of law, the availability of new evidence, or to correct a clear error or prevent manifest injustice." *Scottish Air. Int'; v. British Caledonian Group, PLC*, 152 F.R.D. 18, 25 (S.D.N.Y. 1993) (citing *Diduck v. Kaszycki & Son Contractors, Inc.*, 737 F. Supp. 792, 796 (S.D.N.Y. 1990); *United States v. Uccio*, 940 F.2d 753, 757 (2d. Cir. 1991). The deposition transcripts certainly provide new evidence for the Plaintiffs in this case, and specifically new evidence regarding the issue of OHSL unanimity in relation to the OHSL-Provident merger. These defendants obviously provide relevant testimony as well a unique and insightful perspective to this issue since they signed Proxy Materials/Registration Statements that alleged a unanimous vote for not only the OHSL-Provident merger, but also the Provident-National City Bank merger. Thus, since the Plaintiffs have not made a habit of filing multiple motions for leave to supplement their Motion for Partial Summary Judgment, and since there is new available evidence which warrants and approves such a supplementation, there is no legal reason for this Court to deny this Motion for Leave.[1]

**B. <u>The Information Included in the Proposed Supplemental Memorandum is Highly Relevant and Admissible for Purposes of Summary Judgment.</u>**

The OHSL and Provident Defendants' arguments related to the Provident Defendants are just as wrong as their arguments related to the OHSL Defendants. In relation to the OHSL Defendants, the OHSL and Provident Defendants again falsely state

[1] It is surprising that the OHSL and Provident Defendants challenge the Plaintiffs on this issue for if the Court were to deny the Plaintiffs' Motion for Leave in this case, it would be next to impossible for this Court not to deny the OHSL and Provident Defendants' multiple motions for leave to supplement their memorandum in opposition to Plaintiffs' Motion for Class Certification.

that Defendant Brinker was absolutely in favor of the merger because he only voted when there was a tie,[2] and that Thomas Herron had resigned just because of an increased in the demands of his regular job. The OHSL and Provident Defendants know that Mr. Herron called all of the OHSL Director Defendants right after he resigned, except for Defendant McKiernan who he called later because he was out of the country at the time, and personally informed them that he was resigning in part in protest to the merger. (*See*,

---

[2] As stated above, Defendant Brinker had voted when there was a preliminary vote at the Special Meeting of 22 July 1999 in relation to the proposed merger, despite the fact that there was not a tie. Just a few days later, Mr. Brinker, the OHSL Chairman, changed his vote to abstain.

Further, this argument in relation to Defendant Brinker is especially important because Defendant Brinker has attempted to use his abstention as a sword and not a shield, to deflect the wrath of shareholders who were unhappy with the merger. When questioned about his vote, Defendant Brinker stated in substance that he told disgruntled OHSL shareholders that he was not responsible for the OHSL-Provident merger, because it was they, and not he, who voted for it. In particular, he stated as follows:

> Q Didn't people come up to you in church or in
> the parking lot and say hey, Norb, what's going on?
>
> A A few people said what's going on, yeah.
>
> Q Okay. And who said that to you?
>
> A I don't know, different people. Might have been
> customers. They were unhappy because it was going
> to change, but—you know, it was a –as I told them, I didn't
> make the change, the shareholders voted it. And I—I just
> had to be part of it, so they had no reason, say, to have any—
> any animosity towards me.

(Brinker dep. p. 111, Attached as Exhibit C). This testimony is shocking because either OHSL's Chairman of the Board truly does not believe that he had a role in the way that the OHSL shareholders voted for the merger, or he is disingenuously attempting to shift the blame for the merger from himself to the OHSL shareholders, or the true victims of the fraud. Either way, Defendant Mr. Brinker's comments that "I didn't make the change, the shareholders voted it," is a stunning abdication of personal responsibility for his role in the merger.

Herron Affidavit, attached as Exhibit B). Further, regardless of the fact that Defendant McKiernan allegedly favored the merger, directly contrary to the materially false and misleading Proxy Materials/Registration Statement, he did not vote in favor of the merger. Since he was unquestionably a member of the OHSL Board at the time, and he did not vote, it is mathematically impossible for the OHSL Board to have unanimously voted in favor of the merger. Thus, based upon this evidence, there is no question as to whether or not the OHSL Unanimity Statement was materially misleading as a matter of law. The vote was not unanimous, and the statement to the contrary in Proxy Materials/Registration Statement was not only materially false and misleading, but intentionally so.

However, this is also the case in relation to the Provident Director Defendants. The Plaintiffs set forth countless excerpts from the Provident Director Defendants' depositions in support of the proposition that the unanimity statement was materially misleading as a matter of law. In response, the OHSL and Provident Defendants pathetically attempt to argue that this testimony is not relevant because it relates to a 2003 vote by the Provident Board and not to the facts of this case, and that the "personal opinions of the Provident Directors" (Doc. 357 at 3) are not legal precedent and cannot be used to support Plaintiffs' arguments. Not surprisingly, the OHSL and Provident Defendants do not provide any legal support for this argument. Similarly, the OHSL and Provident Defendants argue that the Provident Defendants' personal opinions of the definition of the word "unanimous" does not constitute "legal precedent" that can be used to support Plaintiffs' arguments that OHSL Unanimity Statement was materially misleading as a matter of law. Again no legal support is provided for this empty

argument. Further, the OHSL and Provident Defendants tend to forget that a motion for summary judgment is a factual, as well as a legal, beast. A legal argument cannot succeed without the facts to support it. The testimony of the Provident Defendants helps to provide these facts.

Finally, the OHSL and Provident Defendants argue that the proposed supplemental memorandum neither propounds any new facts or law that is material to the 1999 OHSL Board vote reflected in the Unanimity Statement. This argument borders on the ridiculous, given that Plaintiffs have supplied more than a thousand pages of deposition testimony and have carefully cited to deposition excerpts that support this particular motion. This argument contra might have some merit if the OHSL and Provident Defendants provided some specifics. Once again, unlike the Plaintiffs, the OHSL and Provident Defendants provide no factual or legal support of their arguments. It is not enough for the OHSL and Provident Defendants to generally dismiss the Plaintiffs' arguments, they must provide, at a minimum, some type of reasoning as to why the Plaintiffs' factual and legal arguments do not support a finding that the Unanimity Statement was materially misleading as a matter of law. The silence is deafening.

### C. <u>The Testimony of Cook, Hoverson, Pedoto and Steger Does Support Plaintiffs' Motion for Summary Judgment</u>

The OHSL and Provident Defendants state that the Plaintiffs' supplemental memorandum is inaccurate and misleading. However, the OHSL and Provident Defendants do not "put their money where their mouth is," as the saying goes. First, the OHSL and Provident Defendants state that they are only going to respond to one of five sections in Plaintiffs' Motion for Leave. As a result of this curious choice, the OHSL and

Provident Defendants have presently not responded to the Plaintiffs' arguments which discuss in depth that: (1) the vote was not unanimous because Mr. Herron resigned three days before the vote; (2) the vote was not unanimous because Defendant Brinker did not vote in favor of the merger, but abstained; (3) Defendant Hanauer did not believe that the merger was in the best interests of the OHSL shareholders; and (4) the OHSL and Provident Defendants removed all dissension from the Proxy Materials/Registration Statement in order to give the impression that there was unanimity among the OHSL board in support of the merger. Further, even the OHSL and Provident Defendants' limited and concentrated response to Plaintiffs' arguments in relation to Section "A" is not compelling enough to overcome the fact that Plaintiffs have submitted substantive arguments and evidence which show that the OHSL Unanimity Statement was materially misleading as a matter of law.

The OHSL and Provident Defendants argue that the deposition testimony cited by Plaintiffs does not support their factual claims. The Plaintiffs obviously disagree, and believe that the numerous citations provided by the Plaintiffs in their Motion for Leave speak for themselves. However, it also must be remembered that the Provident Directors were less than willing participants in their depositions. The Provident Defendants often would not answer Plaintiffs' counsel's questions, but rather parroted their counsel's objections in their responses. In fact, Plaintiffs had to call this Court for assistance during more than one of the Provident Director Defendants' depositions because of their extreme refusal to respond to relevant questions. Regrettably, this did not resolve the issue, and Plaintiffs, at the specific invitation of the District Court, were forced to file a Motion to Find Keating, Muething & Klekamp, LLC in Contempt for Discovery

Violations Under the Federal Rules of Civil Procedure and Request for Sanctions. (Doc. No. 344). As a result, since the Provident Defendants were less than forthcoming during their depositions, Plaintiffs' counsel had to ask the Provident Defendants questions in several different ways before they would finally provide any type of substantive answer. One of these ways was often to ask questions in terms of a hypothetical related to the Provident-National City merger. This does not make the Provident Defendants' deposition excerpts any less supportive of the argument that the Unanimity Statement was materially misleading under the law. Clearly, the Court can find that Plaintiffs' Motion for Summary Judgment is well taken if the word "unanimous" appears in the PFGI-National City merger in the context of its common, everyday meaning, but the same word has a completely different meaning, which is at odds with customary usage, in the OHSL-Provident merger. The Provident Director Defendants are the perfect witnesses to ask this question, for they signed the Proxy Materials/Registration Statements that alleged a unanimous vote for both mergers. Plaintiffs will respond to the arguments raised in relation to each Provident Director Defendant in turn:

1. **Defendant Cook**

In relation to the deposition excerpt from Defendant Cook's depositions, the OHSL and Provident Defendants argue that there is more than one definition for the word "unanimous[3]." In particular, just because Defendant Cook considered the vote for the Provident/National City merger to be unanimous does not mean that the OHSL Director

[3] As the Court considers the deposition testimony of the Provident Defendants, it is important to realize that they were carefully coached to parrot a definition of "unanimity" that is directly contrary to the normal, everyday understanding of the word. In addition, the definition of "unanimity" and unanimous is directly contrary to how Provident Board votes were recorded at Provident Board and committee meetings. The OHSL and Provident Defendants cannot have it both ways.

vote was something less than unanimous. (Doc. No. 357 at pp. 5, 8). This argument is interesting for a few reasons. First, the OHSL and Provident Defendants do not deny that Defendant Cook considered unanimous to mean that all of the directors on the board voted for the merger. Second, the OHSL and Provident Defendants do not provide any legal or factual authority for their argument that there are different definitions or interpretations of the word "unanimous." Their failure to do so speaks volumes about the legitimacy of this argument.

Next, the OHSL and Provident Defendants attempt to make the same type of argument about how Mr. Cook records an abstention. To get a response from Defendant Cook, Plaintiffs' counsel posed a hypothetical question to Defendant Cook. Contrary to the OHSL and Provident Defendants' assertions otherwise, there was nothing "inaccurate" or "confusing" about this hypothetical. The hypothetical was accurate, in keeping with the facts of the case, because there were six OHSL directors present for the August 2, 1999 vote[4]. Also, it was not confusing for Plaintiffs' counsel to ask how many of the six would have to vote for the merger for the vote to be considered unanimous. One does not have to be an expert on "corporate governance" to answer this question, and it should not be a difficult concept for someone who is serving as a director on the board of billion dollar company. Next, Plaintiffs' counsel asked if it would still be unanimous if someone abstained. Again, this was not a confusing concept. It is also not made any more confusing based upon the issue of whether or not the chairman of the board votes if there is not a tie. As stated above, this argument does not apply in this case because

[4] The OHSL and Provident Defendants do not seriously attempt to argue that Plaintifffs' counsel made any false representations or false statements because they cannot, but instead fall back to general statements that the questions were "confusing."

former OHSL Chairman of the Board Brinker did not follow this practice since he had just voted in favor of the merger at the July 22, 1999 Special Meeting despite the fact that there was no tie in that situation.[5] As a result, the only thing that is perhaps confusing in this case is why the Provident and OHSL Defendants would mislead the OHSL shareholders by stating that the OHSL Board unanimously voted in favor of the merger when one of the board members present for the vote clearly did not do so.

Similarly, the OHSL and Provident Defendants' argue that Defendant Cook's use of the phrase "the board" is not consistent with the Plaintiffs' argument that the OHSL Unanimity Statement was false. However, the OHSL and Provident Defendants do not explain how this possibly could be the case. Defendant Cook testified that "the board" would refer to all directors existing at the time the phrase was used. (Doc. No. 357 at 7, Cook dep. p. 211). In terms of OHSL, there were eight directors on the board three days prior to the vote, and seven directors on the day of the vote. If Defendant Cook's definition and/or testimony is followed to its natural conclusion, then all seven directors would have had to have voted in favor of the merger in order for the Proxy Materials/Registration Statement to state that the "board" unanimously approved the merger and believed that it was in the best interest of the OHSL shareholders. However, the evidence confirms that this is not what occurred.

---

[5] Further, although the OHSL and Provident Defendants argue that there was an "established practice at OHSL" for the Chairman of the Board not to cast a vote unless a tie needed to be broken, they have never provided any evidence to support this argument. Of course, it is difficult for them to do so when this alleged rule was not practiced by Defendant Brinkman when he voted in favor of continued negotiations with Provident at the 22 July 1999 Board meeting, and changed his vote to abstain just a few days later at the 2 August 1999 Special Meeting. Of course there was no way for the OHSL shareholders to know this.

The vote was not unanimous because Defendant McKiernan felt it was more important to go on a Mediterranean cruise than to attend this crucial OHSL Special Board Meeting. Mr. Herron clearly neither voted in favor of the merger not believed that it was in the best interest of OHSL shareholders since he resigned in protest. Similarly, Defendant Hanauer clearly did not believe that the merger was in the best interest of OHSL shareholders because he specifically testified as such.[6] Also, as discussed above, Defendant Brinker changed his previous vote on July 22, 1999, which was in favor of the merger, to "abstain." Thus, not even every director in the meeting voted in favor of the merger. As a result, the final 5-0 vote that the OHSL and Provident Defendants now loudly proclaim as "unanimous" is far from the 8-0 vote that any reasonable shareholder reading the materially false and Proxy Materials/Registration Statement would expect. Further, the OHSL and Provident Defendants should be barred from touting the 5-0 vote as "unanimous" in Court filings given how inherently misrepresentative this statement is. This is especially the case when the OHSL and Provident Defendants carefully scrubbed the materially false and misleading Proxy Materials/Registration Statement to remove any hint of dissent so as to give OHSL shareholders the false impression that not only all eight OHSL directors had voted in favor of the merger, but all that all eight OHSL directors believed that the merger was in the best interests of OHSL shareholders. If the OHSL and Provident Defendants were as proud of this 5-0 "unanimous" vote as they now

[6] Defendant Zoellner's position is less clear. Although Defendant Zoellner was opposed to a merger for almost all of OHSL's existence as a public company, Defendant Zoellner testified that his position changed because the deal improved. However, during his deposition, Defendant Zoellner was unable to articulate what caused this change in position, how the deal improved, or even what deal he was talking about. The fact that only one deal was ever presented to the OHSL Board, and that was on 22 July 1999 and 2 August 1999. Thus, although Defendant Zoellner is on record as supporting this merger, the foundation upon which this support is built is questionable at best.

claim to be, they would have proclaimed this (5-0) vote to the OHSL shareholders in the Proxy Materials/Registration Statement. That they did not do so, and developed this alternative definition of "unanimous" only after this litigation started, is very telling.

Finally, Defendant Cook's testimony relating to the absence of information regarding Mr. Herron's resignation in the Proxy Materials/Registration Statement also further confirmed that the OHSL Unanimity Statement was materially misleading as a matter of law. Although Defendant Cook indicated that he did not know what was legally required in such a situation, he clearly stated that he thought such information would have been helpful to the OHSL shareholders, and that he found it "troubling" that this information was not including the in the Proxy Materials/Registration Statement (Cook dep. pp. 215, 219). This testimony is compelling because it is being offered for its factual support rather than legal authority. Further, although the OHSL and Provident Defendants have chosen to respond to just a portion of the Plaintiffs' Motion for Leave, this does not mean that the Defendants should be able to imply that this is all the evidence which the Plaintiffs have submitted on this issue. Other Provident Directors, such as Defendant Pedoto, clearly stated that they thought that the resignation should have been included in the Proxy Materials/Registration Statement if the resignation occurred as a result of the merger. (Pedoto dep. p. 214). Thus, this evidence in its totality can be construed as nothing less than additional evidence in support of the Plaintiffs' argument that the OHSL Unanimity Statement was materially misleading as a matter of law, and the motion for leave should be granted.

2. **Defendant Hoverson**

The OHSL and Provident Defendants attempt to rewrite the testimony of Defendant Hoverson in relation to his definition of a unanimous vote. (Doc. No. 347 at 8). Although the OHSL and Provident Defendants repeatedly protest about Plaintiffs' counsel's hypotheticals, they attempt to argue that Defendant Hoverson's testimony is not supportive of Plaintiffs' Motion for Leave by creating their own hypothetical. Defendant Hoverson indicated through his testimony that he interpreted unanimous to mean that each of the directors who was present at the meeting voted in favor of the merger. (Hoverson dep. pp. 77, 79). However, this testimony must not be taken in a vacuum, but along with his testimony where he also said that he saw no indication in the Proxy Material/Registration Statement that any director had abstained from voting or that a director had changed his vote within days of the final vote. (Hoverson dep. pp. 80, 81). In fact, Defendant Hoverson stated that he did not recall any "hint of dissent" in the Proxy Materials/Registration Statement at all. (Hoverson dep. p. 81). However, as stated above, this was because the dissent in fact was carefully removed from the Proxy Materials/Registration Statement so that the OHSL shareholders would not suspect or conclude that there was any dissent in relation to the OHSL-Provident merger. Thus, although it is true that Defendant Hoverson does slightly change his response regarding what his specific definition of "unanimous" would be as he is asked different questions, when his testimony is taken as a whole, it is clear that it supports Plaintiffs' argument that the OHSL Unanimity Statement was materially misleading as a matter of law.

3. **Defendant Pedoto**

Once again, Defendant Pedoto's testimony also supports the Plaintiffs' claim that the OHSL Unanimity Statement was materially misleading. The OHSL and Provident Defendants concentrate on one of many deposition excerpts which the Plaintiffs cited to in their Motion for Leave. In this excerpt, Defendant Pedoto states that he doesn't know how to record a vote as being unanimous in terms of the "rules of protocol for the directors meetings." (Pedoto dep. p. 17)[7]. However, when asked what he considered the "board" to mean when stated in the context of the June 15, 1999 meeting, he also stated that it referred to all eight members. (Pedoto dep. p. 241). Once again, taking this testimony to its logical conclusion, if Defendant Pedoto considered the use of the word "board" in the Proxy Materials/Registration Statement to mean the number of members actually on the board at that time, then this obviously would impact his interpretation of the sentence that the "The Board unanimously approved the merger and believed that it was in the best interest of the OHSL shareholders." If Defendant Pedoto believed that the use of the word "board" means all of the members on the board at that time, then he would only understand this sentence to mean that *all of the members on the board at the time of the vote occurred* approved the merger and believed it was in the best interest of the OHSL shareholders. This obviously did not happen since only 5 of the 7 board members voted in favor of the merger on August 2, 1999. Thus, once again Defendant Pedoto's testimony supports Plaintiffs' argument that the OHSL Unanimity Statement was materially misleading as a matter of law.

---

[7] If Defendant Pedoto, a long-time PFGI director is unable to understand something as basic as how votes are recorded at PFGI Board meetings, one has to wonder why he was a director in the first place, and how he could fulfill his fiduciary duties.

**4. Defendant Steger**

In relation to Defendant Steger, the OHSL and Provident Defendants argue that the Plaintiffs took the testimony of Defendant Steger out of context[8]. They acknowledge that Defendant Steger agreed that the Provident Board voted unanimously in favor of the Provident-National City merger, and that this meant that "each and every director voted in favor of the merger." (Steger dep. pp. 126-127). However, incredibly, the OHSL and Provident Defendants argue that his answer would have been different in relation to the OHSL-Provident merger. This is exactly why the testimony offered in the motion for leave is relevant—to show that the same term, "unanimous," should logically have the same meaning in the same circumstances—two mergers that involve PFGI.

The OHSL and Provident Defendants never explain why a different result would be reached. This is especially the case since we are not comparing apples and oranges here. This is not, for instance, a hypothetical about a U.S. Senate vote, but rather a hypothetical about a similar bank merger. The OHSL and Provident Defendants are not arguing that this is a bad hypothetical because it is irrelevant, but because Plaintiffs' counsel never specifically asked Defendant Steger to explain his opinion of the definition of "unanimous" in relation to the OHSL-PFGI merger. In sum, the OHSL and Provident Defendants are doing everything in their power to attempt to cloud and complicate the

[8]Although BGL is the OHSL and Provident Defendants' third counsel of record to date, this does not excuse their lack of knowledge of Dr. Steger's earlier deposition, which took place before BGL became counsel of record. In Dr. Steger's deposition of 2002, Plaintiffs' counsel asked the very question that he was falsely accused of not asking. (*See*, Steger Deposition, Attached as Exhibit D). Thus, although Plaintiffs' counsel scrupulously sought to avoid asking duplicative questions, BGL has now faulted Plaintiffs counsel for just that, seemingly suggesting that an important issue was overlooked. (*See*, related correspondence, Attached as Exhibit E.) The issue was not overlooked, and the testimony of Dr. Steger at both sessions of his depositions plainly supports Plaintiffs' position on unanimity.

issues. Since the concept of unanimity is an inherent simple concept, and since there is no reason for one's definition of "unanimous" to change when applied to comparable hypotheticals, Defendant Steger's testimony at both his January 2002 deposition and his 2004 deposition adds further support to the Plaintiffs' argument that the OHSL Unanimity Statement was materially misleading as a matter of law.

## III. CONCLUSION

The OHSL and Provident Defendants' half-hearted attempt to oppose Plaintiffs' Motion for Leave provides no evidence, let alone compelling evidence, that this Motion should be denied. Although the OHSL and Provident Defendants only made their arguments in relation to a small fraction of the Plaintiff's arguments in their Motion for Leave, they were not even successful at countering these arguments when considered outside of their proper context, or all of the sections comprising Plaintiffs' Motion for Leave. Similarly, although the OHSL and Provident Defendants materially misrepresent some facts, ignore others, and make such questionable arguments about the definition of the word "unanimous" that it hearkens back to the days of the Clinton administration when it was unknown what the definition of the word "is" is, they are still not able to overcome Plaintiffs' thorough factual and legal arguments which conclusively shows that the evidence presented by Plaintiffs supports the argument that OHSL's Unanimity Statement was materially misleading.

Finally, the BGL firm has unfortunately adopted the tactics of KMK in attempting to deflect any discussion of the merits of the case by attacking Plaintiffs and their counsel. In a gratuitous parting shot, they state that "The conduct of Plaintiffs' counsel is spiraling out of control." (Doc. No. 357 at 10). Based upon this sentence, it must now be

considered "spiraling out of control" to seek leave to present the Court with admissible evidence that was not available at the time the original motion was filed, and which offers overwhelming support for the granting of summary judgment on the unanimity issue[9]. Although this statement is simply ridiculous on its face, given the significance and specificity of the evidence that Plaintiffs seek to put before the Court, Plaintiffs will let this Court form its own conclusion as to the admissibility and weight of the proferred evidence.

Thus, for the foregoing reasons, Plaintiffs respectfully request that this Court accept the Supplemental Memorandum, and the deposition transcripts of Defendants Jack Cook, Robert Hoverson, Joseph Pedoto, and Joseph Steger, as additional support for Plaintiffs' Motion for Summary Judgment Regarding a Finding that the Statement that the OHSL Board of Directors Unanimously Approved the Acquisition by Provident is a Material Misstatement (Doc. No. 315) and grant said motion.

Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*

[9] If anything is spiraling out of control, it is the tactics of KMK and BGL, who alternatively have littered the record with multiple filings on the same issue such as the more than ten filings in response to Plaintiffs' first and second motions for class certification. Additionally, because KMK and BGL have filed many pleadings that included demonstrably false statements, incorrect citations, or other errors, they have also littered the record with amended pleadings, such as this one, where Doc. No. 357 "corrected" Doc. No. 356.

**CERTIFICATE OF SERVICE**

This is to certify that a true and accurate copy of the foregoing Reply Brief in Further Support of Plaintiffs' Supplemental Memorandum in Support of Plaintiffs' Motion for Summary Judgment Regarding a Finding that the Statement that the OHSL Board of Directors Unanimously Approved the Acquisition by Provident is a Material Misstatement (Doc. No. 315) was served upon the following persons this 4th day of August, 2004.

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

**BY U.S. MAIL**

David C. Greer, Esq.
Bieser, Greer & Landis, LLP
400 National City Center
6 North Main Street
Dayton, Ohio 45402-1908

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

Stephanie A. Hite