UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **WALTER W. THIEMANN, et al.** | : | **Civil Action No. C-1-00-793** |
| **Plaintiffs,** | : | **Judge Sandra S. Beckwith** |
| **vs.** | : | **Magistrate Judge Timothy Hogan** |
| **OHSL FINANCIAL CORP., et al.** | : | |
| **Defendants.** | : | |

> **"Given the questions asked by Plaintiffs' counsel, the depositions
> have proceeded remarkably free of serious conflict."**

(Doc. No. 354 at p.16, emphasis added).

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION OF KMK FOR PROTECTIVE ORDER AND OR MOTION TO MODIFY AND MOTION FOR SANCTIONS (DOC. NO. 358) AND MOTION FOR SANCTIONS

Plaintiffs respectfully submit this brief in opposition to Non-Party KMK's Motion

for Protective Order and/or Motion to Modify Subpoenas (hereinafter "Motion for

Protective Order") (Doc. No. 358).

Dated: 9 August 2004

**GENE MESH & ASSOCIATES**

Respectfully Submitted,

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative
Class*

1

## I.    **PRELIMINARY STATEMENT**

The Motion for a Protective Order is a demonstrably false document, and it contains not a shred of support for the relief sought.  Incredibly, the document does not cite a single case, nor does it cite a single example of conduct on the part of Plaintiffs' counsel that shows that he did anything wrong.  Although Keating, Muething & Klekamp, PLL (hereinafter "KMK") has four transcripts of KMK attorneys to work with, let alone more than ten other transcripts from other defendants and/or witnesses in this case, KMK has not—and cannot—cite a single example of anything that Plaintiffs' counsel has done wrong. On the contrary, KMK along with the other OHSL and Provident Defendants, would rather make conclusory statements and call Plaintiffs' counsel names rather than painstakingly scour the record for citations to what they seek to allege.  Since there are no examples of misconduct, each course will reach the same result.   Nevertheless, this conduct is still insulting to both the Court and to Plaintiffs' counsel.  At some point, if KMK is going to make false and defamatory conclusory statements, the Court should require them to show their cards.

Additionally, KMK as defense counsel has taken the contradictory and incompatible position that the depositions have been remarkably free of serious conflict. (Doc. No. 354 at p.16).  Now, KMK's shadow counsel, Pat Fischer and their defense counsel Barret & Weber, have stepped out of the shadows and have outlined a demonstrably false procedural history to the Court.  KMK, once again, is speaking out of both sides of its mouth.  Previously, KMK, as counsel for the OHSL and Provident Defendants, told this Court that that KMK should not be held in contempt because the

depositions are proceeding smoothly. (Doc. No. 354).[1]  Now, however, KMK is telling this Court that the depositions of KMK attorneys necessitate the appointment of a special master.  While it is true that the conduct of Messrs. Gilligan and Fischer at the previous depositions was especially egregious, including incidents of unprovoked shouting at Plaintiffs' counsel, as well as bogus assertions of privilege, speaking objections, countless unnecessary interruptions designed to impede the flow of the depositions, repeated coaching of the witness, Plaintiffs are confident that such behavior will not be repeated, and if it is, Plaintiffs can always seek immediate relief from the Court.

## II.  LEGAL ARGUMENT

### 1.  This Motion Contains No Basis for the Relief Sought to be Granted, but Only Attempts to Blame Plaintiffs' Counsel for Court Rulings.

#### a.  KMK's Attempts to Thwart Discovery

The Motion for Protective Order contains absolutely no facts that the subpoena should be modified in any way.  Although KMK does reference the standard for granting a Motion for Protective Order, this is where KMK's adherence to this rule begins and ends.  In making its argument in the Motion for Protective Order, KMK ignores certain known facts and provides only false and/or conclusory statements to support its need for a protective order in this case.  First, KMK fails to note that these depositions were previously agreed to by counsel, and that even one deposition was scheduled late last year.  (*See*, correspondence, Attached as Exhibit A).  Although KMK was clearly not pleased about having to have Messrs. Kreider and Rosenberg deposed, they did bow to the inevitable and provided dates.  Nothing has changed with respect to the substance of the KMK depositions, and KMK has not now argued that Plaintiffs are not entitled to

---

[1]  This is false, but discussed elsewhere.

take these depositions.  Rather, KMK is now attempting to argue that they are inappropriate based upon Plaintiffs' counsel's conduct.  However, there is only one problem with this argument: KMK offers no evidence to support it, and it is directly contradicted by KMK's statement as defense counsel.

In particular, KMK continues its tradition of throwing transcripts at the Court, and telling the Court, in substance, there must be some misconduct there, so we invite you to find it[2].  If they are going to make allegations, the Court should require KMK to support their allegations in some fashion.[3]  In this case, KMK has once again been unable to show that even a single question has been defective, harassing, or otherwise improper, but has only made conclusory allegations in an attempt to fabricate Plaintiffs' counsel's misconduct.  This conduct is not only improper, but insulting to the Court and to Plaintiffs' counsel, and should not be countenanced.

Even worse yet, KMK manipulates the facts in the Motion for Protective Order in order to give impressions that KMK knows, or should know, is deliberately false.  For example, in both the Motion for Protective Order and the Fischer Affidavit, KMK attempts to blame Plaintiffs' counsel for refusing to delay the depositions of Messrs.

---

[2] In stark contrast, the Plaintiffs have always carefully detailed any allegations of misconduct. For example, in Plaintiffs recently filed Motion to Hold KMK in Contempt for its conduct at depositions, (Doc. No. 344), Plaintiffs carefully researched and inserted literally hundreds of citations to the record of KMK's misconduct.  Here, continuing a pattern that is insulting to the Court, Defendants do not provide even a single example of anything resembling misconduct.

[3] Of course it is too late now, as KMK is prevented by the "anti-sandbagging provision," Local Rule 7.2 (d) from making its substantive allegations in the reply brief.  On the other hand, it must also be remembered that there are no factual allegations to make.

Kreider and Rosenberg until the Court has ruled on the motions to dismiss. (Doc. No. 358 at p. 2, Fischer Affidavit at ¶ 5.)

> "Non-party KMK requested that Plaintiffs delay the depositions until after the Court rules on the pending motions to dismiss, but Plaintiffs' counsel refused."

(Doc. No. 358; Fischer Affidavit at ¶ 5). This is an extremely misleading statement bordering on an outright falsehood. At the status conference held on 30 June 2004, this very topic was addressed as follows, after a similar discussion with respect to Ernst & Young:

> "MAGISTRATE HOGAN: Anybody have anything to say about that? [discovery from E&Y] I don't see any reason to delay discovery with Ernst & Young"

(Transcript of Proceedings, Attached as Exhibit B, at 17).

When this same topic was raised with respect to discovery from KMK, which was recently dismissed, the following exchange took place:

> MR. BRAUTIGAM: [referring generally to discovery from KMK] It's improper and the content is that he doesn't believe that any discovery should take place with respect to KMK, just as Ernst & Young did not believe, while any of the motions to dismiss are pending.
>
> MAGISTRATE HOGAN: I don't agree, okay? So you win that one, too.

(Transcript of Proceedings, Attached as Exhibit B, at 18-19.). KMK has refused to accept this ruling, despite the fact that Rachael Rowe, Esq. was present at the Status Conference, and that Magistrate Judge Hogan literally looked to her when this topic was addressed. In fact, despite her muted protestations to the contrary, Rachael Rowe ably represented

not only KMK at the Status Conference, but her other mutually antagonistic camps of clients.[4]

In essence, what has happened here is that KMK has taken a ruling from the Court, and has attempted to blame Plaintiffs' counsel for complying with the letter and the spirit of the Court's rulings. To state or imply that Plaintiffs' counsel has refused to delay the depositions until all pending motions to dismiss have been ruled on, in light of this Court ruling, not only violates the law of the case but is extremely disrespectful. KMK, as defense counsel and as shadow counsel for non-party KMK, has repeatedly re-argued decisions of this Court, such as in the motions to dismiss the Consolidated Amended Complaint.[5] In an unfortunate reprise, KMK, as shadow counsel, has done exactly the same thing in this Motion for Protective Order.

This disrespect is not only to Plaintiffs' counsel, which has become standard practice, but also to the Court. Although this has not become standard practice from inception, it is becoming more commonplace for KMK to argue points that have already been rejected by this Court. At some point, this must stop.

Therefore, since KMK neither acknowledges the fact that these depositions have already once been agreed to by counsel, nor substantiates any of its allegations against

---

[4] KMK has now retreated from its previous bogus argument that it was improper for a non-party to be present and participate in a status conference at which discovery related matters affecting the non-party were discussed. At the 3 August 2004 Status Conference, where the subject of KMK's complete lack of cooperation was raised, KMK's shadow counsel, this time in the form or two attorneys from Barret & Weber, had no problem arguing on behalf of KMK as a non-party, and thus saving KMK from the uncomfortable position it found itself in last time.

[5] In this instance, not only were exactly the same arguments made, but they were also often made in exactly the same language.

Plaintiffs and their counsel in its Motion for Protective Order, Plaintiffs respectfully request that KMK's Motion for Protective Order be denied for failing to provide the evidence necessary to grant said motion.

### b. Ernst & Young's Approach to Court Ordered Discovery

Ernst & Young had made exactly the same argument that KMK had made—that no discovery should proceed against and Ernst & Young while the motions to dismiss remain pending. But once that argument was soundly rejected by Magistrate Judge Hogan at the 30 June 2004 Status Conference, the approaches of E&Y and KMK diverged sharply. Ernst & Young cooperated in the scheduling of deposition of E&Y engagement partner William Weiners[6]. E&Y did not attempt to impose any artificial restrictions on the depositions or argue that they were unnecessary. While E&Y had initially requested that the deposition proceed in Columbus, Ohio—to which Plaintiffs agreed—E&Y promptly informed Plaintiffs' counsel that the proposed deponent had relocated to North Carolina and as a result, E&Y would produce the witness in Cincinnati. As indicated throughout, KMK's approach was and is dramatically different from that of E&Y.

### 2. The Fischer Affidavit is Not Valid Support for this Motion for Protective Order.

The minimalist Fischer Affidavit does not do anything to change this result. The Fischer Affidavit does not provide adequate support for KMK's Motion for Protective Order because it is conclusory, demonstrably false, and submitted in bad faith. For

---

[6] Unfortunately, despite E&Y's cooperation, Mr. Weiners has recently had a heart attack, is under a doctor's care, and will not be able to be deposed until late August 2004 at the earliest.

example, in paragraph three of the affidavit, Mr. Fischer makes the following

unsupported and unsupportable claim:

> The depositions had numerous objections to improper and repetitive
> questions by Plaintiffs' counsel. The depositions lasted far longer than
> they should have because of inappropriate and duplicative questioning of
> the witnesses.

(Doc. No. 358; Fischer Affidavit, paragraph 3). As stated above, not one deposition

citation has been submitted to substantiate these statements. Paragraph four also contains

several false statements. In particular, paragraph four states as follows:

> "At no time has Plaintiffs' counsel explained why KMK's production of
> over 4,300 documents is not responsive to many if not all of the non-
> objectionable requests in the subpoena, nor has he responded to KMK's
> objections."

(Doc. No. 358; Fischer Affidavit, ¶ 4). This single sentence if demonstrably false in three

different ways. First, KMK has produced only one single piece of paper in response to a

previous subpoena, and that was KMK's document retention policy. Although KMK is

understandably confused as to which documents belong to each client and/or itself, the

documents to which Mr. Fischer refers were produced by KMK's clients, not KMK.

Second, KMK's clients did not produce 4,300 documents, but 4,300 *pages.* This is an

important distinction. It is also significant because KMK is more interested in making

impressive arguments rather than factually accurate ones. Third, Mr. Fischer falsely

states that Plaintiffs' counsel has not explained why this production of documents is

necessary. This false statement is clearly rebutted by the attachments. In his 20 July 2004

letter, Plaintiffs' counsel states as follows:

> As an initial matter, please note that this subpoena is directed to KMK, not
> to the OHSL and Provident Defendants, although it is often hard to tell
> where the former ends and the latter begins. To the extent that you believe
> that the exact same document or documents have previously been

> produced by either the OHSL or the Provident Defendants, would you
> kindly indicate the Bates range on the production in some type of log,
> similar to a privilege log? For example, you might state, all drafts of the
> Proxy Materials/ Registration Statement were previously produced by the
> OHSL and Provident Defendants at Bates range OHSL 001 to 100.

(*See*, 20 July 2004 Letter from Plaintiffs' Counsel to Patrick Fischer, Attached as Exhibit

C). Therefore, this letter confirms that Plaintiffs' counsel stated that this production was

necessary because the subpoena was directed to KMK and not the OHSL and Provident

Defendants, and that it had been the OHSL and Provident Defendants, and not KMK,

who had previously provided the documents which are now at issue.

Thus, given the unsubstantiated allegations and falsities contained in Mr.

Fischer's affidavit, his affidavit is not sufficient to support KMK's Motion for Protective

Order.

### 3. <u>KMK Could Have Filed a More Effective Motion for a Protective Order.</u>

Although the Fischer Affidavit does not provide the support needed to grant the

Motion for Protective Order, there are some affidavits which could have accomplished

this goal. If KMK was truly attempting to protect KMK attorneys from "undue hardship,

burden, and expense, and continuing annoyance and oppression," KMK would have

submitted affidavits from the KMK witnesses stating that they had no involvement in any

issue relating to the materially false and misleading Proxy Materials/Registration

Statement.  KMK, however, prefers to make allegations that track the language of

Federal Rule 26(C). This would be fine if KMK had some evidence to back these

allegations up. However, without any facts to substantiate the baseless allegations made

against Plaintiffs' counsel, this Court must default to the evidenced facts of this case.

The KMK witnesses performed work on the merger. Given their senior status and the

testimony of other KMK attorneys and/or some of the Provident Defendants, it is likely that these KMK attorneys had an important role in the merger process and the creation and dissemination of the materially false and misleading Proxy Materials/Registration Statement.[7] (*See,* Professional Biographies Of Messrs. Kreider and Rosenberg, Attached collectively as Exhibit D). There is no evidence before this Court which is to the contrary. Thus, since affidavits from the KMK witnesses could have easily defeated Plaintiffs' arguments, it is certainly puzzling why KMK has failed to submit any affidavits that state that the KMK attorneys had no or minimal role in the merger transaction. The only logical answer to this question can be that they did not have a minimal role in the merger transaction.

Further, KMK also could have further supported said affidavits by providing copies of KMK's billing records which also show no or minimal involvement in the merger. KMK's refusal to produce the billing records of any KMK attorneys has been a recurring problem in this litigation since the production of these billing records should help counter the frequent memory lapses of the KMK attorneys. Nevertheless, these billing records have never been submitted, and this speaks volumes as to the sincerity of KMK's arguments regarding these depositions.

Finally, it is also curious to note that although KMK has not provided any new evidence in support of its arguments, it has repeated many if not all of the same arguments that it made when arguing against the depositions of the four KMK attorneys who were previously deposed. Messrs. Fischer and Gilligan made both oral and written

---

[7] In fact, the important role of Messrs. Kreider and Rosenberg was recently re-affirmed by Provident's former CFO at his deposition, when he alluded to discussions with both of these attorneys regarding the merger.

statements about the lack of involvement by these attorneys in the merger, only to have these false statements eviscerated by the actual testimony itself. Plaintiffs reasonably expect this process to repeat itself with respect to Messrs. Kreider and Rosenberg. However, although Plaintiffs are confident that their arguments will ultimately be vindicated, the passage of even more time continues to harm Plaintiffs and the putative class.

### 4. There is No Need for the Court or a Special Master to Preside at Depositions.

Finally, there is no need for a special master for the KMK attorney depositions. KMK has once again attempted to fabricate a dispute where none exists, and their disingenuous attempts to poison the well fall short. First, and most recently, KMK and Beiser, Greer and Landis, LLP (hereinafter "BGL"), on behalf of the many camps of mutually antagonistic camps of defendants they represent in opposition to Plaintiffs' Motion to Hold KMK in Contempt, stated as follows:

> **"Given the questions asked by Plaintiffs' counsel, the depositions have proceeded remarkably free of serious conflict."**

(Doc. No. 354 at p. 16, emphasis added). It is impossible for KMK to reconcile this with the statements made in this Motion for Protective Order. In particular, KMK states the following: "The prior four depositions of KMK attorneys were replete with repetitive and inappropriate questioning that resulted in numerous objections that unnecessarily increased the burden and expense of the depositions. (Doc. No. 358, p. 3; Fischer Affidavit, par. 3). This is especially the case since KMK is once again is unable to provide a single example of even a single question that is harassing, overly burdensome, or otherwise improper. Rather, KMK decides to attempt to generally throw in everything

but the kitchen sink in the hope that something sticks in relation to its argument. KMK discusses letters to this court and the mutual dislike shared by KMK and Plaintiffs' counsel. However, neither of these examples substantiates KMK's argument that a special master is needed at the KMK depositions. In sum, KMK is merely arguing what is expedient for that moment rather than honestly presenting the facts of this case. As stated above, such conduct should not be countenanced or rewarded. This is especially true because <u>nothing has changed</u> since the time KMK had previously — though clearly reluctantly — agreed to produce these witnesses for their depositions almost a year ago. Thus, for the foregoing reasons, there is no reason to appoint a special master in this case.

## III.    CONCLUSION

The Motion for a Protective Order (Doc. No. 358) is a bad faith and transparent continuation of KMK's pattern of refusing to meaningfully cooperate with discovery, attempting to thwart all meaningful discovery that has been Court ordered, and knowingly making false statements to the Court. When it is advantageous for KMK and counsel for the OHSL and Provident Defendants to do so, they state that discovery has proceeded "remarkably free of serious conflict." (Doc. No. 354, p. 16). However, when KMK does not want its own counsel to be deposed, KMK steps out of the shadows to falsely claim that Plaintiffs' counsel does not conduct depositions with civility and that a special master is needed to attend the depositions. (Doc. No. 358 at pp. 3-4). As argued above, the latter argument might be given some credence, but for the fact that KMK once again fails to present any evidence to support its claim. Finally, all arguments in this Motion for Protective Order should be moot since counsel previously reached an agreement whereby KMK would produce these witnesses. Although this agreement was

sidetracked by the procedural chaos of the case, and resulting consolidated amended complaint which was filed, this is no reason for KMK and this Court not to honor this former agreement. (*See*, Correspondence from Pat Fischer to Michael G. Brautigam, Attached as Exhibit A).


DATED:  9 August 2004              Respectfully Submitted,


                                   _____
                                   Gene Mesh (OH Bar # 0002076)
                                   Michael G. Brautigam
                                   GENE MESH & ASSOCIATES
                                   2605 Burnet Avenue
                                   Cincinnati, Ohio 45219-2502
                                   (513) 221-8800
                                   (513) 221-1097  (fax)

                                   *Attorneys for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Opposition to Motion for a Protective Order (Doc. No. 358) was served this 9th day of August 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202-4015

**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

David Greer, Esq.
Bieser, Greer & Landis, LLP
400 National City Center
6 North Main Street
Dayton, OH 45402-1908

_____
Stephanie A. Hite