UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

04 AUG 12 AM 10:59

| | | |
|---|---|---|
| **WALTER W. THIEMANN, et al.** | : | Civil Action No. C-1-00-793 |
| **Plaintiffs,** | : | Judge Sandra S. Beckwith |
| vs. | : | Magistrate Judge Timothy Hogan |
| **OHSL FINANCIAL CORP., et al.** | : | |
| **Defendants.** | : | |

### PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE HOGAN'S ORDER (DOC. NO 363)

Plaintiffs respectfully submit this objection to Magistrate Judge Hogan's Order. (Doc. No. 363) This objection is supported by the attached Memorandum in Support.

Dated: 11 August 2004                **GENE MESH & ASSOCIATES**

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*

1

**MEMORANDUM IN SUPPORT OF OBJECTION**

I. **PRELIMINARY STATEMENT**

Magistrate Judge Hogan's Order (Doc. No. 363) is clearly erroneous and contrary to law. In response to Plaintiffs' request for additional time to depose the Provident Defendants regarding the PricewaterhouseCoopers Report (hereinafter "PwC Report") since it was produced after most of the Provident Defendants' depositions were completed, Magistrate Judge Hogan decided to only allow Plaintiffs to depose former Provident CFO Chris Carey on this subject, and not any of the other Provident employees and directors. However, Magistrate Judge Hogan provides no rationale whatsoever for why the Plaintiffs should not be entitled to depose other Provident Directors on this subject, like former CEO Hoverson. In addition, in this Order, Magistrate Judge Hogan also limits this one deposition with Defendant Carey to two hours, but provides no reasoning for this time constraint either. Although the Order states that it recognizes the "complexity" of the PwC Report when deciding whether or not PwC Report should have been produced, Magistrate Judge Hogan seem to discount this issue in relation to these depositions since he declines to consider this document's complexity when deciding the amount of time the Plaintiffs should be given to question Defendant Carey regarding the PwC Report.[1] Finally, the Order declined to discuss the fact that the PwC Report was not

---

[1] Magistrate Judge Hogan has greatly oversimplified the PwC Report in his Order. The Report deals with tens of thousands of auto leases that go back to 1994. It is simply inaccurate, and highly misleading, for the Order to state that the Report deals [only] with "nine auto lease securitization transactions during an approximately two year period ending in December, 1999." (Doc. No. 363, at p.1).

produced for almost a year after it was requested, or that it was not produced until after the majority of the Provident Director Defendants' depositions had been taken.

As a consequence, this Order is shocking in its sweep. The Order neither cites to a single case, nor provides any legal or factual analysis of the issue before the Court. Further, if allowed to stand, the Order will have the effect of rewarding Defendant Provident's for its unethical behavior in strategically withholding the PwC Report until after the depositions of the Provident Director Defendants were substantially completed. The issue before the Court should have been framed as follows: if Provident had produced the PwC Report in July 2003 and not July 2004, would it have been appropriate for Plaintiffs to ask questions of all of the Provident Directors related to the report? Clearly it would be entirely appropriate for Plaintiffs' counsel to question Provident directors with respect to this report. In fact, without the benefit of the report, Plaintiffs' counsel did just that with respect to Mr. Hoverson. Unfortunately, when Plaintiffs deposed Mr. Hoverson, the CEO, Chairman of the Board, and Provident Director was improperly instructed not to answer questions related to the PwC Report.[2]

As a result, for the foregoing reasons, Plaintiffs respectfully object to the part of Magistrate Judge Hogan's Order (Doc. No. 363) that responded to Plaintiffs' request for additional time to depose former Provident employees and directors based upon Defendant Provident's very recent and tardy production of the PwC Report. Plaintiffs submit that for these reasons, and the reasons discussed below, Magistrate Judge Hogan's Order is clearly erroneous, contrary to law in ways both large and small, and should be

---

[2] Mr. Hoverson was improperly instructed not to answer the questions because the document is clearly relevant and is not privileged based upon the work product doctrine. This was confirmed by Magistrate Judge Hogan in this Order. (Doc. No. 363).

overturned in its entirety[3]. (A transcript of the August 3, 2004 Status Conference is attached as Exhibit A.)

## II.  LEGAL ARGUMENT

### B.  Standard for Filing an Objection to a Magistrate's Order

Title 28, Section 636(b)(1)(A) permits a judge to "designate a magistrate to hear and determine any pretrial matter pending before the court" except those matters that are dispositive. A district court may reconsider any pretrial matter ruled upon by a magistrate judge "where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. Section 636(b)(1)(A); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2nd Cir. 1990) (citation omitted). An order is "clearly erroneous" only when the reviewing court is left with the "definite and firm conviction

---

[3] There is a repeated inattention to detail in Magistrate Judge Hogan's orders. In this Order, he incorrectly refers to the date on which the informal status conference was held as August 2, 2004, rather than August 3, 2004; refers to Plaintiff (singular) when there are three named Plaintiffs as well as a putative class; and discusses Mr. Brautigam's health inquiry regarding the Provident Directors when it actually involved the OHSL Directors. Although these are just some of the small and inconsequential errors that Magistrate Judge Hogan has made in this Order, these errors are neither an isolated event nor are they always this inconsequential. One of the most obvious examples was when Magistrate Judge Hogan stated that he had observed the second deposition of Mr. Brinker, and after having reviewed Mr. Brinker's pervious 800 page deposition, said it was "apparent to the Court that the latter deposition elicited nothing further than what was previously elicited during Mr. Brinker's first deposition." (3/5/04 Order (Doc. No. 295). Although the OHSL and Provident Defendants knew that this was not true since Plaintiffs' counsel questioned Mr. Brinker on many subjects which he could not have questioned Mr. Brinker about in 2000, including the 2003 Restatements, Walter Thiemann being named as lead plaintiff, and the disqualification of KMK, this did not stop the OHSL and Provident Defendants from trying to use this part of this previous order to their advantage. (Doc. No. 354). As a result, it is easy to see how inattention to detail of even small issues can quickly grow to larger ones and become prejudicial to certain parties in this case. It is unclear whether this pattern stems from his previous proclamation that he dislikes class actions cases in general or his equally evident dislike for Plaintiffs' counsel. However, either way, these beliefs have clearly colored every discovery decision in this case.

that a mistake has been committed.'" *Thompson v. Keane,* 95 CV 2442, 1996 U.S. Dist. LEXIS 6022 at 1 (S.D.N.Y. May 6, 1996) (citations omitted).

When reviewing a magistrate judge's ruling made pursuant to 28 U.S.C. Section 636(b)(1)(A), "the district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact." *Haines v. Liggett Group, Inc.,* 975 F.2d 81, 91 (3rd Cir. 1992). However, if a district court finds that the standard has been met, a district judge should "modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *See also,* 28 U.S.C. Section 636(b)(1)(A).

A party seeking to overturn a discovery order therefore bears a heavy burden. See, *Com Tech Assocs. v. Computer Assoc. Int'l,* 753 F. Supp. 1078, 1079 (E.D.N.Y.), aff'd, 938 F.2d 1574 (2nd Cir. 1991). "Pursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused." *Universal Acupuncture Pain Serv., P.C. v. State Farm Mutual Auto. Ins. Co., et al.,* No. 01 CV 7677, 2002 U.S. Dist. LEXIS 19555 at 2 (S.D.N.Y. Oct. 10, 2002) (citing *Lanzo v. City of New York,* No. 96 CV 2342, 1999 U.S. Dist. LEXIS 16569 at 2 (E.D.N.Y. Sept. 21, 1999).

Here, Magistrate Judge Hogan has abused his discretion. He has issued an Order that is demonstrably wrong in many ways. His Order provides for the sweeping conclusions that only Provident CFO Carey should be deposed regarding the PwC Report, and that he should only be deposed for two hours, because "Plaintiff's argument makes more sense in respect to Mr. Carey than it does in respect to the Provident Directors, who could not have the depth of knowledge possesses by Mr. Carey, the

C.F.O." (Doc. No. 363, Order, p. 1). However, Magistrate Judge Hogan provides no insight as to why he does not believe that the CEO of Provident, the Provident Directors, or the Provident audit committee members would also not be able to provide any insight as to this document. The refusal to provide any factual or legal analysis in support of this bizarre decision is clearly erroneous and contrary to the law.

### B. The Time for Defendant Carey's Deposition Should Not Be Limited Based Upon the Fact that This Case Constitutes Complex Litigation and the PwC Report is a Complex Document.

All aspects of this case indicate that it constitutes complex litigation. The case law is very clear that class actions generally, and securities actions specifically, are considered complex litigation. The *Manual for Complex Litigation, Fourth Edition (2004)* mentions class actions as a type of complex litigation. Although the manual does not have the force and effect of law, it is considered by other federal courts to be an excellent reference and text on handling complex cases. Further, the federal courts are largely in agreement that class actions and securities litigation is considered complex federal litigation. *See King v. Greenblatt*, 560 F.2d 1024, 1026 (1st Cir. 1977). In *Kerr v. Holsinger* (March 25, 2004), 2004 U.S. Dist. LEXIS 7803 (E.D. KY 2004) and *Coleman v. GM Acceptance Corp.* (January 14, 2004), 220 F.R.D. 64 (M.D. TN 2004) both courts states that class actions were considered to be complex litigation. Similarly, in *In re AremisSoft Corporation Securities Litigation*, 210 F.R.D. 109 (D.C. NJ 2002), the district court stated that "[t]his case is no exception to the rule that securities litigation involves complex issues of fact and law." Id. at 125. Similarly, in *In re Corel Corporation Inc. Securities Litigation*, 293 F.Supp.2d 484, the court referred to shareholder securities litigation as a "highly complex field." Id. at 486. Additionally, in *Silva Run Worldwide*

*Limited v. Gaming Lottery Corporation, et al.* (May 14, 2004), 2003 U.S. Dist. LEXIS 7987 (S.D. N.Y.), the district court discussed the "complex nature of discovery in securities litigation." Id. at 22.

In addition, Plaintiffs are not the only ones in this action who consider this case to be complex litigation. Provident CFO Carey stated that this case dealt with "relatively complex accounting" issues, whereas Provident CFO stated that the auto leases, which were the cause of the restatements, were "extraordinarily complex transactions." (Carey dep. p. 92; Hoverson dep. p. 341). Similarly, Defendant Provident obviously considers this to be complex litigation because it cited to the Manual for Complex Litigation (1985) Section 21.431 in its Motion for Order Maintaining Confidentiality and Declaring Proper Designation of PricewaterhouseCoopers Report as "Confidential" Pursuant to 10/1/01 Stipulated Protective Order. (Doc. No. 360). Finally, and perhaps most persuasively, this Court's Order which granted Ernst & Young's Motion to Dismiss (Doc. No. 336) stated that Judge Spiegel had noted in a parallel case involving the same financial restatements and GAAP provisions, that GAAP principle FAS 13 was a "complex provision" which allowed a "range of professional discretion in application." Id.

In fact, it appears that Magistrate Judge Hogan is the only person involved with this litigation who has affirmatively stated that he does not believe that this is complex litigation. Plaintiffs are uncertain why Magistrate Judge Hogan made this comment at the 30 June 2004 Status Conference and incorporated it into the resulting Order (Doc. No 349), but it is clearly erroneous and contrary to law. For whatever reason he reached this conclusion, it is clear that Magistrate Judge Hogan has allowed this view to color his other discovery decisions in this case. In particular, in this Order, Magistrate Judge

Hogan has unfairly limited the ability of the Plaintiffs to fully and fairly question the Provident Defendants about the PwC Report without providing any legal or factual basis for doing so. To the extent that Magistrate Judge Hogan is basing his decisions in this case on his erroneous view that this is not complex litigation, Plaintiffs respectfully submit that the District Court issue a specific finding that this is complex litigation for the following reasons: (1) There are a large number of parties in the case; (2) the case is document intensive; (3) the issues are complex; and (4) the case covers an exceptionally long period of time.

### C. Plaintiffs are Entitled to a Full and Fair Opportunity to Question Relevant Witnesses.

#### 1. Magistrate Judge Hogan's Order Provides More Questions than Answers.

There should be no debate that Plaintiffs and Defendants are entitled to a full and fair opportunity to depose relevant witnesses. Plaintiffs understand that there is a presumptive seven hour limit for depositions provided for in the Federal Rules. However, for reasons that should be clear to all by now, Plaintiffs do not believe that this presumptive seven hour limit is as applicable when the case involves complex litigation and the subject matter of the pending deposition is a complex document like the PwC Report. In further support of this argument, Plaintiffs incorporate by reference their previous objection to Magistrate Judge Hogan's July 2004 Order, (*See*, Order, Doc. No. 349 and Objection, Doc. No. 351).

Magistrate Judge Hogan's present Order does not allow for a full and fair opportunity to question these witnesses on regarding the PwC Report. The complexity of the general subject matter of this case, and the PwC Report in particular, necessitates that

Plaintiffs' counsel be given more time to question the Provident Director Defendants about this PwC Report. The PwC Report is 31 pages long single spaced. It deals with exceedingly complex accounting issues that are directly relevant to the allegations of this case. Even the complexity of the document was not lost upon Magistrate Judge Hogan who stated that he was permitting Plaintiffs to depose Defendant Carey for an additional amount of time because the of the late production of the document "and its complexity." However, despite this acknowledgement, Magistrate Judge Hogan has given absolutely no factual or legal reason as to why Plaintiffs should only be limited to deposing former CFO Chris Carey, or why this deposition should be limited to only two more hours. In fact it does not allow for any questioning of any of the Provident Director Defendants on the PwC Report. Although there are several Director Defendants, including the CEO and audit committee members, who could provide additional insight into the PwC Report, Magistrate Judge Hogan gives no rationale for why he is precluding the Plaintiffs from deposing said individuals. Certainly the PFGI Director Defendants, in the exercise of their fiduciary duty, must have some familiarity with and understanding of the PwC Report and the issues it discusses. It is inconsistent with the law to completely shield these key players from questioning on this critical topic.

As a result, it can only be concluded that not only this Order improperly raises many more questions than it answers, but that it prevents a full and fair examination of relevant witnesses, and is clearly erroneous and contrary to law.

    **2.**    **The Relevancy of the PwC Report to this Case Should Not be Questioned or Underestimated.**

It is unclear if Magistrate Judge Hogan questions relevance or importance of the PwC Report in this case. Although Magistrate Judge Hogan did not state that the PwC

Report lacks relevancy when he stated that he was limiting the depositions regarding the PwC Report to only a two hour deposition of Defendant Carey, the fact that Magistrate Judge Hogan has so severely restricted Plaintiffs' ability to conduct discovery related to this Report causes Plaintiffs to question whether or not such reasoning entered into his decision making process. This is especially the case since Magistrate Judge Hogan has recently given a rather bizarre speech regarding the appropriateness of the use of documents at a deposition. Although Magistrate Judge Hogan correctly observed that any documents used at a deposition should have some logical relationship to the deponent, he went on to give an example which would be completely inapplicable to the facts of this case[4]. In particular, he stated as follows:

> "Refusal to answer questions? I mean, the witness is supposed to be directed to answer questions unless it's privileged. And then there better be a good reason why he's told not to answer the question. I don't know about refusing to answer - - - comment on a question, refusing to answer it based on it's not for me to interpret.
>
> Well, I don't know if it is or it isn't. It depends on what the document is and what is asked. If you presented me with a document from the Air Force Base and said interpret it, I'd way what is this? If it's an appropriate witness who was asked a question he should know, it's different. I can't decide that in a vacuum."

(*See*, Transcript of Proceedings, Attached as Exhibit "A"). The reason that this speech is so bizarre is that no documents were ever provided to the Provident Director Defendants which would have been as irrelevant to the facts of this case as Air Force Base

---

[4] It is KMK, not Plaintiffs, who would profit from this advice. In each of the two depositions that KMK attorneys have taken since inception of the litigation, KMK has repeatedly harassed each witness by questioning on an internal OHSL document that both witnesses had not seen before, were not familiar with, and did not know how to interpret. This did not stop KMK from attempting to force speculative answers from the witnesses on this document, which was an entirely inappropriate subject to question these witnesses on.

documents.[5] Further, no documents were ever provided to the Provident Director Defendants which did not have a logical relationship to their role in this litigation. The fact that Magistrate Judge Hogan would use the example of "Air Force Base documents" to discuss the issue of relevancy of document review during depositions is disconcerting to the Plaintiffs to say the least. If Magistrate Judge Hogan equates himself being asked to review Air Force Base documents as being comparable to the Provident Defendants being asked to review Proxy Materials/Registration Statements, PwC Report, and other merger related documents, then it follows that Magistrate Judge Hogan would probably also not see the relevancy and extreme importance of the Plaintiffs being able to question the Provident Defendants about the PwC Report. Thus, if the decision in the Order to limit the questioning regarding the PwC Report to Defendant Carey for only two hours was the result of Magistrate Judge Hogan belief that the PwC Report was not that relevant or critical to this case, then this Order is clearly erroneous and contrary to the law. It would be a mistake which is incredible in its sweep. If the PwC is not relevant to the Provident directors, then nothing is.

3. **There is No Factual or Legal Support for Magistrate Judge Hogan's Conclusion that the Provident Directors Cannot be Expected to be Conversant with the PwC Report.**

Further, although Magistrate Judge Hogan never provides any real reasons or rationale for his decision, it should be noted that this Order is also clearly erroneous and contrary to the law because he does indicate that he did not expect that the majority of the Provident Defendant Directors would be conversant regarding the PwC Report. In particular, Magistrate Judge Hogan states as follows:

---

[5] Plaintiffs have no idea where Magistrate Judge Hogan came up with the bizarre "Air Force Base documents" example, as it has nothing to do with the facts of this case.

11

> Plaintiff now asserts that because of the late production of the document and its complexity, he should be able to depose the Provident directors for a longer period than that previously permitted by the Court. Plaintiff's argument makes more sense in respect to Mr. Carey than it does to the Provident Directors, who could not have the depth of knowledge possessed by Mr. Carey, the C.F.O.

(Order, Doc. No. 363 at 1). There is no factual or legal basis for this statement. Incredibly, without any analysis or explanation, Magistrate Judge Hogan literally gives the Provident Director Defendants a pass with respect to their fiduciary duties in relation to this absolutely critical document.

Although it was not readily apparent from his prior testimony, Plaintiffs certainly do not dispute that Defendant Carey should be among the most knowledgeable about the complex accounting issues discussed in the PwC Report. However, just because he should be knowledgeable, this does not mean that the Provident Director Defendants would also not be knowledgeable about these issues. In fact, in order to fulfill their fiduciary duties, they must be knowledgeable about the public company on whose board they serve. These duties include an understanding of accounting issues, especially for those serving on the audit committee. If the prospective director finds these accounting issues and principles to be too complex, then the individual has no business serving on the board.

Thus, although Magistrate Judge Hogan's belief that the Provident Director Defendants would not be expected to be knowledgeable about the PwC Report does not provide any of the desperately sought answers in relation to this Order, it does provide additional insight into Magistrate Judge Hogan's beliefs and thinking regarding the duties and responsibilities of directors of public corporations. As long as Magistrate Judge Hogan has a misguided view of not only the complexity of this litigation, but also the role

of the Provident Director Defendant in the events leading up to this action, Plaintiffs are certain that Magistrate Judge Hogan will continue to render the same type of misguided decisions which have significantly harmed Plaintiffs and significantly contributed to what Magistrate Judge Hogan has aptly described as the procedural "chaos" of the case. (*See*, Transcript of Procedings, Doc. No. 220 at 36).

### 4. The Conduct at these Depositions Mandates Additional Time be Provided to Plaintiffs

The Federal Rules also permit depositions to be extended if the conduct of counsel or the deponents necessitates granting opposing counsel additional time to compensate for said conduct. In particular, Federal Rule 30(d) sets forth some rules for the taking of deposition and states, in pertinent part, as follows:

> (1) Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).
>
> (2) Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination.
>
> (3) If the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof.

Id. Thus, Federal Rule 30 clearly provides for beyond the presumptive seven hour limit if the conduct of counsel or the deponent has frustrated a fair examination of the deponent. Plaintiffs submit that this is exactly what occurred in the present case.

In this case, the imposition of an artificial limitation of two hours on the deposition of former Provident CFO Chris Carey not only encourages him to again be

non-responsive during his deposition, but enables him to figuratively "run out the clock" on his deposition. On the other hand, if no such time constraint is provided, then the deponent is less likely to use these tactics since he realizes that he is going to be there until all the questions are answered. Plaintiffs are not just speculating when they make this argument, but rather are making it from experience. Plaintiffs have already endured such behavior in the Provident Director Defendants' prior depositions and have provided specific examples of such behavior in Plaintiffs' Objection to Magistrate Judge Hogan's July Order (Doc. No. 349). Specifically, during his earlier deposition, Defendant Carey refused to answer, objected, and/or stalled in relation to nearly every question asked of him.[6] This was a successful strategy because the amount of time for the deposition was the same regardless if he answered every question in a responsive and timely manner or if he refused to answer, objects to, and/or stalls in relation to every question asked of him.[7]

---

[6] In some cases, the Provident Director Defendants delayed in answering basic questions which related to that person's area of expertise. In particular, both Defendants Hoverson and Carey appeared shockingly ignorant of facts that should be within their purview. Worse yet, there was a disturbing pattern of preemptive strikes by the witnesses, obviously at the direction of counsel, where an objection was made on the basis of "speculation," and the witness then agreed with his own counsel and refused to "speculate," although no speculation is required. Finally, with some of the questions, some of the witnesses seem to have confused the deposition process with a press conference, and responded to tough questions with the obviously improper response of "no comment."

[7] Even if this was not an issue, it should be obvious that an additional two hours to cover a single spaced 31 page document covering some of the most complex accounting issues imaginable is insufficient. Although a reasonable time limitation could possibly be provided in a normal case, the conduct of the Provident Defendants, and Defendant Carey in particular, has necessitated a finding that the only way for Plaintiffs to be able to fully and fairly question Defendant Carey about the PwC Report is not to place any time limitations at all upon said questioning. Consistent with Rule 30(d)(2), the Court must allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent.

As a result, since these tactics quickly depleted the time period allotted, there is no reason to believe that he will not do so again. This is especially the case since the time frame is even shorter this time.

Thus, given the past conduct of Defendant Carey, Magistrate Judge Hogan's Order is clearly erroneous and contrary to the law because two hours is not a sufficient amount of time to completely and thoroughly question him about a complex document like the PwC Report.

### 5. Magistrate Judge Hogan's Order Rewards the Provident Defendants for Improperly Withholding the PwC report for more than a year.

No matter what his intent, the end result of Magistrate Judge Hogan's Order has been to reward the Provident Defendants for improperly withholding the PwC report for more than a year, and to completely thwart meaningful discovery on this critical document. There can be no doubt that Defendant Provident made a strategic decision to fail to produce the PwC Report until more than a year after it was requested, and to produced it at a time when the majority of the Provident Defendant depositions were substantially complete. It is clearly contrary to law for counsel to improperly withhold a critical document for more than a year, instruct clients not to answer questions based on the fact that this report is covered by the work produce doctrine, and then change course, and produce the report after the depositions are substantially complete and the report's value is limited.[8] It is equally contrary to the law for a court to permit or condone such a

---

[8] This is an unfortunate reprise of the strategic positions taken by the OHSL and Provident Defendants with respect to the deposition of former OHSL Chairman Norbert Brinker. With respect to that deposition, Mr. Brinker's counsel waited until after Magistrate Judge Hogan had ruled that Mr. Brinker's deposition could not be resumed

discovery abuse. Unfortunately, this is what this Court has done in its Order. (Doc. No. 363). In fact, despite the obvious importance of the timing of the production of this document, Magistrate Judge Hogan's Order makes no mention of it whatsoever.

Although Plaintiffs are clearly disappointed and frustrated by this ruling, they are equally concerned about the affect that this decision will have on the OHSL and Provident Defendants' future conduct. The OHSL and Provident Defendants' are likely emboldened by the fact that they have not only avoided any negative consequences for their discovery abuse, but that they have been rewarded for them. The OHSL and Provident Defendants' counsel has already been successful in their strategy of instructing witnesses not to answer questions on the PwC Report based upon the false assertion of the work product privilege. Now, the OHSL and Provident Defendants have succeeded in keeping the PwC Report away from Plaintiffs for over a year, even though this Court did not find that it was protected by the work product doctrine, until after most of the Provident Director Defendants' depositions have been completed. Although Plaintiff received and reviewed more than 100,000 pages of documents in response to their discovery request regarding the 2003 Restatements, the OHSL and Provident Defendants conveniently failed to include the PwC Report, or one of the most important documents which Plaintiffs' sought.[9] Thus, since this Court is not only not doing anything to stop

---

before submitting an errata sheet that changed the very substance of much of his testimony.

[9] Mr. Burke's statement to the Court that Plaintiffs had not previously requested this document is false. Also, the possibility that this 31 page PwC Report was unintentionally omitted from the more than 100,000 pages that Provident produced in the summer of 2003 to Plaintiffs is equally so.

this pattern of discovery abuse, but is actually enabling it, the Plaintiffs must object to this Order now so not only the present error contained in this Order can be corrected, but also to eliminate such conduct in the future.

> 6. **Magistrate Judge Hogan Made Gratuitous Comments About Plaintiffs' Counsel 's Request for an Update on the Health of the OHSL Director Defendants at the August 3, 2004 Status Conference in which Magistrate Judge Hogan Inexplicably Confused Plaintiffs' Counsel's Inquiry about the OHSL Directors with an Inquiry about the Provident Directors (Doc. No. 363, Order, p. 2).**

Finally, although this is not directly relevant to the objection of record, Plaintiffs also believe it should be noted that Magistrate Judge Hogan is not only misguided in his legal and factual decisions, but he has shown a continuing disdain and/or dislike for Plaintiffs' counsel. This is illustrated by Magistrate Judge Hogan's repeated *sua sponte* comments about Plaintiffs' counsel in the record. The latest example involves Plaintiffs' counsel reasonable inquiry into status of the OHSL Director Defendants health at the August 3, 2004 status conference. Plaintiffs' counsel had previously asked Mr. Burke for such information in an effort not to trouble the Court with this issue, but he never received a response. Plaintiffs' counsel inquired as to the health of the OHSL Director Defendants solely to determine whether or not Plaintiffs would be able to call them as live witnesses, or whether Plaintiffs would be forced to rely on depositions transcripts and in some cases, videotapes of depositions at trial. This was a reasonable request given that the OHSL Director Defendants are all progressing in years, and many are elderly and infirm. In particular, the former Chairman of OHSL, Defendant Brinker, has reportedly not been well for some time, and many other OHSL Defendants have had multiple health

problems.[10] Further, Plaintiffs' counsel did not make this request in a flippant or insincere manner, but merely requested information which is important and necessary to him in his trial preparations.

Rather than just respond to this reasonable request, Magistrate Judge Hogan has again imputed an improper purpose to Plaintiffs' counsel for seeking this information. In particular, Magistrate Judge Hogan took this opportunity to provide more *sua sponte* comments which again not only reveals his lack of understanding of the issue at hand, but his dislike for Plaintiffs' counsel. In particular, Magistrate Judge Hogan stated "The Court considers such a request to be unnecessary for any conceivable legitimate reason, without even discussing the involved individuals' right of privacy." (Doc. No. 363). It is truly inconceivable that such an innocuous request would be treated so nefariously by the Court.

Thus, although this comment in the Order does not reflect directly upon the objection which is at issue in this Memorandum, it is another piece of the puzzle which must be considered when reviewing this Objection. Although Plaintiffs realize that all individuals have personal preferences and individual biases, and that these preferences and biases cannot be separated from a person when acting in a professional capacity, it is becoming clear that Magistrate Judge Hogan is having a harder and harder time suppressing his bias against Plaintiffs' counsel in his decisions and orders since virtually every order includes a personal attack on Plaintiffs' counsel for one reason or another.

---

[10] When the OHSL and Provident Defendants wanted to limit the deposition of Defendant Brinker, and sought other accommodations due to the many health problems of a majority of the former OHSL Directors, they were only too happy to inform Plaintiffs' counsel of his ailing health and that of other former OHSL directors.

### III. **CONCLUSION**

Thus, for the foregoing reasons, and because this Order is clearly erroneous and contrary to law, Plaintiffs respectfully request that this Order be overturned with respect to those areas objected to herein and that the District Court order a full and fair opportunity to depose the Provident Director Defendants with respect to the PwC Report.

DATED: 12 August 2004                    Respectfully Submitted,

*/s/ Michael L. Brautigam*
Gene Mesh (OH Bar # 0002076)
Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (fax)

*Attorneys for Plaintiffs and the*
*Putative Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs' Objection to Magistrate Judge Hogan's Order (Doc. No. 363) was served this 12th day of August 2004 as follows:

**BY HAND DELIVERY**

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752


**BY U.S. MAIL**

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249.

David Greer, Esq.
Bieser, Greer & Landis
400 National City Center
6 North Main Street
Dayton, OH 45402-1908

_____
Stephanie A. Hite