# Exhibit A

Page 1

```
 1              UNITED STATES DISTRICT COURT
 2               SOUTHERN DISTRICT OF OHIO
 3              WESTERN DIVISION AT CINCINNATI
 4
 5                         - - -
 6   WALTER W. THIEMANN, on    :
     behalf of himself and     :
 7   of all others similarly   :
     situated,                 :
 8                             :
              Plaintiff,       :
 9                             :
         VS.                   :  CASE NO. C-1-00793
10                             :
     OHSL FINANCIAL CORP.,     :
11   OAK HILLS SAVINGS AND     :
     LOAN COMPANY, F.A.,       :
12   NORBERT G. BRINKER,       :
     KENNETH L. HANAUER,       :
13   WILLIAM R. HILLEBRAND,    :
     ALVIN E. HUCKE, THOMAS    :
14   E. MCKIERNAN, JOSEPH J.   :
     TENOEVER, HOWARD N.       :
15   ZOELLNER, PROVIDENT       :
     FINANCIAL GROUP, INC.,    :
16   ROBERT L. HOVERSON,       :
     JACK M. COOK, THOMAS D.   :
17   GROTE, JR., PHILIP R.     :
     MYERS, JOSEPH A. PEDOTO,  :
18   JOSEPH A. STEGER,         :
     CHRISTOPHER J. CAREY,     :
19   CLIFFORD ROE, and         :
     DINSMORE & SHOHL, LLP,    :
20                             :
              Defendants.      :
21
                           - - -
22
23         Hearing held before Magistrate Judge
24   Hogan taken by me, Lee Ann Williams, a
```

Page 2

```
 1   Registered Professional Reporter and Notary
 2   Public in and for the State of Ohio, on
 3   Tuesday, August 3, 2004, at 10:00 a.m.
 4
 5   APPEARANCES:
 6       On behalf of the Plaintiffs:
 7           Michael G. Brautigam, Esq.
             Gene Mesh & Associates
 8           2605 Burnet Avenue
             Cincinnati, Ohio 45219
 9
         On behalf of the Defendants:
10
             James Burke, Esq.
11           Keating, Muething & Klekamp
             1400 Provident Tower
12           One East Fourth Street
             Cincinnati, Ohio 45202
13
         On behalf of the Defendants:
14
             James Greer, Esq.
15           Bieser Greer Landis
             400 National City Center
16           Six North Main Street
             Dayton, Ohio 45402
17
         On behalf of the Defendants:
18
             John W. Hust, Esq.
19           Schroeder, Maundrell, Barbiere
             & Powers
20           110 Governor's Knoll
             11935 Mason Road
21           Cincinnati, Ohio 45249
22
23
24
```

Page 3

```
 1       On behalf of the Defendants:
 2           Michael R. Barrett, Esq.
             and
 3           Thomas William Breidenstein, Esq.
             Barrett & Weber
 4           Suite 500
             105 East Fourth Street
 5           Cincinnati, Ohio 45202
 6
     ALSO PRESENT:  Linda Smith
 7
 8                    ---
```

Page 4

```
 1            MR. BARRETT:  Your Honor, Tom and
 2   I are here on behalf of the KMK defendants who
 3   were previously dismissed from the case, but we
 4   wanted to appear today in the event that there
 5   were discovery issues that were brought to the
 6   Court's attention.
 7            I don't think there have to be,
 8   because appropriate filings can be made and
 9   handled that way, but in case there were
10   comments that needed to be addressed, we are
11   here and would request the Court's permission
12   to stay in the conference in that regard.
13            MAGISTRATE JUDGE HOGAN:  Okay.
14   What's up, I guess, is --
15            MR. BRAUTIGAM:  Your Honor, first
16   of all --
17            MAGISTRATE JUDGE HOGAN:  You
18   wanted the conference, so you're on top of
19   what's happening.
20            MR. BRAUTIGAM:  Well, I'm trying
21   to be, Your Honor.  First of all, I'd like to
22   say that Mr. Mesh is feeling under the weather
23   today.  I spoke to him this morning and he
24   chose not to come to the status conference.
```

Page 5

```
 1   There was some talk about his calling in, but I
 2   believe he's going to the doctor and that's why
 3   he's not here.  He sends his regards.
 4            Your Honor, I do have a little bit
 5   of a briefing, and I'd like to start with
 6   something from the Bieser Greer web site and it
 7   says, "never mistake motion with action."  And
 8   there's been a lot of motion in the past month,
 9   but there's been no action.
10            Really since we met before you on
11   June 30th, essentially nothing has been done.
12   A lot of papers have been filed, but nothing of
13   substance has happened.  And we appreciate your
14   taking the time to meet with us to see if some
15   of these things can be resolved.
16            Now, one of the points I have is
17   that your order, document number 349, allowed
18   for additional time with some of the individual
19   Provident defendants.  These depositions have
20   not yet been set up.  And I understand that Mr.
21   Carey has now moved to California.  And we
22   believe that KMK should pay for our travel
23   expenses to California, because last time when
24   we were here, they knew of his imminent move
```

Page 6

1  and they didn't say anything about it until
2  much later when we couldn't take his deposition
3  before he left. So that's an issue.
4          MR. BURKE: If I can respond to
5  that -- or do you want to go seriatim?
6          MR. BRAUTIGAM: Why don't you
7  respond?
8          MR. BURKE: We're prepared to make
9  Mr. Carey available. It's an additional hour,
10 so I don't think anybody should be flying to
11 California. We have video conferencing at our
12 office, we've offered to do that or to make him
13 available by phone.
14         I have already told Mr. Brautigam
15 that we're going to make Mr. Carey available
16 for the additional hour that he's entitled to.
17 When parties shift costs, it's usually between
18 plaintiffs and defense, and KMK is no longer a
19 defendant. But in any event, we're certainly
20 willing to make Mr. Carey available, but I
21 don't believe that anybody should fly to the
22 west coast for one hour.
23         MR. BRAUTIGAM: Well, Your Honor,
24 we respectfully disagree. Also --

Page 7

1          MAGISTRATE JUDGE HOGAN: Why?
2          MR. BRAUTIGAM: Because we believe
3  that the deposition should be done in person.
4  And also there's the issue of the PWC report,
5  Your Honor.
6          MR. BURKE: Wait, let's deal with
7  Mr. Carey first.
8          MR. BRAUTIGAM: It relates to Mr.
9  Carey.
10         MR. BURKE: Okay.
11         MR. BRAUTIGAM: Your Honor, you
12 provided for an additional hour for Mr. Carey.
13 We'd like to accept that offer and we feel that
14 KMK as defense counsel was remiss in not
15 telling us at the last time, hey, you only have
16 a couple of days to do that if you want to do
17 it in Cincinnati, he's moving to California.
18         MR. BURKE: No, Mr. Carey was not
19 available prior to the time he left.
20         MAGISTRATE JUDGE HOGAN: Is there
21 a certain advantage that I'm not aware of to
22 conducting a deposition in person versus video
23 transmission that somehow prejudices the
24 plaintiff?

Page 8

1          MR. BRAUTIGAM: Your Honor, I've
2  been involved in videotaped depositions and
3  it's my belief that it would be more effective
4  to take it in person.
5          MR. BURKE: I think if that's his
6  preference, Your Honor, I don't see that
7  there's any strategic disadvantage. If that's
8  his preference, he can fly out there on his own
9  nickel, I don't know why we should pay for it.
10 If he doesn't like video conference, he can do
11 it by phone.
12         MR. BARRETT: Your Honor, since
13 we've been asked to pay for it, I would add
14 that this is a continuation, it's not an
15 initial deposition, so --
16         MAGISTRATE JUDGE HOGAN: The only
17 issue I can think of that makes it a little
18 cumbersome is document identification, which in
19 the case of a video conference, the documents
20 that you want Mr. Carey to look at or review
21 could be sent to him in advance so that he has
22 them. Other than that, I can't imagine what
23 the issue is, really, unless you can be more
24 specific. How are you disadvantaged by that

Page 9

1  kind of a process?
2          MR. BRAUTIGAM: Your Honor, I
3  believe that Mr. Carey is going to take this
4  last hour and attempt to run out the clock.
5  And it's much harder to do this on video. I
6  have participated in these things with mixed
7  results.
8          I think that it's fair that I take
9  his deposition in person. And this also
10 triggers the issue of the PWC report, and I
11 respectfully submit that it's related.
12         Your Honor, last time we were
13 here, KMK said that they would make a decision
14 on whether or not the PWC report was work
15 product in two days. They didn't do that, they
16 sent me a letter saying we need some more time.
17 They missed their next deadline, but ultimately
18 they did decide to turn it over to us and they
19 produced it to us by hand delivery on July
20 16th.
21         Your Honor, this raises serious
22 questions as to why this wasn't produced a year
23 ago and why plaintiffs should not be able to
24 take the deposition of all of the Provident

Page 10

1  directors with this document. This is a key
2  document.
3       There's no legal reason why this
4  wasn't turned over a year ago, why it's turned
5  over now when I'm effectively prevented or
6  limited from taking their depositions. And,
7  Your Honor, I guess we would like some guidance
8  on now to proceed. Do you want papers?
9       I've made a copy for you if you'd
10 like this for an in camera review, but this is
11 a crucial document that was produced late
12 through no fault of our own. We asked for this
13 a year ago. We didn't get it until July 16th,
14 just a couple of weeks ago.
15      And there's no reason why we
16 should be prevented from taking the depositions
17 of all of the Provident directors with respect
18 to this document.
19      MR. BURKE: You did not ask for it
20 a year ago, Mr. Brautigam. You asked for it
21 recently. We still maintain that we believe
22 that it's work product, okay? We believe that
23 that's a viable position. In order to avoid
24 inconveniencing the Court any further with this

Page 11

1  nonsense, we went forward and over some strong
2  objections produced the report.
3       You've objected to our designation
4  of it as confidential, that's already been
5  filed with the Court. But it has been
6  produced, you got the document, and as far as
7  I'm concerned, you've got Mr. Carey for an
8  hour, you've got Mr. Hoverson for an hour.
9  You're free to take the deposition and to
10 question them about the document. It's not
11 even their document.
12      MAGISTRATE JUDGE HOGAN: Okay. I
13 can decide one of these right now. I'd like to
14 look at that, Mike, if you can leave a copy of
15 that.
16      MR. BRAUTIGAM: Yes, Your Honor,
17 this is for you.
18      MAGISTRATE JUDGE HOGAN: And we
19 can decide this before 5:00 tonight, okay?
20      MR. BURKE: That's fine, Your
21 Honor.
22      MAGISTRATE JUDGE HOGAN: That's
23 the second issue. But as to the first, I don't
24 see any arguable reason why you can't take Mr.

Page 12

1  Carey's deposition by video conference. And
2  you can send to him the exhibits you want him
3  to identify and -- or discuss. And I think
4  it's just jerking people around to make the guy
5  either fly here or anybody fly out there. So
6  video conference deposition of Mr. Carey.
7       MR. BRAUTIGAM: Your Honor, just
8  to clarify, if I want to fly to California, I'm
9  not prevented from doing it?
10      MAGISTRATE JUDGE HOGAN: You're
11 welcome to do it.
12      MR. BRAUTIGAM: And, Your Honor,
13 this is the PWC report.
14      MAGISTRATE JUDGE HOGAN: And we
15 can decide that by -- what's today, the 3rd?
16      MR. BRAUTIGAM: Yes, Your Honor.
17      MAGISTRATE JUDGE HOGAN: Okay. By
18 5:00 today.
19      MR. BRAUTIGAM: Your Honor, also
20 attached to that is the stipulated protective
21 order, document number 51.
22      MAGISTRATE JUDGE HOGAN: Okay.
23 What's next?
24      MR. BRAUTIGAM: Your Honor, I

Page 13

1  wanted to remind the Court and all parties that
2  document 221, the existing scheduling order, is
3  just no longer workable. It says, as we all
4  know, that the Court's decision on the motion
5  to dismiss was due on April 30th, 2004. As we
6  also know, that hasn't happened and plaintiffs
7  are prejudiced. So there's a continual problem
8  due to the scheduling order not working.
9       And here's how the problem
10 unfolds. Last time, you may remember, KMK --
11 excuse me, Ernst & Young objected to any type
12 of discovery going forward that could impact
13 them unless and until the motions to dismiss
14 had been decided. You have ruled on that.
15      I then called counsel for Ernst &
16 Young, worked together in a cooperative manner,
17 set some things up. Unfortunately, the
18 gentleman I sought to depose had moved out of
19 town and he had a heart attack. So for medical
20 reasons, he's not able to be deposed right now,
21 but I'm working with their counsel on that. We
22 have a high degree of cooperation.
23      Regrettably, the same thing cannot
24 be said for KMK. Even though you said -- and

Page 14

1  this is KMK as former parties and as witnesses
2  in the case -- even though you said that
3  discovery should proceed against them, they
4  have thrown up every unreasonable hurdle, every
5  road block to getting these depositions taken,
6  and that seems to be their position throughout.
7       MR. BARRETT: May I respond to
8  that, Judge?
9       MAGISTRATE JUDGE HOGAN: Sure.
10      MR. BARRETT: There has been
11 communication between Mike and Tom from our
12 office and I think some other members of the
13 KMK firm. We in accordance with the Rules did
14 send over to Mike our objections to his
15 subpoena. We stated what our objections were.
16      The Court in its prior ruling I
17 think indicated that all of the parties know
18 how to formally get something in front of you
19 for a hearing that has not been briefed. We do
20 have some issues with how the depositions
21 should be conducted, just because of things
22 that have happened in the past.
23      We would like them to be organized
24 and in certain time frames. We've been trying

Page 15

1  to work with Mike on that. And frankly, with
2  the filings that have been placed before the
3  Court, they haven't been briefed, they haven't
4  been responded to.
5       I'm not sure if this is the
6  appropriate time to address those issues. And
7  you had indicated before that the parties know
8  how to get the matter before you. There has
9  been communication back and forth, so I'm not
10 quite sure I understand what the issue is.
11      MR. BRAUTIGAM: Well, Your Honor,
12 let me see if I can explain it. As per
13 document 221, there's an October 29th, 2004
14 discovery deadline. These things take time.
15 Once again, KMK through Pat Fischer and Mr.
16 Barrett, essentially their entire strategy is
17 to call me names.
18      There's a division here because
19 Mr. Greer in document number 354 said, quote,
20 given the questions asked by plaintiff's
21 counsel, the depositions have proceeded
22 remarkably free of serious conflict. And then
23 Pat Fischer, shadow counsel, steps out of the
24 shadows and writes me letters calling me names.

Page 16

1       And he says, we can't have these
2  depositions go forward without a special master
3  or we have to limit them in time or we're not
4  going to produce any documents such as billing
5  records. They're not going to produce
6  anything. So, Your Honor, Mr. Fischer has
7  moved for a protective order with respect to
8  the subpoenas which, by the way, he forces me
9  to do everything through subpoena. He's -- his
10 positions are simply not consistent with the
11 Rules, and we will respond.
12      There were some issues about some
13 of the statements that were made in some of the
14 filings. I understand Mr. Breidenstein is
15 going to be amending one of the pleadings
16 today. And that leads to another issue, Your
17 Honor. There are so many papers, so many
18 motions, cross motions, that we really need
19 some type of a schedule to argue all this out.
20      Last May you met in chambers --
21 excuse me, in open court with a reporter and we
22 argued, I believe, five discovery motions at
23 that time. I respectfully suggest that we do
24 something similar this time, because with the

Page 17

1  motions and the amended motions and -- they're
2  very similar in many ways. This is really
3  getting out of control.
4       MAGISTRATE JUDGE HOGAN: Is this
5  briefed? This issue about the subpoenas and
6  the protective order?
7       MR. BURKE: It is not, Your Honor.
8       MR. BRAUTIGAM: No, it is not,
9  Your Honor. There are some things that are
10 briefed, there are other things that are about
11 to be briefed, but because they're going to
12 amend the pleadings, I held back on filing.
13      I talked to Mr. Breidenstein about
14 that this morning. I talked to Mr. Greer about
15 a possible amended filing last night, so I
16 don't know what the status is of some of these
17 things, because I'm shooting at a moving
18 target.
19      MAGISTRATE JUDGE HOGAN: Well, if
20 you're requesting oral argument on fully
21 briefed motions, that's fine. We will do that.
22      MR. BRAUTIGAM: Right. Well --
23      MAGISTRATE JUDGE HOGAN: But if
24 they're not ready --

Page 18

1  MR. BRAUTIGAM: Right. In the
2  next couple of weeks -- in the next week or
3  two, Your Honor, I think they will be ready.
4  And at that time if the Court could send out an
5  order saying I think these discovery motions
6  are ready, I'd like to have oral argument on
7  this particular day, could the parties advise
8  us as to what else is out there, if anything.
9  MR. BURKE: Maybe you'd rather do
10 that. Why don't counsel do that, say the
11 following motions are fully briefed and here
12 are the documents. That's not the Court's
13 responsibility to --
14 MR. BRAUTIGAM: We'll be happy to
15 do that, Your Honor.
16 MAGISTRATE JUDGE HOGAN: The gist
17 of it is, whatever is outstanding and you want
18 a hearing on, we can put them together, reserve
19 a time and do it.
20 MR. BURKE: You've just got to
21 brief them.
22 MR. BRAUTIGAM: Right.
23 MAGISTRATE JUDGE HOGAN: What's
24 next?

Page 19

1  MR. BRAUTIGAM: I just wanted to
2  ask for oral argument on that.
3  MAGISTRATE JUDGE HOGAN: Okay.
4  Granted.
5  MR. BRAUTIGAM: Thank you.
6  MR. BURKE: Stipulated.
7  MR. BRAUTIGAM: Your Honor, the
8  next thing was expert reports. And I spoke to
9  Mr. Hust about that. He was going to address
10 that.
11 MR. HUST: Your Honor, I think the
12 original scheduling order provided plaintiff's
13 disclosure of expert reports by August 30th or
14 31st.
15 MR. BURKE: August 30th, I think.
16 MR. HUST: 30th. And then the
17 defendants' deadline was September 30th. In
18 the Court's last order there was a reference
19 that looked like it said that all of the
20 parties were to produce their expert reports by
21 August 30. When Mike and I talked, I told him
22 I just assumed that you did not intend to
23 change the scheduling order and I was assuming
24 I still had till September 30th.

Page 20

1  MR. BURKE: I think that's the
2  agreement of the parties.
3  MR. BRAUTIGAM: Right, but it's
4  not reflected in the order and that concerned
5  me.
6  MR. BURKE: I think, Your Honor,
7  it just inadvertently stated plaintiff's
8  experts by August 30 when the clear agreement
9  of everyone is plaintiff's on August 30th and
10 defense on September 30th.
11 MR. BRAUTIGAM: That's agreed, but
12 that's not what's stated in the order, it's
13 identification of expert witnesses.
14 MR. BURKE: We'll clean it up.
15 But the agreement of all is identification of
16 experts and reports by plaintiff's experts on
17 August 30th, identification of defense experts
18 and expert reports by September 30th. That's
19 our understanding.
20 MR. BRAUTIGAM: All right.
21 MAGISTRATE JUDGE HOGAN: No
22 problem.
23 MR. BRAUTIGAM: Your Honor, also
24 you talked about the deposition of Tayfun

Page 21

1  Tuzun. I wrote Mr. Burke a couple of letters,
2  you directed that it happened by August 31st,
3  nothing has happened.
4  MR. BURKE: Well, you subpoenaed
5  him and you wrote him a letter.
6  MR. BRAUTIGAM: No, I didn't. I
7  subpoenaed documents.
8  MR. BURKE: Right. And the date
9  for return of that subpoena is August 30th.
10 And you said let's set up a deposition shortly
11 after that, and that's perfectly agreeable.
12 MR. BRAUTIGAM: Okay. Can I have
13 a date?
14 MR. BURKE: Yes. Mr. Tayfun Tuzun
15 has left Provident, but yes, we'll get you a
16 date in early September.
17 MR. BRAUTIGAM: But that's not
18 consistent with the order.
19 MR. BURKE: But you didn't ask for
20 the documents until August 30th. Do you want
21 them sooner now?
22 MR. BRAUTIGAM: I don't believe
23 that that's accurate. I believe that the
24 return date for the subpoena is in the late

Page 22

1  twenties of August.
2      MR. BURKE: Okay.
3      MR. BRAUTIGAM: And I also asked
4  if you would, as a courtesy, produce the
5  documents earlier.
6      MR. BURKE: Okay.
7      MR. BRAUTIGAM: You didn't respond
8  to any of these letters.
9      MR. BURKE: Well --
10     MR. BRAUTIGAM: I'm trying to
11 proceed in a manner that's consistent with the
12 letter and the spirit of Judge Hogan's order.
13     MR. BURKE: We'll try to gather
14 the documents we can gather, respond to the
15 subpoena hopefully before the date of return of
16 the subpoena. We'll make Mr. Tuzun available
17 after that.
18     MR. BRAUTIGAM: Great. Your
19 Honor, there's an another issue with respect to
20 an agreement or what I thought was an agreement
21 that was reached that related to the conduct in
22 depositions, particularly with instructions not
23 to answer questions. Here's how it unfolds, I
24 asked some of the Provident director defendants

Page 23

1  questions that the OHSL director defendants had
2  previously answered I believe without
3  objection, what's your net worth approximately,
4  what's your Social Security number.
5      The Provident directors were
6  apparently more concerned about this, because
7  they said, hey, I'm not going to do this in a
8  proceeding like this, you're just going to have
9  to go to Court and get that. So I made an
10 agreement with Rachel Rowe that I thought Mr.
11 Greer had signed off on because he was also
12 attending these depositions.
13     And it said, look, we'll provide
14 you this information confidentially. I said,
15 fine. I didn't ask any more questions like
16 that. Later I received a letter from Mr. Greer
17 where he attempts to, what I would say is,
18 impose unilateral conditions that were not part
19 of the agreement.
20     In other words, the agreement as I
21 remember it was, we'll provide that information
22 to you later in a confidential manner. And now
23 his letter essentially says, you're not
24 entitled to that yet, you have to get to a

Page 24

1  certain stage of the trial and then we'll
2  consider producing --
3      MR. GREER: Well, I think this
4  came up during -- first during Mr. Pedoto's
5  deposition, who was a Provident director. And
6  the issue came up when he was asked what his
7  Social Security number was. And being a man of
8  some wealth and afraid of identity theft and
9  what may happen with it, I offered to Mike
10 that, Mike, why don't we just provide that to
11 you in letter form. And we are still willing
12 to do that, as my letter so indicates.
13     Later on in the deposition, there
14 was a question about net worth, or some
15 financial information. At that time it was
16 volunteered that we would also submit that in a
17 letter form. And our position simply is, Your
18 Honor, that as stated, we will -- we will -- we
19 are gathering the Social Security numbers, we
20 will get those to Mike as soon as possible.
21     As far as the financial
22 information is concerned, we will also get that
23 to Mike, but it is our position that before
24 that is done, there has to be a prima facie

Page 25

1  case of punitive damages, because otherwise it
2  couldn't lead to any relative evidence in this
3  case.
4      And these particular defendants
5  and clients don't want to provide that kind of
6  financial information until they have to. And
7  we've instructed them that they have to once
8  there is a prima facie case of punitive
9  damages, which would be after all the motions
10 are ruled upon, motions to dismiss, all motions
11 for summary judgment. If punitive damages are
12 going to the jury, that -- that will be
13 provided and that's been our position.
14     MR. BRAUTIGAM: Your Honor, that's
15 substantially different from the position that
16 they took at the depositions. And here's the
17 problem, I'm shooting at a moving target. If I
18 asked for the Social Security numbers and an
19 approximation of the net worth and they
20 instructed the witness not to answer, fine. I
21 can file my motion that that's an improper
22 instruction and be done with it. But it seems
23 as though this is a bait-and-switch type
24 tactic, because we agreed to one thing and then

7 (Pages 22 to 25)

Page 26

1  later, not only did they not produce the
2  information, but they say they're not going to,
3  they're imposing all of these other conditions.
4      MAGISTRATE JUDGE HOGAN: Right.
5  This information is now of record. Is this
6  acceptable to you in letter form, Social
7  Security numbers and net worth?
8      MR. BRAUTIGAM: Yes, Your Honor,
9  it's always been acceptable. I understand the
10 defendants' position that they don't want this
11 to be part of the public record. And I'm happy
12 to accommodate them, but at the same time I
13 want to be able to argue that people like my
14 clients, one of whom was a roofer, was
15 defrauded by multimillionaires if that's the
16 case.
17     MR. GREER: And, I'm sorry, Your
18 Honor, my position would be that he's entitled
19 to that if he has the prima facie case when he
20 goes to trial, and that's the only time he
21 needs to have that. He's talking about what he
22 needs to argue to a jury, so I don't understand
23 how it prejudices the plaintiffs not to get
24 that information prior to creating a prima

Page 27

1  facie case.
2      MR. BURKE: And I think, Your
3  Honor, the law is pretty clear, and if we need
4  to brief it, we can. That's exactly what the
5  law requires when there's a prima facie on
6  punitive damages, that becomes relevant and not
7  until then.
8      MAGISTRATE JUDGE HOGAN: This has
9  come up multiple, multiple times in the context
10 of all sorts of cases where somebody wants
11 financial information. And I've always --
12 we've had a consistent pattern here of saying
13 that until this becomes an issue for the jury,
14 that that information is confidential.
15     Now, I don't see anything wrong
16 with your suggestion that this be done -- if I
17 understand you right, in advance of the jury's
18 consideration of this as sort of an informal
19 thing.
20     MR. GREER: I think you
21 misunderstood, Your Honor. Our position is
22 that we will provide that to Mike.
23     MAGISTRATE JUDGE HOGAN: If and
24 when?

Page 28

1      MR. GREER: Once we get through
2  motion practice.
3      MAGISTRATE JUDGE HOGAN: Okay.
4      MR. GREER: If there's still a
5  prima facie case at that point in time, we will
6  provide that financial information and net
7  worth and what he wants. And he's entitled to
8  it at that point, but right now we don't
9  believe he's entitled to it.
10     MR. BRAUTIGAM: But, Your Honor,
11 I'm harmed because of the moving target aspect
12 of this. If they wanted to take that position
13 at the deposition, that was fine, just instruct
14 the witness not to answer and then I'll do what
15 I have to do, as you indicated in the prior
16 order.
17     I don't understand why their
18 agreement shouldn't be enforced. And if you
19 want me to submit on this, I'll go back to the
20 Pedoto and other depositions and I'll find out
21 where exactly they said it and what exactly
22 they said. But Mr. Greer's letters are
23 substantially different from what we agreed to
24 at the depositions.

Page 29

1      MR. GREER: I don't --
2      MR. BURKE: In all fairness, Mike,
3  I don't believe there was an agreement. I
4  don't believe anyone focused on the issue
5  clearly enough. There wasn't really any kind
6  of consideration of the framework that Jamie is
7  proposing, which is the proper framework.
8      MR. GREER: The only conversation
9  you and I had related to Social Security
10 numbers, and we're still willing to give that
11 to you now.
12     MR. BRAUTIGAM: I don't believe
13 that's true at the depositions, but anyway --
14 Your Honor, how should we proceed?
15     MAGISTRATE JUDGE HOGAN: This is
16 unproductive, okay? You're not entitled to
17 that information until it becomes an issue of
18 fact for the jury. And you've got a
19 representation on the record that you'll get it
20 if and when that occurs, so I don't see any
21 prejudice at all.
22     And I'd rather not get into a
23 he-said, she-said about what kind of agreement
24 you had with Rachel Rowe. I'll never know,

Page 30

1  you'll say one thing, she'll say the other.
2  And how am I going to get to the bottom of it
3  except by following the law?
4      MR. BURKE: In her defense, Miss
5  Rowe's position is the same as Mr. Greer's.
6      MR. BRAUTIGAM: Well, Your Honor,
7  the answer to the question is you get to the
8  bottom of it by reading what was said and
9  agreed to in the depositions. It's very
10 simple.
11     MAGISTRATE JUDGE HOGAN: Okay. If
12 you think there's something right there on the
13 face of the record that I can see, I'm willing
14 to look at that.
15     MR. BRAUTIGAM: Okay.
16     MAGISTRATE JUDGE HOGAN: But I
17 don't have it.
18     MR. BRAUTIGAM: Okay. Well, this
19 just came up. I got Mr. Greer's letter last
20 night, so this just came up and I was asking
21 for guidance on how to proceed. You've now
22 provided that guidance. And Your Honor, also
23 I've asked for an update on the health of the
24 individual Oak Hills defendants and I haven't

Page 31

1  received that. Can you direct Mr. Burke to
2  tell me so I can prepare for trial?
3      MR. BURKE: Your Honor, I have
4  not -- these gentlemen have all been deposed
5  two to three days each, most on videotape. I
6  mean, all of the discovery of the OHSL
7  directors is done. I don't know what
8  obligation or even what ability I have to
9  continue to say what their health is like.
10     I mean, we have a scheduling
11 order. These are 80 plus year old men. I
12 mean, their health is, you know, what any 85
13 year old man is like. It's not getting any
14 better. And I just don't know what you want me
15 to do, Mike, or even what you plan to do in the
16 event somebody is ill.
17     MR. BRAUTIGAM: Your Honor, as
18 I --
19     MR. BURKE: You've deposed them
20 all.
21     MR. BRAUTIGAM: As I prepare for
22 trial as I'm doing, I believe that I'm entitled
23 to know generally speaking what the health of
24 the OHSL defendants are.

Page 32

1      MR. BURKE: It's spotty at best.
2      MAGISTRATE JUDGE HOGAN: Why?
3      MR. BRAUTIGAM: So I can prepare
4  my case, Your Honor, and see if I'm going to be
5  able to call them live as witnesses or if I'm
6  going to have to rely on the deposition
7  transcripts or the videotapes.
8      MAGISTRATE JUDGE HOGAN: I think
9  this is bizarre, Mike. You're obviously not
10 entitled to any of that, period. You can't
11 support that, you know.
12     MR. BRAUTIGAM: I'm not entitled
13 to be informed as to the health of the OHSL
14 defendants?
15     MAGISTRATE JUDGE HOGAN: You sure
16 aren't.
17     MR. BRAUTIGAM: Why?
18     MAGISTRATE JUDGE HOGAN: Why? The
19 better question is why are you?
20     MR. BRAUTIGAM: So I can prepare
21 for trial.
22     MAGISTRATE JUDGE HOGAN: No.
23     MR. BURKE: I mean, I would
24 assume, Mike, that these gentlemen -- you're

Page 33

1  probably going to have to use their deposition
2  testimony for large parts of the case, you can
3  bet on that, because I probably will as well.
4      MR. BRAUTIGAM: Well, thank you.
5  That's helpful, but if one of them dies, are
6  you going to tell me?
7      MR. BURKE: Yes. I think you'll
8  probably hear about it, there will be a
9  notification of death filed with the case,
10 because their estate will become a party
11 because the gentleman will be gone.
12     MR. BRAUTIGAM: Thank you.
13     MAGISTRATE JUDGE HOGAN: I
14 wouldn't imagine what the doctor is supposed to
15 say. The chances of so-and-so dying in the
16 next year are 60/40, or some detailed report
17 about he's got, you know --
18     MR. BURKE: In addition to being
19 confidential medical information that people
20 aren't allowed to ask.
21     MAGISTRATE JUDGE HOGAN: This
22 creates a nightmare. And we didn't have much
23 luck, if you'll all recall, from the doctor who
24 recommended -- or treated one of these fellows

Williams & Oliver
(513)683-9626

**Page 34**

1  before. It was a question of what doctor was
2  in charge and nobody was particularly helpful.
3      MR. BRAUTIGAM: Your Honor, I just
4  want the record to be clear, I didn't ask for
5  anything like doctor's examinations. I simply
6  wanted a representation as to how their health
7  is and Mr. Burke has now given me that to some
8  extent and I'm happy to receive it.
9      MR. BURKE: I will tell you, I
10 have no firsthand knowledge, Mike, today how
11 their health is. I can just tell you what
12 their health was like the last several times
13 you deposed them. These gentlemen have various
14 illnesses, as an elderly person frequently
15 does. And I have no firsthand knowledge about
16 how they are today, and whether it differs from
17 how they were the last time you talked to them.
18     MAGISTRATE JUDGE HOGAN: Okay. Go
19 ahead.
20     MR. BRAUTIGAM: Your Honor, one of
21 the other things that I want to clarify is the
22 PWC report with respect to the depositions.
23 Are you going to rule on that today?
24     MAGISTRATE JUDGE HOGAN: No, I

**Page 35**

1  want to look and see -- your argument, I
2  assume, is you want more time because of this
3  report that you got late in the game.
4      MR. BRAUTIGAM: Yes, Your Honor.
5      MAGISTRATE JUDGE HOGAN: And I
6  want to see if that's the case.
7      MR. BRAUTIGAM: Okay.
8      MR. BURKE: Your Honor, that has
9  not been moved or briefed or anything. The
10 only thing I would say about that is the topics
11 in there deal with the restatement allegations
12 that were the reason for reopening all the
13 depositions of these gentlemen again. And if,
14 if the Court believes that there is something
15 that requires again deposing all of these
16 gentlemen over this document, I think we would
17 like the opportunity to at least alert the
18 Court to what the record is so far on these
19 same issues.
20     I mean, the reason why all of
21 these gentlemen were deposed again was about
22 the restatement, so this has been gone into in
23 excruciating detail with the Provident
24 directors and the OHSL directors.

**Page 36**

1      MR. BRAUTIGAM: Your Honor, to the
2  extent that it's been gone into in detail,
3  obviously we didn't have the benefit of the
4  report. Also, the Oak Hills and Provident
5  defendants have filed a motion to keep the
6  report confidential. Will you be deciding
7  that, Your Honor, or will Judge Beckwith?
8      MR. BURKE: It's a document --
9      MAGISTRATE JUDGE HOGAN: That's a
10 good question.
11     MR. BURKE: It's a motion related
12 to the existing protective order, Your Honor.
13 When we produced the document, we requested
14 that it be confidential, which means that it be
15 used for purpose of litigation and no other
16 purposes.
17     MAGISTRATE JUDGE HOGAN: I would
18 think that it would be mine, but it's okay with
19 me if -- I mean, I don't mind asking Judge
20 Beckwith, as I frequently do, and when things
21 look like they'd be better managed at one end
22 or the other, saying I interpret this as for me
23 to decide, it's not dispositive in form and
24 substance, but the lawyers have a question on

**Page 37**

1  it and would you rather do it or do you want me
2  to do it or what.
3      MR. BURKE: I would add, Your
4  Honor, that that motion has not been fully
5  briefed either though. We have filed, Mr.
6  Brautigam has not responded.
7      MR. BRAUTIGAM: Right, Your Honor.
8  We're particularly concerned about that because
9  the PWC report, as you'll soon see, is just
10 inconsistent with the public statements that
11 Provident has been making. So we're concerned
12 that Provident is essentially asking the Court
13 to join in a coverup of this so they can
14 continue to say we only found out about these
15 problems in February of 2003 when the report
16 says that they knew about it years earlier.
17     MR. BURKE: That's an absolutely
18 false statement and it's gibberish to suggest
19 that the Court or anyone is involved in a
20 coverup. That's irresponsible, Mr. Brautigam,
21 and that's not true.
22     MR. BRAUTIGAM: I didn't suggest
23 that at all.
24     MAGISTRATE JUDGE HOGAN: It's not

Page 38

1  necessary for me to get into coverup or not
2  coverup. The question for me is dispositive or
3  not. And I'm telling you that such a thing is
4  nondispositive and therefore would be for me to
5  decide.
6      However, all right, there are
7  instances where the district judge has decided
8  to do things, because I recognize it as having
9  some impact on the outcome of the case and have
10 asked them. I mean, it's happened a lot. For
11 instance, let's take an example that happened a
12 couple years ago.
13     There was an environmental case
14 that was pending before Judge Spiegel. And
15 there was a spoilation argument to be made on
16 behalf of the plaintiff. And they were
17 requesting -- plaintiff was requesting an
18 evidentiary based sanction, all right? Clearly
19 nondispositive in form.
20     What would be the effect on the
21 outcome of the case? Dramatic, all right? And
22 so I thought, let me ask Judge Spiegel what he
23 thinks, you know. And his suggestion was, you
24 decide it and make it in the form of an R&R.

Page 39

1  Which I thought, okay, that makes sense to me.
2      So those are your options, you
3  know, it seems to me either I decide it, Judge
4  Beckwith decides it, or she wants me to take a
5  look at it in the form of an R&R. And I'm
6  perfectly willing or you're perfectly able to
7  ask her what is her preference, you know. This
8  is Judge Beckwith's case, isn't it?
9      MR. BURKE: Yes, Your Honor.
10     MR. BRAUTIGAM: Yes, Your Honor.
11 Your Honor, either way is fine with us.
12 There's one other point that I wanted to
13 mention. As you read the report, you'll see
14 that there's a reference to, I think it's an
15 Appendix A and an Exhibit B. Now, they haven't
16 been produced and Mr. Burke --
17     MR. BURKE: They don't exist.
18     MR. BRAUTIGAM: Mr. Burke sent me
19 a letter saying that he didn't have them.
20     MR. BURKE: They don't exist.
21     MR. BRAUTIGAM: I have trouble
22 accepting that, Your Honor, when they're
23 referenced in the report. Why would
24 PricewaterhouseCoopers reference documents that

Page 40

1  don't exist?
2      MR. BURKE: Because they obviously
3  were intending to attach something that they
4  ended up not attaching. I just confirmed that
5  with PricewaterhouseCoopers.
6      MR. BRAUTIGAM: That's a far cry
7  from saying they don't exist.
8      MR. BURKE: They don't -- I don't
9  have them. They aren't attached to the report.
10     MR. BRAUTIGAM: That's
11 different --
12     MR. BURKE: I can't produce
13 something I don't have, Mike. You've got the
14 report.
15     MR. BRAUTIGAM: That's different,
16 PricewaterhouseCoopers --
17     MR. BURKE: You can go after
18 whoever you'd like.
19     MAGISTRATE JUDGE HOGAN: Okay.
20 That's an issue between you and
21 Pricewaterhouse.
22     MR. BRAUTIGAM: Well, I just found
23 out about it now, Your Honor, because on its
24 face it says there's attachments to the

Page 41

1  document.
2      MR. BURKE: No, Mr. Brautigam.
3  You found out about it when I said what you
4  have is what I have, there are no attachments
5  to the original report that was received by
6  Provident, that we received and produced to
7  you. There are no attachments.
8      MR. BRAUTIGAM: Jim, attachments
9  are referenced in the document. That's my
10 concern.
11     MR. BRAUTIGAM: Your Honor --
12     MAGISTRATE JUDGE HOGAN: Let's
13 bring this to a close. Your current concern is
14 between you and PricewaterhouseCoopers, it
15 doesn't involve Mr. Burke as far as I can see.
16     MR. BRAUTIGAM: Your Honor, I just
17 learned that.
18     MAGISTRATE JUDGE HOGAN: Okay.
19     MR. BRAUTIGAM: Because I was
20 going to ask that you direct him to do a search
21 or something. He's apparently couldn't that,
22 so I guess --
23     MAGISTRATE JUDGE HOGAN: He's done
24 it.

Page 42

1  MR. BRAUTIGAM: It's between
2  Pricewaterhouse and the plaintiff. Your Honor,
3  can we get a date to come back before you in a
4  month to see if we've made any progress for
5  another status conference?
6  MAGISTRATE JUDGE HOGAN: Is this
7  productive? I mean, do you guys feel it's a
8  waste of time or are we getting somewhere?
9  MR. BARRETT: I'd rather not
10 answer.
11 MR. BRAUTIGAM: Your Honor, I
12 think it narrows the issues.
13 MR. GREER: I guess my thought,
14 Your Honor, it's productive when we are able to
15 resolve certain issues that shortcut any motion
16 practice. And I think we've done some of that.
17 There's also issues that I think you've told us
18 what your decision is going to be. And we're
19 still going to get motion practice afterwards,
20 and that doesn't make any sense to me, but --
21 for example, the whole issue that we talked
22 about with the financial information and that
23 sort of thing.
24 I think the Judge has told us what

Page 43

1  his feelings are on that and what the law is on
2  it. And you still want to go forward and file
3  something, which you have a right to do --
4  MR. BRAUTIGAM: I didn't say that.
5  MR. GREER: I thought you did.
6  MR. BRAUTIGAM: No. I said I
7  would consider my options, or something like
8  that.
9  MAGISTRATE JUDGE HOGAN: I mean,
10 if you want to meet again in a month, I'm
11 perfectly willing to do it. I just don't want
12 to waste time. If this is productive, that's
13 fine. It seems to me we got somewhere.
14 MR. BURKE: We're knocking off
15 some issues.
16 MR. BRAUTIGAM: It's also
17 productive in that there was a flurry of
18 activity last night to respond to this. When
19 people haven't responded to things, they tend
20 to do so around the time of the conference. I
21 think it's exceptionally productive.
22 MAGISTRATE JUDGE HOGAN: All
23 right. Let's do that again.
24 MR. BRAUTIGAM: Could we meet on

Page 44

1  the 31st of August?
2  MAGISTRATE JUDGE HOGAN: She's
3  getting the calendar. I've got to tell you
4  something kind of funny. You can put it on or
5  off. I don't want to put you to the job of
6  trying to determine that. You remember you
7  were upset about Pat Fischer's letter that you
8  thought was calling you names and I thought
9  this is silliness, it's not of record? Do you
10 remember that?
11 MR. BRAUTIGAM: You put that in
12 the order.
13 MAGISTRATE JUDGE HOGAN: Here
14 comes another case, I'll leave the parties out
15 of it, but a hotly contested disability claim.
16 And a request for sanction was made based on a
17 letter where one lawyer was calling the other
18 one names.
19 And I'm thinking to myself, I hope
20 they don't come up with my letter on the
21 Thiemann case where my order says it's okay,
22 just call them a name. So I'm in the throes of
23 a real dilemma now, how to get myself out of
24 that.

Page 45

1  MR. HUST: I can't remember if the
2  order specified what name was acceptable.
3  MAGISTRATE JUDGE HOGAN: And the
4  truth is, these are really good lawyers that I
5  happen to independently like. I think they're
6  class A people, but they -- somehow or another,
7  it's like gas and a match when they get in the
8  room together. What do we have?
9  COURT CLERK: You have a trial at
10 the end of August. Last week of August. You
11 pretty much have the first full week of
12 September.
13 MAGISTRATE JUDGE HOGAN: Is there
14 some meaning to those colors?
15 COURT CLERK: Yes, pink is trial.
16 There is the Weber color coding system.
17 MAGISTRATE JUDGE HOGAN: We're
18 going along with the color coding system. Pink
19 is important and yellow means less important?
20 COURT CLERK: Yes. I don't know.
21 All I know is pink is trial. And you've got
22 trial every week in September, except for
23 the -- the 7th is open, the 8th, 9th and 10th.
24 MR. BRAUTIGAM: The 7th would be

12 (Pages 42 to 45)

Page 46

1  fine, Your Honor. It's the day after Labor
2  Day.
3           MAGISTRATE JUDGE HOGAN: Okay. Is
4  this time good?
5           MR. BURKE: Fine, Your Honor.
6           MR. BRAUTIGAM: Fine, Your Honor.
7           MR. HUST: Yes, 10:00.
8           MR. BARRETT: Do you want us back
9  for that, Judge? I don't --
10          MAGISTRATE JUDGE HOGAN: Let's put
11 it this way, Mike, if there's something of
12 interest to you, you can come. If it's not,
13 then --
14          MR. BARRETT: Okay.
15          MAGISTRATE JUDGE HOGAN: I don't
16 want to require anyone to be here, so I think
17 they're just being put on --
18          MR. BARRETT: We'll try to resolve
19 our issues.
20          MR. BRAUTIGAM: Could you direct
21 that the plaintiffs and the defendants get to
22 you by August 16th, either in a letter or
23 something in writing, what has been fully
24 briefed and what is ready for argument because,

Page 47

1  Your Honor, I've been working on this for a
2  while and it's exceptionally confusing, and I
3  think it would be helpful and help the Court
4  and all parties.
5           MR. BURKE: Are you directing this
6  primarily to motions that the Magistrate Judge
7  would address?
8           MR. BRAUTIGAM: Yes.
9           MR. BURKE: Why don't you go --
10 because I think these are of concern to you --
11 go through and compile a list of what you think
12 is out there and fully briefed, give us your
13 list. And like we did after Judge Beckwith
14 ruled and said, tell me what's pending, we sort
15 of came back and agreed that certain things we
16 agreed were pending, certain things we agreed
17 were not pending. And if there was any
18 disagreement, category three. Maybe we can do
19 that again.
20          MAGISTRATE JUDGE HOGAN: I think
21 you did it with me once and it helped.
22          MR. BRAUTIGAM: Right.
23          MAGISTRATE JUDGE HOGAN: I believe
24 it was your letter and I thought it was

Page 48

1  helpful. It sort of set the agenda for the
2  next conference.
3           MR. BARRETT: Judge, could I ask
4  that the conference date not be converted into
5  an oral argument date?
6           MR. BRAUTIGAM: Right, the 7th is
7  not oral argument. Your Honor, would you have
8  any objection if I sent a letter to the Court
9  and also to all counsel for the next status
10 conference outlining the agenda?
11          MR. BURKE: No, we could have a
12 joint letter as we did last time.
13          MAGISTRATE JUDGE HOGAN: The thing
14 you ought to tell me, this is really a
15 peripheral point. When I get unofficial
16 filings, they go in the jacket of the case.
17 And once in a while something is in there, I
18 mean, I've encountered this a couple times
19 where there's been in the context of a
20 settlement conference, there's been an offer
21 made that is supposed to be confidential, it
22 comes to me and the directions are, don't --
23 this is my last best offer, don't tell the
24 other side, you know.

Page 49

1           The idea is for the other side to
2  do the same and then the Court determine if
3  there's any room to talk or this really is it,
4  you know, that's kind of how that's come up.
5  And I've said to people, okay, I'm perfectly
6  willing to do that, but I'm going to keep these
7  letters and destroy them, I don't want them in
8  the file jacket.
9           So if there's anything you send me
10 that you don't want there, tell me, otherwise
11 it goes there, you know. Nobody looks at it, I
12 don't think, because there's nothing on the
13 table, but that is a place to put it and that's
14 where it goes. And I'm concerned about
15 something getting in there that shouldn't be
16 there. So tell me if you want me to destroy it
17 after the meeting or return it to you or
18 whatever. Otherwise it will just find its way
19 there. Sometimes that's not a good idea.
20
21              - - -
22       (Hearing concluded at 10:35 a.m.)
23              - - -
24

```
                                          Page 50
 1        C E R T I F I C A T E
 2
 3      I, Lee Ann Williams, a Notary Public in
 4   and for the State of Ohio, do hereby certify
 5   that the foregoing is a true and correct
 6   transcript of the proceedings in the foregoing
 7   captioned matter, taken by me at the time and
 8   place so stated and transcribed from my
 9   stenographic notes.
10
11
     My commission expires:
12   August 26, 2004        Lee Ann Williams, RPR
                  Notary Public-State of Ohio
13
14
15
16
17
18
19
20
21
22
23
24
```

14 (Page 50)