### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| WALTER W. THIEMANN, et al. | : | Civil Action No. C-1-00-793 |
| Plaintiffs, | : | Judge Sandra S. Beckwith |
| vs. | : | Magistrate Judge Timothy Hogan |
| OHSL FINANCIAL CORP., et al. | : | |
| Defendants. | : | |

## PLAINTIFFS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA ISSUED NON-PARTY KMK AND AFFIDAVIT OF MICHAEL G. BRAUTIGAM

Plaintiffs respectfully submit this motion to compel compliance with the subpoena duly issued to non-party Keating Muething & Klekamp (hereinafter "KMK"). (*See*, June 10, 2004 Subpoena, Attached as Exhibit "A" to this Motion).[1] KMK has failed to meaningful communicate with Plaintiffs' counsel regarding the subpoena, and has refused to cooperate with the valid document requests contained in Plaintiffs' subpoena. Although KMK may have a viable argument in relation to some document requests in the subpoena, KMK does not limit its objections to Plaintiffs' subpoena to particular document requests, but objects to the subpoena in its entirety. This includes document requests which are clearly relevant, unprivileged, and not overly broad or unduly burdensome. As a result, KMK's conduct reveals that it has not acted in good faith in relation to this subpoena. Therefore, Plaintiffs not only request that this Court compel

---

[1] This Subpoena was initially inadvertently and erroneously filed with Court, and thus bears a "Filed" stamp. It was later de-filed and does not appear in the docket sheet.

KMK's compliance with this subpoena, but also request that KMK be sanctioned for this conduct, and be required to pay Plaintiffs' costs in bringing this Motion and related actions made in an attempt to resolve this dispute without Court intervention. This Motion is supported by the attached Memorandum in Support, exhibits, and the affidavit of Michael G. Brautigam, Esq.

Dated: 2 September 2004

**GENE MESH & ASSOCIATES**

Respectfully Submitted,


/s/ Michael G. Brautigam
Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*


## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL KMK TO COMPLY WITH SUBPOENA

### I.    PRELIMINARY STATEMENT

Plaintiffs bring this Motion to Compel Compliance with Subpoena Issued to Non-Party KMK (hereinafter "Motion to Compel") reluctantly, and only because they are forced to do so as a result of KMK's repeated failure to participate in good faith in the discovery process. Since the subpoena was issued, KMK has not only refused to comply with the directives of this subpoena, but KMK has also refused to reply to Plaintiffs' counsel's correspondence regarding the subpoena. (*See,* correspondence collectively

attached as Exhibit "B").    In fact, KMK has only objected to the Plaintiffs' subpoena in its entirety through its Responses and Objections of Keating, Muething & Klekamp to Subpoena. (*See*, Responses and Objections of Keating, Muething & Klekamp to Subpoena, Attached as Exhibit "C").    As a result, Plaintiffs have no choice pursuant to Federal Rule 45(c)(2)(B), but to file this Motion to Compel in order to have this Court force KMK to respond to this subpoena.

In addition, for two important reasons, Plaintiffs also feel compelled to ask for sanctions in this case.    First, KMK's failure to respond to any part of the subpoena, and refusal to even communicate regarding the subpoena, constitutes bad faith on the part of KMK.    Second, this is especially the case given that KMK has deliberately chosen to ignore the law of the case.    Despite Magistrate Judge Hogan's explicit ruling (Doc. No. 349) that the PSLRA may no longer serve as an impediment to discovery proceeding against KMK and Ernst & Young (hereinafter "E&Y"), KMK has refused to withdraw or amend its objection to the subpoena on this basis.    The Order of Magistrate Judge Hogan was not at all unclear since E&Y has accepted the Court's ruling and cooperated in attempting to schedule discovery.    Although it should be pointed out that KMK filed its objections to the subpoena on 24 June 2004, a few days before Magistrate Judge Hogan issued his ruling on exactly this issue at the 30 June 2004 Status Conference, this does not change this argument. KMK has had actual or constructive notice of this ruling for more than two months, but has still refused to cooperate on this basis.[2]    The only

---

[2]    In an excess of caution, and out of a desire to be scrupulously fair, Plaintiffs' counsel pointed this fact out to counsel for KMK in an attempt to get KMK to abide by the law of the case. Oddly, KMK, through its counsel, has stated "we respectfully decline to withdraw or amend our objections to your subpoena." (*See*, 2 September 2004 letter from Thomas W. Breidenstein to Michael G. Brautigam, responding to the 31 August and

conclusion that can be drawn from these facts is that KMK, with both actual and constructive notice, is refusing to abide by the law of the case and the orders of this Court. If the Orders issued by this Court are to be respected, this bold challenge to the authority of the Magistrate Judge must be addressed, and KMK and their counsel must be severely sanctioned.

## II.   **LEGAL ARGUMENT**

### A.   **A Motion to Compel is the Only Recourse That Plaintiffs Have to Force Compliance with the Duly Issued Subpoena**

KMK is the party that has necessitated the filing of this Motion to Compel. First, KMK's filing of its "Responses and Objections" has left the Plaintiffs with no viable alternative if they wish to receive the documents requested in the subpoena. Federal Rule 45(c)(2)(B) states as follows:

> (B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. **If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production.** Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

Id. As a result, after KMK filed its objection, Federal Rule 45 clearly provides that the moving party's only viable alternative at that point is to file a motion to compel production. This is especially the case when KMK's counsel has no intent of

---

1 September 2004 letters from Michael G. Brautigam to Thomas Breidenstein, Attached collectively as Exhibit "D").

cooperating, or even responding to Plaintiffs' repeated requests to narrow the issues. In sum, KMK was truly unwilling to find some common ground, or to have any documents produced.  As a result, even though Plaintiffs have clearly requested relevant and unprivileged document, KMK refused to produce even one document in response to the Plaintiffs' subpoena.  Given this conduct, there can be doubt that KMK has acted in bad faith.[3]

A motion to compel is governed by Federal Rule 37.  Federal Rule 37(A) provides that a party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery. Id.  In particular, Federal Rule 37(A)(2)(B) provides as follows:

> (B) If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling answer, or a designation, or an order compelling inspection in accordance with the request.  The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.  When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before applying for an order.

Id. Expenses and sanctions can be awarded if the responding party improperly necessitated the filing of a motion to compel production. Specifically, Federal Rule 37(A)(4) provides as follows:

---

[3]  Plaintiffs have specifically been directed to deal with Patrick Fischer, Esq. of KMK on discovery related issues, despite the fact that Barrett & Weber has represented KMK in Court and in Court filings.

(A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

. . .

(C) If the motion is granted in part and denied in part, the court may enter any protective order authorized under Rule 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

Id.

There is also the requirement of this Court that any party who files a motion to compel production adhere to Local Rule 37.2. This Rule provides as follows:

"To the extent that extrajudicial means of resolution of differences have not been disposed of the matter, parties seeking discovery or a protective order may proceed with the filing of a motion for protective order or a motion to compel discovery pursuant to Rule 36(c) or Rule 37(a), Fed.R.Civ.P. Such motion may be accompanied by a supporting memorandum and by an affidavit of counsel setting forth the extrajudicial means which have been attempted to resolve differences. Only those specific portions of the discovery documents reasonably necessary to a resolution of the motion shall be included as an attachment to it. Opposition to any motion filed pursuant to this Rule shall be filed within the time specified by the Federal Rules of Civil Procedure, or, if no time is specified, within the time specified by S.D. Ohio Civ. Rule 7.2. The time for filing a reply memorandum is likewise governed by S.D. Ohio Civ. Rule 7.2. In all other respects, a motion to compel discovery or a motion or for a protective order shall be treated as any other motion under these rules."

Id. Plaintiffs' counsel has adhered to Local Rule 37.2 as set forth in greater detail in the

Affidavit of Michael G. Brautigam, Esq.

Applying these Rules to the case at bar, it is clear beyond peradventure that KMK must be forced to comply with the Subpoena. Although KMK has no valid reason for not responding to the Plaintiffs' subpoena in its entirety, there will be no voluntary cooperation and no compliance with the subpoena absent Court intervention.

**B.    KMK has Deliberately Refused to Acknowledge the Law of the Case.**

Despite actual and constructive notice that at least part of the rational for their objections to the subpoena have been explicitly overruled by Magistrate Judge Hogan, (*See*, Transcript of 30 June 2004 Status Conference at 18-19, Attached as Exhibit "E"), KMK has reaffirmed its objections to Plaintiffs' subpoena on the basis of the PSLRA. This is unmistakenly a direct and contemptuous challenge to Magistrate Judge Hogan's authority. Magistrate Judge Hogan stated during the June 30, 2004 status conference that discovery in this case was no longer stayed as to KMK or Ernst & Young, and this was reflected in his Order of July 9, 2004. (Doc. No. 349). As a result, any argument by KMK that it is precluded from responding to subpoenas on the basis of the PSLRA is a willful refusal to recognize the law of the case. Such conduct is shocking, and should be immediately addressed and severely sanctioned.

Similarly, the fact that this status conference and Order (Doc. No. 349) came shortly after KMK prepared its Responses and Objections of Keating, Muething & Klekamp to Subpoena, does not change this result. KMK should have not only withdrawn said argument after this Order but also adjusted its conduct in response to this Order. KMK did neither. This was also the case after Plaintiffs' counsel sent Mr. Breidenstein a letter in which Mr. Brautigam asked him to reconcile KMK's position in relation to the June 30, 2004 status conference. (*See*, 31 August and 1 September 2004

Correspondence, attached as Exhibit D"). As stated above, KMK, through its counsel,

replied that "we respectfully decline to withdraw or amend our objections to your

subpoena." (*See*, 2 September 2004 letter from Thomas W. Breidenstein to Michael G.

Brautigam, Attached as Exhibit D"). Thus, there can be no argument on behalf of KMK

that they were unaware of their direct and contemptuous challenge to Magistrate Judge

Hogan's Order. (Doc. No. 349).

Furthermore, even if this Order (Doc. No. 349) did not exist, PSLRA should not

impede KMK's compliance with this Subpoena. The PSLRA speaks to staying discovery

in relation to other parties in the action when that party has a motion to dismiss pending

or has provided its intention of filing a motion to dismiss in the action. The pertinent

sections of the PSLRA provide as follows:

> (A) Dismissal for failure to meet pleading requirements. In any private action arising under this title [15 USCS §§ 78a et seq.], the court shall, on the motion of any defendant, dismiss the complaint if the requirements of paragraphs (1) and (2) are not met.

> (B) Stay of discovery. In any private action arising under this title [15 USCS §§ 78a et seq.], all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

> (C) Preservation of evidence.

> (i) In general. During the pendency of any stay of discovery pursuant to this paragraph, unless otherwise ordered by the court, any party to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(b)(3)(A)-(C).   These three sections unambiguously speak to the actions of "parties" in the case. Although 15 U.S.C. §78u-4(b)(3)(B) states that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss. . .," this sentence must be read in the context of the preceding and subsequent sections.  Pursuant to 15 U.S.C. §78u-4(b)(3)(A), discovery is stayed when a motion to dismiss has been filed in an action.  Only a party to the action could file such a motion to dismiss.  Similarly, 15 U.S.C. §78u-4(b)(3)(B) only discusses sanctions for destruction of documents during a discovery stay only in relation to parties.  Finally, although 15 U.S.C. §78u-4(b)(3)(A) references parties, it specifically does not reference non-parties in relation to its stay on discovery.  There would be no reason to include non-parties in relation to this stay of discovery because the concerns which initially created the stay of discovery would not apply to non-parties.  Thus, it is clear that KMK cannot have it both ways.  Although KMK is presently a non-party, and enjoys the benefits thereof, it can no longer reap the benefits that the defendants to this action enjoy pursuant to the PSLRA. Consequently, the PSLRA should not be a bar to KMK's compliance with Plaintiffs' subpoena.

**C.    The Vast Majority of the Document Requests in the Plaintiffs' Subpoena are Relevant and Valid and Cannot Even Generate Legitimate Debate.**

The vast majority of Plaintiffs' document requests should not even be subject to discussion regarding their validity.  In its Responses and Objection, KMK discusses a few isolated document requests to the exclusion of the others.  This is because KMK realizes that KMK cannot legitimately argue that all of the document requests are irrelevant or invalid.  Plaintiffs seek documents related to the proxy materials (Document

Request Nos. 1, 2); minutes of the board meetings where the PFGI-OHSL merger was discussed and materials presented at said meetings (Document Request Nos. 13, 14); document requests regarding the change of accounting policies or practices for PFGI (Document Request Nos. 3, 4, 9, 10); document requests regarding or related to PFGI's gains on sale of loans and leases (Document Request Nos. 5, 6, 7, 8); documents related to PFGI's reduction of its estimate of operating earnings for 2000 (Document Request Nos. 11, 12); and documents which would identify all KMK personnel who performed work in relation to the PFGI-OHSL merger, including the billing records of said individuals. (Document Request Nos. 16, 17). These are not all of the relevant documents which Plaintiffs requested of KMK, but they are a good sampling.

In addition, any argument by KMK which makes to Plaintiffs' document requests on the basis of privilege, that the document request is vague or ambiguous, or that the document request is overly broad or unduly burdensome, could likely have been resolved if KMK had in good faith acted with Plaintiffs' counsel to resolve these concerns.[4] For instance, Document Request No. 23 requests "All documents and correspondence to the SEC or any other state or Federal Agency such as the FDIC." (*See*, June 10, 2004 Subpoena, Attached as Exhibit "A" to this Motion). Although KMK could make the argument that this document request is overly broad in that it could include documents or correspondence not related to the PFGI-OHSL merger or the 2003 Restatements, KMK should not have done so because it knew that this was not the case. Similarly, KMK could have very easily provided those documents which it did think was relevant to this

---

[4] When a problem with a document request was recognized, the Plaintiffs withdrew it as they did with Document Request No. 24. (*See*, correspondence collectively attached as Exhibit "B").

document request, but chose not to do so. Rather, KMK's deliberate strategy is no cooperation at all.

The same can be said of Document Request No. 20. It requested "All documents referred to in the press release, attached as Exhibit B." (*See*, June 10, 2004 Subpoena, Attached as Exhibit "A" to this Motion). KMK argues that no Exhibit "B" was attached to the Subpoena. Since the Plaintiffs have no way of knowing that this was the case, Plaintiffs will accept KMK's statement. However, regardless if the exhibits was attached or not, this is an issue which could be easily rectified through a little communication. Not only would Plaintiffs have provided Exhibit "B" to KMK if it asked, but KMK likely knew that this Exhibit was the March 5, 2003 Provident Press Release announcing the first massive restatement without asking given the context of the case and the document request. However, instead of acting in good faith to respond to this document request, KMK used this as an opportunity to refuse to comply with the document request in its entirety. Such acts should not excuse KMK's non-compliance with the Plaintiffs' Subpoena.

Another document request for which KMK has no excuse in failing to respond is Document Request No. 22. This document request asked for "All documents provided by the KMK firm to any member of the Lindner Family." (*See*, June 10, 2004 Subpoena, Attached as Exhibit "A" to this Motion). KMK argued that this request was harassing because "Presumably this request applies to any matter whatsoever and is including, not to obtain useful information pertinent to the present case, but to harass KMK and its

client."[5] (*See*, Responses and Objections of Keating, Muething & Klekamp to Subpoena, attached as Exhibit "C"). There was no confusion regarding the reason behind this discovery request. In Plaintiffs' counsel's correspondence to Mr. Fischer, Mr. Brautigam provided the following response to KMK's objection to this document request:

> "Would you kindly describe in detail, without conclusory allegations, why you feel that documents that may have been provided to the Lindner family are patently objectionable? This general topic was covered at depositions with PFGI Board members, i.e. what, if anything, PFGI Board members said to members of the Lindner family, and if a specific packet on the Restatements was presented to them, I believe that it is appropriately called for in the subpoena. On the other hand, if you tell me in detail why you are troubled by this request, I will consider withdrawing it. At a minimum, kindly indicate if any documents exist that are responsive to the request, since if no documents exist, the request is moot."

(*See*, correspondence collectively attached as Exhibit "B"). Thus, even though this letter was written after KMK's objections were prepared, it confirms that KMK understood the scope of Document Request No. 22 by July 20, 2004, and could have easily responded to this document request after that date. This letter also shows that KMK had the opportunity to make this document request moot, or to explain why it should be eliminated, but that KMK chose not to do so.

Thus, for the foregoing reasons, it must be concluded that the overwhelming majority of Plaintiffs' document requests are relevant and valid, and that those which are open to argument could likely have been resolved if KMK had acted in good faith and communicated with Plaintiffs' counsel regarding said document requests.

---

[5]  In addition, just because certain requests make KMK uncomfortable, or its clients uncomfortable, does not mean that the requests are "harassing" or invalid.

**D.**    **KMK Has No Valid Arguments to Object to Plaintiffs' Subpoena in its Entirety.**

In addition, there are no valid arguments raised by KMK to counter the legitimacy of these document requests as a whole. For many of these document requests, there is no other source from which the information sought in the Plaintiffs' subpoena can be obtained, and certainly not in a less burdensome or less expensive manner. If there was an alternate party from whom these documents could have been obtained, KMK would surely have identified this party. Although KMK argues that it should not have to respond to these document requests because has already produced a substantial amount of these same documents on behalf of its clients Defendants OHSL and Provident in response to Plaintiffs' discovery requests, this is not an acceptable argument. This is not true in relation to all of the document requests. The OHSL and Provident Defendants were never asked to provide such documents as KMK's billing records. Thus, this is not an adequate excuse in relation to those document requests which are unique to KMK.

In addition, for those document requests for which there might be some overlap with the documents previously produced by the OHSL and Provident Defendants, Plaintiffs are not seeking a duplication of the documents, but rather that KMK provide some additional documentation which would match these previously produced documents to the present document requests. In particular, in a letter to Patrick Fischer, KMK's in house counsel, Plaintiffs' counsel explained what they were requesting as follows:

> As an initial matter, please note that this subpoena is directed to KMK, not to the OHSL and Provident Defendants, although it is often hard to tell where the former ends and the latter begins. To the extent that you believe that the exact same document or documents have previously been produced by either the OHSL or the Provident Defendants, would you

> kindly indicate the Bates range on the production in some type of log, similar to a privilege log? For example, you might state, all drafts of the Proxy Materials/ Registration Statement were previously produced by the OHSL and Provident Defendants at Bates range OHSL 001 to 100.

(*See*, correspondence collectively attached as Exhibit "B"). Such a request is more than reasonable and eliminates KMK's argument that the document requests constitutes any type of undue burden upon it. However, this and every other attempt to narrow the issues was met with absolutely no cooperation from KMK. In many cases, it was met with no response at all. (*See*, correspondence collectively attached as Exhibit "B").

In addition, KMK's argument that the fact that it takes time and expense to respond to Plaintiffs' Subpoena relieves it from its responsibility of doing so is an invalid argument. Such an argument has merit only if the document requests are found to be unduly burdensome. All subpoenas require the responding party to incur costs when responding to the subpoena. KMK is not unique in this regard, and should not be treated uniquely by being able to avoid compliance with this Subpoena on this basis. This is a particularly weak argument in this case since Plaintiffs' counsel has already informed KMK that it does not have to re-produce those documents which have been previously produced by the OHSL and Provident Defendants, but only indicate through some type of log which bate stamped documents are responsive to Plaintiffs' present document requests to KMK.   This is an act which only KMK can do, and it is not an unduly burdensome act.

### E.    <u>KMK Has Acted in Bad Faith in Relation to this Subpoena.</u>

In this case, there has not only been a non-compliance with Plaintiffs' Subpoena, but KMK has acted in bad faith in relation to the Plaintiffs as well as this Court. The only authority in the Federal Rules of Civil Procedure for the imposition of sanctions

14

against a non-party for failure to comply with a subpoena *duces tecum* is found in Fed. R. Civ. P. 45(f). *Cruz v. Meachum, et al.* (1994), 159 F.R.D. 366, 368. Before sanctions can be imposed under Fed. R. Civ. P. 45(e), there must be a court order compelling discovery. Id. In addition, while a court may grant an award of costs and attorney's fees under its "inherent powers" by imposing sanctions on a non-party in a case where a court order has been violated, it is not proper to do so in the absence of a finding of bad faith. Id.

KMK has unquestionably acted in bad faith in this case. KMK's recent decision NOT to recognize Magistrate Judge Hogan's decision on the PSLRA has revealed its true colors. By refusing to do so, KMK has directly challenged the authority of a Federal Judicial Officer by refusing to comply with his rulings. If the Federal Courts are going to maintain their integrity, KMK must be severely sanctioned. However, even without KMK's deliberate refusal to acknowledge and contempt for the Magistrate Judge Hogan's rulings and the law of the case, Plaintiffs had made a persuasive case that KMK, yet again, has refused to cooperate with discovery, and should be sanctioned.

After initially serving the Subpoena on KMK on June 10, 2004, KMK has made it clear that it has no intention of responding to said subpoena when Barrett & Weber prepared the Responses and Objections of Keating, Muething & Klekamp to Subpoena on June 24, 2004. Although Plaintiffs' counsel, Michael G. Brautigam, Esq. responded to this document the next day by withdrawing certain requests and attempting, in good faith, to narrow the issues, this gesture was never reciprocated in kind. The same was true when Patrick F. Fischer, Esq. began corresponding with Plaintiffs' counsel on this issue rather than Barrett & Weber. On July 20, 2004, Michael G. Brautigam, Esq. sent

Mr. Fischer a letter which specifically set forth its position in relation to each document request. (*See*, correspondence collectively attached as Exhibit "B"). This had no impact upon Mr. Fischer or KMK. Correspondence continued between the parties, but KMK refused to participate in meaningful discussion regarding the Plaintiffs' document requests. The next communication with Mr. Fischer occurred on August 27, 2004, wherein Plaintiffs' counsel specifically stated that since he had not received a response to his letter of August 23, 2004, he was concluding that KMK had no intent of participating in any discussion regarding the subpoena so that the issues before the Court could be limited. (*See*, correspondence collectively attached as Exhibit "B"). Plaintiffs' counsel thereafter specifically informed Mr. Fischer that this letter would serve as the fulfillment of his obligation pursuant to Local Rule 37.2, and that discussions regarding this subpoena, or the lack thereof, were now officially ceasing. (*See*, correspondence attached as Exhibit "B"). No reply was ever made to this letter by Mr. Fischer, any other attorney at KMK, or any other attorney purportedly representing KMK.

The conduct of KMK is not only disappointing but, as stated above, it unquestionably illustrates bad faith. The Plaintiffs would not be requesting sanctions at this time if KMK had in good faith responded to those portions of the subpoena which are clearly relevant, unprivileged, and are not overbroad or unduly burdensome, and reserved objections for those document requests which it perceived to objectionable. In addition, the Plaintiffs also might not be asking for sanctions if KMK had not deliberately ignored the rulings of this Court. In sum, there was not only no cooperation at all from KMK in its response to Plaintiffs' Subpoena, but also a direct disrespect for the authority of this

16

Court in the way that KMK chose to challenge this Subpoena.  There is no other appropriate response to such conduct other than to award sanctions.

## III.    CONCLUSION

KMK has documents that are responsive to the Plaintiffs' Subpoena, but refuses to provide them to the Plaintiffs. In addition, even though Magistrate Judge Hogan has specifically stated otherwise, and Plaintiffs have specifically reminded KMK of this fact, KMK still refuses to withdraw its argument that it is precluded from having to respond to this Subpoena on the basis of the PSLRA.  This collective conduct confirms that the Plaintiffs are not only acting in bad faith in relation to the Plaintiffs' Subpoena, but are disregarding the authority and orders of this Court.  Therefore, because of KMK's blatant bad faith, and disrespect of this Court, Plaintiffs respectfully request that this Court should not only order KMK to comply with the Plaintiffs' subpoena, but that it should sanction KMK for its bad faith in response to the Plaintiffs' subpoena by ordering KMK to pay the costs associated with this Motion and the Plaintiffs' actions leading up thereto.

DATED: 2 September 2004                    Respectfully Submitted,


                                         /s/ Michael G. Brautigam
                                         Gene Mesh (OH Bar # 0002076)
                                         Michael G. Brautigam
                                         GENE MESH & ASSOCIATES
                                         2605 Burnet Avenue
                                         Cincinnati, Ohio 45219-2502
                                         (513) 221-8800
                                         (513) 221-1097 (fax)

                                         *Attorneys for Plaintiffs and the
                                         Putative Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs' Motion to Compel Compliance with Subpoena Issued to Non-Party KMK and Affidavit of Michael G. Brautigam, Esq. was served this 2nd day of September as per the ECM system:

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Michael R. Barrett, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202-4015

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .

David Greer, Esq.
Bieser, Greer & Landis, LLP
400 National City Center
6 North Main Street
Dayton, OH 45402-1908

/s/Stephanie A. Hite
Stephanie A. Hite

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Walter W. Thiemann, | : | |
| on behalf of himself and of | | Case No. C-1-00-793 |
| all others similarly situated, | : | |
| | | Judge Sandra S. Beckwith |
| Plaintiff, | : | |
| | | Magistrate Judge Hogan |
| vs. | : | |
| | | |
| OHSL Financial Corporation, et al. | : | |
| | | **AFFIDAVIT OF** |
| | | **MICHAEL G.** |
| Defendants. | : | **BRAUTIGAM** |

---

| | |
|---|---|
| STATE OF OHIO | : |
| | : SS: |
| COUNTY OF HAMILTION | : |

**MICHAEL G. BRAUTIGAM, being duly sworn, deposes and states as follows:**

1.    I am one of the counsel for the Plaintiffs in this action.  I respectfully submit this affidavit pursuant to Local Rule 37.2.

2.    I make this affidavit in support of Plaintiffs' Motion to Compel Compliance with Subpoena Issued to Non-Party Keating, Muething & Klekamp (hereinafter "Motion to Compel") that I duly caused to be served on non-party Keating, Muething & Klekamp (hereinafter "KMK") on June 10, 2004.  A copy of this subpoena is attached to the Motion to Compel as Exhibit "A."

3.    After KMK indicated that it was objecting to this subpoena, and was not going to respond to any of the document requests contained therein, I wrote numerous

1

letters to KMK's counsel requesting compliance with the subpoena and/or requesting that Plaintiffs and KMK attempt to narrow the issues before resorting to Court intervention. Initially, I corresponded with Barrett & Weber on these issue because Barrett & Weber is the one that represents KMK in Court and in its court filings.  However, Defendants were quickly informed that they were to communicate with Patrick Fischer, Esq. regarding issues related to the Subpoena.

      4.      On July 20, 2004, I sent a letter to Mr. Fischer which explained to him that Plaintiffs were not seeking a duplication of documents previously propounded to Plaintiff, but rather only some type of a log which would indicate which previously produced documents were responsive to the present document requests directed to KMK.

      5.      On August 23, 2004, I sent an additional letter to Mr. Fischer in an effort to resolve the issues related to Plaintiffs' Subpoena.

      6.      On August 27, 2004, I sent Mr. Fischer a letter in which I specifically stated that since I had not received a response to his letter of August 23, 2004, I was concluding that KMK had no intent of participating in any discussion regarding the subpoena so that the issues before the Court could be limited. I thereafter specifically informed Mr. Fischer that this letter would serve as the fulfillment of his obligation pursuant to Local Rule 37.2, and that discussions regarding this subpoena, or the lack thereof, were now officially ceasing.  I never received any reply from Mr. Fischer, any other attorney at KMK, or any other attorney purportedly representing KMK.

      7.      On August 31, 2004, I sent Mr. Bredenstein, the author of the Responses and Objections of Keating, Muething & Klekamp to Subpoena a letter which sought an explanation for why KMK was arguing that the PSLRA barred discovery requests to

2

KMK when a June 30, 2004 Court Order specifically lifted the stay of discovery in relation to KMK and Ernst & Young. I again informed Mr. Bredenstein that this letter was necessary in order for Plaintiffs to properly address this issue in their impending motion to compel. I again wrote Mr. Breidenstein a similar letter on September 1, 2004.

8. On September 2, 2004 Mr. Breidenstein responded, stating in substance that KMK was refusing to amend or modify their objections to the subpoena. This appears to me to be a deliberate refusal by KMK to abide by the law of the case.

9. In my opinion, Mr. Fischer has refused to meaningfully cooperate in attempting to resolve the issues which KMK argues is precluding it from responding to the Subpoena. In some cases, Mr. Fischer has even refused to respond to my letters.

10. In sum, I believe that I have made all reasonable extra-judicial efforts to resolve this discovery issue with Mr. Fischer, but that it cannot be resolved without the intervention of this Court.

**FURTHER AFFIANT SAYETH NAUGHT**

Michael G. Brautigam

Sworn to before me and subscribed in my presence this 2nd day of September 2004.

STEPHANIE A. HITE

NOTARY PUBLIC



STEPHANIE A. HITE
Notary Public, State of Ohio
My Commission Expires
February 16, 2009

3