1         UNITED STATES DISTRICT COURT

2         SOUTHERN DISTRICT OF OHIO

3         WESTERN DIVISION AT CINCINNATI

4

5              - - -

6    WALTER W. THIEMANN, on  :
    behalf of himself and  :

7    of all others similarly :
    situated,                :

8                       :
        Plaintiff,      :

9                       :
     VS.               :  CASE NO. C-1-00793

10                      :
   OHSL FINANCIAL CORP.,  :

11    OAK HILLS SAVINGS AND  :
    LOAN COMPANY, F.A.,     :

12    NORBERT G. BRINKER,    :
    KENNETH L. HANAUER,    :    **ORIGINAL**

13    WILLIAM R. HILLEBRAND, :
    ALVIN E. HUCKE, THOMAS  :

14    E. MCKIERNAN, JOSEPH J. :
    TENOEVER, HOWARD N.     :

15    ZOELLNER, PROVIDENT     :
    FINANCIAL GROUP, INC.,  :

16    ROBERT L. HOVERSON,    :
    JACK M. COOK, THOMAS D. :

17    GROTE, JR., PHILIP R.    :
    MYERS, JOSEPH A. PEDOTO, :

18    JOSEPH A. STEGER,      :
    CHRISTOPHER J. CAREY,    :

19    CLIFFORD ROE, and      :
    DINSMORE & SHOHL, LLP,  :

20                      :
        Defendants.     :

21                      - - -

22

23       Hearing held by Magistrate Judge Hogan

24   taken by me, Lee Ann Williams, a Registered

*WILLIAMS & OLIVER*
*6375 Shallowbrook Court, Loveland, Ohio 45140*
*(513) 683-9626*

1   Professional Reporter and Notary Public in and

2   for the State of Ohio, on Wednesday, June ~~28~~, 30

3   2004, at 1:06 p.m.

4

5   APPEARANCES:

6        On behalf of the Plaintiffs:

7             Gene Mesh, Esq.
                  and
8             Michael G. Brautigam, Esq.
             Gene Mesh & Associates
9             2605 Burnet Avenue
             Cincinnati, Ohio 45219

10       On behalf of the Defendants:

11
             Rachel Rowe, Esq.
12            Keating, Muething & Klekamp
             1400 Provident Tower
13            One East Fourth Street
             Cincinnati, Ohio 45202

14       On behalf of the Defendants:

15
             James Greer, Esq.
16            Bieser Greer Landis
             400 National City Center
17            Six North Main Street
             Dayton, Ohio 45402

18       On behalf of the Defendants:

19
             John W. Hust, Esq.
20            Schroeder, Maundrell, Barbiere
             & Powers
21            110 Governor's Knoll
             11935 Mason Road
22            Cincinnati, Ohio 45249

23   ALSO PRESENT:  John Wirthlin
                     Laura Wilson
24                      - - -

1          MAGISTRATE HOGAN:   I thought what

2     we might do to start is -- do you all have

3     copies of Mike's letter?

4                MS. ROWE:   Yes, Your Honor.

5                MAGISTRATE HOGAN:   I thought we

6     might go down the list right now, because I

7     checked with Judge Beckwith on these issues and

8     I can answer these questions pretty quick.   We

9     can talk about point number one in a minute if

10    you want to.

11               Number two is for Judge Beckwith.

12    She's going to decide that so that's not for

13    me, document 280.   Three and four are for us.

14    Number five is for Judge Beckwith.   And as I

15    recall, the rationale behind it is that two and

16    five impact motions that are pending before her

17    and so she wants to do the whole thing.

18               Number six, I think document 328,

19    at least in Judge Beckwith's opinion is moot.

20    329 isn't, but for her.   So I think what we

21    might talk about is in reverse order.   What

22    about document 305, Plaintiff's Motion to

23    Strike the Errata Sheet that apparently

24    followed Mr. Brinker's deposition.

1          And it would be helpful to know

2    exactly how Mr. Brinker's deposition is being

3    used in the case.  I mean, is it supportive of

4    some motion or what?  I mean, so that -- that

5    would be helpful for us, anyway, so go ahead.

6          MR. BRAUTIGAM:  Well, Your Honor,

7    it's fully briefed.  As you know, because you

8    presided over Mr. Brinker's deposition, Mr.

9    Brinker had a lot of things wrong.  He seemed

10   to be confused, not so much by the questioning,

11   but by his recollection.

12          Shortly after you ruled that Mr.

13   Brinker would not be allowed to be deposed

14   again, KMK submitted an errata sheet that

15   changed his testimony in its entirety.  What

16   he -- when he said 17 years, it became five

17   years.

18          Plaintiffs respectfully submit

19   that those changes could not have been made by

20   Mr. Brinker himself, that this was KMK

21   completely, and that the deposition is not a

22   take home exam, as the case law suggests.  And

23   that plaintiffs are entitled to have his

24   recollection, his testimony, not KMK's

1  recollections of his testimony.  And to that

2  extent, our document speaks for itself.

3              MAGISTRATE HOGAN:  How -- do you

4  plan to use Mr. Brinker's deposition in some

5  way?

6              MR. BRAUTIGAM:  Yes, Your Honor.

7  I plan to use it at trial if Mr. Brinker is not

8  available.  I plan to use it in, in many ways,

9  but certainly at trial.  I believe we've

10  already heard Mr. Brinker's deposition with

11  motions for summary judgment, particularly with

12  respect to unanimity.

13              He's the chairman of the Board,

14  he's a key witness and plaintiffs are entitled

15  to have an accurate recitation of his

16  testimony, not KMK's corrections.

17              MAGISTRATE HOGAN:  Okay.  So in

18  other words, the theory is if Mr. Brinker is

19  unable to testify at trial, you want to use the

20  uncorrected version of his deposition?

21              MR. BRAUTIGAM:  Yes, Your Honor.

22              MAGISTRATE HOGAN:  And if he does

23  testify at trial, you want to use the

24  uncorrected version of his deposition to

1    impeach him?

2                    MR. BRAUTIGAM:  Yes, Your Honor.

3                    MAGISTRATE HOGAN:  Right?

4                    MR. BRAUTIGAM:  And also it's

5    entirely improper, based on the Federal Rules

6    and based on case law, to treat a deposition as

7    a take home exam, and that's exactly what he

8    did.  It's also particularly egregious in this

9    case given the timing, that these corrections

10   were made shortly after your order saying that

11   Mr. Brinker is not coming back.

12                   MS. ROWE:  Your Honor, of course

13   we disagree with Mr. Brautigam's

14   characterizations, first of all, of the errata

15   sheets and the corrections that were made.  I

16   think Mr. Brautigam said that it changed his

17   testimony in its entirety.  That's completely

18   false.

19                   You did preside over the

20   deposition, you know exactly what happened.

21   You know the efforts that were made to confuse

22   Mr. Brinker, who is very old and infirm and had

23   obvious difficulty dealing with the setting.

24   But our position, frankly, is that that motion

1   is fully briefed and unless Jamie has something

2   to add, I don't think we have anything to add.

3           MR. GREER:  I wouldn't add

4   anything, Your Honor.  This seems to me to be

5   an issue of impeachment.  And if we have to

6   cross this bridge at trial, if Mr. Brinker is

7   not available, we can cross it then.  But as

8   far as striking the errata sheet right now,

9   that's fully briefed and before you.

10          MAGISTRATE HOGAN:  Okay.  Let's

11  see, next week is what -- Monday?

12          MS. WILSON:  Monday is the 5th.

13          MAGISTRATE HOGAN:  I'll be back

14  here on the 7th and 8th.  Okay.  This can be

15  decided by the 15th of the month.  I commit to

16  you that it will be done by then.  The errata

17  sheet is, is -- his deposition is filed and the

18  errata sheet is part of it, I take it, right?

19          MS. ROWE:  Correct.

20          MAGISTRATE HOGAN:  Okay.  So much

21  for that.  What about document 302, the motion

22  to quash the subpoena?

23          MR. BRAUTIGAM:  Your Honor, Mr.

24  Tayfun Tuzun is a gentleman who works at

1    Provident.  He was integrally involved with the

2    restatement issues and plaintiffs not

3    surprisingly would like to depose him.

4    Somewhat surprisingly, Ernst & Young, which is

5    now a nonparty, filed the motion to quash the

6    subpoena.

7              MAGISTRATE HOGAN:  Meaning that

8    Judge Beckwith granted a motion to dismiss

9    Ernst & Young?

10             MR. BRAUTIGAM:  Yes, Your Honor.

11             MAGISTRATE HOGAN:  I'm not up on

12   this.

13             MR. BRAUTIGAM:  And also KMK, Your

14   Honor, entirely on statute of limitations

15   grounds -- or largely on statute of limitations

16   grounds.

17             MAGISTRATE HOGAN:  All right.

18             MR. BRAUTIGAM:  So KMK and Ernst &

19   Young are no longer defendants.  They're

20   nonparty witnesses, I guess.

21             MAGISTRATE HOGAN:  So go ahead.

22   He works for Provident?

23             MR. BRAUTIGAM:  Yes, Your Honor.

24   He works for Provident.  He submitted

1   affidavits on Provident's behalf and naturally

2   we'd like to depose him.  We believe that he's

3   a key player with respect to the restatement

4   issues.  And as I mentioned, Ernst & Young, who

5   is now a nonparty, filed the motion to quash

6   the subpoena.

7           MAGISTRATE HOGAN:  So does anybody

8   care about the deposition of --

9           MS. ROWE:  You know, I -- E&Y,

10  obviously, moved to quash the subpoena.  I

11  believe it was fully briefed.  We -- I can't

12  recall, to be honest with you, if we filed a

13  formal response.  However, we took no position

14  and we are comfortable with whatever the Court

15  decides on whether the deposition should go

16  forward.

17          I will say, however, though that

18  motions to dismiss are still pending and

19  while -- while that is happening, I think that

20  discovery on issues that are related to the

21  pending motions to dismiss -- particularly with

22  respect to Mr. Hertlein, who is a new defendant

23  in the case and theoretically could -- claims

24  against him could be impacted by the Tuzun

1  deposition, at least theoretically, I suppose

2  it would be our position that discovery, to the

3  extent it impacts new defendants and claims

4  that remain the subject of pending motions to

5  dismiss, discovery shouldn't generally go

6  forward.

7  　　　　　　MR. GREER:  Right, under PSLRA.

8  　　　　　　MR. BRAUTIGAM:  Your Honor, may I

9  respond briefly?

10  　　　　　　MAGISTRATE HOGAN:  That was the

11  same argument that Ernst & Young had, right?

12  　　　　　　MR. GREER:  Yes.

13  　　　　　　MAGISTRATE HOGAN:  Yes, go ahead.

14  　　　　　　MR. BRAUTIGAM:  Your Honor, may I

15  hand you document number 221?  This is the

16  Court's order, and I respectfully submit that

17  this is the root of many of the problems

18  because, as you can see, the scheduling order

19  calls for the Court's decision on the motions

20  to dismiss by April 30th, 2004.

21  　　　　　　MAGISTRATE HOGAN:  Yes.

22  　　　　　　MR. BRAUTIGAM:  That hasn't

23  happened.  And this is where the case has been

24  thrown somewhat into disarray.  So, Your Honor,

1   respectfully on behalf of the plaintiffs, we

2   thank you very much for meeting with us because

3   we really do need some guidance.  Now, from the

4   beginning of the case, the Dinsmore defendants,

5   the Provident defendants, all of the defendants

6   have said more delay is not a problem, nobody's

7   prejudiced.  They've said this for literally

8   years.

9              The schedule contemplates that

10   discovery would move forward on May 1st, and

11   that hasn't happened.  And it's been two months

12   now and we are prejudiced.  So, Your Honor, we

13   are seeking some guidance as to how we can

14   proceed, against whom we can proceed.

15              It's really an open question.  And

16   once again, I thank you for your time because

17   this is a big issue and I respectfully submit

18   it needs to be resolved now.

19              MAGISTRATE HOGAN:  Okay.  You

20   don't remember if you took a position in

21   relation to the --

22              MS. ROWE:  You know, it was a

23   little bit of a strange situation because I

24   think Mr. Brautigam and counsel for E&Y agreed

1    to do it in letter briefs rather than formal

2    briefs.  And at the time we were exchanging

3    letters with one another and with the Court.

4                    But the position that we have

5    today and that we've had all along, I just

6    don't recall if it was in a filing, is that

7    whatever the Court decides with respect to the

8    Tuzun deposition, we're fine with.

9                    We understand E&Y's position and

10   the general notion that because there are

11   pending motions to dismiss under PSLRA,

12   discovery should not go forward on issues

13   related to those pending motions.  But beyond

14   that, if you decide that it's appropriate for

15   the Tuzun deposition to go forward at this

16   point, we don't have a problem with it.

17                   MAGISTRATE HOGAN:  I think Mike's

18   right about -- I tried to commit for Judge

19   Beckwith, based on prior, I guess, behavior.

20   It apparently got bogged down with other stuff,

21   so that was a problem.

22                   MS. ROWE:  I will say on one other

23   issue that complicates this, at least to some

24   extent, Mr. Brautigam, as you know, has filed a

1   motion for leave to have interlocutory

2   appeal -- or you may not know that, related to

3   the orders dismissing both KMK and Ernst &

4   Young.

5           And so theoretically, if Judge

6   Beckwith permits an interlocutory appeal, her

7   decisions dismissing those two parties could be

8   impacted one way or another.  And, again, it

9   makes ongoing discovery related to claims

10  against those two former parties somewhat

11  troubling, at least in the opinion of the OHSL

12  and Provident defendants.

13          MAGISTRATE HOGAN:  Okay.  Again,

14  that can be -- that's a simple issue, too.

15  Seems to me it can be resolved by the 15th.  I

16  mean, I can commit for myself, so that will be

17  done.  I don't want to spend a lot of time on

18  the Pat Fischer letter, but -- because I

19  remember this from before.  Go ahead.

20          MR. BRAUTIGAM:  Your Honor, the

21  sole purpose of that letter, in violation of

22  the Federal Rules and the Local Rules, is to

23  call me names.  Just yesterday Mr. Fischer,

24  through counsel for KMK, Barrett & Weber, did

1  exactly the same thing with a notice of filing,

2  it attaches the letter.

3           The sole purpose is to call me

4  names.  And we'll be filing a motion to strike

5  later this week for exactly the same reasons.

6  It's improper.  They should be held to the same

7  standards that plaintiffs are held to, and it's

8  simply outrageous that they would violate the

9  Local Rules merely to attempt to trash me,

10  which is the sole purpose of document 204.  And

11  it's the sole purpose of the document that was

12  filed yesterday.

13           MS. ROWE:  I don't represent KMK.

14  In my mind the record as reflected in filings

15  from every party in this case speaks for

16  itself.

17           MAGISTRATE HOGAN:  I'm -- I'm

18  perplexed as to how you can strike something

19  that's never been docketed or part of the

20  record in the first place.

21           MR. BRAUTIGAM:  Well, Your Honor,

22  the full title of the document is Motion to

23  Strike or Otherwise Not Consider.  And it's not

24  a pleading, so technically the Court is

1    correct, but we believe that there should be

2    something on record that Mr. Fischer's behavior

3    was inappropriate, that it's in violation of

4    the Local Rules, and that should be reflected

5    in the official Court docket.

6             MAGISTRATE HOGAN:  Well, it's been

7    a while since I've read Pat Fischer's letter.

8    And I don't really recall exactly what the

9    point was, but I don't think you can strike

10   anything that's not been docketed or part of

11   the record in the first place.

12            Now, you know, preclude the Court

13   from considering the contents of Pat Fischer's

14   letter.  I don't see, you know, how that

15   impacts any issue in the case.  I don't have it

16   in front of me and it's been a while since I've

17   read it.  Have you got it?  What's he say?

18            MR. BRAUTIGAM:  I don't have it

19   with me, Your Honor.  Essentially he calls me

20   names.  And not only does he call me names, but

21   it's false.  Mr. Fischer apparently realized

22   that his conduct was improper, he chose not to

23   write in response to my letter correcting the

24   record and he chose not to file anything in

1    response to our motion to strike.  Your Honor,

2    it's a minor point and obviously the Court will

3    make a decision on it.

4               MAGISTRATE HOGAN:  Yes, here's my

5    decision.  I'm going to sua sponte strike the

6    motion to strike as silliness and recommend,

7    Mike, if you think he's calling you names, why

8    don't you write Pat a letter and call him names

9    and then leave the Court out of gross

10   silliness, all right?

11              Now, let's go to page two.  And I

12   don't know exactly what you mean here.  Ernst &

13   Young is out of it, so point seven is moot.

14              MR. BRAUTIGAM:  No, Your Honor.

15              MAGISTRATE HOGAN:  It isn't?  Go

16   ahead.

17              MR. BRAUTIGAM:  Your Honor, as we

18   now know, Ernst & Young is no longer a

19   defendant.

20              MAGISTRATE HOGAN:  All right.

21              MR. BRAUTIGAM:  That doesn't mean

22   they shouldn't be witnesses in the case.  I

23   spoke with Mary-Helen Perry of Jones Day and I

24   said I'd like to take the deposition of the

1    engagement partner on the account related to

2    restatement issues.

3            She wrote back and graciously

4    agreed to accept the subpoena, but said that

5    she does not believe that any discovery should

6    go forward during the pendency of all of the

7    motions to dismiss.  So, Your Honor, there is

8    where the current schedule cannot be reconciled

9    any longer --

10            MAGISTRATE HOGAN:  Okay.

11            MR. BRAUTIGAM:  -- with the

12    scheduling order and where we need guidance.

13            MAGISTRATE HOGAN:  Okay.

14            MR. BRAUTIGAM:  So it's not moot,

15    and we need help.

16            MAGISTRATE HOGAN:  Anybody have

17    anything to say about that?  I don't see any

18    reason to delay discovery with Ernst & Young.

19    And I'll put that in the order, Mike, but I see

20    no point in playing around with it now.

21    They're out of it, so -- what about eight, KMK?

22            MR. BRAUTIGAM:  Your Honor, it's

23    essentially the same thing.  Mr. Fischer wrote

24    me a similar letter, at least in content,

1  saying, hey, we don't believe that any

2  discovery should go forward during the pendency

3  of all of the motions to dismiss.

4         MS. ROWE:  I think there was a

5  notice of filing of Pat Fischer's letter

6  yesterday.  And as I understand it, you have it

7  before you.  KMK is not here, they're not

8  represented.  They're not a party in the

9  action.

10         And as I understand from the

11  letter that was filed with the Court, as a

12  nonparty, they didn't think that it was

13  appropriate or that they were even invited or

14  permitted to be at the status conference.  But

15  I -- in my mind, OHSL and Provident and the

16  directors don't have anything to say on behalf

17  of KMK or the discovery.  I think that the

18  filing yesterday probably speaks for itself.

19         MR. BRAUTIGAM:  Your Honor, and I

20  object to that filing.  I'm going to file a

21  motion to strike that as well.  It's almost

22  exactly the same content, except Mr. Fischer

23  put this in a filing called Notice of Filing.

24         It's improper and the content is

1    that he doesn't believe that any discovery

2    should take place with respect to KMK, just as

3    Ernst & Young did not believe, while any of the

4    motions to dismiss are pending.

5              MAGISTRATE HOGAN:  I don't agree,

6    okay?  So you win that one, too.  Nine -- and

7    again, I'll put that in the order on the 15th.

8    PWC report.

9              MR. BRAUTIGAM:  Your Honor, this

10   has come up in depositions and the press and

11   public documents.  Provident has referred to

12   the PWC report to show essentially that they're

13   blameless, that these were all unintentional

14   errors, it's a big mistake, and we'd like to

15   obtain that record.

16             They're using it as a sword, not

17   as a shield.  Mr. Burke had previously

18   indicated that this is a work product,

19   privileged document, he's not going to turn it

20   over.  I then followed that up with a letter

21   and he said he would consider it and I simply

22   haven't heard back.

23             So once again, within the existing

24   schedule, which calls for discovery cut-off of

1    October 29th, 2004, we'd like to get this

2    matter resolved.  If we engaged in a round

3    briefing schedule, that takes months, we're

4    going to be hurt.

5                    MAGISTRATE HOGAN:  Yes.

6                    MS. ROWE:  We are researching the

7    matter, Your Honor.  It was a report that was

8    work product and we're researching whether we

9    have proper grounds to object to its production

10   to the plaintiffs.  And we'll -- I can commit

11   that we'll let Mr. Brautigam know by -- is

12   today Wednesday?

13                   MR. BRAUTIGAM:  Yes.

14                   MS. ROWE:  By Friday in a letter

15   what position we're going to take.

16                   MAGISTRATE HOGAN:  Okay.

17                   MS. ROWE:  Okay.

18                   MAGISTRATE HOGAN:  So if you get

19   it, you're happy.  If you don't, it's a motion

20   to compel.

21                   MR. BRAUTIGAM:  Yes, Your Honor.

22                   MAGISTRATE HOGAN:  Okay.  Number

23   ten.

24                   MR. BRAUTIGAM:  Your Honor, you

1    seem to have largely covered that and I

2    appreciate it.   Their role as nonparties while

3    motions to dismiss were pending is somewhat

4    ambiguous.   I think you've clarified that.

5                    MAGISTRATE HOGAN:   Expert reports?

6                    MR. BRAUTIGAM:   Yes, Your Honor.

7    With respect to document 221 again, point five

8    identifies the deadline for the identification

9    of expert witnesses of August 30th and

10   September 30th, respectfully.   I believe I have

11   an agreement in principle with Mr. Burke that

12   the August 30th deadline for the identification

13   of expert witnesses would also serve as the

14   deadline to turn over the reports.   If that's

15   true, we'd like to finalize it.

16                    I raised this issue with Mr. Hust

17   just today and I think he indicated that he

18   doesn't intend to produce expert reports, but

19   will identify the experts.

20                    MR. HUST:   That would be my

21   intention, Your Honor, unless you -- unless the

22   Court otherwise orders the --

23                    MAGISTRATE HOGAN:   It's a

24   practical thing, isn't it?   The cut-off is

1  October 29th.  We're trying to work this out so

2  that it's all done before the cut-off.  So I

3  mean, I can move that around to accommodate

4  everybody, just --

5           MS. ROWE:  Your Honor, we've

6  agreed to produce our expert reports on the

7  date that was indicated for identification --

8           MR. BRAUTIGAM:  September 30th.

9           MS. ROWE:  -- in writing with Mr.

10  Brautigam and I don't see any reason to discuss

11  it further now.

12           MAGISTRATE HOGAN:  So is it just

13  you, John?

14           MR. HUST:  Yes.  I'd just as soon

15  not incur the expense.  We'll make -- obviously

16  our experts will be available beginning October

17  1st for a deposition.

18           MAGISTRATE HOGAN:  You have to

19  have a report first, you know.  Can you do it

20  by September 30th?  Do both the -- I mean, if

21  you have the report, you've designated the

22  expert, but --

23           MR. HUST:  I think we can.  If

24  there was some reason I would -- that some

1    slight delay was necessary --

2                    MAGISTRATE HOGAN:  No big deal.

3                    MR. HUST:  I'd ask Mr. Brautigam

4    or something first.

5                    MAGISTRATE HOGAN:  It wouldn't be

6    a problem as long as we get everything done by

7    October 29th.

8                    MR. HUST:  Okay.

9                    MAGISTRATE HOGAN:  Let's just say

10   those are reports instead of designations with

11   the understanding that if John needs more time,

12   it's not a big deal.  Now what?  Where are we?

13                    MR. BRAUTIGAM:  We're at point 12,

14   Your Honor.

15                    MAGISTRATE HOGAN:  Okay.  KMK's

16   misbehavior at depositions.

17                    MR. BRAUTIGAM:  Your Honor, points

18   12 and 14 are related and we'll be filing a

19   motion to hold KMK in contempt for their

20   conduct at depositions later this week.

21                    MAGISTRATE HOGAN:  Okay.  Now,

22   what's -- I mean -- how about starting with 13?

23   That seems like the easiest.  You want more

24   than seven hours?

1             MR. BRAUTIGAM:  Yes, Your Honor.

2  For some witnesses, we believe that seven hours

3  is appropriate.  This is complex litigation.

4  It doesn't get much more complex than this.

5  Because of certain strategies that the

6  defendants have employed, things have taken

7  longer than normal.  But plaintiffs obviously

8  submit that they're entitled to more than seven

9  hours with respect to some witnesses in the

10  case.  And we'd like to get it.

11             MAGISTRATE HOGAN:  Like who?

12             MR. BRAUTIGAM:  Like Mr. Carey,

13  like Mr. Hoverson, the CEO and CFO of

14  Provident.

15             MAGISTRATE HOGAN:  Anybody else?

16             MR. BRAUTIGAM:  Yes, Your Honor.

17  Some of the other directors as well.

18             MAGISTRATE HOGAN:  So have you --

19  I mean, have you run up against situations

20  where you've taken depositions and come up

21  short?  What's the deal?  Are you trying to --

22  are you trying to make a preemptive strike

23  here --

24             MR. BRAUTIGAM:  No, Your Honor.

1          MAGISTRATE HOGAN:   -- assuming you
2    need more time?  Tell me what the deal is.
3          MR. BRAUTIGAM:  No, Your Honor.
4    With respect to Mr. Carey, for example, I
5    believe I had close to the presumptive seven
6    hours, if not the entire presumptive seven
7    hours.  I simply need more time.
8          With respect to Mr. Hoverson and
9    Mr. Cook, there is some period of minutes
10   remaining from the presumptive seven hours.  I
11   think it's 50 something for Mr. Hoverson and
12   perhaps the same amount or something like that
13   for Mr. Cook.  But I anticipate that I will go
14   past that, I will need to go past that given
15   the voluminous nature of the documents, et
16   cetera.
17         MAGISTRATE HOGAN:  For how long?
18         MR. BRAUTIGAM:  Perhaps another
19   day, Your Honor.  I'd like to remind the Court
20   that in the state court litigation, some of the
21   OHSL defendants and witnesses were deposed for
22   several days.
23         MS. ROWE:  Excuse me.  That's
24   true.  In fact, Mr. Hanauer was deposed for

1    four days, and 900 and some pages.  And in our

2    minds, totally inappropriate as -- with respect

3    to the depositions of our clients that Mr.

4    Brautigam is talking about.

5            Seven hours is the presumptive

6    rule for a reason.  Seven hours is plenty of

7    time in this and other complex litigation.  And

8    to the extent that Mr. Brautigam wants more

9    time, we would suggest that he file a motion

10   and attach the deposition so the Court can see

11   how he spent the first seven hours.  The

12   depositions speak for themselves.

13           Mr. Mesh has been present for a

14   portion of them and we would submit that

15   there's absolutely no reason to go beyond the

16   seven hour limit that's imposed by the Federal

17   Rules.

18           MR. BRAUTIGAM:  Your Honor --

19           MS. ROWE:  And that, frankly, it's

20   Mr. Brautigam's obligation to demonstrate to

21   the Court why he needs beyond that limit.

22           MR. BRAUTIGAM:  Your Honor, I'd

23   first like to point out that it's a seven hour

24   presumption.  And the case law, of course,

1    discusses the complexity of the case, the

2    voluminousness of the documents, all factors

3    that we have here.  So I think you can make a

4    seat-of-the-pants decision on this, Your Honor,

5    since it's so obvious.

6              We don't want to be burdened by

7    filing more paperwork with the Court that takes

8    a long time to get resolved, given that the

9    clock is ticking with respect to the scheduling

10   order.

11             MS. ROWE:  Well, Your Honor, there

12   are a number of factors, and motion practice is

13   appropriate, because one of the factors is how

14   he spent the first seven hours.  And when he

15   asks the same questions over and over and takes

16   up two or three hours on subjects that

17   literally have not a single thing to do with

18   the claims that are pending in the litigation,

19   there's no reason that our clients should be

20   burdened with both the time and expense of

21   coming back beyond the seven hours.

22             And we would submit that you can't

23   make the decision by the seat of your pants

24   without, in fact, considering all of these

1    factors that Mr. Brautigam mentioned, including

2    looking at the depositions so far.

3                    MR. BRAUTIGAM:  Your Honor, we

4    would encourage you to look at the depositions

5    so far, and they've been filed with the Court.

6    And as I indicated, we are going to have a

7    motion to hold KMK in contempt for their

8    conduct, which actually Judge Beckwith invited,

9    filed later this week.

10                   MAGISTRATE HOGAN:  You know, I did

11   read the deposition of Mr. Brinker that was

12   taken in the state court before his deposition

13   here.  And it was, seems to me, somewhere

14   around 800 pages.  I mean, it took me three

15   days to read it.  Three days that I might add

16   could have been better spent.

17                   And I was relatively unimpressed

18   with the deposition of Mr. Brinker, too, I

19   might add.  My feeling when I left that

20   deposition is probably 70 percent of what he

21   said was demonstrated by documents or could

22   have been.

23                   And -- but I, I -- that's my

24   contact with this case in terms of depositions.

```
 1    I haven't seen or read any of the depositions
 2    of anybody else.  If I recall this -- correct
 3    me if I'm wrong -- Mr. Hoverson is still the
 4    president of the bank, isn't he?  Unless
 5    something happened with the takeover here that
 6    I don't know.
 7                    MR. WIRTHLIN:  Tomorrow is his
 8    last day, Judge.
 9                    MAGISTRATE HOGAN:  Is he going to
10    be retired?  Is he going to work for National
11    City, or what's the deal?
12                    MR. WIRTHLIN:  No, he's not going
13    to work for National City, he's retiring.
14                    MAGISTRATE HOGAN:  And the
15    directors are mostly retired people, I think.
16                    MR. BRAUTIGAM:  No, Your Honor,
17    not for Provident.
18                    MAGISTRATE HOGAN:  Are you talking
19    about the Provident directors when you said
20    directors?
21                    MS. ROWE:  Correct, he --
22                    MAGISTRATE HOGAN:  You said Carey,
23    Hoverson.
24                    MR. BRAUTIGAM:  Yes, Your Honor,
```

1    those are all Provident directors.

2                    MAGISTRATE HOGAN:  So they're

3    currently working people.  Mr. Carey, what's

4    his status?

5                    MR. WIRTHLIN:  He is -- his last

6    day with Provident is tomorrow.  And then he is

7    moving out of town to take a job in California.

8                    MAGISTRATE HOGAN:  Well, let's do

9    it this way.  I just can't -- if these

10    depositions are anywhere near the length of Mr.

11    Brinker's, I just haven't got the time to read

12    them all.  So -- and I can't conceive of -- I

13    don't consider this a particularly complex

14    case.

15                    I don't know if any of you do, but

16    I don't.  And 14 hours just seems off the wall

17    to me, so I'll give Mr. Brautigam a little

18    leeway and give him another hour.  Eight hours

19    instead of seven.  They could take a late lunch

20    or something.  And that's it.

21                    MR. GREER:  Your Honor, just for

22    clarification, is that just the witnesses that

23    he mentioned or is that for any witness in the

24    case?

1    MAGISTRATE HOGAN:  Carey, Hoverson

2  and the directors.

3    MR. GREER:  Thank you.

4    MAGISTRATE HOGAN:  Anybody else,

5  it would have to be established by need.

6    (Court and Clerk conferred.)

7    MAGISTRATE HOGAN:  Provident, yes.

8  Good point.

9    MS. ROWE:  Thank you.

10    MAGISTRATE HOGAN:  Because I

11  thought Mike was talking about the OHSL

12  directors.  The Provident directors.

13  Deposition conduct, I mean, I -- he says

14  speaking objections, refusal to answer

15  questions, refusing to interpret documents.

16    Why don't we take them one at a

17  time.  I mean, I don't see any -- here's what

18  it says, KMK has repeatedly made speaking

19  objections that suggest an answer or suggest

20  that the witness not answer the question.  For

21  example, objection, calls for speculation.  And

22  then the witness says, I'm not going to

23  speculate on that.

24    I, I actually observed that during

1    the Brinker deposition, but I didn't attribute

2    any kind of misbehavior to the lawyer.   I

3    thought some of the cases were where Mr.

4    Brinker was asked a question and he was trying

5    to analyze and Jim Burke made an objection that

6    said, based on speculation.

7              And then Brinker responded with,

8    well, that's speculation.  I -- I think he was

9    having trouble making the connection between

10   the question and the answer.  And that's the

11   last thing that was said to him, frankly.

12             I don't think that was any -- at

13   least it didn't appear to me to be any plan

14   between Burke and Brinker.  But the obvious

15   preferable practice is to make your objection,

16   state the reason and then instruct the witness

17   to answer the question and let the Court

18   resolve it.  So does anybody need any help

19   following that?  I don't think so.

20             Refusal to answer questions?  I

21   mean, the witness is supposed to be directed to

22   answer questions unless it's privileged.  And

23   then there better be a good reason why he's

24   told not to answer the question.  I don't know

1    about refusing to answer -- comment on a

2    question, refusing to answer it based on it's

3    not for me to interpret.

4            Well, I don't know if it is or it

5    isn't.  It depends on what the document is and

6    what is asked.  If you presented me with a

7    document from the Air Force Base and said

8    interpret it, I'd say what is this?  If it's an

9    appropriate witness who was asked a question he

10   should know, it's different.  I can't decide

11   that in a vacuum.

12           What else have we got?

13   Instructions not to answer questions, speaking

14   objections.  I mean, what do you want me to

15   say?  You're not supposed to trigger the

16   deponent's answer by telling them what to say

17   by virtue of an objection.  That's not -- if

18   that happens, I suppose counsel should be

19   sanctioned and Mr. Brautigam should be given

20   another hour to question the witness who's

21   screwing around, trying to run out the time.

22           I mean, that's how I feel about

23   it.  It's like we recently had with a jury that

24   I thought I had planned wonderfully in my head

1    for time limits in terms of the direct and

2    cross-examination of witnesses.  And what I

3    think happened is, as a matter of strategy, one

4    counsel or the other determined that I'm going

5    to take up all the time here.  And that almost

6    happened, so --

7              MS. ROWE:  Well, Your Honor --

8              MAGISTRATE HOGAN:  The next time

9    we did it, we had -- we counted the time

10   against the cross-examiner, which made --

11   eliminated that problem.  But I don't know how

12   to resolve that, except to tell you that that's

13   universally accepted Rules that everybody

14   knows.  And the deposition transcript would

15   show whether or not counsel is complying with

16   the Rules or not.  If not, show me the

17   transcript.

18             MR. BRAUTIGAM:  Your Honor, thank

19   you very much.

20             MAGISTRATE HOGAN:  I'll spend the

21   time and make you -- and give you another

22   opportunity to ask the question.

23             MR. BRAUTIGAM:  Your Honor, thank

24   you very much for that guidance.  We believe

1    that this conduct was egregious.  We'll be

2    filing papers to that effect later in the week.

3                    MAGISTRATE HOGAN:  Okay.  Is that

4    it?

5                    MR. BRAUTIGAM:  No, Your Honor, a

6    few other things.

7                    MAGISTRATE HOGAN:  Oh, we have

8    more?

9                    MR. BRAUTIGAM:  First of all,

10   could we come back before the Court in about a

11   month?  You've made some of these rulings and

12   we'd like to report back to see if any progress

13   has been made, because in the past we haven't

14   made progress.  So could we come back, let's

15   say July 30th, and say, all right, I made these

16   rulings on June 30th, have any depositions

17   taken place, what's the status of the case.

18   Can we get another date to come back?

19                   MAGISTRATE HOGAN:  Sure.

20                   MR. BRAUTIGAM:  All right.  I

21   would suggest July 30th, Your Honor.

22                   MAGISTRATE HOGAN:  I'd have to

23   look at the calendar.

24                   MS. ROWE:  That doesn't work, I

1  know, for me and Mr. Burke.  I don't have Jim

2  Burke's calendar.

3  　　　　　　　　MAGISTRATE HOGAN:  Well, why don't

4  we -- I'll show you ours.  In fact, if you

5  want, you can make a xerox of it and then you

6  can --

7  　　　　　　　　MR. BRAUTIGAM:  Your Honor, just

8  so we're clear, you talked about a written

9  order on or about July 15th.

10  　　　　　　　MAGISTRATE HOGAN:  July 15th.

11  　　　　　　　MR. BRAUTIGAM:  But orally you

12  have allowed plaintiffs to proceed with respect

13  to depositions and we can set that up?

14  　　　　　　　MAGISTRATE HOGAN:  Right.  You

15  don't have to wait --

16  　　　　　　　MR. BRAUTIGAM:  We don't have to

17  wait for the order?

18  　　　　　　　MAGISTRATE HOGAN:  -- till the

19  15th.  I just said for purposes of resolving

20  this, I want to put it all in writing and I'll

21  just go down the list in your letter.

22  　　　　　　　MR. BRAUTIGAM:  And we've

23  formalized the dates for the expert reports,

24  Judge.  I think we've covered that, Your Honor.

1    And I thank you for your time.

2                    MAGISTRATE HOGAN:   Let's get the

3    date.

4                    MR. MESH:   Off the record.

5

6

7                         -  -  -

8           (Hearing concluded at 1:40 p.m.)

9                         -  -  -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

# C E R T I F I C A T E

I, Lee Ann Williams, a Notary Public in

and for the State of Ohio, do hereby certify

that the foregoing is a true and correct

transcript of the proceedings in the foregoing

captioned matter, taken by me at the time and

place so stated and transcribed from my

stenographic notes.

July 12, 2004

My commission expires:
August 26, 2004

Lee Ann Williams, RPR
Notary Public-State of Ohio

*WILLIAMS & OLIVER*
*6375 Shallowbrook Court, Loveland, Ohio 45140*
*(513)683-9626*