**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **WALTER W. THIEMANN, et al.** | : | **Civil Action No. C-1-00-793** |
| **Plaintiffs,** | : | **Judge Sandra S. Beckwith** |
| **vs.** | : | **Magistrate Judge Timothy Hogan** |
| **OHSL FINANCIAL CORP., et al.** | : | |
| **Defendants.** | : | |

**PLAINTIFFS' MOTION TO HOLD JAMES E. BURKE, ESQ. AND KMK IN CONTEMPT FOR VIOLATING THIS COURT'S MAY 10, 2004 ORDER REGARDING IMPROPER OBJECTIONS DURING DEPOSITIONS AND REQUEST FOR SANCTIONS.**

Plaintiffs hereby move this Court to hold James E. Burke, Esq. and Keating, Muething & Klekamp (hereinafter "KMK") in contempt, for deliberate non-compliance with this Court's instructions of May 20, 2004 given at the deposition of Joseph Pedoto to not have any more improper objections during the depositions. At the recent deposition of former PFGI Director Dr. Sidney Peerless, Mr. Burke repeatedly made speaking objections, instructed the witness not to answer, and ultimately terminated the deposition to seek a protective order. As of the date of this writing, KMK has not filed a motion for protective order. In addition, Plaintiffs respectfully request that KMK be sanctioned for this conduct and that this Court enter a written Order prohibiting Defendant KMK from engaging in such alleged conduct in future depositions in this action. A Memorandum in support of this Motion is attached hereto.

Dated: 10 September 2004                     **GENE MESH & ASSOCIATES**

Respectfully Submitted,


/s/Michael G. Brautigam
Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION……………………………………………………1-2

II.   SUMMARY OF ARGUMENTS RAISED AND PRIMARY
      AUTHORITIES RELIED UPON……………………………………….3-5

      A.    Improper Objections are Not Permitted During Depositions……….…….3

            1.    Mr. Burke and KMK Made Improper Speaking Objections……3-4

            2.    Mr. Burke and KMK Improperly Instructed Its Clients
                  Not to Answer Non-Privileged Questions………………………..4

            3.    Mr. Burke and KMK Seem to Believe that Questions are Proper
                  Only With Respect to Documents that the Former PFGI
                  Directors Have Seen Before…………………………………..4

            4.    Mr. Burke and KMK Made a Large Number of Strategic
                  Interruptions In Order to Defeat the Overriding Goals
                  Behind the Taking of Depositions………..……………………..4-5

            5.    The Questioning was Not Harassing or Repetitive………………..5

      B.    James E. Burke, Esq. and KMK Should be Held in Contempt
            and Sanctioned for Its Failure to Adhere to this Court's Order Not to
            Make Any More Improper Objections During Depositions in this Case….5

III.  LEGAL ARGUMENT……………………………………………..6-29

      A.    The Importance of Depositions………………………………………...6

      B.    Improper Objections are Not Permitted During Depositions………..…6-26

            1.    Mr. Burke and KMK Made Improper Speaking Objections…..6-15

            3.    Mr. Burke and KMK Improperly Instructed Its Clients Not to
                  Answer Non-Privileged Questions…………………………..15-17

            3.    Mr. Burke and KMK Seem to Believe that Questions are Proper
                  Only With Respect to Documents that the Former PFGI
                  Directors Have Seen Before………………………………..18-21

4.     Mr. Burke and KMK Made a Large Number of Strategic Interruptions In Order to Defeat the Overriding Goals Behind the Taking of Depositions………………………...21-24

     a.     There were an Inordinate Number of Objections during the Limited Amount of Time in Which the Deposition Took Place………………………………..21-22

     b.     Mr. Burke and KMK Made or Encouraged Other Improper Statements in an Effort to Interrupt the Deposition………………………………………...23-24

5.     The Questioning was Not Harassing or Repetitive…………..24-26

C.     James E. Burke, Esq. and KMK Should be Held in Contempt and Sanctioned for Its Failure to Adhere to this Court's Order Not to Make Any More Improper Objections During Depositions in this Case…...................................................................26-29

IV.     CONCLUSION………………………………………………………………29-30

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240,
   95 S.Ct. 1612 (1975)……………………………………………………………28

*Brignoli v. Bach, Hardy & Scheinman, Inc.,*  126 F.R.D. 462 (S.D.N.Y. 1989)………...27

*Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123 (1991)………………………...28

*Collins v. International Dairy Queen* (June 4, 1998), 1998 U.S. Dist. LEXIS 8254,
   Case No. 94-95-4-MAC  (M.D. GA 1998)…………………………..3, 6, 7, 16, 21

*Damaj v. Farmers Insurance Co., Inc.,* 164 F.R.D. 559 (N.D. Okl 1995)………………9

*Detoy v. City & County of San Francisco,* 196 F.R.D. 362 (N.D. Cal. 2000)………..15,18

*F.D. Rich Co. v. United States ex rel Lumber Co.,* 417 U..S. 116,
   94 S.Ct. 2157 (1974)…………………………………………………………..28

*Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D. Penn. 1993)…………………………6,21

*Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386 (1962)………………………………28

*Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.* (Feb. 10, 1997)*,* 1997 U.S. Dist.
   LEXIS 1272, No. 96 Civ. 2064, (S.D.N.Y. 1997)………………………………15

*National Microsales Corp. v. Chase Manhattan Bank*, 761 F. Supp. 304
   (S.D.N.Y. 1991)…………………………………………………………………16

*Odone v. Croda International PLC,* 170 F.R.D. 66 (D.D.C. 1997)………………………6

*Oliveri v. Thompson,*  803 F.2d 1265 (2d. Cir. 1986)………………………………..27, 28

*Pilates , Inc. v. Georgetown Bodyworks Deep Muscle Massage Ctrs.,* Inc., 201 F.R.D.
   216 (D.C. Col. 2000)………………………………………………………………7

*Quantachrome Corp. v. Micromeritics Instrument Copr.,* 189 F.R.D. 697
   (S.D. Fla 1999)…………………………………………………………………...17

*Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555 (S.D.N.Y. 1994)…………………………7

*Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716 (6th Cir. 1996)………………………27

*Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987)……….……………27

*United States v. Di Mauro*, 441 F.2d 428, 439 (8th Cir. 1971)………………………...5,26

*United States v. International Brotherhood of Teamsters,* 948 F.2d 1338
    (2d Cir. 1991)…………………………………………………………………28

*Wilson v. Sunstrand Corp.,*  2003 U.S. Dist. LEXIS 14922, Case Nos. 99 C 6944
    and 99 C6946  (N.D. IL 2003)……………………………………………………8

## FEDERAL STATUTES AND RULES

28 U.S.C. §1927……………………………………………………………...27-28
Federal Rule Civil Procedure 26……………………………………………………7
Federal Rule Civil Procedure 30(c)…………………………………………………3
Federal Rule Civil Procedure 30(d)(1)………………………………………….3,7,8
Federal Rule Civil Procedure 30(d)(2)……………………………………………28
Federal Rule Civil Procedure 30(d)(3)……………………………………………7
Federal Rule Civil Procedure 30(d)(4)…………………………………………3,8

<u>**MEMORANDUM**</u>

I.    <u>**INTRODUCTION**</u>

On 1 September 2004, Plaintiffs took the deposition of Provident Director Dr. Sidney Peerless. Dr. Peerless is not a defendant in this litigation.  During this deposition, Plaintiffs submit that Defendant Peerless's attorney, James E. Burke of Keating, Muething & Klekamp, LLP (hereinafter "KMK") interfered with Dr. Peerless's deposition by instructing his client not to answer non-privileged questions, and making speaking objections during the deposition[1].  Mr. Burke also insisted on speaking without objections, in an attempt to interrupt the proceedings.  In fact, Mr. Burke even admitted to this by stating at one point that he would continue to interrupt. (Peerless dep. p. 8). Incredibly, at one point, Mr. Burke even asked that Mr. Mesh conduct the deposition rather than Mr. Brautigam. (Peerless dep. p. 8). Once this interference reached the point that it was significantly impairing Plaintiffs' counsel's ability to proceed with the deposition, Plaintiffs' called Magistrate Judge Hogan's chambers, but the Magistrate was conducting a jury trial and thus unavailable for the day.  (Peerless dep. p. 88).  The deposition resumed, but was terminated by Mr. Burke shortly thereafter, who stated in substance that he was instructing the witness not to answer questions and he would seek a protective order.  (Peerless dep. p. 100).  Since it made no sense to continue the deposition given Mr. Burke's intention to instruct the witness not to answer questions, Plaintiffs adjourned the deposition. (Peerless dep. p. 100).

---

[1] A true and correct copy of the Peerless deposition is attached as Exhibit A.

Despite having been previously warned by this court not to interfere with the depositions by making speaking objections[2], this was not the first time that the KMK firm has ignored this Court's warnings and instructed the witness not to answer without an adequate evidentiary basis, and/or interrupted and generally disrupted depositions.  In fact, Plaintiffs have previously moved to hold KMK in contempt for their conduct at depositions (*See*, Doc. Nos. 344, 354, and 359). Regrettably, despite these filings, KMK's conduct has continued, and likely will continue, without forceful judicial intervention.

---

[2]  At the time, the particular KMK attorney representing Defendant Pedoto was Rachel Rowe, Esq. In particular, during Mr. Pedoto's deposition, Judge Beckwith stated as follows:

> "Well, if Ms. Rowe is correct and a single line of questioning has been asked and answered and asked and answered again and has eventually devolved into a - - harassing manner of taking the deposition, then that would be a proper objection under Rule 30(b)(4).

> On the other hand, if she is incorrect and she has improperly instructed the witness not to answer, then certainly that might be cause for sanctions.  By the same token, speaking objections, coaching the witness in the course of the deposition would be improper.  And I would caution Ms. Rowe not to do that.

> And if she does that and Mr. Brautigam submits the transcript of the deposition supporting a contention that, after being cautioned, Ms. Rowe continued to make speaking objections, then the Court would entertain a motion for sanctions, which could involve allowing the plaintiff to take another deposition at opposing counsel's cost."

(Pedoto dep. pp. 228-229).  As a result, the Court invited the Plaintiffs to file a motion for appropriate sanctions if the circumstances warranted it.  In particular, this Court stated that "if this court finds that the instruction not to answer was improvident, or there were speaking objections after 3:15 PM today, appropriate sanctions may be in order. **All counsel** are cautioned on that." (Pedoto dep. pp 229-230).

II.    **SUMMARY OF ARGUMENTS AND PRIMARY AUTHORITIES RELIED UPON**

A.    **Improper Objections are Not Permitted During Depositions**

Depositions are the factual background where the vast majority of litigation actually takes place.   Depositions should be limited to what they are intended to be under the Federal Rules of Civil Procedure: question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit. *Collins v. International Dairy Queen* (June 4, 1998), 1998 U.S. Dist. LEXIS 8254, Case No. 94-95-4-MAC  (M.D. GA 1998) at 4.  Therefore, it is incumbent upon counsel for both sides to "refrain from conduct which their lawyering skills tell them crosses over or may cross over the line between good lawyering and proper representation of their client's interests, and deliberate or merely overzealous interference in depositions which abuses the rules governing the deposition process and the goal of that process to allow opposing counsel in a reasonable manner to determine the facts of the case from the witnesses having knowledge of those facts." Id. at 5-6.  Mr. Burke did not refrain from such conduct and it was evident in five main ways.

1.    **Mr. Burke and KMK Made Improper Speaking Objections**

Mr. Burke frequently made speaking objections during Dr. Peerless' deposition. Fed.R.Civ.P. 30(d)(1) provides that any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner, and that a person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).  Id. Mr.

Burke made a speaking objection within the first five minutes of the deposition and then continued to do so throughout the remainder of the deposition.

   2.     **Mr. Burke  and KMK Improperly Instructed Its Clients Not to Answer Non-Privileged Questions.**

Mr. Burke instructed his client not to answer questions which were posed to him even though he raised no privilege in relation to these instructions. These instructions resulted in the premature termination of the deposition since Mr. Burke indicated that he was going to continue to instruct his client not to answer as long as Plaintiffs' counsel continued to use <u>topics</u> in an expert report as the basis for the questions that he asked the deponent.

   3.     **Mr. Burke and KMK Seem to Believe that Questions are Proper Only With Respect to Documents that the Former PFGI Directors Have Seen Before.**

Mr. Burke created a new rule for depositions when he announced during Dr. Peerlesss' deposition that a deponent cannot be questioned based upon a document which the deponent has not previously seen.  This was particularly interesting since this had not been an issue during previous depositions of PFGI Directors.  Although KMK had previously made objections on this basis, KMK never instructed a deponent not to answer on that basis.  However, despite the bloviating of Mr. Burke, the true problem was not Plaintiffs' counsel's use of the expert report to question Dr. Peerless, but rather Dr. Peerless' near complete lack of knowledge of accounting principles and other subjects necessary for him to serve on the PFGI Board of Directors.

   4.     **Mr. Burke, Esq. and KMK Made a Large Number of Strategic Interruptions In Order to Defeat the Overriding Goals Behind the Taking of Depositions.**

Mr. Burke made an inordinate number of general objections during Dr. Peerless' deposition. Although these objections may not have been improper per se, the fact that there were approximately 150 of these objections during an approximate eighty minute time span confirms that these objections were largely made for the ulterior purpose of disrupting Dr. Peerless' deposition. In addition to objections which were proper on their face, but improper in their repeated and unnecessary use, there were also blatant attempts to disrupt the deposition through means other than objections. For example, after a break requested by Mr. Burke, Dr. Peerless began to make unsolicited statements regarding how he felt personally injured by the Plaintiffs' allegations that the PFGI Defendants had committed "fraud."

     **5.**       **The Questioning was Not Harassing or Repetitive**

Plaintiffs' counsel's questioning was neither harassing nor repetitive. Plaintiffs' counsel cites to examples where such allegations were made and completely refutes these allegations. The record shows that if anyone's behavior at Dr. Peerless' deposition was harassing during Dr. Peerless' deposition, it was Mr. Burke's conduct and not that of Plaintiffs' counsel's.

     **B.**       **James E. Burke, Esq. and KMK Should be Held in Contempt and Sanctioned for Its Failure to Adhere to this Court's Order Not to Make Any More Improper Objections During Depositions in this Case.**

A court cannot issue a contempt order unless a party has violated a specific order of which he or she is aware. *See, United States v. Di Mauro*, 441 F.2d 428, 439 (8th Cir. 1971). Such an order was put into place during Mr. Pedoto's deposition when this Court clearly instructed KMK and Plaintiffs' counsel what conduct would be considered worthy of sanction by this Court. Mr. Burke acknowledged this Order during the deposition, but

then failed to adhere to it. Based upon the foregoing examples of misconduct during Dr. Peerless' deposition set forth above, and in more detail below, Mr. Burke and KMK should be sanctioned for their conduct during Dr. Peerless' deposition.

## III.    LEGAL ARGUMENT

### A.    The Importance of Depositions

Depositions are the factual background where the vast majority of litigation actually takes place. As a result, depositions should be limited to what they are intended to be under the Federal Rules of Civil Procedure: question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit. *Collins v. International Dairy Queen* (June 4, 1998), 1998 U.S. Dist. LEXIS 8254, Case No. 94-95-4-MAC (M.D. GA 1998) at 4. When a deposition becomes something other than that, due to strategic interruptions, suggestions or cautions to the witness through speaking objections, arguments of counsel, instructions to a witness not to answer a question when there is no valid basis for a refusal to answer, and the like, the deposition ceases to seek the truth or serve the overriding goals of the Federal Rules of Civil Procedure. Id. See, *Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D. Penn. 1993); *Odone v. Croda International PLC,* 170 F.R.D. 66 (D.D.C. 1997); *Damaj v. Farmers Insurance Co., Inc.,* 164 F.R.D. 559 (N.D. Okl. 1995). The rules are designed to insure that the testimony taken during the deposition is completely that of the deponent, rather than a version of the testimony that has been edited or glossed by the deponent's lawyer. Id. at 4-5; *Hall, supra.*

**B.    Improper Objections are Not Permitted During Depositions**

Rule 30(c) of the Federal Rules of Civil Procedure provides that all objections made at the time of deposition shall be noted, but "the examination shall proceed, with the testimony being taken subject to the objections." Id.  Consequently, Rule 30(c) of the Federal Rules of Civil Procedure cautions that the examination and cross-examination of witnesses during depositions should generally proceed as it does at trial. *Collins, supra*  at 5.  It is incumbent upon counsel for both sides to "refrain from conduct which their lawyering skills tell them crosses over or may cross over the line between good lawyering and proper representation of their client's interests, and deliberate or merely overzealous interference in depositions which abuses the rules governing the deposition process and the goal of that process to allow opposing counsel in a reasonable manner to determine the facts of the case from the witnesses having knowledge of those facts." Id. at 5-6.

Where there is no claim of privilege in relation to questions asked on deposition, Federal Rules of Civil Procedure 26 and 30(d)(1) should be strictly applied.  *Pilates , Inc. v. Georgetown Bodyworks Deep Muscle Massage Ctrs.,* Inc., 201 F.R.D. 216 (D.C. Col. 2000).  Pursuant to Federal Rule Civil Procedure 30(d)(1), a deponent may be instructed not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to protect a witness from an examination "being conducted in bad faith or in such a manner as to annoy, embarrass, or oppress the deponent or party."  Fed.R.Civ.P. 30(d)(1) & (3); *See also, Riddell Sports Inc. v. Brooks*, 158 F.R.D. 555, 557 (S.D.N.Y. 1994).

During Dr. Peerless' deposition, KMK and Mr. Burke not only improperly instructed their client not to answer questions, but their conduct crossed over the line

between good lawyering and overzealous interference with the deposition. This was not by accident, but a deliberate strategy. Mr. Burke knew that he had to end the deposition as quickly as possible to avoid further embarrassment to the witness and the PFGI Board, which was obviously asleep at the switch. By any reasonable standard, Dr. Peerless is completely incapable of fulfilling his fiduciary duties to the shareholders. This is perhaps best illustrated by the fact that despite 27 years of experience on the PFGI Board, Dr. Peerless still thinks that GAAP is a clothing store, rather than an accounting term. (Peerless dep. p. 35).

However, although Mr. Burke knew that the dramatic step of terminating the deposition had to be taken in order to avoid further embarrassment to Dr. Peerless and the PFGI Board, Mr. Burke has yet to seek the protective order that could potentially justify this earlier termination of the deposition. This is likely because it was not the conduct of Plaintiffs' counsel that necessitated the end of the Dr. Peerless' deposition, but rather that of Mr. Burke and KMK. This is illustrated in the following four ways:

1. **Mr. Burke and KMK Made Improper "Speaking Objections"**

In particular, the Federal Rules of Civil Procedure plainly prohibits "speaking objections." *Wilson v. Sunstrand Corp.,* 2003 U.S. Dist. LEXIS 14922, Case Nos. 99 C 6944 and 99 C 6946 (N.D. IL 2003) at 12. Fed.R.Civ.P. 30(d)(1) provides as follows:

> "Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).

*Id.*

In *Wilson,* the district court found that the following exchange contained an improper "speaking objection:"

> Dfdt. Atty.: Now, let me ask you, in the few minutes we have remaining before we break for this part one of your deposition, the reason the GPWS system didn't give an alert at any of the places that you said it should have, is there any part in your report where it says that the reason is?
>
> Haskins: Yes.
>
> Dfdt. Atty.: Where?
>
> Haskins: I think that is the second item in there. The second item discusses that.
>
> Dfdt. Atty.: Any other places besides item 2, or is that it?
>
> Haskins: Item 2.
>
> Dfdt. Atty.: I am not trying to encourage you to have more, I certainly don't want you to. I just want to be certain I extract it.
>
> Pltf. Atty. 1: I want to make sure, too. I mean, Glenn, if your whole report goes to that.
>
> Dfdt. Atty.: Objection. I think this is improper coaching of the witness.
>
> Pltf. Atty. 1: I'm sorry. I don't want to coach him either.
>
> Dfdt. Atty.: Let's just not even do this.
>
> Pltf. Atty. 1: I want to make sure the witness understands the question.
>
> Dfdt. Atty.: I don't want you to make sure anything about the witness. He can answer this question that is pending.
>
> Pltf. Atty. 1: Let me note an objection, and I will let it go. Object to the form of the question.
>
> Haskins: Item 2, item 3, item 4, I think discuss that, and, in general, you know, item 5 goes toward the systematic disregard of standard practices.

Id. at 15017.  The court found that plaintiff's attorney acted improperly because the plaintiff had identified one, and only one aspect of his report as explaining the reason

why he believes the GPWS system did not give an alert. Id. at 17. At that point, plaintiffs' attorney prompted his client to consider other aspects of his report. Id. The plaintiff got the message and expanded on his answer. Id. Consequently, the court found that the action of plaintiffs' counsel was improper, and exactly what Rule 30(d)(1) was designed to prevent. Id.

This same type of conduct occurred in the Provident Director Peerless's deposition. The first speaking objection came within the first five minutes of the deposition. Plaintiffs' counsel asked Dr. Peerless about what skills he brought to the PFGI Board, and he responded that it was his veracity and medical background. (Peerless dep. p. 7). The exchange continued as follows:

Q.     Okay. In what circumstances is your medical background relevant?

A.     Sometimes medical problems would have arisen that involved the knowledge of medicine.

Q.     Give me an example, please.

A..     The -- I'm trying to think. People or employees being injured and they wanted an opinion on the medical situation.

Q.     So you would have access to an employee's confidential medical records in that circumstance?

MR. BURKE: Objection.

A.     No.

MR. BURKE: That's an improper question. He didn't say that. This is --
Michael, if you're going to start this attack, I'm going to call Gene because I'd like
Gene to take this deposition. This is disrespectful and I think it's unnecessary.

MR. BRAUTIGAM:  Jim, we don't need speaking objections.

(Peerless dep. pp 7-9).

Another speaking objection occurred when Plaintiffs' counsel was seeking an opinion from Dr. Peerless about Defendant Hanauer's decision to vote in favor of the OHSL-Provident merger, while at the same time voting his personal shares against the merger.  This exchange went as follows:

Q.      Do you believe that what Mr. Hanauer did, voting in favor of the merger as a director but voting his personal shares against the merger without telling anyone, was fair to the OHSL shareholders?

        MR. BURKE:  Objection.  Calls for speculation.  No foundation.  He's already testified about this.

A.      I, I really don't know.  I can't pass on what he did or why he did it.

Q.      Dr. Peerless, you understand that in some circumstances if I ask for an opinion, I'm entitled to your opinion, correct?

        MR. BURKE:  No, you're not.  Michael, you're not.  And stop making that representation.  You're allowed to ask if he has an opinion and if he has one, he can give it to you.  And if he doesn't, he doesn't have to.  You're not entitled to an opinion, so please stop making that representation to the witness.

        MR. BRAUTIGAM:  Jim, we don't need speaking objections.

(Peerless dep. pp. 68-69).[3]

_____

[3]   As has been amply demonstrated before, Mr. Burke has a singular view of what is and is not an appropriate question at a deposition.  Similarly, Mr. Burke's interruption and bizarre comments do not accurately state the law.  Plaintiffs are entitled to an opinion from these witnesses.  Since these witnesses are shockingly unfamiliar with the transaction, with the documents that effected the transaction, and with the conduct of other players in the transaction, it is entirely appropriate for counsel to present the facts to the witness and ask him to form an opinion at the deposition.  This is especially true in circumstances such as this where most of the PFGI Directors simply refused to look at

The next speaking object came shortly thereafter and was the result of questions regarding the role of McDonald Investments in the OHSL-PFGI merger. This exchange went as follows:

Q.    Does it appear to you that McDonald did rely on estimates of the future performance of Provident?

      MR. BURKE: Objection. Calls for speculation. No foundation.
A.    I don't -- I don't know.

Q.    Well, isn't there a reference to future performance of OHSL-PFGI and the combined companies?

      MR. BURKE: Objection. The document speaks for itself. He's already told you he doesn't know anything about this.

A.    I don't know.

Q.    You don't know if that reference appears there?

A.    No. I don't know whether that McDonald assumed this or whether the bank did. I really have no idea.

Q.    When you say "assumed this," what exactly are you referring to?

A.    Assumed the future -- the future status of each stock.

Q.    Doesn't it say that right there in that paragraph?

      MR. BURKE: Objection. You're arguing with the witness.

A.    No, I --

      MR. BURKE: He's told you he can't answer that.

      MR. BRAUTIGAM: Jim, we don't need speaking objections.

---

relevant documents as they prepared for the depositions, or even as they considered the OHSL-PFGI merger.

(Peerless dep. pp. 73-75).

Later in the deposition, when Plaintiffs' counsel was still trying to obtain an opinion from Dr. Peerless regarding his Defendant Hanauer's behavior, and how it impacted upon the OHSL shareholders, Mr. Burke again improperly interrupted the questioning as is illustrated in this exchange:

Q.      And if he were against it, the shareholders should have been informed that he was against it, correct?

        MR. BURKE:  Objection, Instruct the witness not to answer.

A.      I really don't know.

        MR. BURKE:  You're beating a dead horse.

        MR. BRAUTIGAM:  What is the basis for that instruction?

        MR. BURKE: Because you've asked it fifteen times Mr. Brautigam.  And if you recall, Judge Beckwith instructed you in your phone call with Ms. Rowe, if Mr. Brautigam is in fact asking the same question over and over again, that is improper.  And it is improper, because that's what you are doing.

        MR. BRAUTIGAM:  Jim, I am not doing that.

        MR. BURKE:  Yes, you are.

        MR. BRAUTIGAM:  I didn't ask the question 15 times.  We don't need speaking objections and we don't need you to raise your voice with me.

        MR. BURKE:  I am not raising my voice with you, you'll know when I do.

        MR. BRAUTIGAM:  Are you threatening me, Mr. Burke?

        MR. BURKE:  Grow up Mr. Brautigam, for once.

(Peerless dep. pp. 95-97).   From this point forward, the deposition even further deteriorated.

By the end of the deposition, Mr. Burke would not even permit Dr. Peerless to answer any question asked of him.  Although Plaintiffs' counsel was using an expert report as an outline of topics on which he wanted to question Dr. Peerless, Mr. Burke improperly attempted to use Plaintiffs' counsel's use of the expert report as a reason to end the deposition. This is illustrated by the following exchange:

> MR. BURKE: Because for you to take, as I told you before, just so we're clear, an expert report that this witness has never seen before and for you to try and ask him if he agrees or disagrees with every line of this, particularly regarding subjects dealing with Oak Hills for which he has repeatedly told you that he has no knowledge on several occasions, I will seek a protective order from the Court and instruct you not to answer.
>
> MR. BRAUTIGAM:  Dr.  Peerless, it is not necessary for you to look at the exhibit any more.
>
> MR. BURKE:  Are you reading from it, Mr. Brautigam?
>
> MR. BRAUTIGAM:  No, I am not.
>
> MR. BURKE:  Why is it in front of you?
>
> MR. BRAUTIGAM:  I'm being inspired from it, I'm not reading it.
>
> MR. BURKE:  If you're asking questions from this report, the simple game of taking it away from the witness not only is improper, but that's misleading and doesn't change the nature of the interrogation.
>
> MR. BRAUTIGAM: Jim, we don't need speaking objections.

(Peerless dep. pp. 97-98).    Finally, the deposition was terminated when Mr. Burke repeatedly instructed Dr. Peerless not to answer Plaintiffs' counsel's questions and there was no reason to continue the deposition.

As can be seen from the following exchanges during Dr. Peerless' deposition, the objections by Mr. Burke were improper speaking objections.  Even though Plaintiffs have not even included all of them in the interest of brevity, it is still clear that these speaking

objections were attempts to direct the responses of Dr. Peerless and to disrupt the flow of the deposition. Further, Mr. Burke's arguments are particularly disingenuous since these same questions were not a surprise since these same types of questions were asked and answered with a minimum of fuss with other PFGI witnesses. However, since Mr. Burke likely knew from his limited meeting with Dr. Peerless that he had a particularly low level of understanding of not only his case, but the actions and inner workings of the PFGI Board in general, he knew that he had no choice but to try and interrupt, and ideally prematurely terminate this deposition.

This is best illustrated by two incidents. First, within the first five minutes of this deposition, and on the first objection, Mr. Burke stated that Mr. Brautigam was harassing the witness and suggested that Mr. Mesh take the deposition rather than Mr. Brautigam. (Peerless dep. pp. 8-9). Second, the complete overreaction to the questions related to the expert report. Although Mr. Burke ranted about the fact that Dr. Peerless had not previously seen the expert report, this was not Plaintiffs' counsel's fault. The report was provided to KMK two days before the deposition, so Mr. Burke easily could have had Dr. Peerless review the report if he had so chosen[4]. However, in reality, it was not the expert report per se that was the problem, but rather that Dr. Peerless was completely unfamiliar with the accounting principles and actions of the PFGI that made up its content. Despite 27 years of experience on the PFGI Board, he repeatedly stated that he could not answer any questions about issues raised in the report.

---

[4] The expert report per se is a red herring. It is the nature and quality of the questions, not the outline, that matters. Here, the questions are entirely appropriate and entirely unobjectionable. That Dr. Peerless affirmatively chose not to review the expert report or indeed any documents related to the OHSL-PFGI merger is not only entirely out of the control of Plaintiffs, but it is entirely irrelevant.

Thus, based upon the foregoing it is clear that Mr. Burke knew that if he was going to prevent further embarrassment to Dr. Peerless and the PFGI, he would have to take matters into his own hands. The best way to do this was through speaking objections that escalated to an early termination of the deposition itself.

### 2. Mr. Burke and KMK Improperly Instructed Its Clients Not to Answer Non-Privileged Questions.

Burke of KMK also improperly instructed the Provident Director Peerless not to answer questions that were not based upon privilege or some other acceptable basis for objection. Generally, instructions not to answer questions at deposition are improper. *Detoy v. City & County of San Francisco,* 196 F.R.D. 362 (N.D. Cal. 2000); *Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.* (Feb. 10, 1997)*,* 1997 U.S. Dist. LEXIS 1272, No. 96 Civ. 2064, (S.D.N.Y. 1997) (citing *National Microsales Corp. v. Chase Manhattan Bank*, 761 F. Supp. 304, 307 (S.D.N.Y. 1991). The exception to this is where serious harm would be caused by the answer. *Detoy supra.*

In *Collins,* the court stated that counsel should not direct or request that a witness not answer a question by the examining attorney, unless counsel has a reasonable, good faith objection to the question, on grounds that the answer is protected by some privilege, or if counsel has a reasonable basis for seeking a protective order or for enforcing a limitation imposed by the Court with respect to the subject matter of the question. Id. at 6.

As discussed above, Mr. Burke made numerous unwarranted objections.[5] In particular, after he had decided that it was improper for Plaintiffs' counsel to ask Dr.

---

[5]  It should first be noted that, by Mr. Burke's own admissions, some of his objections were not even objections, but merely statements intended to serve as interruptions.

Peerless any question that related to a subject contained within the expert report, Mr.

Burke repeatedly instructed Dr. Peerless not to answer Plaintiffs' counsel's questions.

This is illustrated in the following series of questions:

> Q.    Do you believe that with respect to the OHSL-Provident merger, the role of the CEO as a source of information was extremely important?
>
> MR. BURKE:  Instruct the witness not to answer on the ground previously stated.
>
> A.    I don't know.
>
> MR. BURKE:  If I instruct you not to answer. . .
>
> A.    Okay.
>
> MR. BURKE:  You don't have to answer anymore.
>
> Q.    Do you agree with what I'll represent to you is Mr. Herron's testimony: Mr. Herron was the resigning director at OHSL, that Mr. Herron believed that Mr. Hanauer's opposition to the transaction would have, quote, significantly altered the total mix, unquote, of information available to shareholders.
>
> MR. BURKE:  Instruct the witness not to answer.  We're going to seek a protective order on this line of questioning.
>
> MR. BRAUTIGAM:  Okay. Well, then we're done.

(Peerless dep. pp. 99-100).  At this point, it was clear that no matter what question

Plaintiffs' counsel asked Dr. Peerless, Mr. Burke was going to instruct the witness not to

answer.

However, if Mr. Burke and KMK truly felt that the Provident Director

Defendants' depositions were being conducted in bad faith or in such manner as to

---

(Peerless dep. p. 7).  This is entirely improper.  Mr. Burke has the erroneous view that he can interrupt at will, as well as offer a running commentary on Mr. Burke's view of the nature and quality of the questions.

unreasonably annoy, embarrass or oppress deponent, KMK and Mr. Burke would have not only instructed Dr. Peerless not to answer and/or halt the deposition, but also moved for protective order. *Quantachrome Corp. v. Micromeritics Instrument Corp.,* 189 F.R.D. 697 (S.D. Fla 1999). However, as of the date of this filing, Mr. Burke and KMK have yet to do so.

Thus, it is clear from all of the above, that Mr. Burke's objections were not made in good faith, but solely in an attempt to disrupt the flow of the questions and exchange of information in the depositions. There is absolutely no justification for his repeated instructions not to answer relevant non-privileged questions, and his prematurely terminating the deposition.

### 3. **Mr. Burke and KMK Seem to Believe that Questions are Proper Only With Respect to Documents that the Former PFGI Directors Have Seen Before.**

The Court is well aware that Mr. Burke has a unique approach to making objections at depositions.[6] During Dr. Peerless' deposition, Mr. Burke's objections and

---

[6]  At the deposition of former OHSL Chairman Norbert Brinker, Mr. Burke made the following objection, the grounds apparently being that the question was improper because the witness did not know the answer to the question. The question and subsequent object went as follows:

Q.  Okay.  So at the present time, you believe that the Keating firm will represent you at trial; is that correct?

MR. PINNEY:  I'm going to object to that as well.

MR. BRAUTIGAM:  Your Honor—

A    I would have—

MR. BURKE:  Your Honor, the—Mr. Brautigam is knowingly misstating the record and **asking the witness questions that he obviously is, is unsure of**, just in an effort

instructions not to answer were at least in part premised on the clearly erroneous and bizarre belief that a witness should not be questioned on documents that they had not seen before.[7] The issue that caused the termination of the Peerless Deposition related to the use of an expert report.  Plaintiffs' counsel marked as Plaintiffs Deposition Exhibit 114 the Expert Report of Candace Preston (See, Expert Report of Candace Preston, attached as Exhibit "B") and proceeded to question Dr. Peerless on it.  At that point, Mr. Burke loudly complained that the Preliminary Expert Report was only turned over to defense counsel two days earlier (entirely consistent with the Scheduling Order), that Dr. Peerless had not seen the Report and for these reason alone it was improper to question Dr. Peerless on the report.  (Peerless dep. p. 88-90).

It is not proper to instruct a deponent not to answer a question solely on the basis that he is being questioned about a document that he had not previously seen.  Whatever documents are reviewed by the PFGI directors prior to their depositions is a choice that has been made by the PFGI directors and KMK, and not the Plaintiffs. Thus, Plaintiffs should not be restricted in their questioning just because the Provident Directors had

---

to inject confusion and further the confusion of these proceedings.  And I do have a continuing objection to this.

(Brinker dep. p. 40).

[7]  This was an issue which was completely within the control of KMK and Dr. Peerless. If Dr. Peerless had wanted to review the expert report that he knew, or should have known, he would be questioned on the next day, he could have done so.  Plaintiffs cannot force the witness to review relevant documents in preparation for their deposition.  In fact, Dr. Peerless offered the amazing testimony that he had never seen the Proxy Materials/Registration Statement used to effect the OHSL-PFGI merger before his deposition.  (Peerless dep. p. 27).  Plaintiffs' counsel was certainly entitled to ask Dr. Peerless questions about this document, as well as to have assumed that he would have previously reviewed this document.

chosen not to review any documents.  If this were the case, no one would ever review any documents in order to avoid questioning altogether, a variation on the PFGI strategy.

Further, although Mr. Burke repeatedly made objections in relation to the use of the expert report, this was really a red herring.  The questions that Plaintiffs' counsel asked were not objectionable in any way.  The Expert Report, attached as Exhibit "B," provided only a model for a deposition outline.  As a result, as long as the questions did not seek privileged information, and were proper in form, it should not make any difference what document Plaintiffs' counsel was using to ask the questions. As stated above, in this case these same questions were previously asked and answered by other PFGI Directors.  Although this line of questioning was met with a hail of improper objections, these prior objections did not go to the report itself as Mr. Burke did in relation to Dr. Peerless' deposition. This confirms that the problems was not with the questions themselves, or even the expert report, but rather than Dr. Peerless had little to no familiarity with the subjects upon which he was questioned.

Dr. Peerless had little knowledge of most of the documents at issue in this case, and very little understanding of the accounting and financial subjects that are at issue in this case.  Dr. Peerless did not know what a registration statement was (even though he had signed one), a fairness or opinion, artificial inflation, or takeover premium. (Peerless dep. pp. 37-38, 42).  Dr. Peerless did not know what GAAP or GAAS was, and also was not familiar with "off-the-books transactions" or off the balance sheet transactions. (Peerless dep. pp. 35, 39).  He did not even know if it is necessary that the party providing a fairness opinion be impartial. (Peerless dep. p. 44).  In particular, Dr. Peerless had a lack of understanding about the Proxy Materials/Registration Statement,

20

materiality, and how materiality related to restatements. He did not know that Provident had incorporated materially false information in the Proxy Materials/Registration Statements, he did not know that all restatements are by definition material, and he did not know why Provident issued the restatements. (Peerless dep. pp. 48-50). He also had no idea what information Provident was attempting to communicate in its restatements. (Peerless dep. p. 53). Finally, Dr. Peerless did not know if Ernst & Young was involved in the model for the auto leases, or whether or not this would compromise their independence. (Peerless dep. p. 52). Although Plaintiffs could continue with this list, they believe that this sampling is sufficient for this Court to understand Dr. Peerless' knowledge of accounting and financial matters.

Dr. Peerless' knowledge was not any greater in relation to the facts of this particular case. He had absolutely no idea about this action which is before this Court, did not know who the plaintiffs or defendants were, but only assumed that Provident had to be a defendant or he would not be forced to be a deponent. (Peerless dep. p. 21). He also has neither read the Complaint or any legal documents which have been filed. (Peerless dep. p. 24). Dr. Peerless has never seen the Proxy Materials/Registration Statement before, and he did not think that it had been presented in draft form to the Provident Board of Directors. (Peerless dep. p. 27).

Thus, given the foregoing, if Mr. Burke's bizarre objection were taken to its logical conclusion, Plaintiffs' counsel would not be able to ask Dr. Peerless about nearly all the documents at issue in this case since Dr. Peerless does not appear to have seen or reviewed anything related to this case. Although this was obviously Mr. Burke's intent

when he raised this objection, such a standard is not the law and should not be tolerated by this Court.

      4.      **Mr. Burke and KMK Made a Large Number of Strategic Interruptions In Order to Defeat the Overriding Goals Behind the Taking of Depositions.**

          a.      **There were an Inordinate Number of Objections During the Limited Amount of Time in Which the Deposition Took Place**

Depositions were intended to be question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit. *Collins supra* at 4. As a result, when a deposition becomes something other than that, due to strategic interruptions, or other improper objections, the deposition ceases to seek the truth or serve the overriding goals of the Federal Rules of Civil Procedure. Id. See, *Hall v. Clifton Precision,* 150 F.R.D. 525 (E.D. Penn. 1993).

In less than 80 minutes, Burke and KMK made an unusually large number of objections during the Provident Director Defendants' depositions. Upon review of the transcript, Mr. Burke made at least 150 objections during less than eighty minutes of testimony.[8] This is a staggeringly high number. By far the most frequently made objection was that the question asked for speculation. Given that Dr. Peerless was a director for PFGI, and Plaintiffs' counsel was asking Dr. Peerless either general questions about accounting and banking principles or questions about the facts of this case, such an objection should not have been necessary the vast majority of the time. At any rate, this is an exceptionally large number of objections, and it illustrates that Mr. Burke was doing

---

[8] This also included the time which it took to telephone Magistrate Judge Hogan's chambers and to take a brief break.

more than just attempting to protect his client and the record, but rather than he was making a systematic effort to disrupt the deposition process.

Given the foregoing, it is not much of an overstatement to state that nearly every page of this deposition contained multiple objections. With these frequent objections chopping up Plaintiffs' counsel's questions and record, the flow of the deposition and information between Plaintiffs' counsel and the deponent was definitely interrupted. Similarly, these numerous baseless objections also unfairly cut into the minimum seven hours which Plaintiff's counsel is automatically granted under the Federal Rules of Civil Procedure to depose each of the Provident Director Defendants. Therefore, even though many of KMK's objections may have been valid under the Federal Rules of Civil Procedure, KMK should still be sanctioned for these legitimate objections based upon the strategic and obstructive way that KMK utilized these objections to defeat the inherent objectives behind the taking of a deposition.

      **b.**    <u>**Mr. Burke and KMK Made or Encouraged Other Improper Statements in an Effort to Interrupt the Deposition.**</u>

Direct objections were not the only way that KMK attempted to disrupt Dr. Peerless' deposition. As discussed above, within the first few minutes of the deposition, Mr. Burke objects to a question, then quickly states that Plaintiffs' counsel is harassing the witness, and finally requests that Mr. Mesh take this deposition rather than Mr. Brautigam[9]. (Peerless dep. p. 8). These are clearly the statements of an individual who had come to the deposition with a predetermined agenda for disrupting the deposition.

---

[9] Plaintiffs rejected the novel and bizarre request that defense counsel be able to unilaterally select which attorney representing the Plaintiffs conduct the deposition. This request is so ridiculous that it is indicative of bad faith on the part of Burke and KMK.

No one conducting a deposition in good faith would have made so many objections and criticisms on the first objection of the deposition.

Similarly, although it was equally brazen of Mr. Burke to argue that Dr. Peerless should not be questioned about a document because he had not previously reviewed it, there is perhaps one more incident that completely reveals KMK's plan to disrupt this deposition. Right after a break had been taken at Mr. Burke's request, the deposition resumes with Dr. Peerless giving an unsolicited speech which was not in response to any question asked of him. He voluntarily stated that he felt "personally insulted" that Plaintiffs' counsel had used the word fraud in relation to the Proxy Materials/Registration Statement. (Peerless dep. pp. 79). In fact, he stated that "It is disgusting to me that anyone would even think that." (Peerless dep. p. 79). However, when Plaintiffs' counsel questioned Dr. Peerless about how he could be sure that the Proxy Materials/Registration Statement did not contain fraudulent statements when he had never read it, he had no real answer. (Peerless dep. p. 80). Similarly, when Plaintiffs' counsel asked if it was possible that there had been some unintentional misrepresentations included in the Proxy Materials/Registration Statement, Dr. Peerless responded that it was not because he knows the people that they were discussing, and that they "were not fraudulent people." (Peerless dep. p. 81). However, shortly thereafter he admitted that he did not know any of the OHSL directors. (Peerless dep. p. 82). Consequently, since Dr. Peerless' statements were obviously not spontaneous and came suspiciously after a break that had been requested by Mr. Burke, but rather another attempt to interrupt the course of the deposition, and take up part of Plaintiffs' allotted seven hours for this deposition, these

statements must stand as further confirmation of KMK's attempt to disrupt the deposition.

### 5. <u>The Questioning Was Not Harassing or Repetitive.</u>

It is important to keep in mind that the deposition of Dr. Peerless was neither harassing or repetitive.[10]  The entire deposition lasted less than ninety minutes. Such a short deposition hardly provides enough time to be harassing or repetitive.  It is true that Plaintiffs' counsel had to change his game plan early on in the deposition because it readily became apparent that Dr. Peerless lacked knowledge or an awareness of some of the most basic accounting issues in this case.  As discussed above, despite 27 years on the PFGI Board, he was not familiar with such basic accounting terms as GAAP and GAAS. (Peerless dep. p. 35).  Believing the former to be a clothing store, these responses obviously came as a shock to Plaintiffs' counsel.  As a result, he therefore had to adjust his questioning accordingly.  However, despite this fact, Plaintiffs' counsel's questioning never deteriorated to the point that it was harassing or repetitive, and such allegations are easily refuted as false.

For instance, at one point Mr. Burke states that he is objecting to a question on the basis that Plaintiff's counsel had asked the same question fifteen times.  (Peerless dep. p.

---

[10]   The Court should be well aware by now that just because Mr. Burke says something does not make it true.  Although Mr. Burke neither feels limited to the truth when making statements, nor feels compelled to provide any support for these statements, the Plaintiffs have repeatedly provided examples to support their own arguments and to counter those of KMK.

96).  A review of the transcript confirms that this is not even close to being the case.  In fact, Plaintiffs defy KMK to find even one such example of repetition of this question.

The charge of harassing the witness is equally without merit.  Within the first five minutes of the deposition Mr. Burke states that Plaintiffs' counsel is harassing Dr. Peerless because he asked him a few questions about how his medical background was relevant to service on the board of directors of a bank.  When Dr. Peerless stated that sometimes employees became injured and wanted an opinion of their medical condition. (Peerless dep. p. 7).  Plaintiffs' counsel then asked if he would have access to the employees' confidential medical records and Mr. Burke stated that such a question was harassing to Dr. Peerless. (Peerless dep. p. 8).  In particular, Mr. Burke stated as follows:

> MR. BURKE:  I am going to interrupt it if you're going to harass this witness, I think it's improper.  It wasn't an objection at all.  It was a statement.  That's an improper question.

(Peerless dep. p. 8).  Such a question is hardly considered harassment, and neither are any of the other examples in which Mr. Burke stated that Plaintiffs' counsel was harassing Dr. Peerless. The financial sophistication of the PFGI Board is a valid issue in this case. A fair reading of the Dr. Peerless' complete deposition is that, despite 27 years of service to the PFGI shareholders, Dr. Peerless could not have possibly fulfilled his fiduciary duties to the PFGI shareholders at any time given his woefully inadequate understanding of all matters relating to business.

Similarly, Mr. Burke makes the argument that Plaintiffs' counsel is arguing with Dr. Peerless.  (Peerless dep. p. 74).  When discussing the fairness opinion, Plaintiffs' counsel asked Dr. Peerless whether or not McDonald relied on the future performance of Defendant Provident in making its report. (Peerless dep. p. 73).  When Dr. Peerless stated

that he did not know if McDonald "assumed this or whether the bank did," Plaintiffs' counsel asked him to what he was referring when he said "assumed this." (Peerless dep. p. 74). Dr. Peerless stated that he meant "assumed the future status of the stock." (Peerless dep. p. 74). At that point, when Plaintiffs' counsel asked him "Doesn't it say that right there in that paragraph," Mr. Burke declared that Plaintiffs' counsel was being argumentative with the witness. (Peerless dep. p. 74). This exchange illustrates that there is once again there is no merit to Mr. Burke's claims.

As a result, it is clear that Plaintiffs' counsel was not asking repetitive questions, and was neither harassing Dr. Peerless nor being argumentative with him. Rather, what is clear is that Mr. Burke had no intention of acting in good faith during this deposition. From the first five minutes of this deposition where Mr. Burke suggested that Plaintiffs' counsel was being harassing and requested that another attorney take the deposition, through all of the needless and improper objections, to the unnecessary request to telephone Magistrate Hogan, to the final act of stopping the deposition in order to pursue a protective order, it is obvious that Mr. Burke was doing everything in his power to disrupt and/or prematurely terminate this deposition.

**C.**    **James E. Burke, Esq. and KMK Should be Held in Contempt and Sanctioned for Its Failure to Adhere to this Court's Order Not to Make Any More Improper Objections During Depositions in this Case.**

A court cannot issue a contempt order unless a party has violated a specific order of which he or she is aware. *See, United States v. Di Mauro*, 441 F.2d 428, 439 (8th Cir. 1971) ("In order to cite a person for contempt, it must be shown that the alleged contemnor had knowledge of the order which he is said to have violated and that order must be specific and definite."). However, although a specific order must be violated,

there is no requirement that the alleged contemnor do so willfully. *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996). Therefore, a party's intent in violating a disqualification order is irrelevant.[11]

28 U.S.C. §1927 states that sanctions may be imposed against any attorney "who so multiplies the proceedings in any case to increase costs unreasonably and vexatiously . . . ." Id.  An attorney who engages in such conduct may be personally liable for excess costs, expenses, and attorneys' fees. Id. Imposition of sanctions under § 1927 requires a clear showing of bad faith: "an award . . . is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay." *Oliveri v. Thompson,*  803 F.2d 1265, 1273 (2d. Cir. 1986). An attorney conducts discovery in bad faith for purposes of § 1927 where he or she essentially destroys a deposition through excessive groundless objections or lengthy personal attacks on his or her adversary. In *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987).  In *Unique Concepts, Inc.,* the court awarded sanctions where plaintiff's counsel interposed statements other than objections as to form on 91 percent of the pages of a deposition. Id. at 293-294.  (pursuant to both § 1927 and the court's inherent power); *See Also, Brignoli v. Bach, Hardy & Scheinman, Inc.,*  126 F.R.D. 462, 466 (S.D.N.Y. 1989) (imposing sanctions under § 1927 where plaintiff's counsel protracted depositions with improper objections**,** directions to client not to answer proper questions, substantive testimony in client's stead, and speaking objections

---

[11] Plaintiffs have previously set forth the burdens of proof in a proceeding for civil contempt in Plaintiff's Motion to Completely Disqualify KMK or, in the Alternative, Hold KMK in Contempt for Violation of this Court's October 20, 2003 Order (Doc. No. 215), and hereby incorporates said section by reference.

even after court had prohibited them), modified, No. 86 Civ. 4103, 1989 WL 146767 (S.D.N.Y. Dec. 1, 1989).

Similarly, sanctions, including costs and attorneys' fees, may be awarded under Rule 30 for conduct that a court finds has "frustrated the fair examination of the deponent." Fed.R. Civ. P. 30(d)(2). Courts have the inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123 (1991) (quoting *Link v. Wabash R.R.,* 370 U.S. 626, 630-631, 82 S.Ct. 1386 (1962). This power embraces the authority to impose costs and attorneys' fees against a party or his or her attorney where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258-259, 95 S.Ct. 1612 (1975) (quoting *F.D. Rich Co. v. United States ex rel Lumber Co.,* 417 U..S. 116, 129, 94 S.Ct. 2157 (1974). As with sanctions under §1927, the court's inherent power must be wielded with restraint, and thus the party seeking sanctions must make a particularized showing of bad faith. *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991). See also *Olivieri,* 8903 F.2d at 1273 (only meaningful difference between § 1927 and inherent power is that awards under § 1927 may be imposed only against attorneys, while awards pursuant to inherent power may be made against a party, its attorney, or both).

In the present case, Mr. Burke of KMK had actual notice of the Order given by this Court during the May 10, 2004 deposition of Joseph Pedoto. In fact, Mr. Burke even referenced this instruction during Dr. Peerless' deposition. (Peerless dep. p. 96). Mr. Burke knew that Plaintiffs' counsel was not to take part in unnecessarily repetitive

questioning, and that KMK was not to make any speaking objections or improperly instruct its clients not to answer questions. The Court implied that these words applied to all counsel in this case, and not just to the counsel present at Defendant Pedoto's deposition. Thus, all counsel at KMK representing the Provident Director Defendants were on notice after May 10, 2004 at 3:15 PM that they would be subject to sanctions if they made any speaking objections or other improper instructions for their clients not to answer questions posed to them. The only problem in this case is that Mr. Burke seemed to only focus on the first part of this instruction, and not the latter part.

Therefore, since KMK was on notice of this Court's specific order, and did not heed this Court's instructions as set forth above, Plaintiffs respectfully submit that KMK should be sanctioned. This is especially the case since KMK additionally used legitimate objections in a way that was contrary to the deposition's goal of obtaining evidence and truth. The aggregate conduct of Burke and KMK definitely shows a pattern of bad faith and an intent to interfere with the Plaintiff's right to obtain information from the deponents.

## IV.    <u>CONCLUSION</u>

Mr. Burke and KMK have deliberately set out to obstruct the deposition process in any way possible and, in the process of doing so, have largely made it a farce. Although the Court has signaled that it wishes to see an end to such non-sense, the reality is that Mr. Burke and KMK will not stop unless and until the Court severely sanctions them for this improper, unethical, and unconscionable behavior.

Thus, for the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Hold James E. Burke, Esq. and KMK in Contempt for

Violating this Court May 10, 2004 Order Regarding Improper Objections and Instructions Not to Answer Questions During the Deposition of Dr. Peerless and for Sanctions. Plaintiffs further request from this Court a written order prohibiting KMK from engaging in such alleged conduct in future depositions in this action.

Dated: 10 September 2004                    Respectfully Submitted,


                                           /s/ Michael G. Brautigam
                                           Gene Mesh (OH Bar # 0002076)
                                           Michael G. Brautigam
                                           GENE MESH & ASSOCIATES
                                           2605 Burnet Avenue
                                           Cincinnati, Ohio 45219-2502
                                           (513) 221-8800
                                           (513) 221-1097  (fax)

                                           *Attorneys for Plaintiffs and the*
                                           *Putative Class*

## CERTIFICATE OF SERVICE

This is to certify that a true and accurate copy of the foregoing Plaintiffs' Motion to Hold James E. Burke, Esq. and KMK in Contempt for Violating this Court's May 10, 2004 Order Regarding Improper Objections During Depositions and for Sanctions was served this 10th day of September, 2004 on the following, pursuant to the ECF:


James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752


Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249

James H. Greer, Esq.
BIESER, GREER AND LANDIS, LLP
400 National City Center, 6 North Main Street
Dayton, OH 45402-1908


                              /s/ Stephanie A.  Hite
                              Stephanie A. Hite