**1**

```
 1        UNITED STATES DISTRICT COURT
 2         SOUTHERN DISTRICT OF OHIO
 3        WESTERN DIVISION AT CINCINNATI
 4                   - - -
 5
 6   WALTER W. THIEMANN, on  :
     behalf of himself and   :
 7   of all others similarly :
     situated,               :
 8                           :
         Plaintiff,          :
 8                           :
     vs.                     : CASE NO. C-1-00793
10                           :
     OHSL FINANCIAL CORP.,   :
11   OAK HILLS SAVINGS AND   :
     LOAN COMPANY, F.A.,     :
12   NORBERT G. BRINKER,     :
     KENNETH L. HANAUER,     :
13   ALVIN E. HUCKE, THOMAS  :
     E. MCKIERNAN, JOSEPH J. :
14   TENOEVER, HOWARD N.     :
     ZOELLNER, PROVIDENT     :
15   FINANCIAL GROUP, INC.,  :
     ROBERT L. HOVERSON,     :
16   JACK M. COOK, THOMAS D. :
     GROTE, JR., PHILIP R.   :
17   MYERS, JOSEPH A. PEDOTO,:
     JOSEPH A. STEGER,       :
18   CHRISTOPHER J. CAREY,   :
     CLIFFORD ROE, and       :
19   DINSMORE & SHOHL, LLP,  :
                             :
20       Defendants.         :
21                   - - -
22     Deposition of SIDNEY PEERLESS, M.D., a
23   witness herein, called by the plaintiff for
24   cross-examination, pursuant to the Federal
```

**2**

```
 1   Rules of Civil Procedure, taken before me, Lee
 2   Ann Williams, a Registered Professional
 3   Reporter and Notary Public in and for the State
 4   of Ohio, at the offices of Gene Mesh &
 5   Associates, 2605 Burnet Avenue, Cincinnati,
 6   Ohio 45219, on Wednesday, September 1, 2004, at
 7   9:07 a.m.
 8
 9   APPEARANCES:
10     On behalf of the Plaintiff:
11        Michael G. Brautigam, Esq.
          Gene Mesh & Associates
12        2605 Burnet Avenue
          Cincinnati, Ohio 45219
13     On behalf of the Defendants:
14        James E. Burke, Esq.
15        Keating, Muething & Klekamp
          1400 Provident Tower
16        One East Fourth Street
          Cincinnati, Ohio 45202
17
18     On behalf of the Defendants:
19        James P. Fleisher, Esq.
          Bieser, Greer, Landis
20        400 National City Center
          Six North Main Street
21        Dayton, Ohio 45402
22
23               - - -
24
```

**3**

```
 1        S T I P U L A T I O N S
 2     It is stipulated by and among counsel for
 3   the respective parties that the deposition of
 4   SIDNEY PEERLESS, M.D., a witness herein, called
 5   by the plaintiff for cross-examination pursuant
 6   to the Federal Rules of Civil Procedure, may be
 7   taken at this time by the notary; that said
 8   deposition may be reduced to writing in
 9   stenotypy by the notary, whose notes may then
10   be transcribed out of the presence of the
11   witness; and that proof of the official
12   character and qualifications of the notary are
13   expressly waived.
14                   - - -
```

**4**

```
 1          I N D E X
 2   Examination of SIDNEY PEERLESS, M.D.   Page
 3   By Mr. Brautigam:              5
 4                   - - -
 5   Plaintiff's Exhibit          Page Identified
 6    No. 114                        80
 7
 8
 9                   - - -
```

5

```
 1              SIDNEY PEERLESS, M.D.
 2    having been first duly sworn, testified as
 3    follows:
 4              CROSS-EXAMINATION
 5    BY MR. BRAUTIGAM:
 6         Q.  Good morning, Dr. Peerless.  My
 7    name is Michael G. Brautigam and I represent
 8    Walter Thiemann, Gary and Lisa Meyer and a
 9    putative class of OHSL shareholders.
10         Dr. Peerless, you've been a
11    director of Provident for how many years?
12         A.  Twenty-seven.
13         Q.  And you're a friend of Carl
14    Lindner; is that right?
15         A.  Right.
16         Q.  And how long have you been a
17    friend of Carl Lindner?
18         A.  Same length of time.
19         Q.  And how did you come to know Mr.
20    Lindner?
21         A.  I was put on the Board by Joe
22    Rippe when he became president.  And I was
23    interviewed by Mr. Lindner at that time, before
24    I was accepted, by he and Sandy Heiman and
```

6

```
 1    members of the Board.  And that was the first
 2    time I met him.
 3         Q.  And what skills did you bring to
 4    the Provident Board 27 years ago?
 5         A.  Supposedly veracity.
 6         Q.  What else?
 7         A.  And matters that pertain to
 8    medical things.
 9         Q.  Is that of relevance to a public
10    company that does banking?
11              MR. BURKE:  Objection.  Calls for
12    speculation.
13         A.  Sometimes.
14         Q.  Okay.  In what circumstance is
15    your medical background relevant?
16         A.  Sometimes medical problems would
17    have arisen that involved the knowledge of
18    medicine.
19         Q.  Give me an example, please.
20         A.  The -- I'm trying to think.
21    People or employees being injured and they
22    wanted an opinion on the medical situation.
23         Q.  So you would have access to an
24    employee's confidential medical records in that
```

7

```
 1    circumstance?
 2              MR. BURKE:  Objection.
 3         A.  No.
 4              MR. BURKE:  That's an improper
 5    question.  He didn't say that.  This is --
 6    Michael, if you're going to start this tact,
 7    I'm going to call Gene because I'd like Gene to
 8    take this deposition.  This is disrespectful
 9    and I think it's unnecessary.
10              MR. BRAUTIGAM:  Jim, we don't need
11    speaking objections.
12              MR. BURKE:  That's not even an
13    objection.
14              MR. BRAUTIGAM:  You can express
15    your preferences for whomever you'd like to
16    take this, but it's not going to change
17    anything.  Now, I'm going back to my
18    examination and you're not going to interrupt
19    it anymore.
20              MR. BURKE:  I am going to
21    interrupt it if you're going to harass this
22    witness.  I think it's improper.  It wasn't an
23    objection at all.  It was a statement.  That's
24    an improper question.
```

8

```
 1    BY MR. BRAUTIGAM:
 2         Q.  Dr. Peerless, how old are you?
 3         A.  Eighty-two.
 4         Q.  Does Provident or did Provident
 5    have a mandatory retirement age for Board
 6    members?
 7         A.  No.
 8         Q.  Why not?
 9              MR. BURKE:  Objection.  Calls for
10    speculation.
11         A.  I don't know.
12         Q.  Let's talk a little bit about your
13    educational background.  I understand that
14    you're a retired physician and surgeon; is that
15    right?
16         A.  Right.
17         Q.  How long have you been retired?
18         A.  Six years.
19         Q.  And your specialty was
20    otolaryngology?
21         A.  Right.
22         Q.  And what is that?
23         A.  That's head and neck surgery.
24         Q.  And when did you give up actively
```

9

09:08:06 1     performing surgery?
09:08:08 2       A.  Around six years ago.
09:08:12 3       Q.  And where did you go to college,
09:08:12 4     Dr. Peerless.
09:08:14 5       A.  University of Cincinnati.
09:08:16 6       Q.  And when did you graduate?
09:08:18 7       A.  1945.
09:08:18 8       Q.  And what was your degree in?
09:08:22 9       A.  A medical degree.  Bachelor of
09:08:24 10 Medicine.
09:08:24 11       Q.  Oh, Bachelor of Medicine?
09:08:26 12       A.  Yeah.  And then I went to Harvard
09:08:30 13 to do postgraduate work.
09:08:30 14       Q.  Did you say Harvard?
09:08:32 15       A.  Harvard.
09:08:32 16       Q.  When you say postgraduate work,
09:08:34 17 was that medical school?
09:08:36 18       A.  No.  That was after medical
09:08:38 19 school.
09:08:40 20       Q.  Okay.  You got a medical degree?
09:08:42 21       A.  From the University of Cincinnati.
09:08:42 22       Q.  From the University of Cincinnati
09:08:44 23 in 1945; is that right?
09:08:46 24       A.  Then I went into the service for

10

09:08:46 1 two years.  And then I went to Harvard for
09:08:50 2 specialty work.
09:08:56 3       Q.  Because of the war, did you become
09:08:58 4 a doctor in some kind of an accelerated manner?
09:09:02 5       A.  Yes.  They had a three year
09:09:04 6 acceleration.
09:09:06 7       Q.  So your Bachelor of Medicine is
09:09:10 8 the degree that conferred a medical doctor on
09:09:12 9 you; is that right?
09:09:12 10       A.  Right.
09:09:14 11       Q.  Okay.  Got it.  Let's talk about
09:09:18 12 your career since you've returned from Harvard.
09:09:22 13 What was your first professional position?
09:09:24 14       A.  First -- I was associated with a
09:09:26 15 doctor by the name of Dr. Gerson Loewenthal for
09:09:30 16 two years.  And then I went into practice for
09:09:32 17 my -- on my own.
09:09:36 18       Q.  And were you performing surgery
09:09:36 19 the whole time?
09:09:38 20       A.  Yes, the whole time.
09:09:40 21       Q.  So you've seen many medical
09:09:42 22 advances in terms of imaging and things like
09:09:44 23 that?
09:09:44 24       A.  Oh, yes.  Yes, yes.

11

09:09:46 1       Q.  Have you served on the Board of
09:09:46 2 any other public companies?
09:09:50 3       A.  Well, I'm on the Board of
09:09:52 4 Cincinnati Jewish Foundation.
09:09:56 5       Q.  That's a nonprofit, right?
09:09:56 6       A.  Nonprofit.  And also the
09:10:00 7 Cincinnati Foundation, I was on the Board there
09:10:02 8 for four years.
09:10:04 9       Q.  Is that also a nonprofit?
09:10:06 10       A.  Nonprofit.  I'm on the board of
09:10:08 11 Children's Hospital right now, and also I've
09:10:12 12 been on the board of Jewish Hospital, and
09:10:16 13 that's about it.
09:10:20 14       Q.  Are Children's and Jewish Hospital
09:10:22 15 nonprofit entities?
09:10:24 16       A.  Yes.
09:10:26 17       Q.  Were you a Provident shareholder
09:10:28 18 for many years?
09:10:30 19       A.  Only after I was appointed to the
09:10:32 20 Board.
09:10:32 21       Q.  So for 27 years you've been a
09:10:34 22 Provident shareholder?
09:10:34 23       A.  Yeah, right.
09:10:36 24       Q.  And are you a National City

12

09:10:38 1 shareholder today?
09:10:40 2       A.  Yes.
09:10:42 3       Q.  As a Provident shareholder, you
09:10:44 4 received all of the public documents from
09:10:48 5 Provident in due course, such as annual and
09:10:50 6 quarterly reports, correct?
09:10:54 7       MR. BURKE:  Objection to form.
09:10:56 8       A.  Yes.
09:10:56 9       Q.  And you're able to read and
09:10:58 10 interpret Provident's public documents,
09:11:00 11 correct?
09:11:00 12       MR. BURKE:  Objection.
09:11:00 13       A.  I think I am.
09:11:02 14       Q.  Are you familiar with the term
09:11:06 15 material?
09:11:06 16       MR. BURKE:  Objection.  Calls for
09:11:06 17 speculation.
09:11:08 18       A.  It's a very loose term.
09:11:12 19       Q.  Do you have a working definition
09:11:12 20 of the term material?
09:11:14 21       A.  No.
09:11:14 22       MR. BURKE:  Objection.  No
09:11:16 23 context.
09:11:18 24       Q.  Would you pick up what has

### 13

09:11:18 1   previously been marked Plaintiff's Exhibit 90?
09:11:18 2      A. (Witness complied.)
09:11:38 3      Q. Dr. Peerless, you've seen
09:11:40 4 Plaintiff's Exhibit 90 before, correct?
09:11:42 5      A. Yes.
09:11:42 6      Q. That's the 2002 PFGI annual
09:11:44 7 report, correct?
09:11:44 8      A. Right.
09:11:46 9      Q. And you received that as a
09:11:48 10 shareholder in due course, correct?
09:11:48 11      A. Right.
09:11:50 12      Q. Would you turn to the first page
09:11:52 13 of the document? It has page one on it. It
09:11:56 14 says financial highlights.
09:11:56 15      A. Yes, uh-huh.
09:12:00 16      Q. Would you -- can I direct your
09:12:02 17 attention to the small print at the bottom, and
09:12:04 18 in the second line it says, actual results
09:12:06 19 could differ materially. Do you see that?
09:12:14 20      A. Yes.
09:12:16 21      Q. And Dr. Peerless, with this
09:12:16 22 document or any other, please take as much time
09:12:20 23 as you need to review parts of it, all of it,
09:12:22 24 whatever you need to get the appropriate

### 14

09:12:24 1 context. That's a standing instruction.
09:12:26 2      MR. BURKE: You might want to read
09:12:28 3 that paragraph then just to make sure -- see if
09:12:30 4 you understand it.
09:13:38 5      A. Yes.
09:13:38 6      Q. What does the phrase differ
09:13:38 7 materially mean as it's used in the second line
09:13:42 8 of Plaintiff's Exhibit 90 on page one?
09:13:44 9      MR. BURKE: Objection. No
09:13:46 10 foundation for this witness. Calls for
09:13:48 11 speculation. Do you know where he's --
09:13:52 12      A. Yeah. I can't answer that.
09:13:54 13      Q. Okay. Dr. Peerless, would you
09:13:56 14 turn to page 46 of this document? Dr.
09:14:18 15 Peerless, what do we find on page 46 of
09:14:20 16 Plaintiff's Exhibit 90?
09:14:22 17      A. It's an independent auditor's
09:14:24 18 report by Ernst & Young.
09:14:26 19      Q. And you're familiar with these
09:14:28 20 independent auditor reports, correct?
09:14:28 21      A. Yes.
09:14:30 22      Q. And you've seen reports like this
09:14:32 23 for 27 years, correct?
09:14:34 24      A. Right.

### 15

09:14:34 1      Q. Okay. In the second paragraph in
09:14:36 2 the second line, the phrase free of material
09:14:40 3 misstatement appears. Do you see that?
09:14:42 4      MR. BURKE: Second paragraph,
09:14:42 5 second line. You might want to read that
09:14:48 6 second paragraph just to put it in perspective.
09:15:08 7      A. Yes.
09:15:08 8      Q. What does the phrase free of
09:15:10 9 material misstatement mean in that document?
09:15:12 10      MR. BURKE: Objection. No
09:15:14 11 foundation for this witness. Calls for
09:15:14 12 speculation.
09:15:16 13      A. I really don't know.
09:15:20 14      Q. Can I direct your attention to the
09:15:22 15 first line of the third paragraph and the
09:15:24 16 phrase in all material respects appears. Do
09:15:26 17 you see that?
09:15:28 18      A. Um-hmm.
09:15:28 19      Q. What does the phrase in all
09:15:30 20 material respects mean?
09:15:30 21      MR. BURKE: Objection. No
09:15:32 22 foundation. Calls for speculation.
09:15:38 23      A. I, I really don't know. I imagine
09:15:38 24 it means the -- the examination of the bank.

### 16

09:15:46 1      Q. And specifically what with respect
09:15:48 2 to their examination of the bank?
09:15:52 3      MR. BURKE: Objection.
09:15:54 4      A. It would include everything.
09:16:00 5      Q. Dr. Peerless, are you familiar
09:16:00 6 with the concept of financial literacy?
09:16:04 7      MR. BURKE: Objection. No
09:16:04 8 foundation. Calls for speculation.
09:16:08 9      A. I don't know.
09:16:10 10      Q. Are you financially literate?
09:16:12 11      A. I think I am.
09:16:14 12      Q. And what does it mean to you to be
09:16:16 13 financially literate?
09:16:18 14      A. To understand finances.
09:16:20 15      Q. When you say "to understand
09:16:22 16 finances," are you talking about personal
09:16:24 17 finances, the finances of a small business, or
09:16:28 18 the finances of a public company, or something
09:16:30 19 else?
09:16:30 20      A. Personal.
09:16:30 21      MR. BURKE: Objection to form.
09:16:32 22      Q. Are you financially literate as
09:16:32 23 applied to the financial statements of a public
09:16:38 24 company?

**17**

| | |
|---|---|
| 09:16:38 1 | MR. BURKE: Objection to form. No |
| 09:16:38 2 | foundation. |
| 09:16:40 3 | A. I don't know. |
| 09:16:42 4 | Q. Would you be able to read and |
| 09:16:44 5 | interpret with me Provident's financial |
| 09:16:46 6 | statements as included in this document? |
| 09:16:48 7 | MR. BURKE: Objection. No |
| 09:16:48 8 | foundation. Calls for speculation. |
| 09:16:50 9 | A. I think so. |
| 09:16:54 10 | Q. Dr. Peerless, what if any input |
| 09:16:56 11 | did you and the Board have with respect to |
| 09:16:58 12 | Plaintiff's Exhibit 90, the 2002 PFGI annual |
| 09:17:02 13 | report? |
| 09:17:04 14 | MR. BURKE: Objection. Overbroad. |
| 09:17:04 15 | A. None. |
| 09:17:06 16 | Q. None? |
| 09:17:08 17 | A. (Witness shook head.) |
| 09:17:08 18 | Q. Did you personally review this |
| 09:17:10 19 | document in draft form before it was finalized |
| 09:17:12 20 | and sent to the shareholders? |
| 09:17:14 21 | A. I -- we, we recevied this document |
| 09:17:18 22 | from Ernst & Young. |
| 09:17:18 23 | Q. What document specifically are you |
| 09:17:20 24 | referring to? |

**18**

| | |
|---|---|
| 09:17:22 1 | A. Their -- pardon me, their audit. |
| 09:17:26 2 | Q. Okay. I'm talking about the |
| 09:17:28 3 | entire document, Plaintiff's Exhibit 90, the |
| 09:17:30 4 | document you have in your hand. |
| 09:17:32 5 | MR. BURKE: Is that a question? |
| 09:17:34 6 | Q. Yes. Did you review the document |
| 09:17:36 7 | in draft form before it was finalized -- |
| 09:17:38 8 | A. No. |
| 09:17:38 9 | Q. -- and sent to the Provident |
| 09:17:40 10 | shareholders? |
| 09:17:40 11 | A. No. |
| 09:17:40 12 | Q. Why not? |
| 09:17:42 13 | A. Because Ernst & Young are well |
| 09:17:44 14 | recognized financial experts, and I think |
| 09:17:52 15 | there's very little that I could add to their |
| 09:17:54 16 | knowledge. |
| 09:17:54 17 | Q. What knowledge did Ernst & Young |
| 09:17:56 18 | bring to Plaintiff's Exhibit 90? |
| 09:17:58 19 | MR. BURKE: Objection. Calls for |
| 09:18:00 20 | speculation as to what they did. |
| 09:18:00 21 | A. They are a well-known financial |
| 09:18:04 22 | company that does auditing, and they're well |
| 09:18:10 23 | recognized and that's their job. |
| 09:18:14 24 | Q. And were Ernst & Young Provident's |

**19**

| | |
|---|---|
| 09:18:20 1 | independent auditors for 27 years, during the |
| 09:18:24 2 | time you were a director? |
| 09:18:26 3 | A. I'm not sure. |
| 09:18:28 4 | Q. Do you remember any other auditors |
| 09:18:30 5 | other than Ernst & Young? |
| 09:18:34 6 | A. Right now, no. |
| 09:18:34 7 | Q. What does it mean to be an |
| 09:18:36 8 | independent auditor? |
| 09:18:38 9 | MR. BURKE: Objection. Calls for |
| 09:18:38 10 | speculation. No foundation as to this witness. |
| 09:18:42 11 | A. I think it means people that do |
| 09:18:46 12 | auditing that comes independently of the bank's |
| 09:18:50 13 | Board of Trustees. |
| 09:18:52 14 | Q. What bank Board of Trustees? |
| 09:18:56 15 | A. Provident Bank. |
| 09:18:56 16 | Q. Did you mean to say Board of |
| 09:18:58 17 | Directors? |
| 09:18:58 18 | A. Board of Directors. |
| 09:18:58 19 | Q. I think you were confusing |
| 09:19:00 20 | Provident with a non-public company. |
| 09:19:02 21 | MR. BURKE: Objection. |
| 00:19:02 22 | A. Yeah. |
| 09:19:04 23 | Q. Would you turn to page 82 of |
| 09:19:06 24 | Plaintiff's Exhibit 90, please, Dr. Peerless? |

**20**

| | |
|---|---|
| 09:19:24 1 | In the left hand column, do you see note 26, |
| 09:19:28 2 | additional information, and beneath that, legal |
| 09:19:30 3 | matters? |
| 09:19:30 4 | A. Um-hmm. |
| 09:19:32 5 | Q. Dr. Peerless, what is -- what are |
| 09:19:34 6 | legal proceedings other than routine litigation |
| 09:19:38 7 | incidental to their business? |
| 09:19:40 8 | MR. BURKE: Objection. Calls for |
| 09:19:44 9 | speculation. |
| 09:19:44 10 | A. I don't know. |
| 09:19:46 11 | Q. Do you have an understanding as to |
| 09:19:48 12 | the litigation that brings us here today? |
| 09:19:48 13 | A. No. |
| 09:19:50 14 | Q. None at all? |
| 09:19:50 15 | A. None at all. |
| 09:19:52 16 | Q. Do you know who the plaintiffs |
| 09:19:52 17 | are? |
| 09:19:52 18 | A. No. |
| 09:19:54 19 | Q. Do you know who the defendants |
| 09:19:54 20 | are? |
| 09:19:58 21 | A. I'd imagine Provident Bank is. |
| 09:20:00 22 | Q. Why do you imagine that? |
| 09:20:00 23 | A. Because that's the reason I'm |
| 09:20:02 24 | here, I'm on the Board of Provident Bank and, |

21

| | |
|---|---|
| 09:20:10 1 | and I imagine that's why I'm here. |
| 09:20:12 2 | Q.  Are you a defendant, Dr. Peerless? |
| 09:20:14 3 | A.  No. |
| 09:20:14 4 | Q.  How do you know that? |
| 09:20:16 5 | A.  I wasn't -- I didn't get any |
| 09:20:18 6 | reports or any notifications from the courts or |
| 09:20:24 7 | from your office or -- |
| 09:20:26 8 | Q.  Are you represented by counsel |
| 09:20:28 9 | today, Dr. Peerless? |
| 09:20:30 10 | A.  Yes. |
| 09:20:30 11 | Q.  By whom are you represented? |
| 09:20:32 12 | A.  Mr. Burke. |
| 09:20:34 13 | MR. BURKE:  Yes. |
| 09:20:34 14 | Q.  And who is the gentleman on Mr. |
| 09:20:36 15 | Burke's left? |
| 09:20:36 16 | MR. BURKE:  Objection.  How should |
| 09:20:38 17 | he know?  He's not a defendant.  That's a |
| 09:20:42 18 | ridiculous question. |
| 09:20:42 19 | A.  I don't know. |
| 09:20:44 20 | Q.  Have you ever met this gentleman |
| 09:20:44 21 | before? |
| 09:20:46 22 | A.  No, I don't think so. |
| 09:20:46 23 | Q.  Does he represent you? |
| 09:20:48 24 | MR. BURKE:  Of course he doesn't. |

22

| | |
|---|---|
| 09:20:48 1 | A.  No.  I don't know him. |
| 09:20:54 2 | Q.  Do you know who the judge is in |
| 09:20:54 3 | this litigation? |
| 09:20:56 4 | MR. BURKE:  Objection.  He's not a |
| 09:20:56 5 | defendant. |
| 09:20:56 6 | A.  No. |
| 09:20:58 7 | MR. BURKE:  He's told you that and |
| 09:21:00 8 | you know that. |
| 09:21:00 9 | A.  No. |
| 09:21:00 10 | Q.  Do you know who the magistrate is? |
| 09:21:02 11 | A.  No. |
| 09:21:05 12 | Q.  Do you believe that your |
| 09:21:06 13 | interests, if any, in the litigation are the |
| 09:21:10 14 | same as those of the Provident defendants? |
| 09:21:12 15 | MR. BURKE:  Objection.  He's not |
| 09:21:12 16 | been named as a defendant and you know that. |
| 09:21:14 17 | A.  I don't know. |
| 09:21:18 18 | Q.  Do you believe that your |
| 09:21:18 19 | interests, if any, in the litigation are the |
| 09:21:20 20 | same as the OHSL directors? |
| 09:21:22 21 | MR. BURKE:  Are you representing |
| 09:21:24 22 | to this witness he has an interest in this |
| 09:21:26 23 | litigation, Mr. Brautigam? |
| 09:21:28 24 | MR. BRAUTIGAM:  I said "if any," |

23

| | |
|---|---|
| 09:21:28 1 | Jim. |
| 09:21:28 2 | MR. BURKE:  You know he's not a |
| 09:21:30 3 | defendant.  I don't understand the logic of |
| 09:21:32 4 | this question. |
| 09:21:32 5 | MR. BRAUTIGAM:  I agree.  Well, |
| 09:21:34 6 | that's not important. |
| 09:21:36 7 | A.  I don't know. |
| 09:21:38 8 | BY MR. BRAUTIGAM: |
| 09:21:36 9 | Q.  Have you ever read the complaint? |
| 09:21:38 10 | MR. BURKE:  Objection. |
| 09:21:38 11 | A.  No. |
| 09:21:38 12 | Q.  Have you ever read any of the |
| 09:21:40 13 | legal documents that have been filed? |
| 09:21:42 14 | A.  No. |
| 09:21:42 15 | MR. BURKE:  Objection.  Asked and |
| 09:21:42 16 | answered. |
| 09:21:42 17 | Q.  How did Mr. Burke come to |
| 09:21:44 18 | represent you today? |
| 09:21:46 19 | A.  Because I think his law firm |
| 09:21:48 20 | represents the bank in this litigation. |
| 09:21:54 21 | Q.  Do you believe that Mr. Burke's |
| 09:21:56 22 | representation is independent? |
| 09:21:58 23 | MR. BURKE:  Objection.  Calls for |
| 09:22:00 24 | speculation. |

24

| | |
|---|---|
| 09:22:02 1 | A.  I don't know what you're talking |
| 09:22:02 2 | about. |
| 09:22:02 3 | Q.  Well, we talked about how the |
| 09:22:04 4 | auditors are expected to be independent.  Do |
| 09:22:06 5 | you remember that testimony? |
| 09:22:06 6 | MR. BURKE:  Objection.  Calls for |
| 09:22:08 7 | speculation. |
| 09:22:10 8 | A.  Yeah. |
| 09:22:10 9 | Q.  Do you believe that Mr. Burke and |
| 09:22:10 10 | his firm are providing independent |
| 09:22:12 11 | representation to you? |
| 09:22:14 12 | A.  I don't understand the question. |
| 09:22:18 13 | Q.  Okay.  Do you know if the law firm |
| 09:22:18 14 | of KMK and one of its partners have ever been |
| 09:22:22 15 | named as defendants in the litigation? |
| 09:22:24 16 | A.  I don't know. |
| 09:22:26 17 | Q.  Do you know if the law firm of KMK |
| 09:22:28 18 | will be providing witnesses in the case? |
| 09:22:32 19 | A.  I don't know. |
| 09:22:32 20 | Q.  Would these be important factors |
| 09:22:34 21 | to know in assessing whether or not KMK is able |
| 09:22:38 22 | to provide -- |
| 09:22:40 23 | MR. BURKE:  Objection. |
| 09:22:40 24 | Q.  -- you independent representation? |

25

| 09:22:42 | 1 | MR. BURKE: Calls for complete |
| 09:22:42 | 2 | speculation. |
| 09:22:44 | 3 | A.   I don't know. |
| 09:22:44 | 4 | Q.   Dr. Peerless, what if anything did |
| 09:22:46 | 5 | you do to prepare for this deposition? |
| 09:22:46 | 6 | A.   Nothing. |
| 09:22:48 | 7 | Q.   Do you consider this deposition to |
| 09:22:50 | 8 | be important? |
| 09:22:52 | 9 | A.   I don't know what it's all about. |
| 09:22:54 | 10 | Q.   Did you ever make any attempt to |
| 09:22:56 | 11 | find out? |
| 09:22:56 | 12 | A.   No. |
| 09:22:58 | 13 | Q.   Dr. Peerless, was this litigation |
| 09:23:00 | 14 | ever discussed at Provident Board meetings? |
| 09:23:04 | 15 | A.   Very superficially. |
| 09:23:06 | 16 | Q.   Can you tell me what was said? |
| 09:23:08 | 17 | A.   It was mentioned. |
| 09:23:14 | 18 | Q.   Did you meet with counsel in |
| 09:23:16 | 19 | preparation for today's deposition? |
| 09:23:16 | 20 | A.   Yes. |
| 09:23:20 | 21 | Q.   Approximately how long did that |
| 09:23:20 | 22 | meeting last? |
| 09:23:20 | 23 | A.   Half an hour or 45 minutes. |
| 09:23:22 | 24 | Q.   Was that earlier today or |

26

| 09:23:24 | 1 | yesterday? |
| 09:23:24 | 2 | A.   Yesterday. |
| 09:23:28 | 3 | Q.   And you looked at no documents in |
| 09:23:30 | 4 | that meeting, correct? |
| 09:23:30 | 5 | A.   Right. |
| 09:23:42 | 6 | Q.   Do you know if the law firm of KMK |
| 09:23:44 | 7 | has ever been disqualified in this litigation? |
| 09:23:48 | 8 | MR. BURKE: Objection. Calls for |
| 09:23:48 | 9 | speculation. |
| 09:23:50 | 10 | A.   I don't know. |
| 09:23:54 | 11 | Q.   Dr. Peerless, let me direct your |
| 09:23:56 | 12 | attention to Defendant's Exhibit 1. This is |
| 09:23:56 | 13 | the proxy material and the registration |
| 09:24:00 | 14 | statement. |
| 09:24:02 | 15 | A.   Here? |
| 09:24:02 | 16 | Q.   Yes. Dr. Peerless, have you seen |
| 09:24:26 | 17 | Defendant's Exhibit 1 before? |
| 09:24:26 | 18 | A.   No. |
| 09:24:28 | 19 | Q.   Was this document in draft form |
| 09:24:32 | 20 | ever presented to the OHSL -- excuse me, |
| 09:24:36 | 21 | Provident Board? |
| 09:24:36 | 22 | A.   No. Not that I know of. |
| 09:24:40 | 23 | Q.   Do you remember discussing merging |
| 09:24:42 | 24 | with OHSL in 1999? |

27

| 09:24:44 | 1 | A.   Yes. |
| 09:24:46 | 2 | Q.   Tell me about these discussions. |
| 09:24:48 | 3 | A.   The discussion was that they -- |
| 09:24:50 | 4 | Provident was interested in purchasing them and |
| 09:24:52 | 5 | they were interested in being purchased. And |
| 09:24:54 | 6 | that it was unanimous by their Board and our |
| 09:24:58 | 7 | Board that this purchase agreement go through. |
| 09:25:04 | 8 | And that was it. |
| 09:25:08 | 9 | Q.   Okay. You used the word |
| 09:25:08 | 10 | unanimous, and you referred to it as being |
| 09:25:12 | 11 | unanimous by their Board and our Board. Do you |
| 09:25:14 | 12 | remember that? |
| 09:25:14 | 13 | A.   Unanimous, I can only talk about |
| 09:25:16 | 14 | our Board. |
| 09:25:16 | 15 | Q.   Okay. Let's talk about what it |
| 09:25:18 | 16 | means when the Provident Board of Directors |
| 09:25:20 | 17 | votes on something unanimously. Did the |
| 09:25:24 | 18 | Provident Board of Directors vote unanimously |
| 09:25:26 | 19 | to acquire OHSL in 1999? |
| 09:25:28 | 20 | A.   Yes. |
| 09:25:28 | 21 | Q.   And did that mean that all of the |
| 09:25:32 | 22 | Provident directors, all seven of them, voted |
| 09:25:34 | 23 | affirmatively? |
| 09:25:36 | 24 | A.   I think so. |

28

| 09:25:36 | 1 | Q.   No one abstained, correct? |
| 09:25:38 | 2 | A.   Not that I can -- not that I can |
| 09:25:40 | 3 | think of. |
| 09:25:42 | 4 | Q.   All seven of the directors were in |
| 09:25:44 | 5 | the room at the time, correct? |
| 09:25:44 | 6 | A.   Right. |
| 09:25:44 | 7 | Q.   And that was recorded as a |
| 09:25:46 | 8 | unanimous vote on the books and records of |
| 09:25:50 | 9 | Provident, correct? |
| 09:25:50 | 10 | MR. BURKE: Objection. Calls for |
| 09:25:52 | 11 | speculation. You may answer. |
| 09:25:52 | 12 | A.   I think so. |
| 09:25:54 | 13 | Q.   And that's because that's what |
| 09:25:56 | 14 | your understanding of the word unanimous means, |
| 09:25:58 | 15 | correct? |
| 09:26:00 | 16 | MR. BURKE: Objection. Calls for |
| 09:26:00 | 17 | speculation. He's talking about Provident. |
| 09:26:02 | 18 | A.   Yes. I'm talking about Provident. |
| 09:26:04 | 19 | Q.   Right, exactly, we're talking |
| 09:26:06 | 20 | about Provident. |
| 09:26:06 | 21 | MR. BURKE: Right. |
| 09:26:08 | 22 | Q.   Okay. And that's the way things |
| 09:26:10 | 23 | have been done at Provident during the 27 years |
| 09:26:14 | 24 | that you were a director, correct? |

29

| | |
|---|---|
| 09:26:14 1 | MR. BURKE: Objection. You may |
| 09:26:16 2 | answer. |
| 09:26:18 3 | A.  I don't understand the question. |
| 09:26:18 4 | Q.  In other words, the interpretation |
| 09:26:20 5 | of the word unanimous did not change with |
| 09:26:24 6 | respect to Provident Board meetings during the |
| 09:26:26 7 | entire 27 years that you were a director, |
| 09:26:28 8 | correct? |
| 09:26:28 9 | MR. BURKE: Objection. Vague, |
| 09:26:30 10 | overbroad. |
| 09:26:30 11 | A.  I don't -- I don't understand the |
| 09:26:32 12 | question. |
| 09:26:34 13 | Q.  Okay. When you first went on the |
| 09:26:36 14 | Provident Board 27 years ago, unanimous meant |
| 09:26:38 15 | that all of the directors in the room voted the |
| 09:26:42 16 | same way, correct? |
| 09:26:44 17 | MR. BURKE: Objection. |
| 06:26:46 18 | A.  That was my interpretation of |
| 09:26:46 19 | unanimous. |
| 09:26:48 20 | Q.  And if a director wasn't there, |
| 09:26:50 21 | the vote would be recorded as director A was |
| 09:26:54 22 | just not present, correct? |
| 09:26:56 23 | MR. BURKE: Objection. Calls for |
| 09:26:56 24 | speculation, overbroad. |

30

| | |
|---|---|
| 09:27:02 1 | A.  I don't know. |
| 09:27:04 2 | Q.  Would Provident record a vote as |
| 09:27:06 3 | unanimous if one of the directors wasn't there? |
| 09:27:10 4 | MR. BURKE: Objection. Asked and |
| 09:27:12 5 | answered. |
| 09:27:12 6 | A.  It could be that they could. |
| 09:27:14 7 | Q.  Would they mention that one of the |
| 09:27:16 8 | directors wasn't there? |
| 09:27:16 9 | A.  That would be -- would have been |
| 09:27:18 10 | mentioned at the beginning of the meeting. |
| 09:27:20 11 | Q.  And it would also be reflected in |
| 09:27:24 12 | the minutes, correct? |
| 09:27:24 13 | A.  Yes. |
| 09:27:30 14 | Q.  You also testified, Dr. Peerless, |
| 09:27:32 15 | that you believed that the vote of the OHSL |
| 09:27:36 16 | Board to merge with Provident was unanimous. |
| 09:27:40 17 | Do you remember that testimony at all? |
| 09:27:42 18 | MR. BURKE: Objection. |
| 09:27:42 19 | Mischaracterizes the prior testimony. |
| 09:27:44 20 | A.  That's what I heard. |
| 09:27:46 21 | Q.  Where did you hear that? |
| 09:27:46 22 | A.  At the Board meeting. |
| 09:27:48 23 | Q.  Who said that? |
| 09:27:48 24 | A.  The president of the bank, CEO. |

31

| | |
|---|---|
| 09:27:54 1 | Q.  And that's Mr. Hoverson? |
| 09:27:54 2 | A.  Hoverson. |
| 09:27:56 3 | Q.  Mr. Hoverson was never formally |
| 09:27:58 4 | given the title of CEO; is that correct? |
| 09:28:00 5 | A.  I don't know. |
| 09:28:02 6 | Q.  And when Mr. Hoverson told the |
| 09:28:04 7 | Board, the Provident Board, that the OHSL Board |
| 09:28:08 8 | had voted unanimously to merge with Provident, |
| 09:28:12 9 | did you interpret that to mean that all of the |
| 09:28:14 10 | OHSL directors had voted affirmatively in favor |
| 09:28:18 11 | of the merger? |
| 09:28:20 12 | MR. BURKE: Objection. Calls for |
| 09:28:22 13 | speculation. |
| 09:28:22 14 | A.  I can't -- I can't say |
| 09:28:24 15 | specifically that he said unanimously. I think |
| 09:28:28 16 | he said that they were in favor of it. |
| 09:28:30 17 | Q.  Dr. Peerless, what if any |
| 09:28:32 18 | responsibility does the Provident Board have |
| 09:28:34 19 | for Defendant's Exhibit 1? |
| 09:28:38 20 | A.  That this was brought up to the |
| 09:28:42 21 | Board of the financial company, that they voted |
| 09:28:46 22 | for purchasing their bank and we confirmed it. |
| 09:28:52 23 | Q.  I'm talking specifically about |
| 09:28:54 24 | that document in front of you, Defendant's |

32

| | |
|---|---|
| 09:28:58 1 | Exhibit 1. Who does that document come from? |
| 09:29:00 2 | MR. BURKE: Objection. Calls for |
| 09:29:02 3 | speculation. |
| 09:29:04 4 | A.  I imagine it comes from OHSL |
| 09:29:06 5 | Financial. |
| 09:29:06 6 | Q.  Do you believe that it comes in |
| 09:29:06 7 | any sense from Provident and the Provident |
| 09:29:10 8 | Board? |
| 09:29:10 9 | MR. BURKE: Objection. Calls for |
| 09:29:10 10 | speculation. No foundation. |
| 09:29:14 11 | A.  I don't think so. |
| 09:29:14 12 | Q.  Why not? |
| 09:29:14 13 | A.  Because they didn't write it. |
| 09:29:16 14 | Q.  Who did write the document? |
| 09:29:18 15 | A.  Norbert Brinker. |
| 09:29:22 16 | Q.  Is it your understanding that |
| 09:29:22 17 | Norbert Brinker wrote the entire document? |
| 09:29:24 18 | MR. BURKE: Objection. |
| 09:29:26 19 | A.  I don't know. I don't know. |
| 09:29:26 20 | It's -- I'm not at all associated with them. I |
| 09:29:32 21 | don't even know who they are. |
| 09:29:36 22 | Q.  Do you know who Norbert Brinker |
| 09:29:38 23 | is? |
| 09:29:38 24 | A.  No. |

33

09:29:40 1    Q.   Is this document in any sense a
09:29:44 2  joint document from OHSL and Provident?
09:29:46 3    A.   No.
09:29:46 4         MR. BURKE: Objection. No
09:29:46 5  foundation. Asked and answered. You may
09:29:46 6  answer.
09:29:50 7    Q.   So it's your understanding that
09:29:50 8  this document comes exclusively from OHSL?
09:28:54 9    A.   Yes.
09:29:54 10   Q.   Did Provident provide any
09:29:56 11 information that's included in Defendant's
09:29:56 12 Exhibit 1?
09:29:58 13   A.   I don't know, but I don't think
09:30:00 14 so.
09:30:10 15   Q.   Dr. Peerless, are you familiar
09:30:12 16 generally with mergers and acquisitions?
09:30:14 17        MR. BURKE: Objection. No
09:30:18 18 foundation.
09:30:18 19   A.   In a certain extent.
09:30:18 20   Q.   How many mergers and acquisitions
09:30:20 21 has Provident had during the 27 years you
09:30:22 22 served as a director, approximately?
09:30:24 23   A.   I'd say four or five.
09:30:32 24   Q.   Are you familiar with GAAP?

34

09:30:36 1    A.   Clothing store?
09:30:38 2    Q.   No. G A A P.
09:30:40 3    A.   No.
09:30:42 4    Q.   Are you familiar with GAAS,
09:30:44 5  capital G A A S?
09:30:46 6    A.   No.
09:30:50 7    Q.   What is the purpose of proxy
09:30:52 8  materials?
09:30:54 9         MR. BURKE: Objection. Calls for
09:30:54 10 legal conclusion, speculation.
09:30:58 11   A.   Proxy material, something for
09:31:00 12 shareholders to read.
09:31:02 13   Q.   And why were proxy materials
09:31:06 14 created in this case?
09:31:06 15        MR. BURKE: Objection. You may
09:31:10 16 answer.
09:31:10 17   A.   I don't know, but I would assume
09:31:12 18 to give information to the people involved.
09:31:14 19   Q.   And what type of information was
09:31:16 20 being communicated through the proxy materials?
09:31:20 21        MR. BURKE: Objection. Overbroad.
09:31:22 22   A.   The details of the -- of the
09:31:26 23 venture.
09:31:28 24   Q.   Do you believe that Defendant's

35

09:31:30 1  Exhibit 1 told the truth, the whole truth, and
09:31:32 2  nothing but the truth about the merger?
09:31:34 3    A.   I can't answer that.
09:31:38 4    Q.   Why not?
09:31:38 5    A.   Because I don't know.
09:31:40 6    Q.   Before today, have you ever seen
09:31:42 7  Defendant's Exhibit 1?
09:31:44 8         MR. BURKE: Objection. Asked and
09:31:44 9  answered.
09:31:44 10   A.   No.
09:31:54 11   Q.   Dr. Peerless, please describe your
09:31:56 12 understanding of the terms of the
09:31:58 13 OHSL-Provident merger.
09:32:00 14        MR. BURKE: Objection,
09:32:02 15 speculation. No foundation.
09:32:02 16   A.   It -- I assumed the -- Provident
09:32:08 17 was interested in buying them and they were
09:32:10 18 interested in being sold. And they got
09:32:12 19 together on terms, both Boards approved the
09:32:16 20 terms, and that's what they did.
09:32:20 21   Q.   What was the currency used for the
09:32:22 22 transaction, if you will?
09:32:24 23   A.   I'd imagine stock transfer.
09:32:26 24   Q.   What type of stock?

36

09:32:28 1    A.   Provident stock for OHSL stock.
09:32:32 2    Q.   Was this existing stock or was it
09:32:32 3  newly-issued stock?
09:32:34 4    A.   I don't know.
09:32:35 5    Q.   Are you familiar with something
09:32:36 6  known as a registration statement?
09:32:38 7    A.   No.
09:32:38 8    Q.   Have you ever signed a
09:32:40 9  registration statement with respect to the
09:32:42 10 OHSL-Provident merger?
09:32:44 11   A.   No.
09:32:44 12   Q.   So you wouldn't know what, if
09:32:46 13 anything, was being registered, correct?
09:32:48 14   A.   No.
09:32:52 15   Q.   Are you familiar with the phrase
09:32:52 16 due diligence?
09:32:54 17   A.   Yes.
09:32:54 18   Q.   What does due diligence mean?
09:32:56 19   A.   It means that the documents have
09:33:00 20 undergone scrutiny from the standpoint of, of
09:33:04 21 legality.
09:33:06 22   Q.   Any other standpoint?
09:33:06 23   A.   No.
09:33:08 24   Q.   How about that the documents are

## 37

09:33:12 1 correct from a financial standpoint?

09:33:14 2     MR. BURKE: How about -- objection

09:33:16 3 to form.

09:33:16 4     A. That's understood.

09:33:18 5     Q. Okay. Why is that understood?

09:33:20 6     A. Because they should be correct.

09:33:22 7     Q. Okay. Are you familiar with the

09:33:22 8 term restatement?

09:33:24 9     A. Yes.

09:33:26 10     Q. What is a restatement?

09:33:28 11     A. A restatement is when there is --

09:33:30 12 they find that there's a mistake or an omission

09:33:32 13 and they are restated correctly.

09:33:38 14     Q. Are you familiar with the term

09:33:40 15 fairness opinion?

09:33:42 16     A. No.

09:33:42 17     Q. Are you familiar with the term

09:33:44 18 artificial inflation?

09:33:46 19     A. No.

09:33:46 20     MR. BURKE: Objection.

09:33:46 21     Q. Are you familiar with the term

09:33:48 22 materially overvalued?

09:33:50 23     A. Yes.

09:33:50 24     Q. What does it -- the phrase

## 38

09:33:52 1 materially overvalued mean?

09:33:54 2     A. That they've overvalued the

09:33:56 3 situation. In other words, they put a higher

09:33:58 4 price on than should have.

09:34:00 5     Q. And you said "they" in your

09:34:02 6 previous answer. To whom were you referring?

09:34:06 7     MR. BURKE: Objection. Vague, no

09:34:08 8 foundation.

09:34:08 9     A. To the people involved.

09:34:08 10     Q. And what people are involved in

09:34:10 11 setting a price for a stock?

09:34:10 12     MR. BURKE: Objection. Calls for

09:34:12 13 speculation. No foundation.

09:34:14 14     A. I really don't know.

09:34:16 15     Q. Are you familiar with

09:34:20 16 off-the-books transactions?

09:34:20 17     A. No.

09:34:22 18     Q. Are you familiar with off balance

09:34:22 19 sheet transactions?

09:34:24 20     A. No.

09:34:24 21     Q. Did Provident engage in

09:34:26 22 off-the-books transactions?

09:34:28 23     A. I -- I don't know.

09:34:30 24     Q. Did Provident engage in off

## 39

09:34:30 1 balance sheet transactions?

09:34:32 2     A. I don't know.

09:34:32 3     Q. Are you familiar with the

09:34:34 4 Sarbanes-Oxley Act?

09:34:36 5     A. Yes.

09:34:36 6     Q. What is the Sarbanes-Oxley Act?

09:34:40 7     MR. BURKE: Objection. Calls for

09:34:40 8 a legal conclusion. You may answer.

09:34:42 9     A. My idea was that the financial

09:34:44 10 statements be more detailed.

09:34:50 11     Q. And did your job as a director

09:34:50 12 change in any way as a result of the

09:34:54 13 Sarbanes-Oxley Act?

09:34:56 14     MR. BURKE: Objection. Calls for

09:34:58 15 a legal conclusion.

09:34:58 16     A. No.

09:34:58 17     Q. Are you familiar with the term

09:35:00 18 outside director?

09:35:00 19     A. Yes.

09:35:00 20     Q. What is an outside director?

09:35:02 21     A. An outside director is a director

09:35:04 22 in the bank that is not an employee of the

09:35:08 23 bank.

09:35:08 24     Q. Are you familiar with an inside

## 40

09:35:08 1 director?

09:35:10 2     A. Yes.

09:35:10 3     Q. What is an inside director?

09:35:12 4     A. An inside director is an employee

09:35:14 5 of the bank who is on the Board or -- yeah, on

09:35:18 6 the Board.

09:35:18 7     Q. Did you do business with any

09:35:20 8 Provident Board members?

09:35:20 9     A. No.

09:35:22 10     Q. Did you do business to any

09:35:24 11 substantial degree with any members of the

09:35:28 12 Lindner family?

09:35:28 13     A. No.

09:35:28 14     Q. And that's true for the past 27

09:35:30 15 years?

09:35:30 16     A. Past 27 years. I've avoided being

09:35:32 17 in any transactions with them. I haven't

09:35:36 18 bought their stock or anything like that.

09:35:40 19     Q. When you say "bought their stock,"

09:35:40 20 what entity are you referring to?

09:35:42 21     A. American Financial.

09:35:44 22     Q. Are you familiar with the phrase

09:35:48 23 conflict of interest?

09:35:48 24     A. Yes.

41

09:35:50 1     Q. What is a conflict of interest?

09:35:52 2     MR. BURKE: Objection. Vague,

09:35:52 3 overbroad.

09:35:54 4     A. I understand it as being involved

09:35:58 5 in something where your actions have a material

09:36:02 6 effect on the subject.

09:36:08 7     Q. Did you say material effect?

09:36:10 8     A. Yes.

09:36:10 9     Q. What did you mean by that?

09:36:12 10     A. Well, where your doing something

09:36:14 11 will either inflate or deflate the price.

09:36:22 12     Q. Price of what?

09:36:24 13     MR. BURKE: Objection.

09:36:24 14     A. Stock.

09:36:28 15     Q. Are you familiar with the term

09:36:28 16 takeover premium?

09:36:28 17     A. No.

09:36:30 18     Q. Was there a takeover premium used

09:36:32 19 in the OHSL-Provident merger?

09:36:36 20     MR. BURKE: Objection. Calls for

09:36:36 21 speculation.

09:36:38 22     A. I, I don't know.

09:36:38 23     Q. You're familiar with the

09:36:38 24 Provident-National City merger, correct?

42

09:36:40 1     A. Yes.

09:36:42 2     Q. Was there a takeover premium used?

09:36:44 3     MR. BURKE: Objection. No

09:36:44 4 foundation.

09:36:46 5     A. I don't know.

09:36:48 6     Q. Dr. Peerless, did you use --

09:36:52 7 excuse me. Did you read the proxy materials

09:36:54 8 that were used for the Provident-National City

09:36:56 9 merger?

09:36:58 10     A. Yes.

09:37:00 11     Q. Did they include a fairness

09:37:00 12 opinion?

09:37:02 13     A. Yes.

09:37:02 14     Q. What was the purpose of including

09:37:04 15 the fairness opinion in the proxy materials for

09:37:06 16 the Provident-National City merger?

09:37:08 17     A. To make sure the stockholders were

09:37:12 18 satisfied.

09:37:14 19     Q. And how does one go about

09:37:18 20 obtaining a fairness opinion?

09:37:20 21     MR. BURKE: Objection. No

09:37:20 22 foundation.

09:37:20 23     A. I don't know.

09:37:22 24     Q. Is it important that the entity

43

09:37:24 1 providing the fairness opinion be independent?

09:37:26 2     MR. BURKE: Objection. Calls for

09:37:28 3 speculation.

09:37:28 4     A. I really don't know.

09:37:28 5     Q. Provident paid UBS Securities to

09:37:32 6 perform a fairness opinion; is that correct?

09:37:36 7     A. I don't know.

09:37:42 8     Q. Dr. Peerless, would you take

09:37:44 9 Exhibit 1, which you have in front of you, and

09:37:48 10 turn to the last couple of pages of it, Annex

09:37:52 11 C? It's a fairness opinion. There you go.

09:37:56 12 Why don't you just review that briefly and I'll

09:38:00 13 have some questions on it.

09:38:02 14     MR. BURKE: Do you want him to

09:38:02 15 read the whole opinion?

09:38:04 16     Q. Well, no, he doesn't have to. My

09:38:06 17 questions will go to page three. Dr. Peerless,

09:39:58 18 what type of an entity typically issues

09:40:02 19 fairness opinions?

09:40:02 20     MR. BURKE: Objection. Asked and

09:40:04 21 answered. No foundation. Calls for

09:40:04 22 speculation.

09:40:06 23     A. What was that again?

09:40:06 24     Q. What type of entity typically

44

09:40:08 1 issues fairness opinions?

09:40:10 2     MR. BURKE: Same objection.

09:40:12 3     A. I don't know.

09:40:12 4     Q. Do you know if McDonald

09:40:12 5 Investments is an investment banking firm?

09:40:16 6     A. Yes.

09:40:16 7     Q. And does it appear that Annex C to

09:40:16 8 Defendant's Exhibit 1 appears to be a fairness

09:40:22 9 opinion?

09:40:22 10     MR. BURKE: Objection. You may

09:40:22 11 answer.

09:40:24 12     A. I think so.

09:40:26 13     Q. And when an investment banking

09:40:28 14 firm undertakes to issue a fairness opinion,

09:40:32 15 they do not perform an audit, correct?

09:40:34 16     MR. BURKE: Objection. Calls for

09:40:36 17 speculation. No foundation.

09:40:36 18     A. I don't know.

09:40:38 19     Q. Okay.

09:40:38 20     A. I have no idea.

09:40:38 21     Q. Would you read to yourself the

09:40:40 22 first sentence of the first full paragraph on

09:40:44 23 page three, please? In our review and

09:40:52 24 analysis.

45

| | |
|---|---|
| 09:42:02 1 | A. Um-hmm. |
| 09:42:04 2 | Q. Dr. Peerless, let me direct your |
| 09:42:06 3 | attention to page six of the proxy materials. |
| 09:42:08 4 | I wanted to show you something. |
| 09:42:08 5 | MR. BURKE: So you don't want to |
| 09:42:10 6 | ask him any questions over what he just read? |
| 09:42:12 7 | MR. BRAUTIGAM: I want him to go |
| 09:42:12 8 | to page six and then I'll come back here. |
| 09:42:18 9 | MR. BURKE: Okay. I think we have |
| 09:42:18 10 | to change it around here. |
| 09:42:20 11 | THE WITNESS: Okay. |
| 09:42:22 12 | BY MR. BRAUTIGAM: |
| 09:42:22 13 | Q. Dr. Peerless, you have page six of |
| 09:42:26 14 | Defendant's Exhibit 1 in front of you, correct? |
| 09:42:28 15 | A. Yes, I do. |
| 09:42:30 16 | Q. Does that page appear to contain |
| 09:42:30 17 | Provident financial information? |
| 09:42:32 18 | MR. BURKE: Objection. No |
| 09:42:32 19 | foundation. You may answer it. |
| 09:42:38 20 | A. Yes. |
| 09:42:38 21 | Q. And you said earlier that you did |
| 09:42:40 22 | not believe that Defendant's Exhibit 1 |
| 09:42:42 23 | contained any information from Provident, but |
| 09:42:44 24 | now we know that it contains at least some, |

46

| | |
|---|---|
| 09:42:48 1 | correct? |
| 09:42:48 2 | MR. BURKE: Objection. |
| 09:42:50 3 | Mischaracterizes the prior testimony. |
| 09:42:52 4 | A. I really don't know. This is |
| 09:42:52 5 | becoming too complicated to tie these things |
| 09:42:56 6 | together. |
| 09:42:56 7 | Q. Well, page six is part of the |
| 09:42:58 8 | overall document, correct? |
| 09:43:00 9 | A. Yeah, that's right. |
| 09:43:00 10 | Q. And it appears to contain |
| 09:43:02 11 | Provident financial information; is that |
| 09:43:04 12 | correct? |
| 09:43:04 13 | MR. BURKE: Objection. Asked and |
| 09:43:06 14 | answered. You may answer it again. |
| 09:43:06 15 | A. Yes. |
| 09:43:06 16 | Q. And this financial information |
| 09:43:08 17 | appears to go back to 1994, correct? |
| 09:43:12 18 | MR. BURKE: Objection. No |
| 09:43:12 19 | foundation, speculation. You may answer. |
| 09:43:14 20 | Q. The extreme right. |
| 09:43:16 21 | A. Yes. |
| 09:43:18 22 | Q. Okay. Now, let's go back to page |
| 09:43:20 23 | three of the fairness opinion at the back. |
| 09:43:22 24 | A. Okay. |

47

| | |
|---|---|
| 09:43:34 1 | Q. Dr. Peerless, I'm going to read |
| 09:43:36 2 | the first sentence of that paragraph into the |
| 09:43:36 3 | record, In our review and analysis, and in |
| 09:43:40 4 | arriving at our opinion, we have assumed and |
| 09:43:44 5 | relied upon the accuracy and completeness of |
| 09:43:48 6 | all the financial and other information viewed |
| 09:43:52 7 | by us and have relied upon the accuracy and |
| 09:43:54 8 | completeness of the representations, warranties |
| 09:43:56 9 | and covenants of OHSL and PFGI contained in the |
| 09:44:02 10 | agreement. Do you see that? |
| 09:44:04 11 | A. Yeah. |
| 09:44:04 12 | Q. Dr. Peerless, we now know that the |
| 09:44:08 13 | information that Provident provided from a |
| 09:44:10 14 | financial point of view was not accurate, |
| 09:44:12 15 | correct? |
| 09:44:14 16 | MR. BURKE: Objection. Calls for |
| 09:44:14 17 | speculation. |
| 09:44:14 18 | A. I -- |
| 09:44:16 19 | MR. BURKE: Assumes facts not in |
| 09:44:18 20 | evidence. |
| 09:44:18 21 | A. I don't know. |
| 09:44:20 22 | Q. We now know that the financial |
| 09:44:22 23 | information contained in Defendant's Exhibit 1 |
| 09:44:26 24 | was not complete, correct? |

48

| | |
|---|---|
| 09:44:28 1 | MR. BURKE: Objection. Same |
| 09:44:28 2 | objection. |
| 09:44:28 3 | A. I don't know. |
| 09:44:30 4 | Q. Okay. Dr. Peerless, let's talk |
| 09:44:32 5 | about the 2003 restatements. You're familiar |
| 09:44:36 6 | with those, correct? |
| 09:44:36 7 | A. Yes. |
| 09:44:36 8 | Q. Why did Provident restate on March |
| 09:44:40 9 | 5th, 2003, and then again on April 15th, 2003? |
| 09:44:44 10 | MR. BURKE: Objection. No |
| 09:44:44 11 | foundation. |
| 09:44:46 12 | A. I think there was some difference |
| 09:44:48 13 | of opinion as to car loans, automobile loans, |
| 09:44:54 14 | and I think that was the reason. |
| 09:44:58 15 | Q. And what were the varying points |
| 09:45:00 16 | of view with respect to these differences of |
| 09:45:02 17 | opinion? |
| 09:45:04 18 | MR. BURKE: Objection. Lack of |
| 09:45:08 19 | foundation. |
| 09:45:10 20 | A. I really don't know. |
| 09:45:12 21 | Q. Dr. Peerless, are all restatements |
| 09:45:14 22 | by definition material? |
| 09:45:16 23 | MR. BURKE: Objection. Calls for |
| 09:45:16 24 | speculation. |

49

09:45:16 1         A.   I have no idea.
09:45:18 2         Q.   Have you ever heard of a public
09:45:20 3  company issuing a restatement for a nonmaterial
09:45:24 4  reason?
09:45:24 5         MR. BURKE:  Objection.  Calls for
09:45:24 6  speculation.
09:45:26 7         A.   I don't understand.
09:45:28 8         Q.   You don't understand the question?
09:45:30 9         A.   No.
09:45:30 10        MR. BURKE:  That's exactly what he
09:45:30 11  said.
09:45:32 12        Q.   Let me see if I can rephrase it.
09:45:36 13  Did Provident restate its financials in 2003
09:45:40 14  because the previous financials were materially
09:45:42 15  misstated?
09:45:42 16        MR. BURKE:  Objection.  Calls for
09:45:44 17  speculation.  No foundation.
09:45:46 18        A.   I, I don't know.
09:45:46 19        Q.   Was Provident required to issue
09:45:52 20  the March and April 2003 restatements?
09:45:54 21        MR. BURKE:  Same objection.
09:45:54 22        A.   I don't know.
09:45:56 23        MR. BURKE:  No foundation.
09:45:56 24        A.   Don't know.

50

09:45:58 1         Q.   Why did Provident restate in 2003?
09:46:02 2         MR. BURKE:  Objection.  Asked and
09:46:02 3  answered.  You may answer that again.
09:46:04 4         A.   I really don't know.
09:46:10 5         Q.   Do you know what RVI is?
09:46:14 6         A.   (Witness shook head.)
09:46:14 7         Q.   You have to answer audibly, Dr.
09:46:16 8  Peerless.
09:46:16 9         A.   No.
09:46:18 10        Q.   Do you know what direct finance
09:46:20 11  leases are?
09:46:22 12        A.   No.
09:46:22 13        Q.   Do you know what operating leases
09:46:24 14  are?
09:46:24 15        A.   No.
09:46:26 16        Q.   Dr. Peerless, have you heard of
09:46:28 17  something referred to as the model as it
09:46:32 18  applies to the 2003 restatements?
09:46:34 19        A.   I've heard of it.
09:46:36 20        Q.   What is your understanding of the
09:46:38 21  model as it applies to auto leases at
09:46:40 22  Provident?
09:46:42 23        A.   A model is a standard that is --
09:46:52 24  that is established in leasing autos.

51

09:46:54 1         Q.   And how did the model work?
09:46:56 2         A.   I don't know.
09:46:58 3         Q.   Who was responsible for the model?
09:47:00 4         A.   I have no idea.
09:47:00 5         Q.   Did Ernst & Young have any input
09:47:04 6  into setting up the model?
09:47:06 7         MR. BURKE:  Objection.  Calls for
09:47:06 8  speculation.
09:47:06 9         A.   I don't know.
09:47:08 10        Q.   If they did, would that compromise
09:47:08 11  their independence?
09:47:10 12        MR. BURKE:  Objection.  Calls for
09:47:12 13  speculation.
09:47:12 14        A.   I have no idea.
09:47:24 15        Q.   Dr. Peerless, do you believe that
09:47:26 16  an OHSL shareholder is entitled to rely on
09:47:30 17  every word and every number that's contained in
09:47:34 18  Defendant's Exhibit 1?
09:47:34 19        MR. BURKE:  Objection.  Calls for
09:47:38 20  speculation.  No foundation.
09:47:38 21        A.   I have no idea.
09:47:40 22        Q.   Do you believe that any of the
09:47:40 23  financial or other information that Provident
09:47:44 24  provided was materially misstated?

52

09:47:46 1         MR. BURKE:  Objection.  Asked and
09:47:46 2  answered.
09:47:48 3         A.   I don't think so.
09:47:48 4         Q.   What's the basis for that?
09:47:50 5         A.   Because we're not used to
09:47:52 6  misstating things.
09:48:04 7         Q.   Dr. Peerless, you don't deny that
09:48:06 8  Provident's financials were incorrect going
09:48:08 9  back to 1994?
09:48:10 10        A.   I don't know.
09:48:12 11        MR. BURKE:  Objection.
09:48:12 12        A.   I, I really don't know.
09:48:18 13        Q.   Provident issued two restatements
09:48:20 14  in 2003, correct?
09:48:22 15        MR. BURKE:  Objection.
09:48:22 16        A.   Yes.
09:48:22 17        Q.   What information was Provident
09:48:24 18  attempting to communicate to the investing
09:48:26 19  public with those restatements?
09:48:28 20        MR. BURKE:  Objection.
09:48:28 21        A.   I have no idea.
09:48:36 22        Q.   Okay.  Dr. Peerless, would you
09:48:38 23  turn to the first page of Defendant's Exhibit
09:48:42 24  1?  Would you read the paragraph that begins,

53

09:48:44 1 Your Board of Directors unanimously approved,
09:48:48 2 to yourself, please?
09:48:50 3 MR. BURKE: Where is this --
09:48:52 4 A. Your Board of Directors
09:48:52 5 unanimously approved the acquisition and
09:48:54 6 believes that it is in the best interest of
09:48:58 7 OHSL stockholders. The Board unanimously
09:49:02 8 recommends and advises that you approve the
09:49:04 9 acquisition at the special meeting so that the
09:49:06 10 transaction may be completed.
09:49:10 11 Q. Okay. Dr. Peerless, let's focus
09:49:12 12 on the first sentence. Do you believe that
09:49:14 13 that first sentence has two components, the
09:49:18 14 first being unanimous approval and the second
09:49:20 15 being that the transaction is in the best
09:49:24 16 interest of OHSL shareholders?
09:49:28 17 MR. BURKE: Objection. Calls for
09:49:28 18 speculation.
09:49:28 19 A. I don't know. I didn't write
09:49:28 20 this.
09:49:30 21 Q. Okay. But you can interpret it,
09:49:32 22 correct?
09:49:32 23 MR. BURKE: Objection.
09:49:32 24 A. I still don't know.

54

09:49:34 1 Q. Okay.
09:49:34 2 MR. BURKE: No foundation.
09:49:36 3 A. I don't know the man that wrote it
09:49:38 4 and I don't know. What can I say?
09:49:40 5 Q. Just for the record, Mr. Brinker
09:49:42 6 denies writing this, so that's -- I just wanted
09:49:44 7 to make that representation to you.
09:49:46 8 Dr. Peerless, without knowing the
09:49:50 9 man who wrote it or the woman who wrote it, can
09:49:56 10 you make a determination as to whether or not
09:49:58 11 that sentence includes two concepts?
09:50:00 12 MR. BURKE: Objection. Asked and
09:50:02 13 answered.
09:50:02 14 A. I, I -- I can't.
09:50:04 15 Q. When it says, Your Board of
09:50:06 16 Directors unanimously approved the acquisition,
09:50:10 17 do you interpret that to mean that all of the
09:50:12 18 OHSL directors voted in favor of the merger?
09:50:16 19 MR. BURKE: Objection. No
09:50:16 20 foundation. Calls for speculation.
09:50:18 21 A. No. I -- it all depends upon what
09:50:22 22 they -- the definition of unanimously is.
09:50:26 23 Q. Okay. What is your definition of
09:50:26 24 unanimously?

55

09:50:26 1 MR. BURKE: Objection. No
09:50:26 2 relevance. Calls for speculation as to that.
09:50:32 3 Asked and answered also.
09:50:34 4 A. Mine would be that the people that
09:50:36 5 were present at that meeting voted unanimously
09:50:42 6 to accept the merger.
09:50:46 7 Q. And do you have any reason to
09:50:48 8 believe that the OHSL Board had a separate
09:50:50 9 definition?
09:50:52 10 MR. BURKE: Objection. Calls for
09:50:52 11 speculation.
09:50:54 12 A. I have no idea.
09:50:54 13 Q. Do you believe that the definition
09:50:56 14 that you just gave is in common usage in the
09:50:58 15 United States?
09:51:00 16 A. I --
09:51:00 17 MR. BURKE: Objection. Calls for
09:51:00 18 speculation.
09:51:02 19 A. I don't know. I don't know.
09:51:04 20 Q. Dr. Peerless, do you believe that
09:51:06 21 it's important for Defendant's Exhibit 1 to be
09:51:08 22 truthful?
09:51:08 23 MR. BURKE: Objection. Calls for
09:51:10 24 speculation.

56

09:51:12 1 A. I, I would assume that all
09:51:14 2 statements should be truthful.
09:51:20 3 Q. And it would be important for the
09:51:22 4 information contained in Defendant's Exhibit 1
09:51:24 5 to be truthful, correct?
09:51:26 6 MR. BURKE: Objection. Calls for
09:51:28 7 speculation.
09:51:26 8 A. Yes.
09:51:28 9 Q. Dr. Peerless, let me represent to
09:51:30 10 you that when the OHSL Board voted on August
09:51:32 11 2nd, 1999, there were seven directors in the
09:51:34 12 room. Are you with me so far?
09:51:36 13 MR. BURKE: Objection. Calls for
09:51:38 14 speculation. No foundation.
09:51:38 15 A. Yes.
09:51:40 16 Q. Okay. Let me further represent to
09:51:42 17 you that only five of the seven directors voted
09:51:46 18 in favor of the merger.
09:51:46 19 MR. BURKE: Objection. Calls for
09:51:48 20 speculation.
09:51:50 21 Q. Are you with me?
09:51:52 22 MR. BURKE: Incomplete
09:51:52 23 hypothetical. You may answer.
09:51:55 24 A. Yes.

57

09:51:56 1      Q.  Do you still believe that the vote
09:51:58 2  by the OHSL Board was unanimous as you just
09:52:00 3  defined the term?
09:52:02 4      MR. BURKE:  Objection.  Calls for
09:52:02 5  speculation.
09:52:02 6      A.  I wasn't there.  I wasn't there so
09:52:04 7  I don't know.
09:52:04 8      Q.  I understand you weren't there,
09:52:06 9  Dr. Peerless.  In certain circumstances in a
09:52:08 10  legal proceeding, I'm entitled to make a
09:52:10 11  representation.
09:52:10 12      MR. BURKE:  You don't have to
09:52:12 13  accept that.  What is -- that's not a question.
09:52:16 14  Ask a question.
09:52:16 15      Q.  I'm explaining.  Dr. Peerless, if
09:52:16 16  what I'm saying is true, and only five of the
09:52:22 17  then seven directors voted in favor of the
09:52:24 18  merger, do you believe that the OHSL Board
09:52:30 19  unanimously voted in favor of the merger?
09:52:32 20      MR. BURKE:  Objection.  Misstates
09:52:34 21  the record, as you know.  Calls for
09:52:36 22  speculation.  Asked and answered.  This witness
09:52:36 23  has no foundation as to this answer.
09:52:40 24      A.  I really don't know.  I don't know

58

09:52:42 1  their rules.  I don't know what -- I mean, I
09:52:46 2  don't know what their rules are as far as
09:52:46 3  absent members are concerned.
09:52:50 4      Q.  As far as what members?
09:52:52 5      A.  As far as absent members are
09:52:54 6  concerned.
09:52:54 7      Q.  Well, let me represent to you that
09:52:56 8  the chairman of the Board was in the room and
09:52:58 9  did not vote, but abstained.
09:53:00 10      MR. BURKE:  Objection.  Misstates
09:53:02 11  the record, as you clearly know.
09:53:04 12      A.  I, I don't know.  I really can't
09:53:06 13  tell.
09:53:12 14      Q.  Dr. Peerless, let's talk about the
09:53:14 15  second concept here.  Your Board of Directors
09:53:16 16  unanimously believes that it is in the best
09:53:20 17  interest of OHSL stockholders.  Do you see
09:53:24 18  that?
09:53:24 19      A.  Yes.
09:53:24 20      MR. BURKE:  Objection.
09:53:24 21      Q.  And I read that in a way to focus
09:53:26 22  only on the second part of the sentence, but I
09:53:30 23  also included the adverb unanimously.  Do you
09:53:32 24  see that?

59

09:53:32 1      MR. BURKE:  Objection.  Calls for
09:53:34 2  speculation.  Misstates the document.
09:53:36 3      A.  Yes.
09:53:38 4      Q.  Do you believe that that sentence
09:53:40 5  intends to give shareholders the impression
09:53:42 6  that all of the OHSL directors unanimously
09:53:48 7  believed that the merger was in the best
09:53:50 8  interest of OHSL stockholders?
09:53:52 9      MR. BURKE:  Objection.  Calls for
09:53:52 10  speculation.
09:53:52 11      A.  I really can't tell.
09:53:54 12      Q.  Is there any other interpretation
09:53:58 13  to that sentence?
09:53:56 14      MR. BURKE:  Objection.  Calls for
09:53:58 15  speculation.  No foundation.
09:53:58 16      A.  I can't, I can't --
09:54:00 17      Q.  You can't give me an alternate
09:54:02 18  interpretation today, correct?
09:54:04 19      MR. BURKE:  That's exactly what he
09:54:04 20  just said.
09:54:06 21      A.  Yes, I can't.
09:54:06 22      Q.  Did you ever learn from any source
09:54:08 23  that one of the OHSL directors had resigned in
09:54:12 24  part in protest of the OHSL-Provident merger?

60

09:54:18 1      MR. BURKE:  Objection.  Calls for
09:54:18 2  speculation.
09:54:18 3      A.  No.
09:54:18 4      MR. BURKE:  Assumes facts not in
09:54:20 5  evidence.
09:54:20 6      Q.  Do you think that that would be
09:54:22 7  material information that the merging companies
09:54:24 8  should inform the shareholders of?
09:54:26 9      MR. BURKE:  Objection.  Calls for
09:54:28 10  speculation.
09:54:28 11      A.  I really don't know.
09:54:30 12      Q.  How would you go about making that
09:54:32 13  analysis?
09:54:32 14      MR. BURKE:  Objection.  Calls for
09:54:34 15  speculation.
09:54:34 16      A.  I don't know.  I mean, they -- it
09:54:38 17  tells you they unanimously approved.
09:54:42 18      Q.  It does say that, doesn't it?
09:54:44 19      A.  Yeah.
09:54:44 20      Q.  And that wouldn't be correct if
09:54:46 21  only five of the then --
09:54:48 22      MR. BURKE:  Objection.
09:54:48 23      Q.  -- seven directors --
09:54:50 24      MR. BURKE:  You're arguing --

61

09:54:50 1      Q. -- voted in favor, correct?

09:54:52 2      MR. BURKE: You're arguing with

09:54:52 3 the witness. Asked and answered.

09:54:54 4      A. I don't know.

09:54:54 5      MR. BURKE: He's answered this

09:54:56 6 several times now.

09:54:58 7      A. I don't know.

09:55:02 8      Q. Dr. Peerless, with respect to the

09:55:04 9 Provident-National City merger, you voted in

09:55:08 10 favor of that merger as a director, correct?

09:55:10 11      A. Yes.

09:55:10 12      Q. And you did that because you

09:55:12 13 believed that that merger was in the best

09:55:14 14 interest of Provident shareholders, correct?

09:55:16 15      A. Right.

09:55:20 16      Q. Your fellow directors all voted in

09:55:22 17 favor of the merger as directors, correct?

09:55:22 18      A. Right.

09:55:26 19      Q. And do you believe they did that

09:55:26 20 because they believed the merger was in the

09:55:30 21 best interest of Provident shareholders?

09:55:32 22      MR. BURKE: Objection. Calls for

09:55:34 23 speculation. You may answer.

09:55:34 24      A. Yes.

62

09:55:36 1      Q. Dr. Peerless, how did you vote

09:55:38 2 your personal shares with respect to the

09:55:38 3 Provident-National City merger?

09:55:40 4      A. In favor.

09:55:42 5      Q. And so you voted consistently with

09:55:46 6 your vote as a director, correct?

09:55:46 7      A. Right.

09:55:54 8      Q. If you did not believe that the

09:55:58 9 Provident-National City merger was in the best

09:56:02 10 interest of Provident shareholders, but if you

09:56:04 11 voted in favor of it because you just gave up,

09:56:06 12 would that be consistent with your

09:56:08 13 understanding of your fiduciary duties?

09:56:12 14      MR. BURKE: Objection to form.

09:56:12 15 That question makes no sense.

09:56:14 16      A. I don't understand that at all.

09:56:14 17      Q. Okay. Are you familiar with the

09:56:18 18 concept of fiduciary duties?

09:56:18 19      A. Yes.

09:56:18 20      Q. What are the fiduciary duties that

09:56:20 21 a director of a public company owes to the

09:56:22 22 shareholders?

09:56:24 23      A. To do the correct thing.

09:56:24 24      Q. And do you believe that if OHSL's

63

09:56:28 1 CEO did not believe that the merger was in the

09:56:34 2 best interest of OHSL shareholders, that it

09:56:36 3 would be consistent with his fiduciary duties

09:56:40 4 to vote in favor of the merger?

09:56:40 5      MR. BURKE: Objection. Calls for

09:56:42 6 speculation. No foundation.

09:56:44 7      A. I don't know. I have absolutely

09:56:46 8 no idea.

09:56:46 9      Q. Under what circumstances would it

09:56:48 10 be appropriate for the CEO of Oak Hills to do

09:56:50 11 what I just said?

09:56:52 12      MR. BURKE: Objection. Calls for

09:56:52 13 speculation. No foundation.

09:56:54 14      A. I don't know. You'd have to ask

09:56:54 15 him.

09:56:56 16      Q. Well, I did ask him, but I'm

09:56:58 17 entitled to your opinion as well, Doctor.

09:57:00 18      MR. BURKE: No.

09:57:02 19      A. I don't know.

09:57:02 20      MR. BURKE: You're not entitled to

09:57:04 21 his opinion if he doesn't have one.

09:57:04 22      A. I really don't know.

09:57:06 23      MR. BURKE: He's answered this

09:57:08 24 question.

64

09:57:08 1      A. I really don't know. I don't know

09:57:10 2 why he did it or what he did.

09:57:10 3      Q. Okay. Dr. Peerless, let me help

09:57:12 4 you on the first part of the question. You

09:57:14 5 said you don't know what he did. And let me

09:57:16 6 represent to you that he changed his vote from

09:57:20 7 abstain on July 22nd, 1999, to in favor of on

09:57:26 8 August 2nd, 1999 -- this is his vote as a

09:57:28 9 director -- not because he believed in the

09:57:30 10 merger, but because he just gave up.

09:57:34 11      MR. BURKE: Objection. Absolutely

09:57:34 12 mischaracterizes the record. Calls for

09:57:36 13 speculation.

09:57:38 14      A. That's -- I can't read somebody

09:57:40 15 else's mind.

09:57:42 16      Q. Dr. Peerless, respectfully, I'm

09:57:44 17 not asking you to read someone's mind. I'm

09:57:46 18 asking if that conduct is consistent with your

09:57:50 19 understanding of your fiduciary duties.

09:57:52 20      MR. BURKE: Objection. He's asked

09:57:52 21 and answered this question. He's -- calls for

09:57:56 22 speculation.

09:57:58 23      A. I cannot tell you his thoughts

09:57:58 24 because I don't know his thoughts. I don't

65

09:58:02 1  know why he gave up or he didn't give up or he
09:58:09 2  did give up. I mean, I have no idea.
09:58:08 3      Q.  Dr. Peerless, how did you expect
09:58:12 4  your fellow Provident directors to vote their
09:58:16 5  personal shares with respect to the
09:58:18 6  Provident-National City merger?
09:58:20 7      MR. BURKE:  Objection. Calls for
09:58:20 8  speculation.
09:58:22 9      A.  Depended on how they felt about
09:58:24 10  it.
09:58:24 11     Q.  And how do you believe that your
09:58:28 12  fellow Provident directors felt about the
09:58:30 13  merger?
09:58:32 14     MR. BURKE:  Objection.
09:58:32 15     A.  I felt that they were favorable.
09:58:34 16     Q.  And you expected your fellow
09:58:36 17  Provident directors to vote their personal
09:58:38 18  shares in favor of the merger, correct?
09:58:40 19     A.  Yes.
09:58:40 20     MR. BURKE:  Objection. Calls for
09:58:42 21  speculation.
09:58:42 22     Q.  And that conduct in your view is
09:58:44 23  consistent with their votes as directors, that
09:58:48 24  the merger was in the best interest of

66

09:58:50 1  Provident shareholders, correct?
09:58:52 2      MR. BURKE:  Objection to form,
09:58:52 3  Calls for speculation.
09:58:54 4      A.  Yes.
09:58:56 5      Q.  Did you ever learn from any source
09:58:56 6  that that had not happened with respect to the
09:58:58 7  OHSL-Provident merger?
09:56:00 8      MR. BURKE:  Objection.
09:59:02 9      A.  I don't know.
09:59:02 10     Q.  Did you ever hear that Mr.
09:59:04 11  Hanauer, OHSL's former CEO, largest
09:59:08 12  shareholder, the only member of management on
09:59:10 13  the Board, and chairman of the Board designate,
09:59:14 14  had voted his personal shares against the
09:59:16 15  OHSL-Provident merger?
09:59:18 16     MR. BURKE:  Objection. No
09:59:20 17  foundation.
09:59:20 18     A.  No.
09:59:20 19     MR. BURKE:  Calls for speculation.
09:59:22 20     A.  I had no idea.
09:59:22 21     Q.  You never heard that until today?
09:59:24 22     A.  Until today.
09:59:30 23     Q.  Do you believe that it was --
09:59:32 24  well, Dr. Peerless, are you a fair man?

67

09:59:34 1      A.  I try to be.
09:59:34 2      Q.  Do you believe that what Mr.
09:59:36 3  Hanauer did, voting in favor of the merger as a
09:59:40 4  director but voting his personal shares against
09:59:42 5  the merger without telling anyone, was fair to
09:59:46 6  the OHSL shareholders?
09:59:48 7      MR. BURKE:  Objection. Calls for
09:59:48 8  speculation. No foundation. He's already
09:59:50 9  testified about this.
09:59:52 10     A.  I, I really don't know. I can't
09:59:54 11  pass on what he did or why he did it.
09:59:56 12     Q.  Dr. Peerless, you understand that
10:00:00 13  in some circumstances if I ask for an opinion,
10:00:02 14  I'm entitled to your opinion, correct?
10:00:06 15     MR. BURKE:  No, you're not.
10:00:08 16  Michael, you're not. And stop making that
10:00:08 17  representation. You're allowed to ask if he
10:00:10 18  has an opinion and if he has one, he can give
10:00:12 19  it to you. And if he doesn't, he doesn't have
10:00:14 20  to. You're not entitled to an opinion, so
10:00:18 21  please stop making that representation to the
10:00:18 22  witness.
10:00:20 23     MR. BRAUTIGAM:  Jim, we don't need
10:00:22 24  speaking objections.

68

10:00:22 1      MR. BURKE:  It's not a speaking
10:00:22 2  objection. That's an improper question and you
10:00:24 3  know it.
10:00:24 4  BY MR. BRAUTIGAM:
10:00:26 5      Q.  Dr. Peerless, let's focus on the
10:00:28 6  next sentence in that paragraph. The Board
10:00:30 7  unanimously recommends and advises that you
10:00:32 8  approve the acquisition at the special meeting
10:00:36 9  so that the transaction may be completed. Do
10:00:40 10  you see that?
10:00:40 11     A.  Yes.
10:00:44 12     Q.  Just reading that today -- I
10:00:46 13  understand this is the first time you've seen
10:00:48 14  this document -- would it be fair to conclude
10:00:50 15  that the entire OHSL Board would vote their
10:00:56 16  personal shares in favor of the merger?
10:00:58 17     MR. BURKE:  Objection. Asked and
10:01:00 18  answered. Calls for speculation.
10:01:00 19     A.  I really don't know. I can't tell
10:01:02 20  you what they're doing or why they did it.
10:01:02 21     Q.  Is there any other reading of that
10:01:10 22  sentence -- is there any other conclusion that
10:01:12 23  you can draw from reading that sentence?
10:01:14 24     MR. BURKE:  Objection. Calls for

69

10:01:14 1  speculation. No foundation.
10:01:22 2        A.  It says that they voted to approve
10:01:24 3  it.
10:01:26 4        Q.  Actually, it also says that they
10:01:28 5  recommend and advise that the shareholders vote
10:01:30 6  to approve the merger, correct?
10:01:34 7        A.  Right.
10:01:34 8        MR. BURKE:  Objection.  The
10:01:34 9  document speaks for itself.
10:01:36 10        Q.  So Mr. Hanauer didn't take his own
10:01:36 11  advice, correct?
10:01:40 12        MR. BURKE:  Objection.  Calls for
10:01:40 13  speculation.
10:01:42 14        A.  I don't know what Mr. Hanauer did.
10:01:44 15        Q.  Let me represent to you that he
10:01:44 16  voted his personal shares, 123,000 of them,
10:01:46 17  against the merger.  If that's true, would it
10:01:50 18  appear to you that Mr. Hanauer, the former CEO
10:01:54 19  of OHSL, did not take the advice that he was
10:01:56 20  giving to the OHSL shareholders?
10:01:58 21        MR. BURKE:  Objection.  Calls for
10:02:00 22  speculation.  No foundation.
10:02:02 23        A.  No.
10:02:02 24        MR. BURKE:  He's asked and

70

10:02:04 1  answered this a dozen times.
10:02:06 2        A.  I really don't know.  Ask Mr.
10:02:06 3  Hanauer.
10:02:30 4        Q.  Dr. Peerless, what are financial
10:02:32 5  forecasts?
10:02:32 6        MR. BURKE:  Objection.  Calls for
10:02:34 7  speculation, no foundation.
10:02:38 8        A.  Outlook of something for the
10:02:40 9  future.
10:02:42 10        Q.  Is it important that financial
10:02:44 11  forecasts be accurate?
10:02:46 12        MR. BURKE:  Objection.  No
10:02:46 13  foundation.
10:02:48 14        A.  As accurate as they can.
10:02:50 15        Q.  Did Provident use financial
10:02:52 16  forecasts?
10:02:54 17        A.  I really don't know.
10:02:56 18        Q.  Don't all companies use financial
10:02:56 19  forecasts?
10:03:00 20        MR. BURKE:  Objection.
10:03:00 21  Speculation, no foundation.
10:03:00 22        A.  I don't know.
10:03:06 23        Q.  Was the future performance of
10:03:08 24  Provident important to the OHSL-Provident

71

10:03:12 1  merger in any way?
10:03:12 2        MR. BURKE:  Objection.
10:03:14 3        A.  I don't think so.
10:03:16 4        Q.  Why not?
10:03:16 5        A.  Because they were dealing with
10:03:18 6  what they had, not what -- what was going to
10:03:20 7  come in a year or so.
10:03:24 8        Q.  Well, weren't OHSL's shareholders
10:03:30 9  to receive Provident stock if the merger was
10:03:32 10  approved?
10:03:32 11        A.  Yes.
10:03:34 12        Q.  So wouldn't it stand to reason
10:03:38 13  that OHSL's shareholders would want to consider
10:03:42 14  Provident's financial future, if you will, if
10:03:46 15  they were going to receive Provident stock?
10:03:48 16        MR. BURKE:  Objection.  Calls for
10:03:46 17  speculation.  No foundation.
10:03:50 18        A.  I don't know.
10:03:52 19        Q.  Did McDonald use financial
10:03:54 20  forecasts in their analysis in coming up with a
10:03:58 21  fairness opinion?
10:04:00 22        MR. BURKE:  Objection.  No
10:04:00 23  foundation.
10:04:02 24        A.  I don't know.

72

10:04:02 1        Q.  Let me direct your attention to
10:04:04 2  page three of the fairness opinion attached as
10:04:08 3  Annex C.
10:04:16 4        MR. BURKE:  Page three?
10:04:16 5        Q.  Yes.
10:04:18 6        A.  All right.
10:04:20 7        Q.  Dr. Peerless, would you read the
10:04:22 8  sentence to yourself with respect to financial
10:04:24 9  forecasts?
10:04:42 10        A.  Okay.
10:04:46 11        Q.  Does it appear to you that
10:04:46 12  Provident did rely on financial forecasts?
10:04:50 13        MR. BURKE:  Objection.  Calls for
10:04:50 14  speculation.  No foundation.
10:04:54 15        A.  According to this report, yes.
10:04:56 16        Q.  Does it appear to you that
10:04:58 17  McDonald did rely on estimates of the future
10:05:02 18  performance of Provident?
10:05:04 19        MR. BURKE:  Objection.  Calls for
10:05:04 20  speculation.  No foundation.
10:05:08 21        A.  I don't -- I don't know.
10:05:08 22        Q.  Well, isn't there a reference to
10:05:10 23  future performance of OHSL, PFGI, and the
10:05:14 24  combined companies?

**73**

| | |
|---|---|
| 10:05:16 1 | MR. BURKE: Objection. The |
| 10:05:16 2 | document speaks for itself. He's already told |
| 10:05:18 3 | you he doesn't know anything about this. |
| 10:05:20 4 | A. I don't know. |
| 10:05:20 5 | Q. You don't know if that reference |
| 10:05:22 6 | appears there? |
| 10:05:22 7 | A. No. I don't know whether McDonald |
| 10:05:28 8 | assumed this or whether the bank did. I really |
| 10:05:30 9 | have no idea. |
| 10:05:30 10 | Q. When you say "assumed this," what |
| 10:05:32 11 | exactly are you referring to? |
| 10:05:34 12 | A. Assumed the future -- the future |
| 10:05:40 13 | status of each stock. |
| 10:05:42 14 | Q. Doesn't it say that right there in |
| 10:05:44 15 | that paragraph? |
| 10:05:48 16 | MR. BURKE: Objection. You're |
| 10:05:46 17 | arguing with the witness. |
| 10:05:48 18 | A. No, I -- |
| 10:05:48 19 | MR. BURKE: He's told you he can't |
| 10:05:50 20 | answer that. |
| 10:05:50 21 | MR. BRAUTIGAM: Jim, we don't need |
| 10:05:52 22 | speaking objections. |
| 10:05:52 23 | MR. BURKE: We also don't need you |
| 10:05:54 24 | to argue with a witness and ask repeated |

**74**

| | |
|---|---|
| 10:05:56 1 | questions when he's already answered this. |
| 10:05:58 2 | MR. BRAUTIGAM: I'm not arguing |
| 10:05:00 3 | with the witness. |
| 10:05:00 4 | MR. BURKE: I believe you are. |
| 10:06:02 5 | MR. BRAUTIGAM: I'm not asking |
| 10:06:02 6 | repeated questions that have been answered. |
| 10:08:04 7 | A. I don't know. |
| 10:06:04 8 | BY MR. BRAUTIGAM: |
| 10:06:20 9 | Q. Dr. Peerless, let me hand you what |
| 10:06:24 10 | has previously been marked as Plaintiff's |
| 10:06:28 11 | Exhibit I. Do you read the Cincinnati Business |
| 10:06:28 12 | Courier? |
| 10:06:28 13 | A. No. |
| 10:06:30 14 | Q. Do you ever read it? |
| 10:06:30 15 | A. Occasionally. |
| 10:06:34 16 | Q. Did you happen to see this article |
| 10:06:34 17 | before? |
| 10:06:38 18 | A. No. |
| 10:06:38 19 | Q. Can I direct your attention to the |
| 10:06:38 20 | extreme right-hand column and ask you to read |
| 10:06:42 21 | to yourself the first two paragraphs? |
| 10:07:56 22 | A. Um-hmm. |
| 10:08:02 23 | Q. Dr. Peerless, do you see where it |
| 10:08:02 24 | says in the first paragraph in the extreme |

**75**

| | |
|---|---|
| 10:08:06 1 | right column, Burke's response: Hanauer |
| 10:08:08 2 | opposed the Provident takeover because he |
| 10:08:10 3 | wanted Oak Hills to remain independent. Do you |
| 10:08:12 4 | see that? |
| 10:08:14 5 | A. Um-hmm. |
| 10:08:14 6 | Q. And the next sentence is, but he |
| 10:08:16 7 | also believed the transaction was fair to |
| 10:08:18 8 | shareholders. Do you see that? |
| 10:08:20 9 | A. Um-hmm. |
| 10:08:20 10 | Q. Do you believe that wanting the |
| 10:08:22 11 | company to remain independent and the |
| 10:08:24 12 | transaction being fair to shareholders are two |
| 10:08:28 13 | separate and distinct concepts? |
| 10:08:32 14 | MR. BURKE: Objection. Calls for |
| 10:08:32 15 | speculation. No foundation. |
| 10:08:34 16 | A. I really don't know. I mean, this |
| 10:08:34 17 | is just his opinion or -- |
| 10:08:38 18 | MR. BURKE: And you also know that |
| 10:08:40 19 | the veracity of that quote has been put into |
| 10:08:42 20 | question, correct, Mr. Brautigam? Which you |
| 10:08:44 21 | have not advised the witness of. |
| 10:08:46 22 | MR. BRAUTIGAM: Jim, when we take |
| 10:08:48 23 | your deposition, we'll see what the veracity of |
| 10:08:50 24 | the quote is. |

**76**

| | |
|---|---|
| 10:08:50 1 | MR. BURKE: You know what it is. |
| 10:08:52 2 | You're asking for speculation. You may answer. |
| 10:08:54 3 | A. I don't know. |
| 10:08:54 4 | BY MR. BRAUTIGAM: |
| 10:08:56 5 | Q. Doctor -- |
| 10:08:56 6 | A. It seems to be an incoherent |
| 10:09:00 7 | response. |
| 10:09:00 8 | Q. Why? |
| 10:09:00 9 | A. What? |
| 10:09:02 10 | Q. Why? |
| 10:09:02 11 | A. Because in the one way he's |
| 10:09:08 12 | opposing the takeover because he wants it to |
| 10:09:10 13 | remain independent. But in the second he's |
| 10:09:18 14 | saying that the takeover is okay. |
| 10:09:18 15 | Q. Well, actually he's saying that |
| 10:09:20 16 | it's fair, correct? |
| 10:09:22 17 | A. Yeah. |
| 10:09:22 18 | MR. BURKE: Objection. You're |
| 10:09:22 19 | arguing with the witness. |
| 10:09:28 20 | Q. Dr. Peerless, you understand that |
| 10:09:28 21 | Ken Hanauer was OHSL's former CEO, correct? |
| 10:09:32 22 | MR. BURKE: Objection. Calls for |
| 10:09:34 23 | speculation. No foundation. |
| 10:09:34 24 | A. Yes, yes. |

77

```
10:09:36  1        Q.   And if his opinion was that he
10:09:38  2   felt it was in the best interest of OHSL
          3   shareholders to remain independent, do you
10:09:42  4   believe that that opinion should have been
10:09:44  5   disclosed in Defendant's Exhibit 1?
10:09:48  6            MR. BURKE:  Objection.  Calls for
10:09:48  7   speculation.
10:09:50  8        A.   That was just his opinion.
10:09:52  9        Q.   But don't you believe that the
10:09:54 10   opinion of OHSL's CEO, its largest shareholder,
10:09:59 11   its chairman of the Board designate, and the
10:10:02 12   only member of management on the Board, would
10:10:04 13   be important to OHSL's shareholders to
10:10:10 14   consider?
10:10:10 15            MR. BURKE:  Objection.  Calls for
10:10:12 16   speculation.  No foundation.  Assumes facts
10:10:12 17   that are not true.
10:10:14 18        A.   I would assume that he would have
10:10:16 19   voted against it then.
10:10:18 20        Q.   And you would make that assumption
10:10:18 21   because that's your understanding of a
10:10:22 22   director's fiduciary duties, correct?
10:10:24 23            MR. BURKE:  Objection.  Calls for
10:10:24 24   speculation.
```

78

```
10:10:24  1        A.   No.
10:10:26  2        Q.   Why would you make that
          3   assumption?
10:10:26  4            MR. BURKE:  Objection, form.
10:10:26  5        A.   If he were against it, he would
          6   vote against it.
10:10:32  7        Q.   What if he was against it, but he
10:10:34  8   voted in favor of it because he just gave up?
10:10:36  9            MR. BURKE:  Objection.  Calls for
10:10:38 10   speculation.
10:10:38 11        A.   I can't tell you that because I
10:10:40 12   don't know.  I don't know why he gave up.
10:10:42 13        Q.   Okay.  Dr. Peerless --
10:10:44 14            MR. BURKE:  Let's take five
10:10:44 15   minutes for a break, if we may.
10:10:46 16            MR. BRAUTIGAM:  Certainly.
10:10:48 17            (Brief recess.)
10:16:02 18        Q.   Dr. Peerless, did you have
10:16:06 19   something to add with respect to Plaintiff's
10:16:08 20   Exhibit 1?
10:16:10 21        A.   I feel insulted that the word --
10:16:16 22   this is fraud.  Absolutely, it's disgusting to
10:16:20 23   me that anybody would even think that.
10:16:24 24        Q.   Are you suggesting that I
```

79

```
10:16:26  1   personally insulted you?
10:16:28  2        A.   Yeah.  I'm not involved in any
10:16:30  3   fraudulent dealings, nor was the Board of the
10:16:34  4   bank.
10:16:34  5        Q.   And what's your basis for that
10:16:36  6   statement?
10:16:38  7        A.   Because we didn't do anything
10:16:38  8   fraudulent.
10:16:40  9        Q.   Well, Dr. Peerless, you don't know
10:16:44 10   if Defendant's Exhibit 1 contains any
10:16:48 11   misstatements because you've never seen it
10:16:50 12   before today, correct?
10:16:52 13        A.   Um-hmm.
10:16:52 14        Q.   Yes?
10:16:52 15        A.   Yes.
10:16:54 16        Q.   So hypothetically speaking, if
10:16:56 17   Defendant's Exhibit 1 contained material
10:16:58 18   misstatements or material omissions, do you
10:17:02 19   believe that that would be fraud?
10:17:06 20            MR. BURKE:  Objection.  Calls for
10:17:06 21   a legal conclusion, and you know --
10:17:10 22        A.   I don't know.
10:17:10 23            MR. BURKE:  -- that that's not a
10:17:10 24   proper question.
```

80

```
10:17:12  1        A.   I don't know.  I don't think that
10:17:14  2   there was any possibility of there being any
10:17:16  3   intentional fraud here.
10:17:16  4        Q.   What about unintentional fraud?
10:17:20  5            MR. BURKE:  Objection.  There's no
10:17:20  6   such thing, Mr. Brautigam.  Legal conclusion.
10:17:22  7        Q.   What about unintentional fraud?
10:17:24  8            MR. BURKE:  Objection.  Calls for
10:17:26  9   speculation.
10:17:26 10        A.   I don't see that.
10:17:26 11        Q.   Well, you don't see it in part
10:17:28 12   because you've never read Defendant's Exhibit
10:17:32 13   1, correct?
10:17:32 14            MR. BURKE:  You're arguing with
10:17:34 15   the witness, Mr. Brautigam.
10:17:34 16        A.   No, no.  Really, I know the men we
10:17:38 17   are dealing with, they are not fraudulent
10:17:38 18   people.
10:17:40 19        Q.   Is that true for the OHSL
10:17:40 20   directors as well?
10:17:42 21        A.   I don't know them.
10:17:44 22        Q.   Dr. Peerless, if this is a joint
10:17:48 23   document and it comes from both OHSL and
10:17:50 24   Provident, you couldn't say that there's no
```

81

10:17:52 1    fraud in there based on the men you're dealing
10:17:56 2    with, with respect to Oak Hills'
10:17:58 3    contribution --
10:17:58 4            MR. BURKE: Objection. Calls for
10:18:00 5    speculation.
10:18:00 6        A.   I don't know Oak Hills at all.
10:18:02 7        Q.   So you don't know one way or the
10:18:08 8    other if they intended to mislead the
10:18:08 9    shareholders, correct?
10:18:10 10           MR. BURKE: Objection. Calls for
10:18:10 11   speculation.
10:18:10 12       A.   I really don't know. I really
10:18:12 13   don't know.
10:18:14 14       Q.   Dr. Peerless, I've handed
10:18:18 15   Plaintiff's Exhibit 114 to you. Let me direct
10:18:28 16   your attention to page eight. There is a
10:18:42 17   section there that says, The purpose of proxy
10:18:44 18   materials. Do you see that?
10:18:44 19       A.   Um-hmm.
10:18:46 20       Q.   Do you agree with this sentence,
10:18:48 21   The purpose of any proxy materials or
10:18:50 22   prospectus is to provide shareholders with all
10:18:54 23   of the information necessary for them to make a
10:18:58 24   knowledgeable investment decision regarding

82

10:18:58 1    their shares?
10:19:00 2            MR. BURKE: Objection. You
10:18:00 3    haven't even asked the witness to identify this
10:19:02 4    document, if he's seen it or anything else.
10:19:04 5    There's no foundation for any question about
10:19:06 6    this document or this sentence. You're just
10:19:08 7    pulling out a sentence and asking him if he
10:19:10 8    agrees with it. That's an improper question.
10:19:12 9    No foundation, calls for speculation.
10:19:14 10       A.   I don't know.
10:19:18 11           MR. BURKE: Are you going to ask
10:19:18 12   him to identify what this is?
10:19:22 13           MR. BRAUTIGAM: Jim, I'm going to
10:19:22 14   ask my questions. If you have questions, you
10:19:24 15   can ask when I'm done.
10:19:26 16           MR. BURKE: All right.
10:19:28 17   BY MR. BRAUTIGAM:
10:19:28 18       Q.   Dr. Peerless, under what
10:19:30 19   circumstances would it be okay for proxy
10:19:32 20   material not to include all of the information
10:19:34 21   necessary for the shareholders to make an
10:19:36 22   investment decision?
10:19:38 23           MR. BURKE: Objection. Calls for
10:19:40 24   speculation. Calls for a legal conclusion. No

83

10:19:42 1    foundation.
10:19:42 2        A.   I don't know.
10:19:42 3        Q.   Can you think of any?
10:19:44 4            MR. BURKE: Objection, same.
10:19:46 5        A.   No.
10:19:46 6        Q.   Do you agree that the Securities &
10:19:50 7    Exchange Commission requires under Regulation C
10:19:62 8    that information in a prospectus be presented
10:19:54 9    in, quote, clear, concise and understandable,
10:19:56 10   unquote, language --
10:19:58 11           MR. BURKE: Objection. Calls
10:19:58 12   for --
10:20:00 13       Q.   -- and that it not be misleading?
10:20:02 14           MR. BURKE: Objection. Calls for
10:20:02 15   a legal conclusion and speculation.
10:20:02 16       A.   Um-hmm.
10:20:04 17       Q.   Do you agree with that?
10:20:04 18       A.   Yeah.
10:20:04 19       Q.   Do you agree that it is incumbent
10:20:06 20   upon the Board of Directors and their advisors
10:20:06 21   to impart all relevant information to
10:20:12 22   shareholders regarding a proposed merger and to
10:20:16 23   present it in such a way that it is readily
10:20:16 24   comprehensible to shareholders?

84

10:20:22 1            MR. BURKE: Objection. Calls for
10:20:22 2    speculation.
10:20:24 3        A.   Yes.
10:20:24 4        Q.   Do you believe that if an OHSL
10:20:26 5    director resigned in part in protest over the
10:20:30 6    merger, that this is information that should be
10:20:32 7    included in the proxy materials?
10:20:34 8            MR. BURKE: Objection. Calls for
10:20:36 9    speculation.
10:20:36 10       A.   I, I have no idea. I have no
10:20:38 11   idea.
10:20:38 12       Q.   Do you believe that it was
10:20:40 13   information that a reasonable OHSL shareholder
10:20:48 14   would want to consider in making a decision on
10:20:48 15   how to vote on the OHSL-Provident merger?
10:20:52 16           MR. BURKE: Objection. Asked and
10:20:54 17   answered. Calls for speculation. No
10:20:54 18   foundation.
10:20:56 19       A.   I don't know. I can't speak for
10:20:56 20   somebody else.
10:21:00 21       Q.   Dr. Peerless, as a former
10:21:04 22   Provident shareholder, if Dr. Steger, who is
10:21:04 23   chairman of the audit committee, resigned in
10:21:04 24   part in protest over the Provident-National

85

| | |
|---|---|
| 10:21:14 1 | City merger, would you want to know about that? |
| 10:21:18 2 | MR. BURKE: Objection. Calls for |
| 10:21:18 3 | speculation. Never happened. You may answer. |
| 10:21:20 4 | A. I don't -- I don't know. |
| 10:21:24 5 | Q. Don't you think that as a |
| 10:21:26 6 | shareholder, you would be entitled to know such |
| 10:21:26 7 | information? |
| 10:21:28 8 | MR. BURKE: Objection. Asked and |
| 10:21:30 9 | answered. |
| 10:21:30 10 | A. I, I really don't know. I don't |
| 10:21:32 11 | know what should be included in these things. |
| 10:21:36 12 | Q. Who knows what should be included |
| 10:21:36 13 | in these things? |
| 10:21:36 14 | MR. BURKE: Objection -- |
| 10:21:40 15 | A. The people who write them. |
| 10:21:42 16 | Q. Who wrote Defendant's Exhibit 1? |
| 10:21:44 17 | A. I don't know. |
| 10:21:48 18 | Q. Do you have any idea? |
| 10:21:50 19 | A. (Witness shook head.) |
| 10:21:50 20 | Q. No? |
| 10:21:50 21 | A. No. |
| 10:21:56 22 | Q. If Defendant's Exhibit 1 went out |
| 10:21:58 23 | in your name, do you think it would be a good |
| 10:22:00 24 | idea to know who wrote the document? |

86

| | |
|---|---|
| 10:22:04 1 | MR. BURKE: Objection. Calls for |
| 10:22:04 2 | speculation, argumentative. |
| 10:22:08 3 | A. I, I don't know. |
| 10:22:10 4 | Q. Do you believe that the strength |
| 10:22:10 5 | of the United States financial markets is in |
| 10:22:14 6 | the reporting and disclosure rules promulgated |
| 10:22:16 7 | by the SEC and implemented by public companies |
| 10:22:18 8 | and their advisors? |
| 10:22:20 9 | MR. BURKE: This is ridiculous. |
| 10:22:22 10 | You're reading an expert report and asking him |
| 10:22:24 11 | if he agrees with every sentence. Overbroad, |
| 10:22:28 12 | no foundation. Calls for speculation. |
| 10:22:34 13 | A. I don't -- I don't know. |
| 10:22:36 14 | Q. Are you familiar with the |
| 10:22:36 15 | Securities Act of 1933? |
| 10:22:38 16 | MR. BURKE: Objection. Calls for |
| 10:22:40 17 | a legal conclusion. |
| 10:22:40 18 | A. No. |
| 10:22:42 19 | Q. Do you agree that the purpose of |
| 10:22:44 20 | the 1933 Act was to provide full and fair |
| 10:22:48 21 | disclosure and to prevent fraud? |
| 10:22:50 22 | MR. BURKE: Objection. Calls for |
| 10:22:50 23 | speculation. |
| 10:22:52 24 | A. I really don't know anything about |

87

| | |
|---|---|
| 10:22:52 1 | the 1933 Act. |
| 10:22:54 2 | Q. Are you familiar with the -- |
| 10:22:56 3 | MR. BURKE: Wait a minute. If |
| 10:22:56 4 | you're going to read -- let me just ask you a |
| 10:22:58 5 | question. Are you going to read this entire |
| 10:23:00 6 | expert's report and have him agree or disagree |
| 10:23:02 7 | with every sentence? |
| 10:23:04 8 | MR. BRAUTIGAM: No. |
| 10:23:06 9 | MR. BURKE: Can you give me an |
| 10:23:06 10 | estimate of how much longer we're going to do |
| 10:23:08 11 | this, because if we're going to do this for any |
| 10:23:10 12 | extended period, I'm going to call Magistrate |
| 10:23:14 13 | Judge Hogan. |
| 10:23:16 14 | MR. BRAUTIGAM: Okay, let's call. |
| 10:23:18 15 | MR. BURKE: Okay. |
| 10:23:18 16 | (Brief recess.) |
| 10:24:56 17 | MR. BRAUTIGAM: Are you suggesting |
| 10:24:58 18 | that these questions have been asked and |
| 10:25:00 19 | answered? |
| 10:25:00 20 | MR. BURKE: I'm suggesting that |
| 10:25:02 21 | these questions are completely improper. |
| 10:25:04 22 | MR. BRAUTIGAM: Okay. Why? |
| 10:25:04 23 | MR. BURKE: Because you are taking |
| 10:25:06 24 | an expert report that was produced to us |

88

| | |
|---|---|
| 10:25:08 1 | yesterday, that this witness has no idea about, |
| 10:25:12 2 | and he's repeatedly told you in answer to the |
| 10:25:14 3 | first half a dozen questions, he really has no |
| 10:25:18 4 | opinion about whether this expert's opinions |
| 10:25:18 5 | are right or wrong. |
| 10:25:20 6 | And you're going to take every |
| 10:25:22 7 | sentence and feed it to this witness and ask |
| 10:25:24 8 | him if he agrees or disagrees with it. For you |
| 10:25:26 9 | to take your expert report and try to extract |
| 10:25:28 10 | it from a fact witness who has now told you on |
| 10:25:32 11 | about two or three occasions that he can't |
| 10:25:34 12 | answer these questions is improper. |
| 10:25:36 13 | And if you want to do this a |
| 10:25:36 14 | little bit more or there's a particular section |
| 10:25:38 15 | that you think is very important or relates to |
| 10:25:40 16 | some factual bases that this witness may be |
| 10:25:44 17 | able to testify about, that's fine. But if |
| 10:25:46 18 | you're going to take your expert's report and |
| 10:25:48 19 | ask him if he agrees or disagrees with every |
| 10:25:50 20 | sentence, we'll file a motion for protective |
| 10:25:54 21 | order. And we have the right to instruct him |
| 10:25:54 22 | not to answer to allow us to do that. |
| 10:25:58 23 | MR. BRAUTIGAM: I'm not going to |
| 10:25:58 24 | ask him about every sentence, but I have a lot |

89

10:26:00 1  more. By the way, I want to point out that
10:26:02 2  most of what you said would be applicable to
10:26:08 3  Exhibit 1, the proxy materials.
10:26:08 4      MR. BURKE: Exactly. Which was
10:26:08 5  exactly why that was improper as well.
10:26:10 6      MR. BRAUTIGAM: Jim, let me
10:26:12 7  clarify one thing. You're saying it's improper
10:26:14 8  for me to go through the proxy materials with a
10:26:18 9  Provident director? Is that your position?
10:26:18 10      MR. BURKE: No. We're talking
10:26:20 11  about the expert report, Mr. Brautigam. He
10:26:22 12  says he doesn't recall seeing this, but I let
10:26:24 13  you go. Did I say anything about the proxy
10:26:28 14  materials when you asked him?
10:26:28 15      MR. BRAUTIGAM: I disagree. You
10:26:30 16  have made tons of speaking objections. Anyway,
10:26:32 17  let's get back on the record -- back to the
10:26:36 18  deposition.
10:26:36 19  BY MR. BRAUTIGAM:
10:26:38 20      Q. Dr. Peerless, do you believe that
10:26:40 21  OHSL's shareholders were told that their Board
10:26:42 22  of Directors voted unanimously to approve the
10:26:44 23  merger and that it was in their best interest?
10:26:46 24      MR. BURKE: Objection. Asked and

90

10:26:48 1  answered. Calls for speculation.
10:26:50 2      A. I don't know. I don't know
10:26:50 3  whether they were told or not.
10:26:52 4      Q. Well, can you form an opinion
10:26:52 5  based on reading that sentence of that
10:26:54 6  paragraph, correct?
10:26:56 7      MR. BURKE: Mr. Brautigam, you
10:26:58 8  already asked him that question and he already
10:27:00 9  answered it. Calls for speculation.
10:27:02 10      MR. BRAUTIGAM: Different context.
10:27:04 11  Different context.
10:27:04 12      MR. BURKE: It's the same
10:27:06 13  sentence. You already asked him about that.
10:27:06 14  BY MR. BRAUTIGAM:
10:27:08 15      Q. Dr. Peerless, is there any
10:27:08 16  indication in the proxy materials that Mr.
10:27:14 17  Hanauer, OHSL's CEO, was opposed to the
10:27:18 18  transaction?
10:27:20 19      MR. BURKE: Objection. Calls for
10:27:20 20  speculation. Assumes facts not in evidence.
10:27:24 21      A. I don't remember.
10:27:24 22      Q. You don't remember?
10:27:26 23      A. (Witness shook head.)
10:27:26 24      MR. BURKE: Objection. That's

91

10:27:26 1  what he said.
10:27:28 2      Q. But you didn't read the proxy
10:27:28 3  materials, so what would you be remembering
10:27:32 4  from?
10:27:32 5      MR. BURKE: Objection.
10:27:32 6  Argumentative.
10:27:34 7      A. Anything.
10:27:40 8      Q. Do you agree that the fact that
10:27:44 9  Mr. Hanauer opposed the merger, that he did not
10:27:48 10  believe the merger was in the best interest of
10:27:50 11  OHSL shareholders, that he directed his
10:27:54 12  signature be removed from the first page of the
10:27:56 13  cover letter, and that he voted his shares
10:27:58 14  against the merger, to be material?
10:28:02 15      MR. BURKE: Objection.
10:28:02 16      A. I have no, no idea.
10:28:04 17      Q. What factors would you need to
10:28:06 18  consider in making a determination?
10:28:08 19      MR. BURKE: Objection.
10:28:08 20      A. I'd have to -- I'd have to talk to
10:28:10 21  Mr. Hanauer.
10:28:12 22      Q. Why would you need to talk to Mr.
10:28:14 23  Hanauer?
10:28:16 24      MR. BURKE: Objection. Calls for

92

10:28:16 1  speculation.
10:28:18 2      A. It's his -- it's his things that
10:28:18 3  we're talking about. He knows what he did and
10:28:22 4  why he did it. I don't know why he did it or
10:28:24 5  why he didn't do it.
10:28:24 6      Q. Dr. Peerless, suppose Mr. Hanauer
10:28:28 7  didn't tell the Provident Board how he felt.
10:28:30 8  Do you think he might have defrauded you?
10:28:32 9      MR. BURKE: Objection. Calls for
10:28:32 10  speculation. Assumes facts not in evidence.
10:28:36 11      A. I don't know. I don't know.
10:28:36 12      Q. If he told the Provident Board one
10:28:38 13  thing but he felt the opposite, don't you think
10:28:42 14  that that could be fraud --
10:28:44 15      MR. BURKE: Objection.
10:28:44 16      Q. -- on the Provident Board?
10:28:46 17      A. No.
10:28:46 18      MR. BURKE: Calls for speculation.
10:28:48 19  Calls for legal conclusion.
10:28:50 20      Q. Why not?
10:28:50 21      A. Because you listen to a man, what
10:28:52 22  he has to say, and then you make your own
10:28:54 23  opinions.
10:28:54 24      Q. If Mr. Hanauer did not believe

### 93

1 that the merger with Provident was in the best
2 interest of OHSL shareholders, do you believe
3 that he had an obligation to tell someone at
4 Provident?
5         MR. BURKE: Objection. Calls for
6 speculation.
7         A. I don't know.
8         MR. BURKE: Assumes facts not in
9 evidence.
10         A. Whatever he wants to do. If he
11 wanted to do it, he could have.
12         Q. If he wanted to do what?
13         A. To tell the Provident Board.
14         Q. Well, why do you believe that
15 whatever Mr. Hanauer wants to do is fine?
16         MR. BURKE: Objection.
17         A. I didn't say it was fine.
18         MR. BURKE: He's trying to
19 struggle with your questions.
20         A. I didn't say it was fine. I don't
21 know whether he -- what he did was fine.
22         Q. Okay. How would you evaluate Mr.
23 Hanauer's actions?
24         MR. BURKE: Objection. Calls for

### 94

1 speculation.
2         A. Indecisive.
3         Q. And why do you believe that Mr.
4 Hanauer was indecisive?
5         MR. BURKE: Objection. Calls for
6 speculation.
7         A. Because his actions aren't, aren't
8 plausible, let me put it that way.
9         Q. Aren't possible?
10         A. Plausible.
11         Q. Plausible. What do you mean by
12 plausible as you used it in the previous
13 answer?
14         MR. BURKE: Objection. Calls for
15 speculation. No firsthand knowledge. No
16 foundation.
17         A. I really don't know Mr. Hanauer.
18 I don't know why he did what he did. Obviously
19 if he were against it, he should have voted
20 against it.
21         Q. And if he were against it, the
22 shareholders should have been informed that he
23 was against it, correct?
24         MR. BURKE: Objection. Instruct

### 95

1 the witness not to answer.
2         A. I really don't know.
3         MR. BURKE: You're beating a dead
4 horse.
5         MR. BRAUTIGAM: What's the basis
6 for the instruction?
7         MR. BURKE: Because you've asked
8 it fifteen times, Mr. Brautigam. And if you
9 recall, Judge Beckwith instructed you in your
10 phone call with Ms. Rowe, if Mr. Brautigam in
11 fact is asking the same question over and over
12 and over again, it is improper. And it is
13 improper, because that's what you're doing.
14         MR. BRAUTIGAM: Jim, I'm not doing
15 that.
16         MR. BURKE: Yes, you are.
17         MR. BRAUTIGAM: I didn't ask the
18 question 15 times. We don't need speaking
19 objections and we don't need you to raise your
20 voice with me.
21         MR. BURKE: I'm not raising my
22 voice with you. You'll know when I do.
23         MR. BRAUTIGAM: Are you
24 threatening me, Mr. Burke?

### 96

1         MR. BURKE: Grow up, Mr.
2 Brautigam, for once.
3 BY MR. BRAUTIGAM:
4         Q. Dr. Peerless, OHSL was a regional
5 savings and loan with six branches in western
6 Cincinnati, correct?
7         MR. BURKE: Okay. I instruct the
8 witness not to answer.
9         A. I don't know.
10         MR. BURKE: Okay.
11         MR. BRAUTIGAM: You instructed the
12 witness not to answer?
13         MR. BURKE: Okay. If you're going
14 to continue to go through this --
15         MR. BRAUTIGAM: I am. Not every
16 sentence.
17         MR. BURKE: Go ahead.
18         MR. BRAUTIGAM: Okay.
19         MR. BURKE: Because for you to
20 take, as I told you before, just so we're
21 clear, an expert report that this witness has
22 never seen and for you to try to ask him if he
23 agrees or disagrees with every line of this,
24 particularly regarding subjects dealing with

97

```
10:31:44  1   Oak Hills only, which he has repeatedly told
10:31:46  2   you he has no knowledge of on several
10:31:48  3   occasions, I will seek a protective order from
10:31:52  4   the Court and instruct you not to answer.
10:31:52  5   BY MR. BRAUTIGAM:
10:31:52  6        Q.  Dr. Peerless, it's not necessary
10:31:56  7   for you to look at the exhibit anymore.
10:32:00  8        MR. BURKE:  Are you reading from
10:32:00  9   it, Mr. Brautigam?
10:32:02 10        MR. BRAUTIGAM:  No, I'm not.
10:32:02 11        MR. BURKE:  Why is it in front of
10:32:04 12   you?
10:32:04 13        MR. BRAUTIGAM:  I'm being inspired
10:32:06 14   from it, I'm not reading it.
10:32:08 15        MR. BURKE:  If you're asking
10:32:08 16   questions from this report, the simple game of
10:32:10 17   taking it away from the witness not only is
10:32:12 18   improper, but that's misleading and doesn't
10:32:18 19   change the nature of my instruction.
10:32:18 20        MR. BRAUTIGAM:  Jim, we don't need
10:32:18 21   speaking objections.
10:32:20 22        MR. BURKE:  I'm just stating it
10:32:20 23   for the record because we're going to instruct
10:32:22 24   the witness not to answer.  That's not a
```

98

```
10:32:24  1   speaking objection, there's not a question
10:32:26  2   pending.
10:32:28  3        MR. BRAUTIGAM:  Then you shouldn't
10:32:28  4   be speaking, and let me ask questions.
10:32:28  5   BY MR. BRAUTIGAM:
10:32:32  6        Q.  Do you believe that with respect
10:32:32  7   to the OHSL-Provident merger, the role of the
10:32:36  8   CEO as a source of information was extremely
10:32:38  9   important?
10:32:38 10        MR. BURKE:  Instruct the witness
10:32:40 11   not to answer on the grounds previously stated.
10:32:42 12        A.  I don't know.
10:32:42 13        MR. BURKE:  If I instruct you not
10:32:44 14   to answer --
10:32:44 15        A.  Okay.
10:32:44 16        MR. BURKE:  -- you don't have to
10:32:46 17   answer anymore.
10:32:46 18        A.  Okay.
10:32:50 19        Q.  Do you agree with what I'll
10:32:52 20   represent to you is Mr. Herron's testimony:
10:32:56 21   Mr. Herron was the resigning director at OHSL,
10:33:00 22   that Mr. Herron believed Mr. Hanauer's
10:33:00 23   opposition to the transaction would have,
10:33:04 24   quote, significantly altered the total mix,
```

99

```
10:33:08  1   unquote, of information available to
10:33:10  2   shareholders?
10:33:12  3        MR. BURKE:  Instruct the witness
10:33:12  4   not to answer.  We're going to seek a
10:33:14  5   protective order on this line of questioning.
10:33:16  6        MR. BRAUTIGAM:  Okay.  Well, then
10:33:16  7   we're done.
10:33:18  8        MR. BURKE:  Okay.  Thank you.
          9
         10
         11
         12         SIDNEY PEERLESS, M.D.
         13
         14             - - -
         15   (Deposition concluded at 10:33 a.m.)
         16             - - -
         17
         18
         19
         20
         21
         22
         23
         24
```

100

```
 1              C E R T I F I C A T E
     STATE  OF   OHIO:
 2                    SS:
     COUNTY OF HAMILTON:
 3
 4      I, Lee Ann Williams, a duly qualified and
 5   commissioned notary public in and for the State
 6   of Ohio, do hereby certify that prior to the
 7   giving of his deposition, the within named
 8   SIDNEY PEERLESS, M.D. was by me first duly
 9   sworn to testify the truth, the whole truth and
10   nothing but the truth; that the foregoing pages
11   constitute a true and correct transcript of
12   testimony given at said time and place by said
13   deponent; that said deposition was taken by me
14   in stenotypy and transcribed under my
15   supervision; that I am neither a relative of
16   nor attorney for any of the parties to this
17   litigation, nor relative of nor employee of any
18   of their counsel, and have no interest
19   whatsoever in the result of this litigation.
20      IN WITNESS WHEREOF, I hereunto set my hand
21   and official seal of office at Cincinnati, Ohio
22   this __ day of _____, 2004.
23   MY COMMISSION EXPIRES: _____
     AUGUST 26, 2009    LEE ANN WILLIAMS, RPR/CRR
24                     NOTARY PUBLIC-STATE OF OHIO
```