# 04-2403

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

AIG ASIAN INFRASTRUCTURE FUND, L.P.,
Plaintiff-Appellant,

v.

CHASE MANHATTAN ASIA LIMITED,
J.P. MORGAN PARTNERS (BHCA), AND JOHN D. LEWIS,
Defendants-Appellees.

---

On Appeal From the United States District Court
for the Southern District of New York

---

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
AMICUS CURIAE

---

GIOVANNI P. PREZIOSO
General Counsel
JACOB H. STILLMAN
Solicitor
HOPE HALL AUGUSTINI
Senior Litigation Counsel
DOMINICK V. FREDA
Attorney

Of Counsel
  MEYER EISENBERG
  Deputy General Counsel

Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549-0606
(202) 942-0912

# TABLE OF CONTENTS

INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION . . . . . . 1

ISSUE PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATUTORY SCHEME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A.    Under Supreme Court and Court of Appeals Decisions,
      Language like that in Section 804(b) Is Viewed as
      Expressing Congress' Intent that the New Limitations
      Period not only Applies to Pre-enactment Events, but
      also Revives Barred Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

B.    The District Court Misconstrued Landgraf and Erred
      in Concluding that To Be Retroactive, the Statute Had
      To Expressly Refer to Retroactivity or Revival . . . . . . . . . . . . . . . . . 17

C.    Applying Section 804(b) To Revive Barred Claims
      Is Consistent With the Legislative History . . . . . . . . . . . . . . . . . . . . . 20

D.    Section 804(c) of Sarbanes-Oxley Is Irrelevant to
      the Question Whether Section 804(b) Revives
      Barred Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

CASES

Alabama Dry Dock & Shipbuilding Corp. v. Sowell,
    933 F.2d 1561 (11th Cir. 1991), overruled on other grounds by
    Bath Iron Works Corp. v. Dir., Office of Workers' Comp. Programs,
    506 U.S. 153 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Bateman Eichler, Hill Richards, Inc. v. Berner,
    472 U.S. 299 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Blue Chip Stamps v. Manor Drug Stores,
    421 U.S. 723 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chase Sec. Corp. v. Donaldson,
    325 U.S. 304 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cheneault v. United States Postal Service,
    37 F.3d 535 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Davis v. Valley Distributing Co.,
    522 F.2d 827 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Domond v. INS,
    244 F.3d 81 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

In re Enter. Mortgage Acceptance Co. LLC Sec. Litig.,
    295 F. Supp. 2d 307(S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 20, 25

FDIC v. Belli,
    981 F.2d 838 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Glaser v. Enzo Biochem., Inc.,
    303 F. Supp. 2d 724 (E. D. Va. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re Heritage Bond Litig.,
    289 F. Supp. 2d 1132 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

INS v. St. Cyr,
    533 U.S. 289 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

International Union of Electrical, Radio &
Machine Workers, AFL-CIO v. Robbins & Myers, Inc.,
    429 U.S. 229 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, passim

J.I. Case Co. v. Borak,
    377 U.S. 426 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Kansas Public Employees Retirement System
v. Reimer & Koger Associates, Inc.,
    61 F.3d 608 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,
    501 U.S. 350 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 22

Landgraf v. USI Film Products,
    511 U.S. 244 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 13, passim

Lindh v. Murphy,
    521 U.S. 320 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Lockheed Corp. v. Spink,
    517 U.S. 882 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Martin v. Hadix,
    527 U.S. 343 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Million v. Frank,
    47 F.3d 385 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Morales v. Trans World Airlines, Inc.,
    504 U.S. 374 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Osmundsen v. Todd Pacific Shipyard,
        755 F.2d 730 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Republic of Austria v. Altmann,
        124 S. Ct. 2240 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Resolution Trust Corp. v. Artley,
        28 F.3d 1099 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Resolution Trust Corp. v. Seale,
        13 F.3d 850 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rivers v. Roadway Express, Inc.,
        511 U.S. 298 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Touche Ross & Co. v. Redington,
        442 U.S. 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28


STATUTES AND REGULATIONS

Sarbanes-Oxley Act, Pub. L. No. 107-204, 116 Stat. 745
        Section 308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        Section 803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        Section 804 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, passim

28 U.S.C. 1658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 16, passim

Securities Exchange Act of 1934

        Section 10(b), 15 U.S.C. 78j(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5
        Rule 10b-5, 17 C.F.R. 240.10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

<u>MISCELLANEOUS</u>

148 Cong. Rec.  S1785-1792 (Mar. 12, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

148 Cong. Rec. S6524-02 (July 10, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

148 Cong. Rec. S7418, Legislative History of Title VIII of H.R. 2673:
The Sarbanes-Oxley Act of 2002 (July 26, 2002) . . . . . . . . . . . . . . . . . . . . . 23, 28

Federal News Service, "Conference Report on Corporate Responsibility
Legislation," (July 24, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

House Consideration and Passage of H.R. 5118, the Corporate Fraud
Accountability Act of 2002 (July 16, 2002) H4683-4694 . . . . . . . . . . . . . . . 24, 25

<u>Senate Panel Votes to Ease Rules on Suits in Stock Fraud</u>,
          New York Times C5 (April 26, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Statement of Mr. Leahy to the Senate Committee on the Judiciary,
Executive Business Meeting (Apr. 25, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

No. 04-2403

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

AIG ASIAN INFRASTRUCTURE FUND, L.P.,
Plaintiff-Appellant,

v.

CHASE MANHATTAN ASIA LIMITED,
J.P. MORGAN PARTNERS (BHCA), AND JOHN D. LEWIS,
Defendants-Appellees.

On Appeal From the United States District Court
for the Southern District of New York

BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION,
<u>AMICUS CURIAE</u>

## <u>INTEREST OF THE SECURITIES AND EXCHANGE COMMISSION</u>

Section 804 of the Sarbanes-Oxley Act of 1992, Pub. L. No. 107-204,
lengthened the statute of limitations for the filing by investors of fraud actions
under the federal securities laws.  The Securities and Exchange Commission, the
agency principally responsible for the administration and enforcement of the
federal securities laws, submits this brief as <u>amicus</u> <u>curiae</u> urging this Court to

hold that the amended statute of limitations permits investors to bring claims that are timely under the new limitations provision, regardless of whether those investors' claims had become barred prior to the enactment of the amendment under the former limitations period.

Although Section 804 is applicable to private actions only, and not to Commission enforcement actions, the Commission has an interest in assuring that the ability of investors to bring private actions is not improperly restricted. As the Supreme Court has repeatedly recognized, such actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to Commission action.'" Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310 (1985), quoting J.I. Case Co. v. Borak, 377 U.S. 426 (1964); see Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 730 (1975). Furthermore, the question whether Section 804 restores barred claims is being actively litigated in many pending lawsuits, including ones involving the very same frauds that led Congress to lengthen the statute of limitations. Although it is not possible at this stage to quantify the precise amount of money at stake for investors in these cases, it is evident that investors' claims are substantial. In light of Congress's concern about the victims of the egregious frauds that led to the enactment of Section 804, the Commission has an interest in assuring that investors are not precluded from

asserting their claims by an erroneous interpretation of that section.  The

Commission also has a more general interest in ensuring that courts do not adopt

overly restrictive interpretations of Sarbanes-Oxley's provisions and thereby

undermine Congress' objectives in enacting this legislation.

## ISSUE PRESENTED

Section 804 of Sarbanes-Oxley amended 28 U.S.C. 1658 to lengthen the

statute of limitations in private securities fraud actions, including actions brought

pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.

78j(b), and Rule 10b-5 thereunder, 17 C.F.R. 240.10b-5.  Section 804(b) states

that the new limitations period is applicable to "all proceedings * * * commenced

on or after the date of enactment of this Act."  Sarbanes-Oxley was enacted on

July 30, 2002, and five months later the plaintiff in this case filed its action in

December 2002.  The issue in this appeal is whether the lengthened statute of

limitations in Section 804 applies to an action brought after the enactment of

Sarbanes-Oxley for claims that had already lapsed under the previous limitations

period.

## STATUTORY SCHEME

Prior to the enactment of Sarbanes-Oxley, private securities fraud actions

had to be commenced within one year after discovery of the facts constituting the

violation and within three years after the violation occurred.  Lampf, Pleva,

Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991).  Section

804(a) of Sarbanes-Oxley added a provision to 28 U.S.C. 1658, changing these

periods to two years and five years respectively. 1/  The remaining two subparts of

Section 804 (subparts (b) and (c)) provide:

> (b) EFFECTIVE DATE. – The limitations period provided by section
> 1658(b) of title 28, United States Code, as added by this section, shall apply
> to all proceedings addressed by this section that are commenced on or after
> the date of enactment of this Act.

> (c) NO CREATION OF ACTIONS. – Nothing in this section shall create a
> new, private right of action.

---

1/    The new provision in 28 U.S.C. 1658 provides:

> * * * [A] private right of action that involves a claim of fraud, deceit,
> manipulation, or contrivance in contravention of a regulatory
> requirement concerning the securities laws, as defined in section
> 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C.
> 78c(a)(47)), may be brought not later than the earlier of –
>> (1) 2 years after the discovery of the facts constituting the
>> violation; or
>> (2) 5 years after such violation.

Although this provision does not expressly identify particular antifraud
provisions in the securities laws, it clearly governs private actions under
Section 10(b).

## STATEMENT OF THE CASE

The plaintiff commenced this action in December 2002, alleging violations of Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, in connection with a purchase of securities by the plaintiff in January 1998. The defendants moved to dismiss the case, arguing that the plaintiff's cause of action became barred on January 16, 2001 under the then-prevailing three-year statute of limitations for claims under Section 10(b). Defendants argued that plaintiff's claim was not revived by the new limitations period in Section 804 of Sarbanes-Oxley because the claim had already been barred before the new limitations period was enacted. It is undisputed that if the pre-Sarbanes-Oxley limitation period applies, the action is barred, and if Section 804 applies, the action is timely.

Although Section 804 states that it applies to all proceedings "commenced on or after the date of enactment," the district court dismissed the action as barred under the shorter pre-Sarbanes-Oxley limitations period. The court said that in Section 804, Congress did not "explicitly state that it will be applied retroactively"; relying on Landgraf v. USI Film Products, 511 U.S. 244 (1994), the court believed that relevant principles of retroactivity law required such an explicit statement. (Op. at 9-10). In addition, because Congress provided in Section 804(c) that Section 804 did not "create a new, private right of action," the district

-5-

court concluded that Section 804 "is susceptible to an interpretation that it explicitly *precludes* retroactive application of the new limitations periods," since such application would, in its view, create a new right of action by reviving barred claims. Id.

The absence of any express retroactivity provision, the court stated, required it to determine whether to apply the judicial presumption against retroactivity. The court concluded: "Because retroactive application of the new Sarbanes-Oxley limitations period would renew securities fraud claims that had expired, and therefore would increase defendants' liability for conduct based on those claims, the Court holds that such retroactive application would have an 'impermissible retroactive effect.'" Op. at 11, quoting Landgraf. Finally, the court found that nothing in the legislative history rebutted the traditional presumption against retroactivity. Plaintiff appeals from the dismissal.

## SUMMARY OF ARGUMENT

The Commission disagrees with the district court's decision that Section 804 does not revive barred claims. The Supreme Court and courts of appeals have held that language like that contained in Section 804(b), which provides that the new limitations period applies to all cases filed after enactment, revives barred claims. The district court misconstrued Landgraf, which does not require

Congress to expressly include terms like "retroactive" or "revival" in order to express retroactive intent. Because Congress expressly stated in Section 804(b) that the new limitations period would apply to "all proceedings * * * commenced on or after the date of enactment," the district court should have applied the new limitations period in accordance with the natural meaning of the statutory language, without relying on any judicial presumption against retroactivity.

In view of the case law addressing statutory language like that in Section 804(b), it is unnecessary to look at the Sarbanes-Oxley legislative history. In any event, applying Section 804(b) to revive barred claims is consistent with the legislative history. Congress was concerned that the short pre-Sarbanes limitations period was preventing numerous existing shareholder victims of recent egregious frauds involving large, well-known corporations (like Enron, WorldCom and Global Crossing) from filing claims arising from the complicated and long-standing frauds then being uncovered. Section 804 was believed necessary to give these victims of longstanding frauds, just then being uncovered, the ability to bring damage actions that were already barred under existing law. The compelling circumstances that led to the enactment of Sarbanes-Oxley, and in particular Section 804, make it appropriate to allow revival of barred claims –

claims that, in many cases, involved fraud that had been concealed beyond the then-existing limitations period.

Finally, the district court misconstrued Section 804(c) to preclude revival of barred claims. Section 804(c) was included to clarify that by specifying application of the new limitations period to claims based on fraud under the securities laws, Congress did not thereby intend to create any fraud causes of action not already enumerated under the securities laws or not otherwise already implied by the courts.

## <u>ARGUMENT</u>

A.  <u>Under Supreme Court and Court of Appeals Decisions, Language like that in Section 804(b) Is Viewed as Expressing Congress' Intent that the New Limitations Period not only Applies to Pre-enactment Events, but also Revives Barred Claims.</u>

Section 804(b) states that the new limitations period applies to "all proceedings * * * commenced on or after the date of enactment * * * ." The Supreme Court and two courts of appeals have held that when Congress uses language like that found in Section 804(b), the new limitations period not only applies retroactively to claims arising pre-enactment, but also revives barred claims. These decisions involved statutes that did not use terms like "retroactive"

-8-

or "revived" and yet, because of the language like that in Section 804(b), were held to apply to revive barred claims.

In International Union of Electrical, Radio & Machine Workers, AFL-CIO v. Robbins & Myers, Inc., 429 U.S. 229 (1976), the Supreme Court concluded that where Congress stated that the new limitations period applied to "charges pending with the [EEOC] on the date of enactment of this Act and all charges filed thereafter," it intended the enlarged limitations period to apply "to charges, whether or not untimely" upon enactment. Id. at 242. The Court treated this statutory language as providing for revival of barred claims even though the statute did not expressly state that such barred claims would be revived. 2/ The question addressed in Robbins & Myers was whether the plaintiff's complaint, filed before enactment and untimely when filed, was nonetheless "pending" at the

---

2/    The Supreme Court has long held that Congress has the power to extend a previously applicable limitations period that has already commenced running, and to enact a new limitations rule that revives claims already barred. Chase Sec. Corp. v. Donaldson, 325 U.S. 304, 311-12 (1945). As the Court observed, statutes of limitations "come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right * * * of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control." Id. at 314 (footnote omitted).

time of enactment, and subject to the new expanded limitations period, simply

because the EEOC had not yet dismissed the action as untimely when the new

limitations period went into effect.  The Court observed that because the statute

applied to all cases filed <u>after</u> enactment, had the plaintiff never filed a complaint

before enactment (and thus had been clearly barred under the old limitations

period), she nonetheless would have been entitled to file an action after enactment

to avail herself of the new limitations period.  Because the statute allowed the

filing of a never-before-filed action to revive a barred claim, the Court saw scant

sense in interpreting "pending" to mean only those claims that were timely when

filed.  Rather, the Court interpreted the statute according to its literal meaning,

without regard to whether barred claims would be revived.  <u>Id.</u> at 242-43.

The Ninth and Eleventh Circuits have also held that statutory language like

that in Section 804(b) revived barred claims even though the statute of limitations

being interpreted had no express language about revival.  One year before the

Supreme Court's decision in <u>Robbins & Myers</u>, the Ninth Circuit addressed the

very same statute and reached the same conclusion in <u>Davis v. Valley Distributing</u>

<u>Co.</u>, 522 F.2d 827, 831 (9th Cir. 1975) (finding that the statute affirmatively

indicated Congress's intent to encompass discriminatory conduct that occurred

before the Act was passed, and that appellant's claim filed before enactment, albeit

untimely, "fell within the literal words of the statute."). In <u>Alabama Dry Dock & Shipbuilding Corp. v. Sowell</u>, 933 F.2d 1561 (11th Cir. 1991), <u>overruled on other grounds by Bath Iron Works Corp. v. Dir., Office of Workers' Comp. Programs</u>, 506 U.S. 153 (1993), the Eleventh Circuit held that amendments contained in the Longshore and Harbor Workers' Compensation Act that Congress specified "shall apply both with respect to claims filed after [enactment] and to claims pending on [enactment]," applied to claims that arose and were already barred before enactment. The statute did not refer expressly to revival of barred claims. The court acknowledged that its interpretation "revives a potentially large number of claims that would otherwise have been time-barred decades ago." <u>Id.</u> at 1565. Nonetheless, the court believed the plain language of the statute compelled this result. <u>3</u>/

The appellant in <u>Alabama Dry Dock</u> argued that because Congress could not have intended to resurrect claims for which the statute of limitations had already expired, at most the statute applied retroactively only as to claims that were still timely under the old limitations period when the new period was enacted. The

---

<u>3</u>/    This provision in the Act had been similarly interpreted by the Ninth Circuit in <u>Osmundsen v. Todd Pacific Shipyard</u>, 755 F.2d 730, 732-33 (9th Cir. 1985), relying on <u>Robbins & Myers</u>. The Eleventh Circuit in <u>Alabama Dry Dock</u>, although not citing to <u>Robbins & Myers</u>, cited to <u>Osmundsen</u>.

court rejected this argument, finding it was at odds with the plain terms of the

amendment and without any support in the legislative history.   The court also

observed that appellant's construction would

> force upon Congress' words a rather strained construction. The
> provision that "the amendments made by this Act shall be effective on
> the date of enactment of this Act and shall apply . . . to claims *filed*
> after such date" (emphasis added) is obviously not necessary to apply
> the new law to claims *arising* after the effective date.  The only
> sensible reading of the provision, then, is that Congress was
> addressing claims that arose *before* the effective date of the statute
> but were filed *after* the effective date. * * * Because [appellant's]
> interpretation posits that Congress could not have meant to resurrect
> claims for which the statute of limitations had expired before the
> effective date, Congress could not have been addressing any claims
> that arose * * * one year before the effective date of the statute,
> because such claims would have been time-barred before Congress
> ever enacted the amendments.  In other words, [Appellant] argues,
> when Congress said that the 1984 amendments "shall apply...with
> respect to claims filed after" the effective date, Congress really meant
> to say that the amendments would apply to claims arising no more
> than one year before [enactment], and filed after [enactment].  To
> accept [appellant's] argument, we would have to believe that to
> express this rather precise concept, Congress chose the statutory
> command that the amendments "shall apply . . . with respect to claims
> filed after such date."  We do not.  Instead we conclude that Congress
> intended the natural implication of the language Congress chose: the
> 1984 amendments apply to claims filed after [enactment], whenever
> they arose.

Id. at 1564 (emphasis in original).

Opponents of revival make an argument similar to the argument rejected in

Alabama Dry Dock.  They argue that even though Congress applied Section 804 to

-12-

all proceedings filed after enactment, Congress could not have really meant <u>all</u>

such proceedings – just those involving claims that were not already barred when

Section 804 was enacted – thereby implying an exception to the term "all

proceedings" in Section 804(b).  Like the Eleventh Circuit, we disagree.  Section

804 applies to claims retroactively, regardless of whether the claims arose and

expired before enactment.  So long as the action was "commenced on or after the

date of enactment," the new limitations period applies.

The Supreme Court's interpretation of the statutory language in <u>Robbins &</u>

<u>Myers</u> has been confirmed in more recent cases outside of the statute of limitations

context.   In <u>Landgraf v. USI Film Products</u>, 511 U.S. 244 (1994), the Supreme

Court set forth the appropriate analysis for determining when to apply a new

statute to events that occurred pre-enactment:

> When a case implicates a federal statute enacted after the events in
> suit, the court's first task is to determine whether Congress has
> expressly prescribed the statute's proper reach.  If Congress has done
> so, of course, there is no need to resort to judicial default rules.
> When, however, the statute contains no such express command, the
> court must determine whether the new statute would have retroactive
> effect, <u>i.e.</u>, whether it would impair rights a party possessed when he
> acted, increase a party's liability for past conduct, or impose new
> duties with respect to transactions already completed.  If the statute
> would operate retroactively, our traditional presumption teaches that
> it does not govern absent clear congressional intent favoring such a
> result.

511 U.S. at 280.  Under the first step of Landgraf's analysis, therefore, the

question is whether Congress has expressly prescribed the statute's temporal reach

– i.e., has Congress expressly indicated in the statute that it is to be applied to pre-

enactment conduct?  When the "temporal effect of a statute is manifest on its face,

'there is no need to resort to judicial default rules,' and inquiry is at an end."

Lockheed Corp. v. Spink, 517 U.S. 882, 896 (1996) (quoting Landgraf).  It is only

when Congress is silent about the temporal reach that the courts apply the judicial

presumption against retroactivity.  In other words, any judicial presumption

against retroactive application does not come into play until after a court has

determined whether Congress has expressly set forth the statute's application to

pre-enactment events.  That determination is made without reference to any

presumption. 4/

_____

4/    The district court did not properly apply these principles.  Instead of
      framing the question as whether section 804 applies retroactively by virtue
      of Congress having expressly prescribed the statute's temporal reach, the
      district court framed the question as "whether the Sarbanes-Oxley
      limitations periods should apply retroactively."  (Emphasis added).  It thus
      appears that the district court implicitly applied the judicial presumption
      against retroactivity to the entire Landgraf analysis, instead of reserving the
      "judicial default rule" to be considered only after a finding that Congress
      failed to specify the statute's temporal reach.  See discussion, infra at
      argument B.

In Landgraf itself, and other Supreme Court cases that followed, the Court

has determined that Congress expresses its "unambiguous" retroactive intention

when it provides, in language comparable to that in Section 804(b), that new or

amended statutes apply to proceedings commenced after enactment.  Landgraf,

511 U.S. at 259-60 (stating that had Congress wished retroactive application "it

surely would have used language comparable to * * * [the provision] 'shall apply

to all proceedings pending on or commenced after the date of enactment.'"); INS

v. St. Cyr, 533 U.S. 289, 318 and n.43 (2001) (providing examples of Congress'

"unambiguous" intention to apply specific provisions retroactively, including such

language as "shall apply to actions occurring on or after the date" of enactment.");

Martin v. Hadix, 527 U.S. 343, 354 (1999) (stating that "shall apply to all

proceedings pending on or commenced after the date of enactment," referred to in

Landgraf, "unambiguously addresses the temporal reach of the statute."); Lindh v.

Murphy, 521 U.S. 320, 329, n.4 (1997) (stating that language quoted above in

Landgraf "might possibly have qualified as a clear statement for retroactive

effect."); Rivers v. Roadway Express, Inc., 511 U.S. 298, 307-08 (1994)

(observing that the statute in question omitted a provision in the bill that the

-15-

amendment "shall apply to all proceedings pending on or commenced after" a

fixed date and describing bill as containing "express retroactivity provisions."). 5/

The statutory language in these cases and in Section 804(b) is to be

contrasted with what Congress did in the very section of Title 28 that was

amended by Section 804.  As the historical and statutory notes to 28 U.S.C. 1658

set forth, when Congress enacted Section 1658 in 1990 to provide a default statute

of limitations for actions arising under federal law, Congress provided (emphasis

added):

> The amendments made by this section [enacting this section] shall apply
> with respect to <u>causes of action accruing</u> on or after the date of the
> enactment of this Act [Dec. 1, 1990].

If Congress in Section 804 had not intended to make the new limitations period

retroactive, it could have similarly made the new period apply to <u>causes of action</u>

---

5/     Many of the statutes in the retroactivity cases, including <u>Robbins & Myers</u>,
were applicable not only to cases commenced after enactment, but also to
cases that were pending on enactment, whereas Section 804 does not state
that it applies to pending cases.  Congress's failure to include "pending" in
Section 804 does not affect our conclusion on the application to this case of
<u>Robbins & Myers</u> and other decisions cited above, none of which turned on
the presence or absence of the word "pending."  Even in this case, the
district court's rejection of revival did not depend on the absence of
"pending," but rather on the absence of any language about revival or
retroactivity.  Moreover, the Supreme Court in <u>INS v. St. Cyr</u>, 533 U.S. at
318 and n.43, cited statutes that apply simply to cases commenced after
enactment as examples of Congress's unambiguous retroactive intent.

-16-

accruing post-enactment rather than to proceedings commenced on or after

enactment.

The foregoing cases and the statutory history of Section 1658 support our

view that so long as a proceeding is "commenced on or after" Sarbanes-Oxley was

enacted, the plaintiff is entitled to the benefit of the expanded limitations period

even if the conduct complained of predated the enactment of Sarbanes-Oxley and

even if the claim was already time-barred under the old statute of limitations at the

time of enactment.  This interpretation comports with the natural meaning of the

words chosen by Congress in Section 804(b), which states, with no exception for

claims that were barred at the time of enactment, that the new limitations period

applies to "all proceedings * * * commenced on or after the date of

enactment * * * ."

B.    The District Court Misconstrued Landgraf and Erred in Concluding that To
      Be Retroactive, the Statute Had To Expressly Refer to Retroactivity or
      Revival.

The district court did not address the Robbins & Myers, Davis, or Alabama

Dry Dock decisions.  The district court's erroneous ruling in this case resulted

from the court's misreading of Landgraf, which the court viewed as precluding

revival unless the statute uses words like "retroactive" or "revival."  Op. at 9.

Landgraf does not require this explicit statement about retroactivity but, rather,

requires Congress to set forth the statute's <u>temporal reach</u>, and "if Congress has done so, of course, there is no need to resort to judicial default rules."  511 U.S. at 280.  Instead of looking to the applicable case law that treats provisions like Section 804(b) as explicit retroactive statements that revive barred claims, the district court erroneously treated Section 804 as if Congress was <u>silent</u> as to retroactivity, and turned to the default analysis in <u>Landgraf</u> to determine whether to apply the judicial presumption against retroactivity.  The district court in essence reversed the <u>Landgraf</u> analysis by using a <u>judicial</u> presumption against retroactivity to overrule an express <u>legislative</u> statement to the contrary.

Because of its mistaken view that Section 804 is silent as to retroactivity, the district court relied on courts of appeals' decisions addressing the retroactive effect of statutes in which, unlike Section 804(b), Congress failed to specify the temporal reach of a new statute of limitations.  All of those appellate cases on which the court relied involved statutory provisions in which Congress remained <u>silent</u> on temporal reach.  <u>See</u>, <u>e.g.</u>, <u>Cheneault v. United States Postal Service</u>, 37 F.3d 535, 537 (9th Cir. 1994); <u>Million v. Frank</u>, 47 F.3d 385, 390 (10th Cir. 1995); 6/  <u>Resolution Trust Corp. v. Artley</u>, 28 F.3d 1099, 1102 n.6 (11th Cir. 1994);

---

6/    Both <u>Cheneault</u> and <u>Million</u> interpreted Section 114 of the Civil Rights Act of 1991, the same Act that the Supreme Court in <u>Landgraf</u> held did not expressly indicate a temporal reach and provided simply that "the

FDIC v. Belli, 981 F.2d 838 (5th Cir. 1993); Resolution Trust Corp. v. Seale, 13

F.3d 850, 853 (5th Cir. 1994). 7/  The district court's reliance on Kansas Public

Employees Retirement System v. Reimer & Koger Associates, Inc., 61 F.3d 608

(8th Cir. 1995) was particularly inapt.  The Eighth Circuit in that case interpreted

Kansas law and applied the principle set forth by the Kansas Supreme Court that

no revival is permitted unless the state statute says so expressly.  That case has no

application to federal law.

The district court also relied on other district court decisions that have

refused to apply Section 804 to revive barred claims.  These decisions likewise

_____

amendments made by this Act shall take effect upon enactment.  See
Landgraf 511 U.S. at 255-57 (holding that "[a] statement that a statute will
become effective on a certain date does not even arguably suggest that it has
any application to conduct that occurred at an earlier date.")  Unlike Section
804 of Sarbanes, in which Congress expressly indicated the temporal reach
of the amendment, Section 114 of the Civil Rights Act extended the time
limit for federal employees to file employment discrimination actions after
being notified of their right to sue by simply substituting 90 days for the
pre-enactment 30-day period.  Consistent with Landgraf, therefore,
Cheneault and Million properly held that Congress had failed to articulate
any intent that Section 114 be applied to pre-enactment conduct.

7/    Artley, Belli, and Seale interpreted 12 U.S.C. § 1821(d)(14), which specifies
that the statute of limitations on a contractual claim held by the FDIC runs
from the later of (1) the date on which the FDIC is appointed conservator or
receiver, or (2) "the date on which the cause of action accrues."  Again,
these courts were not interpreting any language similar to Section 804(b)
that expressed legislative intention on how to apply the limitations period to
actions accruing pre-enactment.

incorrectly held that retroactive application requires an explicit statement from

Congress about retroactivity or revival, and rely on the appellate case law

described above that is not applicable here.  See In re Enter. Mortgage Acceptance

Co. LLC Sec. Litig., 295 F. Supp. 2d 307, 313 (S.D.N.Y. 2003) (finding "no clear

language * * * stating that [Section 804] applies retroactively or that it operates to

revive time-barred claims); Glaser v. Enzo Biochem., Inc., 303 F. Supp. 2d 724,

734 (E.D. Va. 2003) ("Congress did not unambiguously provide that the two-year

limitations period would apply retroactively."); In re Heritage Bond Litig., 289 F.

Supp. 2d 1132, 1148 (C.D. Cal. 2003) ("The Act does not address whether the

revised statute of limitations should apply to claims barred by the existing statute

of limitations at the time of enactment.").

C.    Applying Section 804(b) To Revive Barred Claims Is Consistent With the
       Legislative History.

       In view of the case law addressing statutory language like that in Section

804(b), it is unnecessary to look at the legislative history.  See Morales v. Trans

World Airlines, Inc., 504 U.S. 374, 385, n.2 (1992) ("[The] legislative history

need not confirm the details of changes in the law effected by statutory language

before we will interpret that language according to its natural meaning.").  In any

-20-

event, applying Section 804 to revive barred claims is consistent with the

legislative history.

Congress enacted Sarbanes-Oxley to restore investor confidence in the wake

of massive and long-standing frauds and to adopt remedies to restore money to

defrauded investors.  See, e.g., Section 308, the Fair Funds For Investors

provision, and Section 803, which makes debts incurred by securities fraud

nondischargeable in bankruptcy.  Section 804 was similarly remedial, and arose

out of Congress's concern that the pre-Sarbanes statute of limitations for private

securities fraud actions was inappropriately short and left many existing defrauded

investors without recourse in the complicated and long-standing frauds then being

uncovered.  Senator Leahy introduced Section 804 as part of S. 2010, The

Corporate and Criminal Fraud Accountability Act, after hearings on the fall of

Enron, and after testimony that the existing statute of limitations for private

securities actions forced states like Washington, Georgia and Ohio to forgo claims

based on securities fraud in 1997 and 1998 in the Enron state pension fund

litigation.  See Remarks by Mr. Leahy upon Introduction of S. 2010 in the Senate

(Mar. 12, 2002), 148 Cong. Rec. S1785-1792,  2002 WL 32054452, at 7 and 32;

Statement of Mr. Leahy to the Senate Committee on the Judiciary, Executive

Business Meeting (Apr. 25, 2002).  In Washington alone, state employee pension

funds, which lost in excess of $100 million in Enron, were foreclosed from

seeking relief for at least $50 million in losses resulting from fraud in 1997.  Id.

The statute of limitations extension being considered was designed to legislatively

overrule the Supreme Court's decision in Lampf, Pleva, and allow victims of

securities fraud three years from the date of discovery and no more than five years

from the events underlying the claim to file an action.  8/  Senator Leahy noted that

two Commission Chairmen in the years since Lampf, Pleva had supported

extending the limitations period during their tenure at the Commission, and that

the newly-discovered extensive frauds showed that such an extension was now

necessary.  Id. 9/

---

8/    The Commission had filed an amicus brief in the Supreme Court in Lampf
      Pleva, arguing that the appropriate statute of limitations for private fraud
      actions under the securities laws should be within five years of the
      violation.  The Supreme Court disagreed.

9/    In response to the Supreme Court's decision in Lampf, Chairman Breeden
      testified before Congress in favor of extending the limitations period by
      stating that "[e]vents only come to light until years after the original
      distribution of securities," and that Lampf "could well mean that by the time
      an investor discovers they have a case, they are already barred from the
      courthouse."  Testimony of Chairman Breeden before the Securities
      Subcommittee of the Senate Banking Committee (Oct. 2, 1991).  In his 1995
      testimony before Congress on the Private Securities Litigation Reform Act,
      Chairman Levitt stated that "extending the statute of limitations is warranted
      because many securities frauds are inherently complex, and the law should
      not reward the perpetrator of a fraud, who successfully conceals its
      existence for more than three years."  See Chairman Levitt Testimony

The legislative history reveals that debate about Section 804 centered around whether the limitations period should be expanded – Section 804(a) – and there was no explicit debate on Section 804(b), the provision setting forth the statute's temporal reach. 10/  The section-by-section analysis, however, states that Section 804 "applies to <u>any and all cases</u> filed after the effective date of the Act, regardless when the underlying conduct occurred." (emphasis added). 11/ Congress's use of "any and all" reinforces the natural meaning of Section 804(b)'s application to "all proceedings" without reservation.  Moreover, the clause

---

before the Senate Banking Committee, (Apr. 6, 1995), and before the House Commerce Committee (Feb. 10, 1995).

10/    The Senate Judiciary Committee held a markup session in April 2002, during which the proposed 3 and 5 was changed to 2 and 5.  In addition, what is now Section 804(c) was adopted to make it clear that the amended statute of limitations was not intended to create a new private right of action.  Although Ranking Member Hatch expressed concerns about extending the limitations period and proposed keeping the discovery period at one year, his amendment was defeated 11 to 7.  <u>See</u> <u>Senate Panel Votes to Ease Rules on Suits in Stock Fraud</u>, New York Times C5 (April 26, 2002). The bill was reported unanimously by the Committee.  In July, S. 2010 was incorporated without amendment into S. 2673, later to be enacted as Sarbanes-Oxley.  There is nothing in the legislative record that indicates any debate on the effective date provision in Section 804(b).

11/    Senator Leahy's section-by-section analysis was included in the Congressional Record as part of the official legislative history.  148 Cong. Rec. S7418, Legislative History of Title VIII of H.R. 2673: The Sarbanes-Oxley Act of 2002 (July 26, 2002).

-23-

"regardless when the underlying conduct occurred" shows that, at the very least, Congress intended Section 804 to apply to pre-enactment events. The broad language in the section-by-section analysis does not even remotely suggest that Congress intended any distinction in Section 804 between claims that had expired prior to enactment and claims that had not yet expired upon enactment.

During the Senate and House floor debates, statements by Senator Leahy and others suggest that Section 804 was necessary to give the past victims of Enron, and of other longstanding frauds just then being uncovered, the ability to bring damage actions that were already barred under existing law. 12/ Parties who

_____

12/    See, e.g., 148 Cong. Rec. S6524-02 (July 10, 2002), at S6534 (Sen. Leahy) ("We already have a very short statute of limitations in here anyway. We ought to at least have that so people might be able to recover some of the money they have lost, if it is at all possible. * * * There ought to be a way for the people who lost their pensions, lost their life savings to get it back."); Id. at S6535 (Sen. Leahy) ("Here are some numbers. Florida lost $335 million because of Enron, the University of California, $144 million – all the way down to Vermont; we lost millions of dollars. These are people who would like, in these kinds of cases, at least to have a statute of limitations such that we can go after them."); Id. at S6540-41 (Sen. Leahy) ("Even in my own little State of Vermont, pension funds were damaged because of the excesses of Enron. And then we see WorldCom and Tyco and Xerox, and we say we had better look back five years" and "let's do everything we can to let the people defrauded by them recover some of their ill-gotten gains."). See also House Consideration and Passage of H.R. 5118, The Corporate Fraud Accountability Act of 2002 (July 16, 2002) H4683-4694 (Rep. Markey) (the House proposal "does not extend from 3 years out to 5 years the period upon which people can sue if they have been defrauded. We are only finding out right now about fraud from 2 or 3 years

have opposed revival are mistaken when they rely on statements by Senator

Gramm during the Senate floor debate that a lengthened statute of limitations

would "have no effect on anybody who has committed one of these violations"

because "everyone understands that our system has no ex post facto laws."  148

Cong. Rec. S6537 (July 10, 2002).  Apart from the fact the Ex Post Facto clause

applies only to criminal statutes, see, e.g., Domond v. INS, 244 F.3d 81, 87 (2d

Cir. 2001), Senator Gramm's statement opposing retroactive application of Section

---

ago. We need to stretch out the statute of limitations so they can sue."); Id.
at H4838-4847 (July 17, 2002) (Rep. LaFalce) ("By the time we discovered
the wrongdoing that took place in the Enron case, in the Global Crossing
case, in the WorldCom case, et cetera, the private cause of action may have
seen the statute of limitations expire. So we need more time. That is an
essential and important provision."); (Rep. Markey) ("We should extend
from 3 years to 5 years the time that people have to go in and do something
about fraud, because we are now talking about fraud committed in 1998 and
1999, and the statute of limitations has run. We must extend it out to 5
years. Ordinary investors are only finding out now how valueless their
investments were."). But see Federal News Service, "Conference Report on
Corporate Responsibility Legislation" (July 24, 2002), quoting Senator
Leahy as saying "[in the Act] [w]e extend the statute of limitations in
security fraud cases – something that would've helped so many people who
were defrauded by Enron and others."  At least one court believed this
statement indicated lack of revival intent. In re Enter. Mortgage Acceptance
Co. LLC Sec. Litig., 295 F. Supp. 2d 307, 313 (S.D.N.Y. 2003).  However,
it is unreasonable to read Senator Leahy's isolated and ambiguous remark as
negating his section-by-section analysis and earlier statements on the floor
indicating an intention to have the statute reach the already-barred
fraudulent conduct in Enron, WorldCom, and the other large and
complicated fraud cases which were the immediate impetus for the
legislation.

804 is the only statement in the legislative record that even suggests such opposition.  It is, moreover, inconsistent with the Section-by-Section explanation that Section 804 applies to events no matter when they occurred.  It is also inconsistent with Section 804(b) itself, which applies to proceedings filed on or after enactment, since any claim filed on the date of enactment would necessarily relate to pre-enactment conduct or events.  <u>Republic of Austria v. Altmann</u>, 124 S. Ct. 2240, 2253, n.18 (2004).

The legislative history also shows that the barred claims that were the impetus for the enactment of Section 804 involved fraud that had been concealed beyond the then-existing three-year limitations period.  This concealment mitigates any concern that reviving barred claims would be unfair to defendants, since any legitimate reliance interest of a defendant is reduced or eliminated if he concealed the circumstances giving rise to the plaintiff's claim.  Because the perpetrators of the frauds discussed in the legislative history concealed their conduct, it is doubtful that Congress, in enacting Section 804, would have wanted to protect defendants from revival of barred claims.

In sum, the remedial purposes of Sarbanes-Oxley, as well as the specific reasons for enacting Section 804, support a broad remedial interpretation of the new limitations period to allow revival of barred claims.  Given that Section 804

arose from Congress's concern about the investors who lost so much money in the

Enron and WorldCom frauds, among others, interpreting Section 804 in a manner

that would allow these very same investors to recover some of their losses is

consistent with the remedial purpose of Section 804, and Sarbanes-Oxley as a

whole.

D.    <u>Section 804(c) of Sarbanes-Oxley Is Irrelevant to the Question Whether Section 804(b) Revives Barred Claims.</u>

The district court concluded that Section 804(c), which states that "nothing

in this section shall create a new, private right of action," precludes revival of

claims that had expired prior to enactment because revival would create a new

right of action where none existed.  The district court quoted the language of

Section 804(c) as though Section 804(b) contained not only the effective date

provision but also included the Section 804(c) language about no new private right

of action, and failed to recognize that this latter language was contained in its own

separate subdivision.  <u>Id.</u>

The district court was mistaken as to the meaning of Section 804(c), which

was intended to address an entirely different issue.  Section 804(a) makes the new

statute of limitations applicable to claims of "fraud, deceit, manipulation, or

contrivance in contravention of a regulatory requirement concerning the securities

laws," instead of specifying the particular securities provisions to which it applies. According to the legislative history, Section 804(c) was necessary to make it clear that Section 804(a) "was not meant to create any new private cause of action, but only to govern all the already existing private causes of action under the various federal securities laws that have been held to support private causes of action." 148 Cong. Rec. S7418, Legislative History of Title VIII of H.R. 2673: The Sarbanes-Oxley Act of 2002 (July 26, 2002). "Private right of action" was thus being used in accordance with its well-understood meaning in the securities laws: those private rights of action either that Congress has expressly enacted or that courts have implied. See, e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 568-69 (1979) (discussing "private rights of action" in terms of whether Congress has created "federal rights in favor of private parties."). There is no support for the district court's determination that Section 804(c) was intended to preclude revival of a particular plaintiff's claim. Moreover, the fact that Section 804(b) and (c) were set forth in separate provisions, and not in the same provision as the district court mistakenly believed, undermines the court's conclusion that (c) somehow bears on the interpretation of (b).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should hold that Section 804 applies to all actions filed on or after enactment, regardless of whether the actions were barred before enactment.

Respectfully submitted,


GIOVANNI P. PREZIOSO
General Counsel

JACOB H. STILLMAN
Solicitor

HOPE HALL AUGUSTINI
Senior Litigation Counsel

DOMINICK V. FREDA
Attorney

Of Counsel
  MEYER EISENBERG
  Deputy General Counsel

Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549-0606
(202) 942-0912 (Augustini)

AUGUST 2004

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,873 words, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect in 14-Point Times New Roman.

_____
Dominick V. Freda
Securities and Exchange Commission

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 30, 2004, I caused to be served copies of the foregoing Brief of the Securities and Exchange Commission, <u>amicus</u> <u>curiae</u>, on the Clerk of the United States Court of Appeals for the Second Circuit and on the following counsel for the parties:

S. ROBERT SCHRAGER
Bondy & Schloss, LLP
60 East 42nd Street
New York, New York 10165
(212) 661-3535

Attorney for Plaintiff-Appellant

MARK HOLLAND
Clifford Chance US LLP
200 Park Avenue
New York, New York 10166
(212) 878-8000

Attorney for Defendant-Appellee

_____
Dominick V. Freda
Securities and Exchange Commission