UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Walter W. Thiemann, et al. | ) | Case No. C-1-00-793 |
| | ) | |
| Plaintiff, | ) | (Judge Sandra S. Beckwith) |
| | ) | |
| -v- | ) | Magistrate Judge Timothy Hogan |
| | ) | |
| OHSL Financial Corp., et al. | ) | |
| | ) | MEMORANDUM OF OHSL AND |
| Defendant. | ) | PROVIDENT DEFENDANTS IN |
| | ) | OPPOSITION TO MOTION TO HOLD |
| | | JAMES E. BURKE AND KMK IN |
| | | CONTEMPT FOR VIOLATING THIS |
| | | COURT'S MAY 10, 2004 ORDER |

## I.    INTRODUCTION

The OHSL and Provident Defendants submit this Memorandum in Opposition to
Plaintiffs' Motion to Hold James E. Burke and KMK ("Counsel") in Contempt (the "Motion").
The Motion arises from the Deposition of Dr. Sidney Peerless ("Peerless Dep."), a Provident
director who is not a defendant in this matter.  The Motion is based upon familiar attacks and
inaccuracies which are rebutted by Dr. Peerless' deposition transcript.

Indeed, the questioning of Dr. Peerless - - who repeatedly told Plaintiffs' counsel Mr.
Brautigam that he had little knowledge of the facts underlying this case - - was characterized by
improper questions, questions seeking speculative answers based upon unfounded hypotheticals,
repetitive questions and improperly arguing with the witness.[1]  It culminated with Mr. Brautigam
reading, line by line, from an expert report (which Dr. Peerless had never seen) and asking Dr.
Peerless if he agreed with the expert's conclusions.  Counsel objected to this improper line of

---

[1] Mr. Brautigam's questioning of Dr. Peerless was strikingly similar to the deposition of Norbert
Brinker, which Magistrate Hogan described as "a complete waste of time, my time and every
lawyer in the case's time."  See Transcript of March 5, 2004 telephonic conference at p.5 (Doc.
300 at Ex. A).  See also March 5, 2004 Order (Doc. 295).

questioning.  Mr. Brautigam persisted and Dr. Peerless answered several more questions from the expert's report, stating that he had no knowledge of the topics.  Opposing counsel advised Mr. Brautigam that if he persisted, Dr. Peerless would be instructed not to answer, to afford counsel an opportunity to present the issue to the Magistrate Judge under F. R. Civ. P. 30(d)(4). Mr. Brautigam then terminated the deposition, stating: "Okay - Well then, we're done." (Peerless Dep. p. 99).

There is nothing improper, and certainly nothing contemptuous, about seeking guidance from the Court on improper lines of questioning during a deposition.  Such a course expressly is authorized by F.R. Civ. P. 30(d)(4).  Plaintiffs' Motion must be denied.

## II.    STATEMENT OF FACTS

### A.    Dr. Sidney Peerless

Dr. Sidney Peerless is an 82 year old retired physician, who formerly specialized in otolaryngology.  (Peerless Dep. p.8).  He is a well-respected Cincinnatian who has served, or is serving, on the board of organizations including Cincinnati Jewish Foundation, Children's Hospital Medical Center and Jewish Hospital.  (Peerless Dep. p. 11).  He has been a director of Provident Financial Group, Inc. ("PFGI") for 27 years (Peerless Dep. p. 5).  Plaintiffs did not name Dr. Peerless as a defendant in this proceeding (Peerless Dep. p. 21) and Dr. Peerless has no information and no knowledge about this action or the underlying claims:

> Q:    Do you have an understanding as to the litigation that brings us here today.
>
> A.    No.
>
> Q.    None at all?

A.    None at all.[2]

Peerless Dep. p. 20.

**B.    The Peerless Deposition**

1.    The Suggestion of Improper Conduct By Dr. Peerless.

Mr. Brautigam began the Peerless deposition by suggesting, without foundation, that Dr. Peerless had engaged in improper conduct while serving as a PFGI director. The question appeared calculated to embarrass or upset this respected physician. While inquiring about Dr. Peerless' qualifications to serve as a director, the following exchange occurred:

Q.    And what skills did you bring to the Provident Board 27 years ago?

A.    Supposedly veracity.

Q.    What else?

A.    And matters that pertain to medical things.

Q.    Is that of relevance to a public company that does banking?

MR BURKE:  Objection.  Calls for speculation.

A.    Sometimes.

Q.    Okay.  In what circumstances is your medical background relevant?

A.    Sometimes medical problems would have arisen that involved the knowledge of medicine.

Q.    Give me an example, please.

A.    The - - I'm trying to think.  People or employees being injured and they wanted an opinion on the medical situation.

---

[2] Not satisfied with this clear answer, Mr. Brautigam thereafter asked Dr. Peerless the identity of the Plaintiffs, the defendants, the trial judge and the Magistrate judge, whether he had read any of the pleadings, whether he believed that "your interests in the litigation, if any, are the same as the OHSL directors. . ." and whether "KMK will be providing witnesses in this case." Dr. Peerless knew nothing about any of this. (Peerless Dep. pp. 20-24).

Q.    So you would have access to an employee's confidential medical records in that circumstance?

MR. BURKE: Objection.

A.    No.

Peerless Dep. pp. 6-7.

To suggest, as Mr. Brautigam did, that Dr. Peerless accessed confidential medical records of Provident employees, with no basis in the record for such a charge is improper and disrespectful.    Counsel (who served as Dr. Peerless' counsel at the deposition as an accommodation to him), noted this impropriety *after* Dr. Peerless already had answered the question. (Peerless Dep. p.7).

2.    Dr. Peerless' Testimony Concerning Relevant Subjects.

Early in the deposition, Dr. Peerless made it clear that his recollection of the relevant factual events in this case (i.e. the Provident – OHSL merger and the 2003 Restatement) was limited.  Dr. Peerless did not recall ever seeing the Provident – OHSL Proxy Statement. (Peerless Dep. p. 26).

With respect to the merger itself, he testified:

Q:    Do you remember discussing merging with OHSL in 1999?

A.    Yes.

Q.    Tell me about these discussions.

A.    The discussion was that they - - Provident was interested in purchasing them and they were interested in being purchased.  And that it was unanimous by their Board and our Board that this purchase agreement go through.  And that was it.

Peerless Dep. pp. 22-27; see also Peerless Dep. p. 35.

With respect to Provident's restatement of earnings in March-April, 2003, Dr. Peerless also recalled it generally, but without specifics:

> Q.  Okay. Dr. Peerless, let's talk about the 2003 restatements. You're familiar with those, correct?
>
> A.  Yes.
>
> Q.  Why did Provident restate on March 5[th], 2003, and then again on April 15[th], 2003?
>
> MR. BURKE:  Objection. No foundation.
>
> A.  I think there was some difference of opinion as to car loans, automobile loans, and I think that was the reason.
>
> Q.  And what were the varying points of view with respect to these differences of opinion?
>
> MR. BURKE: Objection. Lack of foundation.
>
> A.  I really don't know.

Peerless Dep. p. 48.

Plaintiff's Motion concedes that Dr. Peerless testified that he had limited knowledge of the issues relevant to this case.. <u>See</u> Motion for Contempt (doc. 385) at pp. 20-21.  Although the Motion disparages Dr. Peerless for his limited recollection, it does not dispute that Dr. Peerless was asked about virtually every topic in this case and that he had little testimony to offer.  This hardly is surprising given the fact that Dr. Peerless is <u>not a defendant</u> and has not been involved in the defense of this action.  Whether or not Plaintiffs like it, Dr. Peerless cannot be forced to testify about matters he does not understand or to discuss subjects about which he lacks knowledge or recollection.

3.    <u>The Questioning of Dr. Peerless Was Annoying, Oppressive and Harassing.</u>

Plaintiffs' Motion complains that Counsel made "an unusually large number of objections" to questions posed to Dr. Peerless. See Motion for Contempt at pp. 22-23. Although there were numerous objections, one need only review the transcript to see why.[3] Mr. Brautigam spent minimal time with Dr. Peerless exploring his first-hand knowledge of relevant events, asking about contemporaneous documents he may have seen or authored or in determining how he might testify at trial. Rather, like the other depositions in this case, Mr. Brautigam spent most of his time asking repetitive questions, arguing with Dr. Peerless about legal and accounting matters with which Dr. Peerless was unfamiliar, asking the witness to assume facts he knew nothing about and then soliciting gratuitous opinions, and trying to pressure Dr. Peerless into agreeing with argumentative conclusions from Plaintiffs' pleadings and expert reports. There were a significant number of objections because the deposition was conducted in a demonstrably objectionable manner.

a.    The Provident Restatement

Dr. Peerless advised Mr. Brautigam that he had no knowledge of the details of Provident earnings restatement in March-April, 2003, although he generally understood that a restatement is a correction of an error or omission. (Peerless Dep. pp. 37, 48). Despite this, Plaintiffs' counsel then proceeded for four pages to ask Dr. Peerless (a) if all restatements, by definition, are material; (b) whether he ever heard of a public company issuing a non-material restatement; (c) whether Provident restated its financials in 2003 because of material misstatements; (d) why Provident issued its restatement; (e) the definition of "RVI" [Residual Value Insurance ]; (f) the definition of direct finance and operating leases; (g) how

---

[3] As noted in the Provident and OHSL Defendants recent response to a similar discovery motion (doc. 354), these objections are necessary to preserve their rights (doc. 354, pp.2-6).

Provident's lease accounting model worked; (h) whether Ernst & Young ("E & Y")[4] had input into setting up the model; and (i) if it did, whether this would "compromise [ E & Y's] independence." Not surprisingly, Dr. Peerless was unable to answer these questions relating to technical accounting matters.[5] (Peerless Dep. pp.48-51).

4.    The Actions of the OHSL Directors

Dr. Peerless also made it clear that he did not know either OHSL's chairman of the Board, Norbert Brinker, or anyone else associated with OHSL. Peerless Dep. p. 32. Nevertheless, Plaintiffs' counsel spent 17 pages of transcript trying to get Dr. Peerless to "interpret" the Proxy Statement, and to speculate about what the OHSL Board and Mr. Hanauer did or did not do. (Peerless Dep. pp. 53-70). Not surprisingly, these questions properly were objected to as calling for speculation and Dr. Peerless was unable to answer any of them:

> Q.    When it [the Proxy Statement] says, Your Board of Directors unanimously approved the acquisition, do you interpret that to mean that all of the OHSL directors voted in favor of the merger?
>
> MR. BURKE: Objection. No foundation. Calls for speculation.
>
> A.    No. I - - it all depends upon what they - - the definition of unanimously is.
>
> Q.    Okay. What is your definition of unanimously?

---

[4]   Questions apparently seeking to establish the culpability of E & Y can have no possible relevance to this case in light of its dismissal on May 28, 2004 (doc. 336).

[5]   Plaintiffs demean Dr. Peerless for answering "The clothing store?" in response to Mr. Brautigam's question about whether he was "familiar with GAAP [ Generally Accepted Accounting Principles]." Motion pp. 8, 25. Reading this question and answer in context makes it clear that Dr. Peerless' confusion was understandable and that this is just another example of Plaintiffs' preference for disparagement over legitimate legal argument. Mr. Brautigam was asking Dr. Peerless about the Provident-OHSL Proxy and his experience in mergers and acquisitions. See Peerless Dep. pp. 31-33. Without explanation or introduction of a new topic, he then asked Dr. Peerless if he was familiar with "GAAP." See Peerless Dep. pp.33-34. He neither explained nor defined the acronym and he did not spell it for the witness. See Peerless Dep. pp. 33-34. Dr. Peerless' clarifying question about a word that sounds identical is clearly understandable.

MR. BURKE: Objection.  No relevance.  Calls for speculation as to that. Asked and answered also.

A.    Mine would be that the people that were present at the meeting voted unanimously to accept the merger.

Q.    And do you have any reason to believe that the OHSL Board had a separate definition?

MR. BURKE: Objection.  Calls for speculation.

A.    I have no idea.

Q.    Do you believe that the definition that you just gave is in common usage in the United States?

A.    I - -

MR. BURKE:  Objection.  Calls for speculation.

A.    I don't know.  I don't know.

Peerless Dep. pp. 54-55.

*   *   *

Q.    I'm explaining.  Dr. Peerless, if what I'm saying is true, and only five of the then seven directors voted in favor of the merger, do you believe that the OHSL Board unanimously voted in favor of the merger?

MR. BURKE: Objection.  Misstates the record, as you know. Calls for speculation.  Asked and answered.  This witness has no foundation as to this answer.

A.    I really don't know.  I don't know their rules.  I don't know what - - I mean, I don't know what their rules are as far as absent members are concerned.

Q.    As far as what members?

A.    As far as absent members are concerned.

Q.    Well, let me represent to you that the chairman of the Board was in the room and did not vote, but abstained.

MR. BURKE:  Objection.  Misstates the record, as you clearly know.

A.    I, I don't know.  I really can't tell.

Q.    Dr. Peerless, let's talk about the second concept here.  Your Board of Directors unanimously believes that it is in the best interest of OHSL stockholders.  Do you see that?

A.    Yes.

      MR. BURKE:  Objection.

Q.    And I read that in a way to focus only on the second part of the sentence, but I also included the adverb unanimously.  Do you see that?

      MR. BURKE:  Objection.  Calls for speculation.  Misstates the document.

A.    Yes.

Q.    Do you believe that the sentence intends to give shareholders the impression that all of the OHSL directors unanimously believed that the merger was in the best interest of OHSL stockholders?

      MR. BURKE: Objection.  Calls for speculation.

A.    I really can't tell.

Peerless Dep. pp. 57-59.

*    *    *

Q.    What are the fiduciary duties that a director of a public company owes to the shareholders?

A.    To do the correct thing.

Q.    And do you believe that if OHSL's CEO did not believe that the merger was in the best interest of OHSL shareholders, that it would be consistent with his fiduciary duties to vote in favor of the merger?

      MR. BURKE: Objection.  Calls for speculation.  No foundation.

A.    I don't know.  I have absolutely no idea.

Q.    Under what circumstances would it be appropriate for the CEO of Oak Hills to do what I just said?

      MR. BURKE: Objection.  Calls for speculation.  No foundation.

A.    I don't know.  You'd have to ask him.

Q.    Well, I did ask him, but I'm entitled to your opinion as well, Doctor.

MR. BURKE: No.

A.    I don't know.

MR. BURKE: You're not entitled to his opinion if he doesn't have one.

A.    I really don't know.

Peerless Dep. pp.62-63.

\*    \*    \*

Q.    Did you ever hear that Mr. Hanauer, OHSL's former CEO, largest shareholder, the only member of management on the Board, and chairman of the Board designate, had voted his personal shares against the OHSL-Provident merger?

MR. BURKE: Objection.  No foundation.

A.    No.

MR. BURKE: Calls for speculation.

A.    I had no idea.

Q.    You never heard until today?

A.    Until today.

Q.    Do you believe that it was - - well, Dr. Peerless, are you a fair main?

A.    I try to be.

Q.    Do you believe that what Mr. Hanauer did, voting in favor of the merger as a director but voting his personal shares against the merger without telling anyone, was fair to the OHSL shareholders?

MR. BURKE: Objection.  Calls for speculation.  No foundation.  He's already testified about this.

A.    I, I really don't know.  I can't pass on what he did or why he did it.

> Q.    Dr. Peerless, you understand that in some circumstances if I ask for an opinion, I'm entitled to your opinion, correct?
>
>> MR. BURKE: No, you're not. Michael, you're not. And stop making that representation. You're allowed to ask if he has an opinion and if he has one, he can give it to you. And if he doesn't, he doesn't have to. You're not entitled to an opinion, so please stop making that representation to the witness.

Peerless Dep. pp. 66-67.

*   *   *

> Q.    Dr. Peerless, let's focus on the next sentence in that paragraph. The Board unanimously recommends and advises that you approved the acquisition at the special meeting so that the transaction may be completed. Do you see that?
>
> A.    Yes.
>
> Q.    Just reading that today - - I understand this is the first time you've seen this document - - would it be fair to conclude that the entire OHSL Board would vote their personal shares in favor of the merger?
>
>> MR. BURKE: Objection. Asked and answered. Calls for speculation.
>
> A.    I don't know what Mr. Hanauer did.
>
> Q.    Let me represent to you that he voted his personal shares, 123,000 of the, against the merger. If that's true, would it appear to you that Mr. Hanauer, the former CEO of OHSL, did not take the advice that he was giving to the OHSL shareholders?
>
>> MR. BURKE: Objection. Calls for speculation. No foundation.
>
> A.    No.
>
>> MR. BURKE: He's asked and answered this a dozen times.[6]

---

[6] Although "a dozen times" may have been a rhetorical exaggeration, this sequence of testimony leaves no doubt that Mr. Brautigam's questioning of Dr. Peerless concerning how Mr. Hanauer voted his personal shares, clearly was repetitive and a classic example of when "a single line of questioning has been asked and answered and asked and answered again and has eventually

A.    I really don't know.  Ask Mr. Hanauer.

Peerless Dep. pp. 69-70.

This sequence of testimony leaves no doubt that the questioning of Dr. Peerless was repetitive, annoying, oppressive and harassing.  He repeatedly was questioned about topics on which he stated he had no knowledge.  He has asked to provide gratuitous, patently inadmissible "opinions" on documents and events he knew nothing about, and then was told that Mr. Brautigam was "entitled" to elicit such opinions from him.  The objections to these improper questions were stated succinctly and in accordance with accepted norms of trial practice.  At no time did Counsel suggest an answer to Dr. Peerless, who answered every question posed.

5.    Dr. Peerless Is Asked to Vouch for Plaintiffs' Expert Report.

Against this backdrop, Mr. Brautigam handed Dr. Peerless "Plaintiffs' Exhibit 114" which he elected not to identify or describe for the record.   (Peerless Dep. p. 81).  Plaintiffs' Exhibit 114 is a written report of one of Plaintiffs' five purported expert witnesses in this case, which was delivered to counsel for the OHSL and Provident Defendants on August 30, 2004 - - two days before Dr. Peerless was deposed.  An accurate and complete copy is attached hereto as Exhibit A (the "Expert Report").

Mr. Brautigam then proceeded to read from the Expert Report - - mostly focusing on subjects about which Dr. Peerless had disclaimed any knowledge - - and then asked Dr. Peerless if he agreed with the statements.  Counsel objected to this tactic, but permitted the questioning to proceed to give Mr. Brautigam a fair opportunity to elicit testimony that might remotely be relevant:

---

devolved into a - - harassing manner of taking the deposition . . ."  Statement of Judge Beckwith, Deposition of Joe Pedoto at pp. 229-30.

Q.     Dr. Peerless, I've handed Plaintiff's Exhibit 114 to you. Let me direct your attention to page eight. There is a section there that says, The purpose of proxy materials. Do you see that?

A.     Um-hmm.

Q.     Do you agree with this sentence, The purpose of any proxy materials or prospectus is to provide shareholders with all of the information necessary for them to make a knowledgeable investment decision regarding their shares?

       MR. BURKE: Objection. You haven't even asked the witness to identify this document, if he's seen it or anything else. There's no foundation for any question about this document or this sentence. You're just pulling out a sentence and asking him if he agrees with it. That's an improper question. No foundation, calls for speculation.

A.     I don't know.

Peerless Dep. pp. 81-82.

The deposition quickly went downhill. Dr. Peerless was asked whether he agreed with the next two sentences of the Expert Report, which set forth the witness' opinion about the legal requirements of SEC Regulation C and the duties of directors regarding mergers. (Peerless Dep. p. 83; compare Expert Report, Ex. A at p. 8). Mr. Brautigam then veered back into the activities of the OHSL directors, asking Dr. Peerless whether (as the expert opined), the Proxy Statement should have disclosed alleged details about the resignation of Thomas Herron. (Peerless Dep. p. 84; compare Expert Report, Ex. A. at p.7). Dr. Peerless answered "I have no idea." (Peerless Dep. p. 84).

Mr. Brautigam then asked Dr. Peerless to agree with opinions of his expert that obviously were beyond Dr. Peerless' expertise and are not even permissible topics of expert testimony:

Q.     Do you believe that the strength of the United States financial markets is in the reporting and disclosure rules promulgated by the SEC and implemented by public companies and their advisors?

> MR. BURKE:  This is ridiculous.  You're reading and expert report and asking him if he agrees with every sentence.  Overbroad, no foundation.  Calls for speculation.

A.     I don't - - I don't know.

Q.     Are you familiar with the Securities Act of 1933?

> MR. BURKE:  Objection.  Calls for a legal conclusion.

A.     No.

Q.     Do you agree that the purpose of the 1933 Act was to provide full and fair disclosure and to prevent fraud?

> MR. BURKE:  Objection.  Calls for speculation.

A.     I really don't know anything about the 1933 Act.

Peerless Dep. pp. 86-87; compare Expert Report, Ex. A at pp.8-9.

At this point, Counsel again objected to reading an expert report line by line and asking a lay witness if he agrees with it.  (Peerless Dep. pp. 87-89).  Counsel attempted to call Magistrate Judge Hogan to seek his guidance on this line of questioning, but he was unavailable.  (Peerless dep. p. 87).  Mr. Brautigam resumed questioning Dr. Peerless and again began to ask about portions of the Expert Report discussing the alleged lack of unanimity of the OHSL Board and Mr. Hanauer's purported view of the merger.   (Peerless Dep. pp. 89-92; compare Expert's Report, Ex. A at p. 10).  Dr. Peerless had testified repeatedly by this point that he knew nothing about these issues and he reiterated his answers.   Id.  Mr. Brautigam continued to pressure Dr. Peerless and the questioning became confrontational and argumentative.  (Peerless Dep. pp. 92-94).

At this point, Counsel again objected to the improper, repetitive questioning of the witness and advised Mr. Brautigam of his intent to instruct the witness not to answer and to seek

- 15 -

a protective order under F.R. Civ. P. 30(d)(4).  (Peerless Dep. pp.94-98).  Dr. Peerless, however,

continued to answer all questions put to him.  Id.

The deposition then took a decidedly strange turn.  Aware that his use of the Expert

Report was being objected to, Mr. Brautigam told Dr. Peerless not to look at the report, but

continued to question him on it:

> Q.    Dr. Peerless, it's not necessary for you to look at the at exhibit any more.
>
> > MR. BURKE: Are you reading from it, Mr. Brautigam?
> >
> > MR. BRAUTIGAM:  No, I'm not.
> >
> > MR. BURKE:  Why is it in front of you?
> >
> > MR. BRAUTIGAM:  I'm being inspired from it, I'm not reading it.
> >
> > MR. BURKE: If you're asking questions from this report, the simple game of taking it away from the witness not only is improper, but that's misleading and doesn't change the nature of my instruction.
> >
> > MR. BRAUTIGAM:  Jim, we don't need speaking objections.
> >
> > MR. BURKE:  I'm just stating it for the record because we're going to instruct the witness not to answer.  That's not a speaking objection, there's not a question pending.

Peerless Dep. pp. 97-98 (emphasis added).

Mr. Brautigam then asked his most objectionable question:

> Q.    Do you agree with what I'll represent to you is Mr. Herron's testimony: Mr. Herron was the resigning director at OHSL, that Mr. Herron believed Mr. Hanauer's opposition to the transaction would have, quote, significantly altered the total mix, unquote, of information available to shareholders?
>
> > MR. BURKE: Instruct the witness not to answer.  We're going to seek a protective order on this line of questioning.

Peerless Dep. pp. 98-99; compare Expert Report Ex. A at p. 12.

6.    Mr. Brautigam Terminated the Deposition

The most egregious misstatement in the Motion is the assertion that Dr. Peerless' deposition was "terminated by Mr. Burke." See Motion for Contempt p.1. This is demonstrably untrue.  As the transcript makes clear, counsel for the OHSL and Provident Defendants only instructed Dr. Peerless not to answer and stated his intent to seek a protective order "on this line of questioning," i.e., Mr. Brautigam's attempt to get Dr. Peerless to regurgitate the Expert Report.  Mr. Brautigam thereafter chose not to pursue other lines of questioning and ended the deposition:

> MR. BURKE: Instruct the witness not to answer.  We're going to seek a protective order on this line of questioning.
>
> MR. BRAUTIGAM:  Okay.  Well, then we're done.
>
> MR. BURKE: Okay.  Thank you.

Peerless Dep. p.99.

Mr. Brautigam's action was sufficiently clear that the court reporter noted in the transcript "Deposition concluded at 10:33 a.m."  (Peerless Dep. p. 99).  She did not say "adjourned," "continued in progress" or anything similar.  She stated that the deposition was "concluded."

## III.    ARGUMENT OF LAW

### A.    Rule 30(d) of the Federal Rules of Civil Procedure

Plaintiffs' Motion for Contempt is without merit because the actions taken by Counsel are in full accordance with F.R. Civ. P. 30(d).  Dr. Peerless was instructed not to answer repetitive, oppressive, harassing and annoying questions only after he had answered similar questions on multiple occasions, after Counsel advised Mr. Brautigam of his intent to seek a

protective order based upon questioning of the witness from the Expert Report and after such questioning persisted. Federal Rule 30(d)(1) expressly provides:

> (1) Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. <u>A person may instruct a deponent not to answer only when necessary</u> to preserve a privilege, to enforce a limitation directed by the court, <u>or to present a motion under Rule 30(d)(4).</u>

F.R. Civ. P. 30(d)(1); (emphasis added).

Federal Rule 30(d)(4) further provides:

> (4) <u>At any time during a deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending or the court in the district where the deposition is being taken may order the officer conduction the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26(c).</u> If the order made terminates the examination, it may be resumed thereafter only upon the order of the court in which the action is pending. Upon demand of the objecting party or deponent, the taking of the deposition must be suspended for the time necessary to make a motion for an order. The provision of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

F.R. Civ. P. 30(d)(4) (emphasis added).

Plaintiffs again have put this Court and the parties to the burden and expense of a Motion for Contempt (on top of three prior motions for contempt and sanctions and eight motions to strike) it is clear that the Motion is not well taken. Indeed, the same authority cited by Plaintiffs in the Motion expressly recognizes the right of counsel, in the event of unreasonably annoying, oppressive or harassing deposition conduct, to instruct the witness not to answer and seek a protective order under F.R. Civ. P. 30(d)(4). Plaintiffs' Motion concedes:

> Pursuant to Federal Rule Civil Procedure 30(d)(1); a deponent may be instructed not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, <u>or to protect a witness from an examination "being conducted in bad faith or in such a manner as to annoy, embarrass, or oppress the deponent or party."</u> Fed. R. Civ. P. 30(d)(1) & (3); *See also, Riddell Sports Inc. v. Brooks,* 158 F.R.D. 555, 557 (S.D.N.Y. 1994).

Motion for Contempt at p. 7 (emphasis added); see also pp. 17-18.

The OHSL and Provident Defendants submit that this is precisely what occurred in this case. An instruction not to answer was given under F.R. Civ. P. 30 (d)(1), in order to enable Counsel to submit a motion under F. R. Civ. P. 30(d)(4). Under the authority which Plaintiffs themselves have cited to the Court, the conduct of Counsel was authorized and appropriate under the Federal Rules of Civil Procedure. The Motion for Contempt should be denied.

### B.      There is No Basis for Any Contempt

Plaintiffs entire motion is based upon the premise that Judge Beckwith's verbal instructions to counsel during the deposition of Joe Pedoto constitutes a "specific and definite" order, the violation of which can constitute contempt. See United States v. DiMauro, 441 F.2d 428, 439 (8th Cir. 1971). In the first place, it is not altogether clear that Judge Beckwith's statements were sufficiently specific to constitute a formal order, the violation of which can subject a party to the extraordinary sanction of contempt (as opposed to discovery sanctions under the Federal Rules). More importantly, however, nothing done in connection with the deposition of Dr. Peerless violated Judge Beckwith's admonition.

During the Pedoto deposition, the parties called Judge Beckwith to register complaints (by Defendants) about repetitive and harassing questions and (by Plaintiffs) about alleged speaking objections. Judge Beckwith clearly concluded that if "a single line of questioning has been asked and answered and asked and answered again, and has eventually devolved into a harassing manner of taking the deposition then that would be a proper objection under Rule 30(d)(4)." (Motion for Contempt, p.2). Clearly, this is precisely what occurred in Dr. Peerless' deposition so there was no violation of Judge Beckwith's instruction in this regard.

Judge Beckwith also cautioned against "speaking objections, coaching the witness in the course of the objection." Id. The Provident and OHSL Defendants submit that this did not occur during the Peerless deposition. In the first place, the limitation on "speaking objections" does not prohibit colloquies and discussions between counsel on the record when no question is pending, such as to note the impropriety and objectionable nature of a particular line of questioning. If this were not the rule, counsel would be powerless to exercise their rights under F. R. Civ. P. 30(d)(1) and (4). Secondly, an improper "speaking objection" suggests testimony or coaches the witness to modify an answer to a particular question. See Wilson v. Sunstrand Corp., 2003 U.S.. Dist. LEXIS 14922 at 12 (N.D. IN. 2003) cited at Motion for Contempt pp. 8-9. When a question is asked, it is not a speaking objection to state, as occurred during the Peerless deposition, "Objection, calls for speculation," "Objection, asked and answered," "Objection, no foundation," "Objection, assumes facts not in evidence." These objections in no way suggest how to answer specific questions but merely note customary objections to the form of a question. Noting the specific problem with the form of a question affords interrogating counsel a reasonable opportunity to rephrase the question, if they wish. The objections at Dr. Peerless' deposition were appropriate and customary and did not constitute "speaking objections." Indeed, given the wholly irregular manner in which Dr. Peerless' deposition was conducted, the number and the nature of the objections was understandable. As the Court can readily see from the transcript, when Dr. Peerless was asked questions appropriate for a fact witness regarding what he did, what he knew, what he remembered, few if any objections were interposed. It was only when Mr. Brautigam persisted in repeatedly asking the same questions over and over, or tried to extract gratuitous opinions on subjects that Dr. Peerless repeatedly

explained he knew nothing about, that objections were interposed.  This does not run afoul of

Judge Beckwith's instructions.

**C.**    **Counsel Did Not Fail to Timely Seek Relief Under F. R. Civ. P. 30(d)(4)**

In the Motion, Plaintiffs make the incredible assertion that, if Counsel felt that the

deposition was being conducted in a manner violative of F. R. Civ. P. 30(d)(4), he should have

moved for a protective order but "as of the date of this filing, Mr. Burke and KMK have yet to do

so."  Motion for Contempt pp. 17-18.  This is more than a little disingenuous.  Dr. Peerless'

deposition was taken on September 1, 2004.  When Counsel announced his intention to seek a

protective order pursuant to Rule 30(d)(4), this required waiting for the deposition to be

transcribed, so the Court could see what occurred.  Dr. Peerless' deposition was electronically

transmitted to all parties on Thursday, September 9, 2004.  The next day, Plaintiffs filed their

Motion in an obvious attempt to pre-empt the filing of a motion for a protective order.  Indeed,

during a status conference with Magistrate Judge Hogan held the morning of September 10,

2004, Mr. Brautigam announced his intent to file the Motion for Contempt later that day.  To

avoid overburdening the Court with paper, Magistrate Judge Hogan suggested that the Provident

and OHSL Defendants combine their opposition to the Motion for Contempt with a Motion for

Protective Order under F. R. Civ. P. 30(d)(4), which they agreed to do so.  To suggest that

counsel failed to timely file a motion for protective order is baseless.

**IV.**    **CONCLUSION**

For all of the foregoing reasons, the Provident and OHSL Defendants respectfully request

that this Court deny Plaintiffs' Motion to Hold James E. Burke and KMK in Contempt.

Respectfully submitted,


   s/James H. Greer
_____
David C. Greer (0009090), Trial Attorney
James H. Greer (0046555)
BIESER, GREER & LANDIS LLP
400 National City Center
Six North Main Street
Dayton, Ohio  45402
Tel:   (937) 223-3277
Fax:  (937) 223-6339
Email:  dcg@bgllaw.com
Email:  jhg@bgllaw.com
*Attorney for Provident Defendants*


OF COUNSEL:
James E. Burke
Rachael A. Rowe
KEATING, MUETHING & KLEKAMP PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202
(513) 579-6400

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2004, I electronically filed the PROVIDENT AND OHSL DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR CONTEMPT with the Clerk of Courts, using the CM/ECF System which will send notification electronically to the following:

Gene I. Mesh *(via U.S. Mail only)*          Michael G. Brautigam
Gene Mesh & Associates                        Gene Mesh & Associates
2605 Burnet Avenue                            2605 Burnet Avenue
Cincinnati, Ohio  45219-2502                  Cincinnati, Ohio  45219-2502
*Attorney for Plaintiff*                      *Attorney for Plaintiff*


John W. Hust
Michael E. Maundrell
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio  45249
*Attorneys for Dinsmore Defendants*


                                        _____s/James H. Greer_____
                                        James H. Greer

1339726.1