UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **WALTER W. THIEMANN, et al.** | : | **Civil Action No. C-1-00-793** |
| Plaintiffs, | : | **Judge Sandra S. Beckwith** |
| vs. | : | **Magistrate Judge Timothy Hogan** |
| **OHSL FINANCIAL CORP., et al.** | : | |
| Defendants. | : | |

**PLAINTIFFS' REPLY TO NON-PARTY KMK'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND MEMORANDUM IN OPPOSITION TO CROSS MOTION FOR PROTECTIVE ORDER**

Plaintiffs, by and through counsel, hereby reply to Non-Party KMK's Opposition to Plaintiffs' Motion to Compel and Memorandum in Opposition to Cross Motion for Protective Order (hereinafter "Opposition to Motion to Compel") and submit the attached Memorandum and exhibits in support thereof.

Dated:  1 October 2004               **GENE MESH & ASSOCIATES**


/s/ Michael G. Brautigam

Gene Mesh (0002076)
Michael G. Brautigam
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097 (Facsimile)

*Attorneys for Plaintiffs and the Putative Class*

1

## **REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL KMK TO COMPLY WITH SUBPOENA**

**I.       PRELIMINARY STATEMENT**

Plaintiffs reiterate the arguments made in their Motion to Compel Compliance with Subpoena Issued to Non-Party KMK (hereinafter "Motion to Compel") and renew their request for sanctions against non-party KMK (hereinafter "KMK"). KMK has again illustrated that it is acting in bad faith relation to the discovery process and that it disregards orders of this Court. KMK has selectively responded to portions of Plaintiffs' Motion to Compel, attempted to justify its disregard of this Court's orders, misapplied the law, and completely ignored those portions of the Plaintiffs' Motion to Compel which illustrate KMK's uncooperative and improper conduct.  Additionally, KMK, through both shadow counsel Patrick F. Fischer, Esq. and Barrett & Weber, have refused to negotiate in good faith and have repeatedly rejected all offers to work through a compromise to narrow the subpoena that would result in the production of some documents.  Instead, KMK has insisted that the only proper response to the subpoena is the production of no documents, in part in reliance upon positions, such as the PSLRA, that have previously been explicitly rejected by this Court.

Perhaps the best example of this is that KMK repeatedly attempts to make the argument that the Plaintiffs are asking that KMK reproduce all of the documents that it has previously produced. This is untrue for two reasons: (1) KMK has never produced any documents on its own behalf, and (2) Plaintiffs are not asking KMK to reproduce the documents it has previously produced on behalf of the OHSL and Provident Defendants and have repeatedly so stated, but only to provide some type of log or bate stamp numbers so that the Plaintiffs will know which previously produced documents are

2

responsive to the Plaintiffs' present document requests. This is an act which only KMK can do, but it refuses to do so.

## II. LEGAL ARGUMENT

### A. KMK Presents a False Picture of the Facts of this Discovery Dispute

KMK intentionally neglects or misrepresents several issues which weaken its Opposition to Plaintiffs' Motion to Compel. The Plaintiffs will discuss each in turn:

#### 1. The Plaintiffs had No Choice but to File This Motion

First, KMK does not discuss the fact that Plaintiffs had no choice but to bring this Motion to Compel pursuant to Federal Rule 45(c)(2)(B) since KMK has objected to the Plaintiffs' subpoena in its entirety through its Responses and Objections of Keating, Muething & Klekamp to Subpoena, and has refused to produce even one document in response to Plaintiff's subpoena. (*See*, Responses and Objections of Keating, Muething & Klekamp to Subpoena, Attached as Exhibit "A"). KMK has simply refused to negotiate in good faith.

#### 2. KMK Refuses to be Governed by Prior Decisions of This Court; KMK has Previously Never Argued that It was Preserving an Objection in Relation to Its PSLRA Argument

KMK simply refused to accept that the Court has previously rejected arguments that discovery should not proceed pending decisions on the motions to dismiss due to the PSLRA. E&Y, who initially made this same argument, has simply accepted the Court's Order and proceeded apace. KMK has not, affirmatively choosing to re-fight arguments that it has already fought and lost.

KMK is trying to backpedal in relation to its PSLRA argument. In its Memorandum in Opposition, KMK argues that that Plaintiffs' "spend a great deal of

3

wasted effort arguing non-party KMK's PSLRA objection to the subpoena." (Doc. No. 391, p. 7, n.3).  In particular, KMK states that only made this argument in order to maintain an objection to present this issue for further Court review and appeal, that it is well aware of the Court's prior orders regarding discovery, and that it has produced over 4,000 pages of non-privileged documents in discovery. (Doc. No. 391, p. 7, n.3). However, its prior conduct confirms that this was not the case.

First, KMK gives no hint to Plaintiffs in its Responses and Objections of Keating, Muething & Klekamp to Subpoena that it was making this argument solely in order to maintain this objection for further Court review and appeal.  In particular, KMK stated as follows:

> "KMK objects to the subpoena in its entirety on the grounds that the defendant, the subpoena is inappropriate in that all discovery has been stayed in this matter pursuant to the PSLRA which mandates that "*all discovery. . . .shall* be stayed during the pendency of *any* motion to dismiss. . ." 15 U.S.C. §78u-4(b)(3)(B) (emphasis added).  Thus, because it is entirely clear that discovery is stayed in this matter, as per the Court's several rules and the clear language of the PSLRA, KMK does not deem it necessary to provide specific objections to Plaintiffs' requests.  Rather the following general objections cover the entirety of Plaintiffs' requests and, if, at some time, the Court deems it appropriate to life the present stay, then, at that time, KMK would entertain a renewed subpoena."

(*See*, Responses and Objections of Keating, Muething & Klekamp to Subpoena, Attached as Exhibit "A").  This objection certainly does not give the impression that KMK is acting in accord with Magistrate Judge Hogan's previously lifted the ban on discovery in this case.

Rather, it was only after the Plaintiffs informed KMK that the PSLRA argument was not only inapplicable, but improper based upon Magistrate Judge Hogan's previous order (Doc. No. 349), that KMK stated in a footnote in its Memorandum in Opposition to

4

Plaintiffs' Motion to Compel that it was only making this argument to preserve the record. (Doc. No. 391, p. 7, n.3). The Plaintiffs are not this gullible, and they are sure that this Court is not either.

Second, even if true, which it is not, KMK's objection argument is disingenuous. If KMK had truly objected to Magistrate Judge Hogan's prior orders, KMK would have filed a formal objection to Magistrate Judge Hogan's order (Doc. No. 349) and not attempt to preserve an objection for appeal by placing a footnote in its Memorandum in Opposition to Plaintiffs' Motion to Compel.[1]

Third, KMK had an opportunity to inform Plaintiffs that it was making this argument just to preserve it for appeal prior to the filing of Plaintiffs' Motion to Compel, but chose not to utilize it. Plaintiffs' counsel sent Mr. Breidenstein a letter in which Mr. Brautigam asked him to reconcile KMK's PSLRA position in relation to the June 30, 2004 status conference. (See, 31 August, 2004 Correspondence, attached as Exhibit "B"). KMK, through its counsel, replied that "we respectfully decline to withdraw or amend our objections to your subpoena." (*See*, 2 September 2004 letter from Thomas W. Breidenstein to Michael G. Brautigam, Attached as Exhibit "C"). Thus, if KMK was truly only raising this argument to preserve the record for appeal, this would have been the perfect opportunity to have clarified this point. The fact that KMK did not do so

---

[1] It should also be noted that the footnote is also misrepresentative based upon the timing of events. KMK argues that it has been aware of the Court's prior orders and has produced over 4,000 pages of non-privileges documents in discovery. However, OHSL and Provident's production of documents came far in advance of the orders to which KMK is referring in its footnote. (Doc. No. 391, p. 7, n.3). As a result, KMK's previous discovery production on behalf of the OHSL and Provident Defendants does not explain its present PSLRA argument, but is just another example of KMK trying to find a way to justify or explain its improper behavior, regardless of the truth.

confirms that KMK was knowingly disregarding Magistrate Judge Hogan's Order. (Doc. No. 349).[2]

In sum, no matter what argument KMK tries to make, or how much KMK tries to minimalize its improper behavior, it is clear that KMK's PSLRA objection to Plaintiffs' subpoena, and correspondence which followed, confirms that KMK was intentionally disregarding Magistrate Judge Hogan's prior Order in order to create an argument for itself which would enable it to avoid compliance with Plaintiffs' subpoena. (Doc. No. 349).

### C. The Plaintiffs' Subpoena is Not in Violation of Federal Rule of Civil Procedure 45.

#### 1. KMK's Rights Have Not Been Violated Under Federal Rule of Civil Procedure 45

Plaintiffs have not placed an "undue burden or expense" upon KMK by serving it with this subpoena.[3] To the contrary, it has been quite the opposite. KMK argues that "Plaintiffs have made no effort to actually review the 4,039 pages of documents

---

[2] Finally, it is generally interesting that KMK is arguing that it has made the PSLRA argument in order to preserve the objection for appeal. KMK is obviously and justifiably not confident that its present non-party status will remain permanent. Perhaps this is an indirect acknowledgement by KMK that it also recognizes how tenuous its present non-party status is and that it is not based upon KMK's lack of improper conduct in this case, but rather upon the technicality of a statute of limitations.

[3] KMK does not make the argument that the subpoena is technically invalid, or was improperly served, but only that it constitutes an undue burden upon KMK. Although the Plaintiffs have responsibilities in relation to the issuance and service of a subpoena, the Plaintiffs submit that KMK is clearly exaggerating the "heavy burden" which is placed upon the Plaintiffs in this situation. KMK does not cite to any Ohio or federal law for this proposition, but rather just cites to a New York state case to state that abuse of a subpoena is an actionable tort. *Board of Ed. V. Farmingdale Classroom Teach. Ass'n.*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975). In short, KMK is doing everything it can to shift the focus away from its responsibility to respond and comply with this subpoena since it has absolutely refused to do so, and has no justification for doing so.

6

previously produced before serving the latest subpoena on June 10, 2004." (Doc. No. 391, p. 4). Aside from the obvious fact that KMK has only produced a single piece of paper (KMK's document retention policy, produced pursuant to a prior subpoena) in response to any of Plaintiffs' subpoenas, this is also an invalid argument because there is no rule which states that the responding party is not to be subject to any burden or work when responding to a subpoena. Subpoenas inherently require the responding party to incur some time and expense when responding to them. KMK is not unique in this regard, and should not be treated so in order to avoid compliance with this subpoena on this basis.

Further, the Plaintiffs have done everything possible to try and reduce this alleged burden upon KMK, but the Plaintiffs cannot do it all on their own. The Plaintiffs' made every effort to try and tailor the document requests for KMK through correspondence with KMK, but KMK has refused to cooperate and has been unresponsive. Only KMK can determine which documents are responsive to which document requests. KMK would certainly cry foul if the Plaintiffs tried to attribute certain documents to certain document requests which they believe had no relation to them. Thus, since KMK was not responsive to Plaintiffs' counsel's correspondence and attempts at cooperation, there was nothing else which the Plaintiffs could have done except file a motion.

    2.    **All Issues Regarding Document Requests 1-17 Have Not Been Previously Addressed by This Court.**

KMK argues that it should not be required to respond to the first seventeen document requests because they have previously been addressed by the Court in its Order

7

of April 8, 2004 (Doc. No. 313, p. 3).[4] However, there have been some important factual changes since this Order. First, this order was in relation to a subpoena which was served upon KMK on November 21, 2001 when it was a "party" to this action. (Doc. No. 313). Now, KMK is obviously now a "non-party," Similarly, although KMK infers that this is the case, the Court's Order of April 8, 2004 does not state that it is granting KMK's objection to Plaintiffs' document subpoena (Doc. No. 57) because the documents requested were privileged. Rather, the Court does so because of PSLRA. Thus, the basis for granting Plaintiffs' objections, and/or motion to quash, no longer exists since KMK is now a non-party and Magistrate Judge Hogan has specifically stated that discovery will no longer be stayed as to KMK. (Doc. No. 349). Finally, there is nothing in Doc. No. 313 which indicates that this Order is to be a standing Order in relation to any future subpoenas which are served upon KMK. Thus, although this is an artful attempt by KMK to manipulate the procedural facts of this case, it obviously is inaccurate and does not justify KMK's failure to respond to the Plaintiffs' first seventeen document requests.[5]

---

[4] KMK has to try and utilize this previous order to make its argument since it realizes that KMK cannot legitimately argue that document requests 1-17 are irrelevant or invalid. Plaintiffs seek documents related to the proxy materials (Document Request Nos. 1, 2); minutes of the board meetings where the PFGI-OHSL merger was discussed and materials presented at said meetings (Document Request Nos. 13, 14); document requests regarding the change of accounting policies or practices for PFGI (Document Request Nos. 3, 4, 9, 10); document requests regarding or related to PFGI's gains on sale of loans and leases (Document Request Nos. 5, 6, 7, 8); documents related to PFGI's reduction of its estimate of operating earnings for 2000 (Document Request Nos. 11, 12); and documents which would identify all KMK personnel who performed work in relation to the PFGI-OHSL merger, including the billing records of said individuals. (Document Request Nos. 16, 17). These are all obviously relevant and proper document requests.

[5] KMK does not even truly buy into this argument for it did not raise it in its Responses and Objections of Keating, Muething & Klekamp to Subpoena. (*See*, Responses and Objections of Keating, Muething & Klekamp to Subpoena, Attached as Exhibit "A").

8

Second, although KMK argues that it should not have to respond to these document requests because has already produced a substantial amount of these same documents on behalf of its clients Defendants OHSL and Provident in response to Plaintiffs' discovery requests, this is a misleading and unacceptable argument for a few reasons. First, the Plaintiffs did not request exactly the same documents of the OHSL and Provident Defendants as they are now with KMK. Second, as was initially stated to KMK through correspondence, and then again in its Motion to Compel, Plaintiff are not asking KMK to produce the same documents which the OHSL and Provident Defendants (and NOT KMK) previously produced on behalf of the OHSL and Provident Defendants, but rather are only asking KMK to provide some additional documentation which would indicate which of these previously produced documents match the present document requests. This was explained in two letters from Plaintiffs' counsel to Patrick Fischer of July 20, 2004 (both of which were hand delivered), but KMK conveniently neglects to mention this fact in its Opposition to Plaintiffs' Motion to Compel. (*See*, correspondence collectively attached as Exhibit "D"). In fact, these letters, and every other attempt to narrow the issues, was met with absolutely no cooperation from KMK. In many cases, it was met with no response at all. (*See*, correspondence collectively attached as Exhibit "D").

Thus, for the foregoing reasons, the objections to Document Requests one through seventeen should be overruled and KMK should be compelled to respond to these document requests.

**2.      Document Requests 18-25 Are Not Duplicative or Objectionable.**

The vast majority of Plaintiffs' document requests should not even be subject to discussion regarding their validity. In its Opposition to Plaintiffs' Motion to Compel, KMK raises some arguments to Plaintiffs' document requests and Plaintiffs will address each in turn.

First, Plaintiffs' Document Request No. 18 for "all KMK billing records that reflect work done by KMK personnel with respect to this litigation and the relevant state litigation," is not objectionable. Regardless of whether this Court has previously sustained non-party KMK's objection to the production of billing records in the past, this is a new day, with new facts, which make this document request highly relevant and unobjectionable. This document request is not to harass KMK, but is necessary to refresh the failing memories of KMK attorneys who are deponents in this case. Although Plaintiffs can understand why KMK does not want this to occur, this reason alone does not make this document request illegitimate, improper or objectionable in any way.

Second, in relation to Document Request No. 19, Plaintiffs are not seeking any documents that are work product, but rather just "all documents reflecting KMK's representation of its clients, including any documents that discuss conflict of interest." (Doc. No. 391, p. 4). Once again, just because these documents are uncomfortable for KMK, does not mean that they are harassing, overly broad, seek work product or privileged information. One of the important issues in this case was whether or not KMK adequately informed the OHSL and Provident Defendants of the obvious potential conflicts of interest that exist in this case after it was ordered to do by this Court. The

only way to truly know if this occurred is for Plaintiffs to review KMK's documents that discuss conflict of interest.

Third, the same can be said of Document Request No. 20. It requested "All documents referred to in the press release, attached as Exhibit B." (*See*, June 10, 2004 Subpoena, Attached as Exhibit "E" to this Motion). Although Plaintiffs have no way of knowing whether or not Exhibit was attached or not, Plaintiffs have accepted KMK's statement on this issue. Nonetheless, Plaintiffs' will not accept KMK's corresponding argument. As stated in Plaintiffs' Motion to Compel, regardless if Exhibit B was attached or not, KMK could have very easily rectified this issue through a simple request for the exhibit.[6] In addition, whether KMK wants to admit it or not, it did likely know that Exhibit "B" was the March 5, 2003 Provident Press Release announcing the first massive restatement, but just did not want to respond to it. If KMK had truly wanted to respond to Document Request No. 20, there were several ways in which it could have done so. However, instead, KMK chose to use this as an opportunity to excuse its noncompliance with this subpoena. This elevation of form over substance, especially in a circumstance where there is no doubt as to the document referred to, and after Plaintiffs' repeated attempts to address the omission (if there really was an omission), simply shows that KMK will not cooperate under any circumstances.

Fourth, document request No. 22 is not meant to harass KMK but obtain relevant information that Plaintiffs need to litigate their case. This document request asked for

---

[6] Although KMK objected to the subpoena on this basis, it never actually requested a copy of the exhibit which would have enabled it to respond to the document request. This probably did not occur because KMK is only interested in objecting to this subpoena, and has no interest in actually complying with it. If KMK was acting in good faith in relation to this subpoena, KMK would have responded to this subpoena at least in part. However, as this Court is aware, KMK did not respond to it at all.

11

"All documents provided by the KMK firm to any member of the Lindner Family." (*See*, June 10, 2004 Subpoena, Attached as Exhibit "E"). In response, KMK argues that the Plaintiffs just want to threaten one of KMK's clients, yet they do not provide any evidence that the Lindner family, a major shareholder in PFGI, is, in fact, a client of KMK on this or any other matter. Furthermore, KMK must take responsibility for its own conduct and decisions. If KMK's prior conduct or decisions adversely impacts upon another of its clients, this is not the Plaintiffs' fault, and it is certainly not a reason to preclude Plaintiffs' discovery request.

Finally, any alleged confusion regarding this document request was resolved by Plaintiffs' counsel's July 20, 2004 correspondence to Mr. Fischer. (*See*, correspondence collectively attached as Exhibit "D"). This letter explained the reason behind this document request and gave KMK the opportunity to explain why this document request should have been eliminated. KMK failed to take advantage of this opportunity. Thus, KMK has no one to blame but itself for the fact that this document request is at issue before this Court.

Fifth, Document Request No. 23 could likely have been resolved if KMK had cooperated with Plaintiffs' counsel.[7] This is because the Plaintiffs are not seeking a reproduction of the documents, but rather just a listing of the bate stamps of the applicable documents which KMK previously produced on behalf of the OHSL and Provident Defendants. KMK never provided this information. Thus, this is again further

---

[7] When a problem with a document request was recognized, the Plaintiffs withdrew it as they did with Document Request No. 24. (*See*, correspondence collectively attached as Exhibit "B"). Again, this is another example of the fact that KMK's deliberate strategy in this case is no cooperation at all.

12

confirmation that KMK's deliberate strategy in relation to Plaintiffs' subpoena was no cooperation at all.

Finally, KMK objects to Document No. 25. It is interesting to note that, unlike the objections to Document Requests 18, 19, 20, 22, and 23, this specific objection was not raised in KMK's Responses and Objections of Keating, Muething & Klekamp to Subpoena. (*See*, Responses and Objections of Keating, Muething & Klekamp to Subpoena, Attached as Exhibit "A"). This is probably because KMK has known all along that it does not have a good defense to this document request, but feels the need to make one last effort to try and prevent this Court from compelling it to produce these potentially damaging minutes.

Thus, based upon the foregoing, it is clear that KMK has not acted in good faith in relation to Plaintiffs' document requests. KMK neither responded to any document request nor produced any type of log which would have indicated which previously produced documents were responsive to the present document requests. In addition, while trying to avoid compliance with Plaintiffs' subpoena, KMK directly disregarded an order of this Court. (Doc. No. 349). As a result, it must be concluded that KMK has made the calculated decision that it is neither going to cooperate with Plaintiffs' counsel nor comply with Plaintiffs' subpoena, and that it will just let the chips fall where they may. As a consequence, Plaintiffs think that this Court should take KMK's bad faith into consideration when ruling on Plaintiffs' Motion to Compel, and accordingly sanction KMK for its misconduct in relation to Plaintiffs' subpoena.

      **D.**      **It is KMK, and not the Plaintiffs, that have Acted in Bad Faith in Relation to this Subpoena and Deserve Sanctions.**

      Once again, KMK attempts to make the argument that it was the Plaintiffs, and not KMK, which was uncooperative during this process. KMK argues that Plaintiffs' counsel did not respond to Mr. Fischer's letter of June 29, 2004, but KMK neglects to mention the other correspondence which was taking place with other KMK representatives during this time period. This Court would be best served by not looking at one letter in isolation, but at the collective correspondence regarding the subpoena at issue. A complete reading of this correspondence clearly reveals that the Plaintiffs have made every effort to be accommodating, and/or to explain their position in relation to each document request, but that KMK was not responsive, and had no interest in complying with this subpoena. Plaintiffs have always been willing—and remain willing—to negotiate the production of documents with KMK in good faith and without resorting to Court intervention. All of these attempts have been met with a complete lack of cooperation and obfuscation that can only be deemed bad faith.

      Similarly, although KMK complains of having to "expend unnecessary time, money, and expense in this third-party discovery dispute," it neglects to mention that it has spent much more time fighting the subpoena than it would have spent if it had just responded to the subpoena and/or cooperated with Plaintiffs' counsel. As stated above many times, Plaintiffs were not asking that KMK reproduce documents which it had previously produced on behalf of the OHSL and Provident Defendants, but rather were merely asking that KMK provide some type of log as to which of these documents which were previously produced on behalf of the OHSL and Provident Defendants are responsive to the present document requests. Since KMK would not want the Plaintiffs

to go through and guess at which previously produced documents are responsive to Plaintiffs' present document requests, there is no other option in this case than but for KMK to do this work itself.

Further, any argument which KMK has as to the Plaintiffs' document requests being harassing is lost based upon the fact that KMK made absolutely no effort to respond to Plaintiffs' subpoena. Plaintiffs' are entitled to subpoena KMK, and the mere act of doing so does not constitute harassment. The fact that KMK has not responded to any part of the subpoena is confirmation that the subpoena is not harassing, but that KMK has made a conscious decision not to comply with this subpoena at all. This decision is not based upon the content of the subpoena, but its consistent refusal to be cooperative with the Plaintiffs on any matter.

Finally, it should be noted that the Plaintiffs would not even be requesting sanctions at this time if KMK had in any way acted in good faith in relation to Plaintiffs' subpoena.[8] Although Plaintiffs' counsel, Michael G. Brautigam, Esq., responded to KMK's Responses and Objections of Keating, Muething & Klekamp to Subpoena the next day by withdrawing certain requests and attempting, in good faith, to narrow the issues, this gesture was never reciprocated in kind. The fact that KMK never attempted to take advantage of this communication confirms that KMK has not been acting in good

---

[8] The OHSL and Provident Defendants infer that Plaintiffs enjoy having to repeatedly filed motions to compel, motions for sanctions, and other comparable motions against the OHSL and Provident Defendants and KMK in an effort to get these Defendants and KMK to comply with federal law. This is not the case, and Plaintiffs would greatly prefer to solve these problems without resorting to Court intervention. Further, the fact that it is the OHSL and Provident Defendants and KMK which are the problem, rather than the Plaintiffs, is confirmed by the fact that the Plaintiffs never had to make these same type of filings in relation to Ernst & Young or its counsel. If KMK would cease its misconduct, then the Plaintiffs would simultaneously cease the filing of motions clearly documenting this misconduct in this case.

faith, and that it has never had any intention of doing so. Consequently, KMK should be sanctioned for its misconduct and the unnecessary time and expense it has caused the Plaintiffs in bringing Plaintiffs' Motion to Compel.

### III.  CONCLUSION

KMK cannot escape the undeniable fact that it has not produced a single piece of paper in response to this subpoena, and only one sheet of paper in response to a previous subpoena. KMK undoubtedldy has documents that are responsive to the Plaintiffs' subpoena, but refuses to provide them to the Plaintiffs. In addition, KMK attempts to do so in part by disregarding and effectively mocking previous orders of this Court. Although KMK has attempted to justify its disregard of this Court's Order (Doc. No. 349) in a footnote of its Opposition to Plaintiffs' Motion to Compel, this argument is not consistent with the facts and is not a basis for blatantly disregarding an Order of this Court in any event. KMK's collective conduct confirms only one thing: that KMK has made a calculated decision to not cooperate with the Plaintiffs and/or act in good faith in relation to the Plaintiffs' subpoena. If this necessitates that KMK disregard an order of the Court along the way, then so be it. KMK has its priorities. Therefore, due to KMK's blatant bad faith, and disrespect of this Court, Plaintiffs respectfully request that this Court should not only order KMK to comply with the Plaintiffs' subpoena, but that it should sanction KMK for its bad faith by ordering KMK to pay the costs associated with this Motion and the Plaintiffs' actions leading up thereto.

DATED:  1 October 2004                    Respectfully Submitted,


<u>/s/ Michael G. Brautigam</u>
Gene Mesh (OH Bar # 0002076)
Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800
(513) 221-1097  (fax)

*Attorneys for Plaintiffs and the
Putative Class*

**CERTIFICATE OF SERVICE**

       This is to certify that a true and accurate copy of the foregoing Reply to Non-Party KMK's Opposition to Plaintiffs' Motion to Compel Compliance with Subpoena Issued to Non-Party KMK and Affidavit of Michael G. Brautigam, Esq. was served this 1st day of October as per the ECF system:

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Michael R. Barrett, Esq.
Thomas W. Breidenstein, Esq.
Barrett & Weber
105 E. Fourth Street
Suite 500, Fourth and Walnut Centre
Cincinnati, Ohio 45202-4015

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249 .


David Greer, Esq.
Bieser, Greer & Landis, LLP
400 National City Center
6 North Main Street
Dayton, OH 45402-1908


                                    /s/ Stephanie A. Hite
                                        Stephanie A. Hite