# Exhibit E

**FILED**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JUN 10 2004

JAMES BONINI, Clerk
CINCINNATI, OHIO

| | |
|---|---|
| Walter W. Thiemann, on behalf of himself and of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> OHSL Financial Corporation, et al. <br><br> Defendants. | Case No. C-1-00-793 <br><br> Judge Sandra S. Beckwith <br><br><br> **SUBPOENA** |

**TO:**  KEATING, MUETHING & KLEKAMP P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

**YOU ARE COMMANDED**, pursuant to Rule 45 of the Federal Rules of Civil Procedure to produce documents within thirty days after receipt of this subpoena, at Gene Mesh & Associates, 2605 Burnet Avenue, Cincinnati, Ohio 45219-2502. These documents are described in Exhibits A and B hereto.

These documents have been requested by Plaintiff whose attorneys' name, address and telephone number is:

> Michael G. Brautigam, Esquire
> GENE MESH & ASSOCIATES
> 2605 Burnet Avenue
> Cincinnati, Ohio 45219-2502
> 513-221-8800 phone
> 513-221-1097 fax

Rule 45 of Federal Rules of Civil Procedure states:

## PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce more at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i) fails to allow reasonable time for compliance;

    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

    (iii) requires disclosure of privileged or other protected matter and no exception of waiver applies, or

    (iv) subjects a person to undue burden.

(B) If a subpoena

    (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

    (iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

## DUTIES IN RESPONDING TO SUBPOENA

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to cause the demanding party to contest the claim.

Dated, this 10th day of June, 2004.

*/s/ Michael G. B.*

Michael G. Brautigam Esquire
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
513-221-8800 phone
513-221-1097 fax

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2004, a true and correct copy of the Document Subpoena was served by hand delivery and facsilile upon:

James E. Burke, Esq.
Keating, Muething & Klekamp PLL
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202

and by facsimile:

John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
Governor's Knoll
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249


David C. Greer
James H. Greer
BIESER, GREER & LANDIS
400 National City Center
6 North Main Street
Dayton, OH 45402-1908

_____
Stephanie A. Hite

## EXIBIT A

Pursuant to Federal Rule of Civil Procedure 45, plaintiff requests that Keating Muething & Klekamp ("KMK") produce the following documents at the offices of Gene Mesh & Associates, 2605 Burnet Avenue, Cincinnati, Ohio 45219-2502 within thirty days after receipt of this request:

### DEFINITIONS AND REQUIREMENTS

a. The definitions and requirements contained in the Federal Rules of Civil Procedure and the United States District Court for the Southern District of Ohio are incorporated by reference.

b. The instant request for documents shall be deemed to be continuing so as to require supplemental production should KMK obtain supplemental or additional documents between the time the documents are initially produced and the time of trial.

c. In responding to these Requests, you are required to furnish all documents within your possession, custody or control.

d. If any of the Requests is deemed to call for the production of any privileged material and such privilege is asserted, you are required to furnish at list identifying each document so withheld together with the following information:

   1. The reason for withholding;

   2. A statement of facts constituting the basis for any claim of privilege, work product or other ground of non-disclosure;

   3. A brief description of the document, including:

      i. the date of the document

      ii. the name(s) of its author(s), or preparer(s) and an identification by employment and title of each such person;

      iii. the names of each person who was sent or has had access to, or custody of, the documents, together with an identification of each such person;

      iv. the paragraph of this Request to which the document relates; and

      v. in the case of any documents relating in any way to an oral communication, identification of such oral communication.

e. If any documents requested herein have been lost or destroyed, you are required to identify the documents so lost or destroyed by author, date and subject matter.

f. Unless otherwise specified this Request calls for documents created, edited or modified during the time period January 1, 1999 to the present.

g. As used herein, unless otherwise specified, the following terms shall have the meaning set forth after each such term:

   1. The term "merger transaction" or "merger" shall refer to the combination of OHSL and Provident Financial Group Inc. in a stock transaction, which took place in the fall of 1999.

   2. The term "OHSL" refers to OHSL Financial Corp., to its predecessors, to it parents, to its subsidiaries, to its present and former divisions, branches, authorized agents, attorneys, servants, employees, officers, directors, representatives, and to any other person that is or has ever acted for or on behalf of it.

   3. The term "PFGI" refers to Provident Financial Group Inc., Provident Bank, any other relevant Provident entity, to their predecessors, parents subsidiaries, present and former divisions, branches authorized agents, attorneys, servants, employees, officers, directors, representatives, and to any other person that is or has ever acted for or on behalf of them.

h. The term "person" means any natural person and any corporation, partnership, association, joint venture, firm, or other business enterprise or legal entity, and means both the singular and plural.

i. The work "document" and "writing" are used interchangeably and mean any written or graphic matter of any kind whatsoever, however produced or reproduced, and electronically or magnetically recorded matter of any kind or character, however produced or reproduced, and any other matter constituting the recording of data or information upon any tangible thing by any means, including but not limited to the original and any nonidentical copy of any of the following (regardless of however or by whomever prepared, produced or reproduced): books, records, reports, memoranda, notes letters, speeches, telegrams, diaries, calendar or diary entries, schedules, maps, graphs, charts, contracts, releases, appraisals, valuations, estimates, opinions, studies, analyses, summaries, magazines, booklets, pamphlets, circulars, brochures, bulletins, instructions, minutes, photographs, purchase orders, bills, checks, drafts, certificates, tabulations, questionnaires, films or tapes, surveys, messages, correspondence, letters, records, (of meetings, conferences, and telephone or other conversations or communications), tables, drawings, sketches, tax reports, working papers, financial statements, computer data (including information or programs stored in a computer, whether or not ever printed out or displayed), as well as any other tangible thing on which information is recorded in writing, sound, electronic or magnetic impulse, or in any other manner, and including preliminary versions, drafts, revisions, or amendments of any of the foregoing and any supporting, underlying, or preparatory material. Any document with any marks such as

j. initials, comments or notations of any kind is not deemed to be identical to one without such marks and is to be produced as a separate document. The term document specifically includes email, and any other form of electronic communication.

j. The term "oral communication" means any spoken communication made in person (at a meeting, conference, or otherwise) or made in a telephone conversation.

k. "Refer to," "relate to" and "concerning" mean, directly to indirectly, referring to, relating to, connected with, commenting on, impinging or impacting upon, affecting, responding to, showing, describing, analyzing, reflecting or constituting.

l. "Financial statements" include, but are not limited to the following, whether audited or unaudited, and whether final, interim, pro forma, complete or partial; consolidated and non-consolidated balance sheets, statements of earnings, additional paid-in capital, retained earnings or source and application or use of funds; cash flow projections; notes to each such statement; and any other statements and notes that pertain to the applicable defendant's past or present financial condition, including accountants' work papers.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

1. All drafts of the poxy statement mailed to OHSL shareholders on or about September 27, 1999.

2. All letters, memoranda, notes, emails and other correspondence(both internal and external) and relating to the proxy statement mailed to OHSL shareholders on or about September 27, 1999 or drafts thereto.

3. All documents relating to any change in accounting policy adopted by PFGI for the period January 1, 1998 to the present.

4. All letters, memoranda, notes, emails and other correspondence (both internal and external) and relating to any change in accounting policy adopted by PFGI for the period January 1, 1998 to the present.

5. All Financial Statements and other documents reflecting PFGI's Gains on Sale of Loans and Leases for the period January 1, 1997 through the present.

6. All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with external auditors, and including any attachments thereto, and relating to PFGI's gains on sale of loans and leases for the period January 1, 1997 through the present.

7. All documents reflecting the composition and treatment of the cash and non-cash components of PFGI's gains on sale of loans and leases for the period January 1, 1997 through the present.

8. All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with any external auditors, and

including any attachments thereto, and relating to the composition and treatment of the cash and non-cash components of PFGI's gains on sale of loans and leases for the period January 1, 1997 through the present.

9. All documents reflecting the change of accounting announced by PFGI on or about August 27, 2000.

10. All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with external auditors, and including any attachments thereto, and concerning the change of accounting announced by PFGI on or about August 27, 2000.

11. All documents reflecting PFGI's reduction of its estimate of operating earnings for 2000 from approximately $3.60 per share to $2.65 per share.

12. All letters, memoranda, notes, emails and other correspondence, both internal and external, including any correspondence with external auditors, and including any attachments thereto, and concerning PFGI's reduction of its estimate of operating earnings for 2000 from approximately $3.60 per share to $2.65 per share.

13. All board minutes of PFGI (including minutes of the meetings of any committee thereof) where the merger of OHSL and PFGI was discussed.

14. All materials presented tot he board of PFGI (including any committee thereof) at any meeting at which the merger of OHSL and PFGI was discussed.

15. Any and all of your policies concerning the retention or destruction of documents of the types requested herein.

16. Documents sufficient to identify all KMK personnel who performed any work relating to the merger of OHSL and PFGI.

17. All KMK billing records that reflect work done by KMK personnel in regard to the merger of OHSL and PFGI.

18. All KMK billing records that reflect work done by KMK personnel with respect to this litigation and the related state court litigation. (Nolte, et al v OHSL, et al)

19. All documents reflecting KMK's representation of its clients, including any documents that discuss conflict of interest.

20. All documents referred to in the press release, attached as Ex. B.

21. All drafts of PFGI's 2002 Annual Report.

22. All documents provided by the KMK firm to any member of the Lindner family.

23. All documents and correspondence provided to the SEC and/or any other state or Federal regulatory agency, such as the FDIC.

24. All insurance policies held by KMK that would protentially cover securities fraud and/or legal malpractice claims against KMK.

25. Minutes of any KMK meeting where this litigation was discussed (including KMK's status as a defendant in litigation arising out of the OHSL-PFGI merger).

Dated: June 10, 2004

Michael G. Brautigam
GENE MESH & ASSOCIATES
2605 Burnet Avenue
Cincinnati, Ohio 45219-2502
(513) 221-8800

Lead Counsel for Plaintiff
    and the Class

Here's $100 for banking online.

Quicken

Quicken Brokerage

## Provident Financial Group, Inc. Announces Restatement Of Operating Results for Years 1997 through 2002

Wednesday, March 5, 2003 07:31 AM ET

Printer-friendly version

CINCINNATI, March 5 /PRNewswire-FirstCall/ — Provident Financial Group, Inc. announced today a restatement to its operating results for the years 1997 through 2002.

The restatement of previously reported operating results is attributed to errors in the accounting for nine auto lease financing transactions originated between 1997 and 1999.

The errors that existed in the accounting for these transactions were first discovered by the company's finance staff in connection with the testing and installation of a financial model that identified differences in income that was originally recorded, compared with the income generated by the financial model. The company then notified its independent auditors and bank regulators and has reported all relevant information to its board of directors and audit committee. The company has been working closely with its independent auditors since the accounting errors were first discovered.



Everything you need to bank online.

A review of the accounting for the nine transactions also concluded that none of the transactions should have been reported off-balance sheet as a sale and lease back of operating leases. The appropriate accounting was to report the transactions as financing leases with all assets and related liabilities included on the balance sheet. As a result, the company will also be restating its balance sheets for the years 1997 through 2002 to include the nine auto lease financing transactions.

Christopher J. Carey, Executive Vice President and Chief Financial Officer of Provident, stated, "The restatement announced today is attributable solely to errors in the accounting for the nine auto lease transactions that were originated between 1997 and 1999. All auto lease transactions originated beginning in 2000 and thereafter were structured and treated as financing leases and have been included on our balance sheet. We also reviewed the accounting for each of the subsequent transactions and concluded that they were accounted for correctly."

The previously announced earnings per share outlook for 2003 was between $2.50 and $2.70. As a result of the evaluation of the estimated impact of the auto lease financing transactions, the revised earnings per share outlook is between $2.30 and $2.50. The company's expectation is that the impact of this matter will be significantly less in 2004 and in future years.

http://quicken.com/investments/news/story/?story=NewsStory/PR/20030305/NYW057_104...  3/5/2003

The chart below shows as reported and restated net income and diluted earnings per share for the years 1997 through 2002.

Net Income & Diluted Earnings Per Share

($ in millions, except per share data)

|  | Year Ended December 31, | | | | | |
|---|---|---|---|---|---|---|
|  | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 |
| **As Reported** | | | | | | |
| Net Income | $119.4 | $23.3 | $73.6 | $150.9 | $122.4 | $114.7 |
| Earnings Per Share | $2.35 | $0.45 | $1.46 | $3.08 | $2.48 | $2.38 |
| **Restated** | | | | | | |
| Net Income | $99.3 | $3.2 | $57.7 | $139.6 | $120.4 | $113.8 |
| Earnings Per Share | $1.96 | $0.07 | $1.15 | $2.85 | $2.44 | $2.36 |
| **Variance** | | | | | | |
| Net Income | $(20.1) | $(20.1) | $(15.9) | $(11.3) | $(2.0) | $(0.9) |
| Earnings Per Share | $(0.39) | $(0.40) | $(0.31) | $(0.23) | $(0.04) | $(0.02) |

The chart below shows as reported and restated end of period assets for the years 1997 through 2002.

End of Period Assets

($ in millions)

|  | Year Ended December 31, | | | | | |
|---|---|---|---|---|---|---|
|  | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 |
| **As Reported** | | | | | | |
| Total Assets | $16,721.2 | $15,573.6 | $13,857.4 | $10,537.9 | $8,949.7 | $7,946.6 |
| **Restated** | | | | | | |
| Total Assets | $17,534.4 | $16,540.0 | $14,982.5 | $11,821.1 | $9,581.4 | $8,269.4 |
| **Variance** | | | | | | |
| Total Assets | $813.2 | $966.4 | $1,125.1 | $1,283.2 | $631.7 | $322.8 |

The total risk based capital ratio at December 31, 2002 on a restated basis was 11.89% compared with the originally reported 12.17%.

Forward-Looking Statements

This news release contains certain forward-looking statements that are subject to numerous assumptions, risks or uncertainties. The Private Securities Litigation Reform Act of 1995 provides a safe harbor for forward-looking statements. Actual results could differ materially from those contained in or implied by such forward-looking statements for a variety of factors including: sharp and/or rapid changes in interest rates; significant changes in the anticipated economic scenario which could materially change anticipated credit quality trends; the ability to generate loans and leases; significant cost, delay in, or inability to execute

strategic initiatives designed to grow revenues and/or manage expenses; consummation of significant business combinations or divestitures; and significant changes in accounting, tax, or regulatory practices or requirements and factors noted in connection with forward-looking statements. Additionally, borrowers could suffer unanticipated losses without regard to general economic conditions. The result of these and other factors could cause differences from expectations in the level of defaults, changes in the risk characteristics of the loan and lease portfolio, and changes in the provision for loan and lease losses. Forward-looking statements speak only as of the date made. Provident undertakes no obligations to update any forward-looking statements to reflect events or circumstances arising after the date on which they are made.

About Provident Financial Group, Inc.

Provident Financial Group, Inc. (Nasdaq: PFGI, news) is a bank holding company located in Cincinnati, Ohio. Its main subsidiary, The Provident Bank, provides a diverse line of banking and financial products and services regionally; selected business activities are also conducted nationally. Consumer, small business, and investment products and services are offered through a network of retail financial centers located primarily within Southwestern Ohio and Northern Kentucky. Provident also has a growing presence on the West Coast of Florida with 13 retail financial centers. Commercial banking products and services are offered through nine regional offices. Customers have access to banking services 24-hours a day through Provident's extensive network of ATMs, Telebank, a telephone customer service center, and the Internet at http://www.providentbank.com. At December 31, 2002, Provident Financial Group had $11.3 billion in loans outstanding, $9.8 billion in deposits, and assets of $17.5 billion. Provident has served the financial needs of its customers for 100 years, and currently 3,400 Provident associates serve approximately 600,000 customers. Provident Financial Group's common stock trades on the Nasdaq Stock Market under the symbol PFGI.

Conference Call

A conference call will be held today (Wednesday, March 5, 2003) at 11:00 a.m. (ET) to discuss the contents of this news release. The call can be accessed by calling 1-877-818-4511. A replay of the call will be available through Monday, March 10, 2003 by calling 1-800-642-1687 (passcode 131 20).

For further information, please contact:

Christopher J. Carey
Executive Vice President & Chief Financial Officer
1-513-639-4644 / 1-800-851-9521
e-mail: IR@provident-financial.com

SOURCE Provident Financial Group, Inc.

CONTACT: Christopher J. Carey, Executive Vice President & Chief Financial Officer of Provident Financial Group, Inc., +1-513-639-4644 or 1-800-851-9521, or IR@provident-financial.com

Q Account | Trading | Portfolio | Quotes & Research | Markets | Planning & Tax | Account Services

Brokerage services provided by Muriel Siebert & Co., Inc. Member NYSE, NASD, SIPC.
Portions ©2003 Intuit Inc., portions ©2003 Muriel Siebert & Co., Inc. and portions ©2003 Pershing LLC. All rights reserved. Legal Notices.

By accessing and using this page you agree to the Terms of Service and the Additional Brokerage Terms.

Privacy Statement

Current market data, including delayed stock and certain mutual fund prices, provided by S&P Comstock. Disclaimer.
Bond and option quotes, certain mutual fund prices and real-time stock prices provided by unaffiliated quotes providers.
Historical stock market data and mutual fund distribution information provided by Iverson Financial Services, Inc.

3/5/2003



Member Sign In - Free Sign Up for personalized features

News & Commentary

sponsored link:
WIN A 50" HDTV or A XEROX PRINTER!

### NewsFinder

MARKETWATCH NEWS | NEWS SERVICES | PRESS RELEASES | MARKET ADVISERS | NEWS SEARCH

Ticker/keyword: Ticker [ ]    Source: Market Pulse [Go]

**8:21am 03/05/03** Provident Financial tumbles after restating results (PFGI) *By Tomi Kilgore*
Shares of Provident Financial (PFGI) are tumbling $5.07, or 18 percent, to $23 in pre-open trading after the bank holding company restated operating results from 1997 through 2002 due to errors in the accounting treatment of nine auto lease financing transactions originated. The company also cut its 2003 earnings forecast to $2.30 to $2.50 a share from $2.50 to $2.70 as a result of the estimated impact of the auto lease financing transactions.

E-mail this article    Reprints    Create Alert

#### Most Recent MarketPulse Bulletins...

**8:37am 03/05/03** PetsMart slides after Q4 earns miss expectations - *Tomi Kilgore*

**8:34am 03/05/03** Boeing says BAE 'interesting candidate' for merger - *Steve Goldstein*

**8:21am 03/05/03** Provident Financial tumbles after restating results - *Tomi Kilgore*

**8:13am 03/05/03** Alaska Air's Feb. traffic increases 5.8% - *Tomi Kilgore*

**8:00am 03/05/03** Costco slides in pre-open on Q2 earns miss - *Tomi Kilgore*

More MarketPulse Bulletins...



### Trading Center


Trade Here!


Trade Here!


Trade Here!

Front Page | Message Boards | Mobile | MarketPlace | Free Membership
Feedback | Letters to the Editor | Site Index | Company Info | Jobs | Advertising Media Kit | Licensing

Make CBS.MarketWatch.com your Home Page

http://cbs.marketwatch.com/news/intuit/pulseone.asp?siteid=intuit&dist=intuit&dateid=376...    3/5/2003