## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **WALTER W. THIEMANN, et al.** | : | **Civil Action No. C-1-00-793** |
| **Plaintiffs,** | : | **Judge Sandra S. Beckwith** |
| **vs.** | : | **Magistrate Judge Timothy Hogan** |
| **OHSL FINANCIAL CORP., et al.** | : | |
| **Defendants.** | : | |

**PLAINTIFFS' REPLY TO MEMORANDUM OF OSHL AND PROVIDENT DEFENDANTS IN OPPOSITION TO MOTION TO HOLD JAMES E. BURKE, ESQ. AND KMK IN CONTEMPT FOR VIOLATING THIS COURT'S MAY 10, 2004 ORDER AND MEMORANDUM IN OPPOSITION TO MOTION OF NON-PARTY DR. SIDNEY A PEERLESS FOR PROTECTIVE ORDER PURSUANT TO F.R. CIV. P. 30(D)(4) AND AFFIDAVIT OF MICHAEL G. BRAUTIGAM, ESQ.**

Plaintiffs hereby reply to the Memorandum of OHSL and Provident Defendants in Opposition to Motion to Hold James E. Burke, Esq. and KMK in Contempt for Violating this Court's May 10, 2004 Order (hereinafter "Memorandum in Opposition") and respond to the Motion of Non-Party Dr. Sidney A. Peerless for Protective Order Pursuant to F.R.Civ. P. 30(D)(4) (hereinafter "Motion for Protective Order"). Plaintiffs submit the following Memorandum and Affidavit of Michael G. Brautigam, Esq., filed contempoaneously with this Reply Brief, in support of its reply and Memorandum in Opposition to the Motion of Non-Party Dr. Sidney A. Peerless for Protective Order.

1

**MEMORANDUM**

## I.    INTRODUCTION

James E. Burke, Esq. and KMK acted improperly and contemptuously of this Court's prior May 10, 2004 order[1] during Dr. Peerless' deposition by instructing him not to answer non-privileged questions, by making speaking objections during the deposition, and by ultimately prematurely terminating the deposition by stating that he would be seeking a protective order. (Peerless dep. pp. 98-99).[2]  Although the OHSL and Provident

---

[1]   Judge Beckwith stated as follows during Defendant Pedoto's deposition:

> "Well, if Ms. Rowe is correct and a single line of questioning has been asked and answered and asked and answered again and has eventually devolved into a - - harassing manner of taking the deposition, then that would be a proper objection under Rule 30(b)(4).

> On the other hand, if she is incorrect and she has improperly instructed the witness not to answer, then certainly that might be cause for sanctions. By the same token, speaking objections, coaching the witness in the course of the objection would be improper.  And I would caution Ms. Rowe not to do that.

> And if she does that and Mr. Brautigam submits the transcript of the deposition supporting a contention that, after being cautioned, Ms. Rowe continued to make speaking objections, then the Court would entertain a motion for sanctions, which could involve allowing the plaintiff to take another deposition at opposing counsel's cost."

(Pedoto dep. pp. 228-229).  As a result, the Court invited the Plaintiffs to file a motion for appropriate sanctions if the circumstances warranted it.  In particular, this Court stated that "if this court finds that the instruction not to answer was improvident, or there were speaking objections after 3:15 PM today, appropriate sanctions may be in order. **All counsel** are cautioned on that." (Pedoto dep. pp 229-230).

[2]   Although Mr. Burke may not have been the one to have said the magic words which ended the deposition, he certainly created a situation in which no other option remained. If Mr. Burke was going to continue to object to Plaintiffs' counsel's questions, and instruct Dr. Peerless not to answer, it is hard for the OHSL and Provident Defendants to sincerely argue that Mr. Burke did anything but prematurely end the deposition.

Defendants are trying their best to justify Mr. Burke and KMK's improper behavior, they can not do it.

The OHSL and Provident Defendants' main argument is that Plaintiffs' counsel improperly and repeatedly asked Dr. Peerless questions when he knew that he could not answer them. However, this is not the case. Plaintiffs' counsel's questions were proper in all regards.  It has never been a prerequisite to asking a question at a deposition that the questioner must know that the deponent knows the answer before he asks it.  There is also no rule that questions cannot be asked which would be embarrassing or damaging to the deponent, the deponent's counsel, or the deponent's prior employer. Mr. Burke has tried to make these a rule in this deposition, and prior depositions, but he does not have the authority to re-write the Federal Rules of Civil Procedure.[3]  Finally, it must be noted that Mr. Burke has not instructed other deponents not to answer the same type of questions which he instruction Dr. Peerless not to answer during his deposition.  The OHSL and Provident Defendants cannot reconcile the fact that nature and quality of questions which were previously proper have somehow become improper.

In sum, Mr. Burke and KMK should be held in contempt because they instructed Dr. Peerless not to answer legitimate questions and prematurely ended the deposition.

---

[3]   This same type of objection was made by Mr. Burke during Defendant Brinker's deposition. In particular, Mr. Burke made the following objection:

> MR. BURKE:  Your Honor, the — Mr. Brautigam is knowingly misstating the record and **asking the witness questions that he obviously is, is unsure of**, just in an effort to inject confusion and further the confusion of these proceedings.  And I do have a continuing objection to this.

(Brinker dep. p. 40).  Although there is no doubt that Mr. Burke would like this to be a valid objection given the number of his clients that have had this problem, repetition of an invalid objection does not make it valid.

However, most importantly, Mr. Burke and KMK shockingly disregarded a prior order of this Court in the process.  Consequently, Mr. Burke and KMK should be held in contempt by this Court and sanctioned for this misconduct.

II.    **LEGAL ARGUMENT**

   A.    **Judge Beckwith's Instructions to All Counsel on May 10, 2004 Constitute an Order of This Court**

      1.    **The OHSL and Provident Defendants have Improperly Challenged the Existence of Judge Beckwith's Order of May 10, 2004**

One of the OHSL and Provident Defendants most surprising arguments in this entire Memorandum in Opposition is that they question the validity of Judge Beckwith's May 10, 2004 order during Defendant Pedoto's deposition. (Doc. No. 394, p. 18).  The OHSL and Provident Defendants know that in order for Mr. Burke and KMK to be found in contempt, they must have violated an order which was already in place.  As a result, the OHSL and Provident Defendants have tried to argue that no order existed in order to excuse Mr. Burke and KMK's conduct during Dr. Peerless' deposition.  In particular, the OHSL and Provident Defendants argue that "it is not altogether clear that Judge Beckwith's statements were sufficiently specific to constitute a formal order, the violation of which can subject a party to the extraordinary sanction of contempt (as opposed to discovery sanctions under the Federal Rules)."  (Doc. No. 394, p. 18).

The Plaintiffs are truly shocked by this statement.  Although Judge Beckwith's statements did not arise in a separately filed order, there is no doubt that Judge Beckwith's instructions to all counsel during Defendant Pedoto's deposition were specific, and constituted an order.  This is a particularly shocking argument since Mr. Burke and KMK have never previously challenged the existence of Judge Beckwith's

order and have cited to it when it was helpful for them to do so.[4]  In fact, Mr. Burke had

no questions of the existence or applicability of Judge Beckwith's Order during Dr.

Peerless' deposition when he cited to it in order to challenge Mr. Brautigam's

questioning. (Peerless dep. p. 96).  It is only now that Mr. Burke and KMK's actions are

being examined in light of the Judge Beckwith's order that it is being improperly

questioned.

> **2.      The OHSL and Provident Defendants were Slow to File Their Motion for Protective Order Because They Knew that KMK Had Violated the Order.**

The fact that the OHSL and Provident Defendants were slow to file their motion

for protective order is further evidence that the OHSL and Provident Defendants know

that a valid order exists and that Mr. Burke and KMK's conduct during Dr. Peerless'

deposition violated it.  Plaintiffs had no trouble filing their Motion to Hold James E.

Burke and KMK in Contempt for Violating this Court's May 10, 2004 Order on

September 10, 2004.  The OHSL and Provident Defendants did not file their Motion for

Protective Order until September 24, 2004. Although the Court gave the OHSL and

Provident Defendants until September 24, 2004 to file this motion, the fact that they did

not file their Motion for Protective Order at or before the time the Plaintiffs filed their

motion confirms that this was not something which they particularly wanted to do.[5]  The

---

[4]  This is not the first time that the Plaintiffs have had to move to hold KMK in contempt for their conduct at depositions (*See*, Doc. Nos. 344, 354, and 359), and since this improper and disrespectful conduct does not seem to be waning, Plaintiffs' submit that Mr. Burke and KMK's improper conduct will likely continue until properly sanctioned for such misconduct.

[5]  The OHSL and Provident Defendants state that they were waiting for a deposition transcript in order to file their motion for protective order. However, the OHSL and Provident Defendants could and should have received Dr. Peerless' deposition transcript

OHSL and Provident Defendants knew that Mr. Burke and KMK had violated Judge Beckwith's order by instructing Dr. Peerless not to answer non-privileged questions.  As a result, the OHSL and Provident Defendants did not want to unnecessarily call this fact to the Court's attention.  Therefore, it is likely that the OHSL and Provident Defendants never would have filed their Motion for Protective Order if not forced to do so by the Plaintiffs' filing of their Motion to Hold Burke in Contempt.

> **B.**    **The Motion to Hold James E. Burke and KMK in Contempt Should be Granted Because Their Conduct Violated  Judge Beckwith's Order.**

> > **1.**    **Mr. Burke and KMK Had No Legitimate Basis on Which to Instruction Dr. Peerless Not to Answer Plaintiffs' Counsel's Questions.**

There is no doubt that Mr. Burke and KMK violated not only Judge Beckwith's Order of May 10, 2004, but also Fed.R.Civ.P. 30(d).  Although the OHSL and Provident Defendants argue that "nothing done in connection with Dr. Peerless' deposition violated Judge Beckwith's admonition," they are only half correct. The Plaintiffs did not do anything which violated Judge Beckwith's order.

The OHSL and Provident Defendants misrepresent the record when they state that Mr. Burke and KMK properly instructed Dr. Peerless not to answer "repetitive, oppressive, harassing and annoying questions." (Doc. No. 394, pp. 16-17).   However, this is not the case. Plaintiffs' counsel did ask Dr. Peerless several questions which he could not answer. However, as stated earlier, it is not a prerequisite that the questioner know that the deponent can answer the question before it is asked.  Further, Mr. Burke

---

at the same time.  The timing of the filing of Dr. Peerless' deposition transcript did not stop the Plaintiffs' counsel from filing their motion, so there was no reason why it should have stopped a large firm from doing so.

and KMK have no right to instruct Dr. Peerless not to answer just because he does not know the answers to the questions he is being asked. Nevertheless, Mr. Burke and KMK continued to do just that because it was the only way to try and camouflage Dr. Peerless' lack of knowledge and/or cooperation, disrupt Plaintiffs' counsel's concentration and questioning, and/or exhaust Plaintiffs' limited seven hours of questioning.

**2.**    **Mr. Burke and KMK Improperly Made Speaking Objections**

Mr. Burke and KMK also violated Judge Beckwith's order of May 10, 2004 by making several speaking objections during Dr. Peerless' deposition. The Plaintiffs cite to several examples of Mr. Burke's speaking objections in their Motion to Hold James E. Burke and KMK in Contempt for Violating this Court's May 10, 2004 Order on September 10, 2004 (hereinafter "Motion to Hold Burke in Contempt"). However, the OHSL and Provident Defendants do not respond to these specific examples. Rather, they try to generally argue that Mr. Burke and KMK did not make any speaking objections. (Doc. No. 394, p. 19). In particular, the OHSL and Provident Defendants allege that speaking objections did not occur, but rather "colloquies and discussions between counsel on the record" occurred when no question was pending. (Doc. No. 394, p. 19). Similarly, KMK's speaking objections were not limited to statements such as "Objection. Calls for speculation" or "Objection, asked and answered." (Doc. No. 394, p. 19). If this was the case, then Plaintiffs would not be making this argument. Rather, Mr. Burke and KMK's speaking objections clearly occurred when questions were pending, and were designed to influence Dr. Peerless' responses to Plaintiffs' counsel's questions.

**C.**    **Plaintiffs' Counsel's Questioning of Dr. Peerless was Proper in All Respects**

1.    **Plaintiffs' Counsel Had Difficulty Questioning Dr. Peerless Because It was Difficult to Reconcile His Ignorance on Virtually All Relevant Issues with the Fact that He Had Served as a Provident Director for Twenty-Seven Years.**

By now it should be readily apparent that Plaintiffs' counsel has been given the thankless task of deposing a significant number of KMK's clients who are shockingly incompetent and/or ignorant of the facts of this case. It speaks volumes about Dr. Peerless and other PFGI Director Defendants' approach to their service as a director that they claim not to have not reviewed the very Proxy Materials/Registration Statements which they voted upon at PFGI Board meetings and ultimately signed.

Additionally, this lack of knowledge of basic facts and documents in this case makes it very difficult for Plaintiffs' counsel to question these individuals. The OHSL and Provident Defendants do not dispute this ignorance and actually try to use it to their advantage. In fact, the OHSL and Provident Defendants touted the fact that Dr. Peerless has almost no skills that would qualify him as a director of the Provident Board in their Memorandum in Opposition. (Peerless dep. p. 20, 6). However, despite this attempt to downplay the expectations of Dr. Peerless' testimony, the fact remains that Dr. Peerless has been a Provident director for the past twenty-seven years and is a potential fact witness in this case. (Peerless dep. p. 5). The fact that Dr. Peerless was not named as a defendant in this action does not in any way change this fact. (Doc. No. 394, p. 2). Thus, for the foregoing reasons, the Plaintiffs had every right to depose him and question him on the subjects which Plaintiffs' counsel raised during the deposition.

2.    **Plaintiffs' Counsel Did Not Ask Any Improper Questions During Dr. Peerless' Deposition**

Plaintiffs' counsel did ask any improper questions of Dr. Peerless during his deposition. Similarly, there was no "irregular manner in which Dr. Peerless' deposition was conducted." (Doc. No. 394, p. 19). This is confirmed by taking a closer look at some of the OHSL and Provident Defendants' examples of improper conduct.

### a.     Medical Records

First, the OHSL and Provident Defendants argue that it was improper for Plaintiffs' counsel to ask Dr. Peerless if he had access to Provident employees' confidential medical records. (Doc. No. 394, pp. 3-4). However, this question must be taken in context. Plaintiffs' counsel's did not suggest any improper conduct by Dr. Peerless, but was only trying to understand his role on the Provident Board.

Plaintiffs' counsel asked Dr. Peerless about his access to Provident employees' medical records because Dr. Peerless stated that he was on the PFGI Board because of his medical background. (Peerless dep. pp. 6-7). Since this is not the normal reason why an individual is asked to serve as a director of a public banking company, some follow-up questions were not only reasonable, but necessary. Dr. Peerless next explained that his medical background was relevant on the Provident Board because "Sometimes medical problems would have arisen that involved the knowledge of medicine" and that sometimes people required a medical opinion. (Peerless dep. pp. 6-7). Since a medical opinion ordinarily cannot be rendered without an examination and review of medical records. Thus, it was more than reasonable for Plaintiffs' counsel to ask whether or not Dr. Peerless' role involved the review of the Provident employees' medial records.

Although it is understandable that Mr. Burke and KMK would want to object to this line of questioning because it is embarrassing and damaging to Defendant Provident

that it would pick someone to be a director of its company based upon his medical background, this does not in any way justify Mr. Burke's objection to this question, and it certainly does not justify his completely inappropriate and unwarranted request that Mr. Brautigam allow Mr. Mesh to finish the questioning of Dr. Peerless. The deposition of Dr. Peerless had only been in progress for about five minutes. Such a request was completely improper and confirms Mr. Burke and KMK's true concerns about this witness.[6]

**b.    Expert Report**

Second, the OHSL and Provident Defendants' argue that it was improper for Plaintiffs' counsel to use an expert report while questioning Dr. Peerless.  First, there is no federal rule which states that an expert report, or any other document, cannot be read or used as a guide for asking questions during a deposition.  Plaintiffs' counsel could have been reading a Sports Illustrated while he was taking the deposition, and it would not been improper as long as the questions Plaintiffs' counsel asked were proper.

Second, there is no rule that a deponent must have previously reviewed a document in order to be questioned about it. The federal rules would never require pre-examination of a document to be a prerequisite for asking a question during a deposition for deponents would purposely not review documents so that they could avoid being questioned about them.[7]  The fallacy of this argument is exposed by the fact Dr. Peerless had not only not reviewed this expert report, but several other key documents in this case.

---

[6] Mr. Burke and KMK were highly aware of Dr. Peerless' damaging testimony, and tried to use this question as an excuse to attempt some damage control.

[7]  Several PFGI Director Defendants have already done just that by refusing to look at documents with their counsel as part of their preparation strategy.

Thus, if KMK's argument is taken to its logical conclusion, the Plaintiffs would also not be able to question Dr. Peerless regarding the Proxy Materials/Registration Statement or any other document in this case. Such a result is ludicrous. Even Mr. Burke and KMK, when confronted with this hypothetical, had to retreat from this position because it was so preposterous. (Peerless dep. p 89).

The ludicrousness of this argument is also highlighted by the fact that KMK had never instructed other deponents not to answer questions based upon an expert report, but only made objections to said questions. If these questions were not improper when previously asked of the other deponents, nothing has changed to make them improper now. The only explanation for this is that Mr. Burke and KMK have never had to defend the deposition of a PFGI director who was so obviously ignorant of all aspects of this case. The more questioning which Plaintiffs' counsel posed to him, the more embarrassing, and potentially damaging, it became for Defendant Provident. Thus, Mr. Burke and KMK had no choice but to try and stop the bleeding in any way that it could.

In addition, this is also an empty argument because it is completely out of Plaintiffs' control as to whether or not Dr. Peerless is familiar with this expert report or any other document. Any implication by the OHSL and Provident Defendants that this document was withheld from Dr. Peerless is patently untrue. [8] KMK and Dr. Burke had access to this expert report prior to the deposition, but Dr. Peerless chose not to review it.

Finally, there was also nothing wrong with the manner or method in which Plaintiffs' counsel asked these questions regarding the expert report. Although Plaintiffs'

---

[8] This is illustrated by the fact that KMK did provide former PFGI Chief Accounting Officer Anthony Stollings with a copy of the Plaintiffs' expert accounting report before his deposition, that he read it, and was appropriately questioned on it.

counsel utilized the expert report for some of his questioning, and even gained "inspiration" from it, he did not just read from it, or solely ask Dr. Peerless whether or not he agreed with every line contained in it. (Peerless dep. p. 97-98). In addition, contrary to the representations of the OHSL and Provident Defendants, Plaintiffs' counsel never became "confrontational and argumentative." (Doc. No. 394, p. 14). Rather, the real problem was the fact that Dr. Peerless did not know enough about the subjects raised in the expert report to answer any questions or render any opinions about them.[9]

As a result, rather than questioning the validity of Plaintiffs' counsel's questions, Defendant Provident should be asking itself why it has allowed an individual to serve as a Provident director for twenty-seven years when he seems to know almost nothing about all of the events which have led to this litigation.[10] Although Dr. Peerless is not expected to know all of the facts of the litigation, as a Provident Director, he is expected to have a general understanding of events which he should have been privy to as a result of his service as a Provident Director. The fact that Dr. Peerless could not answer questions regarding the OHSL-Provident merger, the Proxy Materials/Registration Statement, or the restatements is not an indictment of Plaintiffs' counsel's questioning, but of Defendant Provident's judgment in choosing its directors.

---

[9] If Dr. Peerless did have the knowledge which an average director of a public company possesses, then the only other conclusion would be that Dr. Peerless was purposely being evasive and/or obstructive of the deposition process. Neither position is a good one for Defendant Provident.

[10] Although Plaintiffs do not dispute Dr. Peerless's qualifications or reputation as a physician, or as an individual in general, there is absolutely no reason why Dr. Peerless should have been asked to serve as a director for Defendant Provident, or should have continued to do so for twenty-seven years.

### 3.    Plaintiffs' Counsel Did Not Ask Dr. Peerless Any Harassing Questions

At no point did Plaintiffs' counsel's questioning of Dr. Peerless become harassing.  First of all it would have been logistically difficult for Plaintiffs' counsel to have been harassing since the entire deposition only lasted about eighty minutes. This is hardly enough time for Plaintiffs' counsel's questioning to have become repetitive.

Second, although the OHSL and Provident Defendants have conceded that Dr. Peerless "had a limited knowledge of the issues relevant to this case," this does not change the fact that Dr. Peerless had been a director of Provident Bank for the past twenty-seven years. (Doc. No. 394, p. 5).  As a result, Plaintiffs' counsel had every reason to question Dr. Peerless on all subjects raised during this deposition, and to continue to question him even though he was having difficulty answering a high percentage of the previous questions.  There is no rule against Plaintiffs' counsel doing so, and this is the only way for Plaintiffs to determine the true extent of Dr. Peerless' knowledge of the various subjects. In the end, the Plaintiffs were as surprised as anyone to see how little Dr. Peerless was aware of the events and documents at issue in this litigation.[11]

The best example of this is when Dr. Peerless was asked what he knew about "GAAP." (Peerless dep. pp. 33-34).  Dr. Peerless responded to this question by stating, "The clothing store?"  Id.  The OHSL and Provident Defendants try to put the best possible spin on this response, but there is little they can do with this very telling answer.

---

[11]  The OHSL and Provident Defendants argue that Mr. Brautigam spent most of his time asking repetitive questions, arguing with Dr. Peerless about legal and accounting matters with which Dr. Peerless was unfamiliar, and asking the witness to assume facts he knew nothing about. (Doc. No. 394, p. 6). However, the real problem here was not Plaintiffs' counsel's questioning, but the fact that Provident chose an individual to serve as a director who lacked the knowledge and background to be able to effectively do so.

The OHSL and Provident Defendants state that Plaintiffs' counsel unfairly changed subjects on Dr. Peerless and went from discussing his experience in mergers and acquisitions to general accounting principles. (Doc. No. 394, p. 7, n.5).  However, this should have had no bearing upon his response. Plaintiffs' counsel gave Dr. Peerless no reason to think that Plaintiffs' counsel was referencing a clothing store.  All of his previous questions had involved banking, corporate, and other matters related to this litigation.  Plaintiffs submit that no other individual who has served as a director of a public company for twenty-seven years would first think of a clothing store over the accounting term when asked of his knowledge of "GAAP."   In any event, when Dr. Peerless was asked again if he knew anything about GAAP, which counsel spoke as G-A-A-P,  he responded "No."   (Peerless dep. p. 34).

As a result, it is impossible to find any of Plaintiffs' counsel's questioning of Dr. Peerless to be harassing when the problem is not Plaintiffs' counsel's questions, but the deponent's general ignorance of all relevant issues.

**4.  Plaintiffs' Counsel's Questioning was Further Complicated by Dr. Peerless' Own Improper Conduct.**

Dr. Peerless' conduct during the deposition should also be taken into consideration when evaluating Plaintiffs' counsel's questioning.  Although the OHSL and Provident Defendants infer that Dr. Peerless was completely cooperative, this is far from true. Dr. Peerless refused to answer questions, deflected questions, and inappropriately interjected his opinions into the deposition process in an effort to disrupt it.

In particular, right after a break had been taken at Mr. Burke's request, the deposition resumed with Dr. Peerless giving an unsolicited speech which was not in response to any question asked of him.  He voluntarily stated that he felt "personally

insulted" that Plaintiffs' counsel had used the word fraud in relation to the Proxy Materials/Registration Statement. (Peerless dep. pp. 79). In fact, he stated that "It is disgusting to me that anyone would even think that." (Peerless dep. p. 79). However, when Plaintiffs' counsel questioned Dr. Peerless about how he could be sure that the Proxy Materials/Registration Statement did not contain fraudulent statements when he had never read it, he had no real answer. (Peerless dep. p. 80). Similarly, when Plaintiffs' counsel asked if it was possible that there had been some unintentional misrepresentations included in the Proxy Materials/Registration Statement, Dr. Peerless responded that it was not because he knows the people that they were discussing, and that they "were not fraudulent people." (Peerless dep. p. 81). However, shortly thereafter he admitted that he did not know any of the OHSL directors. (Peerless dep. p. 82). Consequently, since Dr. Peerless' statements were obviously not spontaneous, but rather another attempt to interrupt the course of the deposition, and take up part of Plaintiffs' allotted seven hours for this deposition, these statements must stand as further confirmation of KMK's attempt to disrupt the deposition.

> **5.** **The OHSL and Provident Defendants Always Try to Blame Plaintiffs' Counsel for Their Own Problems.**

The OHSL and Provident Defendants routinely defame Plaintiffs' counsel every time a deposition does not go well for them. However, while it has become a handy default argument for the OHSL and Provident Defendants, they have never had any basis to argue that Plaintiffs' counsel has been repetitive, oppressive, harassing or annoying in its questioning. This hidden agenda is revealed by two of the OHSL and Provident Defendants' examples of Plaintiffs' counsel's alleged misconduct during Dr. Peerless's deposition.

Early on in this Memorandum in Opposition, the OHSL and Provident Defendants compare Plaintiffs' counsel's questioning of Dr. Peerless to that of Defendant Norbert Brinker and then state that Magistrate Judge Hogan described that deposition as "a complete waste of time, my time and every lawyer in the case's time." (*See,* Transcript of March 5, 2004 telephonic conference at p. 5 (Doc. No. 300, Exhibit A); *See also,* Doc. No. 295. However, the OHSL and Provident Defendants know that this is a disingenuous comparison for several reasons. First, a close review of Defendant Brinker's deposition transcript reveals that Magistrate Judge Hogan misspoke in regard to several of his statements regarding his deposition.[12] Second, if the deposition was a complete "waste of time," it was so because of the incompetence of the witness and not because of Plaintiffs' counsel's questioning. It is only in this sense that Defendant Brinker's deposition is "strikingly similar" to Dr. Peerless' deposition.[13] In both cases, the problem was not with Plaintiffs' counsel, but with the deponents. Neither man should have been serving as a director of a public company, and this was blatantly obvious in their depositions.

The second example of the OHSL and Provident Defendants attempt to unfairly malign Plaintiffs' counsel is through their misrepresentation of the termination of Dr. Peerless' deposition. Despite the melodramatic argument by the OHSL and Provident Defendants, there was nothing "strange" about the end of Dr. Peerless' deposition. As discussed above, Plaintiffs' counsel was asking Dr. Peerless questions regarding subjects and/or opinions contained in the expert report. Mr. Burke and KMK repeatedly objected

---

[12]    For instance, Magistrate Judge Hogan said that no new topics were covered in Defendant Brinker's second deposition although topics were covered in it which could not have been discussed in the first deposition based upon the timing of the events.

[13]    Defendant Brinker's deposition was even more difficult than that of Dr. Peerless for Defendant Brinker suffered from both physical and mental infirmities.

to Plaintiffs' counsel's questions, and then finally stated that he was instructing Dr. Peerless not to answer and that he was seeking a protective order. (Peerless dep. pp. 98-99).   At this point, there was not much that Plaintiffs' counsel could do other than terminate the deposition.  (Peerless dep. p. 99; *See*, Affidavit of Michael G. Brautigam, Esq.).  Rather than be criticized, Plaintiffs counsel should be commended for temporarily ending a deposition that was no longer productive and which would only waste everyone's time. (*See*, Affidavit of Michael G. Brautigam, Esq.)

It is easy for the OHSL and Provident Defendants to argue that Plaintiffs' counsel was the one that actually terminated the deposition because he was the one that technically did so.  However, an analysis of the facts confirms that this was not the case. Plaintiffs' counsel had absolutely no reason to want to terminate the deposition. Plaintiffs' counsel had no shortage of questions which he wanted to ask, but just had no reason to continue to ask them if Mr. Burke was going to instruct Dr. Peerless not to answer any of them.  (*See*, Affidavit of Michael G. Brautigam, Esq.)

On the other hand, KMK had every reason to want to disrupt and/or prematurely end Dr. Peerless' deposition.[14]  It is an understatement to state that his deposition was not going well. In fact, Dr. Peerless' deposition became even more of an embarrassment to Defendant Provident the longer it went on.  Consequently, KMK had no choice but to continue the objections, and state that it was going to seek a protective order, in the hope that Plaintiffs' counsel would prematurely terminate the deposition.

---

[14]  In fact, Mr. Burke and KMK tried to do so just a few minutes into the deposition when Mr. Burke objected to a question and suggested that Mr. Mesh rather than Mr. Brautigam should be taking Dr. Peerless' deposition.  (Peerless dep. p. 5).

Thus, although the OHSL and Provident Defendants are quick to point the finger of blame at Plaintiffs' counsel when a situation does not go well for them, a clear review of the facts consistently reveals that the problem consistently lies with Mr. Burke and KMK and not with the Plaintiffs or their counsel.

## IV.    **CONCLUSION**

There were two main problems with Dr. Peerless' deposition: (1) Dr. Peerless' complete ignorance on all subjects related to this litigation and (2) Mr. Burke and KMK's deliberate attempts to disrupt the deposition through improper objections, speaking objections, and instructions not to answer non-privileged questions. All of the Plaintiffs' counsel's questions were appropriate questions to ask an individual who has served as a Provident director for twenty-seven years. If Dr. Peerless did not know the answers to these questions, this was not Plaintiffs' counsel's fault, and it should not in any way have impacted upon the Plaintiffs' counsel's ability to continue to ask him questions.

However, even more shocking than Mr. Burke's improper instructions for Dr. Peerless not to answer Plaintiffs' counsel's questions is the OHSL and Provident Defendants' argument that Mr. Burke and KMK have not violated any standing order with this misconduct. Knowing that Mr. Burke and KMK clearly violated Judge Beckwith's Order of May 10, 2004, the OHSL and Provident Defendants attempt to disregard this order so that Mr. Burke and KMK cannot be held in contempt for their misconduct.

Thus, for the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion to Hold James E. Burke, Esq. and KMK in Contempt for Violating this Court May 10, 2004 Order Regarding Improper Objections and

Instructions Not to Answer Questions During the Deposition of Dr. Peerless and for Sanctions.  Plaintiffs further renews its request for a written order prohibiting KMK from engaging in such alleged conduct in future depositions in this action so that the OHSL and Provident Defendants can never again attempt to challenge the existence of a clear order of this Court.

 Dated: 1 October 2004                              Respectfully Submitted,


                                                   /s/ Michael G. Brautigam
                                                   Gene Mesh (OH Bar # 0002076)
                                                   Michael G. Brautigam
                                                   GENE MESH & ASSOCIATES
                                                   2605 Burnet Avenue
                                                   Cincinnati, Ohio 45219-2502
                                                   (513) 221-8800
                                                   (513) 221-1097  (fax)

                                                   *Attorneys for Plaintiffs and the*
                                                   *Putative Class*

## CERTIFICATE OF SERVICE

        This is to certify that a true and accurate copy of the foregoing Plaintiffs' Reply to Memorandum of OHSL and Provident Defendants in Opposition to Motion to Hold James E. Burke, Esq. and KMK in Contempt for Violating this Court's May 10, 2004 Order Regarding Improper Objections During Depositions and for Sanctions was served this 1st day of October, 2004 as follows:

James E. Burke, Esq.
Keating, Muething & Klekamp, P.L.L.
1400 Provident Tower
One East Fourth Street
Cincinnati, Ohio 45202-3752

Michael E. Maundrell, Esq.
John W. Hust, Esq.
Schroeder, Maundrell, Barbiere & Powers
11935 Mason Road, Suite 110
Cincinnati, Ohio 45249

James H. Greer, Esq.
BIESER, GREER AND LANDIS, LLP
400 National City Center, 6 North Main Street
Dayton, OH 45402-1908


                                        _____/s/ Stephanie A. Hite_____
                                                Stephanie A. Hite