IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Walter W. Thiemann, et al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) Case No. 1:00-CV-793 |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| | ) |
| OHSL Financial Corporation, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

O R D E R

This matter is before the Court on a motion to dismiss filed by Defendants Dinsmore & Shohl, Clifford Roe, and Charles Hertlein (Doc. No. 246). For the reasons set forth below, Defendants' motion to dismiss is well-taken and is **GRANTED**.

I. Background

As has been recounted by the Court in other orders, this case arises out of the 1999 merger between OHSL Financial Corporation ("OHSL") and Provident Financial Group, Inc. ("Provident"). Plaintiffs contend that the proxy materials issued in connection with the merger contained a number of materially false and misleading statements and omissions upon which they relied in deciding to vote in favor of the merger. Plaintiffs have asserted a variety of federal and state law securities violations claims against OHSL and Provident, individual members of each bank's board of directors, individual corporate officers, two law firms and individual lawyers of those law firms, and Ernst & Young ("E&Y"), Provident's independent

auditor.[1]

Dinsmore & Shohl ("Dinsmore") is a Cincinnati-based law firm that represented OHSL during the merger. Consolidated Class Action Complaint ("CAC")(Doc. No. 234) ¶ 26. Clifford Roe and Charles Hertlein are partners with Dinsmore; both provided legal advice to OHSL during the merger. Id. ¶¶ 27-28. Plaintiffs allege that these Defendants had actual knowledge that the proxy materials contained alleged materially false and misleading statements and omissions. Specifically, the CAC alleges that these Defendants new that the Board of Directors did not actually unanimously approved the merger because they knew that Director Tom Herron resigned his board position in protest over the merger. The CAC also claims that these Defendants knew that although OHSL CEO Kenneth Hanauer voted his personal shares against the merger, as a board member he voted for the merger. Plaintiffs believe that both of these facts should have been disclosed in the proxy materials. The CAC claims that Roe drafted some of the language in the proxy materials and was consulted about other alleged misstatements and omissions. Id. ¶ 27. The CAC further claims that Hertlein reviewed drafts of the proxy materials but took no action to supplement or correct the alleged materially misleading statements and omissions.

---

[1] Pursuant to earlier orders of the Court, one of law firms, Keating, Meuthing & Klekamp, and Ernst & Young have been dismissed from the case. See Doc. Nos. 336 & 338.

The CAC asserts federal claims against these Defendants pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k (Count I) and Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), SEC Rule 10(b)(5), 17 C.F.R. § 240.10b-5 (Count V). The amended complaint also asserts state law securities violations against these Defendants pursuant to Ohio Rev. Code § 1707.41 (Count VII) and Ohio Rev. Code § 1707.43 (Count VIII). Finally, the complaint asserts against the Defendants claims of spoliation (Count IX) and common law fraud (Count X).

Defendants now move to dismiss each of the claims against them. With respect to Count I, Defendants argue that they cannot be held liable under Section 11 of the Securities Act because they did not sign the registration statement and that an attorney who simply prepares a registration statement does not have any liability under Section 11. With respect to Count V, Defendants argue that the complaint fails to allege scienter with sufficient specificity and should be dismissed. Defendants also argue that the Section 10(b) claims against Defendant Hertlein are barred by the statute of limitations. With respect to the state law securities claims, Defendants argue that, as attorneys, they are specifically excluded from the statutory definition of "seller," and, therefore, have no liability. Defendants argue that Plaintiffs' spoliation claim should have been raised in earlier state court litigation when Plaintiffs' counsel became aware of evidence of spoliation. Defendants also argue that this claim is insufficiently pled. Finally, Plaintiffs argue that

3

Plaintiffs' state law fraud claim is both factually and legally insufficient and, with respect to Defendant Hertlein, is untimely.

## II. Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) operates to test the sufficiency of the complaint. In its consideration of a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the Plaintiff and accept all well-pleaded factual allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) and Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983). A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations. Blackburn v. Fisk University, 443 F.2d 121, 124 (6th Cir. 1974). A court will, though, accept all reasonable inferences that might be drawn from the complaint. Fitzke v. Shappell, 468 F.2d 1072, 1076-77 n.6 (6th Cir. 1972).

When considering the sufficiency of a complaint pursuant to a Rule 12(b)(6) motion, this Court recognizes that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-6 (1957).

The Private Securities Litigation Reform Act ("PSLRA"), however, has modified the pleading standard in securities fraud cases. The PSLRA requires the plaintiff to plead facts which

4

give rise to a strong inference that the defendant acted with scienter, or intent to defraud. Helwig v. Vencor, Inc., 251 F.3d 540, 548 (6th Cir. 2001). Thus, while the Court still accepts the pleaded facts as being true, the facts still must create a strong inference of scienter in order for the complaint to withstand dismissal.

### III. Analysis

#### A. Federal Claims

#### 1. Section 11 Claim

Section 11 of the Securities Act provides that any signer of the registration statement, any partner or director of the issuer, any professional involved in preparing or certifying the statement, and any underwriter of a registration statement may be liable "[i]n case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading. . . ." Kaplan v. Rose, 49 F.3d 1363, 1371 (9th Cir. 1994)(quoting 15 U.S.C. § 77k). A plaintiff asserting a § 11 claim must demonstrate: 1) that the registration statement contained an omission or misrepresentation, and 2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment. Id. Section 11 has no scienter requirement. Id.

With respect to accountants and other professionals, however, Section 11 only imposes liability if the professional "has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him[.]" 15 U.S.C. § 77k(a)(4). Merely consulting or providing information is insufficient to impose liability on a professional under this section - the registration statement must "purport" that he prepared it, or he must have signed the registration statement or have certified the registration statement. See In re Global Crossing, Ltd. Securities Litigation, 322 F. Supp.2d 319, 348-49 (S.D.N.Y. 2004); Hagert v. Glickman, Lurie, Eiger & Co., 520 F. Supp. 1028, 1035 (D.Minn. 1981) (no Section 11 liability where complaint alleged that defendant law firm "knew of and assisted others" in wrongdoing but failed to allege that defendant signed registration statement or "expertised" any portion of it); McFarland v. Memorex Corp., 493 F. Supp. 631, 643 (N.D. Cal. 1980)(accountants not liable under Section 11 because they were not "named as" having prepared the allegedly misleading portions of the registration statement).

In this case, although the complaint alleges that

Defendants consented to being named as having prepared the registration statement at issue, CAC ¶ 129, the only cite of Dinsmore and/or Defendant Roe is in the merger agreement and a stock option agreement, where both documents state that Roe should be served a copy of any notice required under the agreement.  See Doc. No. 9, Ex. 8, Merger Agreement, at A-37; Stock Option Agreement, at B-10.  The Court does not find Defendant Hertlein's name in any of the pertinent documents.  Clearly, contrary to the allegations in the complaint, these Defendants were not named as having prepared or certified any of the registration statement, nor have they signed the registration statement.  Therefore, these Defendants have no Section 11 liability even assuming they knew of the alleged omissions complained of by Plaintiffs.  Thus, the CAC fails to state a claim for relief against these Defendants pursuant to Section 11.

Accordingly, Defendants' motion to dismiss Count I of the CAC is well-taken and is **GRANTED**.

### 2. Section 10(b) Claim

Defendants move to dismiss Plaintiffs' Section 10(b) claim for failure to plead scienter with the requisite specificity.  Defendants also claim that Plaintiffs' § 10(b) claim is untimely as to Defendant Hertlein.

Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder prohibit "fraudulent, material

misstatements or omissions in connection with the sale or purchase of a security." Morse v. McWhorter, 290 F.3d 795, 798 (6th Cir. 2002). In order to state a claim pursuant to Section 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 681 (6th Cir. 2004).

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). In securities fraud claims based on statements of present or historical fact scienter consists of knowledge or recklessness. Helwig v. Vencor, Inc., 251 F.3d 540, 552 (6th Cir. 2001). Recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1025 (6th Cir. 1979). Recklessness is "a mental state apart from negligence and akin to conscious disregard." In re Comshare, Inc. Sec. Lit., 183 F.3d 542, 550 (6th Cir. 1999).

In Helwig, the Court set out a number of non-exclusive, non-exhaustive factors to consider when determining whether the

plaintiff pled scienter sufficiently:

1) insider trading at a suspicious time or in an unusual amount;

2) divergence between internal reports and external statements on the same subject;

3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information;

4) evidence of bribery of a top company official;

5) the existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit;

6) disregard of the most current factual information before making the statements;

7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication;

8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and,

9) the self-interested motivation of defendants in the form of saving their salaries or jobs;

Helwig, 251 F.3d at 552.  In addition, the defendant's motive and opportunity for making the misstatement or omission is a relevant consideration.  Id. at 550.  Assuming the materiality of the alleged omissions, the Court agrees with Defendants that the complaint does not give rise to a strong inference of scienter with respect to their actions.

In consideration of the Helwig factors above, the only one apparently implicated in the CAC is that in not disclosing the alleged lack of unanimity among the board members, Herron's

resignation, and Hanauer's vote of his shares,[2] Defendants "disregarded the most current factual information before making the statements." The CAC does not appear to touch on any of the other Helwig factors. The CAC does allege that Dinsmore benefitted from the alleged omissions by earning substantial legal fees from the merger. See CAC ¶ 149. However, the desire to collect fees for services is insufficient to create a strong inference of scienter. See GSC Partners CDO Funding v. Washington, __F.3d__, No. 03-2347, 2004 WL 1087376, at *7-*8 (3rd Cir. May 17, 2004)(collecting cases). There does not appear to be any set mathematical formula for deciding when the combination of Helwig factors amounts to a strong inference of scienter. In a recent case, City of Monroe Employees Retirement Sys. v. Bridgestone Corp., 368 F.3d 228, 238 (6th Cir. 2004), the Court held that the complaint created a strong inference of scienter where five of the nine Helwig factors were present. See id. at *30. In comparison to Bridgestone, the presence of only one Helwig factor does not create a strong inference of scienter. In fact, the inference of scienter on the part of these Defendants is underwhelming, particularly when the complaint later alleges that another law firm, Keating, Muething & Klekamp, had final

---

[2] One must question, however, the degree of omniscience required for the Defendants to disclose to the shareholders in the proxy materials that Hanauer was going to vote his shares against the merger when presumably he would not have cast them until the shareholders meeting actually took place.

10

responsibility for writing, drafting, and approving the content of the final document.  See CAC ¶ 80.

The Court finds that the CAC fails to create a strong inference of scienter on the part of these Defendants. Accordingly, Defendants' motion to dismiss Count V of the CAC is well-taken and is **GRANTED**.

### B. State Claims

#### 1. State law securities violations and fraud

Plaintiffs also allege that Defendants violated Ohio Rev. Code §§ 1707.41 (Count VII) and 1707.43 (Count VIII). Plaintiffs also assert a common law fraud claim against these Defendants (Count X).  As the Court explained in earlier orders, these state law claims are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p.  See Doc. No. 336, at 21-24, Doc. No. 338, at 15.

Accordingly, Defendants' motion to dismiss Counts VII, VIII, and X of the CAC is well-taken and is **GRANTED**.

#### 2. Spoliation

Finally, Plaintiffs assert a claim for spoliation of evidence against these Defendants.  The first part of this claim seeks to impose liability on Dinsmore for failing to instruct Defendants Hanauer, Brinker, and Zoellner not to destroy documents in their possession after the filing of an earlier state court lawsuit relating to the merger.  The second part of

11

this claim alleges that Defendant Hanauer turned over to Dinsmore a lavender legal pad with his notes on the merger which have since come up missing. Under Ohio law, a claim for spoliation or destruction of evidence consists of the following elements: 1) pending or probable litigation involving the plaintiff, 2) knowledge on the part of defendant that litigation exists or is probable, 3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, 4) disruption of the plaintiff's case, and 5) damages proximately caused by the defendant's acts. Smith v. Howard Johnson Co., Inc., 615 N.E.2d 1037, 1038 (Ohio 1993).

Defendants are correct that Plaintiffs' spoliation claim is insufficiently pled. Although Plaintiffs claim that Defendants destroyed notes and documents, the allegations show that this occurred during state court proceedings not involving these named Plaintiffs. Moreover, Plaintiffs fail to allege that Defendants were aware at the time of the alleged destruction that this ensuing lawsuit was pending or probable. Finally, Plaintiffs fail to allege that Defendants destroyed these documents for the purpose of disrupting this case. Plaintiffs simply fail to state a claim for spoliation against these Defendants.

Accordingly, Defendants' motion to dismiss Count IX of the CAC is well-taken and is **GRANTED**.

<u>Conclusion</u>

In conclusion, Defendants' motion to dismiss is well-taken and is **GRANTED**. Defendants are dismissed as a parties to this action. The Court will not entertain motions for reconsideration of this order.

**IT IS SO ORDERED**

Date October 28, 2004                    s/Sandra S. Beckwith
                                         Sandra S. Beckwith, Chief Judge
                                         United States District Court