IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Walter W. Thiemann, <u>et al.</u>,     )
                                       )
                                       )
                Plaintiffs,            )    Case No. 1:00-CV-793
                                       )
        vs.                            )
                                       )
                                       )
OHSL Financial Corporation,            )
<u>et al.</u>,                         )
                                       )
                Defendants.            )

<u>O R D E R</u>

        This matter is before the Court on an amended motion to
dismiss filed by Defendants OHSL Financial Corporation, and
individual Defendants thereof, and Provident Financial Group,
Inc., and individual Defendants thereof (Doc. No. 264).  Also
before the Court is Plaintiff Walter Thiemann, <u>et al.</u>'s, motion
for summary judgment (Doc. No. 315).  For the reasons set forth
below, Defendants' motion to dismiss is well-taken and is **GRANTED
IN PART AND MOOT IN PART**; Plaintiff's motion for summary judgment
is not well-taken and is **DENIED**.

        The Court has recounted the background of this case
many times in many previous orders, consequently there is no
reason to do so again here.  The parties are well-acquainted with
the proceedings up to this point.  Remaining in this case are the
following claims against the Defendants:

1. A claim in Count I of the amended and consolidated class
action complaint ("CAC") pursuant to Section 11 of the Securities

Act, 15 U.S.C. § 77k, against all of the Defendants for issuing allegedly materially misleading proxy materials.  The alleged misleading misrepresentations or omissions remaining for consideration relate to the unanimity or lack thereof of OHSL's board of directors in approving the merger between OHSL and Provident Financial Group, Inc. ("PFGI") and omissions regarding the extent to which PFGI's income was dependent on loan securitization.  The former issue breaks into subissues regarding Chairman Norbert Brinker's abstention from voting, Director Thomas McKiernan being absent from the vote, Director Thomas Herron resigning just before the vote, allegedly in protest of the merger, and Director Kenneth Hanuaer's voting his personal shares against the merger despite the fact that as a board member he voted for the merger.  There is also a Section 11 claim remaining against the Defendants which relates to PFGI's 2003 restatement of earnings caused by improperly accounting for auto lease pools.

2. A claim in Count II pursuant to Section 12(2) of the Securities Act, 15 U.S.C. § 77l(2), against all of the Defendants for issuing allegedly materially false and misleading proxy materials.  This claim relates to the above referenced alleged misleading statements and omissions as well as PFGI's 2003 restatement of earnings caused by improperly accounting for auto lease pools.

3. Claims in Count III for control person liability pursuant to Section 15 of the Securities Act, 15 U.S.C. 77o, against

Defendants Hanauer, Hoverson, and Cook.

4. Claims in Count IV against all of the Defendants pursuant to Section 14 of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a9, for issuing allegedly materially false and misleading proxy materials.

5. Claims in Count V against all of the Defendants pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, for issuing allegedly materially false and misleading proxy materials.

6. Claims in Count VI for control person liability pursuant to Section 20a of the Exchange Act, 15 U.S.C. § 78t(a), against Defendants Hanauer, Hoverson, and Cook.

7. Claims in Counts VII and VIII for Ohio state law securities violations against all of the Defendants.

8. Claims in Count IX for spoliation of evidence against Defendants Hanuaer, Brinker, and Zoellner.

9. Claims in Count X for common law fraud against all of the Defendants.

10. Claims in Count XI of breach of fiduciary duty against the individual directors of OHSL.

Defendants move to dismiss Plaintiffs' Section 10(b), Section 12(2), and Section 14 claims on the grounds that Plaintiffs have failed to allege facts which demonstrate that the proxy materials contained any materially false or misleading statements or omissions. Defendants also move to dismiss Plaintiffs' Section 10(b) and Rule 10b-5 claims for failure to

plead scienter with sufficient specificity and for failure to plead reliance on the proxy materials.  Defendants argue that Plaintiffs' Section 11 claims against the individual Defendants should be dismissed because they are not liable for the expertised portion of the proxy materials.  Defendants also argue that the Section 12(2) claims against the individual Defendants should be dismissed because Plaintiffs have not pled any facts which show they were statutory sellers of securities.  Defendants also argue that Plaintiffs' Section 11 and Section 12(2) claims relating to PFGI's restatement of earnings are barred by the three year statute of repose in 15 U.S.C. §§ 77m & 78i(e). Defendants further argue that Plaintiffs have failed to allege sufficient control person liability as to Defendants Hanauer, Hoverson, and Cook.  Then Defendants assert various bases for dismissal of Plaintiffs' state law claims, which, as will be shown later, the Court need not address.

Plaintiffs move for summary judgment on the issue of the materiality of the statement regarding the OHSL's Board of Directors unanimous approval of the merger.  Plaintiffs essentially move the Court to find the statement that the Board of Directors was unanimous in approving the merger was materially misleading.

The Court notes that although Defendants have filed their motion pursuant to Rule 12(b)(6), they have also attached exhibits outside the pleadings.  These exhibits are mostly in the form of deposition excerpts, but some of the exhibits are copies

of public filings with the Securities and Exchange Commission.
See Doc. Nos. 254-59.  Plaintiffs have attached a number of
exhibits to their memorandum in opposition to Defendants' motion
to dismiss.  See Doc. Nos. 281-91.  Therefore, Plaintiffs are on
sufficient notice that Defendants' Rule 12(b)(6) motion could be
converted to a Rule 56 motion for summary judgment.  See Dayco
Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 393 (6th Cir.
1975).  In any event, as will be seen later, the only issue which
requires going outside the pleadings to decide is the unanimity
of the board of directors, an issue on which Plaintiffs have
filed their own motion for summary judgment.  Plaintiffs will not
be prejudiced if the Court converts Defendants' Rule 12(b)(6)
motion to a Rule 56 motion for summary judgment.

        The Court notes that although a motion for class
certification is pending, the Court nonetheless has discretion to
rule on a pending motion for summary judgment first.  Thompson v.
City of Medina, 23 F.3d 238, 240-41 (6th Cir. 1994).

                II. Summary Judgment Standard of Review

        Summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The evidence presented on a motion for summary judgment
is construed in the light most favorable to the non-moving party,
who is given the benefit of all favorable inferences that can be

drawn therefrom.  United States v. Diebold, Inc., 369 U.S. 654 (1962).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  Id.

     The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial."  First National Bank

v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make

7

that showing with significantly probative evidence.  Id.;
Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving
party to go beyond the pleadings and designate "specific facts
showing that there is a genuine issue for trial."  Id.

      Further, there is no express or implied requirement in
Rule 56 that the moving party support its motion with affidavits
or similar materials negating the opponent's claim.  Id.  Rule
56(a) and (b) provide that parties may move for summary judgment
"with or without supporting affidavits."  Accordingly, where the
non-moving party will bear the burden of proof at trial on a
dispositive issue, summary judgment may be appropriate based
solely on the pleadings, depositions, answers to interrogatories,
and admissions on file.

III. <u>Analysis</u>

A. <u>Plaintiffs' Section 12(2), Section 10(b) & Section 14 Claims</u>

      Section 10(b) of the Exchange Act and Rule 10b-5
promulgated thereunder prohibit "fraudulent, material
misstatements or omissions in connection with the sale or
purchase of a security." PR Diamonds, Inc. v. Chandler, 364 F.3d
671, 680-81 (6th Cir. 2004).  Section 12(2) of the Securities
Act, 15 U.S.C. § 77l(a)(2), provides for liability for making a
securities offering "by means of a prospectus or oral
communication, which includes an untrue statement of a material
fact or omits to state a material fact necessary in order to make
the statements . . . not misleading." Morse v. McWhorter, 290

8

F.3d 795, 798 (6th Cir. 2002).  Section 14 of the Securities
Exchange Act of 1934, 15 U.S.C. § 78n, prohibits material
misstatements or omissions in proxy statements.  Id.  The
materiality standard under each of these sections, as well as
claims arising under Section 11 of the Exchange Act, is the same.
Lucia v. Prospect Street High Income Portfolio, Inc., 36 F.3d
170, 172 n.3 (1st Cir. 1994); Lockspeiser v. Western Maryland
Co., 768 F.2d 558, 562 (4th Cir. 1985); ESI Montgomery County,
Inc. v. Montenay Int'l Corp., 899 F. Supp. 1061, 1068 (S.D.N.Y.
1995).  An omission or misrepresentation is material if there is
a substantial likelihood that a reasonable investor would have
viewed the omitted or misrepresented fact as having significantly
altered the total mix of information available.  Basic, Inc. v.
Levinson, 485 U.S. 224, 232 (1988).  Before liability for
non-disclosure can attach, the defendant must have violated an
affirmative duty of disclosure.  In re Sofamor Danek Group, Inc.,
123 F.3d 394, 400 (6th Cir. 1997).  Finally, the Court notes that
although the Court addressed materiality issues at an earlier
stage of this litigation, those rulings are not binding at the
summary judgment stage of the proceedings.  Werbowsky v. American
Waste Services, Inc., No. 97-4319, 1998 WL 939882, at **5 (6th
Cir. Dec. 22, 1998); 18B Wright, et al., FEDERAL PRACTICE & PROCEDURE
§ 4478.1, at 698 (2nd. ed. 2002).  With this standard in mind,
the Court addresses the materiality of the remaining statements
at issue.

### 1. Securitization of Loans

In addressing this issue originally the Court found
that the proxy materials adequately addressed the risks of loan
securitization but that a reasonable investor could find it
significant that a large portion of PFGI's income was based on
securitization of loans.  Therefore, the Court concluded that a
reasonable investor could find that this alleged omission
significantly altered the mix of information available.  See Doc.
No. 46.  In the current motion to dismiss, Defendants argue that
this information was disclosed because it was included in PFGI's
Form 10-K and 10-Q statements which were filed with the SEC and
incorporated by reference into the registration statement.  The
Court agrees.

As Defendants correctly point out, the registration
statement informs investors that for more information they may
access PFGI's and OHSL's public filings at the SEC website,
www.sec.gov.  Moreover, the registration statement expressly
refers investors to PFGI's Annual 10-K report for 1998, and its
quarterly 10-Q reports for March 31, 1999 and June 30, 1999.  See
Registration Statement, at 64-65.  Investors are deemed to be on
notice of a company's public SEC filings.  Picard Chem., Inc. v.
Perrigo Co., 940 F. Supp. 1101, 1123 (W.D. Mich. 1996).
Investors are also deemed to be aware of information incorporated
by reference into the proxy statement.  cf. Shaev v. Saper, 320
F.3d 373, 381 (3rd. Cir. 2003)("Material not included in the
proxy statement is generally not charged to the knowledge of the
stockholder."); Koppel v. 4987 Corp., 167 F.3d 125, 132 (2nd Cir.

1999) (document that was only available at defendants' offices
during business hours, but not incorporated by reference in the
proxy statement, was not treated as part of the "total mix" of
information available to participants for 14a-9 purposes).

Even a cursory review of the 10-K and 10-Q reports
reveals PFGI's income stream from loan securitization.[1]  For the
year ending December 31, 1998, loan securitization accounted for
$36,337,000 out of a net gain on sales of loans and leases of
$80,221,000.  Doc. No. 254, at KMK01192.  For the quarter ending
March 31, 1999, loan securitization accounted for $31,839,000 out
of PFGI's non-interest income of $64,567,000.  Id. at KMK01257.
An investor would also see that, with net income of $33,755,000,
income from loan securitization was driving PFGI's bottom line.
Id.  Similar loan securitization figures are disclosed for the
quarter and six months ending June 30, 1999.  Id. at KMK01289,
KMK01306, KMK01307.  These financial statements make it very
clear that anywhere from a one-third to one-half of PFGI's non-
interest income was derived from loan securitization, depending
on the reporting period.  In short, after examining these filings
an investor would surely appreciate PFGI's reliance on loan
securitization to generate earnings.  Thus, the registration
statement did adequately disclose the extent to which PFGI's
income was based on loan securitization.  Defendants did not omit

---

[1]    To the extent that these public filings might be
considered outside of the pleadings, the Court may take judicial
notice of them in ruling on a Rule 12(b)(6) motion.  City of Monroe
Employees Ret. Sys. v. Bridgestone Corp., __F.3d__, No. 03-5505,
2004 WL 2364858, at *1 (6th Cir. Oct. 22, 2004).

this information from the registration statement.  Hence, the registration statement and proxy materials were not materially misleading in this regard.

Accordingly, Defendants' motion for summary judgment on this claim is well-taken and is **GRANTED**.

### 2. The Unanimity of the Board of Directors

As noted, Plaintiffs allege that the proxy materials were materially misleading because they indicated that OHSL's Board of Directors was unanimous in recommending the merger.  In turn this claim breaks down into three constituent parts: 1) the failure to disclose that Director Herron resigned shortly before the directors voted, supposedly to protest the merger; 2) failure to disclose that Chairman Norbert Brinker and Director Thomas McKiernan did not actually cast votes; and 3) failure to disclose Kenneth Hanauer's vote of his personal shares against the merger even though he voted for the merger as a director.  The Court agrees with Defendants that review of the record demonstrates that none of these omissions was materially misleading.[2]

### a.  The resignation of Thomas Herron

Plaintiffs want to impose liability on the Defendants for failing to disclose that Director Herron resigned in protest of the merger.  Defendants correctly point out that Herron's resignation letter does not mention anything about the merger.  Herron simply states that he is resigning from the board because

_____

[2]    Plaintiffs have filed a motion for summary judgment on the unanimity of the Board of Directors.  The Court, therefore, is free to review the evidence submitted by the parties on this issue.

of the press of his responsibilities with Michelman, Inc.  <u>See</u>
Doc. No. 253, Ex. B.  Although Plaintiffs contend that Herron
later telephoned each of the individual directors to inform them
that he was also resigning in part to protest the merger,
Defendants are further correct that OHSL was not required to
disclose Herron's resignation.

Schedule 14A, 17 C.F.R. § 240.14a-101, makes clear that
disclosure of a director's resignation is only required when:

> [A] director has resigned or declined to stand for
> re-election to the board of directors since the date of
> the last annual meeting of security holders because of
> a disagreement with the registrant on any matter
> relating to the registrant's operations, policies or
> practices, and if the director has furnished the
> registrant with a letter describing such disagreement
> and requesting that the matter be disclosed, the
> registrant shall state the date of resignation or
> declination to stand for re-election and summarize the
> director's description of the disagreement.

17 C.F.R. § 240.14a-101, Item 7(g).  Thus, because Herron's
alleged opposition to the merger was not communicated to OHSL in
his letter, there was no duty on OHSL's part to disclose his
resignation.   Schedule 14A reflects a policy judgment by the SEC
on information most likely to be of concern to the shareholders.
In other words, Schedule 14A is a statement by the SEC on which
information is most likely to be material to investors.  <u>Cf</u>.
<u>General Elec. Co. v. Cathcart</u>, 980 F.2d 927, 937 (3rd Cir. 1992);
<u>United States v. Matthews</u>, 787 F.2d 38, 48 (2nd Cir. 1986)
(stating "courts . . . almost universally have rejected efforts
to require that management make qualitative disclosures that were
not at least implicit in the Commission's rules.").  As a result,

the absence or omission of a written disagreement with the merger makes Herron's resignation non-material as a matter of law.

Accordingly, Defendants' motion for summary judgment on this claim is well-taken and is **GRANTED**; Plaintiffs' motion for summary judgment on this claim is not well-taken and is **DENIED**.

### b. Norbert Brinker and Thomas McKiernan

On this record, the failure to disclose that Brinker and McKiernan did not actually cast votes for the merger demonstrates lack of unanimity in only the most hyper-technical sense. Both men were known to be pro-merger. Herron Dep. at 261-62. Additionally, the record demonstrates that as Chairman of the Board, Brinker only voted on issues when he was needed to break a tie. Id.; Hanauer Dep. at 750-51. There is nothing in the record which shows that Brinker's not casting a vote on this merger was anything other than standard operating procedure for the Board. Moreover, had Brinker and McKiernan actually cast votes, the outcome would have been the same, except perhaps for indicating an even greater majority in support of the merger. Disclosure of this information in its proper context would not have altered the total mix of information available. Thus, on this record, the failure to disclose this information was not material as a matter of law.

Accordingly, Defendants' motion for summary judgment on this claim is well-taken and is **GRANTED;** Plaintiffs' motion for summary judgment on this claim is not well-taken and is **DENIED**.

### c. Kenneth Hanauer's Votes

Finally, the Court comes to the issue of Kenneth Hanauer's votes. Again, Hanuaer voted for the merger as a director but against the merger as a shareholder. Plaintiffs believe these acts or omissions were materially misleading and reflect a lack of unanimity on the part of the Board of Directors. As the Court suggested in an earlier order, it would have taken remarkable prescience on the part of the drafters of the proxy materials to disclose that Hanauer was going to vote his personal shares against the merger, particularly when he did not reveal this intention to anyone. See Hanauer Dep. at 789.

In any event, while liability may be imposed for making statements in which the speaker does not truly believe, there must also be evidence that the statement is defective as to its subject matter. Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 1096 (1991). In other words, its not enough to show that the speaker did not believe the statement, the plaintiff must also show that the statement itself was actually false and misleading. Id. The Court must also balance this standard against the Supreme Court's admonition that the materiality requirement should not "bury the shareholders in an avalanche of trivial information[.]" Basic, Inc. v. Levinson, 485 U.S. 224, 231 (1988). A full reading of Hanauer's deposition testimony reveals a complex and conflicted decision-making process, which, if fully disclosed to the shareholders in its proper context, would have added nothing but confusion to the total mix of information. Stated another way, disclosing to the shareholders

15

how and why Hanauer did what he did would not have helped them evaluate the merits of the proposed merger.

Hanauer testified that he was initially opposed to the merger, but acceded to the merger after it was clear that all other options had been exhausted and it was going to go forward regardless of his vote.  Hanauer Dep. at 20.  He also admitted that he voted for the merger because he knew a unanimous vote would help sell the merger.  Id.  Hanuaer admitted at the time that he did not think that the merger was in the best interests of the shareholders, id. at 29, but he also believed the transaction was good and fair.  Id. at 31-32.  Then Hanauer stated that he could have joined forces with persons who opposed the merger, but that if he did so, he would have been acting out of personal interest rather than as a fiduciary to the shareholders.  Id. at 128.  He also believed that walking away from the merger once the letter of intent was signed would have been more harmful to OHSL in the end than going through with the merger with PFGI.  Id. at 131-32; see also id. at 795-96.  Then, Hanauer testified that he voted his personal shares against the merger, not because of any dissatisfaction with PFGI as the buyer, but rather because he was displeased with any merger because he wanted OHSL to remain independent.  Id. at 789-90.  Hanauer also had a conflict of interest with regard to his own position because he was apparently under a threat of termination from the Board of Directors if the merger did not go through while at the same time the merger would have forced his

16

retirement at age 50, which he did not want.  Id. at 118, 784-86.
Compare Phillips v. LCI Int'l, Inc., 190 F.3d 609, 622 (4th Cir.
1999)("[A]ssertions that a corporate officer or director
committed fraud in order to retain an executive position, or
retain such a position with the merged company, simply do not, in
themselves, adequately plead motive.").

　　　In short, a number of factors and considerations
entered into Hanauer's thinking and influenced his actions.  He
obviously had great difficulty reconciling his personal beliefs
and desires with what he perceived to be his professional
obligations to the shareholders as well as OHSL as an
organization.  To merely list the factors indicates the trouble
with attempting to organize these thoughts in a coherent fashion
for the investors.  It certainly would not have been helpful to
the shareholders to state, "Director and CEO Hanauer has mixed
feelings about this merger."  The alternative was to deluge the
shareholders with the minutiae cautioned against by the Supreme
Court in Levinson.  Moreover, given that an overwhelming majority
of OHSL's remaining board members were in favor of the merger,
Hanauer's lone dissent, even if unanimity did make the
transaction more palatable to the shareholders, would not have
altered the total mix of information available.

　　　On this record, a reasonable shareholder could not find
that the alleged omissions regarding Defendant Hanauer's votes as
a director and a shareholder were materially misleading.
Accordingly, Defendants' motion for summary judgment on this

17

claim is well-taken and is **GRANTED**; Plaintiffs' motion for summary judgment is not well-taken and is **DENIED.**

### 3. <u>Interim Summary</u>

The Court's decision that the above alleged materially misleading statements or omissions were in fact not material, or, alternatively, that the alleged missing information was disclosed to the shareholders or not required to be disclosed to the shareholders, means that Plaintiffs have failed to establish the claims related to these alleged misstatements and omissions in Counts I, II, IV, and V of the CAC.  Accordingly, Defendants' motion for summary judgment on these claims is well-taken and is **GRANTED**.  Federal claims now remaining for consideration are control person liability claims and claims related to PFGI's 2003 restatement of earnings.

### 4. <u>Section 11 and 12(b) claims relating to PFGI's Earnings Restatements</u>

As explained by the Court in its earlier order (Doc. No. 336), these claims are barred by the three year statute of repose in 15 U.S.C. § 77m.  Doc. No. 336, at 11-14.  Accordingly, Defendants' motion for summary judgment with respect to these claims as alleged in Counts I and II of the CAC is well-taken and is **GRANTED.**

### 5. <u>Section 10(b) and Section 14 claims relating to PFGI's Earnings Restatements</u>

As recounted in earlier orders, PFGI had to issue two restatements of earnings in 2003 because it committed GAAP and GAAS errors in accounting for auto lease pools.  The restatements

covered the years in which PFGI's financial statements were
incorporated into the proxy materials.  Plaintiffs contend that
the restatements rendered the proxy registration statement
materially misleading as a result.  Defendants argue that these
claims should be dismissed because Plaintiffs failed to plead
scienter with sufficient particularity.  The Court agrees.

In order to state a claim pursuant to Section 10(b) and
Rule 10b-5, "a plaintiff must allege, in connection with the
purchase or sale of securities, the misstatement or omission of a
material fact, made with scienter, upon which the plaintiff
justifiably relied and which proximately caused the plaintiff's
injury."  PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 681 (6th
Cir. 2004).  Claims under Section 14 of the Exchange Act also
require proof of scienter.  Adams v. Standard Knitting Mills,
Inc., 623 F.2d 422, 431 (6th Cir. 1980); In re Digital Island
Sec. Lit., 357 F.3d 322, 328 (3rd Cir. 2004).

Scienter is "a mental state embracing intent to
deceive, manipulate, or defraud."  Ernst & Ernst v. Hochfelder,
425 U.S. 185, 193 n.12 (1976).  In securities fraud claims based
on statements of present or historical fact scienter consists of
knowledge or recklessness.  Helwig v. Vencor, Inc., 251 F.3d 540,
552 (6th Cir. 2001).  Recklessness is defined as "highly
unreasonable conduct which is an extreme departure from the
standards of ordinary care.  While the danger need not be known,
it must at least be so obvious that any reasonable man would have

known of it." <u>Mansbach v. Prescott, Ball & Turben</u>, 598 F.2d

1017, 1025 (6th Cir. 1979).  Recklessness is "a mental state

apart from negligence and akin to conscious disregard." <u>In re</u>

<u>Comshare, Inc. Sec. Lit.</u>, 183 F.3d 542, 550 (6th Cir. 1999).

In <u>Helwig</u>, the Court set out a number of non-exclusive,

non-exhaustive factors to consider when determining whether the

plaintiff pled scienter sufficiently:

1) insider trading at a suspicious time or in an unusual amount;

2) divergence between internal reports and external statements on
   the same subject;

3) closeness in time of an allegedly fraudulent statement or
   omission and the later disclosure of inconsistent information;

4) evidence of bribery of a top company official;

5) the existence of an ancillary lawsuit charging fraud by a
   company and the company's quick settlement of that suit;

6) disregard of the most current factual information before
   making the statements;

7) disclosure of accounting information in such a way that its
   negative implications could only be understood by someone with
   a high degree of sophistication;

8) the personal interest of certain directors in not informing
   disinterested directors of an impending sale of stock; and,

9) the self-interested motivation of defendants in the form of
   saving their salaries or jobs;

<u>Helwig</u>, 251 F.3d at 552.  In addition, the defendant's motive and

opportunity for making the misstatement or omission is a relevant

consideration.  <u>Id.</u> at 550.  Other courts have suggested that the

magnitude of the error in the financial statement is a gauge of

the defendant's scienter.  See, e.g., In re Rent-Way Securities
Litigation, 209 F. Supp.2d 493, 506 (W.D.Pa. 2002).

     For many, if not all, of the reasons outlined by the
Court in addressing this issue with respect to former Defendant
Ernst & Young's motion to dismiss (Doc. No. 336, at 14-21), the
CAC does not sufficiently plead scienter.  None of the Helwig
factors are implicated with respect to the earnings restatements.
While the adjustments in net income were substantial, a large
ripple effect is not surprising given that PFGI made the same
error in accounting for large pools of a generic or fungible
asset.  The GAAP error in and of itself is insufficient to create
a strong inference of scienter.  PR Diamonds, 364 F.3d at 671.
Moreover, the GAAP provision at issue, FAS 13, is a complex
provision which allows a range of professional discretion in
application.  See Merzin v. Provident Financial Group, Inc., 311
F. Supp.2d 674, 683 (S.D. Ohio 2004).  The CAC suggests that PFGI
was aware as early as 1993 that its method of accounting for auto
lease pools was subject to question.  CAC ¶ 103.  Nonetheless,
this allegation is not a particularly compelling "red flag" as it
came from an investment firm, not an accounting firm, and then
only warns of problems that PFGI could have if it would need to
seek federal bankruptcy protection.  Id.  Of course, nothing as
dire as bankruptcy resulted from PFGI's earnings restatements.
Moreover, as Judge Spiegel noted in Merzin, even the major
accounting firms had differences in opinion regarding the proper

application of FAS 13.  <u>Merzin</u>, 311 F. Supp.2d at 683.
Therefore, this apparent warning from an investment company,
coming as a did among disagreements between experts in the field,
does not raise any inference of recklessness as to proper
accounting procedures.  The remainder of ¶ 103 in general
sketches out additional risks associated with securitization of
loans.  The other issues described, however, address operational
and investment problems, such as collection of receivables and
loan credit risks, but not accounting problems.  The Court,
however, has already ruled that the proxy materials adequately
disclosed the investment risks associated with loan
securitization.

Read as whole, the CAC does not raise a strong
inference of scienter on the part of these Defendants with regard
to PFGI's earnings restatements.  Accordingly, Defendants' motion
to dismiss Plaintiffs' Section 10b and Section 14 claims with
respect to PFGI's earnings restatements, as alleged in Counts IV
and V, is well-taken and is **GRANTED.**

6. <u>Control Person Liability Claims</u>

Having dismissed each of the remaining underlying
claims for federal securities law violations, there is no basis
for imposing control person liability on the individual
Defendants.  <u>PR Diamonds</u>, 364 F.3d at 696.  Accordingly,
Defendants' motion to dismiss Counts III and VI of the CAC is
well-taken and is **GRANTED.**

7.  <u>Remaining State Law Claims</u>

Having dismissed each of Plaintiffs' federal claims, the Court declines to exercise subject matter jurisdiction over the remaining state law claims. See <u>Hankins v. The Gap, Inc.</u>, 84 F.3d 797, 802-03 (6th Cir. 1996). Accordingly, Counts VII through XI of the CAC are **DISMISSED WITHOUT PREJUDICE.**

## Conclusion

In conclusion, Defendants' motion for summary judgment on Counts I, II, III, and VI of the CAC is well-taken and is **GRANTED.** Defendants' motion for summary judgment is well-taken and is **GRANTED** on Counts IV and V as to the alleged material misstatements regarding the unanimity of the board and loan securitization. Defendants' motion to dismiss Counts IV and V of the CAC is well-taken and is **GRANTED** on claims related to PFGI's income restatements for failure to plead scienter with sufficient specificity. Defendants' motion to dismiss Counts VII through XI of the CAC is **MOOT.** Nonetheless, the Court dismisses these claims pursuant to 28 U.S.C. § 1367. Plaintiffs' motion for summary judgment (Doc. No. 315) on the issue of the unanimity of the board is not well-taken and is **DENIED.** Motions for reconsideration of this order will not be entertained.

**IT IS SO ORDERED**

Date_November 5, 2004___          ____s/Sandra S. Beckwith____
                                 Sandra S. Beckwith, Chief Judge
                                 United States District Court