UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **WALTER W. THIEMANN, ET AL.,** | **CASE NO. C-1-00-793** |
| **PLAINTIFFS** | **(BECKWITH, J.)** |
| | **(HOGAN, M.J.)** |
| VS. | |
| **OHSL FINANCIAL CORP., ET AL.,** | |
| **DEFENDANTS** | |

**ORDER**

      Before the Court are Plaintiffs' Motion to Strike (Doc. 378), KMK's Memorandum in Opposition and Motion for Sanctions (Doc. 387), Plaintiffs' Reply thereto (Doc. 388); KMK's Motion for a Protective Order (Doc. 358), Plaintiff's Memorandum in Opposition (Doc. 367) and KMK's Reply thereto (Doc. 372); Plaintiffs' Motion for Contempt (Doc. 385), Defendants' Memorandum in Opposition (Doc. 394) and Plaintiffs' Reply thereto (Doc. 396). Oral argument took place on October 15, 2004, following which the Court took the matters under advisement for decision. For the reasons which follow, Plaintiffs' Motion to Strike (Doc. 378) is DENIED and KMK's Motion for a Protective Order is GRANTED IN PART and DENIED IN PART. Plaintiffs' Motion for Contempt (Doc. 385) is DENIED.

      The stimulus for Plaintiffs' motion was the filing of Exhibit 2 to Document 372, which is a Reply brief to Defendants' Motion for a Protective Order. Exhibit 2 is a collection of partial transcripts of the deposition testimony of KMK attorneys: John Winstead, Mark Reuter, Timothy B. Matthews and Mark Weiss. Defendants' purpose for submitting the disputed transcripts is unrelated to the substance of the deponents' testimony; rather it concerns the questions asked by Plaintiffs' counsel. Defendants consider the questions asked to be improper and to provide a basis for their Motion for Sanctions. Plaintiffs consider the filing of the transcripts as attachments to a *Reply* brief to be a form of "sandbagging." In other words, Plaintiffs believe that the transcripts were known to exist at the time Defendants' Motion for

Sanctions was filed and should have been attached to Defendants' "primary memorandum" as required by Local Rule 7.2(e).

Defendants make two procedural responses, the first of which is that Civil Rule 12(f) relates to pleadings, not motions nor material found in memoranda supporting motions. Defendants' second procedural response is that Rule 7.2(d) requires that "facts not already of record" be contained in primary memoranda and that the depositions of all four KMK lawyers were of record when Defendants' Reply brief was filed in August, 2004.

In order to resolve the dispute, we must delve into the sequence of filings relative to KMK's Motion for a Protective Order (Doc. 358) and the related Memorandum in Opposition filed by Plaintiffs (Doc. 367) and KMK's Reply (Doc. 372). By its Motion for a Protective Order, KMK seeks to accomplish two things: (1) delay the depositions of KMK lawyers until all issues involving KMK's document production are resolved, and (2) have the depositions supervised because of expected unprofessional conduct on the part of Plaintiffs' counsel. The request for supervision was based on counsel's conduct during the deposition of Mr. Brinker as well as depositions of four KMK lawyers that "were replete with repetitive and inappropriate questioning that resulted in numerous objections that unnecessarily increased the burden and expense of the depositions." Plaintiff's approach is to assert that KMK's allegations of unprofessional conduct are "false and defamatory" and to respond with an offensive strategy of accusing KMK lawyers of making "bogus assertions of privilege, speaking objections, countless and unnecessary interruptions designed to impede the flow of the depositions, repeated coaching of the witness."

Stripped of all the bravado, Plaintiff's counsel objects to the attachment (Exhibit 2), the deposition transcripts of KMK lawyers, not because of the introduction of new facts because these depositions were filed and of record prior to the filing of KMK's Motion for a Protective Order (Doc. 358), but because Plaintiff's counsel was deprived of the opportunity to have the last word. It is true that a Reply brief is intended to contain rebuttal, rather than new material, the latter of which, of course, rebuts nothing. However, the Court knows of no rule which requires a movant to exhaust his arsenal and leave nothing for rebuttal. In the instant case, KMK moved for a Protective Order and listed its reasons, albeit in a conclusory manner. (*See* the Affidavit of Patrick F. Fischer, Esq.) Plaintiff's Memorandum in Opposition (Doc. 367) disputed those reasons. KMK's Reply (Doc. 372), using the disputed Exhibit 2, the deposition

transcripts, cited specific examples in rebuttal. The Court fails to see how Plaintiff's counsel was "sandbagged" or how the filing of his Motion to Strike (Doc. 378) does anything to advance his client's interest in this litigation. What the Motion to Strike did accomplish, however, was to add fuel to what has become an unnecessarily contentious case. The Motion to Strike (Doc. 378) is DENIED.

The second issue involves the timing of depositions. Plaintiff wants to depose two KMK lawyers now; KMK wants to resolve the issue of document discovery prior to the depositions because it does not want to duplicate the depositions. Apparently the document discovery, to which counsel refers, concerns KMK billing records, the custody and control of which are in the hands of the two deponents. The billing records would disclose what the KMK lawyers did and when they did it. How much they charged for services rendered should be of no interest to Plaintiffs. Why KMK lawyers did what they did creates as least an issue of potential privilege. It would seem to benefit all parties to get the preliminaries out of the way prior to depositions, but if Plaintiff's counsel insists on pushing the issue, the Court will not interpose an obstacle. However, Messrs. Kreider and Rosenberg will not be deposed a second time after document discovery issues are resolved. The billing records, together with a privilege log should be produced prior to the depositions of remaining KMK counsel.

Since Messrs. Kreider and Rosenberg are both partners with cumulative legal experience of approximately 70 years, and since they both are represented by experienced counsel, the Court reasons that they are capable of handling possibly unorthodox deposition questions without the added protection of a court monitor. The best way to insure that Plaintiffs' counsel stays focused is not to preside over the deposition, but to impose time limits so that there is an incentive to get to the point and avoid both duplication and hypothetical questions. Therefore these depositions, the purpose for which is to discover the nature and scope of the deponents' participation in the OHSL-Provident merger, shall be limited to seven (7) hours each. KMK's Motion for a Protective Order (Doc. 358) is thus GRANTED IN PART and DENIED IN PART.

Plaintiffs' Motion for Contempt (Doc. 385) is an outgrowth of the deposition of Sidney Peerless, M.D. Plaintiffs seek a sanction, directed to KMK attorney, James E. Burke and his employer because it is alleged that Mr. Burke interposed "speaking objections, instructed the witness not to answer and ultimately terminated the deposition to seek a protective order." The connection Dr. Peerless has with this case is that he was a Provident Financial Group

director and had been for a 27 year period. KMK and Burke explain what Dr. Peerless was not, the CEO or CFO of Provident, an accountant or a defendant in this case. Dr. Peerless, whose medical specialty was otolaryngology, that area of medicine dealing with impairments to the nose and throat, is now retired and 82 years of age. His deposition testimony revealed that he had little information to provide about the OHSL-Provident merger or the 2003 restatements. Therefore, in order to be effective as an adversary, opposing counsel's task was either to show that Dr. Peerless possessed more knowledge than he represented to having or that he was being untruthful. Plaintiffs' counsel accomplished neither objective. What was demonstrated during the deposition was that Dr. Peerless lacked specific and detailed knowledge of the merger and the reasons for the accounting restatements.

The deposition testimony revealed that Dr. Peerless was asked repeated questions why Provident issued its restatements and whether the restatements were issued because of material misstatements in a previous filing. The questions were proper for Provident's CEO or CFO, but obviously pointless for a director who professed to have only superficial knowledge of Provident's accounting practices.

Rather than dwell on what actions, if any, he took to bring about the merger, Dr. Peerless was asked about the OHSL Board's definition of the term "unanimous" and further asked about the use of the term by the OHSL directors in communications with OHSL stockholders. He was asked whether OHSL's CEO was being fair with OHSL stockholders by voting for the merger when he may have harbored personal feelings to the contrary. Dr. Peerless was asked whether the CEO's vote of his personal shares against the merger was taking his own advice, directed to OHSL shareholders, to vote in favor of the merger. These are but a few of the subjects that could, and should, be argued during Plaintiffs' final argument to the jury because a factual basis for these points already exists in the evidence base. Pursuing these points, however, with Dr. Peerless, whether the intent was to exhibit harassing or oppressive conduct or not, nonetheless had that effect. The Court remains unsure whether Plaintiffs' counsel, despite an aggressive demeanor, simply does not know how to proceed or whether his intent was to harass and oppress either the deponent or his lawyer.

Although questioning Dr. Peerless about the activities of the OHSL directors may have been remote, it pales in comparison to the effort to obtain Dr. Peerless' agreement relative to the conclusions of Plaintiffs' expert witness, Candace L. Preston, CFA that the OHSL shareholders

received incomplete and inaccurate information from Defendant's proxy materials and that it is likely that the outcome of the vote by those shareholders to merge with Provident was negatively affected.  Ms. Preston is a chartered financial analyst, who works on a full-time basis performing valuation and securities analysis for the clients of Financial Markets Analysis, LLC.  Dr. Peerless is an equally well-informed physician, who may well have served as an expert witness in his field of otolaryngology.  The two are like ships passing in the night.  It is no more reasonable to question Dr. Peerless about the details of securities analysis than it is to question Ms. Preston about the necessity for the Chief Justice's tracheotomy.

      The deposition transcript shows that when Dr. Peerless was questioned in such a manner, Mr. Burke interposed objections, sometimes stating specific reasons such as "calls for speculation, asked and answered, no foundation," etc.  Plaintiff's counsel refers to these objections collectively as "speaking objections."  They are nothing of the kind.  A "speaking" objection occurs when a lawyer interposes an objection so as to coach the witness to answer in a favorable way or provides a clue for the deponent to follow.   Mr. Burke's objections merely provided the *basis* as a protection against the argument that an objection which is other than specific is waived.

      The deposition was concluded by Plaintiffs' counsel's remark, "Okay.  Well, then we're done" after Defense counsel instructed his client not to answer the following question:

> Do you agree with what I'll represent to you is Mr. Herron's testimony: Mr. Herron was the resigning director at OHSL, that Mr. Heron believed that Mr. Hanauer's opposition to the transaction would have, "significantly altered the total mix" of information available to shareholders.

      The question is a perfect example of how not to communicate.  The question was objectionable and should have been rephrased this way: "Dr. Peerless, do you believe that Mr. Hanauer's opposition to the transaction would have significantly altered the total mix of information available to shareholders?"  Had the question been so phrased, it may well have prompted an objection, but it would have been unlikely that the deponent would have been instructed not to answer the question because the question is clear.  One might wonder why the question was even asked because the point can be made in final argument without asking a

witness to speculate. A better approach might well have been to inquire about Hanauer's influence and the manner in which his opposition to the merger was communicated to shareholders. If Defense counsel had permitted the deponent to answer the question, the deponent may well have given an arbitrary response, since the question was poorly worded. Defense counsel's instruction not to answer is at least based on what he perceived as a bad faith examination as discussed in Rule 30(d)(1).

     Plaintiffs want the Court to hold Mr. Burke in contempt for violating what they assert is a clear order as expressed in a telephonic conference with Judge Beckwith. The circumstances were that the Judge was called on an emergency basis while the parties were involved in a deposition and the Judge was otherwise occupied. When asked for "assistance," the Judge commented that asking harassing questions would constitute a violation of Rule 30(b)(4), that "coaching the witness" would be improper, and that an improper instruction not to answer "might be cause for sanctions." Counsel learned nothing from Judge Beckwith that couldn't have been accomplished by a glimpse at Rule 30. It is also true that we find Judge Beckwith's statement to be instructive, but less than an Order.

     A review of the transcript of Dr. Peerless would convince the reader that the deposition consumed more time than it should have, that the environment was needlessly confrontational, and that very little, if anything, useful was disclosed. One cannot simply look at the form of a question in a vacuum and determine whether it is proper or objectionable under the Rules of Evidence. If the question was previously asked or the subject matter is foreign to the deponent, a timely objection might well be sustained even though the question appears proper on its face. The Court disapproves of instructions not to answer in the absence of privilege and hereby orders counsel to refrain from making such an instruction in the future. However, in the context of the proceedings thus far in this case, one can understand what must have been counsel's mind set when the instruction was given to Dr. Peerless. It is clear from the nature of the objections raised, that Mr. Burke considered many of his opponent's questions to be either speculative, hypothetical or directed to the wrong witness. One example might suffice. If one were attempting to demonstrate that an OHSL shareholder was mislead by the Provident proxies, wouldn't it make more sense to locate such a witness or witnesses and argue that testimony plus the expert's conclusions to the jury, rather than attempt to squeeze such information from any Provident witness, who is likely to be uncooperative? In the example, the evidence obtained

from the first source is direct and forceful; the evidence obtained from the second source is speculative. One who had no knowledge what the proxy statements or accounting restatements said or didn't say can contribute nothing of any real value to Plaintiff, and in embarrassing Dr. Peerless, Plaintiff did nothing to advance his interest. The Motion for Contempt (Doc. 385) is DENIED.


November 4, 2004                             S/Timothy S. Hogan
                                             Timothy S. Hogan
                                             United States Magistrate Judge