UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Walter W. Thiemann, et al. ) | Case No. C-1-00-793 |
| ) | |
| Plaintiff, ) | (Judge Sandra S. Beckwith) |
| ) | (Magistrate Judge Timothy S. Hogan) |
| -v- ) | |
| ) | RESPONSE OF PROVIDENT AND |
| OHSL Financial Corp., et al. ) | OHSL DEFENDANTS TO ORDER TO |
| ) | SHOW CAUSE REGARDING |
| Defendant. ) | <u>DEPOSITION OF ROSS D. FUERMAN</u> |
| ) | |

### A. INTRODUCTION

This matter is before the Court on its own Order to Show Cause dated February 14, 2005. The Order deals with the request of Dr. Ross D. Fuerman, one of the expert witnesses for Plaintiffs, to require the Provident and OHSL Defendants to reimburse him for the expenses of his deposition that was taken in New York City on October 21, 2004. Counsel for the Provident and OHSL Defendants have not had the benefit of seeing precisely what Dr. Fuerman sent to this Court or to the District Court. These Defendants will assume for this response that it mirrors what Dr. Fuerman previously sent to their counsel.

At the outset, the Provident and OHSL Defendants wish to assure this Court that they had no desire to cause unwarranted financial hardship to Dr. Fuerman nor to do anything less than fully perform their obligations in this matter. They similarly want to assure this Court that they have no desire to contribute to, or continue, the acrimony that, too often has characterized this case. Nevertheless, there remains a legitimate, good faith dispute over whether what Dr. Fuerman is seeking is "reasonable" under all of the circumstances. Like so many of the other aspects of this case, the facts of this particular issue are unusual and far removed from what one

customarily sees in civil litigation conducted in accordance with the standards and practices in this legal community.

### B.   RELEVANT FACTS

On August 30, 2004, consistent with prior scheduling orders in this case, as amended, Plaintiffs named five prospective expert witnesses including Dr. William Lutz, a self-described expert on the English language. On September 30, 2004, the Provident and OHSL Defendants identified two expert witnesses, Stephen Prowse and Tayfun Tuzun, a former Provident employee.

Thereafter, the parties discussed the depositions of each side's proposed experts. Attached as Exhibit A is the correspondence relating to the arrangements for the Plaintiffs' experts. Plaintiffs' counsel originally suggested depositing Dr. Fuerman in "the Massachusetts area." On September 15, 2004, however, Plaintiffs' counsel changed his position and suggested that four of his experts, including Dr. Fuerman, be deposed in "Manhattan." At no time had the OHSL and Provident Defendants ever requested or proposed that Dr. Fuerman be deposed in New York City. What also is noteworthy is that nowhere, in any of this correspondence, did Plaintiffs ever suggest, request or even mention that the Provident and OHSL Defendants might be asked to pay expenses associated with the depositions of Plaintiffs' experts. The topic never came up and it certainly was never agreed that this would occur. The failure of Plaintiffs to raise this issue or ever to suggest that it might become an issue prevented the parties from seeking guidance from this Court, as they did on many other discovery-related issues.

Dr. Fuerman's deposition was taken in New York City on Thursday, October 21, 2004. A condensed transcript of the deposition is attached as Exhibit B. Although this testimony is discussed in more detail later, it is clear that, at no time during the deposition, was it ever

suggested, requested or mention that the Provident and OHSL Defendants might be asked to pay expenses associated with the deposition of Dr. Fuerman. The Provident and OHSL Defendants did pay approximately $3,600.00 for court reporter expenses and the costs associated with Dr. Fuerman's deposition transcript.

In a letter dated October 22, 2004, Dr. Fuerman raised the topic of being compensated for this testimony by the Provident and OHSL Defendants. At no time prior to the receipt of this letter had Plaintiffs ever raised this issue. A copy of Dr. Fuerman's letter, without the exhibits, is attached as Exhibit C.

### C. RESPONSE TO THE ORDER TO SHOW CAUSE

The Provident and OHSL Defendants respectfully urge this Court to consider the following facts in determining what, if any, fees are "reasonable" and should be paid by them to Dr. Fuerman.

#### 1) Payment for Dr. Fuerman's Deposition Expenses Was Never Requested Nor Agreed To In Advance And Is Inconsistent With Local Practice.

As noted above, at no time prior to Dr. Fuerman's deposition was it ever suggested that the Provident and OHSL Defendants would be asked to pay his fees nor was there any mention or discussion of this topic. Clearly, the Provident and OHSL Defendants were never provided with any estimate of such fees nor did they ever agree to be responsible for them.

In the absence of any notice from Plaintiffs, counsel for the Provident and OHSL Defendants reasonably assumed that the expenses of expert discovery in this case would be handled as they customarily are in this legal community. Ordinarily, plaintiffs pay all costs and expenses associated with plaintiffs' experts (including the costs associated with the expert's deposition and trial testimony) and defendants pay all costs associated with defendants' experts. In approximately 27 years of experience before this Court, other courts in Ohio and in other

states, counsel for the Provident and OHSL Defendants has never paid the deposition expenses of an opposing expert, nor been requested to do so under Fed. R. Civ. P. 26(b)(4)(c). Indeed, given the fact that Plaintiffs named five experts, several of rather dubious qualifications (in contrast to two for the defense), it would be manifestly inequitable to shift all of these deposition expenses to the Provident and OHSL Defendants, particularly with no advance notice or discussion.

In this regard, it is telling that Plaintiffs have left Dr. Fuerman to fend for himself with respect to his fees. Not only have Plaintiffs not paid Dr. Fuerman anything for his deposition, they have not even filed a pleading or motion in support of his request. To the contrary, as this Court's Order to Show Cause notes, "Plaintiffs' counsel is unwilling to file a Motion on his behalf to put said issue before the Court." Better than anything, this underscores the position of the Provident and OHSL Defendants: Dr. Fuerman's request for reimbursement was never discussed or agreed to; it is inconsistent with local practice; and it is <u>not</u> reasonable nor equitable.

    2)    <u>Dr. Fuerman's Request For Payment Is Excessive.</u>

A second reason why Dr. Fuerman's request for payment is not "reasonable" is because it is demonstrably inflated and excessive. Dr. Fuerman is seeking reimbursement for his testimony at the rate of $300.00 per hour. <u>See</u> letter from Ross Fuerman attached as Exhibit C. It is not disputed, however, that Dr. Fuerman's actual rate - - and the rate he had charged Plaintiffs throughout this case - - is only $150.00 per hour. A copy of a prior bill to Plaintiffs is attached as Exhibit D. Thus, <u>Dr. Fuerman doubled his rate for his deposition</u> and wants the Provident and OHSL Defendants to pay him twice as much per hour as Plaintiffs have paid him. This clearly is not "reasonable." If anything, it is unfair and over-reaching.

Clearly, the Provident and OHSL Defendants never agreed to pay Dr. Fuerman $300.00 per hour for anything, and never would have. Dr. Fuerman is a professor who has taught accounting courses at Suffolk University in Boston Massachusetts since 1997. See Fuerman Dep. Ex. B at pp. 54-64. He has never worked for an accounting firm, participated in an audit of financial statements, issued an audit opinion, participated in the restatement of financial statements by a company, nor been involved in a merger transaction. See Fuerman Dep. Ex. B at pp.71-77. More importantly, Fuerman has never been retained or consulted as an expert witness before, has never been qualified as an expert by a court, and has never testified in court or in a deposition. See Fuerman Dep. Ex. B at p. 84. No one would ever pay an individual of Dr. Fuerman's credentials the sum of $300.00 per hour and, in fact, Plaintiffs only agreed to pay him half this rate per hour. Under no circumstances is the amount sought by Dr. Fuerman "reasonable."

The issue of Dr. Fuerman's rate exemplifies why his request for payment from the Provident and OHSL Defendants is without merit. Plaintiffs had an agreement with Dr. Fuerman to pay for his services at a specified rate per hour. The Provident and OHSL Defendants had no agreement with Dr. Fuerman at all. They never were asked to pay for the expenses of his deposition and never agreed to. There certainly, therefore, was never any agreement to reimburse Dr. Fuerman at the rate of $300.00 per hour and he cannot unilaterally charge this rate, after the fact.

3) Dr. Fuerman's Request Is Not Reasonable Because Much Of The Deposition Time Was Necessitated By Argumentative, Baseless Opinions Which Were Patently Inadmissible.

The third reason why Dr. Fuerman's request for reimbursement is not reasonable is because a substantial amount of time at the deposition was required to explore purported

opinions in his expert report which were argumentative, baseless, inadmissible and far beyond his expertise. Perhaps because of his inexperience as an expert witness, Dr. Fuerman fundamentally misunderstands his role. He is an accounting professor, retained to provide objective, dispassionate testimony in his field of purported expertise. Dr. Fuerman, however, apparently saw his role as serving ad *de facto* co-counsel for Plaintiffs and filled his expert report with gratuitous opinions on subjects which he knew nothing about and which are not a proper subject of expert testimony at all. Dr. Fuerman also unfortunately chose to adopt the exaggerated rhetoric that has characterized so many of the pleadings filed on Plaintiffs' behalf in this case.

A copy of Dr. Fuerman's expert report is attached hereto as Exhibit E. The first nine pages arguably relate to his field of accounting and to an issue in this case - - whether the Provident Restatement in March – April, 2003 was material to the financial statements to which it relates. In pages 9-15 of the expert report, however, Dr. Fuerman goes off on what charitably can be described as a series of irrelevant, speculative tirades. Based solely upon his review of the depositions of certain Provident officers, he apparently concluded that he is an expert on the litigation process and can read minds and peer into men's souls. Accordingly, Dr. Fuerman includes in a purported expert report the following gratuitous opinions about people whom he never met and does not know:

- "In my opinion, the [Provident] CFO intentionally misstated his personal knowledge and belief about restatements and materiality." (Fuerman report Ex. E at p. 10).

- "I believe the [Provident] CFO intentionally misstated his personal knowledge and belief about the nature of the Wells Fargo restatement and how it compares to the PFGI restatement." (Fuerman report Ex. E at p. 11).

- "The [Provident] CFO also asserted that present value analysis, though applicable to cash is inapplicable to Net Income . . . this is a lie by the CFO who knows better." (Fuerman report, Ex. E at p. 12).

- "Also, at the urging of counsel for the Defendants, Mr. Burke, and counsel for Ernst & Young, Ms. Perry, Mr. Hoverson changed his answer to the question about who put together the lease accounting model, from the truth to a lie." (Fuerman report, Ex. E at p. 13).

- "Throughout his deposition, Mr. Hoverson engaged in . . . deceptive verbal behaviors (failure to answer questions, repeating the question, verbal attacks directed at the interviewer, qualified responses, selective memory) . . ." (Fuerman report, Ex. E at p. 13).

- "However, these are strong affirmations of Plaintiffs' position on restatements and materiality, given the context of intense pressure (strategic interruptions with extremely frequent and repetitive objections) exerted by three attorneys for the Defendants (against one for the Plaintiffs) through the deposition to thwart Dr. Steger from making any meaningful statement on these issues." (Fuerman report, Ex. E at pp. 13-14).

- "In my opinion the CFO and the CEO lied during their depositions." (Fuerman report, Ex. E at p. 15).

- "Audit Committee member Thomas Grote is not financially literate." (Fuerman report, Ex. E at p. 15).[1]

These examples clearly show how Dr. Fuerman's purported expert report far exceeds anything remotely admissible or remotely related to his field of expertise in accounting. For some reason he chose to assume the role of an advocate in this case and parrot arguments that are painfully familiar to this Court and to all who have been involved in this case. Inclusion of such

---

[1] Fuerman's opinions purportedly were based upon his certification as a Certified Fraud Examiner ("CFE") and his legal experience. His CFE certification was obtained through a CD-Rom course followed by a computer test. He has performed one fraud exam in his life, was not retained to do one in this case and has never been retained as an expert in fraud detection. Moreover, the CFE materials deal only with techniques for live interviews (which Fuerman has never conducted) not the review of deposition transcripts. See Fuerman Dep., Ex. B, pp. 67-68, 71, 231-239. With respect to Fuerman's legal experience, he was in private practice for 2 ½ years, never tried a case and never took a deposition although he recalled that he sat through "perhaps half a dozen" depositions. See Fuerman Dep. Ex. B, pp. 27-35, 255-260.

irrelevant, argumentative, improper opinions needlessly lengthened Dr. Fuerman's report as well as his deposition. For this reason also, his request for payment of his fees is not reasonable.

    4)  **Dr. Fuerman Is Not Entitled To Payment Of His Fees And Expenses Because His Deposition Needlessly Was Prolonged.**

The final reason why Dr. Fuerman's request for payment of his fees is not reasonable is because his deposition took significantly longer that it should have for two reasons. In the first place, Dr. Fuerman's demeanor at this deposition continued his apparent view of his role as *de facto* co-counsel, and was adversarial, combative and non-responsive in many instances. In addition, following the conclusion of the questioning of Dr. Fuerman by counsel for the Provident and OHSL Defendants, Plaintiffs' counsel examined him for an additional hour or so (an additional 71 pages of transcript) trying to rehabilitate his own expert.

The discussion in the preceding section evidences Dr. Fuerman's attitude towards the issues and the parties in this case and how he impermissibly crossed the line from being an independent, objective witness to being a "wannabe lawyer" delivering a closing argument. This attitude shows even more clearly in documents exchanged between Plaintiffs' counsel and Dr. Fuerman, which Dr. Fuerman that produced at his deposition. Attached as Exhibit F is an e-mail correspondence from Dr. Fuerman to Plaintiffs' counsel dated October 12, 2004 - - just nine days prior to his deposition. Dr. Fuerman's emotional approach to this case is shown by the following excerpts from the e-mail dealing with the deposition of a Provident employee, Tony Stollings:

- "Then on page 77, this [testimony] is followed by a bunch of ' I don't recall' bullshit in response to [Plaintiffs' counsel's] questions about the restatement."

- "I cannot believe that [Provident's Chief Accounting Officer Tony] Stollings has such a GOOD memory about lots of innocuous bullshit that happened during his years working at PFGI, but has such a POOR memory about . . . a restatement of 5 years." (emphasis in original).

- "Mike, you have to, to the extent you can, nail these bastards on WHO decided to restate and why." (emphasis in original).

- "Stollings is a liar when he says he thinks there was a restatement because it was a 'big number.' My God, isn't it perjury to lie at a deposition?"

Exhibit F at p. 1.

Dr. Fuerman continued the same attitude during his deposition. He was argumentative, non-responsive and frequently refused to give direct answers to questions on undisputed points. Despite the fact that Dr. Fuerman has no securities litigation trial experience and no significant litigation experience of any kind, he fought for several pages over whether defendants in restatement cases routinely stipulate to materiality, even though he had never seen a case where this occurred. See Fuerman Dep. Ex. B, pp. 113-121, 138-145. Although the centerpiece of Dr. Fuerman's report was Accounting Principals Board (APB) Bulletin No. 20, Dr. Fuerman refused to concede the literal language of APB 20, relying instead for his opinion on what supposedly is "understood" by accountants. See Fuerman Dep. Ex. B, pp. 186-204, 218-230. Similarly, Dr. Fuerman maintained his purported ability and qualifications to determine whether a witness is telling the truth from reading a deposition transcript, despite the lack of any relevant formal training or experience in this. See Fuerman Dep. Ex. B, pp. 231-241, 247-269. Simply put, Dr. Fuerman's misguided sense of the role of an expert witness and his apparent willingness to buttress whatever suits Plaintiffs' case, made his deposition needlessly and unnecessarily long. His request for reimbursement for all of this time is not reasonable.

Moreover, at the conclusion of Dr. Fuerman's questioning by counsel for Defendants, Plaintiffs' counsel, for some reason chose to rehabilitate his own expert witness. Counsel interrogated Dr. Fuerman for approximately an hour using improper, leading questions. See Fuerman Dep., Exhibit B at pp. 295-366. This questioning by the counsel who retained Dr.

Fuerman consumed 71 pages or approximately 19% of the entire transcript (for which the Provident and OHSL Defendants had to pay). Such an expense for Dr. Fuerman's testimony is unwarranted and unreasonable. The Provident and OHSL Defendants, moreover, are entitled to an offset for the extent to which this expense was forced upon them.[2]

### D.   CONCLUSION

For all of the foregoing reasons, the Provident and OHSL Defendants respectfully request this Court deny its own Order to Show Cause dated February 14, 2005 with respect to Dr. Ross D. Fuerman.

---

[2] Similarly, Dr. Fuerman's claim for travel expenses is without merit. As the exhibits hereto plainly show, it was Plaintiffs' counsel who suggested holding his deposition in New York City. No one from the defense side ever requested it.

        Respectfully submitted,

        s/James E. Burke

        _____

        James E. Burke (0032731)
        Keating Muething & Klekamp, PLL
        One East Fourth Street
        Suite 1400
        Cincinnati, Ohio 45202
        Tel: (513) 579-6428
        Fax: (513) 579-6457
        jburke@kmklaw.com

        and

        James H. Greer (0046555)
        Bieser, Greer & Landis, LLP
        400 National City Center
        Dayton, Ohio 45402
        Tel: (937) 223-3277
        Fax: (937) 223-6339
        jhg@bgllaw.com

        *Attorneys for Provident and OHSL Defendants*

OF COUNSEL:

KEATING, MUETHING & KLEKAMP, P.L.L.
One East Fourth Street
Suite 1400
Cincinnati, Ohio 45202
(513) 579-6400

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2005, I electronically filed the RESPONSE OF PROVIDENT AND OHSL DEFENDANTS TO ORDER TO SHOW CAUSE RE: DEPOSITION OF ROSS D. FUERMAN with the Clerk of Courts, using the CM/ECF System which will send notification electronically to the following:

| | |
|---|---|
| Michael G. Brautigam, Esq. | John W. Hust, Esq. |
| Gene I. Mesh, Esq. | Michael E. Maundrell, Esq. |
| Gene Mesh & Associates | Schroeder, Maundrell, Barbiere & Powers |
| 2605 Burnet Avenue | 11935 Mason Road, Suite 110 |
| Cincinnati, Ohio 45219-2502 | Cincinnati, Ohio 45249 |
| *Attorneys for Plaintiffs* | *Attorneys for Dinsmore Defendants* |

s/James E. Burke
_____
James E. Burke

1411306.1